Not Reported in F.Supp. Page 25
(Cite as: 1992 WL 190135 (S.D.N.Y.))
<KeyCite History>

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

BANQUE DE GESTION PRIVEE SIB and
Group Pargesa Trading, Inc., Plaintiffs,
v.
TRANSOPTIONS, CO., Valletta Management,
Inc. and Anthony J. Saliba, Defendants.

No. 91 CIV. 8187 (KMW).

July 29, 1992.

OPINION AND ORDER

KIMBA M. WOOD, District Judge.

*1 Defendants move to dismiss plaintiffs' complaint against them, pursuant to Rule 12(h) of the Federal Rules of Civil Procedure, and 28 U.S.C. § 1391, for improper venue. In the alternative, defendants move to transfer the action to the Northern District of Illinois under 28 U.S.C. § 1404, and to dismiss or stay the action, pending mandatory arbitration between the parties before the Chicago Board Options Exchange ("CBOE"), pursuant to the United States Arbitration Act, 9 U.S.C. § 1 et seq. Plaintiffs cross-move for an order, pursuant to 28 U.S.C. § 1651, preliminarily and permanently enjoining defendants Valletta Management, Inc. ("Valletta") and Anthony J. Saliba ("Saliba") from prosecuting the arbitration before the CBOE pending a final determination by this Court whether the respondents in that arbitration are subject to the jurisdiction of the arbitrators. Plaintiffs also cross-move for an order disqualifying defense counsel from representing defendants in this action. For the reasons set forth below, the Court grants defendants' motion to transfer the action to the Northern District of Illinois under 28 U.S.C. § 1404.

BACKGROUND

Plaintiff Banque de Gestion Privee-SIB ("BGP"), a French banking organization headquartered in Paris, France, has its principal place of business in France. Defendant Saliba, a securities options trader who is a member of the CBOE, resides in Chicago.

On or about May 23, 1988, after conducting negotiations, plaintiff BGP and defendant Saliba entered into an agreement ("Partnership Agreement") to form and operate a trading partnership that they eventually named Transoptions Co. ("Transoptions"). Defendant Transoptions had two partners: Plaintiff Group Pargesa Trading, Inc. ("GPT"), a Delaware corporation organized by BGP solely for the purpose of acting as the majority partner of Transoptions, which held a 51% interest in the company; and defendant Valletta, an Illinois corporation organized by defendant Saliba to act as the minority general partner of Transoptions, which held a 49% interest in the company. Pursuant to the Partnership Agreement, defendant Valletta was managing partner and was responsible for the day-to-day operations of defendant Transoptions.

Defendant Transoptions, an Illinois general partnership governed by Illinois law and with its principal place of business in Illinois, became a member of the CBOE and actively traded on that exchange. Defendant Transoptions traded almost entirely at the CBOE.

According to the terms of the Partnership Agreement, GPT originally contributed $900,000.00 to Transoptions and Valletta contributed $300,000.00. GPT was also required to make an initial loan of $1.8 million to the partnership. BGP and GPT further assured defendant Saliba that, if necessary, they would further capitalize defendant Transoptions by providing up to $10,000,000.00 in credit.

Pursuant to the Partnership Agreement, on August 1, 1988, BGP made a subordinated loan of $1.8 million to defendant Transoptions in exchange for a promissory note ("Note"). The note was executed in New York and it provided for the application of the laws of the state of New York. The principal amount under the Note and all accrued interest became due and owing on August 1, 1990. Plaintiffs allege that BGP made a demand for payment of the Note and that defendant Transoptions has failed to make any payments and has therefore failed on its obligations under the Note.

*2 On August 13, 1991, defendants Saliba and Valletta filed an arbitration at the CBOE against



Not Reported in F.Supp. Page 26
(Cite as: 1992 WL 190135, *2 (S.D.N.Y.))

BGP and GPT, and against Lambert Brussels Capital Corporation ("LBCC"), which held a minority stake in GPT. The arbitration complaint alleged that BGP and GPT breached the Partnership Agreement by failing adequately to capitalize defendant Transoptions. The complaint further alleged that BGP and GPT interfered with the management of defendant Transoptions and committed fraud by inducing defendant Saliba to enter the venture through defendant Valletta. The complaint sought an accounting of partnership funds and compensatory and punitive damages. BGP and GPT challenged the jurisdiction of the CBOE. On May 6, 1992, the CBOE ruled that it had jurisdiction over the action.

On December 5, 1991, BGP and GPT turned around and filed this action in the Southern District of New York. In the first count, plaintiffs seek judgment against only defendant Transoptions pursuant to the Note. In the second count, plaintiffs allege that defendant Valletta mismanaged defendant Transoptions, defrauded it, and failed fully to capitalize the partnership. Based on these claims, plaintiffs seek compensatory damages from defendant Valletta in the $1.8 million amount of the outstanding loan. The third count represents plaintiffs' attempt to pierce the corporate veil and hold defendant Saliba, the president and principal shareholder of Valletta, personally liable for the alleged misconduct of Valletta. Finally, in the fourth count, plaintiffs seek an injunction against the arbitration before the CBOE and a declaratory judgment declaring that BGP, GPT, and LBCC are not subject to the jurisdiction of the CBOE and that the claims brought by Valletta and Saliba in the CBOE arbitration are not arbitrable.

## DISCUSSION

According to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As a threshold matter, the Court must determine whether this action might have been brought in the Northern District of Illinois. In light of defendants' Illinois residence, it is clear that venue is proper in the Northern District of Illinois. See 28 U.S.C. § 1391.

