Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

**CASIO COMPUTER CO., LTD. Plaintiff,**
**v.**
**Osamu SAYO, Mitsuyaki Hasegawa, Theoddor Tsuru, Cranest International Inc., Ocean View Marketing Limited, Eugen Kaiser, Richard Wolpow, Charivari Capital Corporation, Joanne M. Marlowe, Crane Limited, Joseph Robert Kelso, Ashmita Patel and Wayne Nishiyama, Defendants.**

**No. 98CV3772 (WK).**

Oct. 13, 2000.

Seth T. Taube, Esq., Newark, N.J., Robert A. Mintz, Esq., McCarter & English, L.L.P., New York, for Plaintiff Casio Computer Co., Ltd.

Fred L. Abrams, Esq., Isla Verde, PR, for Defendant Osamu Sayo.

Jacques Debrot, Esq., Debrot & Siris, P.C., New York, for Mitsuyuki Hasegawa.

Michael S. Oberman, Esq. and Gary P. Naftalis, Esq., Kramer, Levin, Naftalis & Frankel, New York, for Defendants Charivari Capital Corporation and Joanne Marlowe.

Nancy Prahofer, Esq. and Mishell B. Kneeland, Esq., Dechert Price & Rhoads, New York, for Theoddor Tsuru.

Bernard C. Jasper, Esq., Horwitz & Beam, Irvine, CA, for Richard Wolpow.

MEMORANDUM & ORDER

KNAPP, Senior District J.

***1** We have considered the entire Report and Recommendation in this matter and find it to be an extraordinarily well put together document. We have also considered the arguments presented by the plaintiff and its objections to that Report and Recommendation. As to those objections we conclude: (1) that several of them are sufficiently plausible to warrant discussion; but (2) we would ultimately reject them. However, we find that such undertaking is not necessary because of Magistrate Judge Ellis' final recommendation that we exercise our discretion by dismissing the third amended complaint on the ground of forum non conveniens.

Having considered plaintiff's arguments in opposition to such an exercise of discretion, we find that the reasons advanced by Magistrate Judge Ellis are wholly valid and the third amended complaint should be, and it is, dismissed.

SO ORDERED.

REPORT AND RECOMMENDATION
I. INTRODUCTION

This action is brought by plaintiff Casio Computer Co., Ltd. ("Casio") against various defendants for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq. Before the Court are motions by the various defendants to dismiss the Third Amended Complaint ("Am.Compl."). [FN1] Defendant Wayne Nishiyama ("Nishiyama") originally joined the other defendants in moving to dismiss, but has since settled the action with Casio. See Stipulation and Order of Dismissal dated January 19, 1999. For the reasons stated below, defendants' motions to dismiss are GRANTED pursuant to Rule 12(b)(6) for failure to state a RICO claim and pursuant to Rule 12(b)(1) (except for Sayo) for lack of subject matter jurisdiction, as jurisdiction was based on the RICO statute. Fed.R.Civ.P. 12(b)(1), (6).

FN1. By order dated June 11, 1999, the Court granted plaintiff leave to file a Third Amended Complaint by June 18, 1999, to add new factual allegations and information. Defendants' motions to dismiss the Second Amended Complaint will be considered as motions to dismiss the Third Amended Complaint, which is now the operative complaint.

II. BACKGROUND

Plaintiff Casio Computer Co., Ltd., alleges that its former employee, Osamu Sayo, as well as the other named defendants, participated in a RICO enterprise for at least sixteen months (beginning in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



February 1997), and engaged in a pattern of racketeering activity to conspire and defraud the company out of millions of dollars through an elaborate series of wire transfers.

A. The Parties

Plaintiff Casio is "a company registered under the laws of Japan and is engaged in the business of manufacturing, developing, marketing and selling electronic and computer goods of different types" all over the world. Am. Compl. at ¶ 7. [FN2] Casio's main offices are located in Tokyo, Japan. Id. at ¶ 8. The President of Casio is Kashuo Kashio ("Kashio") and one of its four managing directors is Yoshiaki Suzuki ("Suzuki"). Id. at ¶ 7.

FN2. "Am. Compl." refers to the Third Amended Complaint dated June 18, 1999, with accompanying exhibits.

Defendant Osamu Sayo ("Sayo") is a Japanese citizen and resides in Tokyo, Japan. Id. at ¶ 8. Sayo was the Deputy General Manager of the Finance and Treasury Division at Casio's main offices. Id. On June 4, 1998, Sayo's employment with Casio was terminated. Id.

Defendant Mitsuyuki Hasegawa ("Hasegawa") is also a citizen of Japan, and resides in Japan. Hasegawa Mem. at 16. [FN3] Casio alleges that Hasegawa has a residence in New York, New York. Am. Compl. at ¶ 9.

FN3. "Hasegawa Mem." refers to defendant Mitsuyuki Hasegawa's memorandum of law in support of his motion to dismiss the Complaint.

***2** Defendant Theoddor Tsuru ("Tsuru") is alleged to be a citizen of Japan with a residence in New York, New York. [FN4] Id. at ¶ 10. As the Chief Executive Officer, Tsuru owns and/or controls Cranest International, Inc. ("Cranest"), another defendant in this action. Id. Cranest is an organization believed to be organized under California laws with its principal place of business in New York, New York. Id. at ¶ 11.

FN4. In his motion to dismiss, Tsuru does not state whether he is a Japanese citizen and/or resident. However, he does not challenge this fact alleged by plaintiff.

Defendant Joanne M. Marlowe ("Marlowe") [FN5] is a United States citizen with a residence in Wadsworth, Illinois, and a place of business in Hoffman Estates, Illinois. Id. at ¶ 12. Marlowe owns and/or controls defendant Charivari Capital Corporation ("CCC"), of which she is the President and/or Director and/or Secretary. Id. CCC is a company registered under the laws of Barbados, with its principal place of business at St. Michael, Barbados. Id. at ¶ 13.

FN5. In its Third Amended Complaint, plaintiff submits new allegations that defendant Joanne M. Marlowe has an alias, Joanne Marie Noren, which is her name by marriage. Am. Compl. at ¶ 12.

Defendant Joseph Kelso ("Kelso") [FN6] is a United States citizen residing under "house arrest" in London, England. Id. at ¶ 14. Kelso is believed to own and/or control defendant Crane Limited ("Crane") as Chairman, President and Chief Executive Officer. Id. Crane is a company registered under the laws of Isle of Man, which is situated between Ireland and Great Britain. Id. at ¶ 15. Crane has an office in Isle of Man while its principal place of business is located in Hertfordshire, England. Id. Kelso, along with defendant Ashmita Patel ("Patel"), manages and operates Crane. Id. Patel allegedly resides in London, England, and is a director of Crane. Id. at ¶ 20.

FN6. In the Third Amended Complaint, plaintiff amended this portion of the Second Amended Complaint to add factual allegations, stating that Kelso had pled guilty in federal court for attempting to sell arms to Iraq. Am. Compl. at ¶ 14. Plaintiff alleges that Kelso was sentenced to five years probation and thereafter violated his probation, resulting in another two years' imprisonment for such violation. Id. In addition, plaintiff alleges that Kelso is currently under indictment in the Western District of Washington for his involvement in an advanced fee scheme. Id.

Defendant Wayne Nishiyama is alleged to be a citizen of the United States with a residence in New York, New York. Id. at ¶ 16.

Defendant Eugen Kaiser ("Kaiser") is believed to be a German citizen, and is the Chief Executive Officer of Ocean View Marketing, Ltd. ("OVM"). Id. at ¶ 17. Defendant OVM is a company registered

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



under the laws of Isle of Man with an office in Isle of Man and its principal place of business at Gran Canaria of the Canary Islands. Id. at ¶ 19.

Defendant Richard Wolpow ("Wolpow") is a citizen of the United States and resides in Newport Beach, California. Id. at ¶ 18. He is the Managing Director of OVM. Id.

B. Procedural History

On May 27, 1998, Casio filed an Order to Show Cause and applied for a temporary restraining order to freeze certain defendants' assets. The Honorable Whitman Knapp granted the temporary restraining order against defendants Sayo and Hasegawa. Simultaneously, Casio brought the original complaint against Sayo and Hasegawa, alleging common law fraud, securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934, and conversion. See Plaintiff's complaint filed on May 27, 1998. Casio did not allege a RICO claim at that time. Id. On June 5, 1998, Casio filed an amended complaint, adding defendants Tsuru, Cranest, CCC, Marlowe, Crane, Kelso and Nishiyama, and characterizing its prior claim as a RICO claim. See Plaintiff's amended complaint filed on June 5, 1998. In the amended complaint, Casio alleged that there was a RICO "enterprise" which existed among certain defendants: Sayo, Hasegawa, Tsuru, CCC, Marlowe, Wolpow, OVM, Kaiser, Crane, Kelso, and Nishiyama. Id. The amended complaint also included other causes of action, including breach of fiduciary duty, conversion, common law fraud against defendant Sayo, civil conspiracy, federal securities law violation, and unjust enrichment. Id.

***3** On June 12, 1998, at a conference before Judge Knapp, Casio was granted leave to amend the complaint again. See Mintz Decl., Exh. 9, at 51-52. [FN7] On June 18, 1998, Casio filed its Second Amended Complaint, naming additional defendants (OVM, Wolpow, Kaiser, and Patel), adding factual details, information, and legal theories concerning defendants, as well as amending certain counts and legal theories. In this Second Amended Complaint, Casio alleged violations of RICO and the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78a et seq., and asserted eleven claims for relief against defendants. At a case conference held on June 26, 1998, and by Order dated June 29, 1998, Judge Knapp dismissed Casio's federal securities law claim.

FN7. "Mintz Decl." refers to Robert A. Mintz's Declaration with accompanying exhibits, dated August 26, 1998. Exhibit 9 is a transcript of the conference held before Judge Knapp on June 12, 1998.

On August 24, 1998, defendant Sayo filed an answer, counterclaim and cross-claim. [FN8] In addition, Sayo filed a motion to dismiss the Second Amended Complaint pursuant to Rule 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants Hasegawa, CCC, Marlowe, Tsuru and Wolpow have filed motions to dismiss as well, relying upon various theories of dismissal, including Rules 12(b)(1), (2), (3), (4), (5), and (6) of the Federal Rules of Civil Procedure.

FN8. Sayo contended that any injuries sustained by plaintiff resulted from plaintiff's negligent failure to exercise ordinary care, and that the very claims raised by plaintiff were being adjudicated in another action in London. Sayo also brought a counterclaim and a cross-claim, claiming that cross-defendants Hasegawa and Tsuru caused plaintiff's injuries.

In a submission dated August 26, 1998, Casio opposed the motions to dismiss by defendants Sayo, Hasegawa, CCC and Marlowe, filed a cross-motion to disqualify Jacques Debrot, Esq., attorney for defendant Hasegawa, and requested leave to amend the complaint a third time. See Casio Opp. Mem. [FN9] On November 6, 1998, Casio also submitted a memorandum of law in opposition to the motions to dismiss by defendants Tsuru and Wolpow.

FN9. "Casio Opp. Mem." refers to Casio's memorandum of law in opposition to defendants' motions to dismiss, in further support of its motion to disqualify Jacques L. Debrot, Esq., and for leave to amend its Second Amended Complaint, dated August 26, 1998.

Defendants Hasegawa, CCC and Marlowe submitted reply memoranda in further support of their motions to dismiss the Second Amended Complaint and in opposition to plaintiff's cross-motion for leave to amend its complaint. At a conference before this Court on December 4, 1998, defense counsel for Sayo asserted that he would not

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



be filing a reply to Casio's opposition to defendants' motions to dismiss. [FN10]

FN10. In January 1999, Casio made additional submissions to the Court. The submissions contain further allegations and assertions concerning certain defendants. Since these submissions were offered without leave of the Court, these submissions have not been considered in this Report and Recommendation.

On March 30, 1999, the Court held a telephone conference with the parties regarding plaintiff's request for leave to again amend its complaint. At that time, the Court directed defendants to address and respond to the additional evidence submitted by plaintiff in its Third Amended Complaint. On April 29th and 30th, 1999, defendants Marlowe, CCC and Tsuru submitted supplemental memoranda in further support of their motions to dismiss and to deny plaintiff leave to amend its complaint. Plaintiff was given an opportunity to reply to those responses, and filed a memorandum of law in opposition to defendants' supplemental memoranda in support of their motions to dismiss dated May 10, 1999. In May 1999, defendants Marlowe, CCC and Tsuru submitted reply supplemental memoranda in opposition to Casio's May 10, 1999 reply memorandum.

