Not Reported in F.Supp.2d                                          **Page 3**
(Cite as: 2004 WL 1234041 (S.D.N.Y.))
<KeyCite Citations>

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

**Mildred MARTINEZ, Plaintiff,**
**v.**
**Steven SANDERS, individually and in his official**
**capacity as Assemblyman for**
**the 74th Assembly District of the State of New**
**York, Defendant.**

No. 02 Civ.5624(RCC).

June 3, 2004.

OPINION & ORDER

CASEY, J.

*1 Mildred Martinez ("Plaintiff") sues her former
employer, New York State Assemblyman Steven
Sanders ("Defendant"), alleging that she was
terminated in violation of the: (1) First Amendment
to the U .S. Constitution; (2) Free Speech Clause of
the New York State Constitution; (3) Employee
Retirement Income Security Act of 1974 ("ERISA");
and (4) Equal Protection Clause of the New York
State Constitution. Plaintiff also seeks various forms
of injunctive relief, including reinstatement to her
position. [FN1] Defendant now moves to dismiss
the complaint pursuant to Federal Rules of Civil
Procedure 12(b)(2) and (6) and to strike allegedly
immaterial and impertinent matter from the
complaint pursuant to Federal Rule of Civil
Procedure 12(f). For the reasons set forth below,
Defendant's motion is GRANTED IN PART AND
DENIED IN PART.

> FN1. Plaintiff alleged seven additional claims in the
> Complaint, but has failed to oppose the motion to
> dismiss them. As further discussed below, the Court
> concludes that Plaintiff has abandoned these claims.
> Therefore, the Court will only discuss the merits of
> the above-enumerated claims.

BACKGROUND

For purposes of this motion, the Complaint's
factual allegations are accepted as true and all
inferences are drawn in Plaintiff's favor. See

Connolly v. McCall, 286 F.2d 122, 125 (2d
Cir.2001).

Plaintiff has worked as a political activist in New
York City since 1980. (Second Amended Complaint
[Compl.] ¶ 8.) During the course of her political
career, Plaintiff developed an "extensive political
network ... consisting of voters and street
campaigners" in the Lower East Side. (Id.) Plaintiff
worked for Assemblyman Sheldon Silver from 1979
until 1995. (Id. ¶¶ 9, 17.) In 1995, after a
redrawing of political district lines, Plaintiff
requested a transfer to Defendant's office so that she
could continue to serve the Lower East Side. (Id. ¶
17.) On September 5, 1995, Defendant hired
Plaintiff as a full-time employee . [FN2] (Id. ¶¶ 17-
18; Employer's Report of Work-Related Accident/
Occupational Disease, Ex. A to Defendant's Reply
Memorandum .)

> FN2. In Plaintiff's Second Amended Complaint she
> did not provide her job title. Defendant attached
> Plaintiff's worker's compensation claim as an
> exhibit in his Reply Memorandum of Law, in which
> Plaintiff used the term "community liaison" to
> describe her position in Defendant's office.
> Although Plaintiff did not use the term community
> liaison to describe her job title in the complaint, the
> Court can nonetheless consider her New York State
> Worker's Compensation claim form as evidence of
> her employment title. See Evans v. New York
> Botanical Garden, No. 02 Civ. 3591, 2002 WL
> 31002814, at *4 (S.D.N.Y. Sept. 4, 2002) ("A
> court may take judicial notice of the records of state
> administrative procedures, as these are public
> records, without converting a motion to dismiss to
> one for summary judgment."); Tsai v. Rockefeller
> Univ., 137 F.Supp.2d 276, 280 n. 2
> (S.D.N.Y.2001) ("[T]he Court may take judicial
> notice of reports of administrative bodies without
> converting a motion to dismiss into one for
> summary judgment."). However, as discussed in
> further detail below, Plaintiff's use of the term
> community liaison only shows evidence of
> Plaintiff's job title, not her actual employment duties
> and responsibilities, a factor possibly dispositive of
> her ree speech claims.

