Not Reported in F.Supp.2d  
(Cite as: 1999 WL 118773 (E.D.N.Y.))  
<KeyCite History>

Page 205

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.

**Awilda MOY, Horatio Francis, Margaret Beaulieu and Olivia Lewis, individually and on behalf of all others similarly situated, Plaintiffs,**
v.
**Albert A. TERRANOVA, Melany K. Terranova, David Ruggieri, Jule J. Goldberg, Richard D. Griffiths, Thomas C. Creasy, Jr., Gaspar V. Garcia, John Doe, Jane Doe and John Doe, Inc., Defendants.**

No. 87 CV 1578(SJ).

March 2, 1999.

Willkie Farr & Gallagher, New York, By Roger Netzer, Esq., for Class Plaintiffs.

Burstein & Fass LLP, New York, By Judd Burstein, Esq., for Defendants Albert A. Terranova and Melany K. Terranova.

MEMORANDUM AND ORDER

JOHNSON, District J.

*1 Plaintiffs Awilda Moy, Horatio Francis, Margaret Beaulieu and Olivia Lewis ("Plaintiffs") bring this class action, individually and on behalf of all others similarly situated, against Albert and Melany Terranova and other defendants ("Defendants"). Plaintiffs allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d), as well as state law causes of action. Presently before the Court is the Terranovas' motion to dismiss Plaintiffs' Third Amended Complaint ("Complaint") in its entirety for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the motion is granted in part with respect to Plaintiffs' RICO claims and their cause of action for "common law fraud and misrepresentation."

BACKGROUND [FN1]

FN1. A prior opinion in this case contains a more detailed statement of the factual background. Moy v. Adelphi Institute, 866 F.Supp. 696 (E.D.N.Y.1994).

Plaintiffs were formerly enrolled at Adelphi Institute, Inc. ("Adelphi"), which owned and operated private business and data processing schools throughout the United States until its bankruptcy in 1987. The schools--including six facilities in the New York City boroughs of Brooklyn, Queens, and Manhattan (the "New York facilities")--purported to offer instruction in accounting, business administration, secretarial services, computer programming and word processing to individuals seeking entry-level positions in business. Adelphi was allegedly part of an interstate network of entities that included similar business and vocational schools throughout the United States (the "interstate network"), some of which were owned and operated by other Defendants in the case.

Albert Terranova ("Terranova") was Chairman, Chief Executive Officer and principal shareholder (with his wife Melany) of Adelphi. [FN2] He was authorized by the New York State Education Department to operate Adelphi's New York facilities. He was also Chief Executive Officer, Chairman of the Board and stockholder of Midwest Educational Systems, Inc., which owned and operated two other schools in the alleged interstate network, National College and Huron College.

FN2. Melany Terranova is now named as a Defendant only for purposes of the community-property laws of the State of Arizona. Third Amended Complaint ¶ 18. Hence, the case against her will stand or fall together with that against her husband. References hereinafter to "Terranova" will therefore refer to Albert Terranova only.

The complaint avers that Adelphi failed to provide the vocational training and placement services promised to enrolling students. Instead, Terranova and the other Defendants allegedly used the schools as a vehicle in a scheme to unlawfully obtain large sums of federal and state student grant monies and federally guaranteed student loan funds. Defendants purportedly sent salesmen into poor neighborhoods to recruit students on a commission basis, and induced students to enroll and apply for state and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



federal student assistance by systematically making fraudulent representations, such as: (1) attending Adelphi's New York facilities would enable Plaintiffs to obtain high-paying jobs, which would be available upon completion of their studies; (2) state and federal grants would cover their costs, and no loans would be needed; (3) Plaintiffs would receive a monthly stipend within weeks of enrollment; and (4) Plaintiffs would be given a high school equivalency diploma (G.E.D.) as part of the program. Defendants allegedly administered sham entrance examinations and admitted students into the program without regard to whether they could potentially benefit from the courses offered.

