United States District Court; S.D. New York.

**Record Club of America, Inc.**
**v.**
**Capitol Records, Inc., et al.**

**70 Civ. 3315 HRT**

Filed September 8, 1971

TYLER, D. J.

Memorandum

*1 This is a private antitrust action brought under 15 U. S. C. §§ 15, 26 seeking treble damages and injunctive relief. Various defendants have filed motions for partial summary judgment, and after a 60-day discovery period ordered by the court, Rule 56(f), F. R. Civ. P.; see memorandum filed January 28, 1971, those motions are now ready for determination.

Plaintiff is a seller of long-playing records ("LP's") and tapes through the "record club" method. Customers are solicited by the offer of reduced prices and occasional bonuses and become obligated to purchase a certain number of recordings after payment of a fee. Plaintiff obtains finished LP's and tapes from manufacturers and distributors and in turn sells them directly to its customers.

Defendants may be divided into three basic groups: (1) the "Capitol defendants" [FN1] consisting of Capitol Records, Inc., its parent and subsidiaries; (2) the "Longines defendants" [FN2] consisting of Longines Symphonette Corporation, its parent and subsidiaries; and (3) the "licensor defendants" [FN3] consisting of various independent LP and tape manufacturers and producers. Capitol and Longines compete with plaintiff in the record club distribution market, but they produce and manufacture a substantial portion of their own LP's and tapes. In addition, Capitol has licensing agreements with the licensor defendants, pursuant to which Capitol agrees to pay certain royalties and obtains the right, either exclusive or non-exclusive, to manufacture LP's and tapes for record club distribution from master recording tapes supplied by the licensor. These license agreements are the fundamental basis for plaintiff's complaint.

FN1 Capitol Records, Inc., Capitol Industries, Inc., Audio Devices, Inc., Capitol Records Distributing Corp., Capitol Director Marketing Corp. Electrical & Musical Industries Limited (EMI), parent of the Capitol organization, is represented by separate counsel here, but will be considered one of the "Capitol defendants".

FN2 Longines-Wittnauer Watch Co., Longines Symphonette Corp., Credit Services, Inc., Citadel Record Club, Inc.

FN3 A & M Records, a partnership, Irving Music, Inc., d/b/a A & M Records, Inc., Herb Alpert and Jerome Moss, partners in A & M Records, Apple Records, Inc., Abkco Industries, Inc., Audio Fidelity Records, Inc., Decca Record Co. Limited, London Records, Inc., London Imports, Mainstream Records, Inc., Metro-Goldwyn-Mayer, Inc., Transcontinental Investing Corp., Paramount Pictures Corporation, Pickwick International, Inc., Polydor Incorporated, Scepter Records, Inc., The Shelby Singleton Corporation, Transamerica Corp., Liberty/UA Records, Inc., Liberty/UA Distributing Corp. and The Total Sound, Inc.

The complaint contains seven counts. Count I includes all defendants and alleges that, together, the Capitol license agreements and certain acquisitions, discussed more fully below, violate sections 1 and 3 of the Sherman Act, 15 U. S. C. §§ 1, 3. Count II is similar but is addressed only to the licensing agreements. Count III includes all defendants and alleges that each individual Capitol license agreement violates sections 1 and 3 of the Sherman Act, section 7 of the Clayton Act, 15 U. S. C. § 18, sections 2(a) and 2(f) of the Robinson-Patman Act, 15 U. S. C. §§ 13(a), (f), and the common law of unfair competition. [FN4] Count IV alleges that the Longines defendants violated sections 1 and 3 of the Sherman Act and section 7 of the Clayton Act by acquiring the Citadel Record Club. Count V alleges that the Capitol defendants violated sections 1 and 3 of the Sherman Act and section 7 of the Clayton Act by acquiring Audio Devices, Inc., a manufacturer of blank tape and recording discs. Count VI includes all defendants and asserts that a management contract, pursuant to which Longines

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



took over operation of the Capitol Record Club, violated sections 1 and 3 of the Sherman Act. Count VII alleges that Longines' acquisition of Longines stock violated sections 1 and 3 of the Sherman Act and section 7 of the Clayton Act.

FN4 Alleged violations of section 5(a)(1) of the Federal Trade Commission Act, 15 U. S. C. § 45(a)(1), have already been dismissed by this court. See memorandum filed October 9, 1970.

