## AGENCY AGREEMENT

THIS AGREEMENT, dated as of March 7, 1997, is between TITAN SPORTS, INC. ("Titan"), a Delaware corporation with its principal place of business at 1241 East Main Street, Stamford, Connecticut 06902, and STANLEY SHENKER & ASSOCIATES, INC. ("SSAI" or "Agent"), a New Jersey corporation with its principal place of business at 1225 River Road, Edgewater, New Jersey 07020.

1. Definitions: For purposes of this Agreement, the following definitions will apply:

   (a) The term "Copyrights" shall mean all copyrights now or hereafter owned by Titan.

   (b) The term "Events" shall mean the professional wrestling exhibitions produced, promoted, and performed by Titan live, or broadcast by free, cable, or pay television, as well as any future iterations thereof, whether in cartoon, comic or animated form.

   (c) The term "Existing Rights Holders" shall mean those parties that have, prior to the commencement of this Agreement, been granted a license by Titan without Agent's involvement to exercise the Merchandising Rights or Broadcasting Rights as set forth on Exhibit "A" which is attached hereto and hereby incorporated by reference.

   (d) The term "Intellectual Property" shall mean the Rights of Publicity, the Trademarks, the Copyrights, and all other proprietary rights relating to the Events.

   (e) The term "Licensee" shall mean a party located in the Territory that is granted a license after this Agreement goes into effect, through the efforts of Agent, to exercise the Merchandising Rights.

   (f) The term "Merchandising Rights" shall mean the right to use the Intellectual Property: (i) in connection with the manufacture, distribution, sale, and advertising in the Territory of merchandise articles of every type and description, both products and promotions, including, without limitation, toys, games, clothing, novelties, household items, paper products, and sporting goods; and (ii) in connection with the preparation and use in the Territory of materials designed to advertise and promote the goods, services or general business operations of a Licensee, including, without limitation, advertisements prepared for all print and audiovisual media uses (including radio, television, and motion pictures), packaging materials, point-of-sale displays, premium items, and other such promotional items.

   (g) The term "Talent" shall mean all individuals who perform in the Events including, without limitation, the professional wrestlers who perform in the Events, as well as any future iterations thereof, either real or fictional, whether in cartoon, comic or animated form.

f:\users\legal2\word\contract\misc\shenkcc.doc
3/25/97

(h) The term "Right of Publicity" shall mean the likenesses, physical characteristics, personalities, characters, and personas of the Talent.

(i) The term "Territory" shall mean the entire world, with the exception of Germany and Philippines.

(j) The term "Trademarks" shall mean all symbols, designs, styles, emblems, logos, and marks used in connection with the Events including, but not limited to, the name WORLD WRESTLING FEDERATION or WWF, the WWF logo or logos, the mark WORLD WRESTLING FEDERATION or WWF SUPERSTARS, and the names of Talent, excluding the initials WWF in block letters.

2. TERM OF AGREEMENT

The term of this Agreement shall be effective as of August 20, 1996, and shall continue through December 31, 1998 ("Term"), unless terminated pursuant to Paragraph 13, below.

3. KEY PERSON

SSAI expressly acknowledges and agrees that the services to be performed by it hereunder shall be specifically and primarily performed by Stanley Shenker, who hereinafter shall be described as the "key person" or "Shenker".

4. Scope of Agency

Subject to the terms and conditions of this Agreement, Titan appoints Agent to act as its exclusive agent in the Territory, except for licensing agreements with Existing Rights Holders and Agent hereby accepts such appointment and agrees to use its best efforts in performing the following services for Titan in the Territory:

a. negotiating the terms of license agreements with prospective Licensees relating to Merchandising Rights, as described hereinabove. Nothing herein contained shall be construed so as to obligate Titan to accept any agreement presented to Titan by Agent for approval, or negotiated by Agent for Titan, or to grant Agent any right of acceptance or execution of any particular agreement for Titan;

b. servicing all license agreements except those as noted in Exhibit "A" with Licensees, including, without limitation: (i) providing Licensees with such materials available to Agent relating to the Intellectual Property as they may require in order to make effective use of the Intellectual Property under such agreements; (ii) assisting Titan in assuring that all Licensees use only approved artwork in exploiting the rights granted them under their agreements; (iii) assisting Titan in assuring that all copyright and trademark notice requirements (both governmental and imposed by Titan) are satisfied by Licensees, in accordance with the terms of their agreements; (iv) assisting Titan in assuring that Licensees submit to Titan, for its prior approval, all products and

f:\users\legal2\word\contract\misc\shenkcc.doc    2
3/25/97

advertising materials which they propose to manufacture, sell, distribute, or use under their agreements; and (v) otherwise assisting Titan and the Licensees in exploiting the Intellectual Property in the Territory.

