LAW OFFICES
SANDAK FRIEDMAN HENNESSEY & GRECO, LLP
970 SUMMER STREET  •  STAMFORD, CONNECTICUT 06905  •  (203) 425-4200  •  JURIS NO. 401577

| | | |
|---|---|---|
| RETURN DATE: NOVEMBER 14, 2000 | : | SUPERIOR COURT |
| ----------------------------------------------------: | | |
| | : | |
| STANLEY SHENKER & ASSOCIATES, INC., | : | JUDICIAL DISTRICT OF |
| Plaintiff | : | STAMFORD/NORWALK |
| | : | |
| vs. | : | AT STAMFORD |
| | : | |
| WORLD WRESTLING FEDERATION | : | OCTOBER 16, 2000 |
| ENTERTAINMENT, INC., | : | |
| Defendant | : | |
| ----------------------------------------------------: | | |

## COMPLAINT

### FIRST COUNT (WRONGFUL TERMINATION):

1.    Stanley Shenker & Associates, Inc. ("SSAI"), is a corporation organized under the laws

of New Jersey, with its principal place of business located at 25 Van Zant Street, Norwalk,

Connecticut.

2.    SSAI is engaged in the business of providing licensing services to various companies

covering both national and international markets.

3.    The defendant World Wrestling Federation Entertainment, Inc. ("WWFE"), formerly

known as Titan Sports, Inc., is a corporation organized under the laws of the state of Delaware, with its

principal place of business located at 1241 East Main Street, Stamford, Connecticut.

4.    WWFE is an integrated media and entertainment company principally engaged in the

-1-

development, production and marketing of television programing, pay-per-view programing and live events, and the licensing and sale of branded consumer products featuring the World Wrestling Federation brand and other aspects of sports entertainment.

5.     SSAI has provided licensing services to WWFE, both nationally and internationally in exchange for royalties, under various terms and conditions, pursuant to various written and oral agreements since approximately 1994.

6.     By a written agreement dated March 7, 1997, WWFE agreed to make SSAI its exclusive licensing agent during the period from August 20, 1996 to December 31, 1998, for the entire world with the exception of Germany and the Philippines (the "Agency Agreement"). A copy of the Agency Agreement is attached hereto as Exhibit A.

7.     Pursuant to the Agency Agreement, WWFE agreed to pay SSAI an eleven percent (11%) commission on all royalties received by WWFE on the licensing agreements procured by SSAI. The licensing agreements procured by SSAI under the Agency Agreement expressly included all renewals.

8.     Pursuant to the Agency Agreement, WWFE also agreed to pay SSAI for any licensed products purchased for resale from entities sourced by SSAI at the rate of seven percent (7%) of net catalog and electronic sales and at the rate of three and a half percent (3.5%) of net venue sales.

9.     Pursuant to the Agency Agreement, WWFE agreed to pay SSAI within 15 days of the receipt by WWFE of any royalties upon which it owed SSAI a commission.

10.     Solely for the convenience of WWFE, SSAI has allowed WWFE to pay it on a quarterly

-2-

LAW OFFICES
SANDAK FRIEDMAN HENNESSEY & GRECO, LLP
970 SUMMER STREET  •  STAMFORD, CONNECTICUT 06905  •  (203) 425-4200  •  JURIS NO. 401577

basis, within forty-five (45) days of the end of each fiscal quarter, rather than strictly adhering to the fifteen day pay schedule required under the Agency Agreement.

11.    SSAI was extremely successful in procuring lucrative royalty contracts for WWFE, both nationally and internationally.

12.    As a result of SSAI's successful licensing work for WWFE, by letter agreement dated March 26, 1998, WWFE extended the Agency Agreement with SSAI from January 1, 1999 to December 31, 2003 (the Extension), and SSAI agreed that Austria, Switzerland and other German speaking European countries would be excluded from the territory covered in the Agency Agreement. A copy of the Extension is attached as exhibit B.

13.    Under the Agency Agreement and Extension, WWFE reserved the right to collect all royalties on licensing contracts procured by SSAI and agreed to promptly pay SSAI a percentage commission on those royalties.

14.    As a result of this contractual undertaking and the implied covenant of good faith and fair dealing, WWFE has a fiduciary obligation to correctly account for and pay SSAI a percentage of the royalties it procured on WWFE's behalf.

15.    Under the original terms of the Agency Agreement, WWFE had the right to terminate the Agency Agreement with SSAI prior to December 31, 1998, on various grounds including, if WWFE, in its sole discretion, changed its business direction.

16.    In amending the Agency Agreement in the Extension dated March 26, 1998, WWFE,

-3-

LAW OFFICES
SANDAK FRIEDMAN HENNESSEY & GRECO, LLP
970 SUMMER STREET  •  STAMFORD, CONNECTICUT 06905  •  (203) 425-4200  •  JURIS NO. 401577

which drafted both the Agency Agreement and the Extension, did not extend the provision pursuant to which it had the unilateral right to terminate the Agency Agreement. Accordingly, WWFE's ability to unilaterally terminate the Agency Agreement because of a change in its business direction expired on December 31, 1998.

