UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x
                          :

WORLD WRESTLING ENTERTAINMENT, INC.   :  Case No. 04 CV 8223 (KMK)
                          :  (ECF CASE)

            Plaintiff,        :

                          :

           v.               :

JAKKS PACIFIC, INC.; JAKKS PACIFIC (H.K.)  :
LIMITED; ROAD CHAMPS LIMITED; THQ, INC.;  :
THQ/JAKKS PACIFIC LLC, THE JOINT        :
VENTURE OF THQ, INC. and JAKKS PACIFIC,  :
INC.; STANLEY SHENKER AND ASSOCIATES,  :
INC.; STANLEY SHENKER; BELL LICENSING,  :
LLC; JAMES BELL; JACK FRIEDMAN;        :
STEPHEN BERMAN; and JOEL BENNETT    :

           Defendants.      :

------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THQ'S MOTION TO

## DISMISS THE COMPLAINT

SIDLEY AUSTIN BROWN & WOOD LLP      IRELL & MANELLA LLP
Steven M. Bierman (SB 6615)             Steven A. Marenberg (*Pro Hac Vice*)
Isaac S. Greaney (IG 0922)              Philip M. Kelly (*Pro Hac Vice*)
787 Seventh Avenue                   1800 Avenue of the Stars
New York, New York 10019           Los Angeles, California 90067
Phone: (212) 839-5300                Phone: (310) 277-1010
Fax: (212) 839-5599                    Fax: (310) 203-7199

*Attorneys for Defendant THQ Inc.*

1263439

## TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................1

A SUMMARY OF THE COMPLAINT'S ALLEGATIONS AGAINST THQ............................3

ARGUMENT ....................................................................................................................5

     I.     WWE'S RICO CLAIMS AGAINST THQ MUST BE DISMISSED .................5

          A.    The Compliant Fails To Allege That THQ Participated in the "Operation Or Management" Of The RICO Enterprise ............................6

          B.    The Complaint Fails To Adequately Allege Any Predicate Acts of Racketeering By THQ ..........................................................................7

          C.    The Complaint Fails To Adequately Allege that THQ Engaged in a Continuous Pattern of Racketeering .....................................................9

     II.    IMPOSING VICARIOUS LIABILITY ON THQ WOULD BE INAPPROPRIATE ...........................................................................................3

          A.    The Alleged Bribery Scheme Took Place Before THQ Had Any Association With Jakks..............................................................................3

          B.    Even If THQ Had Been Associated With Jakks At The Time Of The Alleged Bribery Scheme, THQ Cannot Be Vicariously Liable Because It Was Not A "Central Figure" Or "Aggressor"..............3

     III.    A NUMBER OF WWE'S STATE LAW CLAIMS SHOULD BE DISMISSED ......................................................................................................3

IV.     ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA...........................................3

CONCLUSION...............................................................................................................3

TABLE OF AUTHORITIES

Page(s)

**Cases**

Amendolare v. Schenkers Intern. Forwarders, Inc.,
    747 F. Supp. 162 (E.D.N.Y. 1990) ............................................................. 12

Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.,
    187 F.3d 229 (2d Cir. 1999)..................................................................... 10

Coker v. Bank of America,
    984 F. Supp. 757 (S.D.N.Y. 1997) ........................................................... 15

Crown Heights Jewish Community Council v. Fischer,
    63 F. Supp. 2d 231 (E.D.N.Y. 1998) ......................................................... 8

DeJesus v. Sears, Roebuck and Co.,
    1995 WL 122726 (S.D.N.Y. 1995)............................................................ 12

Dep't. of Econ. Dev. v. Arthur Andersen & Co.,
    924 F. Supp. 449 (S.D.N.Y. 1996) ............................................................ 6

Discon, Inc. v. Nynex Corp.,
    93 F.3d 1055 (2d Cir. 1996)..................................................................... 10

Fax Telecom., Inc. v. AT&T,
    138 F.3d 479 (2d Cir. 1998)..................................................................... 14

First Capital Asset Mgmt. v. Satinwood, Inc.,
    385 F.3d 159 (2d Cir. 2004).............................................................. 8, 9, 10

First Nationwide Bank v. Gelt Funding Corp.,
    27 F.3d 763 (2d Cir. 1994)....................................................................... 13

G.K.A. Beverage Corp. v. Honickman,
    55 F.3d 762 (2d Cir. 1995)....................................................................... 14

Gruber v. Prudential-Bache Sec., Inc.,
    679 F. Supp. 165 (D.Conn. 1987).......................................................... 12, 13

H.J., Inc. v. Northwestern Bell Tel. Co.,
    492 U.S. 229 (1988)................................................................................ 9

Hecht v. Commerce Clearing House, Inc.,
    897 F.2d 21 (2d Cir. 1990)....................................................................... 10

Page(s)

Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc.,
    157 F.3d 933 (2d Cir. 1998)..................................................................14

Int'l Brotherhood of Teamsters v. Carey,
    163 F. Supp. 2d 271 (S.D.N.Y. 2001).....................................................9

Jordan (Berm.) Inv. Co. v. Hunter Green Invs. Ltd.,
    154 F. Supp. 2d 682 (S.D.N.Y. 2001).....................................................7

LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.,
    951 F. Supp. 1071 (S.D.N.Y. 1996).......................................................6

Maddaloni Jewelers, Inc. v. Rolex Watches USA, Inc.,
    2004 WL 3015287 (S.D.N.Y. 2004).....................................................11

Mills v. Polar Molecular Corp.,
    12 F.3d 1170 (2d Cir. 1993)..................................................................8

Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP,
    2004 U.S. Dist. LEXIS 780 (S.D.N.Y. 2004)......................................13

Ouaknine v. MacFarlane,
    897 F.2d 75 (2d Cir. 1990)....................................................................8

Philip Morris v. Grinnell Litho. Co.,
    67 F. Supp. 2d 126 (E.D.N.Y. 1999) ...................................................14

Qatar Nat'l. Navigation & Transp. Co. Ltd. v. Citibank, N.A.,
    1992 WL 276565 (S.D.N.Y. 1992).......................................................11

Reves v. Ernst & Young,
    507 U.S. 170 (1993)..........................................................................1, 6

RTC Mortg. Trust 1995-S/N1 v. Sopher,
    171 F. Supp. 2d 192 (S.D.N.Y. 2001)...................................................14

Savitsky v. Mazella,
    2004 WL 2454120 (S.D.N.Y. 2004).....................................................14

Scheiner v. Wallace,
    832 F. Supp. 687 (S.D.N.Y. 1993) ........................................................8

Schlaifer Nance & Co. v. Estate of Warhol,
    119 F.3d 91 (2d Cir. 1997)...................................................................11

Schmidt v. Fleet Bank,
    16 F. Supp. 2d 340 (S.D.N.Y. 1998)..............................................passim

Page(s)

Shaw v. Rolex Watch, U.S.A., Inc.,
    673 F. Supp. 674 (S.D.N.Y. 1987) ............................................................ 8

United States v. Alkins,
    925 F.2d 541 (2d Cir. 1993).................................................................... 9

United States v. Viola,
    35 F.3d 34 (2d Cir. 1994) ........................................................................ 6

USA Certif. Merchants v Koebel,
    262 F. Supp. 2d 319 (S.D.N.Y. 2003)...................................................... 12

Weber v. King,
    110 F. Supp. 2d 124 (E.D.N.Y. 2000) ..................................................... 13

**Statutes**

18 U.S.C. § 1962(c) ......................................................................................... 6

18 U.S.C. § 2314.............................................................................................. 8

28 U.S.C. § 1404(a) ..................................................................................... 2, 15

**Rules**

Fed. R. Civ. P. 12(b)(6).............................................................................. 6, 10

Fed. R. Civ. P. 9(b) ......................................................................................... 8

## INTRODUCTION AND SUMMARY OF ARGUMENT

Of all the parties alleged to have participated in the scheme detailed in the complaint filed by plaintiff World Wrestling Entertainment, Inc. ("WWE"), the most peripheral is defendant THQ Inc. ("THQ"). Notwithstanding the prolixity of WWE's pleading against others, THQ is not and could not (consistent with the WWE's other allegations) be accused of having knowingly played any role in the supposed bribery scheme. As such, WWE's RICO claims against THQ must be dismissed on multiple grounds.

First, in addition to significant deficiencies identified by the Jakks Defendants (and adopted by THQ herein), a ground unique to THQ supports dismissal of WWE's RICO claims. WWE has failed to adequately allege that THQ had "some part in directing the [RICO] enterprise's affairs" or that THQ participated in the "operation and management" of any alleged enterprise. Reves v. Ernst & Young, 507 U.S. 170, 179 (1993). Nor could WWE ever allege that THQ had any part in directing the enterprise as THQ is not alleged to have been involved with the Jakks Defendants, Bell, Shenker, or WWE when the alleged bribery scheme was implemented.

Moreover, other arguments set forth by the Jakks Defendants apply with even greater force as to THQ because of THQ's limited or non-existent role in WWE's conspiratorial tale. Regardless of whether WWE's RICO claims survive against any other defendant, other flaws in WWE's RICO claims against THQ include:

- WWE fails to allege that THQ committed the requisite number of RICO "predicate acts." Because THQ is not alleged to have had any knowledge of the alleged bribery scheme, WWE has not, and cannot, properly allege that THQ violated the various RICO "predicate act" statutes set forth in the complaint, all of which contain a criminal intent element; and

- WWE has failed to show that THQ engaged in a "continuous pattern of racketeering activity" in connection with its extremely limited or non-existent role in the alleged bribery scheme. Indeed, even if the continuity requirements of RICO are met as to other defendants, the continuity requirement cannot be met as to THQ as there are no allegations that THQ had any part in the alleged cover up.

Implicitly recognizing the glaring absence of any direct allegations of any wrongdoing by THQ, WWE attempts to resuscitate its pleading by alleging, in conclusory fashion, that the Jakks Defendants "acted on behalf of THQ" and hence THQ should be vicariously liable for the alleged bribery scheme. This tact too, cannot withstand any scrutiny. As the alleged bribery scheme was implemented long before THQ was associated with Jakks, and because THQ is not alleged to have ever had knowledge of any wrongdoing, the actions of the Jakks Defendants cannot, under any cognizable legal theory, be imputed to THQ. Even had THQ been associated with Jakks at the time of the bribe, vicarious liability is inapplicable because there are no allegations that THQ was a "central figure" or "aggressor" in the bribery scheme.

