UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
:
WORLD WRESTLING ENTERTAINMENT, INC.,          :     04 CV 8223 (KMK)
                                              :     (ECF CASE)
                      Plaintiff,              :
                                              :
         - against -                          :
                                              :
JAKKS PACIFIC, INC.; JAKKS PACIFIC (H.K.)     :
LIMITED; ROAD CHAMPS LIMITED; THQ, INC.;      :
THQ/JAKKS PACIFIC LLC, THE JOINT VENTURE      :
OF THQ, INC. and JAKKS PACIFIC, INC.;         :
STANLEY SHENKER AND ASSOCIATES, INC.;         :
STANLEY SHENKER; BELL LICENSING, LLC;         :
JAMES BELL; JACK FRIEDMAN; STEPHEN            :
BERMAN and JOEL BENNETT,                      :
                                              :
                      Defendants.             :
                                              :
------------------------------------------------------------------------x


**MEMORANDUM OF LAW OF
DEFENDANT THQ/JAKKS PACIFIC LLC
IN SUPPORT OF ITS MOTION TO DISMISS,
OR ALTERNATIVELY, TO TRANSFER VENUE**


DORNBUSH SCHAEFFER STRONGIN & WEINSTEIN, LLP
Richard Schaeffer (RS0019)
Bruce Handler (BH9426)
Brian Rafferty (BR7258)
747 Third Avenue
New York, New York 10017
Telephone: (212) 759-3300
Facsimile: (212) 753-7673

*Attorneys for THQ/JAKKS Pacific LLC*


February 28, 2005

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

Preliminary Statement ........................................................................................................... 1

The Allegations Against The LLC ........................................................................................ 4

ARGUMENT .......................................................................................................................... 5

    I.    WWE'S RICO CLAIMS AGAINST THE LLC SHOULD BE DISMISSED ........................................................................ 5

        A.    The Complaint Fails Adequately To Allege That The LLC Participated In The "Operation or Management" Of An Alleged Racketeering Scheme .......................................... 5

        B.    The Complaint Does Not Allege A "Pattern" Of Racketeering Activity With Respect To The LLC ....................................... 9

        C.    The Complaint Does Not Adequately Allege That The LLC Committed RICO Predicate Acts............................................. 10

            1.    Mail And Wire Fraud............................................................................ 10

            2.    The Remaining Predicate Act Allegations........................................... 11

        D.    WWE Has Failed To State A RICO Conspiracy Claim Against The LLC ............................................................... 13

    II.    SHOULD THE COURT DETERMINE NOT TO DISMISS THE COMPLAINT, IT SHOULD TRANSFER THIS ACTION TO THE CENTRAL DISTRICT OF CALIFORNIA ........................ 14

CONCLUSION ...................................................................................................................... 15

166202.1

# TABLE OF AUTHORITIES

**Cases**                                                                                                       **Page(s)**

Amalgamated Bank of New York v. Marsh, 823 F. Supp. 209 (S.D.N.Y. 1993) ...................... 8

Burke v. Dowling, 944 F. Supp. 1036 (E.D.N.Y. 1995) ............................................................ 7

Casio Computer Co., Ltd. v. Sayo, 2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) ..................... 8

Club Car, Inc. v. Club Car (Quebec) Import, Inc., 276 F. Supp. 2d 1276
  (S.D.Ga 2003), aff'd, 362 F.3d 775 (11th Cir. 2004) ............................................................. 8

Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229 (2d Cir. 1999) ..................... 9

Com-Tech Assoc's v. Computer Assoc's Int'l, Inc., 753 F. Supp. 1078
  (E.D.N.Y. 1990), aff'd, 938 F.2d 1574 (2d Cir. 1991) ......................................................... 13

Dietrich v. Bauer, 76 F. Supp.2d 312 (S.D.N.Y. 1999) ............................................................ 13

Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158 (S.D.N.Y. 2003) .......................... 7

First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159
  (2d Cir. 2004) ................................................................................................................... 9, 10

Fleischhauer v. Feltner, 879 F.2d 1290 (6th Cir. 1989), cert. denied,
  493 U.S. 1074 (1990) ............................................................................................................ 8

H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989) ................................................... 9

In re Smithkline Beecham Clinical Laboratories, Inc. Laboratory
  Test Billing Practices Litig., 108 F. Supp. 2d 84 (D. Conn. 1999) ........................................ 5

Landy v. Mitchell Petroleum Technology Corp., 734 F. Supp. 608
  (S.D.N.Y. 1990) ..................................................................................................................... 9

