UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

WORLD WRESTLING ENTERTAINMENT, INC.,

No. 04-CV-8223 (KMK)

Plaintiff,                    Hon. Kenneth M. Karas

-against-

JAKKS PACIFIC, INC.. et al.                    *Electronically Filed*

Defendants.
-------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION OF
DEFENDANTS STANLEY SHENKER AND STANLEY SHENKER
AND ASSOCIATES, INC. TO DISMISS OR STAY THIS ACTION**


LAW OFFICES OF MICHAEL A. FREEMAN

24 West 40th Street, 17th Floor
New York, New York  10018
(646) 366-0881

Counsel for Defendants Stanley Shenker and
Stanley Shenker and Associates, Inc.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    **INTRODUCTION**................................................................................1

II.   **RELEVANT FACTS AND ALLEGATIONS** .......................................3

    A.    Relevant Allegations in the Complaint ..........................................3

    B.    WWE's Counterclaim in the Prior Pending Connecticut Action .................6

III.  **ARGUMENT**....................................................................................8

    **Point I**

    PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST
    THE SHENKER DEFENDANTS UNDER THE RICO ACT ...............................8

    **Point II**

    THIS COURT SHOULD DISMISS THIS ACTION AGAINST
    THE SHENKER DEFENDANTS CONSISTENT WITH THE
    LEGAL PRINCIPLES AND POLICY CONSIDERATIONS
    THAT BAR DUPLICATIVE LITIGATION ...........................................11

        A.    The Doctrine of *Res Judicata* Bars WWE From Prosecuting
        This Action Against the Shenker Defendants..................................11

        B.    The Prior Pending Action Doctrine Also Mandates Dismissal
        of This Action Against the Shenker Defendants.............................17

        C.    The "One Satisfaction" Rule Also Warrants Dismissal of
        This Action Against the Shenker Defendants................................19

    **Point III**

    IF THIS ACTION IS NOT DISMISSED OR STAYED, IT SHOULD
    BE TRANSFERRED PURSUANT TO 28 U.S.C. § 1404(a) ..................................20

IV.  **CONCLUSION**...............................................................................21

# TABLE OF AUTHORITIES

Page

CASES

AmBase Corp. v. City Investing Co. Liquidating Trust, 326 F.3d 63
  (2d Cir.), cert. denied, 540 U.S. 1017 (2003) ...................................................................13

Brown v. Felsen, 442 U.S. 127 (1979) ...............................................................................11

Carnemolla v. Walsh, 815 A.2d 1251 (Conn. App. 2003).....................................................10

CBS, Inc. v. Tee Vee Records, Inc., 96 F.R.D. 163 (S.D.N.Y. 1982)...................................18, 19

Citadel Mgmt., Inc. v. Telesis Trust, Inc., 123 F. Supp. 2d 133 (S.D.N.Y. 2000) ...............10

CofaCredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229 (2d Cir. 1999) ...............9, 10

Colorado River Water Conservation Dist. v. U. S., 424 U.S. 800 (1976) ............................17

Continental Time Corp. v. Swiss Credit Bank, 543 F. Supp. 408 (S.D.N.Y.1982)...............18, 19

DiSorbo v. Hoy, 343 F.3d 172 (2d Cir. 2003) ....................................................................16

Ear, Nose and Throat Group, P.C. v. Stanescu, 734 A.2d 152
  (Conn. Super. 1999) ........................................................................................................14

GICC Capital Corp. v. Technology Finance Group, Inc., 67 F.3d 463 (2d Cir. 1995) .........9

Gionfriddo v. Gartenhaus Café, 546 A.2d 284 (Conn. App. 1988) .....................................19

Goel v. Heller, 667 F. Supp. 144 (D.N.J. 1987) ..................................................................16

Gregory v. Widnall, 153 F.3d 1071 (9th Cir. 1998) ............................................................12

Gryl ex rel. Shire Pharmaceuticals Group PLC v. Shire Pharmaceuticals
  Group PLC,  298 F.3d 136 (2d Cir. 2002).......................................................................3

H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989)............................................10

Hussein v. Pierre Hotel, No. 93 CIV. 3698 (MGC), 1994 WL 172409
  (S.D.N.Y. May 03, 1994)................................................................................................16

In re Reed, 861 F.2d 1381 (5th Cir. 1988).........................................................................16

Page

Jacobs v. Yale University, No. 277513, 2000 WL 1530030
  (Conn. Super. Sep. 21. 2000)................................................................13

Joe's Pizza, Inc. v. Aetna Life and Cas. Co., 675 A.2d 441 (Conn. 1996)...........................13, 14

Kremer v. Chemical Constr. Corp., 456 U.S. 461 (1982)......................................................11

Krondes v. Norwalk Sav. Soc., 728 A.2d 1103 (Conn. App. 1999).....................................13

Lane v. Peterson, 899 F.2d 737 (8th Cir.), cert. denied, 498 U.S. 823 (1990) ......................11

Lary v. Ansari, 817 F.2d 1521 (11th Cir. 1987) ....................................................11

Lesavoy v. Lane 304 F. Supp. 2d 520 (S.D.N.Y. 2004)  ................................................10, 17, 18

Manhattan Telecommunications Corp., Inc. v. DialAmerica Marketing, Inc.,
  156 F. Supp. 2d 376 (S.D.N.Y. 2001)..................................................................10

Matter of Johnson, 149 B.R. 284 (Bankr. D. Conn. 1993) ...................................................15

Migra v. Warren City School Dist. Bd. of Ed., 465 U.S. 75 (1984)  .....................................12

Murray v. Dominick Corp. of Canada, Ltd., 631 F. Supp. 534 (S.D.N.Y. 1986)................16

Petrella v. Siegel, 843 F.2d 87 (2d Cir.1988) ......................................................16

Phelan v. Local 305 of the United Ass'n of Journeymen & Apprentices
  of the Plumbing & Pipefitting Indus., 973 F.2d 1050 (2d Cir. 1992)................................19

Ritchie v. Landau, 475 F.2d 151 (2d Cir. 1973)....................................................16

Rivet v. Regions Bank, 522 U.S. 470 (1998).......................................................11, 15

