**Kirkpatrick & Lockhart Nicholson Graham LLP**

Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222-2312
412.355.6500
Fax 412.355.6501
www.klng.com

Jerry S. McDevitt
412.355.8608
jmcdevitt@klng.com

April 11, 2005

BY FACSIMILE AND BY HAND
Honorable Kenneth M. Karas
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 920
New York, NY 10007

Re: World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc., et al
    No. 1:04-CV-08223-KMK

Dear Judge Karas:

This response is submitted in accordance with the Court's Order of April 6, 2005 that we respond to Jakks letter of April 4, 2005. We welcome the opportunity to do so since Jakks has, in its admitted "haste", attempted to construct a procedural gauntlet at odds with the Rules of Procedure. More problematically, Jakks ignored controlling authority in its April 4, 2005 letter and in its corrective letter of April 6, 2005.

## BACKGROUND

On March 30, 2005, WWE exercised the right provided to it under Fed. R. Civ. P. 15(a) and controlling case law to amend the Complaint as of right since no defendant had filed a responsive pleading.[1] WWE's right to do so is well-established since motions to dismiss are not responsive pleadings within the meaning of Rule 15(a). Barbara v. N.Y. Stock Exch., Inc., 99 F.3d 49, 56 (2d Cir. 1996); Elfenbein v. Gulf & Western Indust., Inc., 590 F.2d 445, 448 n.1 (2d Cir. 1978). The law is also clear that "an amended complaint ordinarily supersedes the original and renders it of no legal effect." Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977); cert. denied 434 U.S. 1614 (1978); Harris v. City of N.Y., 186 F.3d 243, 249 (2d Cir. 1999) ("[the amended complaint] is the legally effective pleading for Rule 12(b)(6) purposes."). Because an amended complaint supersedes the original complaint, Courts routinely deny as moot

---

[1] The structure of Rule 15(a) is quite clear, as are the cases interpreting it. A party is given the right to amend "once as a matter of course at any time before a responsive pleading is filed...." After that right is once exercised, the party must obtain leave of Court to amend further.



Kirkpatrick & Lockhart Nicholson Graham LLP

Honorable Kenneth M. Karas
April 11, 2005
Page 2

motions to dismiss the original complaint. See, e.g., Dassero v. Edwards, 190 F. Supp. 2d 544, 547 n.1 (W.D.N.Y. 2002) ("I agree that the . . . motion to dismiss the original complaint was mooted by the filing of the amended complaint . . ."); United Magazine Co. v. Murdoch Magazines Distrib., Inc., 146 F. Supp. 2d 385, 416 (S.D.N.Y. 2001); Taylor v. Abate, No. 94 CV 0437 (FB), 1995 WL 362488, at *2 (E.D.N.Y. June 8, 1995). In its March 31, 2005 letter to the Court, WWE did not recite this and other law since we did not believe then, or now, that WWE's right to amend or the procedure after doing so could be reasonably challenged. WWE did not anticipate that Jakks would twice ignore controlling law and in the interests of brevity simply requested that the Court establish a new schedule for Defendants' responses to the Amended Complaint.

### JAKKS APRIL 4, 2005 LETTER

Jakks' April 4, 2005 letter was long on rhetoric and short on law. After attempts to inflame the Court by suggesting that WWE's exercise of a well-established legal right was somehow intended to insult the Court,[2] Jakks advanced two arguments designed to construct a requirement that WWE had to seek leave to file the Amended Complaint. Thus, Jakks first contends that the Amended Complaint is really a supplemental pleading because exactly four paragraphs out of 363 are said to include transactions or occurrences subsequent to the initial pleading. The second point made by Jakks was that WWE could not join Defendant Brian Farrell, the Chief Executive Officer of THQ, without leave of Court. This argument assumes Jakks has standing to question the joinder of a non-Jakks defendant.[3] In advancing the argument

