UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X :
                                                                  :
WORLD WRESTLING ENTERTAINMENT, INC.,                              :
                                                                  :        04 CV 8223 (KMK)
                    Plaintiff,                                    :
                                                                  :
    - against -                                                   :
                                                                  :        September 19, 2005
JAKKS PACIFIC, INC.; JAKKS PACIFIC (H.K.)                         :
LIMITED; ROAD CHAMPS LIMITED; THQ, INC.;                          :
THQ/JAKKS PACIFIC LLC; STANLEY SHENKER                            :
AND ASSOCIATES, INC.; STANLEY SHENKER;                            :
BELL LICENSING, LLC; JAMES BELL; JACK                             :
FRIEDMAN; STEPHEN BERMAN; JOEL                                    :
BENNETT; and BRIAN FARRELL,                                       :
                                                                  :
                    Defendants.                                   :
                                                                  :
-----------------------------------------------------------------X :

## WORLD WRESTLING ENTERTAINMENT, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

William O. Purcell (WP 5001)
KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP
599 Lexington Avenue
New York, New York 10022-6030
(212) 536-3900 (phone)
(212) 536-3901 (fax)

Jerry S. McDevitt
Curtis B. Krasik
Amy L. Barrette
KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, Pennsylvania 15222
(412) 355-6500 (phone)
(412) 355-6501 (fax)

Attorneys for Plaintiff, World Wrestling Entertainment, Inc.

# TABLE OF CONTENTS

                                                                                    **Page**

TABLE OF AUTHORITIES....................................................................................iii

I.    WWE'S RICO CLAIMS ARE NOT BARRED BY RES JUDICATA, THE PRIOR
      PENDING ACTION DOCTRINE, AND/OR THE "ONE SATISFACTION"
      RULE............................................................................................................1

      A.    Res Judicata Is Inapplicable and Does Not Bar WWE's
            RICO Claims..........................................................................................1

            1.    Res Judicata Cannot Be Raised by a Motion to Dismiss.........................2

            2.    The Order Is Not a Decision on the Merits...........................................2

            3.    The Shenker Defendants' Assertion of Res Judicata Is
                  Precluded by Shenker's Fraud in the Connecticut Action......................3

            4.    WWE Did Not Have an Opportunity to Fully and Fairly
                  Litigate Its RICO Claims on the Merits in the Connecticut
                  Action.............................................................................................3

            5.    The Order Is Not a Final Judgment.....................................................8

            6.    WWE's Causes of Action Against SSAI in the Connecticut
                  Action Are Fundamentally Different from WWE's RICO
                  Claims............................................................................................9

      B.    This Court Should Not Abstain from Exercising Jurisdiction
            over WWE's RICO Claims Against the Shenker Defendants.........................10

      C.    The "One Satisfaction" Rule Does Not Apply Here....................................11

II.   THE AMENDED COMPLAINT ADEQUATELY PLEADS A RICO
      ENTERPRISE................................................................................................11

      A.    Standard of Review................................................................................14

      B.    Defendants Fail to Address Several Principles of Second
            Circuit Law That Are Fatal to Their Enterprise Arguments.........................15

      C.    The Amended Complaint Adequately Pleads the Existence
            of an Enterprise.....................................................................................19

D.    The Allegations Against THQ and THQ/Jakks Satisfy
the Low Bar for the "Operation and Management" Test.......................................22

III.   WWE HAS STATED A CLAIM UNDER THE ROBINSON-PATMAN
ACT.......................................................................................................24

A.    Section 2(c) of the RPA Proscribes Commercial Bribery............................24

B.    The Prohibition of Section 2(c) Is Not Limited to Transactions
Involving "Goods, Wares, or Merchandise"...........................................27

       1.    The Plain and Unambiguous Meaning of Section 2(c)
Establishes That the "Goods, Wares, or Merchandise"
Language Does Not Limit the Prohibition of Section 2(c)
but Rather Is Part of the "Services Rendered" Exception
Only........................................................................................28

       2.    The Cases Relied upon by the RPA Defendants Are Not
Instructive and Should Not Be Followed...................................30

C.    The Amended Complaint Adequately Alleges an Antitrust Injury..................32

       1.    The Amended Complaint Alleges Detailed and Concrete
Injuries....................................................................................32

       2.    The Corruption of WWE's Fiduciary Relationships and
the Substantial Damages WWE Incurred Are Injuries
Contemplated by Section 2(c).....................................................33

CONCLUSION...................................................................................................35

## TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(S)**

131 Main St. Assocs. v. Manko,
 897 F. Supp. 1507 (S.D.N.Y. 1995)............................................................21

2660 Woodley Rd. Joint Venture v. ITT Sheraton Corp.,
 369 F.3d 732 (3d Cir. 2004)..........................................................26, 33

Abbott Labs. v. Portland Retail Druggists Ass'n,
 425 U.S. 1 (1976)....................................................................28, 31, 32

Ambase Corp. v. City Investing Co. Liquidating Trust,
 326 F.3d 63 (2d Cir. 2003)..................................................................2

Bank v. Brooklyn Law School,
 No. 97-CV-7470(JG), 2000 WL 1692844 (E.D.N.Y. Oct. 6, 2000)................................20

Benvenuti Oil Co. v. Foss Consultants, Inc.,
 No. 01559862, 2003 WL 21977974 (Conn. Super. Ct. Aug. 1, 2003)........................3

Biddle Purchasing Co. v. Fed. Trade Comm'n,
 96 F.2d 687 (2d Cir. 1938)............................................................29, 30

Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,
 369 F.3d 212 (2d Cir. 2004)................................................ 26, 28, 30, 32, 35

Braphman-Bines v. N.Y. City Police Dept.,
 No. 03 Civ. 10207(KMK), 2005 WL 22843 (S.D.N.Y. Jan. 3, 2005)...............................15

Browning v. Levy,
 283 F.3d 761 (6th Cir. 2002)..............................................................3

Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,
 429 U.S. 477 (1977)..................................................................32, 34, 35

Burlington N. R.R. Co. v. Okla. Tax Comm'n,
 481 U.S. 454 (1987).......................................................................27

Cadle Co. v. Drubner,
 303 F. Supp. 2d 143 (D. Conn. 2004)......................................................9

Calnetics Corp. v. Volkswagen of Am., Inc.,
 532 F.2d 674 (9th Cir. 1976) .............................................................34

Cedric Kushner Promotions, Ltd. v. King,
        533 U.S. 158 (2001)..............................................................................20

Chang v. Chen,
        80 F.3d 1293 (9th Cir. 1996).....................................................13, 16

Chazin v. Lieberman,
        No. Civ. 5968 (RPP), 1990 WL 115716 (S.D.N.Y. Aug. 6, 1990)…….....................10

Cofacredit, S.A. v. Windsor Plumbing Supply Co.,
        187 F.3d 229 (2d Cir. 1999)..................................…...................18

Colo. River Water Conservation Dist. v. United States,
        424 U.S. 800 (1976)...................................…..…..........................10

Comm'r of Envtl. Prot. v. Conn. Bldg. Wrecking Co.,
        629 A.2d 1116 (Conn. 1993)..............................…................…...............1, 9

Cullen v. Margiotta,
        811 F.2d 698 (2d Cir. 1987)...............................................................14

Cumberland Farms, Inc. v. Town of Groton,
        808 A.2d 1107 (Conn. 2002)...................................…..........................2

Davis v. Mich. Dep't of Treasury,
        489 U.S. 803 (1989) .......…..........................................…...................27

Day v. Moscow,
        955 F.2d 807 (2d Cir. 1992)..............................................................2

Edison Elec. Inst. v. Henwood,
        832 F. Supp. 413 (D.D.C. 1993)..........................…........................26, 27, 34

Elliott v. Foufas,
        867 F.2d 877 (5th Cir. 1989)..............................................................12

Empire State Pharm. Soc'y, Inc. v. Empire Blue Cross & Blue Shield,
        778 F. Supp. 1253 (S.D.N.Y. 1991)...........................…............................31

Envtl. Tectonics v. W.S. Kirkpatrick, Inc.,
        847 F.2d 1052 (3d Cir. 1988)....…..........................................................26

Esposito v. Pinecrest Country Club, Inc.,
        186 A.2d 822 (Conn. Super. Ct. 1962)…….........................................................8

Fed. Trade Comm'n v. Henry Broch & Co.,
    363 U.S. 166 (1960)...................................................................25, 26, 31

Fed. Trade Comm'n v. Simplicity Pattern Co.,
    360 U.S. 55 (1959)...........................................................................25

Feinberg v. Katz,
    No. 99 CIV. 45(CSH), 2002 WL 1751135 (S.D.N.Y. July 26, 2002)...........................16

Fink v. Golenbock,
    680 A.2d 1243 (Conn. 1996)....................................................................4

First Capital Asset Mgmt. v. Satinwood, Inc.,
    385 F.3d 159 (2d Cir. 2004)......................................12, 13, 16, 17, 19, 20, 22, 24

Fitch v. Ky.-Tenn. Light & Power,
    136 F.2d 12 (6th Cir. 1943)..............................................................26, 35

Freeman v. Chicago Title & Trust Co.,
    505 F.2d 527 (7th Cir. 1974)...............................................................31

Garcia v. United States,
    469 U.S. 70 (1984)........................................................................27

GICC Capital Corp. v. Tech. Fin. Group, Inc.,
    67 F.3d 463 (2d Cir. 1995)...............................................................18

Goodloe v. Nat'l Wholesale Co.,
    No. 03 C 7176, 2004 WL 1631728 (N.D. Ill. July 19, 2004).................................31

Gordon v. New York Stock Exchange, Inc.,
    498 F.2d 1303 (2d Cir. 1974)..........................................................30, 31

Grace v. E.J. Kozin Co.,
    538 F.2d 170 (7th Cir. 1976)..........................................................26, 35

Gregoris Motors v. Nissan Motor Corp.,
    630 F. Supp. 902 (E.D.N.Y. 1986).................................................26, 27, 34

Hansel 'N Gretel Brand, Inc. v. Savitsky,
    No. 94 Civ. 4027 (CSH), 1997 WL 543088 (S.D.N.Y. Sept. 3, 1997).....................13, 27

Harnett v. Billman,
    800 F.2d 1308 (4th Cir. 1986)...............................................................3

Harris v. Duty Free Shoppers Ltd. P'ship,
    940 F.2d 1272 (9th Cir. 1991)...........................................................26

Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,
    530 U.S. 1 (2000)...........................................................................27

Hygrade Milk & Cream Co. v. Tropicana Prods., Inc.,
    No. 88 Civ. 2861 (SAS), 1996 WL 257581 (S.D.N.Y. May 16, 1996).......................33

Ideal Plumbing Co. v. Benco, Inc.,
    529 F.2d 972 (8th Cir. 1976)...........................................................29, 30

In re Johnson,
    149 B.R. 284 (Bankr. D. Conn. 1993)........................................................2, 9

