Not Reported in F.Supp.  Page 9
Not Reported in F.Supp., 1996 WL 257581 (S.D.N.Y.), 1996-1 Trade Cases P 71,438
(Cite as: Not Reported in F.Supp.)

Tropicana only paid the allowance to Royal after proof of performance was submitted. *See* Schulke Dep. at 131-32; Garofalo Dep. at 54-55. This effectively created an off-invoice arrangement for some of Royal's customers. Plaintiffs claim that Tropicana discriminated against them by refusing to extend such an arrangement to them on behalf of their bodega customers. As was the case for off-invoice payments, such a decision could reasonably be based on an erratic record of performance by bodega customers. *See* Meyer, Jr. Dep at 369; Meyer, St.Dep. at 231-32, 240, 819-20. In 1992, Tropicana made this arrangement available to all its customers, but Plaintiffs chose not to participate. Hygrade's president testified that Hygrade did not participate in this program because it feared that it would not get the money back from Tropicana. *See* Meyer, Sr.Dep. at 324. Plaintiffs' decision not to participate undermines their claim that they were damaged by Tropicana's earlier refusal to let them participate.

d. *Summary*

*10 As Plaintiffs and Preferred Wholesalers are both direct customers of Tropicana, Plaintiffs are claiming a secondary-line violation. Because Plaintiffs and Preferred Wholesalers are competitors, Plaintiffs must demonstrate a substantial price difference over time in order to establish their § 2(a) claim. *See Falls City,* 460 U.S. at 435. Drawing all inferences and resolving all ambiguities in Plaintiffs' favor, the evidence supports the conclusion that Tropicana provided allowances or discounts and extended pre-pull periods to retail customers of Preferred Wholesalers, but not to Plaintiffs' customers. Consequently, an issue of material fact has been raised as to whether these actions constitute substantial indirect price discrimination. Thus, summary judgment is denied as to Plaintiffs' claim that Tropicana's pricing practices harmed competition between Plaintiffs and Preferred Wholesalers. On the other hand, Tropicana's refusal to pay the bodegas' promotional allowances directly to Plaintiffs does not raise an inference of price discrimination resulting in a competitive injury.

3. *Favored Retailers and Plaintiffs*

Finally, Plaintiffs claim that Tropicana's pricing practices harmed competition between themselves and direct buying chains. There is no dispute that direct buying chains (which are retailers) received allowances which were unavailable to Plaintiffs (which are wholesalers). Thus, Tropicana in effect permits direct buying chains to purchase product for less than Plaintiffs. Tropicana claims that this practice does not violate the Act.

Tropicana contends that in order to violate § 2(a) "the favored and disfavored purchasers [must compete] at the same functional level, i.e., all wholesalers or all retailers, and within the same geographical market." *Best Brands,* 842 F.2d at 585. However, in *Texaco, Inc. v. Hasbrouck,* 496 U.S. 543, 567 (1990), the Supreme Court rejected the contention that § 2(a) categorically exempts price discrimination between wholesalers and retailers. FN9 *See also Morton Salt,* 334 U.S. at 55; *J.T. Jones v. Metzger Dairy,* 334 F.2d 919, 924-25 (5th Cir.1964), *cert. denied,* 379 U.S. 965 (1965).

> FN9. While the holding of *Best Brands* is no longer controlling, it does support the proposition that competitive injury is much less likely to occur as a result of price discrimination between retailers and wholesalers because they generally compete in different markets. *See Hasbrouck,* 496 U.S. at 580 (Scalia, J., concurring in the judgment).

As Plaintiffs are asserting a secondary-line injury, they must show that they were in actual competition with the direct buying chains in order to establish competitive injury. *See Best Brands,* 842 F.2d at 584. Plaintiffs must also show that "the probable effect of the discrimination would be to allow the 'favored competitor to draw sales or profits from the unfavored competitor.' " *Id.* at 584 (quoting *J. Truett Payne Co. v. Chrysler Motors Corp.,* 451 U.S. 557, 569-70 (1981) (Powell, J., dissenting in part)). Although Plaintiffs and direct buying chains primarily sell to different customers, Plaintiffs claim that the direct-buying chains were in effect acting as wholesalers in two different respects.

