Westlaw.

Not Reported in F.Supp.2d                                                                                               Page 1
Not Reported in F.Supp.2d, 2001 WL 1402996 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

H
Not Reported in F.Supp.2d, 2001 WL 1402996 (E.D.N.Y.)
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
    United States District Court, E.D. New York.
    Theodore KING and Gary La Barbera, Plaintiffs,
                             v.
    GALLUZZO EQUIPMENT & EXCAVATING,
              INC., et al., Defendants.
                  No. 00 CV 6247(ILG).

                     Nov. 8, 2001.

Jane Lauer Barker, Esq., Herrick, Feinstein LLP, New York.
Peter L. Zweibach, Esq., Cohen, Weiss & Simon LLP, New York.

                MEMORANDUM & ORDER

GLASSER, District J.
*1 Plaintiffs, on behalf of a number of employee benefit trust funds (the "Funds"), bring this action for breach of contract and violations of the Employee Retirement Income Security Act of 1974 ("ERISA") and the Labor Management Relations Act ("LMRA") as a result of defendants' alleged failure to make certain contributions due to the Funds. Defendants have moved for partial summary judgment, on the grounds of *res judicata* and insufficient service of process, as described below. For the reasons that follow, defendants' motion is denied.

                    BACKGROUND

The relevant facts, viewed in the light most favorable to plaintiffs, are as follows. Defendant Galluzzo Equipment and Excavating, Inc. ("Galluzzo Equipment") and Local 282, International Brotherhood of Teamsters (the "Union") are parties to a collective bargaining agreement covering the period from September 9, 1998, through June 30, 1999 (the "98-99 Agreement"). (*See* Compl. ¶ 15.) FN1 Pursuant to the 98-99 Agreement, Galluzzo Equipment was required to make contributions to the Funds, on a monthly basis, for each hour worked by certain of its Union employees in a given month. (*See id.* ¶ 16.) FN2 Galluzzo Equipment also was required, in accordance with the 98-99 Agreement, to submit a monthly report to the Funds (a "Remittance Report") detailing the number of hours worked by its covered employees during that month, and calculating, based on those hours, the monthly contributions due to the Funds. (*See id.* ¶ 35.)

  FN1. Although Galluzzo Equipment and the Union, by memorandum dated July 18, 1999, agreed to extend the term of the 98-99 Agreement until June 30, 2002 (*see* Maye Decl. Ex. E), plaintiffs allege that Galluzzo Equipment actually entered into a new collective bargaining agreement with the Union covering the period from July 1, 1999, through June 30, 2002 (the "99-02 Agreement") (*see* Compl. ¶ 15). However, the copy of the "new" collective bargaining agreement submitted by plaintiffs is unsigned (*see* Maye Decl. Ex. D), and Galluzzo Equipment denies having entered into any "new" agreement with the Union, other than the memorandum extending the 98-99 Agreement (*see* Reply Memorandum in Support of Defendants' Motion for Partial Summary Judgment ("Reply") at 7).

  FN2. The Funds were established to provide retirement, health, and other benefits to members of the Union. (*See* Compl. ¶¶ 4, 8.)

Apparently, Galluzzo Equipment failed to submit Remittance Reports, or make the required contributions, for the months of December 1999 and January, February and March 2000. Accordingly, on March 31, 2000, plaintiffs commenced an action in this Court (Sifton, J.) against Galluzzo Equipment to recover the unpaid contributions. (*See* Complaint, *King, et al. v. Galluzzo Equipment & Excavating, Inc.,* No. CV 00 1889 (E.D.N.Y., filed March 31, 2000) (the "Prior Action").) Galluzzo Equipment failed to answer the complaint or appear in that action; plaintiffs therefore moved for a default judgment on June 13, 2000. (*See* Schreiber Decl. ¶ 9; Barker Decl. Ex. C.) A default judgment was entered against Galluzzo Equipment on June 29, 2000. (*See id.* Ex. D.) FN3

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> FN3. Plaintiffs filed a notice of satisfaction of the judgment by Galluzzo Equipment on March 30, 2001. (*See* Barker Decl. Ex. E.)

On October 18, 2000, plaintiffs commenced this action against Galluzzo Equipment, as well as BTS Construction Corp. ("BTS") and Dominick Galluzzo ("Galluzzo"). The crux of the complaint is that Galluzzo Equipment and its controlling officer, Galluzzo, engaged in a scheme in which an alter-ego corporation (BTS) was used to employ and pay a number of employees covered by the 98-99 Agreement. (*See* Compl. ¶¶ 17, 32, 62-63.) FN4 The complaint further alleges that, as a result of this scheme, the Remittance Reports submitted to the Funds for each month from September 1998 through July 2000 misrepresented the number of hours worked by employees covered by the 98-99 Agreement. According to plaintiffs, as a result of the misrepresentations, the contributions to the Funds for these months were substantially lower than what was actually owed. (*See id.* ¶¶ 38-63.) Plaintiffs, on behalf of the Funds, assert causes of action against Galluzzo Equipment for breach of contract and violations of ERISA and the LMRA (*see id.* ¶¶ 87-114), and also seek to hold BTS and Galluzzo-who allegedly signed-off on each monthly Remittance Report-liable for the alleged underpayments (*see id.* ¶ 114).

