Not Reported in F.Supp.2d                                                                                                          Page 1
Not Reported in F.Supp.2d, 2000 WL 1475559 (E.D.Pa.), 2000-2 Trade Cases P 73,081
**(Cite as: 2000 WL 1475559 (E.D.Pa.))**

United States District Court, E.D. Pennsylvania.
In re LINERBOARD ANTITRUST LITIGATION;
This Document Relates to all Actions
(CIV NO. 98-5055 & 99-1341).
**No. MDL 1261.**

Oct. 4, 2000.

*ORDER & MEMORANDUM*

DUBOIS.

*ORDER*

*1 AND NOW, to wit, this 4th day of October, 2000, upon consideration of the following three motions: (1) Stone Container Corporation's Motion to Dismiss the Corrugated Box Amended Complaint [FN1] and for Judgment on the Pleadings on Sheets Complaint I [FN2] (MDL Doc. 29, filed Sep. 1, 1999); (2) the Joint Motion of the Non-Stone Defendants to Dismiss the *Corrugated Box Amended Complaint* [FN3] and *Sheets Complaint II* [FN4] pursuant to Federal Rule of Civil Procedure 12 (MDL, Doc. 27, filed Sep. 1, 1999); and (3) Certain Defendants' Motion for Relief Under Rule 12 [FN5] (MDL Doc. 30, filed Sep. 1, 1999); as well as documents relating to these motions, including the parties' various submissions of recent authority; IT IS ORDERED, as follows:

> FN1. Four separate actions were filed against Stone Container Corp. in the Eastern District of Pennsylvania on behalf of purchasers of corrugated boxes, as follows: *Winoff Industries, Inc. v. Stone Container Corp.,* Civil Action No. 98-5055 (filed Sep. 23, 1998, E.D.Pa.), *Oak Valley Farms, Inc. v. Stone Container Corp.,* Civil Action No. 98-5251 (filed Oct. 2, 1998, E.D.Pa.), *Garrett Paper, Inc. v. Stone Container Corp.,* Civil Action No. 98-5228 (filed Oct. 1, 1998, E.D.Pa.), and *Local Baking Products, Inc. v. Stone Container Corp.,* Civil Action No. 98-5384 (filed Oct. 9, 1998, E.D.Pa.). On December 18, 1998 the four actions were consolidated by this Court by stipulation and order pursuant to Federal Rule of Civil Procedure 42(a). A First Amended and Consolidated Class Action Complaint ("Corrugated Box Amended Complaint") was filed on May 14, 1999. Stone Container Corp. and twelve other corporations were named as defendants in the Corrugated Box Amended Complaint. It is this complaint that Stone Container Corp. presently seeks to dismiss.

> FN2. The Corrugated Sheets Complaints have been grouped into two categories-- Sheets Complaint I and Sheets Complaint II. "Sheets Complaint I" refers collectively to three class action complaints, identical in all material respects, originally filed in 1998 in the Northern District of Illinois against Stone Container Corp. on behalf of purchasers of corrugated sheets: *General Refractories Co. v. Stone Container Corp.,* Civil Action No. 99-1341 (transferred on Mar. 16, 1999 to E.D.Pa.), and originally No. 98 C 3543 (filed June 8, 1998, N.D.Ill.); *Albert O Halper Corrugated Box Co. v. Stone Container Corp.,* Class Action No. 99-1396 (transferred on Mar. 19, 1999 to E.D.Pa.), and originally No. 98 C 4659 (filed July 28, 1998, N.D.Ill.); and *Crest Meat Co., Inc. v. Stone Container Corp.,* Civil Action No. 99-1397 (transferred on Mar. 19, 1998 to E.D.Pa.), and originally No. 98 C 4612 (filed July 27, 1998, N.D.Ill.). Stone Container Corp. filed a motion to dismiss the three complaints in the Northern District of Illinois and on January 8, 1999 Judge Blanche M. Manning denied that motion. Subsequently, on February 5, 1999, Stone Container Corp. filed a consolidated answer to the three complaints included in Sheets Complaint I. Presently before the Court is the motion of Stone Container Corp. for judgment on the pleadings with respect to Sheets Compliant I.

