Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 975678 (S.D.N.Y.), 2002-1 Trade Cases P 73,705
**(Cite as: 2002 WL 975678 (S.D.N.Y.))**

Page 1

### Motions, Pleadings and Filings

United States District Court, S.D. New York.
In re: MAGNETIC AUDIOTAPE ANTITRUST
LITIGATION
No. 99 Civ. 1580(LMM).

May 9, 2002.

*MEMORANDUM AND ORDER*

MCKENNA, J.

*1 Presently before the Court in this antitrust litigation are the following motions to dismiss the plaintiffs' First Amended Consolidated Class Action Complaint ("Amended Complaint"): Defendant Aurex, S.A. de C.V.'s ("Aurex") motion to dismiss pursuant to 12(b)(2) of the Federal Rules of Civil Procedure; Defendant SK Global America, Inc.'s ("SKG") and OCMP, Inc.'s ("OCMP") motion to dismiss pursuant to 12(b)(6); TDK Corporation's ("TDK") and TDK Electronics Corporation's ("TDKE") motion to dismiss pursuant to 12(b)(6); and TDK's separate motion to dismiss pursuant to 12(b)(2). For the reasons set forth below, Aurex's and TDK's motions to dismiss pursuant to 12(b)(2) for lack of personal jurisdiction are denied without prejudice for renewal upon completion of plaintiffs' jurisdictional discovery; SKG's and OCMP's motion is granted as regards allegations of acts before July 30, 1995, with leave for plaintiffs to replead; and TDK's and TDKE's motion is granted as regards allegations of acts before April 6, 1995, with leave for plaintiffs to replead as discussed in this Memorandum and Opinion.

I. 12(b)(2) Motions

Plaintiffs have filed two lawsuits alleging a conspiracy to fix the price of magnetic audiotape in the United States during the period of 1991 to 1999. The first action involves, among others, the defendants whose motions to dismiss are presently pending before the Court. The second action was brought against only one defendant, BASF Aktiengesellschaft ("BASF"), a German corporation. By Memorandum and Order dated February 20, 2001, the Court dismissed the action against BASF for lack of personal jurisdiction. In that same Memorandum and Order, the Court similarly dismissed SKM Ltd., one of the defendants in the first action. Plaintiffs appealed BASF's dismissal and on March 12, 2002, the Second Circuit vacated and remanded the decision, concluding that plaintiffs "were entitled to jurisdictional discovery in order to develop the factual record for [a personal jurisdiction] showing." *Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft,* No. 01 Civ. 7307, 2002 WL 385569, at *1 (2d Cir. Mar. 12, 2002). Of particular relevance to the Second Circuit's decision was the fact that plaintiffs had requested jurisdictional discovery. [FN1] *Id.*

> FN1. Plaintiffs' Rule 54(b) motion for entry of final judgment against SKM was granted on May 9, 2002.

Two foreign defendants in the first action, Aurex, a Mexican corporation and TDK, a Japanese corporation, now move for dismissal for lack of personal jurisdiction. In opposing both motions on the ground that this Court has personal jurisdiction over both defendants, plaintiffs have argued in the alternative that they should be permitted to complete jurisdictional discovery. (Pls.' Mem. of Law in Opp'n to Aurex's Mot. to Dismiss at 22-24; Pls.' Mem. of Law in Opp'n to TDK's Mot. to Dismiss for Lack of Personal Jurisdiction at 13-16.) In light of the Second Circuit's ruling regarding plaintiffs' entitlement to take jurisdictional discovery of BASF, the Court believes it would be premature to decide whether personal jurisdiction exists before the close of jurisdictional discovery. Thus, the motions to dismiss by Aurex and TDK are denied without prejudice to renewal of the 12(b)(2) motions after plaintiffs have completed jurisdictional discovery of these companies. All issues regarding discovery, including scope and length, should be brought before Magistrate Judge Pitman.

II. 12(b)(6) Motions

A) Statute of Limitations

*2 SKG, OMPC, TDK and TDKE move to dismiss the Amended Complaint on the ground that plaintiffs' antitrust claim is time-barred. In order to file a timely suit in a private civil antitrust action in which treble

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 975678 (S.D.N.Y.), 2002-1 Trade Cases P 73,705
**(Cite as: 2002 WL 975678 (S.D.N.Y.))**

Page 2

damages are sought, plaintiffs must sue "within four years after the cause of action accrued." 15 U.S.C. § 15b. "An antitrust action accrues and the statute of limitations begins to run when the defendant commits an act that injures the plaintiff." In re Nine West Shoes Antitrust Litig., 80 F.Supp.2d 181, 192 (S.D.N.Y.2000) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338 (1971)).

Plaintiffs concede that their complaint was filed more than four years after certain acts of price-fixing occurred. (Pl.'s Mem. in Opp'n to TDK's and TDKE's Mot. to Dismiss at 11; Pl.'s Mem. in Opp'n to SKG's and OCMP's Mot. to Dismiss at 6.) However, with regard to these acts that would generally be time-barred, plaintiffs argue that they have properly alleged fraudulent concealment, which tolls the limitations period until discovery of the wrongful actions. In Re Nine West, 80 F.Supp.2d at 192. In order to show fraudulent concealment in an antitrust action, a plaintiff must prove: "(1) that the defendant concealed the existence of antitrust violation, (2) that plaintiff remained in ignorance of the violation until some time within the four-year antitrust statute of limitations; and (3) that his continuing ignorance was not the result of lack of diligence." Id. (citing In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 60 (2d Cir.1998)).

