Not Reported in F.Supp.                                                                                    Page 9
Not Reported in F.Supp., 1996 WL 363156 (S.D.N.Y.)
**(Cite as: 1996 WL 363156 (S.D.N.Y.))**

does not establish antitrust claim), Philip Morris has alleged more than mere commercial bribery: it has alleged facts detailing an extensive bid rigging scheme involving the Defendants. This is precisely the type of conduct that the Sherman Act prohibits. Thus, the cases cited by the Defendants are distinguishable.

### 2. Rule of Reason

The Court need not apply the rule of reason to Counts I and II. Nonetheless, it holds that even if the claims did not state *per se* price fixing violations, they would properly allege Sherman Act claims for unreasonable restraint of trade under this analysis as well.

### 3. Statute of Limitations

*10 A majority of the Defendants contend that the Sherman Act counts should be dismissed for failing to satisfy the statute of limitations for filing antitrust actions. "Any action to enforce any cause of action under sections 15, 15a or 15c of this title shall be forever barred unless commenced within four years after the cause of action accrued." 15 U.S.C. § 15b. Philip Morris filed its initial complaint on January 17, 1995. Thus, according to the Defendants, any conduct alleged to constitute a Sherman Act violation which accrued prior to January 17, 1991 is time-barred. In the context of a continuing conspiracy to violate antitrust laws, a separate cause of action is said to accrue each time an act of the defendant injures the plaintiff. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971). This requires an overt act: claims premised upon damages which result from conduct which occurred outside the limitations period are time-barred. *Argus Inc. v. Eastman Kodak Co.*, 552 F.Supp. 589, 594 (S.D.N.Y.1982), aff'd, 801 F.2d 38 (2d Cir.1986), cert. denied, 479 U.S. 1088 (1987). Since Philip Morris alleges that bid rigging continued "from the early 1980s through 1991," (Amend.Compl. at ¶¶ 120, 126), then it is possible to conclude, reading the facts in favor of the Plaintiff, that antitrust injuries accrued subsequent to January 17, 1991. To the extent that Counts I and II derive from antitrust injuries alleged to have accrued during this period, the counts, on their face, satisfy the statute of limitations and may not be dismissed.

### i. § 16(i) Tolling

Furthermore, the federal government's filing of a criminal information against Defendant Jomar on March 4, 1993 tolled the statute of limitations as of that date, pursuant to 15 U.S.C. § 16(i). This provision provides:

> [w]henever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws ... the running of the statute of limitations in respect of every private or State right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter: *Provided, however,* That whenever the running of the statute of limitations in respect of a cause of action arising under section 15 or 15c of this title is suspended hereunder, any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued.

Philip Morris brings its Sherman Act claims pursuant to § 15. Consequently, if counts I and II are deemed to be "based in whole or in part on any matter complained of in" the federal government's criminal proceeding against Jomar, then the counts are timely to the extent that they are premised upon antitrust causes of action which accrued after March 4, 1989.

*11 Several Defendants argue that the government's action against Jomar involves a different conspiracy among different Defendants, and thus, may only toll the statute of limitations for the specific parties named in the government's action, or at the very least, for the parties allegedly involved in the Mounting and Finishing conspiracy. The Supreme Court has held, however, that "[t]he private plaintiff is not required to allege that the same means were used to achieve the same objectives of the same conspiracies by the same defendants." *Leh v. General Petroleum Corp.*, 382 U.S. 54, 59 (1965). In fact, the statute of limitations may be tolled against defendants to the private suit

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                               Page 10
Not Reported in F.Supp., 1996 WL 363156 (S.D.N.Y.)
**(Cite as: 1996 WL 363156 (S.D.N.Y.))**

even if they were "named neither as a defendant nor as a coconspirator by the Government." *Zenith Radio,* 401 U.S. at 335.
> We see nothing destructive of Congress' purpose in holding that [§ 16(i) ] tolls the statute of limitations against all participants in a conspiracy which is the object of a Government suit, whether or not they are named as defendants or conspirators therein; indeed, to so hold materially furthers congressional policy by permitting private litigants to await the outcome of Government suits and use the benefits accruing therefrom.

*Id.* at 336.

