UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
WORLD WRESTLING ENTERTAINMENT, INC.

                           :

             Plaintiff,                  04 CV 8223 (KMK)

        v.                   :          (ECF CASE)

JAKKS PACIFIC, INC.; JAKKS PACIFIC (H.K.)  :
LIMITED; ROAD CHAMPS LIMITED; THQ,
INC.; THQ/JAKKS PACIFIC LLC; STANLEY    :
SHENKER AND ASSOCIATES, INC.; STANLEY
SHENKER; BELL LICENSING, LLC; JAMES    :
BELL; JACK FRIEDMAN; STEPHEN BERMAN;
JOEL BENNETT; and BRIAN FARRELL,      :

             Defendants.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# REPLY MEMORANDUM OF LAW IN SUPPORT OF THE JAKKS DEFENDANTS' MOTION TO DISMISS THE RICO AND ROBINSON PATMAN ACT CLAIMS IN THE AMENDED COMPLAINT

FEDER, KASZOVITZ, ISAACSON,
  WEBER, SKALA, BASS & RHINE LLP
Murray L. Skala (MS 9354)
Jonathan D. Honig (JH 7577)
750 Lexington Avenue
New York, New York 10022
Phone: (212) 888-8200
Fax: (212) 888-5968

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Jonathan J. Lerner (JL 7117)
Michael H. Gruenglas (MG 8705)
James Keyte (JK 0680)
Maura B. Grinalds (MG 2836)
Four Times Square
New York, New York 10036
Phone: (212) 735-3000
Fax: (212) 735-2000

Attorneys for the JAKKS Defendants

October 4, 2005

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   I.     WWE FAILS TO REBUT JAKKS' SHOWING THAT THE RPA
          IS INAPPLICABLE TO THE INTANGIBLE LICENSE RIGHTS
          AT ISSUE HERE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   II.    WWE HAS NOT PLED A COGNIZABLE RICO ENTERPRISE . . . . . . . . . . . 12

        A.    The Second Circuit Requires That Plaintiff Demonstrate That
              the Alleged RICO Enterprise Has an Existence Separate and
              Apart from the Alleged Predicate Acts . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        B.    WWE Failed to Allege the "Hierarchy, Organization, and
              Activities" of the So-Called Enterprise . . . . . . . . . . . . . . . . . . . . . . . . . 18

        C.    The Enterprise Lacks Any Purpose Beyond the Predicate Acts . . . . . . . . 19

        D.    The Cases Relied on By WWE Are Inapposite . . . . . . . . . . . . . . . . . . . 21

        E.    Under Any Standard, WWE Has Not Alleged the Existence
              of a Cognizable RICO Enterprise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

i

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

Aiu Insurance Co. v. Olmecs Medical Supply, Inc., No. CV-04-2934 (ERK),
   2004 WL 3270060 (E.D.N.Y. Feb. 22, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Abbott Laboratories v. Portland Retail Druggists Association,
   425 U.S. 1 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Allen v. New World Coffee, Inc., No. 00 Civ. 2610 (AGS),
   2002 WL 432685 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Amsterdam Tobacco Inc. v. Phillip Morris Inc.,
   107 F. Supp. 2d 210 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Bank v. Brooklyn Law School, No. 97-CV-7470 (JG),
   2000 WL 1692844 (E.D.N.Y. Oct. 6, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 21

Biddle Purchasing Co. v. FTC, 96 F.2d 687 (2d Cir. 1938) . . . . . . . . . . . . . . . . . . . . . . . . . 8

Black Radio Network, Inc. v. NYNEX Corp., 44 F. Supp. 2d 565 (S.D.N.Y. 1999) . . . . . . 13, 19

Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.,
   113 F. Supp. 2d 345 (E.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Blue Tree Hotels Investment (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,
   369 F.3d 212 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

Calcasieu Marine National Bank v. Grant, 943 F.2d 1453 (5th Cir. 1991) . . . . . . . . . . . . . . . 13

Chang v. Chen, 80 F.3d 1293 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

City of New York v. Cyco.Net, Inc., No. 03 CV 383 DAB,
   2005 WL 174482 (S.D.N.Y. Jan. 27, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229 (2d Cir. 1999) . . . . . . . . . . 20

Dale v. Banque SCS Alliance S.A., No. 02 Civ. 3592 (RCC) (KNF),
   2005 WL 2347853 (S.D.N.Y. Sept. 22, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15

Dibbs v. Roldan, 356 F. Supp. 2d 340 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Dietrich v. Bauer, 76 F. Supp. 2d 312 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Discon, Inc. v. NYNEX Corp., 93 F.3d 1055 (2d Cir. 1996),
     rev'd on other grounds, 525 U.S. 128 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Empire State Pharmaceutical Soc., Inc. v. Empire Blue Cross and Blue Shield
     of Greater New York, 718 F. Supp. 1253 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . 9

Federal Paper Board Co. v. Amata, 693 F. Supp. 1376 (D. Conn. 1998) . . . . . . . . . . . . . . . . . 11

Feinberg v. Katz, No. 99 CIV. 45 (CSH), 2002 WL 1751135
     (S.D.N.Y. July 26, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

First Capital Asset Management, Inc. v. Satinwood, Inc.,
     385 F.3d 159 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . 2, 3, 4, 12, 13, 14, 15, 18, 21, 22, 24

First Nationwide Bank v. Gelt Funding Corp.,
     820 F. Supp. 89 (S.D.N.Y. 1993), aff'd, 27 F.3d 763 (2d Cir. 1994) . . . . . . . . . . . . . . . 19

Freeman v. Chicago Title & Trust Co., 505 F.2d 527 (7th Cir. 1974) . . . . . . . . . . . . . . . . . . 6, 7

FTC v. Henry Broch & Co., 363 U.S. 166 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 10, 11

GICC Capital Corp. v. Technology Finance Group, Inc.,
     67 F.3d 463 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Goldfine v. Sichenzia, 118 F. Supp. 2d 392 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . 13, 19, 24

Gordon v. New York Stock Exchange, Inc., 498 F.2d 1303,
     aff'd, 422 U.S. 659 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Hansel 'N Gretel Brand, Inc. v. Savitsky, No. 94 Civ. 4027 (CSH),
     1997 WL 543088 (S.D.N.Y. Sept. 3, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Harris v. Duty Free Shoppers Ltd. Partnership, 940 F.2d 1272 (9th Cir. 1991) . . . . . . . . . . . . 6

Heffernan v. HSBC Bank USA, No. 1:99 CV07981, 2001 WL 803719
     (E.D.N.Y. Mar. 29, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19

Hill v. Didio, No. 05CV1220FBLB, 2005 WL 1711164
     (E.D.N.Y. July 20, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Humphrey's Executor v. United States, 295 U.S. 602 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Ideal Plumbing Co. v. Benco, Inc., 529 F.2d 972 (8th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . 10

International Telecom, Inc. v. Generadora Electrica Del Oriente,
    No. 00 Civ. 8695 (WHP), 2002 WL 465291 (S.D.N.Y. Mar. 27, 2002) . . . . . . . . . . . . 17

Kadouri v. Fox, No. 03 CV 1725 (NG),
    2005 WL 783255 (E.D.N.Y. Jan. 24, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Leonard v. J.C. Pro Wear, Inc., No. 94-1498, 1995 WL 508894
    (4th Cir. Aug. 29, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

May Department Store v. Graphic Process Co., 637 F.2d 1211 (9th Cir. 1980) . . . . . . . . . . . 6, 7

Moss v. Morgan Stanley, Inc., 719 F.2d 5 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

Moy v. Terranova, No. 87 CV 1578(SJ), 1999 WL 118773
    (E.D.N.Y. Mar. 2, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Patterson v. Ford Motor Credit Co., No. 98-2774, 2000 WL 123943
    (4th Cir. Feb. 2, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Phillip Morris, Inc. v. Grinnell Lithographic Co.,
    67 F. Supp. 2d 126 (E.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Richmond v. Nationwide Cassel L.P., 52 F.3d 640 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . 13

