SIDLEY AUSTIN BROWN & WOOD LLP
Steven M. Bierman (SB 6615)
Isaac S. Greaney (IG 0922)
787 Seventh Avenue
New York, New York 10019
Phone: (212) 839-5300
Fax: (212) 839-5599

IRELL & MANELLA LLP
Steven A. Marenberg (*Pro Hac Vice*)
Philip M. Kelly (*Pro Hac Vice*)
1800 Avenue of the Stars
Los Angeles, California 90067
Phone: (310) 277-1010
Fax: (310) 203-7199

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

WORLD WRESTLING ENTERTAINMENT, INC.,

                      Plaintiff,

              v.

JAKKS PACIFIC, INC.; JAKKS PACIFIC (H.K.)
LIMITED; ROAD CHAMPS LIMITED; THQ, INC.;
THQ/JAKKS PACIFIC LLC; STANLEY SHENKER
AND ASSOCIATES, INC.; STANLEY SHENKER;
BELL LICENSING, LLC; JAMES BELL; JACK
FRIEDMAN; STEPHEN BERMAN; JOEL
BENNETT; and BRIAN FARRELL,
                    Defendants.

------------------------------------------------------------------ x

Case No. 04 CV 8223 (KMK)
(ECF CASE)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THQ INC. AND BRIAN
FARRELL'S MOTION TO DISMISS THE RICO AND ROBINSON-PATMAN ACT
CLAIMS IN THE AMENDED COMPLAINT**

1393094

## Joinder in Reply Memorandum of the Jakks Defendants

Defendants THQ Inc. and Brian Farrell (the "THQ Defendants") respectfully request the Court to grant the THQ Defendants' motion to dismiss the RICO and Robinson-Patman Act claims in the Amended Complaint for the reasons set forth in the Reply Memorandum of Law filed by defendants JAKKS Pacific, Inc., JAKKS Pacific (H.K.) Limited, Road Champs Limited, Jack Friedman, Stephen Berman, and Joel Bennett (collectively, the "JAKKS Defendants"). Accordingly, the THQ Defendants hereby join in the Reply Memorandum of Law filed by the JAKKS Defendants.

## Request to Strike Arguments Beyond the Scope of Permissible Briefing

The THQ Defendants also request that the Court strike and disregard those portions of plaintiff WWE's opposition brief that exceed the scope of briefing outlined by the Court at the August 18, 2005, status conference – specifically, WWE's argument regarding the "operation and management" requirement of its RICO claim. *See* WWE Opp. at 13-14, 22-24.

Once again, WWE has proven incapable of following the Court's straightforward instructions. The Court was explicit in limiting briefing at this stage to two threshold issues: the "enterprise" issue (i.e., whether the Amended Complaint sufficiently alleged the *existence* of a RICO enterprise) and the Robinson-Patman Act issue. *See* Aug. 18, 2005, Hearing Tr. at 30:14-31:18, 35:1-36:3, 39:20-40:13, 42:7-15 .[1] The Court did not authorize WWE to address the limited and subsidiary RICO "operation and management" issue, which presumes the existence of a properly pled RICO enterprise. The Court was clear that such subsidiary arguments should be addressed in a second round of briefing, if necessary. *Id.* at 31:15-18 ("What if we do is this –

---

[1] The August 18, 2005, Hearing Transcript is attached as Exhibit A.

I realize it's unusual – but we brief those issues [enterprise and Robinson-Patman], and if you don't prevail, I'll let you brief the other issue, and if you do prevail then we are done.")

It appears that WWE has gone beyond the scope of the Court's order to address the "operation and management" issue in this round of briefing in an effort to avoid facing a direct attack on the Amended Complaint's "operation and management" allegations against the THQ Defendants. As the Court is aware, the Amended Complaint set forth an entirely new theory of RICO liability. This new theory only served to strengthen the THQ Defendants' arguments that they were not involved in the "operation and management" of any enterprise, to the extent one ever existed. Understanding this weakness, WWE is attempting to shoehorn the "operation and management" issue into the threshold "enterprise" issue and thus prevent the THQ Defendants from addressing in a full-length memorandum of law the dispositive "operation and management" issue.[2]

In accordance with the procedure set forth by the Court, should WWE's RICO claim survive the pending motions to dismiss on the threshold "enterprise" issue, the THQ Defendants will address all of the remaining flaws in the Amended Complaint, including the "operation and management" issue, in a subsequent round of briefing. Accordingly, the THQ Defendants will

/ / /

/ / /

/ / /

/ / /

/ / /

---

[2] Indeed, Brian Farrell, who was added as a defendant in the Amended Complaint, has never had an opportunity to set forth *any* arguments on the "operation and management" issue with respect to either the original Complaint or the Amended Complaint.

not address WWE's improperly included "operation and management" arguments in this round

of briefing and request that the Court disregard them as well.

Dated:  October 4, 2005                     Respectfully submitted,

SIDLEY AUSTIN BROWN & WOOD LLP      IRELL & MANELLA LLP
Steven Bierman (SB 6615)             Steven A. Marenberg (*Pro Hac Vice*)
Isaac Greaney (IG 0922)              Philip M. Kelly (*Pro Hac Vice*)
787 Seventh Avenue                   1800 Avenue of the Stars
New York, New York 10019             Los Angeles, California 90067

                                     By:  _____
                                          Philip M. Kelly
                                          Attorneys for Defendants THQ Inc. and
                                          Brian Farrell

**EXHIBIT A**

58INWWEN

1

58inwwen                        Conference
1  UNITED STATES DISTRICT COURT
1  SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
2
3  WORLD WRESTLING ENTERTAINMENT,
3  INC.,
4
4                 Plaintiff,          New York, N.Y.
5
5         v.                          04 Civ. 8223 (KMK)
6
6  JAKKS PACIFIC, INC., et al.,
7
7                 Defendants.
8
8  ------------------------------x
9
9                                     August 18, 2005
10                                    2:50 p.m.
10
11 Before:
11
12                 HON. KENNETH M. KARAS,
12
13                                     District Judge
13
14                        APPEARANCES
14
15 NICOLOSON GRAHAM
15         Attorneys for Plaintiff
16 BY:  JERRY SCOTT MCDEVITT
16      AMY LYN BARRETTE
17      WILLIAM O. PURCELL
17
18 SKADDEN ARPS SLATE MEAGHER & FLOM LLP
18         Attorneys for Jakks and individual defendants
19 BY:  JONATHAN J. LERNER
19      MAURA BARRY GRINALDS
20      MICHAEL H. GRUENGLAS
20      MARCO G. ARGENTIERI
21
22
23
24
25

                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

⬜                                                          2

58inwwen                        Conference
1                       APPEARANCES (continued)
2  MICHAEL A. FREEMAN
2         Attorney for Defendants Stanley Shenker and SSAI
3
3  SCHWEITZER CORNMAN GROSS & BONDELL LLP
4         Attorneys for Defendants Bell and Bell Licensing
4  BY:  ROB SERAFINOWICZ
5
5  FEDER KASZOVITZ ISAACSON WEBER SKALA BASS & RHINE LLP
6         Attorneys for Jakks and individual defendants
6  BY:  JONATHAN HONIG
7
                        Page 1

```
                              58INWWEN
 7   IRELL & MANELLA
 8        Attorneys for Defendant THQ, Inc.
 8   BY:  STEVEN A. MARENBERG
 9
 9   DORNBUSH MENSCH MANDELSTAM & SCHAEFFER LLP
10        Attorneys for THQ/Jakks Pacific LLC
10   BY:  RICHARD SCHAEFFER
11
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

3

```
     58inwwen                    Conference
 1        (In open court)
 2        (Case called)
 3        THE COURT:  I apologize for my tardiness.  I am on
 4   Part I duty.  It's loads of fun.
 5        Speaking of loads of fun, we are here after a fair
 6   amount of back and forth about the posture of the defendants'
 7   motions to dismiss.
 8        The motions had been filed pursuant to a schedule that
 9   the court had set and I think everybody had agreed to.  On the
10   day that plaintiffs' response was due or the day before,
11   plaintiff filed an amended complaint and no motion or no brief
12   in response to the motions to dismiss.
13        We had a conference in late April to discuss what, if
14   any, ramifications result from the tactical decision by
15   plaintiffs to file the amended complaint when they did and not
16   file a response.  I don't know who is going to speak on behalf
17   of WWE, Mr. McDevitt will it be you.
18        MR. McDEVITT:  Yes, your Honor.
19        THE COURT:  I have read the papers and I have read a
20   number of cases.  I don't think anybody questions -- I don't
21   think anybody could question on the defense side your right
22   under 15(a) to file amended complaint before an answer is
23   filed.
24        You spent a lot of time in your letters to me talking
25   about that.  But I think one of the more persuasive points that
```

4

