UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X  :
                                                               :
WORLD WRESTLING ENTERTAINMENT, INC.,                           :
                                                               :   04 CV 8223 (KMK)
            Plaintiff,                                       :
                                                               :
        - against -                                         :
                                                               :   October 19, 2005
JAKKS PACIFIC, INC.; JAKKS PACIFIC (H.K.)                      :
LIMITED; ROAD CHAMPS LIMITED; THQ, INC.;                       :
THQ/JAKKS PACIFIC LLC; STANLEY SHENKER                         :
AND ASSOCIATES, INC.; STANLEY SHENKER;                         :
BELL LICENSING, LLC; JAMES BELL; JACK                          :
FRIEDMAN; STEPHEN BERMAN; JOEL                                 :
BENNETT; and BRIAN FARRELL,                                    :
                                                               :
            Defendants.                                      :
                                                               :
------------------------------------------------------------X  :


**WORLD WRESTLING ENTERTAINMENT, INC.'S SUR-REPLY MEMORANDUM OF
LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

William O. Purcell (WP 5001)
KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP
599 Lexington Avenue
New York, New York 10022-6030
(212) 536-3900 (phone)
(212) 536-3901 (fax)

Jerry S. McDevitt
Curtis B. Krasik
Amy L. Barrette
KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, Pennsylvania 15222
(412) 355-6500 (phone)
(412) 355-6501 (fax)

Attorneys for Plaintiff, World Wrestling Entertainment, Inc.

PI-1452455 v2

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES……………………………………….......................ii

INTRODUCTION………………………………………………………………....1

THE ASCERTAINABLE STRUCTURE REQUIREMENT OF THE EIGHTH
CIRCUIT IS NOT THE LAW OF THIS CIRCUIT…………………………………5

CONCLUSION………………………………………………………………..10

## **TABLE OF AUTHORITIES**

**CASES**       **PAGE(S)**

Chang v. Chen,
  80 F.3d 1293 (9th Cir. 1996)..........................................................................2

Feinberg v. Katz,
  No. 99 CIV. 45(CSH), 2002 WL 1751135 (S.D.N.Y. July 26, 2002)...................1,2,4,9

First Capital Asset Management, Inc. v. Satinwood, Inc.,
  385 F.3d 159 (2d Cir. 2004)........................................................................1,2,3,4,5,8

In re Sumitomo Copper Litig.,
  104 F. Supp. 2d 314 (S.D.N.Y. 2000)...........................................................8,9

Moss v. Morgan Stanley Inc.,
  719 F.2d 5 (2d Cir. 1983).........................................................................1,7,8

Pavlov v. Bank of New York Co.,
  135 F. Supp. 2d 426 (S.D.N.Y. 2001).........................................................2,3,8,9

Schmidt v. Fleet Bank,
  16 F. Supp. 2d 340 (S.D.N.Y. 1998)...........................................................2,3,8,9

Stephens, Inc. v. Geldermann, Inc.,
  962 F.2d 808 (8th Cir. 1992)..................................................................2,3

United States v. Anderson,
  626 F.2d 1358 (8th Cir. 1980)...............................................................1,3,4,5,6,7,8

United States v. Bagaric,
  706 F.2d 42 (2d Cir. 1983).....................................................................1,4,7,8

United States. v. Bledsoe,
  674 F.2d 647 (8th Cir. 1982).................................................................2,3,6,7

United States v. Coonan,
  938 F.2d 1553 (2d Cir. 1991).................................................................1

United States v. Errico,
  635 F.2d 152 (2d Cir. 1980)....................................................................7

United States v. Ferguson,
 758 F.2d 843 (2d Cir. 1985)..................................................................1

United States v. Indelicato,
 865 F.2d 1370 (2d Cir. 1989)..........................................................1,5,8

United States v. Mazzei,
 700 F.2d 85 (2d Cir. 1983)........................................................1,3,4,7,8

