

# 01-7434

UNITED STATES COURT OF APPEALS
FILED
AUG 20 2001
...B. Mackechnie, CLERK
...ND CIRCUIT

## United States Court of Appeals

*for the*

### Second Circuit

RECORDS COPY
PLEASE RETURN TO ROOM
1802



MIKHAIL PAVLOV, OLGA MURAVYOVA, TAMARA USTINOVA,
RUSTAM RUSTAMOV, ONARA PARTNERS, S&K TRUST,
BORIS KOMANITSKY and VLADIMIR PETROV,

*Plaintiffs-Appellants.*

– against –

THE BANK OF NEW YORK CO., INC. and
THE BANK OF NEW YORK,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

JOHN L. WARDEN
BRUCE E. CLARK
RICHARD H. KLAPPER
MARC DE LEEUW
JEFFREY J. CHAPMAN
SULLIVAN & CROMWELL
*Attorneys for Defendants-Appellees*
125 Broad Street
New York, New York 10004
(212) 558-4000

## CORPORATE DISCLOSURE STATEMENT

Defendant-Appellee The Bank of New York Co., Inc. is a bank holding company that owns 100% of Defendant-Appellee The Bank of New York. No publicly held company owns 10% or more of the stock of Defendant-Appellee The Bank of New York Co., Inc.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

COUNTER-STATEMENT OF ISSUES
PRESENTED FOR REVIEW .................................................................. 1

INTRODUCTION ................................................................................ 2

COUNTER-STATEMENT OF THE CASE ............................................. 2

    A.    Plaintiffs' Allegations ................................................. 2

    B.    The Proceedings Below................................................ 6

    C.    Decision of the District Court ..................................... 7

STANDARDS OF REVIEW ............................................................... 13

SUMMARY OF ARGUMENT ............................................................. 13

ARGUMENT ..................................................................................... 15

I.    THE DISTRICT COURT CORRECTLY HELD
THAT PLAINTIFFS FAILED TO ALLEGE A
LEGALLY SUFFICIENT RICO ENTERPRISE ................................... 15

II.    THE DISTRICT COURT CORRECTLY FOUND
THAT IT LACKED SUBJECT MATTER
JURISDICTION OVER PLAINTIFFS'
CONVERSION CLAIMS ................................................................... 23

III.  THE DISTRICT COURT'S *FORUM NON CONVENIENS* ANALYSIS PROVIDES ANOTHER BASIS FOR AFFIRMANCE...............................................31

    A.  Plaintiffs Do Not Take Issue With the District Court's Conclusion That Russian Courts Offer an Adequate Alternative Forum ..........................................33

    B.  The District Court Correctly Found That Private Interests Favored Dismissal...............................................35

    C.  The District Court Correctly Found That Public Interests Favored Dismissal...............................................40

IV.  THE COURT ALSO MAY AFFIRM ON THE INDEPENDENT BASIS THAT PLAINTIFFS DO NOT HAVE STANDING ...............................................................44

CONCLUSION......................................................................................... 54

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Adato* v. *Kagan*, 599 F.2d 1111 (2d Cir. 1979) ........................................ 45, 49

*Alfadda* v. *Fenn*, 159 F.3d 41 (2d Cir. 1998) ............................... 31, 32, 40, 43

*Allstate Life Ins. Co.* v. *Linter Group Ltd.*,
   994 F.2d 996 (2d Cir. 1993) ....................................................................... 39

*American Dredging Co.* v. *Miller*, 510 U.S. 443 (1994) ............ 13, 32, 33, 44

*Associated Gen. Contractors of Cal., Inc.* v.
   *California State Council of Carpenters*, 459 U.S. 519 (1983) ................ 48

*Bernard* v. *Gerber Food Prods. Co.*,
   938 F. Supp. 218 (S.D.N.Y. 1996) ............................................................. 26

*Blanco* v. *Banco Indus. de Venezuela, S.A.*,
   997 F.2d 974 (2d Cir. 1993) ....................................................................... 43

*Brandenburg* v. *Seidel*, 859 F.2d 1179 (4th Cir. 1988) ................................ 46

*Cannon* v. *University of Chicago*, 441 U.S. 677 (1979) ............................. 27

*Chang* v. *Chen*, 80 F.3d 1293 (9th Cir. 1996) ............................................... 17

*Chesley* v. *Union Carbide Corp.*, 927 F.2d 60 (2d Cir. 1991) ..................... 34

*Colon* v. *Rent-A-Center, Inc.*, 13 F. Supp. 2d 553 (S.D.N.Y. 1998) ........... 26

*Edmonds* v. *Compagnie Generale Transatlantique*,
   443 U.S. 256 (1979) ...................................................................... 27-28, 31

*FDIC* v. *Renda*, 692 F. Supp. 128 (D. Kan. 1988) ....................................... 46

*Finley* v. *United States*, 490 U.S. 545 (1989) .............................................. 29

*First Nationwide Bank* v. *Gelt Funding Corp.*, 820 F. Supp. 89
   (S.D.N.Y. 1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994) ............................ 16, 20

*Free* v. *Abbott Labs. (In re Abbott Labs.)*, 51 F.3d 524 (5th Cir. 1995),
    *aff'd by an equally divided court*, 529 U.S. 333 (2000)............................ 26

*Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501 (1947) ......................... 11, 33, 42, 43

*Hamid* v. *Price Waterhouse*, 51 F.3d 1411 (9th Cir. 1995) ......................... 46

*Holmes* v. *Securities Investor Prot. Corp.*, 503 U.S. 258 (1992)............ 46-47

