

Not Reported in F.Supp.2d Page 1
Not Reported in F.Supp.2d, 2001 WL 203964 (M.D.Fla.), 2001-1 Trade Cases P 73,150
**(Cite as: 2001 WL 203964 (M.D.Fla.))**

United States District Court, M.D. Florida.
In re DISPOSABLE CONTACT LENS ANTITRUST LITIGATION.
**Nos. 3:00-94 MD 1030, 3:97-CV-861, 3:97-CV-698, 3:97-CV-928, 3:98-CV-93, 3:98-CV-511, 3:98-CV-515, 3:98-CV-536, 3:98-CV-638.**

Jan. 5, 2001.

ORDER

SCHLESINGER, J.

***1** This case is before the Court on the following of Defendants' Motions for Summary Judgment:

*Case No. 97-698,* Docket No. 30-Alaska
*Case No. 97-861,* Docket No. 106-Arkansas, 109-California, 112-Connecticut, 115-Delaware, 118-Minnesota, 121-Ohio, 124-West Virginia, 127-Wisconsin, 130- Arizona, 133-Virginia, 136-Nevada, 139-Missouri, 142-North Dakota, 145-New York, and 148-New Jersey
*Case No. 98-515,* Docket No. 23-Maine
*Case No. 98-638,* Docket No. 22-North Carolina

The Plaintiff States have filed an Omnibus Federal Law Opposition to State Law Summary Judgment Motions (opposition involves all eighteen states) as well as oppositions in the individual states' cases. Defendant has filed a state law reply as well as other replies in the individual state cases. Accordingly, these matters are ripe for consideration.

I. Background

Plaintiffs' Amended Complaint (Complaint) alleges that Defendants Johnson & Johnson Vision Products, Inc. (J & J), Bausch & Lomb, Inc. (B & L) and CIBA Vision Corporation (CIBA), [FN1] the largest manufacturers of contact lenses in the United States, have unlawfully conspired among themselves and with two trade organizations [FN2] for eye care practitioners (ECPs), to restrict the supply of disposable contact lenses [FN3] to alternative channels of distribution. [FN4] Plaintiffs are disposable contact lens wearers from across the country who have purchased lenses from ECPs allegedly at higher prices, because of Defendants' alleged practices. Plaintiffs' claims are based on the theory that, but for the alleged conspiracy restricting sales by mail order houses and pharmacies, so called "alternative suppliers," consumers would have paid lower prices for disposable contact lenses.

FN1. CIBA has reached a tentative settlement with the Plaintiffs in this case.

FN2. The two trade organizations are the American Optometric Association (AOA) and the Contact Lens and Anterior Segment Society, Inc. (CLASS). *See* Complaint at ¶ ¶ 1, 37(d). Only the AOA was made a party to this action, as CLASS filed a suggestion of bankruptcy shortly after this action was filed.

FN3. The lenses that are the subject of this lawsuit are disposable contact lenses which are designed to be worn for a short period of time, ordinarily one to two weeks, and then thrown away and replaced with an identical fresh pair of lenses. Disposable lenses are usually sold in multipaks of six pairs of lenses.

FN4. Pharmacies and mail order businesses.

This Order deals with the Defendants' claim that the laws in eighteen states preclude dispensing of contact lenses by alternative suppliers. Defendants allege that, because of these laws, the Plaintiffs in this case cannot establish a cause in fact injury; Plaintiffs cannot prove that but for the Defendants' policies the alleged injury would have occurred.

As previously noted by this Court in its Order dated July 28, 1997, the state laws in question roughly fit in several categories: in Delaware and New Hampshire, the statutes cited by Defendants have no prohibition or restriction on contact lens sales. Rather, those laws primarily regulate the licensing of optometrists [FN5] and the registration of businesses who sell contact lenses. [FN6] The remaining states at issue have laws that prohibit sales of contact lenses except by an optometrist or physician, [FN7] without a prescription, [FN8] or unless a full-time licensed or registered optician is on the premises. [FN9]

FN5. *See generally,* Del.Code Ann. tit. 24, § § 2101-2102; 2116- 2117.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 2
Not Reported in F.Supp.2d, 2001 WL 203964 (M.D.Fla.), 2001-1 Trade Cases P 73,150
**(Cite as: 2001 WL 203964 (M.D.Fla.))**

FN6. *See generally*, N.H.Rev.Stat. Ann. § § 327:25-a; :A-1 (1995).

