UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
                                                    :
WORLD WRESTLING ENTERTAINMENT, INC.,                :    04 CV 8223 (KMK)
                                                    :    (ECF CASE)
                    Plaintiff,                      :
                                                    :
            - against -                             :
                                                    :
JAKKS PACIFIC, INC.; JAKKS PACIFIC (H.K.)           :
LIMITED; ROAD CHAMPS LIMITED; THQ, INC.;            :
THQ/JAKKS PACIFIC LLC, THE JOINT VENTURE            :
OF THQ, INC. and JAKKS PACIFIC, INC.;               :
STANLEY SHENKER AND ASSOCIATES, INC.;               :
STANLEY SHENKER; BELL LICENSING, LLC;               :
JAMES BELL; JACK FRIEDMAN; STEPHEN                  :
BERMAN and JOEL BENNETT,                            :
                                                    :
                    Defendants.                     :
                                                    :
------------------------------------------------------------------------x

## MEMORANDUM OF LAW OF DEFENDANT THQ/JAKKS PACIFIC LLC IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

DORNBUSH SCHAEFFER STRONGIN & VENAGLIA, LLP
Richard Schaeffer (RS0019)
Bruce Handler (BH9426)
747 Third Avenue
New York, New York 10017
Telephone: (212) 759-3300
Facsimile:  (212) 753-7673

*Attorneys for THQ/JAKKS Pacific LLC*

June 2, 2006

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................................... i

Preliminary Statement ............................................................................................... 1

The Allegations Of The Amended Complaint. ......................................................... 5

    The LLC. ................................................................................................................ 5

    The Alleged Creation Of The RICO Scheme. ................................................... 5

    The Alleged Bribery. ........................................................................................... 6

    The Videogame License Agreement. .................................................................. 7

ARGUMENT ............................................................................................................... 8

I.    WWE'S RICO CLAIMS AGAINST THE LLC SHOULD BE DISMISSED. .......... 8

    A.    The Amended Complaint Fails To Allege That The LLC Participated
        In The "Operation or Management" Of A RICO Enterprise. .................... 8

        1.    The Requirements Of The "Operation Or Management" Test. .......... 8

        2.    In Light Of WWE's Newly Invented RICO Theory, The LLC
            Could Not Possibly Have "Operated Or Managed" A RICO
            Enterprise. ................................................................................................ 10

        3.    WWE Has Not Alleged Any Facts Showing That The LLC Had
            Control And Direction Over A RICO Enterprise. ............................... 12

        4.    The Conduct And Knowledge Of Others Cannot Be Imputed To
            The LLC In Order To Satisfy The "Operation Or Management"
            Test. ........................................................................................................... 15

    B.    The Amended Complaint Does Not Allege That The LLC Engaged In
        A Cognizable Pattern Of Racketeering Activity. ....................................... 17

        1.    WWE Has Failed To Allege A "Pattern" Consisting Of At Least
            Two Related Predicate Acts. .................................................................. 18

        2.    WWE Has Not Alleged Closed-Ended Continuity Against The
            LLC. ........................................................................................................... 19

        3.    WWE Has Not Alleged A RICO Pattern Against The LLC With
            Open-Ended Continuity. ......................................................................... 20

C.     The Complaint Does Not Adequately Allege That The LLC
       Committed RICO Predicate Acts. ...............................................................21

       1.     Mail And Wire Fraud. ......................................................................22

       2.     Money Laundering. ...........................................................................23

       3.     The Remaining Predicate Act Allegations. ......................................24

D.     WWE Has Failed To State A RICO  Conspiracy Claim
       Against The LLC. .........................................................................................25

II.  THIS ACTION SHOULD BE DISMISSED AGAINST THE LLC
     FOR LACK OF SUBJECT MATTER JURISDICTION. .........................................26

CONCLUSION ...................................................................................................................27

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

Advance Relocation and Storage Co. v. Local 814, International
    Brotherhood of Teamsters, AFL-CIO, CA No. 03-CV-4475 (DGT),
    2005 U.S. Dist. LEXIS 6835 (E.D.N.Y. Mar. 22, 2005) ................................................... 10

Amsterdam Tobacco Inc. v. Phillip Morris Inc., 107 F. Supp. 2d 210
    (S.D.N.Y. 2000) ......................................................................................................... 9, 15, 16

Carousel Foods of America, Inc. v. Abrams & Co., 05 Civ. 8076 (CM),
    2006 U.S. Dist. LEXIS 15425 (S.D.N.Y. Feb. 17, 2006) ....................................................... 2

Casio Computer Co. v. Sayo, 98 Civ. 3772 (WK), 2000 WL 1877516
    (S.D.N.Y. Oct. 13, 2000) .............................................................................................. 15, 16

Club Car, Inc. v. Club Car (Quebec) Import, Inc., 276 F. Supp. 2d 1276
    (S.D. Ga. 2003), aff'd, 362 F.3d 775 (11th Cir.), cert. denied, 543 U.
    S. 1002 (2004) ............................................................................................................... 11, 12

Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229 (2d Cir.
    1999) .............................................................................................................................. 17, 20

Com-Tech Assoc's v. Computer Assoc's Int'l, Inc., 753 F. Supp. 1078
    (E.D.N.Y. 1990), aff'd, 938 F.2d 1574 (2d Cir. 1991) ....................................................... 26

Congregacion de la Mision Provincia de Venezuela v. Curi, 978 F. Supp.
    435 (E.D.N.Y. 1997) ....................................................................................................... 13, 14

Crab House of Douglaston, Inc. v. Newsday, Inc., 418 F. Supp. 2d 193
    (E.D.N.Y. 2006) ........................................................................................................ 9, 12, 21

Dale v. Banques SCS Alliance, SA, 02 Civ. 3592 (RCC) (KNF), 2005
    U.S. Dist. LEXIS 20967 (S.D.N.Y. Sept. 22, 2005) ......................................................... 9, 10

De Jesus v. Sears, Roebuck & Co., 87 F.3d 65 (2d Cir.), cert. denied, 519
    U.S. 1007 (1996) ................................................................................................................. 16

Dep't of Economic Development v. Arthur Andersen & Co. (USA), 924 F.
    Supp. 449 (S.D.N.Y. 1996) ............................................................................................ 13, 15

Dietrich v. Bauer, 76 F. Supp. 2d 312 (S.D.N.Y. 1999) .......................................................... 26

Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158
    (S.D.N.Y. 2003) ......................................................................................................... 2, 9, 12

Eastchester Rehabilitation & Healthcare Center, LLC v. Eastchester
    Healthcare Center, LLC, 03 Civ. 7786 (LTS) (FM), 2005 U.S. Dist.
    LEXIS 6593 (S.D.N.Y. Apr. 12, 2005) ......................................................................... 19, 20

First Capital Management, Inc. v. Satinwood, Inc., 385 F.3d 159 (2d Cir.
    2004) ............................................................................... 10, 17, 18, 19, 20, 21, 22, 25

**CASES**                                                                     **PAGE(S)**

Fleischhauer v. Feltner, 879 F.2d 1290 (6th Cir. 1989), cert. denied, 493
    U.S. 1074 (1990)...................................................................................................... 12

GICC Capital Corp. v. Tech. Fin. Group, Inc., 67 F.3d 463 (2d Cir. 1995),
    cert. denied, 518 U.S. 1017 (1996)................................................................... 17, 19

H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989)................................... 17

In re Chief Executive Officers Clubs, Inc., Case No. 02-14829 (SMB),
    2006 Bankr. LEXIS 482 (S.D.N.Y. Mar. 8, 2006)............................................... 17

