Tab 1

LEXSEE

ADVANCE RELOCATION & STORAGE CO., INC. d/b/a ADVANCE COMMERCIAL MOVERS, Plaintiff, - against - LOCAL 814, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AFL-CIO, an unincorporated association, PETER FURTADO, individually and as President of Local 814, GEORGE DANIELLO, individually and as Vice-President of Local 814, FRANCINE FURTADO, individually and as Secretary-Treasurer of Local 814, CARL TUMINELLO, individually and as Recording Secretary of Local 814, ADVOCATE CONSULTING GROUP, INC., BRUCE COHAN, THOMAS NELSON, CUSHMAN & WAKEFIELD, INC., GERARD MILLER, JOSEPH PETERS, GLOBE STORAGE & MOVING CO., INC., ALAN FLEISHER, HENEGAN CONSTRUCTION CO., INC., MAUREEN HENEGAN, PAULINUS BRICE, IPC INFORMATION SYSTEMS, INC., GREG KENEPP, THE MEEHAN CONSULTING GROUP, INC., DENNIS MEEHAN, TRUMP 767 MANAGEMENT, LLC, and PATRICK DUNLEAVY, Defendants.

Civil Action No. 03-CV-4475 (DGT) (JMA)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

2005 U.S. Dist. LEXIS 6835

March 22, 2005, Decided

**DISPOSITION:** [*1]

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, a moving company, brought suit against multiple defendants in businesses concerning real estate, moving, and office space, concerning their dealing with defendant union local, asserting claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq., and related claims. Defendants moved to dismiss for failure to state claims upon which relief can be granted under Fed R. Civ. P. 12(b)(6).

**OVERVIEW:** The moving company did not have a collective bargaining agreement with the union local. It asserted that it was unlawfully deprived of business or the right to bid jobs by the defendants, that either delivered or responded to the union local's threats of "union trouble" against doing business with the moving company. As a result, the moving company asserted that competition in the commercial moving market was limited, and the prices charged by other moving companies associated with the union local were artificially inflated. The moving company sought compensatory and punitive damages, costs of the suit, reasonable attorney's fees and injunctive relief. The court found that the moving company had stated a sufficient claim under RICO against the union and others involved in the moving business that profited from the threats. Three real estate firms were entitled to dismissal of the RICO claims, because it was not plead that those defendants obtained property as a result of their unlawful schemes. However, tortious interference with contract with regard to these three defendants as well as the others directly involved in the moving business.

**OUTCOME:** The three real estate companies' motions to dismiss were granted with regard to the RICO claims, and denied as to the tortious interference state law claims. The union's and moving consultants' motions to dismiss were denied in their entirety.

**CORE TERMS:** extortion, plead, Hobbs Act, telecommunication, consultant, pled, installer, tortious interference, bid, trouble, pattern of racketeering activity, Travel Act, affiliated, conspiracy, racketeering activity, state law, predicate, prospective economic advantage, racketeering, bidding process, competitor, benefitted, supplemental jurisdiction, proximate cause, extortionate, engaging, entity, hired, intentionally interfered, motions to dismiss

Page 1

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN1] A court's function in considering a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6) is to determine whether plaintiff's complaint is legally sufficient, not to determine whether plaintiff will ultimately prevail. A complaint should not be dismissed unless it is clear that no relief could be granted under any set of facts which could be proven consistent with the allegations. When evaluating whether plaintiff's complaint meets this standard, the court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff.

*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
*Criminal Law & Procedure > Accusatory Instruments > Complaints*
[HN2] Fed. R. Civ. P. 8 is an exceedingly lenient pleading standard.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > Elements*
[HN3] An employee of a corporation is a proper defendant under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq., if he or she allegedly conducted the corporation's affairs in a manner forbidden by RICO.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Claims > General Overview*
[HN4] See 18 U.S.C.S. § 1964(c).

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN5] 18 U.S.C.S. § 1964(c) requires a direct relation between an injury asserted and the injurious conduct alleged. The defendant's conduct must therefore be both the factual and proximate cause of the plaintiff's injury.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > Elements*
[HN6] Central to the notion of proximate cause is the idea that a person is not liable to all those who may have been injured by his conduct, but only those with respect to whom his acts were a substantial factor in the sequence of responsible causation, and whose injury was reasonably foreseeable or anticipated as a natural consequence. The reasonably foreseeable victims of a violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq., are the targets, competitors, and intended victims of the racketeering enterprise.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Civil Procedure > Justiciability > Standing > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN7] A business competitor may suffer an injury under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq., and, accordingly, has standing to sue under RICO. However, in all such cases, the court found that defendants' actions were anti-competitive, and the competitors could assert standing on the basis that they were foreseeable and anticipated victims of defendants' activities.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > Elements*
[HN8] See 18 U.S.C.S. § 1962(c).

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > Elements*
[HN9] See 18 U.S.C.S. § 1961 (4).

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN10] See 18 U.S.C.S. § 1961(3).

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN11] To state a civil claim based on a violation of 18 U.S.C.S. § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN12] A "pattern of racketeering activity" for purposes of a claim under 18 U.S.C.S. § 1962(c) consists of at least two predicate acts of racketeering activity committed in a ten year period. In order to adequately plead a pattern of racketeering activity under § 1962(c), the plaintiff must plead all of the elements of the predicate acts.

*Criminal Law & Procedure > Criminal Offenses > Racketeering > Hobbs Act > Elements*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN13] Violations of the Hobbs Act are considered racketeering activity for purposes of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq. 18 U.S.C.S. 1961(1)(B).

*Criminal Law & Procedure > Criminal Offenses > Crimes Against Persons > Robbery > Unarmed Robbery > Elements*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Extortion > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Hobbs Act > Elements*
[HN14] A person violates the Hobbs Act when he or she obstructs, delays, or affects commerce by robbery or extortion or attempts or conspires to do so. 18 U.S.C.S. 1951(a). Extortion is defined as the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under the color of official right. The Hobbs Act requires not only the deprivation of property, but also the acquisition of property. The perpetrator of the extortion must either have pursued or received something of value from plaintiffs that they could exercise, transfer, or sell.

*Civil Procedure > Justiciability > Standing > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Hobbs Act > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN15] A court need not determine whether a plaintiff has standing to assert a predicate act in order to decide whether the plaintiff has standing under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq. The question whether the predicate act's standing requirement applies to RICO predicate acts is still an open one. Instead, if the standing issue may be resolved on proximate cause grounds, the question whether the plaintiff must also satisfy the standing requirement of the underlying statutes whose violation constitute predicate acts need not be reached.

*Criminal Law & Procedure > Criminal Offenses > Racketeering > Extortion > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Hobbs Act > Elements*
[HN16] Extortion, as defined in the Hobbs Act, consists of the use of wrongful means to achieve a wrongful objective.

*Criminal Law & Procedure > Criminal Offenses > Racketeering > Hobbs Act > General Overview*
[HN17] Under the Hobbs Act, a defendant need not receive a direct benefit from extortionate activities.

*Criminal Law & Procedure > Criminal Offenses > Racketeering > Hobbs Act > General Overview*
[HN18] See 18 U.S.C.S. 1951(a).

