**Tab 2**

LEXSEE

CAROUSEL FOODS OF AMERICA, INC., Plaintiff, -against- ABRAMS & COMPANY, INC., BURTON ABRAMS, IVAN ABRAMS, GLENN FINKEL and RUSKIN MOSCAU FALTISCHEK, P.C., Defendants.

05 Civ. 8076 (CM)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2006 U.S. Dist. LEXIS 15425

February 17, 2006, Decided

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff company sued defendants, another company, its individual owners, and its law firm, for breach of contract and for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq. The court ordered plaintiff and its attorney to show cause why sanctions should not be imposed for naming defendant's law firm as a member of a RICO enterprise.

**OVERVIEW:** The law firm was named as a participant in a RICO enterprise based on a letter, which reiterated defendants' legal position. Plaintiff's attorney contended that the letter constituted RICO activity because the law firm's argument was "patently frivolous." The court rejected this claim, finding that plaintiff's attorney used the RICO statute inappropriately in filing this action, particularly against defendants' law firm. Defendants' lawyers did not violate RICO by advancing it as a defense in a breach of contract suit. There was no threat of continued criminal activity based on an alleged wrongful withholding of checks. The court concluded that by advancing a position that was unwarranted under existing law, plaintiff's attorney engaged in unethical behavior and that it could impose sanctions under its inherent power in both Fed. R. Civ. P. 11 and 28 U.S.C.S. § 1927. Accordingly, the court awarded sanctions against both plaintiff and its attorney in an amount to reimburse defendants for their legal fees expended in defense of this matter. However, as the record was inadequate to make this determination, the court directed defendants' attorneys to provide further information.

**OUTCOME:** The court awarded defendants sanctions in an amount to reimburse attorneys' fees incurred in this matter, 50 % against plaintiff and 50 % against its attorney personally. The court directed defendants to submit information to establish the number of hours involved on this matter, the hourly rates for counsel, and their credentials.

**CORE TERMS:** continuity, withhold, breach of contract, criminal activity, premature, withdraw, frivolous, Ruskin Law Firm, professional liability, motion to dismiss, question of fact, simple contract, inherent power, legal position, legal fees, participating, participated, termination, anticipated, scurrilous, conspiracy, asserting, ethical, lawsuit, cured, restraining order, contract language, arguable, happened, backward

**LexisNexis(R) Headnotes**

*Civil Procedure > Sanctions > Baseless Filings > General Overview*
*Civil Procedure > Sanctions > Misconduct & Unethical Behavior > General Overview*
[HN1] Even if sanctions are not proper under Fed. R. Civ. P. 11, a court is authorized under 18 U.S.C.S. § 1927 to sanction any attorney who so multiplies the proceedings in any case unreasonably and vexatiously. 28 U.S.C.S. § 1927. District courts are vested with an inherent power to impose sanctions. Sanctions pursuant to a court's inherent authority are proper where a party uses the judicial forum for improper purposes or abuses the judicial process. A court's inherent sanction power is broader than its power to impose sanctions under either Fed. R. Civ. P. 11 or 28 U.S.C.S. § 1927. Whereas courts are statutorily authorized to sanction attorneys, courts may sanction an attorney, a party, or both pursuant to its inherent power.

Page 1

COUNSEL: [*1] For Carousel Foods of America, Inc, Plaintiff: Randy S Steinhauser, Rappaport, Glass, Greene & Levine, LLP, Hauppauge, NY.

For Burton Abrams, Defendant: Douglas Jay Good, Ruskin, Moscou, Faltischek, P.C., Uniondale, NY.

JUDGES: COLLEEN McMAHON, U.S.D.J.

OPINIONBY: COLLEEN McMAHON

OPINION:

DECISION AND ORDER AWARDING SANCTIONS

McMahon, J.:

Defendants' motion for sanctions against plaintiff and plaintiff's counsel, Randy S. Steinhauser, Esq., is granted.

This decision supplements the Court's Order to Show Cause (Sanctions), dated January 18, 2006. The reader's familiarity with that Order is presumed.

I have reviewed the Declaration of Mr. Steinhauser, which was filed in response to the Order to Show Cause.

