**Tab 4**

Case 7:04-cv-08223-KMK    Document 148-5    Filed 06/02/2006    Page 1 of 12

LEXSEE

GEORGE DALE, Commissioner of Insurance for the State of Mississippi, in his official capacity as Receiver of FRANKLIN PROTECTIVE LIFE INSURANCE COMPANY, ET AL., Plaintiffs, -against- BANQUE SCS ALLIANCE S.A. and JEANNE-MARIE WERY, Individually and in his capacity as Officer, Employee and Agent of Banque SCS Alliance S.A., Defendants.

02 Civ. 3592 (RCC)(KNF)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2005 U.S. Dist. LEXIS 20967

September 22, 2005, Decided
September 22, 2005, Filed

**PRIOR HISTORY:** Dale v. Banque SCS Alliance S.A., 2004 U.S. Dist. LEXIS 21544 (S.D.N.Y., Oct. 21, 2004)

**DISPOSITION:** [*1] Plaintiffs' first motion for reconsideration granted; plaintiffs' motion to amend the judgment denied as moot; plaintiffs' second motion for reconsideration denied as moot; defendants' motion to strike denied as moot; motion to dismiss the amended complaint deemed withdrawn as to Wery; motion to dismiss the amended complaint as to Banque SCS granted with respect to the 18 U.S.C. § 1962(c) claim as it relates to the association-in-fact and insurance company enterprises, the 18 U.S.C. § 1962(d) claim as it relates to the association-in-fact enterprise, the common law fraud claim, the aiding and abetting fraud claim, and civil conspiracy claim; motion to dismiss the amended complaint as to Banque SCS denied with respect to the 18 U.S.C. § 1962(c) claim as it relates to the Bloomfield enterprise, the 18 U.S.C. § 1962(d) claim as it relates to the Bloomfield and insurance company enterprises, and the negligent hiring claim; and Banque SCS's Rule 54(b) motion denied as moot.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, receivers of seven insurance companies, alleged violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq., common law fraud, and civil conspiracy against defendants, a corporation and its employee. The court granted an application to dismiss the action for lack of personal jurisdiction. The receivers moved to amend the judgment of dismissal and for reconsideration of the dismissal order.

**OVERVIEW:** The receivers alleged that from 1990 until 1999, the corporation and the employee assisted an individual in defrauding the insurance companies of over $ 200,000,000, thus rendering the insurance companies insolvent. The court found that it had personal jurisdiction over the employee since the employee consented to the personal jurisdiction of the court. The corporation's motion to dismiss the receivers' claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq., as it related to the Bloomfield enterprise was denied where (1) it could have reasonably been inferred from the receivers' allegations that the corporation and the employee structured the Bloomfield enterprise's ownership and that the sole director of Bloomfield was an employee or associate of the corporation that had a part in directing the affairs of the Bloomfield enterprise; (2) the receivers adequately alleged the existence of an enterprise since the Bloomfield enterprise consisted of a corporate entity; and (3) the receivers alleged adequately that the corporation knowingly caused a substantial risk of harm to the insurance companies by effecting acts of money laundering.

**OUTCOME:** The receivers' first motion for reconsideration was granted. The receivers' motion to amend the judgment and second motion for reconsideration and the corporation's motion to strike were denied as moot. The motion to dismiss the amended complaint as to the corporation was granted with respect to the RICO claim as it related to the association-in-fact and insurance company enterprises.

**CORE TERMS:** reconsideration, personal jurisdiction, association-in-fact, motion to dismiss, first motion,

Page 1

money laundering, RICO Act, moot, pertain, pattern of racketeering activity, alternative forum, civil conspiracy, misrepresentations, conspiracy claim, dismissal order, wire fraud, conveniens, predicate, correspondent, fraudulent, inferred, conceal, failure to state a claim, judgment of dismissal, aiding and abetting, common law fraud, motion to strike, motion to amend, quotation, negligent hiring

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
*Civil Procedure > Judgments > Relief From Judgment > Motions to Alter & Amend*
[HN1] U.S. Dist. Ct., S.D. N.Y., Civ. R. 6.3 provides, in pertinent part, that a notice of motion for reconsideration or reargument shall be served with a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked Thus, to be entitled to reargument and reconsideration, the movant must demonstrate that the court overlooked controlling decisions or factual matters that were put before it on the underlying motion. A motion for reconsideration is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved. The decision to grant or deny the motion is within the sound discretion of the court.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN2] The United States District Court for the Southern District of New York has held that a correspondent bank relationship between a foreign bank and a New York financial institution does not provide sufficient grounds to exercise personal jurisdiction over a foreign bank. The above-quoted statement pertains to an analysis of personal jurisdiction under N.Y. C.P.L.R. § 301, not N.Y. C.P.L.R. § 302(a)(1).

