Tab 5

LEXSEE

EASTCHESTER REHABILITATION AND HEALTH CARE CENTER, L.L.C., EASTCHESTER REALTY ASSOCIATES, L.L.C., SPLIT ROCK REHABILITATION AND HEALTH CARE CENTER, L.L.C. and EASTROCK REALTY ASSOCIATES, L.L.C., Plaintiffs, -v- EASTCHESTER HEALTH CARE CENTER, L.L.C., SPLIT ROCK MULTICARE CENTER, L.L.C., EMZEL REALTY CORP., ZELMA PROPERTIES, INC. and ABE ZELMANOWICZ, Defendants.

No. 03 Civ. 7786 (LTS)(FM)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2005 U.S. Dist. LEXIS 6593

April 12, 2005, Decided
April 15, 2005, Filed

**DISPOSITION:** [*1] Defendants' motion to dismiss Plaintiffs' RICO claims pursuant to Rules 9(b) and 12(b)(6) of Federal Rules of Civil Procedure granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, four limited liability companies, alleged they were fraudulently induced to purchase two nursing facilities at an inflated price. Plaintiffs asserted claims against defendants, two companies, two corporations, and an individual, under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq., and under state law for common law fraud and breach of contract. Defendants moved to dismiss.

**OVERVIEW:** Defendants argued, inter alia, that plaintiffs failed to plead their RICO claims with the requisite particularity and failed to depict a pattern of racketeering activity. The predicate acts of mail and wire fraud on which plaintiffs based their claim included defendants' transmission of a series of allegedly false reimbursement claims to Medicaid and Medicare (false filings) and a number of communications in which defendants allegedly made material misrepresentations to plaintiffs regarding the facilities' financial status and operating conditions. Plaintiffs' failure to specify the identity and content of the false filings precluded the use of those filings to demonstrate the existence of a pattern of racketeering. Because the alleged fraudulent statements, other than the false filings, on which plaintiffs relied were all made within a relatively brief period of time, plaintiffs' failure to proffer sufficient allegations regarding the false filings was fatal to plaintiffs' ability to allege either a "closed-ended" or an "open-ended" pattern of racketeering activity. As plaintiffs failed to assert a substantive RICO claim, their claims under 18 U.S.C.S. § 1962(d) were dismissed.

**OUTCOME:** Defendants' motion to dismiss plaintiffs' RICO claims was granted. The court declined to exercise supplemental jurisdiction over the remaining state law claims.

**CORE TERMS:** predicate, continuity, particularity, open-ended, closed-ended, plead, mailing, pattern of racketeering activity, wire fraud, state law, mail, reimbursement, patient, racketeering activity, criminal activity, inherently, racketeering, pleaded, nursing, supplemental jurisdiction, fraudulent scheme, fraudulent, ventilator, Federal Rules of Civil Procedure, motion to dismiss, criminal conduct, real estate, constituting, furtherance, terminable

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
[HN1] Fed. R. Civ. P. 9(b) provides that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally. Rule 9(b) requires the com-

plaint to 1) specify the statements it claims were false or misleading, 2) give particulars as to the respect in which plaintiffs contend the statements were fraudulent, 3) state when and where the statements were made, and 4) identify those responsible for the statements. Plaintiffs must also allege facts that give rise to a strong inference of fraudulent intent. Furthermore, fraud must be alleged with particularity as to each defendant.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Dismissals > Involuntary Dismissals > Failures to State Claims*
[HN2] In reviewing a motion to dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, a court must accept as true the facts alleged in the complaint and draw all inferences in favor of the non-moving party. A court should dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. When deciding a motion to dismiss under Rule 12(b)(6), the court generally limits itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN3] In order to plead properly a violation of the substantive Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq., provisions, 18 U.S.C.S. § 1962(a)-(c), plaintiffs must allege (1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce. Under § 1962(d), plaintiffs must demonstrate that the defendants conspired to violate one or more of the substantive RICO provisions.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*

