Tab 9

LEXSEE

XIANGYUAN ZHU, Plaintiff, - against - FIRST ATLANTIC BANK, IMPACT INTERNATIONAL TRUST and CITIBANK, N.A., Defendants.

05 Civ. 96 (NRB)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2005 U.S. Dist. LEXIS 24895

October 21, 2005, Decided
October 25, 2005, Filed

**DISPOSITION:** [*1] Plaintiff's complaint dismissed in its entirety.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, acting pro se, sued defendants, national and international banks, alleging violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq. violation of banking laws; conspiracy to defraud; constructive trust; conversion; misrepresentation and concealment; interference with property rights, and negligent misrepresentation. The banks moved to dismiss. Plaintiff moved for a default judgment.

**OVERVIEW:** Plaintiff was the victim of a Nigerian advance fee scam and wired $ 10,000 to a Nigerian bank. The court found that the RICO claims failed because plaintiff offered no evidence that the banks had any knowledge of fraudulent activity until the receipt of plaintiff's stop transfer order. There was simply insufficient evidence to demonstrate an organized group with a chain of command directing the enterprise's actions on a continuing basis beyond the alleged fraudulent scheme as required by 18 U.S.C.S. § 1962. Because there was no diversity or federal question jurisdiction, the court declined to exercise supplemental jurisdiction over the state law claims. Plaintiff failed to properly serve the Nigerian banks because Nigeria did not accept service by mail and service by methods that violated foreign law was not allowed under Fed. R. Civ. P. 4(f)(2). The fact that plaintiff failed to properly serve the Nigerian banks rendered her request for default judgment inappropriate. Venue was improper under 28 U.S.C.S. § 1391(a) because plaintiff's bank was located in Kansas and the New York bank had no substantial connection to the events.

**OUTCOME:** Plaintiff's complaint was dismissed for lack of subject matter jurisdiction. Plaintiff's motion for a default judgment was denied.

**CORE TERMS:** wire, venue, subject matter jurisdiction, plead, beneficiary, contacted, pattern of racketeering activity, judicial district, mail, fraudulent, predicate act, motive, service of process, default judgment, diversity jurisdiction, motion to dismiss, substantial part, giving rise, extortion, money laundering, federal question, entirety, scam, supplemental jurisdiction, amount in controversy, personal jurisdiction, transfer order, state law, predicate, reside

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN1] In considering a motion to dismiss for lack of subject matter jurisdiction or for failure to state a claim, the court must accept as true all material factual allegations in the complaint. In addition, the complaint of a pro se litigant should be liberally construed in his favor. However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. A motion to dismiss may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage*

Page 1

[HN2] The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq., makes it unlawful for a person either to: (a) invest the proceeds derived from a "pattern of racketeering activity" in an enterprise; (b) maintain an interest in or control an enterprise through a pattern of racketeering activity; (c) to conduct an enterprise's affairs through a pattern of racketeering activity; or (d) to conspire to violate (a), (b), or (c). 18 U.S.C.S. § 1962(a)-(d). In order to demonstrate a pattern of racketeering activity, a plaintiff must offer proof that the defendants engaged in more than one of the predicate acts specified in 18 U.S.C.S. § 1961(a). Section 1961(5) states that a "pattern of racketeering activity" requires at least two acts of racketeering activity, the last of which occurred within 10 years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage*
[HN3] To make out a violation of 18 U.S.C.S. § 1962(c), a plaintiff must allege that a defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise, the activities of which affected interstate or foreign commerce. 18 U.S.C.S. § 1962(c). A plaintiff's failure to adequately plead facts that would satisfy the pleading requirements of 18 U.S.C.S. § 1962(a),(b) or (c) necessarily dooms any claim she might assert under § 1962(d).

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage*
[HN4] In order to qualify as a predicate act under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq., an act must be specifically listed in 18 U.S.C.S. § 1961(1).

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Claims > Fraud*
[HN5] With regard to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq., a complaint alleging mail or wire fraud must show (1) the existence of a scheme to defraud, (2) the defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Claims > General Overview*

*Criminal Law & Procedure > Criminal Offenses > Miscellaneous Offenses > Money Laundering > General Overview*
[HN6] With regard to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq., the four elements of money laundering claim are : (1) that the defendant conducted a financial transaction; (2) that the transaction in fact involved the proceeds of specified unlawful activity; (3) that the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and (4) that the defendant knew that the financial transaction was designed in whole or in part to conceal or disguise the source, ownership, control, etc., of those proceeds.

*Torts > Business Torts > Fraud & Misrepresentation > General Overview*
[HN7] In order to create an inference of fraud, a plaintiff needs to present facts establishing motive and opportunity to commit fraud or strong circumstantial evidence of conscious misbehavior or recklessness.

