UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WORLD WRESTLING ENTERTAINMENT, INC.

                        Plaintiff,

        v.

JAKKS PACIFIC, INC.; JAKKS PACIFIC (H.K.)
LIMITED; ROAD CHAMPS LIMITED; THQ,
INC.; THQ/JAKKS PACIFIC LLC; STANLEY
SHENKER AND ASSOCIATES, INC.; STANLEY
SHENKER; BELL LICENSING, LLC; JAMES
BELL; JACK FRIEDMAN; STEPHEN BERMAN;
JOEL BENNETT; and BRIAN FARRELL,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

04 CV 8223 (KMK)
(ECF CASE)

 

## MEMORANDUM OF LAW OF THE JAKKS DEFENDANTS
## IN OPPOSITION TO WWE'S MOTION FOR REARGUMENT

FEDER, KASZOVITZ, ISAACSON, WEBER,
  SKALA, BASS & RHINE LLP
Murray L. Skala (MS 9354)
Jonathan D. Honig (JH 7577)
750 Lexington Avenue
New York, New York 10022
Phone:  (212) 888-8200
Fax:  (212) 888-5968

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Jonathan J. Lerner (JL 7117)
Michael H. Gruenglas (MG 8705)
James A. Keyte (JK 0680)
Maura B. Grinalds (MG 2836)
Four Times Square
New York, New York  10036
Phone:  (212) 735-3000
Fax:  (212) 735-2000

*Attorneys for the JAKKS Defendants*

June 23, 2006

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.     WWE IGNORES THE STANDARDS FOR A MOTION FOR
       RECONSIDERATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.    THE COURT DID NOT "OVERLOOK" RULE 12(b)(6) STANDARDS . . . . . . . . . . . 6

III.   WWE'S REHASH OF ITS ARGUMENTS ON ANTITRUST INJURY AND
       CAUSATION IS NOT A PROPER GROUND FOR RECONSIDERATION . . . . . . . . 7

       A.    The Court Thoroughly Considered WWE's Antitrust Injury Argument . . . . . . . . 8

       B.    The Court Thoroughly Considered WWE's Causation Argument . . . . . . . . . . . 14

IV.    ASSERTING THE COURT SHOULD HAVE IGNORED ITS BRIBERY
       ALLEGATIONS IS NOT A PROPER BASIS FOR RECONSIDERATION . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

CASES                                                                          PAGE(S)

Aetna Casualty and Surety Co. v. Aniero Concrete Co., Inc.,
    404 F.3d 566 (2d Cir. 2005) ................................................................ 2, 17

Atlantic Richfield Co. v. USA Petroleum Co., 495 U.S. 328 (1990) ............................ 3

Bennett v. Cardinal Health Marmac Distributors, Inc.,
    No. 02 CV 3095, 2003 WL 21738604 (S.D.N.Y. July 14, 2003) ..................................... 13

Cartier v. Aaron Faber Inc., 396 F. Supp. 2d 356 (S.D.N.Y. 2005) ................................. 5

Doron Precision System, Inc. v. FAAC, Inc.,
    423 F. Supp. 2d 173 (S.D.N.Y. 2006) ................................................................. 13

Federal Paper Board Co. v. Amata, 693 F. Supp. 1376 (D. Conn. 1988) ............................ passim

Ferrand v. Credit Lyonnais, 292 F. Supp. 2d 518 (S.D.N.Y. 2003),
    aff'd, 110 F. App'x 160 (2d Cir. 2004) ..................................................... 7, 9, 13

George Haug Co., Inc. v. Rolls Royce Motorcars, Inc.,
    148 F.3d 136 (2d Cir. 1998) ........................................................................ 13

Greater Rockford Energy & Technology Corp. v. Shell Oil Co.,
    998 F.2d 391 (7th Cir. 1993) ....................................................................... 14

Gregory v. Daly, 243 F.3d 687 (2d Cir. 2000) ........................................................ 17

Gruppo, Levey & Co. v. ICOM Information & Communications, Inc.,
    No. 01 Civ. 8922, 2003 WL 22283812 (S.D.N.Y. Oct. 2, 2003),
    aff'd, 126 F. App'x 45 (2d Cir. 2005) ............................................................... 5

Houbigant, Inc. v. ACB Mercantile, Inc., 914 F. Supp. 997 (S.D.N.Y. 1996) ..................... 7

Knoll v. Equinox Fitness Clubs, No. 02 Civ. 9120,
    2004 WL 439500 (S.D.N.Y. Mar. 10, 2004) ........................................................... 7

Mathias v. Daily News, L.P., 152 F. Supp. 2d 465 (S.D.N.Y. 2001) ............................... 13

Mendez v. Radec Corp., 411 F. Supp. 2d 347 (W.D.N.Y. 2006) ..................................... 2

Pannonia Farms, Inc. v. USA Cable, No. 03 Civ. 7841,
    2004 WL 1794504 (S.D.N.Y. Aug. 10, 2004) ......................................................... 6

Philip Morris, Inc. v. Heinrich, No. 95-CV-0328 ,
    1996 WL 363156 (S.D.N.Y. June 28, 1996) ............................................................. 8, 12

SEC v. Ashbury Capital Partners, L.P., No. 00 Civ. 7898,
    2001 WL 604044 (S.D.N.Y. May 31, 2001) .......................................................... 5

Shrader v. CSX Transportation, Inc., 70 F.3d 255 (2d Cir. 1995) ................................................. 1

Spiegler v. Israel Discount Bank of New York, No. 01 Civ. 6364,
    2003 WL 21983018 (S.D.N.Y. Aug. 19, 2003) ..................................................... 6

