UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X    :
                                           :

WORLD WRESTLING ENTERTAINMENT, INC.,    :
                                           :    04 CV 8223 (KMK)
               Plaintiff,    :    (ECF CASE)
                                           :

     - against -    :
                                           :    July 7, 2006

JAKKS PACIFIC, INC.; JAKKS PACIFIC (H.K.)    :
LIMITED; ROAD CHAMPS LIMITED; THQ, INC.;    :
THQ/JAKKS PACIFIC LLC; STANLEY SHENKER    :
AND ASSOCIATES, INC.; STANLEY SHENKER;    :
BELL LICENSING, LLC; JAMES BELL; JACK    :
FRIEDMAN; STEPHEN BERMAN; JOEL    :
BENNETT; and BRIAN FARRELL,    :
                                           :

             Defendants.    :
                                           :
-------------------------------------------------------------X    :

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE EXHIBIT B TO THE DECLARATION OF JONATHAN J. LERNER DATED JUNE 2, 2006

William O. Purcell (WP 5001)
KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP
599 Lexington Avenue
New York, New York 10022-6030
(212) 536-3900 (phone)
(212) 536-3901 (fax)

Jerry S. McDevitt
Curtis B. Krasik
Amy L. Barrette
KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, Pennsylvania 15222
(412) 355-6500 (phone)
(412) 355-6501 (fax)

Attorneys for Plaintiff, World Wrestling Entertainment, Inc.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ............................................................................................1

II.   ARGUMENT ...................................................................................................3

       A.    The Jakks Settlement Agreement Is Not Properly Before The Court On A Rule
             12(b)(6) Motion ...................................................................................3

             1.    The Release Defense Does Not Appear On The Face Of The Amended
                   Complaint............................................................................5

             2.    The Court May Not Take Judicial Notice Of The Release..........................8

       B.    The Lerner Declaration Is An Improper Vehicle To Attempt To Introduce The
             Jakks Settlement Agreement Into Evidence ........................................................10

             1.    Lerner Is Not Competent To Testify Regarding The Jakks Settlement
                   Agreement And Therefore His Affidavit Cannot Introduce It Into
                   Evidence..........................................................................10

             2.    The Lerner Declaration Is Used To Introduce The Jakks Settlement
                   Agreement Into Evidence Because The Jakks Defendants Know That
                   Its Release Provision Does Not Apply To The Claims At Issue ...............12

III.  CONCLUSION................................................................................................17

## TABLE OF AUTHORITIES

Cases:                                                                                              Page:

*A.M. Larson Co. v. Lawlor Ins. Agency*, 220 A.2d 32 (Conn. 1966)..............................................15

*Amaker v. Weiner*, 179 F.3d 48 (2d Cir. 1999)..............................................................................4

*AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63 (2d Cir. 2003) ......................5

*Anderson v. Dillard's, Inc.*, 109 F. Supp. 2d 1116 (E.D. Mo. 2000)..............................................11

*Aquilio v. Manaker*, Nos. 90-CV-45, 91-CV-93, 1991 WL 207473 (N.D.N.Y.
    Oct. 10, 1991) ..............................................................................................................................7

*Brodeur v. City of New York*, 04-CV-1859 (JG), 2005 WL 1139908 (E.D.N.Y.
    May 13, 2005)................................................................................................................................9

*Burger v. Health Ins. Plan of Greater New York*, No. 86 CIV. 8238 (KC), 1988 WL 60267
    (S.D.N.Y. June 7, 1988)..............................................................................................................12

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 489 (S.D.N.Y. 2003) ..................................................7, 8, 9

*Carnrite v. Granada Hosp. Group,* Inc., 175 F.R.D. 439 (W.D.N.Y. 1997)................................11

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)................................................3, 4, 6

*Cheung v. New York Palace Hotel*, No. 03-CV-0091 (DLI)(WDW), 2005 WL 2387573
    (S.D.N.Y. Sept. 28, 2005)............................................................................................................9

*City of Amsterdam v. Goldreyer, Ltd.*, 882 F. Supp. 1273 (E.D.N.Y. 1995)..............................8, 9

*Connecticut Co. v. Division 425 et al. of the Amalgamated Assoc. of Street, Elec. Railway
    and Motor Coach Employees of Amer.*, 164 A.2d 413 (Conn. 1960)................................13

*Continental Orthopedic Appliances, Inc. v. Health Ins. Plan of Greater New York, Inc.*, 994
    F. Supp. 133 (E.D.N.Y. 1998) .....................................................................................................8

*Courtenay Communications Corp. v. Hall*, 334 F.3d 210 (2d Cir. 2003) .......................................4

*Crivera v. City of New York*, 03 CV 447 (JG), 2004 WL 339650 (E.D.N.Y. Feb. 24, 2004) .......10

*DePalma v. Relaty IQ Corp.*, No. 01 CIV 446 RMB, 2002 WL 461647 (S.D.N.Y.
    Mar. 25, 2002) ..............................................................................................................................4

*Donahue v. Uno Restaurants, LLC*, No. 3:06-CV-53, 2006 WL 1373094 (W.D.N.Y. May 16, 2006) ..................................................................................................5, 7

*Foster v. AlliedSignal, Inc.*, 98 F. Supp. 2d 1261 (D. Kan. 2000), rev'd on other grounds, 293 F.3d 1187 (10th Cir. 2002) ...................................................................11

*Friedel v. City of Madison*, 832 F.2d 965 (7th Cir. 1987) .............................................12

