Westlaw.

Not Reported in F.Supp.2d                                                          Page 1
Not Reported in F.Supp.2d, 2004 WL 339650 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. New York.
Elva CRIVERA, Plaintiff,
v.
THE CITY OF NEW YORK, Dino Russo, Frank
Albergo, Kevin Farrel, and Joseph Crivera,
Defendants.
**No. 03 CV 447(JG).**

Feb. 23, 2004.

**Background:** City employee brought civil rights action against city, her supervisor, and her former husband, alleging claims under § 1983, § 1985, and state law. Supervisor and husband moved to dismiss.

**Holdings:** The District Court, Gleeson, J., held that:

1(1) supervisor's alleged conduct toward employee supported her claims against him;

2(2) employee released any civil rights claims she might have had against her former husband via parties' stipulation of settlement in divorce action; and

3(3) husband was entitled to award of attorney fees, pursuant to stipulation of settlement.

Motion granted in part, and denied in part.

West Headnotes

**[1] Civil Rights 78 ⛯1169**

78 Civil Rights
    78II Employment Practices
        78k1164 Sex Discrimination in General
            78k1169 k. Public Employment. Most Cited
Cases

**Civil Rights 78 ⛯1249(1)**

78 Civil Rights
    78II Employment Practices
        78k1241 Retaliation for Exercise of Rights

78k1249 Public Employment
    78k1249(1) k. In General. Most Cited
Cases

**Conspiracy 91 ⛯7.5(1)**

91 Conspiracy
    91I Civil Liability
        91I(A) Acts Constituting Conspiracy and
Liability Therefor
            91k7.5 Conspiracy to Interfere with Civil
Rights
                91k7.5(1) k. In General. Most Cited
Cases

**Municipal Corporations 268 ⛯218(3)**

268 Municipal Corporations
    268V Officers, Agents, and Employees
        268V(C) Agents and Employees
            268k218 Removal, Discharge, Transfer or
Demotion
                268k218(3) k. Grounds. Most Cited
Cases
Conduct of city employee's supervisor in allegedly demanding that employee develop an intimate relationship with him or he would fire or demote her, assaulting employee to convince her to stop associating with her boyfriend, converting women's locker room into an office, failing to provide employee with suitable equipment, thereby placing her in harm's way, and retaliating against her for filing an internal discrimination complaint supported employee's civil rights claims under § 1983, § 1985, and state law. 42 U.S.C.A. § § 1983, 1985.

**[2] Husband and Wife 205 ⛯279(1)**

205 Husband and Wife
    205VIII Separation and Separate Maintenance
        205k277 Separation Agreements
            205k279 Construction and Operation
                205k279(1) k. In General. Most Cited
Cases
Under New York law, former wife released any civil rights claims she might have had against her former husband via parties' stipulation of settlement in divorce action; release was not limited to claims arising from divorce, but rather, discharged both parties of any and all claims they had against one another.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 2
Not Reported in F.Supp.2d, 2004 WL 339650 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

[3] **Husband and Wife 205** 🔑 **279(6)**

205 Husband and Wife
   205VIII Separation and Separate Maintenance
      205k277 Separation Agreements
         205k279 Construction and Operation
            205k279(6) k. Performance or Breach.
Most Cited Cases
Former husband, whose former wife sued him for certain alleged violations of her civil rights, was entitled to award of attorney fees pursuant to parties' stipulation of settlement in divorce action, which released any civil rights claim wife might have against husband and provided for an award of attorney fees should either party wilfully default in performing any obligation under the stipulation. 42 U.S.C.A. § 1985.

Gregory Kuczinski, Kuczinski Vila & Associates, P.C., Elmsford, NY, for plaintiff.
Ann Devine Kerri, New York, NY, George W. Clarke, Tierney & Tierney, Esqs., Port Jefferson Station, NY, for defendants.

*MEMORANDUM AND ORDER*
GLEESON, J.
**\*1** Plaintiff Elva Crivera ("E.Crivera") brings this action alleging sexual harassment, hostile work environment, discrimination on the basis of gender, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.,[FN1] and New York Executive Law section 296. She also alleges violations of 42 U.S.C. § 1983 predicated on rights protected by the First and Fourth Amendments, and a conspiracy to violate her civil rights pursuant to 42 U.S.C. § 1985. Finally, E. Crivera alleges a breach of an express and implied covenant of good faith and fair dealing under New York law. Defendants Dino Russo and Joseph Crivera ("J.Crivera") move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

FN1. E. Crivera concedes that under *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir.1995), the individual defendants cannot be held individually liable under Title VII. (Pl.'s Mem. Law Opp'n Mot. Dismiss point II.) The Title VII claims are therefore dismissed as to defendants Dino Russo, Frank Albergo, Kevin Farrel, and Joseph Crivera.

