

Not Reported in F.Supp.2d                                                                                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 461647 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents

Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Anthony DEPALMA, Deena Cabrera, Sherby Jean-Leger, Stefanie Gordon, Jamal Waldron, Eric Posner, Keith Wolff, Dwayne Stowe, Douglas Castoldi, Natasha Tatum, Douglas Gold, Daniel Deblasio, Vincent Desantis, Alissa Brevic, Michael Yockman, D'Ann Brown, Carlos Morales, Renna Hunte and Sherree Hunte, individually and on behalf of all others similarly situated, Plaintiffs,
v.
REALTY IQ CORP. and Frontline Capital Group, Inc., Defendants.
**No. 01 CIV 446 RMB.**

March 25, 2002.

### DECISION AND ORDER

BERMAN, J.

*1 (Nineteen) Plaintiffs, Anthony Depalma ("DePalma"), Deena Cabrera, Sherby Jean-Leger, Stefanie Gordon, Jamal Waldron, Eric Posner, Keith Wolff, Dwayne Stowe, Douglas Castoldi, Natasha Tatum, Douglas Gold, Daniel Deblasio, Vincent Desantis, Alissa Brevic, Michael Yockman, D'ann Brown, Carlos Morales, Renna Hunte and Sherree Hunte, (collectively, "Plaintiffs"), who are former employees of Defendant Reality IQ Corp. ("RIQ" or "Realty IQ"), individually and on behalf of all other similarly situated former employees of RIQ, filed the instant action on January 19, 2001 ("Complaint"), and filed an amended complaint on April 11, 2001 ("Amended Complaint"), against RIQ and its parent company, Frontline Capital Group, Inc. ("Frontline"), (RIQ and Frontline are, collectively, "Defendants"). Plaintiffs allege that Defendants violated the Worker Adjustment and Retraining Notification Act of 1988 ("WARN Act"), 29 U.S.C. § 2101 *et seq.,* when they terminated Plaintiffs in a "mass layoff" without providing sixty (60) days advance notice. Plaintiffs seek, among other things, back pay and benefits. Amended Compl. ¶ 2. On or about April 23, 2001, Defendants moved, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(c), for judgment on the pleadings ("Defs.' Mem.") with respect to the claims of all of the Plaintiffs who executed releases in connection with their terminations ("Release Plaintiffs"), i.e. every Plaintiff except plaintiff DePalma. On June 1, 2001, Plaintiffs opposed the instant motion ("Pls.' Mem.") and, on June 15, 2001, Defendants submitted a reply memorandum ("Defs.' Reply Mem."). For the reasons set forth below, Defendants' motion is denied.[FN1]

> FN1. The Court is not here ruling on the ultimate merit of Plaintiffs' claims.

### I. Background

Plaintiffs allege that they are former employees of both Frontline and RIQ because RIQ and Frontline were an "integrated enterprise" and Frontline exercised "de facto control" over RIQ.[FN2] Amended Compl. ¶ ¶ 25-26. On December 20, 2000, RIQ allegedly canceled the company Christmas party and fired approximately 120 of its approximately 150 New York Office employees ("Terminated Employees"), including Plaintiffs. Id. ¶ ¶ 29, 53. RIQ allegedly "herd[ed]" Terminated Employees into "large group meetings" where they each received a termination letter ("Termination Letter") and notice of lay-off ("Notice of Lay-off"), dated December 20, 2000, and a document entitled "Agreement and General Release" ("Release"). Id. ¶ 53(a). The Termination Letter advised, among other things: (i) that the Terminated Employees' jobs were being eliminated effective that day, i.e. December 20, 2000; (ii) that "benefits, including medical, dental and group term life insurance," would terminate effective December 31, 2000; and (iii) that, if a Terminated Employee signed and returned the Release, he or she would receive "two weeks of severance pay." [FN3] Id., Ex. A.

> FN2. "[S]ubsidiaries which are wholly or partially owned by a parent company are treated as separate employers or as a part of the parent ... company depending upon the degree of their independence from the parent." 20 C.F.R. § 639.3(a)(2).

> FN3. "[E]mployees who had longer tenure with the company [RIQ] received three weeks wages ... or four weeks wages." Amended Compl. ¶ 45.

