Westlaw.

Not Reported in F.Supp.2d                                                                                                     Page 1
Not Reported in F.Supp.2d, 2003 WL 22801429 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**Briefs and Other Related Documents**
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
MEZZACAPPA BROTHERS, INC., Plaintiff,
v.
CITY OF NEW YORK, Defendant.
**No. 03 Civ.0223 NRB.**

Nov. 24, 2003.

Public contractor sued city under § 1983, alleging that the city violated its First Amendment rights and injured it with a defamatory "stigma-plus" unconstitutional taking of liberty rights, and also asserted a common law claim of libel. On the city's motion to dismiss, the District Court, Buchwald, J., held that: (1) release in favor of city executed by a third party acting as attorney-in-fact for the contractor in prior litigation unambiguously precluded the contractor's instant claims, and (2) the action was also barred by claim preclusion.

Motion granted.

West Headnotes

**[1] Municipal Corporations 268 1018**

268 Municipal Corporations
    268XVI Actions
        268k1018 k. Compromise and Settlement of Litigation. Most Cited Cases
Release in favor of city executed by a third party acting as attorney-in-fact for a public contractor in prior litigation unambiguously precluded the contractor's instant claims against city for defamation and violation of its First Amendment rights, despite the contractor's claim that the release was limited to contract issues relating to the prior litigation and the public works contracts at issue in such litigation; projects underlying the instant suit were specifically and expressly enumerated in the release. U.S.C.A. Const. Amend. 1.

**[2] Judgment 228 585(2)**

228 Judgment
    228XIII Merger and Bar of Causes of Action and Defenses
        228XIII(B) Causes of Action and Defenses Merged, Barred, or Concluded
            228k585 Identity of Cause of Action in General
                228k585(2) k. What Constitutes Identical Causes. Most Cited Cases
Public contractor's action against city for defamation and violation of its First Amendment rights could have been raised in prior litigation when the contractor initiated a third-party complaint against the city, and thus, the action was barred by claim preclusion. U.S.C.A. Const. Amend. 1.

Vincent Torna, New York, NY, for Plaintiff.
Richard Schulsohn, Assistant Corporation Counsel, City of New York Law Department, New York, NY, for Defendant.

MEMORANDUM and ORDER

BUCHWALD, J.

**\*1** Plaintiff Mezzacappa Brothers, Inc. ("Mezzacappa" or "MBI" or "plaintiff") brought this action on January 10, 2003, and, as framed in an amended complaint filed on June 18, 2003, alleges the City of New York ("defendant" or "the City") has violated plaintiff's civil rights under 28 U.S.C. § 1983 by abridging plaintiff's First Amendment rights and injuring plaintiff with a defamatory "stigma-plus" unconstitutional taking of liberty rights. Plaintiff also asserts a common law claim of libel against the City. The City seeks dismissal of plaintiff's amended complaint pursuant to Fed. Rule of Civ. P. 12(b)(6). In its motion, the City argues that plaintiff's § 1983 claims are time-barred (Mem. at 7); plaintiff's claims are barred by a release (Mem. at 12); plaintiff's claims are barred by res judicata (Mem. at 14); plaintiff's liberty interests were not implicated by defendant's actions (Mem. at 17); even if plaintiff has been deprived of a liberty interest, plaintiff has been afforded due process (Mem. at 22); and plaintiff's libel claim is time-barred (Mem. at 24).

Oral argument on the City's motion to dismiss was heard on November 18, 2003.

For the reasons set forth below, the City's motion to dismiss is granted. Plaintiff's claims are unequivocally barred by a previously entered release, as well as by res judicata. Because the release and res judicata (either individually or together) provide ample bases for dismissing this entire action with

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK   Document 163-12   Filed 07/07/2006   Page 2 of 9

Not Reported in F.Supp.2d                                                                                                Page 2
Not Reported in F.Supp.2d, 2003 WL 22801429 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

prejudice, the City's other grounds for dismissal need not be evaluated.

## II. BACKGROUND

### A. *Factual Background Common to All of MBI's Claims*

The following facts are drawn from plaintiff's amended complaint, and are taken as true for purposes of defendant's motion.

