

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1328215 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
ZURICH AMERICAN INSURANCE COMPANY, Plaintiff,
v.
DAH SING BANK, LIMITED, Union Bank of California, The Bank of East Asia Limited, and Wan Kwok Ping, Defendants.
**No. 03 Civ.7778(DLC).**

June 15, 2004.

Mary Doherty, Cullen and Dykman Bleakley Platt LLP, New York, New York, for the Plaintiff.
Charles L. Kerr, Jun Tsutsumi, Morrison & Forrester LLP, New York, New York, for the Defendant Dah Sing Bank, Limited.
Kerry A. Brennan, Laura L. Smith, Pillsbury Winthrop LLP, New York, New York, for the Defendant Union Bank of California.

*OPINION AND ORDER*

COTE, J.

**\*1** This Opinion addresses whether there is personal jurisdiction in New York over a Hong Kong bank for accepting fraudulently endorsed checks for deposit, and whether the plaintiff has stated a claim against the American bank that assisted in the clearance of these checks. On December 18, 2003, defendant Dah Sing Bank, Limited ("Dah Sing") moved to dismiss the claims against it for lack of personal jurisdiction. On January 12, 2004, defendant Union Bank of California ("Union Bank") moved to dismiss the claims against it because (i) Dah Sing is an indispensable party with respect to the claims against Union Bank; (ii) Hong Kong is the most convenient forum for those claims and New York has no meaningful nexus to them; and (iii) plaintiff Zurich American Insurance Company ("Zurich") has failed to state a claim against Union Bank. For the reasons set forth below, the motions by Dah Sing and Union Bank for lack of personal jurisdiction and for failure to state a claim, respectively, are granted.

*Background*

The plaintiff, Dah Sing, and Union Bank have each submitted affidavits, declarations, and documents in connection with these motions.[FN1] The following is taken from the complaint and these submissions.[FN2]

> FN1. Zurich was permitted to file an untimely, supplemental opposition to Dah Sing's motion to dismiss in order to assert an additional basis for jurisdiction under New York's Civil Practice Law and Rules ("CPLR") 302(a)(3)(ii), over Dah Sing.

> FN2. Zurich's counsel submitted affidavits containing allegations relevant to personal jurisdiction over Dah Sing (the "Doherty Affidavit") and its claims against Union Bank. An affidavit from an attorney without personal knowledge of the facts asserted within the affidavit is insufficient to raise an issue of fact. *United States v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc.,* 44 F .3d 1082, 1084 (2d Cir.1995).

*Complaint*

Zurich filed the original complaint in this diversity action [FN3] on October 2, 2003, and an amended complaint on November 25.[FN4] The amended complaint states that defendant Wan Kwok Ping ("Wan") [FN5] was an employee of Putnam, a New York corporation with its corporate offices in New York City. While Wan did not have check writing privileges and he was not a corporate officer of Putnam, he did deposit checks for Putnam, and he created account receivable folders for Putnam's customers. The amended complaint alleges that Wan fraudulently altered checks that he stole in New York that were made payable to Putnam by either (i) adding his own name to the payee line on a check, endorsing it, and depositing the check in his personal account maintained at The Bank of East Asia Limited ("BEA") [FN6] in New York, or (ii) endorsing the check in Putnam's name and depositing it in an "unauthorized corporate account" at Dah Sing in Hong Kong.[FN7] Beginning on or about March 2001 and continuing through March 2002, Wan allegedly converted approximately $175,000.[FN8]

> FN3. The parties concede that there is subject matter jurisdiction in this matter

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK    Document 163-16    Filed 07/07/2006    Page 2 of 8

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 1328215 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

under 28 U.S.C. § 1332(a)(2). While the Second Circuit has not yet addressed whether corporations organized under the laws of the Hong Kong Special Administrative Region are "citizens or subjects" of China for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a)(2), Hong Kong corporations appear to be citizens of China under the principles set forth in *JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.,* 536 U.S. 88 (2002). *See Smoothline Ltd. v. North Am. Foreign Trading Corp.,* No. 00 Civ. 2798(DLC), 2002 WL 273301, at *3 n.3 (S.D.N.Y. Feb. 27, 2002); *Favour Mind Ltd. v. Pacific Shores, Inc.,* No. 98 Civ. 7038(SAS), 1999 WL 1115217, at *7 (S.D.N.Y. Dec. 7, 1999) (same).

