UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X  :
                                                              :
WORLD WRESTLING ENTERTAINMENT, INC.,                          :
                                                              :        04 CV 8223 (KMK)
                              Plaintiff,                      :        (ECF CASE)
                                                              :
          - against -                                         :
                                                              :        July 7, 2006
JAKKS PACIFIC, INC.; JAKKS PACIFIC (H.K.)                     :
LIMITED; ROAD CHAMPS LIMITED; THQ, INC.;                      :
THQ/JAKKS PACIFIC LLC; STANLEY SHENKER                        :
AND ASSOCIATES, INC.; STANLEY SHENKER;                        :
BELL LICENSING, LLC; JAMES BELL; JACK                         :
FRIEDMAN; STEPHEN BERMAN; JOEL                                :
BENNETT; and BRIAN FARRELL,                                   :
                                                              :
                              Defendants.                     :
                                                              :
-----------------------------------------------------------X  :

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTIONS TO DISMISS DATED JUNE 2, 2006

William O. Purcell (WP 5001)
KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP
599 Lexington Avenue
New York, New York 10022-6030
(212) 536-3900 (phone)
(212) 536-3901 (fax)

Jerry S. McDevitt
Curtis B. Krasik
Amy L. Barrette
KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, Pennsylvania 15222
(412) 355-6500 (phone)
(412) 355-6501 (fax)

Attorneys for Plaintiff, World Wrestling Entertainment, Inc.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT........................................................................................................ 3

      A.    Civil RICO Claims Are Not Subject to a Heightened Pleading Standard .............. 4

      B.    The Amended Complaint Adequately Alleges That Each Defendant
            Engaged in a Pattern of Racketeering Activity........................................................ 8

            1.    The Specifically Enumerated Predicate Acts Alleged in WWE's
                  Amended Complaint Are Sufficiently Related to Comprise a
                  Pattern of Racketeering Activity.................................................................. 9

            2.    The Amended Complaint Adequately Pleads Both Closed-Ended
                  and Open-Ended Continuity ...................................................................... 16

                  a.    Close-Ended Continuity.................................................................. 16

                        (i)    The Amended Complaint Alleges Predicate Acts
                               Spanning A Sufficient Time Period To Establish
                               Closed-Ended Continuity................................................... 16

                        (ii)   Defendants' Attempt to Mischaracterize WWE's
                               Amended Complaint Is Unfounded As A Matter Of
                               Fact And Law...................................................................... 21

                  b.    Open-Ended Continuity ................................................................. 24

      C.    WWE's RICO Injury Is Adequately Alleged ........................................................ 29

      D.    WWE's RICO Claims Are Not Time Barred ........................................................ 34

            1.    Defendants' Statute of Limitations Argument Turns on Disputed
                  Factual Issues and Thus Cannot Be Decided on a Motion
                  to Dismiss.................................................................................................. 34

            2.    The Amended Complaint Sufficiently Pleads Fraudulent
                  Concealment to Toll the Statute of Limitations ......................................... 39

            3.    The Separate Accrual of WWE's RICO Injury Precludes Dismissal
                  of the Entire Claim.................................................................................... 41

      E.    WWE's Allegations Against the THQ Defendants and THQ/Jakks Satisfy
            the "Operation or Management" Test .................................................................... 42

F.    The Amended Complaint Sufficiently Alleges RICO Predicate Acts Committed by the THQ Defendants and THQ/Jakks ...........................................48

    1.    The Challenged Predicate Acts Are Adequately Alleged ..........................48

        a.    Mail and Wire Fraud ....................................................................48

            (i)    The Amended Complaint Adequately Alleges That the THQ Defendants and THQ/Jakks Committed Mail and Wire Fraud .......................................48

            (ii)    The Amended Complaint Adequately Alleges That the THQ Defendants and THQ/Jakks Had the Requisite Scienter ........................................51

        b.    Money Laundering .......................................................................55

G.    The THQ Defendants and THQ/Jakks May Be Held Vicariously Liable for the Jakks Defendants' Unlawful Conduct ...............................................................58

    1.    Partnership Liability Principles Apply to WWE's RICO Claims Against the THQ Defendants and THQ/Jakks ..............................58

    2.    Partnership Liability Principles Under RICO Equally Apply to Joint Venturers ..........................................................................................61

    3.    Under Well-Settled Agency Law Principles, the THQ Defendants and THQ/Jakks May Be Found Vicariously Liable on WWE's RICO Claims ........................................................................................64

    4.    The THQ Defendants And THQ/Jakks Ratified The Jakks Defendants' Unlawful Conduct Committed Prior To The Formation Of Their Partnership ................................................................66

H.    WWE's RICO Conspiracy Claims Are Adequately Alleged ................................67

III.    CONCLUSION ....................................................................................................71

TABLE OF AUTHORITIES

Cases:                                                                                              Page:

*131 Main St. Assocs. v. Manko*, 897 F. Supp. 1507, 1529 (S.D.N.Y. 1995) ...............53, 55, 59, 60

*Academic Indus., Inc. v. Untermeyer Mace Partners, Ltd.*, No. 90 Civ. 1052 (LBS), 1992
    WL 73473 (S.D.N.Y. Apr. 1, 1992)..............................................................................30

*Allwaste, Inc. v. Hecht*, 65 F.3d 1523 (9th Cir. 1995) ...................................................27

*Am. Arbitration Ass'n, Inc. v. DeFonseca*, No. 93 CIV. 2424 (CSH), 1996 WL 363128
    (S.D.N.Y. June 28, 1996)..........................................................................................44

*Am. Buying Ins. Servs., Inc. v. S. Kornreich & Sons, Inc.*, 944 F. Supp. 240
    (S.D.N.Y. 1996) .......................................................................................................62

*Amendolare v. Schenkers Int'l Forwarders, Inc.*, 747 F. Supp. 162 (E.D.N.Y. 1990) .................58

*Amsler v. Corwin Petroleum Corp.*, 715 F. Supp. 103 (S.D.N.Y. 1989)...........................22, 23, 24

*Amsterdam Tobacco Inc. v. Philip Morris Inc.*, 107 F. Supp. 2d 210 (S.D.N.Y. 2000)................45

*Andrea Doreen Ltd. v. Bldg. Material Local Union 282*, 299 F. Supp. 2d 129
    (E.D.N.Y. 2004)..................................................................................................15, 28

*Annodeus, Inc. v. Ciarkowski*, No. 04 Civ.1633 DLC, 2004 WL 2066937 (S.D.N.Y.
    Sept. 16, 2004) ................................................................................6, 17, 18, 24

*Avianca, Inc. v. Corriea*, Civ. A. No. 85-3277(RCL), 1992 WL 93128 (D.D.C.
    Apr. 13, 1992) .............................................................................59, 60, 61

*B.F. Goodrich Co. v. Naples*, 121 F. Supp. 345 (S.D. Cal. 1954) ..................................65

*Baker v. Dorfman, P.L.L.C.*, No. 99Civ.9385(DLC), 2000 WL 1010285 (S.D.N.Y.
    July 21, 2000), aff'd, 232 F.3d 121 (2d Cir. 2000) ............................................62

*Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir. 1988)............................................ passim

*Beauford v. Helmsley*, 865 F.2d 1386 (2d Cir. 1989) (en banc)......................................17

*Bernstein v. IDT Corp.*, 582 F. Supp. 1079 (D.Del. 1984) ............................................58

*Bingham v. Zolt*, 66 F.3d 553 (2d Cir. 1995)...............................................................42

*Bolanos v. Norweigian Cruise Lines Ltd.*, No. 01 Civ. 4182(RMB) AJP, 2002 WL
  1465907 (S.D.N.Y. July 9, 2002) ...............................................................................12, 13

*Brady v. Dairy Fresh Prods. Co.*, 974 F.2d 1149 (9th Cir. 1992)...........................................58, 60

*Braphman-Bines v. N.Y. City Police Dept.*, No. 03 Civ. 10207(KMK), 2005 WL 22843
  (S.D.N.Y. Jan. 3, 2005)...................................................................................................7

*Brooke v. Schlesinger*, 898 F. Supp. 1076 (S.D.N.Y. 1995) ...................................................18, 23

*Brubaker v. City of Richmond*, 943 F.2d 1363 (4th Cir. 1991)........................................................58

*Burns v. MBK P'ship*, No. 99Civ.4004(JSM), 2003 WL 23979014 (D. Or. Nov. 5, 2003) ..........59

*Butala v. Agashiwala*, 916 F. Supp. 314 (S.D.N.Y. 1996) .............................................................39

*Center Cadillac, Inc. v. Bank Leumi Trust Co. of N.Y.*, 808 F. Supp. 213
  (S.D.N.Y. 1992) ............................................................................................ 48, 49, 51, 52

*City of N.Y. v. Pollock*, No. 03 Civ. 0253(PAC), 2006 WL 522462 (S.D.N.Y.
  Mar. 3, 2006)................................................................................................................15

*Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 276 F. Supp. 2d 1276 (S.D. Ga. 2003)..........46

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229 (2d Cir. 1999)........16, 18, 51, 52

*Cologne Life Reinsurance Co. v. Zurich Reinsurance (N. Am.)*, 730 N.Y.S.2d 61
  (N.Y. App. Div. 2001) ...................................................................................................66

*Com-Tech Assocs. v. Computer Assocs. Int'l, Inc.*, 753 F. Supp. 1078 (E.D.N.Y. 1990)..............23

*Concorde Funds, Inc. v. Value Line, Inc.*, No. 04 Civ. 9932(NRB), 2006 WL 522466
  (S.D.N.Y. Mar. 2, 2006) ..................................................................................................9

*Congregacion de la Mision Provincia de Venezuela v. Curi*, 978 F. Supp. 435
  (S.D.N.Y. 1997)............................................................................................................46

*Conley v. Gibson*, 355 U.S. 41 (1957) ............................................................................................7

*Connors v. Lexington Ins. Co.*, 666 F. Supp. 434 (S.D.N.Y. 1987) ...............................................58

*Cosmas v. Hassett*, 886 F.2d 8 (2d Cir. 1989) ..............................................................................48

*Cosmos Forms Ltd. v. Guardian Life Ins. Co. of Am.*, 113 F.3d 308 (2d Cir. 1997) ........17, 24, 27

*Cougar Audio, Inc. v. Reich*, No. 99 Civ. 4498 LBS, 2000 WL 420546 (S.D.N.Y.
 Apr. 18, 2000) ...................................................................................................33

*Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1406-07 (11th Cir. 1994) ............................58

*Davis v. Cotov*, 214 F. Supp. 310 (E.D.N.Y. 2002).....................................................................1

*Davis v. Mut. Life Ins. Co. of N.Y.*, 6 F.3d 367 (6th Cir. 1993) .........................................................58

*DeFalco v. Bernas*, 244 F.3d 286 (2d Cir. 2001) .........................................................................8, 43

*Dept. of Econ. Dev. v. Arthur Anderson & Co.*, 924 F. Supp. 449 (S.D.N.Y. 1996) ....................45

*Dietrich v. Bauer*, 76 F. Supp. 2d 312 (S.D.N.Y. 1999)....................................................................40

*Dooner v. NMI Ltd.*, 725 F. Supp. 153 (S.D.N.Y. 1989).........................................................18, 23

*Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158 (S.D.N.Y. 2003)................................5

*Eberhart v. United States*, 126 S. Ct. 403 (2005) (per curiam) ......................................................56

*Farberware, Inc. v. Groben*, 764 F. Supp. 296 (S.D.N.Y. 1991) .....................................................18

*Fed. Paper Bd. v. Amata*, 693 F. Supp. 1376 (D. Conn. 1988) ........................................................34

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159
 (2d Cir. 2004) ...............................................................................................16, 42, 43, 68

*First Nationwide Bank v. Gelt Funding Corp.*, 820 F. Supp. 89 (S.D.N.Y.  1993)................ 30, 32

*Fleischhauer v. Feltner*, 879 F.2d 1290 (6th Cir. 1989)...................................................................46

*Fogarazzo v. Lehman Brothers, Inc.*, 341 F. Supp. 2d 274 (S.D.N.Y. 2004)................................38

*Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784 (2d Cir. 1986) .........................30

*Fortney v. Kuipers*, No. 98 C 5387, 1999 WL 102772 (N.D. Ill. Feb. 22, 1999)..........................59

*Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 756 A.2d 963 (Md. 2000)......................................37

*GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463 (2d Cir. 1995) .........16, 17, 24, 25, 26

*GI-Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521 (S.D.N.Y. 2002)...........................39, 40

*Goldberg v. Colonial Metal Spinning & Stamping Co.*, No. 92 Civ. 3721 (JFK), 1993 WL
 361672 (S.D.N.Y. Sept. 14, 1993)...............................................................................63

*Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985)................................................................7

*Graham v. James*, 144 F.3d 229 (2d Cir. 1998) ...............................................................62

