Westlaw

Not Reported in F.Supp.                                                                                                   Page 1
Not Reported in F.Supp., 1996 WL 363128 (S.D.N.Y.), RICO Bus.Disp.Guide 9105
**(Cite as: Not Reported in F.Supp.)**

Briefs and Other Related Documents

United States District Court, S.D. New York.
AMERICAN ARBITRATION ASSOCIATION, INC., Plaintiff,
v.
Inez DEFONSECA, Michael M. Maloney, Asha Kissoon, and Nora Alvarez Zea, Defendants.
**No. 93 CIV. 2424 (CSH).**

June 28, 1996.

MEMORANDUM OPINION AND ORDER
HAIGHT, Senior District Judge:

***1** Plaintiff American Arbitration Association ("AAA") brings this action to recover funds allegedly embezzled and laundered in a scheme concocted by defendants. The complaint alleges violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et. seq. ("RICO"), and various pendent state law claims.

Proceeding *pro se,* Defendants Michael Maloney and Ashley Kissoon (hereinafter sometimes referred to as the "moving defendants") move jointly to dismiss the RICO claims against them pursuant to Rule 12(b)(6), Fed.R.Civ.P., and the common law fraud claims and certain RICO predicate offenses pursuant to Rule 9(b). They also move to strike a reference in the complaint to Maloney's incarceration for bank fraud.

*Background*

Plaintiff AAA is a non-profit provider of dispute resolution services which is headquartered in New York City. For thirteen years, Inez DeFonseca was employed by plaintiff at AAA headquarters, in its Management Information Services Department ("MIS"). At all times relevant to this action, she served as vice president of the department. In this capacity, DeFonseca was responsible "for billing and accounts payable systems, including the authorization of the payment of invoices from consultants, suppliers and other vendors providing services to the MIS department." Complaint at ¶ 8. She was terminated from her position on March 29, 1993.

From the complaint, it appears that none of the other defendants was employed by AAA. The complaint states that Zea is a longtime friend of DeFonseca, Maloney and Kissoon are husband and wife, and Maloney is presently incarcerated for bank fraud. However, it does not specify the nature of Maloney and Kissoon's relationship to DeFonseca.

The complaint alleges that between 1990 and 1993, DeFonseca fabricated dozens of counterfeit invoices purporting to bill AAA for services rendered or goods supplied by certain of AAA's vendors. DeFonseca allegedly manufactured the false invoices by either duplicating legitimate ones or by forging new ones using the vendors' letterheads. Relying on these invoices, plaintiff issued several checks in payment of sums due. DeFonseca then used her access to AAA's computer accounting system to enter and approve these payments. Throughout 1990 and 1991, the complaint alleges that DeFonseca deposited the checks into bank accounts held by Zea and other unspecified individuals.

Sometime in 1990, DeFonseca enlisted the aid of Maloney and Kissoon. According to the complaint, defendant Maloney formed certain shell corporations in 1991 for the purpose of receiving payments made under the false invoices. The names of the corporations-BIDME Inc. and NIL Associates, Inc.- are "subtle variations of the names of the legitimate AAA consultants." Complaint at ¶ 17. Maloney opened bank accounts for the corporations, and those accounts were placed under his and Kissoon's joint control. Together, they deposited several of the checks in those accounts. Other checks were deposited in separate bank accounts held by Zea and Maloney in their individual capacities.

***2** After the checks had cleared, Maloney, Kissoon or Zea would allegedly "kick back" a substantial percentage of the proceeds to DeFonseca in cash. Complaint at ¶ 29. All in all, the four defendants are together said to have misappropriated at least $1,358,000 in AAA funds.

Based on these factual allegations, the complaint asserts five causes of action against all defendants, and a sixth against DeFonseca exclusively. The first claim for relief alleges that the defendants participated in the conduct of the affairs of a RICO enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). The second claim

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1996 WL 363128 (S.D.N.Y.), RICO Bus.Disp.Guide 9105
**(Cite as: Not Reported in F.Supp.)**

asserts that defendants conspired to violate 18 U.S.C. 1962(c), in contravention of section 1962(d). The two RICO claims are founded on the following alleged predicate acts of racketeering: mail fraud under 18 U.S.C. § 1341; wire fraud under 18 U.S.C. § 1343; interstate transportation of stolen goods under 18 U.S.C. 2314; interstate travel in aid of racketeering under 18 U.S.C. § 1952; and money laundering under 18 U.S.C. § § 1956 and 1957. With respect to the counts of mail and wire fraud, the complaint reads:

Beginning in 1990, and continuing up to 1993, in furtherance of their fraudulent scheme, Maloney, Kissoon, Zea and DeFonseca used the United States mails and engaged in numerous interstate telephonic communications between New York and New Jersey. In particular, Defendants regularly placed calls between the AAA's offices in New York, New York, and the home of Maloney and Kissoon in Englewood, New Jersey.

