Westlaw

Not Reported in F.Supp.2d                                                                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 2066937 (S.D.N.Y.), RICO Bus.Disp.Guide 10,750
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents

United States District Court, S.D. New York.
ANNODEUS, INC., Plaintiff,
v.
Eugene CIARKOWSKI, Eugene R. Boffa, Jr., Steven Karel, ECW Management Group, and Boffa, Shaljian, Cammarata & O'Connor, L.L.C., Defendants.
No. 04 Civ.1633 DLC.

Sept. 16, 2004.

Douglas Gross, Gary Sachs, Hofheimer Gartlir & Gross, LLP, New York, New York, for Plaintiff.
Stephen R. Stern, Hoffinger Stern & Ross, LLP, New York, New York, for Defendants.

*OPINION AND ORDER*

COTE, J.

**\*1** Annodeus, Inc. ("Annodeus") brings this action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, alleging that defendants Eugene Ciarkowski, Eugene R. Boffa, Jr., Steven Karel, ECW Managment Group, and Boffa, Shaljian, Cammarata & O'Connor, L.L.C. ("BSCO") [FN1] violated RICO by conducting or participating in the conduct of the affairs of HHG, Corp. ("HHG") through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c), and by conspiring to do so, in violation of 18 U.S.C. § 1962(d).[FN2] The essence of Annodeus's RICO claim is that the defendants participated in a scheme to sell the same assets twice and that Annodeus, the second purchaser, was defrauded.

> FN1. BSCO is now known as Boffa, Shaljian, Cammarata, Nulty & Garrigan, L.L.C.

> FN2. Annodeus also alleges a series of state law claims over which it asserts that this Court has supplemental jurisdiction.

Annodeus filed its original complaint on February 26, 2004. As set forth at a telephone conference on June 11, the defendants' motion to dismiss was granted for failure to satisfy the continuity requirement of the RICO statute, and Annodeus was given leave to amend its complaint. In accordance with a July 14 scheduling order, Annodeus filed its amended complaint (the "Complaint") on July 9, 2004. Defendants have moved to dismiss the Complaint pursuant to Rules 9(b), 12(b)(6), and 19, Fed.R.Civ.P.[FN3]

> FN3. Annodeus argues that the defendants' claim for dismissal pursuant to Rule 9(b), Fed.R.Civ.P., should be denied because they failed to list this ground in their notice of motion. It is unnecessary to address this argument since the allegations of fraud contained in the Complaint meet this heightened pleading requirement.

*Background*

The following facts relevant to this motion to dismiss are taken from the complaint. Annodeus is a subsidiary of Acclaim Entertainment, Inc. ("Acclaim"), a corporation that creates and sells videogames. HHG is a corporation that did business as Extreme Wrestling Championship ("ECW"), which was one of three nationwide wrestling concerns in 1999. In or about January 1999, representatives of Acclaim approached HHG about obtaining a license to produce an ECW wrestling videogame. HHG was wholly owned by its founder, wrestling promoter Paul Heyman, but Annodeus was told during negotiations that he had turned over control of HHG's business and finances to ECW Management under the terms of a written agreement. ECW Management is a joint venture comprised of Ciarkowski, Karel, and Boffa, who was also the senior partner at BSOC.

In or about April 1999, representatives of Acclaim requested that HHG provide it with financial information so that Acclaim could determine whether it wished to invest in or lend money to HHG. On April 30, 1999, Ciarkowski, on behalf of ECW Management, sent a facsimile containing financial projections for HHG's performance for the remainder of the year. Ciarkowski forecast a profit of $500,000, whereas HHG lost at least $2,500,000 during the relevant period. Annodeus alleges that ECW Management knowingly provided Acclaim with

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d       Page 2
Not Reported in F.Supp.2d, 2004 WL 2066937 (S.D.N.Y.), RICO Bus.Disp.Guide 10,750
**(Cite as: Not Reported in F.Supp.2d)**

fraudulent projections in order to obtain financing for HHG. The April 30 facsimile was sent across state lines.

In July 1999, after a series of meetings, Annodeus and HHG entered into an agreement pursuant to which Annodeus acquired licensing rights to an ECW wrestling video game. Approximately one month later, Annodeus acquired fifteen percent of HHG's equity in exchange for $1,500,000 and a $1,000,000 loan. Soon, however, Annodeus was informed that HHG was having serious cash flow difficulties.

**\*2** In January 2000, Heyman and Ciarkowski requested an additional loan of $175,000 and assured Annodeus that HHG was about to receive over one million dollars in proceeds from the airing of three wrestling shows on pay-per-view television and that these proceeds (the "PPV proceeds") would be available as repayment. Annodeus subsequently wired $175,000 across state lines and HHG executed a Promissory Note ("Note") by which it agreed to repay the $175,000 principal, together with interest at 10.5% per year, by February 10, 2000. The Note was faxed across state lines.

