

Not Reported in F.Supp.2d                                                                                          Page 1
Not Reported in F.Supp.2d, 2000 WL 1010285 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Ricky BAKER, Plaintiff,
v.
David A. DORFMAN, P.L.L.C. and David A.
Dorfman, Defendants.
**No. 99Civ.9385(DLC).**

July 21, 2000.

Gregory Antollino, New York, NY, for Plaintiff.
Clyde Jay Eisman, New York, NY, for Defendants.

*OPINION and ORDER*

COTE, J.
**\*1** This dispute arises out of plaintiff's efforts to collect a judgment entered against attorney David A. Dorfman ("Dorfman") in a prior action. Both plaintiff Ricky Baker ("Baker") and defendants David A. Dorfman, P.L.L.C. (the "PLLC") and David A. Dorfman ("Dorfman") have moved for summary judgment. Defendants have also cross-moved for various other relief. For the reasons discussed below, plaintiff's motion is granted and defendants' motions are denied.

BACKGROUND

The following facts are either undisputed or as described by the plaintiff, unless otherwise noted.[FN1] In a prior action before this Court, *Baker v. Dorfman,* 97 Civ. 7512(DLC), Baker asserted that Dorfman had committed legal malpractice and fraud. In an Opinion of September 17, 1998, the Court granted Baker's motion for partial summary judgment, establishing Dorfman's liability for malpractice. Following a jury trial in November 1998, Dorfman was found to have also committed fraud. The jury awarded Baker $385,000 in damages and the judgment was entered on November 30, 1998. By Order of April 5, 1999, the Court amended the judgment to add $11,178.05 in legal expenses and $7,312.50 in prejudgment interest. The amended judgment of $403,483.55 was entered on April 9, 1999. Dorfman has appealed from that judgment but has not filed a supersedeas bond to stay enforcement of the judgment.

FN1. All of the facts presented by the plaintiff are essentially undisputed for the following reasons. The defendants' 56.1 statement submitted in opposition to plaintiff's motion consists almost entirely of admissions or conclusory denials not supported by citations to evidence. In response to many of plaintiff's assertions, defendants state merely that they "lack information to respond," even when any such information would be within the defendants' control, for example, information as to the amounts paid to Baker on the judgment. Local Civil Rule 56.1(a) requires that the party opposing a motion for summary judgment include a "separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." Furthermore, "[e]ach statement of material fact ... must be followed by citation to evidence which would be admissible." Local Civil Rule 56.1(d). The defendants' 56.1 statement is entirely inadequate. As a consequence, nearly all of the material facts set forth in plaintiff's 56.1 statement are deemed admitted. *See* Local Rule 56.1(c). In addition, the Court has reviewed the evidence submitted by the defendants and finds that it provides no basis upon which the defendants may dispute the majority of the plaintiff's assertions.

In 1999, Dorfman paid a total of no more than $2,280.21 toward the judgment. Of that amount, $1,280.21 was tendered in response to a writ of execution that plaintiff filed with the Sheriff of New York County. The defendants assert that from April 12, 1999 to December 31, 1999, Dorfman earned approximately $35,416.67, of which $3,541.67 was subject to garnishment.[FN2]

FN2. Other than "Judicial Notice," the defendants cite to no evidence of these earnings nor do they assert that the amount subject to garnishment was actually garnished.

At the time the judgment and amended judgment

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2000 WL 1010285 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

were entered, Dorfman had certain assets, including a small amount of cash, personal belongings of insignificant value, office equipment, and stock in IBM and Disney. The stock was held in trust for Dorfman with his mother as trustee. Dorfman sold the stock sometime at the end of the summer of 1999, and received close to $2,000 for it, which he did not pay to Baker, but instead turned over to his attorney. Dorfman has stated that when the judgments were entered, one of his only major assets was his goodwill as an attorney, in other words, the value of his name in the community. At that time, Dorfman was practicing law as a sole proprietor in New York County.

On April 12, 1999, six days after the Court denied a motion Dorfman had made for a new trial and three days after the amended judgment was entered, Dorfman filed a Certificate of Articles of Organization for David A. Dorfman, P.L.L.C. The PLLC is a separate legal entity from Dorfman against which plaintiff does not possess a judgment. Accordingly, plaintiff is presently legally incapable of executing the judgment against the PLLC.

