

Not Reported in F.Supp.2d                                                        Page 1
Not Reported in F.Supp.2d, 2002 WL 1465907 (S.D.N.Y.), 7 Wage & Hour Cas.2d (BNA) 1703
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents

United States District Court, S.D. New York.
Luis BOLANOS, et al., Plaintiffs,
v.
NORWEGIAN CRUISE LINES LIMITED, d/b/a
Norwegian Cruise Lines, et al., Defendants.
**No. 01 Civ. 4182(RMB) AJP.**

July 9, 2002.

Seamen who worked aboard vessel owner's cruise ships brought class action against owner and vessels, as in rem defendants, asserting claims for breach of contract, alleged violations of federal seaman's wage statutes, and injunctive relief. Defendants moved to dismiss. The District Court, Peck, United States Magistrate Judge, recommended that: (1) dismissal on limitations grounds was not warranted with respect to breach of contract claims arising under parties' first collective bargaining agreement (CBA) and pertaining to vessels flying Panamanian flag; (2) Bahamian one-year statute of limitations for wage claims applied to breach of contract claims asserted under CBAs providing for application of Bahamian law; (3) whether claims asserted under federal statutes were barred by doctrine of laches could not be decided on motion to dismiss; and (4) allegations asserted claims for penalty wages under federal seaman's wages statute.

Report and recommendation issued.

West Headnotes

**[1] Federal Civil Procedure 170A** 1832

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1827 Determination
                    170Ak1832 k. Matters Considered in General. Most Cited Cases
Collective bargaining agreements (CBAs) referenced by plaintiffs in amended complaint could be considered by court in deciding defendant's motion to dismiss.     Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A** 1832

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1827 Determination
                    170Ak1832 k. Matters Considered in General. Most Cited Cases
District court was not required to consider argument raised for first time in footnote in reply brief offered in support of motion to dismiss.

**[3] Seamen 348** 26

348 Seamen
    348k15 Wages
        348k26 k. Actions. Most Cited Cases
Dismissal on statute of limitations grounds was not warranted with respect to seamen's overtime pay claims under collective bargaining agreement that pertained to vessels which parties stipulated flew Panamanian flag during pertinent period, inasmuch as choice-of-law provision in CBA indicated that agreement was governed by laws of flag state and parties failed to provide evidence or information about the Panamanian statute of limitations. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[4] Seamen 348** 26

348 Seamen
    348k15 Wages
        348k26 k. Actions. Most Cited Cases
Bahamian one-year statute of limitations for wage claims applied to breach of contract claims seeking overtime pay that were asserted by seamen pursuant to collective bargaining agreements (CBAs) containing choice-of-law provisions requiring application of Bahamian law.  Bahamian Merchant Shipping Act § 262.

**[5] Seamen 348** 26

348 Seamen
    348k15 Wages
        348k26 k. Actions. Most Cited Cases
Whether seamen's claims for overtime wages and wage penalties under federal seaman's wage statutes were barred by doctrine of laches could not be resolved on motion to dismiss, given factual issues as

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2002 WL 1465907 (S.D.N.Y.), 7 Wage & Hour Cas.2d (BNA) 1703
(Cite as: Not Reported in F.Supp.2d)

to whether seamen knew or should have known immediately of alleged pay discrepancy and whether vessels' owner suffered requisite prejudice. 46 U.S.C.A. § § 10101 et seq., 10313; Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[6] Seamen 348 ⚖ 18**

348 Seamen
    348k15 Wages
        348k18 k. Extra Wages. Most Cited Cases
Complaint which alleged that voyages during which seamen worked on vessel owner's cruise ships ended, that seamen were discharged, and that overtime pay to which seamen were entitled was withheld without sufficient cause asserted claims for penalty wages under federal seaman's wages statute. 46 U.S.C.A. § 10313; Fed.Rules Civ.Proc.Rules 8(a), 12(b)(6), 28 U.S.C.A.

**[7] Seamen 348 ⚖ 18**

348 Seamen
    348k15 Wages
        348k18 k. Extra Wages. Most Cited Cases
Prior demand for wages is not necessary to a claim brought under federal seaman's wages statute providing for payment of penalty when wages are withheld without sufficient cause. 46 U.S.C.A. § 10313(f, g).

*REPORT AND RECOMMENDATION*

PECK, Magistrate J.

**\*1** Plaintiffs in this action are seamen who worked aboard cruise ships owned and operated by defendant Norwegian Cruise Lines from January 1, 1998 through the present, and who allegedly worked more than 60.62 hours overtime per month but were not paid overtime pay. The complaint asserts claims for breach of contract, violation of 46 U.S.C. § 10101 and § 10313, and for injunctive relief.[FN1]

    FN1. Plaintiffs' motion to certify a class of such seamen is pending before the Court.

Presently before the Court is defendants' motion to dismiss the complaint. (Dkt.Nos.11-13.)

For the reasons set forth below, defendants' motion should be *GRANTED* on statute of limitations grounds as to plaintiffs' first cause of action for wages prior to May 17, 2000 under the First

Collective Bargaining Agreement only as to vessels that flew the Bahamian flag; *GRANTED* as to plaintiff's first cause of action for breach of contract on statute of limitations grounds as to plaintiffs' wage claims prior to May 17, 2000 under the Second Collective Bargaining agreement; and *DENIED* in all other respects.

*FACTS*

*The Complaint*

Plaintiffs filed the original complaint on May 17, 2001 (Dkt. No. 1) and filed their amended complaint on June 18, 2001 (Dkt. No. 3).

The amended complaint alleges that defendant Norwegian Cruise Lines ("NCL") owns and operates the cruise ships named as *in rem* defendants and uses those vessels to "provide cruises and vacations to passengers," 75% of whom were United States residents. (Dkt. No. 3: Am. Compl. ¶ ¶ 1-6.)

The named plaintiffs are seafarers employed by defendant NCL on one or more of the defendant's vessels during some or all of the period January 1, 1998 through the present. (Am.Compl.¶ ¶ 7-67.) Specifically, "[o]ne or more of the plaintiffs is presently employed aboard one or more of the defendant vessels...." (Am. Compl. ¶ 67; *see also* Am. Compl. ¶ ¶ 53-66.) Plaintiffs "have, at various times, been discharged from their respective vessels upon which they are/were employed at the termination of voyages," in U.S. ports or harbors. (Am.Compl.¶ ¶ 75-77.)