Even when the threshold inquiry is satisfied, there is a strong presumption in favor of plaintiff's choice of forum, see Piper Aircraft Co. v. Reyno, 454 U.S. 233, 255 (1981), and the defendant bears the heavy burden of demonstrating why plaintiff's choice should be disturbed. See Hasakis v. Trade Bulkers, Inc., 690 F.Supp. 260, 262 (S.D.N.Y.1988) (citations omitted). When plaintiff is foreign, however, its choice of forum "deserves less deference." Piper Aircraft, 454 U.S. at 256. Furthermore, the Supreme Court has stated that:

> ... when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would "establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience," or when the "chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems," the court may, in the exercise of its sound discretion, dismiss the case.

*3 Id. at 241 (citations omitted).

A district court must consider the following factors in determining whether to transfer a case pursuant to 28 U.S.C. § 1404(a):

> (1) the convenience of the parties, (2) the convenience of material witnesses, (3) the availability of process to compel the presence of unwilling witnesses, (4) the cost of obtaining willing witnesses, (5) the relative ease of access to sources of proof, (6) where the events at issue took place, (7) the practical problems indicating where the case can be tried more expeditiously and inexpensively, and (8) the interests of justice in general.

National Union Fire Ins. Co. v. Landry, 677 F.Supp. 704, 709 (S.D.N.Y.1988) (citations omitted).

Defendants contend that an Illinois forum would be more convenient because the crux of this action involves activity in Illinois relative to an Illinois partnership. Defendants also assert that "virtually all" the witnesses live in the Chicago area, that "few, if any, witnesses are New York based," and that several Illinois witnesses cannot be compelled to testify in New York. Defendants further claim that "little, if any, evidence exists" in New York. Finally, defendants contend that transfer to Illinois would facilitate enforcement of any arbitration award made by the CBOE, and would leave the interpretation of CBOE rules to an Illinois district

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.        Page 27
(Cite as: 1992 WL 190135, *3 (S.D.N.Y.))

court.

Plaintiffs argue that the action focuses primarily on a note that was negotiated and signed in New York, that provided for payment to be made in New York, and that calls for the application of New York law. Plaintiffs further claim that the majority of its witnesses are either in New York or Paris, and that it is more convenient for the French witnesses to travel to New York than to Chicago for trial. Plaintiffs also argue that defendants have not provided adequate documentation as to the location of the witnesses they intend to call. Finally, plaintiffs assert that transfer is inappropriate when it will simply shift the inconvenience from one party to the other. See, e.g., Seagoing Uniform Corp. v. Texaco, Inc., 705 F.Supp. 918, 936 (S.D.N.Y.1989).

The balance of factors in this case tips heavily in favor of transferring the action to the Northern District of Illinois. The Court notes at the outset that, on a motion pursuant to 28 U.S.C. § 1404(a), the moving party need not present a "detailed development of the entire case; rather discovery is limited to the location of important sources of proof." Fitzgerald v. Texaco, Inc., 521 F.2d 448, 451 (2d Cir.1975). Here, defendants have demonstrated that a transfer to Illinois would further the convenience of the material witnesses. All three defendants are residents of the Northern District of Illinois. Several witnesses who are associated with defendant Transoptions, either as traders or in other capacities, reside in Illinois. Furthermore, defendants would be able to compel the testimony of various Chicago witnesses in Illinois but not in New York; thus, if the action remains in New York, defendants will be required to resort to the deposition testimony of these witnesses. Plaintiffs' contention that it is less convenient for the French witnesses to travel to Chicago than to travel to New York does not outweigh the substantial inconvenience to defendants and their witnesses of travelling to New York for the trial. Plaintiffs also assert that they have identified at least five witnesses who reside in the New York area; however, the convenience to these five witnesses similarly does not outweigh the convenience to all of defendants' witnesses and the fact that defendants cannot require several of their witnesses to testify in New York.

*4 Additionally, it is clear that, although the complaint focuses on the Note, the majority of the evidence presented at trial will involve the management of Transoptions, an Illinois partnership based in Illinois. Plaintiffs' attempt to characterize this as an action based primarily on the Note is unavailing. In the first count, plaintiffs seek judgment on the Note against the Illinois-based Transoptions. Even this claim includes allegations of mismanagement of defendant Transoptions by defendants Valletta and Saliba and therefore involves Chicago-based proof. Furthermore, plaintiffs admit that defendant Transoptions is in liquidation and that its liabilities substantially exceed its assets, and therefore, that it is only a "nominal defendant." (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss for Improper Venue Pursuant to Rule 12(h), or in the Alternative to Transfer Under 28 U.S.C. 1404 or to Dismiss or Stay Pending Arbitration and in Support of Cross-Motion to Enjoin Defendants From Prosecuting Arbitration, at 6-7). This admission highlights plaintiffs' attempt to mischaracterize this Illinois-based action as an action focused on a New York-based Note. In the second and third counts, plaintiffs seek compensatory damages from defendants Valletta and Saliba based on their alleged fraud, mismanagement, and undercapitalization of defendant Transoptions. These counts clearly focus on the operation of an Illinois partnership. The Court finds that a transfer of this case to the Northern District of Illinois would result in a considerable easing of access to the sources of proof and would allow the case to be tried more expeditiously and inexpensively than in the Southern District of New York.

Finally, the Court finds that, in light of the related arbitration currently pending before the CBOE, not only judicial economy, but also the interests of justice are served by transfer to Illinois. This action and the CBOE arbitration are very closely related to one another. In fact, this case appears to be the mirror image of the CBOE arbitration, recast to focus on the New York-based Note so as to satisfy the venue requirement.

In light of the Court's decision to transfer the case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a), the Court need not consider the remaining motions.

CONCLUSION

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp. Page 28
(Cite as: 1992 WL 190135, *4 (S.D.N.Y.))

For the reasons stated above, the Court hereby transfers this action to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a).

SO ORDERED.

1992 WL 190135 (S.D.N.Y.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