By Order dated June 11, 1999, the Court granted plaintiff leave to file its Third Amended Complaint by June 18, 1999. In its Third Amended Complaint, Casio provides new factual allegations and information relating to the following: (1) defendant Marlowe's married name "Noren" and her use of an alias "Marlowe"; (2) Kelso's prior criminal record; (3) the legitimacy of the "Los Frailes" project to construct a hotel and golf course in Gran Canaria; (4) fraudulent wire transfers directed by Marlowe/ CCC; and (5) evidence directly linking Marlowe/ CCC to the Sayo/Hasegawa enterprise.

C. Facts

***4** The Third Amended Complaint alleges that from at least February 1997, Sayo, the Deputy General Manager of the Finance and Treasury Division at Casio's main offices, conspired with Hasegawa and other individuals to divert approximately one hundred million dollars ($100,000,000) from Casio's funds and proceeds of securities investments. Id. at ¶¶ 1, 6, 21. This misappropriation of funds is alleged to have occurred in three steps, in the amounts of thirty million dollars ($30,000,000), two million dollars ($2,000,000), and sixty-four million dollars ($64,000,000), respectively. Id. at ¶¶ 21-66. Casio claims that Sayo and Hasegawa, along with other defendants, engaged in a continuous pattern of racketeering activity while participating in a RICO enterprise, and engaged in an elaborate series of wire transfers to conceal their racketeering activities. Id.

1. The First Misappropriation

Casio claims that on or about February 5, 1997, defendant Sayo received written authority from certain Casio board members "to invest up to the yen equivalent of $30,000,000 in securities, namely, foreign currency investment in mainly AAA class short term bonds guaranteed by the [United States] government and foreign currency time deposits at three month periods." Am. Compl. at ¶ 24, Exh. I. On or about February 18, 1997, defendants Sayo and Hasegawa allegedly forged a "Special Limited Power of Attorney" to create a document where Casio, acting by Suzuki and Sayo, would grant Hasegawa and Tsuru "rights, powers and authority to act on behalf of Casio," including the power to make "all Private Investment contracts which could allow the realization of investment offering both high yields and full total, permanent security" on the terms and conditions therein. Id. at ¶ 25, Exh. 2. The power of attorney was purportedly signed by Sayo, but Suzuki's signature was "forged by Hasegawa or one of his associates ...." Id. at ¶ 25, Exh. 3.

Casio further alleges that Sayo conspired with defendant Tsuru to open various bank accounts in Casio's name in New York, London, and other parts of the world. Id. at ¶¶ 26-29, Exhs. 4, 5. Tsuru and Sayo allegedly maintained control as signatories for certain bank accounts, and Tsuru was authorized to invest large sums of money on Casio's behalf, including transfers to a personal account in his name. Id. at ¶¶ 26, 28, Exh. 9. Sayo and Tsuru then wire transferred thirty million dollars ($30,000,000) of Casio funds to the various bank accounts, some of which were controlled solely by Tsuru. Id. at ¶¶ 26-30, Exhs. 6-8.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



a. Alleged Participation by Tsuru

Next, Casio alleges that, in May 1997, Tsuru entered into a purported Project Management and Funding Agreement (the "Los Frailes Project") with OVM, an Isle of Man corporation owned by Wolpow and Kaiser, and conspired with OVM to invest twenty-five million dollars ($25,000,000) in OVM's project to construct a hotel and golf course in Gran Canaria. The agreement also provided that the money invested and additional payments would be transferred back to Tsuru at his personal account at Barclays Bank. Id. at ¶¶ 30-31, 35(c), Exh. 11. To finance the Los Frailes Project, Tsuru purportedly wired $25,000,000 to OVM's bank account and retained five million dollars of the money originally transferred to him by Sayo. Id. at ¶¶ 33-35(a)--(c), Exhs. 12, 13.

*5 Tsuru then allegedly further assisted in various wire transfers of $25,000,000 from one account to another in the name of Wolpow, CCC and/or OVM. [FN11] Id. at ¶ 35(e)--(i). Specifically, Casio alleges that, in June 1997, rather than using the money to fund the hotel project, Tsuru and OVM wired the twenty-five million dollars to a bank account in Chicago, Illinois, in the name of OVM and/or CCC, a company owned and controlled by Marlowe, who was identified as the "project manager" of the Los Frailes Project. [FN12] Id. at ¶¶ 35(h), 37(c); Casio Opp. Mem. at 3. In addition, Casio alleges that Tsuru, Kaiser, Wolpow and Marlowe held some equity interest in the Los Frailes Project. Am. Compl. at ¶ 35(d).

FN11. Plaintiff then claims that Tsuru sought "secret" profits of five million dollars as a fee for introducing (and to be paid out of) the $25,000,000 laundered through OVM. Am. Compl. at ¶ 35(j). Moreover, Tsuru purportedly agreed to transfer an additional three million five hundred thousand dollars ($3,500,000) of the original $25,000,000 transferred to OVM, and appropriate such amount for his own benefit. Id. at ¶ 35(k), Exh. 15. As a result, Tsuru allegedly took at least eight million dollars ($8,000,000) belonging to Casio and kept the funds for his own personal use. Id. at ¶ 35(k).

FN12. CCC and Marlowe allegedly managed the funds for OVM. Casio Opp. Mem. at 3-4.

Casio asserts that Tsuru knowingly and substantially participated in defrauding Casio out of at least $30,000,000 because he knew or should have known that the Los Frailes Project was a highly risky investment or "at worst, a sham or fraud." Id. at ¶¶ 33-35(c)(1)--(c)(4). Casio claims that based upon its investigation, in 1995 the Government of Gran Canaria had halted development of the land upon which the Los Frailes Project was to be situated, "through the imposition of a zoning ordinance known as a Plan Insular de Ordenacion del Territorio de Gran Canaria ("PIOT") ." Id. at ¶ 35(c)(5), Exh. 53. Casio's investigation also disclosed that the land has been zoned as "rustic" property and that the PIOT forbids development at the site. Id. Thus, Casio argues that Tsuru's investment in the Los Frailes Project with defendants OVM, Kaiser, Wolpow, Marlowe and CCC was an actual scheme to defraud Casio. Id. at ¶ 35(c)(10).

Additionally, Tsuru and Kelso purportedly each provide different accounts as to the disbursement of Casio funds; Tsuru claims that Marlowe and Kelso were in a conspiracy to defraud Casio whereas Kelso contends that Tsuru, Marlowe and other defendants conspired to defraud the company. Id. at ¶¶ 35(l), Exhs. 54, 55. Moreover, by terms of a written agreement dated September 29, 1997, Tsuru conspired with OVM, Kaiser, Wolpow, CCC and Marlowe to participate in the generation and division of further secret profits using Casio's monies. Id. at ¶ 35(m), Exh. 19. Therefore, Casio alleges that Tsuru knowingly and substantially participated in defrauding Casio out of $30,000,000, and failed to take any steps to preserve the money for the benefit of Casio or return the funds. Id. at ¶¶ 33-35(a)--(m).

b. Alleged Participation by OVM, Kaiser and Wolpow

The Third Amended Complaint further asserts that OVM, Kaiser, and Wolpow knowingly and substantially participated in defrauding Casio out of at least $30,000,000 because they never intended to use the money towards investment in the Los Frailes Project. Rather, they allegedly knew, or should have known, that the project was a sham when soliciting funds from Tsuru. Id. at ¶ 36. In addition, they failed to return the $25,000,000 or take steps to preserve the money. Id. at ¶ 37(a). By July 29, 1997, CCC allegedly had control over the





$25,000,000. Id. at ¶ 37(d).

c. Alleged Participation by Marlowe, CCC, Kelso, Crane and Patel

***6** The Complaint then alleges that, in July 1997, Marlowe, on behalf of CCC, and Kelso, on behalf of Crane, conspired and entered into a Master Repurchase Agreement "for the purpose of laundering the stolen [twenty-five million dollars] $25,000,000 and to conceal the money trail from Casio." Id. at ¶ 38. Casio claims that defendants CCC, Marlowe, Crane, Kelso and Patel knowingly participated in a conspiracy to defraud Casio out of its funds from approximately July 1997 to no later than August 21, 1997, engaging in multiple wire transfers of the funds in various bank accounts. Id. at ¶¶ 39, 40(a)--(k), Exhs. 20-22, 56-60, 71, 72, 74. Thus, they breached their duties as constructive trustees by failing to preserve the $25,000,000 for the benefit of Casio and failing to return the funds. Id. at ¶ 40(a).

Thus, Casio asserts that defendants CCC, Marlowe, Crane, Kelso and Patel knowingly and substantially participated in a scheme to defraud Casio of $30,000,000. Id. at ¶¶ 38-40(a)--(aa), Exhs. 25-29. Sayo and Hasegawa allegedly attempted to recover the $30,000,000, but had no success. Id. at ¶ ¶ 43, 47, Exhs. 30, 32. In December 1997, Sayo and Hasegawa allegedly attempted to conceal the scheme to divert Casio funds by presenting false audit confirmations to Casio's auditors. Id. at ¶¶ 50-51, Exhs. 34-36.

2. The Second Misappropriation

Casio claims that, on or about December 9, 1997, Sayo was instructed to open an account on Casio's behalf at Citibank, New York, and deposit $2,000,000 to be invested in certificates of deposit. Id. at ¶ 53, Exh. 38. Casio alleges that, more than six months later, it discovered that Sayo did not open the account in New York, and did not invest the $2,000,000 in certificates of deposit. Id. at ¶ 54. Instead, on or about December 26, 1997, Sayo wire transferred Casio's funds into the personal account of defendant Nishiyama in New York, who, in turn, transferred that amount to Hasegawa's personal account in New York. Id. at ¶¶ 55-56, Exh. 39.

3. The Third Misappropriation

Casio alleges that, in March 1998, Sayo again fraudulently induced it to provide him with funds to invest in the United States. Id. at ¶ 59, Exh. 42. Thereafter, Sayo and Hasegawa opened another bank account in the name of Casio Computer Co., Ltd., and engaged in a series of wire transfers to convert a total of $64,000,000. Id. at ¶¶ 60-64, Exh. 46. In May 1998, Casio initiated an investigation when it discovered that Sayo's status report explaining his investments of the funds was "replete with misrepresentations." Id. at ¶ 65, Exh. 47.

The Third Amended Complaint alleges a violation of RICO, under 18 U.S.C. §§ 1961 et seq. See Id. at ¶ 2. Specifically, Casio alleges that defendants conspired and engaged in a pattern of racketeering activity to defraud it of assets and funds through an elaborate series of wire transfers and transactions. Id. at ¶ 67. Casio asserts that defendants not only engaged in racketeering acts in violation of 18 U.S.C. §§ 2314, 1343, and 1956, but also attempted to conceal their fraudulent scheme to launder and convert Casio's funds. Id. at ¶¶ 71-72.

***7** Casio asserts eleven claims for relief. Id. at ¶¶ 74-134. The first, second, third, fourth, sixth, eighth, ninth, and tenth claims are filed against all defendants for violation of 18 U.S.C. § 1962(c), 18 U.S.C. § 1962(d), conversion, civil conspiracy, participation in a breach of fiduciary duty, negligence, unjust enrichment, and seek declaratory judgment for imposition of a constructive trust. Id. at ¶¶ 74-105, 112-16, 123-32. The fifth and seventh claims are against Sayo for breach of fiduciary duty and common law fraud, respectively. Id. at ¶¶ 106-11, 117-22. Finally, the eleventh claim seeks a judgment against defendants Kelso and Crane for common law fraud. Id. at ¶¶ 133-34.

In addition, Casio claims that subject matter jurisdiction, personal jurisdiction and venue are proper in this Court. Id. at ¶¶ 2-5. With respect to the RICO claims, Casio asserts that the Court may exercise personal jurisdiction over the domestic defendants under 18 U.S.C. § 1965(b) or (d), and exercise personal jurisdiction over the foreign defendants under Civil Practice Law and Rules ("CPLR") 302, New York's long arm statute, and the Restatement (Second) of Conflict of Laws §§ 35-37, 47, 49, and 50. Id. at ¶ 4. Casio also asserts that the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), because the state law claims

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



are so related to the federal claims that they form a part of the same case or controversy. Id. at ¶ 3.