Plaintiff alleges that Defendant requires his
employees to support only the political candidates
that he endorses. (Compl.¶¶ 6, 14, 30, 127.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Not Reported in F.Supp.2d
(Cite as: 2004 WL 1234041, *1 (S.D.N.Y.))

Plaintiff further alleges that Defendant threatens his employees with termination and loss of their pension rights if they refuse to support and campaign for his chosen political candidates. (Id. ¶ 23.) Plaintiff alleges that to this end, Defendant required her to use vacation and sick time, as well as weekends, to participate in campaign activities for his chosen candidates. (Id. ¶ 24.) These campaign activities included soliciting voters by phone, campaigning in the community, and handing-out flyers. (Id. ¶¶ 25, 33.)

In 2001, Mark Green and Fernando Ferrer both sought the Democratic nomination for New York City mayor. (Id. ¶¶ 37-39, 42.) Defendant, who supported Green, asked his employees to lobby and campaign for Green's nomination. (Id. ¶¶ 38-39.) Defendant wanted his employees to recruit Hispanic political activists in the Lower East Side to support Green's mayoral candidacy. (Id. ¶ 39.) Despite the fact that Plaintiff informed Defendant that she intended to support Ferrer, Defendant pressured her to campaign for Green. (Id. ¶¶ 42, 46.) When Plaintiff informed Defendant that she would not support Green because she was strongly committed to the Ferrer campaign, Defendant told her that he would not force her to campaign for Green, but that she had to refrain from criticizing him. (Id. ¶¶ 48-49.)

*2 On May 8, 2001, Plaintiff injured her wrist in a job-related accident. (Id. ¶ 50.) Due to the injury, she was unable to return to work until October 2001. (Id. ¶ 57.) While absent from work, Plaintiff campaigned on Ferrer's behalf. (Id. ¶¶ 54-57.) For example, she recruited one-hundred members of the Puerto Rican community to support Ferrer and lobbied members of a community-based political organization, the Village Democratic Club, to support Ferrer. (Id. ¶¶ 54-56.) Plaintiff alleges that Defendant has significant influence over the Village Democratic Club. (Id. ¶ 54.)

When Plaintiff returned to work on October 2, 2001, Defendant fired her. (Id. ¶¶ 58-59, 63.) Plaintiff alleges that Defendant was upset that she had publicly supported Ferrer and asked Defendant if she had considered her job when she decided to support him. (Id. ¶ 59.) Defendant told Plaintiff that she had "embarrass[ed] the elected officials of this district" and "ruined the political street operations for Mark Green." (Id.)

On July 19, 2002, Plaintiff filed her complaint. On October 25, 2002, Plaintiff filed a Second Amended Complaint alleging that when Defendant terminated her employment he violated her federal and state free speech rights, ERISA, and New York State's equal protection guarantees. Plaintiff also sought reinstatement to her position and to enjoin Defendant from what she alleges is the illegal practice of coercing employees to campaign for candidates that Defendant supports. The complaint contained eight additional claims, which as stated below, have been abandoned. Defendant denies that he terminated Plaintiff because of her political activities and affiliations. (Memorandum of Law in Support of Defendant's Motion to Dismiss [Def.'s Mot.] at 8.) Defendant argues, however, that even assuming that her speech was the basis of her termination, Plaintiff's claims should be dismissed. (Id.)

### DISCUSSION
#### I. Motion to Dismiss Standard

A court may dismiss a complaint for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of a claim which would entitle the plaintiff to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In considering a motion to dismiss, the Court must take as true all the facts stated in the complaint and "draw all reasonable inferences in the plaintiff's favor." Jackson Nat'l Life Ins. v. Merrill Lynch & Co., 32 F.3d 697, 700 (2d Cir.1995). As such, "a complaint should not be dismissed simply because a plaintiff is unlikely to succeed on the merits." Baker v. Cuomo, 58 F.3d 814, 818 (2d Cir.1995).