*2 Once recruited, Plaintiffs were forced to obtain student loans to pay for their classes. Plaintiffs allege that class instructors were unqualified and unlicensed or were replaced with unqualified substitutes when absent, and that Defendants canceled classes or reduced the number of hours of instruction. In addition, they contend that Defendants failed to furnish equipment necessary to complete the curriculum and did not provide job placement assistance. Plaintiffs claim that the Defendants' alleged failure to provide the promised education caused damages that include the value of Plaintiff's lost time while enrolled at Adelphi, monies paid toward tuition, and the amount of their indebtedness as a result of the loans.

On May 5, 1993, Defendants filed a motion to dismiss the original complaint in this action, which alleged eight claims for relief under federal and state law. The motion was granted in part as to claims alleging violation of Title IV of the Higher Education Resources and Assistance Act, 20 U.S.C. § 1070, negligent misrepresentation and breach of fiduciary duty. Moy v. Adelphi Institute, 866 F.Supp. 696 (E.D.N.Y.1994). The complaint was subsequently amended several times, most recently in August 1997, to allege that Terranova was the alter ego of Adelphi, drop RICO claims under 18 U.S.C. §§ 1962(a) and (b) and withdraw claims previously asserted against Melany Terranova (she remains a defendant only for the purposes of the community-property laws of the State of Arizona). Terranova then filed the present motion.

DISCUSSION

I. Standard for Motion to Dismiss

In considering a motion to dismiss made pursuant to Rule 12(b)(6), the court must construe all allegations in the complaint as true and must make all reasonable inferences in the light most favorable to the plaintiff. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir.1991). Dismissal under Rule 12(b)(6) should be granted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Yusuf v. Vassar College, 35 F.3d 709, 713 (2d Cir.1994) (citing Conley v.. Gibson, 355 U.S. 41, 45-46 (1957)).

II. Civil RICO

The RICO statute provides, in relevant part:
It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.
18 U.S.C. § 1962(c). An "enterprise" is defined to include "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity," while a "person" may include "any individual or entity capable of holding a legal or beneficial interest in property." Bernstein v. Misk, 948 F.Supp. 228, 235 (E.D.N.Y.1997) (quoting 18 U.S.C. §§ 1961(3) and (4)).

*3 To state a claim for damages under section 1962(c), Plaintiffs must first allege that "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in, (6) an enterprise (7) the activities of which affect interstate or foreign commerce." Id. at 234 (citing Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir.1983), cert. denied, 465 U.S. 1025 (1984)). Second, they must allege that they were "injured in [their] business or property by reason of a violation of § 1962." Bernstein, 948 F.Supp. at 234.

The Third Amended Complaint states that Defendants "have conducted and participated in, directly or indirectly, the affairs of the following enterprises through a pattern of racketeering activity ... (1) Adelphi Institute; (2) the association in fact

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



comprised of the interstate network; and (3) the association in fact comprised of Adelphi's New York facilities." Third Amended Complaint ¶ 86. It also alleges that Terranova was the alter ego of Adelphi. Id. at ¶¶ 80-81. Terranova presents two arguments in support of dismissing Plaintiffs' RICO claims: (1) that Plaintiffs fail to allege a distinct RICO "enterprise" as required for both claims; and (2) that they fail to allege an agreement by Terranova to commit two predicate acts in furtherance of the enterprise, as required to establish conspiracy to engage in a pattern of racketeering under section 1962(d).