***2** Defendants' motions, addressed to various counts and legal theories of the complaint, will be taken up in turn.

A. Counts I and II

Defendant Paramount, [FN5] joined by defendant Polydor [FN6] and the Capitol defendants, has moved for partial summary judgment on the ground that its licenses with Capitol were non-exclusive by their terms and in their performance and that such licenses cannot violate the Sherman Act as a matter of law. In addition, it is asserted that plaintiff never sought a license from either of the moving licensor defendants. Plaintiff, however, has sufficiently controverted the material facts underlying these assertions. Thus, the motions must be and are denied. Rule 56(e), F. R. Civ. P.; see memorandum filed July 9, 1971, denying similar motions by the A&M and Apple defendants. [FN7]

FN5 Paramount Pictures Corporation, Famous Music Corporation, Dot Records, Inc.

FN6 Polydor Incorporated, The Shelby Singleton Corporation.

FN7 It is true that Paramount's position is stronger than that of the A & M and Apple defendants in that Paramount had concurrent license agreements with the Columbia, RCA and Capitol Record Clubs. Nonetheless, the standards for summary judgment in complaints alleging a conspiracy in restraint of trade are high, Poller v. Columbia Broadcasting System, Inc. [1962 TRADE CASES P 70,228], 368 U. S. 464, 473 (1962); First National Bank of Arizona v. Cities Service Co. [1968 TRADE CASES P 72,458], 391 U. S. 253, 289-90 (1968), and Paramount has failed to show the absence of any material issue of fact which might make it part of such a conspiracy as alleged and factually supported, at least to this point, by plaintiff. Cf. United States v. A. Schrader's Son, Inc., 252 U. S. 85, 99 (1920).

B. Count III: Sherman Act

Capitol, joined by Longines and Paramount, has moved for partial summary judgment, contending that licensing agreements, whether exclusive or non-exclusive, are to be judged by the "rule of reason" and that, so judged, these agreements cannot constitute a Sherman Act violation. Even if a violation might be found, it is argued, the causal connection with any injury allegedly suffered by plaintiff would be too remote to justify relief. The short answer to these contentions is that both the "rule of reason" test and the damage causality question are issues of fact to be determined at trial. See Radovich v. National Football League, 352 U. S. 445 (1957). Although it is true that most cases have held exclusive agreements valid under the Sherman Act, these determinations have been made on the basis of a full trial record. [FN8] Moreover, though an exclusive contract may not be illegal, a conspiracy to eliminate competition in obtaining that contract may be. United States v. Yellow Cab Co. [1946-1947 TRADE CASES P 57,576], 332 U. S. 218, 229 (1947). The motions are denied.

FN8 See, e.g., Packard Motor Car Company v. Webster Motor Car Company [1957 TRADE CASES P 68,682], 243 F. 2d 418 (D. C. Cir.), cert. denied, 355 U. S. 822 (1957); Bascom Launder Corp. v. Telecoin Corp. [1953 TRADE CASES P 67,472], 204 F. 2d 331 (2d Cir.), cert. denied, 345 U. S. 994 (1953), following United States v. Bausch & Lomb Optical Co., 45 F. Supp. 387, 398-99 (S. D. N. Y. 1942), aff'd [1944-1945 TRADE CASES P 57,224] 321 U. S. 707 (1944); United States v. Columbia Pictures Corporation [1960 TRADE CASES P 69,766], 189 F. Supp. 153 (S. D. N. Y. 1960); Foundry Services v. Beneflux Corp. [1953 TRADE CASES P 67,455], 110 F. Supp. 857 (S. D. N. Y.), rev'd on other grounds [1953 TRADE CASES P 67,554], 206 F. 2d 214 (2d Cir. 1953). Schwing Motor Company v. Hudson Sales Corporation [1956 TRADE CASES P 68,292], 138 F. Supp. 899 (D. Md.), aff'd [1956 TRADE CASES P 68,564], 239 F. 2d 176 (5th Cir. 1956), cert. denied, 355 U. S. 823 (1957) is contra, but it involved a motion to dismiss and turned upon insufficient allegations of injury to

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



competition.