5. <u>Non-Competition</u>

Notwithstanding anything herein to the contrary, Agent agrees that during the term of this Agreement, and for one (1) year after its termination for any reason, or expiration, neither Agent nor the key person shall perform or provide any services similar to those hereunder for any third party engaged or involved in the promotion, distribution, performance, or other dissemination of professional wrestling events or activities.

6. <u>Compensation to Agent</u>

a. In full consideration for the services to be rendered under this Agreement, and for the agreement of Non-Competition as set forth above, Agent shall be entitled to receive a commission of eleven (11%) percent of royalties received by Titan on the licensing deals or agreements, including renewals thereof, other than those set forth in Paragraph 6(d) below, negotiated and procured specifically by Agent pursuant to, and during the term of, this Agreement. Said commissions shall be payable to Agent within fifteen (15) business days of receipt by Titan of the royalties from Licensees on which said commissions have been earned.

b. As the effective date of this Agreement is specifically agreed to be August 20, 1996, this compensation schedule shall apply to all agreements negotiated and procured by Agent which were consummated and executed by Titan as of the date of the parties' execution of this Agreement and for which Agent has not yet received commissions; however, Agent shall not be required to reimburse Titan on commissions already received by Agent pursuant to the different compensation schedule in effect prior to the execution of this Agreement by Agent.

c. Agent shall not be entitled to commissions on royalties paid Titan by Licensees as a result of activities by Existing Rights Holders, or as a result of Titan's efforts. Further, Agent shall not be entitled to any compensation as a result of the following activities of Titan in the Territory, unless Titan specifically requests Agent to become involved in any such activity and, in that event, the parties will discuss the appropriate compensation on a case-by-case basis: the exploitation of television rights in the Territory on agreements or deals not procured by Agent; live productions of the Events; the sale of merchandise using the Intellectual Property at the sites of live productions of the Events; or the sale of merchandise using the Intellectual Property via mail order or electronic sales, including sales through Titan catalogs, periodicals, fan clubs, or Internet sites.

d. Should Titan purchase products containing the Intellectual Property from any entity sourced by SSAI for re-sale through Titan's catalog, venue and/or electronic sales operations, Titan shall compensate SSAI as follows: seven percent (7%) of net catalog and electronic sales, defined as gross catalog and electronic sales, less twenty-five percent (25%) for

f:\users\legal2\word\contract\misc\shenkcc.doc    3
3/25/97

talent royalties; and three and one-half percent (3-1/2%) of net venue sales, defined as gross venue sales, less twenty five percent (25%) for talent royalties and thirty-five percent (35%) for building share,

7. Expenses of Agent

Agent shall be required to assume, without reimbursement from Titan or any other party, all expenses incurred in performing its obligations hereunder, including, without limitation, all amounts expended in promoting the Intellectual Property and any Events to be performed in the Territory, all salaries, fees, or commissions paid by Agent to any salespeople or personnel, travel expenses, legal expenses, and all direct and indirect expenses of maintaining its offices, unless Titan agrees in writing to reimburse Agent in advance of incurring such expense.

8. Arbitration

Any disputes between the parties relating to commissions payable to Agent by Titan shall be submitted to binding arbitration in Stamford, Connecticut in accordance with the rules of the American Arbitration Association.

9. License Agreements/Marketing Plans

a. License Agreements: Having negotiated with a prospective Licensee the terms of a license agreement covering the Merchandising Rights, Agent shall forward to Titan a "deal sheet" containing all information needed by Titan to prepare a license agreement with such Licensee. Titan shall supply Agent with a form "deal sheet" for use by Agent. Agent shall not itself generate license agreements for Licensees, whether for exercise of the Merchandising Rights or otherwise, and Agent itself shall not generate any amendments to or other documents modifying agreements with Licensees. No license agreement, whether for exercise of Merchandising Rights or otherwise, and no amendment or other document modifying any such agreement, shall become effective until executed by Titan as licensor.

b. Marketing Plans: Upon request by Titan, and within a reasonable time period specified by Titan, Agent shall provide Titan with a detailed marketing plan outlining Agent's proposed activities in connection with the promotion and exploitation of the Intellectual Property. Such written plan shall include, on a country by country basis, categories of product development; nature and amount of advertising and advertising expenditures; proposed methods of operation; royalty projections; and any other information which may be requested by Titan.