17.    SSAI has fully performed all of its obligations under the Agency Agreement and Extension and has been successful in delivering numerous lucrative licensing contracts to WWFE.

18.    By letter dated June 13, 2000, WWFE purported to terminate the Agency Agreement on the claim that WWFE had decided to change its strategic business direction.

19.    SSAI objected to the purported termination of the Agency Agreement and asked WWFE to properly account for and pay the commissions due to SSAI.

20.    Since then, WWFE has failed to pay all of the commissions due to SSAI and has failed to provide an accounting of the royalties collected by WWFE and the commissions due SSAI under the Agency Agreement despite repeated assurances it would do so.

21.    SSAI has been damaged by WWFE's breach of the Agency Agreement, in that it has been deprived of the timely payment of its commissions and in that WWFE has wrongfully withheld commissions due to SSAI.

22.    SSAI has been further damaged by WWFE's purported refusal to accept certain proposed licensing agreements procured by SSAI, thereby depriving SSAI of future commissions on such licensing contracts.

-4-

23.    WWFE has failed to properly account for and pay commissions to SSAI on the royalties it has collected and on products it has purchased from sources procured by SSAI in accordance with its fiduciary obligations under the Agency Agreement.

24.    SSAI has fully performed its obligations under the Agency Agreement and WWFE has asserted no basis to terminate the Agency Agreement other than its purported change in business direction.  WWFE has not changed its business direction in regards to its licensing and royalty program other than seeking to deprive SSAI of its commissions.

25.    WWFE terminated the Agency Agreement wrongfully and solely to deprive SSAI of its commissions on licensing contracts delivered and to be delivered to WWFE during the remainder of the term of the Agency Agreement and the Extension

26.    SSAI has been damaged by the wrongful termination of the Agency Agreement in that it has been deprived of the commissions on licencing contracts it had procured which WWFE refused to enter and on future licensing contracts to be entered during the remaining term of the agreement under the Extension

27.    SSAI has been further damaged in that its reputation as the exclusive licensor of WWFE products has been compromised as a result of its wrongful termination by WWFE.

**SECOND COUNT (BREACH OF COVENANT OF GOOD FAITH):**

1-27.    SSAI repeats paragraphs 1 through 27 of the First Count as paragraphs 1 through 27 of this the Second Count.

-5-

LAW OFFICES
SANDAK FRIEDMAN HENNESSEY & GRECO, LLP
970 SUMMER STREET  •  STAMFORD, CONNECTICUT 06905  •  (203) 425-4200  •  JURIS NO. 401577

28.    The foregoing conduct of WWFE constitutes a breach of the covenant of good faith and fair dealing implied into the Agency Agreement under Connecticut law and SSAI has been damaged by said breach.

## THIRD COUNT (VIOLATION OF CUTPA):

1-28.    SSAI repeats paragraphs 1 through 28 of the Second Count as paragraphs 1 through 28 of this the Third Count.

29.    WWFE enters into licensing and royalty agreements in the course of commercial trade and commerce.

30.    WWFE's purported termination of SSAI is deceptive and unfair, and constitutes a practice which is immoral, unethical, oppressive and unscrupulous, in that the termination is made without contractual basis, and on a false claim that WWFE has changed its business direction as to licensing when in fact the termination has been motivated primarily if not entirely to deprive SSAI of commissions it has earned or would continue to earn for the balance of the term of the Agency Agreement.

31.    SSAI has suffered ascertainable loss and injury as a result of WWFE's conduct in violation of Conn. Gen. Stat. §§42-110a, et seq.

## FOURTH COUNT (BREACH OF CONTRACT):

-6-

LAW OFFICES
SANDAK FRIEDMAN HENNESSEY & GRECO, LLP
970 SUMMER STREET  •  STAMFORD, CONNECTICUT 06905  •  (203) 425-4200  •  JURIS NO. 401577

1-27. SSAI repeats paragraphs 1 through 27 of the First Count as paragraphs 1 through 27 of this the Fourth Count.

28.     WWFE has breached its obligations to SSAI under the Agency Agreement by failing to account for and pay all commissions owed to SSAI in a timely manner.

29.     SSAI has been damaged by WWFE's breach of the Agency Agreement.

## FIFTH COUNT(ACCOUNTING):

1-27. SSAI repeats paragraphs 1 through 27 of the First Count as paragraphs 1 through 27 of this the Second Count.

28.     Under Conn. Gen. Stat. §§ 52-401 et seq., and the common law, SSAI is entitled to an accounting both retrospectively as to past commissions it is due and prospectively, on a periodic basis, as to all future commissions it may be due under the Agency Agreement.

## SIXTH COUNT (DECLARATORY JUDGMENT):

1-27. SSAI repeats paragraphs 1 through 27 of the First Count as paragraphs 1 through 27 of this the Sixth Count.