In addition to the defective RICO claims, other causes of actions alleged by WWE against THQ likewise must be dismissed. As noted in the papers filed by the Jakks Defendants, WWE's Robinson-Patman Act claim is facially deficient because the allegations concern alleged payments to obtain an intellectual property license, to which the Act expressly does not apply.[1] In addition, a number of WWE's state law claims fail as a matter of law and should be dismissed with prejudice as to THQ, regardless of whether this Court ultimately decides to retain jurisdiction of this mater. Such claims are facially meritless and cannot be saved by amendment. Finally, as set forth by the Jakks Defendants, this forum has no connection to the claims asserted or the parties to this action. As such, if this Court chooses not to dismiss WWE's federal claims, this action should be transferred pursuant to 28 U.S.C. § 1404(a) to the Central District of California, where the principal events are alleged to have occurred and where the vast majority of witnesses and parties reside.

---

[1] THQ incorporates the Jakks Defendants' arguments as to the Robinson-Patman Act claims and will not further address such claims in this brief. Indeed, in accordance with the Court's instructions, THQ has limited the discussion in this memorandum to those issues that apply with particular significance to THQ.

**A SUMMARY OF THE COMPLAINT'S ALLEGATIONS AGAINST THQ**

*The Basics of the Scheme Alleged By WWE:* WWE's claims against all defendants are based upon allegations that the Jakks Defendants[2] engaged in an illicit scheme to bribe defendants James Bell and Stanley Shenker in order to obtain WWE's videogame license. (Complaint ¶ 44.) WWE alleges that "[i]n order to place Jakks in control of the videogame license . . . Defendants Friedman and/or Berman and/or Bennett [all officers of Jakks] devised and implemented a corrupt scheme to foreclose competition for the videogame license and to obtain it by the commercial bribery of Shenker and Bell." (Id. ¶ 44.) WWE further alleges that the "scheme was implemented in early 1998" when Shenker provided an allegedly fraudulent invoice to Jakks on January 2, 1998. (Id. ¶ 46.) WWE alleges that the first payment of this alleged bribe took place on January 14, 1998, (Id. ¶ 52), and as a result, on March 30, 1998, Bell supposedly recommended to WWE management that the videogame license be awarded to Jakks, even though "Jakks . . . had no ability to perform a videogame license." (Id. ¶¶ 61-62.) The next day, the Jakks Defendants are alleged to have directed that the second payment of the bribe be made to Shenker, which was allegedly then split with Bell. (Id. ¶¶ 63-64.)

*THQ's Alleged [Non-]Role in the Alleged Scheme:* Notably, THQ is not alleged to have participated in, or known about, the implementation of the bribery scheme or the alleged payments. In fact, the Complaint alleges that THQ had no involvement at all with the videogame license until mid-April 1998, when THQ began competing *against* Jakks to obtain the videogame license for itself. (Complaint ¶ 70.) On April 16, 1998, representatives of THQ met with Bell and Shenker in an effort to obtain the videogame license for THQ (and THQ alone). (Id.) WWE alleges that Shenker and Bell "initially tried to steer away THQ from seeking the videogame license" and told THQ "that it should consider making a proposal for arcade games and personal computers." (Id.) WWE alleges that despite these efforts, THQ sent a letter on April 23, 1998,

---

[2] The "Jakks Defendants" refers to defendants Berman, Friedman, Bennett, Jakks Pacific, Inc., Jakks Pacific (H.K.) Limited, and Road Champs Limited. Jakks Pacific, Inc. is individually referred to as "Jakks."

to Bell and Shenker "indicating its desire to obtain the videogame license" on its own. (Id. ¶ 71.) THQ made a proposal for the videogame license which was "was clearly superior to the deal with Jakks which Bell and [Shenker] had already recommended to WWE." (Id.) But, WWE alleges, THQ's offer was never provided to WWE by Bell. (Id. ¶¶ 72-73.)

WWE further alleges that "[i]n order to conceal the scheme and see it to fruition, SSAI and Bell did not provide WWE management with copies of the April 23, 1998 letter from THQ or the April 27, 1998 Activision informal proposal." (Id. ¶ 74.) According to WWE, on information and belief, "the receipt of the THQ and Activision proposals jeopardized the existing bribery scheme then in place since questions would be raised if WWE went forward with the Jakks proposed license and later learned that WWE agents, SSAI and Bell, had received clearly superior offers from THQ and Activision." According to WWE, Bell and Shenker "advised Jakks of the terms of Activision's offer and of THQ's interest and the need to increase their offer so as to avoid detection of their scheme." (Id. ¶ 75.) WWE then alleges that "[h]aving obtained WWE's agreement to grant the videogame license to Jakks via the aforementioned scheme, and in order to get a cut of the anticipated revenues from the anticipated revenues associated with the videogame license, Jakks then solicited THQ to become a Joint Venture partner instead of submitting an independent proposal on behalf of THQ." (Id. ¶ 76.)