Lange v. Hocker, 970 F.2d 359 (8th Cir. 1991) ........................................................................ 12

LaSalle National Bank v. Duff & Phelps Credit Rating Co., 951 F. Supp. 1071
  (S.D.N.Y. 1996) ..................................................................................................................... 6

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young, 1994 WL 88129
  (S.D.N.Y. Mar. 15, 1994) .................................................................................................... 13

Mills v. Polar Molecular Corp., 12 F.3d 1170 (2d Cir. 1993) ................................................. 11

Moore v. PaineWebber, Inc., 189 F.3d 165 (2d Cir. 1999) ..................................................... 10

| **Cases** | **Page(s)** |
|---|---|
| Odyssey re (London) Limited v. Sterling Cooke Brown Holdings Limited, 85 F. Supp.2d 282 (S.D.N.Y. 2000), aff'd, 2001 WL 46565 (2d Cir. 2001) | 11, 13 |
| Redtail Leasing, Inc. v. Bellezza, 1999 WL 32941 (S.D.N.Y. Jan. 22, 1999) | 7 |
| Reinfeld v. Riklis, 722 F. Supp. 1077 (S.D.N.Y. 1989) | 13 |
| Reves v. Ernst & Young, 507 U.S. 170 (1993) | 6, 8 |
| Rodriguez v. Banc Central, 777 F. Supp. 1043 (D.P.R. 1991), aff'd, 990 F.2d 7 (1st Cir. 1993) | 12 |
| Schlaifer Nance & Co. v. Estate of Andy Warhol, 119 F.3d 91 (2d Cir. 1997) | 9 |
| Schmidt v. Fleet Bank, 16 F. Supp. 2d 340 (S.D.N.Y. 1998) | 7 |
| Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985) | 5 |
| Tribune Co. v. Purcigliotti, 869 F. Supp. 1076 (S.D.N.Y. 1994), aff'd, 66 F.3d 12 (2d Cir. 1995) | 7-8 |

**Rules and Statutes**

| | |
|---|---|
| Fed. R. Civ. P. 9(b) | 1, 10 |
| Fed. R. Civ. P. 12(b)(1) | 1 |
| Fed. R. Civ. P. 12(b)(6) | 1 |
| 18 U.S.C. § 1952 | 11 |
| 18 U.S.C. §§ 1956-57 | 11 |
| 18 U.S.C. § 1961 | 8, 9 |
| 18 U.S.C. § 1962(c) | 3, 5 |
| 18 U.S.C. § 1962(d) | 3, 13 |
| 18 U.S.C. § 2314 | 11 |
| 28 U.S.C. § 1367 | 14 |
| New York Penal Law § 180.03 | 12 |

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
:
WORLD WRESTLING ENTERTAINMENT, INC.,      :     04 CV 8223 (KMK)
                                           :     (ECF CASE)
                          Plaintiff,       :
                                           :
        - against -                        :
                                           :
JAKKS PACIFIC, INC.; JAKKS PACIFIC (H.K.)  :
LIMITED; ROAD CHAMPS LIMITED; THQ, INC.;   :
THQ/JAKKS PACIFIC LLC, THE JOINT VENTURE   :
OF THQ, INC. and JAKKS PACIFIC, INC.;      :
STANLEY SHENKER AND ASSOCIATES, INC.;      :
STANLEY SHENKER; BELL LICENSING, LLC;      :
JAMES BELL; JACK FRIEDMAN; STEPHEN         :
BERMAN and JOEL BENNETT,                   :
                                           :
                          Defendants.      :
                                           :
------------------------------------------------------------------------x

## MEMORANDUM OF LAW OF
## DEFENDANT THQ/JAKKS PACIFIC LLC
## IN SUPPORT OF ITS MOTION TO DISMISS,
## OR ALTERNATIVELY, TO TRANSFER VENUE

Defendant THQ/JAKKS Pacific LLC (the "LLC") respectfully submits this Memorandum in support of its motion for an order (i) pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), dismissing the claims asserted against the LLC by plaintiff World Wrestling Entertainment, Inc. ("WWE") under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Robinson-Patman Act ("RPA"); (ii) pursuant to Fed. R. Civ. P. 12(b)(1), dismissing this action in its entirety for lack of subject matter jurisdiction; and (iii) in the alternative, pursuant to 28 U.S.C. §1404(a), transferring this action to the Central District of California.