Schlaifer Nance & Co. v. Estate of Andy Warhol, 119 F.3d 91 (2d Cir. 1997) ...................1, 9

Stokes v. Twin City Motors, Inc., 490 F. Supp. 742 (D.C. Ark. 1980)  ...............................12

Tafflin v. Levitt, 493 U.S. 455 (1980) ..............................................................15

Town of Deerfield, N.Y. v. F.C.C., 992 F.2d 420 (2d Cir. 1993) .........................................12

Tyndall v. Internation Brotherhood of Teamsters, Local 677,
  No. CV 970141684S, 1999 WL 786355 (Conn. Super. Sep. 22, 1999)...........................13, 15

Page

United States v. Turkette, 452 U.S. 576 (1981)......................................................................10

Vemco, Inc. v. Camardella, 23 F.3d 129 (6th Cir. 1994) .......................................................9

Waldman v. Village of Kiryas Joel, 39 F. Supp. 2d 370 (S.D.N.Y. 1999),
  aff'd, 207 F.3d 105 (2d Cir. 2000)........................................................................................6

Watral v. Silvernails Farms, LLC, 177 F. Supp. 2d 141 (E.D.N.Y. 2001)...........................9

## STATUTES AND RULES

28 U.S.C. § 1738..................................................................................................................12, 13

28 U.S.C. § 1404(a) ................................................................................................................20

## OTHER AUTHORITIES

18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 4441 (1981)........12

# I.  INTRODUCTION

Defendants Stanley Shenker ("Shenker") and Stanley Shenker and Associates, Inc. ("SSAI" and collectively, the "Shenker Defendants"), submit this brief in support of their motion to dismiss the claims against them pursuant to Fed. R. Civ. P. 12 or, in the alternative, to stay prosecution of this action pending full resolution of an earlier-filed Connecticut state court action.  If the Court finds that this action should not be dismissed or stayed, however, the Shenker Defendants instead request transfer of this action to a more convenient forum pursuant to 28 U.S.C. § 1404(a).

Plaintiff World Wrestling Entertainment, Inc. ("plaintiff" or "WWE") has asserted two claims against the Shenker Defendants under sections 1962(c) and (d) of the RICO Act arising from their alleged participation in an alleged bribery scheme, lasting less than six months, that was supposedly carried out for the sole purpose of enabling other defendants named herein to procure a single licensing agreement from WWE.  While plaintiff has attempted to expand the length and breadth of this purported conspiracy by "artificially fragmenting a singular act into multiple acts simply to invoke RICO," Schlaifer Nance & Co. v. Estate of Andy Warhol, 119 F.3d 91, 98 (2d Cir. 1997), even a cursory review of the allegations in the complaint demonstrates that plaintiff has fallen far short of the Second Circuit's pleading requirements under RICO § 1962(c) for either an "'open-ended' or 'closed-ended' pattern of racketeering activity," warranting dismissal of the complaint against the Shenker Defendants.

While plaintiff's failure to satisfy the pattern requirement is the most glaring defect of its RICO claim, plaintiff also: (1) has failed to satisfy the pleading requirements for the RICO "enterprise;" (2) has not stated a cognizable injury; (3) seeks relief not authorized by the RICO Act; and (4) has not pled viable predicate acts.  For these reasons as well, plaintiff's RICO §

1

1962(c) claim should be dismissed.  Further, having failed to properly allege a valid substantive RICO violation, plaintiff's RICO conspiracy claim under § 1962(d) also fails as a matter of law.

An independent and equally compelling reason to dismiss the claims against the Shenker Defendants are the legal principles and policy considerations that bar duplicative litigation. Since October 2000, plaintiff and the Shenker Defendants have been aggressively litigating claims arising out of the same events alleged in this case in a Connecticut state court action entitled <u>Stanley Shenker and Associates, Inc. v. World Wrestling Federation Entertainment, Inc.</u>, No. X05-CV-0180933S (the "Connecticut Action").  In October 2003, the Connecticut court entered a default judgment in favor of WWE's on its counterclaims in that action that afford WWE as much, if not more, relief than it could possibly obtain on its RICO claims here.  Under these circumstances, the doctrine of *res judicata*, the prior pending action doctrine, as well as the "one satisfaction" rule, all dictate that this action be dismissed.  At a minimum, this action should be stayed under the prior pending action doctrine as to the Shenker Defendants until all proceedings in the Connecticut Action are concluded.

Were this Court to find, however, that plaintiff has stated a claim for relief against the Shenker Defendants, and that this action should proceed notwithstanding WWE having already obtained a judgment in the Connecticut Action, this Court should transfer this action to another forum pursuant to 28 U.S.C. § 1404(a) where most, if not all, of the factors that should be considered in deciding a motion under § 1404(a) favor transfer from this Court.

## II.  RELEVANT FACTS AND ALLEGATIONS

A.    Relevant Allegations in the Complaint[1]

From March 1995 until March 2000, defendant James Bell ("Bell") was employed by plaintiff in Connecticut as its director of licensing and merchandising, a position in which his duties and responsibilities included procuring and negotiating licensees for WWE's intellectual property.  (Complaint ¶¶ 22-23.)  In April 1995, WWE retained SSAI, a New York corporation with its principal place of business in Connecticut, as an outside licensing agent to separately procure licenses for WWE.  (Complaint ¶¶ 16, 25.)  Shenker is the president and sole shareholder of SSAI.  (Complaint ¶ 17.)

In October 1995, SSAI procured a toy license on behalf of WWE with defendant Jakks Pacific, Inc. ("Jakks").   In 1996, the complaint alleges that Shenker and one or more representatives of Jakks had a conversation in New York during which Jakks discussed its desire to retain SSAI as its agent, which, according to the complaint, would have created a conflict of interest between SSAI and WWE.   (Complaint ¶ 34-35.)[2]   The complaint alleges that this conversation, which the participants did not reveal to WWE, was the precursor to a bribery scheme relating to WWE's videogame license that was formed among Bell, Shenker, Jakks and others two years later in 1998, although the complaint fails to allege any other action taken or statement made in furtherance of this scheme before 1998.  (Complaint ¶ 36.)