---

[2] At no time in the prior conference did the Court indicate or order that WWE did not have the right to amend "once as a matter of course" if it elected to do so. Moreover, all the sophistry of Jakks aside, it is obvious that Jakks prefers a process contrary to the Rules which serves no purpose other than delay. Under Jakks' revisionist view of the way the Rules operate, WWE should have briefed the sufficiency of the original Complaint and argued Motions to Dismiss, all the while intending to amend in any event. If the Court sustained the original Complaint, the filing of an Amended Complaint thereafter would have lead to further motion practice and delay. If the Court sustained any of Defendants' arguments aimed at factual sufficiency of the allegations, WWE would have sought leave and filed exactly what it has now filed. Moreover, the Sherman Act claim could only be added by an Amended Complaint. Rule 15(a) plainly permits a plaintiff seeking a just and speedy resolution to avoid such delays by granting a one-time right to amend in the face of a motion to dismiss which, when done, is to be responded to within ten days.

[3] In its April 5, 2005 letter, THQ notably did not join in Jakks' argument that Mr. Farrell could not be joined in an Amended Complaint filed pursuant to Rule 15(a).

**K&L**®

Kirkpatrick & Lockhart Nicholson Graham LLP

Honorable Kenneth M. Karas
April 11, 2005
Page 3

about joinder of Mr. Farrell, Jakks ignored controlling law holding that such joinder is proper, none of which was cited to the Court.

On April 6, 2005, Jakks filed another letter admitting that in its "haste" it had not included what it termed "differing views" of Courts in the Southern District on the subject of joining additional defendants when amending under Rule 15(a). Unfortunately, Jakks' corrective letter again did not bring controlling legal authority to the Court's attention.

### WWE WAS NOT SHOWING DISRESPECT FOR THE COURT

Hopefully this Court will give no credence to Jakks' transparent attempts to inflame the Court. WWE respectfully assures the Court that it intended no disrespect. The simple fact is that the investigation into the illegal conduct now set forth in even greater detail in the Amended Complaint did not stop when the original Complaint was filed and has not stopped now. We have continued to gather evidence from all available sources, and have analyzed that evidence, a process complicated by the now adjudicated obstruction of justice scheme set forth in the Amended Complaint. Additionally, Defendant James Bell plead guilty to a federal mail fraud charge on February 10, 2005 in an investigation which is continuing.[4] As a result of our continuing investigation, WWE gained additional evidence leading it to believe an Amended Complaint should be filed, and that Mr. Farrell and a Sherman Act claim should be joined. Reading Rule 15(a) as permitting it to do so without leave of the Court, WWE filed its Amended Complaint. It is as simple as that, and Jakks' assertion that WWE is not entitled to amend its Complaint to tell the whole story known to it as a result of the continuing investigation is absurd under the law.[5]

---

[4] Due to the ongoing nature of the criminal investigation being conducted by federal authorities, WWE does not believe it is prudent or appropriate to say more about that investigation at this time.

[5] Jakks' attempt to construct sinister motives for amending is frankly disingenuous for other reasons. Jakks' argument that the Amended Complaint was designed to cure alleged defects in the original Complaint ignores that, even if true, doing so is a recognized purpose of Rule 15. See Chapman v. YMCA of Greater Buffalo, 161 F.R.D. 21, 24 (W.D.N.Y. 1995) (Rule 15(a) is intended to allow a party to cure certain deficiencies or errors in pleadings, thus insuring that a claim will be heard and decided on the merits); Wright, Miller & Kane, Federal Practice & Procedure: Civ. 2d §1474 (1990). ("Perhaps the most common use of Rule 15(a) is by a party seeking to amend in order to cure a defective pleading.") WWE has attached hereto a summary of the Amended Complaint as Exhibit 1.