In re Sumitomo Copper Litig.,
    104 F. Supp. 2d 314 (S.D.N.Y. 2000)............................................................14

In Town Hotels Ltd. P'ship v. Marriott Int'l,
    246 F. Supp. 2d 469 (S.D.W.Va. 2003)..................................................26, 33, 34

Innomed Labs, LLC v. ALZA Corp.,
    368 F.3d 148 (2d Cir. 2004).....................................................................31

Johnson v. Nyack Hosp.,
    964 F.2d 116 (2d Cir. 1992)....................................................................10

King v. Galluzzo Equip. & Excavating, Inc.,
    No. 00 CV 6247(ILG), 2001 WL 1402996 (E.D.N.Y. Nov. 8, 2001)........................3

Knoblaugh v. Marshall,
    779 A.2d 218 (Conn. App. Ct. 2001)............................................................9

La Salle St. Press, Inc. v. McCormick & Henderson, Inc.,
    293 F. Supp. 1004 (N.D. Ill. 1968).............................................................31

Lamie v. United States Tr.,
    540 U.S. 526 (2004)...........................................................................27

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,
    507 U.S. 163 (1993)...........................................................................14

Leecan v. Lopes,
    893 F.2d 1434 (2d Cir. 1990)...................................................................16

Linden Condo. Ass'n v. McKenna,
   726 A.2d 502 (Conn. 1999)…………........................................................................4

Linens of Europe, Inc. v. Best Mfg., Inc.,
   No. 03 Civ. 9612 (GEL), 2004 WL 2071689 (S.D.N.Y. Sept. 16, 2004)……………….…11

L-Tec Elecs. Corp. v. Cougar Elec. Org.,
   198 F.3d 85 (2d Cir. 1999)……………………………………………….......................3

Macy's E., Inc. v. Emergency Envtl. Servs., Inc.,
   925 F. Supp. 191 (S.D.N.Y. 1996)……………….………………………………………10

Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.,
   354 F. Supp. 2d 293 (S.D.N.Y. 2004)………………………………….………………33

Mallis v. Bankers Trust Co.,
   717 F.2d 683 (2d Cir. 1983)…………….……………………………………......................21

Mandeville Island Farms v. Am. Crystal Sugar Co.,
   334 U.S. 219 (1948)…………….…......................................................................35

McCarty v. First of Ga. Ins. Co.,
   713 F.2d 609 (10th Cir. 1983)…..………………………………….......................3

Metro. Transp. Auth. v. Contini,
   No. 04-CV-0104 DGTJMA, 2005 WL 1565524 (E.D.N.Y. July 6, 2005)…………19, 22, 23

Morris v. Jones,
   329 U.S. 545 (1947)…………………………………………………………………..…3

Morrow v. Black,
   742 F. Supp. 1199 (E.D.N.Y. 1990)…..………………………………………………14

Moss v. Morgan Stanley, Inc.,
   719 F.2d 5 (2d Cir. 1983)…………………………………………….…..…......................17

Municipality of Anchorage v. Hitachi Cable, Ltd.
   547 F. Supp. 633 (D. Alaska 1982)……………………………..……………………...26, 34

Nafta v. Feniks Int'l House of Trade (U.S.A.) Inc.,
   932 F. Supp. 422 (E.D.N.Y. 1996)…………...…………….…..………………......................23

New York v. Fed. Energy Regulatory Comm'n,
   535 U.S. 1 (2002)…………………………………………………….…......................25

Oliver Bros. v. Fed. Trade Comm'n,
    102 F.2d 763 (4th Cir. 1939).....................................................24, 31

PGA Tour, Inc. v. Martin,
    532 U.S. 661 (2001)....................................................................25

Phelan v. Local 305 of the United Ass'n of Journeymen,
    973 F.2d 1050 (2d Cir. 1992)..........................................................11

Philip Morris Inc. v. Heinrich,
    No. 95 CIV. 0328 (LMM), 1996 WL 363156 (S.D.N.Y. June 28, 1996)............35

Philip Morris, Inc. v. Grinnell Lithographic Co.,
    67 F. Supp. 2d 126 (E.D.N.Y. 1999)...................................26, 32, 34

Procter & Gamble Co. v. Big Apple Indus. Bldgs.,
    879 F.2d 10 (2d Cir. 1989)...........................................................15

Ratzlaf v. United States,
    510 U.S. 135 (1994).........  ........................................................27

Record Club of Am., Inc. v. Capitol Records, Inc.,
    No. 70 Civ. 3315, 1971 WL 558 (S.D.N.Y. Sept. 8, 1971)...................31, 32

Robinson v. Shell Oil Co.,
    519 U.S. 337 (1997).....................................................................27

Salinas v. United States,
    522 U.S. 52 (1977)......................................................................24

Schmidt v. Fleet Bank,
    16 F. Supp. 2d 340 (S.D.N.Y. 1998) ..............................................13, 16

Seaboard Supply Co. v. Congoleum Corp.,
    770 F.2d 367 (3d Cir. 1985)..........................................................26

SmithKline Beecham Corp. v. E. Applicators, Inc.,
    No. CIV.A. 99-CV-6552, 2002 WL 1197763 (E.D. Pa. May 24, 2002)............35

Spira v. Nick,
    876 F. Supp. 553 (S.D.N.Y. 1995) .................................................15

State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.,
    375 F. Supp. 2d 141 (E.D.N.Y. 2005)...........................................23, 24

Stephen Jay Photo., Ltd. v. Olan Mills, Inc.,
    903 F.2d 988 (4th Cir. 1990)…………………………………...…………….26, 34