First, Plaintiffs claim that the direct buying chains were acting as wholesalers because they resold ("diverted") Tropicana product to customers other than the ultimate consumer. Tropicana claims that it discourages and consistently tries to stop such activity. Furthermore, Tropicana asserts that neither Waldbaum's nor Pathmark engaged in such diversionary activity within the Citrus Bowl area. *See* Def. 3(g) ¶¶ 104-06. However, Herbert Whitehead, former president of Dellwood Foods,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 10
Not Reported in F.Supp., 1996 WL 257581 (S.D.N.Y.), 1996-1 Trade Cases P 71,438
(Cite as: Not Reported in F.Supp.)

Inc., testified that Dellwood purchased diverted Tropicana products from Waldbaum's and other direct buying chains. *See* Deposition of Herbert Whitehead, April 26, 1995, at 17-19. These purchases were $3,000 to $3,500 cheaper per trailer load than purchases from Tropicana and continued for a period of approximately five years. *See id.* at 19-21. Salvatore Olivito, Pathmark's Dairy Vice President, testified that Pathmark diverted Tropicana product through brokers located in New York or New Jersey, but that it stopped diverting product in January 1991 at the instruction of Tropicana. *See* Olivito Dep. at 15-16, 20, 26. Furthermore, Olivito claims that any product diverted by Pathmark was sent out of the New York marketing area. *See id.* at 104-05.

*11 Even assuming that Pathmark and Waldbaum's diverted some product into the New York marketing area, there is no evidence suggesting that any of it reached Plaintiffs' customers or the competitors of Plaintiffs' customers. More importantly, there is no evidence that Tropicana product was diverted to any retailers. Therefore, to the extent that direct buying chains were diverting product to wholesalers in the Citrus Bowl area, they were acting as a manufacturer, not a wholesaler. *See Kirby v. P.R. Mallory & Co., 489 F.2d 904, 909 (7th Cir.1973), cert. denied, 417 U.S. 911 (1974)* ("the litmus test of a wholesaler is the character of his selling, not his buying"). Thus, if direct buying chains were competing with anybody it was Tropicana or other diverters, not Plaintiffs. Plaintiffs themselves have purchased significant amounts of diverted product. *See* Meyer, Sr. Dep. at 360; Schwartz Dep. at 341; Deposition of Martin Fromm ("Fromm Dep."), President of Gold Medal, dated April 20, 1995, at 80-81; Kotcher Dep. at 194-97. The fact that there was a less expensive source from which Plaintiffs could purchase Tropicana product did not harm competition between Plaintiffs and direct buying chains.

Second, Plaintiffs claim that their bodega customers purchased Tropicana from direct buying chains instead of Plaintiffs because it was cheaper. In support of this contention Plaintiffs submit approximately 40 virtually identical declarations from former bodega customers. Each declaration states that "[s]ometimes we would buy Tropicana orange juice from the competing supermarket at these low prices, which was lower than the price which the Dairy was charging us at that time." *See* Bodega Declarations ¶ 3. The declarations do not state, however, that such purchases were from direct buying chains like Pathmark or Waldbaum's.

Moreover, the declarations do not state how much or how often bodegas purchased Tropicana product from the supermarkets. The fact that bodegas also purchased product from a wholesaler at the same time, *see id.* ¶ 2, suggests that the purchases from supermarkets were not substantial. Accordingly, this evidence does not support the conclusion that Plaintiffs were in actual competition with direct buying chains.

Plaintiffs have offered no credible evidence that they were in competition with direct buying chains. Therefore, Tropicana's motion for summary judgment is granted with respect to Plaintiffs' claim of price discrimination as between Plaintiffs and direct buying chains.

B. *Plaintiffs' Motion for Partial Summary Judgment*

Plaintiffs and Tropicana disagree on whether Tropicana's promotional programs are available to bodegas. For the purpose of their motion for partial summary judgment, however, Plaintiffs accept that Tropicana's programs are available to bodegas. *See* Reply Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment at 3-4. The theory of Plaintiffs' motion is that promotional allowances which bear no relationship to the value of services provided by the customer violate § 2(a) of the Act.

*12 Plaintiffs claim, and Tropicana admits, that: 1) the retailer was not required to spend any portion of the allowance on advertising or promoting Tropicana products; 2) the cost to the retailer of promoting Tropicana products was not regulated by Tropicana; 3) there was no relationship between the amount of the allowance and the cost of promotion to the retailer; 4) the effect of the promotional allowance program was to give supermarkets a lower price than Plaintiffs; and 5) supermarkets were able to sell Tropicana product during promotional periods for lower prices than Plaintiffs were able to buy from Tropicana. Plaintiffs argue that these facts establish that the promotional program was a sham and that the allowances should have been given automatically to all customers.