> FN4. Plaintiffs allegedly first became aware of Galluzzo Equipment's scheme shortly after Douglas Galluzzo, defendant Dominick Galluzzo's cousin, was fired by Galluzzo Equipment. (*See* Opp. at 8-9; *see also* Douglas Galluzzo Decl. ¶ 7.) Not long after being fired, Douglas Galluzzo met with representatives from the Union in order to discuss the possibility of getting his job back. As the Union prepared for an arbitration on Douglas Galluzzo's behalf, it apparently became aware of BTS's existence and Galluzzo Equipment's use of BTS to pay Galluzzo Equipment employees. (*See id.*)

*2 Defendants have now moved for partial summary judgment. In their motion, defendants argue that the claims asserted in the complaint-to the extent those claims seek to recover contributions due for periods prior to June 1, 2000-are barred by *res judicata,* due to the default judgment in the Prior Action. (*See* Memorandum of Law in Support of Defendants' Motion for Partial Summary Judgment ("Mem.") at 8-16.) Defendants further argue that all claims against Galluzzo and BTS must be dismissed because those defendants were not properly served with the summons and complaint in this action. (*See id.* at 5-8.) Finally, defendants argue that, due to a provision in the 98-99 Agreement that purportedly shields BTS from liability, all claims against BTS should be dismissed. (*See id.* at 16-18.) Defendants ask the Court to award attorneys' fees and costs, in accordance with Section 502(g)(1) of ERISA. (*See id.* at 18-20.)

DISCUSSION

I. *Standard for Summary Judgment*

Summary judgment "shall be rendered forthwith if the pleadings, depositions ... together with the affidavits ... show that there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A "moving party is entitled to judgment as a matter of law [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1985) (internal quotation marks and citations omitted). In deciding a summary judgment motion, a court should not resolve disputed issues of fact; rather, the court should decide only whether there is any genuine issue to be tried. *Eastman Mach. Co. v. United States,* 841 F.2d 469, 473 (2d Cir.1988). A disputed fact is material only if it might affect the outcome of the suit under the governing law. A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a reasonable jury could return a verdict in her favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "In assessing the record to determine whether there is a genuine issue of fact, the court is required to draw all inferences in favor of the party against whom summary judgment is sought." *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989).

II. *Service of Process*

Defendants argue that neither Galluzzo nor BTS was properly served with process. (*See* Mem. at 5-8.) Because no discovery has yet taken place in this lawsuit, plaintiffs must only make a *prima facie* showing that service was properly effected in order to defeat defendants' motion. *Cf. Jazini v. Nissan*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK    Document 93-13    Filed 09/19/2005    Page 3 of 10

Not Reported in F.Supp.2d                                                                                                  Page 3
Not Reported in F.Supp.2d, 2001 WL 1402996 (E.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

_Motors Co.,_ 148 F.3d 181, 184 (2d Cir.1998) (to defeat pre-discovery motion to dismiss for lack of personal jurisdiction, plaintiff merely had to make _prima facie_ showing of jurisdiction) (citations omitted). As set forth below, defendants' motion should be denied.

A. *The facts concerning service*

*3 Before attempting to effectuate personal service on each defendant, plaintiffs apparently attempted to get defendants to sign waivers of service, by mailing copies of the complaint and Requests for Waiver of Service by certified mail, return receipt requested, to Galluzzo and BTS. (*See* Maye Decl. Ex. F; Opp. at 10.) FN5 Although the package addressed to Galluzzo appears to have been accepted, no Waiver of Service ever was received by plaintiffs from Galluzzo. The package addressed to BTS was returned unclaimed. (*See id.*) Accordingly, plaintiffs employed Aetna Central Judicial Service ("Aetna") to attempt personal service. (*See* Opp. at 10.)

> FN5. These documents were mailed to 145 Nedellac Road, Saddle Brook, New Jersey, which is (i) the address listed with the New Jersey Division of Revenue as BTS's principal business address (*see* Reply Declaration of Jane Lauer Barker Ex. A), and (ii) Galluzzo's home address (*see* Opp. at 3-4).

According to plaintiffs, on February 1, 2001, at approximately 7:00 a.m., Francisco Villa, a process server employed by Aetna, went to a location at 135th Street and Locust Avenue in the Bronx, carrying a copy of the summons and complaint for each defendant. (*See* Villa Decl. ¶ 2.) Villa "had been informed" that this was a location of Galluzzo Equipment and BTS, and that Galluzzo had a place of business there. (*See id.*) FN6 When Villa arrived, only one person was present, an individual named Ernesto Martinez. (*See id.* ¶¶ 3-5.) FN7 Villa asked Martinez, in Spanish, whether "this was Dominick Galluzzo's place," and Martinez replied that it was. (*Id.* ¶ 4.) Martinez also told Villa that Galluzzo was "in and out," and was not there at that time. (*Id.*) Villa then left all three copies of the summons and complaint-one set for each defendant-with Martinez, and explained that the documents were "for Dominick Galluzzo for a court case." (*Id.* ¶ 5.) FN8 Villa then (i) mailed a copy of the summons and complaint to Galluzzo at the Bronx yard, and (ii) filled out and filed Affidavits of Service for each of the defendants. (*See id.* ¶ 6 & Exs. A-C.)

> FN6. Defendants aver that this location is a "fenced-in yard in Bronx, New York, where Galluzzo Equipment stores its equipment. There is no office at that location and there is no signage on the yard. BTS has no equipment stored at that location and does no business there." (Dominick Galluzzo Decl. ¶ 5.)
>
> FN7. Martinez allegedly is a "manual laborer" employed by Galluzzo Equipment. (*See* Dominick Galluzzo Decl. ¶ 6.)
>
> FN8. Defendants assert that the copies of the summons and complaint actually were delivered to a "yard man" at the 135th Street and Locust Avenue location named Felix Diaz. (*See* Diaz Decl. ¶¶ 2-3.)