> FN3. The Non-Stone Defendants refer to this complaint as the "Winoff Complaint" because Winoff Industries, Inc. is the lead plaintiff named in the Corrugated Box Amended Complaint filed on behalf of purchasers of corrugated boxes.

> FN4. "Sheets Complaint II" refers to a separate class action complaint on behalf of purchasers of corrugated sheets filed on May

Case 7:04-cv-08223-KMK    Document 108-3    Filed 10/04/2005    Page 2 of 8

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1475559 (E.D.Pa.), 2000-2 Trade Cases P 73,081
(Cite as: 2000 WL 1475559 (E.D.Pa.))

Page 2

18, 1999 in the Eastern District of Pennsylvania against eleven "Non-Stone Defendants." These Non-Stone Defendants filed a motion to dismiss Sheets Complaint II which is presently before the Court. Stone Container Corp. joins in that motion on the theory that if the Non-Stone Defendants' motion is granted, it cannot be found liable for an antitrust conspiracy as a matter of law because all of the alleged co-conspirators will have been dismissed. The Non-Stone Defendants refer to Sheets Complaint II as the "General Refractories Complaint" because General Refractories, Inc. is the lead plaintiff named on behalf of the corrugated sheets plaintiffs.

FN5. This motion was filed under Federal Rile of Civil Procedure 12(e) by the Non-Stone Defendants. They seek a more definite statement with respect to the conspiracy alleged in the complaints against them--the Corrugated Box Amended Complaint and Sheets Complaint II.

1. Stone Container Corporation's Motion to Dismiss the Corrugated Box Amended Complaint and for Judgment on the Pleadings on Sheets Complaint I is DENIED;

2. The Joint Motion of the Non-Stone Defendants to Dismiss the *Corrugated Box Amended Complaint* and *Sheets Complaint II* pursuant to Federal Rule of Civil Procedure 12 is DENIED; and

3. Certain Defendants' Motion for Relief Under Rule 12 is DENIED.

IT IS FURTHER ORDERED that Stone Container Corporation shall file and serve its answer to the Corrugated Box Amended Complaint within twenty days. One copy of the answer shall be served on the Court (Chambers, Room 12613) when the original is filed;

IT IS FURTHER ORDERED that the Non-Stone Defendants shall file and serve their answers to the Corrugated Box Amended Complaint and Sheets Complaint II within twenty days. One copy of each answer shall be served on the Court (Chambers, Room 12613) when the originals are filed;

IT IS FURTHER ORDERED that a conference under Federal Rule of Civil Procedure 16 will be scheduled in due course.

*MEMORANDUM*

I. BACKGROUND

This is an antitrust case involving allegations that several major U.S. manufacturers of linerboard [FN6] engaged in a continuing combination and conspiracy in unreasonable restraint of trade and commerce in their product, in violation of Section 1 of the Sherman Act, 15 U.S.C.A. § 1 (West 1997).

FN6. Linerboard includes any grade of paperboard suitable for use in the production of corrugated sheets, which are in turn used in the manufacture of corrugated boxes and for a variety of industrial and commercial applications. Corrugated sheets are made by gluing a fluted sheet which is not made of linerboard, known as the corrugating medium, between facing sheets of linerboard. The defendants named in the instant lawsuits are the major integrated manufacturers and sellers of both linerboard and corrugated sheets.

On May 18, 1998 the Federal Trade Commission ("FTC") filed an administrative complaint against Stone Container Corporation ("Stone"). *See In re Stone Container Corp.,* (May 18, 1998) (attached as an exhibit to both plaintiffs' and defendants' submissions) ("FTC Compl."). The FTC charged Stone with a unilateral violation of Section 5 of the Federal Trade Commission Act. According to the FTC, Stone had attempted to reduce linerboard inventories and had allegedly "invite[d]" some of its competitors to join in a "coordinated price increase." *See* FTC Compl. at ¶ 3. The FTC did not allege that any other linerboard manufacturer had accepted Stone's "invitation," nor did it allege the existence of any conspiracy.