Plaintiffs have properly pled the first and third of these elements in paragraph 44 of the Amended Complaint which reads, in pertinent part, that:
> [p]laintiffs and other members of the Class could not have discovered the contract, combination or conspiracy at an earlier date by the exercise of due diligence because of the deceptive practices and techniques of secrecy employed by defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy. These techniques of secrecy included, but were not limited to, secret meetings, alteration of incriminating documents, the termination of employees who threatened to disclose defendants' unlawful conspiracy, separate coverup schemes to silence witnesses with knowledge of the conspiracy, and misrepresentations to customers concerning the reasons for price increases.

(Am.Compl.¶ 44.) With regard to the first prong, merely alleging a price-fixing scheme is enough to satisfy the Second Circuit's liberal standard of proving concealment. In re Nine West, 80 F.Supp.2d at 193; State of New York v. Cedar Park Concrete Corp., 684 F.Supp.2d 1229, 1232 (S.D.N.Y.1988). Plaintiffs have alleged a price-fixing scheme plus several affirmative steps of concealment as set forth in paragraph 44 of the Amended Complaint. Thus, plaintiffs clearly meet this element.

*3 Further, the court in In re Nine West found that the due diligence requirement was satisfied when the plaintiffs pled that they "could not have discovered the conspiracy at an earlier date by the exercise of due diligence because of the affirmative, deceptive practices and techniques of secrecy employed by Defendants...." 80 F.Supp.2d at 193. Thus, employing similar language to in paragraph 44 of the Amended Complaint to explain why they could not have discovered the alleged conspiracy, plaintiffs in this action satisfy the third prong. Without a tip-off that a price-fixing conspiracy existed, plaintiffs had no reason to exercise due diligence. Thus, defendants' argument that the Amended Complaint is deficient because it fails to state what due diligence plaintiffs undertook to learn of the conspiracy is without merit.

However, plaintiffs' allegations with regard to the second prong--that they remained ignorant throughout the statute of limitations period--are inadequate. Plaintiffs allege that they "had no knowledge of the contract, combination or conspiracy ... until shortly before April 1999." (Am.Compl.¶ 44.) In contrast to other plaintiffs who sufficiently alleged specific dates and events surrounding their acquired knowledge, In re Nine West, 180 F.Supp.2d at 193 (plaintiffs alleged that February 18, 1999 was the first public disclosure of the facts relating to the alleged conspiracy); Philip Morris, Inc. v. Heinrich, No. 95 Civ. 0328, 1997 WL 781907, at *6 (S.D.N.Y. Dec. 18, 1997) (plaintiffs alleged that earliest they obtained knowledge was in December 1993 when a third party provided plaintiff with information about the alleged conspiracy), plaintiffs' allegation here, that the knowledge was obtained "shortly before April 1999," is very vague. Such a general allegation, without more, fails to satisfy the second prong of the fraudulent concealment test. Therefore, the Court grants SKG's and OMCP's motion to dismiss and TDK's and TDKE's motion to dismiss, but grants plaintiffs leave to replead fraudulent concealment allegations to include more specifics as to when and how they discovered the conspiracy. [FN2]

> FN2. Thus, for SKG and OMCP, who were named as defendants on July 30, 1999, all allegations as to acts before July 30, 1995 are dismissed with leave to replead and for TDK and TDKE, who were named as defendants on April 6, 1999, all allegations as to acts before April 6, 1995 are dismissed

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK    Document 108-4    Filed 10/04/2005    Page 3 of 4

Not Reported in F.Supp.2d                                                                                            Page 3
Not Reported in F.Supp.2d, 2002 WL 975678 (S.D.N.Y.), 2002-1 Trade Cases P 73,705
**(Cite as: 2002 WL 975678 (S.D.N.Y.))**

with leave to replead.

SKG's and OMPC's additional statute of limitations argument--that even the allegations within the four year statute of limitations period must be dismissed because the Amended Complaint fails to identify specific overt acts of the alleged continuing conspiracy after April 28, 1995--is rejected. The Court finds that plaintiffs have sufficiently alleged a continuing conspiracy by claiming that "[b]eginning no later than January 1991 ... and continuing to at least April 6, 1999, defendants engaged in a continuing combination and conspiracy ... in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1." (Am.Compl.¶ 36.) Plaintiffs further allege that as part of the conspiracy, defendants "[p]articipated in meetings and communications to discuss the prices of Magnetic Audiotape sold in the United States." (Id.¶ 38(a).) Plaintiffs list some specific dates of meetings (id.¶ ¶ 38(e), 39(1)--(2)), but also allege that the defendants "[m]et on a regular basis to coordinate pricing for Magnetic Audiotape and to discuss the market reaction to the agreed-upon increased prices." (Id.¶ 38(f).) Taken together, the Court concludes that plaintiffs have sufficiently alleged acts (meetings) during the four year period before the commencement of this action. Thus, the motions to dismiss are granted only with regard to the acts outside the four year statue of limitations as discussed above.