Nonetheless, the Court must exercise care to insure that "reliance upon the government proceeding is not mere sham and that the matters complained of in the government proceeding bear a real relation to the private plaintiff's claim for relief." *Leh,* 382 U.S. at 59. It does so by comparing the plaintiff's complaint with the complaint in the government proceeding on which the plaintiff relies. *Id.* While the complaints need not be identical, the Third Circuit has defined "real relation" by stating that there must be a "substantial identity" in order to invoke § 16(i) tolling. *New Jersey v. Morton Salt Co.,* 387 F.2d 94, 98 (3d Cir.1967), *cert. denied,* 391 U.S. 967 (1968). The Second Circuit has not provided a definition for when the similarity between the two complaints is enough for tolling, but it has ruled that there is an insufficient basis when the only similarity is that some of the defendants are the same. *Peto v. Madison Square Garden Corp.,* 384 F.2d 682, 682 (2d Cir.1967) (no "real relation" between claims where conspiracies in two complaints are entirely different, involve different sports activities and cover different periods of time), *cert. denied,* 390 U.S. 989 (1968); *see also Charley's Tour and Transp., Inc. v. Interisland Resorts, Ltd.,* 618 F.Supp. 84, 86 (D.Haw.1985) (no tolling where cases involved different markets [rental rates for hotel rooms versus charter bus market], different defendants and different means of proof).

In this case, the Court holds that there is a "real relation" between the criminal information filed against Jomar and Philip Morris' Amended Complaint. The Jomar information alleges that Jomar and its coconspirators engaged in a combination and conspiracy to unreasonably restrain trade by rigging bids and allocating contracts for the supply of graphic materials to Philip Morris. (Amend.Compl. at ¶ 102.) Philip Morris, in its Amended Complaint, makes the same allegations against a number of Defendants, elaborating upon the mechanics of the scheme.
The fact that Philip Morris identifies two overlapping cells of Defendants which arranged the schemes to accommodate Philip Morris' bidding process does not alter the fact that the participants, objects and mechanics of the Mounting and Finishing Vendors' and the Corrugated Vendors' schemes were essentially the same. At the very least, this is a factual question. Thus, the Court finds that Philip Morris can argue a set of facts that the criminal information filed against Jomar tolled the statute of limitations pursuant to § 16(i) as to all other Defendants, as of March 4, 1993. The Court need not determine when this tolling terminated, since the criminal information filed against Cappelli on January 3, 1994, (Amend.Compl. at ¶ 104), in any event, was filed prior to the termination of the Jomar proceedings. Thus, it may be tacked onto the Jomar tolling. As the Cappelli proceedings had not terminated as of the date the Amended Complaint was filed, the Sherman Act claims are timely to the extent that they are based upon claims which accrued after March 4, 1989.

ii. Fraudulent Concealment
*12 As for claims accruing prior to March 4, 1989, Philip Morris argues that they are timely as well on the theory that the statute of limitations tolled from the start on account of the Defendants' fraudulent concealment. An antitrust plaintiff may prove fraudulent concealment sufficient to toll the statute of limitations by establishing: "(1) that the defendant concealed from him the existence of his cause of action, (2) that he remained in ignorance of that cause of action until some point within four years of the commencement of his action, and (3) that his continuing ignorance was not attributable to lack of diligence on his part." *New York v. Hendrickson Bros., Inc.,* 840 F.2d 1065, 1083 (2d

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                Page 11
Not Reported in F.Supp., 1996 WL 363156 (S.D.N.Y.)
**(Cite as: 1996 WL 363156 (S.D.N.Y.))**

Cir.1988), *cert. denied,* 488 U.S. 848 (1988). The Second Circuit has characterized bid-rigging conspiracies as inherently self-concealing activities. The plaintiff satisfies the first prong of the fraudulent concealment test by demonstrating the existence of the conspiracy. *Id.* at 1083-84.