Rodman v. Haines, No. 75 Civ. 471 (CLB), 1976 WL 1315
    (S.D.N.Y. Sept. 14, 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Salinas v. United States, 522 U.S. 52 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Schmidt v. Fleet Bank, 16 F. Supp. 2d 340 (S.D.N.Y. 1998) . . . . . . . . . . . . . . 13, 14, 18, 19, 24

In re South Africa Apartheid Litigation,
    346 F. Supp. 2d 538 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

State Farm Mutual Automobile Insurance Co. v. CPT Medical Services, P.C.,
    375 F. Supp. 2d 141 (E.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Union City Barge Line, Inc. v. Union Carbide Corp., 823 F.2d 129 (5th Cir. 1987) . . . . . . . . . 7

United Healthcare Corp. v. American Trade Insurance Co.,
    88 F.3d 563 (8th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Anderson, 626 F.2d 1358 (8th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

United States v. Aulicino, 44 F.3d 1102 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

United States v. Bagaric, 706 F.2d 42 (2nd Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . 16, 17, 21, 22

United States v. Console, 13 F.3d 641 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Coonan, 938 F.2d 1553 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 21

United States v. Feldman, 853 F.2d 648 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

United States v. Ferguson, 758 F.2d 843 (2nd Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

United States v. Mazzei, 700 F.2d 85 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 22

United States v. Smith, 413 F.3d 1253 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Tillett, 763 F.2d 628 (4th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Triumph Capital Group, Inc.,
    260 F. Supp. 2d 444 (D. Conn. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States v. Turkette, 452 U.S. 576 (1981) . . . . . . . . . . . . . 3, 4, 12, 13, 15, 16, 17, 18, 19, 21

Wagh v. Metris Direct, Inc., 348 F.3d 1102 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## STATUTES

15 U.S.C. § 13(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 8

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## OTHER AUTHORITIES

14 Philip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 2362a
    (2d ed. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

1 ABA Section on Antitrust Law, Antitrust Law Developments 499 n.302
    (5th ed. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

v

RICO: Civil and Criminal Law Strategy, § 105[1], & n.7, § 5.09
        (Jed S. Rakoff & Howard W. Goldstein eds., 2005) . . . . . . . . . . . . . . . . . . . . . . 14, 16, 17

Gregory P. Joseph, Civil RICO: A Definitive Guide 69 (2d ed. 2000) . . . . . . . . . . . . . . . . . . . . 16

Pursuant to the Court's Order dated August 18, 2005, Defendants JAKKS Pacific, Inc.,

JAKKS Pacific (H.K.) Limited, Road Champs Limited, Jack Friedman, Stephen Berman and Joel

Bennett (collectively "Defendants") respectfully submit this reply memorandum of law in further

support of their motion to dismiss the Racketeer Influenced and Corrupt Organizations Act

("RICO") and Robinson-Patman Act ("RPA") claims in the Amended Complaint (the "Amended

Complaint" or "AC") of World Wrestling Entertainment, Inc. ("WWE"), pursuant to Federal

Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

The last time WWE approached the day of reckoning when it was required by this Court

to respond to Defendants' arguments demonstrating WWE's failure to state a claim under RICO

and the RPA, it attempted to hide behind its newly issued Amended Complaint, abruptly filed on

the eve of its deadline to submit its opposition brief. Months passed while the Court and

Defendants tried in vain to elicit from WWE how, if at all, its Amended Complaint addressed the

dispositive arguments in Defendants' dismissal briefs, including those leveled against its RPA

claim and the RICO "enterprise" requirement. Insisting that it will now stand on its current

complaint (8/8/05 Hearing Transcript at 24:12-25:9) and facing – at long last – the need to

defend its legally defective allegations – WWE has been forced to resort to a new strategy:

rewriting the law.

First, Defendants' Motion to Dismiss WWE's RPA claim established that every court to

address the issue has held that Section 2(c) of the RPA is limited to transactions in connection

with "goods, wares, or merchandise," 15 U.S.C. § 13(c) and, therefore, does not extend to

intangible rights, such as the intellectual property licenses at issue in this action. WWE does not

dispute, and cannot dispute, that this action does not implicate "goods, wares or merchandise" (as targeted by the statute), but rather involves intangible licenses. Instead, WWE audaciously asks this Court to erase 70 years of settled jurisprudence and ignore the legislative history of Section 2(c), which unequivocally establishes that Congress limited Section 2(c) to payments related to goods, wares, or merchandise. Casting aside this uniform controlling authority, WWE urges the Court to adopt its ipse dixit rewriting of Section 2(c) based on the location of a comma in the statute, which creates a bizarre interpretation of the RPA that makes no sense, regardless of punctuation. WWE's stubborn insistence on defending its RPA claim goes far beyond the bounds of Rule 11; its RPA claim must be dismissed as a matter of law.

Of similar ilk is WWE's response to the controlling Second Circuit authority, most recently articulated by the Court of Appeals in First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159, 174 (2d Cir. 2004) that to state a claim under 18 U.S.C. § 1962(c) WWE must allege a RICO enterprise that is "separate and distinct from the alleged predicate racketeering acts themselves." Under First Capital, where, as here, the alleged enterprise is an "association-in-fact" enterprise, the plaintiff also must allege the existence of an ongoing organization, formal or informal, that functions as a continuing unit and has sufficient hierarchy, organization and activities from which the court can conclude that its "'members functioned as a unit'" associated for a "'common purpose.'" See First Capital, 385 F.3d at 174 (citation omitted). On its face, WWE's Amended Complaint, which persists in defining the alleged "association-in-fact enterprise" comprised of all of the Defendants solely by the alleged predicate acts – without any other structure, ongoing organization or any other activities or purpose outside of these alleged acts – flunks this basic test. (AC ¶ 244.)

2

In response to this dispositive authority, WWE resorts to revisionist legal history and, with characteristic exaggeration, chastises Defendants for their purportedly "fundamentally misleading" citation to First Capital (WWE 9/19/05 Brief (hereinafter "WWE Br.") at 16), which WWE claims "did not, and could not depart from long-established Second Circuit precedent," which it asserts Defendants have "studiously ignored." (Id.) In truth, it is WWE that has studiously ignored controlling authority, not only First Capital but the actual holding of the seminal Supreme Court decision upon which First Capital relied, United States v. Turkette, 452 U.S. 576, 583 (1981). Indeed, within a breath of accusing Defendants of misleading the Court, WWE disingenuously selectively quotes Turkette as acknowledging that the evidence used to prove the existence of a RICO enterprise and the predicate acts constituting the pattern of racketeering activity "may in particular cases coalesce" – as if that ends the inquiry and allows WWE to use its predicate acts to also constitute its "enterprise." WWE omits the full text of the Supreme Court's discussion which demolishes WWE's entire position, plainly stating:

> While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government.

Turkette, 452 U.S. at 583 (emphasis added). Contrary to WWE's assertion, the Second Circuit never rejected – nor could it have – this fundamental requirement of demonstrating the existence of an enterprise "separate and apart" from the underlying predicate acts.

Notwithstanding WWE's desperate contention that First Capital improperly overruled long-standing precedent, it is, in fact, fully consistent with Turkette and its progeny in this

3

Circuit, requiring a plaintiff to allege facts showing a discernable enterprise distinct from the underlying predicate acts.  Not surprisingly, First Capital, has been uniformly followed in this Circuit on this very issue, and not a single decision has expressed the confusion professed by WWE.  See, e.g., Dale v. Banque SCS Alliance S.A., No. 02 Civ. 3592 (RCC) (KNF), 2005 WL 2347853, at *7 (S.D.N.Y. Sept. 22, 2005) (dismissing RICO claim where alleged association-in-fact enterprise did "not have any alleged existence apart from the pattern of racketeering activity" and therefore "does not satisfy the requirement noted in First Capital."); see also cases cited at § II.A, infra.