```
     58inwwen                    Conference
 1   the defendants make is, be that as it may, and assuming, by the
 2   way, that 15(a) is the only provision that governs here,
 3   because I do think there are some very serious questions about
 4   how at least what is part of the complaint isn't governed by
 5   15(d), which does in the give you the unbridled right to file
 6   the amendment that you did, but why wasn't it incumbent upon
 7   you to, if you wanted to file the amended complaint, to also
```

Page 2

58INWWEN

8  file a response to the motions, because to some extent the
9  motions, to some extent I think survive another day even after
10  the amendment to the complaint.  The Robinson-Patman arguments,
11  it seems to me, live just as strong as they did before you
12  filed the amended complaint.  As a consequence of all of this,
13  we've lost valuable time on the case, and you as plaintiff I
14  would think would want to cherish the valuable time.
15          What is your response to that?
16          MR. McDEVITT:  Your Honor, it was our hope in coming
17  here today that we could move this case forward.  It will be in
18  October a year old.  The questions that your Honor asked we
19  have tried to address.  I will again restate our position as to
20  why we did what we did.
21          THE COURT:  I am with you.  Let's move along.
22          But why shouldn't I just consider the defense papers
23  and compare the papers to the amended complaint and decide
24  whether or not the motion shouldn't be granted, period?
25          It seems to me that would move the case along.
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

58inwwen        Conference
1          MR. McDEVITT:  Well, your Honor, we have said if the
2  defendants believed that any of the arguments that they made
3  with respect to our original complaint are good against the
4  amended complaint, that's fine.  Just identify which ones they
5  think they wish to make and let us brief them and have argument
6  in an orderly way so that we can present our position to the
7  court about whatever it is that they contend remained viable as
8  against the amended complaint.
9          That is all we are asking for.  As we read the rule,
10  your Honor, going into this, I can't anticipate the defense
11  reaction to an amended complaint.
12          The text of the rule, 15(a), itself says that the
13  attack once an amended complaint is filed must be made to the
14  amended complaint.  That's the orderly process that's
15  contemplated by the rules.  If they think they have motions
16  against the amended complaint, fine, they're entitled to file
17  them.  We don't challenge their right to move to dismiss.  They
18  seem to challenge our right to move to amend.
19          THE COURT:  No, they don't.  I don't even think this
20  is so much a question of Rule 11 as much as it is a question of
21  case management.
22          We have to pause and discuss case management because
23  otherwise cases don't get managed.  There's a lot of law,
24  albeit not a substantial body of law, but there's a fair number
25  of cases that the Jakks defendants cite that talk about the
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

58inwwen        Conference
1  court's inherent authority to manage a case.
2          Do you think I want to be sitting around talking about
3  Rule 11 on case management?  Of course not.
4          Instead of looking at it from the standpoint of Rule
5  15, and instead of looking at it from the standpoint of Rule
6  11, looking at it from the standpoint of what was to prevent
7  you from filing your amended complaint under 15(a), assuming
8  for the sake of argument that it was solely governed by 15(a),
9  and filing a responsive brief, the defendants could have said
10  at that point, well, when we filed our motion we didn't know
11  there was going to be an amended complaint, and they would
12  probably seek some leeway in their reply.  And in that reply
                              Page 3

58INWWEN
```
13   they may have either supplemented their motion to dismiss or
14   supplemented the arguments that would have been in support of
15   their initial motions to dismiss.
16           But, particularly as it relates to the parts of the
17   complaint where I don't think you made a material change, I
18   mean, the Robinson-Patman claim, it seems to me if it was good
19   before the amended complaint, it's good after the amended
20   complaint, and if it was no good before the complaint was
21   amended, it's no good after.
22           But the problem is I don't have a brief from you.  For
23   you to tell me you want to move the case along, then maybe the
24   best thing to do would have been to file the brief.
25           MR. McDEVITT:  Your Honor, with all due respect, my
```

7
58inwwen                    Conference
```
 1   understanding of the law that we have cited to court is that
 2   when a party files an amended complaint, it moots the original
 3   complaint, which is no longer the defining document in the
 4   case.  It moots the motions to dismiss that are aimed at that,
 5   and any attack must be made on the amended complaint.
 6           I agree with you, your Honor, that the Robinson-Patman
 7   argument is a legal argument that can't be addressed by an
 8   amended complaint.
 9           It is a legal argument they are making about whether
10   the statute reaches the bribes that were paid in this case.
11   We're prepared to brief that for the court.
12           Again, your Honor, if you look at the text of Rule
13   15(a), which as an advocate is the only guidance I have to go
14   on here, the text of Rule 15(a) says very clearly that once we
15   file an amended complaint, a party shall plead in response to
16   an amended pleading.
17           That's the orderly process of the rules.  That has
18   always been my experience as to what happens here.
19           As I said, your Honor, if they think that all we are
20   asking is, if they think any of those arguments that they had
21   against the original complaint remain viable as against the
22   amended complaint, many of which were factual sufficiency
23   arguments, all they need to do is identify which ones they
24   think are viable, and we will be glad to brief it and they can
25   reply and we can have meaningful legal argument.
```

8
58inwwen                    Conference
```
 1           That is all we are asking for here.  I mean, I could
 2   go back to March.  We can talk about, as we did last time, your
 3   Honor -- I don't think, respectfully, that is moving the case
 4   forward.  We would like to move the case forward on the merits.
 5   Everything I have done has been designed to present my client's
 6   claims to the court for adjudication on the merits the only way
 7   I know how.
 8           THE COURT:  The only thing defendants have done is, in
 9   the interest of their clients, filed very substantial motions
10   against a very substantial complaint that makes a lot of very
11   serious allegations.
12           There are individual defendants who I don't presume
13   are sitting on a pot of money where they can just go ahead and
14   have counsel rebrief and rebrief and rebrief.
15           I will say to all, and I will say it on the record,
16   I've certainly learned a lesson on this.  Premotion conferences
17   from now on in cases like this are going to involve an explicit
```
Page 4

58INWWEN
18  discussion as to whether or not there's going to be an amended
19  complaint and an explicit requirement that if somebody is going
20  to amend their complaint, which they have every right to do,
21  they at least give the court -- and their adversary, more
22  importantly -- the courtesy of notice so that the defendants
23  don't waste their time, or the courtesy of a responding brief
24  because that is the most efficient way to move the case along.
25          MR. McDEVITT:  Your Honor, that is fair notice.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

9

58inwwen                    Conference
1   Again, when we were here last time you talked about putting
2   yourself in everybody's else shoes.  I would ask your Honor to
3   put yourselves in our shoes.  We looked at the chamber rules.
4   There was no guidance on how to amend the complaint.  There was
5   no order that said we couldn't.  It was not discussed.
6          The only guidance we have are the rules passed by
7   Supreme Court of the United States, and, as far as I know, your
8   Honor, unbroken precedent in every court that has ever looked
9   at it that says that a motion to dismiss doesn't cut off the
10  right to do it, so we filed it.
11         THE COURT:  That is not the point.  The cases cited by
12  Jakks, the Lopez Salerna case, the Koch case, they don't talk
13  about how you don't have the right to file an amended
14  complaint.  And I said at very beginning that's not what is at
15  issue here.
16         The issue is your tactical decision to meet their
17  motion to dismiss the way you did, which is to amend the
18  complaint and do nothing else.
19         Those cases stand for the proposition -- so I am not
20  sure if they qualify in this unbroken line of authority that
21  you are talking about -- that the court has the authority to
22  dismiss the amended complaint when all it is faced with is the
23  motion to dismiss and the amended complaint and no responding
24  papers.
25         So I mean, look, I understand what you are asking to
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

10

58inwwen                    Conference
1   do, but that is what is going to delay this case a tremendous
2   amount.  Because I mean the complaint that you amended is not
3   much more -- it is much longer, and I don't know if it
4   addresses all of the points the defendants made, but I
5   certainly don't want to hold them to their original briefs
6   because that wouldn't be fair to them either.
7          They do point out, and I have to say Mr. McDevitt, it
8   really is three bites at the apple.  I asked explicitly for you
9   to tell my how the amended complaint addressed all of their
10  claims, and I still haven't gotten it.  I've gotten some
11  explanation on some of the claims.
12         But let's move on.
13         I understand your point with regard to sanctions.  I
14  don't think you're operating in bad faith.  I don't suggest
15  that for a moment, and I thought I made that clear at our last
16  conference.
17         MR. McDEVITT:  I think you did, your Honor.
18         THE COURT:  I will reemphasize it, because that's a
19  very serious thing to say about somebody.  I don't presume that
20  and I don't say it here.  Let me make it crystal clear for the
21  record.
22         MR. McDEVITT:  Thank you.
                        Page 5

58INWWEN
```
23         THE COURT:  I am not faulting you.  I am just trying
24    to understand how I accommodate the defendants' legitimate
25    concerns of wasting a lot of time and money shooting at a
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