United States v. Turkette,
 452 U.S. 576 (1981)..............................................................2,5,6,7,10

United States v. Young,
 745 F.2d 733 (2d Cir. 1984)..................................................................1

**OTHER AUTHORITIES**

RICO: Civil and Criminal Law Strategy, § 105[1], [2],
 (Jed S. Rakoff & Howard W. Goldstein eds., 2005)..........................2,9,10

Gregory P. Joseph, Civil RICO: A Definitive Guide 69-70 (2d ed. 2000)............................10

## INTRODUCTION

As a result of the briefing on the enterprise issue, it is now clear that Defendants' arguments turn on the accuracy of their contentions that the Second Circuit has "never rejected" but instead "openly embraced" the "ascertainable structure" requirement announced in United States v. Anderson, 626 F.2d 1358, 1372 (8th Cir. 1980). (Jakks R. Mem. 15-16 n.10.)[1] The sole Second Circuit authority cited for these contentions is the opinion of Judge Miner in First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004).

Defendants' unequivocal contentions are wrong. The Second Circuit has expressly rejected Anderson's "ascertainable structure" requirement every time it has come before the Second Circuit beginning with United States v. Mazzei, 700 F.2d 85, 89-90 (2d Cir. 1983) ("[w]e are not persuaded by that precedent," referring to Anderson and its progeny) and Moss v. Morgan Stanley, Inc., 719 F.2d 5, 22-23 (2d Cir. 1983) ("In Mazzei we expressly rejected the Eighth Circuit's view . . . ," citing thereafter to Anderson's holding as rejected). In fact, the Second Circuit with twelve judges sitting en banc, including Judge Miner, reaffirmed both Mazzei and Moss in United States v. Indelicato, 865 F.2d 1370, 1384 (2d Cir. 1989).[2] And, as noted by this Court in Feinberg, a case previously cited by WWE, when the Second Circuit last addressed the propriety of a trial court dismissing a complaint on "ascertainable structure" grounds, it resulted in a summary reversal by the Second Circuit in an unpublished decision in

---

[1] "Ascertainable structure" is a term of art and is not to be confused, as Defendants repeatedly do, with the requirement that a RICO plaintiff must prove both the existence of an enterprise and the pattern of racketeering. As demonstrated herein, the "ascertainable structure" requirement holds that an enterprise must have a structure distinct from the structure inherent in the pattern of racketeering, a proposition rejected consistently by the Second Circuit.

[2] The Second Circuit has cited Mazzei in six published opinions since it was decided: United States v. Coonan, 938 F.2d 1553, 1559 (2d Cir. 1991); Indelicato, 865 F.2d at 1375, 1384; United States v. Ferguson, 758 F.2d 843, 853 (2d Cir. 1985); United States v. Young, 745 F.2d 733, 751 (2d Cir. 1984); Moss, 719 F.2d at 22; and United States v. Bagaric, 706 F.2d 42, 55 (2d Cir. 1983).

2002. See Feinberg v. Katz, No. 99 CIV. 45(CSH), 2002 WL 1751135, at *12 (S.D.N.Y. July 26, 2002).[3] In their brief, Defendants cited Judge Rakoff's treatise to support their "ascertainable structure" argument without pointing out that the authorities relied upon in the treatise included the trial court decision in Pavlov v. Bank of New York, 135 F. Supp. 2d 426 (S.D.N.Y. 2001), the very decision reversed by the Second Circuit in 2002. See infra pp. 8-9.