*In re Am. Express Co. S'holder Litig.*, 39 F.3d 395 (2d Cir. 1994) ............. 47

*In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194 (S.D.N.Y. 1999) ............. 35

*In re Longhorn Sec. Litig.*, 573 F. Supp. 255 (W.D. Okla. 1983)................ 46

*In re Sunrise Sec. Litig.*, 108 B.R. 471 (E.D. Pa. 1989),
    *aff'd*, 916 F.2d 874 (3d Cir. 1990) ........................................................ 48

*In re Sunrise Sec. Litig.*, 916 F.2d 874 (3d Cir. 1990) ......... 46, 48, 49, 50, 51

*In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India
    in December, 1984*, 809 F.2d 195 (2d Cir. 1987) ................... 34, 36, 40, 43

*IUE ALF-CIO Pension Fund* v. *Herrmann*,
    9 F.3d 1049 (2d Cir. 1993)...................................................................... 27

*Jaghory* v. *New York State Dep't of Educ.*,
    131 F.3d 326 (2d Cir. 1997)..................................................................... 13

*Leonhardt* v. *Western Sugar Co.*, 160 F.3d 631 (10th Cir. 1998) ......... 26, 30

*Manson* v. *Stacescu*, 11 F.3d 1127 (2d Cir. 1993) ................................. 47, 51

*McDonough* v. *National Home Ins. Co.*,
    108 F.3d 174 (8th Cir. 1997) .................................................................. 19

*Mehlenbacher* v. *Akzo Nobel Salt, Inc.*,
    216 F.3d 291 (2d Cir. 2000).............................................................. 25, 26

*Meritcare Inc.* v. *St. Paul Mercury Ins. Co.*,
    166 F. 3d 214 (3d Cir. 1999).................................................................... 28

*Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Curran,*
456 U.S. 353 (1982) ........................................................................ 28, 31

*Michelsen* v. *Penney,* 10 F. Supp. 537 (S.D.N.Y. 1934) ........................ 45, 46

*Miller* v. *Generale Bank Nederland, N.V.*
*(In re Interpictures, Inc.),* 217 F.3d 74 (2d Cir. 2000).............................. 47

*Moss* v. *Morgan Stanley, Inc.,* 719 F.2d 5 (2d Cir. 1983)............................ 21

*Murray* v. *British Broadcasting Corp.,*
81 F.3d 287 (2d Cir. 1996)...................................................................... 34

*Nowak* v. *Ironworkers Local 6 Pension Fund,*
81 F.3d 1182 (2d Cir. 1996) ................................................................... 24

*Parex Bank* v. *Russian Savings Bank,*
116 F. Supp. 2d 414 (S.D.N.Y. 2000).......................................... 33, 35, 39

*Pavlov* v. *Bank of New York,* No. 99 Civ. 10347 (LAK),
2000 WL 424185 (S.D.N.Y. Apr. 18, 2000).................................. 4, 6, 7, 27

*Pavlov* v. *Bank of New York Co.,* No. 99 Civ. 10347,
2000 WL 1508251 (S.D.N.Y. Oct. 11, 2000) ...................................... 38, 40

*Pavlov* v. *Bank of New York Co.,*
135 F. Supp. 2d 426 (S.D.N.Y. 2001) ...............................................*passim*

*Piper Aircraft Co.* v. *Reyno,* 454 U.S. 235 (1981) ..................... 13, 34, 36, 43

*PT United Can Co.* v. *Crown Cork & Seal Co.,*
138 F.3d 65 (2d Cir. 1998)..............................................................31-32, 34

*R. Maganlal & Co.* v. *M.G. Chemical Co.,*
942 F.2d 164 (2d Cir. 1991) .................................................................... 35

*Rand* v. *Anaconda-Ericsson, Inc.,* 794 F.2d 843 (2d Cir. 1986)............ 47, 51

*Schertenleib* v. *Traum,* 589 F.2d 1156 (2d Cir. 1978) .................................. 39

*Schmidt* v. *Fleet Bank,* 16 F. Supp. 2d 340 (S.D.N.Y. 1998)....... 8, 16, 17, 19

*Sedima, S.P.R.L.* v. *Imrex Co.*, 473 U.S. 479 (1985)...................................... 46

*Snyder* v. *Harris*, 394 U.S. 332 (1969)........................................................... 24

*Stephens, Inc.* v. *Gelderman, Inc.*, 962 F. 2d 808 (8th Cir. 1992) ......... 17, 19

*Stevens* v. *Lowder*, 643 F.2d 1078 (5th Cir. 1981)................................... 47-48

*Sumitomo Corp.* v. *Chase Manhattan Bank*, No. 99 Civ. 4004 (JSM),
   2000 WL 1616960 (S.D.N.Y. Oct. 30, 2000) ............................................. 19

*Supreme Tribe of Ben Hur* v. *Cauble*, 255 U.S. 356 (1921) ......................... 30

*Transunion Corp.* v. *PepsiCo, Inc.*, 811 F.2d 127 (2d Cir. 1987)................. 32

*United Mine Workers* v. *Gibbs*, 383 U.S. 715 (1966) ................................... 27

*United States* v. *Bagaric*, 706 F.2d 42 (2d Cir. 1983)............................ 21, 22

*United States* v. *BCCI Holdings (Luxembourg), S.A.*,
   980 F. Supp. 2 (D.D.C. 1997) .............................................................. 52, 53

*United States* v. *Bledsoe*, 674 F.2d 647 (8th Cir. 1982) ............................... 17