FN7. Arkansas, Minnesota, New Mexico, North Dakota and Rhode Island.

FN8. Maine, Mississippi, Nevada and Washington.

FN9. Arizona, Alaska, California, Connecticut, New York. Ohio and Virginia.

II. Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A defendant may move for summary judgment as to the entire case "or any part thereof." Fed.R.Civ.P. 56(b). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact to be decided at trial. *See* *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir.1991).

***2** A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence supporting the nonmoving party's case. *Celotex*, 477 U.S. at 325. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits. *See id* . When a moving party has discharged this burden, the nonmoving party must then "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotations omitted).

In determining whether the moving party has met its burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the nonmoving party. *See* *Key West Harbour Development Corp. v. City of Key West*, 987 F.2d 723, 726 (11th Cir.1993). The nonmoving party need not be given the benefit of every inference, but only of every "reasonable" inference. *See* *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir.1988) (citations and quotations omitted).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *See* *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir.1988). It must be emphasized that "the mere existence of *some* alleged factual dispute ... will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

III. Analysis

Plaintiffs first argue that the state action immunity doctrine dictates that the state statutes in question cannot "immunize" the Defendants from their alleged anticompetitive policies. A two-part test must be satisfied to assert state-action immunity. First, the state must have articulated a clear and affirmative policy to allow the alleged anticompetitive conduct, and second, the state must have provided active supervision the of the conduct undertaken by the private actor. *See* *California Retail Liquor Dealers Assn. v. Midcal Aluminum, Inc.* [1980-1 TRADE CASES ¶ 63,201], 445 U.S. 97, 105 (1980). As explained by the Supreme Court in *F.T.C. v. Ticor Title Ins. Co.* [1992-1 TRADE CASES ¶ 69,847],

> ***3** The fact of the matter is that the States regulate their economies in many ways not inconsistent with the antitrust laws. For example, Oregon may provide for peer review by its physicians without

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 3
Not Reported in F.Supp.2d, 2001 WL 203964 (M.D.Fla.), 2001-1 Trade Cases P 73,150
**(Cite as: 2001 WL 203964 (M.D.Fla.))**

approving anticompetitive conduct by them. Or Michigan may regulate its public utilities without authorizing monopolization in the market for electric light bulbs. So we have held that state-action immunity is disfavored, much as are repeals by implication. By adhering in most cases to fundamental and accepted assumptions about the benefits of competition within the frame-work of the antitrust laws, we increase the States' regulatory flexibility. States must accept political responsibility for actions they intend to undertake. It is quite a different matter, however, for federal law to compel a result that the States do not intend but for which they are held to account.

504 U.S. 621, 635 (1992) [internal citations omitted].

The states argue that Defendants have failed to meet the two prongs of the state action doctrine: no state optometry law required that ECPs conspire with contact lens manufacturers to prevent alternative channel sales and no state actively supervised any of the conduct engaged in by the Defendants. The Plaintiffs also note that consumers can and do purchase lenses in interstate commerce regardless of the individual states' regulatory schemes.

This Court finds that Plaintiffs must prevail in this arguments and therefore Defendants cannot claim state action immunity. Indeed, the Defendants admit that the state action doctrine discussed by the Plaintiffs is inapplicable. Rather, Defendants assert that because of the state statutes the Plaintiff's lack standing to pursue their claims; Defendants argue that the statutes in question disrupt the causal link between their acts and injury to the states' consumers. Thus, a brief overview of standing is appropriate at this time.