In re Smithkline Beecham Clinical Laboratories, Inc. Laboratory Test
    Billing Practices Litig., 108 F. Supp. 2d 84 (D. Conn. 1999) ....................... 8, 15

Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649 (S.D.N.Y. 1996),
    aff'd, 113 F.3d 1229 (2d Cir. 1997) ....................................................................... 2

Lange v. Hocker, 940 F.2d 359 (8th Cir. 1991)............................................... 16, 25

LaSalle National Bank v. Duff & Phelps Credit Rating Co., 951 F. Supp.
    1071 (S.D.N.Y. 1996)............................................................................................ 9

Leung v. Law, 387 F. Supp. 2d 105 (E.D.N.Y. 2005) ...................... 19, 20, 22, 23, 24

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young, 91 Civ. 2923
    (CSH), 1994 U.S. Dist. LEXIS 2929, 1994 WL 88129
    (S.D.N.Y. Mar. 15, 1994) ................................................................................... 26

Mills v. Polar Molecular Corp., 12 F.3d 1170 (2d Cir. 1993) ................................ 23

Moore v. PaineWebber, Inc., 189 F.3d 165 (2d Cir. 1999) .................................... 22

Odyssey re (London) Limited v. Sterling Cooke Brown Holdings Limited,
    85 F. Supp. 2d 282 (S.D.N.Y. 2000), aff'd, 242 F.3d 366 (2d Cir.
    2001)............................................................................................................ 23, 26

Redtail Leasing Inc. v. Bellezza, 95 Civ. 5191 (JFK), 1999 U.S. Dist.
    LEXIS 486, (S.D.N.Y. Jan. 21, 1999) ........................................................ 9, 13, 16

Reinfeld v. Riklis, 722 F. Supp. 1077 (S.D.N.Y. 1989) ......................................... 25

Reves v. Ernst & Young, 507 U.S. 170 (1993)............................... 4, 8, 9, 12, 13, 16

Rodriguez v. Banco Central, 777 F. Supp. 1043 (D.P.R. 1991), aff'd, 990
    F.2d 7 (1st Cir. 1993)........................................................................................... 25

Schlaifer Nance & Co. v. Estate of Andy Warhol, 119 F.3d 91 (2d Cir.
    1997)..................................................................................................................... 18

Schmidt v. Fleet Bank, 16 F. Supp. 2d 340 (S.D.N.Y. 1998)............................ 10, 13

Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985) ............................................... 8

United States v. Maher, 108 F.3d 1513 (2d Cir. 1997)............................................ 23

Zhu v. First Atlantic Bank, 054 Civ. 96 (NRB), 2005 U.S. Dist. LEXIS
    24895 (S.D.N.Y. Oct. 21, 2005) .............................................................. 14, 18, 27

## STATUTES AND RULES

18 U.S.C. § 1962(c) ........................................................................................................ 8, 9

18 U.S.C. § 1962(d) ........................................................................................................... 4

28 U.S.C. § 1367(c) ......................................................................................................... 26

Fed. R. Civ. P. 9(b) ......................................................................................................... 22

Fed. R. Civ. P. 12(b)(1) ..................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 1

Federal Travel Act (18 U.S.C. § 1952) ........................................................................... 24

National Stolen Property Act (18 U.S.C. § 2314) ........................................................... 24

New York Penal Law § 180.03 ........................................................................................ 25

166202.2

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
WORLD WRESTLING ENTERTAINMENT, INC.,       :       04 CV 8223 (KMK)
                                           :       (ECF CASE)
                             Plaintiff,    :
                                           :
             - against -                   :
                                           :
JAKKS PACIFIC, INC.; JAKKS PACIFIC (H.K.)  :
LIMITED; ROAD CHAMPS LIMITED; THQ, INC.;   :
THQ/JAKKS PACIFIC LLC, THE JOINT VENTURE   :
OF THQ, INC. and JAKKS PACIFIC, INC.;      :
STANLEY SHENKER AND ASSOCIATES, INC.;      :
STANLEY SHENKER; BELL LICENSING, LLC;      :
JAMES BELL; JACK FRIEDMAN; STEPHEN         :
BERMAN and JOEL BENNETT,                   :
                                           :
                             Defendants.   :
------------------------------------------------------------------------x

### MEMORANDUM OF LAW OF DEFENDANT THQ/JAKKS PACIFIC LLC IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

Defendant THQ/JAKKS Pacific LLC (the "LLC") respectfully submits this

Memorandum in support of its motion for an order (i) pursuant to Fed. R. Civ. P. 12(b)(6) and

9(b), dismissing the claims asserted against the LLC in the Amended Complaint of plaintiff

World Wrestling Entertainment, Inc. ("WWE") under the Racketeer Influenced and Corrupt

Organizations Act ("RICO"); and (ii) pursuant to Fed. R. Civ. P. 12(b)(1), dismissing this action

in its entirety for lack of subject matter jurisdiction.

### Preliminary Statement

On March 31, 2005 -- the day it was scheduled to oppose the wave of dismissal motions

directed against its original Complaint in this action -- plaintiff WWE blinked.  Declining to

defend that Complaint, including the dubious racketeering allegations first giving rise to this

action, WWE chose instead to file a 132-page, 363 paragraph "Amended Complaint" based upon

a largely reimagined RICO theory. If WWE's purpose in amending its Complaint was to salvage a RICO case rife with deficiencies, it has utterly failed. If WWE's purpose was to bolster the conclusory and unsubstantiated "factual" allegations permeating its original Complaint, it has not come close. Indeed, in filing the present Amended Complaint, WWE has only made matters worse for itself. The Amended Complaint does not state a cognizable claim against the LLC under RICO -- the sole remaining basis for federal jurisdiction in this action -- and accordingly, this action should be dismissed in its entirety as against the LLC.

The LLC is a Delaware limited liability company based in California, comprised equally of defendants JAKKS Pacific, Inc. ("JAKKS") and THQ Inc. ("THQ"). As the Amended Complaint alleges, the LLC was formed on June 10, 1998, and it entered into the videogame license agreement with WWE which is involved in this action (the "Videogame License Agreement") on June 23, 1998. Both of these events occurred years after the RICO scheme now contrived by WWE was allegedly created and implemented. Since its formation, the LLC has engaged exclusively in the development and marketing of professional wrestling theme videogames.

While there is much to criticize in WWE's Amended Complaint, most striking is its cynical abuse of the RICO Act -- exemplified by WWE's conveniently shifting characterizations of the defendants' alleged racketeering activities. The Courts of this Circuit long have sought to "flush out frivolous RICO claims at an early stage of the litigation" because the "'mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants.'"[1] Yet WWE has asserted in this action a litany of deeply flawed RICO and state law

---

[1]    Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158, 163 (S.D.N.Y. 2003) (quoting Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), aff'd, 113 F.3d 1229 (2d Cir. 1997)); accord Carousel Foods of America, Inc. v. Abrams & Co., 05 Civ. 8076 (CM), 2006 U.S. Dist. LEXIS 15425 at *8-*9 (S.D.N.Y. Feb. 17, 2006) (imposing sanctions against plaintiff for improper assertion of RICO claim).

166202.2

claims, based on allegations of bribery and other misconduct, with the admitted aim of reaping

an extraordinary payday (beyond that which it already has enjoyed) at the LLC's expense.  WWE

seeks <u>both</u> to recover a huge monetary award from the LLC and the other defendants (including

treble damages and disgorgement of the defendants' past licensing revenues) <u>and</u> a judicial

declaration voiding the Videogame License Agreement which the LLC has honored for eight

years.