Page 3

*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Travel Act > General Overview*
[HN19] Violations of the Travel Act, 18 U.S.C.S. § 1952, are considered racketeering activity for purposes of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq. 18 U.S.C.S. § 1961(1)(B).

*Criminal Law & Procedure > Criminal Offenses > Racketeering > Travel Act > Elements*
[HN20] A violation of the Travel Act, 18 U.S.C.S. § 1952, is established by showing (1) a person uses a facility in interstate commerce, such as the telephone, (2) with intent to facilitate the promotion, management, establishment, or carrying on, of any unlawful activity and (3) thereafter performs one additional act in furtherance of the specified unlawful activity. 18 U.S.C.S. § 1952(a).

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN21] To establish a "pattern of racketeering activity" for purposes of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq., a plaintiff must show that the predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity. The threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > Elements*
*Securities Law > Liability > RICO Actions > Elements of Proof > Enterprise*
[HN22] An enterprise is defined, for purposes of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq., as any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C.S. § 1961(4). The United States Supreme Court defines an "association-in-fact enterprise" as a group of persons associated together for a common purpose of engaging in a course of conduct. An "association-in-fact enterprise" may be proven by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit and must be separate from the pattern of racketeering activity.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > Elements*
[HN23] The United States Court of Appeals for the Second Circuit requires that a nexus exist between the enterprise element of 18 U.S.C.S. § 1961(4) and the racketeering activity that is being conducted. To constitute an enterprise, an association of entities must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN24] The United States Court of Appeals for the Second Circuit specifically states that an abstract analysis in a complaint of the structure of an enterprise as defined under 18 U.S.C.S. § 1961(4) is illogical and unnecessary.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Business & Corporate Law > Corporations > Shareholders > Actions Against Corporations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN25] A corporate employee who acts within the scope of his or her authority and allegedly conducts the corporation's affairs in a manner forbidden by the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq., is distinct from the corporation, a legally different entity with different rights and responsibilities due to its different legal status. Therefore, where individual defendants are inferred to have carried

out the alleged extortionate schemes, the individual defendants are properly alleged to be part of the RICO enterprise.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN26] To properly state a claim under 18 U.S.C.S. § 1962(c), a plaintiff must allege with sufficient particularity that a defendant was associated with an enterprise. The United States Supreme Court interprets § 1962(c)'s required element of "conduct" to include an element of direction, that the defendant had some part in directing the enterprise's affairs.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > Elements*
*Securities Law > Liability > RICO Actions > Elements of Proof > Conduct*
[HN27] The United States Supreme Court uses an "operation or management" test to determine whether a defendant had sufficient connection to an enterprise under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq., to warrant imposing liability under 18 U.S.C.S. § 1962(c). The operation-management test has been recognized as a very difficult test to satisfy. The test is, however, met where defendants have a managerial role in a RICO enterprise, and where defendants exercise broad discretion in carrying out the instructions of their principals.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > Elements*
[HN28] The United States Supreme Court holds that the word "participate" makes clear that liability under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq., is not limited to those with primary responsibility. RICO liability is also applicable to lower rung participants in the enterprise who are under the direction of upper management. However, the simple taking of directions and performance of tasks that are necessary or helpful to the enterprise, without more, is insufficient to bring a defendant within the scope of 18 U.S.C.S. § 1962(c). There is a difference between actual control over an enterprise and mere association with an enterprise; in that regard, the test for liability is not involvement but control.

*Criminal Law & Procedure > Criminal Offenses > Inchoate Crimes > Conspiracy > Elements*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN29] 18 U.S.C.S. § 1962(d) prohibits any person from conspiring to violate any of the provisions of 18 U.S.C.S. § 1962(a), (b) or (c). The requirements for a conspiracy charge under 18 U.S.C.S. § 1962(d) are that a conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that the conspirator adopt the goal of furthering or facilitating the criminal endeavor. In the civil context, a plaintiff must allege that the defendant knew about and agreed to facilitate the scheme.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Remedies*
*Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN30] The United States Supreme Court has yet to determine whether injunctive relief is available in a civil action brought under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
*Governments > Courts > Judicial Comity*
[HN31] Determining whether to exercise supplemental jurisdiction over a state law claim involves a three-step inquiry. First, under 28 U.S.C.S. § 1367(a), it must be determined whether the state law claim is within the supplemental jurisdiction of the court, because it forms part of the same case or controversy as the federal claims. If so, the second consideration is whether the case falls within one of the specified circumstances enumerated in 28 U.S.C.S. § 1367(c) that permit the court decline to exercise supplemental jurisdiction. Finally, if one of

those circumstances is present, it must be determined whether the values of economy, convenience, fairness and comity, support retaining jurisdiction or dismissing the case.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Claims > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
[HN32] Under 28 U.S.C.S. § 1367(c)(3), where a district court has dismissed all claims over which it has original jurisdiction, it may decline to exercise jurisdiction over a state law claim.

*Torts > Business Torts > Commercial Interference > Prospective Advantage > Elements*
[HN33] In order to make a claim for tortious interference with prospective economic advantage, a plaintiff must plead that (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.

*Contracts Law > Breach > General Overview*
*Contracts Law > Third Parties > General Overview*
*Torts > Business Torts > Commercial Interference > Contracts > Elements*
[HN34] To establish a claim for tortious interference with contract the plaintiff must plead that (1) a valid contract existed between the plaintiff and the third party; (2) defendant knew of the existence of the contract; (3) the defendant intentionally interfered with the contract; and (4) the third party breached the contract.

**COUNSEL:** For Advance Relocation & Storage, Inc., doing business as Advance Commercial Movers, Plaintiff: Jonathan D. Farrell, Rivkin Radler, LLP, Uniondale, NY.

For Local 814, Defendant: James Robert Grisi, Peter Herman, Cohen, Weiss and Simon, LLP, New York, NY.

For International Brotherhood of Electrical Workers, AFL-CIO, an unicorparated association, Peter Furtado, individually and as President of Local 814, George Daniello, individually and as Vice-President of Local 814, Francine Furtado, individually and as Secretary-Treasurer of Local 814, Carl Tuminello, individually and as Recording Secretary of Local 814, Defendants: Peter Herman, Cohen, Weiss and Simon, LLP, New York, NY.

For Advocat Consulting Group, Inc, Bruce Cohan, Thomas Nelson, Defendants: Thomas J. Luz, Pearce & Luz LLP, New York, NY.

For Cushman [*2] & Wakefield, Inc., Gerard Miller, Joseph Peters, Defendants: Michael Tuvin Mervis, Proskauer Rose, LLP, New York, NY.

For Globe Storage & Moving Co., Inc., Alan Fleisher, Defendants: Diana D. Parker, Law Office of Diana D. Parker, New York, NY.

For Henegan Construction Co., Inc., Maureen Henegan, Paulinus Brice, Defendants: Scott E. Kossove, L'Abbate, Balkan, Colavita & Contin, Garden City, NY.

For IPC Information Systems, Inc., Greg Kenepp, Defendants: James P. Booner, Shalov, Stone & Bonner LLP, New York, NY.

For Meehan Consulting Group, inc., Dennis Meehan, Defendants: Jeffrey R. Mann, Peter Yu, Jr., Greenberg Traurig, LLP, New York, NY.