Attorney Steinhauser offers no satisfactory explanation for naming the Ruskin Law Firm as a participant in a RICO conspiracy and a member of a RICO enterprise. As set forth fully in the Order to Show Cause, the Ruskin Law Firm was named as a member of the "enterprise" on the ground that a letter sent by the firm to Attorney Steinhauser qualified as "participating in the operation or management of the enterprise itself," as required by Reves v. Ernst & Young, 507 U.S. 170, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993). [*2] At the time the letter was sent, Attorney Steinhauser, on behalf of plaintiff, had filed an action in the New York State Supreme Court against the defendants other than The Ruskin Firm. The Ruskin Firm was representing defendants in that action. The offending letter -- which was sent in response to a letter from Attorney Steinhauser -- says that it would be the position of defendants in that state court lawsuit that the loan documents between plaintiff and defendants permitted Abrams & Company to keep a sum of money on reserve, over and above a contract termination fee, on account of anticipated legal fees. Sending a letter -- in response to a letter from Attorney Steinhauser -- reiterating a party's legal position in a pending lawsuit is not an activity "in furtherance of a RICO enterprise," and no reasonable attorney could possibly have thought it was.

Attorney Steinhauser contends that the letter was RICO activity because The Ruskin Firm's argument is "patently frivolous;" he faults the firm for failing to specify in its letter to him what contract language supports its claim. In its reply affidavit, The Ruskin Firm points to what it deems the relevant contract language, and states [*3] that its argument is not frivolous, because Abrams & Company was contractually permitted to reserve funds to cover the anticipated cost of litigating the action that Attorney Steinhauser, acting on behalf of Carousel (and his brother) threatened to bring against defendants.

I have no intention of becoming involved in the merits of the dispute over whether the contract does or does not permit the retention of these funds. That issue is pending in the State Supreme Court, where it properly belongs.

However, I have no difficulty concluding that Attorney Steinhauser used the RICO statute inappropriately when he filed this action against all defendants, but particularly against The Ruskin Firm. Even if the lawyers' argument in the breach of contract action lacks merit, the lawyers did not commit a RICO violation by advancing it as a defense in a simple breach of contract suit arising out of Abrams & Company's ordinary business dealings. Neither would defendants' reading of the contract become "fraudulent," as Attorney Steinhauser alleges in his affidavit, if Carousel were to prevail on its breach of contract claim. Fraud involves misrepresentation, scienter and reliance by a victim. As [*4] the judge in the State Court action has already held, those elements are conspicuously absent in this simple contract dispute over who has the right to $ 62,000. At worst, defendants are guilty of a sharp business practice, and Attorney Steinhauser's repeated misuse of the loaded word "fraud" does not a fraud create. Indeed, it appears to this Court that Attorney Steinhauser does not know what fraud is -- as his reliance on the case of First Capital Asset Management v. Satinwood, 385 F.3d 159, 178 (2d Cir. 2004) demonstrates. n1

---

n1 As for the suggestion that this simple contract dispute is being investigated by prosecutors and that a criminal action may be filed -- it boggles the mind that anyone could file a criminal complaint concerning this matter. But Attorney Steinhauser has apparently advised The Ruskin Firm that a criminal complaint has been made.

---

Attorney Steinhauser cites United States v. Allen, 155 F. 3d 35, 42 (2d Cir.1998) to support his position that The Ruskin [*5] Firm could be found to have participated in a RICO enterprise by responding to his letter and asserting its litigation position. In Allen, the defendants admitted to participating in the predicate acts of bribery. Nevertheless, the Second Circuit reversed the district court's grant of summary judgment in favor of

plaintiffs on the issue of defendants' civil RICO liability because it found that a question of fact existed as to whether defendants "participated in the operation and management of the enterprise itself." Id. at 42-43. Allen is wholly inapposite to the case at bar, and thus unavailing to Mr. Steinhauser. Far from admitting participation in any predicate crime, The Ruskin Firm did nothing more than advance a legal argument on behalf of its client in response to Steinhauser's letter. Unlike the court in Allen, this court need not reach the question of whether The Ruskin Firm "conducted" the affairs of the enterprise within the meaning of the RICO statute, because there was no criminal activity and no enterprise. Steinhauser's assertion that, "It is a question of fact as to whether the RICO defendant operated or managed the affairs of the enterprise, [*6] " quoting Allen, begs the question. See, id. The allegation against The Ruskin Firm and its clients does not raise a question of fact because it is insufficient as a matter of law. Steinhauser's reliance on Allen demonstrates his utter lack of understanding of the law of RICO and of what it means to participate in a RICO enterprise.