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
*Evidence > Procedural Considerations > Burdens of Proof > General Overview*
[HN3] The burden of proving jurisdiction is on the party asserting it. In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion. If the court relies solely on pleadings and affidavits, the plaintiff need only make a prima facie showing of personal jurisdiction. In determining whether the plaintiffs have made a prima facie showing of personal jurisdiction, the court will construe jurisdictional allegations liberally and take all uncontroverted factual allegations to be true.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN4] N.Y. C.P.L.R. § 302(a)(1) provides, in pertinent part, that a New York court may exercise personal jurisdiction over a non-domiciliary who in person or through an agent transacts any business within the state. N.Y. C.P.L.R. § 302(a)(1) extends the jurisdiction of New York state courts to any nonresident who has purposely availed itself of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws. A single transaction would be sufficient to fulfill that requirement, so long as the relevant cause of action also arises from that transaction.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN5] In a case where a foreign defendant maintained a bank account in New York for the purpose of receiving payments from the plaintiff in connection with a collection of currency exchange transactions out of which the parties' dispute arose, the New York Court of Appeals has determined that that satisfied the requirements of N.Y. C.P.L.R. § 302(a)(1).

*Civil Procedure > Venue > Forum Non Conveniens*
[HN6] A forum non conveniens motion is decided in two steps. First, the district court asks if there is an alternative forum that has jurisdiction to hear the case. In the second step of the inquiry, the district court determines the forum that will be most convenient and will best serve the ends of justice. The existence of an alternative forum is a prerequisite to dismissal on grounds of forum non conveniens.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*

*Civil Procedure > Dismissals > Involuntary Dismissals > Failures to State Claims*
[HN7] A court may dismiss an action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted only if it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief. In considering a motion pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff.

*Torts > Business Torts > Fraud & Misrepresentation > General Overview*
[HN8] Under New York law, a claim for fraud must assert that a representation of a material fact was made; that such representation was false, and known to be false by the party making it, or was recklessly made; that such representation was made to deceive and to induce the other party to act upon it; and that the party to whom the representation was made relied upon it to its injury or damage.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > Elements*
[HN9] See 18 U.S.C.S. § 1962(c).

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Claims > Fraud*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
*Securities Law > Liability > RICO Actions > Elements of Proof > Definition of Racketeering Activity*
[HN10] The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq., defines "racketeering activity" as, inter alia, any act which is indictable under any of the following provisions of 18 U.S.C.S. § 1341, relating to mail fraud, and 18 U.S.C.S. § 1343, relating to wire fraud. 18 U.S.C.S. § 1961(1). RICO also permits those injured by a violation of 18 U.S.C.S. § 1962 to commence a civil action in order to recover damages. 18 U.S.C.S. § 1964(c).

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Banking Law > Criminal Offenses > Money Laundering*
*Criminal Law & Procedure > Criminal Offenses > Miscellaneous Offenses > Money Laundering > Elements*
[HN11] In order to state a claim for money laundering, a plaintiff need only plead: (1) that the defendant conducted a financial transaction; (2) that the transaction in fact involved the proceeds of specified unlawful activity as defined in 18 U.S.C.S. § 1956(c)(7); (3) that the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and (4) that the defendant knew that the financial transaction was designed in whole or in part to conceal or disguise the source, ownership, control, etc., of those proceeds.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > Elements*
[HN12] In order to conduct or participate, directly or indirectly in the conduct of an enterprise's affairs, within the meaning of 18 U.S.C.S. § 1962(c), one need not exercise significant control over an enterprise, but one must engage in the operation or management of the enterprise and have some part in directing those affairs. Simple taking of directions and performance of tasks that are necessary or helpful to the enterprise, without more, is insufficient to bring a defendant within the scope of 18 U.S.C.S. § 1962(c). Courts in the Second Circuit typically apply those rules extremely rigorously. When a defendant's alleged provision of professional services to an enterprise is the basis for a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq., the deciding issue is whether the provision of those services allows the defendant to direct the affairs of the enterprise. Additionally, one is liable under RICO if he or she has discretionary authority in carrying out the instructions of the enterprise's principals.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > Elements*

[HN13] In order to violate 18 U.S.C.S. § 1962(c), a person must be employed by or associated with an enterprise. 18 U.S.C.S. § 1962(c). Under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq., an "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C.S. § 1961(4). The enterprise must be separate from the pattern of racketeering activity and distinct from the person conducting the affairs of the enterprise. For an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes. Moreover, an association-in-fact must have an existence separate from the pattern of racketeering activity.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > Elements*
*Securities Law > Liability > RICO Actions > Elements of Proof > Causation & Proximate Causation*
[HN14] A defendant is liable under 18 U.S.C.S. § 1964(c) for a violation of 18 U.S.C.S. § 1962 only if the defendant's injurious conduct is both the factual and the proximate cause of the injury alleged. In order to satisfy the proximate causation requirement, the alleged injury must be caused directly by the pattern of racketeering activity or by individual predicate acts under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq., and the alleged injury must be one that was reasonably foreseeable. However, a defendant need not intend any specific harm to any particular individual; it is sufficient that the defendant causes harm by the creation of substantial risk of harm.