*Securities Law > Liability > RICO Actions > Heightened Pleading Requirements*
[HN4] Fed. R. Civ. P. 9(b) applies to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq., claims based on allegations of fraud.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Fraud > Wire Fraud > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN5] Mail and wire fraud constitute predicate illegal acts under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq. 18 U.S.C.S. § 1961(1). The mail and wire fraud statutes are similar in all material respects, each requiring two essential elements: (1) a "scheme or artifice to defraud" and (2) a mailing or transmission in furtherance of the scheme. 18 U.S.C.S. § § 1341 and 1343. Allegations regarding the "scheme or artifice to defraud" must satisfy the particularity requirements of Fed. R. Civ. P. 9(b), as must plaintiffs' allegations concerning any specific mailing that they claim was fraudulent.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
*Securities Law > Liability > RICO Actions > Elements of Proof > Pattern > Fraud as Predicate Act*
[HN6] In the context of a the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq., claim, plaintiffs' allegations concerning non-fraudulent mailings used merely to establish the jurisdictional element of the predicate acts need not be pleaded with particularity, as long as their purpose in light of the fraudulent scheme that is pleaded with particularity can be reasonably inferred from the complaint.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*

Page 2

[HN7] In the context of a the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq., claim, Fed. R. Civ. P. 9(b) does not require them to plead detailed evidentiary matter. Rule 9(b) must be harmonized with the general directives of Fed. R. Civ. P. 8, which requires that the pleadings contain a short and plain statement of the claim, Fed. R. Civ. P. 8(a)(2), and that each averment be simple, concise, and direct, Fed. R. Civ. P. 8(e)(1). However, under Fed. R. Civ. P. 9(b), plaintiffs are still required to plead facts with particularity in support of their general fraud allegations.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > General Overview*
[HN8] Fed. R. Civ. P. 9(b) is not satisfied by a complaint in which defendants are clumped together in vague allegations.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Crimes Against Persons > Coercion > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN9] Proving a "pattern of racketeering activity" requires at the very least a showing that defendants committed two acts of racketeering activity within a ten-year period. 18 U.S.C.S. § 1961(5). Besides this baseline showing, plaintiffs must demonstrate that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity. In order to establish the requisite threat of continuing criminal activity, plaintiffs must show either a "closed-ended" or an "open-ended" pattern of racketeering activity.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
*Securities Law > Liability > RICO Actions > Elements of Proof > Pattern > Closed & Open Ended Continuity*
[HN10] In the context of a the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq., claim, closed-ended continuity is demonstrated by showing a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months do not satisfy the requirement. Closed-ended continuity is primarily a temporal concept, although other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists.

*Criminal Law & Procedure > Criminal Offenses > Fraud > Mail Fraud > Penalties*
*Criminal Law & Procedure > Criminal Offenses > Fraud > Wire Fraud > Penalties*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN11] In the context of a the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq., claim, the general rule is that a period of at least two years is required to establish a closed-ended pattern.

*Criminal Law & Procedure > Criminal Offenses > Crimes Against Persons > Coercion > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
*Securities Law > Liability > RICO Actions > Elements of Proof > Pattern > Closed & Open Ended Continuity*
[HN12] In the context of a the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq., a claim of open-ended continuity is made out on the basis of past criminal conduct coupled with a threat of future criminal conduct. The nature of the RICO enterprise and of the predicate acts is relevant to determining whether open-ended continuity exists. Inherently unlawful acts conducted for an enterprise in the business of racketeering activity constitute a threat of future criminal activity and are thus sufficient to form the basis of a claim of open-ended continuity. However, open-ended continuity may also be established with respect to an enterprise that primarily conducts a legitimate business where the predicate acts are part of the regular way of operating the business and the acts imply a threat of future criminal conduct. Finally, a scheme that is "inherently terminable" creates no threat of continued criminal conduct and thus cannot support a finding of open-ended continuity.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*

*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
*Securities Law > Liability > RICO Actions > Elements of Proof > Pattern > Conspiracy*
[HN13] 18 U.S.C.S. § 1962(d) prohibits any person from conspiring to violate any of the substantive provisions of § 1962(a)-(c). To state a claim thereunder, a plaintiff must allege that each defendant, by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq., enterprise.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
*Securities Law > Liability > RICO Actions > Elements of Proof > Pattern > Conspiracy*
[HN14] There can be no Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq., conspiracy without a substantive RICO violation. Thus, if the prior claims do not state a cause of action for substantive violations of RICO, then a RICO conspiracy claim necessarily does not set forth a conspiracy to commit such violations.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > General Overview*
*Civil Procedure > Dismissals > General Overview*
[HN15] Federal courts should ordinarily decline to exercise supplemental jurisdiction over state claims when the federal claims have been dismissed before trial.