*Torts > Business Torts > Fraud & Misrepresentation > General Overview*
[HN8] In order to sufficiently plead a fraudulent motive, a plaintiff's allegations must include concrete benefits that could be attained through the alleged misstatements or omissions. The allegations must entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged. Where a plaintiff's theory of motive defies economic reason, it does not yield a reasonable inference of fraudulent intent.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Claims > Fraud*
*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
[HN9] The Federal Rules of Civil Procedure require that the circumstances constituting fraud shall be stated with particularity. Fed. R. Civ. P. 9(b). In order to state a civil Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq., claim grounded in fraud, a plaintiff must meet this heightened pleading standard.

*Banking Law > Bank Activities*
*Banking Law > International Banking*
[HN10] With regard to international wire transfers, international banking rules provide that once funds are credited to a beneficiary's account, a receiving bank must receive permission from the beneficiary in order to return any funds.

Page 2

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Claims > General Overview*
*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Extortion > General Overview*
[HN11] Establishing a Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq., violation requires proof of a pattern of racketeering activity, rather than a single act. Importantly, a completed act of extortion along with the intermediate steps toward completion of that act constitute one predicate act, not multiple distinct attempts. Multiple acts in furtherance of a single extortion episode constitute only a single predicate act of attempted extortion, not a pattern of two or more predicate acts.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage*
[HN12] In order to sufficiently allege the existence of a Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq., enterprise, a plaintiff must: first, present evidence of an ongoing organization, formal or informal; second, present evidence that the various associates function as a continuing unit, and third, demonstrate that the alleged enterprise is an entity separate and apart from the pattern of activity in which it engages.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Claims > General Overview*
*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage*
[HN13] The United States Supreme Court has restricted liability under 18 U.S.C.S. § 1962(c) to those who have participated in the operation or management of the enterprise itself. The "operation and management" test set forth by the Supreme Court is a very difficult test to satisfy. The fact that a bank provided banking services is not enough to state a claim under § 1962(c).

*Banking Law > Criminal Offenses*
[HN14] 12 U.S.C.S. § 1829 provides for criminal penalties when individuals convicted of certain crimes involving dishonesty or breach of trust subsequently obtain employment with financial institutions.

*Banking Law > Criminal Offenses*
[HN15] There is no private right of action under 12 U.S.C.S. § 1829.

*Banking Law > Criminal Offenses*
[HN16] 12 U.S.C.S. § 1829b(a).

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction*
[HN17] While a district court may exercise supplemental jurisdiction over state law claims, 28 U.S.C.S. § 1367(c) provides that a court may decline to exercise supplemental jurisdiction if the district court has dismissed all claims over which it has original jurisdiction.

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Amount in Controversy*
[HN18] In order to dismiss for failure to meet the amount in controversy requirement, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify a dismissal.

*Civil Procedure > Pleading & Practice > Service of Process*
[HN19] Fed. R. Civ. P. 4 governs service of process.

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Foreign Service*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
[HN20] Fed. R. Civ. P. 4(f)(2)(C) permits service by any form of mail requiring a receipt, to be addressed and dispatched by the clerk of the court to the party to be served. However, such service by mail is allowed only if it is not prohibited by the law of the foreign country.

*International Law > Dispute Resolution*
[HN21] Fed. R. Civ. P. 44.1 provides that the court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Foreign Service*
[HN22] Service by methods that violate foreign law is not allowed under Fed. R. Civ. P. 4(f)(2).

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Foreign Service*
*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations*
[HN23] A complaint must be served within 120-days of filing or face dismissal. Fed. R. Civ. P. 4(m). This 120-day period to effect service does not apply to service of process outside of the United States.

*Civil Procedure > Pretrial Judgments > Default > Default Judgments*
[HN24] Fed. R. Civ. P. 55 states that when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

*Civil Procedure > Venue*
[HN25] 28 U.S.C.S. § 1391 requires that one of three conditions be met for venue to be proper: (1) that a defendant reside in the judicial district; (2) that a "substantial part" of the events giving rise to the claim occur in the judicial district; or (3) that a defendant either be subject to personal jurisdiction in the judicial district or can be "found" there. 28 U.S.C.S. § 1391(a) and (b).

*Civil Procedure > Jurisdiction > Diversity Jurisdiction*
*Civil Procedure > Venue*
[HN26] See 28 U.S.C.S. § 1391(a).

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations*
[HN27] Because the mere assertion of a Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq., claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.

**COUNSEL:** Xiangyuan Zhu, Plaintiff, Pro se, Topeka, KS.

For First Atlantic Bank: Sam O. Maduegbuna, Esq., Maduegbuna & Cooper LLP, New York, NY.

For Citibank, N.A.: Susan J. Steinthal, Esq., Senior Vice President, Associate General Counsel, Global Corporate & Investment Bank, Citigroup Global Markets Inc., New York, NY.