Suthers v. Amgen Inc., No. 05 Civ. 4158, 2006 WL 1062895
    (S.D.N.Y. Apr. 19, 2006) ...................................................................................... 17

In re Tamoxifen Citrate Antitrust Litigation, 429 F.3d 370 (2d Cir. 2005) .................................. 14

Tommy Hilfiger Licensing, Inc. v. Bradlees, Inc., No. 99 Civ. 4677,
    2002 WL 1967032 (S.D.N.Y. June 4, 2002) ....................................................... 7

USAirways Group, Inc. v. British Airways PLC,
    989 F. Supp. 482 (S.D.N.Y. 1997) ...................................................................... 14

Volmar Distributors, Inc. v. New York Post Co.,
    825 F. Supp. 1153 (S.D.N.Y. 1993) ............................................................... 10, 11

Weissman v. Seiyu, Ltd., No. 98 CIV 6976 HB,
    2000 WL 666338 (S.D.N.Y. May 22, 2000) ....................................................... 17

World Wrestling Entertainment Inc. v. Jakks Pacific, Inc.,
    425 F. Supp. 2d 484 (S.D.N.Y. 2006) ........................................................... passim

Yellow Page Solutions, Inc. v. Bell Atlantic Yellow Pages Co.,
    No. 00 CIV. 5663, 2001 WL 1468168 (S.D.N.Y. Nov. 19, 2001) .................................. 13

STATUTES

Federal Rule of Civil Procedure 12(b)(6) ...................................................................... 6

Local Civil Rule 6.3 ................................................................................................... 4

JAKKS Pacific (H.K.) Limited, Road Champs Limited, Jack Friedman, Stephen Berman and Joel Bennett (collectively, the "JAKKS Defendants") respectfully submit this memorandum in opposition to the motion of World Wrestling Entertainment, Inc. ("WWE") for reargument of the Court's March 31, 2006 decision dismissing WWE's Sherman Act claim, World Wrestling Entm't Inc. v. Jakks Pac., Inc., 425 F. Supp. 2d 484, 515-23 (S.D.N.Y. 2006) (hereinafter, the "March 31 Opinion" or "Op.").

## PRELIMINARY STATEMENT

Undaunted by the applicable rules and refusing to take no for an answer, WWE's motion for "reargument" (the "Motion") is simply a rehash of WWE's previous arguments in opposition to JAKKS' motion to dismiss the Sherman Act claim that this Court already considered and correctly rejected.[1]  On its face, WWE's Motion is devoid of any reference to Local Rule 6.3 or to the "strict" standards applicable to a motion for reconsideration, which require the movant specifically to identify "controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  Flouting these standards, WWE does not even purport to identify any controlling precedent or material fact that the Court overlooked in reaching its decision.  Instead, WWE carps that the Court "misapplied" the law, "misconstru[ed]" the allegations or failed to "draw inferences" in WWE's favor.  (Pl.

---

[1]      Given WWE's latest tactical choice, its professed desire to proceed expeditiously with its case is highly dubious to say the least.  As WWE is well aware, the Court did not need to reach the additional fatal infirmities in WWE's Sherman Act claim -- belatedly filed as part of WWE's effort to derail the Court's initial briefing schedule.  Therefore, at most, even if WWE's Motion met the reargument standards, which it does not, and even if it had any merit, which it does not, it could only serve to delay its case further by requiring the Court to consider the additional defects in WWE's Sherman Act claim.

Mem. at 1.)  But this refrain, which merely boils down to a complaint (albeit meritless) that the Court just "got it wrong," is not a basis for a motion for reconsideration.  Mendez v. Radec Corp., 411 F. Supp. 2d 347, 350 (W.D.N.Y. 2006) (declining reconsideration motion purportedly under Fed. R. Civ. P. 59 where movants had not "pointed out any outright factual mistakes or clear errors of law in [the Court's] prior decision.  All that they argue, is, in effect, that the Court 'got it wrong' the first time.").  For this reason alone, WWE's Motion should be denied.

Even if the Court were to consider the substance of WWE's reiterated and repackaged arguments, reconsideration of the March 31 Opinion would not be warranted.  The Court's analysis of both antitrust injury and causation, the ratio decidendi of the dismissal of the Sherman Act claims, did not overlook any controlling decisions or arguments presented by WWE.  As a result, WWE is forced to resort to an unprecedented -- not to mention bizarre -- argument for reconsideration.  It asks the Court to rewrite the Amended Complaint (hereinafter, the "AC") and to eliminate the very bribery scheme and related factual allegations that constitute the core of WWE's claims and mandate dismissal of WWE's Sherman Act claim.  Indeed, WWE has the audacity to advance the specious suggestion that the Court should ignore WWE's own allegations that Shenker and Bell were "bribed" so that WWE can then assert that, "in the absence of bribes," the alleged Sherman Act violation may be considered a cognizable antitrust injury. (Pl. Mem. at 8 n.2.)  WWE's attempt to maneuver around its own bribery allegations flies in the face of Rule 12(b)(6), and the Second Circuit authority prohibiting this legal legerdemain. See, e.g., Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 595 (2d Cir. 2005) ("Plaintiffs cannot proceed on the presumption that [plaintiff's] allegations are true, and then seek to evade the impact of those allegations when they are not conducive to the theory it hopes to

2

advance."). Indeed, were WWE now free simply to erase the bribery allegations that form the

core of its complaint, which it is not, WWE's new theory only turns to bite it by demonstrating

that, as pled, this Court's conclusions are plainly correct:

- On antitrust injury, this case is on all fours with <u>Fed. Paper Bd. Co. v. Amata</u>, 693 F. Supp. 1376, 1380-85 (D. Conn. 1988) -- <u>i.e.</u>, "nothing about Jakks's cooptation of THQ . . . prevented WWE from negotiating licensing agreements with other vendors." 425 F. Supp. 2d at 521. Indeed, once WWE's bribery allegations are wished away, so too is its economic injury, demolished by WWE's own allegations that "the competitive environment among toy companies seeking intellectual property licenses was intense." (AC ¶ 58); and

- The <u>cause</u> of WWE's alleged injury was that it "was prevented from learning about [higher] bids by Shenker and Bell, who supposedly acted as they did because of substantial bribes from [JAKKS]," 425 F. Supp. 2d at 523, not the open joint bid by JAKKS/THQ. Indeed, WWE itself alleges that <u>due to the bribery scheme</u>, independent superior bids from THQ and Activision were not forwarded to WWE. (AC ¶¶ 131-134, 153.)

     Thus, even if WWE could retroactively strip out the bribery allegations from its

Amended Complaint to obtain reconsideration, which it cannot, it still would not be able to

overcome its failure to allege the requisite antitrust injury, <u>i.e.</u> "'injury of the type the antitrust

laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'"

<u>Atl. Richfield Co. v. USA Petroleum Co.</u>, 495 U.S. 328, 334 (1990) (citation omitted).

## DISCUSSION

     In its March 31 Opinion, this Court granted JAKKS' motion to dismiss the

Sherman Act claim on two separate and distinct grounds. First, as a matter of "antitrust injury,"

the Court followed <u>Amata</u> in finding that, even under 12(b)(6) standards, the alleged "joint bid,

even combined with the bribery of Shenker and Bell," did not prevent competitive bids from

"being offered to, or accepted by, WWE's management." 425 F. Supp. 2d at 521. Accordingly,

3

any injury suffered by WWE did not constitute an "antitrust injury." Id. Second, the Court

followed well-established causation standards -- including 12(b)(6) cases -- in finding that the

Amended Complaint affirmatively established that even if the "joint bid" were itself assumed to

be a restraint of trade, it could not be the "but for" cause of its alleged loss -- i.e., "that but for the

joint bid, WWE would not have forgone the millions of royalties it did." 425 F. Supp. 2d at 523.

As the Court explained, the Amended Complaint "provides detailed allegations regarding the true

cause of WWE's lost earnings" (in not obtaining higher bids), which is that WWE "was

prevented from learning about any such bids by Shenker and Bell," who were allegedly bribed by

JAKKS. (Id.) These holdings obviated the need to address the additional fatal defects mandating

dismissal raised by JAKKS.[2]

## I.     WWE IGNORES THE STANDARDS FOR A MOTION FOR RECONSIDERATION

As a threshold matter, WWE's Motion must be denied because it fails to comply

with Local Rule 6.3, which provides: "There shall be served with the notice of motion a

memorandum setting forth concisely the matters or controlling decisions which counsel believes

the court has overlooked." S. & E.D.N.Y. Local Civ. R. 6.3 (emphasis added.)  Applying this

rule, courts in this Circuit recognize that "reconsideration of a previous order is an extraordinary

remedy to be employed sparingly in the interests of finality and conservation of scarce judicial

---

[2]     Even if this Court reconsidered and reversed its own decision on antitrust injury and
causation, to overcome Defendants' dismissal motion, WWE would still have to persuade the
Court that it pled a substantive Sherman Act violation as a per se boycott, and that the four-year
statute of limitations did not apply.  The Court clearly indicated that WWE's substantive claims
were based on "dubious assumptions." 425 F. Supp. 2d at 521.  Further, as JAKKS demonstrated
in its dismissal brief, if WWE's per se theory stands -- i.e., the violation occurred when the joint
bid was accepted by WWE -- then WWE has pled itself into an inescapable statute of limitations
corner. (See JAKKS Sherman Act Moving Br. at 27-29.)

resources.'" <u>Gruppo, Levey & Co. v. ICOM Info. & Commc'ns, Inc.</u>, No. 01 Civ. 8922 (JFK), 2003 WL 22283812, at *1 (S.D.N.Y. Oct. 2, 2003) (quoting <u>In re Health Mgmt. Sys., Inc. Sec. Litig.</u>, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)), <u>aff'd</u>, 126 F. App'x 45 (2d Cir. 2005). Local Rule 6.3 is designed to "'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" <u>SEC v. Ashbury Capital Partners, L.P.</u>, No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (citation omitted). "A Court must narrowly construe and strictly apply Local Rule 6.3, so as to avoid duplicative rulings on previously considered issues, and to prevent the rule from being used as a substitute for appealing a final judgment." <u>Cartier v. Aaron Faber Inc.</u>, 396 F. Supp. 2d 356, 363 (S.D.N.Y. 2005).

Nowhere in WWE's 12-page rehash of its previously considered Sherman Act arguments is there a single acknowledgment of, much less a reference to, the stringent standards governing a motion for reconsideration. The "concise" statement of a "matter or controlling decision which counsel believes the Court has overlooked" mandated by Rule 6.3 is nowhere to be found. Not surprisingly, WWE's Motion also lacks even a single reference to a legal authority that this Court overlooked, or any significant overlooked factual matter that conceivably could have been expected to alter the Court's carefully reasoned decision. On the contrary, WWE repeatedly concedes, as it must, that the Court was fully aware of the proper legal standards governing the underlying motion and the legal authorities addressing the antitrust injury requirement. (<u>See, e.g.</u>, Pl. Mem. at 4, 6.) Standing alone, these defects are fatal to WWE's Motion. "Since Plaintiff has not demonstrated controlling law or material facts put before the Court in connection with its underlying motion that the Court overlooked in reaching its

decision, reconsideration of the Opinion is not warranted." Spiegler v. Israel Disc. Bank of N.Y.,

No. 01 Civ. 6364 (WK), 2003 WL 21983018, at *1 (S.D.N.Y. Aug. 19, 2003).