*Friedel v. City of New York*, 210 F.3d 79 (2d Cir. 2000).................................................3

*Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985).........................................................3

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542 (9th Cir. 1989) .....................11

*Hollander v. Amer. Cyanamid Co.*, 172 F.3d 192 (2d Cir. 1999)....................................12

*Holmes v. Long Island Railroad*, No. 96 CV 6196(NG), 1998 WL 960299 (E.D.N.Y. Dec. 10, 1998)..............................................................................................7

*In Re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189 (S.D.N.Y. 2003) ...........................16

*In re KeySpan Corp. Sec. Litig.*, No. 01 CV 5852 (ARR), 2003 WL 21981806 (E.D.N.Y. July 30, 2003)..............................................................................................5

*Indus. Risk Ins. v. Port Authority of New York and New Jersey*, 387 F. Supp. 2d 299 (S.D.N.Y. 2005) ....................................................................................9, 10

*Kamen v. Amer. Telephone & Telegraph Co.*, 791 F.2d 1006 (2d Cir. 1986)................................10

*Kopec v. Coughlin*, 922 F.2d 152 (2d Cir. 1991)..........................................................3

*Kramer v. Time Warner Inc.*, 937 F.2d 767 (2d Cir. 1991) ..............................................16

*Kuhn v. Pacific Mut. Life Ins. Co. of Cal.*, 37 F. Supp. 102 (S.D.N.Y. 1941)............................4, 7

*Levenstein v. Salafsky*, 164 F.3d 345 (7th Cir. 1998) ....................................................5

*Levine v. Advest, Inc.*, 714 A.2d 649 (Conn. 1998) .......................................................15

*Levine v. Columbia Labs., Inc.*, No. 03 Civ. 8943(LAK), 2004 WL 1392372 (S.D.N.Y. June 22, 2004)..........................................................................7

*Liberty Mut. Ins. Co. v. Rotches Pork Packers*, 969 F.2d 1384 (2d Cir. 1992)................................8

*Livingston v. Adirondack Bev. Co.*, 141 F.3d 434 (2d Cir. 1998)................................................4

*McKenna v. Wright*, 386 F.3d 432 (2d Cir. 2004) ........................................................4, 5

*Mezzacappa Bros., Inc. v. City of New York*, No. 03 Civ. 0223 (NRB), 2003 WL 22801429
    (S.D.N.Y. Nov. 24, 2003) ........................................................................10

*Muldoon v. Homestead Insulation Co.*, 650 A.2d 1240 (Conn. 1994) ........................................13

*Neewra, Inc. v. Manakh Al Khaleej Gen. Trading & Contracting Co.*, No. 03 Civ.
    2936(MBM), 2004 WL 1620874 (S.D.N.Y. July 20, 2004).................................10

*Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660 (2d Cir. 1996) .................3

*Olin Corp. v. Consolidated Aluminum Corp.*, 5 F.3d 10 (2d Cir. 1993) .......................................13

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998) ............................................5

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000).................................................12

*Santana Prod., Inc. v. Bobrick Washroom Equip., Inc.*, 69 F. Supp. 2d 678 (M.D. Pa. 1999) .....10

*Straight Arrow Prod. v. Conversion Concepts, Inc.*, No. 01-221, 2001 WL 1530637
    (E.D. Pa. Dec. 3, 2001) ........................................................................10

*United States v. Bosurgi*, 530 F.2d 1105 (2d Cir. 1976)................................................................11

*United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082
    (2d Cir. 1995)........................................................................................10

*VKK Corp. v. National Football League*, 244 F.3d 114 (2d Cir. 2001) .......................................13

*Walder v. Paramount Publix Corp.*, 132 F. Supp. 912 (S.D.N.Y. 1955) ...............................14, 15

*Williams v. Stone*, 923 F. Supp. 689 (E.D. Pa. 1996) , aff'd, 109 F.3d 890 (3d Cir. 1997) ..........10

*Wing Hing (Tang) Fabrics Manufacturing Co. v. Rafaella Sportswear, Inc.*, No. 84
    Civ. 9024 (JFK), 1986 WL 9688 (S.D.N.Y. Aug. 26, 1986).............................11

*Zimmerman v. Prime Med. Serv., Inc.*, 729 F. Supp. 23 (S.D.N.Y. 1990) ...............................7, 13

*Zurich Am. Ins. Co. v. Dah Sing Bank, Ltd.*, No 03 Civ. 7778(DLC), 2004 WL 1328215
    (S.D.N.Y. June 15, 2004)....................................................................10, 11

Rules:

Fed.R.Civ.P. 8 ................................................................................................4

Fed.R.Evid. 201 .................................................................................................................................8

Other Authorities:

Moore's Fed. Practice 3d § 56.14 ..........................................................................................11, 12

# I. <u>INTRODUCTION</u>

WWE moves to strike Exhibit B to the Declaration of Jonathan L. Lerner submitted in support of the Jakks Defendants' motion to dismiss, and all arguments in the Jakks Defendants' motion to dismiss relating to the release defense. Exhibit B is a Settlement Agreement and General Release of All Claims between WWE and Jakks Pacific dated January 15, 2004 (the "Jakks Settlement Agreement") relating to the toy license between WWE and Jakks. An alleged release can be raised in a pre-answer motion to dismiss only if: (1) it is attached to, referenced in, relied upon, or integral to WWE's Amended Complaint, and (2) it is a type of document of which the Court may take judicial notice. Neither circumstance exists here.