BACKGROUND [FN2]

FN2. I set out only those facts pertaining to Russo and J. Crivera, in the light most favorable to E. Crivera. The facts set forth pertain to the relevant period, unless otherwise noted.

E. Crivera was first employed as a sanitation worker by New York City (the "City") on October 18, 1999. (Compl.¶ 18.) On March 1, 2000, she was appointed to the position of Sanitation Police Officer after completing the required peace officer and firearms training. (*Id.*) E. Crivera was thereupon transferred to the City's sanitation police squad in Brooklyn. (*Id.*) All matters complained of in this action occurred in Brooklyn in the course of E. Crivera's employment. (*Id.* ¶ 22.) In March 2001, E. Crivera was promoted to Sanitation Police Sergeant; she was the first woman to ever hold that position and the only female sanitation police sergeant in the City. (*Id.* ¶ 20.) E. Crivera performed her duties in an acceptable, professional, and highly competent manner. (*Id.* ¶ 21.)

J. Crivera was the then-estranged husband of E. Crivera; though married, the two were separated. (*Id.* ¶ 24.) Russo was one of E. Crivera's supervisors, who had the authority to transfer, demote, and terminate E. Crivera's employment. (*Id.* ¶ 25.) E. Crivera had, and continues to have, as of the date of the complaint, an intimate relationship with nonparty John Leddy, a male sanitation police sergeant employed by the City. (*Id.* ¶ 27.)

From May 2001 through April 2002, in the course of his employment with the City, Russo-on an almost daily basis-threatened to either terminate E. Crivera's employment or demote or transfer her out of the sanitation police force unless E. Crivera ended her relationship with Leddy. (*Id.* ¶ 29.) At times, Russo demanded not only that E. Crivera end her relationship with Leddy, but that she develop an intimate relationship with Russo himself. (*See id.* ¶ ¶ 30, 40.)

On May 29, 2001, while E. Crivera was in the field on a job-related assignment, Russo visited her in his official vehicle. (*Id.* ¶ 31.) Russo called E. Crivera over to his vehicle, and when she approached, Russo pulled her toward the vehicle's window by her hair. (*Id.*) Twice in 2001, once in July and once in August, Russo summoned E. Crivera into a City role-call room where he yelled at her to end her relationship

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2004 WL 339650 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

and association with Leddy. (*Id.* ¶ 32; *see also id.* ¶ 36 (describing a similar incident).) When E. Crivera tried to leave the room, Russo pushed her back inside and kept her there against her will. (*Id.*) E. Crivera alleges other instances of Russo demanding that she end her relationship with Leddy. (*E.g., id.* ¶¶ 33-34, 38, 45.)

**\*2** Sometime in July 2001, in the outer office of a Lieutenant Cunningham, Russo kicked E. Crivera and pushed her onto a desk while demanding that she end her relationship with Leddy. (*Id.* ¶ 35.) One Sunday that same July, Russo followed E. Crivera on her day off. (*Id.* ¶ 37.) On that day, E. Crivera was biking with Leddy when she saw Russo sitting in his car in the same parking lot where E. Crivera had parked her own car. (*Id.*) When Russo saw that E. Crivera was with Leddy, he told her that he had been waiting to see who she was with, and then drove away. (*Id.*) The next day at work, Russo again told E. Crivera that she would be giving up her career as a sanitation police officer because Russo was in charge and would not permit her to associate with Leddy. (*Id.*)

In August 2001, Russo physically forced E. Crivera into the chief's office (the chief was apparently not inside at the time) where he threatened to choke her. (*Id.* ¶ 39.) He again demanded that E. Crivera end her relationship with Leddy or quit the sanitation police force. (*Id.*)

On September 2, 2001, J. Crivera filed a written complaint with the New York City Police Department alleging that E. Crivera had harassed him. (*Id.* ¶ 41.) When he filed the complaint, however, J. Crivera told the officer preparing the complaint that he did not want to pursue it any further. (*Id.* ¶ 41.) The next day, September 3, Russo went to E. Crivera's brother's home and told her brother to tell E. Crivera that, in light of the harassment complaint filed by J. Crivera, E. Crivera had to surrender her firearm. (*Id.* ¶ 42.) Later that day, Russo told E. Crivera that he would allow her to continue working as a sanitation police officer, albeit without a gun, if she ended her relationship with Leddy. (*Id.* ¶ 43.)