The Notice of Lay-off stated, among other things, the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK    Document 163-7    Filed 07/07/2006    Page 2 of 5

Not Reported in F.Supp.2d                                           Page 2
Not Reported in F.Supp.2d, 2002 WL 461647 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

following: "Please consider this notice pursuant to the Worker Adjustment and Retraining Notification Act that RealtyIQ will shut down [ ] operations on December 21, 2000. We anticipate the shut down will be permanent.... Notice could not be given earlier because ... it is only now apparent that RealtyIQ cannot obtain the necessary working capital to continue operations. Earlier notice would have closed off potential funding channels." *Id.*

*2 Plaintiffs allege that, at the "group meeting[ (s) ]," on December 20, 2000, they were told that "if they signed the general release that same day, they would receive approximately two weeks wages on their regular pay date and continue to receive benefits [until] the end of the calendar year (11 days), but, if they waited to sign the general release, or failed to sign it, they would receive nothing." Amended Compl. ¶ 53(a) (emphasis added). Bruce Gilman, Vice President Human Resources ("Gilman"), allegedly stated that "the company does not have any money and if you wait any longer, even until after Christmas, the company might not have the money to give you a package." *Id.* Mr. Gilman allegedly also stated that "in these type of situations you don't sue the company." *Id.* ¶ 53(c). The December 20, 2000 meetings were allegedly planned in advance so that "the sight of some aggrieved employees signing and returning general releases at those very same meetings would motivate others to do so as well." *Id.* ¶ 53(e).

On December 20, 2000, i.e. the same day they were terminated, most of the Release Plaintiffs signed the Release.[FN4] *Id.* ¶ 53(g). Also on December 20, 2000, "at least twelve" (*id.*) of the Release Plaintiffs signed letters acknowledging (presumably incorrectly) that "[a]t least seven days have passed" since they signed the Release and that they "have not revoked and do not desire to revoke" the Release. *Id.,* Ex. A.

> FN4. The Release also provides: "This Agreement will not become effective until the eighth (8th) day after the Company [RIQ] has received my signed copy [ ]. During that period, I may revoke this Agreement." Amended Compl., Ex. A (emphasis omitted).

### II. Standard of Review

"Judgment on the pleadings is appropriate if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Burns Int'l Security Services, Inc. v. International Union, United Plant Guard Workers of America,* 47 F.3d 14, 16 (2d Cir.1995). "In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999). A complaint may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). In sum, "[t]he motion to dismiss for failure to state a claim is disfavored and is seldom granted." *Bower v. Weisman,* 639 F.Supp. 532, 539 (S.D.N.Y.1986) (citing *Arfons v. E.I. DuPont de Nermours & Co.,* 261 F.2d 434, 435 (2d Cir.1958)).

### III. Analysis

The WARN Act requires, among other things, that employers "shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order." 29 U.S.C. § 2102(a). The 60 day notification period may be reduced in some instances, such as the case of a "faltering company." 29 U.S.C. § 2102(b). Defendants contend that the Release Plaintiffs' WARN Act claims "are barred by the release they each executed." Defs.' Mem. at 1. Defendants argue, alternatively, that the Release Plaintiffs "ratified the Releases by failing to tender back" (*id .* at 17) "the additional termination benefit ... of 2 weeks[ ] salary." Amended Compl., Ex. A. The Release Plaintiffs contend: (i) that "the Releases were not signed knowingly, voluntarily, and free from coercion" (Pls.' Mem. at 6); (ii) that they "are not required to 'tender back' wages and benefits" (*id.* at 12); and (iii) that "the Releases are void as a matter of public policy." *Id.* at 15.

### *Knowing and Voluntary*

*3 "Federal law decides whether the release of a federal statutory claim is valid." *Reid v. IBM Corp.,* No. 95 Civ. 1755, 1997 WL 357969, at *5 (S.D.N.Y. June 26, 1997) (release of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq* and Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADA") claims); *Williams v. Phillips Petroleum Company,* 23 F.3d 930, 935 (5th Cir.1994) (release of WARN Act claims), *cert. denied,* 513 U.S. 1019 (1994). "[T]he validity of a release is a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK     Document 163-7     Filed 07/07/2006     Page 3 of 5