In or about July 1992, MBI and Insurance Company of America [FN1] ("INA") entered into a written contract for completion of a public works project called HWQ 274, Brookville (the "Brookville Project") for the City's Department of Design and Construction ("DDC"). (Am.Compl.¶ 8). In or about July 1992, MBI and the City entered into a written contract for a project called RED 328, Water Main in area of Richmond Avenue, Staten Island (the "Richmond Avenue Project"). (Am. Compl. at ¶ 13). In or about August 1994, MBI and INA entered into a written contract for the completion of a project called BED 747, Crescent Street (the "Crescent Street Project") for the DDC. (Am.Compl.¶ 7). For each public works project, MBI agreed to provide certain work, materials and equipment subject to certain plans, drawings, specifications and schedules prepared and published by the City. (Am.Compl.¶ ¶ 7, 8, 10, 13, 14).

> [FN1.] Other case papers refer to this company as Insurance Company of North America. INA is used to signify either.

MBI did not perform work on the Crescent Street Project in the time and manner reasonably anticipated. MBI blames the City for this failure, asserting the following specifications. First, City-specified suppliers could not supply materials in a timely manner, or in a proper sequence, or in accord with contract specifications. Second, the City failed to provide MBI with proper access to work areas. Third, the City interfered with and delayed work by allowing other water main projects to proceed. Fourth, City-ordered water restrictions caused delays. And fifth, the City's untimely resolution of quality assurance and street sign issues caused delays. (Am.Compl.¶ 11). Despite the City's obstruction of MBI's work, substantial completion of the Crescent Street Project was achieved.[FN2] (Am.Compl.¶ 12).

> [FN2.] The Amended Complaint does not indicate when this "substantial completion" was achieved.

**\*2** MBI claims that it fulfilled all conditions required by the Richmond Avenue Project contract. (Am.Compl.¶ 15). Somewhat contradictorily, MBI alleges the City prevented MBI from performing its work on the Richmond Avenue Project in the time and manner which MBI reasonably anticipated. (Am.Compl.¶ 17, 20). First, MBI recounts that in the course of its work on the Richmond Avenue Project, MBI discovered improper preparation of and numerous errors and omissions in the plans, drawings, specifications and schedules published by the City and upon which MBI relied in submitting its bid. (Am.Compl.¶ 16, 21). Second, as with the Crescent Street Project, City-specified suppliers could not supply materials such as water main pipe in a timely manner or proper sequence. Third, MBI discovered subsurface conditions and telephone lines that were not shown on the City plans, or otherwise anticipated. (Am.Compl.¶ 17). Fourth, the City did not issue timely approvals for and payment on change orders required by the City's defective plans. (Am.Compl.¶ 18, 22). Fifth, the City failed to make timely payments to MBI during the course of MBI's work on the Richmond Avenue Project. (Am.Compl.¶ 19). Throughout the Richmond Avenue Project, MBI complained to the City about these acts and omissions (Am.Compl.¶ 21), such as a specific criticism of the City's practice of requiring contractors to perform change order work prior to approval and issuance of written change orders (Am.Compl.¶ 23), and threatened the City to not perform certain change order work until money owed to MBI was paid, and the change order practice was changed. (Am.Compl.¶ 22).

On or about April 10, 1997, MBI submitted the lowest bid for the DDC-advertised Bay Ridge Contract.[FN3] (Am.Compl.¶ 24, 25). In a letter dated May 30, 1997, DDC refused to award MBI the Bay Ridge Contract because DDC found MBI to be a non-responsible vendor. DDC communicated its non-responsible vendor finding to the City's Office of Comptroller, the Mayor's Office of Contracts ("MOC"), the City Procurement Policy Board, the City's Department of Investigation, INA (the surety on the Crescent Street Project) and INA/Cigna (the Brookville Project surety). (Am.Compl.¶ 26). The City told these entities that its "pre-final" performance evaluation on the Crescent Street

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK    Document 163-12    Filed 07/07/2006    Page 3 of 9

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2003 WL 22801429 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Project resulted in MBI receiving an overall rating of unsatisfactory, and DDC explained its finding: first, there was a problem with "closure pieces" MBI used; second, MBI failed to follow City orders to cease resurfacing work in the rain; third, MBI mislayed steel pipe which subsequently required significant remedial work (Am.Compl.¶ 27); and fourth, the project revealed MBI's poor workmanship in the form of numerous leaks. (Am.Compl.¶ 28). Regarding the Brookville Project, DDC stated that MBI, despite having received three time extensions, could not coordinate with the paving subcontractor to complete the project on time, and that DDC assessed $306,000 in liquidated damages against MBI. (Am.Compl.¶ 29) These problems, DDC concluded, demonstrated MBI's lack of fitness for the Bay Ridge Contract, (Am.Compl.¶ 28) and cast doubt on whether MBI had the ability to schedule and perform the required work. (Am.Compl.¶ 30).