FN4. The original complaint named both Zurich and Putnam Rolling Ladder Co., Inc. ("Putnam") as plaintiffs.

FN5. According to the docket sheet, Wan has not been served with the summons and complaint or appeared in this action. Zurich has expressed no intent serve Wan.

FN6. On May 10, 2005, a stipulation of settlement resulted in the dismissal of BEA from this action.

FN7. In opposition to these motions, the plaintiff submitted evidence that of 268 altered or fraudulently endorsed checks, (i) 262 checks were drawn upon banks located in the United States, and (ii) 100 were from Putnam's New York resident customers, drawn on various New York bank branches. Plaintiff's opposition papers do not state how many checks were deposited at Dah Sing.

FN8. According to an affidavit submitted by Putnam's president, Putnam has actually suffered at least $300,000 in losses as a result of this alleged scheme. This affidavit also states that Putnam informed Zurich that an employee theft had occurred and filed a Proof of Loss claim with Zurich on or about May 20, 2002. Zurich has reimbursed Putnam for $175,000.00 of its loss.

The amended complaint asserts claims for conversion, money had and received, fraud, and unjust enrichment against Wan. The amended complaint asserts that Dah Sing, Union Bank, and BEA are each liable for conversion, money had and received, and negligence. The pleading does not identify the role played by Union Bank in the fraud. It merely asserts in conclusory fashion that the three bank defendants "accepted for deposit, forwarded for collection, cleared, collected and credited" the checks.

*Hong Kong Account*

Dah Sing has submitted evidence to show that Putnam does not and has never maintained an account at Dah Sing. The "corporate account" at Dah Sing to which the Amended Complaint refers is Account No. 11-303-1161-9 ("the "Hong Kong Account"), a checking account opened at Dah Sing's Johnston Road Branch in Hong Kong by Mr. Chui Man Kuen Fozwagz ("Chui") on or about April 25, 2001. The Hong Kong Account was opened in the name of Putnam Rolling Ladder Co. ("Putnam Co."), a sole proprietorship with its place of business in Hong Kong. The Company Account Opening Form submitted to Dah Sing to open the Hong Kong Account indicates that Chui is the sole proprietor of the company and the principal contact person for the Hong Kong Account.

**\*2** As part of the Hong Kong Account opening papers, Chui submitted to Dah Sing a Business Registration Certificate for his company showing the company to be registered to do business in Hong Kong with a Hong Kong business address. Dah Sing mailed monthly account statements for the Hong Kong Account to this address. These account statements were the only form of communication sent by Dah Sing regarding the Hong Kong Account. All deposits to the Hong Kong Account were made in person at Dah Sing's office in Hong Kong. Determination of the validity of the deposits at issue-i.e., that each check deposited was payable to Dah Sing's customer and properly endorsed-was made in Hong Kong. Only after the checks were accepted for deposit in accordance with Hong Kong banking laws were the checks forwarded to the United States for clearing and collection.

On November 13, 2001, Chui submitted a Notification of Change of Signing Instructions form to Dah Sing authorizing either Chui or the individual defendant Wan to sign for the Hong Kong Account. Chui also submitted photocopies of Chui's and Wan's respective Hong Kong photo identification cards.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 3
Not Reported in F.Supp.2d, 2004 WL 1328215 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

### Dah Sing

Dah Sing has also submitted evidence to support the following. Dah Sing is a foreign corporation organized under the laws of Hong Kong and provides banking and financial services. Dah Sing operates through a series of branch offices located in Hong Kong, Kowloon and the New Territories and through a representative office in People's Republic of China. Dah Sing is not a state-owned bank. Neither Dah Sing nor its parent company, Dah Sing Financial Holdings Limited ("DSFH") is or represents itself to be an agency of a foreign state.

Dah Sing is not registered or licensed to conduct business in the State of New York. It does not own any real property, lease property, or maintain any office or telephone number in New York. Dah Sing has no employees, representatives, directors or officers who live or work in New York, and has no agents located in New York to promote its interests. Neither does it have any subsidiaries or affiliates in New York or anywhere in the United States. Further, Dah Sing conducts no advertising or public relations, does not solicit business, and has no investor relations office in New York.