*Gramercy Equities Corp. v. Dumont*, 531 N.E.2d 629 (N.Y. 1988)................................61

*Greater Blouse, Skirt & Undergarment Ass'n, Inc. v. Morris*, Nos. 93 CIV. 1257(SS),
72242, 1993 WL 410167 (S.D.N.Y. Oct. 14, 1993).........................................................28

*Gross v. Newburger, Loeb & Co.*, 426 N.Y.S.2d 667 (N.Y. Sup. Ct. 1980)..................65

*H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229 (1989)............................................. passim

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968).........................42

*Hansel 'n Gretel Brand, Inc. v. Savitsky*, No. 94 Civ. 4027(CSH), 1997 WL 543088
(S.D.N.Y. Sept. 3, 1997).................................................................................................22

*Haroco, Inc. v. Am Nat'l Bank & Trust Co. of Chicago*, 747 F.2d 384 (7th Cir. 1984).................5

*Harris v. City of N.Y.*, 186 F.3d 243 (2d Cir. 1999) .................................................9, 34

*Healey v. Pyle*, No. 89 CIV. 6027 (JSM), 1992 WL 80775 (S.D.N.Y. Mar. 31, 1992)..........23, 24

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir. 1990) ...................32, 68

*Hewett v. Marine Midland Bank of Southeastern New York*, 449 N.Y.S.2d 745 (N.Y.
App. Div. 1982) ...............................................................................................................66

*I.M. Oberman Assocs., Inc. v. Republic Fin. Servs., Inc.*, No. 92 Civ. 1843 (MBM), 1993
WL 88209 (S.D.N.Y. Mar. 25, 1993) ........................................................................30, 31

*In re Merrill Lynch Ltd. P'ships Litig.*, 7 F. Supp. 2d 256 (S.D.N.Y. 1997) ..................37

*In re Motel 6 Sec. Litig.*, 161 F. Supp. 2d 227 (S.D.N.Y. 2001) ....................................20

*In re Motel 6 Sec. Litig.*, Nos. 93 Civ. 2183 (JFK), 93 Civ. 2866 (JFK), 1997 WL 154011
(S.D.N.Y. Apr. 2, 1997)...................................................................................................69

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 930 F. Supp. 68 (S.D.N.Y. 1996)....................35, 36

*In re Sumitomo Copper Litig.*, 104 F. Supp. 2d 314 (S.D.N.Y. 2000) ........................36, 40, 68, 70

*In re Sumitomo Copper Litig.*, 194 F.R.D. 480 (S.D.N.Y. 2000)....................................40

*In re Sumitomo Copper Litig.*, 995 F. Supp. 451 (S.D.N.Y. 1998) ................................................50

*In re Tri-Star Techs. Co.*, 257 B.R. 629 (Bankr. D. Mass. 2001)..................................................33

*In re Tsurukawa*, 287 B.R. 515 (Bankr. 9th Cir. 2002) ..................................................................65

*In re Wedtech Corp.*, 88 B.R. 619 (Bankr. S.D.N.Y. 1988) ...........................................................64

*Jacobson v. Cooper*, 882 F.2d 717 (2d Cir. 1989)..................................................................17, 23

*Jerome M. Sobel & Co. v. Fleck*, No. 03Civ.1041 RMB GWG, 2003 WL 22839799
(S.D.N.Y. Dec. 1, 2003)............................................................................................................50

*John Gil Contr., Inc. v. Riverso*, 99 F. Supp. 2d 345 (S.D.N.Y. 2000) ...........................................1

*Kauffmann v. Yoskowitz*, No. 85 Civ. 8414 (PKL), 1990 WL 300795 (S.D.N.Y.
Apr. 6, 1990) ...............................................................................................................................6

*Knapp v. Knapp*, 100 P.2d 759 (Cal. 1940) ..................................................................................37

*Koam Produce, Inc. v. Dimare Homestead, Inc.*, 213 F. Supp. 2d 314 (S.D.N.Y. 2002) .............65

*Kurtz v. Trepp*, 375 N.W.2d 280 (Iowa Ct. App. 1985) ................................................................37

*Landa v. Herman*, No. 105360/03, 2005 WL 2899876 (N.Y. Sup. Ct. Oct. 27, 2005)................66

*Leung v. Law*, 387 F. Supp. 2d 105 (E.D.N.Y. 2005)...................................................................56

*Levine v. Torino Jewelers, Ltd.*, No. 05 Civ. 3159(DLC), 2006 WL 709098 (S.D.N.Y.
Mar. 22, 2006)......................................................................................................................7, 42

*Local 851 of the Int'l Bhd. of Teamsters v. Kuehne & Nagle Air Freight, Inc.*,
No. 97-CV-0378, 1998 WL 178873 (S.D.N.Y. Mar. 6, 1998)..........................................42

*Local 875 I.B.T. Pension Fund v. Pollack*, 992 F. Supp. 545 (E.D.N.Y. 1998)............................20

*Mallis v. Bankers Trust Co.*, 717 F2d 683 (2d Cir. 1983) .............................................................64

*Marcoux v. Am. Airlines, Inc.*, No. 04CV1376 (NG)(KAM), 2006 WL 842888 (E.D.N.Y.
Mar. 28, 2006)..........................................................................................................................15

*Matter of Peck*, 99 N.E. 258 (N.Y. 1912) ....................................................................................65

*Mayer v. Dean*, 22 N.E. 261 (N.Y. 1889) ....................................................................................64

*McKenna v. Wright*, 386 F.3d 432 (2d Cir. 2004) ........................................................................34

*McLaughlin v. Anderson*, 962 F.2d 187 (2d Cir. 1992) .................................................6

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 Civ. 2923 (CSH), 1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) .................................................19

*Metro. Transp. Auth. v. Contini*, No. 04-CV-0104 DGTJMA, 2005 WL 1565524 (E.D.N.Y. July 6, 2005) ......................................................................... passim

*Metromedia Co. v. Fugazy*, 983 F.2d 350 (2d Cir. 1992) .............................................17

*Morley v. Cohen*, 610 F. Supp. 798 (D. Md. 1985) .....................................................60

*Morrow v. Black*, 742 F. Supp. 1199 (E.D.N.Y. 1990) .........................................24, 27

*N.W. Nat'l Bank of Minneapolis v. Fox & Co.*, 102 F.R.D. 507 (S.D.N.Y. 1984) ......................55

*Nat'l Group for Commc'ns & Computers Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253 (S.D.N.Y. 2006) .............................................................41

*Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994) ......................................29

*Nelson v. Stahl*, 173 F. Supp. 2d 153 (S.D.N.Y. 2001) ...............................................35

*Network Enter., Inc. v. APBA Offshore Prods., Inc.*, No. 01 Civ. 11765, 2002 WL 31050846 (S.D.N.Y. Sept. 12, 2002) .....................................................62

*Newman v. Warnaco Group, Inc.*, 335 F.3d 187 (2d Cir. 2003) .....................................38

*Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 170 F.R.D. 361 (S.D.N.Y. 1997) ........41

*O'Malley v. N.Y. City Transit Auth.*, 896 F.2d 704 (2d Cir. 1990) ................................51

*Ortiz v. Cornetta*, 867 F.2d 146 (2d Cir. 1989) .......................................................34

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998)), aff'd, 7 Fed. Appx. 134 (2d Cir. 2001) ............................................................................1

*Panix Promotions, Ltd. v. Lewis*, No. 01-Div. 2709(HB), 2002 WL 72932 (S.D.N.Y. Jan. 17, 2002) ............................................................................22, 24

*Pereira v. United States*, 347 U.S. 1 (1954) ............................................................51

*Petro-Tech, Inc. v. Western Co. of N. Am.*, 824 F.2d 1349 (3d Cir. 1987) ........................59

*Polycast Tech. Corp. v. Uniroyal, Inc.*, 728 F. Supp. 926 (S.D.N.Y. 1989) ......................23

*Powers v. British Vita*, P.L.C., 57 F.3d 176 (2d Cir. 1995)............................................................51

*Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10 (2d Cir. 1989) ........... passim

*Quaid v. Ratkowsky*, 170 N.Y.S. 812 (N.Y. App. Div. 1918) ........................................................63

*Rakestraw v. Rodrigues*, 8 Cal. 3d 67 (1972) ................................................................................66

*Rallone v. Misericordia*, 259 N.Y.S.2d 947 (N.Y. App. Div. 1965) ..............................................61

*Recovey Racing, LLC v. Sunrise Motors, LLC*, No. 12834-04, 2005 WL 3193701 (N.Y.
    Sup. Ct. Nov. 23, 2005) ..........................................................................................................66

*Redtail Leasing, Inc. v. Bellezza*, No. 95 Civ. 5191 JFK, 1999 WL 32941 (S.D.N.Y. Jan.
    22, 1999) ..................................................................................................................................46

*Reiser v. Residential Funding Corp.*, 380 F.3d 1027 (7th Cir. 2004).......................................34, 35

*Reves v. Ernst & Young*, 507 U.S. 170 (1993).........................................................................43, 44

*Richardson Greenshields Sec., Inc. v. Lau*, 819 F. Supp. 1246 (S.D.N.Y. 1993) .........................66

*Rickless v. Temple*, 84 Cal. Rptr. 828 (Cal. Ct. App. 1970) ....................................................64, 65

*Robert Findlay Mfg. Co. v. Hygrade Lighting Fixture Corp.*, 288 F. 80 (E.D.N.Y. 1923)...........63

*Robertson v. Seidman & Seidman*, 609 F.2d 583 (2d Cir. 1979).......................................35, 39, 40

*Rothstein v. Equity Ventures, LLC*, 750 N.Y.S.2d 625 (N.Y. App. Div. 2002).......................44, 66

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629 (2d Cir. 1996) ..........................52

*Salinas v. United States*, 522 U.S. 52 (1997)...............................................................67, 68, 69, 70

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) .........................................................................................7

*Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91 (2d Cir. 1997) ................................15, 21

*Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340 (S.D.N.Y. 1998) ........................................................46

*Schmuck v. United States*, 489 U.S. 705 (1989) ............................................................................49

*Schonfeld v. Hilliard*, 218 F.3d 164 (2d Cir. 2000) .......................................................................30

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ...............................................................6, 29

*Shamlian v. Wells*, 242 P. 483 (Cal. 1925) .................................................................64

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994) ......................................9

*Spinale v. United States,* No. 03Civ.1704KMWJCF, 2004 WL 50873 (S.D.N.Y.
    Jan. 9, 2004)................................................................................................6

*Spira v. Nick*, 876 F. Supp. 553 (S.D.N.Y. 1995).......................................20, 49, 50, 51

*Standardbred Owners Ass'n v. Roosevelt Raceway Assoc.*, 985 F.2d 102 (2d Cir. 1993).............29

*State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F. Supp. 2d 141
    (E.D.N.Y. 2005).................................................................................7, 29, 68, 70

*Strock v. USA Cycling, Inc.*, Nos. 00-CV-2285-JLK, 01-CV-2444-JLK, 2006 WL
    1223151 (D. Col. May 8, 2006).........................................................................37

*Sumitomo Corp. v. Chase Manhattan Bank*, No. 99Civ.4004(JSM), 2000 WL 1616960
    (S.D.N.Y. Oct. 30, 2000) ...........................................................................27, 47

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)...........................................................6

*Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275 (11th Cir. 2005) ............................................34

*Tho Dinh Tran v. The Alphonse Hotel Corp.*, 281 F.3d 23 (2d Cir. 2002).....................................41

*Thomas v. Ross & Hardies*, 9 F. Supp. 2d 547 (D. Md. 1998) ..........................................47, 60, 64

*Town of Poughkeepsie v. Espie*, 402 F. Supp. 2d 443 (S.D.N.Y. 2005).........................................37

*Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.*,
    886 F. Supp. 1134 (S.D.N.Y. 1995)...............................................................7, 9, 26, 31, 32

*United States v. Allen*, 155 F.3d 35 (2d Cir. 1998) .........................................................43

*United States v. Aulicino*, 44 F.3d 1102 (2d Cir. 1995)....................................................26

*United States v. Bortnovsky*, 879 F.2d 30 (2d Cir. 1989) ................................................20, 49, 51

*United States v. Bronston,* 658 F.2d 920 (2d Cir. 1981)...................................................12

*United States v. Busacca*, 936 F.2d 232 (6th Cir. 1991)..................................................27

*United States v. Carson*, 52 F.3d 1173 (2d Cir. 1995)....................................................33

*United States v. Coiro*, 922 F.2d 1008 (2d Cir. 1991).......................................................20, 26, 27

*United States v. D'Amato*, 39 F.3d 1249 (2d Cir. 1994).................................................................54

*United States v. Diaz*, 176 F.3d 52 (2d Cir. 1999)........................................................................70

*United States v. Feldman*, 853 F.2d 648 (9th Cir. 1988).........................................................16, 45