Complaint at ¶ 18. Maloney and Kissoon allegedly "used" the mails by receiving bank statements for the three accounts under their control. The complaint does not specify the substance of their interstate telephone conversations, except to say that the defendants "knowingly ... placed ... telephone calls regarding the Fraudulent Checks and Fraudulent Invoices." Complaint at ¶ 31(b).

The third and fifth claims, which are asserted against all defendants, sound in fraud and conversion respectively; the fourth claim asserts that DeFonseca breached her fiduciary duty owing to AAA; and the sixth claim seeks the imposition of a constructive trust on AAA funds held by defendants.

On October 19, 1995, plaintiff moved for summary judgment as to defendant DeFonseca. DeFonseca having failed to respond, the Court granted plaintiff's motion on January 12, 1996 and entered judgment against DeFonseca on January 29, 1996. The claims against the other defendants were undisturbed by that judgment.

Presently before the Court is Maloney and Kissoon's joint motion to dismiss. The defendants are proceeding *pro se,* presumably under the direction of Maloney, who, according to the motion papers, is an attorney.

The moving defendants move to dismiss on two separate grounds. First, they claim that plaintiff has failed to plead common law fraud, mail fraud and wire fraud with sufficient particularity under Rule 9(b). Next, they argue that the complaint does not sufficiently allege the statutory elements of a section 1962(c) or 1962(d) RICO claim, mandating dismissal of these claims pursuant to Rule 12(b)(6). I consider these arguments in reverse order.

*Discussion*

I. *Motion to Dismiss the Section 1962(c) Claim Under Rule 12(b)(6)*

**\*3** On a motion to dismiss under Rule 12(b)(6), the trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir.1980); see Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 124 (2d Cir.1991). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The district court should grant a Rule 12(b)(6) motion "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (*citing Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

Except in certain circumstances, consideration of a motion to dismiss the complaint must focus on the allegations contained on the face of the complaint. *See Cortec Industries, Inc. v. Sum Holdings, L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied,* 112 S.Ct. 1561 (1992); Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir.1991). On a motion to dismiss, a district court must accept plaintiff's well-pleaded factual allegations as true, *Papasan v. Allain,* 478 U.S. 265, 283 (1986), and the allegations must be "construed favorably to the plaintiff." *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991). "[A] Rule 12(b)(6) motion to dismiss need not be granted nor denied in toto but may be granted as to part of a complaint and denied as to the remainder." *Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 115 (2d Cir.1982).

To state a claim for damages under RICO, a plaintiff must allege a violation of the substantive RICO statute, 18 U.S.C. § 1962, commonly referred to as "criminal RICO," and injury to his business or property resulting from that violation. *See Town of West Hartford v. Operation Rescue,* 915 F.2d 92, 100 (2d Cir.1990); 18 U.S.C. § 1964(c). When, as here,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1996 WL 363128 (S.D.N.Y.), RICO Bus.Disp.Guide 9105
**(Cite as: Not Reported in F.Supp.)**

the RICO claim is asserted under section 1962(c), the complaint must specifically allege:
(1) the existence of an enterprise which affects interstate or foreign commerce;
(2) that the defendant was "employed by" or "associated with" the enterprise;
(3) that the defendant participated in the conduct of the enterprise's affairs; and
(4) that the participation was through a pattern of racketeering activity.

*Amalgamated Bank of New York v. Marsh,* 823 F.Supp. 209, 219 (S.D.N.Y.1993) (citing and quoting *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639,* 913 F.2d 948, 950 (D.C.Cir.1990)); *see also Moss v. Morgan Stanley Inc.* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied,* 465 U.S. 1025 (1984).

The moving defendants argue that the complaint fails to sufficiently allege any of the requisite elements of a section 1962(c) claim, and that in any event, their violations of that provision did not cause plaintiff's injuries. In enumerating what appears to be a laundry list of RICO pleading deficiencies, defendants are tossing darts in the dark. For reasons that I will explain, none hit their mark.

### A. *"Enterprise"*

**\*4** "Enterprise" is defined in the RICO statute as, *inter alia,* "any ... group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). It is proven by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *U.S. v. Turkette,* 452 U.S. 576, 583 (1981). "Common sense suggests that the existence of an association-in-fact is oftentimes more readily proven by 'what it does, rather than by an abstract analysis of its structure.' " *U.S. v. Coonan,* 938 F.2d 1553, 1559 (2d Cir.1991), *cert. denied,* 503 U.S. 941 (1992) (citing and quoting *U.S. v. Bagaric,* 706 F.2d 42, 56 (2d Cir.1983)). Thus, the Supreme Court has stated that the "pattern of racketeering" element "may in particular cases coalesce" with the "enterprise element," so that a plaintiff may rely on proof of the former to establish the latter. *Turkette* at 583; *see also Coonan,* 938 F.2d at 1560; *U.S. v. Mazzei,* 700 F.2d 85, 89 (2d Cir.1983). AAA apparently seeks to invoke this doctrine in pleading that an "association in fact" enterprise existed among the four defendants. The complaint states:
DeFonseca, Maloney, Kissoon, and Zea are an "enterprise" within the meaning of RICO, in that they are associated in fact for the purpose, *inter alia,* of wrongfully misappropriating funds from AAA by means of the Fraudulent Invoices, the Fraudulent Checks, the Fraudulent Corporations and the Fraudulent Accounts.... Maloney's role in the enterprise has been the creation of the Fraudulent Corporations and Fraudulent Accounts and, together with his wife defendant Kissoon, the laundering of the stolen funds. Zea's role in the enterprise has been the laundering of stolen funds. DeFonseca's role in the enterprise has been the creation of the Fraudulent Invoices and the unlawful procurement of the Fraudulent Checks.