In addition, Ciarkowski arranged for Heyman to execute a Purchase and Sale Agreement ("Agreement") whereby HHG sold, transferred and assigned to Annodeus all of HHG's right, title and interest in the PPV proceeds. The Agreement represented and warranted that the PPV proceeds were not previously assigned or encumbered, that they were the property of HHG, and that HHG could be subject to criminal liability for any misappropriation of the PPV proceeds.

In or around the week of February 7, Scoroposki received another phone call from Heyman and Ciarkowksi stating that HHG again needed $175,000 to meet the upcoming week's payroll, as well as additional time to repay the $175,000 Note. Annodeus agreed to both of these requests. On February 11, Ciarkowski and Karel traveled to Acclaim's New York office, and Ciarkowski, as an "Authorized Signatory" of HHG, executed an Amended and Restated Promissory Note ("Second Note"), by which it agreed to pay the principal sum of $350,000, with interest at 10.75% per year, by June 30, 2000. Ciarlowski also executed a second Purchase and Sale Agreement ("Second Agreement"), which sold, transferred and assigned to Annodeus all of HHG's right, title and interest in PPV proceeds from the September and November 1999 and January 2000 ECW presentations. As before, HHG represented that the PPV proceeds were not previously assigned or encumbered. Annodeus wired the $175,000 across state lines.

Annodeus agreed to lend HHG another $175,000 on or about February 17, and a Third Note was executed by Ciarkowski on behalf of ECW Management. As before, the Third Note, now for $525,000, sold, transferred and assigned all of HHG's right, title and interest in the PPV proceeds and warranted that the proceeds were not previously assigned or encumbered. The Third Note was sent across state lines. Annodeus alleges that Ciarkowski executed and delivered the Second and Third Notes with the authorization of Karel and Boffa, the other members of ECW Management.

Contrary to the representations in all three Notes, however, a portion of the PPV proceeds had already been sold to Quantum Corporate Funding, Ltd. ("Quantum"). A September 27, 1999 agreement transferred $300,000 of the September proceeds to Quantum, and a November 15, 1999 agreement signed by Heyman and certified by Ciarkowksi transferred $275,000 of the November proceeds to Quantum. Pursuant to a September 1999 trust agreement between Boffa and Quantum, Boffa was to collect the proceeds as trustee for Quantum.[FN4]

> FN4. The Complaint also includes allegations that defendants participated in two separate schemes to defraud Quantum and Craig Evan Associates, Inc. ("CEA"), a Quantum affiliate. First, Annodeus alleges that between February and May 1999, the defendants misappropriated over $80,000 in proceeds owed Quantum from a pay-per-view event. Second, the Complaint alleges that in September 1999 Boffa and BSCO misappropriated over $300,000 in proceeds owed to CEA. Annodeus alleges that in both schemes, Boffa and BSCO used the United States mails and wire communications and caused funds to be transported across state lines, and that these incidents provide further evidence that defendants engaged in a pattern of racketeering activity.

**\*3** Annodeus claims that on April 16, 2000, the defendants obtained and converted a $300,000 advance on the January 2000 PPV proceeds and that Ciarkowski sent two additional checks to Quantum: one on May 19 in the amount of $56,991.66 and a second on July 11 for $49,433.72. Annodeus alleges

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK    Document 165-4    Filed 07/07/2006    Page 3 of 4

Not Reported in F.Supp.2d                                                                                          Page 3
Not Reported in F.Supp.2d, 2004 WL 2066937 (S.D.N.Y.), RICO Bus.Disp.Guide 10,750
**(Cite as: Not Reported in F.Supp.2d)**

that the defendants received and converted an additional check dated February 26, 2001. Annodeus claims that between February 25 and April 5, the defendants converted all of the PPV proceeds sold to Annodeus. HHG filed for bankruptcy on April 5, 2001, and has failed to pay any of the $525,000 due to Annodeus under the terms of the Third Note.

*Discussion*

Under the liberal pleading standard set forth in Rule 8(a), Fed.R.Civ.P., a complaint is sufficient if it provides "fair notice of what the plaintiff's claim is and the grounds upon which it rests ." *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 512 (2002). In construing the complaint, the court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Id.* A court may dismiss an action pursuant to Rule 12(b)(6) only if "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997) (citations omitted). Under the standard set forth in Rule 8, Fed.R.Civ.P., "a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz,* 534 U.S. at 514 (2002).

Under Rule 9(b), however, allegations of fraud must be plead with particularity. *Rombach v. Chang,* 355 F.3d 164, 170 (2004). To comply with the requirements of Rule 9(b), an allegation of fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* (citation omitted).