In August 1999, plaintiff restrained certain of Dorfman's bank assets, but despite the restraint, those assets were eventually taken by another of Dorfman's creditors, New York University. At the time of the restraint, Dorfman was still operating his law practice under his own name. Shortly after his assets at the Bank of New York were restrained, Dorfman opened an account at Citibank under the name and tax identification number of the PLLC and began to operate his law practice as the PLLC. Dorfman opened the account at Citibank in the PLLC's name on August 30, 1999. On the application, he listed the same address, 36 West 44th Street, as his home and business address. The PLLC held its first "Management Committee" meeting on September 1, 1999. Dorfman's business assets now flow entirely through accounts set up under the name of the PLLC. On September 1, 1999, plaintiff brought this action against the PLLC in an effort to collect on the judgment.

**\*2** Dorfman has asserted that he formed the PLLC to facilitate his paying of the judgment owed to the plaintiff, to operate in a more professional manner, to have the benefit of the Management Committee and to have a corporate structure as a means to separate his personal assets from the future operation of his law firm. The PLLC is engaged in an "elder law" practice, as was Dorfman's sole proprietorship for several years prior to the reorganization. As noted,

the sole proprietorship was located at 36 West 44th Street, New York, New York, the same address listed for the PLLC on its Articles of Organization and on its Application for Employer Identification Number.[FN3] For reasons unrelated to the reorganization, the PLLC moved sometime in late September or early October 1999. Its checks dated up to at least January 3, 2000, however, still list the old address. The PLLC is currently located at 342 Madison Avenue, New York, New York.

> FN3. According to his statements on that Application, Dorfman did not start a new business, but changed the type of organization to PLLC. An August 30, 1999 credit card application submitted by the defendants requests new credit cards because of a corporate name change.

Dorfman is the sole member of the PLLC. He does not practice law outside of the PLLC. The PLLC has from seven to nine employees-the same people as were employed by Dorfman's prior business except for one person whom the PLLC's management committee fired for cause.[FN4] The PLLC has the same clients as did Dorfman's prior business except for those who have since died, moved, or gone elsewhere for representation.[FN5] The "mission statement" of the PLLC is the same as Dorfman's mission statement when he practiced on his own. [FN6] All of Dorfman's goodwill as an attorney exists within the PLLC. Dorfman transferred his goodwill from a business as a sole practitioner to the PLLC. The letterhead on a January 6, 2000 letter from Dorfman reads prominently "Law Office of David Dorfman."

> FN4. As of December 1999, Dorfman stated that another employee, Jermaine Thompson, was on "hiatus." Records and other evidence, however, indicate that Mr. Thompson is currently working for the PLLC. Mr. Thompson drops off and picks up papers at this Court's Chambers and notarizes documents for the defendants. He has even sat with defense counsel during conferences on this case. There is a paycheck to him from the PLLC dated January 3, 2000 and he is listed on the letterhead of a January 6, 2000 letter.

> FN5. Defendants have "denied" this statement without further elaboration or citation to evidence. It is therefore deemed

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

admitted.

> FN6. Defendants have "denied" this statement without further elaboration or citation to evidence. It is therefore deemed admitted.

According to Dorfman, the PLLC has a four-member Management Committee. None of its members are listed in the PLLC's Articles of Organization. The September 1, 1999 minutes list the following members: Dorfman; Gail Goldfarb, a paralegal at another law firm; Randal Fippinger of Goldman Sachs; and Duoak Lee, a legal assistant and the PLLC's office manager.[FN7] The typed minutes include topics such as "Our Star Player Wants a Raise," "Saving for a Rainy Day" and "Many Hands Make the Work Light." [FN8] The Committee apparently discussed providing pay raises for employees and establishing a reserve fund. Dorfman has not filed documents regarding the reorganization with the New York State Court of Appeals, the Appellate Division, First Department, or the Office of Court Administration.

> FN7. In May of 1999, Duoak Lee was an intern for Dorfman and an undergraduate at New York University. She was working approximately twelve hours per week doing tasks such as preparing memos and organizing case files. The January 6, 2000 letterhead lists Ms. Lee only as "Legal Assistant."

> FN8. At his deposition, Dorfman stated that meeting minutes consisted of handwritten notes that he takes and that those notes are not regularly kept.