As to the working of overtime hours without pay, the amended complaint alleges:
73. Upon information and belief, during the period from January 1, 1998 through the present, during each full month that plaintiffs were employed on defendant's ships they worked more than 60.62 hours overtime, or for each month in which they worked less than a full month, they worked more hours per day than would be a pro-rata portion of 60.62 hours overtime per month. Despite working the aforesaid hours, plaintiffs were not paid overtime pay in accordance with contract(s) of employment covering their employment, and said failure to pay was a violation of law and various contracts of employment covering their work, including a collective bargaining agreement between the Norwegian Seamen's Union and defendants for the benefit of the plaintiffs and the

Not Reported in F.Supp.2d                                                    Page 3
Not Reported in F.Supp.2d, 2002 WL 1465907 (S.D.N.Y.), 7 Wage & Hour Cas.2d (BNA) 1703
**(Cite as: Not Reported in F.Supp.2d)**

class they seek to represent.

(Am. Compl. ¶ 73; *accord,* Am. Compl. ¶ 74 re proposed class members.)

**\*2** The amended complaint asserts that plaintiffs seek to represent a class of at least 5,000 seafarers, defined as follows:
The class which plaintiffs seek to represent is composed of those unlicensed seafarer-employees who worked on the defendants' ships who worked, or will work, on the various defendant-vessels at some point in time during the period from January 1998 through the present, and into the future for as long as the harm claimed herein continues, and who were and will be covered, as part of the terms and conditions of employment, by a document entitled "Collective Bargaining Agreement Between Norwegian Cruise Line Limited and Norwegian Seamen's Union". These employees were and will be subject to illegal wage withholdings, and/or non-payment of wages.

(Am. Compl. ¶ 83; *see also* Am. Compl. ¶ ¶ 84-96.)

Plaintiffs' first cause of action is for breach of contract from January 1, 1998 to the present. (Am.Compl.¶ ¶  97-101.) Specifically, plaintiffs allege:
98. Between January 1, 1998 and the present time, plaintiffs, and the class they seek to represent, were employed at various times aboard various of defendant's vessels, as members of the crews thereof and fully performed their duties as crew members and accrued wages, including overtime, payable pursuant to contracts of employment, including but not limited to collective bargaining agreements between defendant or its agents and the Norwegian Seamen's Union, which provided for payment of wages for overtime work.
99. Plaintiffs, and the class they seek to represent, at all relevant times herein were beneficiaries of said contracts and collective bargaining agreements.
100. Upon information and belief, the defendant, in breach of said contracts and/or collective bargaining agreements, the common law, U.S. statutory law, and the general maritime law, and notwithstanding its obligations to plaintiffs thereunder, failed to make payment of the full wages due to said plaintiffs and the class they seek to represent.

(Am.Compl.¶ ¶  98-100.)

Plaintiffs' second cause of action asserts that the failure to pay full overtime wages "pursuant to contracts and collective bargaining agreements, the

common law, U.S. statutory law and the general maritime law," is a violation of 46 U.S.C. § 10101 *et seq* . (Am.Compl.¶ ¶ 103-04.)

Plaintiffs' third cause of action asserts that "[b]y reason of [defendants'] refusal and neglect to pay the seafarers' their full earned wages when same became due and owing, and said non-payment being done without sufficient cause, pursuant to 46 U.S.C. § 10313 plaintiffs are entitled to penalty wages of two days pay for each and every day during which payment of their duly earned wages have been delayed without sufficient cause." (Am.Compl.¶ 107.) [FN2]

> [FN2]. The amended complaint also states that if the court determines that a portion of the wage penalty claim should have been brought sooner than it was, "then the court should grant plaintiffs and the proposed class damages for that portion of the claim for penalty wages which the court shall determine was seasonably asserted, plus penalty wages for the subsequent, and ongoing violations." (Am.Compl.¶ 109.)

Plaintiffs' fourth cause of action is for "specific performance" and injunctive relief for "ongoing" and continuing violations. (Am.Compl.¶ ¶ 112-14.)

*The Collective Bargaining Agreements*

**\*3** Plaintiffs' employment on NCL vessels is governed by two Collective Bargaining Agreements ("CBAs") (Dkt. No.13: NCL Br. at 2-3 & n. 2), one in effect in 1998 [FN3] (Ex. 2: [FN4] 1996-1997 [the "First"] CBA, Art. 21) and another in effect from 1999 to the present (Ex. 3: 1999-2002 [the "Second"] CBA, Art. 21). The CBAs address the "pay and working conditions" of seafaring personnel. (First CBA at 1; *see also* Second CBA at 1.) The CBAs specify the "pay and overtime rates" for specific job categories on NCL vessels. (Ex. 2: First CBA, Art. 2 & 6 & Pay Scale; Second CBA, Art. 2 & 6 & Pay Scale.) [FN5]

> [FN3]. The terms of the First CBA were extended to December 31, 1998. (*See* Am. Compl. ¶ 73; Norwegian Br. at 3 n. 2)

> [FN4]. Referenced exhibits are attached to the 8/3/02 Affidavit of NCL's counsel,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4
Not Reported in F.Supp.2d, 2002 WL 1465907 (S.D.N.Y.), 7 Wage & Hour Cas.2d (BNA) 1703
**(Cite as: Not Reported in F.Supp.2d)**

Christopher G. Kelly. (Dkt. No. 12.)

FN5. The First and Second CBAs both provide that "[o]vertime shall be recorded individually and in duplicate either by the Master or the head of the department. Such record shall be handed to the Employee for approval every fortnight or at shorter intervals. Both copies must be signed by the Master and/or department head as well as by the Employee, after which the record is final." (First & Second CBAs, Art. 6.5.)

The First CBA contains a provision labeled "Jurisdiction" which provides: "The parties to this Agreement agree that any dispute or claims arising under this Agreement shall be governed and adjudicated pursuant to the laws of the flag state." FN6 (Ex. 2: First CBA, Art. 14.) The First CBA does not provide for a grievance procedure, but provides that if NCL "breach[es] the terms of this Agreement the Union and/or .... any Employee shall be entitled to take such measures against the Company as may be deemed necessary to obtain redress." (First CBA, Art. 15; *see also* Dkt. No. 18: Pls. Br. at 10 n. 5.)