D. The Motions to Dismiss Before the Court

Defendants Sayo, Hasegawa, CCC, Marlowe, Tsuru, and Wolpow have moved to dismiss the Third Amended Complaint on various grounds. Defendants primarily challenge the sufficiency of the RICO claims against them, but also assert the following grounds for relief.

Defendant Sayo has moved to dismiss the Third Amended Complaint pursuant to Rule 12(b)(6), and Rule 9(b) of the Federal Rules of Civil Procedure. Sayo Mem. at 1. [FN13] Sayo alleges that Casio has failed to establish the RICO elements of "pattern of racketeering activity," "continuity," and "enterprise" and has failed to prove Sayo's participation in the alleged RICO enterprise. Sayo Mem. at 2. Sayo further asserts that Casio has failed to plead the RICO predicate acts with sufficient particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Sayo Mem. at 13, 15, 17.

FN13. "Sayo Mem." refers to Osamu Sayo's memorandum of law in support of his motion to dismiss the Second Amended Complaint.

Defendant Hasegawa also attacks the sufficiency of the RICO claim by Casio. Hasegawa Mem. at 17. Hasegawa further asserts a lack of subject matter and personal jurisdiction, insufficiency of process, and/or improper service of process, and failure to state a proper RICO claim. In addition, Hasegawa argues that the case should be dismissed on the grounds of forum non conveniens. Hasegawa Mem. at 12.

Defendants CCC and Marlowe challenge the sufficiency of the RICO allegations against them and assert lack of subject matter jurisdiction and personal jurisdiction, improper venue, insufficiency of process and/or insufficiency of service of process. Marlowe Mem. at 1. [FN14] In the alternative, they argue that the RICO claims against them should be dismissed pursuant to 12(b)(6) for failure to state a RICO claim. Id. Specifically, CCC and Marlowe argue that the RICO claim is baseless because Casio fails to plead the necessary elements, such as a "pattern of racketeering activity" and "participation" in a racketeering enterprise, against any defendant. Id. at 5-9. Marlowe asserts that Casio's allegations only provide for "[a] single thief stealing from a single victim on three discrete occasions." Id. at 3. This she contends does not constitute a pattern of racketeering activity under RICO. Id. at 3. In addition, Marlowe argues that she cannot be liable for "participation" in an allegedly criminal RICO enterprise if she merely assisted such an enterprise or served as a professional advisor. Id. at 9.

FN14. "Marlowe Mem." refers to defendants Joanne Marlowe and CCC's memorandum of law in support of their motion to dismiss the Second Amended Complaint.

***8** Wolpow adopts CCC and Marlowe's arguments challenging Casio's RICO allegations, and moves to dismiss for lack of subject matter jurisdiction and personal jurisdiction, improper venue, insufficiency of process and/or service of process, and for failure to state a claim upon which relief may be granted. Wolpow Mot. at 1-2. [FN15] In addition, Wolpow claims that he is not a resident of New York, does not transact business, operate a company, regularly perform business activities or maintain a bank account in New York. Wolpow Decl. at 2. [FN16]

FN15. "Wolpow Mot." refers to defendant Richard Wolpow's Adoption of Notice of Motion and Motion to Dismiss the Second Amended Complaint, dated October 29, 1998.

FN16. "Wolpow Decl." refers to the Declaration of Richard Wolpow filed on October 30, 1998.

Defendant Tsuru asserts lack of subject matter jurisdiction, insufficiency of process and/or insufficiency of service of process, and failure to state a claim upon which relief can be granted. Tsuru Mem. at 1. [FN17] Tsuru also interposes the doctrine of forum non conveniens, in favor of pending proceedings initiated by Casio in the United Kingdom and Japan. Id. at 3. In attacking the sufficiency of the RICO allegations, Tsuru joins in the arguments made by Nishiyama, CCC and Marlowe. Id. at 5. In addition, Tsuru asserts that Casio has not only failed to identify and plead elements of any predicate acts committed by defendants, but has also failed to allege the "requisite causal nexus" between its losses and the alleged criminal conduct by defendants. Id. at 12-

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



13. Tsuru adopts arguments made by Nishiyama, CCC and Marlowe on the issues of supplemental jurisdiction and forum non conveniens. Id. at 14-15.

FN17. "Tsuru Mem." refers to defendant Theoddor Tsuru's memorandum of law to dismiss the Second Amended Complaint.

Each of the moving defendants requests that the Court decline to exercise subject matter jurisdiction and supplemental jurisdiction over the state claims asserted against them in the event that the federal RICO claim is dismissed.

III. DISCUSSION

All defendants move to dismiss the Third Amended Complaint pursuant to Rules 12(b)(1) (with the exception of Sayo) and 12(b)(6) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Defendant Sayo also moves to dismiss pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. Defendants assert that plaintiff has failed to adequately plead a RICO claim, and thus, the Court lacks subject matter jurisdiction over this action since the federal securities law claim has already been dismissed. The Court agrees.

A. STANDARD OF REVIEW FOR DISMISSAL UNDER 12(b)(1)

In considering a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court must assume as true factual allegations in the complaint. Shipping Financial Services Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir.1998) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Where the court must decide jurisdictional issues in dispute, it may look to "evidence outside the pleadings, such as affidavits." Filetech S.A. v. France Telecom, S.A., 157 F.3d 922, 932 (2d Cir.1998) (quoting Antares Aircraft v. Federal Republic of Nigeria, 948 F.2d 90, 96 (2d Cir.1991), vacated on other grounds, 505 U.S. 1215 (1992)).

*9 A Rule 12(b)(1) motion may be appropriate when a plaintiff's federal claim is not even minimally plausible. See Town of West Hartford v. Operation Rescue, 915 F.2d 92-99 (2d Cir.1990); see also AVC Nederland B.V. v. Atrium Inv. Partnership, 740 F.2d 148, 152-53 (2d Cir.1984) ("[W]hen the contested basis of federal jurisdiction is also an element of plaintiff's asserted federal claim, the claim should not be dismissed for want of jurisdiction except when it appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.") (internal quotation marks omitted).

In most cases, the court will consider a 12(b)(1) motion before ruling on any other motions to dismiss, since dismissal of an action for lack of subject matter jurisdiction will render all other accompanying defenses and motions moot. See United States ex rel Kreindler & Kreindler v. United Technologies Corp., 985 F.2d 1148, 1155-56 (2d Cir.1993), cert. denied, Kreindler & Kreindler v. United Technologies Corp., 508 U.S. 973 (1993); see also Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir.1990). Thus, a court confronted with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) should decide the jurisdictional question first because "a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." Magee v. Nassau County Medical Center, 27 F.Supp.2d 154, 158 (E.D.N.Y.1998); see also Rhulen, 896 F.2d at 678.

The situation is more complicated in federal question cases where the statute which creates the cause of action also confers jurisdiction. See Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187-88 (2d Cir.1996). "[I]n cases where the asserted basis for subject matter jurisdiction is also an element of the plaintiff's allegedly federal cause of action, [the court will] ask only whether--on its face--the complaint is drawn so as to seek recovery under federal law ... If so, then we assume or find a sufficient basis for jurisdiction and reserve further scrutiny for an inquiry on the merits." Id. at 1189 (citing Spencer v. Casavilla, 903 F.2d 171, 173 (2d Cir.1990)).

The nature of the present case requires the Court to consider the Rule 12(b)(6) motion in order to decide the Rule 12(b)(1) motion because subject matter jurisdiction in this action is invoked by alleging an adequate RICO claim.

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



B. STANDARD OF REVIEW FOR DISMISSAL UNDER 12(b)(6)

A motion to dismiss under Rule 12(b)(6) should be granted only if it appears beyond doubt that "no relief could be granted under any set of facts that could be proved consistent with the allegations." H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). This standard applies to RICO claims. See National Organization for Women, Inc. v. Scheidler, 510 U.S. 249 (1994); H.J. Inc., 492 U.S. at 249-50. In a motion for judgment on the pleadings, the well-pleaded allegations of fact by the non-moving party must be accepted as true and construed in the light most favorable to that party. See, e.g., Davidson v. Flynn, 32 F.3d 27, 29 (2d Cir.1994) (citing Madonna v. United States, 878 F.2d 62, 65 (2d Cir.1989); National Association of Pharmaceutical Manufacturers, Inc. v. Ayerst Laboratories, 850 F.2d 904, 909 n.2 (2d Cir.1988) (treating motion for judgment on the pleadings as if it were a motion to dismiss).

***10** A court should draw all reasonable inferences in favor of the plaintiff, and should not dismiss the complaint unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Davis v. Monroe County Board of Education, 119 S.Ct. 1661, 1676 (1999) (citing Conley v.. Gibson, 355 U.S. 41, 45-46 (1957)); see also Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir.), cert. denied, 513 U.S. 816 (1994). However, a court does not have to accept as true "conclusions of law or unwarranted deductions of fact." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir.1994), cert. denied, 513 U.S. 1079 (1995) (quoting 2A Moore & Lucas, Moore's Federal Practice ¶ 12.08, at 2266-69 (2d ed.1984)).

C. THE RICO VIOLATION

Defendants move pursuant to Rule 12(b)(6) to dismiss the RICO claim on various grounds that plaintiff has not sufficiently pled (1) a "pattern of racketeering" by defendants, including closed-ended or open-ended continuity and the commission of at least two predicate acts by each defendant; (2) that defendants formed and participated in an enterprise for purposes of defrauding Casio; (3) the element of conspiracy under RICO; and (4) that their predicate acts of racketeering proximately caused Casio's injury.

1. Motion to Dismiss under Section 1962(c)

Casio filed its first and second claim for relief against all defendants for violation of 18 U.S.C. § 1962(c) and (d). Am. Compl. at ¶¶ 74-93. Casio's civil RICO claim alleges that defendants participated in a conspiracy and enterprise for the purpose of misappropriating $100,000,000 of Casio funds and investment proceeds. Id. at ¶¶ 67-73, 79-85.

18 U.S.C. § 1962(c) of the RICO Act provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

To properly state a RICO claim for damages under 18 U.S.C. § 1962(c), "a plaintiff has two pleading burdens." Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir.1983), cert. denied, Moss v. Newman, 465 U.S. 1025 (1984); Vasile v. Dean Witter Reynolds, Inc., 20 F.Supp.2d 465, 483 (E.D.N.Y.1998). First, a plaintiff must establish "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate commerce or foreign commerce." Town of West Hartford v. Operation Rescue, 915 F.2d 92, 100 (2d Cir.1990), cert. denied, Syverson v. Summit Women's Center West, Inc., 510 U.S. 865 (1993); Moss, 719 F.2d at 17; Frooks v. Town of Cortlandt, 997 F.Supp. 438, 457 (S.D.N.Y.1998), judgment aff'd,--F.3d--, No. 98-7501, 1999 WL 464990 (2d Cir. June 29, 1999). Second, a plaintiff must allege he or she was "injured in his [or her] business or property by reason of a violation of section 1962." First Nationwide Bank, 27 F.3d at 767; Moss, 719 F.2d at 17.

a. Pattern of Racketeering Activity under RICO

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



***11** All defendants argue that plaintiff has failed to provide sufficient evidence of a pattern of racketeering activity. A "pattern of racketeering activity" requires the following proof: (1) that each defendant committed at least two predicate acts of racketeering activity within a ten-year period, 18 U.S.C. § 1961(5); (2) "that these racketeering predicates are interrelated; and (3) that they reveal continued, or the threat of continued, racketeering activity." United States v. Diaz, 176 F.3d 52, 93 (2d Cir.1999) (citing H.J. Inc., 492 U.S. at 236-39); Azrielli v. Cohen Law Offices, 21 F.3d 512, 520 (2d Cir.1994).