#### II. Abandoned Claims

In her Second Amended Complaint, Plaintiff brings twelve claims against Defendant relating to her alleged wrongful termination. The Defendant moved to dismiss all twelve claims pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6). Plaintiff opposed the motion with respect to only six claims.  Plaintiff failed to oppose dismissal of a federal claim alleging racial discrimination in violation of 42 U.S.C. § 1981 and claims under: (1) N.Y. Executive Law § 296(1)(a); (2) New York City Administrative Code § 8-107(1)(a); (3) New York Labor Law §§ 201-d and 740; and (4) New York Election Law §§ 17-154 and 17-156. Plaintiff

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

also failed to oppose dismissal of her claims which alleged a common-law prima facie tort. [FN3]

> FN3. Defendant claims that in addition to these enumerated claims, Plaintiff failed to oppose dismissal of her freedom of speech claim under the New York State Constitution. However, when opposing the motion, Plaintiff did, in fact, contest dismissal of this claim. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss [Pl.'s Opp'n] at 21.) This claim has not been abandoned.

*3 Because Plaintiff did not address Defendant's motion to dismiss with regard to these claims, they are deemed abandoned. See Dineen v. Stramka, 228 F.Supp.2d 447, 454 (S.D.N.Y.2002) (finding that plaintiff's failure to address claims in opposition papers "enabl[es] the Court to conclude that [plaintiff] has abandoned them"); Anti-Monopoly, Inc. v. Hasbro, Inc., 958 F.Supp. 895, 907 n. 11 (S.D.N.Y.1997) (holding that plaintiff's failure to provide any argument opposing defendant's motion "provides an independent basis for dismissal" and "constitutes abandonment of the issue"); see also Taylor v. City of New York, 269 F.Supp.2d 68, 75 (E.D.N.Y.2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.").

## III. "Immaterial" and "Impertinent" Information in the Complaint

Defendant moves to strike ten paragraphs of the complaint on the ground that they contain immaterial and impertinent allegations against one of the Defendant's colleagues. Rule 12(f) provides that, "Upon motion made by a party before responding to a pleading ... the court may order stricken from any pleading any ... immaterial, impertinent, or scandalous matter." A court has inherent authority to strike matters which it deems improper. See Sierra v. United States, No. 97 Civ. 9329, 1998 WL 599715, at *9 (S.D.N.Y. Sept. 10, 1998). Plaintiff has failed to oppose Defendant's timely Rule 12(f) motion. Therefore, the Court may grant Defendant's motion on default. See, e.g., Loew v. Kolb, No. 03 Civ. 5064, 2003 WL 22077454, at *1 (S.D.N.Y. Sept. 8, 2003) (granting restraining order in light of respondent's failure to

oppose motion); Garcia v.. NYPD PCT 41, 1997 WL 563809, at *3 (S.D.N.Y. Sept. 10, 1997) ("Plaintiff's failure to file a memorandum of law or any response whatsoever, standing alone, provides me sufficient basis to grant defendants' motions to dismiss."); Singh v. New York City Dep't of Corrs., 1995 WL 733560, at *1 (S.D.N.Y. Dec. 12, 1995) (stating that because plaintiff did not respond to defendants' motion nor sought an extension, defendants' motion for summary judgment and/or judgment on the pleadings should be granted on default); Fed. Trade Comm'n v. Metro. Communications Corp., No. 94 Civ. 0142, 1995 WL 540050, at *1 (S.D.N.Y. Sept. 11, 1995) (granting Rule 12(f) motion on default). However, the allegations in paragraphs 9 and 17 concerning Plaintiff's prior employment with Assemblyman Sheldon Silver and how she came to work for Defendant contain appropriate background evidence that is properly admissible and relevant. Defendant's motion to strike therefore is granted only as to paragraphs 10, 12-16, 35, and 40, which have no possible relation to the claims against Defendant.

## IV. Free Speech Claims

Plaintiff argues that Defendant violated her right to free speech guaranteed under the U.S. and the New York State Constitutions when Defendant terminated her because she publicly supported and campaigned for a political candidate whom Defendant did not support. The Court will not separately address Plaintiff's state claim because "[f]ree speech claims under the First Amendment and the New York State Constitution are subject to the same standards and the Court's analysis applies to both [claims]." Housing Works, Inc. v.. Turner, 179 F.Supp.2d 177, 199 n. 25 (S.D.N.Y.2001). Plaintiff argues that she is entitled to constitutional protection from dismissal because the First Amendment protects her political speech and affiliations.