A. Adelphi or the New York facilities as a distinct enterprise

It is well established that "the person and the enterprise referred to must be distinct" and, accordingly, "a corporate entity may not be both the RICO person and the RICO enterprise under section 1962(c)." E.g., Riverwoods Chappaqua Corp. v. Marine Midland Bank, 30 F.3d 339, 344 (2d Cir.1994); Bennett v. U.S. Trust Co., 770 F.2d 308, 315 (2d Cir.1985), cert. denied, 474 U.S. 1058 (1986). Furthermore, since a corporation only functions through its employees and agents, "this distinctiveness requirement may not be circumvented by alleging a conspiracy between the defendant [corporation] and its own employees or agents carrying on the regular affairs of the defendant." China Trust Bank of New York v. Standard Chartered Bank, PLC, 981 F.Supp. 282, 286 (S.D.N.Y.1997); see Riverwoods, 30 F.3d at 344-45 (bank and two of its loan officers could not form RICO enterprise) Hitchcock v. Woodside Literary Agency, 15 F.Supp.2d 246, 250 (E.D.N.Y.1998) (corporation and its owner-operators could not form enterprise). The distinct enterprise requirement applies equally to Plaintiffs' claim under section 1962(d); "if 'the prior claims do not state of cause of action for substantive violations of RICO,' then a RICO conspiracy claim necessarily 'does not set forth a conspiracy to commit such violations.' " Schmidt v. Fleet Bank, 16 F.3d 340, 353 (S.D.N.Y.1998) (quoting Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1064 (2d Cir.1996), vacated on other grounds, 119 S.Ct. 493 (1998)).

*4 With respect to Plaintiffs' allegation that the enterprise in this case consisted of Adelphi, the distinct enterprise requirement has clearly not been satisfied. Far from alleging a distinct RICO person and enterprise, the Third Amended Complaint explicitly states that Terranova and Adelphi are one and the same. [FN3] Nor does the alleged association in fact of Adelphi's New York facilities constitute an enterprise distinct from Terranova. The Second Circuit has held that the logic of Riverwoods prohibits a RICO claim based upon an alleged enterprise comprised of "legally separate entities" if such entities "were acting within the scope of a single corporate structure, guided by a single corporate consciousness." Discon, 93 F.3d at 1064 ("It would be inconsistent for a RICO person ... to be subject to liability simply because it is separately incorporated, whereas otherwise it would not be held liable under Riverwoods."); see also China Trust Bank, 981 F.Supp. at 286-87 (dismissal warranted where enterprise consisted solely of defendant bank and its New York branch, which was alleged to operate within same corporate structure). A fortiori, the facilities at which Adelphi conducted business in New York--which Plaintiffs concede were not even separate legal entities--cannot form an enterprise distinct from Adelphi.

> FN3. See, e.g., Third Amended Complaint at ¶ 81 ("Terranova was the alter ego of Adelphi because corporate formalities were regularly disregarded.... Members of the board of directors, other than Terranova, did not function in any meaningful way as directors.").

Plaintiffs contend that they have mitigated the distinctiveness problem by not naming Adelphi as a defendant, arguing that a controlling shareholder is distinct from the corporation he or she controls and therefore can be held liable under Riverwoods. Their reliance on Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256 (2d Cir.1995), cert. denied, 516 U.S. 1114 (1996) and Sluka v. Estate of Herink, No. 94 Civ. 4999, 1996 WL 612462 (E.D.N.Y. Aug. 13, 1996) for this proposition is misplaced. In Securitron, the Second Circuit held that two corporations and an individual (Schnabolk) who owned or operated each of them constituted an association-in-fact enterprise and that Schnabolk, along with each corporation, was also a proper RICO "person." 65 F.3d at 262-63. Unlike the present case, Securitron involved corporations that were expressly found to be distinct from one another, and thus the alleged enterprise, "while consisting of no more than those three RICO



persons, [was] distinct from each of them ." Id. at 263 (noting that "these corporations were active, operating businesses rather than two stacks of stationary"). Since there was only a "partial overlap" between each RICO person and the RICO enterprise, dismissal pursuant to Riverwoods was not warranted. See Riverwoods, 30 F.3d at 344; Jacobson v. Cooper, 882 F.2d 717, 720 (2d Cir.1989).