C. Count III: Clayton Act

*3 Capitol, joined by Longines, Paramount, the A&M defendants and Pickwick International, Inc., has moved for partial summary judgment, arguing that the challenged license agreements do not convey "assets" within the meaning of the Clayton Act and are to be tested solely under the Sherman Act. Although the position has some surface appeal, I think it is foreclosed at this stage of the case by United States v. Columbia Pictures Corporation [1960 TRADE CASES P 69,766], 189 F. Supp. 153 (S. D. N. Y. 1960). There an exclusive 14-year license of 600 motion pictures for television exhibition was held to convey "assets" under section 7. It may be that after trial one or more of the license agreements challenged here will be found not to convey substantial "assets" when viewed in context of all relevant circumstances, but that determination cannot be made now. See Smith-Corona Marchant, Inc. v. American Photocopy Equipment Company [1963 TRADE CASES P 70,718], 217 F. Supp. 39 (S. D. N. Y. 1963). Also, defendants candidly concede that their argument that section 7 cannot be the basis of a private right of action has been recently rejected in this Circuit. Gottesman v. General Motors Corporation [1969 TRADE CASES P 72,888], 414 F. 2d 956 (2d Cir. 1970). The motions, thus, are denied. [FN9]

FN9 Although the parties have not addressed the point, it is assumed that the licensor defendants as alleged sellers of assets cannot be included in the Clayton Act section 7 allegations. See discussion of Count VII infra.

D. Count III: Robinson-Patman Act

Capitol, joined by Longines, Paramount, A&M and Pickwick, has moved for partial summary judgment on the ground that license agreements are not subject to the Robinson-Patman Act. Their arguments are at least in part persuasive. The statute requires sales to "different purchasers of commodities of like grade and quality". 15 U. S. C. § 13(a). Viewed in the most favorable terms, the complaint and plaintiff's supporting facts allege simply a license to Capitol and a refusal to so license plaintiff. It is well settled that a sale and refusal is not subject to the statutory prohibition. Jones v. Metzger Dairies Inc. [1964 TRADE CASES P 71,187], 334 F. 2d 919, 924-25 (5th Cir. 1964), cert. denied, 379 U. S. 965 (1965); Shaw's, Inc. v. Wilson-Jones Co. [1932-1939 TRADE CASES P 55,230], 105 F. 2d 331 (3d Cir. 1939). The fact that plaintiff may have paid more for "finished" LP's and tapes through normal distribution channels than the cost to Capitol using licenses and its own manufacturing processes cannot be the basis for a price discrimination comparison. In addition, I conclude that the right to manufacture embodied in these license agreements is not a "commodity" within the meaning of the statute. See Tri-State Broadcasting Company v. United Press International, Inc. [1966 TRADE CASES P 71,945], 369 F. 2d 268 (5th Cir. 1966); LaSalle Streeet Press, Inc. v. McCormick and Henderson, Inc. [1969 TRADE CASES P 72,733], 293 F. Supp. 1004 (N. D. Ill. 1968).

*4 Plaintiff has alleged, however, that Capitol purchased "finished" LP's and tapes from certain licensor defendants at prices more favorable than those offered to plaintiff. Defendants have denied these allegations. This issue, then, is one of fact to be determined at trial. To this limited extent, the Robinson-Patman theory will remain in the case.

E. Count III: Unfair Competition

Capitol, joined by Longines, Paramount, A&M and Pickwick, has moved to dismiss the common law unfair competition allegations of Count III for failure to state a claim upon which relief can be granted, Rule 12(b)(6), F. R. Civ. P. "Common law unfair competition must be grounded in either deception or appropriation of the exclusive property of the plaintiff." Societe Comptoir De L'Industrie Cotonniere Establissements Boussac v. Alexander's Department Stores, Inc., 299 F. 2d 33, 36 (2d Cir. 1962). See also Smith v. Chanel, Inc., 402 F. 2d 562 (2d Cir. 1968). There have been some extensions of the unfair competition doctrine to such practices as deceptive advertising, Electronics Corporation of America v. Honeywell, Inc., 428 F. 2d 191 (1st Cir. 1970), and commercial bribery, Springfield Television Broadcasting Corp. v. Kittyhawk Television Corp., Civ. No. 3776 (S. D. Ohio, May 1, 1970), but the doctrine remains essentially a limited one. See, generally, R. Callman, The Law of Unfair Competition,

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Trademarks and Monopolies § 4.1 (3d Ed. 1967). Plaintiff has stated no specific theory by which its claims might fall within that circumscribed doctrine. Even if state law were to apply, see Maternally Yours v. Your Maternity Shop, 234 F. 2d 538, 540 n. 1 (2d Cir. 1956), and putting aside the question of which state, the most liberal state law of unfair competition or business torts would not embrace the acts alleged in Count III. See R. Callman, supra. Moreover, the antitrust laws are more than adequate for challenging defendants' conduct. The motions are granted.