c. Agent Acquires No Rights: Agent acknowledges that it acquires no rights under this Agreement in the Intellectual Property. Agent shall have no right to grant to any party any rights in the Intellectual Property.

d. Titan Right to Negotiate Agreements: As previously provided herein, Titan reserves the right to negotiate its own license agreements in the Territory with entities that were not

first brought to Titan's attention through Agent's efforts. Titan agrees to advise Agent of any such direct negotiations. Licensees that are parties to such license agreements shall not be deemed "Licensees" for purposes of this Agreement, since they will not be signed to agreements through the efforts of Agent, as required by subparagraph 1(e). However, if Titan elects to have any such licensee serviced by Agent, Titan agrees to allow Agent a commission on royalties collected from such licensee, in an amount to be determined on a case-by-case basis by mutual agreement between Titan and Agent.

10. Breach of License Agreements by Licensees

a. If Agent has reason to believe that any Licensee is in material breach of any of the provisions of its license agreement with Titan, Agent shall promptly forward full details relating to such breach to Titan, and shall cooperate with Titan in taking such action against the Licensee as Titan deems appropriate under the circumstances.

b. If Agent has reason to believe that any party is infringing the Intellectual Property, or otherwise jeopardizing Titan's rights in the Intellectual Property in the Territory, Agent agrees to immediately investigate the matter and to provide Titan with full information regarding the matter. Agent shall also cooperate with Titan in taking such action against infringers as Titan may deem appropriate, including joining as a party in any legal proceeding which Titan may elect to bring against an infringer. All costs of any such proceeding shall be borne by Titan.

11. Indemnification

Agent agrees to indemnify and hold harmless Titan from any and all claims, liabilities, judgments, losses, costs, damages and expenses resulting therefrom, including reasonable attorneys' fees, arising out of or in connection with any act under, or in violation of this Agreement, by Agent, its employees, contractors, agents, representatives, or assigns.

12. Confidentiality

Although Agent shall be entitled to hold itself out as Titan's agent pursuant hereto, Agent shall, at all times, maintain the confidentiality of the terms and conditions of this Agreement, and any information concerning Titan, its operations, Talent, Events, finances, and any and all other sensitive or confidential business information, which becomes known to Agent in connection with this Agreement.

13. Breach and Early Termination

This Agreement may be terminated by Titan prior to its expiration of December 31, 1998 as follows:

a. Breach: Titan shall have the right, at any time, to terminate this Agreement for the following:

(i) if Titan determines at any time that the key person ceases to be actively involved in the activities of Agent. In this event, Titan may terminate this Agreement at any time upon written notice to SSAI, provided, however, that SSAI and its assigns shall be entitled to commissions for the term of those agreements negotiated or consummated by Agent pursuant hereto.

(ii) if Titan determines that SSAI has breached any of its obligations or representations in this Agreement. In this event, Titan may terminate this Agreement at any time upon written notice to SSAI, provided, however, that SSAI and its assigns shall be entitled to commissions for the term of those agreements negotiated or consummated by Agent pursuant hereto.

(iii) if Titan changes its strategic business direction, as determined in Titan's sole discretion, including any change in the ownership structure of Titan through the introduction of partners, participants, a joint venture or other similar event. In this event, Titan may terminate this Agreement by providing SSAI with thirty (30) days advance written notice, provided, however, that SSAI and its assigns shall be entitled to commissions for the term of those agreements negotiated or consummated by Agent pursuant hereto.

(iv) if Agent engages in any act of fraud, theft, deceit, unethical conduct. In this event, Titan may terminate this Agreement immediately upon written notice to SSAI, and from that date forward, SSAI shall not be entitled to any further commissions under this Agreement.

    b.    <u>Bankruptcy/Insolvency</u>: In any of the following circumstances Titan shall have the right to terminate this Agreement: (i) if Agent becomes insolvent, or a petition in bankruptcy or for reorganization is filed by or against it, or any insolvency proceedings are instituted by or against it; or (ii) if Agent makes an assignment for the benefit of creditors, is placed in the hands of a receiver, or liquidates its business.

    c.    <u>Effect of Termination</u>: Termination of this Agreement shall be without prejudice to any rights or claims which Titan may otherwise have against Agent. Termination or expiration of this Agreement shall have no effect on any license agreement with any Licensee, but thereafter all dealings which such Licensee has had with Agent under this Agreement shall cease and such Licensee shall deal directly with Titan or such party as Titan may appoint to succeed as Agent.