28.     WWFE has failed or refused to acknowledge its ongoing obligation to pay SSAI commissions on royalties on licensing contracts procured by SSAI and for products it has purchased from sources procured by SSAI, and that the obligation to pay such commissions continues for the

LAW OFFICES
SANDAK FRIEDMAN HENNESSEY & GRECO LLP
970 SUMMER STREET  •  STAMFORD, CONNECTICUT 06905  •  (203) 425-4200  •  JURIS NO. 401577

term of all licensing contracts procured by SSAI and for the term of any renewals WWFE negotiates with such licensing parties.

29.    There is a bonafide issue in dispute and SSAI requires a declaration of its rights to receive future commissions from WWFE under the terms of the Agency Agreement.

## SEVENTH COUNT (BREACH OF CONTRACT NYC RESTAURANT):

1-27.    SSAI repeats paragraphs 1 through 27 of the First Count as paragraphs 1 through 27 of this the Seventh Count.

28.    In 1997 SSAI procured a potential license contract, pursuant to which a group known as 905 Parkview Group LLC. ("Parkview"), would open a restaurant in New York city, which restaurant would have a World Wrestling Federation theme and at which WWFE licensed products would be sold (the "NYC Restaurant").

29.    WWFE entered into an agreement dated August1, 1997 with Parkview pursuant to which WWFE would be paid royalties on the sale of merchandise, food and beverages at the NYC Restaurant subject to the "World Wrestling Federation License Agreement Standard Terms and Conditions."

30.    The royalties to be paid to WWFE by Parkview were subject WWFE's obligation to pay SSAI commissions on the royalties under the Agency Agreement.

31.    On or about June 1, 1999, WWFE and Parkview amended their agreement in various respects, but Parkview confirmed it would pay royalties to WWFE on merchandise and on food and

-8-

LAW OFFICES
SANDAK FRIEDMAN HENNESSEY & GRECO, LLP
970 SUMMER STREET  •  STAMFORD, CONNECTICUT 06905  •  (203) 425-4200  •  JURIS NO. 401577

beverages sold at the NYC Restaurant, under the terms of the "World Wrestling Federation License Agreement Standard Terms and Conditions" (the Amended and Restated License Agreement"). Parkview retained certain rights to open similar restaurants at other locations in the country.

32.    Parkview opened the NYC Restaurant in or about November 2000, and made sales of licensed merchandise and food and beverages subject to its license agreement with WWFE.

33.    On information and belief, Parkview paid royalties to WWFE under the Amended and Restated License Agreement, but WWFE has failed and neglected to pay SSAI its commissions on such royalties earned from the NYC Restaurant.

34.    On or about May 4, 2000, WWFE acquired Parkview's interest in the NYC Restaurant and an entity owned or controlled by WWFE became the successor to Parkview under its licensing obligations. Since its opening , WWFE has failed and refused to pay SSAI any commissions on the sales of merchandise, food and beverages at the NYC Restaurant, and has failed to provide any information to SSAI on the royalties or other monies in lieu of royalties that WWFE is receiving as a result of sales at the NYC Restaurant.

35.    SSAI has been damaged by WWFE's failure to pay it any commissions in connection with the NYC Restaurant in accordance with the requirements of the Agency Agreement.

## EIGHTH COUNT (ACCOUNTING NYC RESTAURANT)

1-35.  SSAI repeats paragraphs 1 through 35 of the Seventh Count as paragraphs 1 through 35

LAW OFFICES
SANDAK FRIEDMAN HENNESSEY & GRECO, LLP
970 SUMMER STREET · STAMFORD, CONNECTICUT 06905 · (203) 425-4200 · JURIS NO. 401577

of this the Eighth Count.

36.    WWFE has failed to properly account for and pay commissions to SSAI on the royalties it has collected or otherwise earned from the NYC Restaurant in accordance with its fiduciary obligations under the Agency Agreement.

37.    Under Conn. Gen. Stat. §§ 52-401 et seq., and the common law, SSAI is entitled to an accounting both retrospectively as to past commissions it is due and prospectively,, on a periodic basis, as to all future commissions it may be due under the Agency Agreement in connection with the NYC Restaurant.

**NINTH COUNT (CONVERSION):**

1-35.    SSAI repeats paragraphs 1 through 35 of the Seventh Count as paragraphs 1 through 35 of this the Ninth Count.

36.    SSAI has made demand upon WWFE to pay it current for all commissions owed under the Agency Agreement.

37.    Despite due demand, WWFE has wrongfully withheld the commissions currently due to SSAI for royalties received and merchandise sold under the terms of the Agency Agreement and for royalties on merchandise, food and beverages sold at the NYC Restaurant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SSAI prays for the following relief:

    1.    Compensatory damages.

    2.    An accounting of all royalties earned by WWFE on licensing contracts procured by SSAI or on renewals of said contracts and an accounting of all commissions owed by WWFE to SSAI on said royalties under the terms of Agency Agreement.