According to WWE, THQ "agreed to become a Joint Venture partner with Jakks on the videogame license instead of making its own formal and independent proposal" as "consideration for Jakks role in securing the license" even though, according to the Complaint, "THQ and Jakks both knew that the videogame license would be performed by THQ." (Id. 76.) THQ and Jakks submitted a joint proposal that Bell submitted for approval to WWE on May 12, 1998. (Id. ¶¶ 77, 82-83.) WWE does not allege that THQ, when it agreed to jointly seek the videogame license with Jakks, was informed of, participated in, or had any knowledge of, the alleged bribery scheme entered into by the Jakks Defendants, Bell and Shenker months prior.

On June 10, 1998, Jakks and THQ formally created THQ/Jakks Pacific LLC (the "LLC"), a Delaware limited liability company. (Id. ¶ 84.) On June 23, 1998, WWE and the LLC executed the videogame license, effective as of June 10, 1998. (Id.) WWE then alleges that "on July 15, 1998, as a final payment of the bribery scheme, Shenker caused another phony invoice to be delivered to Jakks' corporate headquarters." (Id. ¶ 87.) Again, WWE fails to make any allegation that THQ was either involved in or had any knowledge of the final payment of the bribery scheme.

Despite alleging a panoply of "predicate acts" committed by the various defendants in this action, **WWE identifies only *two* specific "predicate acts" committed by THQ**. First, WWE alleges that "on June 4, 1998, Daniel Offner, counsel to THQ, on behalf of THQ and the Joint Venture, transmitted by facsimile a letter to Kaufman, Geoffrey Bass, Esq., counsel for Jakks, Brian Farrell, President and CEO of THQ, and Defendant Berman enclosing revisions to the proposed videogame license." (Id. ¶ 141.xviii). Second, WWE alleges that "on June 9, 1998, Brian Farrell, President and CEO of THQ, on behalf of Defendants Jakks, THQ, the Joint Venture and THQ/Jakks, transmitted by facsimile a letter to Defendant Bell regarding his recent meeting with Bell in Stamford, Connecticut, and meetings between Defendants THQ and Jakks to discuss the Joint Venture." (Id. ¶ 141.a.xxxi.) WWE does not allege that either of these acts was done with any knowledge of wrongdoing or with any illicit intent by THQ.

WWE's Complaint also contains a panoply of allegations relating to the efforts of the Jakks Defendants, Bell, and Shenker to cover up the alleged bribery scheme. (Id. ¶¶ 91-134.) Again, notably, WWE offers no allegations that THQ engaged in any improper cover up.

**ARGUMENT**

**I.     WWE'S RICO CLAIMS AGAINST THQ MUST BE DISMISSED**

Because the application of the Jakks Defendants' arguments apply with independent significance to THQ and because of the additional deficiencies specific to THQ, WWE's RICO claims fail as to THQ.

**A.    The Complaint Fails To Allege That THQ Participated in the
"Operation Or Management" Of The RICO Enterprise**

To state a valid RICO claim against THQ, WWE must allege that THQ "participate[d],

directly or indirectly, in the conduct of [the RICO] enterprise's affairs." 18 U.S.C. § 1962(c).

"In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one

must have some part in directing those affairs." Reves v. Ernst & Young, 507 U.S. 170, 179

(1993). Accordingly, unless THQ had some part in the "operation or management" of the

enterprise's affairs, it cannot be liable under RICO. Id. at 179-83.

Courts in this circuit have not hesitated to dismiss RICO claims with prejudice at the

Rule 12(b)(6) stage for failing to adequately allege "operation or management" over the RICO

enterprise. Schmidt v. Fleet Bank, 16 F. Supp. 2d 340, 346-47 (S.D.N.Y. 1998) (dismissing with

prejudice under Rule 12(b)(6) for failure to adequately allege "operation and control" and citing

numerous cases in this district where RICO claims were dismissed for failing to allege

"operation and control"); LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co., 951 F. Supp.

1071, 1090 (S.D.N.Y. 1996) ("As interpreted by courts in this district and others, the 'operation

or management' test set forth by the Supreme Court in Reves is a very difficult test to satisfy.")

Indeed, the "simple taking of directions and performance of tasks that are 'necessary and helpful'

to the enterprise, without more, is insufficient to bring a defendant within the scope of 1962(c)."

Schmidt, 16 F.Supp.2d at 346 (citing United States v. Viola, 35 F.3d 34, 41 (2d Cir. 1994)).

Further, there is a "substantial difference between actual control over an enterprise and

association with an enterprise in ways that do not involve control; only the former is sufficient

under Reves because 'the test is not involvement but control.'" Id. (citing Dep't. of Econ. Dev.

v. Arthur Andersen & Co., 924 F. Supp. 449, 466 (S.D.N.Y. 1996)).

WWE's allegations as to THQ utterly fail to satisfy the "operation and management"

standard of these authorities.[3] Although the Complaint alleges that the bribery scheme was

---

[3] Schmidt is illustrative of just how woefully deficient WWE's claims against THQ truly are. In that case,
the Court held that allegations that Fleet Bank knowingly assisted another defendant (Schick) by committing a

implemented in January 1998, (Complaint ¶ 46), WWE offers no allegations that THQ was involved in any way with Jakks, WWE, the videogame license at that time, let alone the implementation or "operation and management" of this bribery scheme. In fact, the Complaint alleges the contrary: in April 1998, months after the implementation of the bribery scheme, THQ is alleged to have been <u>competing against</u> Jakks in an effort to obtain the videogame license for itself. (<u>Id.</u> ¶ 70.) As such, THQ simply could not have participated in the control or management of the enterprise.