### Preliminary Statement

This is an ill conceived lawsuit brought in the wrong court. The LLC is a limited liability company based in California, comprised of defendants JAKKS Pacific, Inc. ("JAKKS") and

THQ Inc. ("THQ"). Since being formed and entering into a license agreement with WWE, dated June 10, 1998 (the "Videogame License Agreement"), the LLC has engaged exclusively in the development and marketing of professional wrestling theme videogames.

While there is much to criticize in WWE's Complaint, most striking is the cynicism of its stated purpose. Even though it has been prosecuting related claims against defendants Shenker and Bell in Connecticut state court for several years, WWE now has asserted in this Court a series of deeply flawed federal racketeering, antitrust and assorted state law claims with the aim of reaping extraordinary commercial benefits for itself, at the LLC's expense: WWE seeks <u>both</u> to recover an enormous monetary award from the LLC and the other defendants (including treble damages and disgorgement of the defendants' past licensing revenues) <u>and</u> a judicial declaration voiding the Videogame License Agreement with the LLC (as well as a separate license with JAKKS) -- an Agreement which has thus far provided WWE with handsome profits for seven years. As its own Complaint illustrates all too plainly, WWE has failed to assert legally cognizable federal claims in this action, and in any event, has not set forth substantive factual allegations that can sustain any of its claims against the LLC. This action should be dismissed.

In accordance with this Court's Order of January 25, 2005, the "JAKKS Defendants" already have moved to dismiss WWE's Complaint or alternatively to transfer this action to the Central District of California.[1] The LLC joins in the motion of the JAKKS Defendants and adopts each of the arguments set forth in their Memorandum of Law supporting dismissal and/or transfer of this action.

As the JAKKS Defendants have shown, WWE's RICO and RPA claims -- the sole bases for federal subject matter jurisdiction -- are built upon a misapplication of controlling law and cannot survive the present motions. The LLC is submitting its own Memorandum because, in light of its

---

[1] The "JAKKS Defendants" consist of JAKKS Pacific, Inc.; JAKKS Pacific (H.K.) Limited; Road Champs, Ltd.; Jack Friedman; Stephen Berman and Joel Bennett.

particular role (or rather, its lack of a role) in the transactions at issue, the flaws of the present action prove all the more stark. According to the Complaint itself, the LLC was not formed until June 10, 1998 -- well after the initiation of the alleged bribery scheme giving rise to this action, and five months after the first installment of the alleged bribe was paid. As WWE's Complaint also alleges, this purported bribery scheme was formulated and largely carried out not for the purpose of the LLC obtaining a videogame license from WWE -- the LLC did not exist when the scheme was allegedly formed -- but rather for the purpose of a <u>different party altogether</u> obtaining that license.

Simply stated, WWE is attempting to assert RICO claims against a party, the LLC, that played no active, continuing role in an alleged racketeering scheme. As we discuss in detail below (and in addition to those grounds set forth by the JAKKS Defendants), WWE's RICO claims should be dismissed as against the LLC for at least the following reasons:

(a)    WWE has failed to allege that the LLC participated in the "operation or management" of the alleged racketeering scheme, as the United States Supreme Court has required in order to maintain a RICO claim under 18 U.S.C. § 1962(c);

(b)    WWE has failed to allege that the LLC engaged in the requisite "pattern" of racketeering activity;

(c)    WWE has failed to allege that the LLC has committed the necessary predicate acts under RICO, with the requisite intent; and

(d)    WWE has failed to allege, in asserting a RICO conspiracy claim under 18 U.S.C. § 1962(d), that the LLC agreed to join a conspiracy and that it agreed to personally commit at least two predicate acts.[2]

Even if WWE's federal claims were somehow to survive the present motions, this action -- as WWE's Complaint again makes clear -- should not proceed in this Court. The LLC is a

---

[2]    The LLC adopts in full the JAKKS Defendants' arguments in support of dismissal of WWE's Robinson-Patman Act claim and is not advancing additional arguments in support of that branch of the motion.

- 3 -

Delaware limited liability company based in California. Complaint ("Cmp.") ¶ 15. The LLC's two members, JAKKS and THQ, are both Delaware corporations based in California. Id. at ¶¶ 8, 14. WWE itself, the LLC's partner in the Videogame License Agreement, is a Delaware corporation based -- not in New York where it has inexplicably chosen to bring this action -- but in Connecticut. Id. at ¶ 7. As the JAKKS Defendants have described, and as is evident from the Complaint, the central alleged events relating to WWE's claims occurred in the Central District of California and the key witnesses are located there. As a matter of law, efficiency and common sense, this action should not be imposed on this Court or the defendants.