---

[1] A copy of the complaint in this action is attached as Exhibit A to the accompanying declaration of Michael A. Freeman, Esq., dated February 25, 2005 ("Freeman Decl.").  The allegations relating to the two claims asserted against the Shenker Defendants are accepted as true for purposes of the motion to dismiss.  Gryl ex rel. Shire Pharmaceuticals Group PLC v. Shire Pharmaceuticals Group PLC, 298 F.3d 136, 141 (2d Cir. 2002).

[2] This conversation in New York is the only event alleged in the complaint to have occurred in this judicial district, aside from three checks that cleared through New York banks.  (See Complaint ¶¶ 141(b)(iv), 141(b)(xxii), 141(c)(xiv).)  In each instance, those checks were written, delivered and deposited elsewhere.  (Id.)

Starting in March 1997, SSAI became WWE's exclusive outside licensing agent pursuant to a contract that entitled SSAI to a certain percentage of royalties generated on licensing deals SSAI procured and/or serviced on behalf of WWE.  (Complaint ¶¶ 38-40.)

Regarding the alleged bribery scheme alluded to above, the complaint states that beginning "in early 1998" (Complaint ¶ 46), Bell, Shenker and Jakks, together with defendant THQ, Inc. ("THQ"), and certain related entities and senior management of Jakks, all of whom are named as defendants, and all of whom are either located in California or overseas (Complaint ¶¶ 9-15), implemented a scheme to fraudulently procure WWE's videogame license at less than fair market value through the payment of bribes to Shenker and Bell.  Specifically, the complaint alleges that, on January 2, 1998, Shenker caused a fraudulent invoice in the amount of $80,000 to be issued to Jakks, which purportedly represented a bribe that Shenker shared with Bell.  (Complaint ¶¶ 46-58.)  The complaint further alleges that, after receiving partial payment, Bell took steps to cancel the existing videogame license between WWE and a company called Acclaim, and arranged for Jakks and THQ to jointly obtain a new videogame license from WWE that was both below market value and, at ten years with a five year right to renew in favor of Jakks and THQ, "of extraordinary length."  (Complaint ¶¶ 59-81.)  On May 12, 1998, Bell submitted a "deal memorandum" for the proposed license to WWE senior management outlining the terms of the proposed deal and listing SSAI as the procuring agent.  (Complaint ¶ 82.)  On June 23, 1998, WWE executed a videogame license agreement with Jakks and THQ.  (Complaint ¶ 85.)  On June 24, 1998, Jakks and WWE executed an extension of its existing toy license to be coterminous with the videogame license.  (Complaint ¶ 86.)

On July 15, 1998, the complaint alleges that Shenker caused another invoice for the "final payment" under the purported bribery scheme to be issued to Jakks.  (Complaint ¶ 87.)  Shenker

then supposedly arranged for a final payment to Bell on October 8, 1998. (Complaint ¶ 89.) The complaint identifies no other conduct by the Shenker Defendants in furtherance of the alleged bribery scheme to procure WWE's videogame license.

The complaint next describes a series of events purportedly designed to conceal the alleged scheme – which already had been completed – from WWE. As pertinent to the Shenker Defendants, in June 2000, WWE purported to terminate its licensing agreement with SSAI without cause based on a provision in the parties' agreement that entitled WWE to terminate the contract "for a change in business direction." (Complaint ¶ 93.) In October 2000, SSAI commenced the Connecticut Action against WWE for wrongful termination of the contract, seeking both commissions past due and that would become due in the future based upon deals that SSAI had placed or serviced for WWE. (Complaint ¶ 94.)

WWE contends that during discovery in the Connecticut Action, Bell, the Shenker Defendants, Jakks and THQ all took actions to delay and obstruct discovery in an effort to conceal the alleged bribery scheme. (Complaint ¶¶ 95-115.) In this regard, Shenker has acknowledged that he had given false deposition testimony regarding payments made to Bell and, prior to the end of his multi-day deposition, his counsel in the Connecticut Action advised WWE's counsel that Shenker would be recanting portions of his prior testimony. (Complaint ¶¶ 114, 116.) Finding that Shenker corrected his testimony too late, on October 16, 2003, the judge in the Connecticut Action sanctioned SSAI for discovery abuse by dismissing its claims against WWE in the Connecticut Action with prejudice, and, as discussed below, entering a default against SSAI and in favor of WWE on its counterclaims in the Connecticut Action. Stanley Shenker and Associates, Inc. v. World Wrestling Federation Entertainment, Inc., 844 A.2d 964, 976-77 (Conn. Super. 2003) (copy attached as Freeman Decl. Exh. B).

Based on the foregoing allegations in the complaint, plaintiff has alleged two claims against the Shenker Defendants: *first*, for violation of RICO § 1962(c), and, *second*, for conspiring to violate RICO under § 1962(d). (Complaint ¶¶ 135-150.)

B.    WWE's Counterclaim in the Prior Pending Connecticut Action

Missing from WWE's complaint here is any mention that, in response to SSAI's complaint in the Connecticut Action, WWE brought a countersuit against SSAI. (WWE's counterclaims appear at pages 19-44 of WWE's Second Amended Answer and Third Amended Counterclaim ("Counterclaim"), attached as Freeman Decl. Exh. C.)[3] The gist of the Counterclaim is that the Shenker Defendants misused SSAI's position as WWE's exclusive outside licensing agent to solicit and receive unlawful payments from outside licensees and to obtain improper commissions from WWE. Among other things, the Counterclaim specifically alleged a conspiracy with Bell for SSAI to obtain commissions to which it was not entitled, illegal payments to Bell as part of the alleged scheme, and the destruction of documents to conceal this alleged misconduct. (Counterclaim at pages 23 (¶18), 33 (¶¶ 48-51), and 39-40 (¶¶ 42-47).) Although the Counterclaim names only SSAI, it repeatedly identifies Shenker, in his role as president of SSAI, as a direct participant in the alleged unlawful activity. (E.g., Counterclaim at pages 19 (¶ 1), 20 (¶ 4), 21 (¶¶ 9, 12), 28 (¶42), 37 (¶49), 38 (¶¶ 44, 47), 39 (¶ 49).) Based on those allegations and others, the Counterclaim asserted the following twelve causes of action: (1) breach of fiduciary duties; (2) breach of contract; (3) breach of the implied covenant of good faith; (4) violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Stat. Gen. §§ 42-110a et seq.; (5) an accounting of payments made and received; (6)