**Kirkpatrick & Lockhart Nicholson Graham LLP**

Honorable Kenneth M. Karas
April 11, 2005
Page 4

## JOINDER OF DEFENDANT BRIAN FARRELL IS PERMITTED

No case cited by Jakks in its April 4th letter holds that a plaintiff cannot join an additional defendant when amending "once as a matter of course at any time before a responsive pleading is served . . .". The quote from Williams v. United States Postal Serv., 873 F.2d 1069, 1073 n.2 (7th Cir. 1989) cited by Jakks is pure dicta and not the law of the Second Circuit. The law on this precise point was established in two cases by the Second Circuit in 1983. Washington v. N.Y. City Bd., 709 F.2d 792, 795 (2d Cir. 1983) cert. denied 464 U.S. 1013 (1983) (where no answer filed plaintiff was entitled as a matter of right to amend Complaint to add additional parties under Rule 15(a) provision allowing amendment once before a responsive pleading is filed); Le Grand v. Evan, 702 F.2d 415, 417 (2d Cir. 1983) (a plaintiff is entitled under Rule 15(a) to amend his Complaint as a matter of right to add new defendants).[6]

Jakks did not cite either Le Grand or Washington to the Court, even when purportedly correcting their original submission. The dispositive importance of Washington to the issue of joinder under the relevant provision of Rule 15(a) is spelled out in the very cases Jakks does cite to the Court, so its counsel clearly knew about that case. Moreover, even when supposedly correcting its original letter, Jakks failed to point out that the only other case from the Second Circuit it cited originally, Springer-Penguin, Inc. v. JugoExport, 648 F.Supp. 468 (S.D.N.Y. 1986), is an exception to the rule set forth by the Second Circuit in Washington and applies only when a party seeks to strip a federal court of jurisdiction following removal by adding non-diverse defendants. See CBS Broad., Inc., v. Bridgestone Multimedia Group, Inc., No. 97 CIV. 6408 (JSM), 1998 WL 740853, at *1, (S.D.N.Y. Oct. 23, 1998).

Jakks fares no better with the only other authorities they cited in their correction letter suggesting there was a difference of opinion at the trial court level on the point. The case of Kaminsky v. Abrams, 41 F.R.D. 168 (S.D.N.Y. 1966), cited in Jakks' corrective letter, was decided prior to Washington and simply did not hold that Rule 21 trumps Rule 15 in any event.

---

[6] See also Singh v. Prudential Ins. Co. of America, Inc., 200 F. Supp. 2d 193, 197 n.7 (E.D.N.Y. 2002) (noting that Second Circuit in Washington had adopted the "better view [of Professor Moore and] rejects the notion that a motion to amend is required to add or drop parties before the filing of a responsive pleading."); Clarke v. Fonix Corp., No. 98 Civ. 6116 (RPF); 1999 WL 105031, at *6 (S.D.N.Y. Mar. 1, 1999) (rejecting notion that Rule 21 trumps Rule 15(a) right to amend as of course before a responsive pleading to add parties and refers to Washington as controlling); aff'd 199 F.3d 1321 (1999); CBS Broad., Inc., 1998 WL 740853, at *1 (holding plaintiff permitted to amend the complaint to add a party as of right under Rule 15(a) because no responsive pleading had been filed and finding no case casting doubt on continuing validity of Washington).

**Kirkpatrick & Lockhart Nicholson Graham LLP**

Honorable Kenneth M. Karas
April 11, 2005
Page 5

The Court in <u>Kaminsky</u> expressly stated it was considering a motion under Rule 21 to add parties, not whether Rule 15(a) permitted such joinder before a responsive pleading was filed. <u>Id.</u> at 170. The language quoted by Jakks was pure dicta in which the Court noted that some early cases had held that Rule 21 governed over Rule 15. What Jakks did <u>not</u> point out is that the Court in <u>Kaminsky</u> immediately thereafter questioned such cases:

> "Such holdings have been questioned in view of the fact that '[t]he whole notion of allowing amendments as of course is that at such an early stage in the case the court should not be bothered with passing on amendments and the other party will not be harmed by a change in the pleadings. These considerations seem as applicable to a change in parties as to any other changes made by an amended pleading'" <u>Kaminsky</u> at 170. <u>See also</u> <u>CBS Broad., Inc.</u>, 1998 WL 740853, at *1. ("Policy of Federal Rules favoring just and speedy resolution of actions would be frustrated by favoring Rule 21 over 15(a) without reason").[7] (Citations omitted)

Jakks' position on the joinder issue is not merely lacking in legal authority. It was taken originally in haste with clear intent to delay and then continued to be advanced by a correction which still did not point out the controlling authority in this Circuit. Significantly, no other defendant joined in the argument, including the one which would logically do so if meritorious -- THQ. It is inexcusable for Jakks not to have pointed out controlling Second Circuit authority it unquestionably knew existed. <u>See</u> <u>United States v. Gaines</u>, 295 F.3d 293, 302 (2d Cir. 2002) (pointing counsel to New York's Code of Professional Responsibility which requires a lawyer to inform tribunal of controlling legal authority known to it which is directly adverse to position of client).

---

7   The only other authority cited by Jakks in support of its argument is <u>Momentum Luggage & Leisure Bags v. Jansport Inc.</u>, No. 00 Civ. 7909 (DLC); 2001 WL 58000, at *1-2 (S.D.N.Y. Jan. 23, 2001). That case, however, did not deal with an amendment when no defendant had answered. Instead, after expedited discovery and an answer by one of the defendants, and considerable judicial involvement in getting the case trial ready, plaintiff sought leave to add seven additional defendants. Specifically finding that the answering defendant would be prejudiced and that the late joinder would delay completion of discovery and trial, the Court refused to permit the joinder. None of these facts are present here, or even argued to be present. Indeed, Jakks' position is designed to do precisely the opposite -- delay discovery and trial.



**Kirkpatrick & Lockhart Nicholson Graham** LLP

Honorable Kenneth M. Karas
April 11, 2005
Page 6

## THE AMENDED COMPLAINT IS NOT A SUPPLEMENTAL PLEADING

In an even more twisted argument completely unrelated to the goal of an adjudication on the merits and designed only for delay, Jakks argues that WWE needed to obtain leave to file the Amended Complaint because it allegedly contained four paragraphs (out of 363 numbered paragraphs) about transactions or occurrences which took place after the original Complaint was filed. Jakks cited no law holding that an Amended Complaint cannot include additional facts occurring since the original Complaint was filed. Likewise, Jakks gave no logical reason why including such matters in an Amended Complaint is improper or prejudicial in any way. It is argument for argument's sake, nothing more.

The frivolity of this argument is obvious upon examination of the four paragraphs said to require leave to assert. Paragraph 24 of the Amended Complaint alleges that Defendant Bell plead guilty to having participated in a scheme to defraud WWE in the ongoing federal investigation after the original Complaint was filed. Paragraph 25 notes that Bell's stipulation to the plea inculpates Defendants SSAI and Shenker in the scheme. Thus, the first two paragraphs Jakks objects to involve matters of judicial record which could not even be reasonably denied. Paragraph 184, the third one cited by Jakks, alleges that "through the year ended December 31, 2004," WWE had been paid 54 million dollars in royalties by THQ and that Jakks had been paid 64 million dollars as a result of the illegal conduct. As such, that paragraph contains facts which occurred for years prior to the original Complaint and exactly one payment for the fourth quarter of 2004 which occurred after the original complaint was filed. Thus, had WWE run the calculation through only the third quarter of 2004, Jakks would have no objection. To Jakks, the inclusion of the fourth quarter 2004 payments to be complete warrants judicial involvement, and, of course, delay. Similarly, Paragraph 249(b), the last paragraph cited by Jakks, alleges violations of money laundering statutes occurring since January 14, 1998 to the present, including, where applicable, acts of money laundering in the fourth quarter of 2004.

The four paragraphs in question are continuations of those things originally alleged and are proper in an Amended Complaint. United States v. IBM, 66 F.R.D. 223, 227-28 (S.D.N.Y. 1975) (rejecting argument that adding additional anti-competitive acts to list in original complaint was a supplemental pleading and accepting government's pleading as amended complaint). Furthermore, "[a]ny misnomer of the additions to the complaint as amendments rather than supplementation constitutes harmless error . . ." Westwood v. Cohen, 838 F.Supp. 126, 132 (S.D.N.Y. 1993). See also Fineas AG v. Honeywell, Inc., 501 F.Supp. 1029, 1033 n.4 (S.D.N.Y. 1980) (holding that although plaintiff's pleading should have been denominated,



Kirkpatrick & Lockhart Nicholson Graham LLP

Honorable Kenneth M. Karas
April 11, 2005
Page 7

supplemental, "[i]nsisting on a formal application, however, would not be a productive use of the time of the court or the parties").[8]

## CONCLUSION

Rule 15(a) permits a plaintiff to amend before a responsive pleading is filed without troubling the Court with pointless motion practice. WWE has followed the proper procedures to amend in the fashion approved by the Rules of Procedure adopted by the Supreme Court and Congress and the law of this Circuit. The Rules of Procedure, and well-developed law, provide a clear road map towards the orderly disposition of a case. The procedural gauntlet suggested by Jakks is found nowhere in the rules, would disrupt the clear process dictated by the rules and controlling case law, and serves only the purpose of delay for delay's sake.

This case was originally filed on October 19, 2004. All Defendants had an extraordinarily long time -- over four months -- to review the law which governs this case before filing their first response. While labeling the Amended Complaint "pusillanimous epiphany" (whatever that means), Defendants nonetheless bemoan the need for extensive time to brief their responses. The reaction is predictable and telling. For the reasons stated herein, WWE respectfully requests the Court deny the motions to dismiss as moot in light of the Amended Complaint and establish a reasonable schedule for all Defendants to answer or otherwise respond to the Amended Complaint, as required by Rule 15(a) (" a party shall plead in response to an amended pleading") and the law cited herein.

Very truly yours,

*Jerry S. McDevitt*

Jerry S. McDevitt

JSM/lkm

cc:   Counsel of Record

---

[8]   Defendants know full well that the Amended Complaint not only expands the factual allegations against them, but also adds a new party and a new claim under the Sherman Act. Rule 15(d) governing supplemental pleadings makes no provision for adding parties or claims and simply cannot be used to do so.

## EXHIBIT 1
## SUMMARY OF AMENDED COMPLAINT

1) <u>Sherman Act Claims</u> – We have added this claim based principally on the factual allegations set forth in ¶¶ 118-164, 173-185, 186-241 (for tolling purposes). The claim itself is set forth in Count III at ¶ 259-272.

2) <u>Joinder of Defendant Farrell</u> – We have added Mr. Farrell, the Chief Executive Officer of THQ, to Counts I (RICO under 18 U.S.C. § 1962(c)); II (RICO Conspiracy); III (Sherman Act) and VIII (Fraudulent Inducement).

3) <u>Racketeering Allegations</u> – We have amended to include allegations of a broader pattern of racketeering, and associated predicate acts by the Defendants, beginning in late 1995 and continuing to this date. The nature of the racketeering activities designed to deny WWE the right of honest services from its licensing agent and supervising manager is set forth in great detail from ¶ 35-185. The Amended Complaint develops in chronological fashion Jakks' early efforts at corrupting Defendants SSAI and Shenker in connection with their duties as an agent of WWE (¶¶ 37-56); adds allegations regarding Shenker's motivation to become corrupt (¶ 43); details the manner in which Jakks improperly utilized SSAI and Shenker to obtain favorable treatment on licensing matters in the early phase of the illegal conduct (¶¶ 41-56); specifically pleads that Jakks and its officers caused SSAI and Shenker to violate fiduciary duties owed WWE as part of a plan to secure valuable additional licensing rights and eliminate competition in the toy business and in connection with the videogame license (¶¶ 57-99); outlines the joinder of Defendant Bell into the illegal plan and his motives for doing so (¶¶ 79-82); specifies the improper utilization of WWE's agents to have rights involved in toy licensing transferred to Jakks (¶¶ 83-99); narrates the utilization of WWE's agents to cause Jakks, and then Jakks and THQ, to obtain rights to the videogame license (¶¶ 62, 81, 82, 84-99, 100-164); and pleads payments made to WWE's agents in exchange for their agreement to act favorably on licensing matters involving Jakks and then Jakks and THQ on the videogame license. (¶¶ 84-99, 111-113, 166-170). The Amended Complaint also adds numerous allegations regarding the manner in which Jakks, THQ and THQ/Jakks entered into various agreements after the videogame license was signed regarding the manner in which proceeds from the illegal conduct would be divided (¶¶ 173-185) and the specific dates of money laundering associated with doing so are set forth in ¶ 249(b). The predicate acts of mail and wire fraud known at this time are set forth in great detail at ¶ 249(a), beginning in November 20, 1995 and extending through November 11, 2003. Predicate acts involving money laundering from January 14, 1998 to and through the fourth quarter of 2004 are set forth in ¶ 249(b). Violations of the National Stolen Property Act from July 3, 1998 to December 13, 2001 are set forth in ¶ 249(c). Paragraph 249(d) incorporates the previously plead acts as violations of the Travel Act. Lastly, paragraph 249(e) alleges specific acts violating New York's bribery provisions which violate 18 U.S.C. § 1961(1)(A).

4) <u>THQ's Actions, Motive and Scienter</u> – We have added substantial allegations against THQ in support of the Sherman Act claims and the claims originally plead demonstrating in greater detail THQ's scienter and motives. <u>See</u> ¶ 118-164.

5) <u>Injury to WWE</u> – For both antitrust and RICO purposes, we have expanded on the allegations demonstrating the injury caused WWE by the illegal conduct of Defendants. <u>See</u> ¶¶ 160-164; 173-185.

6) <u>State Law Claims</u> – No new claims have been added, but the additional facts in the Amended Complaint have been incorporated into the existing claims.

7) <u>Alter Ego Allegations</u> – We have expanded on the factual allegations demonstrating that THQ/Jakks, the nominal entity signing the videogame license, is a sham and should be disregarded. <u>See</u>, <u>e.g.</u>, ¶¶146, 154-158; 173-185; 355-358.

8) <u>Tolling Allegations</u> – We have expanded on the allegations of the original Complaint, which were substantial, to demonstrate that limitations defenses will not apply to any of the claims. <u>See</u> ¶ 186-241.

- 2 -

## CERTIFICATE OF SERVICE

The undersigned, an attorney duly admitted to practice law before this Court, hereby certifies under penalty of perjury, that on April 11, 2005, I caused a true copy of the foregoing to be served upon the following parties via facsimile service and first-class U.S. mail, postage prepaid:

John R. Williams
Williams & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510

Michael A. Cornman
Schweitzer Cornman Gross & Bondell, LLP
292 Madison Avenue
New York, NY 10017

Steven A. Marenberg
Irell & Manella, LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276

Steven M. Bierman
Sidley Austin Brown & Wood
787 Seventh Avenue
New York, NY 10019

Michael A. Freeman
24 West 40th Street
17th Floor
New York, NY 10018

Jonathan J. Lerner
Skadden, Arps, Slate, Meagher &
   Flom, LLP
Four Times Square
New York, NY 10036-6522

Murray L. Skala, Esquire
Feder, Kaszovitz, Isaacson, Weber,
   Skala, Bass & Rhine, LLP
750 Lexington Avenue
New York, NY 10022-1200

Richard Schaeffer
Dornbush Schaeffer Strongin &
   Weinstein, LLP
747 Third Avenue
New York, NY 10017

_____
Jerry S. McDevitt

Dated: Apr. 11, 2005