Stephens, Inc. v. Geldermann, Inc.,
    962 F.2d 808 (8th Cir. 1992)………………………………………………….13

Swierkiewicz v. Sorema N.A.,
    534 U.S. 506 (2002)……………………………………...…………………...14

Tirozzi v. Shelby Ins. Co.,
    719 A.2d 62 (1998)………………………………………………………...9

Tyndall v. Int'l Bhd. of Teamsters, Local 677,
    No. CV 970141684S, 1999 WL 786355 (Conn. Super. Ct. Sept. 22, 1999)……………3, 9

United States ex rel. Totten v. Bombardier Corp.,
    380 F.3d 488 (D.C. Cir. 2004)………………………………………………27

United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am.,
    508 U.S. 439 (1993)……………………...…………………………...…………27, 32

United States v. Aulicino,
    44 F.3d 1102 (2d Cir. 1995)………………………………………………19

United States v. Bagaric,
    706 F.2d 42 (2d Cir. 1983)...………………………………………...………16, 17

United States v. Coiro,
    922 F.2d 1008 (2d Cir. 1991)……………………...……………………...………19

United States v. Coonan,
    938 F.2d 1553 (2d Cir. 1991) …………………………………………...17, 20

United States v. Feldman,
    853 F.2d 648 (9th Cir. 1988)……………………...………………………16, 23

United States v. Ferguson,
    758 F.2d 843 (2d Cir. 1985)……………………………………………17

United States v. Hewes,
    729 F.2d 1302 (11th Cir. 1984), cert. denied, 469 U.S. 110 (1985)…………....................23

United States v. Mazzei,
    700 F.2d 85 (2d Cir. 1983)……………………………...………………………17

United States v. Teitler,
    802 F.2d 606 (2d Cir. 1986)...............................................................23

United States v. Triumph Capital Group, Inc.,
    260 F. Supp. 2d 444 (D. Conn. 2002).....................................................15

United States v. Turkette,
    452 U.S. 576 (1981)..........................................…..............…........12, 17, 18

Valdes v. Shoei Safety Helmet Corp.,
    No. 92 Civ. 1656 (MBM), 1992 WL 180132, (S.D.N.Y. July 17, 1992)….....................10

Woodford v. Cmty. Action Agency,
    239 F.3d 517 (2d Cir. 2001).............................................................11

Zito v. Leasecomm Corp.,
    No. 02 Civ.8074 GEL, 2004 WL 2211650 (S.D.N.Y. Sept. 30, 2004)…….....................23

## STATUTES

15 U.S.C. § 13 (c)(2000)………………………….. …………………………………........25, 28

## OTHER AUTHORITIES

House Rep. No. 2951, 74th Cong., 2d Sess…..………………………….................................29

Plaintiff World Wrestling Entertainment, Inc. ("WWE") respectfully submits this Memorandum of Law in accordance with the Court's Order of August 18, 2005 directing WWE to provide its response to Defendants' assertion that certain arguments made in their Motions to Dismiss remain viable against the Amended Complaint.

## I. WWE'S RICO CLAIMS ARE NOT BARRED BY RES JUDICATA, THE PRIOR PENDING ACTION DOCTRINE, AND/OR THE "ONE SATISFACTION" RULE

### A. Res Judicata Is Inapplicable and Does Not Bar WWE's RICO Claims

Stanley Shenker and Associates, Inc. ("SSAI") and Stanley Shenker ("Shenker") (collectively the "Shenker Defendants") contend that a sanctions order in a Connecticut state court action commenced by SSAI against WWE (the "Connecticut Action") dated October 16, 2003 (the "Order") was a "final judgment on the merits" that bars WWE from asserting RICO claims against them in this action (Shenker Mem. 11-17). WWE agrees that Connecticut law applies and that one of the elements the Shenker Defendants must prove is a final judgment on the merits of a prior action (id. at 13). The Shenker Defendants bear the burden of proving all requisites to res judicata, see Comm'r of Envtl. Prot. v. Conn. Bldg. Wrecking Co., 629 A.2d 1116, 1127 (Conn. 1993), which they have not done and cannot do.

First, as the Connecticut court explicitly stated, the Order is not an adjudication on the merits (Tab 1, p. 3 n.1).[1] Second, the court's findings demonstrate conclusively that WWE had no opportunity to litigate its RICO claims as Shenker fraudulently concealed the facts needed to assert such claims. Third, the Order is not a final judgment and hence lacks that requisite element for res judicata. Fourth, the RICO claims are vastly different from the claims in the Connecticut Action. In sum, the Shenker Defendants' attempt to use the Order is a perverse

---

[1]    References to Tabs are to the attachments to the Declaration of Amy L. Barrette in support of WWE's Memorandum of Law in Opposition to Defendants' Motions to Dismiss.

- 1 -

attempt to obtain RICO immunity based on Shenker's willful concealment of such claims.[2]

### 1.    Res Judicata Cannot Be Raised by a Motion to Dismiss

Initially, res judicata is an affirmative defense to be pleaded in the defendant's answer. Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992). Res judicata may be raised on a Rule 12(b)(6) motion only "if 'all relevant facts are shown by the court's own records,' of which [the court] can take judicial notice." Ambase Corp. v. City Investing Co. Liquidating Trust, 326 F.3d 63, 72 (2d Cir. 2003). The Shenker Defendants' submission of: (i) WWE's counterclaims against SSAI in the Connecticut Action; and (ii) the Order, does not contain "all relevant facts" necessary to establish res judicata and is not this Court's own records. This submission merely confirms that RICO claims were not previously litigated because of Shenker's fraudulent concealment of evidence.