In support of their contention, Plaintiffs cite several cases holding that allowances that were unrelated to the value of the services performed violated the Act. In these cases, however, none of the allowances were available to the plaintiffs. The relationship between the allowance and the value of the services only

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 11
Not Reported in F.Supp., 1996 WL 257581 (S.D.N.Y.), 1996-1 Trade Cases P 71,438
(Cite as: Not Reported in F.Supp.)

becomes relevant when the allowance is not available to all customers. Where an allowance is available to all competing customers, there is no discrimination in price and hence no competitive injury. *See FLM Collision,* 543 F.2d at 1025-26 (where a "lower price is available to all purchasers, not only in theory but in fact ... there is no violation"). Thus, a promotional program which provides payments to customers in excess of their costs of promotion does not violate § 2(a) where it is functionally available to competing purchasers on proportionally equal terms. FN10 Plaintiffs' motion for partial summary judgment is denied as their theory cannot, as a matter of law, state a claim under § 2(a). Plaintiffs may eventually prevail, however, if they prove that Tropicana's promotional programs were not available to bodegas.

> FN10. Plaintiffs also rely on § 240.12 of the FTC Guides, which states that the customer should spend the promotional allowance for the purpose that it was given. This reliance is misplaced. The FTC Guides, which provide guidelines for complying with §§ 2(d) and (e) of the Act, do not alter the fact that price discrimination and competitive injury must be proved in order to establish a violation of § 2(a).

IV. *Sections 2(d) and 2(e) of the Robinson Patman Act*

Section 2(d) FN11 of the Act prohibits sellers from providing payments to customers to be used in connection with the resale of goods unless the payments are available to all customers competing in the distribution of such products on proportionally equal terms. *See* 15 U.S.C. § 13(d); *FTC v. Fred Meyer, Inc.,* 390 U.S. 341, 350-53 (1967). Section 2(e) FN12 is similar to § 2(d) except that it prohibits a seller from providing services (as opposed to payments for services) to customers to be used in connection with the resale of goods unless the services are available to all competing customers on proportionally equal terms. *See* 15 U.S.C. § 13(e); *FTC v. Simplicity Pattern Co.,* 360 U.S. 55, 65 (1959). Although the language in these two sections is slightly different, courts have applied the same analysis to both. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.,* 756 F.2d 1467, 1479 n. 6 (10th Cir.), *cert. denied,* 474 U.S. 823 (1985); *Kirby,* 489 F.2d at 909.

> FN11. Section 2(d) states:
> It shall be unlawful for any person engaged in commerce to pay or contract for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or offered for sale by such person, unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities.
> 15 U.S.C. § 13(d) (1973).

> FN12. Section 2(e) states:
> It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms.
> 15 U.S.C. § 13(e) (1973).

*13 In order to establish a violation of §§ 2(d) or (e), Plaintiffs must show that 1) Tropicana provided payments or services to customers in connection with the resale of goods; and 2) such payments or services were not available to competing customers on proportionally equal terms. 15 U.S.C. §§ 2(d)-(e); *Fred Meyer,* 390 U.S. at 355-57; *Alan's of Atlanta, Inc. v. Minolta Corp.,* 903 F.2d 1414, 1423-24 (11th Cir.1990); *Bouldis,* 711 F.2d at 1327-28; *Kirby,* 489 F.2d at 908. Sections 2(d) and (e), unlike 2(a), have no competitive injury requirement. *See Simplicity Pattern,* 360 U.S. at 66. Discrimination under §§ 2(d) and (e) is only unlawful if it reaches competing customers reselling on the same functional level; it does not require proportional equality between direct-buying retailers and wholesalers. *See Fred Meyer,* 390 U.S. at 348-49. Thus, discrimination between Plaintiffs and direct buying chains is not actionable under §§ 2(d) or (e). *See id.*

A. *In Connection With the Resale of Goods*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK   Document 93-12   Filed 09/19/2005   Page 4 of 8

Not Reported in F.Supp.                                                                       Page 12
Not Reported in F.Supp., 1996 WL 257581 (S.D.N.Y.), 1996-1 Trade Cases P 71,438
(Cite as: Not Reported in F.Supp.)