B. *Service on Galluzzo*

Service of process upon individuals in federal actions is governed by Rule 4(e) of the Federal Rules of Civil Procedure. Rule 4(e)(1) provides that an individual may be served pursuant to the law of the forum state. In New York, service of process upon a natural person is governed by Section 308 of the New York Civil Practice Law and Rules ("C.P.L.R."), which provides, in pertinent part:

> Personal service upon a natural person shall be made ... by delivering the summons within the state to a person of suitable age and discretion at the actual place of business ... of the person to be served and by ... mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend 'personal and confidential' and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such delivery and mailing to be effected within twenty days of each other ....

N.Y. C.P.L.R. § 308(2) (McKinney's 2000). Section 308(2) also requires that proof of service be filed within twenty days of delivery or mailing, whichever is later.

*4 Defendants assert that service on Galluzzo did not comport with Section 308(2), for four reasons. First, defendants argue that the storage yard at 135th Street and Locust Avenue was not Galluzzo's "actual place

of business" under Section 308. (*See* Mem. at 8; Reply at 18-19.) Second, defendants argue that the manual laborer to whom the summons and complaint were delivered was not a person of "suitable age and discretion." (*See* Reply at 18.) Third, defendants argue that the process server did not properly mail a copy of the summons and complaint to Galluzzo's actual place of business. (*See id.* at 19.) Fourth, defendants argue that the process server did not file proof of service with the Court. (*See id.*) None of these contentions has merit.

1. *"Actual place of business"*

C.P.L.R. Section 308(6) provides that, "[f]or purposes of [C.P.L.R. Section 308], 'actual place of business' shall include any location that the defendant, through regular solicitation or advertisement, has held out as its place of business." The New York courts, however, have recognized that "actual place of business" includes (1) a place where the defendant regularly transacts business, or (2) a business location owned or operated by the defendant, giving rise to a clear identification of the work performed by her with that place of business. *See Katz v. Emmett,* 226 A.D.2d 588, 589, 641 N.Y.S.2d 131, 133 (2d Dep't 1996); *Columbus Realty Investment Corp. v. Weng-Heng Tsiang,* 226 A.D.2d 259, 641 N.Y.S.2d 265, 266 (1st Dep't 1996); *see also Lorensen v. Digman,* No. 97-CV-0097, 1998 WL 37593, at *2 (N.D.N.Y. Jan.27, 1998) (internal quotation marks and citations omitted).

Here, the declarations of Douglas Galluzzo and John Toomey indicate that Galluzzo: (i) was at the yard at 135th Street and Locust Avenue on a daily basis; (ii) directed drivers to various job sites from that location; and (iii) distributed paychecks from that location. (*See* Douglas Galluzzo Decl. ¶¶ 4-5; Toomey Decl. ¶¶ 4-5.) Thus, it appears that Galluzzo regularly transacted business from the Bronx location. Accordingly, the location was Galluzzo's "actual place of business" for purposes of C.P.L.R. Section 308(2). FN9 *See Varela v. Flintlock Constr., Inc.,* 148 F.Supp.2d 297, 301 (S.D.N.Y.2001) ("For a location to be a person's 'actual place of business' for service pursuant to CPLR § 308(2), that person must be shown to regularly transact business at that location.") (internal quotation marks and citation omitted).

> FN9. The fact that Galluzzo may have worked frequently, or even primarily, from a different location does not affect this conclusion. *Weng-Heng Tsiang,* 226 A.D.2d at 259, 641 N.Y.S.2d at 266.

2. *Delivery to a Person of Suitable Age and Discretion*

Personal service by way of delivery to a suitable person at a defendant's actual place of business is permitted under C.P.L.R. Section 308(2) because it is presumed that the business relationship between the deliveree and the defendant will induce the prompt re-delivery of the summons to the defendant. *Glasser v. Keller,* 149 Misc.2d 875, 877, 567 N.Y.S.2d 981, 982 (Sup.Ct., Queens County 1991). For service to be effective under Section 308(2), "[t]he person to whom delivery is made must objectively be of sufficient maturity, understanding and responsibility under the circumstances so as to be reasonably likely to convey the summons to the defendant. Thus, delivery to adult relatives, employees, co-workers and apartment-house doormen as persons of suitable age and discretion, has been sustained." *Roldan v. Thorpe,* 117 A.D.2d 790, 791, 499 N.Y.S.2d 114, 116 (2d Dep't 1986) (citation omitted). In addition, "a person will be considered to be of suitable age and discretion where the nature of his/her relationship with the person to be served makes it more likely than not that [he or she] will deliver process to the named party." *50 Court St. Assocs. v. Mendelson & Mendelson,* 151 Misc.2d 87, 91, 572 N.Y.S.2d 997, 999 (Sup.Ct., Kings County 1991).