Stone and the FTC have entered into a consent decree. However, Stone did not admit liability for its alleged unilateral misconduct in so doing, and the consent decree has no preclusive effect on Stone in this private party action.

*2 Soon after the FTC filed its complaint, three lawsuits were filed in the Northern District of Illinois on behalf of purchasers of corrugated sheets ("Sheets Complaint I"): *General Refractories Co. v. Stone Container Corp.,* Civil Action No. 99-1341 (transferred on Mar. 16, 1999 to E.D.Pa.), and originally No. 98 C 3543 (filed June 8, 1998, N.D.Ill.); *Albert O Halper Corrugated Box Co. v.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK   Document 108-3   Filed 10/04/2005   Page 3 of 8

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1475559 (E.D.Pa.), 2000-2 Trade Cases P 73,081
(Cite as: 2000 WL 1475559 (E.D.Pa.))
Page 3

*Stone Container Corp.,* Class Action No. 99-1396 (transferred on Mar. 19, 1999 to E.D.Pa.), and originally No. 98 C 4659 (filed July 28, 1998, N.D.Ill.); and *Crest Meat Co., Inc. v. Stone Container Corp.,* Civil Action No. 99-1397 (transferred on Mar. 19, 1998 to E.D.Pa.), and originally No. 98 C 4612 (filed July 27, 1998, N.D.Ill.). These cases named only Stone as a defendant, but plaintiffs alleged that there were unnamed co-conspirators involved in the alleged antitrust conspiracy, including *inter alia,* Jefferson Smurfit Corp. *See id.* (all three complaints) at ¶ 9. The corrugated sheets plaintiffs in the cases included in Sheets Complaint I all claim they were harmed by an industry-wide combination to artificially raise the price of linerboard.

Four other lawsuits were filed against Stone in the Eastern District of Pennsylvania on behalf of purchasers of corrugated boxes at about the same time: *Winoff Industries, Inc. v. Stone Container Corp.,* Civil Action No. 98-5055 (filed Sep. 23, 1998, E.D.Pa.), *Oak Valley Farms, Inc. v. Stone Container Corp.,* Civil Action No. 98-5251 (filed Oct. 2, 1998, E.D.Pa.), *Garrett Paper, Inc. v. Stone Container Corp.,* Civil Action No. 98-5228 (filed Oct. 1, 1998, E.D.Pa.), and *Local Baking Products, Inc. v. Stone Container Corp.,* Civil Action No. 98-5384 (filed Oct. 9, 1998, E.D.Pa.). The corrugated box plaintiffs in these cases also claimed they were harmed by an industry-wide combination to artificially raise the price of linerboard. The four corrugated box actions in the Eastern District of Pennsylvania were consolidated by stipulation and order pursuant to Federal Rule of Civil Procedure 42(a) on December 17, 1998.

On December 17, 1998 this Court conducted a pretrial conference with the corrugated box plaintiffs and Stone. At that conference the Court ordered Stone to produce to plaintiffs copies of the documents it had produced to the FTC. The Court also granted the Corrugated Box Plaintiffs' request to serve subpoenas on other major manufacturers of linerboard in the United States; specifically, the Court authorized, over Stone's objections, a coordinated effort between the corrugated box plaintiffs in the Eastern District of Pennsylvania and the corrugated sheets plaintiffs in the Northern District of Illinois to issue subpoenas primarily calling for production of the documents that these other manufacturers had produced to the FTC in the course of its investigation.

All third-party recipients of the subpoenas objected to the production of documents and several moved to quash. With the exception of one document production, plaintiffs did not obtain the third-party documents they sought. Stone, however, produced voluminous documents to all plaintiffs.

*3 In late 1998 Stone filed a motion to dismiss Sheets Complaint I--that is, the three lawsuits originally filed against Stone in the Northern District of Illinois on behalf of purchasers of corrugated sheets. On January 8, 1999, Judge Blanche M. Manning of that court denied Stone's motion to dismiss. *See General Refractories et. al. v. Stone Container Corp.,* No. 98 C 3543, 98 C 4612 and 98 C 4659, 1999 WL 14498 (N.D.Ill. Jan.8, 1999). Soon thereafter, on February 5.1999, Stone filed a consolidated answer to the three complaints in the Northern District of Illinois. On February 12, 1999 the Judicial Panel on Multidistrict Litigation transferred the actions pending in the Northern District of Illinois to this Court for all pretrial proceedings.