B) Additional Grounds For Dismissal

*4 Defendants TDK and TDKE move to dismiss the complaint on the additional ground that the conspiracy allegations fail to state a claim against them upon which relief can be granted. (TDK and TDKE's Mem. of Law in Supp. of Mot. to Dismiss at 2-7.)

Under Rule 12(b)(6), a complaint will be dismissed if there is a "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). The Court must read the complaint generously accepting the truth of and drawing all reasonable inferences from well-pleaded factual allegations. _Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir.1993)_. "A court should only dismiss a suit under Rule 12(b)(6) if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ' _Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir.1994)_ (quoting _Conley v. Gibson, 355 U.S. 41, 45-46 (1957)_).

"To withstand a motion to dismiss, the plaintiff in a Sherman Antitrust Conspiracy claim must allege (1) concerted action; (2) by two or more persons; (3) that unreasonably restrains interstate or foreign trade or commerce." _In re Nasdaq Market-Makers Antitrust Litig., 894 F.Supp. 703, 710 (S.D.N.Y.1995)_. Here, TDK and TDKE argue that plaintiffs fail to plead that TDK and TDKE acted in concert with the other defendants. Specifically, they argue that the Amended Complaint does not allege that they agreed to participate in the alleged conspiracy. (TDK's and TDKE's Mem. of Law in Supp. of Mot. to Dismiss at 4-6.) TDK and TDKE contend that the only allegation possibly connecting them to the other defendants is the claim that in September of 1992 the defendants discussed future prices of Magnetic Audiotape and that TDK and TDKE "participated in the discussion." (Am.Compl.¶ 38(e).)

However, the Second Circuit has said that "a short plain statement of a claim for relief which gives notice to the opposing party is all that is necessary in antitrust cases." _George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp., 554 F.2d 551, 554 (2d Cir.1977)_; see also _Intellective, Inc. v. Massachusetts Mutual Life Ins. Co., 190 F.Supp.2d 600, 607 (S.D.N.Y.2002)_. While TDK and TDKE make much of the fact that the September 1992 allegation is the only specific reference to them in the Amended Complaint, other parts of the complaint adequately link TDK and TDKE to the alleged conspiracy and satisfy the short, plain statement rule. In particular, in addition to the September 1992 discussions, plaintiffs allege that the defendants met to discuss the price of Magnetic Audiotape and that they "[a]greed during those meetings and communications to charge prices at certain levels and maintain prices of Magnetic Audiotape sold in the United States at artificially high levels." (Am.Compl.¶ 38(b).) The allegation here incorporates all defendants. The fact that TDK and TDKE are not specifically named in this allegation is not fatal to plaintiffs' claim against them. Thus, reviewing the claim against TDK and TDKE in the Amended Complaint as a whole as the Court is required to do, _In re NASDAQ, 894 F.Supp. at 713_ (citing _Continental Ore Co. v. Union Carbide and Carbon Corp., 372 U.S. 690, 699 (1962)_) and not, as defendants would like, on the one specific allegation mentioning those defendants, the Court concludes that plaintiffs have sufficiently alleged that TDK and TDKE were participants in the price-fixing conspiracy. [FN3]

FN3. _Invamed, Inc. v. Barr Labs., Inc., 22 F.Supp.2d 210 (S.D.N.Y.1998)_, a case upon

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK   Document 108-4   Filed 10/04/2005   Page 4 of 4

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 975678 (S.D.N.Y.), 2002-1 Trade Cases P 73,705
**(Cite as: 2002 WL 975678 (S.D.N.Y.))**

Page 4

which defendants heavily rely, is not to the contrary. The fatality of plaintiff's complaint in *Invamed* was that plaintiff failed to allege "concerted action between any of the defendants, much less involving [the defendant making the motion to dismiss]." *Id.* at 222. In contrast, as explained above, in this case plaintiffs have alleged that at these meetings, the defendants agreed to fix the price of Magnetic Audiotape. (Am.Compl.¶ 38(b).) Whereas the Court in *Invamed* found that the plaintiff failed to link a particular defendant to the conspiracy, the Court here finds that such linkage exists between TDK and TDKE and the alleged conspiracy.

Conclusion

*5 In sum, Aurex's and TDK's motions to dismiss for lack of personal jurisdiction are denied without prejudice to renewal after plaintiffs have completed jurisdictional discovery; SKG's and OCMP's motion to dismiss and TDK's and TDKE's motion to dismiss are granted with regards to allegations of acts outside the four year statute of limitations period with leave for plaintiffs to replead within 45 days of the date of this Memorandum and Order.

So Ordered.

Not Reported in F.Supp.2d, 2002 WL 975678 (S.D.N.Y.), 2002-1 Trade Cases P 73,705

**Motions, Pleadings and Filings (Back to top)**

• <u>1:99cv01580</u>            (Docket) (Mar. 02, 1999)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.