While pleading of the Defendants' affirmative acts is not necessary under *Hendrickson* to meet the first prong of the doctrine in a case of an alleged bid-rigging scheme, "such pleading may be necessary to sufficiently allege the second and third elements." *New York v. Cedar Park Concrete Corp.,* 684 F.Supp. 1229, 1232 (S.D.N.Y.1988). "The burden rests squarely on the party pleading fraudulent concealment.... Courts furthermore require particularity in pleading fraudulent concealment." *Donahue v. Pendleton Woolen Mills, Inc.,* 633 F.Supp. 1423, 1443 (S.D.N.Y.1986) . General assertions of ignorance and due diligence without more specific explanation for the delay in bringing a suit will not satisfy these pleading requirements. *Id.* at 1233. In this case, Philip Morris has not specifically alleged in any detail when it became aware of the conspiracy. While it infers that it learned of it subsequent to the unsealing of records from criminal proceedings against some of the Defendants, as well as from information provided by Cappelli and Clemence as part of their cooperation agreements, (Amend.Compl. at 14, n. 1, 24, n. 2), nowhere does Philip Morris assert exactly when it acquired the "actual knowledge" of its causes of action against the Defendants. *See Cedar Park,* 684 F.Supp. at 1233.

Furthermore, Philip Morris has not adequately pleaded diligence in attempting to discover the alleged fraud. While it states that it undertook an internal investigation, "[m]ore specific information is required as to the difficulties, if any, [it encountered] with the progression of the investigation.... Moreover, plaintiff should allege, with more specificity, when, despite these obstacles, it acquired 'actual knowledge.' " *Id.* The date by which a Plaintiff should have discovered the existence of fraud may be a question of fact, *American Credit Indemnity Co. v. Legge,* 829 F.Supp. 649, 650-51 (S.D.N.Y.1993), but Philip Morris must nonetheless first allege some facts sufficient to argue that it was diligent and did not learn of the alleged fraud until a time within the statute of limitations period. Thus, even reading the Amended Complaint generously for the Plaintiff, the Court rules that Philip Morris has failed adequately to plead fraudulent concealment. Accordingly, the Court grants the Defendants' motion to dismiss the portions of the Amended Complaint that seek damages for claims arising prior to March 4, 1989, without prejudice to the Plaintiff's repleading the fraudulent concealment sections within 60 days. As discussed below, since antitrust claims do not require pleading with particularity, Philip Morris' assertions in the Amended Complaint that both schemes continued through 1991, given the generous reading accorded plaintiffs' complaints in 12(b)(6) motions, satisfactorily states a claim against each of the Defendants subsequent to March 4, 1989. Thus, dismissal of causes of action accruing prior to this date does not result in dismissal of any individual defendant from the Amended Complaint for purposes of this motion.

4. Pleading Requirements
*13 The liberal system of notice pleading applies to antitrust causes of action. *In re NASDAQ Market-Makers Antitrust Lit.,* 894 F.Supp. 703, 710 (S.D.N.Y.1995); Fed.R.Civ.P. 8(a). Philip Morris need not plead its antitrust claims with the particularity required by Fed.R.Civ.P. 9(b). Thus, while it is not enough to merely state that a conspiracy has taken place, "great leeway should be allowed the pleader, since by the nature of the conspiracy, the details may not be readily known at the time of the pleading." *Id.* (quoting 2A James W. Moore et al., & J. Lucas, Moore's Federal Practice ¶ 8.17(5) (1986)); *see also Hospital Bldg. Co. v. Trustees of Rex Hosp.,* 425 U.S. 738, 746 (1976) ("[I]n antitrust cases, where 'the proof is largely in the hands of the alleged conspirators,' dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly") (citation omitted); 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1228, at 221-24 (2d ed. 1990). Furthermore,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                      Page 12
Not Reported in F.Supp., 1996 WL 363156 (S.D.N.Y.)
**(Cite as: 1996 WL 363156 (S.D.N.Y.))**

"[a]n overt act need not be pleaded against each defendant, because a single overt act by just one of the conspirators is enough to sustain a conspiracy claim on the merits." *Cedar Park,* 665 F.Supp. at 246-47. Identifying the co-conspirators and describing the nature and effect of the alleged conspiracy is sufficient. *Alco Standard Corp. v. Schmid Bros., Inc.,* 647 F.Supp. 4, 6 (S.D.N.Y.1986).