Given WWE's erroneous position that it need not allege a RICO enterprise that exists separate and apart from the predicate acts, it is hardly surprising that WWE has made no attempt to meet this requirement.  In fact, WWE expressly concedes, as it must, that the alleged enterprise has no other structure or course of conduct apart from the alleged predicate acts:  "[Defendants] acting in concert, comprised an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) through a pattern of racketeering activity as set forth below for the purpose of conducting the unlawful activities described herein."  (AC ¶ 244 (emphasis added).)  Because the enterprise alleged by WWE is nothing more than the purported predicate acts – in derogation of the fundamental enterprise pleading requirements mandated by the Supreme Court in Turkette and its progeny – WWE's RICO claim must be dismissed as a matter of law.

* * *

As shown below, WWE's resort to legal legerdemain to salvage its pleading fails as a matter of law.  Because WWE has already amended its complaint, and has insisted that it will

4

stand on its Amended Complaint – with full knowledge of the fatal legal deficiencies identified

by Defendants – we respectfully submit that dismissal of these claims should be with prejudice.

## ARGUMENT

**I.    WWE FAILS TO REBUT JAKKS' SHOWING THAT THE RPA IS INAP-PLICABLE TO THE INTANGIBLE LICENSE RIGHTS AT ISSUE HERE**

As set forth in JAKKS' Moving Brief, the protections of Section 2(c) of the RPA extend

only to the purchase or sale of "goods, wares, or merchandise," and do not apply to transactions

involving intangible rights or services. (See JAKKS Moving Br. at 11-14.)  Accordingly, WWE

fails to state an RPA claim because the WWE licenses are indisputably intangible rights outside

the purview of Section 2(c) of the RPA.  See 15 U.S.C. § 13(c).

In seeking to avoid dismissal of its RPA Section 2(c) claim, WWE has asked the Court

magically to transport itself back 70 years and pretend that no court – including the Second

Circuit – has ever decided that Section 2(c), like the entire RPA, is limited to "goods, wares, or

merchandise." 15 U.S.C. § 13(c).  And were that not enough, WWE also urges this Court to

imagine that there is no legislative history of Section 2(c) establishing that it was intended by

Congress to be limited to goods, wares, or merchandise.

The reasons for this truly bizarre attempt to conjure up a tabula rasa for interpreting

Section 2(c) are simple.  First, WWE does not, and cannot, deny that this case does not involve

goods, wares, or merchandise.  Second, every court at every level that has addressed this issue

has held – supported by clear legislative history – that Section 2(c) applies only to goods.  Unless

WWE can persuade this Court literally to ignore the doctrine of stare decisis altogether, there is

nothing to debate.

For ease of review, we start at the top – with the United States Supreme Court. In <u>FTC v.</u>

<u>Henry Broch & Co.</u>, 363 U.S. 166, 174 (1960), which WWE itself cites, the Court examined the

legislative intent behind Section 2(c), concluding that "Congress enacted the Robinson-Patman

Act to prevent sellers and sellers' brokers from yielding to pressures of a large buying organiza-

tion by granting unfair preferences <u>in connection with the sale of goods.</u>" <u>Id.</u> (emphasis added).

The language used by the Court in <u>Broch</u> is unequivocal that Section 2(c) is to be limited to "the

sale of goods," and that such a limitation was expressly intended by Congress. There is no

contrary Supreme Court authority.[1]

At the circuit level, courts also uniformly agree that the protections of Section 2(c) extend

only to transactions involving tangible goods. <u>See</u> <u>Patterson v. Ford Motor Credit Co.</u>, No.

98-2774, 2000 WL 123943, at *3 (4th Cir. Feb. 2, 2000) (unpublished table decision (203 F.3d

821)) (noting that "circuit courts of appeal appear to be in agreement that section 2(c) covers only

transactions that involve the transfer of tangible goods" and affirming dismissal of plaintiff's

claim because the alleged bribe "was connected only to the purchase and transfer of the install-

ment sales contract, [and therefore] was not a transaction in tangible goods within the reach of

section 2(c)"); <u>Harris v. Duty Free Shoppers Ltd. P'ship</u>, 940 F.2d 1272, 1274 (9th Cir. 1991)

(noting that Section 2(c) of the RPA applies to "a transaction involving the sale or purchase of

---

[1] WWE also conveniently ignores the plethora of district court cases cited by JAKKS holding that Section 2(c) covers only tangible goods. (<u>See</u> JAKKS' Moving Brief at 11-14.) Moreover, while WWE argues that cases addressing Section 2(a) of the RPA are irrelevant to this discussion, courts examining the limitations of Section 2(c) often look to Section 2(a) (and the other provisions of the RPA) for support in finding that Section 2(c) only applies to tangible goods. <u>See, e.g.</u>, <u>Freeman v. Chicago Title & Trust Co.</u>, 505 F.2d 527, 529-30 (7th Cir. 1974) (per curiam) (holding that Section 2(c) is limited to sales of goods in part because "courts have consistently interpreted the other provisions of the [RPA] as being restricted to transactions involving tangible products"); <u>accord</u> <u>May Dep't. Store v. Graphics Process Co.</u>, 637 F.2d 1211, 1214 (9th Cir. 1980).

6

goods"); <u>Union City Barge Line, Inc. v. Union Carbide Corp.</u>, 823 F.2d 129, 140 (5th Cir. 1987)

(affirming summary judgment for defendant because "none of the questioned transactions

involved 'goods, wares, or merchandise,' as required by § 2(c) of the [RPA]"); <u>May Dep't Store v.</u>

<u>Graphic Process Co.</u>, 637 F.2d 1211, 1214 (9th Cir. 1980) ("It is necessary for an action under

section 2(c) of the [RPA] that the transactions between the parties constitute a sale of 'goods,

wares, or merchandise' and not merely a contract for services."); <u>Freeman v. Chicago Title &</u>

<u>Trust Co.</u>, 505 F.2d 527, 529-31, 534 (7th Cir. 1974) (per curiam) (holding that legislative

history clearly indicates that RPA Section 2(c) applies only to transactions involving tangible

products, and affirming dismissal of Section 2(c) claim because title insurance is an intangible).

There is no contrary circuit authority.[2]

---

[2]  The Seventh Circuit also directly addressed and rejected the discredited "comma" placement argument
that WWE foists on this Court.  <u>See</u> <u>Freeman</u>, 505 F.2d at 530.  In <u>Freeman</u>, after examining the
legislative history of the RPA and finding that Congress intended Section 2(c) to be limited to the sale of
goods, the Seventh Circuit cited the Supreme Court's observations regarding judicial repunctuation of a
statute:

> Punctuation marks are no part of an act.  To determine the intent of the law, the court, in
> construing a statute, will disregard the punctuation, or will repunctuate, if that be
> necessary, in order to arrive at the natural meaning of the words employed.

<u>Id.</u> (quoting <u>United States v. Shreveport Grain & Elevator Co.</u>, 287 U.S. 77, 82-83 (1932)).  The Seventh
Circuit thus concluded that "it is appropriate to read § 2(c) as though it contained one more comma in
order to effectuate apparent congressional intent."  <u>Id.</u>  Further, while ignoring <u>Freeman</u>, WWE makes
much of the fact that a number of the cases cited in JAKKS' Moving Brief were either decided before or
failed to cite <u>Abbott Laboratories v. Portland Retail Druggists Ass'n</u>, 425 U.S. 1, 12 (1976), a case in
which the Supreme Court recognized the unremarkable proposition that the antitrust laws, and the RPA
in particular, are to be construed liberally, and their exceptions construed narrowly.  The reason that no
case addressing Section 2(c) discusses (or even cites) <u>Abbott Laboratories</u> is because that case has
absolutely nothing to do with the issue of whether Section 2(c) only applies to tangible goods.  The
general proposition that the RPA is to be construed broadly and its exceptions narrowly does not override
the legislative intent or uniform judicial precedent that Section 2(c) is limited to transactions involving
goods, wares, or merchandise.  Not surprisingly, WWE cannot cite a single Section 2(c) case supporting
its position.