                                                                    11
58inwwen                    Conference
```
 1    target that it appears was never really going to be the target.
 2         MR. McDEVITT:  Your Honor, again, this case continues
 3    to this day in terms of gathering facts.  When we filed our
 4    original complaint --
 5         THE COURT:  That is where 15(d) comes in.  You see,
 6    that's a point that I thought the defendants made that really
 7    wasn't answered.  Your only answer is, well, only four
 8    paragraphs.
 9         MR. McDEVITT:  I have more of an answer than that.  I
10    will address it again if I can, your Honor.
11         As I understand the procedure rules, a supplemental
12    complaint exists when you have an existing complaint that you
13    want to add facts that occurred after the filing of the
14    lawsuit.  But you are not amending your complaint.  You are
15    just adding facts.  That complaint remains the operative
16    document in the case as supplemented.
17         An amended complaint is a wholly different thing.  The
18    law says this:  An amended complaint takes the original
19    complaint completely out of the case.  The amended complaint
20    now defines it, much like a superseding indictment would in
21    criminal law, for example, that now defines the case.
22         There is no restriction in the text of Rule 15, nor
23    logically would there be if one thinks about modern procedure,
24    why if you are amending the complaint and redefining their
25    claims and bringing additional claims based on the additional
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

                                                                    12
58inwwen                    Conference
```
 1    evidence that there would be any limitation on the time period
 2    covered by your amended complaint.
 3         It's not a merit-based argument.  That whole
 4    supplemental pleading thing isn't, I don't think ever been
 5    designed to be a defense mechanism to prevent amendment.  It's
 6    for the pleader's option.
 7         THE COURT:  It does require some sort of imprimatur
 8    from the court.
 9         MR. McDEVITT:  If you're supplementing your complaint,
10    which we didn't do.  If all we wanted to do -- this is what I
11    think we would have been supplementing the complaint.  If for
12    example you assume we had four paragraphs that we wanted to
13    add, that Mr. Bell pled guilty to a crime or something like
14    that, if we wanted to come in on the original complaint and
15    say, your Honor, we want to add four paragraphs to that, that
16    would be a motion under that, but that complaint would still be
17    the document as added to by the four paragraphs.
18         We have added an antitrust claim.  We have added a
19    defendant.  Those require an amended complaint.
20         We are entitled, as we gather -- that is the whole
21    point of the litigation process, is you gather evidence to make
22    your claims.
23         That's what we did.  As I said before, your Honor,
24    let's just assume for purposes of argument, if we could, that a
25    legal argument would be constructed to add those paragraphs to
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
                            Page 6

58INWWEN

58inwwen                          Conference

1    this complaint. Let's just assume for purposes of argument
2    that I would have to ask your Honor for leave.  The standard is
3    futility.  We have yet to identify any principled basis on
4    which they could, even in good faith, object to the inclusion
5    of them or demonstrate futility.  The standard for futility is
6    the same as 12(b)(6).  You have to demonstrate it doesn't
7    provide a cause of action.
8              THE COURT:  If we assume this for the sake of
9    argument, since you are a literalist on the rule, it would have
10   required to you make an application ahead of time.
11             I don't think it's fair to fault them saying they
12   didn't challenge the hypothetical supplemental complaint on
13   futility grounds when I think their point would be they were
14   never asked to respond to it.
15             Let me hear from defendants.  I've got your point on
16   that.  I've got your point on that.
17             MR. LERNER:  Thank you, your Honor.
18             You asked Mr. McDevitt the question of why didn't he
19   seek to file the opposition papers, and he said he went back to
20   the amended complaint argument.
21             There was an extant order, your Honor, that was very
22   clear.  It wasn't ambiguous at all.  And the law is hornbook
23   that the filing of an amended complaint doesn't moot an
24   outstanding motion to the extent that there are any continuing
25   defects.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

58inwwen                          Conference

1              When I say "hornbook," I'm referring to the hornbook
2    Wright and Miller.  Judge Batts only last month decided the Axa
3    case.  I don't know if your Honor has had a chance to see it.
4    I actually brought copies, if I could hand them up to your
5    Honor.
6              THE COURT:  Yes.
7              MR. LERNER:  I have copies for my colleagues as well.
8    What happened, your Honor, in Axa was that the defendants, your
9    Honor, made a motion to dismiss on December 19 of 2004, and the
10   plaintiffs filed an amended complaint in response.
11             There's nothing about a schedule or anything.  But
12   they also did what Mr. McDevitt was required to do but didn't
13   do.  They also filed a brief.
14             At that point the defendants filed a reply saying our
15   motion addresses the amended complaint.  In other words, the
16   amended complaint doesn't moot the pending motion, which is
17   just the argument that we made, your Honor, in our letter,
18   which was not responded to, and the defendants in Lumberman
19   made the exact argument that we make, which is that "the motion
20   to dismiss the initial complaint is not obviated by the new
21   pleading."
22             That is the same thing that Mr. McDevitt said didn't
23   exist.  Judge Batts held, quoting defendant, it's footnote 3,
24   that defendant is not required to file a new motion simply
25   because an amended pleading was introduced while its motion was

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

58inwwen                          Conference

1    pending.  Accordingly, the court evaluates the sufficiency of
2    the pleadings on a motion to dismiss filed in response to the
3    initial complaint, citing the hornbook.

Page 7

58INWWEN
```
 4          So on March 31, your Honor, it was clearly incumbent
 5   to stop, look, and listen.  We are not faced with just some
 6   abstract legal principle.  We have an outstanding court order
 7   that says you shall file an opposing memorandum.  That was
 8   pretty clear.
 9          You also have the issues which we did raise but
10   created digression.  We said -- and we did say this -- it was a
11   legal nullity because of the supplemental aspects.  I don't
12   agree that you can make a little adjustment in the complaint,
13   call it amended, and then escape 15(d) because it's amended.
14   If it's amended and supplemented, you need leave of the court.
15          We did say that.  But the basis of our main position
16   here is that the dubious nature of the so-called absolute right
17   should have caused the plaintiff to stop and think about what
18   was being done here.  It wasn't a clear right.  The 21 issue is
19   debateable, whether adding a party requires a pleading, but
20   certainly the supplemental features would have caused somebody
21   to say, hey, we need to seek leave.
22          But if there were any doubt, there is an order, and
23   you can't unilaterally dispense with a court's management
24   order, particularly under the circumstances of this case, which
25   we talked about last time, the hurry up, no time, our complaint
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

16

58inwwen                    Conference
```
 1   is great, we want discovery, we want to get moving, the same
 2   things that have happened here.  What could have, should have
 3   been done is very straightforward:  If he wanted to have an
 4   amended complaint, he would have either filed his opposition
 5   brief, your Honor, and made a motion and said, your Honor, we'd
 6   like to amend and supplement the complaint, and the brief, it
 7   would have been in his interest to say, This is the answer to
 8   the aspects of the motion that are carried forward into the
 9   amended complaint.  Robinson-Patman, unchanged; enterprise,
10   unchanged.  These are the answers to that.
11          With respect to the continuity, for example, he'd
12   say,, well, we've changed our legal theory.  These three
13   payments are now playmates instead of just payments.
14          We think that that elongates the period.  So we have
15   closed-end continuity, he would have put whatever cases in.  We
16   would have answered, it would have been argued, and we would be
17   done.
18          But he chose consciously that he didn't want to go
19   that route.  He knew on March 31 which things were cured and
20   which things weren't.
21          Subsequent to that time, your Honor, you said on
22   several occasions, what I'd like you to do, Mr. McDevitt, is to
23   come forward and tell the defendants what the effect of your
24   new amended complaint is.
25          I recall reading the complaint.  You said use the
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

17

58inwwen                    Conference
```
 1   red-line copy.  It will be easier.  We expected a matrix,
 2   Robinson-Patman unchanged, mincing argument changed in this
 3   way, so we would all have a grid and we could see what the
 4   damage is.
 5          But since that time there has been difficulty -- I'll
 6   put it that way -- difficulty teasing out of the plaintiff
 7   exactly what impact this amended complaint has on our
 8   arguments.
```
Page 8

58INWWEN

9       We have the argument that, well, the enterprise, we
10  illuminated the facts, we've added more factual detail.  We
11  cannot find -- in the amended complaint, we can't find
12  allegations that change the enterprise.
13      We think, your Honor, that with respect to
14  Robinson-Patman and the enterprise claim that there is
15  controlling legal authority in this circuit.  With respect to
16  enterprise, they took a crack, they put in their cases, and
17  they said the first amended -- the first complaint, not the
18  amended, the first complaint states a claim, and they cited
19  Turkette and they made their pitch and they said, well, the
20  proof at trial can coalesce.
21      One doesn't have to go beyond the 2004 Second Circuit
22  case to see that there is no separate enterprise, there is no
23  hierarchy, no structure, there's no distinction between the
24  predicate acts and the enterprise here, which falls prey to the
25  Second Circuit controlling authority.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