Indeed, the "ascertainable structure" argument presented to this Court is remarkably similar to the losing argument contained in the appellees' brief in the Pavlov case before the Second Circuit. The appellees in Pavlov unsuccessfully argued:

> Consistent with Turkette, courts in this Circuit and others have required that the enterprise have an existence and structure apart from the racketeering acts or the minimal association necessary to commit the racketeering acts. See, e.g., Chang v. Chen, 80 F.3d 1293, 1297-99 (9th Cir. 1996) (Turkette requires that an enterprise have an ascertainable structure apart from the racketeering activity); Stephens, Inc. v. Gelderman, Inc., 962 F.2d 808, 815 (8th Cir. 1992) ("[The enterprise] cannot simply be . . . the minimal association which surrounds these [racketeering] acts." (quoting United States. v. Bledsoe, 674 F.2d 647, 664 (8th Cir. 1982))); Schmidt, 16 F. Supp. 2d at 349 ("[T]he RICO enterprise must always have an ascertainable structure distinct from that inherent in the conduct of a 'pattern of racketeering.'").

See Pavlov Appellees' Brief at p. 17, Barrette Decl., Tab 1.

In language which is almost in haec verba to that presented to the Second Circuit in Pavlov quoted above, Defendants here argued[4]:

> In keeping **with Turkette, courts in this Circuit and others have** consistently **required that the enterprise have an existence and structure** separate and **apart from the racketeering acts or the minimal association necessary to commit the racketeering acts. See, e.g.,** First Capital, 385 F.3d at 174 (declaring that allegations showing that enterprise is "separate and distinct from the alleged predicate racketeering acts themselves" is "a requirement in [the Second] Circuit"); **Chang v. Chen, 80 F.3d 1293, 1297-98 (9th Cir. 1996) (Turkette requires that an enterprise have an ascertainable structure apart from the racketeering activity); Stephens, Inc. v. Geldermann, Inc.,**

---

[3] WWE is not permitted to cite the actual Second Circuit opinion as precedential authority under the rules of the Second Circuit and, therefore, does not do so. The unpublished opinion of the Second Circuit in Pavlov is discussed at length in this Court's opinion in Feinberg.

[4] Language and editing of quotes identical to that used in the appellees' losing brief in Pavlov are in bold.

> **962 F.2d 808, 815 (8th Cir. 1992) ("'[The enterprise] cannot simply be . . . the minimal association which surrounds these [racketeering] acts.'" (quotation omitted)); Schmidt, 16 F. Supp. 2d at 349 ("[T]he RICO enterprise must always have an ascertainable structure distinct from that inherent in the conduct of a 'pattern of racketeering.'" (citation omitted)).**

(Jakks Mem. 28-29.) (emphasis added).

There are a few differences between the losing argument previously presented to the Second Circuit in Pavlov and the remarkably similar argument made here. First, the Pavlov brief to the Second Circuit indicated that "courts in this Circuit and others" had adopted the "ascertainable structure" requirement but cited no Second Circuit authority. Defendants inserted First Capital into the same string cite even though it does not discuss or adopt the "ascertainable structure" requirement. Second, despite the reversal of the trial court in Pavlov, Defendants added the word "consistently" to make it appear as if the "ascertainable structure" requirement has been "consistently" required. Third, Defendants deleted the citation to Bledsoe, which was also specifically repudiated in Mazzei, and omitted the citations relied upon by Schmidt v. Fleet Bank, 16 F. Supp. 2d 340 (S.D.N.Y. 1998) for the proposition for which it was cited. In reality, the authority cited by the court in Schmidt was the Eighth Circuit progeny of Anderson, including Bledsoe and Stephens. Schmidt, 16 F. Supp. 2d at 349.

Based on their "ascertainable structure" argument, Defendants then argued that the enterprise alleged here was deficient because it "has no other structure or ongoing organization or any other purpose outside of these alleged acts." (Jakks Mem. 29.) (emphasis added). Proceeding on the assumption it was, therefore, insufficient, Defendants argued that "[t]he only connection between the thirteen (13) purported members of the alleged enterprise is the single scheme alleged . . . ."[5] Id. at 29.

---

[5] In their reply brief, Defendants echo this theme, contending that "where, as here, the sole purpose of the purported enterprise is to carry out the alleged predicate acts, it does not pass muster." (Jakks R. Mem.