*United States* v. *Coonan*, 938 F.2d 1553 (2d Cir. 1991).. 8, 16, 18, 20, 21, 22

*United States* v. *Indelicato*, 865 F.2d 1370 (2d Cir. 1989) .................... 21, 22

*United States* v. *Mazzei*, 700 F.2d 85 (2d Cir. 1983) ................................... 21

*United States* v. *Orena*, 32 F.3d 704 (2d Cir. 1994)..................................... 23

*United States* v. *Turkette*, 452 U.S. 576 (1981)............... 8, 16, 17, 20, 21, 22

*Vincel* v. *White Motor Corp.*, 521 F.2d 1113 (2d Cir. 1975) ....................... 51

*Warren* v. *Manufacturers Nat'l Bank of Detroit*,
   759 F.2d 542 (6th Cir. 1985)................................................................... 47

*Younis* v. *American University in Cairo*,
   30 F. Supp. 2d 390 (S.D.N.Y. 1998)......................................................... 41

*Zahn* v. *International Paper Co.*,
414 U.S. 291 (1973) ........................................... 9, 14, 24, 25, 26, 27, 28, 30

## STATUTES & RULES

18 U.S.C. § 1961 ................................................................................. 16, 21

18 U.S.C. §§ 1961-68 .................................................................................. 1

18 U.S.C. § 1964(c) .................................................................................... 46

28 U.S.C. § 331 .............................................................................................

28 U.S.C. § 1332 ...................................................... 1, 9, 14, 23, 29, 30

28 U.S.C. § 1367 ........................................ 14, 25, 26, 27, 28, 29, 30

28 U.S.C. § 1782 ...................................................................................... 38

Fed. R. Civ. P. 9(b) ................................................................................. 12

Fed. R. Civ. P. 23 ............................................................................... 27, 30

## OTHER AUTHORITIES

Agreement Between the United States and Russia on
   Cooperation in Criminal Law Matters, Feb. 5, 1996,
   State Dept. No. 96-38, 1995 WL 831037 .................................................... 38

H.R. Rep. No. 101-734 (1990),
   reprinted in 1990 U.S.C.C.A.N. 6860 ...................................... 27, 28, 29, 30

Hague Convention of March 18, 1970 on the
   Taking of Evidence Abroad in Civil or Commercial Matters,
   23 U.S.T. § 2255, T.I.A.S. No. 7444 ......................................................... 38

1B Michie, Banks and Banking, ch. 3, § 69 (1973) ..................................... 45

1B Michie, Banks and Banking, ch. 3, § 69 (1993) ..................................... 45

5A Michie, Banks and Banking, ch. 9, § 4B (1994 & Supp. 2000) ....... 52, 53

## COUNTER-STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.   Did the district court properly dismiss the claim in the Second

Amended Complaint ("SAC") under the Racketeer Influenced and

Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO"), because

the association-in-fact alleged by Plaintiffs-Appellants ("Plaintiffs"),

which has no hierarchy, organization or continuing structure, is not a

legally sufficient RICO enterprise?

2.   Did the district court properly dismiss the conversion claims in the

Second Amended Complaint asserted by all putative plaintiffs who

failed to meet 28 U.S.C. § 1332(a)(1)'s matter-in-controversy

requirement because, pursuant to controlling Supreme Court

precedent, the district court lacked subject matter jurisdiction over

those claims?

3.   Did the district court clearly abuse its discretion in dismissing the

claims remaining in the Second Amended Complaint based on *forum*

*non conveniens*, given that Russia is an adequate alternative forum

and private and public interests weigh in favor of litigating in Russia?

4.   Does Plaintiffs' lack of standing to assert a claim under RICO or for

conversion provide an adequate and independent basis for affirming

dismissal of the Second Amended Complaint?

## INTRODUCTION

This is a Russian dispute. Plaintiffs are a group of predominantly Russian individuals and entities who claim to be former depositors of a failed Russian bank, Joint Stock Bank Inkombank ("Inkombank"). Plaintiffs seek funds allegedly stolen from Inkombank by its principals, Russian organized crime and a few employees of The Bank of New York and its corporate parent, The Bank of New York Co. Inc. (collectively, "BNY"). In 1998, Inkombank failed and was placed in the equivalent of bankruptcy in Russia; the Russian court appointed a representative for Inkombank and its creditors. Plaintiffs have rejected the mechanism that Russian law provides for the recovery and distribution of Inkombank's assets. Instead, Plaintiffs (and their counsel) brought this Russian dispute to the American courts, seeking treble damages and attorneys' fees. The district court correctly determined that Plaintiffs' claims are defective, and in any event do not belong in an American court.

## COUNTER-STATEMENT OF THE CASE

### A.    Plaintiffs' Allegations

The named plaintiffs allege that they are five Russian citizens, one Ukrainian citizen and two trusts purportedly established under Bulgarian

law. (SAC ¶¶ 20-27 (A169-72)).[1] Named plaintiffs purport to bring this action on behalf of a class of "all . . . depositors" of Inkombank, a failed Russian bank whose license was revoked by the Central Bank of Russia. (SAC ¶¶ 11-12, 145 (A167, A227)). According to Plaintiffs, the collapse of this Russian bank caused its depositors, "the vast majority [of whom] are domiciled" in Russia (SAC ¶ 45 (A179)), to lose the value of their ruble deposits (SAC ¶¶ 11-12, 20-27 (A167, A169-72)).