Standing

In order to recover for alleged violations of the antitrust laws, Plaintiffs must establish that they have "antitrust standing," that is, establish that they have suffered injury by reason of action that the antitrust laws forbid. *See Indium Corp. v. Semi-Alloys, Inc.* [1986-1 TRADE CASES ¶ 67,135], 781 F.2d 879, 882 (Fed.Cir.1985). In *Associated Gen. Contractors v. California State Council of Carpenters,* the Supreme Court set out a number of factors that courts should consider in determining whether a plaintiff has antitrust standing. These factors include: (1) whether there is a causal connection between the alleged injury and the antitrust violation; (2) whether the nature of the injury is of the type the antitrust laws were meant to prevent; (3) the directness or indirectness of the injury; (4) the existence of more direct victims of the alleged violation; (5) the speculative nature of the harm; and (6)the potential for duplicative recoveries. *See* [1983-1 TRADE CASES ¶ 65,226], 459 U.S. 519, 537-545 (1983). As previously discussed, Defendants contend that Plaintiffs lack standing primarily because they have failed to demonstrate a causal connection between their injury and Defendants' acts because that state statutes also restricted alternative channels.

***4** The alleged antitrust injury must be caused by the alleged antitrust violation; a direct link must be established for a Plaintiff to prevail. *See Brunswick Corp. v. Pueblo Bowl-o-Mat, Inc.* [1977-1 TRADE CASES ¶ 61,255], 429 U.S. 477, 489 (1977) (stating that antitrust plaintiffs "must prove more than injury causally linked to an illegal presence in the market"). A state statute that has an anticompetitive effect may break the causation chain. As noted in *Pittsburgh v. West Penn Power Corp.,*

Here, the interposition of the regulatory scheme and actions of the parties ... interferes with the chain of causation. The statutory scheme precluded competition without the requisite regulatory permission. As Professors Areeda & Hovenkamp describe, 'a plaintiff cannot be injured in fact by private conduct excluding him from the market when a statute prevents him from entering that market in any event.'

[1998-1 TRADE CASES ¶ 72,178] 147 F.3d 256, 268 (3rd Cir.1998).

In the instant case, Defendants allege that it is not their burden to exclude the possibility that the alternative channels would sell in the states but for the state statutes but rather allege that Plaintiffs' burden is to show that but for Defendants' policies and enforcement efforts, Plaintiffs would have been injured. Defendant further argues that the state statutes and the relevant regulatory agencies, some of which enforced the statutes in question, effectively prevented the alternate channels from operating on any significant scale and that therefore, Plaintiff cannot prove the required causation link.

Plaintiffs allege that Defendants' burden is to prove that there are no circumstances, legal or otherwise, that the alternative channels could have sold lenses to the relevant states' customers and notes that in many of the states alternative channels could have sold directly to consumers, without violating any of the statutes in question, if they were affiliated with an ECP. Plaintiffs also assert that some of the alternate

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 4
Not Reported in F.Supp.2d, 2001 WL 203964 (M.D.Fla.), 2001-1 Trade Cases P 73,150
**(Cite as: 2001 WL 203964 (M.D.Fla.))**

channels did comply with the state regulations and that therefore the Defendants' policies undoubtedly caused the complained-of injury in those cases.

As a practical matter, Plaintiffs additionally argue that if the Defendants are correct that the state statutes and regulatory agencies effectively prevented the alternate channels from functioning profitably, the Defendants would have no need to either implement or enforce their sales policies. Plaintiffs allege that all they need prove is that there was a price impact on consumers because of Defendants' policies and that the state statutes are relevant only to the amount of damages rather than causation. Plaintiffs cite the Court to case law stating that the fact that a particular practice may be unlawful is not, in itself, a sufficient justification for collusion among competitors to prevent it. *See* *Fashion Originators' Guild of America, Inc. v. FTC* [1940-1943 TRADE CASES ¶ 56,101], 312 U.S. 457, 468 (1941).

***5** In response, Defendants allege that it is irrelevant whether there are circumstances under which an alternative supplier can distribute in the relevant states and allege that the issue before this Court is whether, but for the statutes and enforcement efforts, the alternative channels would have created a competitive presence in these states. Defendants note that each of the relevant states put some conditions on the ability of the alternate channels to sell. Therefore, Defendants argue, the states cannot determine how much of the lack of competitive presence by the alternative channels is due to the alleged conspiracy verses the states' statutes themselves.