WWE's failure to state a cognizable RICO claim against the LLC does not result simply

from inartful pleading and excessive reliance on conclusory, rote allegations that the LLC

participated in a RICO enterprise (although to be sure, these pleading defects are fatal to the

Amended Complaint).  It is also the very nature of WWE's alleged racketeering scheme -- and

the LLC's notable absence from the scheme -- that compels dismissal of its RICO claims against

the LLC.

WWE's newly conceived racketeering scheme is based on allegations that the JAKKS

defendants -- not the LLC -- conspired with defendant Stanley Shenker to achieve licensing

advantages effectively driving a competitor, Playmates, out of the business of WWE toy

licenses.[2]  Amended Complaint ("AC") ¶ 62.  In a transparent, if futile, effort to establish the

required RICO "continuity", the Amended Complaint alleges that this scheme originated as early

as <u>1995</u>.  <u>Id.</u> ¶¶ 40, 63.  The LLC, however, was formed more than two years later on <u>June 10,</u>

<u>1998,</u> and did not enter into the Videogame License Agreement with WWE until <u>June 23, 1998.</u>

In short, the LLC <u>did not exist</u> throughout virtually the entirety of this purported scheme,

including during all but one of the installments of the alleged bribe at the heart of this action.

Moreover, even if WWE had managed to plead a cognizable pattern of racketeering activity in its

---

[2]   The "JAKKS defendants" are: JAKKS Pacific, Inc.; JAKKS Pacific (H.K.) Limited; Road Champs Limited; Jack Friedman; Stephen Berman; and Joel Bennett.

166202.2

Amended Complaint -- and it has not come close -- WWE explicitly alleges that this purported scheme was created and largely carried out with the aim of a party other than the LLC, defendant JAKKS, obtaining certain licensing rights from WWE. Id. ¶¶ 41, 63-64.

Simply stated, WWE is attempting to assert RICO claims against a party, the LLC, that could not possibly have played an active, continuing role in the alleged bribery and racketeering scheme. As we discuss in detail below, WWE's RICO claims should be dismissed as against the LLC for at least the following reasons:

(a)    WWE has failed to allege that the LLC participated in the "operation or management" of a RICO enterprise, as the United States Supreme Court requires. Reves v. Ernst & Young, 507 U.S. 170, 183 (1993);

(b)    WWE has failed to allege that the LLC engaged in a "pattern" of racketeering activity with the required "continuity";

(c)    WWE has failed to allege that the LLC has committed the necessary predicate acts under RICO, with the requisite intent; and

(d)    WWE has failed to allege, in asserting a RICO conspiracy claim under 18 U.S.C. § 1962(d), that the LLC agreed to join a conspiracy and that it agreed to personally commit at least two predicate acts.[3]

For several reasons, WWE has not stated a legally cognizable RICO claim against the LLC. By virtue of this Court's March 31, 2006 Opinion and Order dismissing WWE's Robinson-Patman Act and Sherman Act claims, its RICO claims constitute the only basis for federal jurisdiction over this action. Accordingly, the Amended Complaint should be dismissed in its entirety as against the LLC.

---

[3]    The LLC also joins in those arguments set forth in the dismissal motions being filed today by the JAKKS defendants and THQ, including without limitation the JAKKS defendants' arguments that WWE's RICO claims are time-barred, and that WWE has not adequately alleged a RICO injury.

166202.2

## The Allegations Of The Amended Complaint.

For all its deficiencies, WWE's original Complaint purported to allege a relatively straightforward, if short lived, bribery scheme conceived for the purpose of JAKKS obtaining specific intellectual property licenses from WWE. After the defendant's motions to dismiss WWE's original Complaint elucidated the several fatal deficiencies of its RICO claims, WWE filed this Amended Complaint, attempting to sketch out a far more convoluted racketeering scheme with a meandering life span in excess of two years.

## The LLC.

WWE's allegations against the LLC in its Amended Complaint are no more particularized or substantiated than they were the first time around. In attempting to draw the LLC into its RICO theory, WWE relies exclusively on conclusory allegations, undifferentiated group pleading tactics, and perhaps most egregiously, the unsupported catch-all claim that "[a]ll actions alleged herein taken by JAKKS and/or THQ after June 10, 1998 in regard to the videogame license were with the authority of [the LLC], which also ratified those actions." AC ¶ 19.

As alleged in the Amended Complaint, the LLC is a Delaware limited liability corporation based in California. The LLC was formed on June 10, 1998. THQ and JAKKS each owns 50% of the LLC. AC ¶ 19. On June 23, 1998, the LLC executed the Videogame License Agreement with WWE, providing for a term ending on December 31, 2009, subject to the right to renew for an additional five years in favor of the LLC. Id. ¶ 157.

## The Alleged Creation Of The RICO Scheme.

According to the Amended Complaint, the defendants' alleged racketeering scheme began as early as 1995, when "JAKKS personnel devised a plan to corrupt [defendant Stanley] Shenker by trading on Shenker's lack of ethics and greed." AC ¶ 37. The scheme allegedly was

5

formed shortly after JAKKS and WWE entered into a domestic toy license on October 24, 1995, when JAKKS attempted to influence Shenker to secure additional rights from WWE. Id. ¶¶ 35-42. JAKKS allegedly told Shenker that it wanted to utilize his services notwithstanding that Shenker was known to be an agent of WWE. Id. ¶ 47.

On or about April 22, 1996, allegedly upon Shenker's recommendation, the First Amendment to JAKKS' domestic toy license with WWE was signed, granting JAKKS additional toy licensing rights. AC ¶ 56. WWE alleges that, also in 1996, JAKKS and Shenker proceeded toward the main objectives of their purported scheme: a plan to obtain certain WWE toy licenses for JAKKS in order to drive another WWE licensee, Playmates, out of the business of WWE action figures. Id. ¶¶ 62-72, 79-83.

**The Alleged Bribery.**

As alleged in the Amended Complaint, the bribery scheme which gave rise to this action was hatched with the primary purpose of obtaining favorable licensing rights for JAKKS, including enabling JAKKS to buy out Playmates from the WWE action figure business. AC ¶¶ 80-83. In 1997, Shenker allegedly advised defendant James Bell, WWE's Senior Vice President of Licensing and Merchandising, "that there was money to be made by Bell for favorable treatment of the licensing rights being sought for JAKKS by [Shenker], including with respect to the plan to eliminate competition by having JAKKS buy out Playmates. . ." Id. ¶ 80. The LLC was not in existence at this time.

Indeed, WWE alleges that the bribery scheme was implemented on January 2, 1998 -- more than five months before the LLC was formed -- when Shenker allegedly delivered a handwritten invoice from his foreign corporation, Stanfull Industrial, Ltd. ("Stanfull"), to JAKKS. AC ¶ 85. Payments were allegedly made to Stanfull in the amount of $40,000 on

6

January 14, 1998 (<u>id</u>. ¶ 95); $40,000 on April 2, 1998 (<u>id</u>. ¶ 112); and a final payment of $20,000 on August 4, 1998 (<u>id</u>. ¶ 170). The final payment on August 4, 1998 was the <u>only</u> payment made at a time when the LLC actually was in existence.

**The Videogame License Agreement.**

In around February 1998, JAKKS, Shenker and Bell allegedly met to discuss the possibility of JAKKS securing a videogame license from WWE. Efforts for JAKKS to obtain the videogame license proceeded through the spring of 1998. WWE alleges that only after THQ and another company, Activision, submitted proposals for the WWE videogame license that were "clearly superior" to the initial JAKKS proposal (AC ¶¶ 131-132), JAKKS and THQ -- in April or May 1998 -- discussed becoming partners in a joint venture to acquire the videogame license from WWE. <u>Id</u>. ¶¶ 137-145.