For Patrick Dunleavy, Trump 767 Management, LLC, Defendants: Barry Michael Weiss, Lawrence S. Rosen, Rosen Weinhaus, LLP, New York, NY.

**JUDGES:** David G. Trager, United States District Judge.

**OPINIONBY:** David G. Trager

**OPINION:**

MEMORANDUM AND ORDER

TRAGER, J.

All twenty-two defendants n1 sued by plaintiff Advance Relocation & Storage Inc. have moved to dismiss plaintiff's complaint for failure to state claims upon which relief can be granted. See Fed R. Civ. P. 12(b)(6). In addition, [*3] Local 814 moves to dismiss plaintiff's state law claims on the ground that they are preempted by federal labor laws.

n1 For ease of reference, the defendants will be referred to as follows: Local 814, Peter Furtado, George Daniello, Francine Furtado and Carl Tuminello ("the Local 814 defendants"); The Advocate Consulting Group, Inc., Bruce Cohan and

Thomas Nelson ("the Advocate defendants"); Cushman & Wakefield, Inc., Gerard Miller and Joseph Peters ("the Cushman & Wakefield defendants"); Globe Storage & Moving Co., Inc. and Alan Fleisher ("the Globe defendants"); Henegan Construction Co., Inc., Maureen Henegan and Paulinus Brice ("the Henegan defendants"); IPC Information Systems, Inc. and Greg Kenepp ("the IPC/telecommunications installer defendants"); Meehan Consulting Group, Inc. and Dennis Meehan ("the Meehan Group defendants"); and Trump 767 Management, LLC and Patrick Dunleavy ("the Trump 767 defendants") (collectively "the defendants").

Plaintiff's complaint asserts civil RICO claims against each of the [*4] defendants, a claim under the Labor Management Relations Act against Local 814, a claim of tortious interference with prospective economic advantage against all defendants except Local 814 and a claim of tortious interference with existing contract against Peter Furtado, George Daniello, Francine Furtado, Carl Tuminello, the Globe defendants and the Cushman & Wakefield defendants. These claims are based on events occurring between February 2001 and January 2004. n2 Plaintiff seeks compensatory damages in excess of $ 21,577,383, punitive damages in the amount of two million dollars, costs of the suit and reasonable attorney's fees and injunctive relief against the defendants prohibiting them from engaging in their alleged racketeering activity and tortious conduct. See Amended Complaint ("Am. Comp.") at 32-34. For the reasons stated below, the Local 814, Advocate, Globe, Henegan and Meehan defendants' motions to dismiss are denied and the Cushman & Wakefield, IPC/telecommunications installer and Trump 767 motions to dismiss are denied in part and granted in part. n3

n2 Plaintiff's complaint details the defendants' alleged conspiracy during this period but alleges that the conspiracy has been ongoing for fifteen years. Am. Comp. P52.
[*5]

n3 In its opposition papers, plaintiff seeks leave to amend its complaint again in the event any of the defendants' motions are granted. This motion is denied without prejudice.

**Background**

The following facts are taken from plaintiff's amended complaint and are presumed to be true for the purposes of this motion. This case involves an alleged conspiracy by Local 814, move consulting companies (the Advocate, Henegan and Meehan defendants), a commercial moving company (the Globe defendants) and other entities related to the commercial moving industry (the Trump 767, IPC/telecommunications and Cushman & Wakefield defendants), to funnel commercial moving jobs to moving companies with collective bargaining agreements with defendant Local 814 ("Local 814-affiliated moving company.") Plaintiff is a commercial and household moving company in New York City and the tri-state area. Am. Comp. P42. Plaintiff, which does not have a collective bargaining agreement with Local 814, claims that all of the defendants threatened corporations looking to move their corporation's offices with costly delays resulting [*6] from violence perpetrated by Local 814 if a non-Local 814-affiliated moving company was used. Plaintiff alleges that these threats allowed Local 814-affiliated moving companies to charge higher rates, which, in turn, allowed the move consulting companies to charge their clients more. In addition, members of Local 814 received increased wages, which benefitted Local 814 in the form of increased dues and prestige.

To obtain a commercial moving job, plaintiff participates in a bidding process against other commercial movers. Id. P43. The bidding process is run either directly by the company wishing to move ("job owner") or by moving consultants n4 hired by the company that "evaluate the expense and requirements of the prospective move." See id. PP43-44. Moving consultant fees are usually based on a percentage of the total price of the move.

n4 In its complaint, plaintiff labels these moving consultants "Project Managers/Move Consultants/Owner's Representatives." For ease of reference, this opinion will refer to them simply as "moving consultants." These moving consultants include the Advocate, Henegan and Meehan defendants.

[*7]
In those cases where moving consultants are involved, bids are obtained through a multi-step process. First, a job owner or moving consultant will send out "Requests for Qualifications ('RFQs') which specify the moving services and qualifications necessary to complete the moving job." See id. P45. Based on each moving company's reply to the RFQ, the moving consultant will advise the job owner which companies are qualified for

the job and which to exclude from the bidding process altogether. Id. P46. The qualified companies are then invited to bid on the job. Id. P47. Bids are reviewed by the moving consultant, which then makes a recommendation to the job owner. Customarily, the company that "submits the lowest and most comprehensive bid will be awarded the job." See id. P48.

Plaintiff alleges that defendants have interfered with the bidding process by conspiring to extort and extorting job owners by threatening "union trouble" n5 if they accept bids from moving companies that have collective bargaining agreements with unions other than defendant Local 814. n6 Id. P53. Plaintiff asserts that moving consultants and/or moving companies asked to bid on a job would [*8] advise Local 814 of the existence of potential jobs. Id. P53. The moving companies, moving consultants and Local 814 would then use the "U.S. mail, telephones and/or other facilities of interstate commerce" to deliver threats of union trouble by Local 814 and/or other unions working in the area. See, e.g., id. PP53, 65, 66, 67. Defendants allegedly delivered the threats with the purpose of limiting competition in the commercial moving market and artificially inflating the prices charged by moving companies associated with Local 814, and they were successful in their goal. Id. P52.

---

n5 Plaintiff defines "union trouble" as "picketing, job actions involving other unions . . . working in the subject buildings, and/or other coercive and costly consequences." Am. Comp. P53. In the case of jobs where the IPC/telecommunications installer defendants were working in the building where the move was to take place, "union trouble" included slowdowns and disruptions by the union members working for the IPC/telecommunications defendants. Id. P68.

n6 In its complaint, Plaintiff details nine moving jobs where defendants carried out the alleged racketeering scheme. The following are the names of the jobs and the defendants involved:

(1) Deutsche Bank AG of New York: Local 814, Henegan, Advocate and IPC/telecommunications installer defendants. Am. Comp. PP59-70;
(2) Empire Blue Cross/Blue Shield- Job 1: Local 814 and Henegan defendants. Id. PP71-77;
(3) Empire Blue Cross/Blue Shield- Job 2: Local 814 and Henegan defendants. Id. PP78-83;
(4) McGraw-Hill Companies- Job 1: Local 814, Cushman & Wakefield and Meehan Group defendants. Id. PP84-92
(5) McGraw-Hill Companies- Job 2: Local 814, Cushman & Wakefield and Meehan Group Defendants. Id. PP93-95
(6) New York Board of Trade: Local 814, Cushman & Wakefield and Globe Defendants. Id. PP96-106;
(7) Reuters America, Inc.: Local 814 and Advocate Defendants. Id. PP107-114;
(8) Weil, Gotshal & Manges: Local 814, Advocate, Globe and Trump 767 Defendants. Id. PP115-122.
(9) American International Group: Local 814 and Meehan Defendants. Id. PP123-131.