Additionally, Steinhauser's reliance on Allen for the proposition that, "One might be liable under the operation or management test by 'knowingly implementing decisions, as well as by making them,'" is misleading, as Steinhauser takes this language out of context. Id. at 42. This is not the Second Circuit's language. Rather, the Second Circuit included it in a parenthetical explanation of a case from another Circuit. That case, moreover, was one of many in an extensive "string cite" designed to show that RICO jurisprudence is less than clear and consistent.

Attorney Steinhauser attempts to deal with the lack of RICO continuity by suggesting that there was "a threat of continued criminal activity upon which the Compl. [sic] was based." Because there was no criminal activity in the first place -- only a difference of opinion [*7] about what a contract permitted -- this argument is specious. To the extent that Attorney Steinhauser argues that the required continuity was satisfied by his client's "belief" that Abrams & Company would continue to withhold checks because "many checks had been withheld or converted," he gets continuity backward. Like defendants, I assume that Attorney Steinhauser is alleging open ended continuity. But he does not even begin to offer evidence tending to support an inference that defendants would wrongfully withhold checks (i.e., would withhold checks not pursuant to a restraining order) over a period that was longer than a few months. In fact, prior to the filing of the complaint, the defendants had remitted to plaintiff over $ 350,000 in factoring fees. They retained the contractually-specified termination fee and $ 62,000 as a legal expense reserve. Plaintiff's sole basis for alleging that defendants would have continued to withhold checks turns out to be predicated on checks that were subject to a restraining order and should not have been turned over to plaintiff. They can point to no wrongful conduct. The claim of open-ended continuity has no arguable merit.

Attorney Steinhauser [*8] has no real answer to the suggestion that he performed inadequate research into the facts before asserting, in the amended complaint, that The Ruskin Firm was holding checks as part of a RICO conspiracy, or that it was sharing in the profits from those checks. A simple inquiry to the maker of the checks would have revealed that the checks referenced in the amended complaint were not negotiated -- which means that, by definition, The Ruskin Firm could not have shared in their proceeds.

In sum, it is obvious what has happened here. A lawyer representing his own brother has availed himself of an arsenal of draconian weapons-- RICO allegations, fraud suits, criminal complaints-- in an effort to gain advantage for his brother in a simple business dispute. He set out to intimidate, rather than to vindicate an arguable legal position. And he did so without paying the slightest attention to whether it was appropriate to do so. He used a nuclear device to shoot at a fly. His behavior in this matter has been utterly unethical.

The consequences to anyone of being accused of racketeering are dire. As this court has long recognized, "The mere assertion of a RICO claim . . . has an almost inevitable [*9] stigmatizing effect on those named as defendants." See, e.g., Dubai Islamic Bank v. Citibank, N.A., 256 F.Supp.2d 158, 163 (S.D.N.Y. 2003) (quoting Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), aff'd 113 F.3d 1229 (2d Cir. 1997). The consequences to a law firm, in particular, are nothing short of disastrous. For one thing, it is frequently the case that law firms' professional liability policies will not cover the defense of RICO claims. I have no idea whether that is the case here; The Ruskin Firm did not attach its professional liability policy to its response to the Order to Show Cause. However, ethical lawyers have no business bringing RICO allegations against another lawyer as a tool to force settlement negotiations, or as a litigation strategy in a contested business matter. That is precisely what has happened in this case.