*Criminal Law & Procedure > Criminal Offenses > Inchoate Crimes > Conspiracy > Elements*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
*Securities Law > Liability > RICO Actions > Elements of Proof > Pattern > Conspiracy*
[HN15] The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq., provides, in pertinent part: It shall be unlawful for any person to conspire to violate any of the provisions of 18 U.S.C.S. § 1962(a), (b), or (c). 18 U.S.C.S. § 1962(d). In order to be liable for a violation of 18 U.S.C.S. § 1962(d), a conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. In order for a plaintiff to recover under 18 U.S.C.S. § 1964(c) for a RICO conspiracy claim, the plaintiff's injury must be caused by an overt act of racketeering or an act that is otherwise wrongful under RICO.

*Torts > Procedure > Multiple Defendants > Concerted Action > Civil Conspiracy > Elements*
[HN16] No action for civil conspiracy is cognizable in law. A plaintiff first must plead specific wrongful acts which constitute an independent tort. New York law does not recognize torts of looting or laundering.

**COUNSEL:** For George Dale, Commissioner of Insurance for the state of Mississippi, in his official capacity as Receiver of Franklin [*2] Protective Life Insurance Company, George Dale, Commissioner of Insurance for the State of Mississippi, in his official capacity as receiver of Family Guaranty Life Insurance Company, George Dale, Commissioner of Insurance for the state of Mississippi, in his official capacity as receiver of First National Life Insurance Company, Scott B. Lakin, Director of the Department of Insurance for the state of Missouri, in his official capacity as receiver of International Financial Services Life Insurance Company, Carroll Fisher, Insurance Commissioner for the state of Oklahoma, in his official capacity as receiver of Farmers and Ranchers Life Insurance Company, Mike Pickens, Insurance Commissioner for the state of Arkansas, in his official capacity as receiver of Old Southwest Life Insurance Company, Plaintiffs: Douglas S. Skalka, Neubert, Pepe & Monteith, New Haven, CT; Greg Evan Haber, Volt Information Sciences, Inc, New York, NY; Steven J Cohen, Wachtel & Masyr, LLP, New York, NY.

For Anne B. Pope, Commissioner of Commerce and Insurance for the state of Tennessee, in her official capacity as receiver of Franklin American Life Insurance Company, Paula A. Flowers, Commissioner of Commerce [*3] and Insurance for the State of Tennessee, in her official capacity as Receiver of Franklin American Life Insurance Company, Plaintiff: Greg Evan Haber, Volt Information Sciences, Inc, New York, NY; Steven J Cohen, Wachtel & Masyr, LLP, New York, NY.

For Banque SCS Alliance, SA, Defendant: Michael George Davies, Vedder Price Kaufman & Kammholz P.C., New York, NY.

**JUDGES:** KEVIN NATHANIEL FOX, UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** KEVIN NATHANIEL FOX

**OPINION:**

**MEMORANDUM AND ORDER**

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

### I. INTRODUCTION

The plaintiffs in this action, the receivers of seven insurance companies ("insurance companies"), allege violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq., ("RICO" or "RICO Act"), common law fraud, civil conspiracy, and aiding and abetting fraud against defendants Banque SCS Alliance, S.A ("Banque SCS"), and Jeanne-Marie Wery ("Wery") (collectively, "defendants"). The plaintiffs also allege that Banque SCS was negligent in hiring, supervising and retaining Wery. Each of the insurance companies is domiciled in the state of which its receiver is an official. [*4] According to the amended complaint, Banque SCS is a Swiss corporation headquartered in Switzerland, and Wery, a citizen of Belgium, is an officer, employee and agent of Banque SCS. In a previous Memorandum and Order, the Court granted an application to dismiss the action for lack of personal jurisdiction ("dismissal order"). The Court found it unnecessary to reach the other grounds for dismissal raised by the defendants, namely forum non conveniens and failure to state a claim upon which relief may be granted. See Dale v. Banque SCS, 2004 U.S. Dist. LEXIS 21544, No. 02 Civ. 3592, 2004 WL 2389894, at *4 (S.D.N.Y. Oct. 22, 2004).

Before the Court are the plaintiffs' applications: (1) to amend the judgment of dismissal in the interest of justice, pursuant to Fed. R. Civ. P. 59(e), in light of new evidence pertaining to the court's personal jurisdiction over the defendants ("motion to amend the judgment"); (2) for reconsideration of the dismissal order, pursuant to Local Civil Rule 6.3 ("first motion for reconsideration"); and (3) for reconsideration of the dismissal order with respect to Wery, pursuant to Fed. R. Civ. P. 60(b) [*5] , in light of, inter alia, his subsequent consent to submit to the jurisdiction of this court ("second motion for reconsideration"). Also before the Court are Banque SCS's applications: (a) to strike affidavits submitted by the plaintiffs in support of the first motion for reconsideration ("motion to strike"); and (b) for certification of the previously-entered judgment of dismissal as a final judgment with respect to Banque SCS, pursuant to Fed. R. Civ. P. 54(b) ("Rule 54[b] motion"), if the second motion for reconsideration is not denied.

The Court will address the instant applications and, to the extent necessary and appropriate, the unaddressed grounds raised in support of the previous motion to dismiss.