**COUNSEL:** JEFFREY L. ROSENBERG & ASSOCIATES, L.L.C., By: Jeffrey L. Rosenberg, Esq., New York, New York, Attorneys for Plaintiffs.

THE LAW OFFICES OF DAVID B. BERNFELD, By: David B. Bernfeld, Esq., New York, New York; DEMATTEO BERNFELD, LLP, By: Jeffrey L. Bernfeld, Esq., New York, New York, Attorneys for Defendants.

**JUDGES:** LAURA TAYLOR SWAIN, United States District Judge.

**OPINIONBY:** LAURA TAYLOR SWAIN

**OPINION:**

OPINION AND ORDER

LAURA TAYLOR SWAIN, United States District Judge

This litigation arises from the purchase of two nursing facilities and the real estate on which the facilities are located. The Complaint in this action asserts that Eastchester Rehabilitation and Health Care Center, L.L.C., Eastchester Realty Associates, L.L.C., Split Rock Rehabilitation and Health Care Center, L.L.C., and Eastrock Realty Associates, L.L.C. (referred to herein collectively as "Plaintiffs") were fraudulently induced to purchase the nursing facilities and real estate at an inflated price, in excess of the actual fair market value. [*2] Plaintiffs have asserted claims under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., and under state law for common law fraud and breach of contract. Eastchester Health Care Center, L.L.C. ("Eastchester"), Split Rock Multicare Center, L.L.C. ("Split Rock"), Emzel Realty Corp. ("Emzel Realty"), Zelma Properties, Inc. ("Zelma Properties"), and individual defendant Abe Zelmanowicz ("Defendant Zelmanowicz") (together, "Defendants") have moved pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure to dismiss the Complaint. For the reasons set forth below, Defendants' motion is granted.

**BACKGROUND** n1

n1 The following facts are taken from the Complaint and Plaintiffs' RICO statement, the allegations of which are accepted as true for purposes of this motion.

In June 2001, Plaintiffs' organizers entered into an agreement to purchase two nursing facilities (the "Facilities") [*3] from Defendants along with the property on which each of the Facilities was located. (Complaint, P16.) Plaintiffs are four limited liability companies created pursuant to the purchase agreement for the purpose of owning and operating the two Facilities and the two associated parcels of land. (Id., P21.) Defendants are four legal entities that formerly owned and operated these assets and an individual, Defendant Zelmanowicz, who is and was the president of each of the Defendant entities. (Id., PP6-10.)

Through a fraudulent scheme, Defendants induced Plaintiffs to purchase the assets for about $

16,000,000.00 above their fair market value. The key element of the scheme involved Defendants' repeated submissions of false patient data to Medicaid and Medicare (the "False Filings") in order to receive excess reimbursement payments and an inflated income stream that was used to misrepresent the financial status and operating conditions of the Facilities in connection with Defendants' efforts to sell the Facilities. (Id., P12.) Plaintiffs purchased the assets for approximately $ 37,000,000.00. (Id., P19.)

The scheme occurred from about 1997 onward and involved false claims [*4] regarding the Facilities' "Bed Hold Days" and "Vent Bed Patients." Defendant Eastchester and Defendant Split Rock (the "Prior Operators") misrepresented the occupancy rates of their respective facilities and filed claims for ineligible patients in order to receive excess "Bed Hold" payments. Similarly, the Prior Operators filed claims that included inaccurate census data regarding certain ventilator beds and ventilator patients in order to receive excess "Vent Bed" payments. Defendant Zelmanowicz knew of these intentional false filings. (Id., P35(a).)

The False Filings continued from about the middle of 1999 through September 2002, the period for which Plaintiffs had access to Defendants' financial statements. (Id.) The resulting excess reimbursements enabled Defendants to overstate their income and understate their operating losses, and thereby grossly to inflate the apparent value of the Facilities. (Id., P12.) Defendants failed to disclose the true nature of the Facilities' losses to Plaintiffs. These non-disclosures also created the false appearance that the Facilities would be able to maintain a certain average occupancy rate. Had that expected occupancy rate been [*5] achieved, Plaintiffs would have been eligible to obtain certain reimbursements from Medicaid that would have increased the Facilities' income and profitability. (Id., P35(b).) Absent such fraud, Plaintiffs would have refused the transaction unless the agreement had been substantially modified and the price had been significantly lowered. (Id., P12.) As a result of these misleading financial reports and non-disclosures, Plaintiffs have suffered damages in the amount of approximately $ 16,000,000.00, for which they seek compensation. (Id., P14.)