**JUDGES:** NAOMI REICE BUCHWALD, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** NAOMI REICE BUCHWALD

**OPINION:**

**MEMORANDUM AND ORDER**

**NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE**

Pro se plaintiff Xiangyuan Zhu ("Zhu" or "plaintiff") brings this action against defendants First Atlantic Bank ("FAB"), a Nigerian bank, Impact International Trust ("IIT"), an organization allegedly created to engage in money laundering, and Citibank, N.A. ("Citibank") (collectively "defendants") alleging that they participated in a scheme to defraud her. Defendants FAB and Citibank have made separate motions to dismiss plaintiff's complaint. Plaintiff also moves for a default judgment against IIT. For the reasons discussed below, defendants' motions to dismiss are granted and plaintiff's motion for default judgment is denied. Furthermore, [*2] because this Court lacks subject matter jurisdiction over plaintiff's claims, the complaint is dismissed in its entirety.

**BACKGROUND** n1

- - - - - - - - - - - - - - - - - -

n1 Except where noted, the following background is drawn from plaintiff's supplemental affidavit dated August 30, 2005, and is not in dispute.

- - - - - - - - - - - - - - - - - -

According to the complaint, plaintiff was the victim of what is commonly known as a 419 advance fee scam. n2 Plaintiff was contacted both by phone and email by a Mr. Williams Olufemi ("Olufemi"), who claimed to be a Nigerian lawyer, stating that plaintiff's deceased relatives had left plaintiff large sums of money in a Nigerian bank account. n3 In order for plaintiff to actually obtain the inheritance, Olufemi informed plaintiff that he needed an advance fee of $ 10,000 to pay the statutory tax due. These entreaties were a ruse; Olufemi's identity is fictitious and plaintiff was not in fact entitled to any inheritance.

- - - - - - - - - - - - - - - - - -

n2 The numbers "419" refer to the section of the Nigerian penal code addressing such fraudulent schemes. For a general description of these scams, see http://www.secretservice.gov/alert419.shtml.

[*3]

> n3 Without stating any basis for her belief plaintiff alleges that her contact with Olufemi is connected to a June 19, 2003 robbery at the Los Angeles Airport, during which plaintiff lost her personal information.

However, on November 12, 2003, per Olufemi's instructions, plaintiff wired $ 10,000 from her account at the Lawrence, Kansas branch of Commercial Federal Bank ("CFB") for which she paid a $ 15 wire transfer fee. Plaintiff's wire named Citibank as the beneficiary financial institution, and FAB as the beneficiary account name. On November 18, 2003, Olufemi contacted plaintiff to inform her that he had not received the wire transfer because plaintiff had not named IIT as the final beneficiary of the transfer. On November 21, 2003, plaintiff went to her bank in Kansas, and had CFB add IIT as a beneficiary of the wire transfer.

On November 24, 2003, the next business day, CFB contacted plaintiff and advised her that the above wire transfer might be part of a 419 advance fee scam. CFB requested her permission to recall the wire transfer, which she granted. That same day, CFB sent Citibank [*4] a message requesting that Citibank "return funds as soon as possible, Fraudulent wire Nigerian Scam." See Plaintiff's Affidavit. On November 27, 2003, Olufemi contacted plaintiff stating that he had confirmed the transfer of funds to the account of IIT at FAB in Nigeria, but that Olufemi could not withdraw the money due to the plaintiff's recall instruction. That day, plaintiff sent an email to FAB requesting that FAB stop the wire transfer due to its fraudulent nature.

On November 28, 2003, the day after Thanksgiving, Citibank responded to the recall request, stating that it had contacted FAB for debit authorization. On January 12, 2004, CFB again requested the return of the funds, and on January 14, 2004, Citibank again responded that it had contacted the beneficiary bank for debit authority. On January 15, 2004, Citibank contacted CFB stating that the beneficiary bank, FAB, had informed Citibank that the funds had been credited to IIT, as instructed by the wire transfer. On January 16, 2004, CFB made its final request for the return of the funds. Finally, on February 5, 2005, plaintiff sent Citibank a letter demanding its assistance in retrieving the $ 10,000. On February 9, 2004, Olufemi [*5] contacted plaintiff stating that the funds were still in IIT's account at FAB in Nigeria.

In addition to the $ 10,000 wire transfer, Olufemi attempted to defraud plaintiff by convincing her to deposit counterfeit checks. On December 20, 2003, plaintiff received a check for $ 38,950.63, and on January 4, 2004, plaintiff received another check for $ 85,000. Olufemi instructed plaintiff to deposit these checks into her checking account at CFB, and then immediately withdraw identical amounts from her account and wire those amounts to IIT. There are no allegations that plaintiff ever did this, or that plaintiff suffered any monetary loss from the receipt of these counterfeit checks.