## II.    THE COURT DID NOT "OVERLOOK" RULE 12(b)(6) STANDARDS

WWE's attack on the Court's Opinion begins by reciting basic Fed. R. Civ. P.

12(b)(6) standards that WWE audaciously contends the Court supposedly ignored or misapplied.

(See Pl. Mem. at 2-4, 6-8). Not surprisingly, WWE's argument merely reprises the same

standards and supporting cases WWE previously advanced in its papers opposing JAKKS'

Motion to Dismiss the Sherman Act claim. (See Pl. Opp. Br. at 12.)

Of course, WWE does not -- and cannot -- sincerely contend that the Court's

thorough opinion overlooked any of these basic standards. Indeed, just the opposite is true. At

every turn, the Court recognized and applied the very standards WWE now asserts were ignored.

For example, the Court acknowledged that it must "'accept as true the factual allegations made in

the complaint and draw all inferences in favor of plaintiffs'" 425 F. Supp. 2d at 493 (citation

omitted); that "[b]efore discovery, courts should dismiss antitrust complaints 'sparingly' where

the proof of the alleged antitrust violation is largely in the hands of the defendants" id. at 517;

and that at this stage the Court does not "weigh the evidence," but rather focuses on the

allegations of the complaint. Id. at 523.

At bottom, WWE's challenge to the Court's March 31 Opinion is rooted in

WWE's disappointment with the outcome, not any overlooked standard. As a matter of law, this

is not a proper basis for reconsideration. See Pannonia Farms, Inc. v. USA Cable, No. 03 Civ.

7841 (NRB), 2004 WL 1794504, at *2 (S.D.N.Y. Aug. 10, 2004) (a motion for reargument is not

a way to take "a 'second bite at the apple' for a party dissatisfied with a court's ruling"); Knoll v.

6

Equinox Fitness Clubs, No. 02 Civ. 9120 (SAS), 2004 WL 439500, at *1 (S.D.N.Y. Mar. 10,

2004) (citations omitted) (a motion for reargument is not "a vehicle 'to reargue those issues

already considered when a party does not like the way the original motion was resolved '");

Houbigant, Inc. v. ACB Mercantile, Inc., 914 F. Supp. 997, 1001 (S.D.N.Y. 1996) (same).

## III.    WWE'S REHASH OF ITS ARGUMENTS ON ANTITRUST INJURY AND CAUSATION IS NOT A PROPER GROUND FOR RECONSIDERATION

In challenging the Court's substantive grounds for dismissing WWE's Sherman

Act claim, WWE also unabashedly ignores the standards for reconsideration. Rather than

identifying any controlling decisions or factual matter overlooked by the Court, WWE merely

parrots the legal arguments it previously advanced "in plain English" (Pl. Mem. at 4) and

expresses its disagreement with the Court's rulings on antitrust injury and causation. A motion

for reconsideration, however, is not a proper vehicle to quibble with the Court's application of the

relevant law to plaintiff's allegations. Tommy Hilfiger Licensing, Inc. v. Bradlees, Inc., No. 99

Civ. 4677 (WK), 2002 WL 1967032, at *2 (S.D.N.Y. June 4, 2002) ("While the Plaintiffs may

disagree with our application of the relevant law to the Defendants' allegations, their

disagreement with our decision is not the appropriate subject of a motion for reconsideration. In

seeking reconsideration, the moving party may not revisit issues that the Court has already fully

considered such that the motion becomes a substitute for an appeal."); see also Ferrand v. Credit

Lyonnais, 292 F. Supp. 2d 518, 521 (S.D.N.Y. 2003) (denying reconsideration motion where

"rather than citing facts or controlling decisions that the Court may have overlooked, [plaintiff]

merely takes issue with the Court's analysis and interpretation of the relevant law. . . . [Plaintiff's]

grievance is not that the Court overlooked pertinent precedent, but that the Court's reasoning did

not accord sufficient weight to [plaintiff's] arguments or did not properly apply the specific

authority upon which [plaintiff's] theories were grounded"), aff'd, 110 F. App'x 160 (2d Cir.

2004).

        On its face, the very suggestion that this Court overlooked anything about the

applicability of Federal Paper Board Company v. Amata, 693 F. Supp. 1376 (D. Conn. 1988), is

preposterous given WWE's strenuous attempts to avoid the impact of that decision on the

viability of its Sherman Act claim and the Court's detailed discussion of that case.  Likewise, the

assertion that the Court improperly resolved "factual disputes" on the issue of "but for" causation

is premised on WWE's disagreement with the Court's analysis of WWE's detailed factual

allegations, not on any legal authority or allegations "overlooked" by the Court.

A.    **The Court Thoroughly Considered WWE's Antitrust Injury Argument**

        WWE's argument for reconsideration on the issue of antitrust injury boils down to

this: having assumed, arguendo, that the JAKKS/THQ joint bid restrained competition, 425 F.

Supp. 2d at 520 n.24, the Court must necessarily find "as a matter of law and common sense

[that] the victim of a bid rigging conspiracy that receives a lower bid than it otherwise would

have received from the colluding competitor in the absence of such an anticompetitive

agreement" suffers antitrust injury.  (Pl. Mem. at 6.)  As it previously did in its opposition to

JAKKS' Motion to Dismiss, for this proposition WWE cites various inapposite per se bid-rigging

cases, including Philip Morris, Inc. v. Heinrich, No. 95-CV-0328 (LMM), 1996 WL 363156, at

*9 (S.D.N.Y. June 28, 1996).  In essence, WWE reiterates its tautological argument that because

it alleged (conclusorily) that the JAKKS/THQ joint bid was "illegal bid-rigging," the Court must

necessarily find that it properly alleged that WWE suffered antitrust injury by not having a

8

separate bid from THQ. (Pl. Mem. at 5-6.)

As a threshold matter, this argument is improper on a motion for reconsideration because it is the same argument WWE made at length in response to JAKKS' original motion to dismiss (see Pl. Opp. Br. at 17-24), which the Court squarely considered and correctly rejected in its March 31 Opinion.  At pages 519-23 of the March 31 Opinion, the Court specifically addressed all of WWE's antitrust injury arguments, including the contention that "merely by asserting a *per se* violation" in the form of an "allegedly corrupt agreement between [JAKKS] and THQ to submit a joint bid, Plaintiff has established antitrust injury." Id. at 519.  As the Court explained, such a proposition "confuses the violation with the remedy;" thus, even if a restraint may have been alleged, "it says nothing about whether that unreasonable restraint resulted in an antitrust injury to Plaintiff under the Clayton Act." Id. at 520.  Thus, WWE cannot argue that the Court overlooked anything.  Rather, it again is just disagreeing with the Court's analysis, which is not a proper basis for this Motion.  Ferrand, 292 F. Supp. 2d at 521.

After reviewing the extensive briefing on antitrust injury, the Court also found that WWE had pled itself into the "virtually identical" problem as had the plaintiff in Amata, 425 F. Supp. 2d at 521.  In Amata, the court held that where, as here, the plaintiff's own pleading established that "the only source of its injury [was] a disloyal employee," it could not "complain of an antitrust injury in order to elevate claims based on an employee's breach of fiduciary duty into Sherman Act claims." Amata, 693 F. Supp. at 1383-84 (dismissing Sherman Act claim under Rule 12(b)(6) for failure to allege antitrust injury).  As the Court explained, even though the Amata plaintiff had clearly paid higher prices than it would otherwise have paid because of an alleged bribery and price-fixing scheme, it failed to plead antitrust injury because "there was

no allegation that non-bribing suppliers could not compete, or that plaintiff could not purchase from non-bribing suppliers." 425 F. Supp. 2d at 521 (citing Amata, 693 F. Supp. at 1383-84).

Despite WWE's vigorous attempt in its initial opposition brief (and again in its Motion) to distinguish Amata based on WWE's purported bid-rigging allegations here,[3] the Court incisively explained why Amata was, in fact, directly on point here notwithstanding WWE's purported "bid-rigging" allegation. As the Court explained:

> Plaintiff's allegation that Jakks and THQ engaged in bid rigging and price fixing does not change the analysis, because THQ and Jakks were only two of several competitors for the video game license. As in Amata, *WWE failed to demonstrate how the joint bid, even combined with the bribery of Shenker and Bell, prevented competitive bids from being offered to, or accepted by, WWE's management.* Indeed, the allegations in the Amended Complaint are even more problematic for Plaintiff here than in Amata because the Amended Complaint identifies competitors that were active in the bidding process for the video game licenses. Acclaim and Activision submitted proposed bids to Plaintiff despite Bell's and Shenker's attempts to discourage them from bidding. Given these allegations, the Amended Complaint fails to allege how the mere submission of the joint bid, by itself, caused antitrust harm to WWE. Put another way, even if the joint bid was artificially low, there is no allegation that WWE was forced to accept that bid.

425 F. Supp. 2d at 521-22 (emphasis added). In short, there was no allegation that WWE's economic injury (if any) was "caused by acts that had a competition reducing effect." Volmar Distribs., Inc. v. N.Y. Post Co., 825 F. Supp. 1153, 1159 (S.D.N.Y. 1993).

The Court's analysis was abundantly supported by WWE's own allegations, which

---

[3]     WWE erroneously asserts that Amata did not involve any "allegation of collusion among competitors." (Pl. Mem. at 9.) Of course it did. As part of the bribery scheme alleged in Amata, plaintiff claimed that Amata "entered into conspiracies 'between and among' the defendant waste paper suppliers for the purpose . . . of fixing prices" and that the suppliers, "both individually and as a group" engaged in an enterprise to "fix[] the price of wastepaper." 693 F. Supp. at 1380. Nevertheless, the court held that plaintiff had not suffered antitrust injury because there was no allegation that the conspiracy between suppliers and the bribed employee "could have prevented any other supplier from dealing with [plaintiff]." Id. at 1383-84.

establish that, "but for" the bribery scheme, WWE was entirely free to deal with other bidders in a highly competitive market.  WWE alleges that "[d]uring the time period that Jakks was corrupting Shenker, <u>competition in the toy industry was intense between companies seeking valuable intellectual property licenses such as WWE</u>" (AC ¶ 52 emphasis supplied), and that when the scheme to acquire the videogame license was purportedly hatched, "competition for desirable character and product licensees remained intense." (<u>Id.</u> ¶ 103.)  WWE also admits that Shenker and Bell did not control WWE (<u>id.</u> ¶ 109), that WWE retained sole authority over all final decisions concerning licensees (<u>id.</u> ¶ 75), and that even after WWE approved the deal memorandum recommending that the videogame license be granted to JAKKS, "WWE remained legally free to accept other superior offers until such time as a definitive licensing agreement was executed" (<u>id.</u> ¶ 114), which it in fact <u>did</u> when it ultimately accepted the bid from the LLC.  WWE also acknowledged that other rivals were not restrained in any way from competing, that other bidders, including Playmates and Acclaim, communicated directly with senior executives of WWE to make proposals (<u>id.</u> ¶ 114), that Acclaim, which held the videogame license prior to the LLC, "went over Bell's head and complained to senior management at WWE that it was not being permitted to submit a renewal proposal," and was then "told [by WWE senior management] that it could do so," (<u>id.</u> ¶ 109), and that Activision made an initial bid for the videogame license, and might have increased its bid absent the alleged bribes and disloyalty.  (<u>Id.</u> ¶ 148.)  As in <u>Amata</u>, WWE's own allegations admit that the alleged disloyalty of its agents, not any market restraint, caused its alleged economic injury.

　　　　　Further, the Court also specifically considered and rejected WWE's argument, reiterated in its Motion, that all bid-rigging claims necessarily deprive plaintiffs of (in WWE's

11

words) a fair or competitive price, and hence antitrust injury must be inferred:

> Plaintiff counters by asserting that it suffered an antitrust injury because it was the victim of a bid-rigging conspiracy. Implicit in Plaintiff's argument is that all bid-rigging schemes necessarily deprive the "other party to the transaction of a fair price." (WWE Sherman Act Resp. 22.) Yet, that is not at all true here. Plaintiff is really a victim of its own choice, albeit a choice allegedly influenced by its corrupt employee, to accept Defendant's joint (lower) bid in lieu of other higher bids. Thus, there is no cognizable antitrust injury from the alleged joint bid or the bribery scheme.

425 F. Supp. 2d at 522. (footnote omitted)

> In support of its Motion, WWE also repetitiously argues that the Court should have followed <u>Philip Morris, Inc. v. Heinrich</u> instead of <u>Amata</u>, and asserts that "the Court's attempts to distinguish <u>Philip Morris</u> are unfounded and indeed inappropriate." (Pl. Mem. at 11.) To the contrary, the Court squarely addressed and properly rejected WWE's reliance of <u>Philip Morris</u> and similar decisions:

> Because Defendant did not rig all or even close to all, of the bids available to WWE, this case is different from <u>Philip Morris</u> . . . . In that case, Philip Morris employed a formal bidding process where the purchasing department would secure one written bid and at least one alternative verbal price quotation. The defendants' scheme took advantage of this by *ensuring that all competitors for contracts agreed to submit inflated bids to plaintiff,* further agreeing that one company would be the lowest bidder and would subcontract the work out to the losing bidders. The winning bidder kept the difference between the legitimate bids and the inflated bids as a "commission" for its services, and paid some of the proceeds as kickbacks to two of the plaintiff's employees.

> Unlike in <u>Philip Morris</u>, the *Defendants here did not engage in the same type of bid-rigging scheme, nor did they seek to include all would-be bidders in any such scheme.* Therefore, the injury to Plaintiff here from any joint bid is far different from what it was there. Moreover, in this case, contrary to Plaintiff's efforts to spin otherwise, the crux of the Defendants' anti-competitive conduct is the bribery of the licensing agents and purchasers, with the joint bid being a means of promoting the success of that scheme. In <u>Philip Morris</u>, however, the bribery was the means of insuring success of the bid-rigging scheme.

425 F. Supp. 2d at 522 n.25 (italics added).    In attempting to challenge the Court's holding on

antitrust injury, WWE's "reargument" Motion adds nothing,[4] points to nothing overlooked by the

Court and, on its face, is an improper attempt to revisit issues that this Court has fully considered

and properly rejected.[5]

_____

[4]    WWE also advances the completely baseless antitrust injury argument that the Court failed to address various paragraphs in the Amended Complaint that detailed JAKKS and THQ's alleged agreement not to have THQ submit an independent bid (¶¶ 137, 139, 141-44), as well as paragraphs alleging that WWE would have obtained much higher royalty rates in a "truly competitive situation." (¶¶ 160, 162-63.) These same points and citations mirror those in WWE's original motion. (See Pl. Opp. Br. at 9-11.) More importantly, contrary to WWE's assertion, the Court in fact did discuss or quote all of these allegations. See 425 F. Supp. 2d at 491, 516-17 & 521 (discussing or quoting ¶¶ 137, 139, 141, 144, 160, 162 and 163).) But even if the Court had not mentioned all of WWE's favorite allegations in its Opinion, although it did, that would still not justify a motion for reconsideration. See Ferrand, 292 F. Supp. 2d at 521-22("[T]hat the Court did not specifically reference every factual detail or incident to which [plaintiff] attached special significance in [it's] opposition papers does not necessarily establish that the Court did not consider that particular matter."). Indeed, in considering these very allegations, the Court concluded that even if it assumed, arguendo, that the allegations support a per se violation and an adverse effect on competition, see 425 F. Supp. 2d at 519-20 & n.24, this would only establish the existence of a Sherman Act violation rather than an antitrust injury to WWE. Id. at 519. And it is based on this lack of antitrust injury, not the substantive violation, that the Court dismissed WWE's Sherman Act Claim.

[5]    Further, while WWE suggests that it is not "typical" to dismiss an antitrust claim for failure to adequately plead antitrust injury, such dismissals actually are quite common. See, e.g., George Haug Co., Inc. v. Rolls Royce Motorcars, Inc., 148 F.3d 136, 140 (2d Cir. 1998) (affirming dismissal of Sherman Act claims because plaintiff failed to sufficiently allege antitrust injury); Doron Precision Sys., Inc. v. FAAC, Inc., 423 F. Supp. 2d 173, 182 (S.D.N.Y. 2006) (dismissing Sherman Act claims for failure to adequately allege antitrust injury "[b]ecause [plaintiff's] amended complaint fail[ed] to allege facts demonstrating that its loss stem[med] from an anticompetitive aspect of defendants' conduct"); Bennett v. Cardinal Health Marmac Distribs., Inc., No. 02 CV 3095 (JG), 2003 WL 21738604, at *3-5 (S.D.N.Y. July 14, 2003) (dismissing antitrust claims because plaintiffs' failed to adequately allege antitrust injury); Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co., No. 00 CIV. 5663, 2001 WL 1468168, *11-12 (S.D.N.Y. Nov. 19, 2001) (same); Mathias v. Daily News, L.P., 152 F. Supp. 2d 465, 477-80 (S.D.N.Y. 2001) (same).

**B.**    <u>The Court Thoroughly Considered WWE's Causation Argument</u>

WWE's request for reargument on the issue of "but for" causation is equally misguided. Rather than point to anything the Court overlooked, WWE apparently has difficulty accepting that it <u>affirmatively pled</u> in great detail the very facts that compelled the Court's conclusion that, as a matter of law, JAKKS' alleged <u>per se</u> illegal joint bid could not be viewed as the "but for" cause of WWE's claimed injury. In short, WWE has been hoisted on its own petard. Embarrassing perhaps, but hardly grounds for reconsideration.

WWE first attempts to reargue the Court's holding on causation by insisting, contrary to the law and the Court's Opinion, that causation is "never" a proper subject of a motion under Rule 12(b)(6), and always involves factual disputes - regardless of the allegations. (Pl. Mem. at 7.) This, of course, is frivolous. Indeed, while recognizing that it cannot weigh evidence at this stage, the Court itself cited several cases in which plaintiffs, like WWE, conceded away causation in its own pleading. <u>See</u> 425 F. Supp. 2d at 523.[6]

There also can be no dispute that WWE already argued in its initial opposition brief that it had adequately alleged causation (Pl. Opp. Br. at 22-23), and no doubt that the Court did not overlook any controlling precedents in rejecting WWE's causation-related allegations.

---

[6]    <u>See also</u> <u>In re Tamoxifen Citrate Antitrust Litig.</u>, 429 F.3d 370, 403-04 (2d Cir. 2005) (affirming Rule 12(b)(6) dismissal of antitrust claims because any injury suffered by plaintiffs was not caused by the alleged violations but rather was the result of a legitimate patent monopoly); <u>USAirways Group, Inc. v. British Airways PLC</u>, 989 F. Supp. 482, 489 (S.D.N.Y. 1997) (dismissing antitrust claims under Rule 12(b)(6) in part because alleged violations were not "but for" cause of alleged injury to plaintiff). WWE's attempt to distinguish <u>Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.</u>, 998 F.2d 391 (7th Cir. 1993), as a summary judgment decision is unavailing. What matters is that <u>Greater Rockford</u> confirmed a legal standard of causation under Section 4 of the Clayton Act, <u>id.</u> at 395, that WWE <u>affirmatively pled</u> it did not, and could not, meet.

The March 31 Opinion demonstrates the propriety of the Court's careful analysis:

> Here, the defect in the Amended Complaint is neither a lack of evidence, for the Court does not at this stage weigh the evidence, nor a failure to explain the cause of the lost royalties. On the contrary, the Amended Complaint provides detailed allegations regarding the true cause of WWE's lost earnings, but that cause is not the purportedly illegal joint bid. Instead, <u>it is clear from the Amended Complaint that the reason WWE never took a higher bid, and therefore never made more money, is because it was prevented from learning about any such bids by Shenker and Bell, who supposedly acted as they did because of substantial bribes from JAKKS</u>. In other words, it cannot be said, based on the Amended Complaint's allegations regarding the bribery scheme, that but for the joint bid, WWE would not have foregone the millions in royalties it did. Thus, the alleged antitrust violation, which does not include the bribes, is not alleged to have caused WWE's injuries. Dismissal of this cause of action is therefore appropriate.

425 F. Supp. 2d at 523 (emphasis added; citations omitted).

The Court's causation holding applies <u>whether or not</u> the joint bid could be said to have deprived WWE of the opportunity to consider an independent bid from THQ. (AC ¶¶ 160, 163, 269.) Given the bribery scheme WWE pled, there is simply no basis to infer that <u>even if</u> THQ decided not to bid with JAKKS (<u>i.e.</u> did not engage in the allegedly "collusive bid"), its superior bid would have been forwarded to WWE (rather than be deep-sixed by WWE's faithless agents like the earlier "superior" bids submitted by THQ and Activision, <u>see</u> AC ¶¶ 131-134, 153). Significantly, WWE itself pleads that it never knew of THQ's initial higher independent bid (or other potential competitive bids) because "[i]n order to conceal the illicit plan and see it to fruition," SSAI and Bell never provided WWE with copies of THQ's (or Activision's) "informal proposal[s]." (AC ¶¶ 134.) Thus, WWE's own allegations confirm that its alleged harm did not arise from the purportedly illegal joint bid - which it admittedly knew about and accepted. Rather, any such claimed harm arose from Shenker and Bell's alleged conspiracy to keep WWE in the dark about <u>any</u> bids (including superior bids from THQ and Activision) that might

15

jeopardize JAKKS' ability to get the license (as well as WWE's complete lack of diligence in making any inquiries into the bidding process). Thus, the Court properly concluded that the mere fact of a joint bid, as pled, was not the alleged "but for" cause of WWE's injuries, which would have occurred regardless of that bid.

## IV.    ASSERTING THE COURT SHOULD HAVE IGNORED ITS BRIBERY ALLEGATIONS IS NOT A PROPER BASIS FOR RECONSIDERATION

Inescapably, WWE recognizes, as it must, that it cannot simultaneously advance its allegations of a bribery scheme and avoid the fatal consequences of those allegations on the assessment of antitrust injury and causation under Section 4 of the Clayton Act. To solve this conundrum, WWE contrives a legally absurd proposal to have its cake and eat it too by demanding that this Court simply ignore WWE's bribery allegations when assessing WWE's ability to satisfy the antitrust injury and causation requirements for its Sherman Act claim.

Remarkably, WWE argues that the Court's Order improperly "assumes that Shenker and Bell, in fact, were bribed," (Pl. Mem. at 8 n.2.) -- even though that is precisely what WWE has in fact pled. WWE then suggests that the Court should assume, arguendo, that its bribery allegations may not be accepted by a jury, in which case they would not now be an impediment to its Sherman Act claim. In this theater of the absurd, WWE concludes that, "[i]n the absence of bribes to Shenker and Bell, such injury presumably would be cognizable antitrust injury," and that the Court's ruling "improperly" forecloses that possibility. Id.

WWE's belated attempt to selectively rewrite its Amended Complaint is especially disingenuous given the hornbook law -- touted by WWE itself -- that, on a motion to dismiss under 12(b)(6), a court "'must accept as true all of the factual allegations set out in plaintiff's

16

complaint.'" Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2000) (citation omitted). (See Pl. Opp.

Br. at 12 (the "factual allegations of the complaint are presumed to be true") (citations omitted).)

Characteristically, WWE selectively invokes this axiomatic principle in its Motion when it is

expedient to do so. (See Pl. Mem. at 5 (discussing the allegation that an independent THQ

would have given WWE higher royalty rates); id. at 7 (same).) Rule 12(b)(6) standards, of

course, may not be invoked only when they purportedly serve WWE's case, but jettisoned when

they do not. Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 595 (2d Cir.

2005) ("[Third party plaintiffs] cannot proceed on the presumption that [plaintiffs'] allegations

are true, and then seek to evade the impact of those allegations when they are not conducive to

the theory it hopes to advance."); Suthers v. Amgen Inc., No. 05 Civ. 4158 (PKC), 2006 WL

1062895, at *1 (S.D.N.Y. Apr. 19, 2006) (noting that court is not required to "'disregard factual

allegations that undermine a plaintiff's claim'" and granting motion to dismiss where "plaintiff's

allegations negate the existence of a viable cause of action") (internal citations omitted);

Weissman v. Seiyu, Ltd., No. 98 CIV 6976 HB, 2000 WL 666338 at *3 (S.D.N.Y. May 22,

2000) ("Alternatively, Plaintiff argues that the Statute of Frauds does not bar his breach of

contract claim . . . . To arrive at this interpretation of the Amended Complaint, the Court would

have to either ignore [a specific allegation]. . . or draw inferences in Defendant's favor, neither of

which is permissible on a motion to dismiss.")

        In all events, even if WWE could now expunge the bribery scheme (which,

coupled with WWE's complete lack of diligence, is the admitted source of WWE's alleged

ignorance of the actual bids it was receiving) from the Amended Complaint, WWE does not and

cannot allege any reason why it would then have suffered any injury (much less antitrust injury).

17

Under WWE's hypothesized complaint, WWE would possess <u>perfect knowledge</u> of all of the potentially higher bids and an unfettered ability to exploit the admittedly "intense" competition for its licenses (AC ¶ 58), notwithstanding the one joint bid from JAKKS/THQ.[7] Thus, irrespective of the alleged bribes, WWE still cannot allege how the joint bid caused it any antitrust injury: WWE was not "forced to accept" the THQ/JAKKS joint bid and was free to seek or entertain competitive bids.

## CONCLUSION

For the foregoing reasons, the JAKKS Defendants respectfully request that WWE's motion for reconsideration be denied.

Dated: June 23, 2006

                                         Respectfully submitted,


FEDER, KASZOVITZ, ISAACSON,          SKADDEN, ARPS, SLATE,
WEBER, SKALA, BASS & RHINE LLP         MEAGHER & FLOM LLP
Murray L. Skala (MS 9354)
Jonathan D. Honig (JH 7577)          By:    /s/ Jonathan J. Lerner
750 Lexington Avenue                        Jonathan J. Lerner (JL 7117)
New York, New York 10022                    Michael H. Gruenglas (MG 8705)
(212) 888-8200                              James A. Keyte (JK 0680)
                                            Maura B. Grinalds (MG 2836)
                                            Four Times Square
                                            New York, New York  10036
                                            (212) 735-3000


                                            Attorneys for the JAKKS Defendants

---

[7]     Moreover, in its hypothetical musings, WWE still would have to persuade the Court that an openly disclosed and accepted joint bid is <u>per se</u> bid-rigging, which is a more than dubious proposition. (<u>See</u> JAKKS Sherman Act Reply Br. at 3-8.)