Ignoring these well-settled standards, the Jakks Defendants improperly attempt to raise the Jakks Settlement Agreement as an absolute bar to all of WWE's claims at this preliminary phase of the proceedings. Moreover, and again in violation of governing law, the alleged release is improperly placed before the Court based on the declaration of someone with no personal knowledge of the circumstances surrounding the drafting, execution and, most importantly, intent of the document. By doing so, the Jakks Defendants hope to avoid having a corporate officer with knowledge of the intent of the document take what would be a false oath, since all concerned know the Jakks Settlement Agreement has precisely nothing to do with any of the claims at issue.

On its face, the Jakks Settlement Agreement plainly demonstrates that it was not intended to cover the claims in this case, including, among other things:

- the Jakks Settlement Agreement only released claims "arising from or relating to the Audit," *see* Jakks Settlement Agreement at ¶ 2, which is described as "an audit of

Jakks accounting records for the accounting period of the second quarter of 1996

through June 30, 2002," s*ee id.,* Recitals;

- the Audit dispute that was resolved pursuant to the Jakks Settlement Agreement only

  involved royalty payment issues relating to the parties' toy license, *see id.*

- the Audit to which the Jakks Settlement Agreement applied was conducted pursuant

  to the parties' toy license only, and thus did not and could not relate to the videogame

  license (nor were THQ, THQ/Jakks LLC, Shenker, or Bell parties to or even

  referenced in the Jakks Settlement Agreement), *see id.*; and

- the Jakks Settlement Agreement contains a Reservation of Rights provision pursuant

  to which the Jakks Settlement Agreement does not "limit any rights or remedies that

  the Parties may have . . . in respect of any claim not related to the Audit," *see id.* ¶ 17.

In essence, the Jakks Defendants now invite this Court to determine the intent and effect

of the Jakks Settlement Agreement in a vacuum divorced from the actual framework of the

document and the circumstances surrounding its execution to avoid confronting—or apparently

even disclosing to this Court—the intended narrow scope of the release as well as the Jakks

Defendants' prior fatal corporate admissions in the Shenker state court litigation negating their

current litigation posture.[1]  Connecticut law (which governs the construction of the Jakks

Settlement Agreement), however, prohibits such sophistry—mandating that the parties' intent

controls the scope and effect of a release.

Although there is ample evidence to be developed in this regard, it is telling that the

Jakks Defendants never mentioned the Jakks Settlement Agreement as an alleged defense in any

---

[1]  When and if the alleged release is properly before the Court, WWE anticipates discovery will
conclusively prove that <u>nobody</u> understood or intended the Jakks Settlement Agreement to cover anything
other than royalty claims relating to the toy license.

of the Jakks Defendants' numerous disclosures of this lawsuit to the Securities and Exchange

Commission ("SEC") until after retaining litigation counsel, demonstrating that the release

argument is nothing more than a post hoc litigation strategy.

## II.  ARGUMENT

### A.    The Jakks Settlement Agreement Is Not Properly Before The Court On A Rule 12(b)(6) Motion

Under controlling Second Circuit law, a district court commits reversible error "when it

'consider[s] affidavits and exhibits submitted by' defendants, or relies on factual allegations

contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss." *Friedel v.*

*City of New York,* 210 F.3d 79, 83-84 (2d Cir. 2000) (citation omitted); *see also Newman &*

*Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir. 1996) (reversing grant of Rule

12(b)(6) motion to dismiss because "the district court explicitly relied upon material which was

not in the pleadings, specifically the Affirmation and its attachments.").

This directive flows from the Second Circuit's view that it "do[es] not read Rule 12(b) as

vesting in the district court the authority to consider matters outside the pleadings and summarily

to designate them 'uncontroverted.'" *Kopec v. Coughlin,* 922 F.2d 152, 155 (2d Cir. 1991).

According to the Second Circuit, "[t]he court's function on a Rule 12(b)(6) motion is not to

weigh the evidence that might be presented at trial but merely to determine whether the

complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir. 1985).

Indeed, "when a district court considers certain extra-pleading materials and excludes others, it

risks depriving the parties of a fair adjudication of the claims by examining an incomplete

record." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002) ("Consideration of

extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2) . . .").[2]

Pursuant to this governing law, it is well settled in this Court that affirmative defenses under Fed. R. Civ. P. 8(c), such as release, generally cannot not be raised by a pre-answer motion to dismiss pursuant to Rule 12(b)(6). *Kuhn v. Pacific Mut. Life Ins. Co. of Cal.,* 37 F. Supp. 102, 104-05 (S.D.N.Y. 1941) ("The defendants herein are attempting by way of affidavit to assert new matter purporting to show a . . . release as mentioned above. These matters are properly interposed in an answer, Rule 8(c), and cannot be availed of upon a motion to dismiss under Rule 12(b)."). In particular, "the validity of a release is a peculiarly fact-sensitive inquiry." *Livingston v. Adirondack Bev. Co.,* 141 F.3d 434, 437-38 (2d Cir. 1998); *see also DePalma v. Relaty IQ Corp.,* No. 01 CIV 446 RMB, 2002 WL 461647, at *3 (S.D.N.Y. Mar. 25, 2002) (factual disputes as to the validity of the release preclude consideration on a motion for judgment on the pleadings).