Also on September 3, 2001, Russo forced E. Crivera to take vacation so that she could think about whether or not to end her relationship with Leddy. (*Id.* ¶ 45.) E. Crivera therefore took vacation from September 3, 2001 through September 17, 2001. (*Id.* ¶ 46.) During this vacation, Russo paged E. Crivera every day and left messages telling her that she could continue as a

sanitation police officer only if she ended any association with Leddy. (*Id.*) On September 5, 2001, Russo went to E. Crivera's home and harassed her. (*Id.* ¶ 47.) E. Crivera therefore left her home with her niece and went to her niece's home. (*Id.*) Russo followed E. Crivera to her niece's home and continued to harass her there by telling her to end her relationship with Leddy. (*Id.; see also id.* ¶ 46.)

On September 6, 2001, the City placed E. Crivera on "modified duty" until such time as the New York Police Department and Sanitation Police investigated J. Crivera's complaint. (*Id.* ¶ 48.) On September 24, 2001, the defendants demoted E. Crivera from the Sanitation Police Enforcement Unit to the Auxiliary Field Force to work as a garbage collector. (*Id.* ¶ 49.) Two days later, on September 26, Russo converted E. Crivera's locker room-the only locker room available for female employees-into an office, while locker rooms for male employees remained unaffected. (*Id.* ¶ 50 .) E. Crivera therefore had nowhere to change into and out of her uniform and store her property, a benefit the male employees continued to enjoy. (*Id.*)

**\*3** On December 3, 2001, E. Crivera reported Russo's conduct "to the EEO for City of New York Department of Sanitation" alleging harassment and discrimination on the basis of gender. (*Id.* ¶ 51.) E. Crivera filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on March 6, 2002, alleging sex discrimination and harassment. (*Id.* ¶ 52.) In early April 2002, E. Crivera was transferred back to the sanitation police, where the defendants retaliated against her for filing these complaints. (*Id.* ¶ 53.) Specifically, the defendants created "an intimidating, abusive, and hostile work environment in that they incited, promoted, maintained, and permitted the ostracism and verbal abuse of the plaintiff by her co-workers, including supervisors, all of which are men." (*Id.*) The defendants also refused to return to E. Crivera her bulletproof vest, which had been taken from her prior to her transfer. (*Id.*) Instead, the defendants forced E. Crivera to wear an ill-fitting bulletproof vest designed for a man. Furthermore, when the defendants returned E. Crivera's firearm to her, they issued her only sixteen rounds of ammunition, refusing to provide her with the full forty-six rounds that she is required to have pursuant to a New York City Police Firearms directive. (*Id.*) In these ways-providing her with an ill-fitting bulletproof vest and too little ammunition-the defendants exposed E. Crivera to serious harm or death. (*Id.* ¶ 53.)

Finally, E. Crivera alleges that, by these acts, Russo

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 4
Not Reported in F.Supp.2d, 2004 WL 339650 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

and J. Crivera forced her to resign from her employment with the City on April 17, 2002.

## DISCUSSION

### A. *The Rule 12(b)(6) Standard*

Dismissal under Rule 12(b)(6) may be granted only if "it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Walker v. City of New York,* 974 F.2d 293, 298 (2d Cir.1992). A federal court's task in determining the sufficiency of a complaint is "necessarily a limited one." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The appropriate inquiry is not whether E. Crivera might ultimately prevail on her claims, but whether she is entitled to offer any evidence in support of the allegations in the complaint. *Id.* In this inquiry, I may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiff[']s[ ] possession or of which plaintiff[ ] had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993).

### B. *E. Crivera's Claims*

#### 1. *Claims Regarding Russo*

[1] Beyond the Title VII claims, which E. Crivera voluntarily withdraws, *see supra* note 1, Russo's motion is denied. E. Crivera alleges that Russo, acting in a supervisory capacity on behalf of the City, demanded that unless she stopped associating with Leddy and instead developed an intimate relationship with Russo, he would fire or demote her. She further alleges that Russo assaulted her in order to convince her to stop associating with Leddy. According to the complaint, Russo converted the women's locker room into an office, leaving E. Crivera with nowhere to change into and out of her uniform, but left the men's locker room untouched. Russo also allegedly failed to provide E. Crivera with a suitable bulletproof vest and the required amount of ammunition for her firearm, thereby placing her in harm's way. E. Crivera alleges that Russo retaliated against her for filing an internal complaint and a complaint with the EEOC. Finally, E. Crivera claims that Russo's acts forced her to resign from her position. E. Crivera is entitled to

offer evidence in support of these allegations. *See Scheuer,* 416 U.S. at 236.