Not Reported in F.Supp.2d                                                                                Page 3
Not Reported in F.Supp.2d, 2002 WL 461647 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

peculiarly fact-sensitive inquiry." *Livingston v. Adirondack Beverage Company,* 141 F.3d 434, 437-38 (2d Cir.1998) (emphasis added). The "totality of the circumstances" test is used to determine whether a release of Federal claims is knowing and voluntary. *Reid,* 1997 WL 357969, at *5. "Several factors are relevant to this inquiry, including: 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract law." *Id.* (quoting *Bormann v. AT & T Communications,* 875 F.2d 399, 403 (2d Cir.1989)). "In addition, courts have considered a seventh factor-whether an employer encouraged an employee to consult an attorney and whether the employee had a fair opportunity to do so." *Id.*

The allegations of the Amended Complaint "sufficiently challenge the validity of the release to preclude a finding that the complaint clearly establishes a dispositive defense." *Livingston,* 141 F.3d at 437. Several of the *Bormann* factors appear to be in dispute here. For example, although the Release provided that Plaintiffs would have "a period of at least twenty-one (21) days" to consider its terms (Amended Compl., Ex. A), "defendants [allegedly] manipulated [the Release Plaintiffs] into signing them on the spot." Pls.' Mem. at 7; *see* Amended Compl. ¶ 53(g) ("[M]ost" of the Release Plaintiffs signed the Release on December 20, 2000.). On December 20, 2000, "at least twelve" of the Release Plaintiffs also signed letters acknowledging that "[a]t least seven days have passed" since signing the Release. It does not appear, at the motion to dismiss stage, that the Release Plaintiffs had any role in deciding the terms of the Release and, it would be premature, similarly, to assess fully the clarity of the Release. Nor does it appear that any of the Release Plaintiffs were represented by or consulted with an attorney prior to (or at the time of) signing the Release. And, it is unclear, at this stage, whether the "2 weeks [ ] salary" (Amended Compl., Ex. A) constitutes "consideration."FN5 *Zveiter v. Brazilian National Superintendency of Merchant Marine,* 833 F.Supp. 1089, 1097 (S.D.N.Y.1993) ("there is some dispute as to the extent to which [the severance pay] exceeded the pay that she was owed"); *Gorman v. Earmark, Inc.,* 968 F.Supp. 58, 62 (D.Conn.1997) (denying defendant's motion for partial summary judgment where "primary controversy focused on by the parties concern[ed] ... whether the consideration given in exchange for the waiver exceeds remuneration to which the employee was already entitled by contract or law.").FN6

FN5. Defendants contend that the "additional termination benefit ... of 2 weeks[ ] salary" is consideration because "[w]ages and benefits under WARN are, [ ] merely damages to which claimants are entitled *only if* a district court rules in their favor that the proper statutory notice was not given." Defs.' Mem. at 16 (emphasis in original). Plaintiffs contend that the Release Plaintiffs are entitled by law to more than "2 weeks' salary." Pls .' Mem. at 9.

FN6. Having decided that discovery is needed, the Court need not assess the issues of "duress" or "fraud" other than as follows: To sustain a duress claim, a party must show, among other things, that the agreement was obtained "where circumstances permitted no other alternative." *Nicholas v. NYNEX, Inc.,* 929 F.Supp. 727, 732 (S.D.N.Y.1996)). It appears the Release Plaintiffs "could have rejected the Release and pursued [their] legal remedies. Courts have found this option-turning down the additional severance and pursuing legal claims-to be a reasonable alternative, even if a hefty financial incentive is offered for signing the Release." *Reid,* 1997 WL 357969, at *7; *see, e.g., Nicholas,* 929 F.Supp. at 733.
In order to prevail on a fraud claim, the Release Plaintiffs would have to show "(1) that [the Defendants] made a misrepresentation (2) as to a material fact (3) which was false (4) and known to be false by [the Defendants] (5) that was made for the purpose of inducing [the Release Plaintiffs] to rely on it (6) that [the Release Plaintiffs] rightfully did so rely (7) in ignorance of its falsity (8) to his injury." *Cohen v. Koenig,* 25 F.3d 1168 (2d Cir.1994) (quoting *Murray v. Xerox Corp.,* 811 F.2d 118, 121 (2d Cir.1987)). Defendants contend that "Plaintiffs fail to allege any misrepresentations of existing fact." Defs.' Mem. at 14. But Plaintiffs do allege that Defendants "falsely and in bad faith asserted an inapplicable exception to

Case 7:04-cv-08223-KMK   Document 163-7   Filed 07/07/2006   Page 4 of 5

Not Reported in F.Supp.2d                                                                                                    Page 4
Not Reported in F.Supp.2d, 2002 WL 461647 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

proper WARN Act notice" and did not shut down operations on December 21, 2000. Amended Compl. ¶ 44; *see* Amended Compl., Ex. A; *see* Sanitoy, Inc. v. Shapiro, 705 F.Supp. 152 (S.D.N.Y.1989) ( "statements of future intent and prediction,[ ] are nevertheless actionable if defendant made them with the present intent to deceive"). Defendants allegedly engaged in such acts "so that the aggrieved employees would rely upon their actions and sign general releases" (*id.* at ¶ 53(f)) and "most of the plaintiffs" "did in fact rely upon the defendants' false representations ... to their detriment." *Id* . at ¶ 53(g).