> FN3. The project's official name was "Contract Number BED-756, Installation of 48", 20" and 12" Water Mains in Bay Ridge Parkway and 21st Avenue, Brooklyn, New York."

**\*3** MBI alleges that DDC's statements regarding the Crescent Street and Brookville projects were false and malicious, failed to account for the delays and disruptions caused by DDC, and motivated by MBI's refusal to perform extra work on the Richmond Avenue Project before change orders were approved and executed and by MBI's general criticism of the City's change order practices. (Am.Compl.¶ 31). MBI alleges that they were denied the Bay Ridge Contract and made ineligible to receive other City contracts [FN4] because of DDC's misrepresentations. (Am.Compl.¶ 32). The City, MBI alleges, denied MBI due process in issuing its non-responsible vendor finding, and in specifically denying MBI an appeal of that decision.[FN5] (Am.Compl.¶ 34). Last, MBI states that it presented the City a written verified notice of claim, more than thirty days have elapsed since said notice, and the City has not made any adjustment or payment on the amount MBI claimed. (Am.Compl.¶ 35).

> FN4. MBI alleges that DDC threatened to default INA if INA used MBI to complete a project known as QED 941, 37th Avenue, Queens ("Queens Project"), despite INA's protestations that MBI was a responsible and well-respected contractor. (Am.Compl.¶ 33).

> FN5. MBI states that they filed appeals to the DDC agency head, and the MOC, but the MOC did not issue a decision despite MBI's numerous demands for a decision. (Am.Compl.¶ 34). We infer from this allegation that the DDC agency head ruled on (and denied) MBI's appeal.

B. *MBI's Claims as Framed in Amended Complaint (and Additional Relevant Facts)*

1. *Defamation "Stigma-Plus" Unconstitutional Taking of Liberty Rights*

MBI states that it has a constitutionally protected liberty interest in its reputation for integrity and responsibility, as well as its continued right to City contracts. (Am.Compl.¶ 37). Prior to the City's wrongful and malicious acts, MBI benefitted from an excellent reputation, was deemed a responsible and eligible bidder, and, as a result, enjoyed numerous City contracts. (Am.Compl.¶ 38). The City knew MBI was the lowest Bay Ridge Contract bidder, and knew of MBI's excellent reputation and responsibility (Am.Compl.¶ 39), yet DDC made and published false and defamatory statements regarding MBI to other City agencies and MBI's sureties. (Am.Compl.¶ 40). The City deliberately and maliciously made these statements with intent to injure and deprive MBI of constitutionally protected liberty interests. (Am.Compl.¶ 40). MBI suffered de facto debarment from City contracts, and was effectively blacklisted. After the DDC non-responsibility finding, MBI refrained from submitting further bids until a decision on MBI's appeal was rendered by the MOC,[FN6] and did not bid on other contracts during the appeal's pendency for fear of other non-responsibility findings. (Am.Compl.¶ 41). Further, as a result of DDC's false, malicious and defamatory statements, MBI has been defamed and stigmatized in its business and professional relationships, its good reputation has been severely injured and damaged, and MBI has suffered a loss in employment which has detrimentally impacted its financial vitality. Indeed, MBI has gone out of business. (Am.Compl.¶ 42).

> FN6. Plaintiff alleges elsewhere in its amended complaint that MOC never issued a decision on plaintiff's appeal. *See* Am. Compl. ¶ 34.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK    Document 163-12    Filed 07/07/2006    Page 4 of 9

Not Reported in F.Supp.2d                                                                                              Page 4
Not Reported in F.Supp.2d, 2003 WL 22801429 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

MBI alleges that it is the policy, practice and custom of the City to retaliate against contractors critical of City policy, such as MBI, and the City's statements on May 30, 1997, are reflective of such policy. (Am.Compl.¶ 44). MBI claims it first became aware of the retaliatory policy in or about July 2000. (Am.Compl.¶ 45). The City's actions are a continuing practice of retaliatory discrimination affecting MBI and other similarly situated contractors,[FN7] (Am.Compl.¶ 46) and have been conducted under the color of state law, pursuant to the City's practices at all times. (Am.Compl.¶ 47).