While Dah Sing maintains correspondent bank relationships with banks in the United States for conducting U.S. dollar transactions on behalf of Dah Sing clients in Hong Kong, Dah Sing does not conduct any business transactions in New York or in the United States on its own behalf. With respect to U.S. checks that are deposited by its customers in Hong Kong, Dah Sing forwards the deposited checks to Union Bank in California for clearing and collection via the U.S. clearing system.

Dah Sing has a website that provides information to potential customers and offers current customers the ability to conduct certain banking transactions over the internet. Part of Dah Sing's internet services includes the issuance of a PIN (Personal Identification Number) that provides online access to those services and provides existing customers with the ability to perform limited banking transactions over the Internet. A Dah Sing savings, checking, or deposit bank account can only be opened by visiting one of the bank's branches in Hong Kong. While customers may obtain information about, and download certain loan and credit card application forms from Dah Sing's website, such applications cannot be processed without the customer visiting one of Dah Sing's branches in Hong Kong. Dah Sing asserts that it has only issued credit cards to Hong Kong-based customers.

**\*3** The "iBanking" feature on Dah Sing's website only allows the bank's corporate customers based in Hong Kong to perform limited banking services over the internet. To date, no U.S.-based customer has made use of Dah Sing's iBanking services. Dah Sing has never mailed any software or materials relating to its iBanking service to any U.S.-based customer.

The Doherty Affidavit asserts that Dah Sing offers corporate credit cards to multinational customers of the General Electric Company ("GE"). Under this agreement with GE, Dah Sing acts as a local issuer of corporate credit cards for companies operating in Hong Kong. According to an affidavit submitted by the Head of Bank Services for Dah Sing, however, the bank has only issued corporate credit cards to Hong Kong staff of seven companies based in Hong Kong.

The Doherty Affidavit also states that Dah Sing has an agreement to provide trade financing with TradeCard, Inc., a global online trade transaction settlement company for importers and exporters, to provide TradeCard members with access to export financing, a partnership that gives Hong Kong traders the ability to conduct international trade online.

Finally, the Doherty Affidavit states that Dah Sing's parent company, DSFH, has joint ventures with SG Hambros Bank, and Aviva (f/k/a CGNU), which provide offshore private banking services and general insurance services, respectively. The Doherty Affidavit also states that Aviva has a subsidiary which is licensed and offers products in New York and that UFJ Bank Limited is a major shareholder of DSFH and has offices in New York City.

### Union Bank

The Amended Complaint states that Union Bank maintains branch offices in New York City. Zurich supplements these jurisdictional allegations with claims that Union Bank markets itself as an international bank with 282 branches.

Union Bank has submitted evidence that it has one Trust office in New York, but no branches in the state. In addition, a California branch of Union Bank, and not the New York Trust office of Union Bank, cleared the relevant checks transferred to Union Bank

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 4
Not Reported in F.Supp.2d, 2004 WL 1328215 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

by Dah Sing. There is no allegation that Wan, Putnam, or Putnam Co. ever opened or maintained an account at Union Bank. Union Bank's sole connection with this dispute is its role as a clearinghouse bank for U.S. checks forwarded to it by Dah Sing from Hong Kong.

When Union Bank acts a clearinghouse bank for Dah Sing, under the Uniform Commercial Code ("UCC"), Dah Sing is the "depositary bank" because it is the first bank to take the item from the customer, and Union Bank is an "intermediary bank." [FN9] *See* UCC § 4-105. Union Bank credited Dah Sing's account with the face amount of the checks and forwarded the checks to the drawee bank for payment. Thus, Union Bank does not retain the proceeds of any checks received from Dah Sing. Union Bank had no contact or communication with any customer of Dah Sing in the course of clearing the customer's checks for Dah Sing.

> FN9. A check typically involves three parties, (1) the "drawer" who writes the check, (2) the "payee", to whose order the check is made out, and (3) the "drawee" or "payor bank", the bank which has the drawer's checking account from which the check is to be paid. In form, a check is an order to the drawee bank to pay the face amount of the check to the payee. After receiving the check, the payee typically endorses it on the back with the payee's own name, and then deposits it in the payee's account in a different bank, the "depositary bank". The depositary bank credits the check to the payee's account, and sends the check through the check clearing system to the payor bank for ultimate payment from the drawer's account. Any bank through which the check passes in the clearing process is an "intermediary bank". Any bank handling the check for collection, including the depositary bank but excluding the payor bank, is referred to as a "collecting bank." *See, e.g.,* UCC § 4-105.