*United States v. Gelb*, 881 F.2d 1155 (2d Cir. 1989)....................................................................27

*United States v. Hewes*, 729 F2d 1302 (11th Cir. 1984)...............................................................45

*United States v. Indelicato*, 865 F.2d 1370 (2d Cir.) ..............................................................22, 25

*United States v. Maher*, 108 F.3d 1513 (2d Cir. 1997).................................................................56

*United States v. Masters*, 924 F.2d 1362 (7th Cir. 1991) ............................................................45

*United States v. Mazzei*, 700 F.2d 85 (2d Cir. 1983)....................................................................25
*United States v. McCarthy*, 271 F.3d 387 (2d Cir. 2001) .............................................................56

*United States v. Persico*, 832 F.2d 705 (2d Cir. 1987) .................................................................69

*United States v. Ramirez*, 420 F.3d 134 (2d Cir. 2005).................................................................49

*United States v. Reiss*, 186 F.3d 149 (2d Cir. 1999).....................................................................56

*United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2003) (en banc) ........................................11, 12, 49

*United States v. Sancho*, 157 F.3d 918 (2d Cir. 1998)................................................................. 11

*United States v. Slevin*, 106 F.3d 1086 (2d Cir. 1996).................................................................. 49

*United States v. Szur*, 289 F.3d 200 (2d Cir. ) .............................................................................12

*United States v. Teitler*, 802 F.2d 606 (2d Cir. 1986)...................................................................45

*United States v. Triumph Capital Group, Inc.*, 260 F. Supp. 2d 444 (D. Conn. 2002) .................26

*United States v. Turkette*, 452 U.S. 576 (1981) .......................................................................6, 60

*United States v. Yousef*, 327 F.3d 56 (2d. Cir. 2003)....................................................................12

*USA Certified Merchs., LLC v. Koebel*, 262 F. Supp. 2d 319 (S.D.N.Y. 2003)..........12, 50, 58, 61

*Volandri v. Hlobil*, 339 P.2d 218 (Cal. Ct. App. 1959)..................................................................66

*Volmar Distribs., Inc. v. N.Y. Post Co.*, 825 F. Supp. 1153 (S.D.N.Y. 1993) ...............................29

*Welch Foods Inc. v. Gilchrist*, No. 93-CV-0641E(F), 1996 WL 607059 (W.D.N.Y. Oct. 18, 1996) ........................................................................................................19, 26, 27

*Williams v. Mohawk Indus., Inc.*, 411 F.3d 1252 (11th Cir. 2005), vacated on other grounds, 126 S. Ct. 2016 (2006) ......................................................................................45

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 425 F. Supp. 2d 484 (S.D.N.Y. 2006) .........1, 25

*Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004) ..........................................................................7

*Young v. N.Y. State Elec. & Gas Corp.*, 55 N.Y.S.2d 150 (N.Y. Sup. Ct. 1945) ..........................65

*Zeibak v. Nasser*, 82 P.2d 375 (Cal. 1938) ...................................................................................61

*Zhu v. First Atl. Bank*, No. 05 Civ. 96 (NRB), 2005 WL 2757536 (S.D.N.Y. Oct. 25, 2005) ......................................................................................................46

*Zito v. Leasecomm Corp.*, No. 02 Civ.8074 GEL, 2004 WL 2211650 (S.D.N.Y. Sept. 30, 2004) ...................................................................................................45

*Zulawski v. Taylor*, No. 2004/12400, 2005 WL 3823584 (N.Y. Sup. Ct. July 1, 2005) ...............63

Statutes:

18 U.S.C. § 1346............................................................................................................49

18 U.S.C. § 1956.......................................................................................................56, 57

18 U.S.C. § 1957...............................................................................................19, 56, 57

18 U.S.C. § 1961.................................................................................................8, 57, 68

18 U.S.C. § 1962..........................................................................................59, 68, 69, 70

18 U.S.C. § 1964(c) .................................................................................................29, 33

Cal. Corp. Code § 16305 (2005)..................................................................................65

Pub. L. No. 91-452 § 904(a), 84 Stat. 947 (1970) ..........................................................5

Other Authorities:

63 Am. Jur. 2d Products Liability § 117 (1984) ............................................................62

48A C.J.S. Joint Ventures § 60 (2004) ........................................................................65

Fed.R.Civ.P. 8 ...............................................................................................6, 34, 48

Fed.R.Civ.P. 9 ........................................................................................................48

Fed.R.Evid. 201(b) ....................................................................................................1

N.Y. Ltd. Liab. Co. Law § 1007 .................................................................................62

N.Y. Ltd. Liab. Co. Law § 1205 .................................................................................66

N.Y. P'Ship Law §24 (McKinney 1948) .......................................................................64

N.Y. P'Ship Law §24, 26 (McKinney 1998) ..................................................................59

N.Y. P'Ship Law §24 (McKinney 2005) ...................................................................59, 65

Revised Uniform Partnership Act §§301 and 305 (1994) ................................................64

# I. **INTRODUCTION**

After advancing their supposedly "best punch" enterprise argument,[1] Defendants have

amassed a second wave of multitudinous arguments against WWE's RICO claims. Yet

throughout the nearly ninety collective pages of their motion to dismiss papers, Defendants

conspicuously avoid addressing the gravamen of WWE's Amended Complaint that this lawsuit

principally arises from Defendants "depriving WWE of the intangible right of honest services

from WWE's intellectual property licensing agent [Shenker] and its management supervisor of

that licensing agent [Bell] . . ." (AC ¶ 1). It is based on the same honest services branch of fraud

for which Defendant Jim Bell plead guilty to a Criminal Information in connection with his

receipt of bribes relating to WWE's licensing program (*see* Bell Plea Agreement attached as

Exhibit 1).[2] More recently, on June 6, 2006, Defendant Stanley Shenker similarly was indicted

in the United States District Court for the District of Connecticut in connection with conspiring

with Bell:

> (a) to enrich themselves by obtaining monies relating to WWE and
> its Licensees to which they were not entitled; (b) to affirmatively
> conceal their acts from WWE in order to continue to receive and
> retain monies to which they were not entitled; (c) to deprive WWE
> of honest services, by compromising employee loyalty and
> integrity through their secret arrangement to split between
> themselves royalty commissions paid to SSAI and other monies
> SSAI received from WWE Licensees; and (d) to provide false and
> misleading information to WWE during the course of civil

---

[1]  Transcript of August 18, 2005 Conference at 37:13-17; *see also World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 425 F. Supp. 2d 484, 500 (S.D.N.Y. 2006) (holding that Amended Complaint properly alleged a RICO enterprise under § 1962(c)).

[2]  Pursuant to Rule 201(b) of the Federal Rules of Evidence, this Court may take judicial notice of Shenker's Indictment and Bell's Plea Agreement as matters of public record. *See, e.g., John Gil Contr., Inc. v. Riverso*, 99 F. Supp. 2d 345, 350 n.7 (S.D.N.Y. 2000) ("The indictment is a matter of public record and thus, to the extent it is relevant, it may be considered on defendant's motion to dismiss." (*citing Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998)), *aff'd*, 7 Fed. Appx. 134 (2d Cir. 2001); *Davis v. Cotov*, 214 F. Supp. 2d 310, 315-16 (E.D.N.Y. 2002) (taking judicial notice of plaintiff's prior guilty plea).

> litigation in an effort to obtain additional anticipated economic
> benefits and avoid disgorgement of their ill-gotten gains.

*See* Shenker Indictment ¶ 12 (attached as Exhibit 2). In the antecedent civil litigation between

WWE and Shenker referenced in the Indictment, the court explicitly found that Jakks was one of

the WWE licensees that had paid Shenker through foreign bank accounts in transactions

designed, from front to rear, to be non-traceable by any records situate on United States soils

(AC ¶¶ 221-22). The court further found that Shenker perjured himself to conceal the existence

of a foreign corporation known as Stanfull Industrial, Ltd., which Shenker set up to use as a

conduit for payments he received at the direction of the highest-ranking Jakks corporate officers

and then split with Bell by bank instruments designed to leave no trace.

To date, the federal government has criminally prosecuted the two dishonest servants at

the center of the criminal enterprise alleged in WWE's Amended Complaint. It is beyond

dispute that those two agents of WWE were dishonest and corrupt within the meaning of honest

services fraud. One has judicially admitted as much in his plea bargain, the other was

adjudicated by the Connecticut Superior Court to have committed criminal obstruction to conceal

his receipt of improper payments from WWE licensees now a centerpiece of pending federal

prosecution. Indeed, the Connecticut court's finding was hardly unlikely after Shenker basically

admitted that he had done so. And this case, which Defendants have succeeded in stalling for

nearly two years, is about a public company, Jakks, and its highest-ranking executives, spending

enormous amounts of corporate assets to delay and prevent the day of reckoning for causing the

corruption of these agents of WWE. It is also about another public company, THQ, and its

highest-ranking executives, willingly joining into the criminal activity from which they continue

to fully benefit. Given their intimate involvement in the activities squarely under criminal

scrutiny, it is not surprising that Defendants would seek to avoid the salient allegations of

2

WWE's Amended Complaint. Their only real defense is delay and obfuscation, and all involved desperately want to avoid discovery especially in light of the ongoing criminal proceedings by federal prosecutors in Connecticut.

Thus undaunted by the actual allegations of WWE's Amended Complaint, Defendants fundamentally mischaracterize WWE's allegations more to their liking. In the process, Defendants improperly invite this Court to make conclusive factual determinations, and draw inferences, against WWE consistent with their mischaracterizations in clear violation of the Rule 12(b)(6) standard. As they did with their failed enterprise argument, Defendants also repeatedly advance legal arguments inconsistent with and, at times, foreclosed by governing law. Indeed, nowhere in any of the briefings done by the Defendants do they even cite the Second Circuit's controlling en banc decision on honest services fraud while otherwise ostensibly briefing whether there is a pattern of it present here. At bottom, Defendants' motions to dismiss demonstrate their intent to erect as many procedural hurdles as possible to thwart this Court's adjudication of the merits of WWE's claims—the same claims underlying the federal government's criminal prosecutions of Shenker and Bell.[3]

## II. ARGUMENT

Defendants apparently have adopted a "kitchen sink" approach with respect to their remaining arguments for dismissal of WWE's RICO claims. All Defendants[4] contend that:

---

[3]  In fact, in a brazen attempt to have this Court declare them the "victims," Jakks executives, none of whom were willing to take an oath to the proposition, ask this Court to interpret a settlement agreement between WWE and Jakks as precluding all the claims in this action relating to the high level corporate crimes they are alleged to have committed. WWE has moved to strike the settlement agreement contained in Exhibit B to the Declaration of Jonathan J. Lerner dated June 2, 2006 and all arguments in the Jakks Defendants' motion to dismiss relating to the release defense, which is being filed concurrently herewith.

[4]  WWE responds herein to the following: (i) Memorandum of Law in Support of the Jakks Defendants' Motion to Dismiss the Amended Complaint ("Jakks Br."); (ii) Memorandum of Law in Support of THQ

3

(1)     the Amended Complaint fails to allege a pattern of racketeering
        activity (Jakks Br. at 6-19; THQ Br. at 9-14; THQ/Jakks Br. at 17-
        21; Shenker Br. at 1-2);

(2)     WWE's RICO injury is too speculative (Jakks Br. at 19-21; THQ
        Br. at 3 n.3; THQ/Jakks Br. at 4 n.3; Shenker Br. at 1);

(3)     the RICO claims are time-barred (Jakks Br. at 21-33; THQ Br. at 3
        n.3; THQ/Jakks Br. at 4 n.3; Shenker Br. at 1); and

(4)     dismissal of the substantive RICO claims mandates dismissal of
        the RICO conspiracy claims (Jakks Br. at 19 n.11; THQ Br. at 18
        n.7; THQ/Jakks Br. at 25; Shenker Br. at 1).

In addition, both the THQ Defendants and THQ/Jakks argue that the Amended Complaint fails

to allege that they participated in the "operation or management" of the enterprise (even though

it is undisputed they perform the videogame license procured by the enterprise) (THQ Br. at 6-9;

THQ/Jakks Br. at 8-16) and that the Amended Complaint does not allege that they committed

any predicate acts (THQ Br. at 15-18; THQ/Jakks Br. at 21-25). The THQ Defendants also

argue that they should not be found vicariously liable for the Jakks Defendants' unlawful

conduct, essentially asserting that they are free to benefit from their partner's criminal acts but

carry no burden associated with doing so (THQ Br. at 18-23). For the reasons discussed below,

Defendants' remaining RICO arguments, like their unsuccessful enterprise argument, are

untenable as a matter of fact and law.