¶ 34. Thus, defendants are alleged to have worked together over a three-year period-or in the words of the Supreme Court, "function[ed] as a continuing unit"-to achieve a common purpose. These allegations are sufficient to plead the existence of an "enterprise."

*Moll v. US Life Title Ins. Co. of New York,* 654 F.Supp. 1012 (S.D.N.Y.1987), a case cited by the moving defendants, is readily distinguishable. There, the plaintiff failed to specify how the defendants joined together to achieve a common purpose. Also absent were "any factual allegations regarding the continuity of structure or personnel of the group." 654 F.Supp. at 1032. Here, however, the complaint describes the mechanics of the enterprise and the role of each participant in sufficient detail. Accordingly, *Moll* is inapposite.

The moving defendants offer no other reason why plaintiff's allegations are deficient in this regard, and I cannot independently discern one. Thus, I conclude that the complaint adequately alleges the existence of a RICO enterprises.[FN1]

> FN1. In paragraph 35 of the complaint, plaintiff alleges that the "Fraudulent Corporations" and the "Fraudulent Accounts" are "each separately and collectively 'enterprises' in and affecting interstate commerce." Having found that the defendants themselves formed an "enterprise" within the meaning of 1961(4), I need not consider Maloney and Kissoon's argument that the corporations and accounts did not constitute separate enterprises.

### B. *"Association With" the Enterprise*

Case 7:04-cv-08223-KMK    Document 165-3    Filed 07/07/2006    Page 4 of 10

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1996 WL 363128 (S.D.N.Y.), RICO Bus.Disp.Guide 9105
**(Cite as: Not Reported in F.Supp.)**

**\*5** Maloney and Kissoon next argue that the "complaint is devoid of any allegation" that they were 'employed by' or 'associated with' the enterprise. *See* Moving Defendants' Memorandum of Law at 26. If they mean to say that those exact words do not appear in the complaint, they are correct. But if it is their view that the fact of their association with the enterprise is not sufficiently alleged, they are wrong. As the above discussion indicates, the complaint details the involvement of Maloney and Kissoon on the money laundering end of the scheme: Maloney formed corporations and opened accounts "for the purpose of receiving the Fraudulent Checks," complaint at ¶ 17, and together with his wife, laundered the embezzled funds by depositing them in the accounts and distributing the proceeds. In this way, the two defendants were allegedly "associated with" the enterprise described in paragraph 34 of the complaint.

C. *"Participation In" the Conduct of the Enterprise's Affairs*

Quite apart from Maloney and Kissoon's association with the enterprise, plaintiff must allege that Maloney and Kissoon "participated in" the conduct of that enterprise's affairs for there to be a viable claim against them under RICO. In *Reves v. Ernst & Young,* 113 S.Ct. 1163 (1993), the Supreme Court adopted an "operation or management" test in interpreting the scope of this requirement. Thus, " 'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs' [pursuant to] § 1962(c), one must participate in the operation or management of the enterprise itself." 113 S.Ct. at 1173.

Seizing upon this language, the moving defendants claim that "the complaint does not suggest that Maloney or Kissoon exerted control over the enterprise consisting of DeFonseca and Zea." Defendants' Memorandum at 30. Once again, they mischaracterize the complaint. Plaintiff has, as I have said, adequately pled that the moving defendants, together with Zea, managed the money laundering side of the enterprise's affairs, while DeFonseca managed the embezzlement side.

In spite of this, defendants contend that since the complaint "does not indicate that Maloney or Kissoon directed anyone" involved with the enterprise, it does not pass muster under *Reves.* Defendant's Memorandum at 30. But *Reves* requires only that a RICO defendant exert some degree of control over the enterprise itself, not the people associated with it. Indeed, "[a]n enterprise is 'operated' not just by upper management but also by lower-rung participants in the enterprise who are under the direction of upper management." *Reves,* 113 S.Ct. at 1173. Thus, plaintiff need not allege that Maloney or Kissoon ordered DeFonseca or Zea around. The complaint must only state that they were in charge of certain aspects of the enterprise.