A plaintiff in a RICO action must plead a "pattern of racketeering activity," consisting of "at least two acts of racketeering activity" committed in a 10-year period. 18 U.S.C. § 1961(5); *DeFalco v. Bernas,* 244 F.3d 286, 320 (2d Cir.2001). "To establish a pattern, a plaintiff must also make a showing that the predicate acts of racketeering activity are related *and* that they amount to or pose a threat of continued criminal activity." *Cofracredit v. Windsor Plumbing Supply Co. Inc.,* 187 F.3d 229, 242 (2d Cir.1999) (citing *H.J., Inc. v. Northwestern Bell Tel. Co .,* 492 U.S. 229, 239 (1989) (emphasis in original)).

The continuity requirement may be satisfied by proof of either "closed-ended continuity" or "open-ended continuity." *DeFalco,* 244 F.3d at 320. To demonstrate closed-ended continuity, a plaintiff must prove "a series of related predicates extending over a substantial period of time" amounting to continued criminal activity. *Id.* at 321 (citing *H.J., Inc.,* 492 U.S. at 242); *see also GICC Capital Corp. v. Technology Finance Group, Inc.,* 67 F.3d 463, 467 (2d Cir.1995). In passing RICO, Congress was concerned with "long-term criminal conduct." *H.J., Inc.,* 492 U.S. at 242. "The duration of a pattern of racketeering activity is measured by the RICO predicate acts the defendants commit," and "[p]redicate acts extending over a few weeks or months do not satisfy this requirement." *DeFalco,* 244 F.3d at 321 (citations omitted). In measuring the continuity of an alleged conspiracy to violate RICO, a court also considers agreed-upon predicate acts that, had they been carried out, would have constituted a pattern of racketeering activity. *Cofracredit,* 187 F.3d at 244-45. Since the Supreme Court decided *H.J., Inc.* in 1999, the Second Circuit has never held that a period spanning less than two years is sufficient to constitute a substantial period of time. *See DeFalco,* 244 F.3d at 321; *Cofracredit,* 187 F.3d at 242; *GICC,* 67 F.3d at 467.

**\*4** The plaintiff must provide a basis for a court to conclude that the defendants' activities are "neither isolated nor sporadic." *GICC,* 67 F.3d at 467 (citation omitted). The primary factor used to determine whether closed-ended continuity exists is the period of time over which the predicate acts occurred, although other factors, including the number and variety of the predicate acts, the number of participants and victims, and the presence of separate schemes, are also relevant. *Cofracredit,* 187 F.3d at 242.

Allegations of fraud contained in the Complaint satisfy the heightened pleading requirement of Rule 9(b). The Complaint therefore pleads of pattern of racketeering activity with respect to Annodeus that began at least as early as the fascimile transmission containing the fraudulent projections on April 30, 1999, and concludes when HHG filed for bankruptcy on April 5, 2001. This period of nearly two years is sufficient to plead a scheme of racketeering extending over a substantial period of time, in satisfaction of the closed-ended continuity requirement. Were it necessary to examine other factors, it is worth noting that Annodeus has also claimed that the defendants participated in two additional schemes to misappropriate funds

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                 Page 4
Not Reported in F.Supp.2d, 2004 WL 2066937 (S.D.N.Y.),   RICO Bus.Disp.Guide 10,750
**(Cite as: Not Reported in F.Supp.2d)**

belonging to Quantum and to CEA, a Quantum affiliate.[FN5] The Complaint alleges that the defendants began misappropriating funds owed Quantum in February 1999, over two years before HHG declared bankruptcy.

>   FN5. In their motion to dismiss, the defendants argue that this case should be dismissed under Rule 19, Fed.R.Civ.P., for failure to join HHG as an indispensable party. Defendants acknowledge, however, that HHG was liquidated in a Chapter 7 proceeding and is no longer a viable entity. The defendants also argue that this action should be dismissed under the doctrine of laches because Annodeus delayed in commencing this action. The prevailing rule is that laches may not bar a suit for damages pursuant to a federal statute when the action is brought within the specified statute of limitations. *Ivani Contracting Corp. v. City of New York,* 103 F.3d 257, 260 (2d Cir.1997). A four-year statute of limitations applies to actions brought pursuant to RICO. *Pearl v. City of Long Beach,* 296 F.3d 76, 80 n .1 (2d Cir.2002).

*Conclusion*

The defendants' motion to dismiss is denied.

SO ORDERED:

S.D.N.Y.,2004.
Annodeus, Inc. v. Ciarkowski
Not Reported in F.Supp.2d, 2004 WL 2066937 (S.D.N.Y.),   RICO Bus.Disp.Guide 10,750

Briefs and Other Related Documents (Back to top)

• 1:04cv01633 (Docket) (Feb. 26, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.