Although Dorfman stated that he formed the PLLC in part to facilitate payment of the judgment, the judgment remains unsatisfied. Dorfman stated that the formation of the PLLC allowed him to become an employee so that he could make regular payments from his salary toward the judgment, but has admitted, however, that nothing had prevented him from making payments from his income as a sole proprietor and that it was not necessary to form the PLLC to make payments on the judgment. Although Dorfman's position in this litigation is that the PLLC is not a successor to Dorfman and therefore is not liable on the judgment, the few checks that have been issued to plaintiff's attorney are drawn on the PLLC's account.

**\*3** Dorfman was making $50,000 annually in 1999. In January 2000, Dorfman and other members of the Management Committee voted to give Dorfman and other members of his staff pay increases. As of February 2000, Dorfman was earning $72,000 annually. The PLLC employs between seven to nine people to whom it pays an aggregate of anywhere from $150,000 to $200,000 in salaries.[FN9] Dorfman also pays accounting fees in the amount of approximately $13,000 per year. A March 27, 2000 letter from a financial consultant to Dorfman indicates that the PLLC is in the process of creating a retirement plan for its employees.

> FN9. The payroll statements list the employer as "David A. Dorfman, Attorney at Law."

Although the PLLC apparently generates substantial revenue, Dorfman has not made anything other than token efforts to pay the judgment. As he has admitted, one reason for this is that he believes that the judgment will be overturned by the Second Circuit. Even if the judgment is affirmed, however, Dorfman is uncertain whether he will take additional steps to pay it. Interest is growing on the judgment at the rate of at least $20,000 per year. Some payments may have been paid to the New York County Sheriff in 2000, totaling approximately $1,000.[FN10] According to an "Income Execution-Employer Default Notice" from the Sheriff, as of March 3, 2000, Dorfman had made no payments on the judgment in at least sixty days. The Notice indicates a balance due of $459,941.15.

> FN10. Defendants assert that they lack sufficient information to respond to this statement. It is unclear why such information would not be available to the defendants. This statement is therefore deemed admitted.

Dorfman has other financial concerns aside from the unpaid judgment. He did not keep current on his malpractice insurance, and it was canceled for nonpayment on June 23, 1999. As a result, the PLLC currently has no malpractice coverage.[FN11] As of December 1999, Dorfman himself was unaware as to whether or not he has malpractice insurance. Dorfman has bounced checks on his business accounts. He has had the assets of his business accounts attached by creditors other than Baker. He is

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1010285 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

also frequently sued by creditors. Other than the judgment that Baker possesses against Dorfman, however, there are no business obligations that were honored by Dorfman the sole proprietor that are not honored by the PLLC.[FN12]

> FN11. An application for malpractice insurance apparently completed sometime after September 1999 (it is signed by Dorfman but not dated) merits discussion. It lists the firm name as "Law Office of David Dorfman (David Alan Dorfman)." In response to a question as to whether the firm name has changed in the past five years, "no" has been checked. In response to a question as to whether a name change or organizational change is pending, "no" is checked.

> FN12. Defendants object to this statement as "confusing and ambiguous" and as requesting conclusions of law. It is none of these. This statement is in any event already deemed admitted as a result of defendants' failure to respond to plaintiff's Requests for Admission.

Plaintiff has restrained Dorfman's IRA account in the amount of $4,107.94. All deposits to the IRA were made after the complaint in the underlying complaint was filed.

DISCUSSION

Plaintiff seeks the following relief at this time: a declaration that the transfer of Dorfman's goodwill to the PLLC was a fraudulent transfer; attorney's fees pursuant to New York Debtor and Creditor Law § 276-a; a declaration that the PLLC is the successor in interest to Dorfman and therefore liable on the judgment; an assignment to plaintiff under New York Limited Liability Company Law § 607(a) of a 75% interest in the PLLC to be reduced on a sliding scale until the judgment is satisfied; appointment of plaintiff, through his attorney, as receiver of the PLLC pursuant to New York Civil Practice Law and Rules ("CPLR") § 5228; delivery, pursuant to CPLR § 5225, of all assets held in the name of Dorfman in accounts at the Bank of New York that are currently restrained under CPLR § 5222; and immediate payment in the amount of $2,719.79 to reflect the balance of ten percent of Dorfman's income for 1999 that he has refused to pay voluntarily.