FN6. It is not apparent from the amended complaint or the First CBA which flag was flown by the vessels employing the plaintiffs during 1998. (*See* Am. Compl. ¶ ¶ 2-3; Ex. 2.) Defendants originally maintained that "[a]ll of the Vessels at issue in this claim are flagged under the laws of the Bahamas." (NCL Br. at 5 n. 3.) In response to this Court's Order that the parties inform the Court "whether they stipulate that defendant's ships in question are flagged under the laws of the Bahamas" (Dkt. No. 70: 6/17/02 Order), the parties stipulated that only the following NCL vessels flew the Bahamian flag: the Norway, the Dreamward (renamed Norwegian Dream after being "stretched"), the Seaward (renamed Norwegian Sea after stretching), the Windward (renamed Norwegian Wind after stretching), the Norwegian Crown, the Norwegian Star, the Norwegian Sun, the Norwegian Sky and the Norwegian Majesty (6/20/02 Hofmann Letter to the Court at 1-2 & n. 1; 6/21/02 Kelly Letter to the Court at 1-2.) The parties stipulated, that the Norwegian Dynasty and the Leeward vessels "flew the Panamanian flag." (6/20/02 Hofmann Letter to the Court at 1-2;

6/21/02 Kelly Letter to the Court at 1-2 .)

The Second CBA contains a "Jurisdiction" provision providing that: "The parties to this Agreement agree that any dispute or claims arising under this Agreement shall be governed and adjudicated pursuant to the laws of the Bahamas, and the att[a]ched Grievance Procedure." (Second CBA, Art. 14; *see also* Second CBA, Annex 3, setting out the union grievance procedures.)

*NCL's Motion to Dismiss*

Defendant NCL moved to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) (Dkt. No. 11: Notice of Motion), arguing that: (1) plaintiffs' first cause of action for breach of contract for wages preceding May 17, 2000 is time barred by the Bahamian one-year statute of limitations applicable under the choice of law provisions of the First and Second CBAs (Dkt. No. 13: NCL Br. at 5-6); (2) plaintiffs' second and third (federal statutory) causes of action for overtime wages and wage penalties should be dismissed pursuant to the doctrine of laches (*id.* at 6-17); and (3) plaintiffs' third cause of action for federal statutory wage penalties should be dismissed on the additional ground that plaintiffs failed to show that "they made an effective demand for wages" (*id.* at 17-21).FN7

FN7. NCL originally moved to dismiss plaintiffs' fourth cause of action for injunctive relief on the ground that plaintiffs "lack[ed] standing." (*Id.* at 21-22.) By letter to the Court dated July 3, 2002, NCL withdrew that portion of its motion to dismiss addressed to the fourth cause of action.

*ANALYSIS*

*I. THE STANDARD GOVERNING A MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)*

A district court should deny a motion to dismiss " 'unless it appears to a certainty that a plaintiff can prove no set of facts entitling him to relief." ' *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052 (2d Cir.1993) (quoting *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir.1984)), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86 (1994).FN8 A court must accept as true

Not Reported in F.Supp.2d                                          Page 5
Not Reported in F.Supp.2d, 2002 WL 1465907 (S.D.N.Y.), 7 Wage & Hour Cas.2d (BNA) 1703
(Cite as: Not Reported in F.Supp.2d)

the facts alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party-here, plaintiffs. *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989).[FN9]

FN8. *Accord, e.g., Weinstein v. Albright,* 261 F.3d 127, 131 (2d Cir.2001); *In re Scholastic Corp. Sec. Litig.,* 252 F.3d 63, 69 (2d Cir.), *cert. denied,* 534 U.S. 1071, 122 S.Ct. 678, 151 L.Ed.2d 590 (2001); *Grandon v. Merrill Lynch & Co.,* 147 F.3d 184, 188 (2d Cir.1998); *Williams v. Wilmington Trust Co.,* 01 Civ. 7590, 2002 WL 77081 at *2 (S.D.N.Y. Jan.22, 2002) (Peck, M.J.); *Pantoja v. Scott,* 96 Civ. 8593, 2001 WL 1313358 at *4 (S.D.N.Y. Oct.26, 2001) (Peck, M.J.); *Leemon v. Burns,* 175 F.Supp.2d 551, 553-54 (S.D.N.Y.2001) (Peck, M.J.); *LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co..,* 951 F.Supp. 1071, 1080-81 (S.D.N.Y.1996) (Knapp, D.J. & Peck, M.J.); *In re Towers Fin. Corp. Noteholders Litig.,* 93 Civ. 0180, 1995 WL 571888 at *11 (S.D.N.Y. Sept.20, 1995) (Peck, M.J.), *report & rec. adopted,* 936 F.Supp. 126 (S.D.N.Y.1996) (Knapp, D.J.).

FN9. *Accord, e.g., Weinstein v. Albright,* 261 F.3d at 131; *In re Scholastic Corp. Sec. Litig.,* 252 F.3d at 69; *Williams v. Wilmington Trust Co.,* 2002 WL 77081 at *2; *Leemon v.. Burns,* 175 F.Supp.2d at 554; *LaSalle Nat'l Bank v. Duff & Phelps,* 951 F.Supp. at 1081; *In re Towers,* 1995 WL 571888 at *11; *Macmillan, Inc. v. Federal Ins. Co.,* 764 F.Supp. 38, 41 (S.D.N.Y.1991).