While this definition of "pattern of racketeering activity" suggests that only two predicate acts are necessary, such acts may not be sufficient. United States v. Indelicato, 865 F.2d 1370, 1375 (2d Cir.1989). Rather, "the requirements of relatedness and continuity prevent the application of RICO to isolated and sporadic criminal acts." Diaz, 176 F.3d at 93 (citing Indelicato, 865 F.2d at 1375-76). Thus, two isolated and separate acts of racketeering are not sufficient to constitute a "pattern." Indelicato, 865 F.2d at 1375-76; see also H.J. Inc., 492 U.S. at 239. "The target of [RICO] is ... not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective." Indelicato, 865 F.2d at 1376 (citing S.Rep. No. 91-617, at 158 (1969)). As a result, a plaintiff must show that the racketeering predicates are "related" and amount to or pose a threat of "continuous" criminal activity. See H.J., Inc., 492 U.S. at 239-40; GICC Capital Corp. v. Technology Finance Group, Inc., 67 F.3d 463, 465-66 (2d Cir.1995), cert. denied, 518 U.S. 1017 (1996).

(1) Relatedness

For purposes of RICO, predicate acts are deemed "related" when they " 'have the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." ' Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 97 (2d Cir.1997) (quoting H.J., Inc., 492 U.S. at 240). Defendants do not challenge whether the racketeering predicates are related; rather, they attack the sufficiency of allegations regarding the continuity necessary to establish a pattern of racketeering.

(2) Continuity

"Continuity" may be either "closed-ended" or "open-ended," referring either to "a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." H.J., Inc., 492 U.S. at 241-42; Diaz, 176 F.3d at 93; Feirstein v. Nanbar Realty Corp., 963 F.Supp. 254-59 (S.D.N.Y.1997).

(a) Closed-Ended Continuity

A plaintiff may demonstrate closed-ended continuity by proving "a series of related predicates extending over a substantial period of time." H.J., Inc., 492 U.S. at 242; see also Cofacredit, S .A. v. Windsor Plumbing Supply Co., Inc., No. 96-9302, 1999 WL 565607 (2d Cir. Aug. 3, 1999); GICC Capital Corp. v. Technology Finance Group, Inc., 67 F.3d 463, 466 (2d Cir.1995). Where the predicate acts alleged are not inherently unlawful acts, such as murder or obstruction of justice, courts normally require a longer span of time to satisfy the continuity requirement. See, e.g., Renner v. Chase Manhattan Bank, No. 98 Civ. 0926, 1999 WL 47239, at *9 (S.D.N.Y. Feb. 3, 1999); see also Skylon Corp. v. Guilford Mills, Inc., No. 93 Civ. 5581, 1997 WL 88894, at * 5 (S.D.N.Y. Mar. 3, 1997).

***12** The Second Circuit has found closed-ended continuity in only two cases since the Supreme Court's decision in H.J., Inc., and in both cases, the alleged racketeering predicate acts extended over at least two years to constitute a "substantial period of time." See GICC Capital Corp., 67 F.3d at 467-68 (citing Metromedia Co. v. Fugazy, 983 F.2d 350, 369 (2d Cir.1992), cert. denied sub nom. Fugazy v. Metromedia Co., 508 U.S. 952 (1993); Jacobson v. Cooper, 882 F.2d 717, 720 (2d Cir.1989). Although there is no "bright line test" to determine what is a "substantial period of time," the Second Circuit "has never held a period of less than two years to constitute a 'substantial period of time.' " Cofacredit, S.A., 1999 WL 565607; see also GICC Capital Corp., 67 F.3d at 467; Schmidt v. Fleet Bank, 16 F.Supp.2d 340, 351 (S.D.N.Y.1998) (determining that H.J., Inc. implied a two-year threshold).

A scheme's duration alone, however, is not dispositive. See Pier Connection Inc. v. Lakhani,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



907 F.Supp. 72, 78 (S.D.N.Y.1995) In determining whether close-ended continuity exists, courts have considered other factors, including "the length of time over which the alleged predicate acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes." GICC Capital Corp., 67 F.3d at 467-68; see also Renner, 1999 WL 47239, at *8; Schnell v. Conseco, Inc., 43 F.Supp.2d 438, 445 (S.D.N.Y.1999). A RICO claim will typically fail when it relies upon a defendant's "narrowly directed" actions toward "a single fraudulent end with a limited goal" lasting for a short period of time. Continental Realty Corp. v. J.C. Penney Co., 729 F.Supp. 1452, 1455 (S.D.N.Y.1990).

Here, Casio argues that it has sufficiently pled closed-ended continuity to form the basis of its RICO claim. Casio alleges multiple defendants committed predicate acts as part of a complex scheme to defraud the company, beginning at least in February 1997 and extending beyond sixteen months. Defendants assert that plaintiff has insufficiently alleged closed-ended continuity.

Casio's characterization of the fraud does not withstand analysis. Casio's theory amounts to nothing more than "fragmenting [single acts] into multiple acts simply to invoke RICO." Schlaifer Nance, 119 F.3d at 98 (citing Indelicato, 865 F.2d at 1383). In examining the other relevant factors, the Court finds that the instant case involves an alleged single scheme with a single fraudulent goal of diverting funds from one victim, the plaintiff. Further, this alleged scheme was accomplished mainly by one or two individuals, with the aid of a "handful of participants" for sixteen months before such scheme was discovered by plaintiff. The transfer of Casio funds cannot be called a "multi-faceted scheme" where it involved only a limited number of participants and independent transactions occurring for less than two years. See GICC Capital Corp., 67 F.3d at 466-69. Sayo was allegedly a key participant, with the assistance of Hasegawa, in all three independent misappropriations of funds belonging to Casio. Tsuru, however, was allegedly involved only in the first act of misappropriation, which lasted for a few months. CCC, Marlowe and Wolpow allegedly had no contact with Tsuru or Casio funds until about May or June of 1997. Am. Compl. at ¶¶ 35(d), (h), 37, 38. Further, these defendants as well as others took no further action and were not involved in the purported enterprise after December 1997. Id. at ¶ 48. Therefore, CCC, Marlowe and Wolpow allegedly were involved in the fraudulent scheme for less than seven months. A scheme which spans sixteen months does not reflect the long-term criminal conduct extending over "a substantial period of time" as prohibited by the RICO statute. Moreover, this case appears to involve only one victim and two principal actors. The Court concludes that there was no closed-ended pattern of racketeering activity.

(b) Open-Ended Continuity

***13** To establish open-ended continuity, a plaintiff must allege past criminal conduct coupled with a threat of future criminal conduct. GICC Capital Corp., 67 F.3d at 466. In determining whether a threat of open-ended continuity exists, the court must look at either (1) "the nature of the predicate acts alleged" or (2) "the nature of the enterprise at whose behest the predicate acts were performed." Id.; see also Schlaifer Nance, 119 F.3d at 97. If the nature of conduct or the enterprise alone does not suggest that the racketeering activity will continue, courts must look to external factors. GICC Capital Corp., 67 F.3d at 466.

To show that open-ended continuity exists, a plaintiff must allege that "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future" or "that the predicates are a regular way of conducting defendant's ongoing legitimate business." Pier Connection, 907 F.Supp. at 75-76 (quoting H.J. Inc., 492 U.S. at 242-43); Giannacopolous v. Credit Suisse, 965 F.Supp. 549, 552 (S.D.N.Y.1997); Rini v. Zwirn, 886 F.Supp. 270, 300 (S.D.N.Y.1995). In addition, where the alleged scheme has a limited goal and is "inherently terminable," there is no open-ended continuity because no threat of continued racketeering activity exists. Cofacredit, S.A., 1999 WL 565607; China Trust Bank of New York v. Standard Chartered Bank, PLC, 981 F.Supp. 282, 287 (S.D.N.Y.1997); Giannacopolous, 965 F.Supp. at 552.

In the case at bar, Casio claims that it has sufficiently established open-ended continuity to satisfy the "pattern of racketeering activity"

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



requirement under RICO. Casio argues that it would have been continuously victimized had it not uncovered the fraudulent scheme during its audit. Casio Opp. Mem. at 16. Casio further claims that the fraud continues since approximately fifty million dollars remains missing and the whereabouts of several defendants are unknown. Id. at 17. Defendants contend that there are no sufficient allegations of open-ended continuity.

The Court finds plaintiff's arguments unpersuasive. Casio's claim of open-ended continuity fails because Casio has pled no facts to demonstrate a threat that defendants' racketeering acts will continue in the future. Casio has also provided no facts to allow the Court to infer that defendants committed anything other than a single fraudulent scheme. Even if considered separately, the three fraudulent misappropriations alleged are each one-time inducements of a single victim to part with money. The Court finds that the facts alleged demonstrate but one scheme to defraud plaintiff. "[T]o infer a threat of repeated fraud from a single alleged scheme would ... render the pattern requirement meaningless." Bernstein v. Misk, 948 F.Supp. 228, 237 (E.D.N.Y.1997) (quoting Continental Realty Corp., 729 F.Supp. at 1455).

Further, the alleged scheme here had a limited goal and was inherently terminable. When Sayo was employed by Casio, he could only obtain funds for investment purposes with Casio's authority, and he would have to request the funds. Once Sayo's position was terminated, he no longer had access to Casio's funds, and had no means of continuing the alleged predicate acts. He could not conceal for long his alleged fraudulent goal of diverting the company's funds. Therefore, the alleged criminal scheme was inherently terminable and could not continue indefinitely. Casio concedes that terminating Sayo's position also ended defendants' misappropriation of its funds. Therefore, Casio's claim of open-ended continuity fails.

***14** For the reasons stated above, Casio can establish neither open-ended nor close-ended continuity in this case. Thus, plaintiff has not sufficiently pled the "pattern of racketeering activity" requirement to sustain its RICO claim.

b. Sufficiency of the Predicate Act Allegations

To state a civil RICO claim, Casio must allege that each defendant committed at least two or more racketeering predicate acts, as defined by 18 U.S.C. § 1961(1). Casio asserts that defendants committed predicate acts of wire fraud, in violation of 18 U.S.C. §§ 1343, money laundering, in violation of 18 U.S.C. § 2314, and interstate transportation of stolen money, in violation of 18 U.S.C. § 1956. [FN18] Am. Compl. at ¶¶ 71, 81-82.

FN18. In the Third Amended Complaint, Casio mentions that document and deposition discovery will reveal "multiple instances of mail fraud in violation of 18 U.S.C. § 1341." Am. Compl. at ¶ 71(d). However, mail fraud is not included as one of the predicate acts alleged by Casio in its first claim for relief for violation of RICO. Id. at ¶¶ 81-84.

(1) Mail and Wire Fraud

Where the alleged predicate acts involve mail and wire fraud, the allegations must satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure. McLaughlin v. Anderson, 962 F.2d 187, 191 (2d Cir.1992); see also Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir.1989); Schnell, 43 F.Supp.2d at 443; Lorentzen v. Curtis, 18 F.Supp.2d 322, 330 (S.D.N.Y.1998). Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." To state a predicate mail and wire fraud claim under RICO, the complaint "must allege that the defendant made two predicate communications, via interstate commerce, that constitute a pattern of racketeering activity." Sedima, S.P.L.R. v. Imrex Co., 473 U.S. 479, 495-96 (1985).

Accordingly, to specify fraud with particularity, and similar to allegations of securities fraud, allegations of mail and wire fraud predicate acts "should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent." Id. (citing Official Publications, Inc. v. Kable News Co., Inc., 692 F.Supp. 239, 245 (S.D.N.Y.1988), aff'd in part, rev'd in part on other grounds, 884 F.2d 664 (2d Cir.1989); see also IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1057 (2d Cir.1993),

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



cert. denied sub nom. Hermann v. IUE AFL-CIO Pension Fund, 513 U.S. 822 (1994) (citing Ouaknine v.. MacFarlane, 897 F.2d 75, 79 (2d Cir.1990)) (plaintiff must provide specific factual evidence of the content, time, place, and speaker of each alleged mailing or wire transmission); A. Terzi Productions, Inc. v. Theatrical Protective Union, 2 F.Supp.2d 485, 499 (S.D.N.Y.1998) ("the complaint must adequately specify statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.") (quoting McLaughlin, 962 F.2d at 191). If an act of fraud is not sufficiently pled with particularity, then it may not serve as a predicate act to a RICO claim. See Thai Airways Int'l, Ltd. v. United Aviation Leasing B.V., 891 F.Supp. 113, 118 (S.D.N.Y.1994), aff'd, 59 F.3d 20 (2d Cir.1995).