*4 The issue before the Court, then, is whether the First Amendment prohibits a state politician from firing an employee based on the employee's public support for a political candidate. A similar issue was presented in Gordon v. Griffith, 88 F.Supp.2d 38 (E.D.N.Y.2000). In that case, the court held as a matter of first impression that, "legislative aides occupying positions in which their public speech may reasonably be associated with, or

mistaken for, that of the legislator's may constitutionally be dismissed for their public speech." Gordon, 88 F.Supp.2d at 57-58.

Gordon principally relied on the Supreme Court's decisions in Elrod v. Burns, 427 U.S. 347 (1976) and Branti v. Finkel, 445 U.S. 507 (1980), both of which involved patronage dismissals. [FN4] In Elrod, the Supreme Court held that patronage dismissals should be limited to "policymaking positions" and that only those positions are exempt from First Amendment protection. Elrod, 427 U.S. at 372. Four years later, the Court modified Elrod in the Branti decision. There the Court held that the proper inquiry to determine whether an employee's speech is protected is not whether the person has the title of "policymaker," but "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Branti, 445 U.S. at 518. To that end, courts should inquire as to whether the "position may be appropriately considered political." Id.

> FN4. The term "patronage dismissal" may
> encompass a broad range of activity, such as
> dismissing employees on a partisan basis or placing
> loyal supporters in government jobs that may have
> been made available by political discharge. See
> Elrod, 426 U.S. at 354 (discussing the practice of
> patronage dismissal).

The plaintiff in Gordon, a "Community Relations Director" for a New York State Assemblyman, was fired for participating in and speaking at a press conference and protest rally against police brutality. These events were held outside a police precinct within the Assemblyman's legislative district. Gordon, 88 F.Supp.2d at 40-41. The Assemblyman terminated the plaintiff's employment because of her participation in the protest and for opposing his "friends" at the police precinct. Id. Under these facts, Gordon held that a state assemblyman could constitutionally terminate an aide in order "to protect his relationship with the local police officers and with his electorate generally." Id. at 58. As the court in Gordon stated, "The close affiliation of aides and the legislators they serve generates a strong public perception of association between the two" which "leads the public to assume that their views are identical." Id. at 50. Based on the fact that constituents could reasonably understand the

legislative aide's speech to be an expression of the Assemblyman's position, Gordon held that the aide's speech was not protected by the First Amendment. See id. at 57-58. Because elected representatives are expected to account for their policy views and legislative actions, "[m]aintaining a clear voice between legislators and constituents is a significant government interest, warranting restrictions on the speech of political aides where that speech may create misperceptions about the legislator's views." Id. at 49.

*5 Gordon made clear that its holding did not apply to all legislative aides, but was limited only to those legislative aides who hold a political position and serve the legislator in a capacity in which the aide's voice could be mistaken for the voice of the elected official. See id. at 57 ("Staffers holding positions that are so connected to a legislator's lawmaking and representation roles that constituents might reasonably associate their speech for that of the legislator's are not entitled to First Amendment protection from dismissal where political interests and constituent relations are at issue."). Therefore, to determine if an aide's speech is protected by the First Amendment, it is essential for the court to ascertain the precise nature of the aide's position. If, for instance, the aide holds a clerical or non-political position, the aide's speech is protected by the First Amendment. See id. at 52 ("To accord non-clerical legislative aides holding politically sensitive positions First Amendment tenure for their public speech is unwarranted.").