Sluka similarly involved an alleged association-in-fact between several corporations and their individual shareholders, officers or agents. The corporate defendants were alleged to be alter egos of one another and of the deceased Herink (their former controlling shareholder and operator). The court dismissed the complaint pursuant to Fed.R.Civ.P. 9(b) for failure to plead fraud with sufficient particularity and held that, in any amended pleading, the plaintiffs must either drop the corporations--but not Herink--as defendants or eliminate the alter ego allegation. 1996 WL 612462, at **5-8. While Plaintiffs rely on this decision to argue that the rationale expressed in Riverwoods affects only the liability of corporations under section 1962(c), rather than individuals, the court did not directly address that issue; nor was such a conclusion necessary to its decision. [FN4] Other courts have squarely rejected Plaintiffs' interpretation of Riverwoods, and Plaintiff's position appears to be foreclosed by the opinion in Discon. See Discon, 93 F.3d at 1064 (stating that it would be "especially inappropriate" to hold that individual defendants "acting on behalf of the enterprise-corporation" are "distinct" from the enterprise); CPF Premium Funding, Inc. v. Ferrarini, No. 95 Civ. 4621, 1997 WL 158361, at **12-13 (S.D.N.Y. April 3, 1997) ("Discon leaves little room for doubt: when an individual ... has acted in a corporation's behalf, he does not function as an entity distinct from that corporation, and should not be held liable under § 1962(c)."); see also Protter v. Nathan's Famous Sys. Inc., 925 F.Supp. 947, 956 (E.D.N.Y.1996) (holding, prior to Discon, that corporate officers acting in the course of their employment did not form an association-in-fact enterprise distinct from the corporation and could not be held individually liable under RICO). [FN5]

> FN4. The court described the allegations in the complaint as solely encompassing acts carried out by the individual defendants in the course of the corporations' business. Id. at *7. Since it rejected as inconsistent with Riverwoods the proposition that "a corporation and its employees, officers or directors may constitute a RICO enterprise distinct from the corporation itself," see id. (quotation omitted), the court appears to have assumed that the Riverwoods limitation on RICO liability applies only to instances where the corporation, rather than an individual officer or agent, is alleged to be the RICO "person" as well as the enterprise. However, this distinction was not expressly stated and would have been dictum in any event, since the court had already concluded that the complaint should be dismissed under Rule 9(b).

> FN5. The only other cases from this circuit cited by Plaintiffs were decided before Discon and are thus inapposite. See Toto v. McMahon, Brofman, Morgan & Co., No. 93 Civ. 5894, 1995 WL 46691, at *7 (S.D.N.Y. February 7, 1995); United States v. Weinberg, 656 F.Supp. 1020, 1024 (E.D.N.Y.1987).

B. The interstate network as a distinct enterprise

*5 Plaintiffs have not pleaded sufficient facts to state a claim alleging that the interstate network constituted a RICO enterprise. The Supreme Court has explained that an enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," and is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583 (1981). "Courts in the Second Circuit should look to the 'hierarchy, organization, and activities' of an association-in-fact to determine whether 'its members functioned as a unit." ' Bernstein, 948 F.Supp. at 235 (quoting United States v. Coonan, 938 F.2d 1553, 1560-61 (2d Cir.1991), cert. denied, 503 U.S. 941 (1992)).

Here, Plaintiffs identify a number of companies allegedly forming the interstate network and Defendants' positions with or ownership interests in those companies, but otherwise fail to offer any allegations regarding the continuity or structure of the group or how the entities joined together; indeed, the complaint does not even allege that the group's participants shared a common purpose. Instead, it essentially describes acts carried out by