F. Count V

The Capitol defendants have moved for partial summary judgment on the ground that plaintiff lacks standing, under both the Sherman and Clayton Act theories, to challenge Capitol's 1968 acquisition of Audio Devices, Inc. The pertinent undisputed facts are as follows. Before the acquisition, Audio was an independent manufacturer of blank tapes and recording discs. It also was a supplier of a major portion of Capitol's requirements for producing finished recordings. After the acquisition, Capitol continued to purchase from other suppliers and Audio continued to sell to other recording producers. Plaintiff does not manufacture its own finished recordings and has no requirements for blank tapes and recording discs.

As developed under case law, the test for standing to challenge acquisitions or mergers in private antitrust actions is a relatively strict one. [FN10] The requirements in this Circuit were recently spelled out in Billy Baxter, Inc. v. Coca-Cola Company [1970 TRADE CASES P 73,307], 431 F. 2d 183 (2d Cir. 1970). Plaintiff must show a direct causal connection between an antitrust violation and an injury, and "this connection must also link a specific form of illegal act to a plaintiff engaged in the sort of legitimate activities which the prohibition of this type of violation was clearly intended to protect." In other words, plaintiff must be in the "target area" of defendants' alleged illegal act. Id. at 187. [FN11]

FN10 See, e.g., SCM Corporation v. Radio Corporation of America [1969 TRADE CASES P 72,674], 407 F. 2d 166 (2d Cir.), cert. denied, 395 U. S. 943 (1969); Volasco Products Company v. Lloyd A. Fry Roofing Company [1962 TRADE CASES P 70,451], 308 F. 2d 383, 394-5 (6th Cir. 1962), cert. denied, 372 U. S. 907 (1963); Kirihara v. Bendix Corporation [1969 TRADE CASES P 72,941], 306 F. Supp. 72, 90-91 (D. Hawaii 1969). Although most of the cases in this area deal with alleged Clayton Act violations, I assume that the test for alleged Sherman Act violations is at least as stringent. Cf. United States v. Columbia Steel Co. [1948-1949 TRADE CASES P 62,260], 334 U. S. 495, 519-31 (1948).

FN11 I do not regard Gottesman v. General Motors Corporation [1969 TRADE CASES P 72,888], 414 F. 2d 956 (2d Cir. 1969) as being inconsistent with the strict Billy Baxter test. Plaintiffs in Gottesman, where standing was not at issue, were minority shareholders of General Motors and alleged that their corporation had to pay higher uncompetitive prices for duPont products caused directly by duPont's 23 percent stock interest in General Motors. Dailey v. Quality School Plan, Inc. [1967 TRADE CASES P 72,153], 380 F. 2d 484 (5th Cir. 1967) is similarly distinguishable.

***5** The Capitol-Audio merger was vertical in nature, a manufacturer acquiring one of its suppliers. The primary vice of such a merger is that the foreclosing of competitors of either of the merged companies, either from a source of supply or a market for their products, may act as a clog on competition-i.e. that rivals are or may be deprived of a fair opportunity to compete for a portion of the market. Brown Shoe Co., Inc. v. United States [1962 TRADE CASES P 70,366], 370 U. S. 294, 323-24 (1962); United States v. Kennecott Copper Corporation [1964 TRADE CASES P 71,181], 231 F. Supp. 95, 103-04 (S. D. N. Y. 1964), aff'd [1965 TRADE CASES P 71,458], 381 U. S. 414 (1965). In addition, a vertical merger may violate the antitrust laws by conferring "deep pocket" or "rich parent" power, i.e., competitive advantages gained by an acquired corporation from access to the resources of its new parent. See Reynolds Metals Company v. Federal Trade Commission [1962 TRADE CASES P 70,471], 309 F. 2d 223 (D. C. Cir. 1962); United States v. Kennecott Copper Corporation, supra at 104.

Applying these principles to the case at hand, plaintiff does not meet the Billy Baxter requirement of showing that it was in the "target area" likely to be directly harmed by the Capitol-Audio vertical

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



merger. Although plaintiff does compete with Capitol in the record club market, presumably the line of commerce at issue in this case, it is not a competitor in the manufacture and production of finished recordings. Therefore, plaintiff has not been foreclosed from an available market or a source of supply as a result of this merger. Nor is plaintiff in a position to be directly affected by any "rich parent" competitive advantages Audio may have gained from Capitol, not being a competitor of Audio. The fact that this acquisition may have increased the size, resources and competitive ability of Capitol, as alleged but not supported by plaintiff, is too remote and speculative to be a basis for plaintiff's standing to challenge the merger. New Grant-Patten Milk Company v. Happy Valley Farms, Inc. [1963 TRADE CASES P 70,922], 222 F. Supp. 319 (E. D. Tenn. 1963). So far as I can determine, such an "inverse deep pocket" theory has never been the basis for a vertical merger challenge. The motion is granted.

G. Count VII

Capitol has moved for partial summary judgment on the theory that it was the seller in the 1969 transaction by which Longines acquired the Capitol Record Club and therefore cannot be held liable under section 7 of the Clayton Act. [FN12] Again, the essential undisputed facts are as follows. The challenged transaction was twofold. In one agreement, Capitol granted to Longines a license to distribute LP's and tapes manufactured from masters owned by Capitol or licensed to it. In return, Capitol received certain guarantees and rights to royalties from Longines. In a second agreement, Capitol sold to Longines certain assets of the Capitol Record Club in return for 5 percent of the outstanding common stock of Longines Symphonette Corporation. Subsequently, this stock was exchanged for 2.6 percent of the outstanding common stock of Longines-Wittnauer Watch Company.

FN12 Originally, the Longines defendants had joined in this motion, but because the positions of Capitol and Longines with respect to the motion are entirely different, the Longines motion apparently has been withdrawn.

***6** After considering the affidavits and contentions of both sides, I am convinced that the essence of the challenged transaction was a sale of the Capitol Record Club to Longines, in effect a horizontal merger. Although there is a dearth of case law on the point, I am also convinced by the plain language of section 7 of the Clayton Act that a seller in a challenged transaction is not meant to be included in the statutory proscription. See Dailey v. Quality School Plan, Inc. [1967 TRADE CASES P 72,153], 380 F. 2d 484, 488 (5th Cir. 1967). Any potential restraint of competition in the relevant market, here record club distribution, would come from the acquiring corporation, not the corporation acquired. Even if Capitol could be considered a purchaser in the transaction, plaintiff has understandably failed to produce any factual support for its theory that Capitol's receipt of a 2.6 percent stock interest in Longines in some way restrained competition in the record club market. Nor is it necessary, as contended by plaintiff, to deny Capitol's motion so that the court will be able to fashion appropriate relief. Capitol is very much before the court in other aspects of this case and fully subject to its orders and directions. The motion is granted.

H. Motion to Amend Complaint

Although not directly related to the motions discussed herein, I note that plaintiff's motion to amend the complaint with regard to the Apple and Abkco defendants is still pending. For some reason, those defendants have never responded to that motion, or, if they have, they have not filed such responses with the court. In the interest of resolving all of the loose ends in this case, if the Apple and Abkco defendants fail to respond within 10 days from the date of this decision, I will assume that they do not object to the proposed amendment.

Conclusion

The disposition of these motions should materially aid in the eventual prompt disposition of the action on the merits, both by narrowing the legal issues and by defining the bounds of discovery. Nevertheless, I believe that these motions have consumed an inordinate amount of time, expense and paper. [FN13] There is no need for this case to slide, however unwittingly, into that unfortunate category of actions known as "protracted antitrust litigation," particularly when the case is assigned to an individual judge for all purposes. It will conserve money and time if the merits of this case

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



are determined at trial as expeditiously as possible. To this end, counsel are directed to proceed promptly with full discovery and to make no more formal motions unless absolutely necessary. If required, discovery problems can be resolved in an informal conference with the undersigned. In any event, a conference will be held in my courtroom on February 1, 1972 at 4:15 p.m. for a report on progress in the case.

FN13 The pending motion to strike the affidavit of Sigmund W. Friedman for failure to meet the requirements of F. R. Civ. P. Rule 56(e) is a good example. Although such motions are permitted by the Rules and the affidavit undoubtedly contains vague, general and very conclusory statements, this court is competent to determine how much weight, if any, to give such an affidavit. The motion is denied. It is also evident that discovery has been rather rigidly resisted throughout all of the proceedings to date.

***7** The various motions are disposed as indicated herein.

It is so ordered.

1971 WL 558 (S.D.N.Y.), 1971 Trade Cases P 73,694

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