14.    <u>Miscellaneous</u>

    a.    This Agreement supersedes any and all prior agreements between the parties hereto, whether written or oral.

    b.    This Agreement shall be binding upon and inure to the benefit of Titan and its successors and assigns, and shall be binding upon Agent, its successors and assigns, but shall

inure only to the benefit of Agent. Agent shall not assign or transfer this Agreement, or any interest in or under this Agreement, without Titan's prior, written consent.

  c. No waiver or modification of any of the terms of this Agreement shall be valid unless in writing and signed by both parties.

  d. All notices to be given under this Agreement shall be in writing and shall be given at the respective addresses of the parties as set forth on page one, unless notification of a change in address is given in writing. The date of mailing shall be deemed to be the date the notice is given.

  e. Titan and Agent shall do all additional things and execute all additional documents that may be necessary or desirable to give full effect to this Agreement.

  f. Nothing contained in this Agreement shall be construed so as to make the parties partners or joint venturers, or to permit Agent to bind Titan to any agreement.

  g. This Agreement contains the entire understanding of the parties with respect to its subject matter. Any and all representations or agreements by any agent or representative of any party to the contrary shall be of no force or effect.

  h. This Agreement shall be construed according to the laws of the State of Connecticut, U.S.A., regardless of the place of performance or execution. The parties further agree that any disputes not arbitrated hereunder for any reason shall be submitted to the appropriate courts of said State, and each agrees to submit to the personal jurisdiction of the State of Connecticut.

i. If any provision of this Agreement or any part thereof, is determined to be invalid as unenforceable by any court of competent jurisdiction, it is the intention of the parties that the same shall be limited only to the minimum extent necessary to permit compliance with the minimum legal requirement and thereby remain in effect, that no other provision of this Agreement shall be affected thereby and that all other provisions shall continue in full force and effect.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth below.

TITAN SPORTS, INC.

By: *Linda E. McMahon*
Linda E. McMahon
President and Co-Chief Executive Officer

Date: April 2, 1997

STATE OF CONNECTICUT )
) ss:
COUNTY OF FAIRFIELD )

I, Sally J. Sigler, a Notary Public for said County and State, do hereby certify that Linda E. McMahon, President and Co-Chief Executive Officer of Titan Sports, Inc., personally appeared before me this day and acknowledged the due execution of the foregoing Agreement to be her free act and deed for the purposes therein expressed.

WITNESS my hand and notarial seal this 2nd day of April, 1997.

*Sally J. Sigler*
Notary Public

My commission expires: 2/28/2000

STANLEY SHENKER & ASSOCIATES, LTD.
("SSAI")

By: *Stanley Shenker*

Its: President

Date: 3/25/97

STATE OF Connecticut )
                     ) ss:
COUNTY OF Fairfield  )

I, _Sally J. Sigler_, a Notary Public for said County and State, do hereby certify that Stanley Shenker, _President_ of Stanley Shenker & Associates, Ltd. personally appeared before me this day and acknowledged the due execution of the foregoing Agreement to be his free act and deed for the purposes therein expressed.

WITNESS my hand and notarial seal this 25th day of _March_, 1997.

_Sally J. Sigler_
Notary Public

My commission expires: 2/28/2000

f:\users\legal2\word\contract\misc\shenkcc.doc        9
3/25/97

## EXHIBIT A

### DOMESTIC

Acclaim
Advanced Graphics
ATS
American Greetings
Black Hawk Graphics
Bushwhackers Downunder Restaurant
Carlton Promotion Group
Coliseum Video
Colorvision
Edel USA
High Top Sports
International Promotions
Newfield Publications
MBNA
The Home Game
Prime Sales
Trinity Products
Westrox Corp

### INTERNATIONAL

AOL Bertelsmann-Germany
Bankee Trading-Philippines
Bastei Verlag-Germany
Carlton Books-UK
Copyrights Studio-Indonesia,Malaysia,Singapore
Ehapa Verlag-Germany
Edel-Germany,Austria,Switzerland
Event-UK
Funstuff Novelties-Philippines
Grand Knitting-Philippines
Heytec Collection-Germany,Austria,Switzerland
Legion-Germany
Noman James-CN
Panini-Italy
Symposion Verlag-Austria,Germany,Switzerland
The Home Game-CN
Tollhaus-Germany
V-Xport-Kuwait

LICLIST