    3.    An accounting of all sales made by WWFE of licensed products purchased for resale from entities sourced by SSAI and of the commissions owed to SSAI at the rate of seven percent (7%) of net catalog and electronic sales and at the rate of three and a half percent (3.5%) of net venue sales, in accordance with the terms of the Agency Agreement.

    4.    An accounting of all commissions due to SSAI from WWFE in connection with the royalties received or otherwise earned by WWFE in connection with the NYC Restaurant.

    5.    A declaration of all royalties to be earned by WWFE for which WWFE owes or will owe SSAI commissions in accordance with the Agency Agreement and an accounting on a periodic basis for all such future royalties and commissions.

    6.    Punitive damages and attorneys fees under Conn. Gen. Stat. §42-110(b) et seq.

    7.    Punitive damages as provided under the common law.

    8.    Such other and further relief as may be available to SSAI in law or equity.

PLAINTIFF, STANLEY SHENKER &
ASSOCIATES, INC.,

By _____
    Peter M. Nolin
    **Sandak Friedman Hennessey & Greco**
    970 Summer Street
    Stamford, CT 06905
    Telephone: (203) 425-4200
    Fax: (203) 325-8608
    Juris No.: 401577

LAW OFFICES
SANDAK FRIEDMAN HENNESSEY & GRECO, LLP
970 SUMMER STREET  •  STAMFORD, CONNECTICUT 06905  •  (203) 425-4200  •  JURIS NO. 401577

RETURN DATE: NOVEMBER 14, 2000     :     **SUPERIOR COURT**

-----------------------------------------------------------:

STANLEY SHENKER ASSOCIATES, INC.,   :     **JUDICIAL DISTRICT OF**
       **Plaintiff**                :      **STAMFORD/NORWALK**

                                :

vs.                            :      **AT STAMFORD**

                                :

WORLD WRESTLING FEDERATION      :      **OCTOBER 16, 2000**
     **ENTERTAINMENT, INC.,**         :
       **Defendant**                :

-----------------------------------------------------------:

### AMOUNT IN DEMAND

The amount in demand exclusive of interest and costs exceeds $15,000.

                   **PLAINTIFF, STANLEY SHENKER &**
                    **ASSOCIATES, INC.,**

By _____

       Peter M. Nolin
       **Sandak Friedman Hennessey & Greco**
       970 Summer Street
       Stamford, CT 06905
       Telephone: (203) 425-4200
       Fax: (203) 325-8608
       Juris No.: 401577

LAW OFFICES
SANDAK FRIEDMAN HENNESSEY & GRECO, LLP • (203) 425-4200 • JURIS NO. 401577
970 SUMMER STREET • STAMFORD, CONNECTICUT 06905

## AGENCY AGREEMENT

THIS AGREEMENT, dated as of March 7, 1997, is between TITAN SPORTS, INC. ("Titan"), a Delaware corporation with its principal place of business at 1241 East Main Street, Stamford, Connecticut 06902, and STANLEY SHENKER & ASSOCIATES, INC. ("SSAI" or "Agent"), a New Jersey corporation with its principal place of business at 1225 River Road, Edgewater, New Jersey 07020.

1.    Definitions:  For purposes of this Agreement, the following definitions will apply:

(a)  The term "Copyrights" shall mean all copyrights now or hereafter owned by Titan.

(b)  The term "Events" shall mean the professional wrestling exhibitions produced, promoted, and performed by Titan live, or broadcast by free, cable, or pay television, as well as any future iterations thereof, whether in cartoon, comic or animated form.

(c)  The term "Existing Rights Holders" shall mean those parties that have, prior to the commencement of this Agreement, been granted a license by Titan without Agent's involvement to exercise the Merchandising Rights or Broadcasting Rights as set forth on Exhibit "A" which is attached hereto and hereby incorporated by reference.

(d)  The term "Intellectual Property" shall mean the Rights of Publicity, the Trademarks, the Copyrights, and all other proprietary rights relating to the Events.

(e)  The term "Licensee" shall mean a party located in the Territory that is granted a license after this Agreement goes into effect, through the efforts of Agent, to exercise the Merchandising Rights.

(f)  The term "Merchandising Rights" shall mean the right to use the Intellectual Property: (i) in connection with the manufacture, distribution, sale, and advertising in the Territory of merchandise articles of every type and description, both products and promotions, including, without limitation, toys, games, clothing, novelties, household items, paper products, and sporting goods; and (ii) in connection with the preparation and use in the Territory of materials designed to advertise and promote the goods, services or general business operations of a Licensee, including, without limitation, advertisements prepared for all print and audiovisual media uses (including radio, television, and motion pictures), packaging materials, point-of-sale displays, premium items, and other such promotional items.

(g)  The term "Talent" shall mean all individuals who perform in the Events including, without limitation, the professional wrestlers who perform in the Events, as well as any future iterations thereof, either real or fictional, whether in cartoon, comic or animated form.

(h) The term "Right of Publicity" shall mean the likenesses, physical characteristics, personalities, characters, and personas of the Talent.

(i) The term "Territory" shall mean the entire world, with the exception of Germany and Philippines.

(j) The term "Trademarks" shall mean all symbols, designs, styles, emblems, logos, and marks used in connection with the Events including, but not limited to, the name WORLD WRESTLING FEDERATION or WWF, the WWF logo or logos, the mark WORLD WRESTLING FEDERATION or WWF SUPERSTARS, and the names of Talent, excluding the initials WWF in block letters.

## 2.    TERM OF AGREEMENT

The term of this Agreement shall be effective as of August 20, 1996, and shall continue through December 31, 1998 ("Term"), unless terminated pursuant to Paragraph 13, below.

## 3.    KEY PERSON

SSAI expressly acknowledges and agrees that the services to be performed by it hereunder shall be specifically and primarily performed by Stanley Shenker, who hereinafter shall be described as the "key person" or "Shenker".

## 4.    Scope of Agency

Subject to the terms and conditions of this Agreement, Titan appoints Agent to act as its exclusive agent in the Territory, except for licensing agreements with Existing Rights Holders and Agent hereby accepts such appointment and agrees to use its best efforts in performing the following services for Titan in the Territory:

a.    negotiating the terms of license agreements with prospective Licensees relating to Merchandising Rights, as described hereinabove.  Nothing herein contained shall be construed so as to obligate Titan to accept any agreement presented to Titan by Agent for approval, or negotiated by Agent for Titan, or to grant Agent any right of acceptance or execution of any particular agreement for Titan;

b.    servicing all license agreements except those as noted in Exhibit "A" with Licensees, including, without limitation: (i) providing Licensees with such materials available to Agent relating to the Intellectual Property as they may require in order to make effective use of the Intellectual Property under such agreements; (ii) assisting Titan in assuring that all Licensees use only approved artwork in exploiting the rights granted them under their agreements; (iii) assisting Titan in assuring that all copyright and trademark notice requirements (both governmental and imposed by Titan) are satisfied by Licensees, in accordance with the terms of their agreements; (iv) assisting Titan in assuring that Licensees submit to Titan, for its prior approval, all products and

advertising materials which they propose to manufacture, sell, distribute, or use under their agreements; and (v) otherwise assisting Titan and the Licensees in exploiting the Intellectual Property in the Territory.

5.   <u>Non-Competition</u>

Notwithstanding anything herein to the contrary, Agent agrees that during the term of this Agreement, and for one (1) year after its termination for any reason, or expiration, neither Agent nor the key person shall perform or provide any services similar to those hereunder for any third party engaged or involved in the promotion, distribution, performance, or other dissemination of professional wrestling events or activities.

6.   <u>Compensation to Agent</u>

a.   In full consideration for the services to be rendered under this Agreement, and for the agreement of Non-Competition as set forth above, Agent shall be entitled to receive a commission of eleven (11%) percent of royalties received by Titan on the licensing deals or agreements, including renewals thereof, other than those set forth in Paragraph 6(d) below, negotiated and procured specifically by Agent pursuant to, and during the term of, this Agreement. Said commissions shall be payable to Agent within fifteen (15) business days of receipt by Titan of the royalties from Licensees on which said commissions have been earned.

b.   As the effective date of this Agreement is specifically agreed to be August 20, 1996, this compensation schedule shall apply to all agreements negotiated and procured by Agent which were consummated and executed by Titan as of the date of the parties' execution of this Agreement and for which Agent has not yet received commissions; however, Agent shall not be required to reimburse Titan on commissions already received by Agent pursuant to the different compensation schedule in effect prior to the execution of this Agreement by Agent.

c.   Agent shall not be entitled to commissions on royalties paid Titan by Licensees as a result of activities by Existing Rights Holders, or as a result of Titan's efforts. Further, Agent shall not be entitled to any compensation as a result of the following activities of Titan in the Territory, unless Titan specifically requests Agent to become involved in any such activity and, in that event, the parties will discuss the appropriate compensation on a case-by-case basis:  the exploitation of television rights in the Territory on agreements or deals not procured by Agent; live productions of the Events; the sale of merchandise using the Intellectual Property at the sites of live productions of the Events; or the sale of merchandise using the Intellectual Property via mail order or electronic sales, including sales through Titan catalogs, periodicals, fan clubs, or Internet sites.

d.   Should Titan purchase products containing the Intellectual Property from any entity sourced by SSAI for re-sale through Titan's catalog, venue and/or electronic sales operations, Titan shall compensate SSAI as follows:  seven percent (7%) of net catalog and electronic sales, defined as gross catalog and electronic sales, less twenty-five percent (25%) for

talent royalties; and three and one-half percent (3-1/2%) of net venue sales, defined as gross venue sales, less twenty five percent (25%) for talent royalties and thirty-five percent (35%) for building share,

7.    Expenses of Agent

Agent shall be required to assume, without reimbursement from Titan or any other party, all expenses incurred in performing its obligations hereunder, including, without limitation, all amounts expended in promoting the Intellectual Property and any Events to be performed in the Territory, all salaries, fees, or commissions paid by Agent to any salespeople or personnel, travel expenses, legal expenses, and all direct and indirect expenses of maintaining its offices, unless Titan agrees in writing to reimburse Agent in advance of incurring such expense.

8.    Arbitration

Any disputes between the parties relating to commissions payable to Agent by Titan shall be submitted to binding arbitration in Stamford, Connecticut in accordance with the rules of the American Arbitration Association.

9.    License Agreements/Marketing Plans

a.    License Agreements:  Having negotiated with a prospective Licensee the terms of a license agreement covering the Merchandising Rights, Agent shall forward to Titan a "deal sheet" containing all information needed by Titan to prepare a license agreement with such Licensee. Titan shall supply Agent with a form "deal sheet" for use by Agent. Agent shall not itself generate license agreements for Licensees, whether for exercise of the Merchandising Rights or otherwise, and Agent itself shall not generate any amendments to or other documents modifying agreements with Licensees. No license agreement, whether for exercise of Merchandising Rights or otherwise, and no amendment or other document modifying any such agreement, shall become effective until executed by Titan as licensor.

b.    Marketing Plans:  Upon request by Titan, and within a reasonable time period specified by Titan, Agent shall provide Titan with a detailed marketing plan outlining Agent's proposed activities in connection with the promotion and exploitation of the Intellectual Property. Such written plan shall include, on a country by country basis, categories of product development; nature and amount of advertising and advertising expenditures; proposed methods of operation; royalty projections; and any other information which may be requested by Titan.

c.    Agent Acquires No Rights:  Agent acknowledges that it acquires no rights under this Agreement in the Intellectual Property. Agent shall have no right to grant to any party any rights in the Intellectual Property.

d.    Titan Right to Negotiate Agreements:  As previously provided herein, Titan reserves the right to negotiate its own license agreements in the Territory with entities that were not

f:\users\legal2\word\contract\misc\shenkcc.doc                    4
3/25/97

first brought to Titan's attention through Agent's efforts. Titan agrees to advise Agent of any such direct negotiations. Licensees that are parties to such license agreements shall not be deemed "Licensees" for purposes of this Agreement, since they will not be signed to agreements through the efforts of Agent, as required by subparagraph 1(e). However, if Titan elects to have any such licensee serviced by Agent, Titan agrees to allow Agent a commission on royalties collected from such licensee, in an amount to be determined on a case-by-case basis by mutual agreement between Titan and Agent.

10.     Breach of License Agreements by Licensees

a.     If Agent has reason to believe that any Licensee is in material breach of any of the provisions of its license agreement with Titan, Agent shall promptly forward full details relating to such breach to Titan, and shall cooperate with Titan in taking such action against the Licensee as Titan deems appropriate under the circumstances.

b.     If Agent has reason to believe that any party is infringing the Intellectual Property, or otherwise jeopardizing Titan's rights in the Intellectual Property in the Territory, Agent agrees to immediately investigate the matter and to provide Titan with full information regarding the matter. Agent shall also cooperate with Titan in taking such action against infringers as Titan may deem appropriate, including joining as a party in any legal proceeding which Titan may elect to bring against an infringer. All costs of any such proceeding shall be borne by Titan.

11.     Indemnification

Agent agrees to indemnify and hold harmless Titan from any and all claims, liabilities, judgments, losses, costs, damages and expenses resulting therefrom, including reasonable attorneys' fees, arising out of or in connection with any act under, or in violation of this Agreement, by Agent, its employees, contractors, agents, representatives, or assigns.

12.     Confidentiality

Although Agent shall be entitled to hold itself out as Titan's agent pursuant hereto, Agent shall, at all times, maintain the confidentiality of the terms and conditions of this Agreement, and any information concerning Titan, its operations, Talent, Events, finances, and any and all other sensitive or confidential business information, which becomes known to Agent in connection with this Agreement.

13.     Breach and Early Termination

This Agreement may be terminated by Titan prior to its expiration of December 31, 1998 as follows:

a.     Breach: Titan shall have the right, at any time, to terminate this Agreement for the following:

f:\users\legal2\word\contract\misc\shenkcc.doc
3/25/97

5

(i) if Titan determines at any time that the key person ceases to be actively involved in the activities of Agent. In this event, Titan may terminate this Agreement at any time upon written notice to SSAI, provided, however, that SSAI and its assigns shall be entitled to commissions for the term of those agreements negotiated or consummated by Agent pursuant hereto.

(ii) if Titan determines that SSAI has breached any of its obligations or representations in this Agreement. In this event, Titan may terminate this Agreement at any time upon written notice to SSAI, provided, however, that SSAI and its assigns shall be entitled to commissions for the term of those agreements negotiated or consummated by Agent pursuant hereto.

(iii) if Titan changes its strategic business direction, as determined in Titan's sole discretion, including any change in the ownership structure of Titan through the introduction of partners, participants, a joint venture or other similar event. In this event, Titan may terminate this Agreement by providing SSAI with thirty (30) days advance written notice, provided, however, that SSAI and its assigns shall be entitled to commissions for the term of those agreements negotiated or consummated by Agent pursuant hereto.

(iv) if Agent engages in any act of fraud, theft, deceit, unethical conduct. In this event, Titan may terminate this Agreement immediately upon written notice to SSAI, and from that date forward, SSAI shall not be entitled to any further commissions under this Agreement.

b.      **Bankruptcy/Insolvency**: In any of the following circumstances Titan shall have the right to terminate this Agreement: (i) if Agent becomes insolvent, or a petition in bankruptcy or for reorganization is filed by or against it, or any insolvency proceedings are instituted by or against it; or (ii) if Agent makes an assignment for the benefit of creditors, is placed in the hands of a receiver, or liquidates its business.

c.      **Effect of Termination**: Termination of this Agreement shall be without prejudice to any rights or claims which Titan may otherwise have against Agent. Termination or expiration of this Agreement shall have no effect on any license agreement with any Licensee, but thereafter all dealings which such Licensee has had with Agent under this Agreement shall cease and such Licensee shall deal directly with Titan or such party as Titan may appoint to succeed as Agent.

14.    <u>Miscellaneous</u>

a.      This Agreement supersedes any and all prior agreements between the parties hereto, whether written or oral.

b.      This Agreement shall be binding upon and inure to the benefit of Titan and its successors and assigns, and shall be binding upon Agent, its successors and assigns, but shall

inure only to the benefit of Agent.  Agent shall not assign or transfer this Agreement, or any interest in or under this Agreement, without Titan's prior, written consent.

        c.      No waiver or modification of any of the terms of this Agreement shall be valid unless in writing and signed by both parties.

        d.      All notices to be given under this Agreement shall be in writing and shall be given at the respective addresses of the parties as set forth on page one, unless notification of a change in address is given in writing.  The date of mailing shall be deemed to be the date the notice is given.

        e.      Titan and Agent shall do all additional things and execute all additional documents that may be necessary or desirable to give full effect to this Agreement.

        f.      Nothing contained in this Agreement shall be construed so as to make the parties partners or joint venturers, or to permit Agent to bind Titan to any agreement.

        g.      This Agreement contains the entire understanding of the parties with respect to its subject matter.  Any and all representations or agreements by any agent or representative of any party to the contrary shall be of no force or effect.

        h.      This Agreement shall be construed according to the laws of the State of Connecticut, U.S.A., regardless of the place of performance or execution.  The parties further agree that any disputes not arbitrated hereunder for any reason shall be submitted to the appropriate courts of said State, and each agrees to submit to the personal jurisdiction of the State of Connecticut.

i.    If any provision of this Agreement or any part thereof, is determined to be invalid as unenforceable by any court of competent jurisdiction, it is the intention of the parties that the same shall be limited only to the minimum extent necessary to permit compliance with the minimum legal requirement and thereby remain in effect, that no other provision of this Agreement shall be affected thereby and that all other provisions shall continue in full force and effect.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth below.

TITAN SPORTS, INC.

By: _~Linda E. McMahon~_

Linda E. McMahon

President and Co-Chief Executive Officer

Date: _April 2, 1997_

STATE OF CONNECTICUT    )
                        ) ss:
COUNTY OF FAIRFIELD     )

I, _Sally J. Sigler_____, a Notary Public for said County and  State, do hereby certify that Linda E. McMahon, President and Co-Chief Executive Officer of Titan Sports, Inc., personally appeared before me this day and acknowledged the due execution of the foregoing Agreement to be her free act and deed for the purposes therein expressed.

WITNESS my hand and notarial seal this 2nd day of _April_____, 1997.

_Sally J. Sigler_

Notary Public

My commission expires: _2/28/2000_

STANLEY SHENKER & ASSOCIATES, LTD. ("SSAI")

By: _Stanley Shenker_____

Its: _President_____

Date: _3/25/91_____

STATE OF *Connecticut* )
                       ) ss:
COUNTY OF *Fairfield* )

I, _Sally J. Sigler_ , a Notary Public for said County and State, do hereby certify that Stanley Shenker, _President_ of Stanley Shenker & Associates, Ltd. personally appeared before me this day and acknowledged the due execution of the foregoing Agreement to be his free act and deed for the purposes therein expressed.

WITNESS my hand and notarial seal this 25th day of _March_ , 1997.

_Sally J. Sigler_
Notary Public

My commission expires: _2/28/2000_

# EXHIBIT A

## DOMESTIC

Acclaim
Advanced Graphics
ATS
American Greetings
Black Hawk Graphics
Bushwhackers Downunder Restaurant
Carlton Promotion Group
Coliseum Video
Colorvision
Edel USA
High Top Sports
International Promotions
Newfield Publications
MBNA
The Home Game
Prime Sales
Trinity Products
Westrox Corp

## INTERNATIONAL

AOL Bertelsmann–Germany
Bankee Trading–Philippines
Bastei Verlag–Germany
Carlton Books–UK
Copyrights Studio–Indonesia,Malaysia,Singapore
Ehapa Verlag–Germany
Edel–Germany,Austria,Switzerland
Event–UK
Funstuff Novelties–Philippines
Grand Knitting–Philippines
Heytec Collection–Germany,Austria,Switzerland
Legion–Germany
Norman James–CN
Panini–Italy
Symposion Verlag–Austria,Germany,Switzerland
The Home Game–CN
Tollhaus–Germany
V-Xport–Kuwait

LICLIST



**WORLD WRESTLING FEDERATION®**

**EDWARD L. KAUFMAN**
Vice President and General Counsel

March 26, 1998

**via hand delivery**

Mr. Stanley Shenker
Stanley Shenker & Associates, Inc.
1225 River Road
Edgewater, NJ  07020

**Re:    Titan Sports, Inc. ("Titan") -w- Stanley Shenker and
            Associates, Inc. ("SSAI")**

Dear Stanley:

Reference is hereby made to that certain Agency Agreement between the parties dated as of March 7, 1997, effective as of August 20, 1996, and any amendments and modifications thereto in full force and effect as of the date hereof (collectively, "Agreement"). For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties have agreed to amend the Agreement as follows ("First Amendment"):

1.      Paragraph two (2) of the Agreement shall be amended to extend the Term for five (5) additional years, from January 1, 1999 through December 31, 2003.

2.      SSAI acknowledges and agrees that in consideration for the extension set forth therein, Titan shall be entitled to exclude the following other European territories from the Territory set forth in paragraph 1(i) of the Agreement:  Austria, Switzerland and other German speaking European countries.

TITAN  TOWER
1241 East Main Street
Post Office Box 3857
Stamford, CT  06902
Phone:203 352 8786
Fax:   203 353 0236

® Registered Trademark of Titan Sports, Inc.

Mr. Stanley Shenker
March 26, 1998
Page 2

3.      All terms not defined herein shall have the same meaning given them in the Agreement.  Except as expressly or by necessary implication modified hereby, the terms and conditions of the Agreement are ratified and confirmed without limitation or exception.

Please confirm your acceptance of this First Amendment as set forth above by signing in the space provided below on each of the enclosed two (2) originals of this letter before a notary and return them to me.  After they are countersigned on behalf of Titan, one (1) fully-executed copy will be returned to you for your files.

Thank you for your prompt attention to this matter.

Very truly yours,

Edward L. Kaufman
ELK:dmm
Encl.

cc:    Linda McMahon
       Jim Bell

Acknowledged and Agreed:

STANLEY SHENKER & ASSOCIATES        TITAN SPORTS, INC.
          ("SSAI")                               ("Titan")

By: _____         By: _____
       Stanley Shenker                    Linda E. McMahon
                                          President and Chief Executive Officer

Date: ___March 30, 1998___          Date: ___4/8/98___

f:\users\legal2\word\contracts\amend\Shenker, Stanley first amendment
3/26/98

2

® Registered Trademark of TitanSports, Inc

STATE OF CONNECTICUT )
                      ) ss: *Stamford*
COUNTY OF FAIRFIELD   )

On *April 8,* _____ 1998, before
me *Elizabeth M. DiFabio* _____ personally came
Linda E. McMahon, President and Chief Executive Officer of Titan Sports, Inc., to me
known, and known to me to be the individual described in, and who executed the foregoing,
and duly acknowledged to me that she is a duly authorized corporate officer of Titan Sports,
Inc., and that she executed the same on behalf of said Company.

WITNESS my hand and notarial seal this *8* day of *April* ,1998.

*Elizabeth M DiFabio*
Notary Public

ELIZABETH M. DiFABIO
NOTARY PUBLIC, STATE OF CONNECTICUT
MY COMMISSION EXPIRES
AUGUST 31, 1999

My commission expires: _____


STATE OF *CONNECTICUT* )
                        ) ss:
COUNTY OF *FAIRFIELD*   )

On *APRIL 13, 1998* _____ 1998, before
me *Sheryl J. Tellier* _____ personally came
Stanley Shenker, a corporate officer of Stanley Shenker & Associates, Inc., to me known, and
known to me to be the individual described in, and who executed the foregoing, and duly
acknowledged to me that he is a duly authorized corporate officer of Stanley Shenker &
Associates, Inc. and that he executed the same on behalf of said Company.

WITNESS my hand and notarial seal this *13* day of *April* ,1998.

*Sheryl J Tellier*
Notary Public

SHERYL J. TELLIER
NOTARY PUBLIC
MY COMMISSION EXPIRES NOV. 30, 2002

My commission expires: _____

f:\users\legal2\word\contracts\amend\Shenker, Stanley first amendment
3/26/98

3