THQ is not even alleged to have taken directions or performed tasks that were "necessary and helpful" to the alleged enterprise once THQ became associated with Jakks – allegations which themselves are not enough to support RICO liability. The most WWE could possibly allege was that THQ was unknowingly associated with an enterprise, plainly insufficient to establish "operation and management" or result in RICO liability.

### B.    The Complaint Fails To Adequately Allege Any Predicate Acts of Racketeering By THQ

WWE plainly fails to adequately allege that THQ engaged in the requisite number of RICO predicate acts.[4] There are only two specific acts alleged to have been committed by THQ, both of which fall under the "Mail and Wire Fraud" allegations. First, WWE alleges that "Brian Farrell, President and CEO of THQ, . . . transmitted by facsimile a letter to Defendant Bell

---

number of wrongful acts were insufficient to find RICO liability. <u>Id.</u> at 347. Fleet Bank was alleged to have knowingly participated in the scheme by "allowing Schick access to the escrow accounts, approving Schick's overdrafts on 500 separate occasions, failing to notify the relevant authorities of the irregularities in the Schick accounts, misrepresenting to investors the status of the accounts and helping Schick to conceal the scheme generally." <u>Id.</u> The Court found such aversions inadequate to allege "operation or management" of the RICO enterprise and that the allegations were really allegations of assistance to the alleged RICO enterprise, not direction of it. <u>Id.</u> The Court further noted that "[t]he weakness of plaintiffs' allegations with regard to the Fleet Defendants is also highlighted by comparison to the allegations against Schick, who clearly did operate and manage any RICO enterprise that may have existed." <u>Id.</u> at 348. Unlike Fleet, THQ is not alleged to have known about the alleged misconduct, much less actively participated in such conduct. And like the situation in <u>Schmidt</u>, "the weakness of [WWE]'s allegations with regard to" THQ "is also highlighted by comparison to the allegations" against Shenker, Bell, and the Jakks Defendants.

[4] It is well-settled that "[i]n the context of a RICO claim, *each defendant* must be alleged to have engaged in two or more predicate acts." <u>Jordan (Berm.) Inv. Co. v. Hunter Green Invs. Ltd.</u>, 154 F. Supp. 2d 682, 692 (S.D.N.Y. 2001) (emphasis added).

regarding his recent meeting with Bell in Stamford, Connecticut, and meetings between Defendants THQ and Jakks to discuss the Joint Venture." (Complaint, ¶ 141.a.xxxi.) Second, WWE alleges that a lawyer for THQ transmitted revisions to the proposed license agreement. (Id., ¶ 141.xviii.) WWE has failed, however, to allege that such communications were fraudulent or that THQ was knowingly furthering an illicit scheme when making such communications.[5] As such, neither of these alleged communications constitutes a "predicate act" under RICO.

For THQ to have violated *any* of the predicate-act statutes set forth in the Complaint, it must have acted with criminal intent. See, e.g., Scheiner v. Wallace, 832 F. Supp. 687, 699 (S.D.N.Y. 1993) ("To find violations of mail and wire fraud statutes that satisfy the 'predicate acts' requirement of RICO, Plaintiffs must satisfactorily allege: first, participation in a scheme to defraud; and second, *knowing use of the interstate mails or interstate wires in furthering the scheme* (emphasis added)); Crown Heights Jewish Community Council v. Fischer, 63 F. Supp. 2d 231, 239 (E.D.N.Y. 1998) ("To establish that defendants have engaged in money laundering activity prohibited by [18 U.S.C. §] 1957, plaintiffs must prove . . . that defendants *knowingly* conducted a monetary transaction in criminally derived property. . . ." (emphasis added)); Shaw v. Rolex Watch, U.S.A., Inc., 673 F. Supp. 674, 679 (S.D.N.Y. 1987) (violating [18 U.S.C. §] 2314 requires that defendant transport "plaintiff's property . . . with *knowledge* that the property was taken by fraud" (emphasis added)). WWE has not alleged, and cannot in good faith allege, that THQ knowingly violated any criminal statute upon which WWE bases its RICO claims.[6]

---

[5] WWE falls far short of complying with "the heightened pleading requirements of Fed. R.Civ. P. 9(b) for allegations of fraudulent predicate acts." First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 178 (2d Cir. 2004). None of the allegations pertaining to THQ offer any specifics of how the alleged statements were false, the circumstances of such statements, or any inference of fraudulent intent. Such conclusory allegations are insufficient under Rule 9(b). See, e.g., Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir. 1993) (holding that allegations of predicate mail and wire fraud acts must explain why the communications were fraudulent.)

[6] And even if WWE had conclusorily alleged that THQ knew of the scheme (which WWE did not even bother to do), the Court would still have to disregard such allegations as there is no factual basis alleged to support them. Quaknine v. MacFarlane, 897 F.2d 75, 80 (2d Cir. 1990) (in RICO pleading, "there must be some factual basis for conclusory allegations of intent. Allegations of scienter are sufficient if supported by facts giving rise to a 'strong inference' of fraudulent intent.")

Without any allegations that THQ somehow knew about the alleged bribery scheme and that the faxes were somehow part of this scheme (which no allegations support), WWE cannot argue that such innocent acts are criminal acts of wire fraud. United States v. Alkins, 925 F.2d 541, 550 (2d Cir. 1993) ("If an individual believes that the information set forth in a mailing is true, it follows that he cannot have the requisite intent to defraud" necessary to support liability for mail and/or wire fraud). Accordingly, WWE has not, and cannot, allege that THQ committed any "predicate acts" of racketeering and WWE's RICO claims thus fail.

### C.  The Complaint Fails To Adequately Allege That THQ Engaged in a Continuous Pattern of Racketeering

In addition to, and independent of, each of the foregoing deficiencies, WWE's RICO claims against THQ must be dismissed for the additional reason that WWE has failed to allege that THQ engaged in a continuous pattern of racketeering activity. The law is clear in the Second Circuit that when "analyzing the issue of continuity . . . [courts must] evaluate the RICO allegations with respect to *each defendant individually*." First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 180 (2d Cir. 2004) (emphasis added); see also Int'l Brotherhood of Teamsters v. Carey, 163 F. Supp. 2d 271, 280-281 (S.D.N.Y. 2001) ("[i]n determining the duration of a pattern of racketeering activity, courts focus solely on the predicate acts of racketeering each defendant is alleged to have committed.") When WWE's allegations are examined as to THQ alone, the allegations of continuity are plainly deficient.

THQ is not alleged to have become involved in the RICO "enterprise" until at least the end of April 1998, long after the Jakks Defendants had already implemented their alleged bribery scheme. Even if WWE had adequately alleged that THQ engaged in certain racketeering activity starting in April 1998 (which they have not), the scheme was entirely finished upon the "final payment" of the bribery scheme in August 1998. (Complaint ¶ 87.) This four-month period of racketeering activity is simply insufficient, as a matter of law, to meet the requirements of close-

ended continuity. Indeed, "[s]ince the Supreme Court decided H.J., Inc.[7], [the Second Circuit] has never held a period of less than *two years* to constitute a 'substantial period of time'" for purposes of closed-ended continuity. Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 244 (2d Cir. 1999) (emphasis added); see also First Capital, 385 F.3d at 181 ("Thus, while two years may be the minimum duration necessary to find closed-ended continuity, the mere fact that predicate acts span two years is insufficient, without more, to support a finding of a closed-ended pattern.").

To avoid this weight of legal authority, WWE attempts in the Complaint to extend the duration of the RICO scheme by alleging that Shenker, Bell, and the Jakks Defendants attempted to "cover up the criminal activity." (Complaint ¶¶ 91-134.) Even if WWE's allegations of cover up were sufficient to satisfy the continuity requirement against other defendants (which, as set forth in the Jakks Defendants' motion, they are not), WWE's allegations of a cover up do not implicate THQ and thus cannot be used to satisfy the continuity requirement as to THQ. THQ is not alleged to have participated, or even known about, this cover up. Accordingly, WWE's Complaint therefore falls far short of making the requisite allegations that THQ engaged in a continuous pattern of racketeering activity.[8]

## II.    IMPOSING VICARIOUS LIABILITY ON THQ WOULD BE INAPPROPRIATE

As set forth above, WWE has failed to assert allegations that THQ, or any of its officers or employees, had any direct involvement in, or knowledge of, the alleged wrongdoing that forms the basis of WWE's claims. The absence of such allegations is fatal to WWE's RICO

---

[7] H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1988).

[8] WWE's claim against THQ for conspiracy to violate the provisions of RICO must fail, because it is well-settled that "if the 'prior claims do not state a cause of action for substantive violations of RICO,' then a RICO conspiracy claim necessarily 'does not set forth a conspiracy to commit such violations.'" Schmidt, 16 F.Supp.2d at 353 (quoting Discon, Inc. v. Nynex Corp., 93 F.3d 1055, 1064 (2d Cir. 1996)). Moreover, there are *no* allegations that THQ ever agreed with others to commit any RICO violations. Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 25 (2d Cir. 1990) (affirming Rule 12(b)(6) dismissal of RICO conspiracy claim: "Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement.").

claims against THQ, as WWE cannot remedy these deficient claims by alleging that THQ is
vicariously liable for the acts of the Jakks Defendants.

**A.    The Alleged Bribery Scheme Took Place
Before THQ Had Any Association With Jakks**

WWE's claim that THQ is vicariously liable, under any theory, for the acts of the Jakks
Defendants for engaging in the alleged bribery scheme fails for the simple reason that, as
detailed above, WWE cannot allege that THQ had an affiliation or association with the Jakks
Defendants, WWE, or with the videogame license at the time the alleged bribe occurred.
Because the bribery scheme committed by the Jakks Defendants plainly pre-dates THQ's
association with Jakks, any acts committed by the Jakks Defendants were not done on behalf of,
or in furtherance of, any association between THQ and Jakks, as no such association existed.[9]

**B.    Even If THQ Had Been Associated With Jakks At The Time Of The Alleged
Bribery Scheme, THQ Cannot Be Vicariously Liable Because It Was Not A
"Central Figure" Or "Aggressor"**

Even if THQ had been associated with the Jakks Defendants when the alleged bribery
scheme was implemented and carried out, WWE still cannot allege that THQ is vicariously liable
for the actions of the Jakks Defendants.  WWE "faces a substantial burden" in seeking to hold
THQ vicariously liable for the acts of other defendants as numerous courts within the Second
Circuit have held that "vicarious liability has been held to be at odds with Congressional intent in
enacting RICO since the statute was designed to protect corporations from criminal infiltration
rather than hold them liable." Schmidt, 16 F. Supp. 2d at 351 (citing Qatar Nat'l. Navigation &
Transp. Co. Ltd. v. Citibank, N.A., 1992 WL 276565, at *7 (S.D.N.Y. 1992)).  Furthermore, as
"Judge Cabranes has written, 'invoking RICO's punitive, financially ruinous treble damage

---

[9] WWE's allegation that the "final payment" of the bribery scheme took place after THQ had entered into
the LLC with Jakks does not alter this conclusion as the alleged act of bribery took place long before THQ's
involvement.  As discussed in detail in the Jakks Defendants motion, WWE's efforts to separate out the singular
bribe into a number of separate acts in order to invoke RICO has been rejected by the Second Circuit.  Schlaifer
Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997) ("[C]ourts must take care to ensure that the
plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO."); see also
Maddaloni Jewelers, Inc. v. Rolex Watches USA, Inc., 2004 WL 3015287, at *9 (S.D.N.Y. 2004) ("the Second
Circuit [has] oft-stated [the] admonition that courts should guard against the meritless fragmentation of a single
predicate act into multiple acts for the mere purpose of pursuing a RICO claim.").

remedy' could conceivably interfere with the very market forces that RICO was designed to protect." Schmidt, 16 F. Supp. 2d at 351 (citing Gruber v. Prudential-Bache Sec., Inc., 679 F. Supp. 165, 181 (D.Conn. 1987)).

Consistent with these principals, courts in this circuit have generally been hostile to claims of vicarious liability under RICO comparable to WWE's claims against THQ. DeJesus v. Sears, Roebuck and Co., 1995 WL 122726, at *4 (S.D.N.Y. 1995) (in the Second Circuit vicarious liability under civil RICO is available "only in limited circumstances, such as where 'the corporation may fairly be said to be central figure (or aggressor) in the alleged scheme.'"); Amendolare v. Schenkers Intern. Forwarders, Inc., 747 F. Supp. 162, 168 (E.D.N.Y. 1990) ("vicarious liability under RICO is only permitted when the defendant corporation can be characterized as the 'central' or 'controlling' figure in the RICO enterprise."); see also USA Certif. Merchants v Koebel, 262 F. Supp. 2d 319, 327 (S.D.N.Y. 2003) (holding that "corporations may not be held vicariously liable for the actions of their employees in violation of the RICO statute 'where the plaintiff has not alleged any facts which portray the company as an active perpetrator of the fraud or a central figure in the criminal scheme.'").

The Court in Amendolare distinguished for purposes of vicarious RICO liability "between 'aggressor' corporations that are central figures in the unlawful scheme and 'conduit' corporations that unknowingly facilitate the illegal behavior" and noted that most courts "have declined to subject the [latter] to RICO liability." Amendolare, 747 F. Supp. at 168. Judge Cabranes provided further clarification of when a corporation can be found to be a "central figure" for purposes of RICO liability:

> it is necessary to show that an officer or director had knowledge of, or was recklessly indifferent toward, the unlawful activity. Once knowledge or reckless indifference at this high corporate level has been determined, the court may then consider other factors, among them the number of high-level employees involved in the racketeering activity, their degree of participation in the racketeering activity, whether these high-level employees themselves committed the alleged predicate acts, and whether the corporation directly and substantially benefited from the racketeering activity.

1263439                          - 12 -

Schmidt, 16 F. Supp. 2d at 351 (citing Gruber, 679 F. Supp. at 181). However, "the fact that a corporation benefits from an illegal scheme does not in itself establish that the corporation participated as a 'central figure' in that scheme." Schmidt, 16 F. Supp. 2d at 352.

In the present case, WWE cannot and does not allege that THQ was either a "central figure" or "aggressor" in any RICO scheme, nor could WWE make such allegations in good faith. Indeed, it is plainly illogical to argue that THQ was a "central figure" or "aggressor" in the alleged bribery scheme that was admittedly implemented long before THQ was even involved with Jakks or WWE. However, even had THQ been associated with Jakks at the time the bribery scheme was implemented, WWE has failed to allege that any "officer or director" of THQ "had knowledge of, or was recklessly indifferent towards, the unlawful activity." Schmidt, 16 F.Supp.2d at 351. As noted repeatedly above, THQ is not alleged to have ever had knowledge of any wrongdoing on the part of any other defendant. Furthermore, the conclusory allegations that defendants Friedman, Berman, and/or Bennett were acting on behalf of THQ cannot rescue this claim as it is undisputed that they are officers of Jakks and not THQ.[10]  Because no knowledge of any alleged wrongdoing existed at the "high corporate level" at THQ (or any level, for that matter), vicarious liability is inappropriate as to THQ.[11]

**III.    A NUMBER OF WWE'S STATE LAW CLAIMS SHOULD BE DISMISSED**

THQ recognizes that the Court may decline to exercise its supplemental jurisdiction should it find the federal claims lacking. THQ nevertheless respectfully requests that several of WWE's state law claims against THQ be dismissed with prejudice now, as they are clearly

---

[10] In any event, the repeated, bare allegations that certain Jakks officers were "acting on behalf of" THQ (and others) must be disregarded by the Court as they are inconsistent with the facts alleged by WWE. First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 772 (2d Cir. 1994) ("Courts do 'not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened.'" (quoted in parenthetical)); Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP, Case No. 03 Civ. 0613 (GBD), 2004 U.S. Dist. LEXIS 780, *17 (S.D.N.Y. 2004) (In RICO action, "Plaintiffs' conclusory allegations that Medina and CDSA were 'agents' of defendants Andersen and PWC, . . . [are] insufficient to withstand defendants' motion to dismiss.")

[11] Finally, it goes without saying that THQ could not be held liable for simply being a member of an LLC. Weber v. King, 110 F. Supp. 2d 124, 128 (E.D.N.Y. 2000) (LLC "members are afforded corporate-like limited liability protection, i.e., members do not have personal liability for the debts, obligation, or liabilities of the LLC.").

deficient on their face and cannot be saved by amendment.  First, WWE's sixth claim for relief

for "commercial bribery" under New York's Penal Laws must be dismissed as "every federal

court considering the issue has concluded that the commercial bribery sections of the Penal Law

do not create a private right of action."  Philip Morris v. Grinnell Litho. Co., 67 F. Supp. 2d 126,

140 (E.D.N.Y. 1999).  Without a private right of action, this claim plainly fails.

       WWE's seventh claim for fraudulent inducement, its ninth and tenth claims for inducing

the breach of fiduciary duty, and its twelfth claim for tortious interference with contract, must be

dismissed because the Complaint, as detailed above, lacks the requisite allegations that THQ

acted with knowledge and/or intent to defraud.  See, e.g., Fax Telecom., Inc. v. AT&T, 138 F.3d

479, 490 (2d Cir. 1998) (fraudulent inducement requires defendant to make knowingly false

representation); Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc., 157 F.3d 933,

944 (2d Cir. 1998) (inducing breach of fiduciary duty requires "that the defendant knowingly

induced or participated in the breach"); G.K.A. Beverage Corp. v. Honickman, 55 F.3d 762, 767

(2d Cir. 1995) (tortious interference requires "defendant's intentional procurement of the breach

of that contract").

       In addition, WWE's thirteenth claim must be dismissed because it is well-established that

there is no independent cause of action for "Piercing the Corporate Veil/Alter Ego" as asserted

by WWE.  RTC Mortg. Trust 1995-S/N1 v. Sopher, 171 F. Supp. 2d 192, 202 (S.D.N.Y. 2001).

Finally, WWE's fourteenth claim for relief for "conspiracy" must be dismissed, as the complaint

does not even attempt to, and cannot, allege the elements required to state a claim of conspiracy

against THQ.  Savitsky v. Mazella, 2004 WL 2454120 (S.D.N.Y. 2004) (plaintiff must allege an

independent actionable tort and four additional elements:  (1) a corrupt agreement between two

or more parties; (2) an overt act in furtherance of the agreement; (3) a party's intentional

participation in the furtherance of a plan or purpose; and (4) resulting damages or injury).

## IV.    ALTERNATIVELY, THIS ACTION SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA

In the event that WWE's federal claims are not dismissed entirely, THQ respectfully submits that the entire action should be transferred to the Central District of California pursuant to 28 U.S.C. § 1404(a). As discussed by the Jakks Defendants, the allegations of the Complaint establish that California is a far superior forum. The individual Jakks Defendants, Jakks, the LLC, and THQ all reside in California and the vast majority of witnesses and evidence are in California. Requiring these defendants to defend this action in New York, which has no connection to the dispute, would pose significant expense and inconvenience. Further, the vast majority of the alleged wrongdoing is alleged to have taken place in, or to have been directed from, California. These factors greatly favor California as the appropriate forum.

The fact that the nexus to New York is minimal, at best, further compels the conclusion that California is the appropriate forum for any remaining claims to be heard. None of the parties reside in New York, including WWE. As a result, WWE's choice of forum is entitled to lesser weight. Coker v. Bank of America, 984 F.Supp. 757, 766 (S.D.N.Y. 1997). Moreover, WWE has stated no other genuine connection to this forum. Accordingly, should this Court determine that WWE has stated federal claims against any defendant, this action should be transferred to the Central District of California.

### CONCLUSION

THQ respectfully requests that its motion to dismiss be granted for the foregoing reasons.

Dated: February 28, 2005
SIDLEY AUSTIN BROWN & WOOD LLP
Steven M. Bierman (SB 6615)
Isaac S. Greaney (IG 0922)
787 Seventh Avenue
New York, New York 10019

Respectfully submitted,
IRELL & MANELLA LLP
Steven A. Marenberg (*Pro Hac Vice*)
Philip M. Kelly (*Pro Hac Vice*)
1800 Avenue of the Stars
Los Angeles, California 90067

By: _____
Steven A. Marenberg
Attorneys for Defendant THQ