### The Allegations Against The LLC.

Tellingly, WWE's allegations in its Complaint against the LLC are limited and skeletal. The Complaint alleges a bribery scheme among the defendants to obtain videogame and toy licenses from WWE. According to the Complaint, payments were made to WWE's licensing agent, Stanley Shenker, and his company, Stanley Shenker & Associates, Inc. ("SSAI"), who in turn split those payments with defendant James Bell, a WWE employee.

According to the Complaint, the "scheme was implemented in early 1998", for the purpose of JAKKS obtaining the videogame license from WWE, when Shenker delivered a handwritten invoice to JAKKS, dated January 2, 1998, in the amount of $80,000. Cmp. ¶¶ 44, 46. Payments were allegedly made to Shenker's company, Stanfull Industrial, Ltd., in the amount of $40,000 on January 14, 1998 (Cmp. ¶ 53); $40,000 on April 2, 1998 (Id. at ¶ 64); and "as a final payment of the bribery scheme", $20,000 on August 3, 1998 (Id. at ¶¶ 87-88).

The Complaint alleges that only after THQ and another company, Activision, submitted proposals for the WWE videogame license which were "clearly superior" to the JAKKS proposal, JAKKS and THQ -- in around May 1998 -- discussed becoming partners in a joint venture to acquire the videogame license from WWE. Cmp. ¶¶ 71-77. On May 12, 1998, defendant Bell

submitted a deal memorandum setting forth a revised proposal for a videogame license between WWE and a joint venture of THQ and JAKKS. Id. at ¶ 82.

By this time, the alleged bribery scheme at the heart of this action had purportedly been operating for months and the bulk of the alleged bribe already had been paid. On June 10, 1998, well <u>after</u> the alleged scheme was initiated and these installments paid, the LLC was formed. Cmp. ¶ 84. Later still -- on June 23, 1998 -- the LLC entered into the Videogame License Agreement with WWE. Id. at ¶ 85.

This is the entirety of the Complaint's substantive allegations against the LLC. To the extent WWE attempts to fabricate a RICO scheme involving the LLC -- or assert any other claims against the LLC -- it is built upon conclusory allegations and unsupported assertions that certain parties were acting "on behalf of or for the benefit of" the LLC. <u>See</u>, <u>e.g.</u>, Cmp. ¶ 141(a)(xxix).

## ARGUMENT

## I.

### WWE'S RICO CLAIMS AGAINST THE LLC SHOULD BE DISMISSED.

**A.    The Complaint Fails Adequately To Allege That
The LLC Participated In The "Operation or
Management" Of An Alleged Racketeering Scheme.**

In Count I of its Complaint, WWE purports to assert a RICO claim against all defendants pursuant to 18 U.S.C. § 1962(c). In order to state a cognizable claim under Section 1962(c), a plaintiff must establish that:

> (1) the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce.

<u>In re Smithkline Beecham Clinical Laboratories, Inc. Laboratory Test Billing Practices Litig.</u>, 108 F. Supp. 2d 84, 92 (D. Conn. 1999)(citing <u>Sedima, S.P.R.L. v. Imrex Co.</u> 473 U.S. 479, 496 (1985)).

Here, WWE has not come close to alleging that the LLC "participated" in a RICO enterprise under Section 1962(c). In <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 183 (1993), the United States Supreme Court articulated the special burden borne by a plaintiff in asserting a Section 1962(c) claim, holding that a defendant is not liable unless it "has participated in the operation or management of the [RICO] enterprise itself." In order to meet this standard, a defendant must have had "some part in directing [the enterprise's] affairs". <u>Id.</u> at 179. Moreover, "as interpreted by courts in this district and others, the 'operation and management' test… is a very difficult test to satisfy." <u>LaSalle National Bank v. Duff & Phelps Credit Rating Co.</u>, 951 F. Supp. 1071, 1090 (S.D.N.Y. 1996).

WWE's Complaint fails to allege that the LLC "participated" in a RICO enterprise at all, much less in "the operation and management" of such an enterprise as the Supreme Court has required. First and most obviously, the LLC <u>could not have</u> participated in the alleged RICO enterprise, or in its operation and management: as the Complaint itself concedes, the LLC <u>did not exist</u> at the time the alleged enterprise was formed; at the time any bribery scheme was initiated; or during the bulk of the period when the alleged bribery occurred. Specifically, the LLC was not formed until <u>June 10, 1998</u>. Cmp. ¶84 According to the Complaint, however, the "scheme was implemented" by January 2, 1998 -- more than five months prior to the LLC's formation -- through the alleged issuance of an invoice dated <u>January 2, 1998</u> by defendant Shenker's foreign corporation, Stanfull Industrial, Ltd. <u>Id.</u> at ¶¶46-48. The second installment of the purported bribe was allegedly made on April 2, 1998 -- two months before the LLC came into existence. <u>Id.</u> at ¶ 64.

The LLC also could not have participated in the control or management of the enterprise's affairs because, according once again to the Complaint, the RICO "enterprise" initiated and substantially carried out the alleged scheme for the purpose of JAKKS -- <u>not the LLC</u> -- acquiring a videogame license from WWE. <u>See</u> Cmp. ¶76 ("Having obtained WWE's agreement to grant the videogame license to Jakks via the aforementioned scheme, …").

- 6 -

In light of the chronology and nature of the alleged RICO scheme -- as set forth in WWE's own Complaint -- WWE cannot possibly satisfy the Reves "operation and management test" through the assertion of bare conclusory, and essentially meaningless, allegations of "participation" against the LLC.  See Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158, 164 (S.D.N.Y. 2003)(rejecting RICO claim against Citibank where [plaintiff] "makes the conclusory allegation that Citibank participated in the alleged money laundering -- when in fact it is the actions principally of [other parties] which allegedly are in question"); Redtail Leasing, Inc. v. Bellezza, 1999 WL 32941 at *5 (S.D.N.Y. Jan. 22, 1999) (dismissing Section 1962(c) claim where, although complaint "suffice[d] to suggest that [defendant] participated in the insider trading ring's affairs… these allegations do not suggest that [defendant] directed, managed, operated or otherwise controlled some portion of the affairs of the insider trading ring").

In Schmidt v. Fleet Bank, 16 F. Supp. 2d 340, 347 (S.D.N.Y. 1998), the Court dismissed a Section 1962(c) claim against defendant Fleet Bank for failure to meet the Reves "operation and management" test.  Observing that plaintiffs' allegations against Fleet Bank related to Fleet's assistance in an alleged bank fraud scheme and its allowing the scheme to proceed (Id. at 347), the Court in Schmidt explained: "There is a 'substantial difference between actual control over an enterprise and association with an enterprise in ways that do not involve control; only the former is sufficient under Reves because 'the test is not involvement but control.'"  16 F. Supp. 2d at 346 (citations omitted)(emphasis added).

Notably, the Court in Schmidt distinguished -- in a manner dispositive of the LLC's motion here -- two cases holding that a defendant participated in the control and management of a RICO enterprise: Burke v. Dowling, 944 F. Supp. 1036 (E.D.N.Y. 1995); and Tribune Co. v. Purcigliotti, 869 F. Supp. 1076 (S.D.N.Y. 1994), aff'd, 66 F.3d 12 (2d Cir. 1995).  The Schmidt Court emphasized that, in Burke, the defendant had "helped to initiate the scheme" and "exerted substantial control over the other defendants." Schmidt, supra, 16 F. Supp. 2d at 347.  Similarly, in

- 7 -

Tribune Co., the Court had upheld plaintiff's RICO claims where the Complaint alleged that defendants "conceived of and implemented the scheme" and coordinated and orchestrated the fraudulent conduct at issue. Schmidt, supra, 16 F. Supp.2d at 348.

In this case, there are no allegations -- and could be none -- that the LLC initiated or conceived of the purported scheme because the LLC did not exist at or around the time any such scheme began. Nor has WWE effectively alleged that the LLC "actually directed anyone, as is required by the 'operation or management' test." Amalgamated Bank of New York v. Marsh, 823 F. Supp. 209, 220 (S.D.N.Y. 1993) (quoting Reves, supra, 507 U.S. 170 (1993)).

In light of the facts, as set forth in the Complaint, that the LLC did not exist until the very end of this alleged scheme, and surely did not direct or control the purported RICO enterprise, WWE has failed to plead the LLC's "participation" in a RICO enterprise sufficient to sustain its claim. See Casio Computer Co., Ltd. v. Sayo, 2000 WL 1877516 at *12 (S.D.N.Y. Oct. 13, 2000)(individual did not participate in pattern of racketeering where he was involved in only one alleged act of misappropriation "which lasted for a few months"); see also Club Car, Inc. v. Club Car (Quebec) Import, Inc., 276 F. Supp. 2d 1276, 1290 (S.D.Ga 2003), aff'd, 362 F.3d 775 (11th Cir, 2004)(counterclaimants "have not alleged sufficient participation of IRCL" in enterprise where IRCL was incorporated after occurrence of alleged predicate acts); Fleischhauer v. Feltner, 879 F.2d 1290, 1298-1299 (6th Cir. 1989), cert. denied, 493 U.S. 1074 (1990)(granting directed verdict to defendant corporation dismissing RICO claim because corporation "was not yet incorporated during the existence of the alleged scheme").[3]

---

[3] In apparent recognition of the LLC's limited involvement in, and lack of control over, the alleged enterprise's affairs, WWE has coined the term "Joint Venture", apparently to describe the activities of an informal combination of JAKKS and THQ prior to the LLC's actual formation on June 10, 1998. (See Cmp., ¶¶ 76, 77) The alleged conduct of the so-called "Joint Venture" cannot be imputed to the LLC, and WWE's allegations add nothing to the RICO claim against the LLC. An informal and unincorporated entity such as this "Joint Venture" is not a "person" within the meaning of the RICO statute, which is defined as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. §1961(3); see Fleischhauer, supra, 879 F.2d at 1299 (defendant "could not violate RICO because it was not a legal 'person'").

**B.    The Complaint Does Not Allege A "Pattern"
Of Racketeering Activity With Respect To The LLC.**

Under the RICO Act, a "pattern of racketeering activity consists of 'at least two [predicate] acts of racketeering activity' committed in a ten-year period…" First Capital Asset Mgt., Inc. v. Satinwood, Inc., 385 F.3d 159, 178 (2d Cir. 2004) (quoting 18 U.S.C. §§ 1961(5)) (emphasis added). In order "[t]o establish a pattern, a plaintiff must also make a showing that the predicate acts of racketeering activity by a defendant are 'related, and that they amount to or pose a threat of continued criminal activity.'" Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999)(quoting H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989)(emphasis in original)).

Of significance here, in determining whether an alleged pattern bears the requisite "continuity", a Court must "evaluate the RICO allegations with respect to each defendant individually." First Capital, supra, 385 F.3d at 180. In addition, as the JAKKS Defendants have noted in their moving brief (at p. 26), WWE cannot properly characterize a single alleged predicate act as a violation of multiple statutes in order to satisfy the "pattern" requirement.

In the face of these well settled RICO principles, WWE has failed to allege a cognizable RICO "pattern" against the LLC. Even beyond the dispositive fact (discussed by the JAKKS Defendants) that the Complaint is based on a single short term bribe with a single victim, WWE can claim nothing more against the LLC -- which existed at the time of only one payment of the alleged bribe -- than its alleged involvement in only one "subpart[] of the singular act, and not a 'pattern' of separate acts with an underlying purpose." Schlaifer Nance & Co. v. Estate of Andy Warhol, 119 F.3d 91, 98 (2d Cir. 1997); see also Landy v. Mitchell Petroleum Technology Corp., 734 F. Supp. 608, 625 (S.D.N.Y. 1990) (plaintiffs failed to plead sufficient continuity of RICO pattern against defendants whose role in alleged racketeering activity "occurred at best over a few months").

In short, no matter how many ways WWE attempts to characterize the alleged bribe, and no matter how many separate federal statutes it invokes, WWE cannot adequately plead that the LLC committed sufficient predicate acts to have engaged in a "pattern of racketeering activity."[4]

**C.     The Complaint Does Not Adequately Allege
        That The LLC Committed RICO Predicate Acts.**

Without any specific factual allegations, WWE has asserted in its Complaint -- in vague and conclusory fashion -- that the LLC has committed a multitude of federal and state statutory violations. All of WWE's claims that the LLC has committed RICO predicate acts are based on boilerplate allegations and ultimately rest on the lone assertion that the LLC happened to be in existence at the time of one installment of the alleged bribe.

   **1.     Mail And Wire Fraud.**

WWE has purported to assert a combined twelve claims that the LLC and/or the pre-LLC "Joint Venture" committed predicate acts of mail or wire fraud. While the purported acts of the "Joint Venture" are not imputable to the LLC (see footnote at p. 8, supra), the Complaint in any event falls far short of satisfying "the heightened pleading requirements of Fed. R. Civ. P. 9(b)" for "allegations of fraudulent predicate acts." First Capital, supra, 385 F.3d at 178. In order to satisfy these pleading requirements, "[i]n addition to alleging the particular details of a fraud, 'the plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.'" Id. at 179 (quoting Moore v. PaineWebber, Inc., 189 F.3d 165, 173 (2d Cir. 1999)(emphasis in original)).

Here, a review of Paragraph 141 of the Complaint reveals various nonparticularized and conclusory allegations of fraud, plainly insufficient under Rule 9(b). Not one of the fraud claims against the LLC specifies how the alleged statements were false; the circumstances of such statements; or any circumstances giving rise to a strong inference of fraudulent intent. Indeed, most

---

[4]   As the JAKKS Defendants point out in their moving brief (at p. 21), WWE's attempt to extend the term of the alleged RICO pattern -- and thus establish the otherwise absent "closed-ended continuity" -- through allegations of a "cover up", fail as a matter of law. In any event, WWE has not set forth a single specific factual allegation that the LLC was directly engaged in any purported cover up. See Cmp. ¶¶ 91-134.

of the claims of mail and wire fraud against the LLC and/or the "Joint Venture" are based on completely innocuous communications forwarding comments or revisions to proposed license agreements or other business and marketing information.  See Cmp. ¶¶ 141(a)(xiii), (xv)-(xx).

Even with respect to those fraud claims relating to the alleged bribe, WWE has set forth nothing to suggest a strong inference of fraudulent intent.  WWE has not alleged that the LLC was directly involved in the alleged bribe payment at all.  See Cmp. ¶¶ 141(a)(xxviii)-(xxxi).

WWE's claims against the LLC of mail and wire fraud are plainly insufficient under Rule 9(b) and cannot sustain its RICO claim.  See Odyssey re (London) Limited v. Sterling Cooke Brown Holdings Limited, 85 F. Supp.2d 282, 301 (S.D.N.Y. 2000), aff'd, 2001 WL 46565 (2d Cir. 2001)(quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir. 1993)("'allegations of predicate mail and wire fraud acts should state the contents of the communications, who is involved, where and when they took place, and explain why they were fraudulent'").

2.  **The Remaining Predicate Act Allegations.**

In addition to its claims of mail and wire fraud, WWE alleges that the defendants have committed, as RICO predicate acts, violations of the National Stolen Property Act (18 U.S.C. § 2314); Federal Money Laundering Statutes (18 U.S.C. §§ 1956-57); the Federal Travel Act (18 U.S.C. § 1952); and New York commercial bribery laws.  Initially, we adopt those arguments set forth in the moving brief of the JAKKS Defendants (at pp. 33-35), demonstrating that WWE's allegations with respect to each of these alleged violations fail as a matter of law and do not establish the necessary predicate acts under the RICO Act.  In addition, as a matter of basic pleading, WWE's allegations are sorely deficient in failing to set forth factual allegations that the LLC committed any of these predicate acts.

With respect to money laundering, WWE has asserted a single claim against the LLC which fails to allege that the LLC did anything, much less engage in conduct amounting to money laundering.  Cmp. ¶ 141(b)(viii).  The claim relates to the final installment of the alleged bribery at

- 11 -

issue in this case, and alleges -- without explanation or factual basis -- that defendant Joel Bennett directed defendant Road Champs Limited to wire transfer $20,000 to the bank account of a company controlled by Shenker "on behalf of and for the benefit of… THQ/JAKKS" among other defendants. The allegation is pure boilerplate and, as noted, alleges no conduct against the LLC at all.

With respect to the National Stolen Property Act, there is no allegation that the LLC committed a predicate act.

With respect to the Federal Travel Act, WWE has incorporated by reference its previous allegations that the defendants, including the LLC, violated federal mail and wire fraud statutes, federal money laundering statutes and the National Stolen Property Act. Since, as discussed, WWE has failed adequately to allege that the LLC violated those statutes, it likewise has failed to allege that the LLC has violated the Federal Travel Act.

With respect to commercial bribery in violation of New York Penal Law § 180.03, WWE simply alleges that "certain Defendants made, authorized and/or participated in the payment of or agreement to pay unlawful bribes…" Cmp. ¶ 141(e). Once again there is no factual allegation indicating the LLC's involvement in any such bribe. WWE also alleges that those purported bribes "inured to the benefit of and/or were ratified by the Joint Venture and THQ/JAKKS." Id. Yet the Complaint does not allege facts indicating that the LLC (or the "Joint Venture") knowingly ratified any purported bribe, or how the LLC purportedly did so. In any event, a defendant's benefit from, or ratification of, an alleged predicate act is not the equivalent of having actually committed a predicate act. See, e.g., Lange v. Hocker, 970 F.2d 359, 362 (8th Cir. 1991)("Under Section 1961(1), attempting to ratify a disputed transaction is not a predicate act"); Rodriguez v. Banc Central, 777 F. Supp. 1043, 1063 (D.P.R. 1991), aff'd, 990 F.2d 7 (1st Cir. 1993)(continuing to accept payment on note is not a predicate act).

**D.  WWE Has Failed To State A RICO Conspiracy Claim Against The LLC.**

WWE's Section 1962(d) claim of RICO conspiracy against the LLC must also be dismissed. In order to state a claim of conspiracy to violate RICO, plaintiffs must allege that <u>each defendant</u> "personally agreed to commit two or more predicate acts." <u>Reinfeld v. Riklis</u>, 722 F. Supp. 1077, 1084 (S.D.N.Y. 1989). A plaintiff "is required to plead allegations that each of the defendants knowingly agreed to participate in the conspiracy, 'particularly when the predicate acts alleged are fraud.'" <u>Dietrich v. Bauer</u>, 76 F. Supp.2d 312, 349 (S.D.N.Y. 1999)(quoting <u>Com-Tech Assoc's v. Computer Assoc's Int'l, Inc.</u>, 753 F. Supp. 1078, 1087 (E.D.N.Y. 1990), <u>aff'd</u>, 938 F.2d 1574 (2d Cir. 1991)).

Here, in the vague and conclusory terms characteristic of its entire Complaint, WWE charges the LLC with RICO conspiracy, but does not allege any facts indicating that the LLC "personally" or "knowingly" agreed to commit two or more predicate acts. <u>See</u> Comp. ¶¶ 147-148. <u>See</u> <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young</u>, 1994 WL 88129 at *30 (S.D.N.Y. Mar. 15, 1994)("numerous district courts within this circuit have dismissed conclusory allegations of agreement as insufficient to state a RICO conspiracy claim").

Moreover, as discussed above, WWE has failed adequately to allege that the LLC has committed any cognizable RICO predicate act. For this reason as well, WWE's RICO conspiracy claim should be dismissed. <u>See</u> <u>Odyssey</u>, supra, 85 F. Supp. 2d at 303 ("Since we have previously dismissed plaintiff's claims against [defendant] for the underlying acts of mail and wire fraud, plaintiff's RICO conspiracy count must be similarly dismissed").

## II.

## SHOULD THE COURT DETERMINE NOT TO DISMISS THE COMPLAINT, IT SHOULD TRANSFER THIS ACTION TO THE CENTRAL DISTRICT OF CALIFORNIA.

As discussed above and in the JAKKS Defendants' moving brief, WWE has failed to state sustainable federal RICO or Robinson-Patman Act claims. Because federal jurisdiction in this action is based solely on WWE's assertion of those federal statutory claims, this action, including the various state law claims asserted by WWE, should be dismissed for lack of subject matter jurisdiction. See 28 U.S.C. § 1367(c)(3)(the district courts may decline to exercise supplemental jurisdiction over a claim where "the district court has dismissed all claims over which it has original jurisdiction").

Should this Court determine not to dismiss this action in its entirety, it nevertheless, we respectfully submit, should transfer the action to the Central District of California. The JAKKS Defendants, in their moving brief (at pp. 37-39), demonstrate that WWE's Complaint, as well as controlling law, compel the transfer of this action (were it to survive the present motions) to the Central District of California. Without repeating the JAKKS Defendants' arguments, the LLC simply reiterates that it and its two constituent members, THQ and JAKKS, are all Delaware entities based in California. The Complaint alleges that the acts in furtherance of the purported bribe also were largely committed in the Central District of California.

It is a mystery why WWE -- a Delaware corporation based in Connecticut -- chose to bring this action in the Southern District of New York. Based on all recognized criteria -- including the location of witnesses and evidence, and the locale of the transactions at issue -- this action should be transferred.

166202.1

## **CONCLUSION**

For the foregoing reasons, and the reasons set forth in the moving brief of the JAKKS Defendants, defendant THQ/JAKK Pacific LLC respectfully requests that this action be dismissed, or alternatively, transferred to the Central District of California.

Dated: New York, New York
       February 28, 2005

                         DORNBUSH SCHAEFFER STRONGIN
                           & WEINSTEIN, LLP

           By:   /s/
                       Richard Schaeffer (RS0019)
                       Bruce Handler (BH9426)
                       Brian Rafferty (BR7258)

                 747 Third Avenue
                 New York, New York 10017
                 (212) 759-3300

                 Attorneys for THQ/JAKKS Pacific LLC