---

[3] Where a defendant has moved to dismiss the complaint based upon the existence of a prior action, "[t]he Court may take notice of the submissions in prior actions that form the basis for the defense . . . ." Waldman v. Village of Kiryas Joel, 39 F. Supp. 2d 370, 372 (S.D.N.Y. 1999) (citing Day v. Moscow, 955 F.2d 807, 811 (2d Cir.1992), and Shuttlesworth v. Birmingham, 394 U.S. 147, 157 (1969)), aff'd, 207 F.3d 105 (2d Cir. 2000).

declaratory judgment for an order that the WWE/SSAI contract was properly terminated; (7) fraudulent misrepresentation; (8) intentional interference with business relations; (9) civil conspiracy; (10) negligent misrepresentation; (11) violation of Conn. Stat. Gen. § 52-564, which proscribes intentional theft;[4] and (12) common law conversion. (Freeman Decl. Exh. C at 19-44.) The relief requested by WWE in its Counterclaim includes actual damages, disgorgement of SSAI's commissions and fees, punitive damages and attorneys' fees in accordance with CUTPA § 42-110g, and treble damages under Conn. Stat. Gen. § 52-564. (Freeman Decl. Exh. C at 43-44.)

As stated above, as part of the sanctions imposed against SSAI for Shenker's misconduct during discovery, the Connecticut court entered a default judgment against SSAI and in favor of WWE on its Counterclaim. Stanley Shenker and Associates, 844 A.2d at 977-78 (Freeman Decl. Exh. B). In addition, the court awarded WWE attorneys' fees proximately incurred as a result of Shenker's false testimony. Id.[5]

Although he was not individually named as a party in the Connecticut Action, in light of his personal involvement in the events alleged in the Counterclaim, in December 2003, Shenker stipulated to the entry of a prejudgment remedy against both SSAI and himself personally. Pursuant to that stipulation, WWE is entitled to attach up to $5 million in assets, and both SSAI and Shenker are prohibited from transferring or disposing of, with limited exceptions, more than $5,000 worth of assets per month beyond SSAI's reasonable business expenses and Shenker's reasonable living expenses. (A copy of the stipulated prejudgment remedy in the Connecticut Action is attached as Freeman Decl. Exh. D.)

---

[4] "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages." Conn. Stat. Gen. § 52-564.

[5] A hearing to assess the damages and fees to which WWE is entitled has been tentatively scheduled for January 2006.

Less than two weeks ago, on February 16, 2005, WWE moved the court in the Connecticut Action for permission to "cite in" (or add) Shenker personally as a counterclaim-defendant in the Connecticut Action by amending its Counterclaim to assert a claim to "pierce the corporate veil" and hold Shenker personally liable under the judgment entered against SSAI. (A copy of WWE's motion to cite in Shenker and its supporting memorandum of law are attached as Freeman Decl. Exh. E.)  In support to its motion to cite in Shenker as a counterclaim-defendant, WWE asserts that "there can be no doubt that Shenker could have been named as a party in the original counterclaim," but contends that it was not "fully aware of his improper conduct" at the time the Counterclaim was filed.  (Freeman Decl. Exh. E (Memo of Law) at 2-3.) WWE also seeks to rely on statements purportedly made when it secured its prejudgment remedy against SSAI and Shenker in December 2003 indicating its intention to hold Shenker personally liable on the judgment entered in the Connecticut Action.  (Id. at 3.)

### III.  ARGUMENT

#### Point I

PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST
THE SHENKER DEFENDANTS UNDER THE RICO ACT.

The Shenker Defendants adopt and incorporate by reference the applicable legal arguments appearing at pages 17-35 of the Memorandum of Law in Support of the Jakks Defendants' Motion to Dismiss the Complaint, dated February 16, 2005 ("Jakks Br."), in support of their motion to dismiss plaintiff's claim under § 1962(c) of the RICO Act.  Specifically, WWE's § 1962(c) claim against the Shenker Defendants should be dismissed because plaintiff's complaint: (1) fails to sufficiently plead either an "open-ended" or a "closed-ended" pattern of racketeering activity under RICO (Jakks Br. at 17-27); (2) does not adequately allege a RICO "enterprise" under § 1962(c) (Jakks Br. at 27-29); (3) fails to state a cognizable injury under

RICO § 1964(c) (Jakks Br. at 29-31); (4) seeks remedies not authorized under the RICO Act (Jakks Br. 31-32); and (5) fails to plead viable predicate acts (Jakks Br. 32-35).

As cogently stated by Jakks, and as described above at pages 4-5, plaintiff's complaint alleges the existence of a single, inherently terminable scheme to unlawfully procure WWE's videogame license through the payment of bribes to Shenker and Bell. The scheme allegedly began when Shenker supposedly issued a fake invoice on January 2, 1998, and ended when Jakks and THQ obtained the license on June 23, 1998. (Complaint ¶¶ 46-85.) Even if the Court were to include Shenker's preparation of an invoice for "final payment" to Bell on July 15, 1998 and the alleged payment of that invoice on October 8, 1998, which would extend the length of the Shenker Defendants' participation in the purported scheme to just over nine months, it still does not satisfy this Circuit's requirements for pleading "closed-ended" continuity, which requires a showing that related acts occurred over a "substantial period of time," *i.e.*, "a matter of years." Schlaifer Nance, 119 F.3d at 97; accord, CofaCredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999); GICC Capital Corp. v. Technology Finance Group, Inc., 67 F.3d 463, 466 (2d Cir. 1995). Significantly, while WWE also has alleged that the Shenker Defendants committed acts designed to "cover up" the commission of the scheme after it had terminated (see page 5, above), it has been uniformly held that such allegations do not serve to extend the length of that scheme for purposes of pleading "closed-ended" continuity. Vemco, Inc. v. Camardella, 23 F.3d 129, 134 (6th Cir. 1994); Watral v. Silvernails Farms, LLC, 177 F. Supp. 2d 141, 150 (E.D.N.Y. 2001). See also Jakks Br. at 21 n.7. Likewise, plaintiff has not adequately alleged the existence of an "'open-ended' pattern of racketeering activity," where the complaint does not identify any other actions by the Shenker Defendants beyond those purportedly taken to unlawfully procure WWE's videogame license in the first half of 1998, or

explain how the Shenker Defendants' allegedly unlawful activity poses a "specific threat of repetition extending indefinitely into the future." H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 242 (1989); see also CofaCredit, 187 F.3d at 244 (no open-ended continuity exists where purported scheme ended after goal was reached). Nor has plaintiff properly pled the existence of a RICO enterprise where the complaint fails to allege how the enterprise, which is comprised solely of the named defendants, exists as an entity "separate and apart from the pattern of racketeering activity" in which it has allegedly engaged. United States v. Turkette, 452 U.S. 576, 583 (1981); accord, Manhattan Telecommunications Corp., Inc. v. DialAmerica Marketing, Inc., 156 F. Supp. 2d 376, 380-81 (S.D.N.Y. 2001) (a RICO enterprise must have some structural continuity and cannot merely consist of the named defendants). For any and all of these reasons, as well as the others stated in the moving brief submitted by Jakks, plaintiff's RICO § 1962(c) claim against the Shenker Defendants should be dismissed.

Where a plaintiff has failed to properly plead a substantive claim under the RICO Act, courts have universally held that a RICO conspiracy claim against the same defendants is not cognizable. Lesavoy v. Lane 304 F. Supp. 2d 520, 535 (S.D.N.Y. 2004) (plaintiff's "failure to adequately plead facts that would satisfy the pleading requirements of §§ 1962(a), 1962(b) or 1962(c) necessarily dooms any claim she might assert arising under § 1962(d)," quoting Katzman v. Victoria Secret Catalogue, 167 F.R.D. 649, 658 (S.D.N.Y. 1996)); Citadel Mgmt., Inc. v. Telesis Trust, Inc., 123 F. Supp. 2d 133, 156 (S.D.N.Y. 2000) ("[A] RICO conspiracy claim cannot stand where, as here, the elements of the substantive RICO provisions are not met"). See also Jakks Br. at 35 n.12. Having failed to state a claim under RICO § 1962(c), WWE's claim against the Shenker Defendant under RICO § 1962(d) should be dismissed as well.

**Point II**

THIS COURT SHOULD DISMISS THIS ACTION AGAINST THE SHENKER
DEFENDANTS CONSISTENT WITH THE LEGAL PRINCIPLES
AND POLICY CONSIDERATIONS THAT BAR DUPLICATIVE LITIGATION.

Numerous legal doctrines exist to prevent parties from commencing duplicative litigation, which has been universally condemned as an unnecessary drain on the resources of courts and litigants alike and, in the worst circumstances, is used by well-funded litigants to bully and harass their adversaries. Here, there are at least three such principles that warrant dismissal of the WWE's complaint as to the Shenker Defendants: (a) *res judicata*; (b) the prior pending action doctrine; and (c) the "one satisfaction" rule. Each will be addressed in turn below.

A.    The Doctrine of *Res Judicata* Bars WWE From Prosecuting This Action Against the
Shenker Defendants

Pursuant to the doctrine of *res judicata*, also known as claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were <u>or could have been raised</u> in that action." <u>Rivet v. Regions Bank</u>, 522 U.S. 470, 474 (1998) (emphasis added); <u>Kremer v. Chemical Constr. Corp.</u>, 456 U.S. 461, 466 n.6 (1982) (same). "[I]nvocation of *res judicata* [ ] 'relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." <u>Kremer</u>, 456 U.S. at 466 n.6 (quoting <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980)); <u>accord</u>, <u>Brown v. Felsen</u>, 442 U.S. 127, 131 (1979) ("*Res judicata* . . . bars vexatious litigation . . ."). As pertinent here, numerous courts have precluded claims arising under the RICO Act where the underlying conduct was the subject of an earlier state court action asserting state or common law claims. <u>E.g.</u>, <u>Lane v. Peterson</u>, 899 F.2d 737, 742-744 (8th Cir.) (action for breach of fiduciary duty under state law barred a second action against the same defendants under RICO Act arising out of the same acts), <u>cert</u>. <u>denied</u>, 498 U.S. 823 (1990); <u>Lary v. Ansari</u>,

817 F.2d 1521, 1523 (11th Cir. 1987) (dismissing federal RICO action as *res judicata* where plaintiff had brought a prior state court action for fraud).

The *res judicata* bar applies to both plaintiffs and defendants, whether or not they were successful in the prior action. For instance, as applicable here, *res judicata* precludes a prevailing party from pursuing a second action to recover under a claim or theory that, for whatever reason, it chose not to pursue the first time around. Gregory v. Widnall, 153 F.3d 1071, 1074 (9th Cir. 1998) (*res judicata* barred plaintiff from bringing suit for hostile work environment under Title VII after he obtained judgment in prior action alleging race and gender discrimination based on the same events); Stokes v. Twin City Motors, Inc., 490 F. Supp. 742, 746-47 (D.C. Ark. 1980) ("a plaintiff may not 'split' his cause of action, by filing one aspect based on state law in state court and an aspect based on Federal question jurisdiction in Federal Court, without meeting the bar of *res judicata*"); see also Migra v. Warren City School Dist. Bd. of Ed., 465 U.S. 75, 85 (1984) (successful plaintiff in state court breach of contract action would be barred from pursuing a second action in federal court asserting claim under 42 U.S.C. § 1983 based on the same conduct if state law would preclude relitigation). As succinctly put by one leading treatise, "theories arising from different sources of law [that] may be blended into a single claim [ ] must be asserted on pain of preclusion." 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 4441 (1981).

Where, as here, a party seeks to invoke a state court judgment to bar a subsequent federal court action, the Full Faith and Credit Clause of the United States Constitution, as implemented by the Federal Full Faith Credit Statute, 28 U.S.C. § 1738, mandates that "a federal court [ ] give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra, 465 U.S. at 81; Town of

Deerfield, N.Y. v. F.C.C., 992 F.2d 420, 429 (2d Cir. 1993) (same).[6]  Thus, "[w]here there is a

final state court judgment, a federal court looks to that state's rules of *res judicata* to determine

the preclusive effect of that judgment."   AmBase Corp. v. City Investing Co. Liquidating Trust,

326 F.3d 63, 72 (2d Cir.) (citing Town of Deerfield, 992 F.2d at 429 and 28 U.S.C. § 1738), cert.

denied, 540 U.S. 1017 (2003).

   In this case, therefore, the Court must examine Connecticut law, where WWE already has

obtained a judgment against SSAI, to determine whether that judgment bars this action against

both Shenker Defendants under the doctrine of *res judicata*.   Connecticut courts have identified

four elements that must be satisfied for a prior judgment to be given preclusive effect in a later

action: "(1) '[t]he identity of the parties to the actions are the same'; (2) '[t]he same claim,

demand or cause of action are at issue'; (3) '[t]he judgment in the first action was rendered 'on

the merits' by a court of competent jurisdiction'; and (4) '[t]he parties had the opportunity to

fully litigate the matter.'"   Tyndall v. Internation Brotherhood of Teamsters, Local 677, No. CV

970141684S, 1999 WL 786355 at *2 (Conn. Super. Sep. 22, 1999) (quoting Tirozzi v. Shelby

Ins. Co., 719 A.2d 62, 65 (Conn. App. 1998)); accord, Krondes v. Norwalk Sav. Soc., 728 A.2d

1103, 1112-13 (Conn. App. 1999).[7]  Where these elements are established, the doctrine of *res*

*judicata* raises "an absolute bar to a subsequent action on the same claim."   Joe's Pizza, Inc. v.

Aetna Life and Cas. Co., 675 A.2d 441, 446 (Conn. 1996) (emphasis added) (citing DeMilo &

Co. v. Commissioner of Motor Vehicles, 659 A.2d 162 (1995), and New England Rehabilitation

Hospital of Hartford, Inc. v. Commission on Hospitals & Health Care, 627 A.2d 1257 (1993)).

---

[6] 28 U.S.C. § 1738 provides that the records and judicial proceedings of any state court "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."

[7] To the extent there is a dearth of Connecticut authority on any specific point of law relating to claim preclusion, this Court may also consider New York law, which is materially identical.  Jacobs v. Yale University, No. 277513, 2000 WL 1530030 at *8 (Conn. Super. Sep. 21. 2000).

Under the facts presented here, these aforesaid requirements are easily established as to both Shenker Defendants, which bars WWE from prosecuting this action against them.

First, while it is beyond cavil that SSAI, who is a party in the Connecticut Action and in the instant action, is entitled to invoke the state court judgment to bar this action, Shenker, as the president and sole shareholder of SSAI, can do so as well.  It is well-settled in under Connecticut law that "'[t]he doctrine of *res judicata* [applies] ... as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.'"  Id. (emphasis added) (quoting Wade's Dairy, Inc. v. Fairfield, 436 A.2d 24 (Conn. 1980); see also Ear, Nose and Throat Group, P.C. v. Stanescu, 734 A.2d 152, 155 (Conn. Super. 1999) (counterclaim against plaintiff medical services corporation for breach of contract barred by *res judicata* where defendant bound by prior judgment in favor of plaintiff's employee in medical malpractice action).  Given Shenker's position as president and sole shareholder of SSAI, there can be no dispute that the judgment entered against SSAI in the Connecticut Action applies to Shenker as well for *res judicata* purposes.  Cf., Joe's Pizza, 675 A.2d at 445 (adopting § 59 of the Restatement (Second) of Judgments in holding that a judgment rendered against the shareholders of a closely held corporation were binding on the corporation).  Any possible doubt on this issue is erased by WWE's statements relating to the prejudgment remedy secured against Shenker personally in the Connecticut Action and WWE's recent application to amend its Counterclaim to add Shenker as a counterclaim-defendant, in which WWE contends that Shenker can be held personally liable on the judgment entered against SSAI in Connecticut.  (Freeman Decl. Exh. D at pages 2-3; Exh. E (Memo of Law) at pages 2-3.)

Second, a comparison of WWE's complaint here and its Counterclaim in the Connecticut Action leaves no doubt that both actions involve the same underlying events and raise the same

14

claims.  Joe's Pizza, 675 A.2d at 447 (to determine "the scope of the matter precluded in the subsequent action . . . requires a comparison of the complaint in [second] action with the pleadings and the judgment in the earlier action") (citations omitted).  Both the pleadings in this action and the Connecticut Action assert a conspiracy with and illegal payments to Bell (Compare Freeman Decl Exh. A at ¶¶ 46-58, and Freeman Decl. Exh. C at pages 33 (¶¶ 48-51), and 39-40 (¶¶ 42-47.).)  Both sets of pleadings allege a conspiracy with and unlawful payments to Bell by the Shenker Defendants in connection with WWE's third-party licensing agreements.  (Freeman Decl Exh. A ¶¶ 57-58, 64-65, 89; Freeman Decl. Exh. C at page 33 (¶ 49).)  Likewise, the central allegations in this action relating to the Shenker Defendants' alleged cover up of the supposedly unlawful payments (Complaint ¶¶ 113-123) are the same events that led to entry of a default judgment in the Connecticut Action.  (Freeman Decl. Exh. B.)  The fact that WWE, for whatever reason, chose not to pursue a RICO claim in its Counterclaim in the Connecticut Action does not change the inescapable conclusion that both actions involve identical claims.  E.g., Rivet, 522 U.S. at 474 (1998) (res judicata bars the relitigation of "issues that were or could have been raised" in the prior action).[8]

The third criterion for asserting a res judicata defense under Connecticut law is a judgment "on the merits" in the first action.  Although the judgment against SSAI entered in the Connecticut Action was a default judgment imposed as a discovery sanction, Connecticut courts have uniformly held that a default judgment is considered a final judgment "on the merits" for purposes of claim preclusion.  Matter of Johnson, 149 B.R. 284 (Bankr. D. Conn. 1993) ("Connecticut law recognizes a default judgment as a final one"); Tyndall, 1999 WL 786355 at *2 ("the general rule is that a default judgment is just as conclusive as an adjudication between the

_____
[8]  It is now settled that RICO state and federal courts have concurrent jurisdiction over RICO claims.  Tafflin v. Levitt, 493 U.S. 455, 458 (1990).  WWE is certainly aware of this rule, having brought a RICO claim against Bell in a separate action in Connecticut state court.  (See Jakks Br., Exh. C at ¶¶ 51-64.)

parties of whatever is essential to support the judgment as one entered after answer and contest").[9]   The fact that SSAI may subsequently appeal the trial court's judgment in the Connecticut Action has no bearing on its preclusive effect.   Carnemolla v. Walsh, 815 A.2d 1251, 1256 (Conn. App. 2003).[10]

Finally, as to SSAI, there can be no legitimate debate that WWE had a full and fair opportunity to litigate the matters raised herein in the Connecticut Action where WWE successfully obtained a judgment against SSAI.[11]   As to Shenker, the absence of a valid reason for not including him in the Connecticut Action forecloses any contention that dismissing this action deprives WWE of a full and fair opportunity to litigate its claims against Shenker directly. Murray v. Dominick Corp. of Canada, Ltd., 631 F. Supp. 534, 536-37 (S.D.N.Y. 1986) (*res judicata* barred relitigation of claims against agent of corporation where prior "arbitration proceeding and award against the corporate defendants . . . allowed the plaintiff a full and fair opportunity to present any claims arising out of the conduct" of corporations' agent, and claims against the agent "were within the jurisdiction of the [ ] arbitration panel and should have been raised at that time"); see also Ritchie v. Landau, 475 F.2d 151, 155-56 (2d Cir. 1973) (plaintiff that obtained award against corporation in arbitration barred from relitigating the same issues

---

[9] See also In re Reed, 861 F.2d 1381 (5th Cir. 1988) ("dismissal of a prior action with prejudice for failure to comply with discovery orders was a judgment on the merits that barred a second action on the same claim); Hussein v. Pierre Hotel, No. 93 CIV. 3698 (MGC), 1994 WL 172409 at *6 (S.D.N.Y. May 03, 1994) (same); Goel v. Heller, 667 F. Supp. 144, 150 (D.N.J. 1987) (judgment entered as a sanction for repeated failure to comply with discovery orders and for perjurious responses was a judgment on the merits).

[10] See also DiSorbo v. Hoy, 343 F.3d 172, 183 (2d Cir. 2003) (pending appeal does not prevent use of judgment for purposes of claim preclusion); Petrella v. Siegel, 843 F.2d 87, 90 (2d Cir.1988) (fact that party may appeal does not destroy preclusive effect of prior judgment).

[11] It is questionable whether this final criterion should apply in cases where the losing party is asserting *res judicata* against the party that obtained a judgment in the prior action, since it is awkward, and potentially detrimental to any appeal that may follow, for the losing party to assert that a case that it lost was fully and fairly litigated. Nonetheless, since no authority was found indicating that this element should be disregarded in cases like this one, the discussion will be included, although nothing herein should be deemed an admission by the Shenker Defendants concerning the proceedings in Connecticut should they choose to appeal the judgment in that action.

against majority shareholder where plaintiff had full and fair opportunity to raise issues against majority shareholder in prior proceeding). In this case, WWE has conceded that it could have named Shenker individually in the Connecticut Action (Freeman Decl. Exh. E (Memo of Law) at 2-3), barring any possible argument that the claims in the prior action were not fully and fairly litigated against him as part of the litigation against SSAI.

Based on the foregoing, this Court should dismiss the current action as to the Shenker Defendants under the doctrine of *res judicata*.

B.    **The Prior Pending Action Doctrine Also Mandates Dismissal of This Action Against the Shenker Defendants.**

The prior pending action doctrine also provides this Court with a basis for dismissing this action against the Shenker Defendants. Under this doctrine, "[t]he Court has the inherent power to dismiss or stay [an] action in favor of the [prior] litigation presenting the same claims and issues." Lesavoy, 304 F. Supp. 2d at 535 (quoting Continental Time Corp. v. Swiss Credit Bank, 543 F. Supp. 408, 410 (S.D.N.Y.1982)). Similar to the policies underlying claim preclusion, the prior pending action doctrine "rest[s] on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Colorado River Water Conservation Dist. v. U. S., 424 U.S. 800, 817 (1976) (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183 (1952)); see also Lesavoy, 304 F. Supp. at 536 (citing a general desire of federal courts "to avoid duplicative litigation"). Among the factors identified by the Supreme Court in deciding whether to dismiss a federal court action in favor of a prior pending state court proceeding are "the desirability of avoiding piecemeal litigation . . . the order in which jurisdiction was obtained by the concurrent forums" and the extent of the proceedings that have occurred in each of the two actions. Colorado River Water Dist., 424 U.S. at 820. Other factors for this Court to consider "include the adequacy of relief

available in the alternative forum, . . . the identity of the parties and the issues in the two actions,

the likelihood of prompt resolution in the alternative forum, [and] the convenience of parties,

counsel and witnesses . . . ." Continental Time, 543 F. Supp. at 410; accord, CBS, Inc. v. Tee

Vee Records, Inc., 96 F.R.D. 163, 165 (S.D.N.Y. 1982). Complete identity of both actions is not

required, however: "[N]either the addition of defendants nor the expansion of claims is

dispositive to the court's decision to dismiss a suit due to a prior pending action. Courts have

repeatedly ruled that 'parties and issues need not be identical in order for one action to be stayed

or dismissed in deference to an earlier action.'" Lesavoy, 304 F. Supp. 2d at 536 (quoting

Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs. Inc., 949 F. Supp. 1123, 1127

(S.D.N.Y. 1997)).

The facts and circumstances here fully justify an exercise of this Court's authority to

dismiss the present action against the Shenker Defendants in favor of the prior pending

Connecticut Action. As compared to this action, which is in its infancy, the Connecticut Action

has been pending for more than four years, the parties have engaged in extensive (if not

complete) discovery, a judgment has been rendered, and a hearing to assess damages has been

scheduled. (Freeman Decl. Exhs. B and E.)[12] The conduct attributed to the Shenker Defendants

and the issues raised here are identical to those in the Connecticut Action. (See pages 14-15,

above) The legal and equitable relief already authorized by the judgment in the Connecticut

Action exceeds the relief that WWE can possibly recover under its RICO claims here. See 18

U.S.C. § 1964(c) (authorizing a prevailing party to recover treble damages arising from any

injury to the plaintiff's "business or property" together with the cost of the suit, including a

---

[12] In the Connecticut Action, the parties have engaged in "more than two years of extensive discovery, including . . .
the production of 92,000 pages of documents, the taking of more than twenty-five depositions, and the filing of more
than 150 motions, briefs and other pleadings  . . . " Stanley Shenker and Associates, 844 A.2d at 966 (Freeman
Decl. Exh. B).

reasonable attorney's fee). [13]  Finally, as discussed below and in Jakks Br. at pages 37-39, New York is an inconvenient forum for all the parties and potential witnesses in this action.

For all of these reasons, the prior pending action doctrine provides this Court with an additional and independent basis for dismissing this action as to the Shenker Defendants.  If, for any reason, this Court were to find that this action should not be dismissed against the Shenker Defendants, at a minimum, the action should be stayed pending the final resolution of the Connecticut Action.  See Continental Time, 543 F. Supp. at 410 (same factors considered on application for dismissal apply to a request to stay a second action in favor of a prior pending proceeding); CBS, 96 F.R.D. at 165 (same).

C.     The "One Satisfaction" Rule Also Warrants Dismissal of This Action Against the Shenker Defendants.

A third ground for dismissing the Shenker Defendants from this action is the "one satisfaction" or "one recovery" rule, which embodies the strong public policy against allowing a party to recover twice for the same injury.  This principle has been universally accepted by both the federal courts as well as Connecticut state courts.  E.g., Phelan v. Local 305 of the United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus., 973 F.2d 1050, 1063 (2d Cir. 1992) ("A plaintiff may not recover twice for the same injury," citing Ostano Commerzanstalt v. Telewide Systems, 880 F.2d 642, 649 (2d Cir. 1989); Gionfriddo v. Gartenhaus Café, 546 A.2d 284, 289 (Conn. App. 1988) ("To allow the plaintiff to recover damages in the present action [ ] would result in double damages, which would be contrary to sound principles of law and public policy.  * * *  If a plaintiff chooses, as a tactical maneuver, to institute several actions, there can still be only one recovery for the harm incurred").

---

[13] See also Jakks. Br. at 31-32 (the equitable relief sought by WWE in this action is not available under RICO).

Assuming, for the sake of argument, that WWE suffered a loss of revenue relating to its videogame license proximately caused by the Shenker Defendants as it has alleged in its complaint, any recovery that could be obtained in this action will be obtained by WWE in the Connecticut Action, where WWE has obtained a default judgment awarding damages and attorneys' fees, which it apparently intends to enforce against both SSAI and Shenker. (Freeman Decl. Exh. E.) Indeed, as described above at pages 18-19, the relief already awarded in the Connecticut Action to WWE exceeds the relief afforded by the RICO Act. Since the "one satisfaction" rule precludes WWE from recovering against the Shenker Defendants anything beyond its provable damages in the Connecticut Action, the complaint here should be dismissed.

**Point III**

IF THIS ACTION IS NOT DISMISSED OR STAYED, IT
SHOULD BE TRANSFERRED PURSUANT TO 28 U.S.C. § 1404(a).

The Shenker Defendants adopt and incorporate by reference the legal arguments at Jakks Br. pages 37-39, setting forth the legal standard applicable on a motion for transfer pursuant to 28 U.S.C. § 1404(a). Other than a lone conversation that purportedly took place in New York in 1996, two years before the alleged bribery scheme to procure WWE's videogame license was commenced, plaintiff's complaint does not identify a single event that occurred in this judicial district. Moreover no party, witness or proof is physically located in New York.[14] WWE's choice to commence a lawsuit in this judicial district is both improper and inexplicable.

While the District of Connecticut would appear, at first blush, to be a more convenient forum than the Central District of California for the Shenker Defendants, this may not necessarily be the case. Given the extensive discovery proceedings that already have occurred in the Connecticut Action and the separate lawsuit against Bell, the Shenker Defendants see little, if

---

[14] Although SSAI is incorporated in New York, its offices are in Connecticut. (See Complaint ¶ 16.)

any reason, to conduct more discovery in Connecticut. To the extent depositions are sought from witnesses employed by Jakks and THQ in California, it is doubtful that all these witnesses could be compelled to come to Connecticut for a deposition, which would necessitate traveling to that jurisdiction anyway. Shenker himself, of course, would only have to go to California in the unlikely event this action were tried. In light of these considerations, the Central District of California appears to be the most logical forum for this action to be venued.

## IV.  CONCLUSION

For the foregoing reasons, the complaint should be dismissed against the Shenker Defendants for failure to state a claim under RICO and/or pursuant to *res judicata*, the prior pending action doctrine and the one satisfaction rule, all of which preclude duplicative and vexatious litigation. In the alternative, if the case is not dismissed, the action should be stayed as to the Shenker Defendants pending full resolution of the Connecticut Action.

If the Court disagrees, however, and finds that this case should neither be dismissed nor stayed, the action should be transferred pursuant to 28 U.S.C. § 1404(a) because there is no legitimate basis for WWE to have commenced this action in this Court.

Dated: New York, New York
          February 25, 2005

                    Respectfully submitted,

                    LAW OFFICES OF MICHAEL A. FREEMAN

                    By:_____/s/_____
                          Michael A. Freeman (MAF-9600)
                          24 West 40th Street, 17th Floor
                          New York, New York  10018
                          (646) 366-0881

                          Counsel for Defendants Stanley Shenker
                          and Stanley Shenker and Associates, Inc.