### 2.    The Order Is Not a Decision on the Merits

The Shenker Defendants correctly note that res judicata applies only to a judgment rendered "on the merits" (Shenker Mem. 13). The Order, however, states: "[t]he Court notes that its findings do not constitute findings regarding the merits of the underlying case but instead are findings regarding unrefuted admissions of misconduct . . ." (Tab 1, p. 3 n.1). The "unrefuted admissions" by Shenker were that he had engaged in: (i) serial perjury; (ii) destruction of evidence; (iii) fabrication of evidence; and (iv) concealment of evidence in order to obscure his illegal conduct, including specifically the receipt of monies from Jakks (id. at pp. 1, 3 n.1, 8-9). Thus, the Order is not a decision based on the merits.[3]

---

[2]    If the Order is preclusive of anything, it precludes the Shenker Defendants under collateral estoppel from now contesting what they did not even try to refute—that they fraudulently concealed evidence from WWE. See Cumberland Farms, Inc. v. Town of Groton, 808 A.2d 1107, 1116 (Conn. 2002).

[3]    The two Connecticut cases cited by the Shenker Defendants for the proposition that a default judgment is a final judgment on the merits, In re Johnson, 149 B.R. 284 (Bankr. D. Conn. 1993) and

3.    **The Shenker Defendants' Assertion of Res Judicata Is Precluded by Shenker's Fraud in the Connecticut Action**

Shenker's adjudicated fraud and "unrefuted admissions" in the Connecticut Action preclude the application of res judicata as a matter of law. Res judicata "does not shield a blameworthy defendant from the consequences of his own misconduct." McCarty v. First of Ga. Ins. Co., 713 F.2d 609, 612 (10th Cir. 1983). Consistent with uniform law, Connecticut courts have "been quite explicit in saying that 'a party cannot utilize res judicata or collateral estoppel when it has committed fraud.'" Benvenuti Oil Co. v. Foss Consultants, Inc., No. 01559862, 2003 WL 21977974, at *30 (Conn. Super. Ct. Aug. 1, 2003).[4] The court's explicit ruling based on Shenker's "unrefuted admissions" that he "intentionally and repeatedly committed a fraud upon this court" precludes the assertion of res judicata as a matter of law. Assuming arguendo the court's ruling alone was not found controlling, the factual proof of Shenker's fraudulent concealment set forth below precludes the application of res judicata as well.

4.    **WWE Did Not Have an Opportunity to Fully and Fairly Litigate Its RICO Claims on the Merits in the Connecticut Action**

---

Tyndall v. Int'l Bhd. of Teamsters, Local 677, No. CV 970141684S, 1999 WL 786355 (Conn. Super. Ct. Sept. 22, 1999), involved default judgments for failure to plead, not explicit orders granting a default for litigation misconduct unrelated to the merits and are thus inapposite.

[4]     Morris v. Jones, 329 U.S. 545, 550 (1947) (fraud precludes res judicata). See also Browning v. Levy, 283 F.3d 761, 769-70 (6th Cir. 2002) ("where a plaintiff's failure to raise or reserve its cause of action in an earlier case between the parties was caused by the defendant's 'wrongful concealment' of the facts giving rise to the claim, the res judicata defense is not available"); L-Tec Elecs. Corp. v. Cougar Elec. Org., 198 F.3d 85, 88 (2d Cir. 1999) (res judicata does not apply where new claims are based on evidence that was fraudulently concealed in prior litigation); Harnett v. Billman, 800 F.2d 1308, 1313 (4th Cir. 1986) (res judicata does not apply "in cases where fraud, concealment, or misrepresentation have caused the plaintiff to fail to include a claim in a former action."); McCarty, 713 F.2d at 612-13 ("[W]here plaintiff's omission of an item of his cause of action was brought about by defendant's fraud, deception, or wrongful conduct, the former judgment has been held not to be a bar to suit."); King v. Galluzzo Equip. & Excavating, Inc., No. 00 CV 6247(ILG), 2001 WL 1402996, at *10 (E.D.N.Y. Nov. 8, 2001) ("A defendant cannot justly object to being sued on a part or a phase of a claim that the plaintiff failed to include in an earlier action because of the defendant's own fraud.").

Res judicata is based on the policy that a party should not be able to relitigate a matter which it already has had an adequate opportunity to litigate. <u>Linden Condo. Ass'n v. McKenna</u>, 726 A.2d 502, 512 (Conn. 1999); <u>Fink v. Golenbock</u>, 680 A.2d 1243, 1250 (Conn. 1996). No such adequate opportunity existed here. As set forth in the Amended Complaint, the Defendants' affirmative concealment of their criminal activity was directed specifically towards the facts underlying WWE's RICO claims, and Shenker's misconduct was massive.

In the Summer of 2001, Bell and Shenker systematically destroyed original records evidencing their crimes (Tab 1, pp. 9-10). The forever-lost evidence included letter agreements between Bell and Shenker regarding the bribes specifically made in conjunction with the videogame license. The destruction of such documents facilitated Shenker's ensuing perjury designed to cover up that bribes were paid by and on behalf of Jakks.

Having destroyed critical evidence, Shenker then consistently denied receiving any payments from WWE licensees (such as Jakks) through a series of evasive and false responses to WWE's Third Set of Interrogatories, which specifically asked if SSAI, Shenker or anyone acting on their behalf ever received "any type of payment" from a WWE licensee (Tab 2):

- <u>December 26, 2001</u>: SSAI filed dilatory objections to those interrogatories on grounds they were vague, overly broad and unclear (Tab 3);

- <u>January 23, 2002</u>: SSAI's counsel advised WWE that Shenker "had no clue" what WWE was asking about regarding payments from WWE licensees, thus the forthcoming responses would be "none known" (Tab 4);

- <u>January 29, 2002</u>: After learning that WWE had evidence of a payment from another licensee, Trinity Products, SSAI identified <u>one</u> payment Shenker received from Trinity, claiming falsely that the payment was unrelated to WWE. SSAI continued to conceal and did not disclose payments received from Jakks (Tab 5);

- <u>May 28, 2002</u>: Following the entry of a compulsion order requiring SSAI's accountant to produce any records reflecting income Shenker received from WWE licensees, either directly or indirectly (Tab 6), SSAI continued to conceal payments received from Jakks (Tab 7); and

- May 29, 2002: SSAI served its second amended response falsely claiming that Shenker received no payments from WWE licensees related to WWE licenses and continued to conceal payments received from Jakks (Tab 8).

On May 30, 2002, the day after he served false amended interrogatory answers, Shenker perjured himself by concealing the existence of Stanfull Industrial, Ltd. ("Stanfull"), a Hong Kong corporation he owned (Tab 9, pp. 1056-59), which he knew had been the conduit for at least three payments from Jakks (Tab 10, (hereinafter "AC"), ¶¶ 95, 112, 168). The Order made a specific finding that Shenker intentionally perjured himself about the existence of Stanfull to prevent WWE from discovering improper payments he received from WWE licensees, including, specifically, Jakks (Tab 1, pp. 8-9).

In the months following Shenker's first deposition, Shenker continued to conceal the existence of Stanfull and the payments from Jakks by filing frivolous objections to WWE's document requests and refusing to produce relevant documents despite a prior compulsion order requiring production.[5] As a result, WWE was forced to obtain three additional compulsion orders in an attempt to secure evidence (Tabs 11-13).

WWE resumed Shenker's deposition in December 2002 against this background of uncorrected perjury regarding payments from Jakks. At the end of his third day of testimony on December 11, 2002, Shenker's perjury on other matters became manifest when he was confronted with an original Bell invoice which had been "inadvertently" produced in response to the foregoing compulsion orders (Tab 1, p. 3). The original invoice evidenced kickbacks from Shenker to Bell on other WWE licenses and proved that Shenker had lied through days of

---

[5]    In concert with the Shenker Defendants, the Bell Defendants participated in the cover-up (Tab 1, pp. 9-10). To that end, in December 2002, when confronted with a check from SSAI made payable to Bell dated October 8, 1998 in the amount of $20,000, Bell falsely testified that the payment was his split of a "finder's fee" for brokering an inventory deal between WWE licensees Playmates Toys, Inc. and Jakks (AC ¶ 212). Bell falsely suggested the monies had come from Playmates (AC ¶ 212). Immediately thereafter, Bell retained criminal counsel and asserted his Fifth Amendment rights.

testimony when he denied paying Bell monies on any WWE licenses. More than six weeks later, Shenker advised that he would be "correcting" his prior testimony [6] (Tab 15).

Shenker's purported "corrections" were just another round of perjury about the payments Shenker received from Jakks. As his first "correction," on February 18, 2003, SSAI served its third amended response to WWE's Third Set of Interrogatories, which asked about payments from licensees. Knowing that Bell had testified in December 2002 about splitting a so-called "finder's fee" for what was claimed to be an inventory deal between Jakks and Playmates, Shenker adopted a new tact of admitting only what WWE knew and denying everything else. Thus, Shenker for the first time disclosed the receipt of a single payment of $40,000 from Jakks, which he falsely claimed occurred "in late 1998 or early 1999" for supposedly brokering an inventory deal between Playmates and Jakks (Tab 16, p. 5). By this response, Shenker continued to conceal the following:

- The total number, amount and timing of payments. By stating that only one $40,000 payment took place in "late 1998 or early 1999," Shenker concealed two $40,000 payments made in January and April 1998 during the time licensing rights were being sought and obtained by Jakks and that he split both payments with Bell (AC ¶¶ 91-97, 111-17, 217); and

- Existing documentary support for the payments. By stating that he had no documentation (AC ¶ 215), Shenker concealed an actual invoice for $80,000 which gave a different reason for the payments than given by him under oath (AC ¶¶ 228-33).

Shenker then served highly scripted changes to his testimony on March 3, 2003, which he spent months devising with his Connecticut counsel, consisting of over 400 substantive changes to his prior testimony (Tab 17). After two and one half years of concealment, Shenker disclosed Stanfull's existence but continued to conceal the true purpose of Stanfull (Tab 17, p. 1):

---

[6]     The Shenker Defendants' statements that: (i) Shenker acknowledged that he had given false testimony at the end of his third day of testimony; and (ii) at that time, Shenker's counsel advised WWE's counsel that Shenker would be recanting portions of his prior testimony (Shenker Mem. 5), are patently false. In fact, immediately following his third day of testimony, Shenker traveled to Hartford, Connecticut and, like Bell, retained criminal counsel (Tab 14, pp. 752-54).

- In briefings filed with the Connecticut court on March 5, 2003, Shenker again revealed only one payment from Jakks in the amount of $40,000 and failed to disclose two additional payments (Tab 18, pp. 9-10; AC ¶¶ 216, 226, 234);

- In deposition testimony given on March 18, 2003, Shenker falsely testified that an invoice from Defendant Bell Licensing dated October 8, 1998 was for Bell's split of the alleged "finder's fee" (AC ¶¶ 217-18; Tab 14, pp. 983-84);

- In deposition testimony given on March 18, 2003, Shenker falsely testified that he had produced all evidence of payments from Stanfull to Bell, knowing that he had neither disclosed nor produced the evidence of payments made by Jakks to Stanfull, which had been split with Bell in January 1998 and April 1998 (Tab 14, pp. 982-83; AC ¶ 218);

- On March 20, 2003, SSAI answered Interrogatory No. 10 of WWE's First Set of Interrogatories pursuant to a court order to answer the interrogatory truthfully (Tab 19) yet falsely responded that only one payment was received from Jakks through Stanfull (Tab 20).

On May 23, 2003, WWE filed a motion for sanctions which was extensively briefed and granted by the court based on Shenker's "unrefuted admissions" of widespread litigation crimes. The Shenker Defendants' suggestion that the court entered the Order because Shenker "corrected his testimony too late" (Shenker Mem. 5) is absurd and not supported by any statement of the court in the Order. The Order was based on the court's findings that Shenker had: (i) "admitted that he repeatedly and intentionally engaged in perjury regarding issues central to the case until faced with irrefutable evidence that he had testified falsely"; and (ii) "admitted that evidence was concealed and even in some cases destroyed," and that the destruction of evidence "might have a bearing on the outcome" if the case were tried on the merits (Tab 1, p. 20).

The subjects of his perjury noted by the court were fundamental to WWE's RICO claims, such as the existence of Stanfull and the extent, nature and timing of payments Shenker received through Stanfull from Jakks, which he split with Bell (Tab 1, pp. 8-9). As of the entry of the Order, therefore, WWE could not have known of all the facts necessary to assert RICO claims. It was not until after the Order that WWE was able to uncover additional facts regarding the extent, nature and timing of payments from Jakks:

- 7 -

- WWE made two trips to Hong Kong in October 2003 and January 2004 to obtain Stanfull's records from the Hang Seng Bank—records Shenker refused to produce despite being under a specific compulsion order to do so (AC ¶¶ 225, 234);

- Shenker never did disclose or produce an $80,000 invoice in Shenker's own handwriting from Stanfull to Jakks (Tab 21; AC ¶¶ 215, 218). Indeed, it was not until November 2003—<u>one month after the Order</u>—that Jakks' counsel contradicted Jakks' prior denials and for the first time produced a January 2, 1998 $80,000 invoice from Stanfull to Jakks which was paid through foreign subsidiaries of Jakks to Stanfull's Hong Kong bank account (AC ¶¶ 94-7, 111-13, 228-32). Jakks, however, continued to conceal that an additional $20,000 payment was made in August 1998 (AC ¶ 230);

- In January 2004—<u>three months after the Order</u>—WWE for the first time confirmed from Hang Seng Bank records that Jakks' foreign subsidiaries made three payments to Stanfull in 1998, $40,000 in January 1998, $40,000 in April 1998, and $20,000 in August 1998 (AC ¶¶ 226, 234).

On this record, it is simply specious for the Shenker Defendants to assert that WWE had an adequate opportunity to litigate its RICO claims on the merits prior to the Order. Indeed, as the court noted, Shenker's misconduct "severely prejudiced" WWE as Shenker had destroyed evidence which might affect the outcome of the narrower state claims (Tab 1, pp. 19-20). Shenker's unrelenting criminal conduct was designed to, and did, deny WWE evidence on the narrow state claims and certainly did so on broader RICO claims.

### 5.    The Order Is Not a Final Judgment

The Order is not a final judgment under Connecticut law. "[T]here is a clear distinction between a default, sometimes loosely referred to as a judgment of default, and a judgment upon default. <u>A default is not a judgment</u>. It is an interlocutory order of the court . . . . A judgment upon default, on the other hand, is the final judgment in the case which is entered after the default and after a hearing in damages." <u>Esposito v. Pinecrest Country Club, Inc.</u>, 186 A.2d 822, 823 (Conn. Super. Ct. 1962) (emphasis added). On its face, the Order is a judgment <u>of</u> default, not a judgment <u>upon</u> default, as it explicitly provides for a separate hearing in damages pursuant

- 8 -

to Practice Book § 17-34 at a later date (Tab 1, p. 22).[7]  Because the issue of damages has not

been determined, the Order also is not appealable.  See Knoblaugh v. Marshall, 779 A.2d 218,

221 (Conn. App. Ct. 2001) (commissioner's decision not final judgment for purposes of res

judicata because damages had not been determined).  This separately mandates that it is not a

final judgment.[8]  Thus, as a matter of law, there has been no "final judgment on the merits."

### 6.    WWE's Causes of Action Against SSAI in the Connecticut Action Are Fundamentally Different from WWE's RICO Claims

For res judicata to apply, the same claim, demand or cause of action must be at issue.

Tirozzi v. Shelby Ins. Co., 719 A.2d 62, 65 (Conn. App. Ct. 1998).  The Court must compare the

complaint in the second action with the pleadings and the judgment in the first action.  Comm'r

of Envtl. Prot., 629 A.2d at 1124-25.  WWE's RICO claims and WWE's counterclaims against

SSAI in the Connecticut Action are not the same cause of action.

In sharp contrast to WWE's state law claims described by the Connecticut Court (see Tab

1, p. 2), WWE's RICO allegations involve different transactions, parties, injuries, and vastly

different elements of proof.  The RICO claims here center on the criminal actions of licensees

and their officers designed to corrupt the Shenker Defendants and Bell which caused damages in

excess of one hundred million dollars.  WWE's Amended Complaint alleges matters which could

not have been alleged in the Connecticut Action as a direct result of the fraudulent concealment,

including:  (i) the members of the RICO enterprise caused Shenker and Bell to render dishonest

---

[7]    Both Connecticut cases cited by the Shenker Defendants to support their contention that the Order is a final judgment on the merits involved judgments upon default, not a judgment of default as exists here, and are inapposite to the issue before the Court (Shenker Mem. 15-16, citing In re Johnson and Tyndall v. Int'l Bhd. of Teamsters).  The additional three cases upon which they rely are non-Connecticut cases that simply do not reflect Connecticut law (Shenker Mem. 16 n.9).

[8]    One of the critical factors in determining whether a judicial determination is a final judgment for purposes of res judicata is whether it is also a final judgment for purposes of appeal.  Cadle Co. v. Drubner, 303 F. Supp. 2d 143, 147 (D. Conn. 2004).

services within the meaning of the federal mail fraud statute (AC ¶¶ 37-71, 79-82, 91-97);

(ii) SSAI, Shenker and Bell were paid bribes by and on behalf of enterprise members to secure

valuable licensing rights from WWE at below-market rates (AC ¶¶ 93-97, 111-17, 167-71); and

(iii) various enterprise members induced Shenker and Bell to provide confidential information in

order to circumvent a competitive bidding situation and cause WWE to award the WWE

videogame license to Jakks and THQ (AC ¶¶ 100-04, 135-37).

In conclusion, WWE should not be denied its choice of forum to litigate its RICO claims

against all Defendants in the same jurisdiction and in a federal court.[9]

## B.  This Court Should Not Abstain from Exercising Jurisdiction over WWE's RICO Claims Against the Shenker Defendants

"[A] parallel suit pending in state court does not relieve a federal court of the obligation

to exercise its jurisdiction." Valdes v. Shoei Safety Helmet Corp., No. 92 Civ. 1656 (MBM),

1992 WL 180132, at *1 (S.D.N.Y. July 17, 1992). "[A]bstention from the exercise of federal

jurisdiction is the exception, not the rule." Colo. River Water Conservation Dist. v. United

States, 424 U.S. 800, 813 (1976). Federal courts in this district do not abstain from exercising

jurisdiction over RICO claims despite parallel state court proceedings. See Macy's E., Inc. v.

Emergency Envtl. Servs., Inc., 925 F. Supp. 191, 193 (S.D.N.Y. 1996); Chazin v. Lieberman,

No. 89 CIV. 5968 (RPP), 1990 WL 115716, at *1 (S.D.N.Y. Aug. 6, 1990).

> [T]he Second Circuit has enumerated six factors to be weighed
> when deciding whether a district court should exercise its
> discretion to abstain under Colorado River: (1) the assumption of
> jurisdiction by either court over any res or property; (2) the
> inconvenience of the federal forum; (3) an avoidance of piecemeal

---

[9]     Further, the Shenker Defendants' assertion of res judicata against WWE's RICO claims does not promote judicial economy because they will remain in this case under any circumstances as defendants on WWE's antitrust claims since this Court has exclusive jurisdiction over such claims. See Johnson v. Nyack Hosp., 964 F.2d 116, 122 (2d Cir. 1992) (federal courts have exclusive jurisdiction over Sherman Act claims).

litigation; (4) the order in which jurisdiction was obtained; (5)
whether state or federal law supplies the rule of decision; and (6)
whether the state court proceeding will adequately protect the
rights of the party seeking to invoke federal jurisdiction.

Linens of Europe, Inc. v. Best Mfg., Inc., No. 03 Civ. 9612 (GEL), 2004 WL 2071689, at *5

(S.D.N.Y. Sept. 16, 2004). These factors overwhelmingly weigh in favor of this Court's exercise

of jurisdiction over the RICO claims because:

- This case implicates no res or property.
- The New York federal forum cannot be inconvenient to the Shenker Defendants because:
  (i) they have requested that this Court transfer the case to California (Shenker Mem. 21);
  and (ii) SSAI is a New York corporation.
- There is no piecemeal litigation because only this Court has the RICO claims. The
  Shenker Defendants' argument fosters, not avoids, piecemeal litigation.
- This action involves RICO claims against numerous defendants, all but one of which are
  not parties to the Connecticut Action. WWE's counterclaims against SSAI in the
  Connecticut Action exclusively involve Connecticut state law claims. "Such differences
  in parties and issues are strong factors against invoking exceptional circumstances as the
  basis for dismissal." Linens of Europe, 2004 WL 2071689, at *6.
- In this action, WWE's federal claims predominate. "'[T]he presence of federal law
  issues must always be a major consideration weighing against surrender.' . . . 'And [i]f
  there is any substantial doubt' as to whether 'complete and prompt' protection of the
  federal rights is available in the state proceeding, dismissal 'would be a serious abuse of
  discretion.'" Woodford v. Cmty. Action Agency, 239 F.3d 517, 523 (2d Cir. 2001).

Accordingly, abstention would be manifestly inappropriate.

### C.    The "One Satisfaction" Rule Does Not Apply Here

The purpose of the "one satisfaction" rule is to preclude a party from recovering twice for

the same injury. Phelan v. Local 305 of the United Ass'n of Journeymen, 973 F.2d 1050, 1063

(2d Cir. 1992). Simply put, there has been no prior recovery against the Shenker Defendants.

Moreover, because the injury alleged in the Connecticut Action is fundamentally different from

the injury alleged here, there would be no duplicative recovery, as they erroneously claim.

### II.    THE AMENDED COMPLAINT ADEQUATELY PLEADS A RICO ENTERPRISE

- 11 -