Under the Basic Plan, CVI program, and TAF program Tropicana provides payments in return for promotional activity by the retailer for the resale of Tropicana product. Also, the allowances which Plaintiffs allege were given to Preferred Wholesalers were for the purpose of reselling Tropicana product to retailers. Furthermore, price-protection and pre-pull are services provided by Tropicana to retailers to aid in the resale of the product. While slotting allowances are not given for advertising or promotion, they are used primarily to promote the resale of the seller's product by securing shelf space. See FTC Guides, 16 C.F.R. § 240.9 at 36 n. 1 ("The discriminatory purchase of shelf space, whether directly or by means of so-called allowances, may violate the Act...."). Thus, discriminatory treatment regarding these programs and services is within the scope of § § 2(d) and (e).

As off-invoice payments are usually an advance of funds that must eventually be paid, they are similar to an extension of credit. See L.S. Amster, 504 F.Supp. at 620. Courts have held that discriminatory credit practices are outside the scope of § § 2(d) and (e) as they generally do not relate to the resale of a supplier's goods. See, e.g., Alan's of Atlanta, 903 F.2d at 1424; Bouldis, 711 F.2d at 1328. Here, however, the off-invoice payments specifically relate to the payment of promotional allowances, not to the original sale of goods. Thus, these off-invoice payments are properly within the scope of § § 2(d) and (e).

B. *Availability on Proportionally Equal Terms*

Sections 2(d) and (e) require that a seller's promotional program be available on proportionally equal terms. The FTC Guides provide guidance as to when a promotional program will satisfy this requirements. FTC Guides, 16 C.F.R. § § 240.1 - 240.15.

1. *FTC Guides*

First, a customer must be informed of the existence of a promotional program. "The seller has an obligation to take steps reasonably designed to provide notice to competing customers of the availability of promotional services and allowances." FTC Guides, 16 C.F.R. § 240.10(b); see also Alterman Foods, Inc. v. FTC, 497 F.2d 993, 1001 (5th Cir.1974). While a seller may contract with its wholesalers to inform indirect purchasing retailers of a promotion, it remains ultimately responsible for providing the required notification. See FTC Guides, 16 C.F.R. § 240.11; see also Fred Meyer, 340 U.S. at 358.

*14 Second, a customer must be able to participate in the promotion in a practical sense. See FTC Guides, 16 C.F.R. § 240.10(a)(1). A promotion which, although theoretically available to all, effectively excludes smaller customers from participating violates the Act. In order to make promotional programs functionally available, a seller may have to offer "alternative terms and conditions under which customers can participate." Id. Furthermore, a seller "must take reasonable steps to ensure that the alternatives are proportionally equal, and ... inform all competing customers of the various alternative plans." Id. Where the seller has complied with these requirements, but the customer does not participate because it is reluctant to process the required paperwork to verify performance, the seller is not in violation of the functional availability requirement. See id. example 4.

Third, promotional payments or services must be made available to competing customers on proportionally equal terms. Although there is no single way to do this, basing the payments or services on the dollar volume or the quantity of product purchased will generally suffice. See FTC Guides, 16 C.F.R. § 240.9(a). "Where a seller offers more than one type of service, or payments for more than one type of service, all the services or payments should be offered on proportionally equal terms." FTC Guides, 16 C.F.R. § 240.9(b).

Finally, the FTC Guides require a seller to take reasonable precautions that it is not overpaying for the services provided. See FTC Guides, 16 C.F.R. § 240.12. "The customer should expend the allowance solely for the purpose for which it was given." Id. If a seller knows or should know that the allowance is not being properly used, it should discontinue the payments or services. Id.

2. *Tropicana's Programs*

Sections 2(d) and (e) are narrower in scope than § 2(a) as they do not reach discrimination between customers competing at different functional levels. However, as the FTC Guides and the statute demonstrate, and as Tropicana recognizes, compliance with § § 2(d) and (e) is more difficult

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 13
Not Reported in F.Supp., 1996 WL 257581 (S.D.N.Y.), 1996-1 Trade Cases P 71,438
(Cite as: Not Reported in F.Supp.)

than compliance with § 2(a) with regard to customers competing at the same functional level. FN13 Tropicana must make each promotional program functionally available to all competing customers on proportionally equal terms regardless of the effect on price or competition. As discussed above, there are questions of fact concerning the adequacy of notice provided by Tropicana, the bodegas' ability to participate in the promotional programs in a practical sense, and the availability of all of Tropicana's promotional programs to bodegas. Under these circumstances, a reasonable jury could conclude that Tropicana's practices relating to the Basic Plan, TAF program, CVI program, pre-pull, slotting allowances, and price protection were not functionally available to bodegas, as opposed to direct buying chains, on proportionally equal terms. As off-invoice payments were denied to bodegas for a valid business reason, this does not violate the Act. See L.S. Amster, 504 F.Supp. at 621. Thus, Tropicana's motion for summary judgment on Plaintiffs' §§ 2(d) and (e) claims is granted with respect to off-invoice payments. Tropicana's motion is denied in all other respects.

FN13. Michael Malina, counsel for Tropicana, stated: "The suggestion that somehow there might be a violation of Section 2(a) when there's no violation of Section 2(d) turns this statute upside-down, because Sections 2(d) and 2(e) are more stringent than Section 2(a)...." Tr. at 33.

V. *Meeting-Competition Defense*

*15 The meeting-competition defense of § 2(b) FN14 relieves a seller from liability under the Act. *Falls City,* 460 U.S. at 438. The defense is an absolute defense to violations of §§ 2(a), (d), and (e) of the Act. See *Viviano Macaroni Co. v. FTC,* 411 F.2d 255 (3d Cir.1969); *Exquisite Form Brassiere,* 301 F.2d at 504; FTC Guides, 16 C.F.R. § 240.14; see also *Standard Oil Co. v. FTC,* 340 U.S. 231 (1951). In order to prevail on this defense, the seller must show "the existence of facts which would lead a reasonable prudent person to believe that the granting of a lower price would in fact meet the equally low price of a competitor." *Falls City,* 460 U.S. at 438 (internal quotation marks omitted). Furthermore, the seller's response must be "offered in good faith to 'meet not beat' the competitor's low price." *Id.* at 446. The burden of establishing this defense lies with Tropicana. *Id.* at 451.

FN14. Section 2(b) states, in relevant part: That nothing herein contained shall prevent a seller rebutting the prima facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor.
15 U.S.C. § 13(b) (1973).

Tropicana urges that its promotional pricing scheme was a good faith effort to meet the equally low prices of Minute Maid (a division of The Coca-Cola Company), Citrus Hill (a Proctor & Gamble Company), and other private label brands including Hygrade's 100% Pure Orange Juice. In support of this assertion, executives of several retail chains have testified that Tropicana's competitors provided them with discounts and that they requested discounts from Tropicana. See Olivito Dep. at 92-95 (Minute Maid provided a volume discount program similar to Tropicana's); Deposition of Ira Savoy ("Savoy Dep."), former Vice-President of Merchandising for Waldbaum, dated September 14, 1993, at 116 (Savoy requested promotional allowances from Tropicana); Deposition of Jeffrey Berger ("Berger Dep."), Chief Operating Officer for Food City Markets, Inc., dated June 14, 1995, at 26-27, 60-61, 69-70 (slotting allowances were received from Tropicana, Minute Maid, and other orange juice producers). Furthermore, Terry Schulke of Tropicana claims that his staff attempted to obtain documentation verifying a retailer's claim regarding a Tropicana competitor's promotional allowances. FN15 See Schulke Aff. ¶ 15. Tropicana claims that its allowances are based on the competitive circumstances in the market. *Id.* ¶¶ 15-16. Finally, Schulke believes that Tropicana will lose sales if it does not maintain its promotional allowances. *Id.* ¶ 17.

FN15. Tropicana has submitted documentation of a Minute Maid consumer coupon promotion and various advertisements of Minute Maid orange juice. See Ex. 1 to Schulke Aff. There is also an ambiguous document concerning "off-invoice" and "ad allowance" programs by Minute Maid. *Id.* Finally, there is a Tropicana inter-office correspondence, dated May 31, 1989, stating that Minute Maid is paying A & P $12,500 per orange juice ad.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK   Document 93-12   Filed 09/19/2005   Page 6 of 8

Not Reported in F.Supp.   Page 14
Not Reported in F.Supp., 1996 WL 257581 (S.D.N.Y.), 1996-1 Trade Cases P 71,438
(Cite as: Not Reported in F.Supp.)

This evidence is insufficient to satisfy Tropicana's burden for a number of reasons. First, it is unclear which manufacturer first instituted a promotional allowance program. *See* Olivito Dep. at 94-95. Tropicana's promotional program has been in effect for many years with little, if any, changes. As of 1988, Tropicana had no information on Minute Maid's promotional programs and no verification of Citrus Hill's promotional programs. *See* Ex. 1 to Schulke Aff. Tropicana has failed to establish that it reacted in response to a competitor's price, *see* Garofalo Dep. at 157-59, and therefore is not entitled to judgment based on the meeting competition defense. *See Checker Motors Corp. v. Chrysler Corp.,* 283 F.Supp. 876, 889 (S.D.N.Y.1968), aff'd, 405 F.2d 319 (2d Cir.), cert. denied, 394 U.S. 999 (1969).

*16 Second, there is no competent evidence that executives of retail chains told Tropicana the terms and conditions of their competitors' promotional programs. At best, Tropicana's information consisted of generalized assertions from retailers with an interest in convincing Tropicana that its allowances were too low. The cases cited by Tropicana (where summary judgment was granted) involved circumstances where the seller had particular information about a competitor's prices. The information allegedly known by Tropicana is not sufficient to establish, as a matter of law, either its good faith or the reasonableness of its promotional programs. *Cf. Corn Prods. Ref. Co. v. FTC,* 324 U.S. 726, 740-41 (1945) (evidence from witnesses who had no personal knowledge of competitor's transactions and who concluded that price discrimination was necessary was insufficient to establish meeting-competition defense).

Finally, summary judgment under the meeting-competition defense "is rarely, if ever, reachable." *Alan's of Atlanta,* 903 F.2d at 1425. As Tropicana bears the burden of proof on this defense at trial, it "must remove genuine doubt from the issue altogether" to be entitled to summary judgment. *Id.* As the defense requires determinations of reasonableness, good faith, and the beliefs of Tropicana executives, it inherently involves credibility issues which are best decided by a jury. *See id.* This case is no different. Whether the evidence supports the inference that the requirements of the meeting competition defense have been met is a "question for the trier of fact, not this Court." *Falls City,* 460 U.S. at 451. Tropicana's motion for summary judgment on the meeting-competition defense of § 2(b) is denied.

VI. *Damages*

In order to recover damages under § 4 of the Clayton Act Plaintiffs must establish that they suffered actual antitrust injury as a result of Tropicana's violation of the Act. *See J. Truett Payne,* 451 U.S. at 562; *see also World of Sleep,* 756 F.2d at 1479-80 (requirement of actual antitrust injury applies whether there was a violation of §§ 2(a), (d), or (e)). Plaintiffs, as wholesalers, have standing to recover damages that they suffered as a result of discrimination between their customers and direct buying chains. FN16 *See Lago & Sons Dairy, Inc. v. H.P. Hood, Inc.,* 892 F.Supp. 325, 338-44 (D.N.H.1995); *Morris Electronics of Syracuse, Inc. v. Mattel, Inc.,* 595 F.Supp. 56, 57 (N.D.N.Y.1984). Tropicana contends that Plaintiffs have insufficient evidence to support an award of damages.

> FN16. Tropicana did not challenge Plaintiffs' claim of standing in its brief in support of its motion for summary judgment.

Assuming that Plaintiffs establish a violation of the Act, they need not provide "the kind of concrete, detailed proof of injury which is available in [non-antitrust] contexts." *J. Truett Payne,* 451 U.S. at 565 (quoting *Bigelow v. RKO Radio Pictures,* 327 U.S. 251, 264 (1946)). This is because the "vagaries of the marketplace" create a "difficulty of ascertaining business damages." *J. Truett Payne,* 451 U.S. at 566. Moreover, this rule is justified because "it does not come with very good grace for the wrongdoer to insist upon specific and certain proof of the injury which it has itself inflicted." *Id.* at 566-67. The question is whether the damages are based on a "just and reasonable inference" drawn from the evidence. *Id.* at 566.

*17 Under this relaxed standard of proof, damages have been awarded where there was limited evidentiary support. Damages have been awarded on the basis of a plaintiff's estimate of sales it could have made absent the violation. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100 (1969). Damages have also been awarded based on a comparison of a plaintiff's actual profits with the contemporaneous profits of a competitor who was not the victim of discrimination. *See Bigelow,* 327 U.S. 251.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK   Document 93-12   Filed 09/19/2005   Page 7 of 8

Not Reported in F.Supp.                                                                                      Page 15
Not Reported in F.Supp., 1996 WL 257581 (S.D.N.Y.), 1996-1 Trade Cases P 71,438
(Cite as: Not Reported in F.Supp.)

In *J. Truett Payne*, 451 U.S. at 563-63, the plaintiff's evidence of damages consisted of his testimony and the testimony of an expert witness. The plaintiff claimed that he suffered a temporary four percent (4%) loss in sales because of defendant's discriminatory incentive programs. *Id.* The expert testified that the discrimination would artificially inflate retail prices and that the plaintiff was harmed because the favored retailers made more money per car. *Id.* at 564. While the Court characterized this evidence as "weak," it was insufficient to foreclose recovery before a determination of liability was made. *Id.* at 568. It is important to note, however, that this relaxed standard of proof applies to the amount of damages, not to whether the violation caused damage. *See, e.g., MCI Communications Corp. v. American Telephone & Telegraph Co.*, 708 F.2d 1081, 1161 (7th Cir.1982), *cert. denied*, 464 U.S. 891 (1983) (once causation has been proved "in a reasonable manner," damages may be determined by a just and reasonable estimate).

A. *Plaintiffs' Evidence*

1. *Plaintiff Hygrade*

Hygrade claims that its sales of Tropicana product declined approximately 68 percent from 1984 to 1992. *See* Meyer, Jr. Decl. ¶ 54; Ex. Q to Nov. Person Decl. Some of Hygrade's former bodega customers state that they lost sales to supermarkets and that they left Hygrade because its prices were not competitive. *See* Bodega Declarations ¶¶ 2-3. Hygrade also contends that it lost its Red Apple account because of Tropicana's discriminatory practices. Red Apple was a chain account which enabled Hygrade to serve several stores. Robert Price of Red Apple testified that Red Apple only left Hygrade because Royal's prices were significantly cheaper. *See* Price Dep. at 10-12. This evidence of injury is sufficient to support an award of damages under the standards set forth in *J. Truett Payne*.

Tropicana argues that any sales lost by Hygrade (and other Plaintiffs) were not caused by Tropicana's promotional programs. Tropicana cites many other factors which may have led to a decline in Tropicana sales. *See* Def. 3(g) ¶ 125. Hygrade counters that while not every lost sale was due to Tropicana's promotional programs, most of them were. *See* Pls. Res. 3(g) ¶ 125; Meyer, Jr. Decl. ¶ 56. Plaintiffs must establish a causal connection between the injury and the violation of the Act. *See J. Truett Payne*, 451 U.S. at 562. The evidence presented creates a question of fact as to causation. There is considerable evidence that many aspects of Tropicana's promotional programs were denied to bodegas. Moreover, Hygrade's injury was substantial. A jury could find "as a matter of fact and with a fair degree of certainty" that Tropicana's discriminatory promotional programs were a material cause of Hygrade's injury. *Chrysler Credit Corp. v. J. Truett Payne Co.*, 670 F.2d 575, 581 (5th Cir.), *cert. denied*, 459 U.S. 908 (1982). A question of fact remains as to what extent the other factors contributed to Hygrade's lost sales. Hygrade is entitled to damages to the extent that Tropicana is responsible for its injury. *See Falls City*, 460 U.S. at 437. Finally, Hygrade's inability to ascertain which sales of Tropicana were lost because of price discrimination is not fatal to its claim for damages. Once injury has been established, uncertainty as to the extent of damage does not preclude recovery. *J. Truett Payne*, 451 U.S. at 567 n. 5. Where the evidence of injury is sufficient, a jury may properly approximate the amount of damages. *Id.* at 567.

*18 Approximately one-third of Hygrade's customers took loans from Hygrade. The loans require that the customer must purchase all milk and juice products "exclusively and solely" from Hygrade. FN17 Ex. 14 to Meyer, Jr. Dep. Tropicana argues that these loan agreements prevent Hygrade from claiming that it lost these accounts to any of the Preferred Buyers. This argument makes no sense. If Tropicana's illegal conduct caused the customers to breach these contracts, Tropicana remains liable. Thus, Hygrade may maintain its claim for damages.

FN17. Meadowbrook, Gold Medal, Babylon, and Queens Farms also made similar loans to their customers.

2. *Other Plaintiffs*

The remaining Plaintiffs assert that they have "substantial evidence of lost sales." Schwartz Decl. ¶ 53; Kotcher Decl. ¶ 53; Fromm Decl. ¶ 53. Plaintiffs state that the precise amount of each of their purchases of Tropicana product is contained in the data processing records which were produced by Tropicana. Schwartz Decl. ¶ 57; Kotcher Decl. ¶ 57; Fromm Decl. ¶ 57. Unlike Hygrade, the remaining Plaintiffs make no specific claim that their sales of Tropicana product declined over time. They do not name any significant accounts that they lost. They offer no direct evidence of lost profits. They

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. 
Not Reported in F.Supp., 1996 WL 257581 (S.D.N.Y.), 1996-1 Trade Cases P 71,438
**(Cite as: Not Reported in F.Supp.)**

Page 16

offer no expert testimony of lost sales. Other than Plaintiffs' generalized assertions, their evidence of injury consists of declarations from former bodega customers.

Former bodega customers claim that they stopped purchasing Tropicana product from Plaintiffs because Plaintiffs' competitors were offering lower prices. See Bodega Declarations ¶ 2; see also Schwartz Decl. ¶¶ 54, 56; Kotcher Decl. ¶¶ 54, 56; Fromm Decl. ¶¶ 54, 56. Plaintiffs must prove, however, that any losses they suffered were caused by Tropicana's alleged discrimination. *J. Truett Payne, 451 U.S. at 562*. As Plaintiffs do not allege jobbers to be Preferred Buyers, any customers lost to jobbers are not relevant to this lawsuit. Similarly, any customers Plaintiffs lost to other wholesalers, who are not Preferred Buyers, was not caused by Tropicana's alleged discrimination. Only one of Plaintiffs' former customers claims that it switched to White Rose because of lower prices. Such a limited loss of sales cannot possibly show that Plaintiffs suffered any actual injury. See *Allen Pen Co. v. Springfield Photo Mount Co., 653 F.2d 17, 21 (1st Cir.1981)* (price difference affecting 1 1/2% to 2% of sales is insufficient to warrant an inference of actual injury).

The bodega owners believe that they lost sales to supermarkets and that they therefore purchased less product from Plaintiffs. See Bodega Declarations ¶ 3. The bodegas also claim that they "sometimes" purchased Tropicana product from the supermarkets to sell to the public. *Id.* Thus, Plaintiffs contend that bodegas would have purchased more Tropicana product from them if Tropicana's promotional programs were not discriminatory. These claims by bodegas, however, are vague and speculative. Both of these claims assume that the bodegas would have participated in the promotional program if it were administered legally. In order to recover damages Plaintiffs must show that they actually suffered an injury, not merely that there is a reasonable likelihood of injury. See *J. Truett Payne, 451 U.S. at 562*. At best, the bodega owners' belief that their sales were affected suggests that Plaintiffs might have suffered an injury. Significantly, bodega owners offer no evidence that they themselves suffered any lost sales as a result of Tropicana's promotional programs.

*19 Assuming, *arguendo*, that Plaintiffs suffered some injury due to lost sales from bodegas, the Bodega Declarations suggest that it was insignificant. The bodegas have not indicated the quantity of sales that they lost to supermarkets. Furthermore, bodegas continued to purchase Tropicana product from a wholesaler at the same time that they purchased Tropicana product from the supermarkets. See Bodega Declarations ¶ 2. This suggests that the amount of orange juice bodegas purchased from supermarkets was insubstantial. Plaintiffs also failed to submit evidence as to the percentage of lost sales.

The Bodega Declarations, by themselves, do not establish that Plaintiffs suffered actual antitrust injury. See *Allen Pen, 653 F.2d at 21*. At best, they indicate a speculative and insignificant loss of sales. Accordingly, Tropicana's motion dismissing the claim for damages by Plaintiffs other than Hygrade is granted.

CONCLUSION

For the reasons discussed above: 1) Tropicana's motion for summary judgment on Plaintiffs' § 2(a) claim is granted as to Tropicana's off-invoice program and Plaintiffs' claim that competition was harmed between Plaintiffs and direct-buying chains, but is denied in all other respects; 2) Tropicana's motion for summary judgment on Plaintiffs' §§ 2(d) and (e) claims is granted as to Tropicana's off-invoice program but denied in all other respects; 3) Tropicana's motion for summary judgment on the meeting competition defense is denied; 4) Tropicana's motion dismissing Plaintiffs' claim for damages is denied with respect to Plaintiff Hygrade and granted with respect to the other Plaintiffs; and 5) Plaintiffs' motion for partial summary judgment on their § 2(a) claim is denied.

SO ORDERED:

S.D.N.Y.,1996.
Hygrade Milk & Cream Co., Inc. v. Tropicana Products, Inc.
Not Reported in F.Supp., 1996 WL 257581 (S.D.N.Y.), 1996-1 Trade Cases P 71,438

Briefs and Other Related Documents (Back to top)

• 1:88cv02861 (Docket) (Apr. 22, 1988)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.