*5 Despite the fact that defendants argue that Martinez was a mere "manual laborer" at the storage yard in the Bronx, defendants have submitted no evidence indicating that Martinez was not of "sufficient maturity, understanding and responsibility" such that he could not be expected to convey the summons to Galluzzo. In fact, it is clear that Galluzzo was informed that a package had been left for him at the storage yard, and that he received the package shortly thereafter. (*See* Dominick Galluzzo Decl. ¶ 5.) In light of these facts, delivery of the summons and complaint to Martinez was sufficient. FN10

> FN10. Even accepting defendants' allegation that the summons and complaint actually were delivered to Felix Diaz, the Court would reach the same conclusion. *See Dean v. Sarner,* 201 A.D.2d 770, 771, 607 N.Y.S.2d 485 (3d Dep't 1994) (motion to dismiss for insufficient service of process

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1402996 (E.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 5

properly denied despite fact that process server, in proof of service, misidentified person to whom summons and complaint were delivered; defendant "notably does not deny receiving the summons ..., nor does she contend that [the person served] was not a person of suitable age or discretion").

### 3. *Mailing of Summons and Complaint*

Defendants next argue that service was improper because the process server could not have properly mailed a copy of the summons and complaint to Galluzzo at the storage yard in the Bronx. (*See* Reply at 19.) Defendants assert that, because there is no office at the storage yard and no street number for that location, "it is unclear whether an address was listed on the envelope or how the process server expected the envelope to be delivered by the postal service." (*Id.*)

Nothing in C.P.L.R. Section 308(2), however, requires that a mailed copy of a summons and complaint be guaranteed to reach the location to which it is mailed. *See Donohue v. La Pierre*, 99 A.D.2d 570, 471 N.Y.S.2d 396, 397 (3d Dep't 1984) ("[W]e do not believe that the mailing requirement of [C.P.L.R. § 308(2) ] is only satisfied by using the exact mailing address pursuant to the regulations and organization of the United States Postal Service."). Furthermore, Galluzzo has proffered no evidence indicating that the address to which the summons and complaint were mailed was deemed insufficient by the postal service, nor any evidence indicating that he did not receive the mailed copies, facts deemed important by courts considering this issue. FN11 *See, e.g., Karlsson & Ng v. Cirincione*, 186 Misc.2d 359, 360-61, 718 N.Y.S.2d 783, 784-85 (Civ.Ct., New York County 2000). Finally, it appears that a copy of the complaint was mailed, along with the Request for Waiver of Service, to Galluzzo's home address. (*See* Maye Decl. Ex. F; Opp. at 10.) Given these facts, the requirements of Section 308(2) have been satisfied.

FN11. Galluzzo avers that, besides the copy delivered to Martinez, "[n]o other *service* was made upon me." (Dominick Galluzzo Decl. ¶ 5 (emphasis added).) This is insufficient, however, to establish that Galluzzo did not *receive* the summons and complaint in the mail. *See Elec. Ins. Co. v. Grajower*, 256 A.D.2d 833, 835, 681 N.Y.S.2d 667, 669 (3d Dep't 1998) (describing an affidavit using similar language as "a carefully worded affidavit in which [the defendant] did not deny receiving the summons and complaint").

### 4. *Filing Proof of Service*

Defendants' final contention is that service on Galluzzo was ineffective because the process server never filed proof of service with the Court. (*See* Reply at 19; *see also* Reply Declaration of Jane Lauer Barker ¶ 4.) This contention is specious. A review of the docket sheet in this case indicates that proof of service on each defendant was filed with the Court on June 5, 2001, and entered on the docket on June 7, 2001. FN12

FN12. C.P.L.R. Section 308(2) requires proof of service to be filed within twenty days of the delivery or mailing, whichever is later. Here, both the delivery and the mailing of the summons and complaint occurred on February 1, 2001, yet proof of service was not filed until four months later. But plaintiffs' delay is not fatal; a delay in filing proof of service is correctable, and will not invalidate otherwise effective service. *See, e.g., King v. Best Western Country Inn*, 138 F.R.D. 39, 43 (S.D.N.Y.1991) ; *Flannery v. General Motors Corp.*, 214 A.D.2d 497, 503-05, 625 N.Y.S.2d 556, 561-62 (1st Dep't 1995) (Rubin, J., concurring); *Matter of Foley*, 140 A.D.2d 892, 893, 528 N.Y.S.2d 709, 711 (3d Dep't 1988). *But see Howard v. Klynveld Peat Marwick Goerdeler*, 977 F.Supp. 654, 660 (S.D.N.Y.1997).

In light of the foregoing, plaintiff has established a *prima facie* case that service on Galluzzo was proper. Accordingly, defendants' motion for summary judgment on this basis must be denied.

### C. *Service on BTS*

*6 Service upon corporations is governed by Rule 4(h)(1) of the Federal Rules of Civil Procedure, which provides that service shall be effected pursuant to the law of the forum state. FN13 C.P.L.R. Section 311 provides, in pertinent part, that personal service upon a domestic or foreign corporation shall be made by delivering the summons "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by

appointment or by law to receive service." N.Y. C.P.L.R. § 311(a)(1) (McKinney's 2000). Here, service was effected on BTS by delivering the summons and complaint to Martinez, as described above. Defendants argue that service in this fashion was improper because Martinez is not one of the types of persons described in Section 311(a)(1). (See Reply at 20.)

> FN13. Rule 4(h)(1) also permits service to be effected by delivering a copy of the summons and complaint "to an officer, a managing agent or general agent, or to any other agent authorized by appointment or by law to receive service of process ...."

At oral argument, however, defendants essentially conceded that BTS is the alter-ego of Galluzzo Equipment. FN14 In New York, the law is clear that service on the alter ego of a corporation constitutes effective service on the corporation. See, e.g., Taca Int'l Airlines, S.A. v. Rolls-Royce of England, Ltd., 15 N.Y.2d 97, 99-102, 256 N.Y.S.2d 129, 129-32, 204 N.E.2d 329 (1965); Brandt v. Volkswagen A.G., 161 A.D.2d 1149, 1150, 555 N.Y.S.2d 957, 957-58 (4th Dep't 1990) (recognizing principle, but determining it did not apply); Comprehensive Sports Planning, Inc. v. Pleasant Valley Country Club, 73 Misc.2d 477, 478-79, 341 N.Y.S.2d 914, 916-17 (Civ.Ct., New York County 1973); Geffen Motors Inc. v. Chrysler Corp., 54 Misc.2d 403, 404, 283 N.Y.S.2d 79, 81 (Sup.Ct., Oneida County 1967) (service on managing agent of subsidiary constituted effective service on parent where two companies were "really the same entit[y] in different guises"); cf. Van Wert v. Black & Decker, Inc., 246 A.D.2d 773, 775, 667 N.Y.S.2d 770, 771-72 (3d Dep't 1998) ("service of process upon a subsidiary corporation can effectuate service on its parent under appropriate circumstances"). Since defendants have conceded that Galluzzo Equipment and BTS are alter-egos, then BTS has been properly served, because Galluzzo Equipment has been properly served.

> FN14. Although defense counsel later backtracked from this position and asserted that she was not conceding that BTS is Galluzzo Equipment's alter-ego, defendants predicate a number of their arguments on BTS's status as Galluzzo Equipment's alter-ego. (See Mem. at 15-16.)

III. Res Judicata

Defendants also move for partial summary judgment on the ground that a portion of plaintiffs's claims are barred under the doctrine of res judicata. (See Mem. at 8-16.) According to defendants, Galluzzo Equipment is not liable for underpayments to the Trust Funds for periods prior to June 1, 2000, since (i) Galluzzo Equipment was a party to the Prior Action, and (ii) the claims asserted in this action (to the extent they seek to recover for underpayments prior to June 1, 2000) could have been (or were) raised in the Prior Action. (See id. at 10-13, 667 N.Y.S.2d 770.) Defendants further argue that Galluzzo and BTS are in privity with Galluzzo Equipment, and therefore res judicata bars recovery against those defendants, as well. (See id. at 14-16, 667 N.Y.S.2d 770.)

A. The res judicata doctrine

*7 "The doctrine of res judicata, or claim preclusion, holds that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.' " Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 284-85 (2d Cir.2000) (quoting Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)); accord L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc., 198 F.3d 85, 87-88 (2d Cir.1999). The purpose of the res judicata doctrine is to require a party "to bring in one litigation all its claims arising from a particular transaction." Brown v. Felsen, 442 U.S. 127, 132, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

The burden is on the party asserting res judicata to prove that it bars the claims asserted in a given action. Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 369 (2d Cir.1997). To do so, the party must demonstrate that (1) the prior action concluded with a final adjudication on the merits, (2) the prior claim(s) and the current claim(s) involve the same parties, or those in privity with them, and (3) the claim(s) asserted in the present action were or could have been asserted in the prior action. Monahan, 214 F.3d at 285. A claim "could have been" asserted in a prior action if it "arises from the same transaction or occurrence" that gave rise to the first action, even if the newly asserted claim is based on a different legal theory than the prior claim. See L-Tec Elecs., 198 F.3d at 88; Saud v. Bank of N.Y., 929 F.2d 916, 919 (2d Cir.1991) ("it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies") (citation omitted); In re Teltronics

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Servs., Inc., 762 F.2d 185, 193 (2d Cir.1985) ("[n]ew legal theories do not amount to a new cause of action so as to defeat the application of the principle of *res judicata* "). For this reason, *res judicata* applies even when a newly asserted claim is based on newly discovered evidence, unless "the evidence was either fraudulently concealed or ... could not have been discovered with due diligence." L-Tec Elecs., 198 F.3d at 88 (quoting Saud, 929 F.2d at 920).

B. *The claims against Galluzzo Equipment*

1. Do the claims raised in this action arise out of *the same transaction or occurrence as the prior claims?*

With respect to Galluzzo Equipment, the first two prongs of the *Monahan* test easily are satisfied: the Prior Action ended in a final adjudication on the merits, FN15 and plaintiffs and Galluzzo Equipment were parties to the Prior Action (*see* Barker Decl. Ex. B.). The only remaining question, then, is whether the claims asserted against Galluzzo Equipment in this action were or could have been asserted in the Prior Action.

> FN15. *See, e.g., Morris v. Jones,* 329 U.S. 545, 550-51, 67 S.Ct. 451, 91 L.Ed. 488 (1947) ("A judgment of a court having jurisdiction of the parties and of the subject matter operates as *res judicata*, in the absence of fraud or collusion, *even if obtained upon a default.*") (emphasis added) (citation omitted).

Plaintiffs contend that the claims raised in this action differ from those raised in the prior action, because the claims asserted herein concern defendants' scheme to misrepresent the amount of the monthly contributions due to the Funds, while the prior claims only concerned delinquent contributions to the Funds. (*See id.*) In other words, plaintiffs attempt to distinguish the *accuracy* of the contributions from the *delinquency* in making those contributions.

*8 In support of their argument, plaintiffs cite I.A.M. National Pension Fund, Benefit Plan A v. Industrial Gear Manufacturing Co., 723 F.2d 944 (D.C.Cir.1983). In *Industrial Gear,* the plaintiff pension fund conducted an audit of the defendant, and discovered that the defendant had failed to submit monthly reports and make certain contributions due to the fund for the period from January 1973 to January 1977. 723 F.2d at 945. Consequently, the fund sued to compel the production of the reports and to recover the delinquent contributions. The lawsuit was settled in January 1978 by a consent decree, pursuant to which the defendant agreed to pay the amount shown by the audit to be due to the fund. *Id.* at 946. The court retained jurisdiction until October 1978, during which time the defendant was enjoined from failing to make any required contributions to the fund. *Id.*

In November 1981, the pension funds conducted another audit of the defendant, and discovered that the defendant had made inaccurate contributions to the fund for the period from January 1977 to January 1981. The pension funds therefore filed another lawsuit to recover the amounts properly due. *Id.* In response, the defendant argued that *res judicata* barred the fund from recovering any amounts allegedly owed for the period between January 1977 and the last day that the court retained jurisdiction over the prior action, in October 1978. The district court rejected this argument.

The D.C. Circuit affirmed. The court reasoned that the fund's right to have contributions submitted promptly was distinct from the fund's right to have contributions made accurately. *Id.* at 948-49. Accordingly, the court found that, since the first action merely concerned delinquent contributions, the second action was not barred by *res judicata*, because that action concerned the accuracy of the contributions submitted to the fund. *Id.; see also Central States, Southeast & Southwest Areas Pension Fund v. Plymouth Concrete, Inc.,* 803 F.Supp. 169, 172-73 (N.D.Ill.1992) (following *Industrial Gear*, court held prior action for delinquent fund contributions did not bar second action for inaccurate contributions). Plaintiffs urge this Court to reach the same conclusion.

Plaintiffs' argument should be rejected. As the Tenth Circuit Court of Appeals recognized in *May v. Parker-Abbott Transfer & Storage, Inc.,* the *Industrial Gear* court did not apply the broad "transactional" approach to *res judicata* employed by the Second Circuit. 899 F.2d 1007, 1010 n. 1 (10th Cir.1990). Faced with claims similar to those raised by plaintiffs in *Industrial Gear,* the *May* court, applying the broader "transactional" standard, held that the claims were barred because "the rights sought to be enforced by appellant in his second lawsuit stem from the same transaction out of which the original action arose, and thus could have and should have been brought in the original action." *Id.*

Case 7:04-cv-08223-KMK    Document 93-13    Filed 09/19/2005    Page 8 of 10

Not Reported in F.Supp.2d                                                                                                          Page 8
Not Reported in F.Supp.2d, 2001 WL 1402996 (E.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

at 1010; see also *Int'l Union of Operating Engineers-Employers Const. Indus. Pension, Welfare and Training Trust Funds v. Karr,* 994 F.2d 1426, 1430 (9th Cir.1993) (claims barred under "transactional" approach to *res judicata;* trust fund's right to receive contributions is the right to receive *proper* contributions, which "inherently assumes that the employer's contributions will be both accurately computed and timely paid") (internal quotation marks and citations omitted).

*9 In two other cases with facts similar to those in *Industrial Gear,* Judges Mukasey and Chin of the Southern District of New York agreed with the holdings in *May* and *Karr,* and declined to follow *Industrial Gear.* In *Hanley v. Aperitivo Restaurant Corp.,* Judge Mukasey noted that the Second Circuit, like the Ninth and Tenth Circuits, employs a "transactional" approach to determine whether *res judicata* applies. No. 97 Civ. 5768, 1998 WL 307376, at *5 (S.D.N.Y. June 11, 1998) (citing *Interoceanica Corp. v. Sound Pilots, Inc.,* 107 F.3d 86, 90 (2d Cir.1997)). Judge Mukasey held that, under the "transactional" approach, the latter claims were barred, because this approach precluded a broader range of claims than the "primary rights" test used by the court in *Industrial Gear. Id.* Judge Mukasey went on to state that, in any event:

> [w]hat leads me to agree with *May* and *Karr* is a ... fundamental recognition that the Funds' right to receive prompt payments and their right to receive accurate payments both derive from the same transaction, namely, the contract with Aperitivo embodied in the collective bargaining agreements and trust indentures. The Funds have already sued on that contract once, ... and that action ended in a Settlement Memorandum and stipulated dismissal with prejudice. Insofar as the Funds now seek to recover additional contributions, their claims arise out of the same contract and are therefore subject to the doctrine of *res judicata.*

*Id.* Judge Chin reached a similar conclusion in *Hanley v. Café Des Artistes, Inc.,* No. 97 Civ. 9360, 1999 WL 688426, at *4-6 (S.D.N.Y. Sept.3, 1999).

This Court chooses to follow *May, Karr, Aperitivo,* and *Café Des Artistes,* and declines to follow *Industrial Gear.* Under the Second Circuit's broad "transactional" approach to *res judicata,* the claims asserted against Galluzzo Equipment in this action "derive from the same transaction, namely, the contract with [Galluzzo Equipment] embodied in the collective bargaining agreement[ ]" upon which plaintiffs sued in the Prior Action. *See Aperitivo,* 1998 WL 307376, at *5; *see also Karr,* 994 F.2d at 1431. Plaintiffs therefore cannot escape the conclusion that the claims raised in this action "arise out of the same factual predicate as the original claims," namely, the right to contributions due under the 98-99 Agreement. *See also Interoceanica Corp.,* 107 F.3d at 90 (subsequent claims barred by *res judicata* where those claims "involve[ ] the same ... 'nucleus of operative fact' " as the earlier claims) (citation omitted).

Plaintiffs' newly advanced allegation that Galluzzo Equipment paid employees through BTS, and thereby inaccurately reported to the Funds the number of hours worked by its employees, does not alter this conclusion. First, despite this new allegation, the claims raised in this action nevertheless concern the right to contributions due under the 98-99 Agreement, which was the factual predicate for the claims asserted in the Prior Action. Second, the facts supporting this new allegation "arose prior to the filing of the original complaint-it was only [plaintiffs'] awareness of these facts that came later." *L-Tec Elecs.,* 198 F.3d at 88; *see also* Restatement (Second) of Judgments § 25 cmt. c (1982) (*res judicata* bars plaintiff from bringing second action for increased damages, even if "he was not in possession of enough information about the damages" at the time of the first action). *Res judicata* is inapplicable in these circumstances, unless plaintiffs can demonstrate that their claims are based on newly discovered evidence which either was fraudulently concealed or could not have been discovered with due diligence. *L-Tec Elecs.,* 198 F.3d at 89.

*2. Does the "fraudulent concealment" exception apply?*

*10 Despite the fact that plaintiffs' claims arise from the same "transaction or occurrence" that gave rise to the Prior Action, *res judicata* is nevertheless inapplicable in this case. Plaintiffs argue that *res judicata* cannot bar their claims because those claims are based on newly discovered evidence which defendants fraudulently concealed: the use of BTS to pay Galluzzo Equipment employees, thereby creating inaccuracies in the Remittance Reports and the contributions paid to the Funds. (*See* Opp. at 13-18.) Plaintiffs' argument has merit.

Claims based on newly discovered evidence are not barred by *res judicata* when the newly discovered evidence was fraudulently concealed. *See, e.g., L-Tec Elecs.,* 198 F.3d at 88; *Saud,* 929 F.2d at 920. Here,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK   Document 93-13   Filed 09/19/2005   Page 9 of 10

Not Reported in F.Supp.2d                                                                                                                    Page 9
Not Reported in F.Supp.2d, 2001 WL 1402996 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

defendants argue that this "fraudulent concealment" exception does not apply, because plaintiffs did not "actively conceal[ ] the existence of BTS and the reporting errors." (Reply at 11.) Defendants spend more than five pages in their Reply brief attempting to persuade the Court that defendants took no affirmative steps to conceal the existence of BTS, that BTS's existence was out in the open, and that the "fraudulent concealment" exception therefore cannot apply. (*See* Reply at 9-15.)

Defendants' argument, however, misses the mark. Plaintiffs do not contend that the *existence* of BTS was concealed. Rather, plaintiffs argue that Galluzzo Equipment concealed its use of BTS to pay employees performing covered work, by submitting Remittance Reports which intentionally omitted work performed by BTS employees. At a minimum, the evidence in this case, viewed in the light most favorable to plaintiffs, creates a factual dispute as to whether plaintiffs are correct in that assertion, *i.e.*, whether Galluzzo Equipment intentionally omitted work performed by BTS employees in the Remittance Reports, in order to avoid its obligations under the 98-99 Agreement. (*See* Douglas Galluzzo Decl. ¶¶ 2-5, 7; Schreiber Decl. ¶¶ 9-10.)

In these circumstances, *res judicata* does not apply. "A defendant cannot justly object to being sued on a part or phase of a claim that the plaintiff failed to include in an earlier action because of the defendant's own fraud." Restatement (Second) of Judgments § 26 cmt. j (1982); *accord* 46 Am.Jur.2d Judgments § 601 (1994) ("where the omission of an item from a single cause of action is caused by the fraud or deception of the opposing party, the judgment in the first action does not bar a subsequent action for the omitted item"); *see also Harnett v. Billman,* 800 F.2d 1308, 1313 (4th Cir.1986) ("An exception ... to the application of *res judicata* rules is found in cases where fraud, concealment, or misrepresentation have caused the plaintiff to fail to include a claim in a former action."). Here, plaintiffs have, at a minimum, raised a factual dispute as to whether defendants intentionally omitted work performed by BTS employees in the Remittance Reports. FN16 That dispute is sufficient to invoke the fraudulent concealment exception.

> FN16. The fact that this "concealment" occurred via an omission by Galluzzo Equipment, rather than by some affirmative act to hide the use of BTS employees, is inconsequential. As more than one court has recognized, fraudulent concealment amounts to nothing more than "fraud by omission." *See, e.g., Congress Fin. Corp. v. John Morrell & Co.,* 790 F.Supp. 459, 469 (S.D.N.Y.1992).

*11 Furthermore, defendants' argument that plaintiffs did not exercise due diligence in discovering Galluzzo Equipment's use of BTS employees is specious. Defendants argue that plaintiffs should have taken steps to compute the amounts due and owing to the Trust Funds prior to commencing the Prior Action, including auditing Galluzzo Equipment, and that, had they done so, plaintiffs would have discovered the inaccuracies in the Remittance Reports. (*See* Reply at 12-15.) However, in light of Galluzzo Equipment's obligation under ERISA to accurately report the contributions owed to the Trust Funds, plaintiffs were entitled to rely on the accuracy of those reports; plaintiffs need not have conducted an audit of Galluzzo Equipment simply because the Remittance Reports and contributions were past due. *See Aperitivo,* 1998 WL 307376, at *6 (recognizing that employee trust funds need not "conduct an audit every time they sue an employer for delinquent contributions or else lose the right to file a later suit for accurate contributions"); *see also Café Des Artistes,* 1999 WL 688426, at *5. Accordingly, the fact that plaintiffs did not conduct an audit of Galluzzo Equipment and discover the inaccuracies in the Remittance Reports is of no consequence. In any event, plaintiffs aver that they attempted to audit Galluzzo Equipment, only to be rebuffed (*see* Compl. ¶¶ 79-80), and that, furthermore, an audit of Galluzzo Equipment likely would not have discovered the existence of the alleged fraud (*see* Opp. at 15; Jones Dec. ¶¶ 4-6; Schreiber Aff. ¶¶ 9-10).

For these reasons, the fraudulent concealment exception applies, and the claims against Galluzzo Equipment therefore are not barred by *res judicata*.

### C. *The claims against Galluzzo and BTS*

Defendants argue that *res judicata* applies to the claims asserted against BTS and Galluzzo, because those defendants are in privity with Galluzzo Equipment. (*See* Mem. at 14-16; Reply at 8-10.) The problem with this argument, however, is that the claims against Galluzzo Equipment are not barred by *res judicata;* therefore, the claims against those in privity with Galluzzo Equipment also are not barred by *res judicata*. Defendants also argue that any

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK   Document 93-13   Filed 09/19/2005   Page 10 of 10

Not Reported in F.Supp.2d                                                                                          Page 10
Not Reported in F.Supp.2d, 2001 WL 1402996 (E.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

liability BTS might have in this case is derivative of Galluzzo Equipment's liability, because BTS is not a signatory to the 98-99 Agreement. Therefore, defendants contend that if the claims against Galluzzo Equipment are barred, the claims against BTS are necessarily barred. (*See* Reply at 6.) This argument is flawed, for two reasons. First, the claims against Galluzzo Equipment are not barred, as stated above. Second, the claims against BTS are not derivative of the claims against Galluzzo Equipment. If plaintiffs are able to demonstrate that BTS is Galluzzo Equipment's alter-ego, then BTS will be bound by the terms of the 98-99 Agreement, notwithstanding the fact that it is not a signatory to that agreement. *See Lihli Fashions Corp. v. NLRB,* 80 F.3d 743, 748 (2d Cir.1996) ("If two companies are deemed alter egos of each other, then each is bound by the collective bargaining agreements signed by the other."); *Truck Drivers Local Union No. 807 v. Regional Import & Export Trucking Co.,* 944 F.2d 1037, 1046 (2d Cir.1991) ("The alter ego doctrine provides an analytical hook to bind a non-signatory to a collective bargaining agreement."). BTS also may be liable if it is found to be a "single employer" with Galluzzo Equipment. *See Lihli Fashions,* 80 F.3d at 747-48. Thus, BTS's liability is not merely derivative of Galluzzo Equipment's liability.

*12 The same is true for Galluzzo. "[T]o the extent that a controlling corporate official defrauds or conspires to defraud a benefit fund of required contributions, the official is individually liable under Section 502 of ERISA ...." *Leddy v. Standard Drywall, Inc.,* 875 F.2d 383, 388 (2d Cir.1989). This is exactly what plaintiffs allege has occurred in this case. Therefore, Galluzzo's potential liability in this case also is not derivative of Galluzzo Equipment's liability.

IV. *Defendant's argument concerning BTS's liability*

Defendants' final argument is that BTS cannot be liable for any contributions due under either the 98-99 Agreement or the 99-02 Agreement, because a provision in those agreements purportedly shields BTS from liability. (*See* Mem. at 16-18.) According to defendants, Section 34 of the agreements only restricts Galluzzo Equipment from entering into a "double breasted" operation FN17 within the geographic jurisdiction of the Union, which covers New York City and Nassau and Suffolk Counties. Defendants contend that even if plaintiffs are correct that BTS and Galluzzo Equipment are a double breasted operation, there has nevertheless been no violation of the 98-99 Agreement or the 99-02 Agreement, because no BTS employees work, or have worked, in New York City, Nassau County or Suffolk County. (*See id.* at 17-18.)

> FN17. A "double breasted" operation is "a separate corporation set up by a unionized employer to utilize non-union labor on certain construction jobs." (Mem. at 18 n. 8.)

The problem with this argument, however, is that there is a factual dispute as to whether BTS performed work in New York City. The declaration of Douglas Galluzzo suggests that BTS performed work in New York City (*see* Douglas Galluzzo Decl. ¶¶ 2-3), while Dominick Galluzzo avers that BTS has not performed work in New York City, Nassau County or Suffolk County (*see* Dominick Galluzzo Decl. ¶ 4). The Court cannot resolve this dispute on a motion for summary judgment. *See Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 622 (2d Cir.1999) ("The function of the district court in considering [a] motion for summary judgment is not to resolve disputed issues of fact but only to determine whether there is a genuine issue to be tried. Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").

CONCLUSION

For all the foregoing reasons, defendants' motion for partial summary judgment is denied. Defendants' motion for attorneys' fees and costs is likewise denied.

SO ORDERED.

E.D.N.Y.,2001.
King v. Galluzo Equipment & Excavating, Inc.
Not Reported in F.Supp.2d, 2001 WL 1402996 (E.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:00CV06247 (Docket) (Oct. 18, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.