On May 14, 1999 the corrugated box Plaintiffs filed the First Amended and Consolidated Class Action Complaint ("Corrugated Box Amended Complaint"). Stone and the following "Non-Stone" Defendants were named in the Corrugated Box Amended Complaint: Jefferson Smurfit Corp., Smurfit-Stone Container Corp., International Paper Co., Georgia Pacific Corp., Weyerhaeuser Paper Co., Temple Inland Inc., Gaylord Container Corp., Union Camp Corp., Simpson Tacoma Kraft Co., Tenneco Inc., Tenneco Packaging, and Packaging Corp. of America. According to the Corrugated Box Amended Complaint, the Non Stone Defendants accepted Stone's "invitation" to restrict the production of linerboard and artificially raise prices, resulting in an antitrust conspiracy in violation of the Sherman Act.

On May 18, 1999 a separate class action complaint was filed in the Eastern District of Pennsylvania on behalf of purchasers of corrugated sheets ("Sheets Complaint II"). This complaint names eleven of the twelve Non-Stone Defendants identified in the Corrugated Box Amended Complaint. [FN7] Like the Corrugated Box Amended Complaint, Sheets Complaint II alleges that the named Non-Stone Defendants unlawfully conspired with Stone and each other to artificially raise the price of linerboard. [FN8]

> FN7. Tenneco, Inc. is the sole Non-Stone Defendant that was not made a party to the action brought by the Corrugated Sheets plaintiffs.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK   Document 108-3   Filed 10/04/2005   Page 4 of 8

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1475559 (E.D.Pa.), 2000-2 Trade Cases P 73,081
(Cite as: 2000 WL 1475559 (E.D.Pa.))

Page 4

FN8. One of the defendants named in both the Corrugated Box Amended Complaint and Sheets Complaint II, Simpson Tacoma Kraft Co., was dismissed by agreement of all plaintiffs on November 8, 1999. See Stipulation of Dismissal in MDL No. 1261 (Doc. 43, filed Nov. 8, 1999). Thus, eleven Non-Stone defendants remain as parties to the Corrugated Box Amended Complaint, and ten Non-Stone defendants remain as parties to Sheets Complaint II.

On September 1, 1999 Stone filed the instant Motion to Dismiss the Corrugated Box Amended Complaint and for Judgment on the Pleadings with respect to the three complaints collectively referred to as Sheets Complaint I. Also on September 1, 1999, the Non-Stone Defendants filed a Joint Motion to Dismiss the Corrugated Box Amended Complaint and Sheets Complaint II. These motions are presently before the Court. [FN9]

FN9. One of the Non-Stone Defendants--Packaging Corporation of America--claims that it was never served with Sheets Complaint II. Therefore, it only joins in the Joint Motion to Dismiss as it applies to the Corrugated Box Amended Complaint.

In the Motions to Dismiss Stone and the Non-Stone Defendants essentially make the same arguments. First, all defendants argue that Sheets Complaints I & II and the Corrugated Box Amended Complaint are time-barred by the applicable statute of limitations. See 15 U.S.C.A. § 15(b) (West 1997). Next, all defendants argue that even if the complaints are deemed by this Court to have been timely filed, they should be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Non-Stone Defendants make additional arguments in which defendant Stone does not join. Specifically, the Non-Stone Defendants contend that the complaints against them--that is, the Corrugated Box Amended Complaint and Sheets Complaint II--should be dismissed based on certain "admissions" made by plaintiffs during the course of third-party discovery. According to the Non-Stone Defendants, plaintiffs admitted that they had no basis upon which to sue any party other than Stone. Finally, in the alternative, the Non-Stone Defendants move for an order requiring plaintiffs to amend the Corrugated Box Amended Complaint and Sheets Complaint II so as to provide a more definite statement with respect to the alleged conspiracy pursuant to Federal Rule of Civil Procedure 12(e).

II. STANDARD OF REVIEW

*4 A defendant seeking to dismiss plaintiff's claims at the pleading stage must meet a very high standard. In antitrust actions in particular, Rule 12 motions should be scrutinized carefully and granted rarely. See Rolite, Inc. v. Wheelabrator Envtl. Sys., Inc., 958 F.Supp. 992, 995 (E.D.Pa.1997) ("The dismissal standard is even higher in antitrust cases than it is generally....").

Ordinarily, the statute of limitations is an affirmative defense which cannot be asserted on a motion to dismiss; an exception is made only where the complaint is facially noncompliant with the limitations period. See Barkley v. FMP/Lakeside Assoc., 1999 WL 345567, *2 (E.D.Pa. May 14, 1999).

With respect to a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them, and it must refrain from granting a dismissal unless it is certain that no relief can be granted under any set of facts which could be proved. See Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir.1990) (citing Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir.1988)). A motion for judgment on the pleadings under Rule 12(c) is judged under the same standards as a motion to dismiss pursuant to Rule 12(b)(6). See Jubilee v. Horn, 975 F.Supp. 761, 763 (E.D.Pa.1997), aff'd 151 F.3d 1025 (3d Cir.1998).

III. LEGAL ANALYSIS

A. Dismissal Based on Statute of Limitations

As a general rule, private causes of action under the Sherman Act "shall be forever barred unless commenced within four years after the cause of action accrued." See 15 U.S.C.A. § 15(b) (West 1997). However, a suit may be brought more than four years after the events that initially created the cause of action if the defendant commits "an act that by its very nature constitutes a 'continuing antitrust violation.' " Zenith Radio Corp. v. Hazeltine Resch., Inc., 401 U.S. 321, 338 & n. 2, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). An act constitutes a "continuing antitrust violation" if it injures the plaintiff over a period of time. See Hanover Shoe, Inc. v. United

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1475559 (E.D.Pa.), 2000-2 Trade Cases P 73,081
(Cite as: 2000 WL 1475559 (E.D.Pa.))

Page 5

*Shoe Machinery Corp.,* 392 U.S. 481, 502 & n. 15, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968). Antitrust law provides that in the case of a continuing antitrust violation each overt act that is part of the violation and that injures the plaintiff, "starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." *Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 189, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997); *see also Hanover Shoe,* 392 U.S. at 502.

Stone and the Non-Stone Defendants contend that all the complaints at issue-- the Corrugated Box Amended Complaint and Sheets Complaints I & II-- are time-barred because "the overt acts alleged [by plaintiffs] all occurred in 1993," and each of the complaints was filed more than four years later. *See, e.g.,* Memorandum of Law in Support of Stone's Motion to Dismiss the Corrugated Box Amended Complaint and for Judgment on the Pleadings on Sheets Complaint I ("Stone Memo"), at 5-8; Memorandum of Law in Support of the Non-Stone Defendants' Joint Motion to Dismiss Based on Failure to Plead an Antitrust Conspiracy and Statute of Limitations ("Joint Memo I"), at 16-18.

*5 The Corrugated Box Amended Complaint and Sheets Complaint I & II each allege a "class period" of a number of months and continuing injury to the class during that period, [FN10] and the complaints were filed within four years of the end of the respective class periods. Stone and the Non-Stone Defendants argue that plaintiffs' "conclusory allegations" of continuing injury during the class period are legally insufficient to establish a 'continuing' antitrust violation. *See id.* The Court disagrees.

> FN10. The three complaints referred to as Sheets Complaint I allege a "class period" from October 1, 1993 through March 31, 1995. *See* Sheets Complaint I (all three complaints), at ¶ 1. Sheets Complaint II and the Corrugated Box Amended Complaint allege a class period from October 1, 1993 through November 30, 1995. *See* Sheets Complaint II, at ¶ 1; Corrugated Box Amended Complaint, at ¶ 5(b).

There is no heightened pleading requirement to allege a continuing antitrust violation, *see Leatherman v. Tarrant County Narcotics,* 507 U.S. 163, 167, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Rolite,* 958 F.Supp. at 995, except that the continuing overt acts alleged must be "new and independent" and must "inflict new and accumulating injury on the plaintiff," *Grand Rapids Plastics, Inc. v. Lakian,* 188 F.3d 401, 406 (6th Cir.1999). Plaintiffs' complaints satisfy this standard.

The Corrugated Box Amended Complaint, after alleging many details of the conspiracy, states in paragraph 47 that "[i]n August, 1993 Stone implemented the first of a series of price increases that took place during the class period. This price increase was joined by virtually every major manufacture." The corrugated box plaintiffs alleged a class period from October 1, 1993 through November 30, 1995. *See* Corrugated Box Amended Complaint, at ¶ 5(b).

Sheets Complaint II alleges the conspiracy in even more detail than the Corrugated Box Amended Complaint. *See* Sheets Complaint II, at ¶ 37(a)-(i). Then, in paragraph 37(j), the corrugated sheets plaintiffs allege that "beginning in or about the second half of 1993 and continuing thereafter, the defendants and their co-conspirators had communications with each other which were outside the ordinary course of business during which they agreed to implement and coordinate price increases on corrugated sheets in the United States. There were at least seven such coordinated price increases throughout the Class Period." The class period alleged in Sheets Complaint II is the same as the class period alleged by the corrugated box plaintiffs in the Corrugated Box Amended Complaint--from October 1, 1993 through November 30, 1995. *See* Sheets Complaint II, at ¶ 1.

Finally, the three complaints collectively referred to as Sheets Complaint I contain similar allegations of conspiracy. In paragraph 25 of those complaints plaintiffs state that "[b]eginning at least as early as October of 1993, the exact being unknown to plaintiff, and continuing thereafter at least through March of 1995, defendants Stone and its co-conspirators engaged in a continuing combination and conspiracy in unreasonable restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act which had a the purpose and effect of fixing, raising and maintaining and stabilizing the prices of corrugated sheets at artificially high non competitive levels in the United States." *See* Sheets Complaint I (all three complaints), at ¶ 25. Plaintiffs in Sheets Complaint I allege a class period from October 1, 1993 through March 31, 1995.

*6 In light of the foregoing allegations, the Court finds that the complaints at issue adequately plead a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1475559 (E.D.Pa.), 2000-2 Trade Cases P 73,081
**(Cite as: 2000 WL 1475559 (E.D.Pa.))**

Page 6

continuing antitrust violation. They allege a price fixing conspiracy that brought about a series of unlawfully high priced sales over a period of years. Under those circumstances, "each overt act that is part of the violation and that injures the plaintiff," e.g., each sale [of linerboard or linerboard-based products to the plaintiffs,] "starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." Klehr, 521 U.S. at 189; see also Morton's Market, Inc. v. Gustafson's Dairy, Inc., 198 F.3d 823, 827-29 (11th Cir.1999) (reversing a summary judgment on statute of limitations grounds and ruling that evidence of a continuing antitrust violation similar to that presented in this case raises genuine issues for trial). [FN11]

> FN11. The Court's conclusion regarding whether the complaints adequately plead a continuing antitrust violation is dispositive on the statute of limitations issue. Accordingly, the Court need not consider the remaining statute of limitations arguments raised by the parties--that is, tolling pursuant to 15 U.S.C.A. § 16(i) and the doctrine of fraudulent concealment.

B. *Dismissal Based on Failure to State a Claim.*

In order to plead a claim under Section 1 of the Sherman Act, a plaintiff must allege: (1) the existence of a contract, combination or conspiracy; (2) a restraint on trade; and (3) an effect on interstate commerce. See United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 218-21, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); Fuentes v. South Hills Cardiology, 946 F.2d 196, 198 (3d Cir.1991). Plaintiffs are not required to document all of their accumulated injuries in the complaint. See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Stone and the Non-Stone Defendants contend that plaintiffs have failed to adequately plead an antitrust conspiracy, and that each of the complaints at issue should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Stone argues that the allegations against it in the Corrugated Box Amended Complaint and Sheets Complaint I are legally insufficient to state any claim of conspiracy because they fail to allege any concerted action. See Stone Memo, at 12-16. Similarly, the Non-Stone Defendants make several arguments in support of their position--that plaintiffs fail to identify an unlawful agreement in which they collectively participated, that plaintiffs' "boilerplate" conspiracy allegations are insufficient as a matter of law, and that plaintiffs fail to specify which of the Non-Stone defendants joined the alleged conspiracy. See Joint Memo I, at 8-13. The Court rejects these arguments.

The Court finds that with respect to Stone and the Non-Stone Defendants, each of the complaints at issue in the case: (1) alleges a conspiracy, see, e.g., Corrugated Box Amended Complaint, at ¶¶ 35-37; Sheets Complaint I (all three complaints), at ¶ 25; Sheets Complaint II, at ¶ 36; (2) identifies the conspiracy's participants by name, see, e.g., Corrugated Box Amended Complaint, at ¶¶ 10-22; Sheets Complaint I (all three complaints), at ¶¶ 8-9; Sheets Complaint II, at ¶¶ 9-18; (3) alleges the defendants' purpose in engaging in the alleged conspiracy--that is, to artificially raise, stabilize and maintain prices of linerboard and corrugated containers, see, e.g., Corrugated Box Amended Complaint, at ¶¶ 36-37; Sheets Complaint I (all three complaints), at ¶ 24; Sheets Complaint II, at ¶ 37; and (4) alleges the defendants' motive in engaging in the alleged conspiracy--that is, to eliminate competition in the linerboard industry nationwide, see, e.g., Corrugated Box Amended Complaint, at ¶ 36; Sheets Complaint I (all three complaints), at ¶ 26; Sheets Complaint II, at ¶ 36. No more than this is required to plead a cause of action under Section 1 of the Sherman Act. See Fuentes, 946 F.2d at 202; see also Leatherman, 507 U.S. at 167 (holding that "notice pleading" under Fed.R.Civ.P. 8 requires only a short plain statement of the claims and does not requires the pleading of facts).

*7 In addition, with respect to the complaints against defendant Stone collectively referred to as Sheets Complaint I, the Court notes that a motion to dismiss was filed by Stone in the Northern District of Illinois before those cases were transferred to this Court. In that motion, which was denied by Judge Manning of the Northern District of Illinois, Stone argued that plaintiff failed to plead an antitrust conspiracy under Section 1 of the Sherman Act. To the extent that Stone makes a similar argument in its instant Motion for Judgment on the Pleadings, the argument is rejected for the reasons set forth above and in the opinion by Judge Manning in the cases before her, see *General Refractories et. al. v. Stone Container Corp.*, No. 98 C 3543, 98 C 4612 and 98 C 4659, 1999 WL 14498 (N.D.Ill. Jan.8, 1999).

For the foregoing reasons, the Court concludes that the Corrugated Box Amended Complaint and Sheets Complaint I adequately state a claim against defendant Stone to survive a Motion to Dismiss and a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK    Document 108-3    Filed 10/04/2005    Page 7 of 8

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1475559 (E.D.Pa.), 2000-2 Trade Cases P 73,081
(Cite as: 2000 WL 1475559 (E.D.Pa.))

Page 7

Motion for Judgment on the Pleadings, respectively. Similarly, the Court concludes that the Corrugated Box Amended Complaint and Sheets Complaint II adequately state a claim against the Non-Stone Defendants to survive a Motion to Dismiss.

C. *Dismissal Based on Certain "Admissions."*

The Non-Stone Defendants argue that the complaints against them--the Corrugated Box Amended Complaint and Sheets Complaint II--should be dismissed based on numerous statements made by plaintiffs in the course of earlier discovery disputes. Specifically, the Non-Stone Defendants note that prior to filing lawsuits against them, the Corrugated Box Plaintiffs attempted to obtain third-party discovery from the Non-Stone Defendants, none of which had been named as defendants at that time. During the process, the Non-Stone Defendants contend, plaintiffs "admitted" that they had "no basis" upon which to sue any party other than Stone. *See* Memorandum of Law in Support of the Non-Stone Defendants' Joint Motion to Dismiss Based on Plaintiff's Admissions ("Joint Memo II"), at 1-2.

The Non-Stone Defendants' efforts to have the case dismissed under Federal Rule of Civil Procedure 12 based on these alleged extraneous admissions must fail at this stage of the proceedings. In evaluating motions to dismiss courts generally "are not permitted to go beyond the facts alleged in the complaint and the documents upon which the claims made therein were based." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1425 (3d Cir.1997). The Third Circuit has held that a court may consider "certain narrowly defined types of material without converting the motion to dismiss" to a motion for summary judgment, *see In re Rockefeller Center Properties, Inc. Sec. Litig.,* 184 F.3d 280, 286 (3d Cir.1999); however this narrow class of material may only include a "document integral to or explicitly relied upon in the complaint," or an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id.* at 287.

*8 The admissions which the Non-Stone Defendants purport to ascribe to plaintiffs simply do not fit within these narrow categories. Plaintiffs object to the characterization of their earlier statements as "admissions" at all. The statements are therefore not undisputed nor integral to the complaints. The Court may not consider them in the context of the instant Motion to Dismiss and dismissal based on the alleged "admissions" by plaintiffs is not warranted at this stage of the proceedings.

D. *Motion for a More Definite Statement*

In the alternative to a dismissal of the complaints against them, the Non-Stone Defendants move for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) with respect to their involvement in the alleged conspiracy. This alternative motion is based on the argument that the complaints against them are so vague and ambiguous that they can not reasonably be required to respond. The Court disagrees.

Plaintiffs' complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a); *Leatherman,* 507 U.S. at 167. That is what plaintiffs have done in each of their complaints. As Judge Manning stated with respect to the three complaints filed against defendant Stone in her court--collectively referred to as Sheets Complaints I: "[r]educed to their simplest terms, the complaints allege that at sometime between June 1993 and March 1995 Stone, Smurfit and other market competitors[ [FN12]] agreed to, and in fact did, artificially raise the price of their corrugated sheet products thereby causing customers to pay higher prices. Under *Leathermans's* liberal notice pleading requirements, the Court believes that Stone could easily surmise the basis for the plaintiff's antitrust claims." *General Refractories et. al. v. Stone Container Corp.,* No. 98 C 3543, 98 C 4612 and 98 C 4659, 1999 WL 14498, at *2 (N.D.Ill. Jan.8, 1999). This Court reaches the same conclusion with respect to the complaints in which the Non-Stone Defendants are named.

> FN12. The other competitors are currently named as defendants in the cases before this Court, but were not in the cases that originally before Judge Manning, that is the three complaints collectively referred to as Sheets Complaint I.

For the reasons previously stated, this Court concludes that the Corrugated Box Amended Complaint and Sheets Complaint II adequately advise the Non-Stone Defendants of the conspiracy claims against them. Accordingly, the Court will not require plaintiffs to file amended complaints containing more specific allegations of conspiracy.

IV. *CONCLUSION*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1475559 (E.D.Pa.), 2000-2 Trade Cases P 73,081
**(Cite as: 2000 WL 1475559 (E.D.Pa.))**

Page 8

*9 For all the foregoing reasons, the motion by Stone to dismiss the Corrugated Box Amended Complaint and for judgment on the pleadings on Sheets Complaint I, and the joint motion by the Non-Stone Defendants to dismiss the Corrugated Box Amended Complaint and Sheets Complaint II will be denied. The motion by the Non-Stone Defendants for a more definite statement will also be denied.

The issues raised in defendants' motions presented the Court with close questions. Although plaintiffs' complaints were sufficient to withstand motions under Federal Rule of Civil Procedure 12, they were not models of antitrust pleading. In addition, the questions raised by the purported admissions of the corrugated box plaintiffs must be addressed at a later stage of the case. Under the Court's rulings, plaintiffs will be given an opportunity to prove what they have alleged in their complaints. Defendants will be given an opportunity after completion of relevant discovery to again challenge plaintiffs' claims by motions for summary judgment.

Not Reported in F.Supp.2d, 2000 WL 1475559 (E.D.Pa.), 2000-2 Trade Cases P 73,081

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.