In the Amended Complaint, Philip Morris more than satisfies the pleading requirements for a Sherman Act claim, identifying all of the coconspirators and explaining in some detail the nature and effect of the alleged conspiracy. The Court rejects the argument of certain defendants that Philip Morris failed to allege necessary particulars as to how and when individual Defendants joined the conspiracy. This degree of specificity is clearly not required by Rule 8(a). *Three Crown Ltd. Partnership v. Caxton Corp.,* 817 F.Supp. 1033, 1047 (S.D.N.Y.1993). The Sherman Act claims satisfy pleading requirements.

Furthermore, as the Amended Complaint satisfies the notice requirements for an antitrust action, the demand of Defendants Winko N.J. and Republic N.Y. for a more definite statement pursuant to Fed.R.Civ.P. 12(e) is denied.

C. The Donnelly Act Claims
New York State's Donnelly Act, [FN3] N.Y.Gen.Bus.Law § 340 (1988), prohibiting restraint of trade, is modeled after the Sherman Act and is generally construed in light of federal precedent. *Anheuser-Busch, Inc. v. Abrams,* 71 N.Y.2d 327, 335, 525 N.Y.S.2d 816, 820 (1988); *State v. Mobil Oil Corp.,* 38 N.Y.2d 460, 463, 381 N.Y.S.2d 426, 428 (1976). The New York State Court of Appeals has definitively asserted that the *per se* rule applies in price fixing cases under the Donnelly Act. *People v. Rattenni,* 81 N.Y.2d 166, 171-72, 597 N.Y.S.2d 280, 283 (1993). In fact, New York courts have specifically held bid-rigging to be a *per se* violation. *People v. Schwartz,* 554 N.Y.S.2d 686, 686-87 (App.Div.2d Dep't 1990). Thus, the Court holds that Philip Morris has adequately alleged Donnelly Act claims. As the same statute of limitations which applies to the Sherman Act also applies to the Donnelly Act, *see* N.Y.Gen.Bus.Law § 340(5), the motions to dismiss Counts III and IV are assessed in the same manner as Counts I and II. To the extent that the claims arise from causes of action accruing after March 4, 1989, the motions to dismiss are denied. The motions to dismiss causes of action accruing prior to this date are granted, without prejudice to Philip Morris' right to replead the elements of fraudulent concealment within 60 days.

> FN3. The statute provides, in relevant part:
> 1. Every contract, agreement, arrangement or combination whereby A monopoly in the conduct of any business, trade or commerce or in the furnishing of any service in this state, is or may be established or maintained, or whereby Competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained ... is hereby declared to be against public policy, illegal and void. N.Y.Gen.Bus.Law § 340 (1988).

D. Common Law Fraud
*14 Counts V, VI and VII allege common law fraud, respectively, against the Mounting and Finishing Vendors (Amend.Compl. at ¶ 143), the Corrugated Vendors along with the members of the Masta Group who took part in their alleged scheme, (Amend.Compl. at ¶ 151), and Heinrich. (Amend.Compl. at ¶ 161). The majority of the Defendants move to dismiss the fraud claims for failing to plead the counts with particularity, pursuant to Fed.R.Civ.P. 9(b), and failure to satisfy the statute of limitations.

1. Rule 9(b) Particularity
Fed.R.Civ.P. 9(b) states:
(b) Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                Page 13

Not Reported in F.Supp., 1996 WL 363156 (S.D.N.Y.)

**(Cite as: 1996 WL 363156 (S.D.N.Y.))**

The purpose of Rule 9(b) is threefold: it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from "improvident charges of wrongdoing," and to protect the defendant from the institution of a strike suit. *O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir.1991). In reviewing a decision to dismiss on 9(b) grounds, the truth of plaintiff's allegations is assumed. *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987). The pleadings must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements. *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989); *see also McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir.1992); *June Ox v. Union Central Life Ins. Co.*, No. 94-CIV-4754, 1995 WL 296541, at *3 (S.D.N.Y. May 15, 1995). Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud. *DiVittorio*, at 1247. Finally, the complaint must assert that the defendant had an intent to defraud, or allege circumstances from which an inference of such intent may be drawn. *Id.*; *see Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987), *cert. denied*, 484 U.S. 1005 (1988), *overruled en banc on other grounds, United States v. Indelicato*, 865 F.2d 1370 (2d Cir.1989).

Rule 9(b) is to be construed in light of Rule 8's more lenient pleading requirement of "a short and plain statement of the claim." *Keenan v. D.H. Blair & Co., Inc.*, 838 F.Supp. 82, 86 (S.D.N.Y.1993). Thus, when the facts are peculiarly within the opposing party's knowledge, a plaintiff may base his allegations upon information and belief. *DiVittorio*, 822 F.2d at 1247. However, that exception to Rule 9(b)'s particularized pleading requirement "does not constitute a license to base claims of fraud on speculation or conclusory allegations." *Karasyk v. Marc Commodities Corp.*, 770 F.Supp. 824, 830 (S.D.N.Y.1991). Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud, or it will not satisfy a relaxed pleading standard. *Id.*

*15 In this case, the Court finds nothing improper about Philip Morris having pleaded its fraud claims on information and belief, given the reality that a bid rigging conspiracy is by its nature self-concealing. This reality does not release a plaintiff from its burden under Rule 9(b), however. While this standard is normally strict, the Court will relax it in a case where the Plaintiff demonstrates that the Defendants' own conduct has interfered with the discovery of facts necessary to properly plead fraud. *See Bethlehem Steel Corp. v. Fischbach and Moore, Inc.*, 641 F.Supp. 271, 276 (E.D.Pa.1986) ( Rule 9(b) satisfied where plaintiff alleges general time frame, the bid-rigging, its reliance on the conduct and the alleged damage).
Philip Morris has not so demonstrated here. While it has stated that "certain of the facts upon which this [complaint] is based are solely within the defendants' knowledge," (Amend.Compl. at 14, n. 1), it has not shown what efforts it has undertaken to discover the necessary facts, explained the problems encountered in doing so, or alleged other information inferring the existence of such facts.
On the contrary, the company's cooperation agreements with Cappelli and Clemence, both of whom are alleged to have been key players in the fraudulent schemes, indicate that it has access to more detailed information concerning the alleged fraud. Yet, with the exception of certain instances in which bribes are claimed to have been paid, Philip Morris has largely failed to plead these particulars. *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986). Unlike antitrust actions, fraud claims require more than simple notice pleading. If Philip Morris knows specifics about when and how the supposed misrepresentations occurred, it should plead them. If it does not, it should explain why not. As it stands now, Rule 9(b) has not been satisfied. Accordingly, Counts V, VI and VII [FN4] are dismissed. Philip Morris is granted leave to replead within 60 days.

> FN4. Although Heinrich has not submitted a brief requesting that Count VII be dismissed, the Court does so *sua sponte*.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 14

Not Reported in F.Supp., 1996 WL 363156 (S.D.N.Y.)

**(Cite as: 1996 WL 363156 (S.D.N.Y.))**

*Fischer v. Yaakov,* 575 N.Y.S.2d 310, 310 (App.Div. 1st Dep't 1991).

### 2. Scienter

Assuming that the fraud counts are repleaded in conformity with Rule 9(b), the Court holds that they properly plead scienter. While Rule 9(b) itself relaxes the scienter requirement, the Plaintiff must still plead a factual basis sufficient to raise a "strong inference" of knowledge. *O'Brien,* 936 F.2d at 676. The Amended Complaint contains numerous facts showing conscious behavior on the part of all the Defendants involved in the alleged fraud to hide from Philip Morris the bid-rigging scheme.

### 3. Duty to Disclose

Some Defendants claim that they have no liability for fraud, based upon concealment or omission, because they had no duty to disclose the information that was allegedly concealed. Contrary to Defendants' arguments, however, in a case such as this, where they are accused of bid-rigging, Defendants have a duty to disclose regardless of whether they have a fiduciary or confidential relationship with the Plaintiff. *Three Crown Ltd. Partnership v. Caxton Corp.,* 817 F.Supp. 1033, 1049 (S.D.N.Y.1993) (duty to disclose where defendants create "artificial market" or "price mirage").

### 4. Statute of Limitations

*16 In New York, an "action for fraud must be commenced within six years of the commission of the fraud or within two years from its discovery, whichever is longer." *Chase v. Columbia Nat'l Corp.,* 832 F.Supp. 654, 659 (S.D.N.Y.1993); N.Y.Civ.Prac.L. & R. 208(g), 213(8) (McKinney 1990 and Supp.1995). As the claims have been dismissed for failure to plead with particularity, the Court need not determine whether the statute of limitations has been satisfied. Furthermore, since the counts do not specify when the alleged acts of fraud were committed or discovered, the Court *cannot* determine their timeliness. If the claims are properly repleaded, the Court will assess their conformity with the statute of limitations at that time.

### E. Breach of Fiduciary Duty

Count VIII states a claim for breach of fiduciary duty against Heinrich while Counts IX and X allege breach of fiduciary duty of another [FN5] against the Mounting and Finishing Vendors and the Corrugated Vendors, respectively. Most Defendants have moved to dismiss these claims citing the statute of limitations. New York provides no express statute of limitations for breach of fiduciary duty claims. *Mejia-Ricart v. Bear Stearns & Co.,* No. 95-CIV-582, 1996 WL 94810, at *3 (S.D.N.Y. Mar. 4, 1996). Courts have applied either a three-year or six-year limitations period, depending on the nature of the substantive relief sought. *Ghandour v. Shearson Lehman Bros. Inc.,* 624 N.Y.S.2d 390, 392 (App.Div. 1st Dep't 1995). When the only damages sought are legal, the statute of limitations is generally three years. Where the nature of the relief sought is equitable, the claim is governed by a six-year statute of limitations. *Toto v. McMahan, Brafman, Morgan & Co.,* No. 93-CIV-5894, 1995 WL 46691, at *11 (S.D.N.Y.1995); *see also Renz v. Beeman,* 589 F.2d 735, 749 (2d Cir.1978) (six-year period applied where plaintiff sought imposition of constructive trust), *cert. denied,* 444 U.S. 834 (1979); *Loengard v. Santa Fe Indus., Inc.,* 70 N.Y.2d 262, 266-67, 519 N.Y.S.2d 801, 803-04 (1987) (where breach of fiduciary obligation claim is equitable in nature, six-year statute of limitations governs). Furthermore, courts have applied the six-year period when the plaintiff's claim has its genesis in the parties' contractual relationship. *Mejia-Ricart,* 1996 WL 94810, at *3; *Varnberg v. Minnick,* 760 F.Supp. 315, 333 (S.D.N.Y.1991).

> FN5. The parties have variously characterized this cause of action as aiding and abetting breach of fiduciary duty and inducement to breach of fiduciary duty. The particular label used to describe the substantive action is irrelevant for purposes of this discussion.

While the Plaintiff in this case seeks only damages against the Vendor Defendants in Counts IX and X, it requests equitable relief against Heinrich in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                  Page 15

Not Reported in F.Supp., 1996 WL 363156 (S.D.N.Y.)

**(Cite as: 1996 WL 363156 (S.D.N.Y.))**

Counts XIV and XV in the form of a constructive trust and forfeiture. These counts indirectly reference Count VIII, noting Heinrich's acceptance of bribes and "disloyalty" during his period of employment. Given the nature of the relief sought against Heinrich, as well as the fact that the breach of fiduciary duty claim against him arises from his alleged violations of his employment terms, the Court will apply a six-year statute of limitations to the claim against Heinrich.

*17 The Court rejects Philip Morris' contention that *Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d 15, 19 (2d Cir.1983), establishes a six-year statute of limitations for aiding and abetting breach of fiduciary duty. *Dolmetta* simply held that the purported aiding and abetting breach of fiduciary duty claim at issue, in reality, amounted to nothing more than a simple fraud and thus was subject to the statute of limitations for fraud. In fact, courts in this district have interpreted New York law to apply a three-year statute of limitations to claims for inducing breach of fiduciary duty. *Fireman's Fund Ins. Co. v. Fraund*, No. 88-CIV-2765, 1989 WL 31490, at *9 (S.D.N.Y. March 31, 1989); *Whitney v. Citibank*, No. 81-CIV-5832, 1985 WL 566, at *5 (S.D.N.Y. April 19, 1985) (dictum).

Philip Morris filed its original complaint on January 17, 1995. Claims accruing against Heinrich prior to January 17, 1989 and against the remainder of the Defendants prior to January 17, 1992 must be dismissed as time-barred. As Philip Morris has alleged bid-rigging through 1991, Count VIII against Heinrich is timely. [FN6] Counts IX and X, against the remaining Vendor Defendants, are not. Accordingly, Counts IX and X are dismissed, while Count VIII survives.

> FN6. While Heinrich has not raised any arguments for dismissal of this claim, the Court notes in passing that Count VIII need not be pleaded with particularity.

F. Commercial Bribery

Counts XI and XII allege commercial bribery against the Mounting and Finishing and Corrugated Vendor Defendants respectively, while Count XIII charges Heinrich with commercial bribe receiving. All three counts derive from the New York State Penal Law. N.Y. Penal Law §§ 180.03, 180.08 (McKinney 1988). The Defendants move to dismiss Counts XI and XII, arguing that there is no private cause of action for violations of the penal code, that they fail to satisfy the statute of limitations and that they are not pleaded with particularity.

In a similar case involving the Texas Commercial Bribery statute, this Court refused to imply a private right of action under the penal statute where one did not expressly exist.

> No case has come to the Court's attention in which a private cause of action for commercial bribery has been implied under this statute. In the absence of any guidance from state courts, federal courts are hesitant to imply private rights of action from state criminal statutes. Moreover, courts should consider whether a private right of action is necessary to protect the intended beneficiaries of a statute when determining whether to imply a private right of action.

*In re Integrated Resources, Inc. Real Estate Ltd. Partnership Sec. Lit.*, 851 F.Supp. 556, 564 (S.D.N.Y.1994) (citation omitted). The Court also noted that there was no reason to imply a private right of action because if the plaintiffs' allegations had merit, they would be entitled to recover on their common law claims for breach of fiduciary duty. *Id.* While this case involved Texas law, it is nonetheless instructive. As was true in *Integrated Resources*, if Philip Morris' allegations had been timely and properly pleaded, it would have been entitled to recover for both common law fraud and breach of fiduciary duty. Thus, it seems equally unnecessary to create a private right of action arising from New York penal law in this instance.

*18 Furthermore, New York case law is far from clear as to whether a private cause of action exists for New York's Commercial Bribery statute. Some older cases, cited by Philip Morris, seem to accept the possibility, but fall short of affirmatively establishing such a cause of action. *Galella v. Onassis*, 353 F.Supp. 196, 227 (S.D.N.Y.1972)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.     Page 16
Not Reported in F.Supp., 1996 WL 363156 (S.D.N.Y.)

**(Cite as: 1996 WL 363156 (S.D.N.Y.))**

(violations of a prohibitory statute give rise to tort liability), *rev'd on other grounds,* 487 F.2d 986 (2d Cir.1973); *Shemin v. A. Black & Co.,* 240 N.Y.S.2d 622 (App.Div. 1st Dep't 1963) (tacitly acknowledging existence of private right of action, but noting that claim not proven); *31 Hillside Realty Corp. v. Norton,* 101 N.Y.S.2d 437, 440 (Special Term, Bronx Co.1950) (where violation is punishable by penal law, there is no reason why it should not be actionable civilly); *see also Texwood Ltd v. Gerber,* 621 F.Supp. 585, 589-90 (S.D.N.Y.1985) (noting lack of cited authority for proposition that private right of action exists under commercial bribery statute, but allowing that employer may recover bribes paid to employee in violation). Recent case law, however, has cast doubt upon the vitality of these earlier decisions. *Curiale v. Capolino,* 883 F.Supp. 941, 948 (S.D.N.Y.1995) (citing *CPC Int'l v. McKesson Corp.,* 70 N.Y.2d 268, 275-76, 519 N.Y.S.2d 804, 807-08 (1987) (rejecting implied private causes of action for two regulatory statutes)). The New York Court of Appeals has stated that the Legislature should specify in the statute itself whether private litigants are intended to have a cause of action under its provisions. *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 325, 464 N.Y.S.2d 712, 716 (1983). Absent such a directive, the courts are to determine themselves, considering such factors as legislative history, consistency with the overall legislative scheme of creating the private right and whether the plaintiff is one of the class for whose special benefit the statute was enacted. *Id.* Given the lack of any clear guidance from the New York courts on this issue, the Court adopts the logic of *Integrated Resources,* declining the invitation to imply a private cause of action under New York's Commercial Bribery statute.

Even if there were a private right of action, the Court holds that the applicable statute of limitations period is three years. Thus, the claims are untimely anyway. Counts XI, XII and XIII are dismissed. [FN7]

> FN7. Once again, the Court dismisses the claim against Heinrich *sua sponte*. The cause of action cannot be maintained given the Court's view that such a private right has not been established.

G. The Government's Motions to Intervene And Stay Discovery

Rule 24(a) of the Federal Rules of Civil Procedure provides that a party may intervene as of right in an action "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest...." Fed.R.Civ.P. 24(a)(2). Alternatively, Rule 24(b) permits permissive intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed.R.Civ.P. 24(b)(2). As a rule, district courts in this Circuit have allowed the government to intervene in civil actions, especially when the government wishes to do so for the limited purpose of moving to stay discovery. *Twenty First Century Corp. v. LaBianca,* 801 F.Supp. 1007, 1009 (E.D.N.Y.1992). In this civil case, as in *LaBianca,* the Government seeks to intervene to protect its companion criminal prosecution from prejudice. Because the Government has a limited purpose for intervention--moving to stay civil discovery by way of interrogatories and depositions, excluding document discovery, however, pending disposition of the criminal case--this intervention will not "unduly delay or prejudice the adjudication." Fed.R.Civ.P. 24(b)(2). In such circumstances, a district court does not abuse its discretion in allowing intervention under either of the provisions of Rule 24. *LaBianca,* 801 F.Supp. at 1009 (citing *SEC v. Chestman,* 861 F.2d 49, 50 (2d Cir.1988)). Therefore, the Government's motion to intervene is granted.

*19 A federal district court has the inherent discretionary power to stay an action. *Id.* at 1010. Granting a stay of a civil proceeding to await the outcome of a pending parallel criminal investigation is appropriate when the interests of justice seem to require such action. The Court must balance the competing interests of the litigants, non-parties, the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 17

Not Reported in F.Supp., 1996 WL 363156 (S.D.N.Y.)

**(Cite as: 1996 WL 363156 (S.D.N.Y.))**

public interest and the convenience of the courts in making such determinations. *Id.* The Government contends that if the civil discovery is not stayed, the criminal investigation will be prejudiced, as the Defendants may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules. The Court holds that this justification provides grounds for granting the stay. In consideration of the Defendants' interest in expediting litigation of the civil suit, however, discovery (excluding document discovery) is stayed only through December 31, 1996, without prejudice to the Government's right to request an extension should one become necessary. The Government, of course, will have to make such a request and demonstrate its necessity prior to the stay's expiration.

H. *Ex Parte* Status Of Government Affidavit

The Court has not considered the affidavit submitted *ex parte* and will not do so for purposes of deciding the cross-motion for a show cause hearing. Thus, as the document is irrelevant to a determination, it need not be turned over to the Defendants. The Defendants are directed to submit their reply brief on the cross-motion, without reference to the unreviewed *ex parte* affidavit, within 20 days of the date of this decision.

III. Conclusion

The motions to dismiss Counts I-IV alleging Sherman Act and Donnelly Act claims are denied as to claims which accrued subsequent to March 4, 1989 and granted as to claims which accrued prior March 4, 1989. Philip Morris is granted leave to replead fraudulent concealment within 60 days of the date hereof.

The motions to dismiss Counts V-VI, sounding in common law fraud, are granted, and Count VII is dismissed *sua sponte,* without prejudice to Philip Morris' right to replead the alleged fraud with particularity within 60 days of the date hereof.

The Court retains Count VIII against Heinrich for breach of fiduciary duty.

The motions to dismiss Counts IX-X, for breach of fiduciary duty of another, are granted, with leave for Philip Morris to replead fraudulent concealment within 60 days of the date hereof.

The motions to dismiss Counts XI-XIII, alleging commercial bribery and commercial bribe receiving, are granted.

The government's motion to intervene is granted, and its motion for a stay of discovery (excluding document discovery) is granted, such stay to expire on December 31, 1996 unless, by application made prior to that date, the government shows reason for an extension thereof.

SO ORDERED.

Not Reported in F.Supp., 1996 WL 363156 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

- 1:95cv00328  (Docket)
                                     (Jan. 17, 1995)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.