The Second Circuit went out of its way in 1975 to state its agreement that Section 2(c) only applies to goods, wares, or merchandise. See Gordon v. N.Y. Stock Exch., Inc., 498 F.2d 1303, 1305 n.7 (2d Cir. 1974), aff'd, 422 U.S. 659 (1975). As it stated:

> Gordon raises on appeal for the first time the claim that the combination of surcharges, volume discounts, and negotiated rates violates 15 U.S.C. § 13(c) (1970), as an allowance or commission not granted for services rendered. Although we decline to entertain the claim because it was not raised in the district court, we note that § 13(c) proscribes such practices only "in connection with the sale or purchase of goods, wares, or merchandise . . . ."

Id. (emphasis added). WWE attempts to seek refuge in the fact that the Second Circuit's agreement came in the form of "dicta." However, while not necessarily binding, dicta "may be followed if sufficiently persuasive." Humphrey's Ex'r v. United States, 295 U.S. 602, 627 (1935). Given the mountain of authority from other jurisdictions, the Second Circuit's clear agreement with the limitation on Section 2(c) certainly fits that category, especially as there is no contrary Second Circuit authority.[3]

Moreover, if the authority of the Supreme Court and all of the circuits on this issue here is not enough, this District, as well, has squarely held that Section 2(c) is so limited. Rodman v. Haines, No. 75 Civ. 471 (CLB), 1976 WL 1315, at *5-6 (S.D.N.Y. Sept. 14, 1976) (Brieant, J.). In Rodman, this Court dismissed a Section 2(c) claim because, as here, the transaction in which

---

[3] Indeed, rather than support WWE's position, the Second Circuit's decision in Biddle Purchasing Co. v. FTC, 96 F.2d 687 (2d Cir. 1938), reinforces the universally accepted view that the "services rendered exception" is an "exception 'for services rendered'" that qualifies the entire Section 2(c), even though it is, according to Judge Swan, "ungrammatically phrased." Id. at 693 (Swan, J., dissenting). This same common sense interpretation is echoed in Blue Tree Hotels Investment (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 223 (2d Cir. 2004) ("The sine qua non of a § 2(c) violation, however, is an improper payment, i.e., a payment of a commission, brokerage, or discount other than for services actually rendered."). If the Second Circuit accepted WWE's absurd construction it would not have truncated the exception at "services actually rendered."

8

the alleged unlawful conduct occurred did not involve goods, wares, or merchandise. The
plaintiff there alleged that the defendants violated Section 2(c) by participating in a scheme in
which bribes were paid in order to obtain favorable recommendations on proposals relating to the
leasing of real estate in shopping centers. The Court first reviewed a number of cases decided
under Section 2(c), finding uniform agreement that the prohibitions of Section 2(c) are "limited
to the context of commercial transactions involving the sale of goods." Id. at *6. The Court then
considered principles of statutory interpretation and legislative intent and found – as the Supreme
Court in Broch and a number of circuit courts have recognized – that with respect to RPA
Section 2(c), "Congress was seeking basically to regulate commercial sales transactions, and
abuses of the brokerage function, whether in the form of bribes, preferences or discounts in sales
of goods." Id. (emphasis added). Accordingly, the court dismissed the plaintiff's RPA Section
2(c) claim because the alleged bribes "[did] not involve abuses of the brokerage function in a
transaction involving the sale of goods." Id.; accord Empire State Pharmaceutical Soc., Inc. v.
Empire Blue Cross and Blue Shield of Greater New York, 718 F. Supp. 1253, 1258 (S.D.N.Y.
1991) (citing, e.g., Rodman in imposing Rule 11 sanctions for RPA claim based on intangible
insurance sales). There is no contrary authority from this District.

     Finally, this limitation on Section 2(c) to goods and merchandise is so established and
uniform that it has been the "black letter law" for years. See 14 Phillip E. Areeda & Herbert
Hovenkamp, Antitrust Law ¶ 2362a, at 220 (2d ed. 2000) ("[T]he articles for which the
brokerage or alternative payment is made must fall into the category of 'goods, wares, or
merchandise.'" (emphasis added)); see also 1 ABA Section of Antitrust Law, Antitrust Law
Developments 499 n.302 (5th ed. 2002) ("Section 2(c) applies only in connection with the sale or

purchase of 'goods, wares, or merchandise,' and not to contracts for services.") (collecting cases).
It is not surprising then that WWE has cited no case squarely holding that Section 2(c) is not
limited to the sale or purchase of goods, or which in any way holds that it applies to transactions
involving intangible rights or services.[4]

Given this uniform line of cases stretching from the Supreme Court to this Court, WWE's
response to the JAKKS Defendants' Section 2(c) argument borders on, if not surpasses, the
frivolous. Shunting aside this uniform authority, WWE proposes a construction of Section 2(c)
that is as nonsensical as it is unprecedented. The single exception permitting certain payments
for "services rendered" was expressly intended to exclude from the ambit of the statute payments
made to a seller or a seller's agent for bona fide brokerage services rendered. See Broch, 363
U.S. at 181-82, n.2 & n.3. Under WWE's contrived construction, the "services rendered
exception" would: (1) permit payments for services rendered in the sale of oranges, but not in
lease of orange groves; or (2) permit payments for services rendered in connection with sales of
electronic games, but not in connection with licenses to produce electronic games. These
nonsensical distinctions would result in imposing greater limitations on transactions involving

_____

[4] WWE cites Phillip Morris, Inc. v. Grinnell Lithographic Co., 67 F. Supp. 2d 126, 128 (E.D.N.Y. 1999),
as applying Section 2(c) to a case of commercial bribery in the sale of lithographic printing services. In
that case, however, the court apparently was not asked to address the issue of whether RPA Section 2(c)
applies to transactions that do not involve goods. The court, therefore, did not make any finding or issue
any holding with respect to this question. WWE also cites Ideal Plumbing Co. v. Benco, Inc., 529 F.2d
972 (8th Cir. 1976), for the proposition that "the terminology 'goods, wares, or merchandise' in the statute
may merely modify the 'services rendered' exception." Id. at 978 n.6 (emphasis added). However, the
Eighth Circuit in Ideal Plumbing was simply noting the shopworn argument, as it also acknowledged that
"courts have . . . required in Section 2(c) actions that the underlying contract be for 'goods, wares, or
merchandise'." Id. (citations omitted) (collecting cases). In fact, earlier in the Ideal Plumbing opinion,
the Eighth Circuit accepted without question that Section 2(c) is limited to "compensation for placing or
obtaining an order for the purchase or sale of goods." Id. at 977 (emphasis added).

intangibles than on those involving the "goods, wares, and merchandise" specifically within the

contemplation of the statute – all to vastly expand the scope of the statute beyond Congress' clear

intent. Asking a court to fictionalize a clean slate and to ignore all relevant case law and

legislative history is a far cry from a legitimate request to extend or modify existing law. On the

contrary, as with all of its other attempts to create federal jurisdiction in this case, WWE's

Section 2(c) "argument" is as reckless as it is desperate, and, accordingly, should be summarily

rejected.[5]

---

[5] Finally, WWE offers nothing to overcome Defendants' showing that its conclusory and wildly speculative allegations of "injury" are not of the type required to state a claim under the RPA. Plaintiffs do not, and cannot, dispute that to have standing under Section 2(c) they must allege facts showing "antitrust injury," i.e., the "type of injury contemplated by the statute," see Blue Tree Hotels, 369 F.3d at 219-20, or that Section 2(c) was intended to address improper payments to camouflage unlawful price discrimination. See Henry Broch & Co., 363 U.S. at 168-69; see also Blue Tree Hotels, 369 F.3d at 221. First, WWE has offered no case sustaining such rank speculation as sufficient to satisfy the antitrust injury requirement. Moreover, WWE's alleged injury is not the "type of injury contemplated by the statute," Blue Tree Hotels, 369 F.3d at 220, because it in no way is related to unlawful price discrimina-tion. See Fed. Paper Bd. Co. v. Amata, 693 F. Supp. 1376, 1388-89 (D. Conn. 1998) (noting that the primary purpose of Section 2(c) was "to close the 'brokerage' loophole in the laws regulating price discrimination," and therefore dismissing Section 2(c) claim based on suppliers' commercial bribery of manufacturer's agent for lack of standing, because such alleged commercial bribery may have increased prices paid by manufacturer but did not result in the "type of injury" for which the RPA was enacted, namely a competitive disadvantage based on price discrimination, as shown by, for example, lost customers resulting from competitors' access to lower prices); see also Blue Tree Hotels, 369 F.3d at 223 n.6 (citing Federal Paper Board, reserving question of whether commercial bribery is actionable under Section 2(c)); Leonard v. J.C. Pro Wear, Inc., No. 94-1498, 1995 WL 508894, at *6-7 (4th Cir. Aug, 29, 1995) (unpublished opinion (64 F.3d 657)) (per curiam) (affirming summary judgment dismissing Section 2(c) claim for lack of antitrust injury because there was no evidence that plaintiffs paid more than competitors). WWE's citation to cases from other circuits on Section 2(c) standing is unavailing.

11

## II.    WWE HAS NOT PLED A COGNIZABLE RICO ENTERPRISE

### A.    The Second Circuit Requires That Plaintiff Demonstrate That the Alleged RICO Enterprise Has an Existence Separate and Apart from the Alleged Predicate Acts

Faced with the unequivocal controlling legal authority embodied in First Capital applying the long-established requirement dictated by the Supreme Court in Turkette, that a RICO enterprise have an ascertainable "structure" separate and distinct from the predicate acts themselves, WWE strains mightily to sustain the legal fiction that the Second Circuit has "rejected" this requirement. (WWE Br. at 13-16.) First Capital squarely held that where, as here, a plaintiff alleges an association-in-fact enterprise, "[t]he enterprise must be separate from the pattern of racketeering activity." First Capital, 385 F.3d at 173. It also is "a requirement in this Circuit" that a RICO plaintiff must "detail a[] *course* of fraudulent or illegal conduct separate and distinct from the alleged predicate racketeering acts themselves." Id., 385 F.3d at 174. The existence of a separate enterprise is pled by allegations describing the "'ongoing organization, formal or informal'" and the "'hierarchy, organization and activities'" of the enterprise that shows that its "'members functioned as a unit.'" Id. (citations omitted). Because WWE's initial complaint failed to allege a RICO enterprise with any of these essential structural characteristics, and because its Amended Complaint did not cure this fatal defect,[6] its RICO claims must be dismissed as a matter of law.

The majority of other Circuits, following the directive of Turkette, have also held that a RICO enterprise must have a discernable structure that is separate and distinct from the pattern of

---

[6] Although the Amended Complaint added fifty pages to the complaint, it did not make any changes to its central RICO enterprise allegation, except to include a new Defendant, Brian Farrell. (AC ¶ 244.)

racketeering activity.[7] Despite WWE's claim that this requirement either was newly minted or

adopted improvidently in First Capital (see WWE Br. at 13, 15-16), district courts in this Circuit,

following Turkette, have also long considered it a central element of the RICO enterprise

analysis. See, e.g., Heffernan v. HSBC Bank USA, No. 1:99 CV07981, 2001 WL 803719, *5

(E.D.N.Y. Mar. 29, 2001) ("The RICO enterprise must have a structure distinct from the pattern

of racketeering activity in which its members engage."); Goldfine v. Sichenzia, 118 F. Supp. 2d

392, 400 (S.D.N.Y. 2000) ("It is firmly established that, to state a claim under RICO, a Plaintiff

must allege and prove the existence of an enterprise which is 'separate and distinct from the

alleged pattern of racketeering activity'"; and dismissing RICO claims because the "alleged

enterprise would not exist but for the alleged pattern of racketeering activity");[8] Amsterdam

---

[7] United Healthcare Corp. v. Am. Trade Ins. Co., 88 F.3d 563, 570 (8th Cir. 1996) ("[A]n enterprise must exhibit three characteristics: '(1) a common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure distinct from that inherent in a pattern of racketeering.'") (citation omitted); United States v. Console, 13 F.3d 641, 650 (3d Cir. 1993) ("[P]roof of a pattern of racketeering activity 'does not necessarily' establish the existence of an enterprise.") (citation omitted); United States v. Tillett, 763 F.2d 628, 631 (4th Cir. 1985) ("[T]he government must prove that the association exists separate and apart from the pattern of racketeering activity in which it engages."); Calcasieu Marine Nat'l Bank v. Grant, 943 F.2d 1453, 1462 (5th Cir. 1991) ("Since an association in fact enterprise must have an existence separate and apart from the pattern of racketeering, proof of a pattern of racketeering activity does not necessarily establish a RICO enterprise."); Richmond v. Nationwide Cassel L.P., 52 F.3d 640, 645 (7th Cir. 1995) ("An enterprise 'must be more than a group of people who get together to commit a 'pattern of racketeering activity,' . . . There must be 'a structure and goals separate from the predicate acts themselves.'") (citations omitted); Wagh v. Metris Direct, Inc., 348 F.3d 1102, 1112 (9th Cir. 2003) ("A RICO plaintiff must allege a structure for the making of decisions separate and apart from the alleged racketeering activities, because 'the existence of an enterprise at all times remains a separate element which must be proved.'") (citation omitted); United States v. Smith, 413 F.3d 1253, 1267 (10th Cir. 2005) ("[T]he Government must prove that the enterprise exists 'separate and apart from the pattern of racketeering activity.'") (citation omitted).

[8] See also, e.g., Schmidt v. Fleet Bank, 16 F. Supp. 2d 340, 349-50 (S.D.N.Y. 1998) ("[T]he RICO enterprise must always have an ascertainable structure distinct from that inherent in the conduct of a 'pattern of racketeering.'"); Black Radio Network, Inc. v. NYNEX Corp., 44 F. Supp. 2d 565, 581 (S.D.N.Y. 1999) (holding that allegations of RICO enterprise failed because the "alleged enterprise . . . would not still exist were the predicate acts removed from the equation.").

Tobacco Inc. v. Phillip Morris Inc., 107 F. Supp. 2d 210, 215 (S.D.N.Y. 2000) (holding that

plaintiff failed to allege a RICO enterprise because "there [was] no legally discernable and

sufficient distinction between the alleged enterprise and the alleged pattern of racketeering

activity."); see also RICO: Civil and Criminal Law and Strategy § 1.05[1], at 1-50 & n.7 (Jed S.

Rakoff & Howard W. Goldstein eds., 2005) ("Most, but not all, courts have interpreted this

aspect of the enterprise element to require that the enterprise have an organization or structure

beyond that which is necessary to commit the racketeering acts.") (citing, e.g., Schmidt, 16 F.

Supp. 2d at 349). Indeed, if a RICO plaintiff could demonstrate an enterprise merely by showing

that a combination of individuals or entities acted together to commit multiple predicate acts, any

purported RICO conspiracy would constitute an enterprise, erasing the statutory distinction

between a RICO conspiracy and a violation of § 1962(c). See Bank v. Brooklyn Law School,

No. 97-CV-7470 (JG), 2000 WL 1692844, at *4 (E.D.N.Y. Oct. 6, 2000) ("§ 1962(c) is not a

mere super-conspiracy statute."). Further, elimination of the requirement of alleging an enter-

prise separate from the predicate acts would make the enterprise requirement superfluous, which

would subvert RICO's statutory scheme which makes the ongoing enterprise the central focus.

See United States v. Anderson, 626 F.2d 1358, 1366-67 (8th Cir. 1980) ("[A]n overly broad

construction of the term 'enterprise' can render that element of the offense interchangeable with

the 'pattern of racketeering' element.") (cited in First Capital, 385 F.3d at 173).

     Given this wealth of legal authority, and the uniform decisional law following First

Capital, WWE's ipse dixit assertion that First Capital cannot mean what it explicitly says is

evocative of its effort to rewrite the law applicable to its RPA claim. Indeed, WWE fails to cite a

single authority in this Circuit or elsewhere since First Capital that casts a scintilla of doubt on

the unequivocal meaning, or legal authority, of the Second Circuit's enterprise holding. In fact, not a single one of the host of decisions in this Circuit unqualifiedly following First Capital raises any of the far-fetched concerns about its precedential value manufactured by WWE. See, e.g., Dale, No. 02 Civ. 3592 (RCC) (KNF), 2005 WL 2347853, at *7 (dismissing RICO claim and holding that "an association-in-fact must have an existence 'separate from the pattern of racketeering activity.'") (citation omitted); Hill v. Didio, No. 05CV1220FBLB, 2005 WL 1711164, at *2 (E.D.N.Y. July 20, 2005) (dismissing complaint and holding that "'in perhaps its least developed form, an enterprise may be found where there is simply a 'discrete economic association existing separately from the racketeering activity'") (quoting First Capital, 385 F.3d at 173) (emphasis added); Aiu Ins. Co. v. Olmecs Medical Supply, Inc., No. CV-04-2934 (ERK), 2004 WL 3270060, at *6 (E.D.N.Y. Feb. 22, 2004) ("The enterprise must be separate from the pattern of racketeering activity, and distinct from the person conducting the affairs of the enterprise.").[9]

Contrary to WWE's assertion, the Second Circuit Court of Appeals has never rejected the requirement, established in Turkette and adopted by a majority of its sister Courts of Appeal, that a RICO enterprise have a structure separate and apart from the alleged predicate acts.[10]  WWE is

---

[9] See also Kadouri v. Fox, No. 03 CV 1725 (NG), 2005 WL 783255, at *5 (E.D.N.Y. Jan. 24, 2005) ("A RICO enterprise is a group connected by common activity and a common purpose, 'the existence of which is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."'" (quoting First Capital, 385 F.3d at 173, quoting in turn Turkette, 452 U.S. at 583); see also In re S. African Apartheid Litig., 346 F. Supp. 2d 538, 557 (S.D.N.Y. 2004); Dibbs v. Roldan, 356 F. Supp. 2d 340, 349 n.6 (S.D.N.Y. 2005); City of New York v. Cyco.Net, Inc., No. 03 CV 383 DAB, 2005 WL 174482, at *16 (S.D.N.Y. Jan. 27, 2005).

[10] The Second Circuit has, in fact, openly embraced this requirement. After holding that "[i]n perhaps its least developed form, an enterprise may be found where there is simply a 'discrete economic association existing separately from the racketeering activity,'" First Capital, 385 F.3d at 173 (emphasis added), the Court cited to United States v. Anderson, 626 F.2d 1358 (8th Cir. 1980), which unequivocally required that an enterprise have an ascertainable structure distinct from the racketeering activity:

(continued...)

15

forced to rely not on any direct language of the Court of Appeals but rather on two older

decisions from the Ninth Circuit, <u>Chang v. Chen</u>, 80 F.3d 1293, 1297 (9th Cir. 1996) and <u>United</u>

<u>States v. Feldman</u>, 853 F.2d 648, 659-60 (9th Cir. 1988), which assert that the "Second Circuit

long ago rejected a requirement that an enterprise must have an "ascertainable structure" distinct

from that inherent in the pattern of racketeering activity."[11]  (WWE Br. at 15-16.)  In reaching

that conclusion, the Ninth Circuit cases, in turn, relied on <u>United States v. Bagaric</u>, 706 F.2d 42,

55 (2d Cir. 1983), <u>abrogated on other grounds by National Organization of Women v. Scheidler</u>,

510 U.S. 249 (1994), a case that did not actually address the question of whether the enterprise

must have a structure separate from the predicate acts.  Rather, in <u>Bagaric</u>, the Second Circuit

addressed whether the enterprise, as opposed to the predicate acts of racketeering, needed to have

an independent economic significance.  <u>Id.</u>  To be sure, in doing so, the Court acknowledged in

passing that "[w]e have upheld applications of RICO to situations where the enterprise was, in

---

[10](...continued)
> The motivating policy of the Act, to free our nation's economic system from the tentacles
> of organized crime, does not even suggest that Congress intended the definition of an
> enterprise to encompass a simple association to commit the predicate crimes constituting
> the pattern or racketeering activity . . . <u>We hold that Congress intended that the phrase "a</u>
> <u>group of individuals associated in fact although not a legal entity," as used in its defini-</u>
> <u>tion of the term "enterprise" in section 1961(4), to encompass only an association having</u>
> **an ascertainable structure** <u>which exists for the purpose of maintaining operations</u>
> <u>directed toward an economic goal that has an existence that can be defined apart from</u>
> <u>the commission of the predicate acts</u> . . . .

<u>Id.</u> at 1372 (emphasis added).

[11]  As one commentator has noted, the suggestion that decisions in certain Circuits can be read to reject a
requirement that an enterprise have a structure distinct from the pattern of racketeering "may be a bit
misleading, since [those Circuits] are still guided by the precepts of the Supreme Court's decision in
<u>United State v. Turkette</u>."  Gregory P. Joseph, <u>Civil RICO: A Definitive Guide</u> 69 (2d ed. 2000).  The
United States Attorneys' Manual likewise acknowledges that an association in fact enterprise must have
"an existence that can be defined apart from the commission of the predicate acts constituting the pattern
of racketeering activity."  <u>RICO: Civil and Criminal Law and Strategy</u> § 5.09 (Jed S. Rakoff & Howard
W. Goldstein eds., 2005).

16

effect, no more than the sum of the predicate racketeering acts." Id. But this observation in

Bagaric simply illustrates the point made plain in Turkette – that proof of the enterprise and the

predicate acts "may in particular cases coalesce." Turkette, 452 U.S. at 583. Accordingly,

commentators, including Judge Rakoff of this Court, have recognized that Courts in the Second

Circuit do, in fact, embrace the "ascertainable structure" requirement that WWE claims is not the

law of this Circuit:

> The Second Circuit takes a somewhat different view of what may consti-
> tute an enterprise. While it seems clear that "the enterprise must have an
> ascertainable structure distinct form the pattern of racketeering, and cannot
> simply be the sum of the predicate acts," the Second Circuit does not
> require that the enterprise have "an independent economic significance
> from the pattern of racketeering activity." Nor does the Second Circuit
> require that "the evidence offered to prove the 'enterprise' and 'pattern of
> racketeering' . . . be distinct."

RICO: Civil and Criminal Law and Strategy, supra, § 1.05[1], at 1-52 (footnotes omitted)

(emphasis added) (alteration in original).

Indeed, the purported schism WWE exaggerates between the Circuits simply does not

excuse WWE from pleading the requisites of a RICO enterprise. For example, in International

Telecom, Inc. v. Generadora Electrica Del Oriente, No. 00 Civ. 8695 (WHP), 2002 WL 465291

(S.D.N.Y. Mar. 27, 2002), this Court acknowledged that "[t]his Circuit has explicitly rejected the

view that proof offered to prove the 'enterprise' and the 'pattern of racketeering activity' must

necessarily be distinct," id. at *9 (citing, e.g., United States v. Mazzei, 700 F.2d 85, 89 (2d Cir.

1983)), but nevertheless held that "facts must be alleged establishing 'an entity separate and apart

from the pattern of activity in which it engages.'" Id. (quoting Turkette, 452 U.S. at 583). The

Court held that the plaintiff failed to plead a "legally cognizable enterprise" because, like WWE

17

here, the plaintiff did "not allege an ongoing organization whose associates function as a

continuing unit" and failed to plead facts showing that the alleged members of the enterprise

"formed a unit with a structure, a hierarchy, or a continuity." Id. (citing Dietrich v. Bauer, 76 F.

Supp. 2d 312, 348-49 (S.D.N.Y. 1999); accord Schmidt, 16 F. Supp. 2d at 349 n.5 (noting that

even though Moss v. Morgan Stanley, 719 F.2d 5 (2d Cir. 1983) rejected the Eighth Circuit view

that evidence offered to prove "enterprise" and "pattern" must necessarily be distinct, Moss did

not, however, "alter the basic rule of Turkette that the enterprise must have an ascertainable

structure distinct from the pattern of racketeering, and cannot simply be the sum of the predicate

acts").

### B.    WWE Failed to Allege the "Hierarchy, Organization, and Activities" of the So-Called Enterprise

As established in Defendants' moving brief, "'Courts in the Second Circuit should look to

the 'hierarchy, organization, and activities' of an association-in-fact to determine whether 'its

members functioned as a unit.'" Moy v. Terranova, No. 87 CV 1578 (SJ), 1999 WL 118773, at

*5 (E.D.N.Y. Mar. 2, 1999) (citations omitted). Inexplicably, WWE relies on United States v.

Coonan, 938 F.2d 1553, 1560 (2d Cir. 1991) to disclaim the unequivocal requirements articu-

lated in First Capital, that plaintiff must plead facts showing the existence of hierarchy, organiza-

tion and structure of the enterprise. Contrary to WWE's argument, courts in this Circuit –

including First Capital – have relied on this very case and its progeny in dismissing RICO claims

specifically for failure to plead a separate enterprise with the requisite structural characteristics.

See, e.g., First Capital, 385 F.3d at 174; Dietrich, 76 F. Supp. 2d at 349 (quoting Coonan, 938

F.2d at 1560, in holding that plaintiff had failed to allege the enterprise's "'hierarchy, organization

18

and activities'[,] . . . its leadership, and . . . its 'informal structure'"); <u>Moy</u>, 1999 WL 118773, at

*5 (citing <u>Coonan</u> in holding that plaintiff failed to allege the "continuity or structure of the

group or how the entities joined together"); <u>First Nationwide Bank v. Gelt Funding, Corp.</u>, 820 F.

Supp. 89, 98 (S.D.N.Y. 1993) (quoting <u>Coonan</u>, 938 F.2d at 1559-60 as requiring that courts look

to the "'hierarchy, organization, and activities'" of an association-in-fact to determine whether

"'its members functioned as a unit'" and accordingly granting motion to dismiss RICO claim for

lack of valid enterprise allegations ), <u>aff'd</u>, 27 F.3d 763 (2d Cir. 1994).

### C.    The Enterprise Lacks Any Purpose Beyond the Predicate Acts

Contrary to WWE's assertion, cases in this Circuit make clear that where, as here, the sole

purpose of the purported enterprise is to carry out the alleged predicate acts, it does not pass

muster.  <u>See Heffernan</u>, 2001 WL 803719, at *6 ("The only common factor uniting these parties

is the sum of the fraudulent activities alleged.  There is no alleged <u>other purpose</u> to any of the

purported enterprises.") (emphasis added); <u>Goldfine v. Sichenzia</u>, 118 F. Supp. 2d 392, 401

(S.D.N.Y. 2000) ("There is no allegation . . . of what activity, if any, the alleged enterprise ever

engaged in <u>other than</u> the alleged predicate acts."); <u>Black Radio Network, Inc.</u>, 44 F. Supp. 2d at

581 (enterprise not properly pled where it would not exist if the alleged predicate acts were

removed); <u>Schmidt</u>, 16 F. Supp. 2d at 349-50 (same).

WWE erroneously claims that the "other purpose" requirement was "squarely decided by

<u>Turkette</u>." (WWE Br. at 18.)  To the contrary, <u>Turkette</u> merely held that an exclusively <u>criminal</u>

enterprise fell within the statute, <u>id.</u> 452 U.S. at 581, which is not synonymous with finding that

no purpose is required beyond the alleged predicate acts.  And as <u>Turkette</u> itself makes clear, the

fact that an organization that exists only to commit criminal acts falls within the reach of the RICO statute, "does not mean that a 'pattern of racketeering activity' is an 'enterprise,'" because the existence of an enterprise that is "separate and apart" from such activity is a distinct element which must be proven. 452 U.S. at 583 (citation omitted).

WWE's reliance on cases purportedly standing for the proposition that "[w]here the enterprise is engaged primarily in inherently unlawful activity, Second Circuit law holds that both enterprise and pattern requirements are met," is puzzling to say the least. (WWE Br. at 18-19.) Given WWE's consistent attempts to muddle the enterprise and pattern requirements, it should not be surprising that the cases that WWE cites do not address the standard for pleading the existence of an enterprise, but instead deal with the standards for establishing RICO continuity.[12] As such, WWE's case citations are entirely inapposite.

The other cases cited by WWE merely stand for the uncontroversial proposition that an enterprise need not have independent economic significance distinct from the pattern of racketeering activity, and do not question – much less reject – the requirement that an enterprise have an existence separate and apart from the alleged predicate acts. See Moss v. Morgan

---

[12] The passage WWE cites from Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242-43 (2d Cir. 1999), concerns the requirements for satisfying open-ended continuity, not with pleading a RICO enterprise. Far from finding that "both enterprise and pattern requirements [were] met," as WWE erroneously claims (WWE Br. at 18), Cofacredit reversed a judgment finding the defendants liable under § 1962(c) because it found the continuity evidence insufficient, and explicitly abjured reaching the argument that plaintiff failed to prove the existence of an enterprise. 187 F.3d at 244. Equally inapposite is GICC Capital Corp. v. Technology Finance Group, Inc., 67 F.3d 463, 466 (2d Cir. 1995), which affirmed dismissal, holding that the district court correctly concluded that continuity had not been alleged, and did not address the enterprise requirement. Id. United States v. Aulicino, 44 F.3d 1102, 1111-12 (2d Cir. 1995) held that because the scheme to kidnap narcotics dealers was "inherently unlawful," the jury could have found the continuity necessary to establish that defendants engaged in a pattern of racketeering activity. Id. On its face, Aulicino has nothing to do with the standards for pleading a RICO enterprise.

Stanley, Inc., 719 F.2d 5, 22 (2d Cir. 1983) (district court erred in requiring plaintiff to allege that enterprise had an "'independent economic significance from the pattern of racketeering activity'" (citation omitted)); Bagaric, 706 F.2d at 55 (enterprise need not be shown to yield financial gain independent of predicate acts).

### D.      The Cases Relied on By WWE Are Inapposite

As a threshold matter, the cases relied on by WWE for its contention that it need not allege any structure or organization of its purported RICO enterprise all predate the Second Circuit's 2004 unequivocal holding in First Capital. 385 F.3d at 174. Most of WWE's cases are also distinguishable because they involve the kind of organized crime activity that exemplifies the kind of hierarchy and structure – absent here – necessary to establish an enterprise.[13] See United States v. Ferguson, 758 F.2d 843, 853 (2d Cir. 1985) (in prosecution of individuals involved in armored drug robberies, murder and the prison escape of a revolutionary leader, court held that an enterprise was proven independent of predicate acts because the government presented evidence of a network of safehouses, strategy and planning sessions and the linkages among various criminal acts); Coonan, 938 F.2d at 1560 (in prosecution of figures in the "Westies" Irish mob, court found that trial adduced "overwhelming proof of the charged

---

[13]  See generally Bank v. Brooklyn Law Sch., No. 97-CV-7470 (JG), 2000 WL 1692844, at *4 (E.D.N.Y. Oct. 6, 2000) ("While the proof of the alleged criminal acts (and the pattern they comprise) and the proof of the enterprise 'may in particular cases coalesce,' that is far more likely to occur when the charged association-in-fact is wholly illegitimate, as in Turkette." (quoting Turkette, 452 U.S. at 583)).

enterprise," including "testimony regarding the enterprise's hierarchy, organization and activities.").[14]

WWE's remaining cases are equally unavailing. In particular, WWE relies on two pre-First Capital decisions by Judge Haight both of which dismissed the plaintiff's RICO claims, rendering the discussion of enterprise allegations superfluous. In fact, Hansel 'N Gretel Brand, Inc. v. Savitsky, No. 94 Civ. 4027 (CSH), 1997 WL 543088 at *3-5 (S.D.N.Y. Sept. 3, 1997), actually supports JAKKS' position that no cognizable enterprise has been pled by: (1) acknowledging that the Court's task on a motion to dismiss "is not to determine whether the same evidence was adduced to support the 'enterprise' and 'pattern' elements" but rather to "decide whether the enterprise pled by plaintiff, viewed on its own terms, is cognizable under RICO," id. at *3; and (2) holding that the alleged enterprise, which involved a kickback scheme, was not valid because the members of the enterprise did not share a "community of interests" and were not part of an "ongoing organization." Id. at *5. In Judge Haight's subsequent decision in

---

[14] United States v. Mazzei, 700 F.2d 85, 87, 89 (2d Cir. 1983) (evidence proved criminal enterprise to fix Boston College basketball games, composed of a "Pittsburgh Connection" of individuals who conceived of the operation, a "New York Connection" which created a bookmaking syndicate and arranged "protection" for conspirators, a group of "insiders" who agreed to shave points, and Mazzei, a middleman between the Pittsburgh and New York Connections; given this archetypical RICO enterprise, the Court was satisfied that the proof adduced was sufficient to satisfy both the enterprise and pattern elements); Bagaric, 706 F.2d at 46, 55 (in prosecution of Croatian terrorists "operating principally in New York, Chicago, and Los Angeles, with participants in Cleveland, San Francisco, Toronto, South America, and Europe," who had associated with Chicago gangsters, Court merely held that an "enterprise," as opposed to the predicate acts alleged, need not be shown to yield financial gain). Moreover, none of the cases on which WWE rely approve of the use of the kind of one-shot, episodic enterprise WWE alleges here. United States v. Triumph Capital Group, Inc., 260 F. Supp. 2d 444, 448-52, 455 (D. Conn. 2002) merely construes the standard for stating a RICO enterprise in a criminal indictment under Rule 7 of the Federal Rules of Criminal Procedure, which requires only that the indictment contain the elements of the offense. Though not required, the indictment in Triumph actually did contain facts showing "the enterprise was an ongoing organization of individuals who functioned as a continuing unit to further a common purpose." Id. at 455.

Feinberg v. Katz, No. 99 Civ. 45 (CSH), 2002 WL 1751135, at *12-13 (S.D.N.Y. July 26, 2002), the discussion disclaiming the need that the enterprise be distinct from the predicate acts is again superfluous to the Court's holding, as the Court there dismissed the RICO claim on the separate and independent ground that the defendants did not constitute a "continuing unit" so as to comprise a RICO enterprise – a defect equally present here. Id. at *15.

### E.    Under Any Standard, WWE Has Not Alleged the Existence of a Cognizable RICO Enterprise

Given its futile attempt to rewrite Second Circuit case law, and insistence on the erroneous position that a plaintiff need not allege that the purported RICO enterprise exists separate and apart from the predicate acts, it is no wonder that WWE woefully fails to meet this requirement. In fact, WWE expressly concedes that its alleged ad hoc "enterprise" has no other existence, structure or course of conduct apart from the alleged predicate acts: "[Defendants] acting in concert, comprised an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) through a pattern of racketeering activity as set forth below for the purpose of conduct-ing the unlawful activities described herein." (AC ¶ 244.)

In a cursory attempt to rehabilitate its defective enterprise allegations, WWE asserts that the Amended Complaint "lays out in chapter and verse detailed specifics of the hierarchy, organization, roles" and actions of the members of the alleged enterprise. (WWE Br. at 19.) Reminiscent of WWE's evasive May 6 Letter – when it directed the Court to 150 sequentially numbered paragraphs purporting to lay out its enterprise allegations, this time WWE apparently points to its whole complaint at large to find the specific allegations of this supposed "hierarchy" and organization. Despite WWE's conclusory assertion, such allegations simply do not exist.

23

WWE's attempt to distract the Court from this fatal deficiency by painstakingly dissecting the "means and methods" of the members of the purported enterprise (WWE Br. at 20) deserves short shrift, as it amounts to nothing more than a chronological review of the <u>alleged predicate acts</u>, which WWE fails to appreciate must be <u>separate</u> from the RICO enterprise. Notably, this recitation is devoid of facts that describe the purported enterprise's "chain of command" or how its members functioned as an integrated and continuing unit. <u>See</u> <u>Schmidt</u>, 16 F. Supp. 2d at 350; <u>Goldfine</u>, 118 F. Supp. 2d at 401.

Because WWE's alleged enterprise is nothing more than the regurgitation of the purported predicate acts – which lacks any organization, hierarchy or activities from which the court can conclude that its members functioned as a "'continuing unit'" associated for a "'common purpose,'" <u>First Capital</u>, 385 F.3d at 174 (citation omitted) – WWE's RICO claim must be dismissed as a matter of law.[15] Having elected to stand on its deficient enterprise allegations, WWE should not be heard to object to the dismissal of its RICO claims with prejudice.

---

[15] WWE erroneously asserts that the lack of viable RICO claim is not fatal to WWE's RICO conspiracy claim. (WWE Br. at 24 n.14.) None of the cases WWE cites upheld a RICO conspiracy claim where, as here, the central RICO claim is dismissed as defective. In <u>Salinas v. United States</u>, 522 U.S. 52 (1997), the court upheld a RICO conspiracy charge against a RICO co-conspirator who was acquitted of the substantive RICO charge, where there was ample evidence that a substantive RICO violation had been committed by the defendant's co-conspirator. <u>Id.</u> at 66. And in <u>State Farm Mutual Automobile Ins. Co. v. CPT Medical Services, P.C.</u>, 375 F. Supp.2d 141, 151-52 (E.D.N.Y. 2005), the plaintiff did not even allege a substantive RICO claim, and the court expressly refrained from deciding whether defendants "committed a substantive RICO violation." <u>Id.</u> at 152. By contrast, where as here, the substantive RICO violation is dismissed, courts in this Circuit uniformly hold that the RICO conspiracy claim must fail as well. <u>See</u> <u>Discon, Inc. v. NYNEX Corp.</u>, 93 F.3d 1055, 1063-64 (2d Cir. 1996) (affirming dismissal of RICO claim and finding enterprise allegations insufficient; "Since we have held that the prior claims do not state a cause of action for substantive violations of RICO, the present claim does not set forth a conspiracy to commit such violations."), <u>rev'd on other grounds</u>, 525 U.S. 128 (1998); <u>Allen v. New World Coffee, Inc.</u>, No. 00 Civ. 2610 (AGS), 2002 WL 432685, at *6 (S.D.N.Y. 2002) (same); <u>Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.</u>, 113 F. Supp.2d 345, 385 (E.D.N.Y. 2000) (same).

# CONCLUSION

For all the foregoing reasons, the JAKKS Defendants' motion to dismiss the RICO and

RPA claims in the Amended Complaint should be granted in all respects with prejudice.

Respectfully submitted,

FEDER, KASZOVITZ, ISAACSON,          SKADDEN, ARPS, SLATE,
  WEBER, SKALA, BASS & RHINE LLP       MEAGHER & FLOM LLP
Murray L. Skala (MS 9354)
Jonathan D. Honig (JH 7577)                    By:_____
750 Lexington Avenue
New York, New York 10022              Jonathan J. Lerner (JL 7117)
Phone:  (212) 888-8200                  Michael H. Gruenglas (MG 8705)
Fax:  (212) 888-5968                    James Keyte (JK 0680)
                                      Maura B. Grinalds (MG  2836)
                                      Four Times Square
                                      New York, New York  10036
                                      Phone:  (212) 735-3000
                                      Fax:  (212) 735-2000

Attorneys for the JAKKS Defendants

October 4, 2005