18

58inwwen                    Conference
1       One of the reasons that it is hard to get out of them,
2   the fact that they didn't change it is they know that that
3   makes this case worse than Broadway, the Northern District of
4   Illinois case.  That Judge said, hey, look, even if you claim
5   to cure, if you disrupt the briefing schedule, I'm going to go
6   through that and take a look.
7       Here we have defects that permeate the amended
8   complaint that should have been addressed on March 31.  They
9   could have and they should have filed that brief.
10      Your Honor has before him -- and we are not saying
11  they should be defaulted and had their case dismissed because
12  they amended the complaint.  He says in his letter on page 7,
13  hey, you know, I want a chance to brief this properly and
14  respond to their arguments.
15      He not only had an opportunity on March 31 to do that
16  with respect to those aspects which he knew had been unchanged,
17  but he was mandated to do it and took a pass on it.  He just
18  filed this gargantuan document and wants to send us back to the
19  drawing board.
20      I think that's unfair.  It violates the rule.  He has
21  not complied with your Honor's subsequent instructions.  I
22  think under the Broadway case and under the authorities that
23  say with respect to those aspects that continue to be carried
24  forward into this amended complaint, your Honor can look at
25  Mr. McDevitt's cases, look at the controlling authority and

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

19

58inwwen                    Conference
1   reach a conclusion and those two aspects would annihilate his
2   federal jurisdiction with the exception of the recently added
3   Sherman Act claim.  That would be the only thing left standing,
4   because the enterprise issue is fatal to their entire RICO
5   case.
6       Robinson-Patman was initially the only other ground of
7   federal jurisdiction.  So the only aspect is the new Sherman
8   Act claim, which we would be prepared to brief promptly and
9   have a disposition.
10      We don't think that states a claim either.  It's an
11  afterthought as well.  As I said last time, he was holding that
12  back, and he was going to do it anyway.  We are prepared to
13  address that one.  But the other ones, he created this problem,

58INWWEN

14    with his tactical, strategic decision, and he shouldn't be
15    rewarded for it.
16              Thank you, your Honor.
17              THE COURT:  You know, I had a securities fraud case
18    class action, all, very fine lawyers, like there are in this
19    case, really substantial motions to dismiss, very substantive
20    response, and in the middle of oral argument, plaintiff's
21    counsel said, time out, I want to invoke my right under 15(a).
22    Everybody sort of slumped at the defense table and said OK.  So
23    we are going to have round two on that.
24              That's I think your point Mr. McDevitt.  You are
25    absolutely right; you as a plaintiff hold that card.  But in
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              20
      58inwwen                   Conference
 1    that case there was a response.  Everybody honored the
 2    schedule, so even though that case has suffered from a delay,
 3    it's a delay that is certainly envisioned by Rule 15(a).
 4              This is not a delay that is occasioned by 15(a).  This
 5    is a delay by your decision not to respond.
 6              Why shouldn't I do this:  why shouldn't I decide the
 7    Robinson-Patman dismissal claim, why shouldn't I decide the
 8    RICO claim, he says it relates to enterprise, based on what I
 9    have submitted before me, let the defendants file a motion to
10    dismiss the amended complaint as it relates to the Sherman Act
11    claim and any other residual RICO claims that were made that
12    may have been affected by the amended complaint and let you
13    respond to those claims and then take it from there?
14              MR. McDEVITT:  Your Honor, as I heard Mr. Lerner's
15    argument, there was two arguments advanced, the Robinson-Patman
16    issue and the enterprise argument.  We have set forth our
17    position on the enterprise.  If that's the arguments that they
18    want to say survive the filing of the amended complaint,
19    they're entitled to say that.  That's fine.
20              All we ask for is the opportunity to brief why they
21    are wrong, which they are.  That is all we ask for.  If it's
22    narrowed to those two issues, fine with us.
23              THE COURT:  I gave you that opportunity.
24              MR. McDEVITT:  Your Honor, with all due respect, I am
25    not clairvoyant.  They raised a lot of issues in their original
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                              21
      58inwwen                   Conference
 1    motion.  We are down to two now.
 2              THE COURT:  Actually we are not down to two.
 3              MR. McDEVITT:  I don't know what we are down to.
 4              THE COURT:  The point that Mr. Lerner is making is
 5    that the Robinson-Patman claim, and I said it this way before,
 6    it is unchanged.  There is the fundamental legal question of
 7    whether or not under the theory you are trying to bring the
 8    claim under, this licensing issue, whether or not it can even
 9    be brought.  And they do have some cases.
10              MR. McDEVITT:  Absolutely.  It's a legitimate issue.
11              THE COURT:  OK.  Nothing about the amended complaint
12    changes your theory.  So their point is you could have at least
13    responded to that and didn't.
14              So, OK.  You had your chance.  I can just decide it.
15    I can look at your complaint.  I can look at whatever letters
16    you've submitted thus far.  I can compare it to their briefs,
17    and I can decide the issue.  I am not saying I am going to
18    agree with them.  What's the point?  You had a chance?
                           Page 10

58INWWEN

19      MR. McDEVITT:  Your Honor, again, all I can say is, as
20  I understand the rules -- and we cited the cases to the court
21  in our April 11 letter of what we understood the effect of the
22  filing to be.
23      All we are asking is -- the Robinson-Patman, we have
24  never debated that it is a legitimate issue.  It is in my mind
25  the only issue about the federal claims that are in this case.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                22
58inwwen                    Conference
1   It is a fair issue.  It is one the Second Circuit hasn't
2   decided, and there are no decided cases in this district to
3   that point.  We have an argument that could only be
4   presented -- we can't present a legal argument in an amended
5   complaint.
6       THE COURT:  Nobody is suggesting that.  The point is,
7   like what was done in the case before Judge Batts, where
8   plaintiff in that case amended the complaint and filed a
9   responding brief, I don't know where it is in Rule 15 that you
10  think that 15(a) entitles you to only file an amended answer in
11  response.  That is what I don't understand.
12      MR. McDEVITT:  An amended answer?
13      THE COURT:  I mean an amended complaint in response to
14  a motion to dismiss.  I don't understand how you read 15(a) to
15  say that all the briefing all of a sudden just gets flushed
16  down the toilet by virtue of your filing the amended complaint.
17      MR. McDEVITT:  Your Honor, what 15(a) says and what
18  the cases say, as I understand them, is that the filing of a
19  motion to dismiss does not cut off the right to amend as of
20  right under 15(a).
21      In fact, it's one of the purposes of 15(a), that you
22  get to look at the motion to dismiss to determine whether there
23  are things that you can do to amend to make sure the case is
24  decided on the merits, which is the goal in federal procedure.
25      As the rule is structured, once you file the amended
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                23
58inwwen                    Conference
1   complaint, it says that the parties shall plead to the amended
2   complaint.  That is what I assumed happened here.
3       THE COURT:  In the case that I talked about, what
4   happened there, the main battleground was on the particularity
5   requirement.
6       It was a fraud allegation, it was 10b-5.  The
7   plaintiffs said, hey, we get one more shot at this.  We are
8   going to add some facts.  In that instance you could not be
9   more right.
10      That's why, as much of the slumping shoulders of able
11  defense counsel were understandable, they didn't raise a beef
12  with it.  They understood that that was the right, at least to
13  that point.
14      But here, to the extent that the Robinson-Patman claim
15  is unchanged, it's unchanged.  The filing of the amended
16  complaint presumably wouldn't or shouldn't change your
17  obligation to respond to their argument.
18      MR. McDEVITT:  Your Honor, if we look at it in just
19  slightly different way for a minute, they don't have to change
20  their argument now.
21      All they have to do is say, if they file another
22  motion aimed at the amended complaint, we stand on our brief.
23  It is not going to cost them any more money.  And we brief it.
                        Page 11

58INWWEN
24  It's not like we have to reinvent the wheel on the
25  Robinson-Patman research.  We have one brief that identifies
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

24

58inwwen                Conference
1   everything they currently attack on the amended complaint, and
2   we brief it.  That, your Honor has always been my
3   understanding.  Maybe I am wrong.
4            I mean, I certainly had authority that I have given
5   the court for our brief as to how the process works, and that's
6   what we anticipated would occur.  They would look at the
7   amended complaint, they would say, OK, we are not going to make
8   this argument anymore or we are going to make this argument and
9   these are the ones we make to the amended complaint and we
10  would brief it and we would argue it.  That's the process I
11  thought we would follow here.
12           THE COURT:  Let's suppose for the sake of argument
13  that I do what you ask me to do, in effect asking to have the
14  defendants withdraw their motions, to resubmit them, and do a
15  whole briefing schedule.  You have mentioned a couple of times,
16  once today and a couple of times last time, that the
17  investigation's ongoing.  I mean, is there going to be another
18  amended complaint?
19           MR. McDEVITT:  I couldn't do that without leave now,
20  your Honor.
21           THE COURT:  I know.  But that's not my question.  I
22  get that.
23           But I want to know, and I think the defendants have a
24  right to know, is there going to be even an application?
25           Because if you're right, Mr. McDevitt, you could read
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

25

58inwwen                Conference
1   the rule and say I get to ask -- as you and I both know, the
2   test is very lenient.  It is when justice so requires.  It is
3   granted routinely, all the time.
4            So we set a briefing schedule, and your response is
5   due on October 31.  And on October 31, instead of a responding
6   brief to the motion to dismiss, I get a motion from you to
7   amend the complaint.
8            MR. McDEVITT:  I am not going to do that.  I'll tell
9   you I am not going to do that.
10           THE COURT:  All right.
11           MR. McDEVITT:  If, for example, your Honor, if you set
12  a briefing schedule -- I understand where the court is coming
13  from now.  Please understand, none of this is in the chamber
14  rules.  This is the first time I have appeared before your
15  Honor.  I don't have a history with your Honor.
16           We believe the amended complaint is sufficient.  On
17  whatever date your Honor establishes, without question, if we
18  decide that there are additional reasons to ask for leave to
19  the court, we are going to do both, and we will come to you and
20  tell you that.  I am not going to do the same thing.  I
21  understand where you are at.  I don't anticipate that there
22  will be anything happening between now and then.  It is a
23  continuing investigation, but I want to get this case moving,
24  your Honor.  I do.
25           THE COURT:  All right.
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

26

Page 12

58INWWEN
58inwwen                    Conference
1        Anybody on the defense side want to be heard?
2        MR. MARENBERG:  I would -- sort of like the point that
3   you made, this was an amended and supplemental complaint.  Had
4   the rule been followed here, there was a difference in what
5   would have happened.  Mr. McDevitt would have had to go to the
6   court the first time said, hey, I have discovered new facts,
7   here they are, and here's what I want to put in my first
8   amended complaint.
9        He didn't do that, and we followed him down to the
10  primrose path and wasted a lot of time and money briefing,
11  pleading that's now a nullity.
12        My concern is exactly the one you've raised, and I
13  thought Mr. McDevitt was about to say I will file an amended
14  complaint and that will be it and you can take your shot.
15  That's my best shot.  If that doesn't work, then I am out of
16  here.
17        From my perspective as counsel for THQ, the first
18  amended complaint on the RICO claim other than enterprise as to
19  THQ doesn't come near satisfying the pleading requirements for
20  RICO.  In fact, by adding allegations that it did, it made my
21  motion better on behalf of THQ.
22        My concern is, having now wasted my time and money
23  once attacking the pleading that was apparently never intended
24  to be the real one, that I don't have to file a pleading on the
25  second amended complaint.
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

                                                            27
58inwwen                    Conference
1        I think in light of all that's gone on here, he ought
2   to be ordered and he ought to be told that you can file one
3   more pleading and that's it.  And if it doesn't pass muster,
4   then no more leave to amend will be granted, because that is
5   under Rule 15 what justice so requires in these circumstances.
6        THE COURT:  I do think -- I might have even said this
7   last time.  Mr. McDevitt, I think that "when justice so
8   requires" is a context-driven concept.  So I think you can take
9   my meaning from that.
10        I think that certainly has to allow me to consider the
11  interests of all defendants, but particularly the individual
12  defendants who have to pay lawyers, and not just any lawyers,
13  to do these motions.  So I think that is something to consider.
14        Mr. Lerner?
15        MR. LERNER:  I would just say that the suggestion that
16  your Honor posed, which is -- which we are asking for, better
17  said -- may address the two threshold fatal issues in this
18  complaint before putting us to the burden of responding.
19        It is exactly what justice so requires in this case,
20  because but for the tactical decision we -- and I might add
21  that we, Mr. McDevitt is again criticizing us for not
22  identifying which of the defects still obtain in the amended
23  complaint.
24        He did it in his letter on pages 7 and 8, but that was
25  his task.  He was supposed to create the grid, and we still
              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

                                                            28
58inwwen                    Conference
1   don't have that.  I am not asking for that anymore, but I am
2   saying that under all these circumstances, where we have a
3   scheduling order that I still haven't heard any reason other
4   than he doesn't know your particular practices.
                         Page 13

58INWWEN

```
 5          But, your Honor, where I come from, I am sure where
 6    Mr. McDevitt comes from, if there's an order requiring you to
 7    do something, you have to comply with that order.  It is not
 8    trumped by some federal rule.
 9          I've never, ever gone to a judge and said your order
10    is a nullity.  It's basic doctrine that we all learn in law
11    school, that if there's an outstanding order, even if it's an
12    unconstitutional one, you can't ignore it.
13          That's exactly what was done here, and there was a
14    tactical decision here, because whenever this cooperating
15    witness started talking -- and Mr. McDevitt didn't remember
16    exactly when that was, although he said it was in March last
17    time -- it took at least a couple of weeks, two or three weeks
18    to create the 50 pages that he spewed out in the amended
19    complaint.
20          I still think that leave of court was required and a
21    motion should have been made.  But put that aside, because I
22    think his act was a legal nullity.  There is still no answer to
23    the fundamental question of how could he not file a brief.  If
24    you read all the cases that were cited in Wright and Miller and
25    the other, most people go overboard the other way and ask for
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

29

58inwwen                    Conference
```
 1    leave when it's not required, because they recognize that when
 2    you're in this context you're supposed to be up front and
 3    provide the courtesy of doing that.
 4          Here you have the opposite.  You have an amended
 5    complaint which he says we're exercising our right to file and
 6    no reference at all to the order that required an opposition
 7    brief.  The opposition brief could have and should have
 8    explained exactly the kind of information that we have been
 9    looking for for these subsequent days, which is what is the
10    impact of what is cured?  He should go first and explain that.
11          He should have that burden, and he has not done it in
12    response to the subsequent orders.  Certainly now it seems to
13    me, given all that opportunity, the burden is not on us, but
14    where you have these two issues that he's already put in
15    briefing on, the right thing to do and justice requires that
16    those threshold issues be decided, because if those go our
17    way -- as I think they are, and I don't think they're close
18    questions -- then we're saved all of the expense, effort, and
19    time of addressing the other issues and how they are affected
20    and how they are changed and we can go on about this case and
21    deal with the Sherman Act.
22          THE COURT:  Let me just address a couple of points,
23    and I will certainly hear from you.  Even if you prevail on the
24    Robinson-Patman claim and the enterprise claim and under RICO,
25    there's the Sherman Act claim, which would then have to be
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

30

58inwwen                    Conference
```
 1    provided.
 2          MR. LERNER:  We will be prepared to brief that very
 3    quickly.
 4          THE COURT:  I believe you, and I'm sure Mr. McDevitt
 5    and his team would respond very quickly.  Maybe before the
 6    World Series starts we'd have it all resolved.
 7          MR. LERNER:  The World Series may not be as
 8    interesting as it normally is, at least to us.
 9          THE COURT:  I am a Cub fan, so I promise you it won't
```

Page 14

58INWWEN

```
10   be.
11             While that's going on -- that has to go on anyways,
12   right?
13             MR. LERNER:  Yes.
14             THE COURT:  That briefing has to happen for you to
15   kick the case and go to court, even assuming you prevail on the
16   other two points.
17             What would be the prejudice to you and anybody else
18   who wants to answer this to letting them in the meantime
19   respond to the enterprise and Robinson-Patman claims almost
20   simultaneous with you briefing the Sherman Act claim, anything
21   else you want to brief to me that relates to the other
22   components of the RICO claim.
23             It's not going to slow down the case, is it?
24             MR. LERNER:  No.  But it's going to be, when you get
25   to beyond the Sherman and these threshold issues, then we're
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

31

58inwwen                    Conference
```
1    back to dealing with his altered complaint, where if we prevail
2    on these threshold dispositive issues, we never have to see
3    those again.
4             That's the prejudice.  I don't think we ever have to
5    go back into that morass to reformulate this thing because the
6    enterprise is very clear and discrete and there's like one
7    allegation in this complaint about the enterprise I think.
8             If he can tease a structure and format of his
9    complaint -- he's a great lawyer -- and the Robinson-Patman, as
10   he says, he says it's a purely legal thing, but, of course,
11   facts change, and you can change facts.  He can allege this or
12   that and that.  He has not changed that.  So those defects
13   permeate this.  So if that and the Sherman Act get decided, we
14   never have to go back and spend the extra money.
15             THE COURT:  Fine.  What if we do this -- I realize
16   it's unusual -- but we brief those issues, and if you don't
17   prevail, I'll let you brief the other issue, and if you do
18   prevail then we are done.
19             MR. LERNER:  Right.
20             THE COURT:  The one thing I said earlier is I've
21   learned a valuable lesson.  You all know I haven't been doing
22   this for a very long period of time.  The gray hair I have is
23   from my children, not from this job.
24             I understand Mr. McDevitt's point, and to the extent
25   that -- whatever his practice may be, I understand as a
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

32

58inwwen                    Conference
```
1    practicing lawyer and Lord knows when I practiced, particularly
2    in this court, I didn't want to look for a can of you know what
3    getting opened.  I understand the point.
4             On the other hand, as I said to you, in other cases
5    I've had people start of play that card, the 15(a) card.  I
6    know that in those instances they filed a brief.  But if at the
7    premotion conference I had made clear what I wanted done with
8    respect to any future amendments -- I will tell you my
9    individual practices will change by tomorrow, maybe not, since
10   I'm Part I, to make it clear where there are motions like this
11   that if somebody is going to amend they still have to respond
12   to the motions to dismiss by much a memo of law -- then you
13   would be absolutely right and I would have zero sympathy for
14   the plaintiffs.  I don't think there's any basis to challenge
```

Page 15

58INWWEN

15  his good faith and why he did what he did, and since there's
16  going to have to be briefing anyways on this Sherman claim,
17  what is the harm in letting him submit a 10-page brief on the
18  Robinson-Patman claim?
19           MR. LERNER:  In principle, I think he had his shot,
20  but in response to your Honor's question, I have no problem.
21  While we move to dismiss the Sherman Act claim, he can put in
22  his response to Robinson-Patman, anything he's got left, and on
23  the enterprise claim.
24           I think that will dispose of the case.  If he should
25  pull the rabbit out of the hat, we would get the opportunity,
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                              33
58inwwen              Conference
1  as I understand your Honor, to address the rest of the defects.
2           On that basis, I would acquiesce to Mr. McDevitt's
3  getting the opportunity to put in some more briefing on this.
4           THE COURT:  Any dissent on the defense side?  I will
5  hear from you Mr. McDevitt.
6           Yes, sir?
7           MR. FREEMAN:  Michael Freeman, your Honor, for the
8  Shenker defendants.  I certainly join in Mr. Lerner's argument,
9  but I just wanted to also bring to the court's attention that I
10  might have a very substantial collateral estoppel defense that
11  we have not heard anything from regarding the plaintiffs.  I
12  think that is another one of the arguments that should be
13  addressed on this original motion that your Honor is going to
14  extend.
15           THE COURT:  I think that is a fair point.
16           Any other comment from any other defense counsel?
17           MR. MARENBERG:  I would just raise the other point,
18  which is that my client, for example, has substantial defenses
19  in addition to the enterprise argument.  I guess we can go
20  ahead and try to knock it out on these, but it strikes me as
21  unwieldy, to tell you the truth.
22           THE COURT:  Well, here's the thing.  Yes, but on the
23  other hand, and I'm trying to accommodate everybody's interest,
24  it's arguably unwieldy to be briefing a lot of the secondary
25  issues if we don't need to brief them.  I think you said that
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                              34
58inwwen              Conference
1  you think the amended complaint actually strengthens your
2  argument for dismissal.
3           MR. MARENBERG:  Correct.
4           THE COURT:  So while everybody else is briefing the
5  Sherman claim, you can say what you want on that.  My only
6  point is actually, on the principle of this, I agree with
7  Mr. Lerner.  I think that this is not how things should be run,
8  but I think it's incumbent on me going forward to make the
9  principle crystal clear to lawyers who appear before me.
10          So I think that goes back to what I was saying before.
11 I don't think Mr. McDevitt was trying to be sneaky.  I've seen
12 sneaky in my short time here.  This wasn't sneaky.  I think
13 this the cases that you cite, Mr. Lerner, are very persuasive,
14 and I am going to use them in other cases.
15          Mr. McDevitt?
16          MR. McDEVITT:  Your Honor, if I may, if I understand
17 what's being proposed here, first we were -- I think it was
18 suggested we brief Robinson-Patman and enterprise with some
19 reservation on their part that if they lose on those issues,
                          Page 16

58INWWEN
20  which I predict they will, they get to come back and brief
21  again.
22          What is that going to accomplish except further delay?
23          The Robinson-Patman they've already made the argument.
24  If they were to stand on that argument, I know the argument.  I
25  can brief that.  They don't have to rebrief that issue.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    35
    58inwwen                    Conference
1           THE COURT: Mr. McDevitt, listen, I thought I was
2   going to do you a favor.  I am saying I am rejecting their
3   claim that you not be allowed to brief Robinson-Patman and the
4   enterprise point.  I am prepared to let you do that.
5           The way you would have it, we would rip up the motions
6   that were filed before, and we would set a brand-new schedule
7   where they would brief the kitchen sink and you would brief the
8   kitchen sink, and we are into spring training at that point.
9           My point is you said the Robinson-Patman claim is
10  fairly discrete.  It's a legal question.  It seems to me the
11  enterprise claim is fairly discrete and it's a legal question
12  to the extent that it is at least a fairly discrete subsection
13  of the RICO cause of action that you brought.  If you don't
14  meet the enterprise component, then I think you would admit
15  there is no RICO claim.  What I am suggesting is, while they do
16  what they would have done, even if you had it your way, which
17  is do more briefing, I am going to give you the chance to brief
18  what you haven't briefed thus far and they don't even want me
19  to let you brief those two discrete claims.
20          Then you can respond to the antitrust claim that they
21  are going to bring, and I think it makes perfect sense to do it
22  this way.
23          Put it this way:  If there were other jurisdictional
24  claims they were going to make, the defense is allowed to brief
25  diversity jurisdiction before you get into anything else.  If
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    36
    58inwwen                    Conference
1   they're right, and I know you say they are not, if they are
2   right, then we are done.  This case doesn't belong in federal
3   court.
4           MR. McDEVITT: I understand that, your Honor.  If they
5   are wrong, what I understand will happen then is, then, after
6   those motions are decided by the court and there's any number
7   of permutations -- you may agree with them on Robinson-Patman,
8   you may disagree with them on enterprise -- then they want to
9   come back.
10          I think I heard Mr. Marenberg say they want to brief a
11  bunch of other issues.  That is going to truncate this for
12  another year.
13          I don't want to see that happen.  If they have
14  whatever arguments they have, fine.  Make them and we will
15  address them all at the same time.  However, that is all we are
16  asking.  Whatever issue they want to attack the amended
17  complaint on, they have that right.  We would just like to
18  address them all, have the court decide them, and move this
19  case forward.
20          THE COURT: I am not going to sanction you.  I am not
21  going to deny you the opportunity on respond to two parts of
22  the motion that if they prevail on would have bounced this case
23  before it was amended.
24          But I think the principle is that lawyers have to live
                            Page 17

58INWWEN
25  with their tactical decisions.  We are in this posture because
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

37

58inwwen                    Conference
1  of a decision you made as to how you wanted to treat their
2  motion.
3          You may have had a good-faith basis to do it, but in
4  my judgment this is what justice requires under the
5  circumstances.
6          I will strictly enforce the briefing schedule.  I will
7  do my level best to get you all an expeditious answer to the
8  motions that have been filed.
9          But the reality also here, Mr. McDevitt, as you
10 probably know, the morass, as Mr. Lerner put it, is almost
11 legal code for pretty darn hard to win on a motion to dismiss,
12 because "morass" to me means facts.
13         I am not saying there is no meritorious claim.  I have
14 no idea whether or not there is merit to the other claims, but
15 they're leading with their best punch.  If you survive that
16 best punch, then you are in a better position than if you don't
17 survive it obviously.  But we're here because of how you all
18 decided to treat the schedule.
19         I am denying pretty much everything they asked for
20 with some hesitation.  I think this is what is fair under the
21 circumstances.
22         MR. McDEVITT:  Is the court going to put a schedule
23 out for when we are going to do that?
24         THE COURT:  Of course I am.
25         So, Mr. McDevitt, the question to you then is, in
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

38

58inwwen                    Conference
1  light of your desire to move this case along, and the question
2  sort of goes out to counsel for the defendants as well because
3  the idea is to have simultaneous briefing, you respond to their
4  claim on Robinson-Patman/enterprise while they put together
5  their antitrust motion.  Mr. Lerner on behalf of the army of
6  associates that will work on this motion has promised a very
7  speedy filing.
8          MR. LERNER:  I think I said prompt.
9          THE COURT:  Well, he's implied it.
10         So what is your pleasure in terms of however much
11 time, Mr. McDevitt, you would like to respond to the
12 Robinson-Patman claim and the enterprise point?
13         MR. McDEVITT:  The only complication I have, your
14 Honor, is that I'm scheduled to start a trial September 12 in
15 Wisconsin.  I'll know on August 29 whether that trial occurs.
16 The judge is going to decide summary judgment motions.  I
17 assume I don't have to go to trial.
18         THE COURT:  You are going to win the summary judgment
19 motion?
20         MR. McDEVITT:  I think so.
21         THE COURT:  Are you the defendant or the plaintiff.
22         MR. McDEVITT:  We are the defendant.
23         THE COURT:  So you are not going to trial.
24         MR. McDEVITT:  I hope not.  Nothing against the trial.
25         So we are told the judge is going to decide those
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

39

58inwwen                    Conference
Page 18

58INWWEN
1  motions on the 29th of August.  If not, we are going to start
2  trial on September 12.  At this point I have to dedicate my
3  time to preparing for that trial.  I know the argument on RP
4  and on enterprise.
5       THE COURT:  I understand.
6       MR. McDEVITT:  Could I have 20 days on the
7  understanding that if something happens on the 29th I may have
8  to come back to the court and say I am on the trial?
9       THE COURT:  I don't have a problem with that.  Do the
10 defendants have a problem with that?
11      MR. LERNER:  We were going to ask for an extra ten
12 days because of the vacation schedule, if your Honor please.
13 We would ask for September 18.
14      THE COURT:  To file the --
15      MR. LERNER:  Motion to dismiss.
16      THE COURT:  Do you want to just say everybody is due
17 September 18?
18      Obviously, if something comes up, then something comes
19 up.
20      MR. MARENBERG:  Clarification.  The motions to dismiss
21 will be on the two points, Robinson-Patman and enterprise, and
22 the -- Mr. Lerner, excuse me -- the motion to dismiss will be
23 on the antitrust claim, the Sherman Act claim, his motion will
24 be on the Robinson-Patman claims, and then we will see where we
25 are.

40

58inwwen                    Conference
1       THE COURT:  I don't want to foreclose other counsel if
2  they think they've got a clean shot here.
3       MR. MARENBERG:  The problem is I don't want to be
4  briefing half of the claims against me on the first amended
5  complaint.  I want to take a shot at the first amended
6  complaint because I don't want to have to mix and match my --
7       THE COURT:  It is your call.
8       MR. MARENBERG:  As long as I get a chance, once we see
9  where we are on enterprise, on Sherman Act and on
10 Robinson-Patman, to then go and attack the first amended
11 complaint I am fine with the schedule and have no problem with
12 it whatsoever.
13      THE COURT:  Fine.
14      MR. FREEMAN:  To clarify from my client's perspective,
15 your Honor, if I want too raise the collateral estoppel
16 argument on this first go-round, do I need to put in a new
17 piece of paper that says in addition to the Sherman Act I want
18 you to consider my collateral estoppel argument now?
19      THE COURT:  Let me ask you this.  Is there anything
20 about the amended complaint as far as you can tell that changes
21 the collateral estoppel argument?
22      MR. FREEMAN:  Not as to the RICO claim.  As to the
23 Sherman claim, I don't think Sherman is collaterally estopped.
24 That is my initial thought.  But as to RICO I think it's
25 estopped.

41

58inwwen                    Conference
1       THE COURT:  You benefit, do you not, if there is a
2  ruling that plaintiff fails to satisfy the enterprise
3  component?
4       That inures to your benefit anyways, right?
5       MR. FREEMAN:  Yes, sir.
Page 19

58INWWEN

```
 6          THE COURT:  So let's stick to that schedule.  You are
 7   not withdrawing it.  If plaintiff prevails on the enterprise
 8   point, then we will do the second round of briefing.
 9          MR. FREEMAN:  My concern is that my client is the
10   client who is not sitting on a pot of gold.  In fact he's the
11   opposite of sitting on a pot of gold.
12          If I lose this first go-round, and have to submit
13   another brief.  Then that's going to create a substantial
14   burden for my client.  That's why I would like to have my
15   motion decided in this first go-round.  In the event that the
16   enterprise argument does not prevail, I would like to have a
17   second.
18          THE COURT:  Even if you prevail on the collateral
19   estoppel point and all the other motions don't go the
20   defendants' way, you're still in the case.
21          MR. FREEMAN:  My client has only been sued under RICO
22   and the Sherman Act.
23          THE COURT:  I see.  Got you.  You are going to
24   piggyback on the Sherman Act argument so you are going to be
25   part of that.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

42

58inwwen                        Conference

```
 1          MR. FREEMAN:  I am.
 2          THE COURT:  I think is fair.
 3          Mr. McDevitt, you can respond to the collateral
 4   estoppel argument of Mr. Freeman's client as well as
 5   Robinson-Patman and enterprise.
 6          MR. FREEMAN:  Thank you, your Honor.
 7          THE COURT:  All right.  Barring your having to be in
 8   Wisconsin on trial, the plaintiff will respond to the defense
 9   motions on Robinson-Patman and the enterprise component on RICO
10   and the collateral estoppel as to the RICO claim, right, that's
11   made by you, Mr. Freeman, is that right?
12          MR. FREEMAN:  Yes, your Honor.
13          THE COURT:  All right.  The defendants will formally
14   file their motion to dismiss the Sherman cause of action in the
15   amended complaint.
16          Then, Mr. McDevitt, how much time do you want to
17   respond to that?
18          Then I am going to ask the defendants how much time
19   they want to reply.
20          MR. McDEVITT:  The antitrust claim, your Honor, that's
21   fairly straightforward.  I think 15 days is plenty of time if
22   that is all they are going to be briefing is the antitrust
23   claims.  It's notice pleading.
24          THE COURT:  By the way, the 18th of September is a
25   Sunday.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

43

58inwwen                        Conference

```
 1          MR. McDEVITT:  The 19th is fine, your Honor.
 2          THE COURT:  Good answer.  OK.
 3          Mr. McDevitt that would put you responding by October
 4.
 5          Is that enough time for defendants to reply?
 6          MR. LERNER:  I am trying to coordinate it with the
 7   Jewish holidays.  I think we can could that.
 8          THE COURT:  The week of the 11th is where I think --
 9          MR. LERNER:  I think we can do that.
10          THE COURT:  All right.
```

Page 20

58INWWEN
11            So then defense will reply on the three issues that
12   plaintiff will respond to.  Then that leaves the defense reply
13   on the antitrust issue, which I would like to do by October 18,
14   two weeks from now.
15            MR. McDEVITT:  Will that be their reply on all issues?
16            THE COURT:  That's their reply on the Sherman issue.
17            MR. McDEVITT:  What about are they going to reply on
18   the enterprise issue?
19            THE COURT:  Their rely on the enterprise issue is due
20   on the same day, October 4, as your response to the Sherman
21   claim.
22            MR. McDEVITT:  OK.
23            THE COURT:  So the only remaining question on the
24   table is can the defendants do October 18 as a reply on the
25   Sherman motion?  Is that OK?
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                              44
     58inwwen              Conference
1             If it's not, just tell me.
2             MR. LERNER:  I am told we can.  They've authorized me
3    on the record to say yes.
4             THE COURT:  All right.
5             As I said, if people have scheduling conflicts, you
6    know, work it out and let me know.
7             MR. LERNER:  Thank you.
8             THE COURT:  Is there anything else that we need to
9    take up while I am here?
10            MR. McDEVITT:  I don't know if your Honor wishes to
11   talk about discovery or not.  The last time you did.  I don't
12   know.  If you wish, I had a proposal I wanted to make at the
13   beginning, but I am not sure the court wants to hear it.
14            THE COURT:  I will hear you.
15            MR. McDEVITT:  What I was thinking, your Honor, was we
16   had originally asked for some discovery at the beginning of the
17   case, which the defendants moved to stay.
18            As we said all along, we are confident that our
19   complaint is going to pass muster.
20            What we'd like to do, if possible, is be in a position
21   where, once the court disposes of the motions, to get into
22   discovery.  And I thought it would be a good idea if both sides
23   were ordered to and could exchange just document requests
24   during this period of time so that whenever the court rules on
25   the motions we can get into deposition discovery or have
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                              45
     58inwwen              Conference
1    document issues resolved hopefully so that we can get into
2    deposition discovery expeditiously.
3             Your Honor, apart from all the arguments, we are
4    dealing with a complaint that is, as far as the federal claims
5    are concerned, governed by notice pleading standards except for
6    the mail fraud charges.  I think it clearly satisfies the
7    notice pleading standards, and we would like to get the case
8    going on the merits at some point.  I thought that might help
9    us get there if we could exchange document requests in the
10   interim and get that part of the discovery moving, no
11   depositions.
12            THE COURT:  OK.
13            MR. LERNER:  Your Honor, we are opposed to more costs
14   in the interim.  We don't think -- and I think your Honor
15   alluded last time that it was conceivable that in the state
                            Page 21

58INWWEN
16    court there will be different standards, and it just seems to
17    me that, given the strength of the motions that exist with
18    respect to the federal claims that you can see and what I think
19    will be the strength of the motion with respect to the
20    remaining federal claim that ultimately this case is going to
21    be headed to a different court, and I don't think discovery
22    under these circumstances should go forward in any way, shape,
23    or form.
24            I don't think it's going to save anybody any time at
25    the end.  As we've noted, we've already lost time and it has
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                46
       58inwwen                    Conference
1     not been on the defendants' side of this.
2             We're prepared to move forward with your Honor's
3     schedule.  I don't think discovery should go forward.
4             THE COURT:  I'm going to deny the request.  Rule 26(c)
5     says that the court has the discretion to stay discovery for
6     "good cause shown," which can be established where a party has
7     filed dispositive motions, the stay is for a relatively short
8     period of time, and the party opposing the stay is not going to
9     be prejudiced.
10            While I certainly recognize that the issuance of the
11    stay under the circumstances, to quote the applicable case law,
12    is by no means automatic and is not a question of routine, I
13    think that the factors that I am considering weigh in favor of
14    the stay.
15            Just the breadth of the discovery that's being sought
16    and the burden in responding to it are something I'm supposed
17    to consider along with the strength of the motion and, as I
18    said, the prejudice in this case to the plaintiff.
19            I think that while a document exchange is certainly
20    less burdensome than depositions in this case, while I am not
21    immersed in the facts of the case, I think it seems pretty
22    clear to me based on the allegations and a number of parties
23    that even the document requests would be very burdensome and
24    cumbersome in this case.
25            I'm cognizant that there may be some cost to the
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                47
       58inwwen                    Conference
1     individually named defendants by virtue of what's happened on
2     the briefing on the dismissal motion.  I don't think there's
3     any prejudice.
4             I think I already made crystal clear that I assumed
5     that defense counsel had conveyed to their clients their
6     obligation to preserve the discovery, including electronic
7     discovery.  I think I mentioned the Zubulaki case, which always
8     gets the most attention.
9             I think there's a way to protect the interests of the
10    plaintiff to avoid a loss of discovery.  While I don't know the
11    claims that will be made on the Sherman cause of action, I
12    think it certainly can be said, as some of the cases in the
13    circuit suggest, that the motions with respect to
14    Robinson-Patman and the enterprise certainly were not without a
15    foundation, a basis in the law.
16            Some cases talk about that as a standard.  I certainly
17    think they are colorable.  I don't have a predisposition,
18    Mr. McDevitt, because I haven't read all the cases and I
19    haven't heard from you, but I certainly think they are
20    colorable.
                        Page 22

58INWWEN
```
21          Given that it is a fairly discrete stay, given that
22    there are avenues to protect the plaintiff's interests, and
23    given the strength of the motions, at least as I understand it
24    thus far, I think it is best to deny the application for
25    discovery and, more appropriately put, to grant the defendants'
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

48

58inwwen                    Conference
```
1    stay of discovery.
2          Anything else we should take up today?
3          MR. McDEVITT:  The only thing I don't think is clear
4    is page limits.  Maybe I missed something.
5          THE COURT:  The page limits, that's a good question.
6    Thank you for raising that.
7          Since I think we did depart from the page limits in
8    the first go-round, what do you think you need to respond to
9    the three points you need to respond to?
10          MR. McDEVITT:  The collateral estoppel argument -- I
11    don't remember.  There were a lot of documents that I think he
12    had attached and went beyond the record, so a pretty voluminous
13    submission.  I think it's going to be necessary to demonstrate
14    there is no collateral estoppel here.
15          I don't recall how many pages he used on that frankly.
16    whatever amount of pages he used to make it, whatever they
17    were, I would like to have those pages to address the
18    collateral estoppel issue.  I remember thinking --
19          THE COURT:  I don't have the brief with me.
20          MR. FREEMAN:  I did not bring my brief either, and,
21    quite frankly, six months ago I can't recall.  It could have
22    been 10 or 12 pages.
23          MR. McDEVITT:  I remember when we read it thinking
24    there's a lot here that we have to correct.  I don't mean that
25    as any disrespect.  We've lived the case.  We know that.
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

49

58inwwen                    Conference
```
1    There's going to be a voluminous submission on that point.
2          THE COURT:  There may be exhibits.  But in terms of
3    the page --
4          MR. McDEVITT:  Whatever he used could I use for that?
5    If he had ten, I'll try to do it in less than ten.  There is no
6    final judgment.  The bottom line is there is no final judgment
7    in the case.  There's no collateral estoppel anyway, but --
8          THE COURT:  why don't we say ten, and if it turns out
9    that he used 15 or something, then you can let me know.
10          MR. McDEVITT:  Is that on the collateral estoppel?
11          THE COURT:  Yes.  On the collateral estoppel.
12          MR. McDEVITT:  The Robinson-Patman, your Honor, it is
13    going to be a rather developed argument.  Could I have with the
14    Robinson-Patman argument -- and I may not even need this many,
15    I don't want to write more than I need to.  Could I have 25
16    pages?
17          THE COURT:  That is a lot of pages on an issue that I
18    actually think is fairly straightforward.
19          MR. McDEVITT:  I don't think the Robinson-Patman, with
20    all due respect, I understand why you would think that reading
21    their brief, but our argument takes a little bit of space to
22    develop.  It's well researched.  We have looked at all the
23    cases on this.  We would like to lay it out.  I don't think I
24    am going to need 25.  I don't want to ask for ten and then need
25    it.
```
Page 23

58INWWEN
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

50

58inwwen                    Conference
1       THE COURT:  I will give you 20.  If you need more, you
2   will let me know.
3       MR. MCDEVITT:  Thank you, your Honor.
4       THE COURT:  What do you want to do about the
5   enterprise?
6       MR. MCDEVITT:  I am assuming -- I was talking about
7   both Robinson-Patman and the enterprise.  That's why I was
8   asking for 25 pages.
9       THE COURT:  That's fine.  So you are looking at a
10  35-page brief to deal with all three issues?
11      MR. MCDEVITT:  If his is ten.
12      THE COURT:  Right.
13      MR. MCDEVITT:  Yes.
14      THE COURT:  All right.  That's fine.
15      You can have the 25 for the other two points.
16      Are defendants going to need to depart from my
17  individual practices on the antitrust claim?
18      MR. LERNER:  Can we have an extra five pages?
19      THE COURT:  Sure.  What does that get you to?
20      MR. LERNER:  30.
21      THE COURT:  All right.
22      MR. MARENBERG:  Your Honor, we will try not to file a
23  brief and try to coordinate, but can we have 15 pages?  We
24  don't need the whole 30 that they said.  If we can get 15
25  pages?
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

51

58inwwen                    Conference
1       THE COURT:  Sure.
2       MR. MARENBERG:  We will try not to file anything.
3       THE COURT:  Is that on the antitrust?
4       MR. MARENBERG:  Yes.
5       THE COURT:  Yes.
6       What would you like to respond?
7       MR. LERNER:  Whatever pages they use, I would like the
8   same amount.  If they have 45, I don't think we need 45.
9       THE COURT:  You are going to get me in trouble with
10  the environmentalists.  What's good for the goose is good for
11  gander.
12      MR. LERNER:  We always take the brunt.  He takes the
13  THQ pages.  That's OK.  It's an adversary system.  Let him say
14  what he wants.
15      THE COURT:  The judge I clerked for always said if you
16  can't say it in ten pages -- if you need a little extra for
17  reply, extra five pages for reply, that's fine.
18      MR. LERNER:  Thank you.
19      MR. MCDEVITT:  What are the reply briefs?  What is the
20  page limit on that?
21      THE COURT:  Whatever the page limit is you are talking
22  about?
23      MR. MCDEVITT:  That's right.  So whatever --
24      THE COURT:  You've got two briefs that you are going
25  to write, both responding briefs.
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

52

58inwwen                    Conference
1       MR. MCDEVITT:  Right.
Page 24

```
                              58INWWEN
 2              THE COURT:  You are getting basically 35 on the first
 3     round and you are a getting whatever they use with respect to
 4     the Sherman claim.
 5              OK.  Anything else we need to discuss?
 6              MR. McDEVITT:  Thank you, Judge.
 7              THE COURT:  Thank you all for coming.
 8              MR. LERNER:  Thank you, your Honor.
 9              (Adjourned)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```