- 3 -

In response, WWE demonstrated that the authority from other circuits relied upon by Defendants had expressly acknowledged that the "ascertainable structure" requirement had not been adopted by the Second Circuit. (WWE Mem. 16-18.) WWE cited reams of authority demonstrating that the Second Circuit has consistently held that the enterprise need not have any structure beyond that necessary to carry out the predicate acts and that Second Circuit law eschews abstract analysis of structure. Id.; see also Bagaric, 706 F.2d at 56 ("[I]t is logical to characterize any associative group in terms of what it does, rather than by abstract analysis of its structure."). WWE further pointed out that First Capital did not and could not overrule prior Second Circuit authority directly on point since a panel cannot overrule another panel, let alone an en banc decision, a proposition Defendants do not dispute. (WWE Mem. 16-18.)

Faced with controlling authority foreclosing their argument, instead of withdrawing their "ascertainable structure" argument, Defendants regrettably went even further in their reply brief and now take an utterly extreme position borne out of need, not law. Defendants, citing only First Capital, now contend that the Second Circuit "has never rejected" but instead "openly embraced" the "ascertainable structure" holding of Anderson, a case not even cited in their opening brief. (Jakks R. Mem. 15-16 n.10.) Defendants point to no language in First Capital purporting to overrule prior precedent explicitly rejecting Anderson as the law of this circuit. Having no ability to demonstrate that First Capital could or did overrule prior decisions, including an en banc decision, Defendants blithely dismiss decades of Second Circuit enterprise jurisprudence simply because such cases "predate" First Capital. Id.

---

19.) The cases relied upon by Defendants thereafter are the very trial court decisions noted by this Court in Feinberg as having improperly utilized the Eighth Circuit ascertainable structure rule. Defendants' contention flies directly in the face of Mazzei, which squarely holds otherwise.

- 4 -

Thus, this Court has a straightforward decision to make since <u>all</u> parties contend that there is controlling Second Circuit authority which governs the "ascertainable structure" issue. On the one hand is the position of Defendants that the Second Circuit "has <u>never</u> rejected" the "ascertainable structure" requirement but instead "openly embraced it," citing only <u>First Capital</u>. Accepting that position requires this Court to ignore all Second Circuit enterprise authority predating <u>First Capital</u>, including two decisions directly rejecting the "ascertainable structure" requirement and an en banc decision reaffirming those decisions.[6] On the other hand is WWE's position that <u>First Capital</u> did not alter longstanding law of this circuit specifically holding that the "ascertainable structure" requirement is not the law of this circuit, and that <u>First Capital</u> simply applied existing Second Circuit law to conclude that an enterprise had not been pled.

**THE ASCERTAINABLE STRUCTURE REQUIREMENT OF THE EIGHTH CIRCUIT IS NOT THE LAW OF THIS CIRCUIT**

Defendants' reply brief creates the impression that the "ascertainable structure" requirement is nothing more than courts implementing some stated requirement of the Supreme Court's decision in <u>United States v. Turkette</u>, 452 U.S. 576 (1981). (Jakks R. Mem. 15-16 n.10.) <u>Turkette</u>, however, never used that phrase to define an enterprise. More importantly, the "ascertainable structure" requirement is not derived from <u>Turkette</u> for a far simpler reason. The <u>Anderson</u> decision announcing that requirement <u>predates</u> <u>Turkette</u> and was a misguided attempt by the Eighth Circuit to limit the application of RICO. The narrow issue in <u>Anderson</u> was whether the term "enterprise" encompassed an illegal association proved only by facts which also establish the predicate acts. <u>Anderson</u>, 626 F.2d at 1365. Relying on the erroneous notion

---

[6] Judge Miner was plainly aware of <u>Indelicato</u> when he authored <u>First Capital</u>. Not only was he on the en banc court for that decision, but he also cited <u>Indelicato</u> twice with approval in the very section of <u>First Capital</u> upon which Defendants rely. <u>First Capital</u>, 385 F.3d 173-74.

that the goal to eradicate organized crime guides interpretation of RICO, the Eighth Circuit held that the enterprise concept:

> encompass[ed] only an association having an <u>ascertainable structure</u> which exists for the purpose of maintaining operations directed toward an economic goal <u>that has an existence that can be defined apart from the commission of the predicate acts</u> constituting the "pattern of racketeering activity."[7]

Id. at 1372 (emphasis added).

The next year, the Supreme Court decided <u>Turkette</u> after the First Circuit had held that Congress did not intend to include exclusively criminal organizations within the definition of "enterprise." <u>Turkette</u>, 452 U.S. at 578. <u>Anderson</u> was cited in a footnote string cite in <u>Turkette</u> only to show that it and all other circuits held that RICO reached both legitimate and illegitimate enterprises. <u>Id.</u> at n.1. None of <u>Anderson</u>'s "ascertainable structure" requirement was adopted by the Supreme Court in <u>Turkette</u>, which is not surprising. Those words appear nowhere in the statutory definition of an enterprise, and the whole concept behind <u>Anderson</u> was at odds with <u>Turkette</u>, which held that one must "prove both the existence of an 'enterprise' and the <u>connected</u> 'pattern of racketeering activity.'" <u>Turkette</u>, 452 U.S. at 583 (emphasis added).

One year after <u>Turkette</u>, the Eighth Circuit, rather than apply the logic of <u>Turkette</u>, continued to hold there was an "ascertainable structure" requirement for an enterprise. <u>Bledsoe</u>, 674 F.2d at 665. Citing <u>Anderson</u>, the Eighth Circuit in <u>Bledsoe</u> held that an enterprise must have an "'ascertainable structure' distinct from that inherent in the conduct of a pattern of racketeering activity" and indicated it could be proven by showing that the group "engaged in a diverse pattern of crimes" or had the "command system of a Mafia family." <u>Id.</u>

---

[7] In announcing this pre-<u>Turkette</u> requirement for an enterprise, the Eighth Circuit expressly acknowledged that "[w]e recognize that this holding places the Eighth Circuit in direct opposition to the views of the Second, Fifth, Seventh and Ninth Circuits." <u>Anderson</u>, 626 F.2d at 1372.

Contrary to Defendants' "never rejected" argument, the Second Circuit explicitly rejected this entire body of Eighth Circuit jurisprudence soon after it was announced. In Mazzei, the defendant specifically argued that the Eighth Circuit decision in Bledsoe mandated reversal because the indictment alleged an enterprise which existed for the sole purpose of engaging in the connected pattern of racketeering at issue. Mazzei, 700 F.2d at 88. Speaking directly to Anderson and Bledsoe, the Second Circuit unqualifiedly declined to follow those precedents, finding them inconsistent with Turkette, and held that persons joined together for a single purpose can be an enterprise. Mazzei, 700 F.2d at 89-90. In the words of the Mazzei court, "[c]rime is no less organized where its purposes are singular." Id. at 90.[8]

Still later in 1983, a different Second Circuit panel again explicitly rejected the Eighth Circuit's "ascertainable structure" requirement in civil RICO cases. Moss, 719 F.2d at 22. Moss specifically cited with disapproval the holding of Anderson which Defendants here cite in a footnote (Jakks R. Mem. 15-16 n.10) and claim that the Second Circuit "has, in fact, openly embraced this requirement."[9] Moss, 719 F.2d at 22. In Moss, the trial judge had required the plaintiff to plead not only the existence of an enterprise but also that the enterprise had an "independent economic significance from the pattern of racketeering activity," Moss, 719 F.2d at 22, an erroneous concept derived directly from the Eighth Circuit jurisprudence requiring an enterprise to have a structure directed to economic goals unrelated to the predicate acts. Once again, the Second Circuit expressly repudiated that view, noting it was inconsistent with Mazzei

---

[8] See also United States v. Errico, 635 F.2d 152, 156 (2d Cir. 1980) (enterprise members joined together for the sole purpose of fixing and betting on horse races); Bagaric, 706 F.2d at 55, 57-58 (upholding RICO where the enterprise was, in effect, no more than the sum of the predicate racketeering acts).

[9] Indeed, Moss cited the "ascertainable structure" holding of Anderson to note it did not follow that Eighth Circuit rule. Moss, 719 F.2d at 22. The same language used by the Moss court to describe the holding of Anderson which Moss was rejecting is now restated in every material respect in Defendants' reply brief as part of what the Second Circuit supposedly openly embraced! (Jakks Mem. 15-16 n.10.)

and Bagaric and specifically noted its prior rejection of that principle of law derived from the Eighth Circuit's opinion in Anderson.[10] Moss, 719 F.2d at 22. Finally, in Indelicato, the Second Circuit en banc in 1989 again reaffirmed both Moss and Mazzei, noting that Mazzei had specifically rejected the notion that there was no RICO violation when the enterprise was indistinguishable from the pattern. Once again, the Second Circuit ruled that "the same piece of evidence" may establish both enterprise and pattern. Indelicato, 865 F.2d at 1384.

It is against this background of unbroken precedent, and the cogent summary of it in Feinberg, that Defendants' argument about First Capital must be assessed. Faced with this controlling Second Circuit authority unquestionably rejecting the "ascertainable structure" requirement, and despite the reversal of the Pavlov trial court decision applying that requirement, Defendants resort to utilizing secondary authorities to create the illusion that the Second Circuit has "never rejected" but instead "openly embraced" the ascertainable structure requirement. In fact, there has not been a minute in the Second Circuit when that has been the law. Thus, Defendants cite to a block quote from the treatise of Judge Rakoff designed to show that "[c]ourts in the Second Circuit do, in fact, embrace the 'ascertainable structure' requirement that WWE claims is not the law of this Circuit." (Jakks R. Mem. 17.) Defendants did not identify the authorities relied upon in the treatise for the proposition that the enterprise must have an "ascertainable structure." The treatise cites precisely three trial court decisions which relied on discredited Eighth Circuit law for that proposition and no Second Circuit authority: Schmidt, the now reversed trial court decision in Pavlov and In re Sumitomo Copper Litig., 104 F. Supp. 2d

---

[10] The citation to Anderson in First Capital relied upon by Defendants is pure dicta. The full context of the statement is "[b]ut legitimacy is by no means a prerequisite to a RICO enterprise. In perhaps its least developed form, an enterprise may be found where there is simply a 'discrete economic association existing separately from the racketeering activity.'" First Capital, 385 F.3d 173. It appears that the intent of the citation was to indicate that not much is required to subject an illegitimate association to RICO. In this circuit, as established by Moss, the standard is even more liberal than stated by Judge Miner since one does not need any economic association existing separately from the racketeering activity.

314 (S.D.N.Y. 2000). See RICO: Civil and Criminal Law Strategy, § 1.05[1], 1-52 n.17, Barrette Decl., Tab 2. Thus, by using a secondary authority and omitting the citations for the proposition, Defendants essentially sought the benefit of the reversed trial court decision in Pavlov and the same argument contained in the Pavlov defendants' losing brief to the Second Circuit without disclosing the subsequent history at circuit level. As pointed out by this Court in Feinberg, however, Pavlov was explicitly reversed by the Second Circuit in an unpublished decision, which reiterated that the "ascertainable structure" requirement is not Second Circuit law. Feinberg, 2002 WL 1751135, at *12. Feinberg also repudiated Schmidt for its reliance on Eighth Circuit law as well. Id. As stated cogently in Feinberg:

> The defendants' reliance on Schmidt and its progeny is as disturbing as it is unavailing. The Second Circuit pointedly disagreed with Schmidt on precisely the point for which defendants cite it . . . In Pavlov, the Second Circuit reversed the district court's dismissal of a RICO claim on the ground that the complaint did not allege an enterprise because the alleged enterprise constituted merely an aggregation of the predicate racketeering acts. In reversing, the court of appeals noted that the district court relied on Eighth Circuit precedent, as well as Schmidt . . . [and] [t]he Second Circuit disapproved of this reasoning . . . .
>
> As the unpublished nature of the decision implies, it did not break new ground. The reasoning of the Eighth Circuit on which Schmidt stands was dismissed by the Second Circuit long before Pavlov . . . .
>
> In light of the clear Second Circuit precedent which allows an enterprise to be comprised of a group formed for the sole purpose of engaging in fraudulent activity, I cannot accept the [defendants'] argument that the plaintiff has failed to adequately allege an enterprise because the . . . [e]nterprise existed purely to commit the fraud plaintiff alleges.

Feinberg, 2002 WL 1751135, at *12-13.

Defendants cite again to Judge Rakoff's treatise for the proposition that "[m]ost, but not all, courts have interpreted this aspect of the enterprise element to require that the enterprise have an organization or structure beyond that which is necessary to commit the racketeering acts." (Jakks R. Mem. 14.) The treatise cites no Second Circuit authority for the proposition. See

RICO: Civil and Criminal Law Strategy, § 1.05[1], 1-50, Barrette Decl., Tab 2. The Defendants fail to cite to the very next subsection of the treatise, which expounds upon the differing tests to establish the existence of an association-in-fact enterprise, and which expressly states that the Second and Eleventh Circuits have "rejected the . . . Eighth Circuit test[]." See RICO: Civil and Criminal Law Strategy, § 105[2], 1-56-7, Barrette Decl., Tab 2.

> Finally, citing yet another secondary source, Defendants tell the Court:
>
> [T]he suggestion that decisions in certain Circuits can be read to reject a requirement that an enterprise have a structure distinct from the pattern of racketeering "may be a bit misleading, since [those Circuits] are still guided by the precepts of . . . Turkette."

(Jakks R. Mem. 16 n. 11.) The actual passage from the treatise reads as follows:

> The Second, Eleventh and District of Columbia Circuits have rejected any independent structure requirement, although that may be a bit misleading since they are still guided by the precepts of . . . Turkette.") (emphasis added).

See Civil RICO: A Definitive Guide, pp. 69-70 (emphasis added), Barrette Decl., Tab 3.

## CONCLUSION

The entirety of Defendants' enterprise argument is built on a house of cards. Rather than admit what cannot be credibly denied, Defendants advised this Court that the "ascertainable structure" rule had "never" been rejected but was "openly embraced" and adopted by the Second Circuit. On its face, the entirety of the argument should be rejected by this Court out of hand as not based on Second Circuit law.

Respectfully submitted,

By: Jerry S. McDevitt
Curtis B. Krasik
Amy L. Barrette
535 Smithfield Street
Pittsburgh, Pennsylvania 15222
(412) 355-6500 (phone)
(412) 355-6501 (fax)

- 11 -

                    William O. Purcell (WP 5001)
599 Lexington Avenue
New York, New York 10022-6030
(212) 536-3900 (phone)
(212) 536-3901 (fax)

KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP

Dated:  October 19, 2005        Attorneys for Plaintiff, World Wrestling Entertainment, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of World Wrestling Entertainment, Inc.'s Sur-Reply Memorandum of Law in Opposition to Defendants' Motions to Dismiss was served on the following counsel of record via electronic mail service and first-class U.S. mail, postage prepaid: this 19th day of October, 2005:

John R. Williams
John R. Williams & Assocs., LLC
51 Elm Street, Suite 409
New Haven, CT 06510

Michael A. Cornman
Schweitzer Cornman Gross & Bondell, LLP
292 Madison Avenue
New York, NY 10017

_____
Jerry S. McDevitt