Although Plaintiffs allege that Inkombank's failure was caused by the looting of that bank by its insiders and members of Russian organized crime (SAC ¶¶ 1-2, 37-42 (A161-62, A176-78)), Plaintiffs do not seek redress from any Inkombank insider or any purported member of Russian organized crime. Instead, based on allegations that a handful of BNY employees facilitated or were involved in the looting scheme (SAC ¶¶ 2, 31-35 (A162, A173-76)), Plaintiffs assert RICO and conversion claims against BNY (SAC ¶¶ 28-29, 150-180 (A172, A229-48)).

In their Second Amended Complaint, Plaintiffs labeled this group of Inkombank and BNY employees as the "Global Custody RICO

---

[1]    Citations to "A" refer to pages of the Joint Appendix.

Enterprise."[2]  (SAC ¶¶ 2, 152 (A162, A229-30)).  Plaintiffs do not allege

that this group had any indicia of an enterprise, such as organization,

hierarchy, structure or functional integration.  (*See* SAC ¶¶ 1-180

(A161-248)).

Plaintiffs allege that the Russian bank "Inkombank stood at the

heart of the [alleged] Enterprise."  (SAC ¶ 4 (A163)).  Plaintiffs seek to

establish BNY's involvement with that enterprise by alleging that BNY had

a correspondent banking relationship with Inkombank, that a former BNY

employee gave Inkombank unrestricted access to BNY's funds transfer

facilities and that a few other BNY employees joined in the scheme.

(SAC ¶¶ 2, 31-35, 48-56 (A162, A173-76, A180-83)).

According to Plaintiffs, the Global Custody RICO Enterprise

stole Inkombank assets through a series of sham loans, sham share purchases

and sham money management contracts.  (SAC ¶¶ 83-131 (A199-219)).

Plaintiffs allege that these "sham" transactions often involved Inkombank or

another Russian entity transferring the proceeds of these transactions

---

[2]    Plaintiffs first named this "enterprise" after the district court
dismissed the RICO claim in Plaintiffs' Amended Complaint for
failure to allege a legally sufficient RICO enterprise.  (*Compare*
Amended Complaint ¶ 79 (A35-36) *with* SAC ¶ 152 (A229-30)); *see*
*Pavlov* v. *Bank of New York*, No. 99 Civ. 10347 (LAK), 2000 WL
424185, at *1 (S.D.N.Y. Apr. 18, 2000)  (A157-58).

through BNY's funds transfer system to a "network of over 500 shell companies." (*See, e.g.*, SAC ¶ 88 (A201) (Inkombank allegedly assigned defaulted loan obligations of three Russian companies in exchange for bogus promissory notes; Russian companies then allegedly transferred the loaned funds through BNY systems); SAC ¶¶ 97-126 (A205-17) (Inkombank allegedly defrauded a group of Russian investors out of shares of Inkombank); SAC ¶¶ 128-30 (A218-19) (sham money management scheme, involving Russian oil company, to remove funds in violation of Russian law)). Based on these vague allegations of fraud, and despite their frequent failure to demonstrate any losses to Inkombank, Plaintiffs contend that this looting caused Inkombank's insolvency. (SAC ¶¶ 1, 144-45 (A161-62, A227)).

Plaintiffs assert causes of action against BNY, based on RICO, conversion and aiding and abetting conversion. (SAC ¶¶ 150-80 (A229-47)). Plaintiffs base their RICO claim on the allegation that BNY participated in the affairs of the Global Custody RICO Enterprise through a pattern of racketeering acts by "certain of . . . its officers." (SAC ¶ 152 (A229-30)). Plaintiffs claim that the alleged "sham" transactions and wire transfers constitute predicate acts of mail, wire and bank fraud. (SAC ¶ 157 (A231)).

Plaintiffs base their conversion and aiding and abetting conversion claims on the same factual allegations. (SAC ¶¶ 169-80 (A244-46)). Plaintiffs seek "in excess of" $300 million in compensatory damages (trebled under RICO), $300 million in punitive damages, costs and attorneys' fees. (A246-47).

## B.    The Proceedings Below

Plaintiffs filed the Complaint in this action on October 7, 1999. (Dkt. No. 1 (A2)). Prior to any response by BNY, Plaintiffs filed an Amended Complaint on November 15, 1999. (Dkt. No. 6 (A2, A11-49)). In the Amended Complaint, Plaintiffs brought claims of RICO, conversion and aiding and abetting conversion. (Amended Complaint ¶¶ 66-86 (A33-49)). To support their RICO claim, Plaintiffs alleged that BNY's Eastern Europe Division was the enterprise in which BNY purportedly participated through a pattern of racketeering activity. (Amended Complaint ¶ 79 (A35-36)).

BNY moved to dismiss the Amended Complaint on multiple grounds, including lack of standing, failure to allege a distinct RICO enterprise, lack of subject matter jurisdiction, failure to plead fraud with particularity and *forum non conveniens*. By Order dated April 18, 2000, the district court (Kaplan, J.) dismissed the Amended Complaint without prejudice. *Pavlov*, 2000 WL 424185, at *1-*2 (A157-59). The district court

-6-

held that Plaintiffs failed to plead a claim under RICO because, pursuant to

controlling authority in this Circuit, Plaintiffs had not alleged a RICO

"enterprise" distinct from the "'person' sued under § 1962(c)." *Id.* at *1

(A157-58). The district court also held that it did not have subject matter

jurisdiction over Plaintiffs' conversion claims. *Id.* at *2 (A158-59). The

district court permitted Plaintiffs to amend their complaint once again to

remedy these defects. *Id.* (A158-59).

  Plaintiffs filed a Second Amended Complaint on September 5,

2000, again asserting a claim under RICO and claims for conversion and

aiding and abetting conversion. (SAC ¶¶ 1-180 (A161-248)). BNY moved

to dismiss the Second Amended Complaint on the grounds of lack of

standing, failure to allege a legally sufficient RICO enterprise, lack of

subject matter jurisdiction, failure to plead with particularity and *forum non*

*conveniens.*

## C. Decision of the District Court

  The district court granted BNY's motion and dismissed all of

the claims in the Second Amended Complaint in a Memorandum and

Opinion dated March 21, 2001. *Pavlov* v. *Bank of New York Co.*, 135

F. Supp. 2d 426 (S.D.N.Y. 2001) (A317-36). In dismissing Plaintiffs' RICO

claim, the district court explained that well-settled law requires that a RICO

enterprise must exhibit certain related characteristics, including (1) "'an

ongoing organization'" whose participants "'function[ed] as a continuing

unit,'" *id*. at 429 & n.6 (A319-20) (quoting *United States* v. *Turkette*, 452

U.S. 576, 583 (1981)), (2) "'hierarchy, organization and activities,'" *id*. at

429 & n.7 (A320) (quoting *United States* v. *Coonan*, 938 F.2d 1553, 1560-

61 (2d Cir. 1991)), and (3) "'structural continuity'" through "'an

organizational pattern or system of authority that provides a mechanism for

directing the group's affairs on a continuing . . . basis,'" *id*. at 430 & n.8

(A319-20) (quoting *Schmidt* v. *Fleet Bank*, 16 F. Supp. 2d 340, 349

(S.D.N.Y. 1998)). The court recognized that inherent in these characteristics

is the requirement that the enterprise be more than simply the aggregate of

predicate racketeering acts or the minimal association surrounding the

predicate racketeering acts. *Id*. at 430 (A320-21).

The district court found that Plaintiffs failed to satisfy any of

these requirements. *Id*. (A321). The court determined that the Second

Amended Complaint failed to allege that the disparate group of Inkombank

insiders and BNY employees formed a unit with hierarchy, organization or a

continuing structure. *Id*. (A321). In doing so, the district court concluded

that allowing Plaintiffs' RICO claim to proceed "would read the enterprise

element out of the statute, or come perilously close to doing so, by making

the association inherent in the commission of any pattern of crimes sufficient to make out an 'enterprise.'" *Id.* at 430-31 (A321).

The district court then considered whether it had diversity jurisdiction under 28 U.S.C. § 1332 over the conversion claims, analyzing first whether any plaintiffs alleged the requisite matter in controversy and, if so, whether those plaintiffs adequately alleged complete diversity of citizenship. *Pavlov*, 135 F. Supp. 2d at 431-33 (A322-25).[3] As to the matter-in-controversy requirement, the court found that only two of the named plaintiffs—Onara Partners and S&K Trust—alleged a matter in controversy in excess of $75,000. *Id.* at 431 (A322). The district court dismissed the conversion claims of all other named plaintiffs and putative class members because, following *Zahn* v. *International Paper Co.*, 414 U.S. 291 (1973), the claims of those class members failed to satisfy the matter-in-controversy requirement of § 1332(a)(1). *Pavlov*, 135 F. Supp. 2d at 431 (A323).

---

[3]    Because it dismissed the only federal claim in the action, the district court declined to exercise supplemental jurisdiction over the conversion claims. *Pavlov*, 135 F. Supp. 2d at 431 (A322). Plaintiffs do not contest this portion of the district court's decision on appeal. (*See* Brief of Plaintiffs-Appellants ("Pl. Br.") at 3-4).

The district court next considered whether the two remaining plaintiffs, both purported Bulgarian trusts, had adequately alleged diversity of citizenship. *Id*. at 431-32 (A323-24). The court found that the Second Amended Complaint did not contain allegations sufficient to establish complete diversity of citizenship because it said nothing about the citizenship of the members or beneficiaries of the two trusts. *Id*. at 432 (A324-25).[4] Rather than provide Plaintiffs with yet another opportunity to correct that deficiency in what would be their fourth pleading, the district court considered whether *forum non conveniens* provided a basis for dismissal of the remaining claims. *Id*. at 433 (A325-26).

The district court found that Russia was an adequate alternative forum because (1) Russia permits litigation of the subject matter of this case, and (2) BNY was subject to the jurisdiction of the Russian courts. *Id*. (A326-27). After assessing affidavits and other materials submitted by the parties, the court rejected Plaintiffs' arguments that the Russian judicial system is tainted by corruption and that the system is inadequate because it does not permit class actions or pretrial discovery identical to that of American courts. *Id*. at 433-35 (A327-30).

---

[4]     Plaintiffs also do not contest this portion of the district court's decision on appeal. (*See* Pl. Br. at 3-4).

-10-

The district court then considered all of the relevant private and public interests factors set forth in *Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501 (1947). *Pavlov*, 135 F. Supp. 2d at 435-38 (A331-35). First, the court held that Plaintiffs' choice of forum was entitled to less deference because Plaintiffs were foreign parties seeking redress for losses suffered by Inkombank, a bankrupt entity for which the Russian courts already had appointed a legal representative. *Id.* at 435-36 (A331). The district court found that analysis of other private interest factors, including matters such as access to sources of proof, availability of compulsory process and other practical considerations, "weigh decidedly in . . . favor" of litigating in Russia. *Id.* at 436 (A331-33). In doing so, the court recognized that, because Plaintiffs' claims rest on looting of a Russian bank by the Russian bank's executives and Russian organized crime, the "vast quantity of documents and virtually everyone knowledgeable" about the allegations will be located in Russia, and that testimony and documentary evidence is likely to be in the Russian language. *Id.* (A331-32).

The district court also held that the public interest factors, such as the interests of a sovereign nation in applying its own law and deciding a matter that affects primarily its own citizens, weigh in favor of litigating in Russia. *Id.* at 436-38 (A333-35). In analyzing these factors, the district

-11-

court found (after reviewing the allegations in the Second Amended Complaint) that this matter is "at root predominantly a Russian affair." *Id.* at 437 & n.61 (A333). Finally, the district court determined that pending shareholder derivative actions, which Plaintiffs asserted were a basis to keep this case in New York, raised public interests that were not present in this "private dispute about monetary loss suffered by depositors in a Russian Bank." *Id.* at 437 (A334).

The district court thus dismissed the state-law claims of Onara Partners and S&K Trust on *forum non conveniens* grounds, subject to BNY submitting a statement consenting to the jurisdiction of the Russian court and representing that the bank will not assert a defense relying on the passage of time from the date this action was commenced until May 28, 2001 (more than two months after the district court's decision). *Id.* at 438 (A335-36).[5] BNY submitted the requisite statement (A337-38), which the district court approved by Order dated March 30, 2001. (A339-41). The district court entered judgment in favor of BNY (A343-44), and this appeal followed. (A345).

---

[5]     Because it had dismissed all of Plaintiffs' claims, the district court did not consider whether Plaintiffs had standing to pursue their RICO and conversion claims or whether Plaintiffs' fraud claims met the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

## STANDARDS OF REVIEW

The district court's dismissal of Plaintiffs' RICO claim for

failure to allege a legally sufficient enterprise and dismissal of Plaintiffs'

conversion claims for lack of subject matter jurisdiction are subject to *de*

*novo* review. *See Jaghory* v. *New York State Dep't of Educ.*, 131 F.3d 326,

329 (2d Cir. 1997). The district court's dismissal on *forum non conveniens*

grounds is subject to review under the abuse-of-discretion standard. *See*

*American Dredging Co.* v. *Miller*, 510 U.S. 443, 455 (1994) ("'The *forum*

*non conveniens* determination . . . is committed to the sound discretion of the

trial court. It may be reversed only when there has been a clear abuse of

discretion; where the court has considered all relevant public and private

interest factors, and where its balancing of these factors is reasonable, its

decision deserves substantial deference.'" (quoting *Piper Aircraft Co.* v.

*Reyno*, 454 U.S. 235, 257 (1981))).

## SUMMARY OF ARGUMENT

1.    The district court correctly determined that Plaintiffs'

newly-minted "Global Custody RICO Enterprise" lacks the requirements of

a legally sufficient RICO enterprise, such as hierarchy, organization and a

continuing structure. The Second Amended Complaint alleges no more than

a collection of fraudulent acts, and does not allege an entity with the

requisite structural characteristics of a legally sufficient RICO enterprise. Plaintiffs' criticisms of the district court's analysis—which they never raised below—are both incorrect as a matter of law and irrelevant, because Plaintiffs have not alleged a legally sufficient RICO enterprise under any analysis of the Second Amended Complaint.

2.    The district court correctly determined that it lacked subject matter jurisdiction over the conversion claims of all putative plaintiffs who failed to meet 28 U.S.C. § 1332(a)(1)'s matter-in-controversy requirement. *Zahn* v. *International Paper Co.*, 414 U.S. 291, 297-302 (1973), requires dismissal of all claims by class members who fail to meet the matter-in-controversy requirement. The supplemental jurisdiction statute, 28 U.S.C. § 1367, did not overrule *Zahn*. Neither the language nor legislative history of that statute indicate any intent to overrule *Zahn*; in fact, the legislative history demonstrates that Congress did not intend to do so.

3.    The district court did not clearly abuse its discretion in determining that *forum non conveniens* warrants dismissal because this action, at its core, is a Russian matter. The district court's determination that Russia provides an adequate alternate forum for this dispute was in accordance with prior decisions by this Court and is not challenged by Plaintiffs on appeal. The district court properly determined that all the

-14-

relevant private and public interest factors favored dismissal. The district court's analysis of this issue alone provides a basis for affirmance.

4. This Court also may affirm on the ground that Plaintiffs lack standing to pursue their RICO and conversion claims. Plaintiffs' claims that Inkombank collapsed because of looting of that bank may only be pursued by Inkombank or its receiver. Plaintiffs, as depositors, are simply general creditors of Inkombank who should not be permitted to pursue such claims in preference to the rights of other creditors of that bank.

## ARGUMENT

### I.

### THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS FAILED TO ALLEGE A LEGALLY SUFFICIENT RICO ENTERPRISE.

The district court held that Plaintiffs' Global Custody RICO Enterprise—allegedly an association-in-fact comprised of insiders at Inkombank, Russian organized crime figures and a few BNY employees— did not constitute a legally sufficient RICO enterprise. *Pavlov*, 135 F. Supp. 2d at 429-32 (A318-22). That decision was consistent with RICO's statutory language and a long line of authority from the Supreme Court and this Court.

-15-

Although the RICO statute permits a plaintiff to allege an enterprise that is an association-in-fact, 18 U.S.C. § 1961(4), courts have long recognized that a RICO enterprise must be more than simply a group of individuals who commit crimes together. Rather, a legally sufficient RICO enterprise requires evidence of an ongoing organization whose constituents function as a continuing unit. *United States* v. *Turkette*, 452 U.S. 576, 583 (1981). Plaintiffs concede (Pl. Br. at 17-18) that, in analyzing whether members of a purported association-in-fact operate as a continuing unit, courts in this Circuit must look for "the 'hierarchy, organization and activities'" of the purported association. *First Nationwide Bank* v. *Gelt Funding Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993) (quoting *United States* v. *Coonan*, 938 F.2d 1553, 1560-61 (2d Cir. 1991)), *aff'd*, 27 F.3d 763 (2d Cir. 1994); *see also Schmidt* v. *Fleet Bank*, 16 F. Supp. 2d 340, 349 (S.D.N.Y. 1998) (requiring structural continuity, as evidenced by an organizational pattern or system of authority).

The district court reasoned that, inherent in the required characteristics of hierarchy, organization and continuing structure is the requirement that a legally sufficient enterprise must be more than simply the pattern of racketeering acts. *Pavlov*, 135 F. Supp. 2d at 430 (A320-21). The

-16-

Supreme Court's decision in *Turkette* explained this critical distinction

between the enterprise and the pattern of racketeering:

> The 'enterprise' is not the 'pattern of racketeering activity'; it is
> an entity *separate and apart from the pattern* of activity in
> which it engages.

452 U.S. at 583 (emphasis added). Consistent with *Turkette*, courts in this

Circuit and others have required that the enterprise have an existence and

structure apart from the racketeering acts or the minimal association

necessary to commit the racketeering acts. *See, e.g., Chang* v. *Chen*, 80 F.3d

1293, 1297-99 (9th Cir. 1996) (*Turkette* requires that an enterprise have an

ascertainable structure apart from the racketeering activity); *Stephens, Inc.* v.

*Gelderman, Inc.*, 962 F.2d 808, 815 (8th Cir. 1992) ("[The enterprise]

cannot simply be . . . the minimal association which surrounds these

[racketeering] acts." (*quoting United States* v. *Bledsoe*, 674 F. 2d 647, 664

(8th Cir. 1982))); *Schmidt*, 16 F. Supp. 2d at 349 ("[T]he RICO enterprise

must always have an ascertainable structure distinct from that inherent in the

conduct of a 'pattern of racketeering.'").

      As the district court correctly found, Plaintiffs' purported

"Global Custody RICO Enterprise" does not satisfy any of the requirements

of a legally sufficient RICO enterprise. *Pavlov*, 135 F. Supp. 2d at 430

(A321). Even the most generous reading of the Second Amended Complaint

does not reveal any hierarchy, organization or continuing structure of the Global Custody RICO Enterprise. (*See, e.g.,* SAC ¶¶ 2-4, 62-65, 152 (A162-63, A185-87, A229-30) (discussing "enterprise" but failing to allege any hierarchy, organization or continuing structure)). Plaintiffs do not allege that this "enterprise" had any leadership mechanism for directing the groups' affairs or any hierarchy that organized the groups' components. *Compare* SAC ¶¶ 30-42 (A172-78) (discussing loose amalgam of participants in enterprise but failing to allege leadership mechanism or hierarchy) *with Coonan*, 938 F.2d at 1560 (discussing leadership and organizational structure of a legally sufficient association-in-fact enterprise).

   The alleged Global Custody RICO Enterprise has no existence independent of the purported pattern of racketeering activity. (*See, e.g.,* SAC ¶¶ 66-81 (A187-98) (discussing formation of network of offshore companies and other minimal associations allegedly necessary to commit racketeering acts)). And, while the Second Amended Complaint is replete with allegations that Inkombank insiders and BNY employees engaged in wrongdoing (SAC ¶¶ 83-130 (A199-219)), the district court correctly found that none of Plaintiffs' allegations indicated that individuals from BNY and Inkombank joined together to form a unit with hierarchy, organization or a continuing structure. *See Pavlov*, 135 F. Supp. 2d at 430 (A321).

Plaintiffs argue that the elements of a RICO enterprise can somehow be "discerned" from Inkombank's correspondent banking relationship with BNY and the allegations that a number of off-shore accounts and companies were used in furtherance of fraud. (Pl. Br. at 20-21). But Plaintiffs fail to point to any portions of the Second Amended Complaint that demonstrate the requisite structural elements of a RICO enterprise. As courts repeatedly have held, simply pointing to banking relationships or activities does not satisfy the RICO enterprise requirement. *See, e.g., Schmidt*, 16 F. Supp. 2d at 350 n.6 (citing *McDonough* v. *National Home Ins. Co.*, 108 F.3d 174, 177 (8th Cir. 1997) ("[t]hat each member of a group carries on activities distinct from the pattern of racketeering is insufficient; the group as a whole must have a common link other than the racketeering activity."); *Stephens*, 962 F.2d at 815-16).

Before the district court, Plaintiffs did not take issue with any of these legal standards, arguing only that their allegations satisfied the standards recited by BNY and recognized by the district court. *See Pavlov*, 135 F. Supp. 2d at 431 n.13 (A321-22) ("*Sumitomo Corp.* v. *Chase Manhattan Bank*, No. 99 Civ. 4004 (JSM), 2000 WL 1616960 (S.D.N.Y. Oct. 30, 2000), the only case relied upon by plaintiffs on this point, [is] unpersuasive."). On appeal, however, Plaintiffs for the first time argue that

-19-

the district court should not have considered whether Plaintiffs alleged an enterprise that was distinct from the pattern of racketeering. (*See* Pl. Br. at 18-20).[6] Yet this argument—supported by a line of authority Plaintiffs never even cited but that the district court nonetheless examined in its decision, *see Pavlov*, 135 F. Supp. 2d at 430 n.9 (320)—need not be considered on appeal because Plaintiffs have not satisfied any of the requirements of pleading any RICO enterprise. (*See* p. 15-19, *supra*).

The district court correctly determined that the Supreme Court's decision in *Turkette* required that the enterprise have an existence and structure apart from the pattern of racketeering. *See Pavlov*, 135 F. Supp. 2d at 430 & n.9 (A320) (citing *Turkette*, 452 U.S. at 583 (the enterprise is "an *entity separate and apart* from the pattern of activity in which it engages" (emphasis added))). Plaintiffs concede (Pl. Br. at 17-18) that courts in this Circuit determine whether an association-in-fact constitutes a valid RICO enterprise by looking for, among other things, hierarchy and organization. *See, e.g., Coonan*, 938 F.2d at 1560-61; *First Nationwide Bank*, 820 F. Supp. at 98. Yet an examination of hierarchy and organization would be

---

[6]     Plaintiffs concede that this requirement is consistent with decisions by the Eighth and Ninth Circuits, but claim that it is at odds with earlier decisions of this Court. (Pl. Br. at 18-19). As demonstrated below, this is incorrect.

-20-

unnecessary if a plaintiff could meet the enterprise requirement merely by alleging a series of criminal acts, because a plaintiff must allege those criminal acts to satisfy the distinct "pattern of racketeering activity" requirement in RICO (18 U.S.C. §§ 1961(1), (5)). *See Pavlov*, 135 F. Supp. 2d at 429-30 (A319-20).

The only support Plaintiffs cite (Pl. Br. at 18-19) for their position are decisions stating the undisputed proposition that the evidence used to prove the enterprise and the pattern of racketeering activity may coalesce. *See Moss* v. *Morgan Stanley, Inc.*, 719 F.2d 5, 22 (2d Cir. 1983); *United States* v. *Bagaric*, 706 F.2d 42, 55 (2d Cir. 1983); *United States* v. *Mazzei*, 700 F.2d 85, 88-89 (2d Cir. 1983). None of these authorities, however, alters Plaintiffs' burden to plead and prove a distinct enterprise. *See Turkette*, 452 U.S. at 583 ("The existence of an enterprise at all times remains a separate element which must be proved . . . ."); *United States* v. *Indelicato*, 865 F.2d 1370, 1384 (2d Cir. 1989) ("[T]he *difference* in the nature of the two elements does not mean that the same piece of evidence may not help to establish both." (emphasis added)); *Coonan*, 938 F.2d at 1559-60 (quoting, *inter alia*, *Indelicato*, 865 F.2d at 1384).

Plaintiffs seek to rely on language from *Bagaric*—a case that dealt solely with the issue of whether a RICO enterprise had to have an

-21-

independent economic motive—noting that this Court has upheld convictions under RICO where the enterprise was in effect no more than the sum of the predicate racketeering acts. (Pl. Br. at 18). This is unavailing. As both the *Bagaric* opinion and the district court here determined, these cases merely recognize that when a group of individuals act together, the structure of their enterprise, if any, can be more readily ascertained by analyzing the group's activities. *See Bagaric*, 706 F.2d at 56; *Pavlov*, 135 F. Supp. 2d at 430 & n.9 (A320). Plaintiffs still must allege how the activities of those individuals demonstrate the existence of an enterprise with hierarchy, organization and continuing structure, and they have failed to do so here. *See Turkette*, 452 U.S. at 583; *Coonan*, 938 F.2d at 1559-60; *Indelicato*, 865 F.2d at 1384.

Plaintiffs also contend that the requirement that an enterprise have an existence and structure distinct from the pattern of racketeering activity "would effectively write out of the RICO statute the possibility of an 'association-in-fact' enterprise." (Pl. Br. at 20). But *Coonan* and numerous other cases demonstrate that an association-in-fact can have a structure, hierarchy and existence apart from the racketeering acts. *See, e.g., Coonan*, 938 F.2d at 1559-1560 (discussing organization, structure and hierarchy of the "Westies," which was distinct from racketeering activity of loan sharking

-22-

and cocaine trafficking); *United States* v. *Orena*, 32 F.3d 704, 708 (2d Cir. 1994) (discussing organization, structure and hierarchy of La Cosa Nostra, which was distinct from racketeering activity of murder and loan sharking).

The district court's thoughtful and well-reasoned opinion should be affirmed.[7]

## II.

## THE DISTRICT COURT CORRECTLY FOUND THAT IT LACKED SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CONVERSION CLAIMS.

The district court correctly applied controlling Supreme Court precedent to dismiss Plaintiffs' conversion claims for lack of subject matter jurisdiction. *Pavlov*, 135 F. Supp. 2d at 431-33 (A322-25). Plaintiffs rely exclusively on diversity jurisdiction under 28 U.S.C. § 1332 to support their conversion claims, yet concede that all but two of the plaintiffs fail to meet § 1332(a)(1)'s requirement that the matter in controversy exceed $75,000. (SAC ¶¶ 17-18 (A168-69)).

---

[7]    Even if this Court were to determine that the district court erred in dismissing Plaintiffs' RICO claim for failure to allege a legally sufficient enterprise, the district court's dismissal of Plaintiffs' RICO claim also should be affirmed on *forum non conveniens* grounds (*see infra* Section III) or because Plaintiffs lack standing to bring a claim under RICO (*see infra* Section IV).

-23-