The state statutes as they relate to causation vs. damages

"The courts have always distinguished between proof of causation of damages and proof of the amount of damages. Thus, the courts have been consistent in requiring plaintiffs to prove in a reasonable manner the link between the injury suffered and the illegal practices of the defendant." *MCI Communications Corp. v. American Tel. and Tel. Co.* [1982-83 TRADE CASES ¶ 65,137; *modified by* 1983-2 TRADE CASES ¶ 65,520], 708 F.2d 1081, 1161. As noted by the Supreme Court,

> [D]amage issues in these cases are rarely susceptible of the kind of concrete, detailed proof of injury which is available in other contexts. The Court has repeatedly held that in the absence of more precise proof, the factfinder may 'conclude as a matter of just and reasonable inference from the proof of defendants' wrongful acts and their tendency to injure plaintiffs' business, and from the evidence of the decline in prices, profits and values, not shown to be attributable to other causes, that defendants' wrongful acts had caused damage to the plaintiffs.'

*Bigelow v. RKO Radio Pictures, Inc.* [1946-1947 TRADE CASES ¶ 57,445], 327 U.S. 251, 264 (1946).

If the state statutes did as Defendants say they do and precluded the dispensing of contact lenses by alternative suppliers, the Court would have to agree that Plaintiffs cannot meet their burden of proving injury in fact and therefore summary judgment would be appropriate. As noted in this Court's Order of July 28, 1997, however, there is no such full blanket ban on sales in the remaining states. Therefore, this Court must consider the Parties' arguments and proffered evidence regarding causation, keeping in mind the standard for granting summary judgement.

The Defendants in this case spend a great deal of time arguing that the holding in *Greater Rockford* dictates that summary judgment be granted in their favor. *See* *Greater Rockford Energy and Technology Corp. v. Shell Oil Co.* [1993-1 TRADE CASES ¶ 70,274], 998 F.2d 391 (7th Cir.1993). That case involved an antitrust action brought by Ethanol manufacturers and sellers, gasoline blenders, and Illinois against oil companies to recover for restrictions on the sale of gasohol and ethanol. Plaintiffs alleged that Defendants discriminated against and disparaged ethanol and gasohol to eliminate competition. The district court found that the alleged lost profits suffered were indirect, derivative, speculative and duplicative because Plaintiffs were not competitors or consumers in the relevant market and that there were many other causes for Plaintiffs' financial troubles. In *Greater Rockford*, the Seventh Circuit upheld the district court's ruling granting summary judgment on the Defendant's behalf; the Court found that the Defendants were entitled to summary judgment because Plaintiffs could not prove causation; there were eight different potential causes for the alleged antitrust injury, including the anticompetitive conduct of the Defendants, and therefore Plaintiffs could not prove that the Defendants caused their injury. The Court stated:

> ***6** Standing alone *one* of these alternative causes of the plaintiffs' injuries *might be insufficient* to put causation-in-fact in question. *Taken together*, however, the plaintiffs have failed to show with a fair degree of certainty that "but for" the alleged

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 5
Not Reported in F.Supp.2d, 2001 WL 203964 (M.D.Fla.), 2001-1 Trade Cases P 73,150
**(Cite as: 2001 WL 203964 (M.D.Fla.))**

> antitrust violation, the plaintiffs would not have suffered the injuries of which they complain. Consequently, as a matter of law the plaintiffs have failed to show antitrust injury, and summary judgment was, therefore, appropriate.

*Greater Rockford Energy* 998 F.2d at 404 (emphasis added).

This Court finds that the *Greater Rockford* case is easily distinguishable. In *Greater Rockford,* the Court found that Plaintiffs could not possibly prove any damages because of the alleged antitrust violation. Indeed, a review of the alternate causes of injury demonstrates that it is highly unlikely that the Defendants caused any of the complained-of injury. Evidently, some of the Plaintiffs admitted that just one of the alternative causes, the termination of a state gasohol subsidy, all but shut down the industry. Conversely, in the instant case, this Court finds that there is a genuine issue of material fact as to whether the state statutes in question amount to an additional, rather than alternative, basis for causation in this case. Plaintiff's burden regarding proof of causation is not onerous:

> [Plaintiff's] burden of proving the damage under Section 4 of the Clayton Act is satisfied by its proof of some damage flowing from the unlawful conspiracy; inquiry beyond this minimum point goes only to the amount and not the fact of damage. It is enough that the illegality is shown to be a material cause of the injury; a plaintiff need not exhaust all possible alternative sources of injury in fulfilling his burden of proving compensable injury under Section 4.

*Zenith Radio Corp. v. Hazeltine Research Inc.* [1969 TRADE CASES ¶ 72,800], 395 U.S. 100, 114, n. 9 (1969).

Thus, in order for summary judgment to be granted on behalf of Defendants in this case, this Court would have to find that Plaintiffs could not establish the Defendants' policies were a material element of, and substantial factor in producing, the alleged injury suffered by the Plaintiffs. *See id.* Defendants strenuously argue that, because of the state statutes in question, their policies could not have been a material and substantial factor in Plaintiffs' alleged injury.

The Parties have submitted a great deal of evidence to this Court regarding the state statutes in question as well as how different entities have interpreted and enforced those statutes. Indeed, in every relevant state the Defendants and the Plaintiffs have provided conflicting evidence regarding the statutes' interpretation, various agencies' enforcement efforts, and even the legality of these individual state statutes.

Upon review of the proffered evidence, this Court finds that a genuine issue of material fact exists regarding at least one of the following issues in each state: whether the state's optometry board has jurisdiction over the unlicensed practice of optometry (verses the states Attorney General's office); whether "dispensing" includes mere sales of lenses; whether Attorney General opinions, opinions of optometry boards, enforcement efforts of various state agencies, statements on states' web pages are relevant; whether the statute applies to pharmacies as well as mail order companies, whether the statutes apply to disposable v. regular contact lenses (which are not individually fitted regardless of where one purchases them); whether the state's board has jurisdiction to enforce its statute against out of state suppliers, whether the states are actively enforcing their statutes, whether the boards have jurisdiction solely over its licensees; whether the evidence of the legality of mail order and in person sales via alternative channels was developed after the damages period; and whether cited testimony addresses the practice of optometry rather than the dispensing of lenses.

***7** Thus, this Court finds that this conflicting evidence, in the case of each and every state in question, renders the statutes ambiguous in some way. The only thing that is clear to this Court is that each Defendant had some type of ECP-only distribution policy and that each Defendant enforced these policies to some degree. [FN10]

> FN10. An example is J and J's February 21, 1990 letter to its Central Region Sales Personnel. The subject line is "Vistakon Gets Tough on Diverters" and states the following, "Acuvue and all other contact lenses are available already in many *unauthorized* sources.... [Vistakon] is first in taking a leadership position designed to eliminate unauthorized distribution ... the real solution is a joint effort among manufacturers and professional organizations to address this problem." *See* Evidentiary Appendix to Plaintiff States Response to J and J's Motion for Summary Judgment on States' Manufacturer Conspiracy Claim (Doc. No 855) at tab 39.

Accordingly, there remains a genuine issue of material fact regarding whether these state statutes, and the corresponding efforts of state actors in enforcing these statutes, were a material and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                     Page 6
Not Reported in F.Supp.2d, 2001 WL 203964 (M.D.Fla.), 2001-1 Trade Cases P 73,150
**(Cite as: 2001 WL 203964 (M.D.Fla.))**

substantial factor in the alternative channels' failure to thrive and accordingly, the Plaintiffs' alleged injury. Because this Court has already found that a genuine issue of material fact exists regarding whether the state statutes were an additional, rather than alternative, cause for the Plaintiffs' alleged injuries, summary judgment is inappropriate at this time. Accordingly, it is hereby ordered:

Defendants' Motions for Summary Judgment, enumerated previously in this Order, are DENIED.

Not Reported in F.Supp.2d, 2001 WL 203964 (M.D.Fla.), 2001-1 Trade Cases P 73,150

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.