By this time, the alleged bribery scheme at the heart of this action had been well underway and the bulk of the alleged bribe already had been paid. On June 10, 1998, years after the scheme allegedly was initiated, and several months after the $80,000 Stanfull invoice of January 2, 1998 (AC ¶ 85), the LLC was first formed. AC ¶ 154. Later still -- on June 23, 1998 -- the LLC entered into the Videogame License Agreement with WWE. <u>Id</u>. ¶ 157.

Other than conclusory and nonparticularized group allegations that the defendants engaged in a cover-up of this alleged scheme, and that the defendants paid and received money pursuant to the terms of the Videogame License Agreement, this is the entirety of WWE's allegations against the LLC. To the extent WWE attempts to fabricate a RICO claim involving the LLC -- or to assert any other claims against the LLC -- it is built upon nothing more than unsubstantiated allegations that certain parties were acting "on behalf of and with the

166202.2

authorization of" the LLC, among others.  See, e.g., AC ¶ 249 (b)(xxviii).  That is the sum and substance of WWE's case against the LLC.

## ARGUMENT

### I.

### WWE'S RICO CLAIMS AGAINST
### THE LLC SHOULD BE DISMISSED.

**A.    The Amended Complaint Fails To Allege That The
       LLC Participated In The "Operation or
       Management" Of A RICO Enterprise.**

**1.     The Requirements Of The "Operation Or
        Management" Test.**

In Count I of the Amended Complaint, WWE purports to assert a RICO claim against all defendants pursuant to 18 U.S.C. § 1962(c).  In order to state a cognizable claim under Section 1962(c), a plaintiff must allege that:

> (1) the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce.

In re Smithkline Beecham Clinical Laboratories, Inc. Laboratory Test Billing Practices Litig., 108 F. Supp. 2d 84, 92 (D. Conn. 1999)(citing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).

In this case, WWE has utterly failed to allege that the LLC "participated" in a RICO enterprise under Section 1962(c).  In Reves v. Ernst & Young, 507 U.S. 170, 183 (1993), the United States Supreme Court articulated the special burden borne by a plaintiff in asserting a Section 1962(c) claim, holding that a defendant is not liable unless it "has participated in the operation or management of the [RICO] enterprise itself."  The Supreme Court in Reves required

166202.2

that, to be subject to a Section 1962(c) claim, a defendant must have had "some part in directing [the enterprise's] affairs". Id. at 179.

In order to satisfy the Supreme Court's requirement in Reves, a plaintiff must "allege facts permitting the conclusion that [defendant] 'operated or managed' the affairs of the . . . enterprise within the meaning of 18 U.S.C. § 1962(c)." Amsterdam Tobacco Inc. v. Phillip Morris Inc., 107 F. Supp. 2d 210, 216 (S.D.N.Y. 2000) (emphasis added); accord Redtail Leasing Inc. v. Bellezza, 95 Civ. 5191 (JFK), 1999 U.S. Dist. LEXIS 486, (S.D.N.Y. Jan. 21, 1999).  Notably, "as interpreted by courts in this district and others, the 'operation and management' test... is a very difficult test to satisfy. " LaSalle National Bank v. Duff & Phelps Credit Rating Co., 951 F. Supp. 1071, 1090 (S.D.N.Y. 1996); see also Dale v. Banques SCS Alliance, SA, 02 Civ. 3592 (RCC) (KNF), 2005 U.S. Dist. LEXIS 20967 at *19 (S.D.N.Y. Sept. 22, 2005) ("Courts in the Second Circuit typically apply the rule set forth in Reves extremely rigorously").

Given the rigors of this standard, many Courts in this Circuit have dismissed RICO claims at the pleading stage based on plaintiff's failure to adequately allege a defendant's "operation or management" of a RICO enterprise.  See, e.g., Crab House of Douglaston, Inc. v. Newsday, Inc., 418 F. Supp. 2d 193 (E.D.N.Y. 2006); Dubai Islamic Bank v. Citibank, N.A., 256 F. Supp. 2d 158, 164 (S.D.N.Y. 2003) (denying leave to amend complaint to add RICO claims); Amsterdam Tobacco, supra, 107 F. Supp. 2d 201 (S.D.N.Y. 2000); Redtail Leasing, supra, 1999

166202.2

WL 32941 (S.D.N.Y. Jan. 22, 1999); <u>Schmidt v. Fleet Bank</u>, 16 F. Supp. 2d 340 (S.D.N.Y. 1998).[4]

## 2. In Light Of WWE's Newly Invented RICO Theory, The LLC Could Not Possibly Have "Operated Or Managed" A RICO Enterprise.

Here, WWE has failed to allege that the LLC "participated" in a RICO enterprise at all, much less in "the operation and management" of such an enterprise. First and most obviously, the LLC <u>could not have</u> participated in the alleged RICO enterprise, or in its operation and management: WWE makes abundantly clear in its Amended Complaint that the LLC <u>did not exist</u> at the time the alleged enterprise was formed; at the time the alleged racketeering scheme was implemented; or during the bulk of the period when the alleged bribery portion of this scheme purportedly occurred.

The Amended Complaint leaves no doubt on this point. According to WWE's first RICO theory contained in its original Complaint, the alleged racketeering scheme began in early 1998 with the defined narrow purpose of defendant JAKKS obtaining a video game license from WWE. Under WWE's newly contrived RICO theory, the alleged scheme began as early as November 1995, with "JAKKS' early efforts to corrupt Shenker" (AC ¶ 40), and continued into 1996 when JAKKS allegedly "devised a plan in concert with [the Shenker defendants] . . . to

---

[4]    In <u>First Capital Management, Inc. v. Satinwood, Inc.</u>, 385 F.3d 159, 176 (2d Cir. 2004), the Court observed that "[i]n this Circuit, the 'operation or management' test typically has proven to be a relatively low hurdle for plaintiffs to clear." The Court in <u>First Capital</u> also made clear, however, that a failure to adequately plead that a defendant "directed" the affairs of the enterprise -- as is the case here -- will result in dismissal. <u>Id.</u> at 176 & n. 14. Moreover, even in the context of the ostensibly more particularized allegations of "operation and management" in <u>First Capital</u>, the Court made a point of stressing "that Plaintiffs have alleged -- albeit barely -- that [defendant] conducted or participated in the conduct of the affairs of the [RICO enterprise]." <u>Id.</u> at 178 (emphasis added). Even after the <u>First Capital</u> decision, the Courts in this Circuit have continued to emphasize that "[t]he operation-management test has been recognized as a 'very difficult test to satisfy.'" <u>Advance Relocation and Storage Co. v. Local 814, International Brotherhood of Teamsters</u>, AFL-CIO, CA No. 03-CV-4475 (DGT), 2005 U.S. Dist. LEXIS 6835, at *31 (E.D.N.Y. Mar. 22, 2005) (citations omitted); <u>Dale v. Banque SCS Alliance S.A.</u>, supra, 02 Civ. 3592 (RCC) (KNF), 2005 U.S. Dist. LEXIS 20967 at *19.

166202.2

foreclose competition in licensing areas desired by JAKKS, . . . [and] facilitate JAKKS' desire to drive Playmates out of the business of WWE action figures . . ." Id. ¶¶ 62, 63.

WWE's new RICO theory has nothing to do with the LLC. As alleged in the Amended Complaint itself, the LLC was not formed until June 10, 1998; it did not enter into the Video Game License Agreement with WWE until June 23, 1998. AC ¶¶ 154, 157. If the flaws in WWE's RICO claim against the LLC were obvious as pleaded in the original Complaint, they are all the more stark and insurmountable now. According to the express allegations of the Amended Complaint, the LLC was not formed until more than two years after the alleged racketeering scheme began in 1995 or 1996. Indeed, the LLC did not exist when virtually the entirety of the alleged bribe payments already had been made in January and April 1998, with only a final alleged installment made in August 1998. See AC ¶¶ 85-96, 111-112, 167-168.

In short, the LLC could not have controlled or directed the alleged RICO enterprise because it did not exist when the alleged racketeering scheme was devised, the alleged RICO enterprise was formed or throughout the vast bulk of the scheme's alleged operations. And as with WWE's original RICO theory, the alleged racketeering scheme set forth in the Amended Complaint was not formed and carried out for the purpose of benefiting the LLC -- which did not exist at the start of this scheme -- but rather in order (allegedly) to benefit another party altogether, defendant JAKKS.

In a case dispositive of this very issue, Club Car, Inc. v. Club Car (Quebec) Import, Inc., 276 F. Supp. 2d 1276, 1290 (S.D. Ga. 2003), aff'd, 362 F.3d 775 (11th Cir.), cert. denied, 543 U.S. 1002 (2004), the Court dismissed a RICO counterclaim against a corporation, IRCL, which had not yet been formed during the course of the alleged racketeering activity. As the Court in Club Car held:

> Defendants' position that IRCL "indirectly derived income from
> Club Car's pattern of racketeering activity," . . . is not sustainable
> because IRCL was not yet in existence . . . .    Consequently,
> Defendants have not alleged sufficient participation of IRCL in
> Plaintiff's alleged racketeering activity.

Id. (emphasis added); see also Fleischhauer v. Feltner, 879 F.2d 1290, 1298-1299 (6th Cir.

1989), cert. denied, 493 U.S. 1074 (1990) (granting directed verdict to defendant corporation

dismissing RICO claim because corporation "was not yet incorporated during the existence of

the alleged scheme").

## 3.  WWE Has Not Alleged Any Facts Showing That The LLC Had Control And Direction Over A RICO Enterprise.

As noted above, in light of the history and purpose of the alleged RICO scheme, WWE

cannot possibly satisfy the Reves "operation and management" test with respect to the LLC.  In

any event, WWE's wholesale reliance on sweeping, conclusory, and essentially meaningless

allegations of "participation" against the LLC falls woefully short of the Reves standard.  See

De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir.), cert. denied, 519 U.S. 1007 (1996)

(affirming dismissal of RICO claims and holding, "'A complaint which consists of conclusory

allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)'")

(citations omitted); Dubai Islamic Bank v. Citibank, N.A., supra, 256 F. Supp. 2d 158, 164

(S.D.N.Y. 2003) (rejecting RICO claim against Citibank where [plaintiff] "makes the conclusory

allegation that Citibank participated in the alleged money laundering -- when in fact it is the

actions principally of [other parties] which allegedly are in question"); Crab House of

Douglaston, Inc., supra, 2006 U.S. Dist. LEXIS 11473 at *27 n.3 (E.D.N.Y. 2006) (dismissing

RICO claims, and holding, "[T]hough the [Second Amended Complaint] contains 279

paragraphs, many of those paragraphs are repetitive, resistant to chronology, and underwhelming

in their specificity as to any individual").

In order to satisfy the "operation or management" test, a plaintiff must adequately allege that a defendant such as the LLC was not just associated with, but actually had "control" and "direction" over, the RICO enterprise: "There is a 'substantial difference between actual control over an enterprise and association with an enterprise in ways that do not involve control; only the former is sufficient under <u>Reves</u> because '<u>the test is not involvement but control</u>'". <u>Schmidt v. Fleet Bank</u>, <u>supra</u>, 16 F. Supp. 2d at 346 (quoting <u>Dep't of Economic Development v. Arthur Andersen & Co. (USA)</u>, 924 F. Supp. 449, 466 (S.D.N.Y. 1996)) (emphasis added); <u>see also Redtail Leasing, Inc. v. Bellezza</u>, <u>supra</u>, 1999 WL 32941 at *5 (S.D.N.Y. Jan. 21, 1999) (dismissing Section 1962(c) claim where, although complaint "suffice[d] to suggest that [defendant] participated in the insider trading ring's affairs. . . these allegations do not suggest that [defendant] directed, managed, operated or otherwise controlled some portion of the affairs of the insider trading ring"); <u>Congregacion de la Mision Provincia de Venezuela v. Curi</u>, 978 F. Supp. 435, 450 (E.D.N.Y. 1997) ("To participate in the 'conduct' of the enterprise means to be involved in 'some degree of [its] direction'") (citation omitted).

"Control" of the RICO enterprise -- the keystone for satisfying the <u>Reves</u> test -- is precisely what WWE has failed to allege against the LLC here. WWE's Amended Complaint sets forth merely a series of vague and conclusory allegations against the LLC which, even if believed, would at most suggest that the LLC happened to be in existence for a brief period when <u>other</u> parties allegedly took certain actions. Even where WWE has pointedly attempted to tie the LLC directly to the control of a RICO enterprise, it has managed nothing more than stock allegations that another party engaged in conduct "on behalf of and for the benefit of Defendants JAKKS, THQ, and THQ/JAKKS, . . ." <u>See</u>, <u>e.g.</u>, AC ¶ 249(a)(xlv). Such allegations do not indicate control and direction by the LLC. If anything, they indicate the opposite.

13

Nothing better demonstrates WWE's inability to satisfy the "operation or management" test than its own effort to plead specific actionable activity by the LLC. For instance, at paragraph 249(a) of the Amended Complaint, WWE purports to allege predicate acts of mail and wire fraud by the defendants. Of these alleged acts, 36 of them occurred <u>before the LLC came into existence.</u> AC ¶¶ 249(a)(i)-(xxxvi). <u>None</u> of the remaining 20 alleged acts of mail and wire fraud involved any actual conduct -- much less the exercise of direction or control -- by the LLC. <u>See</u> <u>Id</u>. ¶¶ 249(a)(xxxvii)-(lvi).

Similarly, in its voluminous allegations of money laundering predicate acts, WWE's references to the LLC (AC ¶¶ 249(b)(xxviii)-(lxviii)) merely involve two royalty payments made to WWE "related to the Video Game License", and payments among the members of the LLC "in connection with the Video Game License." These allegations do not indicate direction or control by the LLC, and as discussed in Sec. I.C.2 below, they have nothing to do with money laundering, racketeering, bribery, or any other unlawful activity. They simply relate to the LLC's status as a party to the Videogame License Agreement and payments pursuant to such proper pre-existing agreements.

The simple acts of signing a contract allegedly related to a RICO enterprise, and receiving and/or paying funds pursuant to such a contract, do not satisfy the "operation or management" test. <u>See</u>, <u>e.g.</u>, <u>Congregacion de la Mision Provincia</u>, <u>supra</u>, 978 F. Supp. at 448-449 (complaint alleging that defendants made payments pursuant to allegedly fraudulent mortgage does not suggest that they "participated in the 'operation or management of the enterprise'"); Id. at 451 ("the knowing receipt of fraudulently obtained funds does not constitute participation in the 'operation and management' of the enterprise"); <u>Zhu v. First Atlantic Bank</u>, 054 Civ. 96 (NRB), 2005 U.S. Dist. LEXIS 24895 at *18 (S.D.N.Y. Oct. 21, 2005) (defendants

14

"do not remotely satisfy this strict test, as each bank merely transferred funds that the plaintiff requested they transfer"); Amsterdam Tobacco, supra, 107 F. Supp. at 217 (where defendant tobacco company's marketing program allegedly served as source of wholesaler smuggling scheme, "it cannot be said that [tobacco company] was operating or managing the smuggling enterprise by means of these programs").

As this Court held in Amsterdam Tobacco, supra, 107 F. Supp. 2d at 217, in dismissing a RICO claim for failure to satisfy the "operation or management" test, "'[P]roviding important services to a racketeering enterprise is not the same as directing the affairs of an enterprise' . . . indeed, it is even insufficient to state that the defendant has persuasive power to induce the management of the enterprise to take certain actions." See also Casio Computer Co. v. Sayo, 98 Civ. 3772 (WK), 2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) ("in this Circuit, the 'simple taking of directions and performance of tasks that are 'necessary and helpful' to the enterprise, without more, is insufficient to bring a defendant within the scope of Section 1962(c)'"); In re SmithKline Beecham Clinical Laboratories, Inc., 108 F. Supp. 2d 84, 100 (D. Conn. 1999) ("although SBCL's alleged fraudulent billing practices may have victimized the physicians' offices, hospitals and laboratories, that does not suffice to establish that SBCL 'operated or managed' the affairs of each of these alleged enterprises").

## 4. The Conduct And Knowledge Of Others Cannot Be Imputed To The LLC In Order To Satisfy The "Operation Or Management" Test.

WWE cannot reasonably argue that the LLC actively operated or managed a RICO enterprise because the (alleged) knowledge of its members is imputed to the LLC. What matters here are allegations of conduct, not knowledge. A defendant's alleged knowledge -- especially imputed knowledge -- of an enterprise's purported racketeering activities does not indicate that it "directed the affairs of the enterprise." See Dep't of Economic Development, supra, 924 F. Supp.

166202.2

at 468 ("a 'knowing participation' definition, without more, arguably reads the 'control' requirement out of Reves"); Amsterdam Tobacco, supra, 107 F. Supp. at 218.

Nor can WWE satisfy the "operation or management" test by claiming that the LLC "ratified" the alleged conduct of other parties. On this matter, WWE has alleged nothing more in its Amended Complaint than the blunderbuss statement: "All actions alleged herein taken by JAKKS and/or THQ after June 10, 1998 in regard to the videogame license were with the authority of [the LLC] which also ratified those actions." AC ¶ 19. This sweeping assertion, without any factual support, alleges no conduct by the LLC, and is plainly insufficient. See De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir.), cert. denied, 519 U.S. 1007 (1996) (affirming dismissal of RICO claim where "pleadings are devoid of specific facts or circumstances supporting this assertion" that parent company ratified actions of subsidiary's employees); see also Lange v. Hocker, 940 F.2d 359, 362 (8th Cir. 1991) ("attempting to ratify a disputed transaction is not a predicate act").

In light of the facts, as set forth in the Amended Complaint, that the LLC did not even exist until the final moments of this alleged scheme, and surely did not direct or control the purported RICO enterprise, WWE has failed to plead the LLC's "participation" in a RICO enterprise sufficient to sustain its claim. See Casio Computer Co., Ltd. v. Sayo, 2000 WL 1877516 at *12 (S.D.N.Y. Oct. 13, 2000) (individual did not participate in pattern of racketeering where he was involved in only one alleged act of misappropriation "which lasted for a few months"); Redtail Leasing, supra, 1999 WL32941 at *5 (dismissing Second Amended Complaint because "it fails to allege facts suggesting that [defendants] directed or controlled the enterprise's affairs").

16

**B. The Amended Complaint Does Not Allege
That The LLC Engaged In A Cognizable
Pattern Of Racketeering Activity.**

WWE has built its Amended Complaint around a newly imagined racketeering scheme that strains to extend farther back in time than the scheme it had posited in its original Complaint. In offering up this new theory, WWE has made a tortured effort to plead the kind of "continuous" pattern of racketeering activity so plainly absent from its original Complaint. Surely with respect to the LLC, WWE once again has failed to allege a cognizable RICO pattern.

Under the RICO Act, a "'pattern of racketeering activity' consists of 'at least two [predicate] acts of racketeering activity' committed in a ten-year period…" First Capital Asset Mgt., Inc. v. Satinwood, Inc., 385 F.3d 159, 178 (2d Cir. 2004) (quoting 18 U.S.C. §§ 1961(5)) (emphasis added). Additionally, "[t]o establish a pattern, a plaintiff must also make a showing that the predicate acts of racketeering activity by a defendant are 'related, and that they amount to or pose a threat of continued criminal activity.'" Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999)(quoting H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989) (emphasis in original)).

In order "to satisfy the requirement of continuity, 'a plaintiff. . . must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e, past criminal conduct extending over a substantial period of time).'" In re Chief Executive Officers Clubs, Inc., Case No. 02-14829 (SMB), 2006 Bankr. LEXIS 482 at *29 (S.D.N.Y. Mar. 8, 2006) (quoting GICC Capital Corp. v. Tech. Fin. Group, Inc., 67 F.3d 463, 466 (2d Cir. 1995) , cert. denied, 518 U.S. 1017 (1996)).

17

Of significance here, in determining whether an alleged pattern has been stated and bears the requisite continuity, a Court must "evaluate the RICO allegations with respect to each defendant individually." First Capital, supra, 385 F.3d at 180 (emphasis added); Chief Executive Officers Club, supra, 2006 Bankr. LEXIS 482 at *29.

## 1. WWE Has Failed To Allege A "Pattern" Consisting Of At Least Two Related Predicate Acts.

In the face of these established RICO principles, WWE has failed to allege a cognizable RICO "pattern" against the LLC.  In actuality, the Amended Complaint hinges on one bribery scheme with a single victim.  While WWE has attempted to break this bribe into a number of subparts and countless predicate acts, "courts must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO." Schlaifer Nance & Co. v. Estate of Andy Warhol, 119 F.3d 91, 98 (2d Cir. 1997) ("The acts complained of in schemes C through G and I are subparts of the singular act, and not a "pattern" of separate acts with an underlying purpose"); Zhu v. First Atlantic Bank, supra, 05 Civ. 96 (NRB), 2005 U.S. Dist. LEXIS 24895 at *14 (S.D.N.Y. Oct. 21, 2005) ("That there were numerous communications. . . has no bearing on the fact that plaintiff was allegedly defrauded only once, as 'multiple acts in furtherance of a single extortion episode constitute only a single predicate act of attempted extortion. . .'") (citation omitted).

Certainly with respect to the LLC -- which existed at the time of only one installment of the alleged bribe and during none of the alleged acts occurring before June 10, 1998 -- WWE can assert, at most, the LLC's alleged involvement in only one "subpart[] of the singular act, and not a 'pattern' of separate acts with an underlying purpose." Schlaifer Nance, supra, 119 F.3d at 98. The LLC engaged in no "pattern" whatsoever under RICO.

18

**2. WWE Has Not Alleged Closed-Ended
   Continuity Against The LLC.**

A closed-ended pattern of racketeering activity involves predicate acts "extending over a substantial period of time." GICC, supra, 67 F. 3d at 466. Significantly, "the Second Circuit has never found a closed-ended pattern where the predicate acts spanned fewer than two years." First Capital, supra, 385 F.3d at 182 (emphasis added).

There can be no closed-ended continuity here. In the Amended Complaint, WWE has attempted to allege a RICO pattern stretching as far back as 1995 or 1996. Despite WWE's strained efforts to incorporate into its alleged RICO scheme matters occurring years earlier, any alleged bribery even tenuously related to the LLC lasted, at most, seven months -- from January 2, 1998 to August 4, 1998. AC ¶¶ 85-87, 167-170. This seven-month period is far too brief to satisfy closed-ended continuity. See Leung v. Law, 387 F. Supp. 2d 105, 124 (E.D.N.Y. 2005) (predicate acts extending over only a few weeks or months do not satisfy the substantial duration element of closed-ended continuity).

With respect to the LLC specifically, any purported "pattern" of racketeering activity could not have lasted more than two months. The LLC was not formed until June 10, 1998, and existed only during the time of the one final installment of the alleged bribe purportedly made to defendant Shenker's company on August 3, 1998. AC ¶ 168. WWE's allegations against the LLC surely do not meet the requirements for closed-ended continuity. See Landy v. Mitchell Petroleum Technology Corp., 734 F. Supp. 608, 624 (S.D.N.Y. 1990) (no continuity concerning "event which occurred at best over a few months and which has long since ceased"); Eastchester Rehabilitation & Healthcare Center, LLC v. Eastchester Healthcare Center, LLC, 03 Civ. 7786 (LTS) (FM), 2005 U.S. Dist. LEXIS 6593 at *17 (S.D.N.Y. Apr. 12, 2005) (no closed-ended continuity where "duration of [alleged] mailings spans a mere 14 months").

166202.2

### 3.  WWE Has Not Alleged A RICO Pattern Against The LLC With Open-Ended Continuity.

WWE has failed to allege an open-ended pattern of racketeering activity because it cannot show that "there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." Cofacredit, supra, 187 F.3d at 242.  The very essence of the alleged scheme -- the payment of a bribe to defendant Shenker in order to acquire license rights from a single business, WWE -- was "inherently terminable".  See Leung v. Law, supra, 387 F. Supp. 2d at 48 ("fraudulent scheme which targets a single business or person is 'inherently terminable' and thus incapable of presenting an open-ended threat of continuing criminal activity").  Indeed, as set forth in the Amended Complaint, defendants' alleged "criminal activity" terminated upon the execution of the Videogame License Agreement on June 23, 1998, and the extension of JAKKS's domestic and international toy licenses on June 24, 1998.  AC ¶ 157, 165.

This alleged scheme, having effectively terminated in 1998, by definition cannot satisfy the standards for open-ended continuity.  See, e.g., First Capital, supra, 385 F.3d at 181 ("Once [defendant] had fraudulently conveyed his assets, which he allegedly accomplished by July 17, 1997 when he filed for bankruptcy, the scheme essentially came to its conclusion"); Eastchester Rehabilitation, supra, 03 Civ. 7786 (LTS) (FM), 2005 U.S. Dist. LEXIS 6593 at * 18-*19 (no open-ended continuity where "the scheme of fraudulently inducing a victim to purchase the Facilities could not continue after the Facilities and properties were sold"); Chief Executive Officers Clubs, supra, 2006 Bankr. LEXIS 482 at *30 (no open-ended continuity "where [defendant's] role in the scheme, to the extent it had any, is limited to a single completed transaction.  There is no threat of future criminal activity. . .").

166202.2

WWE's attempt to transform this terminable and consummated transaction into a continuing, open-ended racketeering scheme is badly misguided. In its Amended Complaint, WWE tries mightily to extend this alleged RICO scheme without limit by accusing defendants of a "cover-up and fraudulent concealment". Am. Cplt. ¶¶ 186-241. The Courts have held, however, that "continued silent concealment is not a predicate act, and cannot establish continuity of an alleged RICO pattern." First Capital, supra, 385 F.3d at 181; Chief Executive Officers Clubs, supra, 2006 Bankr. LEXIS 482 at *32 ("any continued silent concealment of these undisclosed matters would not constitute an additional predicate act").

Moreover, as noted elsewhere in this brief (see pp. 14-15, 23-24), WWE's mere allegations that the LLC and other defendants transferred funds in order to implement the terms of the Videogame License Agreement and their joint venture do not constitute criminal activities, are not predicate acts under the RICO statute, and accordingly, cannot support the continuity of an alleged RICO pattern. See First Capital, supra, 385 F.3d at 181 ("We conclude that the alleged predicate acts do not 'amount to or pose a threat of continued criminal activity'"); Crab House of Douglaston, Inc. v. Newsday, Inc., 2006 U.S. Dist. LEXIS 11473 at *31 (E.D.N.Y Mar. 3, 2006) (dismissing RICO claim against defendant where "Plaintiffs attribute no conduct directly to [defendant], but rather attribute vague acts of 'systematic direction' to a list of individuals").

## C. The Complaint Does Not Adequately Allege That The LLC Committed RICO Predicate Acts.

Without any specific factual allegations, WWE has asserted in its Amended Complaint -- in vague and conclusory fashion -- that the LLC has committed a multitude of federal and state statutory violations. All of WWE's claims that the LLC has committed RICO predicate acts are based on boilerplate allegations and ultimately rest on the mere assertions that the LLC

166202.2

(i) happened to be in existence at the time of one installment of the alleged bribe, and (ii) it continued in existence after execution of the Videogame License Agreement.

### 1.    Mail And Wire Fraud.

To the extent it is discernible from the Amended Complaint, WWE purports to assert approximately eight claims that the LLC committed predicate acts of mail or wire fraud. AC ¶¶ 249(a)(xxxviii)-(lvi).  WWE has fallen far short of satisfying the heightened pleading requirements of Fed. R. Civ. P. 9(b) applicable to "allegations of fraudulent predicate acts." First Capital, supra, 385 F.3d at 178.  In order to satisfy these pleading requirements, "[i]n addition to alleging the particular details of a fraud, 'the plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.'" Id. at 179 (quoting Moore v. PaineWebber, Inc., 189 F.3d 165, 173 (2d Cir. 1999)(emphasis in original)).

Here, a review of Paragraph 249(a) of the Amended Complaint reveals assorted nonparticularized and conclusory allegations of fraud, plainly insufficient under Rule 9(b).  Not one of the fraud claims against the LLC specifies how the alleged statements were false; the circumstances of such statements; or any circumstances giving rise to a strong inference of fraudulent intent.  See Leung, supra, 387 F. Supp. 2d at 115 (dismissing claims of wire fraud predicate acts because "allegations do not provide any details of the individual communications that [plaintiff] believes were fraudulent").  Indeed, none of the claims of mail and wire fraud against the LLC specifically allege that the LLC made any statement at all.  WWE surely has set forth nothing to suggest a strong inference of fraudulent intent -- only the boilerplate invocation that communications were made "on behalf of or for the benefit of" the LLC.  See, e.g., AC ¶¶ 249(b)(xliv)-(xlvi).

WWE's claims against the LLC of mail and wire fraud are plainly insufficient under Rule

9(b) and cannot sustain its RICO claim.  See Odyssey re (London) Limited v. Sterling Cooke

Brown Holdings Limited, 85 F. Supp. 2d 282, 301 (S.D.N.Y. 2000), aff'd, 242 F.3d 366 (2d Cir.

2001)(quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir. 1993)("'allegations of

predicate mail and wire fraud acts should state the contents of the communications, who is

involved, where and when they took place, and explain why they were fraudulent'").

### 2.    Money Laundering.

In order to state a RICO claim based on predicate acts of money laundering, a plaintiff

must allege:

> (1) that the defendant conducted a financial transaction; (2)
> that the transaction in fact involved the proceeds of
> specified unlawful activity as defined in *[18 U.S.C.] §
> 1956(c)(7)*; (3) that the defendant knew that the property
> involved in the financial transaction represented the
> proceeds of some form of unlawful activity; and (4) that the
> defendant knew that the financial transaction was designed
> in whole or in part to conceal or disguise the source,
> ownership, control, etc., of those proceeds.

Leung v. Law, supra, 387 F. Supp. at 118 (quoting United States v. Maher, 108 F.3d 1513, 1527-

28 (2d Cir. 1997)).  In addition, "all of the essential elements of the crime must be alleged in the

complaint." Id.

Here, the Amended Complaint -- with its conclusory allegations and its repeated failure

to identify how the LLC purportedly engaged in specified transactions -- has fallen woefully

short of these pleading requirements.

An examination of WWE's lengthy money laundering allegations (AC ¶¶ 249(b)(i)-

(lxxxviii)) reveals that WWE has actually pleaded that the LLC directly engaged in only two

"financial transactions":  unremarkable royalty payments to WWE on April 28, 2000 and

23

July 27, 2000. AC ¶¶ 249(b)(xxviii), (xxx). WWE has <u>not</u> alleged that these contractual royalty payments involved the "proceeds of . . . unlawful activity"; that the LLC "knew" that it represented the proceeds of unlawful activity; or that the LLC "knew that the financial transaction was designed . . . to conceal or disguise the source, ownership, control, etc. of those proceeds." <u>Leung</u>, <u>supra</u>, 387 F. Supp. 2d at 118.

The remainder of WWE's lengthy money laundering allegations involving the LLC broadly -- and inadequately -- assert that other parties, "on behalf of and with the authority of [the LLC]", engaged in assorted transactions. <u>See</u>, <u>e.g.</u>, AC ¶¶ 249(b)(l), (li). WWE has not set forth a single fact indicating that the LLC was involved in these transactions, much less that it "knew" such transactions were purportedly part of a money laundering scheme.

### 3.    The Remaining Predicate Act Allegations.

In addition to its claims of mail and wire fraud and money laundering, WWE alleges that the defendants have committed, as RICO predicate acts, violations of the National Stolen Property Act (18 U.S.C. § 2314); Federal Travel Act (18 U.S.C. § 1952); and New York commercial bribery laws. As a matter of basic pleading, the Amended Complaint is sorely deficient in failing to set forth factual allegations that the LLC committed any of these predicate acts.

With respect to the <u>National Stolen Property Act</u> (AC ¶ 249(c)), there is <u>no</u> allegation that the LLC committed a predicate act.

With respect to the <u>Federal Travel Act</u> (AC ¶ 249(d)), WWE has incorporated by reference its previous allegations that the defendants, including the LLC, violated federal mail and wire fraud statutes, federal money laundering statutes and the National Stolen Property Act.

24

Since, as discussed, WWE has failed adequately to allege that the LLC violated those statutes, it likewise has failed to allege that the LLC has violated the Federal Travel Act.

With respect to <u>commercial bribery</u> in violation of New York Penal Law § 180.03 (AC ¶ 249(e)), WWE simply alleges that "certain Defendants made, authorized and/or participated in the payment of or agreement to pay unlawful bribes..." Once again, there is no factual allegation indicating <u>the LLC's</u> involvement in any such bribe. WWE also alleges that those purported bribes "inured to the benefit of and/or were ratified by THQ and [the LLC]." <u>Id.</u> Yet the Amended Complaint does not allege facts indicating that the LLC knowingly ratified any purported bribe, or how the LLC purportedly did so. In any event, a defendant's benefit from, or ratification of, an alleged predicate act is not the equivalent of having actually committed a predicate act. <u>See</u>, <u>e.g.</u>, <u>Lange v. Hocker</u>, <u>supra</u>, 940 F.2d 359, 362 (8th Cir. 1991) ("Under Section 1961(1), attempting to ratify a disputed transaction is not a predicate act"); <u>Rodriguez v. Banco Central</u>, 777 F. Supp. 1043, 1063 (D.P.R. 1991), <u>aff'd</u>, 990 F.2d 7 (1st Cir. 1993)(continuing to accept payment on note is not a predicate act).

## D.    WWE Has Failed To State A RICO Conspiracy Claim Against The LLC.

WWE's Section 1962(d) claim of RICO conspiracy against the LLC must also be dismissed. First, because WWE has not adequately alleged a substantive RICO violation (as discussed above), it cannot maintain a RICO conspiracy claim. <u>See</u>, <u>e.g.</u>, <u>First Capital</u>, <u>supra</u>, 385 F.3d at 182.

Additionally, in order to state a claim of conspiracy to violate RICO, a plaintiff must allege that <u>each defendant</u> "personally agreed to commit two or more predicate acts." <u>Reinfeld v. Riklis</u>, 722 F. Supp. 1077, 1084 (S.D.N.Y. 1989). A plaintiff "is required to plead allegations that each of the defendants knowingly agreed to participate in the conspiracy, 'particularly when

25

the predicate acts alleged are fraud.'" Dietrich v. Bauer, 76 F. Supp. 2d 312, 349 (S.D.N.Y. 1999)(quoting Com-Tech Assoc's v. Computer Assoc's Int'l, Inc., 753 F. Supp. 1078, 1087 (E.D.N.Y. 1990), aff'd, 938 F.2d 1574 (2d Cir. 1991)).

Here, in the vague and conclusory terms characteristic of its entire Amended Complaint, WWE charges the LLC with RICO conspiracy, but does not allege any facts indicating that the LLC "personally" or "knowingly" agreed to commit two or more predicate acts. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young, 91 Civ. 2923 (CSH), 1994 U.S. Dist. LEXIS 2929, 1994 WL 88129 at *30 (S.D.N.Y. Mar. 15, 1994) ("numerous district courts within this circuit have dismissed conclusory allegations of agreement as insufficient to state a RICO conspiracy claim").

Moreover, as discussed above, WWE has failed adequately to allege that the LLC has committed any cognizable RICO predicate act. For this reason as well, WWE's RICO conspiracy claim should be dismissed. See Odyssey, supra, 85 F. Supp. 2d at 303 ("Since we have previously dismissed plaintiff's claims against [defendant] for the underlying acts of mail and wire fraud, plaintiff's RICO conspiracy count must be similarly dismissed").

## II.

### THIS ACTION SHOULD BE DISMISSED AGAINST THE LLC FOR LACK OF SUBJECT MATTER JURISDICTION.

Should this Court grant the LLC's motion to dismiss WWE's RICO claims, this action should be dismissed in its entirety as against the LLC for lack of subject matter jurisdiction. Pursuant to 28 U.S.C. § 1367(c), a United Stated District Court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." The Second Circuit Court of Appeals has observed that, in considering the discretionary exercise of supplemental jurisdiction, "'If the federal claims are dismissed before trial, even though not

26

166202.2

insubstantial in a jurisdictional sense, the state claims should be dismissed as well.'" First

Capital, supra, 385 F.3d at 182 (citation omitted); see also Zhu v. First Atlantic Bank, supra, 05

Civ. 96 (NRB), 2005 U.S. Dist. LEXIS 24895 at *19-*20 (dismissing RICO claim and holding,

"in the absence of federal jurisdiction, we decline to exercise supplemental jurisdiction over

plaintiff's remaining state law claims.  Therefore, the complaint is dismissed in its entirety.").

**CONCLUSION**

For the foregoing reasons, defendant THQ/JAKKS Pacific LLC respectfully requests that

this action be dismissed as against it.

Dated: New York, New York
       June 2, 2006

DORNBUSH SCHAEFFER STRONGIN
& VENAGLIA, LLP

By: _____
        Richard Schaeffer (RS0019)
        Bruce Handler (BH9426)

747 Third Avenue
New York, New York 10017
Tel.:  (212) 759-3300
Fax:  (212) 753-7673

Attorneys for Defendants THQ/JAKKS Pacific LLC

27                                    166202.2