---

[*9]

As a result of these threats, job owners feared damage to their property as well as disruption given the ability of Local 814 to slow or even stop a move in progress, potentially causing grave economic damage to a job owner. Id. P54. Under this threat, job owners would either exclude non-Local 814 moving companies from the bidding process altogether or accept a bid from a moving company that was a signatory to a collective bargaining agreement with Local 814 without regard to whether it was the best bid submitted. Id. P54. Plaintiff alleges that in the case of one moving job, the job owner, the New York Board of Trade, awarded the job to plaintiff and then rescinded the award and hired a Local 814-affiliated mover allegedly in response to defendants' threats. Id. P104.

Plaintiff claims that defendants have benefitted from their conspiracy and harmed plaintiff. Local 814 received "increased work for its members, increased dues and increased power and prestige" as a result of its participation in the conspiracy. Id. P55. The moving consultants benefitted by "gaining increased goodwill and enhanced reputation in the industry and pecuniary gains, all at the expense of [*10] Plaintiff . . . and . . . their moving job owner clients." Id. P56. The Globe defendants benefitted by receiving more moving jobs, profits, goodwill and less competition. Id. P57. The IPC/telecommunications

installer defendants similarly benefitted and also by gaining concessions from Local 3, its workers' union. Id. P58. Plaintiff does not specify in its complaint what benefit the Cushman & Wakefield and Trump 767 defendants received as a result of their participation in defendants' schemes. Defendants' gains came at the expense of plaintiff who suffered lost business and lost opportunities as a result of defendants' actions. Id. PP69, 76, 82, 91, 93, 105, 113, 121.

Plaintiff seeks compensatory damages against all defendants as well as treble damages pursuant to the RICO statute (18 U.S.C. § 1964(c)). The plaintiff seeks an order permanently enjoining all defendants from engaging in the pattern of racketeering activity described above. In addition, plaintiff seeks compensatory and punitive damages for tortious interference with prospective economic advantage as well as an injunction prohibiting defendants from engaging in the tortious conduct [*11] against all defendants except Local 814. Further, against the individual Local 814 defendants, the Globe defendants and the Cushman & Wakefield defendants, plaintiff seeks compensatory and punitive damages for tortious interference with existing contract with regard to one job which plaintiff was initially awarded, as well as injunctive relief. Against Local 814, plaintiff seeks compensatory damages for violations of the Labor Management Relations Act.

## Discussion

(1)

### Rule 12(b)(6) - Failure to State a RICO Claim

[HN1] A court's function in a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure is merely to determine whether plaintiff's complaint is legally sufficient, not to determine whether plaintiff will ultimately prevail. See Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980); Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). Therefore, a complaint should not be dismissed unless "it is clear that no relief could be granted under any set of facts which could be proven consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984). [*12] When evaluating whether plaintiff's complaint meets this standard, the court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff. See Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997).

Defendants argue plaintiff's RICO claims should be dismissed pursuant to Fed. R. Civ. P. 8(a) for failure to provide specific information such as the dates, times, locations and which individual defendants made which of the alleged threats. n7 However, this level of specificity is not needed. Id. [HN2] Rule 8 is an exceedingly lenient standard. McLaughlin v. Anderson, 962 F.2d 187, 194 (2d Cir. 1992). Plaintiff's complaint clearly lays out the defendants' schemes and alleges a sufficient legal theory to go forward. Plaintiff's remaining claims under the Labor Management Relations Act and its state law claims similarly meet the pleading requirements.

n7 Although the plaintiff does not specifically state so, it is inferred that the individual defendants Peter Furtado, George Danielo, Francine Furtado, Carl Tuminello, Bruce Cohan, Thomas Nelson, Gerald Miller, Joseph Peters, Alan Fleisher, Maureen Henegan, Paulinus Brice, Greg Kenepp, Dennis Meehan and Patrick Dunleavy performed the various tasks needed to carry out the schemes. Further, each of the individual defendants is properly included because [HN3] an employee of a corporation is a proper RICO defendant if he or she "allegedly conducted the corporation's affairs in a RICO-forbidden way." See Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163, 150 L. Ed. 2d 198, 121 S. Ct. 2087 (2001).

[*13]

(2)

### RICO and RICO Conspiracy

#### A. Standing

Defendants argue as an initial matter that plaintiff's civil RICO claim should be dismissed because plaintiff fails to plead that defendants' conduct proximately caused plaintiff's injuries. Under the RICO statute, [HN4] "any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor . . ." See 18 U.S.C. § 1964(c). [HN5] The Supreme Court has interpreted this provision to require a "direct relation between the injury asserted and the injurious conduct alleged." See Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268, 117 L. Ed. 2d 532, 112 S. Ct. 1311 (1992). The defendant's conduct must therefore be both the factual and proximate cause of the plaintiff's injury. Id.

[HN6] Central to the notion of proximate cause is the idea that a person is not liable to all those who may have been injured by his conduct, but only those with respect to whom his acts were a substantial factor in the sequence of responsible causation, and

whose injury was reasonably foreseeable or anticipated as a natural consequence.... . The reasonably foreseeable victims of a RICO violation [*14] are the targets, competitors, and intended victims of the racketeering enterprise.

See Baisch v. Gallina, 346 F.3d 366, 373-374 (2d Cir. 2003) (internal citations and quotations omitted) (emphasis added).

[HN7] The Second Circuit has repeatedly held that a competitor may suffer a RICO injury and, accordingly, has standing to sue under RICO. See Ideal Steel Supply Corp. v. Anza, 373 F.3d 251, 264 (2d Cir. 2004) (finding competitor plaintiff had standing where defendants' racketeering activity was the proximate cause of competitor plaintiff's injury); Baisch v. Gallina, 346 F.3d 366, 375 (2d Cir. 2003) (same); Commercial Cleaning Serv. v. Colin Serv. Sys., 271 F.3d 374, 385 (2d Cir. 2001) (same). In each of these cases, the competitor was not the direct target of the defendants' schemes and conspiracies. Ideal Steel Supply, 373 F.3d at 254-255; Baisch, 346 F.3d at 369-371; Commercial Cleaning, 271 F.3d at 378-379. However, in all of these cases, the court found that defendants' actions were anti-competitive and the competitors could assert standing on the basis [*15] that they were foreseeable and anticipated victims of defendants' activities.

Just as in the cases cited above, the defendants' alleged activities in this case were aimed at limiting competition. Moving companies without collective bargaining agreements with Local 814 were foreseeable and anticipated victims of the conspiracy even if they were not the victims of the predicate acts. Thus, plaintiff, which does not have a collective bargaining agreement with Local 814, was a foreseeable and anticipated, if not intended, victim. Plaintiff, therefore, has standing in this case.

### B. 18 U.S.C. § 1962(c)

[HN8] Section 1962(c) prohibits a "person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). [HN9] An enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity," 18 U.S.C. § 1961 [*16] (4), while [HN10] a RICO person is "any individual or entity capable of holding a legal or beneficial interest in property," 18 U.S.C. § 1961(3). [HN11] To state a civil claim based on a violation of § 1962(c), a plaintiff must allege (1) "conduct" (2) "of an enterprise" (3) "through a pattern" (4) "of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496, 87 L. Ed. 2d 346, 105 S. Ct. 3275 (1985).

### C. The Predicate Acts (Hobbs and Travel Act)

[HN12] A "pattern of racketeering activity" consists of "'at least two [predicate] acts of racketeering activity' committed in a ten year period." See First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 178 (2d Cir. 2004) (internal citations omitted). In order to adequately plead "a pattern of racketeering activity" under § 1962(c), the plaintiff must plead all of the elements of the predicate acts. W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch, 2004 U.S. Dist. LEXIS 19501, No. 03 Civ. 8606, 2004 WL 2187069 at *10 (S.D.N.Y Sept. 29, 2004).

#### 1. Hobbs Act

Plaintiffs allege that defendants' actions amounted to extortion under the Hobbs Act. Am. Comp. P136. [HN13] Hobbs Act violations are considered [*17] racketeering activity for purposes of RICO. 18 U.S.C. 1961(1)(B). Defendants contend that plaintiff has not adequately pled the elements of extortion under the Hobbs Act.

[HN14] A person violates the Hobbs Act provided he or she "obstructs, delays, or affects commerce . . . by robbery or extortion or attempts or conspires to do so." 18 U.S.C. 1951(a). Extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under the color of official right." Id. In Scheidler v. National Organization for Women, the Supreme Court held that the Hobbs Act required "not only the deprivation of property, but also the acquisition of property." Scheidler v. NOW, Inc., 537 U.S. 393, 404, 154 L. Ed. 2d 991, 123 S. Ct. 1057 (2003). Further, the perpetrator of the extortion must either have "pursued [or] received 'something of value from' plaintiffs that they could exercise, transfer, or sell." Id. at 405 (quoting United States v. Nardello, 393 U.S. 286, 290, 21 L. Ed. 2d 487, 89 S. Ct. 534 (1969)).

Defendants argue that plaintiff cannot assert that defendants' actions were extortion [*18] because defendants did not obtain or seek to obtain property from plaintiff, but rather from the job owners. Defendants' interpretation that, under Scheidler, a Hobbs Act violation is a predicate act only if the plaintiff is the extortion victim is misguided. In essence, defendants' argument is that plaintiff lacks standing under the Hobbs Act and, accordingly, cannot assert a RICO claim. However, [HN15] a court need not determine whether a plaintiff

has standing to assert a predicate act in order to decide whether the plaintiff has RICO standing. Powers v. British Vita, P.L.C., 57 F.3d 176, 188 (2d Cir. 1995) ("The question whether [the predicate act's] standing requirement applies to RICO predicate acts is still an open one.") (citing Holmes, 503 U.S. at 275). Instead, "if the standing issue may be resolved on proximate cause grounds, the question whether the plaintiff must also satisfy the standing requirement of the underlying statutes whose violation constitute predicate acts . . . need not be reached." Lerner v. Fleet Bank, N.A., 318 F.3d 113, 122 (2d Cir. 2003). Here, as concluded supra at section 2(A), plaintiff has standing [*19] on proximate cause grounds, therefore, there is no need to inquire into Hobbs Act or Travel Act standing as well.

In Brokerage Concepts, Inc. v. U.S. Healthcare Inc., the Third Circuit confronted a similar case to the one at hand. Brokerage Concepts v. U.S. Healthcare, Inc., 140 F. 3d 494 (3d Cir. 1998). In that case, the defendant, an HMO, forced a customer of the plaintiff, a healthcare consulting firm and third party administrator for health benefit self-insurers, to abandon its business with the plaintiff in order to be included in the defendant's HMO. Id. at 501-502. Plaintiff sued, alleging, among other things, that defendant's actions amounted to extortion under the Hobbs Act and, along with similar actions, amounted to a "pattern of racketeering" for RICO purposes. Id. at 502-503. The Third Circuit considered whether the defendant's actions towards the plaintiff's customer constituted extortion under the Hobbs Act -- not whether the plaintiff was the direct victim of defendant's extortion despite the fact that plaintiff did not have standing under the Hobbs Act. Id. at 523-525.

The dispositive issue [*20] here, as in Brokerage Concepts, is whether defendants' alleged actions towards the job owners constituted extortion under the Hobbs Act. [HN16] "Extortion, as defined in the Hobbs Act, consists of the use of wrongful means to achieve a wrongful objective." See U.S. v. Clemente, 640 F.2d 1069, 1076 (2d Cir. 1981) (citing United States v. Enmons, 410 U.S. 396, 35 L. Ed. 2d 379, 93 S. Ct. 1007 (1973)). Here, defendants used the wrongful means of fear of economic harm, that is, threatening costly delays if the job owner did not use a moving company with a collective bargaining agreement with Local 814 for the wrongful objective of gaining unearned profits from the job owners.

Although each of the defendants is alleged to have threatened harm, plaintiff does not properly plead that all defendants obtained property as a result of their unlawful schemes, as required under Scheidler. Plaintiff does allege that the moving companies and moving consultants received inflated profits and that Local 814 received increased work for its members as well as increased dues from the job owners as a result of the extortionate schemes. Insofar as Local 814 is concerned, this is sufficient. [HN17] Under the Hobbs Act, [*21] a defendant need not receive a direct benefit from extortionate activities. United States v. Green, 350 U.S. 415, 420, 100 L. Ed. 494, 76 S. Ct. 522 (1956). Even though Local 814 did not receive any money directly from the job owners, the benefit conferred upon them in the form of dues and increased work for its members is sufficient. Id. (finding that even though union did not receive direct payoffs from extortion victim, it nonetheless received benefit as a result of payment to workers for "imposed" labor).

With respect to the Cushman & Wakefield defendants, the IPC/telecommunications installer defendants and the Trump 767 defendants, however, plaintiff has not asserted any taking of property from the job owners in the form of kickbacks or other compensation. The Cushman & Wakefield and Trump 767 defendants' responsibilities were and are to ensure that their respective building operations run smoothly. Therefore, their motivation for telling tenants in their buildings to use Local 814-affiliated moving companies was evidently simply a desire not to experience any problems with the operations of their buildings in the form of picket lines or other disturbances. They had no interest in extorting money [*22] or receiving other benefits from the tenants in their buildings; quite the opposite, their goal was to serve their tenants by assuring that the tenants' moves would not suffer any costly delays. With regard to the IPC/telecommunications installer defendants, their motivation for preventing job owners from hiring non-Local 814 moving companies was that they did not want their business to suffer slowdowns or outright stoppages if their own workers decided to strike or refused to cross a Local 814 picket line. At most, the IPC/telecommunications installer defendants received concessions from their union in exchange for the IPC/telecommunications installer defendants' support of Local 814. However, the IPC/telecommunications installer defendants did not seek or receive any benefit from the job owners, an essential component of extortion under Scheidler.

The Cushman & Wakefield, Trump 767 and IPC/telecommunications installer defendants' activities were merely coercive, and not extortion under the Hobbs Act. Scheidler, 537 U.S. at 405-406. Thus, as to these three defendants, plaintiff cannot show a "pattern of racketeering" activity involving Hobbs Act violations. [*23]

Since plaintiff has alleged at least two instances of extortionate conduct by each of the remaining defendants, it has properly plead a "pattern of racketeering activity" as to them. With regard to the Advocate, Henegan and Meehan defendants, each was hired as a moving

Page 11

consultant on at least two jobs and informed Local 814 of the upcoming move jobs so that Local 814 could threaten the job owners with union trouble. In addition, each of these defendants threatened its clients with union trouble unless the job owners chose a Local 814-affiliated mover and pressured its clients into accepting bids from Local 814 movers regardless of price. The Advocate, Henegan and Meehan defendants thus received inflated fees from their clients.

As to the Local 814 defendants, plaintiff alleges that after being informed of potential move jobs, they threatened job owners with union trouble if the job owner did not hire a Local 814-affiliated moving company. Local 814 benefitted from its threats in the form of increased dues and increased work for its members. Similarly, the Globe defendants threatened job owners with union trouble and received increased work as a result. n8

---

n8 Although the Globe defendants claim that plaintiff has not pled two separate incidents of extortion, a careful reading of the complaint proves otherwise. The Globe defendants argue that because Globe was not awarded the New York Board of Trade job, they did not receive any benefit from the job owner, and, therefore, did not commit extortion. However, since an attempt to extort constitutes a predicate act, a defendant need not complete an act of extortion in order for it to be considered part of a "pattern of racketeering." McLaughlin v. Anderson, 962 F.2d 187, 194 (2d Cir. 1992). With regard to the Weil, Gotshal & Manges move job, defendant claims that plaintiff voluntarily withdrew the allegation of extortion of the job owner in a letter to the court dated September 28, 2004. However, this is inaccurate. Plaintiff merely withdrew the claim that the Globe defendants threatened the job owner directly, but the allegation that the Globe defendants informed Local 814 of the impending move job remains. As the complaint clearly pleads that the Globe defendants knew of the extortionate scheme, informing Local 814 of the existence of the job could constitute a furtherance of a conspiracy to extort, a violation of the Hobbs Act. 18 U.S.C. 1951(a) [HN18] ("Whosoever . . obstructs, delays, or affects commerce . . . by . . . extortion . . . or conspires to do so" commits a violation of the Hobbs Act.) Plaintiff thus properly pleads a second predicate act. 18 U.S.C. 1961(1)(B) (identifying Hobbs act violation as "racketeering activity").

[*24]

### 2. Travel Act

Plaintiffs allege that defendants' schemes also violate the Travel Act, 18 U.S.C. § 1952. Am. Comp. P137. [HN19] Like violations of the Hobbs Act, violations of the Travel Act are considered racketeering activity for RICO purposes. 18 U.S.C. § 1961(1)(B). Defendants contend that plaintiff has not adequately pled the elements of a Travel Act claim.

[HN20] A violation of the Travel Act is established by showing "(1) a person uses a facility in interstate commerce, such as the telephone, (2) with intent to 'facilitate the promotion, management, establishment, or carrying on, of any unlawful activity' and (3) thereafter performs one additional act in furtherance of the specified unlawful activity." U.S. v. Jenkins, 943 F.2d 167, 172 (2d Cir. 1991) (citing 18 U.S.C. § 1952(a)).

Plaintiff bases its allegation of a Travel Act violation on the defendants' alleged extortion of the job owners. Defendants argue that the plaintiff has not properly pled the first element of a Travel Act violation because all of the communications occurred within one state. However, this is an issue of fact for a jury [*25] to decide and is an inappropriate grounds for dismissal at this stage.

Defendants argue that since plaintiff has not properly pled extortion, it cannot show a Travel Act violation and thus has not pled a "pattern of racketeering activity." Because, as explained supra, section 2(C)(1), it has already been found that the plaintiff has properly plead extortion (except as to Cushman & Wakefield defendants, the IPC/telecommunications installer defendants and the Trump 767 Management), the alleged Travel Act violations constitute a "pattern of racketeering activity" as to all but these three defendants.

### 3. Continuity Requirement

[HN21] In order to establish a "pattern of racketeering activity" a plaintiff must show "that the predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity." See H.J. Inc. v. N.W. Bell Tel. Co., 492 U.S. 229, 240, 106 L. Ed. 2d 195, 109 S. Ct. 2893 (1989) (emphasis in original). "The threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." Id. at 242. Plaintiff's allegations clearly suggest that the defendants [*26] had a specific system in place whereby Local 814 was informed of the existence of moving jobs and the moving consultants, the Local 814 defendants and/or other defendants could then each threaten job owners. The consistency with which defendants allegedly executed their scheme demonstrates that extortion was defendants' regular way of doing business. U.S. v. Aulicino, 44 F.3d 1102, 1113 (2d Cir. 1995) ("There was nothing isolated

or sporadic about the acts of racketeering performed by the enterprise in the present case."). In addition, there was no "natural end" to defendants' schemes, as they could continue to extort job owners indefinitely. Id. Therefore, the plaintiff has properly plead continuity because it has shown that defendants were likely to continue their activities beyond the time period specifically discussed in the Amended Complaint.

Plaintiff has plead that each of the defendants, excluding the Cushman & Wakefield, IPC/telecommunications installer and Trump 767 defendants, participated in at least two incidents of extortion and/or Travel Act violations and that the defendants' unlawful activities were likely to continue. Therefore, the plaintiff [*27] has properly plead that the remaining defendants engaged in a "pattern of racketeering activity."

**D. Enterprise**

[HN22] An enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In United States v. Turkette, the Supreme Court defined an "association-in-fact enterprise" as "a group of persons associated together for a common purpose of engaging in a course of conduct." United States v. Turkette, 452 U.S. 576, 583, 69 L. Ed. 2d 246, 101 S. Ct. 2524 (1981). An "association-in-fact enterprise" may be proven by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit" and must be separate from the pattern of racketeering activity. Id.

In addition to the standards outlined in Turkette, [HN23] the Second Circuit "requires that a nexus exist between the enterprise and the racketeering activity that is being conducted." First Capital Asset Mgmt. v. Satinwood, Inc., 383 F.3d 159, 174 (2d Cir. 2004) (citations omitted). In order to constitute [*28] an enterprise, an association of entities must "share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." Id. (citations and internal quotations omitted).

Plaintiff pleads two different enterprises in its Amended Complaint. The first is the "Extortion Enterprise" which consisted of all of the defendants and whose purpose was to threaten job owners if they did not use a Local 814-affiliated moving company and obtain property from the job owners. n9 The second enterprise is the "Local 814 Enterprise" which consisted of all the defendants except Local 814.

n9 Because plaintiff has not properly pled that the IPC/telecommunications installer Defendants, the Cushman & Wakefield Defendants and the Trump 767 Defendants committed any predicate acts under the statute, the "Extortion Enterprise" is interpreted to only include the remaining defendants. In addition, the remainder of this opinion should be read to apply only to those remaining defendants.

[*29]

Plaintiffs have clearly alleged that the defendants involved in the "Extortion Enterprise" together formed an informal organization that banded together as a "continuing unit." Plaintiff has more than met this burden. Defendants clearly worked in tandem, each with its role and each with the purpose of charging job owners inflated prices and reducing competition. Further, each defendant was dependent on the other defendants' participation in the extortion of the job owners in order for the schemes to be carried out. Defendant's argument that plaintiff must plead facts to show the structure of the enterprise is not correct. In U.S. v. Bargaric, [HN24] the Second Circuit specifically stated that an "abstract analysis of [an enterprise's] structure" is illogical and unnecessary. United States v. Bagaric, 706 F.2d 42, 56 (2d Cir. 1983) overruled on other grounds by Nat'l Org. for Women v. Scheidler, 510 U.S. 249, 127 L. Ed. 2d 99, 114 S. Ct. 798 (1994). Therefore, plaintiff has adequately plead the existence of the "Extortion Enterprise."

Plaintiff has also adequately pled the "Local 814 Enterprise." Plaintiff alleges that all defendants except Local 814 directly or indirectly conducted the affairs [*30] of Local 814, co-opting it as an instrument to conduct its unlawful schemes. Plaintiff has adequately pled that defendants' schemes were centered around Local 814 and its abilities to threaten union action against the job owners.

The individual Local 814 defendants, Peter Furtado, George Daniello, Francine Furtado and Carl Tuminello argue that plaintiff cannot plead a RICO claim against Local 814's own employees or agents. However, in Cedric Kushner Promotions, Ltd. v. Don King, the Supreme Court held that [HN25] a corporate employee who "act[s] within the scope of his authority [and] allegedly conducts the corporation's affairs in a RICO-forbidden way . . . is distinct from the corporation, a legally different entity with different rights and responsibilities due to its different legal status." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163, 150 L. Ed. 2d 198, 121 S. Ct. 2087 (2001). Therefore, because the individual defendants are inferred to have carried out the alleged extortionate schemes, the individual Local 814

defendants are properly alleged as part of the "Local 814 Enterprise".

### 1. Operation or management of enterprises

Defendants argue that plaintiff has not sufficiently [*31] pled that defendants participated in the "operation or management" of either of the enterprises. [HN26] In order to properly state a claim under § 1962(c), "a plaintiff must allege with sufficient particularity that a defendant was associated with an enterprise." See Ray v. GMAC, 1995 U.S. Dist. LEXIS 21467, 1995 WL 151852, at *2 (E.D.N.Y. March 28, 1995) (citing Sedima, 473 U.S. at 496 (1985)) (emphasis added). The Supreme Court has interpreted § 1962(c)'s required element of "conduct" to "include an element of direction," that the defendant had "some part in directing the enterprise's affairs." See Reves v. Ernst & Young, 507 U.S. 170, 178-79, 122 L. Ed. 2d 525, 113 S. Ct. 1163 (1998). In Reves, [HN27] the Supreme Court adopted an "operation or management" test to determine whether a defendant had sufficient connection to the enterprise to warrant imposing liability. Id. The operation-management test has been recognized as "a very difficult test to satisfy." See Amsterdam Tobacco Inc. v. Philip Morris Inc., 107 F. Supp. 2d 210, 216 (S.D.N.Y. 2000); see also Redtail Leasing, Inc. v. Bellezza, 2001 U.S. Dist. LEXIS 10814, 2001 WL 863556, at *4 (S.D.N.Y. July 31, 2001). [*32] The test has, however, been met where defendants had a managerial role in a RICO enterprise, as well as where defendants "exercised broad discretion in carrying out the instructions of [their] principal[s]." United States v. Diaz, 176 F.3d 52, 92 (2d Cir. 1999).

[HN28] The Supreme Court has found that "the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise." Reves, 507 U.S. at 178-179. RICO liability is also applicable to "lower rung participants in the enterprise who are under the direction of upper management." Id. at 184. However, "the simple taking of directions and performance of tasks that are 'necessary or helpful' to the enterprise, without more, is insufficient to bring a defendant within the scope of § 1962(c)." United States v. Viola, 35 F.3d 37, 41 (2d Cir. 1994). There is a difference between actual control over an enterprise and mere association with an enterprise; in that regard, the test for liability "is not [*33] involvement but control." See Congregacion de la Mision Provincia de Venezuela v. Curi, 978 F. Supp. 435, 450 (E.D.N.Y. 1997) (citing Dept. of Econ. Dev. v. Arthur Anderson & Co., 924 F. Supp. 449, 466 (S.D.N.Y. 1996)).

Plaintiff's amended complaint sufficiently alleges operation and management. The moving consultant defendants exercised discretionary authority and directed the enterprises by informing the Local 814 defendants of move jobs when they were hired by job owners, threatening job owners with "union trouble" if they hired a non-Local 814 moving company and only sending out RFQs to or selecting the bids of Local 814-affiliated moving companies. The Local 814 defendants exercised discretionary authority by making the threats to the job owners after being informed by the moving consultants of upcoming move jobs. Finally, the moving company defendants also exercised discretion in making threats. Each of the defendants thus exercised control over the enterprises and controlled the enterprise by exercising discretion in its role in the scheme.

### E. RICO Conspiracy

[HN29] Subdivision (d) of 18 U.S.C. § 1962 prohibits "any [*34] person [from] conspiring to violate any of the provisions of subsection (a), (b) or (c) of this section." 18 U.S.C. § 1962(d). "The requirements for RICO's conspiracy charges under § 1962(d) are . . .: A 'conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor.' In the civil context, a plaintiff must allege that the defendant 'knew about and agreed to facilitate the scheme.'" Baisch v. Gallina, 346 F.3d 366, 376-77 (2d Cir. 2003) (quoting Salinas v. United States, 522 U.S. 52, 139 L. Ed. 2d 352, 118 S. Ct. 469 (1997)).

Plaintiff adequately alleges that the defendants knew of the extortion of job owners and agreed to carry out the schemes. Local 814 clearly knew of the extortion and carried out the scheme by making most of the threats of "union trouble." The moving consultants also knew of the schemes because they reported the existence of jobs to Local 814, threatened their clients with "union trouble" if a non-Local 814 moving company was used and directed the bidding process so that Local 814-affiliated [*35] companies would be awarded the jobs. The moving companies knew of the extortion of the job owners and the schemes because they made threats as well and were awarded the moving jobs. Plaintiff has thus properly pled a RICO conspiracy under § 1962(d).

### (3)

### Labor Management Relations Act Violations

The Local 814 defendants argue that plaintiff has not properly pled a violation of the Labor Management Relations Act ("LMRA"). The Local 814 defendants claim that plaintiff's complaint is too vague to allow for any response. However, as stated earlier, plaintiff satisfies the lenient pleading standards of Rule 8(a). And the attempt by the Local 814 defendants to resolve the issue by

submitting two letters sent to Deutsche Bank, a job owner, purportedly representing the extent of the threats, is unavailing. The extent of the threats and whether the letters constitute violations of the LMRA need not be resolved at this stage of the litigation since all allegations made by the plaintiff must be taken as true. Both also require determinations of fact that may be handled in summary judgment motions or trial.

(4)

**Injunctive Relief**

Plaintiff asks that defendants be enjoined [*36] from "engaging in the pattern of racketeering activity" and the alleged tortious conduct. Defendants argue that such an injunction would be overly broad. [HN30] The Supreme Court has yet to determine whether injunctive relief is available in a civil RICO action. Scheidler, 537 U.S. at 397. Regardless of whether an injunction, assuming it could be granted, would be appropriate in this case, the issue need not be resolved at this early stage of litigation.

(5)

**State Law Claims**

Plaintiff asserts that defendants' scheme also violated New York State laws of tortious interference with prospective economic advantage and tortious interference with existing contract. The first claim is asserted against all defendants except Local 814, while the latter is pressed only against Peter Furtado, George Daniello, Francine Furtado, Carl Tuminello, the Globe defendants and the Cushman & Wakefield defendants.

[HN31] Determining whether to exercise supplemental jurisdiction over a state law claim involves a three-step inquiry. See Bu v. Benenson, 181 F. Supp. 2d 247 (S.D.N.Y. 2001). First, under 28 U.S.C. § 1367(a), it must be determined whether [*37] the state law claim is within the supplemental jurisdiction of the court, because it forms "part of the same case or controversy" as the federal claims. See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998). If so, the second consideration is whether the case falls within one of the specified circumstances enumerated in § 1367(c) that permit the court decline to exercise supplemental jurisdiction. See id. Finally, if one of those circumstances is present, it must be determined whether the values of "economy, convenience, fairness and comity" laid out in United Mine Workers v. Gibbs, 383 U.S. 715, 726, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966), support retaining jurisdiction or dismissing the case. See id.

In this case, plaintiff's state law claims are within the mandatory supplemental jurisdiction because they form part of the same controversy as plaintiff's federal civil RICO claim which has been sustained as to the Local 814, Advocate Consulting, Globe, Henegan and Meehan defendants. [HN32] Under § 1367(c), where a district court "has dismissed all claims over which it has original jurisdiction," it may decline to exercise jurisdiction over [*38] a state law claim. 28 U.S.C. § 1367(c)(3). As to the IPC/telecommunications installer, Cushman & Wakefield and Trump 767 defendants, it has been determined that the RICO claims must be dismissed. However, the values laid out in Gibbs support retaining supplemental jurisdiction over the state law claims as to these three defendants since the RICO and state law claims as to all defendants arise out of the exact same facts.

[HN33] In order to make a claim for tortious interference with prospective economic advantage, a plaintiff must plead that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." See Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir. 2003) (citing Goldhirsh Group, Inc. v. Alpert, 107 F.3d 105 (2d Cir. 1997); Purgess v. Sharrock, 33 F.3d 134 (2d Cir. 1994)).

Plaintiff has sufficiently pled all of the elements of tortious interference with prospective economic [*39] advantage. First, the pleadings assert that plaintiff had either performed move jobs for the job owners previously or submitted bids to job owners. Second, the plaintiff pleads that defendants knew of its relationships with job owners because the moving consultants were told of the bids or earlier relationship and they then informed the other defendants. Third, plaintiffs have pled that the defendants used improper means by extorting the job owners. Finally, plaintiff sufficiently pleads that defendants' actions deprived plaintiff of opportunities to bid on or win jobs.

Although plaintiff is unable to assert a RICO claim against the Trump 767, IPC/telecommunication and Cushman & Wakefield defendants, it has properly pled tortious interference with contract with regard to these three defendants. Although plaintiff has not shown that these three defendants gained any financial benefit from their alleged involvement in the defendants' scheme, as required for RICO purposes, such a showing is unnecessary for purposes of this claim. Instead, plaintiff need only plead - which it has - that these three defendants intentionally interfered with plaintiff's business. Any benefit they may have [*40] received or wished to receive would only be evidence of motive.

[HN34] In order to establish a claim for tortious interference with contract the plaintiff must plead that (1) a valid contract existed between the plaintiff and the third party; (2) defendant knew of the existence of the contract; (3) the defendant intentionally interfered with the contract; and (4) the third party breached the contract. Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424, 668 N.E.2d 1370, 646 N.Y.S.2d 76, 82 (1996).

Plaintiff's complaint sufficiently states a claim for tortious interference with contract with regard to the New York Board of Trade ("NYBOT") moving job against each of the named defendants against which plaintiff properly asserts a RICO claim as well as the Cushman & Wakefield defendants. Plaintiff submitted a bid and was awarded a job to move NYBOT to its new offices. However, because of the defendants' alleged threats, the job award was rescinded and instead given to a Local-814 affiliated moving company. Plaintiff properly pleads that a contract existed between it and NYBOT and that the named defendants knew of the contract. Further, plaintiff claims that defendants threatened "union [*41] trouble" so that the contract with plaintiff would be breached and the job awarded to a Local 814 moving company. Finally, in its complaint, plaintiff states that NYBOT "rescinded," "cancelled" and "terminated" the contract. Although the defendants against whom plaintiff brings this claim argue that this is insufficient to plead the final element of tortious interference, whether the cancellation of the contract was wrongful is an issue of fact that cannot be resolved at this early stage of the litigation.

With regard to the Cushman & Wakefield defendants, while plaintiff does not properly plead a RICO violation, it has pled all of the elements of tortious interference with contract. The central deficiency in plaintiff's RICO pleading with regard to the Cushman & Wakefield defendants is that plaintiff has not shown that the Cushman & Wakefield defendants derived any benefit from their participation in defendants' scheme. However, as with the tortious interference with prospective economic advantage claim, this is unnecessary for a claim of tortious interference with contract. Plaintiff need only plead that defendants intentionally interfered with the contract. Evidence that defendants [*42] did or wished to receive a benefit from their actions is merely evidence of motive and not a required element of this claim.

Finally, Peter Furtado, George Daniello, Francine Furtado and Carl Tuminello claim that the state law claims can not be brought against them because they are pre-empted by the LMRA. Although the Second Circuit has not ruled on whether state law claims against private parties are pre-empted by federal labor laws, under San Diego Building Trades Council v. Garmon, 359 U.S. 236, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959), other courts have held that "preemption depends not on the identity of the defendant but, rather, on the nature of the claim asserted." See Cool Wind Ventilation Corp. v. Sheet Metal Workers Int'l Assoc., 139 F. Supp.2d 319, 329 (E.D.N.Y. 2001) (citing Richardson v. Kruchko & Fries, 966 F.2d 153, 156-57 (4th Cir. 1992); Lumber Prod. v. Indus. Workers Local 1054 v. West Coast Indus. Relations Assoc., Inc., 775 F.2d 1042, 1049 (9th Cir. 1985)). As there exist factual issues as to whether defendants' actions were either protected or prohibited by federal labor law and whether the facts underlying the state law claims [*43] are duplicative of those underlying the RICO claims, this issue cannot be determined at this early stage of the litigation.

**Conclusion**

Accordingly, the Local 814, the Advocate, the Globe, the Henegan and the Meehan Group defendants' motions to dismiss are denied in their entirety. The Cushman & Wakefield, IPC/telecommunications installer and Trump 767 defendants' motions to dismiss are granted with regard to plaintiff's RICO claims and denied with regard to the state law claims. Plaintiff's motion to replead is denied without prejudice.

Dated: Brooklyn, New York

March 22, 2005

SO ORDERED:

/s/

David G. Trager

United States District Judge