I reject the suggestion that Rule 11 sanctions cannot be imposed in this case because this court denied the original sanctions motion (without prejudice) as premature. Defendants served plaintiff's counsel with their original sanctions motion. Plaintiff did not withdraw his [*10] complaint within 21 days after that motion was served. From and after the 22nd day, Carousel and Attorney Steinhauser were subject to Rule 11 sanctions for

their scurrilous RICO allegations. Of course, plaintiff's counsel mooted the original sanctions motion by advising the court that he was going to file an amended complaint. Unfortunately, the amended complaint he filed (after this court had deemed the original sanctions motion premature) did not change even one of the scurrilous allegations that had prompted the service of the Rule 11 motion, and the triggering of the 21 day "safe harbor," which had long since expired. The ethical violation was not cured until January 9, 2006 -- well more than 21 days after defendants gave notice to plaintiff and Attorney Steinhauser that failure to withdraw the RICO claims would result in an application for sanctions. The RICO claim was withdrawn only after defendant was put to the further expense of making a second motion to dismiss -- and then not immediately, or even within 21 days, but only when "the day of reckoning" arrived -- the day when plaintiff and its counsel had to demonstrate the supposed merit of its claims. Even then, the notice [*11] of voluntary dismissal was electronically filed three days after plaintiff's response to the motion to dismiss was due, which means that, technically, plaintiff was in default.

This court *sua sponte* revived the sanctions motion that I had previously found to be premature. I did so after I reviewed the amended pleading and determined that Attorney Steinhauser had not cured his Rule 11 violation with that document. As far as this court is concerned, Attorney Steinhauser's failure to withdraw his RICO claim within 21 days of service of the original motion is sufficient to permit the invocation of Rule 11 by the Court. Indeed, "Courts in this Circuit have on numerous occasions imposed Rule 11 sanctions based upon the filing of a frivolous RICO action." Katzman, 167 F.R.D. at 660 (citations omitted).

However, [HN1] even if sanctions were not proper under Rule 11, the Court is authorized under Section 1927 of the Judicial Code to sanction any attorney ". . . who so multiplies the proceedings in any case unreasonably and vexatiously . . ." 28 U.S.C. § 1927. Moreover, district courts are vested with an inherent power to impose sanctions. Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). [*12] Sanctions pursuant to the court's inherent authority are proper where a party uses the judicial forum for improper purposes or abuses the judicial process. Id. The court's inherent sanction power is broader than its power to impose sanctions under either Rule 11 or 28 U.S.C. § 1927. Whereas courts are statutorily authorized to sanction attorneys, courts may sanction an attorney, a party, or both pursuant to its inherent power. Pac. Elec. Wire & Cable Co., Ltd. v. Set Top Int'l, Inc., 2005 U.S. Dist. LEXIS 17977, 2005 WL 2036033, *4 (S.D.N.Y. Aug. 23, 2005) (citing Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986)). The court's statutory and inherent powers authorize an award of sanctions in this case.

For the reasons stated above, sanctions are awarded in favor of defendants and against Carousel and Attorney Steinhauser.

**Amount of Sanctions**

Defendants have suggested that the proper amount of sanctions is the total amount of legal fees expended in the defense of this improperly commenced and maintained matter, which was $ 50,020.50, plus $ 782.50 in disbursements.

I agree that reimbursement of counsel fees is the appropriate sanction [*13] in this case. However, I cannot make an award on this record. The application submitted by Douglas J. Good does not include all of the information necessary to make a determination. I have not been provided with hourly rates for counsel (although I can compute them mathematically, working backward from the time records submitted) and I have not been provided with credentials for the various lawyers who were involved in the matter. Frankly, the hourly rates charged by the Ruskin Firm seem quite high; I am not aware that rates for Long Island law firms (and The Ruskin Firm was hired precisely because it was a Long Island firm, see Affirmation of Ralph Berman at P11) are so significantly higher than the rates for comparable Westchester firms, where senior partners charge between $ 300 and $ 375 per hour, and associates charge considerably less. It appears to me that Mr. Good is seeking compensation for his time at a rate of $ 435 per hour. I would need support for the use of that hourly rate, or I will have to reduce it.

Additionally, some of the time expended appears to me to be excessive. In particular, I do not see how defendants could have racked up $ 10,701.50 in fees for work done [*14] after the filing of the motion for sanctions up to the time of the filing of the amended complaint. I will accept a further submission from The Ruskin Firm on this issue. Any such a submission must be made by February 27, 2006.

The sanctions to be awarded will be awarded 50% against Carousel and 50% against Attorney Steinhauser personally.

Dated: February 17, 2006

COLLEEN McMAHON

U.S.D.J.