### II. BACKGROUND AND FACTS

The plaintiffs allege that from 1990 until 1999, the defendants assisted Martin Frankel ("Frankel") in defrauding the insurance companies of over $ 200,000,000, thus rendering the insurance companies insolvent. According to the plaintiffs, Frankel devised and executed a scheme to acquire ownership of the insurance companies fraudulently, using funds taken from certain of the insurance companies to purchase [*6] others of the insurance companies. The plaintiffs contend that Frankel evaded detection by regulatory authorities and looted the assets of the insurance companies for his own benefit. The plaintiffs maintain that, with the assistance of the defendants and others, Frankel laundered the illegally obtained funds through a series of fraudulent wire transfers to and from, inter alia, Banque SCS's correspondent bank account in New York and other accounts it maintained outside New York. As part of this scheme, the defendants allegedly arranged, at Frankel's direction, the incorporation of Bloomfield Investments, Ltd. ("Bloomfield"), a British Virgin Islands corporation whose sole director was an employee or otherwise associated with Banque SCS. Accounts at Banque SCS allegedly were opened in Bloomfield's name and utilized in the laundering of insurance company funds. The plaintiffs allege further that Wery, at Frankel's direction, purchased travelers checks using insurance company funds Frankel obtained illegally, and had the checks shipped to Banque SCS in Switzerland and then to Frankel, and others associated with him, at various New York addresses.

The plaintiffs allege further that, [*7] with Wery's assistance, Frankel maintained accounts at Merrill Lynch and Bear Stearns under an alias. By the spring of 1998, Wery allegedly had learned that Frankel had gained control of a number of insurance companies and that at least some of the funds Frankel had deposited into Banque SCS accounts had been taken from the insurance companies. The plaintiffs maintain that the defendants helped Frankel conceal his identity on funds transfer documents, and, when regulatory authorities began to uncover Frankel's illegal activities, the defendants helped Frankel liquidate the stolen insurance company assets, so that he could continue to use them if Frankel determined to flee the United States. In light of the foregoing, the plaintiffs maintain that the defendants knew that the funds whose transfers they executed on Frankel's behalf were the product of illegal activities.

The plaintiffs allege that the defendants committed wire fraud, mail fraud and money laundering ("predicate

acts"), in order to further several enterprises, within the meaning of 18 U.S.C. § 1962(c), namely: (1) Bloomfield ("Bloomfield enterprise"); (2) each of the insurance companies ("insurance [*8] company enterprises"); and (3) a group of individuals and corporate entities that included Frankel, Wery, Banque SCS and numerous others who participated in Frankel's scheme ("association-in-fact enterprise").

### III. DISCUSSION

*First Motion for Reconsideration*

Local Civil Rule 6.3 of this court ("Local Rule 6.3") provides, in pertinent part, that [HN1] a notice of motion for reconsideration or reargument "shall be served with ... a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." "Thus, to be entitled to reargument and reconsideration, the movant must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion." Hamilton v. Garlock, Inc., 115 F. Supp. 2d 437, 438 (S.D.N.Y. 2000). A motion for reconsideration "is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved." In re Initial Pub. Offering Antitrust Litig., 2004 U.S. Dist. LEXIS 6248, No. 01 Civ. 2014, 2004 WL 789770, at *1 (S.D.N.Y. April 13, 2004) (quoting Yurman Design, Inc. v. Chaindom Enters., 2003 U.S. Dist. LEXIS 15064, No. 99 Civ. 9307, 2003 WL 22047849, [*9] at *1 [S.D.N.Y. Aug. 29, 2003]). The decision to grant or deny the motion is within the sound discretion of the court. See id.

In the dismissal order, the Court determined that the four correspondent bank accounts maintained by Banque SCS in New York did not subject the defendants to personal jurisdiction under New York Civil Procedure Law and Rules ("CPLR") § 302(a)(1) ("§ 302(a)(1)"). In so holding, the Court relied upon Semi Conductor Materials, Inc. v. Citibank Int'l PLC, 969 F. Supp. 243, 246 (S.D.N.Y. 1997), which stated that [HN2] "a correspondent bank relationship between a foreign bank and a New York financial institution does not provide sufficient grounds to exercise personal jurisdiction over a foreign bank." The plaintiffs contend, correctly, that the Court's reliance on Semi Conductor was misplaced, since the above-quoted statement pertained to an analysis of personal jurisdiction under CPLR § 301, not § 302(a)(1). Accordingly, it is appropriate for the Court to reconsider the points raised by the parties concerning the question of personal jurisdiction under § 302(a)(1).

[HN3] "The burden of proving jurisdiction is on the party asserting it." Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994). [*10] "In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). If the court relies solely on pleadings and affidavits, the plaintiff need only make a prima facie showing of personal jurisdiction. See Robinson, 21 F.3d at 507. In determining whether the plaintiffs have made a prima facie showing of personal jurisdiction, the court will construe jurisdictional allegations liberally and take all uncontroverted factual allegations to be true. Id.

CPLR § 302(a)(1) provides, in pertinent part, that [HN4] a New York court may exercise personal jurisdiction over a non-domiciliary "who in person or through an agent ... transacts any business within the state." CPLR 302(a)(1) "extends the jurisdiction of New York state courts to any nonresident who has 'purposely availed [itself] of the privilege of conducting activities within New York [*11] and thereby invoked the benefits and protections of its laws....'" Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 787 (2d Cir. 1999) (quoting Parke-Bernet Galleries v. Franklyn, 26 N.Y.2d 13, 18, 256 N.E.2d 506, 308 N.Y.S.2d 337, 341 [1970]). "[A] single transaction would be sufficient to fulfill this requirement, so long as the relevant cause of action also arises from that transaction." Id. (citations and quotation marks omitted).

With respect to Wery, the Court notes that subsequent to the briefing of the first motion for reconsideration, Wery sought to withdraw his motion to dismiss the complaint, including his objections concerning personal jurisdiction, and consented to the personal jurisdiction of this court. Accordingly, the Court deems the motion to dismiss withdrawn to the extent that it pertains to Wery, and finds that there is no basis upon which to dismiss the amended complaint, as it pertains to Wery, for lack of personal jurisdiction. Therefore, it is appropriate to grant the first motion for reconsideration as it pertains to Wery. As Wery's application to dismiss the complaint has been deemed withdrawn, there is no need [*12] to address the other, nonjurisdictional contentions raised therein, as they pertain to Wery.

With respect to Banque SCS, the Court finds that Indosuez Int'l Finance B.V. v. National Reserve Bank, 98 N.Y.2d 238, 774 N.E.2d 696, 746 N.Y.S.2d 631 (2002), a decision cited by the plaintiffs in opposition to the motion to dismiss, is controlling on the question of personal jurisdiction under CPLR § 302(a)(1). [HN5] In that case, a foreign defendant maintained a bank account in New York for the purpose of receiving payments from the plaintiff in connection with a collection of currency

exchange transactions out of which the parties' dispute arose. 98 N.Y.2d at 242, 746 N.Y.S. 2d at 633. The New York Court of Appeals determined that this satisfied the requirements of CPLR § 302(a)(1). 98 N.Y.2d at 246, 746 N.Y.S.2d at 636; see also, Monroy v. Citibank, N.A., 1985 U.S. Dist. LEXIS 18663, No. 84 Civ. 1040, 1985 WL 1768, *3-4 (S.D.N.Y. June 21, 1985). According to the amended complaint, Banque SCS maintains several correspondent bank accounts in New York that it used to effect a number of the funds transfers that are the subject of this action. Accordingly, the Court finds that the factual allegations contained in the [*13] amended complaint concerning Banque SCS state a prima facie case of personal jurisdiction, pursuant to CPLR § 302(a)(1). n1 Therefore, it is appropriate to grant the first motion for reconsideration as it pertains to Banque SCS.

---

n1 Banque SCS's argument to the contrary relies upon decisions of this court and a decision of an intermediate New York appellate court all of which predate Indosuez. See, e.g., Symenow v. State Street Bank and Trust Co., 244 A.D.2d 880, 665 N.Y.S.2d 141 (App. Div. 4th Dep't 1997). As the decisions of the New York Court of Appeals are authoritative with respect to questions of New York law, the Court finds Banque SCS's argument to be unpersuasive.

---

In light of the foregoing, the Court declines to address the other contentions raised in the first motion for reconsideration. As the Court has determined that it has personal jurisdiction over Banque SCS, the other grounds raised in the motion to dismiss will be addressed below, to the extent that they pertain to that [*14] defendant.

*Motion to Dismiss*

*A. Forum Non Conveniens*

[HN6] "A forum non conveniens motion is decided in two steps. First, the district court asks if there is an alternative forum that has jurisdiction to hear the case... [In] the second step of the inquiry, ... the district court determines the forum that will be most convenient and will best serve the ends of justice." Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 46 (2d Cir. 1996). The existence of an alternative forum is a prerequisite to dismissal on grounds of forum non conveniens. Schertenleib v. Traum, 589 F.2d 1156, 1159-60 (2d Cir. 1978).

Banque SCS contends that Switzerland would be an adequate alternative forum for this action. However, the Court has before it no information about Swiss jurisdictional law or its likely application to the claims asserted in the instant action. In support of its applications, Banque SCS cites Schertenleib, supra, 589 F.2d 1156, and ACLI Int'l Commodity Servs., Inc. v. Banque Populaire, 652 F. Supp. 1289 (S.D.N.Y. 1987), for the propositions that Switzerland is "generally" an adequate alternative forum and [*15] that Swiss courts would have jurisdiction to adjudicate fraud claims against Banque SCS, respectively. However, in each of those cases, the parties submitted expert testimony to the court that enabled it to determine the likely application of Swiss law to the facts presented by the action. No such expert testimony is available here. Moreover, even if Schertenleib and ACLI contained statements about Swiss law that were pertinent to the instant action, those decisions were issued 27 and 18 years ago, respectively. There is no basis upon which to determine whether conclusions about Swiss law reached nearly two or three decades ago remain accurate.

As the existence of an adequate alternative forum for the instant action has not been demonstrated, the motion to dismiss on the basis of forum non conveniens is without merit.

*B. Failure to State a Claim*

[HN7] A court may dismiss an action pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, only if "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to [*16] relief." Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997). In considering a motion pursuant to this Rule, "the court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." Id.

*1. Common Law Fraud; Aiding and Abetting Fraud*

[HN8] Under New York law, a claim for fraud "must assert that a representation of a material fact was made; that such representation was false, and known to be false by the party making it, or was recklessly made; that such representation was made to deceive and to induce the other party to act upon it; and that the party to whom the representation was made relied upon it to its injury or damage." Zaref v. Berk & Michaels, P.C., 192 A.D.2d 346, 348, 595 N.Y.S.2d 772, 774 (App. Div. 1st Dep't 1993) (internal quotation marks and citation omitted).

In the case at bar, the plaintiffs have alleged that Banque SCS made certain misrepresentations and that the plaintiffs suffered injuries as a result of those misrepresentations. However, it is not alleged that the misrepresentations were made to the plaintiffs, that [*17] the misrepresentations were intended to induce any action by

the plaintiffs, or that the plaintiffs relied upon the statements to the plaintiffs' detriment.

In light of the foregoing, the plaintiffs' state law claims for fraud and aiding and abetting fraud should be dismissed.

*2. Section 1962(c) claim*

The RICO Act provides, in pertinent part, that:

> [HN9] (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c) ("§ 1962(c)").

The RICO Act [HN10] defines "racketeering activity" as, inter alia, "any act which is indictable under any of the following provisions of title 18, United States Code: ... section 1341 (relating to mail fraud), [and] section 1343 (relating to wire fraud)...." 18 U.S.C. § 1961(1). The RICO Act also permits those injured by a violation of § 1962 to commence a civil action in order to recover damages. See [*18] 18 U.S.C. § 1964(c).

Although the elements of fraud under New York law, discussed above, are not coextensive with the elements of mail and wire fraud under 18 U.S.C. §§ 1341, 1343, the differences are not here material. As noted above, the plaintiffs have not alleged that fraudulent statements were made to the plaintiffs. Additionally, the plaintiffs have not alleged any injury to the other persons and entities to whom the allegedly fraudulent statements were made. Consequently, the only alleged predicate acts that need be considered in evaluating the sufficiency of the plaintiffs' RICO allegations are the allegations that Banque SCS engaged in money laundering, in violation of 18 U.S.C. § 1956(a)(1). n2

    n2 [HN11] In order to state a claim for money laundering, a plaintiff need only plead: "(1) that the defendant conducted a financial transaction; (2) that the transaction in fact involved the proceeds of specified unlawful activity as defined in [18 U.S.C.] § 1956(c)(7); (3) that the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and (4) that the defendant knew that the financial transaction was designed in whole or in part to conceal or disguise the source, ownership, control, etc., of those proceeds." United States v. Maher, 108 F.3d 1513, 1527-28 (2d Cir. 1997). The plaintiffs have met this standard.

[*19]

*i) Operation and Management of Enterprises*

[HN12] In order to conduct or participate, directly or indirectly in the conduct of an enterprise's affairs, within the meaning of 18 U.S.C. § 1962(c), one need not exercise "significant control" over an enterprise, but one must engage in the "operation or management" of the enterprise and "have some part in directing those affairs." Reves v. Ernst & Young, 507 U.S. 170, 179, 122 L. Ed. 2d 525, 113 S. Ct. 1163 & n.4, 507 U.S. 170, 122 L. Ed. 2d 525, 113 S. Ct. 1163, 1170 & n.4 (1993). "Simple taking of directions and performance of tasks that are necessary or helpful to the enterprise, without more, is insufficient to bring a defendant within the scope of § 1962(c)." United States v. Viola, 35 F.3d 37, 41 (2d Cir. 1994) (abrogated on other grounds by Salinas v. United States, 522 U.S. 52, 139 L. Ed. 2d 352, 118 S. Ct. 469 [1997]).

Courts in the Second Circuit typically apply the rule set forth in Reves extremely rigorously. United States Fire Ins. Co. v. United Limousine Service, Inc., 303 F. Supp. 2d 432, 451 (S.D.N.Y. 2004). When a defendant's alleged provision of professional services to an enterprise is the basis for a RICO [*20] claim, "the deciding issue ... is 'whether the provision of these services allows the defendant to direct the affairs of the enterprise.'" Id. at 452 (quoting Schmidt v. Fleet Bank, 16 F. Supp. 2d 340, 346 [S.D.N.Y.1998], and collecting cases); but see Bank Brussels Lambert v. Credit Lyonnais, 2000 U.S. Dist. LEXIS 16399, No. 93 Civ. 6876, 2000 WL 1694322, at *4 (S.D.N.Y. Nov. 13, 2000) (finding that plaintiffs' pleading "in substantially the language of the statute" satisfies Reves test). Additionally, "one is liable under RICO if he or she has discretionary authority in carrying out the instructions of" the enterprise's principals. Baisch v. Gallina, 346 F.3d 366, 376 (2d Cir. 2003) (internal quotation marks omitted).

The plaintiffs allege that Banque SCS and Wery "structured [Bloomfield's] ownership" and that the sole director of Bloomfield was an employee or associate of Banque SCS. Am. Compl. P40. Therefore, it can be inferred reasonably from the plaintiffs' allegations that Banque SCS had a part in directing the affairs of the Bloomfield enterprise.

The plaintiffs have also alleged that Banque SCS executed funds transfers and provided [*21] other bank-

ing services in order to assist Frankel, advised Frankel how to conceal the nature and source of his transactions and the spoils of those transactions, and made certain misrepresentations to other banks and participants in the alleged enterprises. According to the amended complaint, essentially all of these activities occurred at Frankel's direction or after consultation with Frankel. The amended complaint provides no basis upon which to infer that Banque SCS exercised discretion in performing these tasks or that these tasks otherwise allowed Banque SCS to direct any part of the affairs of the alleged association-in-fact enterprise or the insurance company enterprises.

Near the end of the amended complaint, the plaintiffs allege, without elaboration, that Banque SCS "knowingly conducted, participated in, controlled, manipulated or directed the enterprises' affairs." Am. Compl. P151. This allegation finds no support in the numerous allegations in the amended complaint concerning the activities allegedly undertaken by Banque SCS in connection with the RICO enterprises. In light of the great degree of detail with which those activities are set forth in the amended complaint [*22] -- which is approximately 75 pages in length -- it cannot be inferred that there is a basis in fact for the allegation that Banque SCS played a significant role in the direction of the insurance company and association-in-fact enterprises. With respect to those enterprises, the Court finds that the conduct allegedly undertaken by Banque SCS does not satisfy the test set forth in Reves.

*ii) RICO Enterprises*

[HN13] In order to violate 18 U.S.C. § 1962(c), a person must be "employed by or associated with" an enterprise. 18 U.S.C. § 1962(c). Under the RICO Act, an "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "The enterprise must be separate from the pattern of racketeering activity ... and distinct from the person conducting the affairs of the enterprise." First Capital Asset Management, Inc. v. Satinwood, 385 F.3d 159, 173 (2d Cir. 2004) (internal citations omitted). "For an association of individuals to constitute an enterprise, the [*23] individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." First Nationwide Bank v. Gelt Funding Corp., 820 F. Supp. 89, 98 (S.D.N.Y. 1993); see also Satinwood, 385 F.3d at 174. Moreover, an association-in-fact must have an existence "separate from the pattern of racketeering activity." First Capital, 385 F.3d at 173.

The Bloomfield enterprise consists of a corporate entity, Bloomfield Investments, Ltd. Therefore, the plaintiffs have alleged adequately the existence of that enterprise.

The plaintiffs do not allege that the association-in-fact enterprise had any purpose or activities other than the execution of Frankel's scheme. Consequently, the association-in-fact enterprise does not have any alleged existence apart from the pattern of racketeering activity alleged in the amended complaint, and it does not satisfy the requirement noted in First Capital.

Banque SCS contends that the insurance companies cannot be enterprises because they were also "victims" of Frankel's scheme. However, the plaintiffs have alleged that Frankel used each of the insurance [*24] companies to further his efforts to gain control of and "loot" the other insurance companies. Consequently, even if the target of a RICO enterprise cannot be the enterprise itself, it can reasonably be inferred from the plaintiffs' allegations that each insurance company enterprise had targets other than itself. Banque SCS also contends that the plaintiffs have not alleged that Banque SCS was "associated with" any of the insurance company enterprises, see 18 U.S.C. § 1962(c), since Banque SCS was not aware of their existence. However, the plaintiffs allege that Wery learned of the existence of the insurance companies at some point in 1998, and allege generally that Wery acted as an agent of Banque SCS. It can be inferred reasonably from such allegations that Banque SCS was aware of the insurance company enterprises, at least as of some time in 1998. Therefore, the premise of Banque SCS's contention on this point does not obtain, and so the contention is without merit.

*iii) Causation*

[HN14] A defendant is liable under 18 U.S.C. § 1964(c) for a violation of 18 U.S.C. § 1962 only if the defendant's "injurious conduct [*25] is both the factual and the proximate cause of the injury alleged." Lerner v. Fleet Bank, N.A., 318 F.3d 113, 120 (2d Cir. 2003). In order to satisfy the proximate causation requirement, the alleged injury must be caused directly by the pattern of racketeering activity or by individual RICO predicate acts, and the alleged injury must be one that was reasonably foreseeable. Baisch, 346 F.3d at 373. However, a defendant need not intend any "specific harm[] to any particular individual"; it is sufficient that the defendant "causes harm by the creation of substantial risk of harm." Id. at 376.

Banque SCS contends that the predicate acts alleged by the plaintiffs were not the factual or proximate cause of the plaintiffs' losses. Banque SCS's argument in support of that contention, however, is addressed principally to the mail and wire fraud allegations and not the money laundering allegations. The amended complaint alleges clearly that, without the numerous money laundering

services provided to Frankel by Banque SCS over a multi-year period, Frankel's scheme to remove funds from the insurance companies could not have proceeded without [*26] detection. Moreover, according to the plaintiffs, Banque SCS, through its agent, Wery, allegedly learned no later than 1998 that Frankel had gained control of several insurance companies. Additionally, a number of Frankel's alleged wire transfer instructions to Banque SCS were designed to conceal Frankel's activities and, thereby, to ensure that Frankel could continue to acquire insurance companies and remove funds from them improperly. Accordingly, the plaintiffs have alleged adequately that Banque SCS knowingly caused a substantial risk of harm to the insurance companies by effecting acts of money laundering.

In light of the foregoing, the 18 U.S.C. § 1962(c) claim should be dismissed with respect to the association-in-fact and insurance company enterprises.

### 3. Section 1962(d) Claim

The RICO Act provides, in pertinent part: [HN15] "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). In order to be liable for a violation of 18 U.S.C. § 1962(d), a "conspirator must intend to further an endeavor which, if completed, [*27] would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." Salinas, 522 U.S. at 65, 118 S. Ct. at 477. In order for a plaintiff to recover under 18 U.S.C. § 1964(c) for a RICO conspiracy claim, the plaintiff's injury must be caused by an overt act of racketeering or an act that is otherwise wrongful under RICO. See Beck v. Prupis, 529 U.S. 494, 503-505, 146 L. Ed. 2d 561, 120 S. Ct. 1608, 1615-1616 (2000).

Banque SCS contends that the RICO conspiracy claim is without merit, on the grounds that: (1) the RICO enterprise allegations and allegations of causation are inadequate; and (2) the plaintiffs do not allege adequately that Banque SCS agreed to assist Frankel by engaging in money laundering. The first contention is addressed above; the plaintiffs have alleged causation adequately and have alleged a RICO enterprise adequately with respect to the Bloomfield enterprise and the insurance company enterprises only. The second contention is without merit; the plaintiffs have alleged that Banque undertook the transactions in question at Frankel's [*28] direction, and Frankel consulted Banque SCS on several occasions about strategies for concealing the nature of various transactions.

Accordingly, the plaintiffs state a RICO conspiracy claim with respect to the insurance company enterprises and the Bloomfield enterprise, and have not stated a RICO conspiracy claim with respect to the association-in-fact enterprise.

### 4. Civil Conspiracy

[HN16] "No action for civil conspiracy is cognizable in law. A plaintiff first must plead specific wrongful acts which constitute an independent tort." Smukler v. 12 Lofts Realty, Inc., 156 A.D.2d 161, 163, 548 N.Y.S.2d 437, 439 (App. Div. 1st Dep't 1989). The plaintiffs allege that Banque SCS conspired with Frankel to "loot and launder the assets of the insurance companies." Am. Comp. P171. However, New York law does not recognize torts of "looting" or "laundering." Although the plaintiffs may have alleged tortious conduct by Frankel, they do not specify what tort(s) Banque SCS agreed with Frankel to commit. Accordingly, the amended complaint does not contain a short and plain statement of the plaintiffs' claim for civil conspiracy, see Fed. R. Civ. P. 8(a) [*29] , and the claim should be dismissed.

### 5. Negligent Hiring

The contention that the negligent hiring claim should be dismissed was premised upon the absence of a valid claim against Wery. As that premise does not obtain, the contention is without merit.

### Second Motion for Reconsideration/Motion to Strike/Motion to Amend Judgment/Rule 54(b) Motion

In light of the foregoing, the plaintiffs' motion to amend the judgment, the plaintiffs' second motion for reconsideration, and the defendants' motion to strike are moot. Consequently, Banque SCS's Rule 54(b) motion, which seeks relief alternative to the denial of the second motion for reconsideration, is also moot.

### IV. CONCLUSION

For the reasons set forth above: (1) The plaintiffs' first motion for reconsideration is granted; (2) the plaintiffs' motion to amend the judgment is denied as moot; (3) the plaintiffs' second motion for reconsideration is denied as moot; (4) the defendants' motion to strike is denied as moot; (5) the motion to dismiss the amended complaint is deemed withdrawn as to Wery; (6) the motion to dismiss the amended complaint as to Banque SCS is granted with respect to the 18 U.S.C. § 1962 [*30] (c) claim as it relates to the association-in-fact and insurance company enterprises, the 18 U.S.C. § 1962(d) claim as it relates to the association-in-fact enterprise, the common law fraud claim, the aiding and abetting fraud claim, and civil conspiracy claim; (7) the motion to dismiss the amended complaint as to Banque SCS is denied with respect to the 18 U.S.C. § 1962(c) claim as it relates to the Bloomfield enterprise, the 18 U.S.C. § 1962(d) claim as it relates to the Bloomfield and insurance company

enterprises, and the negligent hiring claim; and (8) Banque SCS's Rule 54(b) motion is denied as moot.

The Clerk of Court shall amend the previously entered judgment of dismissal to reflect that the amended complaint is dismissed solely as to Banque SCS, for failure to state a claim, with respect to the claims noted above.

Wery and Banque SCS shall serve and file their answers to the amended complaint within twenty days of the date of this order.

Dated: New York, New York

September 22, 2005

SO ORDERED:

KEVIN NATHANIEL FOX

UNITED STATES [*31] MAGISTRATE JUDGE