## DISCUSSION

Defendants have moved to dismiss the Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

[HN1] Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Rule 9(b) requires the complaint to "[1] specify the statements it claims were false or misleading, [2] give particulars as to the respect in which plaintiffs contend the statements were fraudulent, [3] state [*6] when and where the statements were made, and [4] identify those responsible for the statements." Moore v. Paine Webber, Inc., 189 F.3d 165, 172 (2d Cir. 1999); McLaughlin v. Anderson, 962 F.2d 187, 191 (2d Cir. 1992). Plaintiffs must also "allege facts that give rise to a strong inference of fraudulent intent." Moore, 189 F.3d at 173 (quoting San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 812 (2d Cir. 1996)). Furthermore, fraud must be alleged with particularity as to each defendant. United States Fire Ins. Co. v. United Limousine Serv., 303 F. Supp. 2d 432, 444 (S.D.N.Y. 2004).

[HN2] In reviewing a motion to dismiss a complaint pursuant to Rule 12(b)(6) for failure to state a claim, a court must accept as true the facts alleged in the complaint and draw all inferences in favor of the nonmoving party. Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999). A court should dismiss the complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." [*7] Id. When deciding a motion to dismiss under Rule 12(b)(6), the court generally limits itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. See Dangler v. New York City Off Track Betting Corp., 193 F.3d 130, 138 (2d Cir. 1999). For the purposes of this motion, the Court has limited its examination to the Complaint and Plaintiffs' RICO Statement.

### A. The RICO Claims

Plaintiffs assert civil RICO claims against all Defendants for violations of 18 U.S.C.A. § 1962(a)-(d) (West 2004). [HN3] In order to plead properly a violation of the substantive RICO provisions, 18 U.S.C.A. § 1962(a)-(c), plaintiffs must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983). Under § 1962(d), plaintiffs must demonstrate [*8] that the defendants conspired to violate one or more of the substantive RICO provisions.

Defendants move to dismiss the RICO claims, arguing, among other things, that Plaintiffs have failed to plead their RICO claims with the requisite particularity and that, because of the lack of detail as to the alleged predicate acts underlying the RICO claims, the Complaint fails to state a claim upon which relief can be

granted because it fails to depict a "pattern of racketeering activity."

1. Pleading Fraud with Particularity

[HN4] Rule 9(b) of the Federal Rules of Civil Procedure applies to RICO claims based on allegations of fraud. Moore, 189 F.3d at 172.

In their Complaint, Plaintiffs allege that Defendants committed numerous predicate acts of mail and wire fraud in furtherance of their scheme to induce Plaintiffs to purchase the two nursing facilities. [HN5] Mail and wire fraud constitute predicate illegal acts under RICO. See 18 U.S.C.A. § 1961(1) (West 2004). The mail and wire fraud statutes are similar in all material respects, each requiring two essential elements: (1) a "scheme or artifice to defraud" and [*9] (2) a mailing or transmission in furtherance of the scheme. 18 U.S.C.A. §§ 1341 and 1343 (West 2004); Spira v. Nick, 876 F. Supp. 553, 558-59 (S.D.N.Y. 1995). Allegations regarding the "scheme or artifice to defraud" must satisfy the particularity requirements of Rule 9(b), as must Plaintiffs' allegations concerning any specific mailing that they claim was fraudulent. See Spira, 876 F. Supp. at 559. n2

---

n2 [HN6] Plaintiffs' allegations concerning non-fraudulent mailings used merely to establish the jurisdictional element of the predicate acts need not be pleaded with particularity, as long as their purpose in light of the fraudulent scheme that is pleaded with particularity can be reasonably inferred from the complaint. See Spira, 876 F. Supp. at 559-60.

---

Plaintiffs allege that Defendants fraudulently obtained excess reimbursement payments from Medicaid and Medicare from the middle of 1999 through September 2002 in order to manipulate the Facilities' [*10] financial condition and for the purpose of fraudulently inducing a prospective purchaser, i.e., Plaintiffs, to buy the Facilities at an inflated price. The predicate acts of mail and wire fraud on which Plaintiffs base their claim thus include Defendants' transmission of a series of allegedly false reimbursement claims to Medicaid and Medicare (the "False Filings") and a number of communications in which Defendants allegedly made material misrepresentations to the Plaintiffs regarding the Facilities' financial status and operating conditions.

The Complaint contains only the most general allegations surrounding the False Filings element of the alleged scheme. (Complaint, PP12-13, 35.) For example, paragraphs 12 and 13, contained in the section describing the "nature of the action," merely provide a summary overview of the fraudulent scheme involving the False Filings without providing any particulars. Paragraph 35 and its relevant subsections also fail to provide specifics. The paragraph does not identify a single specific filing. The paragraph provides no dates, approximate or otherwise, apart from the general claim that the pattern of False Filings stretched from the middle of 1999 [*11] through September 2002.

Paragraph 35 does explain, in a general way, why the filings were false. (Complaint, P35(a)(i)-(iii).) According to the Complaint, the filings overstated the Facilities' occupancy rates and included false data with respect to patients in order to receive excess "Bed Hold" payments. (Id., P35(a)(i)-(ii).) In addition, the filings for "Vent Bed" payments included inaccurate information regarding ventilator beds and ventilator patients. (Id., P35(a)(iii).) However, this part of the Complaint simply identifies the general content of the filings that Defendants routinely submitted to Medicare and Medicaid and then concludes that such filings were false without identifying any specific filings or data to support this conclusion. These general and conclusory allegations are insufficient to satisfy Rule 9(b).

The Complaint identifies specific amounts by which Defendants Eastchester and Split Rock were allegedly overpaid during this time period, and provides an estimate of the impact those payments had on the Facilities' operating losses. (Complaint, P35(a).) However, the Complaint offers no details as to how Plaintiffs reached their conclusions regarding these [*12] figures. Also, the claim that the Facilities received "overpayments" assumes that the Defendants engaged in the False Filings, which filings Plaintiffs' allegations are inadequate to identify. Plaintiffs cannot avoid the strictures of Rule 9(b) by layering conclusory statements regarding the impact of a scheme, no matter how specifically those statements are phrased, on top of inadequate allegations of a fraudulent scheme.

Plaintiffs are correct in arguing that [HN7] Rule 9(b) does not require them to plead detailed evidentiary matter. See Hollin v. Scholastic Corp. (In re Scholastic Corp. Sec. Litig.), 252 F.3d 63, 72 (2d Cir. 2001). As the Second Circuit has explained, Rule 9(b) must be harmonized with the general directives of Rule 8, which requires that the pleadings contain a "short and plain statement" of the claim, Fed. R. Civ. P. 8(a)(2), and that each averment be "simple, concise, and direct," Fed. R. Civ. P. 8(e)(1). Ross v. A. H. Robins Co., Inc., 607 F.2d 545, 557 n. 20 (2d Cir. 1979). However, under Rule 9(b), Plaintiffs are still required to plead facts with particularity [*13] in support of their general fraud allegations. Plaintiffs must identify the particular filings they claim were fraudulent and explain why the contents of those

filings were false or misleading. Further, Plaintiffs must identify who was responsible for the filings and state approximately when the submissions occurred. n3

n3 The Court notes that Plaintiffs have failed to plead any connection between the prior real estate owning entities (Defendants Emzel Realty and Zelma Properties) and the False Filings. While the Complaint occasionally refers generally to the Defendants (Complaint, P12) or the "Sellers" (Id., P35(a)) in connection with the False Filings, only the "Prior Operators" (i.e., Defendants Eastchester and Split Rock) and Defendant Zelmanowicz are identified as having any knowledge of or involvement with the False Filings (Id., P35(a)(i)-(iii)). Plaintiffs' RICO Statement likewise refers only to Defendants Eastchester and Split Rock in relation to the False Filings. (RICO Statement, at 3-5.) Thus, even assuming the pleading was not infirm as to the False Filings, the predicate acts arising from the False Filings cannot be attributed to Defendants Emzel Realty and Zelma Properties. See Dietrich v. Bauer, 76 F. Supp. 2d 312, 329 (S.D.N.Y. 1999) [HN8] ("Rule 9(b) is not satisfied by a complaint in which defendants are clumped together in vague allegations.").

[*14]

Plaintiffs have thus failed to plead the alleged False Filings fraud scheme with sufficient particularity to meet the requirements of Rule 9(b). As explained in the following section, Plaintiffs' failure to specify the identity and content of the False Filings precludes the use of those filings to demonstrate the existence of a "pattern of racketeering" for RICO purposes. See GICC Capital Corp. v. Technology Finance Group, Inc., 67 F.3d 463, 467 (2d Cir. 1995); First Capital Asset Managment, Inc. v. Bricklebush, 150 F. Supp. 2d 624, 633 (S.D.N.Y. 2001), aff'd, 385 F.3d 159 (2d Cir. 2004). Plaintiffs' RICO allegations thus fail to state a claim upon which relief can be granted and must be dismissed pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

2. Pattern of Racketeering Activity

[HN9] Proving a "pattern of racketeering activity" requires at the very least a showing that defendants committed two acts of racketeering activity within a ten-year period. 18 U.S.C.A. § 1961(5) (West 2004); First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159, 178 (2d Cir. 2004). [*15] Besides this baseline showing, plaintiffs must demonstrate that "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239, 106 L. Ed. 2d 195, 109 S. Ct. 2893 (1989). In order to establish the requisite threat of continuing criminal activity, plaintiffs must show either a "closed-ended" or an "open-ended" pattern of racketeering activity. See id. at 239; GICC Capital Corp., 67 F.3d at 466. Because the allegedly fraudulent statements, other than the False Filings, on which Plaintiffs rely were all made within a relatively brief period of time, Plaintiffs' failure to proffer sufficient allegations regarding the False Filings is fatal to Plaintiffs' ability to allege a pattern of racketeering activity under either of these theories.

(a) Closed-Ended Continuity

[HN10] Closed-ended continuity is demonstrated by showing "a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months . . . do not satisfy the requirement." H.J. Inc., 492 U.S. at 242; De Falco v. Bernas, 244 F.3d 286, 321 (2d Cir. 2001). [*16] Closed-ended continuity is primarily a temporal concept, although other factors such as "the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists." DeFalco, 244 F.3d at 321; Cofacredit S.A. v. Windsor Plumbing Supply Co. Inc., 187 F.3d 229, 242 (2d Cir. 1999). Notably, however, since the Supreme Court decided H.J., Inc., the Second Circuit has never found a "substantial period" of time where the predicate acts occurred over a period of less than two years. De Falco, 244 F.3d at 321 (collecting cases). But see Zito v. Leasecomm Corp., 2003 U.S. Dist. LEXIS 17236, No. 02 Civ. 8074, 2003 WL 22251352, at *17 (S.D.N.Y. Sep. 30, 2003) (suggesting that an 18 month period may satisfy closed-ended continuity).

Other than the False Filings (which, as explained above, are described too generally to be taken into account as predicate acts for purposes of analyzing Plaintiffs' RICO claims), Plaintiffs rely on a series of mailings that occurred between April 2001 (Complaint, P39(a)) and June 2002 (Complaint, P40(u)) [*17] to frame their allegation of a "pattern of racketeering activity." The duration of these mailings spans a mere 14 months. Even assuming that these mailings can be used to satisfy the requirement of predicate acts of mail and wire fraud, an issue the Court does not reach, the acts span far less time than the two-year period that the Second Circuit has recognized as constituting a "substantial period." The Court finds no basis for departing from [HN11] the general rule that a period of at least two years is required to establish a closed-ended pattern. Therefore, Plaintiffs allegations are insufficient to state a claim of a closed-ended pattern of racketeering.

(b) Open-Ended Continuity

[HN12] A claim of open-ended continuity is made out on the basis of past criminal conduct coupled with a threat of future criminal conduct. GICC Capital Corp., 67 F.3d at 466. The nature of the RICO enterprise and of the predicate acts is relevant to determining whether open-ended continuity exists. De Falco, 244 F.3d at 323; Cofacredit, 187 F.3d at 242. Inherently unlawful acts conducted for an enterprise in the business of racketeering activity constitute a [*18] threat of future criminal activity and are thus sufficient to form the basis of a claim of open-ended continuity. De Falco, 244 F.3d at 323. However, open-ended continuity may also be established with respect to an enterprise that primarily conducts a legitimate business where the predicate acts are part of the regular way of operating the business and the acts imply a threat of future criminal conduct. Cofacredit, 187 F.3d at 243. Finally, a scheme that is "inherently terminable" creates no threat of continued criminal conduct and thus cannot support a finding of open-ended continuity. GICC Capital Corp., 67 F.3d at 466 ("It is clear that the scheme was *inherently* terminable. It defies logic to suggest that a threat of continued looting activity exists when, as plaintiffs admit, there is nothing left to loot.").

Plaintiffs' allegations are insufficient to support open-ended continuity. First, this case involves legitimate businesses, which are not alleged to have been engaged solely in the business of racketeering activity. Second, the scheme here was inherently terminable. The scheme of fraudulently inducing a victim to purchase [*19] the Facilities could not continue after the Facilities and properties were sold. In addition, since the Plaintiffs have not pleaded the False Filings scheme with particularity, any argument that the False Filings scheme demonstrated a threat of future criminal activity cannot be considered. Plaintiffs have failed to allege facts sufficient to demonstrate an open-ended pattern and thus have not adequately pleaded a "pattern of racketeering activities."

For all of these reasons, the RICO claims against Defendants under 18 U.S.C. § 1962(a)-(c) must be dismissed.

3. Section 1962(d)

Plaintiffs' section 1962(d) RICO claims must also be dismissed. [HN13] Section 1962(d) prohibits any person from conspiring to violate any of the substantive provisions of § 1962(a)-(c). To state a claim thereunder, a plaintiff must allege that "each defendant, by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of the RICO enterprise." Colony at Holbrook, Inc. v. Strata, G.C., Inc., 928 F. Supp. 1224, 1238 (E.D.N.Y. 1996).

[HN14] There can be no RICO conspiracy without a substantive RICO violation. See Schmidt v. Fleet Bank, 16 F. Supp.2d 340, 353 (S.D.N.Y. 1998). [*20] "Thus, if the prior claims do not state a cause of action for substantive violations of RICO, then a RICO conspiracy claim necessarily does not set forth a conspiracy to commit such violations." Id. (quoting Discon v. NYNEX Corp., 93 F.3d 1055, 1064 (2d Cir. 1996), rev'd on other grounds, 525 U.S. 128, 142 L. Ed. 2d 510, 119 S. Ct. 493 (1998)); Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 658 (S.D.N.Y. 1996) ("failure to adequately plead facts that would satisfy the pleading requirements of 1962(a), 1962(b) or 1962(c) necessarily dooms any claims that the [plaintiff] might assert arising under 1962(d)"). Accordingly, because Plaintiffs have failed to assert a substantive RICO claim against any of the Defendants, Plaintiffs' claims under § 1962(d) must also be dismissed.

B. Supplemental Jurisdiction

The Complaint asserts claims under state law for common law fraud and breach of contract. Since the federal RICO claims have been dismissed, the Court declines to exercise its supplemental jurisdiction over the remaining state law claims. See, e.g., Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, 98 L. Ed. 2d 720, 108 S. Ct. 614 (1988) (recognizing that [HN15] federal [*21] courts should ordinarily decline to exercise supplemental jurisdiction over state claims when the federal claims have been dismissed before trial); DiLaura v. Power Auth., 982 F.2d 73, 80 (2d Cir. 1992) (same); First Capital Asset Management, Inc. v. Bricklebush, Inc., 150 F. Supp. 2d at 636. Therefore, the state law claims will be dismissed without prejudice to renewal in connection with the repleading of Plaintiffs' federal claims.

CONCLUSION

Defendants' motion to dismiss Plaintiffs' RICO claims pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure is granted. The Court declines to exercise supplemental jurisdiction over the remaining state law claims.

Plaintiffs shall have 21 days from the date of this Opinion and Order to file and serve an amended complaint. If no such amended pleading is timely filed and served, the Court may dismiss this action with prejudice and without further advance notice to Plaintiffs.

IT IS SO ORDERED.

Dated: New York, New York

April 12, 2005

LAURA TAYLOR SWAIN

United States District Judge