Plaintiff filed her initial complaint on January 6, 2005, and an amended complaint on February 24, 2005. Plaintiff's amended complaint alleges eight claims for relief: a civil RICO claim; a violation of banking laws; conspiracy to defraud; constructive trust; conversion; misrepresentation and concealment; interference with property rights, and negligent misrepresentation. n4

> n4 Plaintiff requested leave to amend her complaint again on August 6, 2005. The Court denied this motion on August 23, 2005, as the parties had already filed extensive briefs related to the motions to dismiss made by Citibank and FAB, but the Court permitted plaintiff to submit an affidavit presenting any additional facts or arguments she wanted us to consider. Plaintiff did file such an affidavit, which has been considered as part of the record in the instant motions.

[*6]

## DISCUSSION

### I. Standard of Review

[HN1] In considering a motion to dismiss for lack of subject matter jurisdiction or for failure to state a claim, the Court must accept as true all material factual allegations in the complaint. Levy ex rel. Immunogen Inc. v. Southbrook Int'l Invs., Ltd., 263 F.3d 10, 14 (2d Cir. 2001); Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citing Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974)). In addition, "the complaint of a pro se litigant should be liberally construed in his favor." Salahuddin v. Cuomo, 861 F.2d 40, 42-43 (2d Cir. 1988) (citation omitted). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (quoting Gebhardt v. Allspect, Inc., 96 F.Supp.2d 331, 333 (S.D.N.Y. 2000)). A motion to dismiss may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Still v. DeBuono, 101 F.3d 888, 891 (2d Cir. 1996) [*7] (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)).

II. Analysis

A. Subject Matter Jurisdiction

Of the numerous claims advanced by plaintiff, only two assert federal claims, namely, her civil RICO claim and her claim alleging the unlawful participation of a felon in a federally insured banking institution. n5 The moving defendants argue that plaintiff has failed to adequately plead these federal claims. For the reasons stated below, we agree, and moreover, since we find no other basis for subject matter jurisdiction, we dismiss the complaint in its entirety.

n5 Plaintiff references several other federal statutes, none of which provides a basis for federal jurisdiction. First, plaintiff suggests a violation of the Currency and Foreign Transactions Reporting Act, but she provides no evidence whatsoever to substantiate a claim that either bank failed to comply with any reporting requirements, and fails to proffer the provision of that Act Citibank and FAB may have violated. Second, plaintiff suggests a violation of 18 U.S.C. § 1951, entitled "Interference with commerce by threats of violence." The only reference to violence in her complaint (besides the reference to "the organized crime" assaulting her in Los Angeles International Airport, see Amended Compl., 11) is the statement that "the organized crime assaulted Zhu at her dwelling home in the United States with mail fraud. . . ." Amended Compl., 34. We fail to see how the sending of a piece of mail constitutes an "assault." Even more puzzling is plaintiff's reference to 18 U.S.C. § 1503, which prohibits improperly influencing jurors and officers of United States courts. Because no jury has been impaneled in this case, we can only conclude that plaintiff means to suggest that this Court is somehow being improperly influenced by the defendants. This suggestion is baseless and does not warrant further discussion.

[*8]

1. Plaintiff's Civil RICO Claim

Plaintiff accuses the defendants of violating RICO by participating in a scheme with Olufemi and IIT to defraud her of $ 10,000. [HN2] The RICO statute makes it unlawful for a person either to: (a) invest the proceeds derived from a "pattern of racketeering activity" in an enterprise; (b) maintain an interest in or control an enterprise through a pattern of racketeering activity; (c) to conduct an enterprise's affairs through a pattern of racketeering activity; or (d) to conspire to violate (a), (b), or (c). 18 U.S.C. § § 1962(a)-(d). In order to demonstrate a pattern of racketeering activity, a plaintiff must offer proof that the defendants engaged in more than one of the predicate acts specified in 18 U.S.C. § 1962(a). See 18 U.S.C. § 1961(5) ("a 'pattern of racketeering activity' requires at least two acts of racketeering activity. . . the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity").

Plaintiff specifically alleges that the bank defendants violated § § 1962(c) and (d). [HN3] To make [*9] out a violation of section 1962(c), plaintiff must allege that "a defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise, the activities of which affected interstate or foreign commerce." 18 U.S.C. § 1962(c). Because we find that plaintiff does not sufficiently allege a violation of § 1962(c), we need not consider § 1962(d), which prohibits conspiring to violate § § 1962(a)-(c), as a complaint must adequately state a claim under § § 1962(a), (b), or (c) in order for the Court to find a violation of § 1962(d). See Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 658 (S.D.N.Y. 1996) ("[plaintiff]'s failure to adequately plead facts that would satisfy the pleading requirements of § § 1962(a), 1962(b) or (c) necessarily dooms any claim she might assert under § 1962(d)"). Our RICO analysis below is thus limited to a discussion of plaintiff's claim under § 1962(c).

a. RICO Predicate Acts

[HN4] In order to qualify as a predicate act under RICO, an act must be specifically listed in 18 U.S.C. § 1961(1). Here, plaintiff's [*10] complaint suggests that the bank defendants engaged in a variety of offenses enumerated in § 1961(1), including mail fraud, wire fraud, and money laundering. However, plaintiff fails to adequately plead the existence of a predicate act for two reasons: first, she has failed to plead intent, and second, she has failed to plead with particularity.

First, plaintiff insufficiently alleges the scienter element of fraud and money laundering. See S.O.K.F.C. Inc. v. Bell Atlantic TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir. 1996) ( [HN5] "A complaint alleging mail or wire fraud must show (1) the existence of a scheme to defraud, (2) the defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme.") (citations omitted) (emphasis added); and see United States v. Maher, 108 F.3d 1513, 1528-29 (2d Cir. 1997) (laying out [HN6] four elements of money laundering claim: "(1) that the defendant conducted a financial transaction; (2) that the transaction in fact involved the proceeds of specified unlawful activity. . .; (3) that

the defendant knew that the property involved in the financial [*11] transaction represented the proceeds of some form of unlawful activity; and (4) that the defendant knew that the financial transaction was designed in whole or in part to conceal or disguise the source, ownership, control, etc., of those proceeds."). Each of these offenses requires intent on the part of the defendants, and plaintiff has brought forth no evidence to suggest that the banks intended to conspire with IIT and Olufemi to defraud her. [HN7] In order to create an inference of fraud, she would need to present facts establishing "motive and opportunity to commit fraud" or "strong circumstantial evidence of conscious misbehavior or recklessness." Chill v. General Elec. Co., 101 F.3d 263, 267 (2d Cir. 1996).

Here, plaintiff offers no evidence that the banks had any knowledge of fraudulent activity until the receipt of plaintiff's stop transfer order, which she sent after the transfer had already taken place. In fact, plaintiff has presented this Court with documentation demonstrating that Citibank and FAB both immediately responded to her request to rescind the transfer by attempting to recall the funds, belying her suggestion that they were trying to facilitate a [*12] fraud. Moreover, plaintiff has offered no plausible financial motive for the banks to facilitate the alleged fraud besides the $ 15 wire transfer fee. [HN8] In order to sufficiently plead a fraudulent motive, plaintiff's allegations must include concrete benefits that could be attained through the alleged misstatements or omissions. See Kalnit v. Eichler, 264 F.3d 131, 139 (2d Cir. 2001) (stating that allegations must "entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged."). Where a plaintiff's theory of motive "defies economic reason, . . . it does not yield a reasonable inference of fraudulent intent." Kalnit, 264 F.3d at 140-41; see also Faulkner v. Verizon Communications, Inc., 189 F.Supp.2d 161, 171 (S.D.N.Y. 2002) (no reasonable inference of fraudulent intent where purported motive is "belied by logic"). Suggesting that the banks were induced to commit fraud by the prospect of a nominal fee is wholly illogical. Plaintiff thus fails to allege facts giving rise to an inference of fraud.

Second, [HN9] the Federal Rules of Civil Procedure require that "the circumstances constituting [*13] fraud. . . shall be stated with particularity." Fed.R.Civ.P. 9(b). In order to state a civil RICO claim grounded in fraud, plaintiff must meet this heightened pleading standard. See, e.g., Lesavoy v. Lane, 304 F.Supp.2d 520, 533-34 (S.D.N.Y. 2004). Plaintiff's conclusory and entirely unsubstantiated allegations of a conspiracy among the defendants fall far short of this requirement. n6 Plaintiff thus fails to adequately plead the existence of a predicate act.

---

n6 For instance, she states in her complaint that "Defendants FAB and Citibank NYC, knew the ongoing Fraudulent wire Nigerian Scam then, falsely and fraudulently represented to CFB via wire that CFB's 3rd Stop Payment Order sent to them under the applicable provisions of RICO . . . was denied under the pretext that 'Beneficial Bank [FAB] states funds credits to IIT as advised . . . .'" Amend. Compl. at 40. However, she provides absolutely no evidence suggesting that either FAB or Citibank knew of the scam, that they made any false or fraudulent representations to CFB, or even what those representations were. This Court has previously found that, [HN10] with regard to international wire transfers, international banking rules provide that "once funds are credited to a beneficiary's account, a receiving bank must receive permission from the beneficiary in order to return any funds." Human Rights in China v. Bank of China, 2005 U.S. Dist. LEXIS 10326, 02 Civ. 4361 (NRB), 2005 WL 1278542 at *4 (S.D.N.Y. 2005). Thus, FAB and Citibank lacked authority to return plaintiff's funds once they were deposited in IIT's account. In the absence of evidence suggesting that the banks could have reversed the transaction upon receipt of plaintiff's stop transfer order, plaintiff may not hold the banks liable for complying with her transfer request.

---

[*14]

b. Multiple Act Requirement

Even if plaintiff had sufficiently alleged a predicate RICO act, her claim would still fail because she has failed to allege more than one unlawful act. As stated above, [HN11] establishing a RICO violation requires proof of a pattern of racketeering activity, rather than a single act. Importantly, "a completed act of extortion along with the intermediate steps toward completion of that act constitute one predicate act, not multiple distinct attempts." Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc., 354 F.Supp.2d 293, 303 (S.D.N.Y. 2004). Here, the plaintiff simply does not allege that the banks engaged in more than one act of fraud. That there were numerous communications between plaintiff and Olufemi has no bearing on the fact that plaintiff was allegedly defrauded only once, as "multiple acts in furtherance of a single extortion episode constitute only a single predicate act of attempted extortion, not a pattern of two or more predicate acts." Linens of Europe, Inc. v. Best Mfg., Inc., 2004 U.S. Dist. LEXIS 18575, 03 Civ. 9612 (GEL), 2004 WL 2071689 at *16 (S.D.N.Y. Sept. 16, 2004). Even if it is true, as plaintiff alleges, that Olufemi

[*15] tried to extort her further after his first successful attempt, plaintiff makes no allegation that the banks were ever involved in any further attempted acts of extortion. All FAB and Citibank are alleged to have done is comply with a single wire transfer order placed by the plaintiff, resulting in the depositing of plaintiff's $ 10,000 into the account she specified. All further communications between the banks and the plaintiff endeavored simply to assist her in rescinding the transaction. Plaintiff thus fails to plead that the defendants engaged in multiple acts.

### c. Existence of a RICO "Enterprise"

In her amended complaint, plaintiff asserts that IIT is an enterprise within the meaning of the RICO statute, see Amended Compl., 61, but she only generally avers that the banks were "the owner[s] of, or [were] associated with an enterprise, that is, IIT." Amended Compl., 61. [HN12] In order to sufficiently allege the existence of a RICO enterprise, a plaintiff must: first, present evidence "of an ongoing organization, formal or informal"; second, present evidence "that the various associates function as a continuing unit", and third, demonstrate that the alleged enterprise "is [*16] an entity separate and apart from the pattern of activity in which it engages." United States v. Turkette, 452 U.S. 576, 583, 69 L. Ed. 2d 246, 101 S. Ct. 2524 (2001).

Plaintiff's general allegation falls far short of sufficiently pleading these elements. There is simply "insufficient evidence to demonstrate an organized group with a chain of command directing the enterprise's actions on a continuing basis beyond the alleged fraudulent scheme" as required by 18 U.S.C. § 1862. Casio, 2000 WL 1877516 at *20. Even though the complaint "describes the roles allegedly played by various defendants, or members of the enterprise, it fails to explain the members' coordinated roles in the enterprise or the interrelationship of the members' actions." Id. Plaintiff does not make clear how she believes these three elements have been met when her own submissions to this Court make abundantly clear that this was a one-time-only transaction in which the banks performed a basically clerical function. There are no organizational elements binding the banks and IIT, and no evidence that together they form any sort of "continuing unit." The only "pattern of activity" plaintiff [*17] can possibly allege is that of banks complying with their customers' requests to make wire transfers. There exists no "entity separate and apart" from the allegedly unlawful transfers themselves. The plaintiff thus inadequately alleges the existence of an enterprise.

### d. "Operation or Management" Requirement

[HN13] The Supreme Court has restricted liability under § 1962(c) to those who have "participated in the operation or management of the enterprise itself." Reves v. Ernst & Young, 507 U.S. 170, 183, 122 L. Ed. 2d 525, 113 S. Ct. 1163 (1993). In order to sustain a claim under § 1962(c) against the bank defendants, plaintiff would have had to allege that they engaged in criminal activity by means of their "operation and management" of the alleged enterprise. Even if an enterprise existed, this allegation would be entirely without merit. The "'operation and management' [sic] test set forth by the Supreme Court in Reves is a very difficult test to satisfy." LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co., 951 F. Supp. 1071, 1090 (S.D.N.Y. 1996). The fact that a bank "provided banking services. . . is not enough to state a claim under § 1962(c)." Industrial Bank of Latvia v. Baltic Fin. Corp., 1994 U.S. Dist. LEXIS 8580, 93 Civ. 9032 (LLS), 1994 WL 286162 [*18] at *3 (S.D.N.Y. June 27, 1994). Citibank and FAB do not remotely satisfy this strict test, as each bank merely transferred funds that the plaintiff requested they transfer. The fact that the money eventually benefitted an alleged extortionist has no bearing whatsoever on the banks' limited roles as intermediaries in the transaction. Plaintiff thus also fails to sufficiently allege that the banks were involved in the "operation or management" of the alleged criminal enterprise.

In sum, because the plaintiff altogether fails to allege the required elements of a civil RICO claim, we grant the motions of FAB and Citibank to dismiss the plaintiff's RICO claims.

### 2. Plaintiff's Unauthorized Participation by a Felon Claim

Plaintiff further alleges that the defendants violated [HN14] 12 U.S.C. § 1829, which provides for criminal penalties when individuals convicted of certain crimes involving dishonesty or breach of trust subsequently obtain employment with financial institutions. This claim can be readily dismissed because plaintiff does not identify any person convicted for any of the crimes enumerated in the statute who is employed by the moving banks. n7

> n7 Even if plaintiff had alleged that one of the defendants had hired a convicted felon, she would still have no claim, as [HN15] there is no private right of action under 12 U.S.C. § 1829. The statute's statement of purpose makes clear that it is intended to exclusively serve a law enforcement role: [HN16]
>
> (1) The Congress finds that adequate records maintained by insured depository institutions have

a high degree of usefulness in criminal, tax, and regulatory investigations and proceedings . . . .

. . .

(2) It is the purpose of this section to require the maintenance of appropriate types of records and other evidence by insured depositary institutions in the United States where such records have a high degree of usefulness in criminal, tax, or regulatory investigations and proceedings.

12 U.S.C. § 1829b(a). Although no Court in this Circuit has yet considered whether the statute gives rise to a private cause of action, the only Court to explicitly address the issue has determined that it does not. See, Gress v. PNC Bank, National Assoc., 100 F.Supp.2d 289 (E.D.Pa. 2000) (12 U.S.C. § 1829b "was not 'intended to create, either expressly or by implication, a private cause of action.'") (quoting Touche Ross & Co. v. Redington, 442 U.S. 560, 575, 61 L. Ed. 2d 82, 99 S. Ct. 2479 (1979)).

[*19]

### 3. Lack of Subject Matter Jurisdiction

[HN17] While a district court may exercise supplemental jurisdiction over state law claims, 28 U.S.C. § 1367(c) provides that a court "may decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims over which it has original jurisdiction." Having dismissed the plaintiff's two federal claims, there is no longer a basis pled in the complaint to support federal subject matter jurisdiction. Given that plaintiff is proceeding pro se, we will sua sponte raise the issue of whether plaintiff could rely on diversity jurisdiction to provide this Court with subject matter jurisdiction. However, even assuming diversity of citizenship, there are no facts pled to support more than $ 10,015 in damages, well short of the $ 75,000 required for the exercise of diversity jurisdiction. 28 U.S.C. § 1332.

We recognize that [HN18] in order to dismiss for failure to meet the amount in controversy requirement, "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify a dismissal." A.F.A. Tours v. Whitchurch, 937 F.2d 82, 87 (2d Cir. 1991)). [*20] Here, plaintiff claims damages in the amount of $ 134,758.63. Though we are unclear how plaintiff arrived at that precise figure, plaintiff appears to be seeking treble damages under RICO for the $ 10,015 n8 she actually lost, see 18 U.S.C. 1964(c), and adding to that $ 38,950.63 and $ 85,000, the respective amounts of the two checks that Olufemi advised she make out to him. n9

n8 This figure includes the $ 15 wire transfer fee.

n9 Adding together the numbers in this way results in the sum of $ 153,995.63. As the discussion makes clear, however, the actual amount in controversy is far less than the jurisdictional requirement, so we need not resolve the differences in calculation.

However, the facts pled do not support an underlying claim in excess of $ 10,015, the actual amount that plaintiff asserts she lost. Although Olufemi allegedly sought more money from plaintiff after obtaining the initial $ 10,000, it is undisputed that plaintiff never attempted to send him any more money. [*21] Thus, beyond the initial $ 10,015 she lost, plaintiff suffered no further injury, resulting in a "legal certainty that the claim is really for less than the jurisdictional amount." A.F.A. Tours, 937 F.2d at 87.

Accordingly, in the absence of federal question jurisdiction, we decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims. Therefore, the complaint is dismissed in its entirety.

### B. Service of Process and Default Judgment

Even assuming that this Court had subject matter jurisdiction, plaintiff has failed to serve FAB and IIT. [HN19] Rule 4 of the Federal Rules of Civil Procedure governs service of process. Plaintiff attempted to serve FAB and IIT pursuant to [HN20] Rule 4(f)(2)(C), which permits service by "any form of mail requiring a receipt, to be addressed and dispatched by the clerk of the court to the party to be served." Fed. R. Civ. P. 4(f)(2)(C). However, such service by mail is allowed only if it is not "prohibited by the law of the foreign country." Id.

Both FAB and IIT are citizens of Nigeria. In its motion, defendant FAB argues that Nigerian [*22] law prohibits service by mail, and therefore plaintiff's service was improper. In support of this position, FAB submits a declaration from Chukwuma Uwechia ("Uwechia"), a member in good standing of the bar of the State of New York, licensed attorney in Nigeria, and the author of two books on Nigerian law and practice. In his declaration, Uwechia swears that Nigerian law prohibits service of legal process through postal channels, and attaches as evidence the relevant rules governing service of process within Nigeria.

[HN21] Rule 44.1 provides that "the court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. Upon review of these materials, we are satisfied that Nigerian law does prohibit service of process by mail in this instance. As [HN22] service by methods that violate foreign law is not allowed under Rule 4(f)(2), plaintiff has not properly served on either FAB or IIT. See Jung v. Neschis, 2003 U.S. Dist. LEXIS 5569, 2003 WL 1807202, No. 01 Civ. 6993, at *2-*3 (S.D.N.Y. Apr. 7, 2003). Accordingly, we find that [*23] service was not effectuated as to FAB and IIT. n10

> n10 Plaintiff's amended complaint was filed in February of 2005. Normally, [HN23] a complaint must be served within 120-days of filing or face dismissal. Fed. R. Civ. P. 4(m). This 120-day period to effect service does not apply to service of process outside of the United States, however. Loral Fairchild Corp. v. Matsushita Elec. Indus. Co., 805 F. Supp. 3, 4-5 (E.D.N.Y. 1992). However, our dismissal on venue grounds, see infra, means that she will have to reinitiate this lawsuit in an appropriate forum if she wishes to proceed with her claims against IIT.

The fact that plaintiff has failed to properly serve IIT renders her request for default judgment inappropriate. See [HN24] Fed.R.Civ.P. 55 ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit [*24] or otherwise, the clerk shall enter the party's default"). n11 Regardless, as discussed below, the propriety of plaintiff's service on IIT is a moot issue, as the Southern District of New York is not a proper venue for this dispute. Accordingly, we dismiss plaintiff's claims against IIT.

> n11 Plaintiff's failure to effect proper service also provides a separate basis for dismissing her claims against FAB.

### D. Venue

Finally, even if there were subject matter jurisdiction and even if IIT had been served, we would nonetheless dismiss the complaint for improper venue. n12 Venue does not lie against IIT either under the venue provisions of 28 U.S.C. § 1391(a) (diversity jurisdiction) n13 or under § 1391(b) (federal question jurisdiction). n14

These sections [HN25] require that one of three conditions be met for venue to be proper: (1) that a defendant reside in the judicial district; (2) that a "substantial part" of the events giving rise to the claim occur in the judicial district; or (3) that [*25] a defendant either be subject to personal jurisdiction in the judicial district or can be "found" there. See 28 U.S.C. § § 1391(a) and (b). Plaintiff cannot allege that any of these circumstances is present here. First, IIT is alleged to be a Nigerian organization. Second, there is no substantial connection between the events giving rise to this claim and New York. New York's only connection to the dispute is that Citibank is located here, and its only role in this case was to transfer money from the plaintiff's bank in Kansas to IIT's bank in Nigeria. The fact that the disputed funds were theoretically present here momentarily is not enough to constitute a "substantial part" of the events giving rise to the claim. Third, IIT is not subject to personal jurisdiction here under any long-arm approach. Venue is thus wholly inappropriate under Section 1391(a).

> n12 As with the bank defendants, plaintiff's allegations are insufficient to establish a basis for diversity jurisdiction, even if venue were proper, as the plaintiff fails to meet the amount in controversy requirement. See supra, II.3. Moreover, there does not appear to be federal question jurisdiction here, as plaintiff provides the same two bases for jurisdiction over IIT as she does over the bank defendants.

[*26]

> n13 [HN26] Section 1391(a) provides that venue is appropriate in a diversity case in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a).

> n14 Section 1392(b), which pertains to venue in federal question cases, differs from § 1392(a) in a minor way that is irrelevant here. Its first two provisions are the same as § 1391(a) and its third provision differs only slightly, stating that venue may lie in a "judicial district in which any defendant may be found."

**CONCLUSION**

[HN27] Because "the mere assertion of a RICO claim. . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to [*27] flush out frivolous RICO allegations at an early stage of the litigation." Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (quotation omitted) (citation omitted). For the reasons set out above, plaintiff's RICO claim against the bank defendants cannot withstand a motion to dismiss. We similarly dismiss the plaintiff's unlawful participation by a felon claim against the bank defendants. Because these are the only federal claims plaintiff asserts, and the amount in controversy fails to meet the statutory minimum, this Court lacks federal subject matter jurisdiction over any state law claims asserted. Thus, plaintiff's complaint is dismissed in its entirety.

We also deny plaintiff's claim for default judgment against IIT as plaintiff has failed to make proper service upon both the Nigerian defendants. Regardless of the failure to serve, this Court is not a proper venue to hear plaintiff's claims against IIT, a Nigerian citizen. This dismissal is without prejudice to plaintiff refiling in a forum that has subject matter jurisdiction and venue if she is able to effect service upon IIT.

**SO ORDERED.**

Dated: New York, New York

October 21, 2005 [*28]

NAOMI REICE BUCHWALD

UNITED STATES DISTRICT JUDGE