A release defense only may be considered on a Rule 12(b)(6) motion under two limited exceptions: (1) if the defense "appears on the face of the complaint," *McKenna v. Wright,* 386

---

[2]  As a matter of law, if the Court were to consider the Jakks Settlement Agreement at this stage of the proceedings, the Court would be "obligated to convert the [Jakks Defendants' motion to dismiss] to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56." *Chambers,* 282 F.3d at 154; *see also Courtenay Communications Corp. v. Hall,* 334 F.3d 210, 213 (2d Cir. 2003) ("When presented with a 12(b)(6) motion, the district court may not consider matters outside of the pleadings without converting the motion into a motion for summary judgment."). Second Circuit law holds that "vigorous enforcement of the conversion requirement helps ensure that courts will refrain from engaging in fact-finding when considering a motion to dismiss, and also that plaintiffs are given a fair chance to contest defendants' evidentiary assertions where a court nonetheless does consider evidence extrinsic to the complaint in that context." *Courtenay Communications Corp.,* 334 F.3d at 213 (quoting *Amaker v. Weiner,* 179 F.3d 48, 50 (2d Cir. 1999)); *see also Chambers,* 282 F.3d at 152 (if motion to dismiss is treated as one for summary judgment "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion."). The Jakks Defendants have neither sought nor received permission to file a motion for summary judgment and Mr. Lerner is incompetent to introduce the Jakks Settlement Agreement under any circumstances (for the reasons described in detail in Section II.B.1 below).

F.3d 432, 436 (2d Cir. 2004) (*quoting Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74

(2d Cir. 1998)); or (2) if the defense is a matter of which the court can take judicial notice.  *See*

*AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003).  These are

narrow exceptions that are "not intended to grant litigants license to ignore the distinction

between motions to dismiss and motions for summary judgment."  *Levenstein v. Salafsky,* 164

F.3d 345, 347 (7th Cir. 1998); *see also In re KeySpan Corp. Sec. Litig.,* No. 01 CV 5852 (ARR),

2003 WL 21981806, at *15 (E.D.N.Y. July 30, 2003).  As one recent case pertinently

summarized the very same issues before this Court in denying the a motion to dismiss based

upon a release:

> Defendants move to dismiss based upon the defense of a release.
> That issue may not, however, be properly resolved on a motion to
> dismiss.  Plaintiff's Complaint makes no mention of a release and
> any such release does not form the basis of Plaintiff's suit.
> Further, there is no basis upon which the Court may take judicial
> notice of any release.  Accordingly, the documents submitted by
> Defendants in support of their motion to dismiss may not be
> considered by the Court on a Rule 12 motion.  The validity of any
> contract may properly be determined upon a motion for summary
> judgment or at trial.

*Donahue v. Uno Restaurants, LLC,* No. 3:06-CV-53, 2006 WL 1373094, at *1 (W.D.N.Y. May

16, 2006).

### 1.    The Release Defense Does Not Appear On The Face Of The Amended Complaint

It is beyond cavil that the Jakks Defendants' release defense does not appear on the face

of the Amended Complaint.  An affirmative defense appears on the face of the complaint—and is

thereby within the purview of a Rule 12(b)(6) motion—only if facts establishing the defense

appear:  (i) within the four corners of the complaint itself; (ii) in a document attached to the

complaint or incorporated by reference therein; or (iii) in a document that, although not attached

or incorporated, nevertheless is "integral" to the complaint because the plaintiff "relies heavily upon its terms and effect" in bringing its claims.  *See Chambers*, 282 F.3d at 153.  Crucially, "a plaintiff's <u>reliance</u> on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.* (emphasis in original).

Simply put, the Jakks Settlement Agreement in general—let alone the specific release provision of the Jakks Settlement Agreement—is <u>not</u> mentioned in, attached to, or incorporated into the Amended Complaint.  Fatally, the Jakks Defendants do not even insinuate any reference to the Jakks Settlement Agreement in WWE's Amended Complaint.  Effectively conceding the complete lack of any such textual reference, the Jakks Defendants awkwardly attempt to bootstrap the Jakks Settlement Agreement to WWE's allegations that the Jakks Defendants fraudulently concealed information and documents concerning payments to Shenker, SSAI, Bell, and Stanfull during an audit WWE conducted of the Jakks Defendants pursuant to the parties' toy license.  WWE's allegations concerning the audit, however, nowhere reference the Jakks Settlement Agreement—a point the Jakks Defendants do not dispute.  The Jakks Defendants thus do not contend, because they cannot contend, that the Jakks Settlement Agreement appears on the face of WWE's Amended Complaint.

Similarly, the Jakks Settlement Agreement is not "integral" to the Amended Complaint. A document is integral to a complaint only if the complaint "relies heavily upon its terms and effect." *Chambers*, 282 F.3d at 153.  In *Chambers*, the Second Circuit held that certain contracts were integral to the complaint because the complaint "was replete with references to the contracts and request[ed] judicial interpretation of its terms." *Id.* at 154 n.4.  In contrast, WWE's Amended Complaint contains <u>no</u> references to the Jakks Settlement Agreement and WWE's

claims in this action in no way are based on its terms. WWE, therefore, did not rely at all—let alone "heavily"—upon the Jakks Settlement Agreement in its Amended Complaint.

Courts in this Circuit repeatedly have ruled that a release which does not appear on the face of the complaint <u>cannot</u> be the basis for dismissal on a Rule 12(b)(6) motion. *Donahue*, 2006 WL 1373094, at *1; *Levine v. Columbia Labs., Inc.*, No. 03 Civ. 8943(LAK), 2004 WL 1392372, at *1 (S.D.N.Y. June 22, 2004) (Rule 12(b)(6) motion denied where release did not appear on the face of the complaint despite a "passing reference" to the agreement containing it); *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 489, 498 (S.D.N.Y. 2003) (motion to dismiss denied because the alleged general release was not mentioned in, attached to, incorporated by reference in, or integral to the complaint); *Holmes v. Long Island Railroad,* No. 96 CV 6196(NG), 1998 WL 960299, at *3 (E.D.N.Y. Dec. 10, 1998) ("Because the release form in question is not attached to the complaint as an exhibit or incorporated by reference, its interpretation is not a proper subject for defendants' motion to dismiss."); *Aquilio v. Manaker*, Nos. 90-CV-45, 91-CV-93, 1991 WL 207473, at *5 (N.D.N.Y. Oct. 10, 1991) ("Since this Court's determination of defendants' motion to dismiss is based solely on examination of the face of plaintiffs' complaint, the question of whether the alleged contractual releases serve to bar plaintiffs' claims is not properly before the Court at this time [on a Rule 12(b)(6) motion].") (internal citations omitted); *Zimmerman v. Prime Med. Serv., Inc.,* 729 F. Supp. 23, 25-26 (S.D.N.Y. 1990) (denying motion to dismiss based upon a release that did not appear on the face of the complaint); *Kuhn,* 37 F. Supp. at 104-05 (denying defendants' Rule 12(b)(6) motion to dismiss that "attempt[ed] by way of affidavit to assert new matter purporting to show a . . . release"). The Jakks Defendants, therefore, cannot raise the release on their motion to dismiss as a matter of law.

2.    **The Court May Not Take Judicial Notice Of The Release**

The Court cannot properly take judicial notice of the contents of the Jakks Settlement Agreement under Fed. R. Evid. 201. "The Federal Rules of Evidence permit a court to take judicial notice of facts not subject to reasonable dispute." *Calcutti,* 273 F. Supp. 2d at 498 (internal citation omitted). As germane here, such facts must be "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.* A contract between private parties is not such a fact that can be judicially noticed. *Continental Orthopedic Appliances, Inc. v. Health Ins. Plan of Greater New York, Inc.,* 994 F. Supp. 133, 142 (E.D.N.Y. 1998).

Demonstrating a bit of tactical gamesmanship on this issue, the Jakks Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Strike in the *In re Jakks Pacific, Inc. Shareholder Class Action Litigation* ("Jakks Class Action Br.") took the position that, because the Jakks Settlement Agreement was filed with the Court in connection with the Jakks Defendants' original motion to dismiss in this action, it is a "matter of public record" of which the Court can take judicial notice (Jakks Class Action Br. at 3). The Jakks Defendants' argument is circular and indeed non-sensical; it would enable a party to transform any unauthenticated and inadmissible document into a document purportedly subject to judicial notice simply by including it in a court filing.

Moreover, the extent of judicial notice is not as broad as the Jakks Defendants invite this Court to construe it. "New York law is clear that a court may take judicial notice of a document filed in another court 'not for the truth of the matter asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" *City of Amsterdam v. Goldreyer, Ltd.,* 882 F. Supp. 1273, 1278-79 (E.D.N.Y. 1995) (*quoting Liberty Mut. Ins. Co. v. Rotches Pork Packers,* 969 F.2d 1384, 1388-89 (2d Cir. 1992)); *see also Calcutti,* 273 F. Supp. 2d at 499.

Thus, the documents "cannot be used substantively for their truth. . . . Defendants cannot use [the documents] to verify or disprove any disputed substantive issues in this action." *City of Amsterdam,* 882 F. Supp. at 1279 (holding that accord and satisfaction defense depends on validity of release which implicates questions of fact that must be resolved at trial, not on a Rule 12(b)(6) motion to dismiss).

This limitation on the extent of judicial notice specifically has been applied by this Court in the context of a release. In *Calcutti,* Judge Marrero refused to take judicial notice of a purported general release that the defendants attempted to submit in support of their motion to dismiss because "it is clear that [the defendants] submitted the General Release in order to demonstrate the truth of the contents therein"—namely, that the plaintiff's claims were subject to the release and, therefore, should be dismissed on the defendants' Rule 12(b)(6) motion. Equally here, the Court cannot take judicial notice of the Jakks Settlement Agreement in order to substantively construe its validity and/or applicability relative to WWE's claims on the Jakks Defendants' motion to dismiss.

In sum, because the release defense does not appear on the face of the Amended Complaint and is not a matter of which the Court may take judicial notice, it is not properly before the Court and must stricken. The Jakks Defendants' motion to dismiss based upon the release similarly should be denied.[3]

---

[3]  The cases cited by the Jakks Defendants provide no justification for raising the affirmative defense of release in their 12(b)(6) motion, as the releases at issue in those cases either were expressly referenced in, attached to, or incorporated by reference in, plaintiff's complaint or the plaintiff did not object to their consideration on a Rule 12(b)(6) motion, as WWE most certainly does here. *See Cheung v. New York Palace Hotel,* No. 03-CV-0091 (DLI)(WDW), 2005 WL 2387573, at *2 (S.D.N.Y. Sept. 28, 2005) (noting that severance agreement that contained the release at issue "was incorporated by reference" into plaintiff's complaint); *Brodeur v. City of New York,* 04-CV-1859 (JG), 2005 WL 1139908, at *3 (E.D.N.Y. May 13, 2005) (noting that general release at issue was a public document integral to plaintiff's complaint); *Indus. Risk Ins. v. Port Authority of New York and New Jersey,* 387 F. Supp. 2d 299, 303 (S.D.N.Y. 2005) (noting that plaintiff did not object to consideration of release on Rule 12(b)(6)

**B.    The Lerner Declaration Is An Improper Vehicle To Attempt To Introduce The Jakks Settlement Agreement Into Evidence**

      **1.    Lerner Is Not Competent To Testify Regarding The Jakks Settlement Agreement And Therefore His Affidavit Cannot Introduce It Into Evidence**

The Second Circuit has ruled that, even in the context of a Rule 12(b)(1) or (2) motion challenging jurisdiction where affidavits can be considered, "evidence submitted outside the pleadings must be competent." *Kamen v. Amer. Telephone & Telegraph Co.,* 791 F.2d 1006, 1011 (2d Cir. 1986). "[T]he body of decisions under Rule 56 offers guidelines in considering evidence submitted outside the pleadings." *Kamen,* 791 F.2d at 1011. Thus, an affidavit that "contains no information to indicate a basis in personal knowledge for the affiant's conclusory statement" should not be considered by the Court. *Id.*; *see also United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.,* 44 F.3d 1082, 1084 (2d Cir. 1995) (refusing to consider affidavit that is not based on personal knowledge for purpose of Rule 12(b)(2) motion); *Neewra, Inc. v. Manakh Al Khaleej Gen. Trading & Contracting Co.,* No. 03 Civ. 2936(MBM), 2004 WL 1620874, at \*2 n.3 (S.D.N.Y. July 20, 2004) ("To the extent that Wise's declaration asserts facts that are not based on Wise's personal knowledge, this declaration will be disregarded."); *Zurich Am. Ins. Co. v. Dah Sing Bank, Ltd.,* No 03 Civ. 7778(DLC), 2004 WL

---

motion to dismiss); *Mezzacappa Bros., Inc. v. City of New York,* No. 03 Civ. 0223 (NRB), 2003 WL 22801429, at \*7 n.16 (S.D.N.Y. Nov. 24, 2003) (noting that court confirmed with plaintiff's counsel that release could be considered on defendant's motion to dismiss); *Williams v. Stone,* 923 F. Supp. 689, 690 n.1 (E.D. Pa. 1996) (release attached as exhibit to amended complaint), *aff'd,* 109 F.3d 890 (3d Cir. 1997); *Straight Arrow Prod. v. Conversion Concepts, Inc.,* No. 01-221, 2001 WL 1530637, at \*1 n.1 (E.D. Pa. Dec. 3, 2001) (release appended to and referenced in complaint, and plaintiff sought declaration that release was void); *Santana Prod., Inc. v. Bobrick Washroom Equip., Inc.,* 69 F. Supp. 2d 678, 686 (M.D. Pa. 1999) (third-party complaint alleged that prior action was settled). The remaining case cited by the Jakks Defendants involved a release contained in a prior court pleading of which judicial notice could be taken and thus similarly is inapposite to the release contained in the Jakks Settlement Agreement that the Jakks Defendants improperly seek to raise on their Rule 12(b)(6) motion to dismiss. *Crivera v. City of New York,* 03 CV 447 (JG), 2004 WL 339650, at \*4 (E.D.N.Y. Feb. 24, 2004).

1328215, at *1 n.2 (S.D.N.Y. June 15, 2004) (refusing to consider attorney affidavit that is not based on personal knowledge for purpose of Rule 12(b)(2) motion).

In particular, "[a]n attorney affidavit not based on personal knowledge is an impermissible substitute for the personal knowledge of a party." *Carnrite v. Granada Hosp. Group, Inc.,* 175 F.R.D. 439, 449 (W.D.N.Y. 1997); *see also United States v. Bosurgi,* 530 F.2d 1105, 1111 (2d Cir. 1976) ("We agree that the attorney's affidavit was not a permissible substitute for personal knowledge of the Bosurgis with respect to this crucial issue."). Most pertinent here, an attorney is not competent to testify regarding documents of which the attorney "has no personal knowledge of any of the information contained therein, the document's source, or its authenticity." *Foster v. AlliedSignal, Inc.,* 98 F. Supp. 2d 1261, 1265 (D. Kan. 2000), *rev'd on other grounds,* 293 F.3d 1187 (10th Cir. 2002). Rather, the documents must be authenticated by the affidavit and "the affiant must be a person through whom the exhibits could be admitted into evidence." *Anderson v. Dillard's, Inc.,* 109 F. Supp. 2d 1116, 1121 (E.D. Mo. 2000) (*quoting Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir. 1989); *see also Wing Hing (Tang) Fabrics Manufacturing Co. v. Rafaella Sportswear, Inc.,* No. 84 Civ. 9024 (JFK), 1986 WL 9688, at *2 (S.D.N.Y. Aug. 26, 1986) ("[T]he documents annexed as exhibits to [counsel's] affidavit must also be disregarded, as they are not submitted by a person through whom the exhibits could be admitted into evidence.") (citation omitted).

As a leading commentator has noted, "the practice of an attorney utilizing his affidavit as a vehicle through which other documents are offered in support of a litigant's position ordinarily is not acceptable . . . unless the documents are already in the record, were created as part of the litigation (e.g., discovery materials), or relate to client representation or law firm matters on which the attorney is competent to testify." 11 James Wm. Moore et al., *Moore's Fed. Practice*

§ 56.14 (3d ed.); *see also Friedel v. City of Madison,* 832 F.2d 965, 970 (7th Cir. 1987) (noting

that "[t]he use of affidavits by counsel . . . is a tactic fraught with peril" in striking certain

evidence offered through exhibits attached to counsel's affidavit of which counsel did not have

personal knowledge). An affidavit that is not based on the affiant's personal knowledge is

subject to a motion to strike. *See Hollander v. Amer. Cyanamid Co.,* 172 F.3d 192, 198 (2d Cir.

1999), *abrogated on other grounds, Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133

(2000).[4]

The Lerner Declaration is patently defective under these standards. Fundamentally, Mr.

Lerner is not a person through whom the Jakks Settlement Agreement could be admitted into

evidence. Nor does the Lerner Declaration assert any basis to evidence Mr. Lerner's personal

knowledge of its intent, the circumstances surrounding its execution, its validity or its

authenticity.

### 2. The Lerner Declaration Is Used To Introduce The Jakks Settlement Agreement Into Evidence Because The Jakks Defendants Know That Its Release Provision Does Not Apply To The Claims At Issue

The Jakks Defendants seek to create the wholly false impression that the highest-ranking

officers of Jakks believe that the Jakks Settlement Agreement actually was intended to bar the

claims in this action. In reality, however, the Jakks Defendants know that the Jakks Settlement

Agreement was not intended to, and does not, cover WWE's claims. Under the operative

governing law, the Court must consider the circumstances surrounding the formation of the Jakks

Settlement Agreement in construing the scope and effect of the release at issue. In addition to

_____

[4]  In fact, this Court has granted Rule 11 sanctions against an attorney who submitted an affidavit in support of a Rule 12(b) motion because "[c]ounsel should have known that it was improper to present as evidence an attorney's affidavit that was not based on personal knowledge." *Burger v. Health Ins. Plan of Greater New York,* No. 86 CIV. 8238 (KC), 1988 WL 60267, at *8 (S.D.N.Y. June 7, 1988).

substantively foreclosing the Jakks Defendants' argument, the required analysis of such
circumstances further precludes consideration on a motion to dismiss because the Court does not
have the full record before it.

The Jakks Settlement Agreement provides that it "shall be governed by, and construed in
accordance with, the laws of the State of Connecticut . . . ." Jakks Settlement Agreement at ¶
9(a).[5]  Under Connecticut law,

> [i]t is well settled that a release, being a contract whereby a party
> abandons a claim to a person against whom that claim exists, is
> subject to rules governing the construction of contracts.  The
> intention of the parties, therefore, controls the scope and effect of
> the release, and this intent is discerned from the language used and
> the circumstances of the transaction.  It is similarly stated that <u>a
> release, no matter how broad its terms, will not be construed to
> include claims not within the contemplation of the parties</u> . . . .

*Muldoon v. Homestead Insulation Co.,* 650 A.2d 1240, 1246 (Conn. 1994) (emphasis added).  In
ascertaining intent, courts "consider not only the language used in the contract but also the
circumstances surrounding the making of the contract, the motives of the parties and the
purposes which they sought to accomplish." *Connecticut Co. v. Division 425 et al. of the
Amalgamated Assoc. of Street, Elec. Railway and Motor Coach Employees of Amer.,* 164 A.2d
413, 417 (Conn. 1960); *see also Zimmerman,* 729 F. Supp. at 25-26 (denying motion to dismiss
based on alleged release because "the plaintiffs are first entitled to discovery of the release to
assess its scope and the circumstances under which it was provided").

Controlling law thus holds that the Court must determine whether the parties
contemplated and intended the release of the claims in this action under the Jakks Settlement

---

[5] "Federal law governs all questions relating to the validity of and defenses to purported releases of
federal statutory causes of action." *VKK Corp. v. National Football League,* 244 F.3d 114, 121 (2d Cir.
2001).  However, "the issue is settled in this Circuit" that the Court "would look to state law to provide
the content of federal law." *Olin Corp. v. Consolidated Aluminum Corp.,* 5 F.3d 10, 15 (2d Cir. 1993).

Agreement, which is an inherently factual inquiry into the circumstances surrounding the formation of the settlement agreement.  Indeed, although by no means all the evidence which will be introduced on this issue, the architecture of the Jakks Settlement Agreement itself is ample evidence that the parties did not contemplate or intend to release the claims at issue here, but only royalty-based claims relating to the toy license for the period under audit.

First, by its express terms, the Jakks Settlement Agreement only released claims "arising from or relating to the Audit," *see* Jakks Settlement Agreement at ¶ 2, which is described as "an audit of Jakks accounting records for the accounting period of the second quarter of 1996 through June 30, 2002." *See id.,* Recitals.  Moreover, the Jakks Settlement Agreement makes clear that the audit came about because "a dispute exist[ed] between the Parties concerning the Audit in that WWE contends Jakks failed to report various sales and that Jakks took unsupported deductions and wherein Jakks contends that it overpaid WWE." *Id.*  It is evident, therefore, that the Jakks Settlement Agreement was intended only to release claims relating to that toy license royalty dispute—no more.  *See Walder v. Paramount Publix Corp.,* 132 F. Supp. 912, 916-17 (S.D.N.Y. 1955) (limiting general clauses in a release consistent with narrower scope of "whereas" clauses).

Second, the Audit exclusively was conducted pursuant to, and in the context of, the Jakks Defendants' toy license only.  *See* Jakks Settlement Agreement, Recitals ("WHEREAS, WWE and Jakks entered into a Consumer Product License Agreement dated October 24, 1995 . . . for, among other products, WWE action figures.").  THQ, THQ/Jakks LLC and/or the videogame license are not in any way referenced in the Jakks Settlement Agreement.  As such, the release did not and could not apply to issues or claims asserted in this action relating to WWE's videogame license.

Third, while the Jakks Settlement Agreement expressly describes the dispute between the parties relating to toy license royalty payments that the Audit concerned and which the release was intended to cover, the Jakks Settlement Agreement does not in any way reference Shenker, Bell, Stanfull, improper payments, and/or the corruption of Shenker's and Bell's fiduciary duties of honest services to WWE. Claims involving hundreds of millions of dollars are not typically released for $200,000 by a document which makes utterly no reference to such claims, and which does not even purport to release the parties who would be released if in fact that were the intent.

Fourth, the Jakks Settlement Agreement contains an express "Reservation of Rights" provision that states, "Nothing, however, contained herein shall limit any rights or remedies that the Parties may have in contract, by law or otherwise in respect of any claim not related to the Audit." See Jakks Settlement Agreement at ¶ 17. Plainly, the inclusion of such a Reservation of Rights provision in the Jakks Settlement Agreement demonstrates that the parties did not intend the release to be a "general" release and to cover all claims that may exist between the parties, including, specifically, "any claim not related to the Audit" (emphasis added). Any other construction would render the Reservation of Rights provision "mere surplusage and inoperative"—an outcome proscribed by settled canons of contract interpretation under Connecticut law. *A.M. Larson Co. v. Lawlor Ins. Agency,* 220 A.2d 32, 34 (Conn. 1966); *see also Levine v. Advest, Inc.,* 714 A.2d 649, 660 (Conn. 1998) ("A contract should be construed so as to give full meaning and effect to all of its provisions.") (emphasis in original).

In addition, contrary to their current litigation positions, the Jakks Defendants tellingly never even mentioned the Jakks Settlement Agreement in any of the Jakks Defendants' numerous disclosures of this lawsuit to the SEC until after filing their motion to dismiss in

February 2005.  On October 19, 2004, ten days after WWE's meeting with the Jakks Defendants at which WWE presented a copy of WWE's original complaint, the Jakks Defendants filed an 8-K with the SEC that disclosed the nature of WWE's claims (attached as Exhibit 1).[6]  Although the Jakks Defendants surely could have asserted the Jakks Settlement Agreement in their disclosure as an absolute bar to WWE's claims, as they now do—indeed it undeniably would have been in their interest to do so—they instead said nothing.  Between October 2004 and March 2005, the Jakks Defendants filed three additional disclosures with the SEC that similarly described WWE's claims in this litigation and denied liability, yet never mentioned the alleged release defense (attached as Exhibit 2 through 4, respectively).

Finally, and only after securing litigation counsel, the Jakks Defendants out-of-the-blue asserted the alleged release defense for the first time in their 10-K filing on or about March 31, 2005.  The timing of this initial disclosure of the release as an alleged absolute bar to WWE's claims further demonstrates that the release defense is nothing more than a post hoc litigation strategy concocted for litigation purposes without regard to the actual circumstances or intent surrounding the formation of the Jakks Settlement Agreement.

The omission of any reference to the release defense in SEC filings prior to March 2005 is particularly glaring given that Murray Skala at all relevant times was both legal counsel to Jakks and a member of Jakks' Board of Directors.  As alleged in the Amended Complaint, Mr. Skala and others at his law firm were directly involved in discussions with WWE's counsel regarding WWE's request for information and documents concerning any payments from Jakks to Shenker or his companies.  At the same time, Mr. Skala's law firm is identified as counsel to

---

[6]  The Court can take judicial notice of SEC filings.  *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991) (taking judicial notice of SEC filings); *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 195 (S.D.N.Y. 2003) ("The Court may also take judicial notice of matters of public record, including the contents of documents required to be filed with the SEC.").

Jakks in certain of the SEC filings between October 2004 and March 2005. If the Jakks Defendants and Mr. Skala's law firm actually believed that the release covered the claims in this case, including claims relating to the payments from Jakks to Shenker and his companies, there was no reason to wait until March 2005 to mention the defense for the first time in Jakks' SEC filings. This timing thus confirms that the release argument is nothing more than a post hoc litigation strategy concocted by the Jakks Defendants' litigation counsel.

## III.  CONCLUSION

For all the foregoing reasons, WWE's Motion to Strike should be granted and the Court should strike Exhibit B to the Lerner Declaration and all arguments in the Jakks Defendants' motion to dismiss relating to the release defense.

Respectfully submitted,

By: _____

Jerry S. McDevitt (Pro hac vice)
Curtis B. Krasik (Pro hac vice)
Amy L. Barrette (Pro hac vice)
535 Smithfield Street
Pittsburgh, Pennsylvania 15222
(412) 355-6500 (phone)
(412) 355-6501 (fax)

William O. Purcell (WP 5001)
599 Lexington Avenue
New York, New York 10022-6030
(212) 536-3900 (phone)
(212) 536-3901 (fax)

KIRKPATRICK & LOCKHART NICHOLSON
GRAHAM LLP

Attorneys for Plaintiff, World Wrestling
Entertainment, Inc.

Dated:  July 7, 2006

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE EXHIBIT B TO THE DECLARATION OF JONATHAN J. LERNER was served on the following counsel of record via electronic mail service and first-class U.S. mail, postage prepaid this 7th day of July, 2006:

John R. Williams, Esq.
John R. Williams & Associates, LLC
51 Elm Street, Suite 409
New Haven, CT  06510

Michael A. Cornman, Esq.
Schweitzer Cornman Gross & Bondell, LLP
292 Madison Avenue
New York, NY  10017

_____
Jerry S. McDevitt