#### 2. *Claims Regarding J. Crivera*

##### a. *Motion to Dismiss*

**\*4** [2] J. Crivera argues that E. Crivera released any claims she might have had against him in the Stipulation of Settlement that the Criveras executed to resolve and end their marriage. For the reasons that follow, I agree.

On October 31, 2001, E. Crivera commenced an action for divorce in the Supreme Court of the State of New York, Richmond County, against J. Crivera. (*See* Defs.' Notice Mot. Dismiss Ex. C ("Def.Mot.Dismiss").) On January 10, 2003, [FN3] the Criveras executed a Stipulation of Settlement resolving that case. In that document, which bears the caption of the divorce case, E. Crivera and J. Crivera agreed that the "issues of alimony/maintenance, support of the infant issue, division of the property, *among other things,"* were resolved as further specified in the agreement. (*Id.* Ex. D at 1 (emphasis added).) Article IV of the Stipulation of Settlement, entitled "Mutual Release," states that "each party hereby remises, releases and forever discharges the other of and from all cause or causes of action, claims, rights or demands whatsoever, in law or in equity, which either of the parties heretofore ever had, or now has, against the other." [FN4] (*Id.* at 5.)

> FN3. E. Crivera's complaint in this case is dated January 27, 2003 and was filed on January 29, 2003, less than three weeks after the settlement agreement in the divorce action was signed.

> FN4. The only exception to the release is for "any or all causes ... of action for divorce, annulment or separation, and any defenses either may have to any divorce, annulment or separation action now pending or hereafter brought by the other." (Def. Mot. Dismiss Ex. D at 5.)

"Under New York law, a release-like any contract-must be construed in accordance with the intent of the parties who executed it." *Golden Pac. Bancorp. v. Fed. Deposit Ins. Corp.,* 273 F.3d 509, 515 (2d Cir.2001); *see also Nat'l Helicopter of Am. v. City of*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 5
Not Reported in F.Supp.2d, 2004 WL 339650 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

*New York,* 137 F.3d 81, 87 (2d Cir.1998) ( "[A] release should not be read to include matters of which the parties had no intention to dispose."). Because J. Crivera argues that the release should absolve him of his alleged wrongdoing, it "is subject to the closest of judicial scrutiny." *Golden Pac. Bancorp,* 273 F.3d at 515 (quotation marks omitted). However, "[a] release freely entered into that clearly waives a right to pursue a cause of action is binding." *Nat'l Helicopter of Am.,* 137 F.3d at 87; *see also* *Reidy v. Runyon,* 971 F.Supp. 760, 764 (E.D.N.Y.1997) ("Once an individual executes a valid settlement agreement, he cannot subsequently seek both the benefit of the agreement and the opportunity to pursue the claim he agreed to settle."); *Boden v. Boden,* 42 N.Y.2d 210, 212, 397 N.Y.S.2d 701, 366 N.E.2d 791 (1977) ("The terms [of a separation agreement], like any other contract clauses, are binding on the parties to the agreement.").

I find that the extensive breadth of the release evinces the parties' intent to preclude the claims brought by E. Crivera against J. Crivera in this action. As noted above, the settlement, on its face, is not limited to claims arising from the divorce. The inclusion of "among other things" demonstrates that the Criveras contemplated issues arising outside the marriage when they executed the settlement. Moreover, even if the settlement dealt exclusively with the divorce, there is no reason that E. Crivera could not have bargained away other claims, such as the work-related claims alleged here, in order to secure more favorable concessions from J. Crivera in the settlement.

**\*5** Further, the release is unambiguously broad, unlike the releases in cases such as *Golden Pacific Bancorp,* 273 F.3d at 515 (release expressly covered only "claims which Bancorp ... has or may have arising from or with respect to the decision of the [OCC] to close the Bank on June 21, 1985" (quotation marks omitted) (ellipsis and alteration in original)), and *National Helicopter Corp. of America,* 137 F.3d at 87 (release expressly covered only claims "with respect to the Economic Development Corporation's acts or omissions regarding the EIS ..., the [land use review] application, or any conditions relating to the special permit required under the City's Zoning Resolution" (quotations marks omitted) (ellipsis and alteration in original)). Nor is there any concern of fraud in the procurement of the release, as both parties had the benefit of an attorney throughout the settlement negotiations.

Finally, nowhere in the settlement did E. Crivera

reserve the right to sue J. Crivera for work-related conduct or anything else. *See* *International Union of Operating Engineers-Employers Construction Industry Pension, Welfare & Training Trust Funds v. Karr,* 994 F.2d 1426, 1432 (9th Cir.1993) ("[A party] that wishes to preclude the application of res judicata to a future action ... can reserve that right [in an agreement]...."); *Keith v. Aldridge,* 900 F.2d 736, 742 (4th Cir.1990) ("Rather than expressly reserving Keith's right to bring a due process claim, or any other claim that might enable him to obtain reemployment with the Air Force, the agreement precludes Keith from applying for further employment."); *cf.* *Siegel v. Nat'l Periodical Publ'ns, Inc.,* 508 F.2d 909, 913 (2d Cir.1974) ("[T]here is no limiting language in the judgment which would support the present contention that renewal rights were preserved."). This is especially significant where, as here, *see supra* note 3, E. Crivera's complaint in this action was filed less than three weeks after the divorce settlement was signed; she was therefore clearly contemplating this action while negotiating the divorce settlement with J. Crivera.[FN5]

> FN5. At oral argument, E. Crivera's counsel professed to have no knowledge of the settlement agreement negotiations at the time he was preparing E. Crivera's complaint here. (*See* Jan. 9, 2004 Hr'g Tr. at 2-4.) E. Crivera appears to have had different counsel in the divorce action.

Based on the foregoing, I find that the release in the divorce settlement "contains an explicit, unequivocal statement of a present promise to release [a party] from liability." *Golden Pac. Bancorp,* 273 F.3d at 515 (quotation marks omitted). Dismissal under Rule 12(b)(6) is therefore appropriate. *See* *Conopco, Inc. v. Roll Int'l,* 231 F.3d 82, 86 (2d Cir.2000).

b. *Attorney's Fees*

[3] The Stipulation of Settlement contains a provision for attorney's fees:
A. Should either party wilfully default in performing any obligation which such party is required to perform hereunder, and should such default continue for a period of 30 [FN6] days or more after written notice of the default is sent to him or her, then in any action, litigation or proceeding commenced by either party in which it is judicially determined that the defaulting party failed to perform such obligation, the defaulting party shall pay to the other party the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 339650 (E.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

counsel fees reasonabl[y] incurred by such other party in connection with the action.

> FN6. The number of days the default must continue is handwritten onto the agreement in the margin, and appears to be "30." In Russo and J. Rivera's memorandum of law, however, this provision is quoted as reading "10 days or more." (*See* Defs.' Mem. Law Supp. Mot. Dismiss point III.) Though the number might be something besides "30" (e.g., "80" with half of the "8" cut off), it is clearly not "10." In any event, the discrepancy has no effect on the outcome of this motion.

**\*6** (Def. Mot. Dismiss Ex. D at 16.) By letter dated September 4, 2003, counsel for J. Crivera notified E. Crivera's attorney that "[i]n the event that voluntary dismissal of the complaint is not forthcoming in favor of Mr. Crivera, we reserve ou[r] right to claim recovery from your client of all attorneys fees incurred in enforcing the express terms of the Stipulation of Settlement of the prior [divorce] action." (*Id.* Ex. G.)

The release created an obligation on both parties to the Stipulation of Settlement not to sue on the covered causes of action. I conclude that the commencement of this action against J. Crivera constituted a violation of that obligation, and that the other prerequisites to the recovery of reasonable attorney's fees have been satisfied. Accordingly, E. Crivera is hereby ordered to pay to J. Crivera such reasonable fees.

### CONCLUSION

For the foregoing reasons, Russo's motion is denied, and J. Crivera's motion is granted. Counsel are encouraged to resolve the attorney's fees issue without the intervention of the Court. If they cannot, counsel for J. Crivera shall submit a fee application by no later than March 5, 2004. The Title VII claims are dismissed as against defendants Russo, Frank Albergo, and Kevin Farrel.
So Ordered.

E.D.N.Y.,2004.
Crivera v. City of New York
Not Reported in F.Supp.2d, 2004 WL 339650 (E.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:03cv00447 (Docket) (Jan. 28, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.