*Ratification*

**\*4** Defendants contend that the Release Plaintiffs ratified Release(s) as a matter of law "by failing to tender back [the consideration]." Defs.' Mem. at 17. The Release Plaintiffs counter that, since the "additional termination benefit of ... two weeks[ ] salary" is not consideration, "[t]ender is excused." Pls.' Mem. at 13. Plaintiff argues, alternatively, that "[n]othing in the WARN Act requires that aggrieved employees 'tender back' wages or benefits" because such payments "are *setoff* against the employer's WARN Act liability." *Id.* at 12 (emphasis in original).

"Under the doctrine of ratification, a party loses the power to avoid a voidable contract." Landau v. American International Group, Inc., No. 97 Civ. 3465, 1997 WL 590854, at *3 (S.D.N.Y. Sept. 23, 1997). Generally, "retaining consideration after learning that a release is voidable operates to ratify that release." Reid, 1997 WL 357969, at *10; *see* Landau, 1997 WL 590854, at *3 ("[a]lthough ratification is an affirmative defense, it is properly considered on a motion to dismiss when ... the issue is obvious from the pleadings and the papers before the court.").

Here, the issue of ratification is inextricably tied in with the (unresolved) issue of whether the Release Plaintiffs received "consideration." Tender is excused where the releasor did not receive any consideration and, in those instances, "the amount that the plaintiff had received in exchange for the release would simply be set off against any recovery that he might obtain in the suit." Fleming v. United States Postal Service, 27 F.3d 259, 260 (7th Cir.1994).

*Public Policy*

The Release Plaintiffs contend that enforcing the Releases would violate "[t]he declared public policy of the WARN Act [which] is to protect workers, their families, and their communities." Pls.' Mem. at 16 (citing 20 C.F.R. § 639.1); *see* Pls.' Mem. at 15 ("The purpose of WARN ... is ... to alleviate the distress associated with job loss for both the workers and the community in which they live.") (quoting United Paperworkers Int'l Union v. Specialty Paperboard, Inc., 999 F.2d 51, 54 (2d Cir.1993)). Defendants argue that courts have found releases of WARN Act claims to be valid even where the releases did not specifically mention the WARN Act. Defs.' Mem. at 16; *see* Williams, 23 F.3d 930; Joe v. First Bank Sys., Inc., 202 F.3d 1067 (8th Cir.2000). "A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms." Restatement (Second) of Contracts § 178 (1981). "A public policy against the enforcement of promises ... may be derived by the court from (a) legislation relevant to such a policy, or (b) the need to protect some aspect of the public welfare." *Id.* § 179.

**\*5** There is no reason to reach the issue of whether the Releases are (un)enforceable on the ground of public policy, at this time, since the Releases may, as noted, be invalid for other reasons. *See* Williams, 23 F.3d at 935 ("Public policy favors voluntary settlement of claims and enforcement of releases, but a release of employment or employment discrimination claim is valid only if it is 'knowing' and 'voluntary.' ") (citation omitted) (quoting Alexander v. Gardner-Denver Co., 415 U.S. 36, 52, n. 15 (1974)).

### IV. Conclusion

For the foregoing reasons, Defendants' motion for judgment on the pleadings [15] is denied. The parties are directed to appear at a scheduling/settlement conference with the Court on Tuesday, April 23, 2002, at 3:15 p.m., in Courtroom 706 of the United States District Courthouse, 40 Centre Street, New York, New York. The parties are further directed to engage in good faith settlement negotiations prior to the conference.

S.D.N.Y.,2002.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  Page 5
Not Reported in F.Supp.2d, 2002 WL 461647 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

DePalma v. Realty IQ Corp.
Not Reported in F.Supp.2d, 2002 WL 461647 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:01cv00446 (Docket) (Jan. 19, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.