> [FN7.] MBI refers to Promatech, Inc., who, on information and belief, incurred injury, including wrongful termination of contract and unsatisfactory evaluations in November 2000 as a result of the City's retaliatory policy. Promatech initiated a lawsuit against the city on these grounds. *See Promatech, Inc. v. Holden and City of New York,* 01 Civ.1910(RO) (filed March 7, 2001, S.D.N.Y., related to *Promatech, Inc. v. Holden and City of New York,* 00 Civ. 7679(RO) (filed October 11, 2000, S.D.N.Y.)).

**\*4** MBI thus alleges it has been deprived of its property and liberty interests without due process of law, a violation of the Fifth and Fourteenth Amendments actionable under 42 U.S.C. § 1983. (Am.Compl.¶ 1, 47).

### 2. *Libel*

MBI has performed construction for the City and other public entities since 1963. MBI was never once denied a contract for any reason until the Bay Ridge Contract of 1997. (Am.Compl.¶ 50). Prior to the City's false and defamatory utterances, MBI maintained a good reputation for integrity, honesty and competence in front of the City and elsewhere. (Am.Compl.¶ 51). It is well and long established that a contractor such as MBI depends on its reputation for integrity and competence in order to succeed. (Am.Compl.¶ 52). DDC's statements regarding MBI on May 30, 1997, falsely, maliciously, unjustifiably and intentionally denigrated MBI's integrity and its ability to conduct business. (Am.Compl.¶ 54, 56, 60). At the time of publication, DDC knew or should have known its statements were false and malicious. (Am.Compl.¶ 55-57). MBI's actions were willful and wanton or done in reckless disregard of the truth, and with intent to injure MBI. (Am.Compl.¶ 61). As a result of this, MBI suffered economic loss and damage to its business and reputation. (Am.Compl.¶ 62).

### 3. *Violation of First Amendment Rights*

Consistent with its practice and policy, the City retaliated against MBI for MBI's criticism of the City's business and construction practices, particularly the City's policy of requiring contractors to perform extra work and charge order work prior to approval and issuance of formal change orders. (Am.Com pl.¶ 65-66). MBI became aware of the City's retaliatory practice in July 2000 "when MBI became aware that its injuries, and continuing injuries, were the consequence of City policies, practices and customs." [FN8] (Am.Compl.¶ 67). MBI's criticisms-that the City's poor planning and contract administration were responsible for delays and cost overruns to public works projects-referred to matters of public concern. (Am.Compl.¶ 68). The City's retaliatory response reflected its continued practice and policy of retaliatory discrimination. (Am.Compl.¶ 69).[FN9] The City's retaliation violated MBI's First Amendment rights to free speech and assembly. (Am.Compl.¶ 70).

> [FN8.] This is an entirely conclusory and circular allegation, asserting nothing more than MBI became aware of the City's retaliatory policy when MBI became aware that it was injured by the City's retaliatory policy.

> [FN9.] Again, Promatach is referred to. (Am.Compl.¶ 69).

### 4. *Damages*

MBI claims it is entitled to recover damages to be proven at trial, but no less than $44 million for each cause of action, plus reasonable attorney's fees and interest and costs. (Am.Compl.¶ 48, 63, 74).

### III. DISCUSSION

*A. Prior Litigation Between the Parties*

Defendant argues that plaintiff has previously

Not Reported in F.Supp.2d                                                                                                    Page 5
Not Reported in F.Supp.2d, 2003 WL 22801429 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

released the City from the claims which are asserted in the instant action, and that the application of the doctrine of res judicata operates as an additional (and independent) bar on this action.

This is not the first lawsuit related to these public works projects. Indeed, this is at least the third lawsuit, and the second in which MBI has asserted claims against the City. In order to discuss defendant's release defense, a detour into some prior judicial history is required.

***5** In or around 1994, MBI entered into an agreement with Thompson Pipe and Steel Company ("Thompson") whereby Thompson would manufacture the pipes needed on the Brookville, Crescent Street and Queens projects. *See* Affidavit of Richard Schulsohn, Aug. 18, 2003 ("Schulsohn Aff.") at ¶ ¶ 3, 7.[FN10] Disputes arose as to the specifications of these pipes on the Queens project. *Id.* at ¶ 7. On April 29, 1997, the City rescinded its approval of MBI as completion contractor for the Queens project because, according to defendant, MBI failed to complete that project on time and had exhibited poor workmanship on the Brookville and Crescent Street projects. *Id.* at ¶ 8. INA was the surety for each of these projects, and was obligated to complete each project as per performance bonds issued in August 1991. *Id.* at ¶ ¶ 3, 8. According to the City, INA refused to acquire another completion contractor, as was its obligation, and the City therefore defaulted INA on the Queens project on September 28, 1998. *Id.* at ¶ 8.

>  FN10. Courts in the Second Circuit limit what may be considered on a 12(b)(6) motion to dismiss to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, i.e., documents that are "integral" to the complaint. *See Calcutti v. SBU, Inc.,* 273 F.Supp.2d 488, 498 (S.D.N.Y.2003) (citations omitted). The contents of defendant's affidavit considered herein constitute either or both matters open to judicial notice and/or documents relied upon by the complaint.

Shortly before the City defaulted INA, Thompson had filed suit in the Eastern District of New York against MBI and its surety, General Insurance Company of America ("General").[FN11] Thompson sought recovery for alleged non-payment for pipes. *See Thompson Pipe & Steel Co. v. Mezzacappa Brothers, Inc. and General Insurance Company of America,* 98 CV. 3709 (FB/ASC) (filed May 30, 1998, E.D.N.Y.) (the "Thompson Action"). On July 24, 1998, MBI and General impleaded the City into that action through a third-party complaint. *See* Schulsohn Aff. Ex. L. That complaint alleged in part that "[t]he City has refused to permit Mezzacappa to complete [the Queens Project]". Thompson Action Third-Party Compl. at ¶ 25, and "[u]nder these circumstances, in the event Thompson recovers judgment against MBI and/or General in respect of [the Queens Project], the MBI and/or General are entitled to judgment over against the City." *Id.* at ¶ 26. In that complaint, General, as MBI's surety and assignee, sought money allegedly owed to it by the City arising out of the Richmond Avenue Project.[FN12] *Id.* at ¶ ¶ 27-30.

>  FN11. Before MBI arrived on these projects, the City had awarded the contracts to another contractor, Trevus Construction Corporation. Trevus's surety was Insurance Company of America, or INA. Trevus defaulted on the projects, but Insurance Company of America was bound to see the projects through to completion. Evidently, General Insurance Company of America, MBI's surety, is not to be confused with Insurance Company of America, the initial surety for these projects.

>  FN12. MBI had assigned to General "all monies due or to become due ... in respect of the [Queens Project, Richmond Avenue Project, and three other projects]". *Id.* at ¶ 18.

On March 26, 1999, INA sued the City. *See Insurance Company of North America v. City of New York,* 99 CV 1720 (E.D.N.Y.) (FB/ASC) (the "INA Action"). In the INA Action, INA sought restitution for costs expended by INA and MBI in performing the Queens Project, and injunctive relief related to the City deeming INA a non-responsible bidder. Like MBI's amended complaint in the instant action, INA demanded recovery for allegedly false, defamatory, and disparaging statements made by the City in connection with finding INA non-responsible. *See* INA Action at ¶ ¶ 33-39.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 6
Not Reported in F.Supp.2d, 2003 WL 22801429 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

MBI was not a named party in the INA Action; however, the INA Action was consolidated with the Thompson Action on July 26, 1999. On June 14, 2000, the Honorable Frederic Block so ordered a Stipulation of Settlement entered into by the parties. *See* Schulsohn Aff. Ex. P. The Settlement was executed in part "to resolve all disputes and matters at issue between and among [the parties] relating to or arising out of the contracts, agreements, transactions, or occurrences set for in the [Thompson Action] and INA Action." *Id.* at 2-3. In addition to this Stipulation of Settlement, the parties filed with the court Stipulations of Dismissal, dismissing both actions against the City with "prejudice and on the merits." *See* Schulsohn Aff. Ex. Q at 1, and Ex. R at 1. Said Dismissals were so ordered by Judge Block on August 3, 2000. Last, MBI, fulfilling a Settlement provision, executed a release ("the Release") in favor of the City on May 11, 2000 through its attorney-in-fact, General. *See id.* Ex. S and Ex. P at ¶ 6.

*B. MBI Released the City From the Claims Asserted in this Action*

**\*6** [1] The Release entered by MBI for the City unambiguously precludes this action. Where "a release is signed in a commercial context by parties in a roughly equivalent bargaining position and with ready access to counsel, the general rule is that, if the language of the release is clear ... the intent of the parties [is] indicated by the language employed ... When the words of the release are of general effect the release is to be construed most strongly against the releasor, and the burden is on the releasor to establish that the release should be limited." [Middle East Banking Co. v. State Street Bank Int'l, 821 F.2d 897 (2d Cir.1987)](citations omitted).

Plaintiff argues that the instant action is not covered by the release. According to plaintiff, "the release is limited to contract issues relating to [the Thompson and INA Actions] and [the public works contracts at issue in those actions] and does not extend to the claims asserted in this case." Opp. Mem. at 29. Plaintiff avers that "the last sentence of the release expressly limits the release to":
[Claims] arising out of ... the action commenced by Thompson Pipe ... the action commenced by Insurance Company of North America ... the City of New York contracts at issue in said two actions, namely BED 742, RED 328, HWQ 274/411, BED 747, and QED 941.

Plaintiff's Opp. Mem. at 29, quoting from the Release.

Plaintiff counsel's abbreviated rendition of the release's language is wholly inappropriate. The first ellipses is used in place of the highly expansive phrase "or in any way connected with". The language plaintiff's counsel excises with the first ellipses is as "limiting" as it is redundant or irrelevant or not worthy of the Court's attention.

The projects underlying this suit-the Brookville Project (HWQ) and the Crescent Street Project (BED 747)-are specifically and expressly enumerated in the release. The instant action is based on facts and events related to these contracts as DDC said it was MBI's performance on these contracts which motivated the non-responsible bidder determination. Plaintiff's claims, though framed as civil rights allegations and not contract claims, sufficiently "aris[e] out of" or are "connected with" the contracts named in the release, and thus the instant action is precluded.

Moreover, it is irrelevant that plaintiff did not possess its *Monell*-based causes of action [FN13] until after the release's execution because the release expressly forecloses "all actions, causes of action [and] suits ... [MBI] ever had, now ha[s] or *hereafter can, shall or may have."* (emphasis added) Thus, the Release is prospective in its language and effect. In any event, the actions taken by the City which plaintiff now alleges were unconstitutional and libelous took place nearly two years prior to MBI entering into the Release. Certainly MBI was aware at that time that they possessed at least the underpinnings of the claims in the current action.

> [FN13.](#) Because plaintiff brings this [§ 1983](#) action against a municipal defendant, plaintiff must plead and prove that the City acted against MBI as part of a policy, custom or practice. *See* [Monell v. Dept. of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)](#).

**\*7** Plaintiff, alternatively but equally unpersuasively, argues that it is not bound to the release because the release was executed by General, not MBI, and a "party has authority to release only those claims belonging to the party either in its individual or representative capacity." Opp. Mem. at 30. General, plaintiff concludes, "cannot have released MBI's present claims." *Id.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d   Page 7
Not Reported in F.Supp.2d, 2003 WL 22801429 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Plaintiff, however, offers no valid support for differentiating a release in the name of a party executed solely by that party from one in the name of a party exercised by another party acting as attorney-in-fact.[FN14] And the indemnity agreement between General and MBI certainly does not provide any support for this proposition. Under the indemnity agreement, General had plain and manifest authority to execute the release. See Schulsohn Aff., Ex. D at 2;[FN15] see, e.g., Hutton Construction Co. v. County of Rockland, et al., 52 F.3d 1191, 1192 (2d Cir.1995) (agreeing with District Court that unambiguous assignment and attorney-in-fact clauses of indemnity agreement gave a surety "the authority to settle all claims on behalf of [the assigning contractor]"). Furthermore, plaintiff cannot escape the fact that the release specifically names "Mezzacappa Brothers, Inc." as the releasor.[FN16]

   FN14. The lone case cited by plaintiff, Allstate Inc. Co. v. Horowitz, 118 Misc.2d 787, 461 N.Y.S.2d 218 (Civ.Ct. N.Y.1983), is not on point. The court in that case merely held that an individual doctor could not bind his professional services corporation to a release signed by, and naming only, the doctor (in an individual capacity) because the doctor could not be considered representative or derivative of the corporation.

   FN15. The indemnity agreement states: "[MBI] assigns to [General] ... [a]ny actions, causes of action, claims or demands whatsoever which [MBI] *may have or acquire* against any party to the Contract, or arising out of or in connection with any Contract ... and [General] shall have the full and exclusive right, in its name or in the name of [MBI] ... to prosecute, compromise, *release* or otherwise resolve such actions, causes of action, claims or demands." Schulsohn Aff., Ex. D at 2 (emphasis added).

   FN16. We are mindful that a release may sometimes be a "matter [ ] outside the pleadings" for purposes of Fed.R.Civ.P. 12(b)(6) and what a court may consider when deciding a motion to dismiss pursuant to that rule. See Calcutti, 273 F.Supp.2d at 498 (S.D.N.Y.2003) (enumerating what a court may consider when deciding a 12(b)(6) motion to dismiss). In the event it was determined that in order to permissibly consider the Release at this juncture defendant's motion should be treated as a motion for summary judgment, see Fed.R.Civ.P. 12(b), the foregoing analysis and conclusion reached therefrom would not change. We confirmed with plaintiff's counsel at oral argument that the Release creates no genuine issue of material fact such as to withstand a judgment as a matter of law. See Transcript of Oral Argument, Nov. 18, 2003, at p. 9, lines 13-24.

Accordingly, having previously released the claims plaintiff seeks to advance in this action, plaintiff's complaint must be dismissed.

*C. Res Judicata is an Additional Bar to this Action*

[2] Res judicata poses an additional bar to this action. Specifically, claim preclusion forecloses this action which could have been raised previously when plaintiff initiated its third-party complaint against defendant in the Thompson Action.

Claim preclusion "prevents a plaintiff from relitigating claims that were or could have been raised in a prior action against the same defendant where that action has reached a final judgment on the merits." Brown v. Quiniou, [cite] 2003 WL 1888743 at *2 (S.D.N.Y. Apr.16, 2003); *see also* Greenberg v. Bd. of Governors of the Fed. Reserve Sys., 968 F.2d 164, 168 (2d Cir.1992) (stating that res judicata bars both "issues actually decided in determining the claim in the first action and ... issues that could have been raised in the adjudication of that claim").

The preclusive extent of a federal court's judgment is a matter of federal law. See Pentagon Techs. Int'l, Ltd. V. Caci Intern. Inc., 93 Civ. 8512, 1996 WL 435157 at *7 (S.D.N.Y. Aug.2, 1996) (citing PRC Harris, Inc. v. Boeing Co., 700 F.2d 894, 896 n. 2 (2d Cir.1982)).

The Second Circuit has a well-established test to ascertain the existence of claim preclusion. A defendant invoking the doctrine must show that: (1) the previous action involved an adjudication on the merits; (2) the previous action involved the same defendants or those in privity with them; and (3) the claims asserted in the subsequent action actually were or could have been raised in the prior action. See Pike v. Freeman, 266 F.3d 78, 91 (2d Cir.2001).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                         Page 8
Not Reported in F.Supp.2d, 2003 WL 22801429 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**\*8** As documented *supra,* there exists a previous action involving the same exact parties (and/or those in privity with them). On July 24, 1998, MBI and its surety, General, defendants in an action brought by Thompson, impleaded the City in a third-party complaint. The third-party complaint effectively sought indemnity from the City for any damages MBI and/or General might be found to owe to Thompson related to the Queens Project. Moreover, General, as surety and assignee of MBI, sought damages from the City arising out of the Richmond Avenue Project, the Crescent Street Project, and the Brookville Project. MBI asserts that the previous action did not involve the same parties because MBI was a party only through its surety and MBI did not have independent counsel. MBI offers no explanation as to why these facts are significant, nor can we deduce any. The irrefutable fact is MBI was previously a party in an action against the City.

MBI's third-party complaint was adjudicated on the merits by Stipulation of Dismissal which was entered by Judge Block of the Eastern District of New York on August 3, 2000. The Dismissal specifically and clearly encompassed "all third-party claims against the City", dismissing them "with prejudice and on the merits." Schulsohn Aff., Ex. Q.

Finally, the claims asserted in the instant action either were or could have been raised in MBI's third-party complaint against the City. Whether a claim could have been raised "depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second [action] were present in the first [action]." *Prime Management Co. v. Steinegger,* 904 F.2d 811, 815 (2d Cir.1990). *See also Brown,* 2003 WL 1888743 at \*2 (noting that claim preclusion acts in two ways, barring "claims that were brought and decided in the prior litigation, and [barring] all other claims relating to the same transaction against the same defendant that could have been brought at the same time.")

MBI or its surety and assignee have already asserted claims against the City arising out of the Queens Project, the Richmond Avenue Project, the Crescent Street Project and the Brookville Project. The instant action concerns these very same projects. MBI argues that the previous actions were breach of contract claims, or involved the wrongful termination of MBI's surety by the City, and that none included the § 1983 allegations raised here. While this might be true, MBI misapprehends the relevant legal inquiry.

Claim preclusion is enforced "even if [the second action is] based upon different legal theories or [is] seeking different relief on issues which might have been litigated in the prior action but were not." *Northern Ins. Co. of Am. v. Square D. Co.,* 201 F.3d 84, 87 (2d. Cir.2000). Res judicata precludes a plaintiff from recasting an adjudicated complaint along a different legal theory or by adding some previously unalleged facts. *See, e.g., Ansley v. Green Bus Lines, Inc.,* 99 Civ. 10140, 2000 WL 12120 (S.D.N.Y. Jan.7, 2000) (holding that a plaintiff's dismissed suit claiming various violations of the law were committed when his employment was terminated precluded a second defamation claim based on the same alleged statements that were made in connection with his termination); *Bryant v. United States,* 71 F.Supp.2d 233 (S.D.N.Y.1999) (precluding plaintiff from bringing a second suit against the IRS which merely added a few facts to a previously dismissed action). No matter what legal theory drives MBI's present action, the facts essential to MBI's previous action against the City-MBI's performance on certain municipal contracts-would sit at the core. Though the City's allegedly libelous statements were made in the context of denying MBI the Bay Ridge Project, all the evidence, witness testimony and argument related to that decision would involve the underlying municipal projects which have already been litigated, dismissed with prejudice, and released between MBI and the City.

**\*9** Plaintiff does not argue that res judicata should be withheld to the extent his causes of action against the City are *Monell*-dependent. However, even if plaintiff did such an argument would fail.

Claim preclusion is not enforced against "new rights acquired during [a first] action which might have been, but were not, litigated." *Computer Associates Int'l v. Altai,* 126 F.3d 365, 370 (2d Cir.1997). This is an exception to the "general rule" that "newly discovered evidence does not preclude the application of res judicata." *Well-Made Toy Mfg. Corp. v. Lotus Onda Industrial Co.,* 02 Civ. 1151, 2003 WL 42001 at \*10 (S.D.N.Y. Jan.6, 2003); *see also L-Tec Electronics Corp. v. Cougar Electronic Org.,* 198 F.3d 85, 88 (2d Cir.1999) (holding that plaintiff's discovery of additional facts following entry of summary judgment does not block the application of res judicata). The term "acquired", however, is understood very literally: "If the rights in question had already attached, and plaintiff merely came upon new evidence which might support another claim in the first action, then res judicata might properly apply." *Well-Made Toy Mfg. Corp.,*

Case 7:04-cv-08223-KMK    Document 163-12    Filed 07/07/2006    Page 9 of 9

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22801429 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 9

2003 WL 42001 at *10 (citations omitted). "When the evidence was either fraudulently concealed or when it could not have been discovered with due diligence," a claim might not face preclusion. *Id.*

Thus, to be permitted to bring its § 1983 claim, MBI would have to establish that the evidence it would need to support the claim was either fraudulently concealed, or it could not have been discovered with due diligence prior to bringing its third-party complaint against the City in the Thompson Action. MBI makes no such argument in its opposition motion, nor does its complaint include any allegation to this effect. At the time MBI filed its third-party complaint, the City actions which plaintiff claims constitute civil rights violations already occurred. Yet plaintiff undertook no effort to then undercover the alleged harmful City practice or policy about which plaintiff now avers to have knowledge. If plaintiff was in fact a victim of a retaliatory City practice or policy, due diligence (e.g., pursuing action on these claims, seeking document, written and oral discovery) [FN17] could have so informed plaintiff.

> FN17. Indeed, concurrent with MBI's third-party complaint against the City, INA pressed claims against the City similar to those raised here by MBI. *See* INA Action at ¶¶ 33-39.

### CONCLUSION

Based on the foregoing, plaintiff's amended complaint is dismissed with prejudice.

IT IS SO ORDERED.

S.D.N.Y.,2003.
Mezzacappa Brothers, Inc. v. City of New York
Not Reported in F.Supp.2d, 2003 WL 22801429 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:03cv00223 (Docket) (Jan. 10, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.