*Discussion*

**\*4** Dah Sing has moved to dismiss the claim against it for lack of personal jurisdiction. Union Bank has pressed multiple grounds for dismissal. Dah Sing's motion will be addressed first.

I. *Dah Sing*

Zurich argues that there is personal jurisdiction over Dah Sing pursuant to CPLR 302(a)(1) and 302(a)(3)(ii).[FN10] Zurich also argues that Dah Sing is subject to personal jurisdiction pursuant to the Foreign Sovereign Immunities Act of 1976 (the "FSIA"), 28 U.S.C. § § 1602-1611.

> FN10. Zurich originally argued that Dah Sing transacted business in New York. It was later permitted to supplement its assertion of jurisdiction with the argument that Dah Sing had committed a tort in New York.

In a diversity case, the issue of personal jurisdiction must be determined according to the law of the forum state. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305 F.3d 120, 124 (2d Cir.2002). "If the exercise of jurisdiction is appropriate under [the state's statutes], the court then must decide whether such exercise comports with the requisites of due process." *Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 27 (2d Cir.1997). It is well established that on a motion to dismiss for lack of personal jurisdiction, the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.,* 334 F.3d 204, 206 (2d Cir.2003) (per curiam). Where, as here, there has been no discovery, the plaintiff need only make a prima facie showing through its pleading and affidavits that jurisdiction exists. The pleading and affidavits are construed in the light most favorable to the plaintiff. *See, e .g., DiStefano v. Carozzi North Am., Inc.,* 286 F.3d 81, 84 (2d Cir.2001).

*Personal Jurisdiction Under CPLR 302(a)(1)*

CPLR 302(a)(1) allows the exercise of personal jurisdiction if the defendant "transacts any business within the state" and the cause of action "arises from" that business activity.[FN11] *Sunward Electronics, Inc. v. McDonald,* 362 F.3d 17, 22 (2d Cir.2004). A claim arises out of a party's transaction of business in New York if there exists an " 'articulable nexus' or a 'substantial relationship' between transactions occurring within the state and the cause of action sued upon." *McDonald,* 362 F.3d at 23. *See also Agency Rent A Car Sys., Inc. v. Grant Rent A Car Corp.,* 98 F.3d 25, 31 (2d Cir.1996).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 5
Not Reported in F.Supp.2d, 2004 WL 1328215 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

FN11. Section 302(a) states, in pertinent part:
As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary who in person or through an agent:
1. transacts any business within the state or contracts anywhere to supply goods or services in the state.
CPLR 302(a)(1).

Zurich's claims against Dah Sing do not arise out of any Dah Sing business transaction in New York. There is no prima facie showing of an articulable nexus or substantial relationship between Dah Sing's alleged business contacts with New York-its website, issuance of credit cards, and/or practice of clearing United State checks through a California bank-and the allegations that the bank failed to act properly in Hong Kong in accepting a check for deposit into the Hong Kong Account. *See In re Ski Train Fire in Kaprun, Austria on November 11, 2003,* No. 01 MDL 1428(SAS), 2003 WL 22909153, at *4 (S.D.N.Y. Dec. 8, 2003) (no personal jurisdiction under CPLR 302(a)(1) based on defendant's website where plaintiffs failed to allege they ever visited the website, let alone used it in connection with the events that were the subject of the litigation).

*Personal Jurisdiction under CPLR 302(a)(3)*

**\*5** Zurich argues that CPLR 302(a)(3)(ii) allows for personal jurisdiction over Dah Sing. CPLR 302(a)(3)(ii) states that personal jurisdiction is proper where the defendant
commits a tortious act without the state *causing injury* to person or property *within the state* ... if he (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

CPLR 302(a)(3) (emphasis supplied). As a general rule, for long-arm purposes an injury occurs at the location of the events that caused the injury, not the location where the damages are felt later by the plaintiff. *McGowan v. Smith,* 52 N.Y.2d 268, 274-75 (1981). In determining whether an injury occurs "within the state," courts applya situs-of-injury test, which asks them to locate the 'original event which caused the injury.' This 'original event' is, however, generally distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort.... [T]he 'original event' occurs 'where the first effect of the tort ... that ultimately produced the final economic injury' is located.

*DiStefano,* 286 F.3d at 84-85 (citation omitted). As the Second Circuit has summarized more recently, "[t]he occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under CPLR § 302(a)(3) where the underlying events took place outside New York." *Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 209 (2d Cir.2001) (citation omitted).

With respect to the claims against Dah Sing, the events that caused the injury did not occur in New York.FN12 Dah Sing is accused of conversion, money had and received, and negligence. The critical events surrounding Dah Sing's role in each of these claims occurred in Hong Kong.

FN12. Plaintiff argues that *Citigroup Inc. v. City Holding Co.,* 97 F.Supp.2d 549, 568 (S.D.N.Y.2000), and *Thomas Pub. Co. v. Industrial Quick Search, Inc.,* 237 F.Supp.2d 489, 492 (S.D.N.Y.2002), compel a different result because they relied on the proposition that if a business lost sales or customers in New York as a result of defendants' websites, then there was an "injury" within New York. Plaintiff's argument fails. Zurich has not alleged that it lost sales or customers in New York as a result of Dah Sing's website. Plaintiff in *Citigroup* claimed that its actual and potential New York customers were confused and deceived when they viewed and interacted with defendant's website. *Citigroup,* 97 F.Supp.2d at 568. Thus, there was a causal connection between plaintiff's New York injuries and defendant's allegedly infringing website. In *Thomas Publishing,* the court found the injury occurred in New York because defendant had a high number of New York companies advertise or list themselves on its allegedly infringing website. *ThomasPublishing,* 237 F.Supp.2d at 492. There is no such allegation here.

*FSIA*

Zurich argues in the alternative that the FSIA provides personal jurisdiction over Dah Sing. It does

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                    Page 6
Not Reported in F.Supp.2d, 2004 WL 1328215 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

not.

The FSIA provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States" unless the circumstances of the suit fall into a specific statutory exception, such as a defendant engaging in "commercial activity" in the United States. *See* 28 U.S.C. § § 1604, 1605(a). The FSIA defines a "foreign state" to include an "agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a).

Dah Sing is not a "foreign state" as no state entity owns a majority of Dah Sing's shares. Dah Sing is a subsidiary of DSFH, which is publicly traded on the Hong Kong stock exchange.

*Discovery*

Zurich argues that Dah Sing's motion to dismiss is premature given the lack of discovery in this action. Zurich asks for discovery to obtain information about Dah Sing's website and its relationship with, among others, DSFH and Union Bank beyond that presented in the affidavits and declarations accompanying this motion. Because Zurich has failed to make a prima facie showing of personal jurisdiction, Zurich's request for discovery is denied.

II. *Union Bank*

**\*6** Union Bank moves to dismiss the claims against it on the ground that Zurich has failed to state a claim against it. Zurich has failed properly to allege the elements of any of its three claims-negligence, money had and received, and conversion-against Union Bank.[FN13] The Amended Complaint does not include a single factual allegation against Union Bank in support of any of these claims. Instead, it lumps the three bank defendants together and asserts that they collectively processed the checks. This type of group pleading is inadequate to state a claim against Union Bank. *See Yucyco, Ltd. v. Republic of Slovenia,* 984 F.Supp. 209, 219 (S.D .N.Y.1997); *United States v. Private Sanitation Indus. Assoc. of Nassau/Suffolk, Inc.,* 793 F.Supp. 1114, 1146 (E.D.N.Y.1992).

> FN13. Given this conclusion, it is unnecessary to address Union Bank's alternative grounds for dismissal.

Zurich has not requested an opportunity to amend its pleading, and the parties' submissions on this motion demonstrate that any amendment attempt would be futile. In support of its motion to dismiss, Union Bank offered evidence that it operated in these transactions as an intermediary bank, clearing the checks accepted by Dah Sing. Accepting this characterization, Zurich argues that Union Bank nonetheless owed it a duty of care.

As adopted in New York, UCC § 4-102(2) determines which forum's law governs the dispute between Zurich and Union Bank. Section 4-102(2) provides:
The liability of a bank for action or non-action with respect to any item handled by it for purposes of presentment, payment or collection is governed *by the law of the place where the bank is located.* In the case of action or non-action by or at a branch or separate office of a bank, its liability is governed by the law of the place where the branch or separate office is located.

UCC § 4-102(2) (emphasis supplied). Because it is undisputed that the Union Bank "branch or separate office" responsible for clearing the checks at issue was located in California, California law governs the dispute between Zurich and Union Bank.[FN14]

> FN14. There is only one difference between New York and California law that the parties describe in their papers. As described below, this difference relates to the parameters of a defense to a claim of conversion under the UCC.

*Negligence*

Under California law, there are three elements to a negligence claim: (1) a legal duty to use due care; (2) a breach of the legal duty; and (3) a resulting injury for which the breach is the proximate or legal cause. *See Artiglio v. Corning,* 957 P.2d 1313, 1318 (Cal.1998). Absent a duty of care, there can be no cause of action for negligence. *Id.* It is well settled that a bank does not owe a duty of care to non-customers, absent extraordinary and specific facts. *See In re McMullen Oil Co.,* 251 B.R. 558, 571 (Bankr.C.D.Cal.2000); *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.,* 56 Cal.Rptr.2d 756, 760 (Cal.1996). For example, where an endorsement on a check is forged, no duty of care is owed to a non-customer. *See, e.g., In re McMullen*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK    Document 163-16    Filed 07/07/2006    Page 7 of 8

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1328215 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 7

*Oil Co.,* 251 B.R. at 572-73. Even if an intermediary bank is alleged to have processed checks that lacked all required endorsements, UCC § 3-206(2), Official Comment 3, provides that intermediary banks may "disregard restrictive endorsements" because they "handle checks in bulk and have no practicable opportunity to consider the effects of restrictive endorsements." UCC § 3-206(2), Official Comment 3.[FN15]

> FN15. UCC § 4-103(c) also provides that "in the absence of special instructions, action or nonaction consistent with clearing-house rules and the like ... is prima facie the exercise of ordinary care." UCC § 4-103(c).

**\*7** Union Bank, as an intermediary bank in the disputed transactions, owed no duty of care to non-customer Zurich. The Amended Complaint does not even allege that the checks deposited in the corporate account at Dah Sing lacked endorsements; rather Zurich alleges these checks were fraudulently endorsed via an unauthorized stamp. The plaintiff has failed to identify any extraordinary facts that would give rise to a duty to Zurich. Plaintiff's unusual suggestion that intermediary banks are negligent if they do not contact the drawer of each check they clear to insure the check's validity does not comport with UCC § 3-206(2). Such a duty would "bring check processing to a screeching halt," and Union Bank "cannot be faulted for not making those efforts." *United States Fid. & Guar. v. Federal Reserve Bank,* 590 F.Supp. 486, 499 (S.D.N.Y.1984).

*Money Had and Received*

The elements of a claim for money had and received under California law [FN16] are: "(1) a statement of indebtedness of a certain sum, (2) the consideration made by the plaintiff, and (3) nonpayment of the debt." *First Interstate Bank v. State,* 197 Cal.App.3d 627, 635 (Cal.Ct.App.1987). "[N]o recovery for money had and received can be had against a defendant who never received any part of the money or equivalent thing sued for." *Id.* (citation omitted). Zurich does not contend that it has alleged or can allege the elements of this claim against Union Bank. Nor does it oppose the dismissal of this claim.

> FN16. Under New York law, to maintain an action for money had and received, plaintiff must plead: "(1) defendant received money

belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under the principles of equity and good conscience, defendant should not be permitted to keep the money." *Middle East Banking Co. v. State Street Bank Int'l,* 821 F.2d 897, 906 (2d Cir.1987) (citation omitted). Zurich failed to allege these elements as to Union Bank.

*Conversion*

UCC § 3-420 governs the law of conversion for negotiable instruments in California. UCC § 3-420 provides in pertinent part that "the law applicable to conversion of personal property applies to instruments." UCC § 3-420(a). [FN17] Accordingly, UCC § 3-420 does not displace common law conversion principles; rather, the first sentence of UCC § 3-420(a) explicitly incorporates these principles. *See In re Bartoni-Corsi Produce, Inc.,* 130 F.3d 857, 860 (9th Cir.1997). Conversion of personal property in California requires proof of "the *wrongful exercise of dominion* over another's personal property in denial of or inconsistent with his rights in the property." *In re Emery,* 317 F.3d 1064, 1069 (9th Cir.2003) (emphasis supplied). The elements of such a claim are: "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by wrongful act inconsistent with the property rights of the plaintiff; and (3) damages." *Id.*

> FN17. UCC § 3-420 provides in full:
> (a) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument or (ii) a payee or endorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.
> (b) In an action under subsection (a), the measure of liability is presumed to be the amount payable on the instrument, but recovery may not exceed the amount of the plaintiff's interest in the instrument.
> (c) A representative, other than a depositary bank, who has in good faith dealt with an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK    Document 163-16    Filed 07/07/2006    Page 8 of 8

Not Reported in F.Supp.2d                                                                                                        Page 8
Not Reported in F.Supp.2d, 2004 WL 1328215 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

instrument or its proceeds on behalf of one who was not the person entitled to enforce the instrument is not liable in conversion to that person beyond the amount of any proceeds that it has not paid out.
*Id.*

As stated previously, as an intermediary bank and clearinghouse, Union Bank would not "apply" the checks forwarded by Dah Sing to its own use, and would never assume "control" over or "ownership" of the money represented by the checks. Zurich has not alleged such application, control or ownership.

In its opposition to this motion, Zurich implicitly concedes that Union Bank is not liable for conversion under UCC § 3-420(a), and the California law of conversion. Zurich argues that New York law should apply and that such law compels a different result. As discussed above, however, New York's choice of law rules require the application of California law to the claims against Union Bank. In any event, New York law would be of no assistance to Zurich. The distinction between New York and California law to which Zurich alludes relates to a *defense* to a claim of conversion under the UCC.[FN18]

>   FN18. California has adopted the 1990 revisions to the UCC with regard to the liability of a bank for conversion of checks, *see* UCC § 3-420, and New York has not, *see* UCC § 3-419. UCC § 3-419(3), which governs in New York, limits liability for conversion for banks, *including depositary banks,* which act "in good faith and *in accordance with the reasonable commercial standards* applicable to [their] business." *Id.* (emphasis supplied). UCC § 3-420(c), which governs in California, restricts this defense to non-depository banks like Zurich and does not require these banks to show they acted in accordance with reasonable commercial standards. *See* UCC § 3-420(c).

*Additional Discovery*

**\*8** As noted, Zurich does not request leave to amend its complaint a second time to assert claims against Union Bank, and does not argue that it can plead a cause of action against Union Bank as an intermediary bank. Instead, Zurich argues that Union Bank's motion to dismiss is premature because discovery is needed on the issue of whether Union Bank is in fact an intermediary bank and whether Union Bank retained proceeds from checks forwarded by Dah Sing. Zurich seeks the collection agreement between Union Bank and Dah Sing.

Additional discovery is not warranted. The burden is on the plaintiff to plead adequately its causes of action in compliance with the dictates of the Federal Rules of Civil Procedure. In its pleadings, Zurich failed to allege any role that Union Bank played in the transactions at issue. Similarly, Zurich failed to describe in its opposition to this motion any basis to believe that Union Bank was anything other than an intermediary bank in the relevant transactions or it retained proceeds from the relevant checks. Having shown no ability to state a claim against Union Bank, Zurich is not entitled to discovery.

*Conclusion*

The motions to dismiss by Dah Sing and Union Bank for lack of personal jurisdiction and for failure to state a claim, respectively, are granted. The plaintiff having failed to serve Wan, and the claims against the other defendant having already been resolved, the Clerk of Court shall close the case.

SO ORDERED:

S.D.N.Y.,2004.
Zurich American Ins. Co. v. Dah Sing Bank, Ltd.
Not Reported in F.Supp.2d, 2004 WL 1328215 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 2003 WL 22850092 (Trial Pleading) Verified Complaint (Oct. 02, 2003)
• 1:03cv07778 (Docket) (Oct. 02, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.