A.      Civil RICO Claims Are Not Subject to a Heightened Pleading Standard

        Throughout the motion to dismiss briefing, Defendants have attempted to subject WWE's

pleadings to an improperly heightened level of review. Defendants particularly have urged the

---

Inc. and Brian Farrell's (the "THQ Defendants") Motion to Dismiss the RICO Claims in the Amended
Complaint ("THQ Br."); (iii) Memorandum of Law of Defendant THQ/Jakks Pacific LLC in Support of
Its Motion to Dismiss the Amended Complaint ("THQ/Jakks Br."); and (iv) Memorandum of Law in
Further Support of the Motion of Defendants Stanley Shenker and Stanley Shenker and Associates, Inc. to
Dismiss the Plaintiff's Claim Under the RICO Act ("Shenker Br.").

4

Court to "flush out frivolous RICO allegations at an early stage of the litigation" claiming an

"almost inevitable stigmatizing effect" of RICO claims (Jakks Br. dated February 16, 2005 at 17;

THQ/Jakks Br. at 2 & n.1 (*quoting Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158,

163 (S.D.N.Y. 2003))). The Supreme Court, however, has decisively rejected any such bias

against civil RICO claims. In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985), the Supreme

Court dismissed as irrelevant the argument that civil RICO was being used as "a tool for

everyday fraud cases brought against 'respected and legitimate enterprises,'" observing that

through RICO:

> Congress wanted to reach both 'legitimate' and 'illegitimate'
> enterprises. The former enjoy neither an inherent incapacity for
> criminal activity nor immunity from its consequences. The fact
> that § 1964(c) is used against respected businesses allegedly
> engaged in a pattern of specifically identified criminal conduct is
> hardly a sufficient reason for assuming that the provision is being
> misconstrued. . . .
>     . . . It is not for the judiciary to eliminate the private right of
> action in situations where Congress has provided it simply because
> plaintiffs are not taking advantage of it in its more difficult
> applications.

*Id.* at 499-500 (emphasis added) (citation omitted).

Indeed, Congress has mandated that RICO is to "be liberally construed to effectuate its

remedial purposes." Pub. L. No. 91-452 § 904(a), 84 Stat. 947 (1970). To that end, the Supreme

Court has noted that "[t]he statute's 'remedial purposes' are nowhere more evident than in the

provision of a private action for those injured by racketeering activity." *Sedima*, 473 U.S. at 498.

Thus, "the fact that RICO has been applied in situations not expressly anticipated by Congress

does not demonstrate ambiguity. It demonstrates breadth." *Id.* at 499 (*quoting Haroco, Inc. v.*

*Am Nat'l Bank & Trust Co. of Chicago*, 747 F.2d 384, 398 (7th Cir. 1984)).

Consistent with RICO's broad remedial purposes, the Supreme Court has repeatedly rejected attempts to limit the reach of RICO through judicially created narrowing constructions. *See, e.g.*, *H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 235, 249 (1989) (rejecting "multiple scheme" and "organized crime nexus" requirement for pattern of racketeering activity element); *Sedima*, 473 U.S. at 493, 495 (rejecting a requirement that a RICO defendant have a previous criminal conviction and that a plaintiff show a "special racketeering injury"); *United States v. Turkette*, 452 U.S. 576, 593 (rejecting First Circuit holding that a RICO enterprise could not be exclusively criminal).

It follows that RICO claims, in particular, are subject to the liberal notice pleading standard of Rule 8(a) of the Federal Rules of Civil Procedure. *McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir. 1992) (non-fraud elements of RICO are subject to "the more lenient pleading standards" of Fed. R. Civ. P. 8(a)); *Spinale v. United States*, No. 03Civ.1704KMWJCF, 2004 WL 50873, at *5 (S.D.N.Y. Jan. 9, 2004) ("Claims for violations of RICO generally need only meet the notice pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure."); *Kauffmann v. Yoskowitz*, No. 85 Civ. 8414 (PKL), 1990 WL 300795, at *2 (S.D.N.Y. Apr. 6, 1990) ("[T]he Second Circuit has recently made it clear that the pleading of the elements of a RICO offense itself need only meet the less stringent requirements of Fed. R. Civ. P. 8(a).").[5]

"Under the liberal pleading standard set forth in Rule 8(a), Fed. R. Civ. P., a complaint is sufficient if it provides 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Annodeus, Inc. v. Ciarkowski*, No. 04 Civ.1633 DLC, 2004 WL 2066937, at *3 (S.D.N.Y. Sept. 16, 2004) (*quoting Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002))

---

[5]   The heightened pleading standard of Rule 9(b) only applies to RICO predicate acts based on fraud. *See McLaughlin*, 962 F.2d at 194.

6

(denying motion to dismiss RICO claims); *see also Braphman-Bines v. N.Y. City Police Dept.*, No. 03 Civ. 10207(KMK), 2005 WL 22843, at *3 (S.D.N.Y. Jan. 3, 2005) (*quoting Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004)) ("Under *Swierkiewicz*, Rule 8 pleading is extremely permissive."). As with any other civil claim, the court must view a RICO "complaint in the light most favorable to the plaintiff and accept all allegations contained in the complaint as true." *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1142 (S.D.N.Y. 1995) (*citing Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Giving plaintiffs the benefit of the inferences in their favor, the complaint should not be dismissed unless it appears beyond a doubt that plaintiffs can prove no set of facts that would entitle them to relief." *Trs. of Plumbers & Pipefitters*, 886 F. Supp. at 1142 (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

"The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F. Supp. 2d 141, 149 (E.D.N.Y. 2005) (*quoting Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)). "In order to survive a motion to dismiss, the complaint must simply make allegations that, if true, would <u>allow</u> a fact-finder to deem defendant liable for plaintiff's injury; it need not, however, show that no other interpretation of the facts is possible." *Levine v. Torino Jewelers, Ltd.*, No. 05 Civ. 3159(DLC), 2006 WL 709098, at *4 (S.D.N.Y. Mar. 22, 2006) (emphasis in original).

Given RICO's broad remedial purposes and the applicable liberal notice pleading standard under the Federal Rules of Civil Procedure, WWE's RICO claims are more than adequately alleged. Defendants all have been given more than adequate notice of the RICO claims they must face, and far more time than is customary to prepare a defense.

7

**B.    The Amended Complaint Adequately Alleges That Each Defendant Engaged in a Pattern of Racketeering Activity**

The pattern of racketeering activity element of RICO is satisfied by allegations that a defendant engaged in at least two predicate acts of racketeering activity over a ten-year period that are: (1) related; and (2) amount to, or constitute a threat of, continuing criminal activity. 18 U.S.C. § 1961(5); *H.J. Inc.*, 492 U.S. at 239; *DeFalco v. Bernas*, 244 F.3d 286, 320 (2d Cir. 2001). The Amended Complaint adequately alleges both elements as to each Defendant. As the THQ Defendants expressly admit, the Amended Complaint alleges "a sprawling multifaceted conspiracy . . . that spans almost a decade, originating as early as 1995, with its aims to affect multiple licenses, including a domestic and international toy license, as well as the videogame license" (*see* THQ Br. at 1 (*citing* AC ¶¶ 37-40, 249(a)(i), 249(b)(lxvii)) (emphasis added)). Similarly, the Jakks Defendants admit that "WWE alleges more than a dozen separate events" involving seven separate license agreements with WWE tainted by the dishonest services scheme (*see* Jakks Br. at 25-26 (emphasis in original)). Without more, Defendants' own depiction of WWE's allegations—all of which must be taken as true at this stage of the proceedings—establish that the Amended Complaint pleads a cognizable pattern of racketeering activity.

Instead of demonstrating that the actual allegations of WWE's Amended Complaint fail to give notice of what they must defend, Defendants self-servingly deconstruct WWE's pleading more to their liking. Ignoring the plead facts, Defendants unilaterally announce that WWE's "real" claim in this action is limited to a commercial bribery scheme involving bribes and/or payments of at least $100,000 to secure the WWE videogame license for THQ/Jakks and the 1998 amendments to the toy license for Jakks alleged in WWE's original complaint (*see* Jakks Br. at 2). Defendants then go on to argue that WWE's Amended Complaint attempts to artificially extend the pattern of the alleged RICO scheme through "front-end" allegations

8

stretching back to 1995 that they claim are unrelated, and "back-end" allegations of a "cover up" of the alleged scheme that they claim are legally deficient (Jakks Br. at 8-15; THQ Br. at 12). Thus flaunting the actual allegations of WWE's Amended Complaint, Defendants create a strawman-complaint to argue against. To be sure, such tactics, particularly in the context of a Rule 12(b)(6) motion, are wholly inappropriate as well as factually and legally unfounded.[6]

### 1.    The Specifically Enumerated Predicate Acts Alleged in WWE's Amended Complaint Are Sufficiently Related to Comprise a Pattern of Racketeering Activity

"[P]redicate acts are related if they share similar purposes, participants, victims, methods, or other distinguishing characteristics; in short, they must not be isolated or sporadic." *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1144 (S.D.N.Y. 1995) (*citing H.J. Inc.*, 492 U.S. at 239-41). Congress did not intend "any more constrained a notion" of relatedness for the purpose of the pattern element of RICO. *H.J. Inc.*, 492 U.S. at 240.

The Amended Complaint sets forth in exacting and largely chronological detail a pattern of actions all taken for a common purpose—to defraud WWE by depriving it of the honest services of one or both of its fiduciaries, Shenker and Bell, in connection with valuable licensing rights to WWE intellectual property (AC ¶¶ 29-241, 249). Specifically, over and above the liberal pleading requirements applicable to RICO claims, the Amended Complaint spells out in

---

[6]   As a central theme of their tactics, Defendants repeatedly attempt to use WWE's original complaint as a limitation on WWE's claims in this action (*see, e.g.*, THQ Br. at 5 & n.4). This is entirely improper and contrary to the law. "It is well-established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Harris v. City of N.Y.*, 186 F.3d 243, 249 (2d Cir. 1999) (*quoting Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). Courts, therefore, are precluded from considering allegations from a prior pleading in adjudicating a motion to dismiss an amended complaint. *See Concorde Funds, Inc. v. Value Line, Inc.*, No. 04 Civ. 9932(NRB), 2006 WL 522466, at *3 n.6 (S.D.N.Y. Mar. 2, 2006) ("Because a later complaint supersedes an earlier one, we may not credit this allegation [from an earlier complaint] absent a basis for finding that the most recent complaint incorporates earlier ones.").

chapter and verse: (i) the dates and methods by which Jakks and its highest ranking officers initially corrupted Shenker to have him do their bidding on WWE licensing matters (AC ¶¶ 37-56); (ii) the numerous ways in which the Jakks Defendants used Shenker to corruptly serve Jakks's interests on various toy licensing matters (AC ¶¶ 37-56); (iii) the Jakks Defendants' utilization of Shenker to enlist Bell to be a dishonest servant (AC ¶¶ 79-82, 91-97); (iv) the Jakks Defendants' decision to use Shenker's and Bell's corrupt services to drive a competitor, Playmates, out of WWE's toy business, which not only victimized Playmates but also denied WWE the payment of the guarantee then owed by Playmates as well as royalties over and above the guarantee (AC ¶¶ 79-84, 91-93); (v) the Jakks Defendants' decision to use Shenker's and Bell's corrupt services to secure WWE's videogame license (AC ¶¶ 100-17); (vi) the payment of unlawful bribes to Shenker and Bell to be dishonest servants (AC ¶¶ 46, 85-99); (vii) the enlistment of the THQ Defendants in the unlawful scheme to obtain WWE's videogame license (AC ¶¶ 118-49); (viii) the creation of THQ/Jakks as a sham LLC to effectuate the unlawful scheme to obtain WWE's videogame license and the arrangements by which the Jakks Defendants and THQ Defendants agreed to split the proceeds from the fraudulently obtained videogame license (AC ¶¶ 149-64, 173-85); and (ix) the Jakks Defendants' and THQ Defendants' receipt of proceeds from the fraudulently obtained videogame license, including the money laundering incidental to the scheme (AC ¶ 249).

As noted above, Defendants claim that WWE's allegations of predicate acts prior to 1998 are unrelated and, therefore, should not be considered in establishing continuity. Defendants' attempt to excise portions of the Amended Complaint turns on their unilateral and self-serving factual assertion—contrary to WWE's actual pleading and common sense—that the corruption of Bell was the "linchpin" of the alleged bribery scheme (as they define the scheme), and thus

10

predicate acts occurring before 1998 cannot be related to that bribery scheme (*see* Jakks Br. at 8-12). This premise fundamentally (and deliberately) misconstrues the crux of the Amended Complaint. In essence, the Jakks Defendants never attempt to demonstrate that their early corruption of Shenker does not constitute honest services fraud. Instead, they pretend that it was of no factual or legal consequence to do so until they corrupted a second agent of WWE.

In fashioning this argument, Defendants ignore WWE's core allegations that Defendants engaged in a pattern of depriving WWE of the intangible right of honest services of its licensing agents beginning with Shenker and culminating with the corruption of both agents. Defendants particularly ignore the Second Circuit's en banc ruling on the contours of honest services fraud in *United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2003) (en banc), which inexplicably is not cited anywhere in the nearly ninety collective pages of Defendants' motion to dismiss papers. In *Rybicki,* the Second Circuit concluded that the honest services branch of mail or wire fraud, in the context of private actors, applies to:

> a scheme or artifice to use the mails or wires to enable an officer or employee of a private entity (or a person in a relationship that gives rise to a duty of loyalty comparable to that owed by employees to employers) purporting to act for and in the interests of his or her employer (or of the other person to whom the duty of loyalty is owed) secretly to act in his or her or the defendant's own interests instead, accompanied by a material misrepresentation made or omission of information disclosed to the employer or the other person.

*Rybicki*, 354 F.3d at 141-42. The Second Circuit further noted that "actual or intended economic harm to the victim need not be established." *Id.* at 145. Instead, "the only intent that need be proven in an honest services fraud is the intent to deprive another of the intangible right of honest services." *Id.* (*quoting United States v. Sancho,* 157 F.3d 918, 921 (2d Cir. 1998)).

A fiduciary's undisclosed conflict of interest that caused and/or was capable of causing a detriment to his principal constitutes a fraudulent material omission of information under Second

11

Circuit law. *Id.* at 141-42[7]; *see also United States v. Szur,* 289 F.3d 200, 211-12 (2d Cir. 2002)

(affirming honest services mail and wire fraud convictions of principals of a brokerage and issuer

of securities who conspired to pay stock brokers excess compensation, not disclosed to

customers, for selling the issuer's securities); *United States v. Bronston,* 658 F.2d 920, 926-27

(2d Cir. 1981) (affirming honest services mail fraud conviction based on undisclosed conflict of

interest because "the concealment by a fiduciary of material information which he is under a

duty to disclose to another under circumstances where the non-disclosure could or does result in

harm to the other is a violation of the [mail fraud] statute."); *USA Cert. Merchants, LLC v.

Koebel,* 262 F. Supp. 2d 319, 337-38 (S.D.N.Y. 2003) (denying motion for summary judgment

on RICO claims based on factual dispute whether executive's conflict of interest was disclosed

to plaintiffs).

    Fundamentally misconstruing the Amended Complaint to avoid these authorities,

Defendants ignore that Shenker, independent of Bell, was WWE's agent and fiduciary (AC ¶¶

32-33, 76). As such, the early dishonest services fraud involving Shenker and the sufficiency of

the facts plead in that regard to constitute honest services fraud, are not challenged by <u>any</u>

defendant and thus are effectively conceded for motion to dismiss purposes. *See United States v.

Yousef,* 327 F.3d 56, 115 (2d Cir. 2003) ("We will not consider an argument raised for the first

time in a reply brief."); *Bolanos v. Norwegian Cruise Lines Ltd.*, No. 01 Civ. 4182(RMB) AJP,

---

[7] In *Rybicki,* the Second Circuit noted in dicta that with respect to honest services fraud cases involving self-dealing, as opposed to bribery or kickbacks, "there <u>may</u> be a requirement of proof that the conflict caused, or at least was capable of causing, some detriment . . . ." *Rybicki,* 354 F.3d at 142 (emphasis added). The well-reasoned concurrence by Justice Raggi, however, rejected any such requirement in self-dealing cases. *Id.* at 155 (Raggi, J. concurring). Regardless, the Amended Complaint pleads allegations of detriment to WWE from Shenker's and Bell's self-dealing (*see, e.g.,* AC ¶¶ 56, 67, 71, 83, 149-151).

2002 WL 1465907, at *4 n.12 (S.D.N.Y. July 9, 2002) (refusing to consider argument on 12(b)(6) motion to dismiss that was not raised by defendant until reply brief). [8]

As the Amended Complaint specifically alleges, less than a month after Shenker negotiated a WWE domestic toy license with Jakks, the Jakks Defendants devised a plan to corrupt Shenker in his role as WWE's agent, beginning secret negotiations with Shenker to secure his services on behalf of the Jakks Defendants without disclosure to WWE (AC ¶¶ 37-42). As early as November 20, 1995, Berman, on behalf of the Jakks Defendants, initiated discussions related to an agreement whereby Shenker would serve as the Jakks Defendants' agent (AC ¶¶ 40, 247(a)(i)). At the same time, Berman linked such an agency agreement to the Jakks Defendants' desire to obtain additional WWE licensing rights, asking for Shenker's assistance "regarding the Junior Kodak prospect," a WWE license right (AC ¶¶ 42, 247(a)(ii)). In January 1996, the Jakks Defendants sent a proposed agreement to Shenker for him to serve as Jakks' agent on a deal involving non-WWE perfumed dolls, for which he was promised a nonrefundable $5,000 advance against future royalties (AC ¶¶ 44-46; 247(a)(iii)). In the cover letter transmitting this "perfumed doll" agreement to Shenker (and the promise of $5,000), the Jakks Defendants asked Shenker how soon he could get the WWE domestic toy license—which had only been in place for two months—amended to grant additional rights to Jakks (AC ¶¶ 44, 247(a)(iii)).

On February 1, 1996, the Jakks Defendants again contacted Shenker to confirm that they would meet at the upcoming New York Toy Fair, with the purpose of discussing Shenker serving as the Jakks Defendants' agent on WWE licensing matters (AC ¶ 247(a)(iv)). In the meantime, on February 12, 1996, the Jakks Defendants paid SSAI $2,500, confirming his agency role (AC ¶ 48). Two days after making this payment, the Jakks Defendants met with Shenker, their now

---

[8]   As a matter of law, therefore, Defendants cannot now attempt to make such arguments in a reply brief.

undisclosed agent, at the New York Toy Fair to discuss their desire to retain Shenker as the Jakks Defendants' agent on WWE matters—at the same time he was representing WWE—and to solicit Shenker to obtain additional rights for Jakks in connection with WWE licenses (AC ¶¶ 50, 54). During this meeting, the Jakks Defendants specifically were advised by Murray Skala, a member of Jakks' Board of Directors, Friedman's personal friend and confidant, and counsel of record in this litigation, that it would be a conflict of interest for Shenker to act as the Jakks Defendants' agent on WWE matters at the same time that he was acting as WWE's agent without full disclosure to, and consent by, WWE (AC ¶ 50). Consent was never sought and, of course, none of these events were disclosed to WWE (AC ¶¶ 45, 51). Shenker, moreover, uniformly acquiesced to the Jakks Defendants' requests to WWE's detriment, recommending that Jakks be granted new and additional licensing rights without any attempt to negotiate better terms for WWE or determining if competitors of Jakks would pay more for such rights (see, e.g., AC ¶¶ 56, 67, 71, 83, 149-151, 164).

These allegations directly relate to corrupting Shenker to have him do the Jakks Defendants' bidding on WWE licensing matters and thus were the beginning of the pattern of racketeering activity to deprive WWE of its right to Shenker's—and later Bell's—honest services. Properly viewed in this context, the predicate acts of mail and wire fraud alleged in connection with the initial corruption of Shenker certainly are neither "isolated" nor "sporadic" as the Jakks Defendants argue, but rather are seamlessly interconnected to those predicate acts alleged thereafter as the criminal activity intensified to obtain the videogame license by outright bribes to both agents (see, e.g., AC ¶¶ 57, 79 et seq.).

A plain reading of these allegations, particularly drawing all inferences in WWE's favor as required on a motion to dismiss, demonstrates that every indicia of relatedness is clearly

14

present. This pattern of dishonest services, accompanied by well-plead predicate acts of mail and wire fraud, have the same or similar: (1) purposes (to deprive WWE of its right to the honest services of its agents for the purpose of seeking favorable WWE licensing rights); (2) results (the creation of an undisclosed conflict of interest for WWE's agents); (3) participants (the Jakks Defendants, Shenker); (4) victims (WWE); and (5) methods of commission (mail and wire fraud). In short, all the acts at issue have a common and related aspect—the corruption of the fiduciary duties owed to WWE by one or both of its licensing agents to secure valuable licensing rights from WWE. Accordingly, it is indisputable that the relatedness element of continuity is adequately alleged. *See Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10, 19 (2d Cir. 1989) (finding relatedness where "[t]he alleged acts had the same purpose, that is, fleecing the same victims . . . and employing similar unlawful methods of commission . . ."); *City of N.Y. v. Pollock*, No. 03 Civ. 0253(PAC), 2006 WL 522462, at *8 (S.D.N.Y. Mar. 3, 2006) (finding relatedness "established by the similarity in methods, purposes, participants, results, and victims").

The authorities on which Defendants rely in no way alter this conclusion. Contrary to the allegations of WWE's Amended Complaint described above, the cases cited by Defendants all involved unlawful activities with fundamentally distinct purposes. *See Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) (noting that the goal of certain alleged schemes was "at odds with the goal" of other schemes); *Marcoux v. Am. Airlines, Inc.*, No. 04CV1376 (NG)(KAM), 2006 WL 842888, at *11 (E.D.N.Y. Mar. 28, 2006) (finding that allegations of a separate scheme pertaining to the internal governance of a union were unrelated to the overarching goal to defraud flight attendants); *Andrea Doreen Ltd. v. Bldg. Material Local Union 282*, 299 F. Supp. 2d 129, 154 (E.D.N.Y. 2004) (plaintiff admitted that "the goal of the

15

illegal enterprise 'shifted' from bribery to 'retaliation and intimidation'"). In any event,

relatedness does not require complete participation of every member of the enterprise in every

predicate act, but only that the predicate acts have "the same or similar . . . participants." *H.J.*

*Inc.*, 492 U.S. at 240 (emphasis added). Likewise, "continuity does not require that each

member of the enterprise participate in it from beginning to end." *United States v. Feldman*, 853

F.2d 648, 659 (9th Cir. 1988). Thus, whether Bell participated in pre-1998 predicate acts is

immaterial in determining whether relatedness is adequately alleged.

    In sum, Defendants' argument that the pre-1998 predicate acts were not related because

they supposedly involved different participants (i.e., did not involve Bell) both ignores the

independent corruption of Shenker described in detail above and the pertinent law.

> **2.    The Amended Complaint Adequately Pleads Both Closed-Ended and Open-Ended Continuity**
>
> > **a.    Closed-Ended Continuity**
> >
> > > **(i)    The Amended Complaint Alleges Predicate Acts Spanning A Sufficient Time Period To Establish Closed-Ended Continuity**

    In order to establish closed-ended continuity, a plaintiff must prove a series of related

predicate acts "extending over a substantial period of time." *H.J. Inc.*, 492 U.S. at 242; *First*

*Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004). "The point of

the continuity analysis is not to bind a court to a rigid formula, but to ensure that there is a basis

for concluding that 'defendants' activities were neither isolated nor sporadic.'" *Levine*, 2006

WL 709098, at *5 (*quoting GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463, 467 (2d

Cir. 1995)). The time period spanned by the predicate acts is the primary factor in assessing

closed-ended continuity. *H.J. Inc.*, 492 U.S. at 242 (continuity is "centrally a temporal

concept"); *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)

16

("closed-ended continuity is primarily a temporal concept"); *GICC Capital*, 67 F.3d at 468

("Though an approach giving such weight to the duration of criminal activities alleged . . . is

undoubtedly somewhat mechanistic, we believe that it is required to effectuate Congress's intent

to target 'long-term criminal conduct.'" *(quoting H.J. Inc.*, 492 U.S. at 242)); *Annodeus*, 2004

WL 2066937, at *4 ("The primary factor used to determine whether closed-ended continuity

exists is the period of time over which the predicate acts occurred . . . ."). The Second Circuit

has held that "for a determination of whether there is a RICO pattern, each individual

racketeering act should be separately counted." *Beauford v. Helmsley*, 865 F.2d 1386, 1391 (2d

Cir.) (en banc), *vacated and remanded*, 492 U.S. 914, *original decision adhered to*, 893 F.2d

1433, *cert denied*, 493 U.S. 992 (1989).

While predicate acts extending over a "few weeks or months and threatening no future

criminal conduct" are insufficient for closed-ended continuity, *H.J. Inc.*, 492 U.S. at 241, there is

no absolute minimum amount of time over which predicate acts must extend in order to establish

closed-ended continuity. *Metromedia Co. v. Fugazy*, 983 F.2d 350, 369 (2d Cir. 1992) ("[T]here

is no bright line test for determining precisely what period of time is 'substantial' for purposes of

finding . . . continuity . . ."). That said, the Second Circuit has ruled that predicate acts spanning

"approximately two years" are sufficient to show closed-ended continuity. *See Cosmos Forms

Ltd. v. Guardian Life Ins. Co. of Am.*, 113 F.3d 308, 310 (2d Cir. 1997) (reversing grant of

summary judgment for defendant where plaintiff alleged seventy acts of mail fraud over "almost

two years"); *Metromedia*, 983 F.2d at 369 (2d Cir. 1992) (related predicate acts spanning

approximately two years sufficient); *Jacobson v. Cooper*, 882 F.2d 717, 720 (2d Cir. 1989)

(finding a substantial period of time and continuity where predicate acts extended over "a matter

of years"); *Procter & Gamble*, 879 F.2d at 18 (allegations of predicate acts spanning "nearly two

17

years" sufficient for pattern of racketeering activity); *see also Cofacredit*, 187 F.3d at 244

("Since the Supreme Court decided *H.J. Inc.*, [the Second Circuit] has never held a period of less

than two years to constitute a 'substantial period of time'" for purposes of closed-ended

continuity).[9]

Here, the Amended Complaint alleges specifically enumerated predicate acts extending

well over two years with respect to each Defendant. The enumerated predicate acts attributable

directly to the Jakks Defendants, or committed on their behalf, span a period of over nine years,

from November 20, 1995 to January 25, 2005 (AC ¶¶ 249(a)(i), 249(b)(lxxxviii)); the

enumerated predicate acts attributable to the THQ Defendants, or committed on their behalf,

span a period of almost seven years, from April 27, 1998 to January 26, 2005 (AC ¶¶

249(a)(xxvii), 249(b)(lxvii)); the enumerated predicate acts attributable to THQ/Jakks span a

period of six and one-half years, from June 17, 1998 to January 26, 2005 (AC ¶¶ 249(a)(xxxviii),

249(b)(lxvii)); and the enumerated predicate acts attributable to Shenker span over six years,

from November 20, 1995 to December 11, 2001 (AC ¶¶ 249(a)(i), 249(b)(xxvi)). In addition to

the information known and alleged in the Amended Complaint, the predicate acts attributable to

each Defendant continue through today and will continue every quarter while fraudulently

obtained proceeds are laundered. Such allegations of predicate acts—which each separately

must be taken as true—spanning between six and nine years for each Defendant are, standing

alone, sufficient to allege closed-ended continuity.

---

[9]  This Court, however, repeatedly has found periods of less than two years to be sufficient to allege
continuity in appropriate circumstances. *See Annodeus*, 2004 WL 2066937, at *3-4 (allegations of mail
and wire fraud predicate acts spanning "nearly two years" satisfy the closed-ended continuity
requirement); *Brooke v. Schlesinger*, 898 F. Supp. 1076, 1084 (S.D.N.Y. 1995) (period of seventeen
months likely to meet continuity requirement); *Farberware, Inc. v. Groben*, 764 F. Supp. 296, 306
(S.D.N.Y. 1991) ("the pleading of repeated similar acts over a ten-month period adequately alleges a
continuing scheme to defraud plaintiff"); *Dooner v. NMI Ltd.*, 725 F. Supp. 153, 161-62 (S.D.N.Y. 1989)
(single eighteen-month scheme sufficient to withstand motion to dismiss).

Defendants' attempt to artificially truncate the predicate acts alleged in the Amended Complaint is not limited to excising the pre-1998 predicate acts, as Defendants also seek to exclude all so-called "back-end" allegations after 1998. In general, Defendants collectively discount such post-1998 predicate acts as alleged efforts to cover up past predicate acts, which they claim do not count towards RICO continuity (*see* Jakks Br. at 8-15; THQ Br. at 12). This premise again misconstrues the nature of WWE's claims. In reality, the post-1998 predicate acts principally involve predicate acts of mail and wire fraud, money laundering under 18 U.S.C. § 1957, and violations of the Travel Act, relating to the transfer of proceeds derived from the fraudulently obtained videogame license. These post-1998 predicate acts are wholly unrelated to Defendants' fraudulent concealment activities.

With regard to money laundering and Travel Act violations, Defendants do not, because they cannot, offer any substantive basis as to why such predicate acts should not count towards RICO continuity. *See Welch Foods Inc. v. Gilchrist*, No. 93-CV-0641E(F), 1996 WL 607059, at *6 (W.D.N.Y. Oct. 18, 1996) (finding closed-ended continuity adequately alleged based on mail and wire fraud, money laundering, Travel Act, and National Stolen Property Act predicate acts over ten-year period); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 Civ. 2923 (CSH), 1994 WL 88129, at *29 (S.D.N.Y. Mar. 15, 1994) (finding closed-ended continuity adequately alleged where defendants allegedly committed commercial bribery and Travel Act predicate acts spanning "approximately two years").[10]

With regard to mail and wire fraud, Defendants' argument that continuity cannot be based on actions by other Defendants (besides curiously resulting in Defendants pointing fingers

---

[10]  As described in detail in Section II.F below, the Amended Complaint adequately alleges that the THQ Defendants and THQ/Jakks committed predicate acts of mail and wire fraud, money laundering, violations of the Travel Act and violations of the National Stolen Property Act.

at each other) is legally unavailing because, as described in detail in Section II.F below, "the offense consists of the foreseeable use of the mails [or wires] by <u>anyone</u> in furtherance of a scheme to which [the defendant] was a party." *Spira v. Nick*, 876 F. Supp. 553, 560 (S.D.N.Y. 1995) (emphasis in original); *see also United States v. Bortnovsky*, 879 F.2d 30, 36 (2d Cir. 1989). Any Defendant, therefore, is chargeable with mail and wire fraud where the mail or wire foreseeably was used in furtherance of the underlying scheme to defraud WWE of the honest services of its agents—all of which is fully alleged in the Amended Complaint.

At the same time, Defendants also misconstrue the law relative to WWE's allegations of Defendants' fraudulent concealment. In addition to tolling the statute of limitations, acts of concealment in furtherance of a scheme <u>that are independently chargeable predicate acts under</u> <u>RICO</u> count as predicate acts for the purposes of assessing continuity. *See United States v. Coiro*, 922 F.2d 1008, 1017 (2d Cir. 1991) ("[T]he evidence established that . . . [defendant's] activities designed to prevent detection and prosecution of the organization's illegal activities were part of a consistent pattern that was likely to continue for the indefinite future, absent outside intervention."); *In re Motel 6 Sec. Litig.*, 161 F. Supp. 2d 227, 246-47 (S.D.N.Y. 2001) (denying summary judgment on RICO pattern element where plaintiffs alleged facts that defendant "engaged in a cover-up of . . . illegal activities" and "continues that cover-up attempt today"); *Local 875 I.B.T. Pension Fund v. Pollack*, 992 F. Supp. 545, 567 (E.D.N.Y. 1998) (rejecting argument "that acts undertaken merely to cover up the original conspiracy cannot be used to establish continuity" because "defendants' continuing misrepresentations allowed them to effect misappropriations of . . . assets and lulled the plaintiffs into not seeking a return of their money").

Accordingly, all post-1998 predicate acts alleged in the Amended Complaint must be

included in assessing continuity.

        **(ii)**    **Defendants' Attempt To Mischaracterize WWE's Amended**
                     **Complaint Is Unfounded As A Matter Of Fact And Law**

        Defendants' stubborn insistence to mischaracterize WWE's Amended Complaint more to their liking is unfounded and inappropriate as a matter of fact and law. Ignoring the actual allegations of the Amended Complaint and even their own admissions to the contrary, Defendants continue to claim that WWE's RICO claims "boil down" to a "single alleged bribery scheme to obtain a series of licensing rights . . . from a single victim (WWE) at below-market rates" (*see* Jakks Br. at 2; THQ Br. at 10). In furtherance of their misconstruction, Defendants charge WWE with "fragmenting a singular act into multiple acts to invoke RICO" (*see* Jakks Br. at 17; THQ Br. at 10). This simply is not accurate.

        As noted above, the THQ Defendants admit that the Amended Complaint alleges "a sprawling, multi-faceted conspiracy . . . with its aims to affect multiple licenses, including a domestic and international toy license, as well as a videogame license" (*see* THQ Br. at 1). Similarly, the Jakks Defendants admit that "WWE alleges more than a <u>dozen separate events</u>" involving seven separate license agreements (*see* Jakks Br. at 25-26 (emphasis in original)). These admissions concede the remarkable breadth and scope of the unlawful activities alleged in the Amended Complaint, all of which must be taken as true in considering Defendants' motions to dismiss. Indeed, the Amended Complaint actually alleges over one hundred separately-chargeable predicate acts, committed by thirteen distinct actors, directed against WWE with incidental effects on three other would-be victims (Playmates, Acclaim and Activision).

        Such admitted targeting of multiple contracts or agreements by Defendants' predicate acts establishes multiple schemes for continuity purposes. *See Schlaifer Nance*, 119 F.3d at 97-98 (rejecting plaintiff's allegations of nine distinct schemes because the schemes <u>only touched</u>

21

upon a single agreement); *Panix Promotions, Ltd. v. Lewis*, No. 01-Div. 2709(HB), 2002 WL 72932, at *7 (S.D.N.Y. Jan. 17, 2002) (distinguishing *Schlaifer* and finding closed-ended continuity where third-party plaintiff alleged "a series of frauds" targeting a single victim involved "numerous fight contracts"); *Hansel 'n Gretel Brand, Inc. v. Savitsky*, No. 94 Civ. 4027(CSH), 1997 WL 543088, at *6 (S.D.N.Y. Sept. 3, 1997) (distinguishing *Schlaifer*, where "the predicate acts all arose from the process of drawing up a single contractual agreement," and holding that "[h]ere, each individual act set forth in the complaint was necessary to secure a separate overcharge . . . and to kickback a distinct sum of money . . . . The fact that these acts were directed at the same end does not place them outside the reach of RICO; indeed, the allegation that the acts furthered a similar aim may be necessary to meet the "relatedness" prong of the pattern element").

Although there are multiple schemes alleged in the Amended Complaint for continuity purposes, the Supreme Court and the Second Circuit have in any event rejected attempts to impose a requirement that a RICO plaintiff allege more than one scheme to satisfy the pattern element. *H.J. Inc.*, 492 U.S. at 240 (in RICO's pattern element, Congress "envision[ed] a concept of sufficient breadth that it might encompass multiple predicates within a single scheme . . ."); *Procter & Gamble*, 879 F.2d at 16 ("We have explicitly eschewed any multiple scheme or episode requirement to demonstrate the continuity of the pattern of racketeering activity."); *United States v. Indelicato*, 865 F.2d 1370, 1383 (2d Cir.) (en banc) (not finding "any basis in RICO or its legislative history for the proposition that a RICO violation cannot be established without proof of more than one scheme, episode, or transaction"). Thus, while the presence of multiple schemes is a factor that may weigh in favor of continuity, a complaint cannot be dismissed solely because it is found to allege a single criminal scheme. *See, e.g., Amsler v.*

*Corwin Petroleum Corp.*, 715 F. Supp. 103, 104 (S.D.N.Y. 1989) ("In *H.J. Inc.*, the Supreme

Court expressly rejected the proposition that a civil RICO action requires proof of multiple

schemes to establish a pattern of racketeering. Therefore, the amended complaint cannot be

dismissed on that ground.").

　　　Not surprisingly, therefore, courts in the Second Circuit repeatedly have found closed-

ended continuity even when only a single scheme was alleged. *See Jacobson v. Cooper*, 882

F.2d 717, 720 (2d Cir. 1989) (finding scheme to appropriate a single plaintiff's real estate

interests satisfied RICO pattern requirements); *Brooke v. Schlesinger*, 898 F. Supp. 1076, 1084,

1086 n.8 (S.D.N.Y. 1995) (even though "involvement in multiple schemes bolsters a finding of

continuity," allegation of a single seventeen-month scheme to conceal fraudulent invoicing

would likely meet continuity pleading requirement); *Healey v. Pyle*, No. 89 CIV. 6027 (JSM),

1992 WL 80775, at *7 (S.D.N.Y. Mar. 31, 1992) ("In the case at hand we have only one

perpetrator, one victim, and one scheme, but the court finds because the racketeering activities

allegedly occurred over a period of more than four years and involved at least thirty-eight

incidences of mail or wire fraud plaintiff has sufficiently pleaded closed-ended continuity.");

*Com-Tech Assocs. v. Computer Assocs. Int'l, Inc.*, 753 F. Supp. 1078, 1091 (E.D.N.Y. 1990) ("In

light of *H.J., Inc.*, it matters not that there is a single victim . . . and a single overall scheme to

defraud . . . so long as the scheme was carried out by the commission of two or more predicate

acts . . . ."); *Polycast Tech. Corp. v. Uniroyal, Inc.*, 728 F. Supp. 926, 948 (S.D.N.Y. 1989)

("That these separate fraudulent acts [occurring over eight and one half months] were aimed at a

single goal . . . is not dispositive in light of Supreme Court's rejection of a requirement of

multiple schemes."); *Dooner v. NMI Ltd.*, 725 F. Supp. 153, 161-62 (S.D.N.Y. 1989) (single

eighteen-month scheme sufficient to allege continuity); *Amsler*, 715 F. Supp. at 104 (motion to

dismiss RICO claims based on single scheme denied). In fact, this Court has even held that allegations of a single scheme to sell licensing rights to a wrestling videogame to a single victim by means of mail and wire fraud spanning "nearly" two years was sufficient to establish closed-ended continuity. *Annodeus*, 2004 WL 2066937, at \*3-4.

Likewise, "the fact that there was only one victim is irrelevant to whether the continuity element is satisfied." *Metro. Transp. Auth. v. Contini*, No. 04-CV-0104 DGTJMA, 2005 WL 1565524, at \*3 (E.D.N.Y. July 6, 2005); *see also Cosmos Forms Ltd. v. Guardian Life Ins. Co. of Am.*, 113 F.3d 308, 310 (2d Cir. 1997) ("There is only one victim, but that does not, by itself, preclude a RICO pattern."); *Healey*, 1992 WL 80775, at \*7; *Panix Promotions*, 2002 WL 72932, at \*7 (finding closed-ended continuity adequately alleged by a four-year scheme targeting a single victim with "a series of frauds, involving numerous . . . contracts"). Measured against these authorities, WWE's allegations more than adequately plead closed-ended continuity.

### b.    Open-Ended Continuity

The Amended Complaint also adequately alleges the threat of future criminal activity or open-ended continuity. "[O]pen-ended continuity may be shown if, 'at the time of occurrence,' the racketeering activity threatens future criminal activity." *Contini*, 2005 WL 1565524, at \*3 (*quoting Morrow v. Black*, 742 F. Supp. 1159, 1207 (E.D.N.Y. 1990)) (emphasis in original); *see also H.J. Inc.*, 492 U.S. at 241 ("What a plaintiff or prosecutor must prove is continuity of racketeering activity or its threat, *simpliciter*.") (emphasis in original). In assessing open-ended continuity, the Second Circuit "look[s] first to the nature of the predicate acts alleged or to the nature of the enterprise at whose behest the predicate acts were performed." *GICC Capital*, 67 F.3d at 466 (collecting cases). "Essentially, if the nature of the acts indicate that the defendants

24

had a continuing intent and ability to carry on the racketeering activity, a threat of continuity is established." *Contini*, 2005 1565524, at *4.

Under Second Circuit law, "an <u>inherently unlawful act</u> performed at the behest of an enterprise whose business is racketeering activity would <u>automatically</u> give rise to the requisite threat of continuity." *GICC Capital*, 67 F.3d at 466 (emphasis added); *see also Indelicato*, 865 F.2d at 1383-84 ("Where the enterprise is an entity whose business is racketeering activity, an act performed in furtherance of that business <u>automatically</u> carries with it the threat of continued racketeering activity.") (emphasis added); *Contini*, 2005 WL 1565524, at *4 ("A threat of continuity may be established where the predicate acts are inherently unlawful and were made in pursuit of inherently unlawful goals . . . ."). The Amended Complaint alleges precisely this type of situation.

This Court has already held that WWE has adequately pleaded that Defendants engaged in an association-in-fact RICO enterprise, which was formed solely for the purpose of committing the predicate acts alleged in WWE's Amended Complaint. *See World Wrestling Entm't*, 425 F. Supp. 2d at 500 (*citing Mazzei*, 700 F.2d at 88). As such, the business of Defendants' association-in-fact is clearly "an enterprise whose business is racketeering activity." *GICC Capital*, 67 F.3d at 466.[11] Among other things, this enterprise is alleged to have engaged in bribery (AC ¶ 249(e)) and money laundering (AC ¶ 249(b)(i)-(lxxxviii)), both of which are regarded as inherently unlawful acts. *See Contini*, 2005 WL 1565524, at *4 (finding open-ended continuity because, in part, defendant "participated in the scheme by laundering the proceeds of

---

[11]  That Defendants' association-in-fact enterprise in this case is not a traditional "organized crime" group is irrelevant. *See H.J. Inc.*, 492 U.S. at 243 ("[T]he threat of continuity is sufficiently established where the predicate acts can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes. Such associations include, <u>but extend well beyond,</u> those traditionally grouped under the phrase 'organized crime.'") (emphasis added).

the fraud, an act which is also viewed as inherently unlawful"); *United States v. Triumph Capital Group, Inc.*, 260 F. Supp. 2d 444, 453 (D. Conn. 2002) ("The time span alleged in the indictment here is more than two years . . . . Moreover, the nature of the alleged racketeering acts of bribery and obstruction of justice is inherently unlawful. This alone is sufficient to show the threat of continuity and would do so even if the time period spanned by the racketeering acts were shorter."); *see also Coiro*, 922 F.2d at 1017 (citing *Indelicato* and holding that evidence of the defendant's "numerous activities involving bribery and money laundering on behalf of organized crime was more than ample to establish a RICO pattern."). Under Second Circuit law, therefore, open-ended continuity is automatically established. *GICC Capital*, 67 F.3d at 466.

Open-ended continuity also is established based on WWE's allegation that Defendants formed THQ/Jakks as a sham corporation to implement their fraudulent scheme to obtain the WWE videogame license (AC ¶¶ 156-58). This Court has ruled that allegations that defendants set up a "sham" corporation in an effort to defraud the plaintiff adequately "plead continuity based on the predicate acts or offenses that are part of an ongoing entity's regular way of doing business." *Trs. of Plumbers & Pipefitters*, 886 F. Supp. at 1144 (*citing H.J. Inc.*, 492 U.S. at 241-43).

Furthermore, contrary to Defendants' argument, the criminal activities in which the Defendants engaged were not "inherently terminable" (*see* Jakks Br. at 15; THQ Br. at 13-14; THQ/Jakks Br. at 20). As noted above, "the threat of continuity in the context of an open-ended period of racketeering must be viewed at the time the racketeering activity allegedly occurred." *Welch Foods*, 1996 WL 607059, at *6; *see also United States v. Aulicino*, 44 F.3d 1102, 1112 (2d Cir. 1995) ("The analysis of the threat of continuity cannot be made solely from hindsight."). Here, as measured from the onset of the racketeering activities as required, there not only was the

26

threat that more illegal activity would occur once Jakks corrupted its first fiduciary to WWE, but as the Amended Complaint demonstrates that "threat" became an acute reality. Indeed, as crime tends to do when successful, it escalated and involved others in the scheme.

None of this analysis changes because WWE overcame criminal obstruction to learn the facts. *United States v. Busacca*, 936 F.2d 232, 238 (6th Cir. 1991) ("The lack of a threat of continuity of racketeering activity cannot be asserted merely by showing a fortuitous interruption of that activity such as by an arrest, indictment or guilty verdict"); *Cosmos Forms Ltd.*, 113 F.3d at 310 (finding continuity where open-ended activity only stopped because plaintiff instigated investigation); *Coiro*, 922 F.2d at 1017 ("consistent pattern" of predicate acts was "likely to continue for the indefinite future, absent outside intervention"); *United States v. Gelb*, 881 F.2d 1155, 1163-64 (2d Cir. 1989) (continuity satisfied where single-victim scheme involving five years of repeated predicate acts would have continued but for discovery); *Sumitomo Corp. v. Chase Manhattan Bank*, No. 99Civ.4004(JSM), 2000 WL 1616960, at *2 (S.D.N.Y. Oct. 30, 2000) ("Moreover, the conduct did not stop because any of the parties involved determined to abandon the allegedly criminal activity; it ended only because Sumitomo became aware of Hamanaka's rogue operation."); *Welch Foods*, 1996 WL 607059, at *6 ("Discovery and termination of kickback scheme does not remove the threat of continuity . . . ."); *Morrow v. Black*, 742 F. Supp. 1199, 1207 (E.D.N.Y. 1990) ("That racketeering activity lasts in actuality only a few weeks and then is ceased because the participants are found out would not necessarily mean that at the time the activity took place, it had not threatened future criminal activity. Indeed, even if the racketeering activity was voluntarily stopped after a few weeks or months, it might still have had threatened future criminal activity depending on why defendants decided to discontinue the acts.").

The Amended Complaint demonstrates that Defendants corrupted Shenker to have him do their bidding on WWE licensing matters, and then used Shenker—and later Bell—to corruptly serve their interests in connection with securing ever-increasing licensing rights through dishonest WWE agents they had corrupted.[12]  These allegations prove "threat, *simpliciter*."  It also is reasonable to infer from these allegations that had WWE not fortuitously terminated Shenker and Bell and uncovered Defendants' criminal conduct, then such conduct would have continued indefinitely.  *See, e.g., Greater Blouse, Skirt & Undergarment Ass'n, Inc. v. Morris*, Nos. 93 CIV. 1257(SS), 72242, 1993 WL 410167, at *5 (S.D.N.Y. Oct. 14, 1993) ("Given the number of amendments falsely obtained and the control the defendant exercised . . . the Complaint's allegations permit the inference that the defendant's fraudulent scheme was capable of continuing into the future and posed the threat of repetition.").  Indeed, as noted, the Amended Complaint not only alleges the threat of continued predicate acts, it alleges threat eventuated and even that predicate acts actually are continuing to this present day (AC ¶ 252).  At the time the racketeering activity was occurring, therefore, there was clearly a real threat of continuity.

Accordingly, the Amended Complaint adequately alleges a pattern of racketeering activity, including both closed-ended and open-ended continuity.

---

[12]  Properly understanding WWE's honest services fraud claims as alleged in the Amended Complaint, it is readily apparent that the Jakks Defendants' argument that the criminal acts had "a natural end point" (Jakks Br. at 15) and the THQ Defendants' argument—based on WWE's superseded original complaint— that the supposedly last bribery payment in August 1998 terminated Defendants' criminal conduct (THQ Br. at 14) are based on a fundamental misconstruction of the Amended Complaint.  Furthermore, the fact that Shenker and Bell were terminated in 2000 is legally irrelevant to assessing the threat of continuity at the time the racketeering activity was occurring.  *See Andrea Doreen Ltd.*, 299 F. Supp. 2d at 157 (finding open-ended continuity adequately alleged even though "most of the major actors in these alleged predicates were removed from their positions of authority because of their corruption").

**C.    WWE's RICO Injury Is Adequately Alleged**

The Supreme Court has ruled that "Section 1964(c) authorizes a private suit by '[a]ny person injured in his business or property by reason of a violation of § 1962.'" *Sedima*, 473 U.S. at 495 (*quoting* 18 U.S.C. § 1964(c)). "[C]ongress intended the basic award under civil RICO to compensate plaintiff for injury to 'his property or business.' As in other areas of the law, this compensation takes the form of awarding damages sufficient to place the plaintiff in the same financial position he would have occupied absent the illegal conduct." *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1106 (2d Cir. 1988) (citation omitted).

"[A]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F. Supp. 2d 141, 152 (E.D.N.Y. 2005) (*quoting Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 252 (1994)). To properly allege RICO injury, a plaintiff "must allege facts demonstrating both that plaintiff's injury is to its property, and not, for example, physical, emotional or reputational harm, and that plaintiff's injury is proximately caused by the acts constituting the RICO violation." *State Farm*, 375 F. Supp. 2d at 152. In other words, "Plaintiffs need only claim that 'defendant's acts are a substantial factor in the sequence of responsible causation, and [that] . . . the injury is reasonably foreseeable or anticipated as a natural consequence.'" *Volmar Distribs., Inc. v. N.Y. Post Co.*, 825 F. Supp. 1153, 1162-63 (S.D.N.Y. 1993) (*quoting Standardbred Owners Ass'n v. Roosevelt Raceway Assoc.*, 985 F.2d 102, 104 (2d Cir. 1993)). The Amended Complaint clearly does so.

Contrary to these controlling principles, Defendants claim that WWE's alleged RICO injury is too speculative to state a claim. Defendants contend that "[a]t best, WWE alleges, without any particularity, that it has been damaged by losing the opportunity to entertain other

29

potential offers for the Licenses" (Jakks Br. at 19). Defendants' argument is untenable as a

matter of fact and law. On one level, contrary to Defendants' erroneous legal assertion, "the lost

opportunity to entertain other potential offers" is not a quintessential claim for lost profits that is

prohibited under New York law. Rather, this Court has repeatedly found that such a claim

adequately alleges RICO injury. *See I.M. Oberman Assocs., Inc. v. Republic Fin. Servs., Inc.*,

No. 92 Civ. 1843 (MBM), 1993 WL 88209, at *5 (S.D.N.Y. Mar. 25, 1993); *Academic Indus.,*

*Inc. v. Untermeyer Mace Partners, Ltd.*, No. 90 Civ. 1052 (LBS), 1992 WL 73473, at *2

(S.D.N.Y. Apr. 1, 1992). As this Court has expressly recognized:

> [I]t is "clear that consequential damages may be awarded where
> necessary to compensate a plaintiff for costs incurred in reliance on
> a fraudulent misrepresentation." In the Second Circuit, "damages
> for fraud include the costs incurred in preparing for, performing, or
> passing up other business opportunities," so long as plaintiff can
> "establish the causal nexus with a good deal of certainty."

*I.M. Oberman*, 1993 WL 88209, at *5 (citations omitted); *see also Schonfeld v. Hilliard*, 218

F.3d 164, 183 (2d Cir. 2000) ("'Under New York law, the measure of damages for fraud is

governed by the "out-of-pocket" rule which permits recovery for a plaintiff's reliance interest,'

including damages incurred by 'passing up other business opportunities.'" (*quoting Fort Howard*

*Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 793 n.6 (2d Cir. 1986))). Indeed, unlike

Defendants, Judge Mukasey, who wrote the opinions in both *I.M. Oberman* and *First Nationwide*

*Bank v. Gelt Funding Corp.*, 820 F. Supp. 89 (S.D.N.Y. 1993), on which Defendants rely,

properly recognizes the distinction between consequential damages such as loss of opportunity

damages that are recoverable, and lost profits that generally are not recoverable for fraud claims

under New York law. Thus, even if it were correct that WWE's damages are predicated on its

passing up other business opportunities as a result of Defendants' fraud, WWE thus has stated a

cognizable RICO injury as a matter of law. "Whether or not plaintiff can prove that damage at trial is not at issue now." *I.M. Oberman,* 1993 WL 88209, at *5.

On another level, Defendants again have attempted to self-servingly pigeonhole WWE's claims at the pleading stage. WWE alleges that as a direct and proximate result of Defendants' multifaceted racketeering activities (involving hundreds of distinct predicate acts), WWE was deprived of the intangible right of honest services from its agents Shenker and Bell and received lower than competitive royalty rates for its valuable toy licensing rights and valuable videogame license, including, specifically, what THQ itself was prepared to pay before joining Defendants' unlawful enterprise (AC ¶¶ 161-164). The calculation of damages on this branch is remarkably simple, much to the consternation of Defendants. If THQ had chose to offer what it was prepared to pay instead of joining the enterprise and obtaining the same rights at considerably lower rates, WWE would have received millions more than it has. There is nothing speculative about that. WWE further claims that as a direct and proximate result of Defendants' fraudulent conduct, monies and consideration that otherwise could have and would have been offered to WWE by the THQ Defendants in a competitive bidding process are being paid to Jakks instead for its role in the scheme even though Jakks has no involvement whatsoever in the performance of the videogame license (AC ¶¶138, 150, 161-164).

These allegations state archetypical RICO injuries that WWE is entitled to quantify and prove through discovery. According to the Second Circuit, "[p]ut simply, if [plaintiff] was injured by defendants' acts, as its complaint adequately alleges in this case, it has standing to bring a RICO claim . . . ." *Bankers Trust,* 859 F.2d at 1101. It is not necessary for pleading purposes for a plaintiff to specify an exact dollar amount of damages. *Trs. of Plumbers & Pipefitters Nat'l Pension Fund,* 886 F. Supp. at 1146 ("[N]otwithstanding the fact that plaintiffs

have not specified an exact dollar amount of damages, plaintiffs' allegations that defendants

withheld contributions and other payments sufficiently state a RICO injury."). Particularly under

the liberal notice pleading standards applicable to RICO injury, WWE's allegations of its injury

are sufficient to withstand Defendants' motion to dismiss.

Consistent with their mischaracterization of WWE's claims, Defendants similarly

mischaracterize the law. It is well-established that "[c]ivil RICO damages 'are unrecoverable if

the fact of their accrual is speculative or their amount and nature unprovable.'" *First*

*Nationwide*, 820 F. Supp. at 95 (*quoting Bankers Trust*, 859 F.2d at 1104). To the extent the

cases cited by Defendants even address the issue of speculative injury, however, the injury was

based on anticipated <u>future</u> contingencies. *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d

21, 24 (2d Cir. 1990) ("This injury is too speculative to confer standing, because Hecht only

alleges that he would have lost commissions in the future, and not that he lost any yet."); *First*

*Nationwide*, 820 F. Supp. at 95 ("Plaintiff cannot allege RICO injury simply by stating that it

followed a statutory requirement in connection with a transaction that may result in a loss.").

Here, by contrast, WWE's injury is based on events that already in fact occurred regarding which

there is not, and could not be, any speculation. *See Trs. of Plumbers & Pipefitters*, 886 F. Supp.

at 1146 ("This is not an instance where the RICO injury is mere conjecture because plaintiffs

may ultimately recover their losses through alternate or independent means. Rather, plaintiffs

have alleged a non-speculative loss; they simply cannot ascertain the precise amount of that loss

at this time because information is peculiarly within defendants' knowledge.") (footnote

omitted). While certain aspects of WWE's injury are based on the future performance of

existing license agreements, the terms of those license agreements are fixed based on events that

already have occurred.

The remaining cases cited by Defendants actually were decided based on the lack of causation between the alleged RICO violations and the alleged damages, not because of the speculative nature of the damages. *See Cougar Audio, Inc. v. Reich*, No. 99 Civ. 4498 LBS, 2000 WL 420546, at *8 (S.D.N.Y. Apr. 18, 2000) (finding no causation between "abstract form of harm suffered by one who loses the chance to bargain with all the facts" and plaintiff's alleged injury); *In re Tri-Star Techs. Co.*, 257 B.R. 629, 640-41 (Bankr. D. Mass. 2001) ("The record does not sufficiently reflect that the Debtor suffered monetary losses arising from the actions of the Lautieris."). In addition to not even arguing lack of causation with respect to WWE's RICO injury, there can be no legitimate dispute that WWE's injury (i.e., deprivation of the honest services of its agents and lesser payments for its videogame and toy licensing rights) is alleged to be the direct and proximate result of Defendants' racketeering activities.[13]

Meanwhile, Defendants' argument that WWE's RICO damages are too speculative to state a claim is fundamentally inconsistent with other litigation positions Defendants have asserted. In opposition to WWE's Sherman Act claim, Defendants have contended that WWE did not suffer antitrust injury because its injury exclusively was caused by the bribery and corruption of WWE's agents, Shenker and Bell. Defendants cannot have it both ways; they cannot argue out of one side of their mouth for antitrust injury purposes that WWE's injury was

---

[13] Defendants' argument that WWE's request for equitable relief, including rescission of the videogame and toy licenses, restitution and/or disgorgement, is "legally foreclosed under 18 U.S.C. § 1964(a)" (*see* Jakks Br. at 21 n.14) is simply not true. *See United States v. Carson*, 52 F.3d 1173 (2d Cir. 1995) (recognizing that disgorgement is appropriate if "the gains are being used to fund or promote the illegal conduct, or constitute capital available for that purpose" and thus that "disgorgement of gains ill-gotten relatively recently is more easily justifiable . . . ."). To this day, Defendants continue to unlawfully exploit and receive funds from their illegally obtained licenses and to commit predicate acts of money laundering (AC ¶¶ 149-50, 252). Thus, rescission and disgorgement are necessary to "prevent and restrain future conduct." Regardless, WWE's RICO claims cannot be subject to dismissal because WWE also seeks to recover treble damages for the injuries it sustained to its business and property as a result of Defendants' RICO violations, as well as attorneys' fees and costs, under § 1964(c). In any event, the equitable relief sought by WWE is available under its state-law claims under any circumstances.

caused by the bribery and corruption, while now arguing out of the other side of their mouth that WWE did not suffer any injury from the bribery and corruption either. The incompatibility of Defendants' positions is poignantly illustrated by their claim that "this case is on all fours with *Fed. Paper Bd. v. Amata,* 693 F. Supp. 1376, 1380-85 (D. Conn. 1988)" (Jakks Defendants' Mem. of Law in Opposition to WWE's Motion for Reargument at 3). Although WWE disputes the applicability of *Fed. Paper Bd.* to these circumstances, at the same time that Judge Blumenthal granted defendants' motion to dismiss the Sherman Act claim for lack of antitrust injury, he denied the motion to dismiss the RICO claim finding that it adequately pled "a single scheme to bribe Federal's employee in order to obtain commercial advantage and 'defraud' Federal." *Fed. Paper Bd.,* 693 F. Supp. at 1393.

**D.      WWE's RICO Claims Are Not Time Barred**

      **1.      Defendants' Statute of Limitations Argument Turns on Disputed Factual Issues and Thus Cannot Be Decided on a Motion to Dismiss**

As an affirmative defense under Rule 8 of the Federal Rules of Civil Procedure, the statute of limitations can only be raised in a pre-answer motion to dismiss if the facts supporting the defense appear on the face of the Amended Complaint and it is indisputable that WWE can prove no set of facts entitling it to relief and no set of facts tolling the statute. *See Ortiz v. Cornetta,* 867 F.2d 146, 148 (2d Cir. 1989); *see also Tello v. Dean Witter Reynolds, Inc.,* 410 F.3d 1275, 1288 n.13 (11th Cir. 2005). In short, dismissal pursuant to Rule 12(b)(6) is only appropriate "if a complaint clearly shows the claim is out of time." *Harris v. City of N.Y.,* 186 F.3d 243, 250 (2d Cir. 1999). A defendant asserting an affirmative defense, such as statute of limitations, by way of a motion to dismiss rather than a motion for summary judgment "must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir. 2004); *see also Reiser v. Residential Funding Corp.,* 380 F.3d 1027, 1030

(7th Cir. 2004) ("All we have to go on is the complaint, and because the period of limitations is an affirmative defense, it is rarely a good reason to dismiss under Rule 12(b)(6)."). Defendants plainly have not met this heavy burden.

Defendants' statute of limitations argument is based entirely on WWE's alleged knowledge of its RICO injury. Yet, the Second Circuit has ruled that knowledge and notice are peculiarly factual issues reserved for trial that are "particularly inappropriate" for resolution on summary judgment, let alone on a Rule 12(b)(6) motion to dismiss. *Robertson v. Seidman & Seidman*, 609 F.2d 583, 591 (2d Cir. 1979) ("Issues of due diligence and constructive knowledge depend on inferences drawn from the facts of each particular case similar to the type of inferences that must be drawn in determining intent and good faith" and thus their resolution on summary judgment is "particularly inappropriate"); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 930 F. Supp. 68, 76 (S.D.N.Y. 1996) ("Since issues of constructive knowledge depend on inferences drawn from the facts of each particular case, summary judgment is often inappropriate on issues of inquiry notice."); *Nelson v. Stahl*, 173 F. Supp. 2d 153, 166 (S.D.N.Y. 2001) ("Plaintiffs dispute that they were on inquiry notice of the alleged fraud. The Court will not reach this issue, because the question of whether Plaintiffs should have discovered the fraud earlier than they did, and thus whether the action is timely, is a question for the trier of fact."). As this Court recently ruled,

> "[s]ince issues of constructive knowledge depend on inferences drawn from the facts of each particular case, summary judgment is often inappropriate on issues of inquiry notice. In fact, Southern District courts have variously described defendants' burden in this regard as 'extraordinary' and appropriate only in 'extreme circumstances.'" This same logic extends to consideration of the issues of inquiry notice and fraudulent concealment with respect to motions to dismiss.

35

*In re Sumitomo Copper Litig.*, 104 F. Supp. 2d 314, 324 (S.D.N.Y. 2000) (*quoting In re Prudential Sec.*, 930 F. Supp. at 76) (citation omitted) (emphasis added).

Defendants' factual mischaracterizations, when contrasted with the actual allegations in the Amended Complaint (which must be taken as true), clearly do not the meet the exacting burden of presenting "extraordinary" or "extreme circumstances." That is, Defendants claim that the seven toy and videogame licenses, obtained between 1996 and 1998 at what are now known to have been below-market rates, placed WWE on inquiry notice of its RICO injury (Jakks Br. at 26). Without a shred of analysis or basis, Defendants summarily claim "the conclusion is ineluctable that WWE knew or should have known of its alleged RICO injury no later than 1998" (Jakks Br. at 23). That supposedly "ineluctable" conclusion, however, is nothing more than saying WWE should have known its agents had been corrupted by these Defendants long ago despite the acts of concealment, use of foreign bank accounts, perjury, destruction of evidence and the like by those involved.

Most glaringly, Defendants' argument ignores the precise nature of the criminal enterprise alleged in the Amended Complaint. The enterprise involved as central figures WWE "insiders"—trusted fiduciaries Bell and Shenker—who were able to and did influence WWE's decision-making based on the licensing matters entrusted to them. That was their job. In other words, the Amended Complaint alleges the corruption of the very insiders charged with the procurement of licenses. Thus, the credibility of these insiders, the content of their misrepresentations to WWE, and the content of the "vouching" they did on behalf of their partners-in-crime, the Jakks Defendants and the THQ Defendants—indisputably fact issues—are crucial to determining if and when WWE had notice of its RICO injury. *See In re Prudential Sec.*, 930 F. Supp. at 76-77 (finding that "when the venture is being underwritten or promoted by