On this score, Maloney and Kissoon cite *Amalgamated Bank of New York v. Marsh,* 823 F.Supp. 209 (S.D.N.Y.1993) for the proposition that simply accepting and retaining embezzled funds does not amount to "operation or management" of an enterprise's affairs. *See* 823 F.Supp. at 220. That may be true, but it is of no consequence since Maloney and Kissoon are alleged to have done more than that. As noted, the complaint states that Maloney formed corporations to accept fraudulent checks and corporate accounts in which to deposit them; that he and Kissoon exerted joint control over these accounts; and that together they distributed a percentage of the proceeds to DeFonseca. Although the call is a closer one with respect to Kissoon than Maloney, I find that both allegedly had "some part in directing [the enterprise's] affairs." 113 S.Ct. at 1170. Thus, *Reves* does not mandate dismissal of the RICO claim as to either of them.[FN2]

> FN2. This is so, despite plaintiff's allegation in paragraph 34 of the complaint that the enterprise was "headed and directed by DeFonseca and Maloney." As noted in text, the question is whether Kissoon had "some part" in directing the enterprise's affairs. Assuming the allegations in the complaint to be true, Kissoon exerted sufficient managerial responsibility by virtue of her active participation in the money laundering operation, including her control over the accounts and her role in distributing the proceeds.

D. *"Pattern of Racketeering Activity"*

**\*6** The RICO statute defines a "pattern of racketeering activity" as requiring the commission of at least two predicate acts within a ten-year period. 18 U.S.C § 1961(6). To establish such a pattern, a RICO plaintiff must demonstrate that the racketeering predicates are related and continuing. *See H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239 (1989). Defendants at bar focus

Not Reported in F.Supp. Page 5
Not Reported in F.Supp., 1996 WL 363128 (S.D.N.Y.), RICO Bus.Disp.Guide 9105
**(Cite as: Not Reported in F.Supp.)**

on the continuity prong in asserting that plaintiff has failed to allege the requisite pattern of activity. In their view, since the racketeering activity ended before the inception of this lawsuit, it cannot be regarded as continuous.

Maloney and Kissoon may well be correct in asserting that their challenged conduct did not threaten to continue into the future at the time this action was commenced.[FN3] But that does not end the analysis. " 'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." H.J. Inc., 492 U.S. at 241. A plaintiff may plead continuity over a closed period by alleging "a series of related predicates extending over a substantial period of time." Id. at 242; see also Proctor & Gamble v. Big Apple Indus. Bldgs. Inc., 879 F.2d 10, 16 (2d Cir.1989), cert. denied, 493 U.S. 1022 (1990). "What is required is that the complaint plead a basis from which it could be inferred that the acts ... were neither isolated nor sporadic." Beauford v. Helmsley, 865 F.2d 1386, 1391 (2d Cir.), vacated and remanded, 492 U.S. 914, adhered to, 893 F.2d 1433 (2d Cir.), cert. denied, 493 U.S. 992 (1989).

>   FN3. Plaintiff debates that proposition. For the purposes of the present opinion, I need not resolve the dispute.

Plaintiff alleges that the moving defendants engaged in repeated acts of racketeering-most notably, money laundering-over a three-year period. These allegations of wrongdoing, which when viewed together appear neither isolated nor sporadic, fit neatly into the Supreme Court's notion of closed-period continuity. See Proctor & Gamble, 879 F.2d at 18 (allegations of racketeering extending over a two-year period were sufficient to raise the "spectre of continuity" required to withstand Rule 12(b)(6) dismissal); Jacobson v. Cooper, 882 F.2d 717, 720 (2d Cir.1989) (continuity is sufficiently alleged where related predicates extend over "a matter of years"). They are therefore sufficient to withstand dismissal.

E. *Causation*

Maloney and Kissoon alternatively contend that their acts in violation of RICO are not alleged to be a proximate cause of plaintiff's injuries. As they read the complaint, DeFonseca's conduct, not their own, was the sole cause of AAA's financial injury. That reading is strained. The complaint envisions a two-tiered scheme of embezzlement and money laundering. Both elements of the scheme were integral to its success. Thus, by virtue of their involvement on the money laundering side, the moving defendants played an essential role in the scheme, and their acts were "a substantial factor in the sequence of responsible causation." Standardbred Owners Ass'n v. Roosevelt Raceway, 985 F.2d 102, 104 (2d Cir.1993) (citing and quoting Hecht v. Commerce Clearing House, Inc., 897 F.2d 21 (2d Cir.1990)).

F. *Legislative Intent*

**\*7** Lastly, the two defendants insist that prosecution of plaintiff's RICO claims would contravene legislative intent. Their argument is apparently premised on the view that RICO was designed exclusively to combat organized crime. But the Supreme Court rejected that view in H.J. Inc., 492 U.S. at 248-49, when it "decline[d] the invitation to invent a rule that RICO's pattern of racketeering concept requires an allegation and proof of an organized crime nexus." Accordingly, I must reject it here.

II. *Motion to Dismiss the Section 1962(d) Claim Pursuant to Rule 12(b)(6)*

Relying on the same factual allegations that form the basis for the section 1962(c) claim, plaintiff asserts a RICO conspiracy claim under section 1962(d) against all of the defendants. The moving defendants seek to dismiss this claim contending that the complaint fails to allege any facts demonstrating the existence of an agreement to violate section 1962(c).

Section 1962(d) of Title 18 makes it unlawful for any person to conspire to violate sections 1962(a), 1962(b), or 1962(c). "The core of a RICO civil conspiracy is an agreement to commit predicate acts" in violation of one of the above sections. Hecht, 897 F.2d at 25. The complaint must allege that each defendant agreed personally to commit at least two predicate acts. See U.S. v. Ruggiero, 726 F.2d 913, 921 (2d Cir.), cert. denied, 469 U.S. 831 (1984). "[T]he commission of the acts is distinct from an agreement to commit them, and a violation of § 1962(d) requires different proof than a violation of § 1962(c)." U.S. v. Bonanno, 683 F.Supp. 1411, 1440 (S.D.N.Y.1988), aff'd, 879 F.2d 20 (1989).

Case 7:04-cv-08223-KMK   Document 165-3   Filed 07/07/2006   Page 6 of 10

Not Reported in F.Supp. Page 6
Not Reported in F.Supp., 1996 WL 363128 (S.D.N.Y.), RICO Bus.Disp.Guide 9105
**(Cite as: Not Reported in F.Supp.)**

The Second Circuit has held in the context of a motion to dismiss that to state a claim under section 1962(d), "the complaint must allege some factual basis for a finding of a conscious agreement among the defendants." *Hecht* at 26 n. 4. Following the Second Circuit's lead in *Hecht,* numerous district courts in this circuit have dismissed conclusory allegations of agreement as insufficient to state a RICO conspiracy claim. *See Giuliano v. Everything Yogurt, Inc.,* 819 F.Supp. 240, 249 (E.D.N.Y.1993) ("the complaint-wordy as it is-does not supply any facts to buttress its 'barebones' allegation that [two of the defendants] or any other person agreed to commit any predicate acts of mail or wire fraud"); *Connolly v. Havens,* 763 F.Supp. 6, 14 (S.D.N.Y.1991) ("conclusory allegations parroting the language of [section 1962(d) ]" were insufficient under Rule 8(a)); *Laverpool v. New York City Transit Authority,* 760 F.Supp. 1046, 1060 (E.D.N.Y.1991) (RICO conspiracy claim dismissed because complaint did not set forth a specific allegation of agreement); *Morin v. Trupin,* 711 F.Supp. 97, 111 (S.D.N.Y.1989) (conclusory allegation that defendants conspired insufficient to state a claim for RICO conspiracy).

Although the complaint at bar sufficiently alleges that the moving defendants' committed certain predicate acts, it does not allege the additional facts required to state a conspiracy claim against those defendants. As in the above-cited cases, the complaint sets forth only a conclusory allegation of conspiracy, without pleading facts sufficient to sustain that allegation. Specifically, paragraph 39 alleges that "[b]y engaging in the foregoing scheme to defraud, DeFonseca, Maloney, Kissoon and Zea conspired to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d)." Nowhere in the complaint do factual allegations appear which indicate that the defendants, by their words or actions, manifested a conscious agreement to commit predicate acts in furtherance of the common purpose of the RICO enterprise. Nor is there any allegation that Maloney or Kissoon "understood the scope of the enterprise," particularly with respect to its inclusion of Zea and unspecified others. *Morin,* 711 F.Supp. at 111 (quoting *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,* 567 F.Supp. 1146, 1154-55 (D.N.J.1983)) (quoting *U.S. v. Riccobene,* 709 F.2d 214, 225 (3d Cir.1983))

***8** Plaintiff asks me to infer the existence of an agreement from the factual allegations which charge Maloney and Kissoon with committing acts of racketeering in furtherance of the RICO enterprise. But the law of this circuit is clear that I may not give the complaint such a liberal reading. And even were I able to do so, I am not sure that the activities of Maloney and Kissoon necessarily lead to that inference. As it now stands, the complaint does not explain the nature of the relationship between DeFonseca and the moving defendants, nor how and under what conditions DeFonseca went about enlisting their assistance. With respect to Zea, there is nothing in the complaint to indicate that she and the moving defendants were aware of each other's existence, much less that they explicitly agreed to violate section 1962(c). If, as I suspect, plaintiff seeks to invoke the wheel-and-spoke theory of conspiracy, with Zea, Maloney and Kissoon linked as "spokes" to DeFonseca, the "hub" of the conspiracy, it must allege that each of the conspirators "had sufficient awareness of the existence of other members of the conspiracy to render them part of the 'rim of the wheel to enclose the spokes.' " *U.S. v. Zabare,* 871 F.2d 282, 287-88 (2d Cir.1989) (quoting *Kotteakos v. U.S.,* 328 U.S. 750 (1946)), *cert. denied,* 493 U.S. 856 (1989). Clearly, plaintiff has not done so.

For these reasons, I find that the complaint fails to state a RICO conspiracy claim under section 1962(d). Plaintiff will however be granted leave to replead.

III. *Motion to Dismiss the Fraud Allegations Under Rule 9(b)*

The moving defendants urge dismissal of the predicate acts of mail fraud and wire fraud and the claim for common law fraud on the ground that they are not pled with sufficient particularity under Rule 9(b).

A. *Rule 9(b) Pleading Requirements*

Rule 9(b) provides:
In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

The rule must applied so as to achieve its three underlying goals: (1) to provide a defendant with fair notice of the fraud claim so he can prepare his defense; (2) to protect a defendant from needless reputational harm; and (3) to deter strike suits. *See*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK     Document 165-3     Filed 07/07/2006     Page 7 of 10

Not Reported in F.Supp. Page 7
Not Reported in F.Supp., 1996 WL 363128 (S.D.N.Y.), RICO Bus.Disp.Guide 9105
**(Cite as: Not Reported in F.Supp.)**

DiVittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242, 1247 (2d Cir.1987).

"To satisfy Rule 9(b)'s particularity requirement, the complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir.1989). Where multiple defendants are asked to respond to allegations of fraud, Rule 9(b) requires that the complaint inform each defendant of the nature of his alleged participation in the fraud. See DiVittorio at 1247.

**\*9** Although Rule 9(b) permits state of mind to be averred generally, the allegations must nevertheless give rise to a "strong inference" that the defendant knew the statements to be false, see Wexner v. First Manhattan Co., 902 F.2d 169, 173 (2d Cir.1990), and intended to defraud plaintiff. Ouaknine v. MacFarlane, 897 F.2d 75, 79 (2d Cir.1990). "A common method for establishing a strong inference of scienter is to allege facts showing a motive for committing fraud and a clear opportunity for doing so." Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46, 50 (2d Cir.1987), cert. denied, 484 U.S. 1005 (1988). When motive is not apparent, the strength of the circumstantial allegations must be correspondingly greater. Beck at 50.

It is beyond dispute that the stringent pleading requirements of Rule 9(b) apply to RICO predicate acts sounding in fraud. As one court has noted, "[i]t is particularly important to require such specificity when the fraud allegations also constitute the predicate acts underlying RICO claims...." Newman v. Rothschild, 651 F.Supp. 160, 162 (S.D.N.Y.1986) (citations omitted).[FN4]

> FN4. In their reply brief, the moving defendants argue in passing that the other alleged predicate acts, none of which sound in fraud, should also be dismissed pursuant to Rule 9(b). However, in McLaughlin v. Anderson, 962 F.2d 187, 194 (2d Cir.1992), the court of appeals determined that the heightened pleading requirements of Rule 9(b) apply only to RICO predicate acts based on fraud or mistake. See also Michael Anthony Jewelers v. Peacock Jewelry, 795 F.Supp. 639, 645 n. 5 (S.D.N.Y.1992). Other allegations of racketeering are subject to the more lenient pleading requirements of Rule 8(a).

The moving defendants do not suggest that the allegations of money laundering, interstate transportation of stolen goods, and interstate travel in aid of racketeering do not meet Rule 8(a) standards. Thus, at this stage of the litigation, I consider those claims to be properly pleaded as against all defendants. It follows that my decision to dismiss the predicate acts of mail and wire fraud does not compel dismissal of the overarching RICO claim.

B. *Mail and Wire Fraud*

In the case at bar, the two fraud-based predicate acts which are subject to Rule 9(b) analysis are mail fraud and wire fraud, claims which arise under 28 U.S.C. § § 1341 and 1343 respectively. To plead these claims, [FN5] a plaintiff must allege: (1) the existence of a scheme to defraud; (2) that defendant used the United States mails or interstate wires to further that scheme; (3) that defendant did so with specific intent to defraud. See United States v. Wallach, 935 F.2d 445, 461 (2d Cir.1991), cert. denied, 124 L.Ed. 637 (1993). For a mailing to be in furtherance of a fraudulent scheme, "the use of the mails need not be an essential element of the scheme." Schmuck v. U.S., 489 U.S. 705, 710 (1989). "It is sufficient for the mailing to be 'incident to an essential part of the scheme,' or 'a step in [the] plot.' " Id. at 710-11 (quoting Badders v. U.S., 240 U.S. 391, 394 (1916)). In this regard, it is not necessary that the telephone calls or mailings contain misrepresentations, so long as they advance the purpose of executing the scheme. See Schmuck at 715; Center Cadillac v. Leumi Trust Co., 808 F.Supp. 213, 228 (S.D.N.Y.1992).

> FN5. The law governing violations of the mail fraud statute is equally applicable to the wire fraud statute. See Carpenter v. U.S., 484 U.S. 19, 25 n. 6 (1987) (dictum); U.S. v. Ventura, 724 F.2d 305, 310 (2d Cir.1983) (18 U.S.C. § 1343 parallels 18 U.S.C. § 1341).

A defendant accused of mail or wire fraud need not be the one who sent the mailing or placed the call. He need only have reasonably foreseen that a third-party would use the mails or interstate wires in the ordinary course of business as a result of defendant's acts. See U.S. v. Bortnovsky, 879 F.2d 30, 36 (2d Cir.1989).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 8
Not Reported in F.Supp., 1996 WL 363128 (S.D.N.Y.), RICO Bus.Disp.Guide 9105
**(Cite as: Not Reported in F.Supp.)**

For a mail or wire fraud claim to withstand dismissal, each element of the claim must be pled in accordance with Rule 9(b)'s particularity requirements. As an initial matter, then, the complaint must allege the existence of a fraudulent scheme with the requisite specificity: "where the fraudulent scheme is premised upon an inadequate pleading of common law fraud, the allegations of mail and wire fraud must fail." Morin, 711 F.Supp. at 105. Thus, the plaintiff must specify what statements were made, who made them, when and where, and the respect in which those statements were fraudulent. See Marsh, 823 F.Supp. at 217; Equitable Life Assurance Society v. Alexander Grant & Co., 627 F.Supp. 1023, 1029 (S.D.N.Y.1985).

*10 With respect to the second prong of wire and mail fraud, *i.e.* that the defendant use the mails or interstate wires in furtherance of the scheme, there is no need to specify the time and place of each mail or wire communication as long as the mechanics of the underlying scheme are pled with particularity. See Center Cadillac, 808 F.Supp. at 229. However, plaintiff must specifically allege the nature of each mail or wire communication, see Connolly, 763 F.Supp. at 13, and identify the role of the communications in furthering defendants' fraudulent scheme. See McLaughlin v. Anderson, 962 F.2d 187, 191 (2d Cir.1992). Where there are multiple defendants, connections must be drawn between the various defendants and the alleged communications. *See Connolly* at 13.

Applying these principles to the complaint at bar, I find that the allegations of mail and wire fraud are not sufficiently particular to withstand Rule 9(b) dismissal. At the first level, plaintiff fails to supply certain particulars with respect to the fraudulent scheme. The present complaint alleges fraudulent statements consisting of false invoices. Those invoices were allegedly submitted by DeFonseca to AAA, presumably at AAA's New York City headquarters. Thus, as it now stands, the complaint pleads the "what," "who," and "where," elements of the fraudulent scheme. However, it neglects to specify when the invoices were submitted, except to say that AAA received several of them over a three-year time span. This is clearly deficient under Rule 9(b). The requirements of that rule are designed in part to enable the defendants to formulate their defense. Presumably, plaintiff received several supplier invoices during the three-year time frame, some of which were legitimate, others of which are believed to have been counterfeit. In preparing their defense, the defendants are entitled to some indication as to which invoices plaintiff considers fraudulent. That indication would best be provided by supplying the dates on the invoices, or, if that information is for some reason unavailable to plaintiff, the approximate dates when the invoices were received.

Even setting aside this pleading deficiency, the complaint does not properly allege the moving defendants' use of the mails or interstate wires in furtherance of the fraudulent scheme. As plaintiff's motion papers indicate, the moving defendants' use of the mails was, for the most part, limited to their receipt of bank statements for the so-called "fraudulent accounts." *See* Complaint at ¶ 17. There is no allegation as to how these mailings furthered the scheme to defraud. Plaintiff speaks to this in its memorandum of law. But of course, arguments in a brief do not a pleading make. Without such allegations in the complaint, I am unwilling to surmise what contributory role, if any, the bank mailings played in defendants' alleged fraudulent scheme, and whether in fact the mailings were truly "incident to an essential part" of the scheme.

*11 Plaintiff's only other averments of mail fraud state that

DeFonseca, Maloney, Kissoon and Zea have ... knowingly caused the Fraudulent Checks and/or Fraudulent Invoices and bank statements regarding the Fraudulent Accounts to be sent and/or collected through the United States mails for the purpose of executing Defendants' schemes to defraud....

Complaint at 31. This sweeping allegation, which essentially tracks the language of § 1341, impermissibly groups the defendants, without specifying who caused what to be mailed. Thus, it too is insufficient to sustain the mail fraud claim under Rule 9(b).

Defendants' use of the interstate wires is pled with even less particularity. The extent of these allegations is that

Maloney, Kissoon, Zea and DeFonseca ... engaged in numerous interstate telephonic communications between New York and New Jersey. In particular, Defendants regularly placed calls between the AAA's offices in New York, and the home of Maloney and Kissoon in Englewood, New Jersey.

Complaint at ¶ 18. Again, plaintiff collectivizes the defendants, without specifying who called who and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 9
Not Reported in F.Supp., 1996 WL 363128 (S.D.N.Y.), RICO Bus.Disp.Guide 9105
**(Cite as: Not Reported in F.Supp.)**

the substance of their conversations. Moreover, plaintiff neglects to plead how the telephone calls advanced the scheme to defraud. Thus, the wire fraud claim meets the same fate under Rule 9(b) as the mail fraud claim.[FN6]

> FN6. The moving defendants have argued that the complaint does not sufficiently allege scienter on their part. So that no mistake be made, I note that I do not dismiss any of the fraud claims on this basis. Plaintiff has sufficiently alleged the moving defendants' knowing involvement in the scheme. According to the complaint, Maloney incorporated corporations and opened accounts for the purpose of accepting and depositing the checks. Then he and Kissoon, who together controlled the accounts, would distribute the proceeds, keeping a share for themselves. These allegations expose a clear financial motivation for Maloney and Kissoon to become involved in the scheme, and an open avenue for that involvement. In this way, they give rise to a "strong inference" of scienter. See Beck, 820 F.2d at 50.

C. *Common Law Fraud*

The complaint asserts a claim against the moving defendants for common law fraud. As I have already noted, plaintiff does not adequately specify the timing of the alleged fraudulent misrepresentations. Thus, the common law fraud cause of action does not pass muster under Rule 9(b). Even if it did, the moving defendants would nevertheless be entitled to dismissal of that claim pursuant to Rule 12(b)(6). Although the complaint describes Maloney and Kissoon's involvement in the overarching scheme, no where does it allege that either of them made a material misrepresentation to plaintiffs. This, of course, is a necessary element of a cause of action for fraud. *See* National Westminster Bank USA v. Weksel, 511 N.Y.S.2d 626, 628 (A.D.1st), *appeal denied,* 519 N.Y.S.2d 1027 (1987); Glatzer v. Scappatura, 470 N.Y.S.2d 675, 676 (A.D.2d 1984).[FN7] And it was an element of the fraudulent scheme which fell exclusively on the shoulders of DeFonseca. Thus, while the allegations at bar may suffice to state a claim against the moving defendants for aiding and abetting a fraud, *see* Weksel, 511 N.Y.S.2d at 630, they do not state a claim against them for committing one directly. I therefore dismiss the fraud claim against them pursuant to Rule 9(b), or alternatively, Rule 12(b)(6).

> FN7. I assume that New York law governs the common law fraud claims. Even if it does not, I am confident that this principle would apply regardless of which state's law governs.

IV. *Motion to Strike*

The moving defendants move to strike an allegation in the complaint concerning Maloney's incarceration for bank fraud.

Under Rule 12(f), a court may, on motion, "order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter." As a general matter, "motions to strike are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter." *von Bulow By Auersperg v. von Bulow,* 657 F.Supp. 1134, 1146 (S.D.N.Y.1987) (citation and internal quotation marks omitted). Thus, a Rule 12(f) motion to strike "will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir.1976) (citations omitted)

*12 The moving defendants have not convinced me that the fact of Maloney's incarceration for bank fraud will undoubtedly be irrelevant and inadmissible at trial. At the very least, that information may be admissible to impeach Maloney's credibility, should he testify. See Fed.R.Evid. 609. Accordingly, I deny the motion to strike.

*Conclusion*

For the foregoing reasons, I deny the moving defendants' motion to dismiss the section 1962(c) civil RICO claim, and their motion to strike the allegation pertaining to Maloney's incarceration. However, I dismiss the section 1962(d) RICO conspiracy claim, the predicate allegations of mail fraud and wire fraud, and the common law fraud claim pursuant to Rule 9(b). I alternatively dismiss the common law fraud claim pursuant to Rule 12(b)(6).

Although defendant Zea has not joined in Maloney and Kissoon's motion, the foregoing analysis applies equally to the claims asserted against her. Thus, I

Not Reported in F.Supp.  Page 10
Not Reported in F.Supp., 1996 WL 363128 (S.D.N.Y.), RICO Bus.Disp.Guide 9105
**(Cite as: Not Reported in F.Supp.)**

dismiss the section 1962(d) claim and the fraud claims with respect to each of the remaining defendants.

Plaintiff is granted leave to replead the dismissed claims, if so advised. It should file and serve such amended complaint within forty-five (45) days of the date of the issuance of this Opinion and Order.

It is SO ORDERED.

S.D.N.Y.,1996.
American Arbitration Ass'n, Inc. v. DeFonseca
Not Reported in F.Supp., 1996 WL 363128 (S.D.N.Y.), RICO Bus.Disp.Guide 9105

Briefs and Other Related Documents (Back to top)

• 1:93cv02424 (Docket) (Apr. 14, 1993)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.