A. Summary Judgment Standard

**\*4** Summary judgment may not be granted unless the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the Court must view all facts in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc., 477 U .S. 242, 247 (1986); Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986).* When the moving party has asserted facts showing that the nonmovant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of his pleadings. Rule 56(e), Fed.R.Civ.P.; *see also Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir.1995).* In deciding whether to grant summary judgment, therefore, this Court must determine (1) whether a genuine factual dispute exists based on the evidence in the record, and (2) whether the fact in dispute is material based on the substantive law at issue.

B. Successor Liability

In his first cause of action, plaintiff seeks to declare the PLLC the successor in interest to Dorfman. Under New York common law, a successor business entity may be held liable for the torts of its predecessor if (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuance of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations.

*Schumacher v. Richards Shear Co., 464 N.Y.S.2d 437, 440 (1983)); see also Freeman v. Complex Computing Co., 931 F.Supp. 1115, 1121 (S.D.N.Y.1996), aff'd in part and rev'd in part on other grounds, 119 F.3d 1044 (2d Cir.1997); Grant-Howard Assocs. v. General Housewares Corp., 482 N.Y.S.2d 225, 227 (1984).* In *Grant-Howard,* the Court of Appeals noted that[t]he second and third items are based on the concept that a successor that effectively takes over a company in its entirety should carry its predecessor's liabilities as a concomitant to the benefits that it derives from the

good will purchased. This is consistent with the desire to ensure that a source remains to pay for the victim's injuries.

482 N.Y.S.2d at 227.

Defendants previously moved to dismiss this cause of action for failure to state a claim, arguing that the rules of successor liability do not apply to limited liability companies. In denying defendants' motion to dismiss this claim in a decision issued from the bench on December 20, 1999, the Court held that the rules of successor liability apply to limited liability companies. Aside from one footnote in which the defendants erroneously assert that a case cited by the Court in its Bench Opinion is inapplicable, the defendants make no further arguments in opposition to this cause of action. The Court therefore reaffirms its December 20 conclusions regarding the applicability of successor liability to limited liability companies.

**\*5** The New York Limited Liability Company Law ("LLC Law") was enacted only recently, in 1994, and although there is scant case law on point, there is no reason to doubt that the New York Court of Appeals will ultimately hold that the traditional rules of successor liability are applicable to limited liability companies. Indeed, with little discussion, the Second Circuit has so concluded in applying New York law. *See Libutti v. United States,* 178 F .3d 114, 124 (2d Cir.1999) (predecessor was a sole proprietorship and successor was a limited liability company). Other courts addressing the issue have reached the same conclusion. *See American Buying Ins. Servs. Inc. v. Kornreich & Sons,* 944 F.Supp. 240, 249 (S.D.N.Y.1996) (holding that successor liability applies to limited liability company for RICO claims); *C & J Builders & Remodelers, LLC v. Geisenheimer,* 733 A.2d 193, 197 (Conn.1999). Furthermore, the Second Circuit has stated that the common law rules of successor liability generally apply "regardless of whether the predecessor or successor organization was a corporation or some other form of business organization." *Graham v. James,* 144 F.3d 229, 240 (2d Cir.1998) (internal citation omitted). In *Graham,* following the commencement of the action against him, the defendant transferred all the business assets of his sole proprietorship to a corporation. The court strongly suggested that the successor corporation would be liable where the judgment debtor was its sole officer, director and shareholder.

In *C & J Builders,* the Supreme Court of Connecticut

was confronted with the question whether under Connecticut's limited liability company law, the transformation of a sole proprietorship into a limited liability company created obligations in the limited liability company previously held by the sole proprietorship. The Court was guided by a provision of Connecticut's limited liability company law providing in pertinent part that "[a] general or limited partnership that has been converted to a limited liability company ... shall be deemed for all purposes the same entity that existed before the conversion." *C & J Builders,* 733 A.2d at 196 (quoting Conn. Gen.Stat. § 34-200(a)). New York's LLC Law contains a nearly identical provision. *See* LLC Law § 1007(a) ("A partnership or limited partnership that has been converted pursuant to this chapter is for all purposes the same entity that existed before the conversion."). The Connecticut Supreme Court held that where a sole proprietorship converts to a limited liability company, all of the interests and obligations incurred by, or chargeable against, the sole proprietorship or its assets are transferred to the limited liability company by operation of law. Moreover, like the general partners in a converting general or limited partnership, the sole proprietor retains personal liability for all preconversion debts and obligations incurred by the sole proprietorship.

**\*6** *C & J Builders,* 733 A.2d at 197. Based on the case law discussed and the principles and purposes of successor liability, the Court concludes that under New York law, the principles of successor liability apply to limited liability companies.

As the Connecticut Supreme Court held in *C & J Builders* and as the Second Circuit suggested in *Graham,* where a sole proprietor converts his business to a corporate entity of which he is the sole officer, director and shareholder or member, the new business may be liable on the sole proprietor's obligations as a matter of law. Nonetheless, the Court addresses the elements of successor liability, as doing so underscores the propriety of this result here. There is no genuine issue of material fact as to whether the PLLC is a "mere continuance" of David A. Dorfman, the sole proprietor. Indeed, the "formation" of the PLLC amounts to nothing more than a name change, if even that. The name of the PLLC, David A. Dorfman, P .L.L.C., is nearly identical to that of the sole practitioner, David A. Dorfman. Dorfman even continues to use "Law Office of David Dorfman" on his letterhead. Under the rubric of the PLLC, Dorfman merely continues his former law practice, operating under the same mission statement, with the benefit of Dorfman's prior business assets, clients,

Not Reported in F.Supp.2d                                                          Page 6
Not Reported in F.Supp.2d, 2000 WL 1010285 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

staff and goodwill as an attorney. *Compare Winch v. Yates Am. Machine Co., Inc.,* 613 N.Y.S.2d 980, 982 (3d Dep't 1994) (applying successor liability where successor took over "not only ... fixed assets, but also ... trademark, customer lists and good will").

Just as Dorfman was the sole director of his former law practice, so is he the sole member and managing agent of the PLLC. Dorfman argues that the existence of the Management Committee is evidence that he alone does not control the PLLC. This Management Committee is a legally meaningless entity. Under LLC Law, all members and managers of a professional limited liability company must be listed on the articles of organization and must be licensed to practice in the particular profession. *See* LLC Law § 1203(b)(2). Any voting power possessed by a "person, other than another member of such limited liability company or professional who would be eligible to become a member of such limited liability company ... shall be void." LLC Law § 1207(c). In addition, although required to do so under LLC Law § 1203(c)(1), Dorfman has not filed documents regarding the reorganization with the New York State Court of Appeals, the Appellate Division, First Department, or the Office of Court Administration.

Finally, the facts of this case strongly support an inference that Dorfman formed the PLLC as a fraudulent attempt to escape his obligation to Baker. These facts include Dorfman's forming the PLLC shortly after the amended judgment was entered, his opening an account in the name of the PLLC shortly after his own account was restrained, and his largely pretextual reasons for forming the PLLC. In any case, there is no question that the PLLC is liable to Baker on the judgment as a successor in interest to Dorfman. Summary judgment is therefore granted in favor of the plaintiff on this claim.

### C. Assignment of an Interest in the PLLC and Appointment of a Receiver

**\*7** Plaintiff seeks to be assigned a 75% interest in the PLLC, thereby permitting him to reach 75% of the profits of the PLLC while leaving Dorfman with an adequate incentive to generate future profits. Limited Liability Law § 607(a) provides that
On application to a court of competent jurisdiction by any judgment creditor of a member, the court may charge the membership interest of the member with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the

membership interest. This chapter does not deprive any member of the benefit of any exemption laws applicable to his or her membership interest.

Defendants have not attempted to show that Dorfman is entitled to any exemptions and do not dispute that under this provision, the debt of a member of a PLLC may be enforced against the member's interest.

Defendants argue that this request for relief is not properly pled. In the second cause of action of the amended complaint, plaintiff seeks "relief under Limited Liability Law 607(a) charging the membership interest of the member with payment of the unsatisfied amount of the judgment with interest." This request for relief is therefore properly pled. There is no dispute that plaintiff is a judgment creditor and is entitled to assignment of an interest in the PLLC. Summary judgment for the plaintiff is therefore granted as to this claim.

Plaintiff seeks to be appointed as the receiver of the PLLC. CPLR § 5228(a) provides that
Upon motion of a judgment creditor, upon such notice as the court may require, the court may appoint a receiver who may be authorized to administer, collect, improve, lease, repair or sell any ... personal property in which the judgment debtor has an interest or do any other acts designed to satisfy the judgment.

It is within the Court's discretion whether or not to appoint a receiver. *See United States v. Vulpis,* 967 F.2d 734, 736 (2d Cir.1992). Appointment is appropriate where "leaving the property in the hands of the judgment debtor creates a risk of fraud or insolvency," or where "in the judgment of the court, a public auction is inadequate ... because it is unlikely to produce significant bids." *Id.* at 736. Furthermore, a creditor himself may be appointed as receiver, *see Vitale v. City of New York,* 583 N.Y.S.2d 445, 446 (1st Dep't 1992), but under CPLR § 5228(a), is not entitled to compensation.

The Court finds that the circumstances of this case warrant the appointment of a receiver. Dorfman has already been found to have committed fraud against the plaintiff. He has stated that he is unsure whether he will take steps to pay off the judgment, even if it is affirmed by the Second Circuit. He has other judgment creditors, bounces checks, and despite the fact that he was found to have committed malpractice, he does not currently have malpractice insurance. Despite his outstanding debts, Dorfman gives himself and his staff generous raises. Nor does

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 7
Not Reported in F.Supp.2d, 2000 WL 1010285 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

the Court believe that a public auction of the PLLC would generate any significant bids. Finally, as the plaintiff notes, disciplinary proceedings against Dorfman may be pending and the appointment of a receiver could serve to protect the PLLC and/or its assets when and if Dorfman is suspended from the practice of law, as a receiver could hire another attorney or sell the PLLC.

**\*8** In opposition to this request for relief, defendants argue only that this claim is improperly pled and that if the relief were to be granted, Dorfman's livelihood and that of his staff would be in jeopardy. As to the first argument, this Court held in denying defendants' motion to dismiss that the claim for any relief available under Article 52 of the CPLR was adequately pled. Defendants offer no reason for the Court to reconsider this ruling. Nor do the defendants state any specific way in which they are prejudiced by confronting this request for relief at this time. Plaintiff's motion provided defendants with adequate notice of the relief requested and moreover, constitutes sufficient notice under the relevant provisions of Article 52. As to defendants' argument that Dorfman's livelihood and that of his staff would be in jeopardy, this is simply not true. Dorfman would continue his legal practice, would receive a salary, and would receive 25% of the PLLC's profits.

Plaintiff's counsel has indicated that he is qualified to be the receiver and would not request any compensation from Dorfman. Defendants have not suggested an alternate arrangement. The Court therefore grants the relief requested by the plaintiff.

Plaintiff also requests that the Court order that Dorfman's Individual Retirement Account ("IRA") be turned over to him. Section 5205(c)(5) of the CPLR exempts IRAs from application to the satisfaction of a judgment except where additions to such accounts are "made after the date that is ninety days before the interposition of the claim on which such judgment was entered." Plaintiff has restrained Dorfman's IRA in the amount of $4,107.94. Plaintiff has shown that all deposits to the IRA were made after the complaint in the underlying case was filed. Defendants have made no argument in opposition to this claim. The Court finds therefore that plaintiff is entitled to this relief.

Finally, plaintiff requests an order that Dorfman make an immediate payment of $2,719.79 to reflect the balance of ten percent of his income for 1999 that he has refused to pay. Defendants argue only that this claim is not properly pled. As already noted,

plaintiff's request for any relief to which he is entitled under Article 52 of the CPLR was properly pled and the motion for summary judgment provided the defendants with adequate notice of the specific relief requested. Defendants have not offered evidence documenting all of Dorfman's alleged payments of 10% of his income. The Court therefore finds that plaintiff is entitled to the balance of ten percent of Dorfman's income that he has refused to pay. Because it is not clear how the requested amount was calculated, this claim will be referred to the Magistrate Judge for preparation of an appropriate order.

Plaintiff has also requested that the Court declare the transfer of the business of David A. Dorfman to the PLLC to be a fraudulent transfer. Having found that the PLLC is liable on the judgment as a successor to Dorfman, the Court declines to reach this alternate claim.

### D. Defendants' Motions

**\*9** On April 7, 2000, defendants apparently served, but did not file, a motion for summary judgment. Plaintiff has asserted and defense counsel has admitted that the defendants' April 7 motion papers did not include a 56.1 statement with that motion. On April 21, however, the defendants filed a motion for summary judgment. Attached to the filed motion is a certification by counsel that the motion was served by mailing a copy to the plaintiff on April 20. The filed motion includes a 56.1 statement dated April 20, 2000 and a supplemental affidavit of Dorfman dated April 18, 2000. The notice of motion itself is dated February 27, 2000. According to the plaintiff, plaintiff first received the defendants' 56.1 statement by regular mail on April 24, 2000: seventeen days after plaintiff received the defendants' motion, after plaintiff had completed his opposition, and four days prior to the deadline for opposition to summary judgment motions. Defendants' counsel had not requested an extension of time from the plaintiff or from the Court to serve its 56.1 statement. Defendants' original failure to serve the 56.1 statement and the improper filing of altered motion papers that were not timely served on the plaintiff when summary judgment motions were due are grounds for denial of the motion. *See* Local Rule 56 .1(a); *see also Monahan v. New York City Dep't of Corrections, No. 98-9067, 2000 WL 730286,* at [\*]13 (2d Cir. June 8, 2000) (discussing Rule 56.1).

In a further effort to remedy the original failure to

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1010285 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

serve a 56.1 statement, defense counsel has made a second motion for summary judgment and titled it a cross-motion. This second motion, however, is untimely under the Court's Scheduling Order of January 24, 2000, which required any dispositive motion to be served by April 7. Defendants have offered no reason why the Court should excuse these procedural errors. Indeed, defendants' counsel had to be reminded on previous occasions to comply with procedural rules. Defense counsel does suggest that the error was the result of time pressure. Counsel has offered this excuse on prior occasions, but now as then, made no effort to obtain an extension of time from the Court.

Defendants' cross-motion also requests that this case be reassigned to another District Court Judge pursuant to Rule 15 of the Rules for the Division of Business Among District Judges in the Southern District and that the case be stayed to permit counsel to move to withdraw. Defendants have not addressed these additional requests in a memorandum of law as required by Local Rule 7.1. This alone requires denial of the requests. The Court notes nonetheless that these requests are without merit. This action to enforce a judgment entered by this same Court was properly assigned pursuant to Rule 15, which provides that a case will be assigned as related "when the interests of justice and efficiency will be served." Furthermore, litigants have no standing under this Rule. *See, e.g., Irish Lesbian and Gay Organization v. Giuliani,* 918 F.Supp. 728, 729 (S.D.N.Y.1996).

**\*10** As to the request for a stay, the Court denied defendants' prior request for a stay, requiring by memo endorsement of April 6, 2000, that "[a]ny motion to withdraw as counsel shall include a separate memorandum of law with citation to legal authority." Although counsel has previously asserted that he and his clients have a conflict of interest resulting from a request for attorney's fees having been made against them, he has pointed to no evidence of such a conflict. Instead, counsel appeared to argue that any motion for sanctions directed against both client and attorney itself creates a conflict of interest. If this were true, then the sanctions regime, intended in large part to deter vexatious and dilatory litigation tactics, would itself be another weapon in the arsenal of an attorney or litigant seeking to delay: any motion for sanctions would provide grounds for counsel to withdraw, thus causing further delay. For these reasons, the defendants' requests are denied.

CONCLUSION

For the reasons stated, plaintiff's motion for summary judgment is granted as to the first cause of action, in that the PLLC is declared to be a successor in interest to David A. Dorfman and therefore liable on the judgment. The Court declines to reach the plaintiff's request that the Court declare the transfer of Dorfman's goodwill to the PLLC to be fraudulent. Summary judgment is granted as to the second cause of action in that plaintiff is assigned a 75% interest in the PLLC. Summary judgment is granted as to the third cause of action in that plaintiff, through his attorney, is appointed receiver of the PLLC. Defendants' motion for summary judgment and cross-motion for summary judgment and other relief are denied. The Clerk of Court shall enter judgment for the plaintiff in accordance with the rulings in this Opinion.

This case will be referred to the Magistrate Judge for resolution of the following outstanding issues: preparation of any orders necessary to effect the appointment of plaintiff's counsel as receiver of the PLLC; preparation of an order to the Bank of New York requiring turnover of Dorfman's IRA; and determination of the amount reflecting the balance of ten percent of Dorfman's 1999 income that is owed to Baker and the preparation of an appropriate order to Dorfman immediately to pay such amount. In addition, the parties shall contact the Magistrate Judge regarding any other issues as to the enforcement of the judgment.
SO ORDERED:

S.D.N.Y.,2000.
Baker v. Dorfman
Not Reported in F.Supp.2d, 2000 WL 1010285 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:99cv09385 (Docket) (Sep. 01, 1999)

END OF DOCUMENT