**\*4** Additionally, a Rule 12(b)(6) motion challenges only the face of the pleading. Thus, in deciding a 12(b)(6) motion, "the Court must limit its analysis to the four corners of the complaint." *Vassilatos v. Ceram Tech Int'l Ltd.,* 92 Civ. 4574, 1993 WL 177780 at *5 (S.D.N.Y. May 19, 1993) (citing *Kopec v. Coughlin,* 922 F.2d 152, 154-55 (2d Cir.1991)).[FN10]

FN10. *Accord, e.g., Williams v. Wilmington Trust Co.,* 2002 WL 77081 at *2; *Leemon v. Burns,* 175 F.Supp.2d at 554; *Aniero Concrete Co. v. New York City Constr. Auth.,* 94 Civ. 3506, 2000 WL 863208 at *31 (S.D.N.Y. June 27, 2000); *Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.,* 97 Civ. 5499, 2000 WL

264295 at *12 (S.D.N.Y. Mar.9, 2000) ("When reviewing the pleadings on a motion to dismiss pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein."); *LaSalle Nat'l Bank v. Duff & Phelps,* 951 F.Supp. at 1081; *In re Towers,* 1995 WL 571888 at *11. When additional materials are submitted to the Court for consideration with a 12(b)(6) motion, the Court must either exclude the additional materials and decide the motion based solely upon the complaint, or convert the motion to one for summary judgment under Fed.R.Civ.P. 56. Fed.R.Civ.P. 12(b); *Friedl v. City of New York,* 210 F.3d 79, 83 (2d Cir.2000); *Fonte v. Board of Managers of Cont'l Towers Condos,* 848 F.2d 24, 25 (2d Cir.1988); *Williams v. Wilmington Trust Co.,* 2002 WL 77081 at *2 n. 7; *Leemon v. Burns,* 175 F.Supp.2d at 554 n. 4; *LaSalle Nat'l Bank v. Duff & Phelps,* 951 F.Supp. at 1081; *In re Towers,* 1995 WL 571888 at *11.

The Court, however, may consider documents attached to the complaint as an exhibit or incorporated in the complaint by reference. *E.g., Yak v. Bank Brussels Lambert, BBL (USA) Holdings, Inc.,* 252 F.3d 127, 130 (2d Cir.2001) (citing *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 1125 S.Ct. 1561, 118 L.Ed.2d 208 (1992)); *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference....").[FN11] The Court also may consider stipulations of counsel. *See, e.g.,* 5A C. Wright & A. Miller, *Federal Practice and Procedure: Civil 2d* § 1364 at 475-76 (2d ed 1990) (listing "admissions of counsel" among the "wide range of material [that] may be introduced in conjunction with a Rule 12(b) motion, subject, of course, to the court's discretion to reject the evidence if it feels that it is not substantial or comprehensive enough to facilitate the disposition of the action.").

FN11. *See also, e.g., Paulemon v. Tobin,* 30 F.3d 307, 308-09 (2d Cir.1994); *Brass v. American Film Tech., Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *Williams v. Wilmington Trust Co.,* 2002 WL 77081 at *2; *Leemon v. Burns,* 175 F.Supp.2d at 554; *LaSalle Nat'l*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 6
Not Reported in F.Supp.2d, 2002 WL 1465907 (S.D.N.Y.), 7 Wage & Hour Cas.2d (BNA) 1703
**(Cite as: Not Reported in F.Supp.2d)**

*Bank v. Duff & Phelps, 951 F.Supp. at 1081.*

[1] Here, plaintiffs referenced the CBAs in their amended complaint. (Dkt. No. 3: Am. Compl. ¶¶ 73, 98-100, 103.) Therefore, the Court can properly consider the First and Second CBAs in ruling on NCL's motion to dismiss.

## II. *PLAINTIFFS' FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT AND THE ONE-YEAR BAHAMIAN STATUTE OF LIMITATIONS*

Plaintiffs' first cause of action asserts wage claims for breach of "contracts of employment, including but not limited to collective bargaining agreements." (*E.g.,* Dkt. No. 3: Am. Compl. ¶ 98.) Plaintiffs do not specify what contracts, if any, they are referring to beyond the two CBAs.

[2] Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8; *see also* cases cited on pages 19-21 below. NCL's motion to dismiss, however, focuses only on the CBAs and the Bahamas statute of limitations. (*See* Dkt. No. 13: NCL Br. at 5-6.) [FN12] Neither party has presented any information as to what statute of limitations applies to these other, non-CBA contracts. The Court therefore denies NCL's motion to dismiss that portion of the first cause of action that relies on non-CBA contracts.

> FN12. A footnote in NCL's reply brief states that, to the extent the complaint refers to "contracts" beyond the CBAs, the complaint violates Fed.R.Civ.P. 8. (Dkt. No. 21: NCL Reply Br. at 1-2 n. 1.) While the Court suspects that the CBAs are the only contracts and thus this aspect of the first cause of action may be resolved on a summary judgment motion, the amended complaint satisfies Rule 8 and the Court cannot dismiss the breach of non-CBA contracts claim at this stage of the case. In any event, because NCL raised this argument for the first time in its reply brief, let alone in a footnote, the Court need not consider it. *See, e.g., Carbonell v. Acrish,* 154 F.Supp.2d 552, 561 (S.D.N.Y.2001) (Peck, M.J.); *Nichols v. American Risk Management,* 89 Civ. 2999, 2000 WL 97282 at *3 (S.D.N.Y. Jan.28, 2000) (Peck, M.J.) ("A court need not consider a new argument

raised for the first time in a reply brief."); *Playboy Enter. Inc. v. Dumas,* 960 F.Supp. 710, 720 n. 7 (S.D.N.Y.1997) ("Arguments made for the first time in a reply brief need not be considered by a court.") (citing cases), *aff'd mem.,* 159 F.3d 1347 (2d Cir.1998).

The Court therefore turns to the heart of plaintiffs' first cause of action, dealing with alleged breach of the two CBAs.

[3] The Second CBA clearly incorporates Bahamian law: "The parties to this Agreement agree that any dispute or claims arising under this Agreement shall be governed and adjudicated pursuant to the laws of the Bahamas...." (Ex. 3: Second CBA, Art. 14.) The choice-of-law provision of the First CBA provides that "claims arising under this Agreement shall be governed and adjudicated pursuant to the laws of the flag state." (Ex. 2: First CBA, Art. 14 .) The parties stipulated that the following defendant vessels flew the Bahamian flag during the relevant time period under the First CBA: the Norway, the Norwegian Crown, the Norwegian Dream, the Norwegian Majesty, the Norwegian Sea, the Norwegian Sky and the Norwegian Wind. (*See* Dkt. No. 3: Am. Compl. ¶ ¶ 2-3; 6/20/02 Hofmann Letter to the Court at 1-2; 6/21/02 Kelly Letter to the Court at 1-2; *see also* page 5 fn. 6 above.) The parties further stipulated that the Norwegian Dynasty and the Leeward flew the Panamanian flag. (6/20/02 Hofmann Letter to the Court at 1-2; 6/21/02 Kelly Letter to the Court at 1-2; *see also* page 5 fn.6.) The parties have not presented any evidence or information about the Panamanian statute of limitations. The Court therefore denies NCL's motion to dismiss that portion of the first cause of action relating to the First CBA and the vessels Norwegian Dynasty and Leeward.

**\*5** [4] As to the other ships under the First CBA, and all of the ships under the Second CBA, NCL's motion to dismiss argues that "[u]nder Bahamian law, a claim for wages must be brought within one year from the time wages are due." (Dkt. No. 13: NCL Br. at 5.) Plaintiffs' original complaint was filed on May 17, 2001. (Dkt. No. 1.) NCL argues that plaintiffs' claims for "wages due under the CBA," "for the period preceding May 17, 2000 are thus barred by the Bahamian statute of limitations." (NCL Br. at 5-6; *see also* Dkt. No. 12: Ex. 5: Wilson Aff. ¶ ¶ 3-4.) [FN13]

> FN13. Bahamian Merchant Shipping Act §

Case 7:04-cv-08223-KMK    Document 165-7    Filed 07/07/2006    Page 7 of 11

Not Reported in F.Supp.2d                                                                                    Page 7
Not Reported in F.Supp.2d, 2002 WL 1465907 (S.D.N.Y.), 7 Wage & Hour Cas.2d (BNA) 1703
**(Cite as: Not Reported in F.Supp.2d)**

262 provides:

[No] order for payment of money shall be made under this Act in proceedings instituted in the Bahamas, unless those proceedings are commenced within one year after the ... cause of action arises....

(Dkt. No. 12: Ex. 5: Wilson Aff. ¶ 3 & Ex. JFW-1 thereto: BMSA § 262; *accord,* Dkt. No. 19: Harmon Aff. Ex. B: BMSA § 262.)

Plaintiffs respond that the "statute of limitations relied on by defendants, § 262 of the BMSA [the Bahamian Merchant Shipping Act] ... has no applicability to an action brought in the United States District Court under the Court's general maritime jurisdiction." (Dkt. No. 18: Pls. Br. at 5; *see also id.* at 3, 5-7.) Plaintiffs also assert that "the BMSA one year statute of limitations is applicable only to claims brought pursuant to BMSA § 109 in the courts of the Bahamas," and this action, obviously, is in a U.S., not Bahamas, Court. (Pls. Br. at 3.)

It is well-established that courts enforce the "choice of law" provisions in maritime collective bargaining agreements for breach of contract claims arising from those agreements. *See, e.g.,* [Ex. 4:] *Brown v. Royal Carribean Cruises, Ltd.,* 99 Civ. 2435, 99 Civ. 11774, slip op. at 5-6 (S.D.N.Y. Aug. 20, 2000) ("Courts in this district enforce 'choice of law' provisions contained in maritime collective bargaining agreements." In a maritime action for wages under a collective bargaining agreement governed by Norwegian law, wage claims held time-barred by three-year Norwegian statute of limitations); *Gazis v. John S. Latsis (USA) Inc.,* 729 F.Supp. 979, 990 (S.D.N.Y.1990) ("Ordinarily ... the existence of a collective bargaining agreement should control the choice of law and choice of forum determinations."); *Manlugon v. A/S Facto,* 419 F.Supp. 550, 552 (S.D.N.Y.1976) (Pollack, D.J.) (choice of law provisions of plaintiff seamen's employment contracts and collective bargaining agreements should be applied to plaintiffs' workers compensation type claims covered by those agreements); *see also, e.g., Bender Shipbuilding & Repair Co. v. The Vessel Drive Ocean V,* 123 F.Supp.2d 1201, 1207 (S.D.Cal.1998) (enforcing choice of law provision in loan agreement in an action brought to enforce maritime mortgage, because contractual "choice of law provisions are presumed valid and will be enforced unless it clearly would be 'unreasonable and unjust', or the clause was invalid for such reasons as fraud or overreaching."), *aff'd,* 221 F.3d 1348 (9th Cir.2000); *Palanker v. Holland Am. Line Westours, Inc.,* No.

C98-551, 1998 WL 1108943 at *2 (W.D.Wash. Dec.9, 1998) (choice of law provision in a cruise contract governs because "[a]dmiralty courts generally enforce contractual choice-of-law provisions" "if the issue 'is one which the parties could have resolved by an explicit provision in their agreement directed to that issue' ") (quoting Restatement (Second) of Conflicts of Laws § 187(1)); *Damigos v. Flanders Compania Naviera, S.A.,* 716 F.Supp. 104, 106-07 & n. 3 (S.D.N.Y.1989) (Leval, D.J.) (enforcing forum selection and choice of law provisions in seamen's collective bargaining agreement which provided for litigation in Greece under Greek law, and dismissing case on grounds of forum non conveniens because "the national policies of both Greece and the United States" support "the enforcement of terms of collective bargaining agreements regarding resolution of disputes" and "national labor policy 'can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play' "). [FN14]

FN14. *Cf. Chung, Yong Il v. Overseas Navigation Co.,* 774 F.2d 1043, 1051 n. 11 (11th Cir.1985) (where "underlying claim ... is *not* based on the contract" which has a Louisiana choice of law provision, but "is a claim within the court's admiralty jurisdiction for [penalty] wages due .... the case is governed by federal law and not Louisiana contract law") (emphasis added), *cert denied,* 475 U.S. 1147, 106 S.Ct. 1802, 90 L.Ed.2d 346 (1986).

**\*6** In fact, in a Southern District decision directly on point, Judge Wood held that "[c]ourts in this district enforce 'choice of law' provisions contained in maritime collective bargaining agreements" and dismissed a maritime contract claim for unpaid wages as barred by the statute of limitations of the jurisdiction whose law applied under a collective bargaining agreement. [Ex. 4:] *Brown v. Royal Carribean Cruises, Ltd.,* slip op. at 5. Like the present case, *Brown* was an action for overtime wages brought by seafaring employees. Judge Wood enforced the Norwegian choice-of-law provision in the collective bargaining agreement and held that because "[u]nder Norwegian law, a claim must be brought within three years of the date when payment of wages is due," "the Court dismisses as time-barred all wage claims ... that accrued more than three years prior to the filing" of the complaint. *Id.* at 5-6.

Not Reported in F.Supp.2d                                                                     Page 8
Not Reported in F.Supp.2d, 2002 WL 1465907 (S.D.N.Y.), 7 Wage & Hour Cas.2d (BNA) 1703
**(Cite as: Not Reported in F.Supp.2d)**

This Court will enforce the choice-of-law provision in the First and Second CBAs. As to the First CBA, Bahamian law applies only to the ships flying a Bahamian flag. The Second CBA expressly provides for the application of Bahamian law. Therefore, the Bahamian one-year statute of limitations applies to plaintiffs' wage claims arising under the First CBA (as to Bahamian flag vessels) and the Second CBA (for all vessels), and such claims for the period befoe May 17, 2000 should be dismissed.[FN15]

> **FN15.** Plaintiffs argue that the Bahamian one-year statute of limitations should not apply to their wage claims under the CBAs for two reasons. First, plaintiffs argue that, despite the choice of law provisions in the CBAs, Bahamian law does not apply because plaintiffs' "action is not a claim for wages under Bahamian law but rather a cause of action for breach of a maritime contract of employment, brought under this Court's general admiralty jurisdiction and federal maritime common law" and that "[i]n cases brought under this Court's admiralty jurisdiction, the determination of the timeliness of the claim is not measured by statutes of limitations" but by "the sound discretion of the Court" applying "the doctrine of laches." (Pls. Br. at 6-7.) Second, the plaintiffs argue that, by its very terms, the BMSA statute of limitations provision applies only to actions brought "in a court in The Bahamas." (Pls. Br. at 5-6.) The flaw in plaintiffs' first argument is that the first cause of action asserts claims under the CBAs and other contracts, the latter presumably including "general maritime law." The Court has already held (page 10 above) that NCL's motion to dismiss the first cause of action should be denied as to non-CBA contracts or agreements. Plaintiffs' claims under the CBAs are subject to the CBAs' Bahamian choice of law provision and one-year statute of limitations. As to plaintiffs' second argument, while BMSA § 262 refers to "proceedings instituted in the Bahamas" (*see* fn. 13 above), plaintiffs advance no policy reason why Bahamas law should or would create a statute of limitations solely for a breach of seamen's employment contract claim if that claim is brought in a Bahamas court, but not if the claim is brought in a foreign court. Plaintiffs have not cited any Bahamas or United States case so construing BMSA § 262 (or any similar statute). To avoid a "race to the courthouse" and conflicting decisional rules, the Court interprets § 262 as establishing a one year statute of limitations regardless of where suit is brought.

### III. *WHETHER PLAINTIFFS' SECOND AND THIRD CAUSES OF ACTION ARE BARRED BY LACHES SHOULD NOT BE DECIDED ON A MOTION TO DISMISS*

[5] NCL argues that plaintiffs' second and third causes of action for overtime wages and wage penalties under 46 U.S.C. § 10101 et seq. (the Merchant Seamen Protection and Relief Act) and specifically under 46 U.S.C. § 10313 thereof [FN16] (Dkt. No. 3: Am. Compl. ¶ ¶ 102-10), should be dismissed as barred by the doctrine of laches. (Dkt. No. 13: NCL Br. at 6-17.)

> **FN16.** 46 U.S.C. § 10313 provides in pertinent part:
> (f) At the end of a voyage, the master shall pay each seaman the balance of wages due the seaman within 24 hours after the cargo has been discharged or within 4 days after the seaman is discharged, whichever is earlier. When a seaman is discharged and final payment of wages is delayed for the period permitted by this subsection, the seaman is entitled at the time of discharge to one-third of the wages due the seaman.
> (g) When payment is not made as provided under subsection (f) of this section without sufficient cause, the master or owner shall pay to the seaman 2 days' wages for each day payment is delayed.
> ...
> (i) This section applies to a seaman on a foreign vessel when in a harbor of the United States. The courts are available to the seaman for the enforcement of this section.

There is no statute of limitations for maritime law claims under the Merchant Seamen Protection and Relief Act, 46 U.S.C. § 10101 et seq. and/or § 10313 thereof; rather, these claims are governed by the equitable doctrine of laches. *See, e.g., DeSilvio v. Prudential Lines, Inc.,* 701 F.2d 13, 15 (2d Cir.1983) ("The equitable doctrine of laches has immemorially been applied to admiralty claims to determine whether they have been timely filed." Summary judgment on admiralty claim based on laches

Not Reported in F.Supp.2d                                                                    Page 9
Not Reported in F.Supp.2d, 2002 WL 1465907 (S.D.N.Y.), 7 Wage & Hour Cas.2d (BNA) 1703
(Cite as: Not Reported in F.Supp.2d)

reversed.); *Larios v. Victory Carriers, Inc.,* 316 F.2d 63, 65 (2d Cir.1963) ("Since [plaintiff's] claim ... was for an injury on the high seas, the applicable principle with respect to his delay in bringing suit is laches and not the statute of limitations." The Second Circuit reverses dismissal of maritime claim on laches grounds.); [Ex. 4:] *Brown v. Royal Carribean Cruises, Ltd.,* 99 Civ. 2435, 99 Civ. 11774, slip op. at 6-12 (S.D.N.Y. Aug. 20, 2000) ("In maritime law, courts do not strictly apply statutes of limitations; instead, courts employ the equitable doctrine of laches to determine the timeliness of [maritime] claims." The court declined to dismiss § 10313 and other maritime wage claims on laches grounds.); *Guenther v. Sedco,* 93 Civ. 4143, 1998 WL 898349 at *3 (S.D.N.Y. Dec.22, 1998) ("In maritime law, statutes of limitations are not strictly applied. Instead, the equitable doctrine of laches has always been applied to admiralty claims to determine whether or not they are timely.").[FN17]

> FN17. *See also, e.g., Hill v. Burns & Co.,* 498 F.2d 565, 568 (2d Cir.1974); *Gaymon v. Prudential Lines, Inc.,* 80 Civ. 5057, 1984 WL 146 at *1 (S.D.N.Y. Apr.4, 1984) (Haight, D.J.); *Ranieri v. Prudential Lines, Inc.,* 80 Civ. 2252, 1984 WL 143 at *1 (S.D.N.Y. Apr.4, 1984) (Haight, D.J.).

*7 Laches developed as an equitable defense based on the Latin phrase "maxim vigilantibus non dormientibus aequitas subvenit," roughly translated as "equity aids the vigilant, not those who sleep on their rights." *Stone v. Williams,* 873 F.2d 620, 623 (2d Cir.1989), *rev'd on other grounds,* 970 F.2d 1043 (2d Cir.1992), *cert. denied,* 508 U.S. 906, 113 S.Ct. 2331, 124 L.Ed.2d 243 (1993); *accord, e.g., Byron v. Chevrolet Motor Div. of General Motors Corp.,* 93 Civ. 1116, 1995 WL 465130 at *5 (S.D.N.Y. Aug.7, 1995) (Peck, M.J.).

In order for a court to dismiss a case on grounds of laches, the party asserting laches-here, NCL-must show "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States,* 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961); *accord, e.g., Byron v. Chevrolet,* 1995 WL 465130 at *5. "The inquiry ... asks whether the plaintiff in asserting [his] rights was guilty of unreasonable delay that prejudiced the defendants." *Stone v. Williams,* 873 F.2d at 623.[FN18]

> FN18. *Accord, e.g., Eppendorf-Netheler-Hinz GMBH v. National Scientific Supply Co., Inc.,* Nos. 00-9138, 00-9498, 14 Fed. Appx. 102, 104, 2001 WL 798844 at *2-3 (2d Cir. July 13, 2001); *DeSilvio v. Prudential Lines, Inc.,* 710 F.2d at 15; *Byron v. Chevrolet,* 1995 WL 465130 at *5.

Although a court may consider the defense of laches on a motion to dismiss, *see generally Guenther v. Sedco, Inc.,* 1998 WL 898349 at *3-5; *see also Solow Bldg. Co. v. Nine West Group, Inc.,* 00 Civ. 7685, 2001 WL 736794 at *3-6 (S.D.N.Y. June 29, 2001); *Lennon v. Seaman,* 63 F.Supp.2d 428, 439 (S.D.N.Y.1999), courts generally are not inclined to do so because application of the laches defense involves consideration of fact issues outside the pleadings, *see* cases cited at pages 7-8 above; *see also, e.g., United States v. Portrait of Wally,* 99 Civ. 9940, 2002 WL 553532 at *22 (S.D.N.Y. Apr.12, 2002) (laches analysis "would involve a fact-intensive inquiry into the conduct and background of both parties in order to determine the relative equities. Such issues are often not amenable to resolution on a motion for summary judgment, let alone a motion to dismiss.") (citations omitted); *Carell v. Shubert Org., Inc.* 104 F.Supp.2d 236, 263 (S.D.N.Y.2000) ("The defense of laches is not appropriately raised in a motion to dismiss, unless 'it is clear on the face of the complaint and plaintiff can prove no set of facts to avoid the insuperable bar.' ' Because " 'the factual allegations in the pleadings do not afford the Court sufficient basis for weighing the reasons for [plaintiff's] delay against the prejudice to [defendants] caused by that delay," ' court declines to dismiss plaintiff's Lanham Act claim on laches grounds.); *Lennon v. Seaman,* 63 F.Supp.2d at 439 ("The defense of laches is an affirmative defense, which is generally not appropriately raised in a motion to dismiss," unless it "is clear on the face of the complaint, and where it is clear that plaintiff can prove no set of facts to avoid the insuperable bar.").

NCL alleges that "there is no excuse for any delay [in filing this action for unpaid overtime], because given the CBA provision requiring seamen to verify wage and hour calculations and sign for their wages, Plaintiffs were or should have been immediately aware of any discrepancy in the calculations." (Dkt. No. 13: NCL Br. at 12.) Whether plaintiffs knew or should have been aware of the alleged discrepancy, however, inherently involves resolution of issues not addressed by the pleadings.[FN19] Moreover, another factor, prejudice to defendant NCL, is claimed by *ipse disit* in NCL's brief (NCL Br. at 14-17), but is

Not Reported in F.Supp.2d                                                                    Page 10
Not Reported in F.Supp.2d, 2002 WL 1465907 (S.D.N.Y.), 7 Wage & Hour Cas.2d (BNA) 1703
**(Cite as: Not Reported in F.Supp.2d)**

not supported by any affidavit or other evidence, much less by the pleadings.

> FN19. "The application of the doctrine of laches also requires reference to or consideration of the analogous statute of limitations" to determine whether plaintiffs unduly delayed in bringing their lawsuit. *See, e.g., DeSilvio v. Prudential Lines, Inc., 701 F.2d at 15; Guenther v. Sedco, 1998 WL 898349 at *3.* NCL argues that the "analogous statute of limitations is the two-year statute of limitations found in the Federal Fair Labor Standards Act ("FLSA"), 19 U.S.C. § 216(b), for federal overtime wage claims." (NCL Br. at 8.) Plaintiffs disagree and argue that "the analogous statute of limitations should be the six year statute under Labor Law § 198 or the six year statute under C.P.L.R. 213." (Pls. Br. at 11.) In light of this Court's denial of defendants' motion to dismiss on laches grounds, this Court need not resolve now the issue of which statute of limitation would be "analogous" for purposes of a laches analysis.

**\*8** Accordingly, NCL's motion to dismiss on laches grounds should be denied. The issue is better addressed on a summary judgment motion (if the facts are not in dispute) or at trial.

### IV. *NCL'S MOTION TO DISMISS THE THIRD CAUSE OF ACTION (FEDERAL PENALTY WAGE CLAIM) ON THE GROUND THAT PLAINTIFFS DID NOT MAKE EFFECTIVE DEMAND SHOULD BE DENIED*

[6] NCL asserts that plaintiffs failed to allege that they demanded their wages or availed themselves of the grievance procedure in the CBAs and that, therefore, their penalty wage claim should be dismissed for this reason as well. (Dkt. No. 13: NCL Br. at 17-20.)

The Federal Rules of Civil Procedure employ liberal standards for pleading under Rule 8(a), requiring only a "short and plain statement" showing that the party is entitled to relief. Fed.R.Civ.P. 8(a); *see, e.g., Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, ----, 122 S.Ct. 992, 996-99, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.... [C]laims lacking

merit may be dealt with through summary judgment under Rule 56."); *Conley v. Gibson,* 355 U.S. 41, 47-48, 78 S.Ct. 99, 102-03, 2 L.Ed.2d 80 (1957) ("[A]ll the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.... Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues."); *National Asbestos Workers Med. Fund v. Philip Morris, Inc.,* 74 F.Supp.2d 221, 238 (E.D.N.Y.1999) (Weinstein, D.J.) ("A party is not required to allege every particular and detail at the pleading stage.").

As the Second Circuit has explained:
The complaint should not be burdened with possibly hundreds of specific instances; and if it were, it would be comparatively meaningless at trial where the parties could adduce further pertinent evidence if discovered. They can hardly have all their evidence, down to the last detail, long in advance of trial.

*Nagler v. Admiral Corp.,* 248 F.2d 319, 326 (2d Cir.1957).

On a motion to dismiss, the Court must accept the factual allegations in the complaint and take them in the light most favorable to the plaintiff. *E.g., Christopher v. Harbury,* 536 U.S. 403, ----, 122 S.Ct. 2179, 2182, 153 L.Ed.2d 413, ---- (2002); *Swierkiewicz v. Sorema N.A.,* 534 U .S. at ---- n. 1, 122 S.Ct. at 996 n. 1. "The underlying cause of action ... must be addressed by allegations in the complaint sufficient to give the defendant fair notice." *Christopher v. Harbury,* 536 U.S. at ----, 122 S.Ct. at 2180; *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. at ----, 122 S.Ct. at 998 ("Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' ").

**\*9** Plaintiffs have adequately pleaded the elements of their cause of action under 46 U.S.C. § 10313; specifically, plaintiffs have alleged that: (1) voyages ended; (2) the plaintiff seafarers were discharged; and (3) payment was withheld without sufficient cause. (Dkt. No. 3: Am. Compl. ¶¶ 75-77, 104, 107.) *See, e.g., Guenther v. Sedco, Inc.,* 93 Civ. 4143, 1998 WL 898349 at *4 (S.D.N.Y. Dec.22, 1998) ("Liability under § 10313(g) can be demonstrated upon the showing of two facts: failure to pay the wages when

Not Reported in F.Supp.2d                                                                    Page 11
Not Reported in F.Supp.2d, 2002 WL 1465907 (S.D.N.Y.), 7 Wage & Hour Cas.2d (BNA) 1703
**(Cite as: Not Reported in F.Supp.2d)**

due, and absence of sufficient cause for the failure to pay."); *Breslin v. Maritime Overseas Corp.,* 662 F.Supp. 195, 197 (S.D.N.Y.1987)* (same); *see also, e.g., Su v. M/V Southern Aster,* 978 F.2d 462, 467-68 (9th Cir.1992) ("Necessary to recovery under [§ 10313] is a showing that (1) the voyage ended, (2) ... the seafarer has been discharged, and (3) payment was withheld without sufficient cause."), *cert. denied,* 508 U.S. 906, 930, 113 S.Ct. 2331, 2332, 2395, 124 L.Ed.2d 244 (1993); *Vidovic v. Losinjska Plovidba Oour Broadastvo,* 868 F.Supp. 691, 694 (E.D.Pa.1994) ("To recover penalty wages under the statute, [plaintiff] must prove that: (1) the voyage ended; (2) he, as a foreign seaman, was discharged in a port of the United States; and (3) without sufficient cause, payment of wages was withheld for more than four days after the date of discharge."). Accordingly, viewing the allegations in the amended complaint in the light most favorable to plaintiffs, plaintiffs have stated a claim under § 10313.

[7] Further, contrary to NCL's assertion, a prior demand for wages is not necessary to a claim brought under 46 U.S.C. § § 10313(f) & (g). *See, e.g., U.S. Bulk Carriers, Inc. v. Arguelles,* 400 U.S. 351, 352-58, 91 S.Ct. 409, 411-13, 27 L.Ed.2d 456 (1971) (seaman may assert wage claim in federal court under the predecessor to § 10313, even though he had not previously pursued arbitral remedies provided by contractual grievance procedures); *Monteiro v. Sociedad San Nicolas, S.A.,* 280 F.2d 568, 574 (2d Cir.) (predecessor to § 10313 does not requie a demand for payment, "although the absence of demand is relevant but not determinative on the issue whether the non-payment was 'without sufficient cause,' so that penalty wages would also be due."), *cert. denied,* 364 U.S. 915, 81 S.Ct. 272, 5 L.Ed.2d 228 (1960). Indeed, NCL's Reply Brief concedes that plaintiffs need not have invoked the CBAs' grievance procedure before bringing their § 10313 action. (*Compare* Dkt. No. 21: NCL Reply Br. at 3 *with* Dkt. No. 13: NCL Br. at 20-21.)

*CONCLUSION*

Based on the foregoing, NCL's motion to dismiss should be *GRANTED* on statute of limitations grounds as to plaintiffs' first cause of action for wages prior to May 17, 2000 under the First Collective Bargaining Agreement only as to vessels that flew the Bahamian flag; *GRANTED* as to plaintiff's first cause of action for breach of contract on statute of limitations grounds as to plaintiffs' wage claims prior to May 17, 2000 under the Second

Collective Bargaining agreement; and *DENIED* in all other respects.

*FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION*

**\*10** Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman, 40 Centre Street, Room 201, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Berman. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57-59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237-38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

S.D.N.Y.,2002.
Bolanos v. Norwegian Cruise Lines Ltd.
Not Reported in F.Supp.2d, 2002 WL 1465907 (S.D.N.Y.), 7 Wage & Hour Cas.2d (BNA) 1703

Briefs and Other Related Documents (Back to top)

• 1:01cv04182 (Docket) (May. 17, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.