***15** Allegations of mail and wire fraud must demonstrate (1) the existence of a scheme to defraud; (2) defendant's knowledge or intentional participation in such a scheme; and (3) the use of interstate mails or wires to further the fraudulent scheme. See S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir.1996) (citing United States v. Gelb, 700 F.2d 875, 879 (2d Cir.), cert. denied, 464 U.S. 853 (1983); see also United States v. Wallach, 935 F.2d 445, 461 (2d Cir.1991), cert. denied, Wallach v. United States, 508 U.S. 939 (1993); A. Terzi Productions, Inc., 2 F.Supp.2d at 499. The complaint must therefore allege the existence of a fraudulent scheme with the requisite particularity under Rule 9(b) or the allegations will not survive a motion to dismiss. A. Terzi Productions, Inc., 2 F.Supp.2d at 489; see also Morin v. Trupin, 711 F.Supp. 97, 105 (S.D.N.Y.1989) (citing River Plate Reinsurance Company, Ltd. v. Jay-Mar Group., Ltd., 588 F.Supp. 23, 27 (S.D.N.Y.1984)). " 'All of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions.' " Id. (quoting Plount v. American Home Assurance Co ., Inc., 668 F.Supp. 204, 206 (S.D.N.Y.1987)).

In addition, where multiple defendants are charged with fraud, the complaint must particularize each defendant's alleged participation in the fraud. See A. Terzi Productions, Inc., 2 F.Supp.2d at 499 (citing DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir.1987)). Plaintiff must draw connections between the various defendants and the alleged acts of mail or wire fraud. See Connolly v. Havens, 763 F.Supp. 6, 13 (S.D.N.Y.1991) (citing McCoy v. Goldberg, 748 F.Supp. 146, 156 (S.D.N.Y.1990)). Plaintiff must also identify the role of the communications in furthering defendants' alleged fraudulent scheme. See McLaughlin, 962 F.2d at 191. As a result, the allegations must give notice to each defendant of its alleged misconduct. In re Blech Sec. Litig., 928 F.Supp. 1279, 1292-93 (citing Red Ball Interior Demolition Corp. v. Palmadessa, 874 F.Supp. 576, 584 (S.D.N.Y.1995)). Conclusory allegations of wrongdoing fail to satisfy the requirements set forth by Rule 9(b). Red Ball Interior Demolition Corp., 874 F.Supp. at 584.

While Casio alleges a scheme to defraud by defendants, the allegations barely demonstrate the existence of such a scheme. The allegations fail to plead a wire fraud scheme by defendants with the specificity and particularity required by Rule 9(b). Moreover, the Third Amended Complaint simply fails to provide factual evidence of defendants' knowledge or intentional participation in such a scheme, or that defendants utilized interstate wires to further the alleged fraudulent scheme.

Moreover, with the exception of defendant Sayo, the Third Amended Complaint provides no factual support to give rise to a "strong inference" of defendants' fraudulent intent. See Mills v. Polar Molecular Corp., 12 F.2d 1170, 1176 (2d Cir.1993); see also Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir.1990) (quoting Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46, 50 (2d Cir.1987), cert. denied, 484 U.S. 1005 (1988)). To establish a strong inference of scienter, a plaintiff must allege facts showing that defendants had both a motive and a clear opportunity to commit fraud. Shields v. City Trust Bancorp., 25 F.3d 1124, 1128 (2d Cir.1994). Where motive is absent, a plaintiff should allege "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id.

***16** Except for Sayo, the Third Amended Complaint is deficient in failing to allege (1) actual knowledge by defendants as well as (2) plaintiff's reliance on alleged misrepresentations made by

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



defendants. Casio also does not provide factual support to demonstrate how each wire transfer advanced the scheme to defraud. Conclusory allegations that defendants' conduct was fraudulent are inadequate to satisfy the particularity of fraud required by Rule 9(b).

Casio's allegations of wire fraud fail for lack of specificity. Except for Sayo, who purportedly falsified documents and misrepresented facts to mislead Casio, the Third Amended Complaint does not allege wire fraud with the particularity as to each defendant required by Rule 9(b). Because the Third Amended Complaint fails to state a claim under the wire fraud statute, Casio should be barred from pleading wire fraud as a predicate act in connection with the RICO claim.

(2) Money Laundering

Casio also contends that defendants engaged in the predicate act of money laundering. See 18 U.S.C. §§ 1961(1), 1956(a)(1)(B)(i). 18 U.S.C. § 1956(a)(1)(B)(i) provides, in pertinent part,

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--knowing that the transaction is designed in whole or in part--to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity ... shall be sentenced to a fine ... or imprisonment ... [for the laundering of monetary instruments].

To state a proper claim of money laundering, plaintiff must plead that (1) the defendant conducted a financial transaction in interstate commerce; (2) the defendant knew that the property involved in the transaction represented some form of specific unlawful conduct; (3) the transaction involves the proceeds of unlawful activity; and (4) the transaction was conducted with the purpose of concealing the nature, location, source, ownership, or the control of the illegally acquired proceeds. See Bernstein, 948 F.Supp. at 236 n.2 (citing United States v. Campbell, 777 F.Supp. 1259, 1263 (W.D.N.C.1991), aff'd in part and rev'd in part, 977 F.2d 854 (4th Cir.1992), cert. denied, 507 U.S. 938 (1993)).

Money laundering allegations that are not premised on fraud are pled under the less stringent requirements of Rule 8(a) of the Federal Rules of Civil Procedure. Madanes, 981 F.Supp. at 253 (citing Ray v. General Motors Acceptance Corp., No. 92-5043, 1995 WL 151852, at *5 (E.D.N.Y. Mar. 28, 1995); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young, No. 91 Civ. 2923, 1994 WL 88129, at *7 (S.D.N.Y.1994). While a plaintiff need not allege money laundering with great particularity, plaintiff must plead all elements of the offense. See Bernstein, 948 F.Supp. at 236 n.2.

***17** Casio asserts that it has sufficiently pled the money laundering claim according to the standard set forth by Rule 8(a)(2). Casio Opp. Mem. at 34-38. The Court disagrees. Casio has not properly pled its allegations of money laundering as to each defendant. The Third Amended Complaint merely asserts that defendants knowingly schemed to launder funds by engaging in a pattern of wire transfers to conceal the location and true owner of the missing funds. See Am. Compl. at ¶¶ 37(c), 38, 71(c), 81(c), 84.

Generally, a plaintiff must allege that a defendant knowingly utilized the proceeds of unlawful activity while conducting a transaction. Here, there were no such allegations or factual support to indicate that defendants knowingly conducted any financial transaction involving the proceeds of unlawful activity. The Third Amended Complaint simply alleges that defendants, particularly Sayo, deposited and transferred Casio funds entrusted to Sayo for the purpose of investment. Casio authorized the transfer of its funds to Sayo on all three occasions of alleged criminal conduct. Thus, there can be no transportation of stolen money if Sayo rightfully acquired the proceeds or funds belonging to Casio for investment purposes. As such, the proceeds are not the result of a form of unlawful activity.

The Third Amended Complaint does not sufficiently allege that other defendants knew they were transporting or concealing illegal funds. Most of the defendants contend that they were opening bank accounts and/or investing funds on behalf of Casio, and it does appear that defendants were using funds to invest on behalf of Casio.

In addition, while Casio need not plead money laundering with particularity, it still must allege all

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



significant elements of the offense. Casio has failed to do so. Although the Third Amended Complaint claims that defendants conducted a financial transaction in interstate commerce, there is no factual support to show that defendants (with the possible exception of Sayo) knew that the money involved in the transaction represented a form of specific unlawful conduct, or that the transaction involved the proceeds of unlawful activity. Further, Casio's sweeping allegations only provide conclusory statements that defendants' transactions were conducted with the purpose of concealing "the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity ...." Id. at ¶ 81(c).

Because Casio fails to plead money laundering with sufficient particularity to withstand defendants' motions to dismiss, it cannot allege money laundering as a predicate act for its RICO claim.

Even if the Court were to find that Casio adequately pled the elements of money laundering as a predicate act, Casio has still failed to show that each defendant committed at least two predicate acts to sustain its claim of an existing "pattern of racketeering" under RICO.

(3) Transportation of Stolen Monies in Interstate or Foreign Commerce

***18** Finally, Casio argues that defendants violated 18 U.S.C. § 2314, which provides, in relevant part, that:

> Whoever transports [...] in interstate or foreign commerce any [...] money, of the value of $5000 or more, knowing the same to have been stolen, converted or taken by fraud [...] shall be fined under this title or imprisoned not more than ten years, or both.

Where a violation of Section 2314 is pleaded as a predicate act in a RICO claim, those elements which involve fraud must be pleaded with particularity. Thai Airways Int'l, Ltd., 891 F.Supp. at 118 (citing Attick v. Valeria Assoc., L.P., 835 F.Supp. 103, 113 (S.D.N.Y.1992)); see also Beverly Hills Design Studio, Inc. v. Morris, No. 88 Civ. 5886, 1989 WL 85867, at *6 (S.D.N.Y. July 26, 1989) (although Section 2314 does not require a showing of fraud, Rule 9(b) applies because plaintiff's purported crime was committed through a 'scheme to defraud." ').

Casio claims that defendants committed the predicate act of transportation of stolen monies in interstate and foreign commerce by transporting, transmitting and transferring via wire monies, with the knowledge that such monies had been stolen, converted or taken by fraud. Am. Compl. at ¶ 81(a).

Casio's claim involving § 2314 alleges that defendants took the money through fraudulent actions. Id. at ¶¶ 71, 81. Because this alleged predicate act sounds in fraud, the claim should be subject to the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Here, the funds transferred clearly belonged to Casio. However, Casio authorized Sayo to use the funds for investment purposes, and defendants claim that they were receiving instructions and investing funds on behalf of Casio.

With the exception of Sayo, Casio has failed to particularize its claim under 18 U.S.C. § 2314 as to the defendants. In addition, the factual allegations do not give rise to an inference of scienter on behalf of defendants. Plaintiff's pleading must meet the specificity required by Rule 9(b). The Complaint fails in this regard.

c. Causal Connection Between Injury and Predicate Acts

Casio argues that but for defendants' alleged fraudulent conduct, Casio would not have lost approximately one hundred million dollars. Casio Opp. Mem. to Tsuru and Wolpow, at 15. [FN19] "Any person injured in his business or property by reason of a violation of section 1962" can recover treble damages as well as costs of the action and reasonable attorney's fees. 18 U.S.C. § 1964(c) (emphasis added ). To prove the requisite causal connection between the alleged criminal conduct and the plaintiff's injury, the plaintiff must show not only that the alleged RICO violation was the "but-for cause or the cause-in-fact of [plaintiff's] injury, but also that the violation was the legal or proximate cause." Powers v. British Vita, P.L.C., 57 F.3d 176, 189 (2d Cir.1995) (quoting First Nationwide, 27 F.2d at 769) (citing Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 264-68 (1992)). "Even if the plaintiff's injuries are factually caused by defendant's alleged RICO violations, they must be a foreseeable natural consequence sufficient

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



for proximate causation for the imposition of liability." Curatola v. Ruvolo, 949 F.Supp. 223, 225 (S.D.N.Y.1997) (citing Hecht v. Commerce Clearing House, 897 F.2d 21, 24 (2d Cir.1990)).

FN19. "Casio Opp. Mem. to Tsuru and Wolpow" refers to Casio's memorandum of law in opposition to motions to dismiss by defendants Tsuru and Wolpow, with accompanying declaration, dated November 6, 1998.

***19** In the present case, plaintiff alleges that defendants, particularly Sayo, fraudulently transferred a substantial amount of corporate funds, through the use of wire communications. Am. Compl. at ¶¶ 71-84. Plaintiff also alleges that Sayo and other defendants attempted to falsify records and misrepresent the transactions of Casio's funds. Id. at ¶¶ 25, 64-65, 68, 80.

After reviewing the record, the Court concludes that Casio has not established a sufficient link to show that its losses were caused "by reason" of defendants' alleged predicate acts in violation of RICO. Casio relies on conclusory allegations that it would not have incurred such losses but for defendants' fraudulent acts. However, only Sayo has made alleged misrepresentations to Casio. Therefore, Casio could not have relied upon any statements made by the other defendants.

Casio alleges that defendants' conduct was the "but-for cause" or the "cause-in-fact" of its injury. This allegation alone is not determinative. Casio must also demonstrate that the conduct was the legal or proximate cause of the injury. If the plaintiff's injuries are factually caused by defendant's alleged RICO violations, they must be "a foreseeable natural consequence sufficient for proximate causation" to impose liability. The Third Amended Complaint is deficient in pleading the requisite causal nexus between plaintiff's injury and the alleged criminal conduct. In citing Hecht, Casio merely claims that the RICO pattern or act may be deemed to have caused plaintiff's civil injury if it is a substantial factor in the chain of causation. Casio Opp. Mem. to Tsuru and Wolpow, at 15. Casio also simply states that but for defendants' fraudulent activity, Casio would not have incurred its losses. As a result, Casio has failed to demonstrate the causal nexus required; thus, the alleged acts cannot constitute the "cause" of losses suffered by Casio.

In sum, plaintiff has failed to sufficiently allege the predicate acts necessary to constitute a "pattern of racketeering activity" under RICO. Therefore, its RICO claim cannot stand.

d. The "Enterprise" Element of RICO

Casio alleges that it has properly pled the "enterprise" element in that defendants Sayo and Hasegawa formed the RICO enterprise by constituting an association-in-fact under the definition of a RICO enterprise. See Casio Opp. Mem. at 27-32; Am. Compl. at ¶ 78. The term "enterprise" is defined in the RICO statute as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4) (emphasis added ). In pleading the element of "enterprise" under RICO, a plaintiff need satisfy only the notice pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure. See In Re Sumitomo Copper Litigation, 995 F.Supp. 451, 454 (S.D.N.Y.1998); see also Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc., 886 F.Supp. 1134, 1144-45 (S.D.N.Y.1995).

***20** The Supreme Court held that an "enterprise" represented a "group of persons associated together for a common purpose or engaging in a common course of conduct ... proved by evidence of an ongoing organization, formal or informal, and by any evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583 (1981). "The enterprise is not the 'pattern of racketeering;' it is an entity separate and apart from the pattern of activity in which it engages." Id. at 583; see also Schmidt, 16 F.Supp.2d at 348; Moll v. U.S. Life Title Ins. Co. of N.Y., 654 F.Supp. 1012, 1031-32 (S.D.N.Y.1987) (for an association of individuals to constitute an enterprise, the individuals must "share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes.") As a result, for purposes of 1962(c), the alleged racketeering enterprise must be distinct from the persons who participate in it. Bernstein, 948 F.Supp. at 235 (citing Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir.1994)).

In Schmidt, the plaintiff alleged the RICO

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



enterprise to be an association-in-fact, rather than a legal entity. 16 F.Supp.2d at 349. "The existence of an association-in-fact is oftentimes more readily proven by 'what it does, rather than by abstract analysis of its structure." ' Schmidt, 16 F.Supp.2d at 349 (quoting United States v. Coonan, 938 F.2d 1553, 1559 (2d Cir.1991)).

Similarly, Casio alleges that Sayo and Hasegawa formed an association-in-fact, but provides only conclusory allegations as to the other defendants and their participation in the affairs of the alleged enterprise. Am. Compl. at ¶¶ 78-79; see also Casio Opp. Mem. to Tsuru and Wolpow, at 6. No facts in the Third Amended Complaint sufficiently plead that the group of individuals here functioned as a "unit." Schmidt, 16 F.Supp.2d at 349 ("in determining whether the members of a purported association-in-fact functioned as a unit, the Second Circuit looks to the 'hierarchy, organization, and activities' of the association.") (quoting First Nationwide Bank, 820 F.Supp. at 98.

Moreover, the Third Amended Complaint also fails to allege sufficient facts to demonstrate an enterprise which exists as a continuous structure separate and distinct from the commission of the predicate acts alleged. Schmidt, 16 F.Supp.2d at 350. In this case, there is insufficient evidence to demonstrate an organized group with a chain of command directing the enterprise's actions on a continuing basis beyond the alleged fraudulent scheme. See Ray v. Gen. Motors Acceptance Corp., 1995 WL 151852, at *3 (S.D.N.Y. Mar. 28, 1995). Although the Third Amended Complaint describes the roles allegedly played by various defendants, or members of the enterprise, it fails to explain the members' coordinated roles in the enterprise or the interrelationship of the members' actions.

***21** Thus, there is insufficient evidence to prove that the enterprise in this case would still exist if the "predicate acts [were] removed from the equation." Bernstein, 948 F.Supp. at 235; First Nationwide, 820 F.Supp. at 28. In short, the enterprise in this case would likely not have existed were the predicate acts removed from the equation. Therefore, the plaintiff has failed to establish the existence of a RICO enterprise among all defendants.

e. Operation or Management of the Enterprise and/or Participation

Under Section 1962(c), it is unlawful "for any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...." Reves v. Ernst & Young, 507 U.S. 170, 177 (1993). To "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have played a part in directing those affairs. [FN20] Id. at 179. As a result, a party is not liable under 18 U.S.C. § 1962(c) unless such party participated "in the operation or management of the enterprise itself." Id. at 185. "As interpreted by courts in this district and others, the 'operation and management' test set forth in Reves ... is a very difficult test to satisfy." LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co., 951 F.Supp. 1071, 1090 (S.D.N.Y.1996). The ruling in Reves spares from RICO liability those who are true "outsiders" of an alleged enterprise. See Dep't of Econ. Dev. v. Arthur Andersen & Co., 924 F.Supp. 449, 465 (S.D.N.Y.1996); Amalgamated Bank of New York v. Marsh, 823 F.Supp. 209, 219-20 (S.D.N.Y.1993); Morin v. Trupin, 832 F.Supp. 93, 98 (S.D.N.Y.1993).

FN20. The Reves Court also stated that "the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs ... [and that] "liability under § 1962(c) is not limited to upper management ...." 507 U.S. at 179, 184; see also United States v. Miller, 116 F.3d 641, 671 (2d Cir.1997), cert. denied, Miller v.. U.S. 118 S.Ct. 2063, and cert. denied, Arroyo v. United States, 118 S.Ct. 2063.

In this Circuit, the "simple taking of directions and performance of tasks that are 'necessary and helpful' to the enterprise, without more, is insufficient to bring a defendant within the scope of § 1962(c)." United States v. Viola, 35 F.3d 37, 41 (2d Cir.1994). There is a great difference between having actual control over an enterprise and associating with an enterprise in ways that do not involve control. The former would result in liability under Section 1962(c); the latter would not. Dep't of Econ. Dev., 924 F.Supp. at 466 ("providing important services to a racketeering enterprise is not the same as directing the affairs of an enterprise."); see also Friedman v. Hartmann, No. 91 Civ. 1523,

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



1996 WL 457300, at 5 (S.D.N.Y. Aug. 13, 1996) (citing Biofeedtrac, Inc. v. Kolinor Optical Enterprises & Consultants, S.R.L., 832 F.Supp. 585, 591 (E.D.N.Y.1993) (dismissing RICO claim against an attorney whose role was limited to providing legal advice and services and whose substantial involvement did not constitute "operation and management.").

Thus, "[s]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result." LaSalle Nat'l Bank, 951 F.Supp. at 1090 (quoting University of Md. v. Peat, Marwick, Main & Co., 996 F.2d 1534, 1539 (3d Cir.1993); see also Morin v. Trupin, 835 F.Supp. 126, 135 (S.D.N.Y.1993).

***22** With the exception of Sayo, the Third Amended Complaint fails to allege that defendants were in charge of decision-making for the enterprise or that they directed the affairs of the enterprise. The allegations indicate that most of the defendants merely received orders to invest Casio funds on behalf of the company or assisted defendant Sayo in investing funds entrusted to him by Casio. Moreover, certain defendants opened and handled accounts in the name of Casio and transferred funds received by them as Casio's money. Accordingly, the Court finds that no allegations sufficient to conclude that defendants (except Sayo) played any role in directing the affairs of the purported enterprise.

In conclusion, Casio has failed to sufficiently allege the necessary elements of a RICO claim under Section 1962(c).

2. Motion to Dismiss under Section 1962(d)--RICO Conspiracy

Casio relies on the same factual allegations that form the basis for its Section 1962(c) claim for its assertion of a RICO conspiracy claim under Section 1962(d). Am. Compl. at ¶¶ 86-93. In its second claim for relief, Casio argues that defendants have violated Section 1962(d) by conspiring to violate Section 1962(c). Id.

"[T]he core of a RICO civil conspiracy is an agreement to commit predicate acts" in violation of 18 U.S.C. § 1962(a), [FN21] (b), [FN22] or (c). Hecht, 897 F.2d at 25. "[T]he commission of the acts is distinct from an agreement to commit them, and a violation of § 1962(d) requires different proof from a violation of § 1962(c)." American Arbitration Ass'n, Inc. v. DeFonseca, No. 93 Civ. 2424, 1996 WL 363128, at *7 (S.D.N.Y. June 28, 1996); United States v. Bonanno, 683 F.Supp. 1411, 1440 (S.D.N.Y.1988), aff'd, 879 F.2d 20 (2d Cir.1989). Therefore, the complaint must allege a conscious agreement among all defendants to commit at least two predicate acts. Bonanno, 683 F.Supp. at 1440; see also Black Radio Network, Inc. v. NYNEX, Corp., 44 F.Supp.2d 565, 581 (S.D.N.Y.1999) (citing Hecht, 897 F.2d at 25); Naso v. Park, 850 F.Supp. 264, 275 (S.D.N.Y.1994). Conclusory allegations of agreement are insufficient. See, e.g., Morin, 711 F.Supp. at 111; Black Radio Network, Inc., 44 F.Supp.2d at 581.

FN21. Section 1962(a) makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity [...] to use or invest [...] such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in [...] interstate or foreign commerce." 18 U.S.C. § 1962(a).

FN22. Section 1962(b) makes it "unlawful for any person through a pattern of racketeering activity [...] to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b).

The Third Amended Complaint at bar does not make specific factual allegations required for the Court to conclude that defendants consciously agreed to become part of a RICO conspiracy and commit the necessary predicate acts of racketeering. Casio fails to provide factual support to show that defendants committed the predicate acts with the requisite knowledge of the purpose of the enterprise and with the intent to further its alleged goals. See Naso, 850 F.Supp. at 275. The facts asserted do not indicate that defendants "manifested a conscious agreement to commit predicate acts in furtherance of the common purpose of the RICO enterprise," American Arbitration Ass'n, Inc., 1996 WL 363128, at *7, or "understood the scope of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



enterprise ...." Morin, 711 F.Supp. at 111.

***23** Moreover, the Third Amended Complaint only sets forth conclusory allegations of conspiracy among defendants without pleading facts sufficient to support such allegations. The purported activities of defendants do not necessarily lead to the existence of an agreement to conspire, and the allegations do not explain the nature of the relationship between Sayo and the moving defendants (except for Hasegawa), nor how and under what conditions Sayo went about enlisting defendants' assistance. Casio fails to allege adequate facts to bolster its conspiracy claim, and does not plead the facts necessary to indicate that defendants, by their words or actions, had a conscious agreement to commit predicate acts in furtherance of the common goal of the enterprise. For these reasons, I find that the Third Amended Complaint fails to state a RICO conspiracy claim under Section 1962(d) against the moving defendants.

Further, because the Court finds that Casio's substantive RICO claim is deficient, the conspiracy claim must also fail. Black Radio Network, Inc., 44 F.Supp.2d at 581; McCormack Int'l Corp. v. Vohra, 858 F.Supp. 415, 423 (S.D.N.Y.1994); Schmidt, 16 F.Supp.2d at 353. Where no cause of action for substantive violations of RICO is stated, the RICO conspiracy claim cannot stand because it will not constitute a conspiracy to commit such violations. Black Radio Network, Inc., 44 F.Supp.2d at 581.

Accordingly, the RICO conspiracy claim should be DISMISSED.

D. LACK OF PERSONAL JURISDICTION, INSUFFICIENCY OF PROCESS and/or SERVICE OF PROCESS

Defendants Hasegawa, Tsuru, CCC, Marlowe, and Wolpow move to dismiss the Complaint for lack of personal jurisdiction, insufficient process and/or service of process.

1. Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) and the RICO Statute

A plaintiff must affirmatively make a prima facie showing, by its pleadings and affidavits, to support a basis of personal jurisdiction over a defendant. See Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir.), cert. denied, 498 U.S. 854 (1990); see also A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76 (2d Cir.1993). In a Rule 12(b)(2) motion, plaintiff's factual allegations are assumed to be true, and all pleadings and affidavits are construed in favor of the plaintiff. North South Finance Corp. v. Al-Turki, No. 93 Civ. 2133, 1996 WL 50526, at *5 (S.D.N.Y. Feb. 8, 1996) (citing CutCo Indus. v. Naughton, 806 F.2d 361, 365 (2d Cir.1986)). Service of a summons is effective to establish jurisdiction over a defendant when authorized by a statute of the United States. Rule 4(k)(1)(D), Fed.R.Civ.P. The RICO statute confers personal jurisdiction by Section 1965(a)--(d), which authorizes nationwide service of process, but does not provide for service concerning foreign defendants. Biofeedtrac, Inc. v. Kolinor Optical Enterprises & Consultants, S.R.L., 817 F.Supp. 326, 331-32 (E.D.N.Y.1993).

***24** Section 1965 provides, in relevant part,

> (a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.
>
> (b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by marshal thereof.
>
> (c) In any civil... action... instituted ... under this chapter in the district court of the United States for any judicial district, subpoenas issued by such court to compel the attendance of witnesses may be served in any other judicial district....
>
> (d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

18 U.S.C. § 1965(a)-(d) (emphasis added ).

This Circuit has concluded that Section 1965(b), and not Section 1965(d), governs the court's exercise of personal jurisdiction under RICO. PT United Can Co., Ltd. v. Crown Cork & Seal Co., Inc., 138 F.3d 65, 70 (2d Cir.1998). Section 1965(b) permits a district court to exercise

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



nationwide jurisdiction over a defendant, not automatically, but only when "the ends of justice so require." Id. at 71. Nationwide service is appropriate "only when no one judicial district could exercise personal jurisdiction over all of the defendants and thus, without such exercise of jurisdiction, all of the members of a nationwide RICO conspiracy could not be tried in one action." PT United Can Co., Ltd. v. Crown Cork & Seal Co., Inc., No. 96 Civ. 3669, 1997 WL 31194, at *3 (S.D.N.Y. Jan. 28, 1997), aff'd, 138 F.3d 65 (1998). While it may be necessary to prosecute a civil RICO action in a court "foreign" to some defendants if necessary, the "first preference ... is to bring the action where suits are normally expected to be brought." PT United Can Co., Ltd., 138 F.3d at 71-72.

To satisfy due process requirements for personal jurisdiction, a defendant must have had "minimum contacts" with the forum state. See International Shoe v. Washington, 326 U.S. 310, 316 (1945). Under the "minimum contacts" test, there must have been sufficient contacts such that defendants would have availed themselves of the privileges arising therein, Hanson v. Denckla, 357 U.S. 235, 253 (1958), and that the exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." Milliken v. Meyer, 311 U.S. 457, 462-64 (1940). However, under RICO, where nationwide service of process is authorized, due process requirements are satisfied if defendants' contacts with the United States, and not just the forum state, satisfy the "minimum contacts" test. See Mariash v. Morrill, 496 F.2d 1138, 1143 (2d Cir.1974); Herbstein v. Bruetman, 768 F.Supp. 79, 81 (S.D.N.Y.1991).

***25** "Minimum contacts" may be proven by showing that defendant is (1) doing business in the United States; (2) performing an act in the United States; or (3) causing an effect in the United States by performing an act elsewhere. Nagoya Venture Ltd. v. Bacopulos, No. 96 Civ. 9317, 1998 WL 307079, at *4 (S.D.N.Y. June 11, 1998). As to the third test, it is not sufficient that an injury be generally foreseeable. "[T]he foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Defendants Hasegawa, CCC, Marlowe and Wolpow move to dismiss the Third Amended Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. In the instant action, the factual allegations do not establish conduct by defendants and connection to the United States such that defendants could reasonably anticipate being haled into court here. Casio argues that the Court has personal jurisdiction over all defendants for all claims pleaded in the complaint because Casio has pled a proper RICO claim. Casio Opp. Mem. to Tsuru and Wolpow, at 16. Casio further alleges that, under 18 U.S.C. § 1965(b) and (d) of the RICO statute, the Court has personal jurisdiction over the domestic defendants because RICO allows nationwide service of process on such defendants. As a result, Casio claims that, once defendants are served with process, the Court can automatically exercise personal jurisdiction over said defendants if due process requirements are also met. See PT United Can Co., Ltd., 138 F.3d at 71; Herbstein, 768 F.Supp. at 81. Additionally, Casio argues that defendants have minimum contacts with the United States. Casio Opp. Mem. at 17.

Defendants contend that Casio's grounds for personal jurisdiction are based solely upon its federal law claim, which should be dismissed. Marlowe Mem. at 15-16, Wolpow Decl. at 3. Defendant Hasegawa claims that the Court lacks personal jurisdiction over him because, although Casio did cure its defect by serving a summons with the Second Amended Complaint, it failed to properly serve process upon Hasegawa in Japan consistent with the rules of service set forth by the Hague Convention. Hasegawa Mem. at 4; see also Hasegawa Reply Mem. at 2.

Defendants CCC and Marlowe challenge Casio's attempt to assert personal jurisdiction over them by relying upon plaintiff's failure to plead a RICO claim and invoke the RICO statute for nationwide service of process. Marlowe Mem. at 16. CCC and Marlowe argue that Casio's RICO claim is baseless; thus, Casio's grounds for personal jurisdiction under the RICO Act should be dismissed.

Defendant Wolpow also opposes Casio's assertion of personal jurisdiction over him by way of the RICO claim. Wolpow Decl. at 3. Wolpow adopts

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



arguments by CCC and Marlowe regarding Casio's failure to plead a sufficient RICO claim. Wolpow Decl. at 2. Wolpow adds that he is not a resident of New York, does not regularly operate or perform business activities in New York, and has never maintained a bank account in New York. Id.

***26** With respect to defendants Sayo, Hasegawa, and Tsuru, Casio alleges that subsection (b) and (d) of Section 1965 confer personal jurisdiction upon them because these defendants have had contacts with New York that satisfy the minimum contacts requirement. Casio Opp. Mem. to Tsuru and Wolpow, at 17. Specifically, Casio alleges that the defendants either reside in New York or opened bank accounts in the State of New York and wire transferred funds to, from, or through New York. Id.

The Court concludes that there is no personal jurisdiction over these defendants. Casio's assertions are insufficient to demonstrate that defendants have had minimum contacts in New York so that they would reasonably anticipate being haled into court here. Although certain defendants conduct business in the United States, and the wire transfers reached bank accounts in the United States, such conduct by defendants does not satisfy the level of minimum contacts required to assert personal jurisdiction over them. As a result, Casio's allegations fail to satisfy the due process requirement of "minimum contacts" as to each and every defendant.

Further, § 1965(b) permits a district court to exercise nationwide jurisdiction over a defendant only when "the ends of justice require." Id. at 71. Because the Court has determined that plaintiff's RICO claim is fatal, the "ends of justice" do not mandate the exercise of national jurisdiction over defendants in the instant action. The Court recommends dismissal of the action because it lacks personal jurisdiction over defendants.

2. Insufficient Process and/or Service of Process Pursuant to Rule 12(b)(4) and (5)

Defendants CCC, Marlowe, Wolpow, [FN23] Tsuru, [FN24] and Hasegawa have moved pursuant to Rules 12(b)(4) and (5) of the Federal Rules of Civil Procedure to dismiss the claims against them for insufficient process and/or service of process. Defendants allege that there was insufficient process and/or service of process because Casio first served upon them a copy of the Second Amended Complaint without a summons, and then served them an Order to Show Cause in lieu of the summons.

FN23. In adopting CCC and Marlowe's arguments in their motion to dismiss, Wolpow asserts that he moves to dismiss pursuant to Rules 12(b)(4) and (5) of the Federal Rules of Civil Procedure. However, he neither provides an argument nor discusses the issue regarding insufficiency of process and/or service of process. Thus, the Court cannot address this claim by Wolpow.

FN24. Since defendant Tsuru does not provide an argument or adopt other defendants' arguments on insufficient service of process, but instead challenges the sufficiency of process, it is possible that he intended to move to dismiss pursuant to Rule 12(b)(4) for insufficient process rather than to dismiss pursuant to Rule 12(b)(5) for insufficient service of process.

Defendants Marlowe and Hasegawa also allege other reasons for insufficient service of process pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure. Marlowe argues that Casio did not serve her at the proper address. Hasegawa claims that Casio failed to properly serve him process in Japan in accordance with the requirements of the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters. He contends that service via mail is not permitted, and even if permitted, service via overnight courier is not sufficient for "service by mail."

To constitute sufficient process and give adequate notice, a summons must contain specific information and be signed by the clerk of the court. Fed.R.Civ.P. 4(a). Equally important, Rule 4(c) provides that "[a] summons shall be served together with a copy of the complaint." Fed.R.Civ.P. 4(c)(1). A federal court cannot exercise personal jurisdiction over defendants who are improperly served. Because valid service of process is a prerequisite to the court's exercise of personal jurisdiction, see Omni Capital Int'l v. Rudolf Wolff & Co., Ltd. 484 U.S. 97, 103 (1987), a foreign party against whom a RICO claim is asserted must be served with process in this country. See Laborers

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Local 17 Health and Benefit Fund v. Philip Morris, Inc., 26 F.Supp.2d 593, 600 (S.D.N.Y.1998).

***27** Rule 4(e) governs service upon individuals within the United States, and provides, in pertinent part, that "service upon an individual from whom a waiver has not been obtained and filed ... may be effected by ... in the United States ... (2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode ... or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process." Fed.R.Civ.P. 4(e)(2). Rule 4 of the Federal Rules of Civil Procedure has often been construed liberally with respect to service of process. "[W]hen a defendant receives actual notice of a lawsuit brought against him, technical imperfections with service will rarely invalidate the service." Maruzen Intern., Co. Ltd. v. Bridgeport Merchandise, Inc., 770 F.Supp. 155 (S.D.N.Y.1991). Under New York state law, service upon an individual is governed by CPLR 308.

Rule 4(f) governs service upon individuals in a foreign country, and where there is a treaty with a foreign nation, service must be effected "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed.R.Civ.P. 4(f)(1).

In the present action, Casio claims that the Order to Show Cause served upon defendants contained the essential requisites necessary to constitute a proper summons under Rule 4(a) of the Federal Rules of Civil Procedure. See Casio Opp. Mem. at 45. Nonetheless, the issue regarding insufficient process raised by defendants CCC, Marlowe and Tsuru, is moot. The fact that Casio served an Order to Show Cause in lieu of a summons with the complaint does not warrant dismissal if defendants received actual notice of a lawsuit brought against them. Further, even if the Court determined that the Order to Show Cause was insufficient to constitute a summons, the Court finds that Casio cured its defects when it later served a summons with the Second Amended Complaint upon said defendants. As a result, the Court recommends that defendants' motions to dismiss pursuant to Rule 12(b)(4) of the Federal Rules of Civil Procedure be DENIED.

With respect to the issue involving insufficiency of service of process, Casio asserts that it served Hasegawa with the Order to Show Cause with Temporary Restraints dated May 27, 1998. See Mintz Decl., Exh. 7, ¶ 3. On July 31, 1998, Casio served a summons and complaint via first-class mail, to Hasegawa's last known addresses in Tokyo, Japan. Mintz Decl., Exh. 6, ¶ 2. On that same date, Casio then served CCC with a summons and complaint via first-class mail and federal express mail to its last known addresses in Barbados. Mintz. Decl., Exh. 6, ¶ 4. Casio states that it personally served Tsuru on August 22, 1998, with a summons and complaint, and the Order granting preliminary injunction. See Casio Opp. Mem. to Tsuru and Wolpow, Exh. A. Finally, on August 24, 1998, Casio served a summons and complaint to Marlowe via process server at her last known address. Mintz Decl., Exh. 6, ¶ 3.

***28** Upon review of the evidence, the Court finds that there was sufficient service of process because Casio properly served a summons and complaint upon said defendants. Thus, the Court recommends that motions to dismiss by defendants pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure br DENIED. However, the Court concludes that Casio did not properly effect service of process upon Hasegawa in accordance with the Hague Convention as required under Rule 4(f)(1) of the Federal Rules of Civil Procedure. Casio utilized service by overnight courier, and Japan does not permit service of process to be made by postal channels. Thus, Casio did not appropriately serve defendant Hasegawa under the Hague Convention.

Under the Hague Convention, [FN25] Article 10 allows for service of process by mail. [FN26] However, some signatories to the Convention have "opted-out" of, or objected to, the provisions permitting service of process by mail. [FN27] Japan is one such signatory which does not permit service of process by mail. [FN28] See Charas, 1992 WL 296406, at *2; Fitzgibbon v. Sanyo Securities America, Inc., No. 92 Civ. 2818, 1994 WL 281928, at *9 (S.D.N.Y.1994).

FN25. The Hague Convention requires each signatory country to create a central authority to





receive requests for service of judicial documents. See Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 698 (1988).

FN26. Specifically, Article 10(a) sets forth a method for sending judicial documents abroad after service of process has been effected "by means of a central authority." Charas v. Sand Technology Systems, Int'l, Inc., No. 90 Civ. 5638, 1992 WL 296406, at *2 (S.D .N.Y.1992) (quoting Bankston v. Toyota Motor Corp., 889 F.2d 172, 174 (8th Cir.1989)).

FN27. Where there are no internationally agreed means of service or the applicable international agreement permits other means of service, other alternative methods may work, provided that service under such methods "is reasonably calculated to give notice." Fed.R.Civ.P. 4(f)(2).

FN28. Japan has specifically objected to Articles 10(b) and (c), which authorize different methods of service, but has not objected to Article 10(a). Hague Convention, 28 U.S.C.A. Fed.R.Civ.P. 4, at 130 n. 17. Courts in this District have held that service of process in Japan cannot be effected by mail even though Japan has not objected to Article 10(a). See Fitzgibbon, 1994 WL 281928, at *8; Charas, 1992 WL 296406, at *2 (determining that Japan did not intend to authorize service of process of mail although there was no objection to Article 10(a) of the Hague Convention).

Casio relies on cases such as Ackermann v. Levine, 788 F.2d 830, 839 (2d Cir.1986), to support its contention that service of process by mail is proper under the Hague Convention here. Casio's reliance is misplaced. In Ackermann, the Second Circuit held that service of process by registered mail to commence a lawsuit in West Germany was proper service in the United States under the Convention because the United States does permit service by mail. However, this case is distinguishable because Japan does not allow service of process via mail.

Casio was required to serve process in accordance with the Hague Convention, and failed to do so. Accordingly, the Court finds that service of process was improper and recommends that defendant Hasegawa's motion to dismiss pursuant to Rule 12(b)(5) be GRANTED.

E. LACK OF SUPPLEMENTAL JURISDICTION

Casio asserts that this Court has supplemental jurisdiction over its state law claims: (1) conversion; (2) civil conspiracy; (3) breach and participation in a breach of fiduciary duty; (4) negligence; (5) unjust enrichment; (6) common law fraud as against Sayo; and (7) the imposition of a constructive trust on Casio funds received by defendants.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action ... that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Claims form part of the same case or controversy when they "derive from a common nucleus of operative fact." Abrams v. Terry, 45 F.3d 17, 23 n.7 (2d Cir.1995) (quoting United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966)).

***29** Supplemental jurisdiction is left to the sound discretion of the district courts. See Ametex Fabrics, Inc. v. Just In Materials, Inc., 140 F.3d 101, 105 (2d Cir.1998) (citing Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir.1994)); ABF Capital Management v. Askin Capital Management, 957 F.Supp. 1038, 1322-23 (S.D.N.Y.1997). The district courts may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). A district court will weigh and balance certain factors, including considerations of judicial convenience, economy and fairness to the litigants. See Ametex Fabrics, Inc., 140 F.3d at 105 (citing Purgess, 33 F.3d at 138). Where the federal law claims are dismissed before trial, the balance of factors tilts in favor of declining supplemental jurisdiction over the remaining state law claims. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); Pollack v. Nash, No. 98 Civ. 6599, 1999 WL 556992, at *8 (S.D.N.Y. July 30, 1999) (citing Castellano v. Board of Trustees, et al., 937 F.2d 752, 758 (2d Cir.1991)).

This case presents no reason to depart from this general rule. The parties have conducted very little discovery. Indeed, there is a stay of discovery, except for discovery proceedings which might assist

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



in locating funds which are still missing. Accordingly, the remaining state law claims should be dismissed without prejudice.

Because I have concluded that Casio's federal law claim under RICO should be dismissed at this stage, and Casio has no other ground for federal jurisdiction, I recommend that the Court not exercise supplemental jurisdiction over the remaining state law claims.

F. IMPROPER VENUE PURSUANT TO RULE 12(b)(3)

Defendants CCC, Marlowe and Wolpow move to dismiss the Third Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(3) for improper venue. Marlowe claims that she is not a citizen of New York, but maintains an office in the Chicago area. Marlowe Mem. at 17. She alleges that Casio has not shown that a substantial part of the events giving rise to claims asserted against her occurred in this District. Id. Wolpow adopts CCC and Marlowe's argument on this issue. Wolpow Mot. at 2. He contends that he does not regularly transact business in, or maintain an office in, or have any representation in New York. Wolpow Decl. at 2. He further contends that he is not a resident of New York, and does not operate any company in New York. Id.

The general venue statute under 28 U.S.C. § 1391 states, in pertinent part, that:

> [An action may] "be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ... or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

***30** A civil RICO action or proceeding against an individual may proceed in the district court of the United States for any district in which such individual resides, has an agent, is found, or transacts his affairs. 18 U.S.C. § 1965(a). The purpose of venue is to protect defendants by preventing plaintiffs from selecting an unfair or inconvenient place of trial. See Cobra Partners, L.P. v. Liegl, 990 F.Supp. 332, 334 (S.D.N.Y.1998) (citing Leroy v. Great Western United Corp., 443 U.S. 173, 183-84 (1979)).

The Third Amended Complaint alleges that venue is proper in this district under 28 U.S.C. § 1391(b) and (d) because certain defendants are residents of, or have agent(s) in, or transact their affairs in, this district, and because a substantial part of the events or omissions giving rise to the claims arose here. Am. Compl. at ¶ 5. It also alleges that certain defendants are aliens and may be sued in any district, and defendants can be sued under the co-conspirator theory of venue pursuant to 18 U.S.C. § 1965(a). Id .

Many documents and witnesses are located in Japan. An injunction has been issued to freeze assets located in the United Kingdom. It is difficult to trace where the substantial part of the events giving rise to the claims occurred, but the balance of convenience weighs heavily in favor of an alternate forum. Moreover, the allegations do not sufficiently plead that defendants CCC, Marlowe and Wolpow are residents of, or have agent(s) in, or transact their affairs, in this district. Therefore, it appears that venue is improper here.

Nevertheless, the Court need not reach the issue of venue because it recommends dismissal of Casio's action against defendants for failure to state a RICO claim.

G. DISMISSAL UNDER THE DOCTRINE OF FORUM NON CONVENIENS

The doctrine of forum non conveniens gives the court discretion to dismiss a case even if the "court is a permissible venue with proper jurisdiction over the claim." PT United Can Co., Ltd., 138 F.3d at 73. The court has discretionary power to determine where the litigation would best serve the convenience of the parties and the ends of justice. Jota v. Texaco, Inc., 157 F .3d 153, 159 (2d Cir.1998) (citing PT United Can Co., Ltd., 138 F.3d at 73; see also Mendes Jr. Intern. Co. v. Banco Do Brazil, S.A., 15 F.Supp.2d 332, 337 (S.D.N.Y.1998). The analysis focuses upon three main factors: (1) the availability of an adequate alternative forum, (2) the private interests of the parties, and (3) the public interest in the forum selection. Id. Generally, the plaintiff's choice of forum should not be disturbed. However, where a foreign plaintiff is involved, its choice of forum

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



warrants less deference. Murray v. British Broadcasting Corp., 81 F.3d 287, 290 (2d Cir.1996) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981)). The court must also satisfy itself that the alternative forum will provide a remedy for the plaintiff's claim. See Piper Aircraft Co., 454 U.S. at 254.

***31** There is a two-step inquiry in deciding whether to grant a motion to dismiss on the doctrine of forum non conveniens. PT United Can Co., Ltd., 138 F.3d at 73. First, the court must look at whether an adequate alternative forum exists to conduct the litigation elsewhere against all defendants. Jota, 157 F.3d at 159 (citing PT United Can Co., Ltd., 138 F.3d at 73). If the court finds an adequate alternative forum, then the court must assess the private and public interest factors set forth by the Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947); Alfadda v. Fenn, 159 F.3d 41, 45-46 (2d Cir.1998). The private interest factors include access to sources of proof, the location of parties, the cost of obtaining willing witnesses, the availability of compulsory process for unwilling witnesses, as well as other practical concerns. Gulf Oil Corp., 330 U.S. at 508-09; see also Boosey & Hawkes Music Publishers, Ltd. v. The Walt Disney Co., 145 F.3d 481, 481 (2d Cir.1998). The public interest factors involve court congestion, other forums' interests in deciding local disputes, and interest in issues of foreign law to be decided by foreign tribunals. PT United Can Co., Ltd., 138 F.3d at 74 (citing Gulf Oil Corp., 330 U.S. at 508-09). To prevail on the motion to dismiss, defendants must show that the balance of private and public factors weigh in favor of the foreign forum. Id. (citing R. Maganal & Co. v. M.G. Chemical Co., Inc., 942 F.2d 164, 167 (2d Cir.1991)).

Defendants Hasegawa and Tsuru request that the Court dismiss this action because Casio has brought alternate actions in Japan and in the United Kingdom. Hasegawa Mem. at 12, Tsuru Mem. at 15. In addition, they assert that Casio is a Japanese corporation organized under the laws of Japan, and that the alleged main perpetrators are Japanese nationals. Hasegawa Mem. at 16, Tsuru Mem. at 2. Casio concedes that the United Kingdom is an adequate alternative forum for freezing certain assets. Casio Opp. Mem. at 53.

Balancing the factors stated, the Court finds that there is an alternative forum and it would be more convenient for the parties to litigate in such a forum. Having applied the analysis set forth above, and having found that an adequate alternative forum exists, the Court recommends that this action be DISMISSED on the grounds of forum non conveniens.

V. CONCLUSION

For the foregoing reasons, the Court recommends that defendants' motions to dismiss the Third Amended Complaint pursuant to Rule 12(b)(6) (and Rule 9(b) by Sayo for failure to plead the predicate act of wire fraud with particularity) of the Federal Rules of Civil Procedure be granted for failure to state a RICO claim. Because the Court concludes that Casio has failed to properly plead a RICO claim against all defendants, the Court also recommends that defendants' motions to dismiss be granted pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. Therefore, the Court further recommends that supplemental jurisdiction should not be exercised over Casio's state law claims.

***32** In addition, the Court also recommends that defendants' motions to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction be granted, that defendants' motions to dismiss pursuant to Rule 12(b)(4) and 12(b)(5) for insufficient process and/or service of process be denied, and that defendant Hasegawa's motion to dismiss pursuant to Rule 12(b)(5) for improper service of process, be granted. The Court concludes that the issue of venue pursuant to Rule 12(b)(3) need not be reached at this point. The Court further recommends dismissal of the action based upon the doctrine of forum non conveniens. In conclusion, the Court recommends that plaintiff's motion to disqualify Jacques L. Debrot, attorney for defendant Hasegawa, be dismissed as moot upon dismissal of the action.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Whitman Knapp, 40 Centre Street, Room 1201, and to the chambers of

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 150 (1985); Small v. Secretary of Health and Human Services, 892 F.2d 15, 16 (2d Cir.1989) (per curiam ); 28 U.S.C. § 636(b)(1) (West Supp.1995); Fed.R.Civ.P. 72, 6(a), 6(e).

2000 WL 1877516 (S.D.N.Y.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