In Gordon, the plaintiff's job title and responsibilities were undisputed; it was evident from the record that the plaintiff was a "non-clerical" aide who held a political position. The Gordon court therefore highlighted the plaintiff's position as the Assemblyman's "Community Relations Director." The court also found that the plaintiff's responsibilities included speaking to community leaders and groups "on behalf" of the Assemblyman. See id. at 40. It is for this reason that the Gordon court characterized the plaintiff as the Assemblyman's "alter-ego within the district." Id. at 58. The court therefore concluded that the plaintiff's speech was not protected because speaking on the Assemblyman's behalf was an essential component of her job, such that her speech could have been understood to reflect the Assemblyman's position. See id. at 57.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Not Reported in F.Supp.2d
(Cite as: 2004 WL 1234041, *5 (S.D.N.Y.))

Here, the record before the Court lacks a detailed or definitive description of Plaintiff's duties while Defendant employed her. [FN5] Unlike Gordon, the Court cannot say that Plaintiff functioned as the Assemblyman's "alter-ego" or that she had the responsibility of speaking to the public on his behalf. Absent information pertaining to the nature of Plaintiff's position, the Court could only speculate as to the scope of her job responsibilities (that is, whether her position was clerical or non-clerical and political or non-political). Without knowing the precise nature of her employment, the Court cannot make a determination about whether Plaintiff's campaign activities are protected under the First Amendment.

> FN5. While the Court does take judicial notice of the fact that Plaintiff described her position as "community liaison" in a worker's compensation application, see supra note 2, this title alone is not sufficient to determine the exact nature of her employment.

Defendant represents that Plaintiff held a political and non-clerical job. To support this characterization, Defendant, citing to paragraph nineteen of the Second Amended Complaint, characterizes Plaintiff's job as communicating with the "Hispanic community on [Defendant's] behalf." (Def.'s Mot. at 3.) However, this characterization misconstrues the complaint. The complaint merely states that Plaintiff was the only Hispanic individual that Defendant employed and makes no mention at all of the fact that Plaintiff spoke to the Hispanic community on Defendant's behalf. While it is clear from the complaint that the Plaintiff was a vocal political activist, it is unclear whether, as part of her job description, the Defendant expected her to speak to the community on his behalf and whether constituents could have reasonably associated her speech with that of Defendant. The precise nature of Plaintiff's employment--a fact dispositive of whether Plaintiff's First Amendment rights were violated--has not yet been definitively developed. [FN6]

> FN6. If Plaintiff was hired as a clerical aide then her political speech and affiliations are protected by the First Amendment. However, if Plaintiff served in a non-clerical function, one in which her designated role was to campaign throughout the community and speak to the community on behalf of Defendant, the First Amendment does not shield her from termination. See Gordon, 88 F.Supp.2d at 57.

*6 Drawing all factual inferences in Plaintiff's favor, Defendant's motion to dismiss the free speech claim is denied.

### V. ERISA Claim

Plaintiff argues that Defendant terminated her employment in violation of ERISA. Unlike Plaintiff's First Amendment claims, this claim must be dismissed.

Title I of ERISA states that it does "not apply to any employee benefit plan if ... such plan is a governmental plan." 29 U.S.C. § 1003(b)(1). ERISA defines "governmental plan" as any "plan established or maintained for its employees ... by the government of any State or political subdivision thereof." Id. § 1002(32). ERISA, which Congress enacted "to curb abuses which were rampant in the private pension system," does not apply to public sector employee benefit plans. Roy v. Teacher Ins. & Annuity Ass'n, 878 F.2d 47, 49 (2d Cir.1989).

As a state government employee, Plaintiff was a member of the New York State and Local Employees' Retirement System, established under Article 2 of the New York Retirement and Social Security Law. This pension plan is a governmental plan exempt from ERISA's purview. See id. at 48-49 (holding that an "Optional Retirement Program" for the State University of New York was a governmental plan exempt from ERISA coverage); Clissuras v. Teachers' Ret. Sys., Nos. 02 Civ. 8130, 8138, 2003 WL 1701992, at *4 (S.D.N.Y. Mar. 28, 2003) (holding that plaintiff's ERISA claims must be dismissed because plaintiff's plan, which provided benefits to public employees of the State University of New York, qualified as a governmental plan); Trang v. Local 1549, No. 98 Civ. 5927, 2001 U.S. Dist. LEXIS 12676, at *18 n. 1 (S.D.N.Y. Aug. 7, 2001) (holding that because "ERISA does not govern government plans such as NYCERS [New York City Employees' Retirement System] ... even a liberal reading of the complaint would not permit the court to entertain plaintiff's 'ERISA claim' ").

For the reasons stated above, the ERISA claim is dismissed.

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

VI. New York State Equal Protection Claim

Plaintiff argues that Defendant violated her equal protection rights guaranteed by the New York State Constitution. Unlike the federal enabling statutes, which permit actions for damages following the violation of a constitutional right, "[n]o explicit constitutional or statutory authority sanctions a private right of action for violations of the New York State Constitution." Wahad v. FBI, 994 F.Supp. 237, 238 (S.D.N.Y.1998) (citing Brown v. State of New York, 674 N.E.2d 1129, 1137 (N.Y.1996)). Thus, in order for the Court to "recognize a damage remedy it must be implied from the Constitution itself." Brown, 674 N.E.2d at 1137.

In Brown, the New York State Court of Appeals considered an appeal of a Court of Claims decision, which held that direct actions for violations of the New York State Constitution are not cognizable in any state court without some link to a common-law tort. Id. at 1131. The Court of Appeals modified that decision and recognized a "narrow" private right of action against the State for equal protection and search and seizure violations of the New York State Constitution. Id. at 1131, 1138-39, 1141, 1144. Although Brown did recognize a narrow private right of action for violations of the state constitution, "it is unavailable where an alternative remedy will adequately protect the interests at stake." Coakley v. Jaffe, 49 F.Supp.2d 615, 628-29 (S.D.N.Y.1999) (holding that plaintiff has no right of action under the New York State Constitution because "any violation of plaintiff's right to be free from unreasonable searches or seizures can be vindicated" through plaintiff's viable Fourth Amendment claim); see also Bath Petroleum Storage, Inc. v. Sovas, 136 F.Supp.2d 52, 58 (N .D.N.Y.2001) (holding that Brown was inapplicable and declining to find a private right of action under the New York State Due Process Clause because "[h]ere, unlike Brown, Plaintiffs have stated a viable Section 1983 claim against defendants"); Flores v.. City of Mount Vernon, 41 F.Supp.2d 439, 447 (S.D.N.Y.1999) (holding that plaintiff's New York State Constitutional claims should be dismissed "because no private right of action exists for violation of the New York State Constitution where a Plaintiff has alternative damage remedies" under Section 1983); Wahad, 994 F.Supp. at 240 (holding that "the existence of alternative damage remedies under Section 1983 obviates the need to imply a private right of action under the State Due Process Clause"); Martinez v. City of Schenectady, 761 N.E.2d 560, 563 (N.Y.2001) (declining to extend Brown because the "constitutional tort claim here is neither necessary to effectuate the purposes of the State constitutional protections plaintiff invokes, nor appropriate to ensure full realization of her rights" since the exclusion of evidence and the reversal of the conviction was itself an adequate remedy); Lyles v. State, 752 N.Y.S.2d 523, 526-27 (Ct.Cl.2002) (holding that the "narrow" ruling in Brown does not give the plaintiff an implied constitutional tort remedy since "the alleged wrongs could have been redressed by timely interposed common law tort claims"); Remley v. State of New York, 665 N.Y.S.2d 1005, 1009 (Ct.Cl.1997) (holding that "no useful purpose would be served by implying a remedy under the [state] Constitution" because "the common-law remedy vindicates the right protected by the constitutional provision"). Here, Plaintiff could have alleged discrimination damage claims under the Equal Protection Clause of the Fourteenth Amendment and employment discrimination claims under the New York State Executive Law and the New York City Administrative Code.

*7 Plaintiff nonetheless asks the Court to find a private cause of action against a government official in his individual capacity, an issue that Brown never addressed. The Brown court did not specifically state whether suits could be maintained against government officials in their individual capacities and no court has so extended Brown's holding. In fact, the Court is not aware of any reported case to extend Brown beyond its "narrow" holding that a private right of action could be implied against the State in the Court of Claims for violation of the Equal Protection and Search and Seizure Clauses of the New York State Constitution. See, e.g., Coakley, 48 F.Supp.2d at 628-29; Flores, 41 F.Supp.2d at 447; Martinez, 761 N.E.2d at 563. Likewise, the Court declines to extend Brown to this case. Given that alternative remedies could have adequately protected Plaintiff, the Court does not imply a private remedy under the New York State Equal Protection Clause. Accordingly, Plaintiff's state constitutional equal protection claim is dismissed. [FN7]

FN7. Plaintiff's opposition memorandum attempts to assert a federal equal protection claim by stating that "[t]he Complaint clearly alleges that claims are

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

brought under the Fourteenth Amendment" of the United States Constitution. (Pl.'s Opp'n at 21.) Plaintiff's Second Amended Complaint only mentions the Fourteenth Amendment in the paragraph asserting that the Court possesses jurisdiction over the case. (Compl.¶ 3.) However, Plaintiff fails to assert a Fourteenth Amendment claim in the enumerated list of her causes of action. Because Plaintiff failed to include a Fourteenth Amendment claim in the complaint, the Court will not consider it. See Goel v. United States Dep't of Justice, No. 03 Civ. 0579, 2003 WL 22047877 at *1 n. 4 (S.D.N.Y. Aug. 29, 2003) (holding that "allegations in a memorandum of law ... cannot serve as means to amend [plaintiff's] complaint").

## VII. Eleventh Amendment

The only remaining claims are Plaintiff's requests for reinstatement and other injunctive relief and her free speech claims. The Court now considers, in turn, the extent to which the Eleventh Amendment allows these claims to proceed.

The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although literally construed the Eleventh Amendment speaks of actions against the state by citizens of another state, it has long been recognized that the Eleventh Amendment also covers suits against states and agents of the state brought by their own citizens. See Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir.2003); Dube v. State Univ. of New York, 900 F.2d 587, 594 (2d Cir.1990).

Defendant argues that Plaintiff may not sustain her request for reinstatement in light of the Eleventh Amendment. However, reinstatement is a form of prospective equitable relief. See Bankers v. Travelers Cos., 180 F.3d 358, 365 (2d Cir.1999); Padilla v. Metro-North Commuter R.R., 92 F.3d 117, 121-22 (2d Cir.1996). Prospective relief is not barred by the Eleventh Amendment. See Edelman v. Jordan, 415 U.S. 651, 677 (1974) (holding that retroactive and not prospective injunctive relief is barred under the Eleventh Amendment); Dwyer v. Regan, 777 F.2d 825, 836 (2d Cir.1985) ("Reinstatement is purely prospective injunctive relief that orders the state official to return the

former employee to the state's payroll.... [A]n order that reinstatement be granted or that a reinstatement hearing be conducted is the sort of prospective relief that is not barred by the Eleventh Amendment."); see also Russell v. Dunston, 896 F.2d 664, 668 (2d Cir.1990). Accordingly, the Eleventh Amendment does not bar Plaintiff's reinstatement claim. [FN8] See, e.g., Komlosi v. New York State Office of Mental Retardation & Developmental Disabilities, 64 F.3d 810, 814 (2d Cir.1995); Campbell v. City Univ. Construction Fund, No. 98 Civ. 5463, 1999 WL 435132, at *2 (S.D.N.Y. June 25, 1999).

> FN8. Plaintiff's claim to restrain Defendant from continuing to require employees to work for his political allies likewise remains viable. Defendant seeks to dismiss this injunctive request on the grounds that it appears unlikely that she will be rehired, and later subjected to harm. See City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983). Because Plaintiff's reinstatement claim survives this motion, the Court cannot conclude that Plaintiff has failed to demonstrate the possibility of future harm.

*8 Plaintiff has sued Defendant for violation of his free speech rights under the U.S. and New York State Constitutions in both his official and individual capacities. Whether the Eleventh Amendment bars these claims depends initially on the capacity in which he is sued. As for the claim premised on a violation of federal law, Defendant has moved to limit Plaintiff's claims for monetary damages against him in his official capacity. "The Eleventh Amendment bars the award of money damages against state officials in their official capacities." Ford, 316 F.3d at 354; see Green v. Mansour, 474 U.S. 64, 69 (1985). To the extent that Defendant is sued for monetary damages in his official capacity, the relief is barred by the Eleventh Amendment. Because the Eleventh Amendment does not extend to the free speech claims against Defendant in his individual capacity, Plaintiff may ultimately recover against Defendant in his individual capacity. See Dube, 900 F.2d at 595.

Likewise, as for the free speech claim premised on state constitutional law, Plaintiff may only recover monetary damages against Defendant in his individual capacity. The Eleventh Amendment deprives the federal courts of jurisdiction over state law claims against state officials in their official capacities. See Ying Jing Gan v. City of New

Not Reported in F.Supp.2d
(Cite as: 2004 WL 1234041, *8 (S.D.N.Y.))

York, 996 F.2d 522, 529 (2d Cir.1993); see also Pennhurst State School & Hosp. v. Halderman, 464 U.S. 89, 106 (1984).  On the other hand, "[t]he jurisdictional limitation recognized in Pennhurst does not apply to an individual capacity claim seeking damages against a state official, even if the claim is based on state law." Bad Frog Brewery, Inc. v. New York State Liquor Auth., 134 F.3d 87, 102 (2d Cir.1998); see also Pennhurst, 465 U.S. at 111 n. 21.

The Eleventh Amendment does not innoculate Defendant from being sued in his individual capacity on either the federal or state claim. See Dube, 900 F.2d at 595. The Court therefore must examine the Defendant's claims of qualified immunity.

## VIII. Qualified Immunity

Defendant has asserted the affirmative defense of qualified immunity as a shield from being sued in his individual capacity. Qualified immunity may shield a government official performing, as was Defendant, a discretionary, as opposed to a ministerial, function. See Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982); Lennon v. Miller, 66 F.3d 416, 420 (2d Cir.1995). Whether Defendant is entitled to qualified immunity depends on a two-part algorithm.  First, the Court must take the facts in the light most favorable to the plaintiff and determine whether the plaintiff has alleged a constitutional violation under current law. See Saucier v. Katz, 533 U.S. 194, 202 (2001). Second, the Court must then ask whether the defendant's conduct was objectively reasonable with reference to clearly established law at the time of the conduct in question. See id. at 232-33. The Supreme Court has made it clear that the threshold inquiry under a qualified immunity defense is the existence or nonexistence of a constitutional right. "The law might be deprived of this explanation were a court simply to skip ahead to the question whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case." Id. at 201. Therefore, the qualified immunity inquiry must proceed in proper sequence and first resolve whether the complaining conduct violated a constitutional right.

*9 As presently developed, the record fails to answer this question. The evidence before the Court does not precisely define the nature of Plaintiff's employment, thus precluding the Court from determining whether Plaintiff's campaign activities were protected under the First Amendment. See supra Part IV. If Plaintiff served as a clerical aide, then her political speech and affiliations are protected by the First Amendment. See Gordon, 88 F.Supp.2d at 57. On the other hand, if she served in a non-clerical role in which she campaigned throughout the community, she would be afforded no First Amendment protection from termination. Id. Concededly, the qualified immunity defense overlaps with Defendant's claims on the merits. See, e.g., Dube, 900 F.2d at 601 (Mahoney, generally concurring). Nonetheless, at this juncture the Court must determine that Defendant cannot successfully erect a qualified immunity defense.

## CONCLUSION

For the foregoing reasons, all claims are dismissed except for Plaintiff's free speech claims against Defendant in his individual capacity and Plaintiff's requests for injunctive relief.  Additionally, Defendant's motion to strike paragraphs 10, 12-16, 35, and 40 from the complaint is granted. The parties are directed to appear before the Court for a conference on June 18, 2004 at 9:30 a.m. to address the status of the case.

So Ordered:

2004 WL 1234041 (S.D.N.Y.)

END OF DOCUMENT