Terranova and others on behalf of Adelphi. Plaintiffs' conclusory "naming of a string of entities" does not adequately allege an enterprise and, therefore, their RICO claims should be dismissed. Richmond v. Nationwide Cassel. L.P., 52 F.3d 640, 646 (7th Cir.1995) (affirming dismissal of complaint); see also First Nationwide Bank v. Gelt Funding, Corp., 820 F.Supp. 89, 98 (S.D.N.Y.1993) (dismissing complaint that contained only "[c]onclusory allegations that disparate parties were associated in fact by virtue of their involvement in the real estate industry in the 1980s"), aff'd, 27 F.3d 763 (2d Cir.1994), cert. denied, 513 U.S. 1079 (1995); A. Burton White, M.D., P.C. v. Beer, 679 F.Supp. 207, 210-11 (E.D.N.Y.1988) (dismissing RICO claim where complaint simply listed "persons employed by or associated with Starwood," without "a description of the structure of Starwood as an enterprise, the purpose of the enterprise and an allegation that the enterprise continued indefinitely"). Given the Court's holding, it is not necessary to consider Terranova's contention that the section 1962(d) claim should also be dismissed for failure to adequately state his role in the alleged conspiracy.

III. State Law Claims

A. Pendent jurisdiction

Plaintiffs have alleged a violation of section 349 of the New York General Business Law, "common law fraud and misrepresentation," breach of contract and fraudulent inducement to enter into contract. Since this Court's jurisdiction was invoked based solely upon the presence of a federal question, Terranova argues that the Court should decline to exercise pendent jurisdiction over the state law claims.

The decision whether to exercise pendent jurisdiction is discretionary, and involves consideration of "judicial economy, convenience, fairness, and comity." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (citing United Mine Workers v. Gibbs, 383 U.S. 715 (1966)). Furthermore, it is "appropriate to take account ... of the already completed course of the litigation." Gibbs, 383 U.S. at 727. In this case, given that litigation has now been pending for over eleven years and discovery has long since been completed, dismissal of the state law claims would be fundamentally unfair and wasteful. See Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir.1994) ("If ... dismissal of the federal claim occurs late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair.") (quotation omitted). Accordingly, while not bound to do so, this Court will exercise its discretion to retain jurisdiction over Plaintiffs' state law claims.

B. Common law misrepresentation and fraudulent inducement

*6 Finally, Terranova seeks dismissal of Plaintiffs' misrepresentation and fraudulent inducement claims on the ground that they are necessarily duplicative of the breach of contract claim. Under New York law, "no cause of action to recover damages for fraud arises when the only fraud alleged relates to a breach of contract," and Plaintiffs' third cause of action (for "fraud and misrepresentation") should therefore be dismissed. S.S.I.G. Realty, Inc. v. Bologna Holding Corp., 624 N.Y.S.2d 225, 227 (N.Y.App.Div.1995); see also Volga-Inconsult-Invest v. United Management Corp., No. 93 Civ. 4229, 1997 WL 139005, at *5 (E.D.N.Y. March 4, 1997) ("The failure to perform a promise of a future act that itself constitutes a contractual obligation does not state a fraud claim."). However, the claim that Defendants made promises with a preconceived intention of not performing them "alleges a representation of present fact ... collateral to, but which was the inducement for the contract," and thus is not duplicative. Deerfield Communications Corp. v. Chesebrough-Ponds, Inc., 502 N.E.2d 1003, 1004 (N.Y.1986) (quotations and citations omitted); see also United Management Corp., 1997 WL 139005, at *5 ("[M]isrepresentation of a present fact, as opposed to a future intention, does state a claim for fraudulent inducement, which is separate from a contract claim."). Because Plaintiffs have pleaded the elements of a claim for fraudulent inducement, dismissal of that cause of action is not warranted.

CONCLUSION

For the reasons stated above, Plaintiffs' first and third causes of action, alleging violations of 18 U.S.C. §§ 1962(c) and (d) and "common law fraud



Not Reported in F.Supp.2d                                                    Page 210
(Cite as: 1999 WL 118773, *6 (E.D.N.Y.))

and misrepresentation," respectively, are hereby dismissed with prejudice. Otherwise, Terranova's motion is denied and Plaintiffs may proceed on the remaining claims.

  SO ORDERED.

  1999 WL 118773 (E.D.N.Y.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo