

Not Reported in F.Supp.2d                                                                                                              Page 1
Not Reported in F.Supp.2d, 2003 WL 23979014 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Oregon.
Allen E. BURNS; et al., Plaintiffs,
v.
MBK PARTNERSHIP; et al., Defendants.
**No. Civ. 03-3021-CO.**

Nov. 5, 2003.

Austin W. Crowe, Jr., Peggy L. Crane, Thomas E. Lindley, Stephanie K. Hines, Perkins Coie, LLP, Portland, OR, for Plaintiffs.
Daniel E. O'Leary, Davis Wright Tremaine, Bellevue, WA, Kathleen R. Dent, Lawrence B. Burke, Davis Wright Tremaine, LLP, Brian D. Chenoweth, Christopher W. Rich, Rycewicz & Chenoweth, LLP, Karl G. Anuta, Sokol & Anuta, P.C., Lee S. Aronson, Schulte Anderson DownesAronson Bittner, Jeffrey K. Handy, United States Attorney's Office, Portland, OR, Barbara M. Diiaconi, Boivin Uerlings & Diiaconi, PC, Klamath Falls, OR, Karen Locha Moynahan, Oregon Department of Justice, Salem, OR, Michael James Zevenbergen, US Department of Justice, Seattle, WA, for Defendants.
Rachel C. Carey, Smith Freed & Eberhard, Portland, OR, for Plaintiffs, Defendants and Claimants.
Jeffrey W. Hansen, Smith Freed & Ebrhard, P.C., Portland, OR, for Defendants and Claimants.

FINDINGS AND RECOMMENDATION
COONEY, Magistrate J.
**\*1** In their Amended Complaint, plaintiffs allege claims for cost recovery and contribution under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601 et seq.; cost recovery and contribution under the Oregon Superfund, ORS 465.200 et seq.; declaratory relief; violation of Title IX of the Organized Crime Control Act of 1970, as amended, 18 U.S.C. § 1961 et seq. (RICO); unfair trade practices, ORS 646.605 et seq.; fraud; and negligence, relating to properties purchased from defendants which defendants allegedly knew to be contaminated with asbestos and other hazardous materials on the site. Plaintiffs seek damages, remedial action and response costs, treble damages, punitive damages, interest, and costs and attorney's fees. This court has jurisdiction pursuant to 28 U.S.C. § § 1331 and 1367. Before the court are motions to dismiss plaintiffs' RICO (sixth claim) and fraud (eighth claim) claims brought by defendant Lisa Stewart (# 40); defendants Melvin L. Stewart (Stewart), Mary Lou Stewart, and M.L. Stewart, Inc. (# 43) (Stewart defendants); defendants MBK Partnership (MBK), and Kenneth L. Tuttle, individually and as Trustee of the Tuttle Trust, and Kenneth L. Tuttle, M.D., P.C. (Tuttle) (# 45); and defendant Maurice E. Bercot (# 47). In addition, the Stewart defendants move to dismiss the fraud claim alleged against defendant M.L. Stewart, Inc., only (ninth claim). Plaintiffs oppose the motions to dismiss. Subsequent to court hearing on defendants' motions to dismiss, supplemental briefing was filed by the parties.

I. *BACKGROUND*

Plaintiffs are thirteen families who bought residential properties from defendants in a subdivision known as North Ridge Estates in Klamath Falls, Oregon. Plaintiffs allege that defendants knew the properties were heavily contaminated with asbestos and other hazardous materials associated with WWII-era buildings on the site and, despite this knowledge, defendants did not reveal the contamination to plaintiffs and they actively concealed its existence from them. Plaintiffs allege that defendants have been engaged in fraudulent activities for years, working together through the use of the mails and interstate wires to unload these properties on plaintiffs. Plaintiffs allege that, in reliance on defendants' assurances, they have built homes on the properties and, as a result of the contamination, plaintiffs are trapped in valueless properties that threaten their health.

Pertinent allegations of plaintiffs' Amended Complaint and their RICO Case Statement will be addressed below.

II. *LEGAL STANDARDS*

Federal courts require notice pleading. A pleading must give fair notice and state the elements of the claim plainly and succinctly, showing the party is entitled to relief. *Lynn v. Sheet Metal Workers' Int'l Ass'n,* 804 F.2d 1472, 1478 (9th Cir.1986), *dismissal*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  Page 2
Not Reported in F.Supp.2d, 2003 WL 23979014 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

*denied,* 487 U.S. 1215, 108 S.Ct. 2866, 101 L.Ed.2d 902 (1988), *aff'd,* 488 U.S. 347, 109 S.Ct. 639, 102 L.Ed.2d 700 (1989). The court accepts plaintiff's material allegations in the complaint as true and construes them in the light most favorable to plaintiff. Abramson v. Brownstein, 897 F.2d 389, 391 (9th Cir.1990). Dismissal under Federal Rules of Civil Procedure 12(b)(6) is proper where the claim lacks either a cognizable legal theory or lacks sufficient facts to state a legally cognizable claim. SmileCare Dental Group v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 782 (9th Cir.1996); Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.1988). A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that plaintiff can prove no set of facts in support of a claim. Abramson, 897 F.2d at 391.

### III. *DISCUSSION*

**\*2** Defendants move to dismiss the RICO claim and the fraud claims on the grounds that the fraud allegations are not pleaded with the particularity required by Federal Rules of Civil Procedure 9(b), and the RICO claim fails to adequately allege predicate acts, fails to allege the existence of an enterprise or pattern of racketeering activity, fails to allege the existence of an enterprise distinct from the pattern of racketeering activity, and fails to allege that the enterprise is distinct from the person. Plaintiffs respond that they have pleaded their fraud and RICO claims against defendants with sufficient particularity to satisfy Rule 9(b), they have pleaded the predicate acts in their RICO claim with sufficient particularity, and they have sufficiently pleaded the existence of an enterprise and pattern of racketeering activity. Defendants reply that, contrary to plaintiffs' contentions, plaintiffs have not pleaded their fraud allegations with particularity because they fail to identify the individual defendant responsible for the predicate acts they rely upon. They reply that plaintiffs fail to allege an enterprise separate and apart from the pattern of racketeering activity, and the "person" distinct from the RICO enterprise. Plaintiffs contend in their surreply that they allege a RICO enterprise separate and distinct from the RICO person.[FN1]

> FN1. Defendants raise new arguments in their reply briefs and supplemental briefs. Because plaintiffs have responded to these new arguments, they will be considered by the court.

In their sixth claim, Plaintiffs allege violations of 18 U.S.C. § § 1962(c) and (d) against Stewart, Bercot, Tuttle, Mary Lou Stewart, and Lisa Stewart. 18 U.S.C. § 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

To state a claim for relief under § 1962(c), plaintiffs must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.I. v. Imrex Co., 473 U.S. 479, 496 (1985) (footnote omitted).

The enterprise is "an entity separate and apart from the pattern of activity in which it engages." United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); Simon v. Value Behavioral Health, Inc., 208 F.3d 1073, 1083, *as amended,* 234 F.3d 428 (9th Cir.2000), *cert. denied,* 531 U.S. 1104, 121 S.Ct. 843, 148 L.Ed.2d 723 (2001). The enterprise "must have some sort of structure for making decisions and mechanisms for controlling and directing the affairs of the group on an ongoing basis rather than an ad hoc basis." Symantec Corp. v. CD Micro, Inc., No. Civ. 02-406-KI, 2002 WL 31112178, *2 (D.Or. Sept.17, 2002). To constitute a pattern of racketeering activity, plaintiffs must allege at least two predicate acts which are related and continuous. Altamont Summit Apartments LLC v. Wolff Props. LLC, No. CIV. 01-1260-BR, 2002 WL 926264, at *11 (D.Or. Feb.13, 2002) (citing Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1527 (9th Cir.1995)). "[A] plaintiff properly pleads a RICO pattern where it alleges multiple predicate acts against multiple individuals over a significant period of time since that clearly satisfies RICO's requirement of 'two or more acts of racketeering activity.' " *Walsh v. Emerson,* Nos. CIV. 88-952-DA, 88-1367-DA, 1990 WL 47319, at *8 (D.Or. Jan.19, 1990) (quoting Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1469 (9th Cir.1987).

**\*3** In making their arguments in support of dismissing the RICO claims against them, defendants focus on certain paragraphs of plaintiffs' Amended Complaint and do not acknowledge other allegations incorporated into their RICO claim, or allegations contained in plaintiffs' RICO Case Statement.[FN2] Here, plaintiffs allege that MBK Partnership is the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                Page 3
Not Reported in F.Supp.2d, 2003 WL 23979014 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

enterprise. (Am. Compl. ¶ 242; RCS at 20, No. 6(a)). A partnership is a formal, legal entity distinct from its partners. *See* ORS 67.050. Plaintiffs allege that MBK Partnership buys and sells real estate in the Klamath Falls area and continues to exist as a functioning entity today. (Am. Compl. ¶ ¶ 242-243; RCS at 20, No. 6(b)). Clearly, plaintiffs allege that the partnership is an ongoing entity. The enterprise's structure and its management are set forth at paragraphs 30-40, 244-245 of their Amended Complaint. The partnership business of buying and selling real estate includes as part of its business the sale of lots in the North Ridge Estates. Plaintiff alleges that MBK has real estate holdings separate and apart from North Ridge Estates. (RCS at 21, Nos. 7-8.) The pattern of racketeering activity is alleged to be the sale of properties in the North Ridge Estates by defendants, through more than two instances of mail or wire fraud occurring over a significant period of time, occurring as part of a common scheme or plan. These instances, which include related multiple predicate acts over a period of time from 1979 through January 2003, are detailed in plaintiffs' allegations. (Am. Compl. ¶ ¶ 51-191, 250-258, 262; RCS at 19-20, No. 5(f)). The court is satisfied that plaintiffs adequately allege an enterprise, a pattern of racketeering activity, and an enterprise distinct from the pattern of racketeering activity.

> FN2. Plaintiffs' Rico Case Statement may be considered in determining whether plaintiffs have stated a RICO claim.

The term "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4) (emphases added). Thus, "[t]he definition of 'enterprise' encompasses both groups with a formal legal structure and those whose members merely associate in fact." *Simon,* 208 F.3d at 1083; *Turkette,* 452 U.S. at 581-82. Under Oregon law, a partnership is an entity distinct from its partners. ORS 67.050. "A RICO enterprise refers " 'to a being different from, not the same as or part of, the person whose behavior the act was designed to prohibit." " *Bodtker v. Forest City Trading Group.* No. CV-99-533-ST, 1999 WL 778583, at *5 (D.Or. Oct.1, 1999) (quoting *Rae v. Union Bank,* 725 F.2d 478, 481 (9th Cir.1984)).

Because the "person" liable under § 1961(c) must be "employed by or associated with" the RICO enterprise, "the person may not be the same as the RICO enterprise." *Bodtker,* 1999 WL 778583, at *5. The enterprise must be distinct from the person liable. *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 161-62, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001) (and cases cited); *Rae v. Union Bank,* 725 F.2d 478, 481 (9th Cir.1984); *River City Mkts., Inc. v. Fleming Foods W., Inc.,* 960 F.2d 1458, 1461 (9th Cir.1992). Here, plaintiffs allege that the legal entity, MBK Partnership, is the enterprise and names its partners as the RICO defendants; plaintiffs do not name MBK Partnership as a RICO defendant.

**\*4** Defendants contend that in *Parker & Parsley Petroleum Co. v. Dresser Indus.,* 972 F.2d 580 (5th Cir.1992), the court held that the partners were not distinct "persons" for purposes of RICO because the partners committed the predicate acts in the course of their regular business. The court agrees with plaintiffs that the court did not so hold. The *Parker* court, in fact, determined that, where the partnership was identified as the enterprise, plaintiffs failed to state a RICO enterprise because the alleged predicate acts were committed by the partnership the enterprise in the regular course of business, and because plaintiffs did not allege that the partners committed the predicate acts. *Id.* at 583-84.

The remaining cases relied upon by defendants concern whether certain associations in fact enterprises were distinct from the RICO defendants. Because plaintiffs here allege that a separate legal entity MBK Partnership is the enterprise, these cases are not on point to the circumstances alleged in this case. This distinction was recognized by a case relied upon by defendants. In *Bodtker,* 1999 WL 778583, the Oregon district court analyzed an association in fact enterprise,[FN3] and stated that, "Alleging conduct by officers or employees who operate or manage a corporate enterprise satisfies the 'distinctiveness' requirement," (citing *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.,* 46 F.3d 258, 268 (3d Cir.1995)); *Bennett v. Berg,* 685 F.2d 1053, 1061 n. 9 (8th Cir.1982) ("The RICO Act encompasses two kinds of enterprises: legal entities and 'associations in fact.' Where a legal entity is alleged as the RICO enterprise, this entity is likely to be clearly distinct from the acts of racketeering." (citation omitted) (and cases cited)).

> FN3. The *Bodtker* court, citing § 1961(4), stated that, "An 'association in fact enterprise' is defined by the statute as a 'union or group of individuals associated in fact although not a legal entity." '

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                            Page 4
Not Reported in F.Supp.2d, 2003 WL 23979014 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

The Supreme Court in *King,* 533 U.S. 158, 121 S.Ct. 2087, 150 L.Ed.2d 198, *supra,* held that the sole shareholder of a closely held corporation was a person separate and distinct from the enterprise, the corporation. Relying on the "ordinary English" of § 1962(c), the Court found that "the person and the victim, or the person and the tool, are different entities, not the same." *Id.* at 161, 162. The Court stated: "The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in the statute that requires more 'separateness' than that." *Id.* at 163; *accord, Sever v. Alaska Pulp Corp.,* 978 F.2d 1529, 1534 (9th Cir.1992) (plaintiff satisfied allegation requirement that the person be distinct from enterprise by naming the several individual corporate officers as defendants/persons and the corporation as the enterprise); *United States v. Benny,* 786 F.2d 1410, 1414-16 (9th Cir.1986); *see Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.,* 46 F.3d 258, 268 (3d Cir.1995).

The Ninth Circuit in *Benny,* 786 F.2d at 1414-16, upheld an indictment and conviction for racketeering under § 1962(c) where Benny's co-defendants were employed by or associated with the enterprise, "George I. Benny," a sole proprietorship. The court adopted the Seventh Circuit's analysis in *McCullough v. Suter,* 757 F.2d 142 (7th Cir.1985), that "A sole proprietorship is a recognized legal entity, and, provided it has any employees, is in any event a 'group of individuals associated in fact.'" *Benny,* 786 F.2d at 1415-16. The *Benny* court noted that a sole shareholder of a corporation receives some legal protections from the corporate form, but that it was this sort of legal shield for illegal activity which RICO was intended to pierce. The court went on to state: "While a sole proprietorship with employees or associates does not receive similar legal protections '[t]he only important thing is that [the enterprise] be either formally (as when there is a corporation) or practically (as when there are other people besides the proprietor working in the organization) separable from the individual.' " *Id.* at 1416 (quoting *McCullough,* 757 F.2d at 144). The court found that the *McCullough* rule "avoids the ontological conundrum of interpreting RICO to make liable an individual who associates with himself or herself, while it maintains at the same time RICO's ability to discourage and punish illegal activity associated with various groups." *Benny,* 786 F.2d at 1416; *River City Mkts.,* 960 F.2d at 1461 (*Rae,* 725 F.2d 478, *supra,*

"embodies the maxim that an individual cannot associate or conspire with himself ...." (citing *Benny,* 786 F.2d 1410)); *see United States v. Feldman,* 853 F.2d 648, 656-57 (9th Cir.1988).

**\*5** The court's reasoning in *Benny* addresses a related concern raised by defendants; they contend that plaintiffs attempt to hold the MBK partners liable for the acts of the partnership and they may not do indirectly what they cannot do directly. They contend that there is no basis for concluding that the individual partners are separate and distinct from MBK Partnership. The Ninth Circuit in *Sever,* 978 F.2d 1529, *supra,* found that the district court erred in finding that the individual officers and employees of the corporate defendant were not persons distinct from the corporate enterprise because a corporation cannot operate except through its officers or agents. The court found that the *Benny* decision "makes it clear that the inability of a corporation to operate except through its officers is not an impediment to section 1962(c) suits." The court stated: "That fact poses a problem only when the *corporation* is the named defendant when it is both the 'person' and the 'enterprise.' " *Id.* at 1534 & n. 2.

In this regard, the court rejects any contention by defendants that by alleging in the fraud claims that MBK Partnership was an active participant, plaintiffs essentially bring the partnership into the RICO claim. A claim of fraud and a claim of a RICO violation are different claims which require the allegation of different elements.

Analogous to cases which find that allegations that a corporation or sole proprietorship, legal entities, are distinct from the person or persons liable when the corporation or sole proprietorship is named as the enterprise and not a defendant, plaintiffs here allege that MBK Partnership, a legally different entity, is the enterprise and not a RICO defendant. *See* 18 U.S.C. § 1961(4); *King,* 533 U.S. at 162-63; *Sever,* 978 F.2d at 1534; *Benny,* 786 F.2d at 1415-16. Clearly, plaintiffs allege the enterprise distinct from the allegedly liable persons.

The court finds that plaintiffs allege the RICO enterprise separate and distinct from the pattern of racketeering activity and separate and distinct from the RICO person to state a RICO claim. Defendants' motions on these grounds should be denied.

In addition to plaintiffs' RICO claim (sixth claim), plaintiffs allege common law fraud against MBK, Stewart, Mary Lou Stewart, Bercot, Tuttle, and Lisa

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 5
Not Reported in F.Supp.2d, 2003 WL 23979014 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

Stewart (eighth claim) and common law fraud against M.L. Stewart, Inc. (ninth claim). Defendants contend that plaintiffs fail to plead their fraud allegations in support of their RICO claim and their state common-law fraud claim with the requisite particularity. Federal Rules of Civil Procedure 9(b) provides in pertinent part that, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity...." The Ninth Circuit has held that "Rule 9(b) 'requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.' " *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1400 (9th Cir.1986) (quoting *Bosse v. Crowell Collier and Macmillan,* 565 F.2d 602, 611 (9th Cir.1977); *Sec. Investor Protection Corp. v. Poirier,* 653 F.Supp. 63, 66 (D.Or.1986); *Arboireau v. Adidas-Salomon,* No. CV-01-015-ST, 2001 WL 1471748, at *4 (D.Or. July 25, 2001). This means that "the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber,* 806 F.2d at 1401; *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985). Additionally, plaintiff must plead the role of each defendant in each fraudulent scheme. *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.,* 940 F.2d 397, 405 (9th Cir.1991). However, Rule 9(b) does not require the pleading of detailed evidentiary matter. *Walling v. Beverly Enters.,* 476 F.2d 393, 397 (9th Cir.1973). Rule 9(b)'s particularity requirement applies to RICO claims based upon fraud. *Id.; Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 541 (9 th Cir.1989).

**\*6** Defendants refer to paragraphs 261 and 296 of the Amended Complaint in which plaintiffs list the elements of defendants' alleged scheme to defraud. Defendants contend that plaintiffs merely list a series of representations without alleging who made them, to whom they were made, or whether they were oral or written. Plaintiffs contend that these paragraphs are summaries of defendants' fraudulent scheme and that defendants ignore the general allegations of the Amended Complaint which specify in detail the time, place, and nature of various representations and concealment by defendants.

While defendants set forth these paragraphs in their motions, they do so only in part. Almost all of the instances alleged by plaintiffs include specific paragraph citations to which they refer. For example, plaintiffs allege in paragraph 261(h) of their RICO claim (sixth claim) that defendants' alleged fraudulent scheme included marketing North Ridge Estates as suitable for residential development through newspaper ads, flyers, signs, and other means, and specifically reference paragraphs 66-77. A review of paragraphs 66-77 indicates that Stewart, Mary Lou Stewart, Tuttle, and Lisa Stewart advertised and arranged for the advertisement of lots and homes in North Ridge Estates through a newspaper, the *Klamath Herald and News* with advertisements appearing on June 21, 1992, July 25, 1993, February 21, 1993, March 11, 1996, and October 1, 2000; and real estate magazine *Homes, Ranch and Business,* as recently as January 2003. Plaintiffs allege in these paragraphs that not one of the advertisements in either publication ever referred to or noted the presence of asbestos or of lead-based paint. These alleged misrepresentations and omissions, including individual defendants, and relevant dates are set forth in plaintiffs' RICO Case Statement. (RCS at 6-7, No. 5(b)(c)); *see* Am. Compl. ¶ 296(h) (referencing same paragraphs). Moreover, in their RICO Case Statement, plaintiffs set forth details of the letter sent to DEQ in 1979 by defendant Bercot, and details of the purchases by plaintiffs of their properties, and set forth the alleged misrepresentations and omissions, naming individual defendants. (RCS at 6-19, No. 5(b), (c).) In paragraph 296(m) of their fraud claim (eighth claim), plaintiffs allege that elements of defendants' scheme to defraud included "affirmatively representing to certain Homeowners that the asbestos debris was 'garbage' and/or 'of no concern,' " and referencing paragraphs 83, 94, 106, 169. At paragraph 83, plaintiffs allege that in early May 1994, while the Burnses walked their property with Stewart, Stewart told them that building debris "was just shingles and siding from old buildings and that it was of 'no concern,' " and did not disclose the presence of asbestos or lead-based paint. At paragraph 94, in late March 1997, while the Villas walked the property with Stewart and Lisa Stewart, Stewart told them that "there was a mound at the front of their property with a 'bunch of stuff in it' and that they 'might not want to mess with it," ' and did not disclose the presence of asbestos or lead-based paint. At paragraph 106, plaintiffs allege that, during construction of the house on the Selim property, built by Neil and Jenny Walles, contracted for during 1998 and advertised in May 2000, Stewart told the Walles that there was " 'garbage' " buried on a portion of the property. At paragraph 169, plaintiffs allege that in June 1999, while the Walles walked their property with Stewart, Stewart told them that construction debris on the property was " 'old building materials,' " and did not disclose the presence of asbestos or lead-based paint. In determining whether plaintiffs have alleged their claims with particularity, the court

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                         Page 6
Not Reported in F.Supp.2d, 2003 WL 23979014 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

will consider the complaint as a whole, considering allegations referenced in complaint paragraphs and those paragraphs incorporated into the claims.

**\*7** The Stewart defendants complain in their supplemental brief that, when naming multiple defendants, plaintiffs do not distinguish between the defendants. The court reads these allegations as pleading the action alleged against each defendant named and, therefore, an allegation such as, "MBK, Stewart, Mary Lou Stewart, Tuttle, and Lisa Stewart advertised or arranged for the advertisement of lots and homes in North Ridge Estates through the newspaper, real estate magazines, and flyers," (¶ 66), alleges that "Stewart ... advertised or arranged for the advertisement ...," and "Mary Lou Stewart ... advertised or arranged for the advertisement...."

The Stewart defendants contend that plaintiffs do not distinguish between Mary Lou Stewart and other defendants in this case but rely solely on the general allegations contained in paragraph 255 that she participated in the fraudulent scheme by directing the affairs of MBK Partnership, as a general partner, by allowing agents of MBK to make fraudulent statements and conceal material facts with knowledge of such statements and concealment.

Plaintiffs allege in paragraph 66, incorporated into the RICO and fraud claims, that Mary Lou Stewart advertised or arranged for the advertisement of lots and homes in North Ridge Estates through the newspaper, real estate magazines, and flyers, and then go on to identify specific dates when the advertisements appeared. They allege that Mary Lou Stewart as recently as January 2003 caused listings for lots or houses in North Ridge Estates to be placed on the MLS listings system, and which did not refer or note the presence of asbestos or lead-based paint. (*See* RCS at 6-8, No. 5(b).) In their RICO Case Statement, plaintiffs also allege that in 1990 when the property was subdivided by MBK, Mary Lou Stewart did not insure that deed notices setting forth the asbestos burial sites were recorded. They further allege throughout the detail of the purchases of plaintiffs' respective properties from MBK that Mary Lou Stewart did not disclose the presence of asbestos or lead on the respective properties, and as to some plaintiffs, Mary Lou Stewart caused these plaintiffs to receive their warranty deed via U.S. mail. (*See* RCS at 6-19, No. 5(b).) Plaintiffs allege that Mary Lou Stewart participated in the fraudulent scheme by directing the affairs of MBK, including the fraudulent sales of property at North Ridge Estates, as a general partner, by allowing agents of MBK to make fraudulent statements and actively conceal material facts with knowledge of those fraudulent statements and active concealment, and by concealing and attempting to conceal the presence of asbestos at North Ridge Estates. (Am.Compl.¶ 255.) They further allege that Mary Lou Stewart had knowledge that there was asbestos located on and beneath North Ridge Estates but did not disclose such presence to the homeowners prior to May 2002. (Am. Compl. ¶ ¶ 259-260; RCS at 2, No. 2.) Despite defendants' contention that plaintiffs fail to identify a specific act performed by Mary Lou Stewart and allegations concerning advertising are deficient, the court finds plaintiffs' allegations in this regard sufficient to allow Mary Lou Stewart to formulate an answer to plaintiffs' allegations against her; plaintiffs need not allege evidentiary matter. These allegations, in addition to others alleged in the Amended Complaint and RICO Case Statement, attribute specific conduct to Mary Lou Stewart that establishes her connection to and liability for the alleged misrepresentations and omissions and to the alleged fraudulent scheme, which is all that is required. *See Altamont Summit Apartments,* 2002 WL 926264, at \*11(citing *Moore,* 885 F.2d at 541).

**\*8** Plaintiffs allege numerous misrepresentations and omissions by Stewart. They allege that Stewart told the Burnses in May 1994 that building debris was just shingles and siding from old buildings which was of " 'no concern,' " (¶ 83); that Stewart told the Villas in late March 1997 that there was a mound at the front of their property with a " 'bunch of stuff in it' " and they " 'might not want to mess with it," ' (¶ 94), and that in June 1999, Stewart told the Walles that construction debris on their property was " 'old building materials,' " (¶ 169). In each of these instances, plaintiffs allege that Stewart did not disclose the presence of asbestos or lead-based paint on the properties. Plaintiffs allege in paragraph 66, incorporated into the RICO and fraud claims, that Stewart advertised or arranged for the advertisement of lots and homes in North Ridge Estates through the newspaper, real estate magazines, and flyers, and then identify specific dates when the advertisements appeared. They allege that Stewart as recently as January 2003 caused listings for lots or houses in North Ridge Estates to be placed on the MLS listings system, and which did not refer or note the presence of asbestos or lead-based paint. (*See* RCS at 6-8, No. 5(b).) In their RICO Case Statement, plaintiffs also allege that in 1990 when the property was subdivided by MBK, Stewart did not insure that deed notices setting forth the asbestos burial sites were recorded. Plaintiffs further allege that Stewart did not disclose

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 7
Not Reported in F.Supp.2d, 2003 WL 23979014 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

the presence of asbestos or lead on the respective properties, and as to some plaintiffs, Stewart caused these plaintiffs to receive their warranty deed via U .S. mail. (*See* RCS at 6-19, No. 5(b).) Plaintiffs allege that Stewart participated in the scheme to defraud by managing the affairs of MBK, including the fraudulent sales of property in North Ridge Estates, by making fraudulent representations to certain homeowners, referencing paragraphs 78-170, and by concealing and attempting to conceal the presence of asbestos at North Ridge Estates. (Am.Compl.¶ 253.) They further allege that Stewart had knowledge that there was asbestos located on and beneath North Ridge Estates but did not disclose such presence to the homeowners prior to May 2002. (Am. Compl. ¶ ¶ 259-260; RCS at 2, No. 2.) The court finds that plaintiffs identify specific acts performed by Stewart by time place and manner, which are sufficient to allow Stewart to formulate an answer to plaintiffs' allegations against him; plaintiffs need not allege evidentiary matter. These allegations, in addition to other allegations in the Amended Complaint and the RICO Case Statement, attribute specific conduct to Stewart that establishes his connection to and liability for the alleged misrepresentations and omissions. *See [Altamont Summit Apartments,](#) 2002 WL 926264, at \*11* (citing *[Moore,](#) 885 F.2d at 541).*

The Tuttle defendants contend that plaintiffs do not distinguish between Tuttle and other defendants, nor do they distinguish between the various Tuttle defendants,[FN4] but rely on the general allegation that Tuttle participated in the fraudulent scheme as a general partner and individually by allowing agents of MBK to make fraudulent statements and conceal material facts. They contend that plaintiffs do not plead the specific role that Tuttle played in the scheme nor allege that Tuttle made any misrepresentations.

> [FN4.] In their Amended Complaint, plaintiffs' references to "Tuttle" refer to Kenneth L. Tuttle, alleged to be an individual; as trustee of the Tuttle Trust; and the entity Kenneth L. Tuttle, M.D., P.C., in all three capacities or one or more capacities. (Am.Compl.¶ 19.)

**\*9** Plaintiffs allege in paragraph 66, incorporated into the RICO and fraud claims, that Tuttle advertised or arranged for the advertisement of lots and homes in North Ridge Estates through the newspaper, real estate magazines, and flyers, and identify specific dates when the advertisements appeared. They allege that Tuttle as recently as January 2003 caused listings for lots or houses in North Ridge Estates to be placed on the MLS listings system, and which did not refer or note the presence of asbestos or lead-based paint. (*See* RCS at 6-8, No. 5(b).) In their RICO Case Statement, plaintiffs also allege that in 1990 when the property was subdivided by MBK, Tuttle did not insure that deed notices setting forth the asbestos burial sites were recorded. They further allege throughout the detail of the purchases of plaintiffs' respective properties from MBK that Tuttle did not disclose the presence of asbestos or lead on the respective properties, and as to some plaintiffs, that Tuttle caused these plaintiffs to receive their warranty deed via U.S. mail. (*See* RCS at 6-19, No. 5(b).) Plaintiffs allege that Tuttle participated in the alleged scheme to defraud by directing the affairs of MBK, including the fraudulent sales of property in North Ridge Estates, both as a general partner and individually, by allowing agents of MBK to make fraudulent statements and actively conceal material facts with knowledge of those fraudulent statements and active concealment, and by concealing and attempting to conceal the presence of asbestos at North Ridge Estates. (Am. Compl. ¶ 256 .) They further allege that Tuttle had knowledge that there was asbestos located in and beneath North Ridge Estates and did not disclose such presence to the homeowners prior to May 2002. (Am. Compl. ¶ ¶ 259-260; RCS at 3, No. 2.)

The court finds that it is not necessary that plaintiffs allege the specific capacity of Tuttle as to each alleged misrepresentation or omission or act in the alleged fraudulent scheme.[FN5] The court finds that plaintiffs' allegations against Tuttle sufficient to allow Tuttle to formulate an answer; plaintiffs need not allege evidentiary matter. These allegations, in addition to others in the Amended Complaint and RICO Case Statement, attribute specific conduct to Tuttle that establishes Tuttle's connection to and liability for the alleged misrepresentations and omissions, which is all that is required. *See [Altamont Summit Apartments,](#) 2002 WL 926264, at \*11* (citing *[Moore,](#) 885 F.2d at 541).*

> [FN5.] Tuttle offers a response to interrogatories as an exhibit to his supplemental brief, which states that at all times Kenneth L. Tuttle, M.D., P.C. Employees Profit Sharing and Pension Fund for Kenneth L. Tuttle's interest in MBK was a financial interest only and did not involve management responsibilities, and that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 8
Not Reported in F.Supp.2d, 2003 WL 23979014 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

Kenneth L. Tuttle, individually, and Kenneth L. Tuttle, M.D., P.C., at no time had an interest in any responsibilities or duties in MBK. On a motion to dismiss, the court must take the complaint allegations as true and may not consider extrinsic evidence.

While Lisa Stewart does not make any specific arguments concerning allegations against her, a review of the complaint shows that plaintiffs allege the fraud-based claims against her with particularity. They allege throughout their complaint that Lisa Stewart acted as the real estate agent for MBK Partnership, and in their RICO Case Statement, plaintiffs allege that as recently as January 2003 Lisa Stewart was listed as a broker for properties and homes in North Ridge Estates, (RCS at 7, No. 5(b)). In paragraph 66, incorporated into the RICO and fraud claims, plaintiffs allege that Lisa Stewart advertised or arranged for the advertisement of lots and homes in North Ridge Estates through the newspaper, real estate magazines, and flyers, and then identify specific dates when the advertisements appeared. They allege that as recently as January 2003 Lisa Stewart caused listings for lots or houses in North Ridge Estates to be placed on the MLS listings system, and which did not refer or note the presence of asbestos or lead-based paint. (*See* RCS at 6-8, No. 5(b).) Plaintiffs further allege that, as to some plaintiffs, Lisa Stewart did not disclose the presence of asbestos or lead on the respective properties, and that she caused some plaintiffs to receive their warranty deed via U.S. mail. (*See* RCS at 6-19, No. 5(b).) Plaintiffs allege that Lisa Stewart participated in the scheme to defraud by acting as the sellers' agent on almost every sale of property in North Ridge Estates, and by concealing and attempting to conceal the presence of asbestos at North Ridge Estates, and by making fraudulent representations to certain homeowners, referencing paragraphs 66-77. (Am.Compl.¶ 257.) They further allege that Lisa Stewart had knowledge that there was asbestos located on and beneath North Ridge Estates but did not disclose such presence to the homeowners prior to May 2002. (Am. Compl. ¶ ¶ 259-260; RCS at 3-4, No. 2.) These allegations of specific acts by time, place and manner are sufficient to allow Lisa Stewart to formulate an answer to plaintiffs' allegations against her; plaintiffs need not allege evidentiary matter. These allegations, in addition to others in the Amended Complaint and RICO Case Statement, attribute specific conduct to Lisa Stewart that establishes her connection to and liability for the alleged misrepresentations and omissions. *See*

*Altamont Summit Apartments,* 2002 WL 926264, at *11 (citing *Moore,* 885 F.2d at 541).

**\*10** As to Bercot, plaintiffs allege that, as a partner and on behalf of MBK, on or about October 1, 1979, he sent a letter via U.S. mail to the EPA representing that MBK would properly dispose of asbestos on the ground at North Ridge Estates and would place deed restrictions in the disposal areas when the property was subdivided. Plaintiffs allege further representations concerning asbestos were made in the letter. (Am. Compl. ¶ ¶ 54-56; RCS at 6, No. 5(b).) Plaintiffs allege in their Amended Complaint that none of MBK's partners ever recorded the presence and location of the waste sites as required by EPA's 1979 Compliance Order, (Am.Compl.¶ 61); in their RICO Case Statement, plaintiffs allege that Bercot, contrary to his assurances to EPA, did not insure that deed notices setting forth the asbestos burial sites were recorded, (RCS at 6, No. 5(b)). Plaintiffs allege in their RICO Case Statement that when plaintiffs purchased their properties, Bercot did not disclose the presence of asbestos or lead on or beneath the properties or North Ridge Estates. (RCS at 8-17, No. 5(b).) Plaintiffs allege that Bercot participated in the scheme to defraud by managing the affairs of MBK, by making fraudulent representations to the EPA, referencing paragraphs 54-56, and by concealing and attempting to conceal the presence of asbestos at North Ridge Estates. (Am.Compl.¶ 254.) They further allege that Bercot had knowledge that there was asbestos located on and beneath North Ridge Estates but did not disclose such presence to the homeowners prior to May 2002. (Am. Compl. ¶ ¶ 259-260; RCS at 2-3, No. 2.)

Contrary to Bercot's contentions throughout his briefing, plaintiffs plead the alleged fraudulent scheme throughout the allegations of their complaint, summarizing them in, *e.g.,* Amended Complaint paragraphs 1,261,296. They allege the details of Bercot's participation in the fraudulent scheme as described above, (Am.Compl.¶ 254), and as described in paragraphs 15, 30-191, (Am.Compl.¶ 291).[FN6] Plaintiffs further allege that during the period between 1979 and 1991, MBK, acting through Stewart, Bercot, and Tuttle, demolished or contracted for demolition of several buildings on the property which contained ACM and lead-based paint, and upon information and belief, MBK did not conduct the demolition in compliance with existing asbestos regulations or the EPA's Compliance Order, and after the demolition activities, ACM and lead-based paint were scattered over at least fifty acres of North Ridge Estates. (Am.Compl.¶ ¶ 57-58.) This alleged

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                      Page 9
Not Reported in F.Supp.2d, 2003 WL 23979014 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

demolition occurred during the time Bercot was managing partner of MBK, until he withdrew as a partner sometime in 1989. (Am. Compl. ¶¶ 32, 34 .) Plaintiffs allege that Bercot actively concealed the presence of asbestos on the ground at North Ridge Estates and the presence of the pipes and burial sites beneath the property from the homeowners, (Am.Compl.¶ 295); and that Bercot's concealment and misrepresentations constituted material, false representations to the homeowners, (Am.Compl.¶ 297), and that Bercot had full knowledge of the falsity of the representations, (Am.Compl.¶ 298). Plaintiffs allege that Bercot intended that the homeowners would rely on the false representations by purchasing property and/or constructing homes in North Ridge Estates, (Am.Compl.¶ 299), and that the homeowners reasonably relied on Bercot's false representations by purchasing property in North Ridge Estates and by building houses and other improvements on that property, (Am.Compl.¶ 300).

> FN6. Plaintiffs allege in summary that elements of the scheme to defraud included in pertinent part the following:
> (a) informing EPA that MBK would properly dispose of the asbestos scattered throughout North Ridge Estates and remaining on standing buildings, *see* Paragraphs 54-56, herein:
> (b) informing EPA that, prior to subdividing North Ridge Estates, MBK would set aside disposal areas in deed restrictions and prevent construction or digging in those locations, *see* Paragraphs 54-56, herein;
> (c) informing EPA that MBK would place parks on the ACWM burial sites, *see* Paragraphs 54-56, herein;
> ....
> (Am.Compl.¶¶ 261, 296.)

**\*11** The court finds that these allegations, in addition to others in the Amended Complaint and RICO Case Statement, sufficiently detail actions specifically attributable to Bercot that establishes his connection to and liability for the alleged misrepresentations or omissions, which allows him to formulate an answer; plaintiffs need not allege evidentiary matter. *See Altamont Summit Apartments,* 2002 WL 926264, at \*11 (citing *Moore,* 885 F.2d at 541).

Bercot also alleges that fraud claims may not be based on future promises and, therefore, the EPA letter cannot provide a basis for a fraud claim against him. Plaintiffs agree that failure to perform a promise, taken by itself, cannot be the basis of a fraud claim in Oregon. However, plaintiffs contend that their allegations against Bercot come within the exception to that rule because they allege that Bercot made false statements with the intent to deceive.

In discussing whether the failure to perform a promise relating to future action or conduct can constitute fraud, the Oregon Supreme Court has found that:

"The general rule is that 'fraud cannot be predicated on a promise not performed; that, to constitute actionable fraud there must be a false assertion in regard to some existing matter by which a party is induced to part with his money or property.' The mere nonperformance of a promise made in the course of negotiations or the failure to carry out an intention expressed in the course of such negotiations is not of itself either a fraud or evidence of a fraud, in the absence of allegations and proof that the representations were falsely and fraudulently made with intent to deceive; that is that the statement of intent as to the future was made in bad faith."

*Butte Motor Co. v. Strand,* 225 Or. 317, 321-22, 358 P.2d 279 (1960) (quoting *Dolph v. Lennon's, Inc.,* 109 Or. 336, 350, 220 P. 161 (1923); other citation omitted); *In re Marriage of Auble,* 125 Or.App. 554, 561-62 & n. 6, 866 P.2d 1239 (1993). As discussed above, plaintiffs allege falsity of the representations by Bercot and that he intended the homeowners to rely on his false representations. The court finds that plaintiffs' allegations come within the exception allowing a fraud claim based on future promises.

Bercot contends that plaintiffs could not have relied on his representations in the 1979 letter to the EPA because they were not aware of the letter until after this suit was filed. Plaintiffs contend that Bercot's assurances to the EPA prevented the correction of an illegal condition the presence of asbestos in the property-by concealing from the EPA defendants' true intentions with regard to the property and they, therefore, come within the exception found in *Handy v. Beck,* 282 Or. 653, 581 P.2d 68 (1978). Plaintiffs also argue that they allege reliance on Bercot's representations made in the 1979 letter. Bercot contends that the narrow exceptions stated in *Handy* and *Price v. Danek Med., Inc.,* No. CIV 95-1651-JO, 1999 WL 588171 (D.Or. July 23, 1999), are inapplicable in the circumstances here.

**\*12** The court in *Handy* recognized an exception to the general rule that to be actionable, a representation must have been made directly to the plaintiff. Relying

Not Reported in F.Supp.2d    Page 10
Not Reported in F.Supp.2d, 2003 WL 23979014 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

on section 536 of the Restatement (Second) of Torts and comments,[FN7] the court found that, where the actor prevents the correction of an illegal condition and a member of the protected class has been injured as a result, a plaintiffs' right to recover is not dependent on a misrepresentation being conveyed to plaintiffs. *Handy,* 282 Or. at 663-65 & n. 6, 581 P.2d 68; *Price,* 1999 WL 588171, at *4 (under the reasoning of *Handy,* plaintiffs could pursue their fraud-on-the-FDA claim without proof that they or their doctor relied on defendants' alleged misrepresentations to the FDA). In so holding, the court noted that section 536 is a special application of the general rule stated in section 531, which provides:

> FN7. Restatement (Second) of Torts § 536 (1977), "Information Required by Statute," provides:
> If a statute requires information to be furnished, filed, recorded, or published for the protection of a particular class of persons, one who makes a fraudulent misrepresentation in so doing is subject to liability to the persons for pecuniary loss suffered through their justifiable reliance upon the misrepresentation in a transaction of the kind in which the statute is intended to protect them.

One who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced.
*See* cmts. c, d, h. Here, the 1979 letter to the EPA indicates that subdivision of the property was contemplated at the time the letter was written. Based on plaintiffs' allegations that the representations in the letter were false, that Bercot knew that they were false, that Bercot intended that the homeowners would rely on the false representations by purchasing property and/or constructing homes in North Ridge Estates, and plaintiffs allegations that the homeowners, in fact, reasonably relied on Bercot's false representations by purchasing property in North Ridge Estates and building houses and other improvements, *see* discussion above, the court finds that the reliance element of their fraud claim is satisfied.

In their ninth claim, plaintiffs allege common law fraud against M.L. Stewart, Inc. As to paragraph 336 of the claim challenged by the Stewart defendants, plaintiffs allege that M.L. Stewart, Inc. actively concealed the presence of asbestos on and beneath the Walles Property, the Lee Property, the Devish Property, and North Ridge Estates, by representing to them that North Ridge Estates was suitable for residential development, failing to disclose contamination, burial sites or pipes during construction of these plaintiffs' homes; suggesting the placement of these plaintiffs' homes to avoid burial sites; and making specific representations concerning burial sites on the Selim property and debris on the Walle property. While plaintiffs do not specifically refer to incorporated paragraphs in paragraph 336, paragraphs 307-332 detail the building of plaintiffs Walles', Lees', and Devishes' homes on their properties. In these paragraphs, plaintiffs allege as to the Walles, Lees, and Devishes, during relevant specified periods of time, that M.L. Stewart, Inc., and its agents, identified as Stewart and Gary Stewart, saw and removed or contracted for the removal of construction debris containing asbestos and lead during the construction of these plaintiffs' homes, that Stewart was aware that the debris contained asbestos, and that at no time during the construction of these plaintiffs' homes did M.L. Stewart, Inc. and its agents disclose the presence of asbestos on or beneath these plaintiffs' properties. At paragraph 333, plaintiffs allege that prior to and during the construction of these plaintiffs' homes, M.L. Stewart, Inc. and Stewart, its president, were aware of the presence of asbestos on the ground, asbestos-containing pipes, and burial sites beneath the properties. At paragraph 335, plaintiffs allege that M.L. Stewart, Inc. and Stewart engaged in a course of conduct while constructing these plaintiffs' houses to conceal from them the fact that there was asbestos on the ground, asbestos-containing pipes, and burial sites located beneath the properties. In addition, in prior allegations incorporated into the ninth claim, plaintiffs allege that Stewart suggested placement of the Walles' home in June 1999, (Am. Compl. ¶¶ 106 and 170), the Lees' home in Spring 1997, (Am.Compl.¶ 164), and the Devish home in June 1995, (Am.Compl.¶ 99); the representations regarding the Selim property were made by Stewart to the Walles during the construction of the house which was contracted for in 1998, [FN8] (Am.Compl.¶ 106); and the representation regarding the Walle property was made by Stewart to the Walles in June 1999, (Am.Compl.¶ 169).

> FN8. The Selims purchased their property

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 11
Not Reported in F.Supp.2d, 2003 WL 23979014 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

from the Walles, who contracted with M.L. Stewart, Inc. to build a house on the Selim Property. (¶¶ 101, 104.)

**\*13** Despite defendants' contention that plaintiffs' failure to distinguish between M.L. Stewart, Inc. and its agents is deficient, the court finds plaintiffs' allegations in this regard are sufficient to allow M.L. Stewart, Inc. to formulate an answer to plaintiffs' allegations against it; plaintiffs need not allege evidentiary matter. These allegations, in addition to others alleged in the Amended Complaint and RICO Case Statement, attribute specific conduct to identified agents of defendant M.L. Stewart, Inc. that establishes the corporation's connection to and liability for the alleged misrepresentations and omissions made by its agents, Stewart and Gary Stewart; M.L. Stewart, Inc. is the only defendant in this claim and it can act only through its agents. *See* Altamont Summit, 2002 WL 926264, at \*11 (citing Moore, 885 F.2d at 541).

In their supplemental brief, the Stewart defendants contend that plaintiffs include the ninth claim in an attempt to hold Stewart liable twice for the same conduct. They also contend that no actionable fraud is stated against M.L. Stewart, Inc. because any acts by it did not contribute to plaintiffs' alleged injury since they had already purchased their properties. The alleged acts and/or omissions of the corporation in constructing houses on plaintiffs' properties are separate from any alleged acts and/or omissions when plaintiffs purchased the property from the partnership. The houses build by M.L. Stewart, Inc. are improvements to plaintiffs' properties. To the extent that the value added to the property has been diminished or lost through the alleged fraud of the corporation, plaintiffs were additionally damaged.

The court has found that plaintiffs sufficiently differentiate each defendant and allege each defendant's role in the alleged fraudulent scheme. They include specific allegations against Stewart, Mary Lou Stewart, Tuttle, Lisa Stewart, and Bercot concerning specific defendant's conduct during plaintiffs' purchases of their properties in North Ridge Estates, specified defendant's placement of advertising for North Ridge Properties, and letters sent to the EPA and/or caused to be sent to the DEQ. (*See* RCS at 2-4, Nos. 2-3) Thus, direct liability is alleged against each individual defendant and against M.L. Stewart, Inc. for the alleged fraudulent conduct in both the fraud claims and the RICO claim.

Moreover, as to the partners of MBK, each may be held indirectly liable for alleged acts and omission of their co-partners. Plaintiffs allege that Bercot managed the affairs of MBK until in or around 1989; that Stewart has managed MBK Partnership since at least 1989; that Mary Lou Stewart actively participates in and directed the affairs of MBK as a general partner; and that Tuttle actively participates in and directed the affairs of MBK as a general partner or individually. Under Oregon law, a partnership is liable for a partner's actionable conduct occurring within the course of partnership business, ORS 67.100, and each partners is liable for all obligations of the partnership, ORS 67.105.[FN9] Therefore, under the allegations as pleaded by plaintiffs, Stewart, Mary Lou Stewart, Tuttle, and Bercot will be liable for the actionable acts and omissions of the other partners in MBK Partnership. *See Axtell v. Canyon Ctr. Ltd. P'ship,* 138 F.R.D. 556, 558, 562-63 (W.D.Wis.1988) (under Wisconsin partnership law, similar to Oregon law, "Whether the individual partners personally participated in the conduct giving rise to the liability is irrelevant"; fraud allegations against "defendants" found sufficient).[FN10] Liability based on the acts of co-partners is appropriate as to plaintiffs' RICO claim as well. *See Avianca, Inc. v. Corrica,* No. Civ. A. 85-3277(RCL), 1992 WL 93128, at \*14 (Apr. 13, 1992), *as amended on reconsideration,* 1993 WL 797453 (D.D.C. March 16, 1993); *131 Main St. Assocs. v. Manko,* 897 F.Supp. 1507, 1533-35 (S.D.N.Y.1995). The court in *131 Main St. Assocs.,* 897 F.Supp. at 1534, distinguished those cases which have held that corporations cannot be held vicariously liable for RICO violations of their employers because those decisions were based on the requirement that the corporation may not be named as both a defendant "person" and as the RICO "enterprise." Because the general partners in *131 Main St. Assocs.* were not alleged to be the enterprise, the same situation as is the case here, the court found that imposing vicarious liability on the general partners would not conflate the enterprise with the person.[FN11] *Id.; see Brady v. Dairy Fresh Prods. Co.,* 974 F.2d 1149, 1154-55 (9th Cir.1992) (holding that an employer benefitted by its employee or agent's violations of § 1962(c) may be held liable under doctrines of respondeat superior and agency when the employer is distinct from the enterprise; finding respondeat superior and agency liability "furthers both the compensatory and deterrent goals of the RICO statute"); *Thomas v. Ross & Hardies,* 9 F.Supp.2d 547, 555-59 (D.Md.1998) (holding partnership liable for acts of its partner under agency and partnership liability doctrines where partnership was distinct from enterprise, and finding that imposing liability was consistent with

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                       Page 12
Not Reported in F.Supp.2d, 2003 WL 23979014 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

goals of Congress in enacting RICO). The court agrees with the rationale of the court in *131 Main St. Assocs.* in imposing liability on partners, and its statement that, "It is not unreasonable to think that if partners are held civilly liable for the RICO violations of the partnership and co-partners, they will take steps to reign in misconduct by their colleagues." 897 F.Supp. at 1533; see *Brady,* 974 F.2d at 1155; *Thomas,* 9 F.Supp.2d at 555-59.

> FN9. MBK Partnership is named as a defendant in plaintiffs' fraud claim.
>
> FN10. *Axtell* did not concern a RICO claim.
>
> FN11. The *Avianca* court does not specifically discuss the person-enterprise distinction, but holds "Partners are routinely held jointly and severally liable for the actions of their partners," and the actor's co-partner could be held liable under state partnership law. 1992 WL 93128, at *13-14. In its prior analysis of the RICO claim, the court set forth the requirements to establish a RICO claim, including the elements of: the existence of an enterprise, that defendant was employed by or associated with the enterprise, that defendant participated in the conduct of the enterprise's affairs, and that the participation was through a pattern of racketeering activity. *Id.* at *10. Thus, it would appear that the partners were alleged to be distinct from the enterprise in that case.

**\*14** The Stewart defendants contend in their supplemental brief that plaintiffs fail to allege that Mary Lou Stewart (and all defendants) was aware of asbestos and/or lead-based paint contamination in the North Ridge Estates, and fail to allege facts showing a specific intent to defraud. Rule 9(b), which requires that the circumstances constituting fraud shall be stated with particularity also provides that "intent [and] knowledge ... may be averred generally." *See Arboireau,* 2001 WL 1471748, at \*3. In the Ninth Circuit, in pleading a violation of the mail or wire fraud statute, the requirement of specific intent to deceive or defraud, *see supra,* "is satisfied by 'the existence of a scheme which was "reasonably calculated to deceive persons of ordinary prudence and comprehension," and this intention is shown by examining the scheme itself.' " *Schreiber,* 806 F.2d at 1400 (citations omitted). The allegation of a specific intent to deceive or defraud "need not be made expressly." *Sun Savings & Loan Ass'n v. Dierdorff,* 825 F.2d 187, 195 (9th Cir.1987).

Here, plaintiffs allege that Mary Lou Stewart actively participates and has participated in MBK Partnership as a general partner, that she participated in the scheme to defraud set out in the allegations by directing the affairs of the partnership, including the fraudulent sales of property in North Ridge Estates, as a general partner, by allowing agents of MBK to make fraudulent statements and active concealment, and by concealing and attempting to conceal, the presence of asbestos at the North Ridge Estates. (Am. Compl. ¶¶ 38, 244, 255; RCS at 2, 4-5, Nos. 2, 3.) Plaintiffs allege in their RICO claim that Mary Lou Stewart (and each individual defendant named individually) had knowledge and was "fully aware" that there was asbestos located on and beneath North Ridge Estates, (Am. Compl. ¶ 259; RCS at 2, No. 2), and in their fraud claim against the individual defendants and MBK Partnership, that Mary Lou Stewart (and each individual defendant named individually) were each "fully aware" of the presence of asbestos on and beneath North Ridge Estates, and of the system of asbestos-containing pipes running beneath North Ridge Estates and of the ACWM burial sites beneath some of the properties, (Am.Compl.¶ 287). The court finds that plaintiffs specifically allege awareness of asbestos on the properties and facts supporting that awareness, and that they adequately allege facts supporting a specific intent to deceive or defraud. To the extent that the Stewart defendants also contend that plaintiffs fail to allege facts that Stewart had knowledge of the contamination before 2001, the court finds that plaintiffs' allegations are more than adequate to allege Stewart's awareness since at least 1979.

Defendants contend that plaintiffs fail to plead the predicate acts of racketeering activity in their RICO claim with specificity as required by Rule 9(b). They contend that plaintiffs' allegations of mail fraud and wire fraud are insufficient because plaintiffs fail to identify which individual defendant mailed the documents; they assert that allegations that the RICO defendants "caused" documents to be mailed is not sufficient. They also contend that plaintiffs do not allege what representations were made in the documents. As to wire fraud, defendants contend that plaintiffs fail to identify who made the telephone calls, who received the calls, when the calls were made, and what was said. Defendants further contend that plaintiffs must allege two predicate acts by each defendant to state a RICO claim against him or her. Tuttle contends that plaintiffs must allege that each of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 13
Not Reported in F.Supp.2d, 2003 WL 23979014 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

the Tuttle defendants Tuttle individually, Tuttle as Trustee of the Tuttle Trust, and Kenneth L. Tuttle, M.D., P.C. committed two or more predicate acts of racketeering activity. Bercot contends that plaintiffs allege only a single predicate act against him which is insufficient to allege a RICO claim against him.

**\*15** To allege the predicate acts of mail or wire fraud, plaintiff must allege that defendants formed a scheme or artifice to defraud, defendants used of the United States mails or wires or caused use of the United States mails or wires in furtherance of the scheme, and that defendants did so with the specific intent to deceive or defraud.[FN12] *Schreiber,* 806 F.2d at 1400; (citing *United States v. Green,* 745 F.2d 1205, 1207-08 (9th Cir.1985); *United States v. Louderman,* 576 F.2d 1383, 1387-88 & n. 3 (9th Cir.1978)); *United States v. Brutzman,* 731 F.2d 1449, 1454 (9th Cir.1984), *overruling on other grounds recognized by United States v. Booth,* 309 F.3d 566 (9th Cir.2002); *United States v. Finney,* 714 F.2d 420, 422 (5th Cir1983). "[O]ne causes the mails to be used when he 'does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended....' " *Finney,* 714 F.2d at 423-24 (quoting *Pereira v. United States,* 347 U.S. 1, 8-9, 74 S.Ct. 358, 98 L.Ed. 435 (1954)). "A mailing that is 'incident to an essential part of the scheme' satisfies the mailing element of the mail fraud offense." *Schmuck v. United States,* 489 U.S. 705, 712, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) (quoting *Pereira,* 347 U.S. at 8). The mailings themselves need not be false to supply the mailing element. *Schmuck,* 489 U.S. at 714-15 (citing *Parr v. United States,* 363 U.S. 370, 390, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960)); *Kerr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1413-14 (3d Cir.1991).[FN13] It appears from the cases that where plaintiff relies on the mailings and/or wire communications as the act of fraud, those circumstances of fraud must be pleaded with particularity, but a mailing or wire communication need not be fraudulent to constitute an act of mail or wire fraud, as long as the mailings or wire communications are in furtherance of the fraudulent scheme. *See Schreiber,* 806 F.2d at 1399-01 (predicate acts of mail and wire fraud sufficiently stated but fraud allegations not stated with requisite particularity; *Jepson, Inc. v. Makita Corp.,* 34 F.3d 1321, 1330 (7th Cir.1994). All that is required to plead the predicate acts with particularity is that the allegations of the operative events of the alleged fraudulent scheme mention the use of the mails or telephone. *Schreiber,* 806 F.2d at 1401. The courts have found that, in specifying the predicate acts, "At a minimum, [plaintiffs] must identify the particular documents, communications, and written instruments required to constitute the requisite number of predicate acts." *Arboireau,* 2001 WL 1471748, at \*5 (quoting *Moore,* 885 F.2d at 541); *Altamont Summit Apartments,* 2002 WL 926264, at \*10-11.

> FN12. Some defendants contend that the alleged racketeering acts must be "illegal." As defined in the statute, "racketeering activity" includes, among other acts, an act indictable under sections 1341, relating to mail fraud, or section 1343, relating to wire fraud. 18 U.S.C. § 1961(1)(B). Plaintiffs rely on mail and/or wire fraud as the illegal racketeering activity to support their RICO claim.

> FN13. Thus, to the extent that the Stewart defendants contend that plaintiffs must allege that the predicate acts must be false, this contention is without merit.

The court has found above that plaintiffs allege the circumstances of the alleged fraud with the particularity required by Rule 9(b) as to each defendant named in the fraud claims. In pleading the predicate acts, plaintiffs allege that on or about October 1, 1979, Bercot sent a letter via U.S. mail to the EPA representing that MBK would properly dispose of asbestos on the ground at North Ridge Estates and would place deed restrictions in the disposal areas when the property was subdivided, in addition to other representations. (Am. Compl. ¶ ¶ 54-56; RCS at 6, No. 5(b).) This mailing is identified in the RICO Case Statement as the first predicate act of mail fraud. (RCS at 6, No. 5(b).) Plaintiffs allege that Stewart, Tuttle, Mary Lou Stewart and Lisa Stewart advertised or arranged for the advertisement of lots and homes in North Ridge Estates through the *Klamath Herald and News* and the *Homes, Ranch and Business* real estate publication, on certain dates, and that these were distributed via United States mail, (Am. Compl. ¶ ¶ 66-76; RCS at 6-7, No. 5(b)); that in January 2003, Stewart, Tuttle, Mary Lou Stewart, and Lisa Stewart caused listings for lots or houses in North Ridge Estates to be placed on the MLS listings system, accessible via interstate wires, (Am. Compl. ¶ ¶ 77; RCS at 7-8, No. 5(b)); that defendants used interstate mail and telephone with certain plaintiffs in their purchases of properties in North Ridge Estates, (Am. Compl. ¶ ¶ 79-170; RCS at 6-17, No. 5(b)), *e.g.,* the partners of MBK Stewart, Tuttle, and Mary

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d      Page 14
Not Reported in F.Supp.2d, 2003 WL 23979014 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

Lou Stewart and Lisa Stewart, caused the Burnses to receive their warranty deed for their property via U.S. mail in May 1994, (Am. Compl. ¶ 85; RCS at 8, No. 5(b)), and the partners of MBK Stewart, Tuttle, and Mary Lou Stewart and Lisa Stewart, caused the Homfeldts to receive their closing documents, including title insurance and warranty deed, for their property via U.S. mail in May 1997, (Am. Compl. ¶ 123; RCS at 10-11, No. 5(b)). Plaintiffs further allege that Stewart, Tuttle, and Mary Lou Stewart caused certain letters, identified by date, to be sent by counsel on behalf of MBK to the DEQ via United States mail, some of which contained false representations, identified in the allegations,[FN14] (Am. Compl. ¶ ¶ 263-268; RCS at 17-19, No. 5(b)). Predicate acts by Stewart, Bercot, Tuttle, Mary Lou Stewart, and Lisa Stewart, are summarized at paragraph 262 of the Amended Complaint. The documents, communications, and written instruments are alleged in plaintiffs' Amended Complaint and RICO Case Statement, and some of these identified documents are attached as exhibits to the Amended Complaint, *e.g.,* Am. Compl. Exs. J, K, L. Contrary to argument by Mary Lou Stewart, plaintiffs allege facts in support of the predicate acts alleged against her, including her connection to the alleged fraudulent scheme, as described above.

> [FN14.] The court does not agree with the contention that the letters sent by the Brandsness law firm cannot constitute predicate acts to support a RICO claim. Plaintiffs allege that Stewart, individually and on behalf of MBK Partnership, and Stewart, Mary Lou Stewart, and Tuttle "caused" the letters to be sent. (Am. Compl. ¶ ¶ 263, 265; RCS at 17-19, No. 5(b).) As alleged, the letters were intended to prevent detection of the alleged fraudulent scheme and to reassure the DEQ and the homeowners. Plaintiffs allege that the letters were in furtherance of the fraudulent scheme. In any event, even if the allegations regarding the letters are deficient, this would not warrant dismissing the RICO claim.

\*16 The court is satisfied that plaintiffs have sufficiently pleaded the predicate acts of mail fraud and wire fraud with the particularity required in the circumstances. Each of the cases cited by defendants in support of their contention are distinguishable on its facts.

Moreover, as shown above, plaintiffs have sufficiently pleaded at least two predicate acts of mail and fraud and two predicate acts of wire fraud against Stewart, Tuttle, Mary Lou Stewart, and Lisa Stewart. Because the court has found that plaintiffs need not allege the specific capacity of Tuttle as to each alleged misrepresentation or omission or act in the alleged fraudulent scheme, plaintiffs need not allege two predicate acts against Tuttle in each capacity.

However, as to Bercot, plaintiffs acknowledge that only one mailing-the letter to the EPA by Bercot in 1979-is alleged against him. To the extent that plaintiffs still contend that additional mailings and/or telephone use can reasonably be inferred from the allegations, (Pls. Consol. Resp. at 24 n. 13), the court disagrees that such inferences suffice to state a RICO claim against Bercot. At oral argument of defendants' motions to dismiss, plaintiffs pointed out that the 1979 letter sent to the EPA, (Am.Compl.Ex. B), indicates that it was copied to the DEQ in Klamath Falls, Oregon, which shows a second use of the mails and, therefore, they technically have met the requirements to plead two predicate acts of mail fraud against Bercot. Plaintiffs stated they will amend the complaint, if the court so directs.

Bercot contends in his supplemental brief that, even if plaintiffs include an allegation that he mailed a carbon copy of the 1979 EPA letter to the DEQ, as plaintiffs argued at oral argument of defendants' motions, the 1979 letter is an isolated event unconnected to other racketeering activity which did not extend over a substantial period of time and which does not form a pattern of racketeering activity against him. The court has already found above that a pattern of racketeering activity is alleged, which includes the mailing of the 1979 letter. The court does not find that *United States v. Brooklier,* 685 F.2d 1208 (9th Cir.1982), stands for the proposition which Bercot seems to suggest, that plaintiffs must allege that Bercot must satisfy individually a "pattern" of racketeering activity. The *Brooklier* court stated:

The purpose of the RICO statute is to allow a single prosecution of persons who engage in a series of criminal acts for an enterprise, even if different defendants perform different tasks or participate in separate acts of racketeering. The same persons need not commit or endorse the same acts of racketeering. It is sufficient if a defendant who participates in an enterprise through a pattern of racketeering knows that the enterprise operates by a pattern of racketeering. The pattern may be established by showing two or more acts that constitute offenses, conspiracies, or attempts of the requisite type, as long

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d								Page 15
Not Reported in F.Supp.2d, 2003 WL 23979014 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

as the defendant committed two of the acts and both of them were connected by a common scheme, plan or motive.

**\*17** *Id.* at 1222 (emphases added). The Supreme Court stated in H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 242-43, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989):A RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit.... Thus, the threat of continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes.

(Emphases added.) The continuity factor refers to the duration of the fraudulent scheme. Tabas v. Tabas, 47 F.3d 1280, 1294 (3d Cir.1993); *Kehr Packages,* 926 F.3d at 1413-14. The 1979 letter by Bercot refers to the contemplated subdivision of the property, which implies continuity. According to the allegations of the Amended Complaint, during the period 1979 until the time Bercot withdrew as a partner in MBK in 1989, during which time Bercot was managing partner, and beyond, MBK through its partners demolished buildings on the property, which was not done in compliance with the EPA Compliance Order. There is nothing that the court has seen which requires that a certain time pass between the predicate acts committed by each RICO defendant. The court finds that an allegation that Bercot mailed a copy of the 1979 EPA letter to the DEQ would constitute another predicate act in the pattern of racketeering activity. Plaintiffs should be given leave to amend to state a RICO claim against Bercot.[FN15]

> FN15. In requesting leave to amend at oral argument, in addition to the mailing of a copy of the 1979 letter to DEQ, plaintiffs represented that subsequent documents in the 1980's, at the time Bercot and the other partners were preparing to subdivide the property, could also be pleaded.

To the extent that the Stewart defendants ask the court fo dismiss any allegations of acts not pleaded with particularity or not attributed to individual defendants, the court has found plaintiffs' allegations sufficient as pleaded so as to state claims for RICO and fraud against each individual defendant and M.L. Stewart, Inc. Defendants have moved to dismiss claims, and not to strike particular allegations within those claims.

Bercot contends in his supplemental brief that plaintiffs' § 1962(d) claim for RICO conspiracy against Stewart, Bercot, Tuttle, Mary Lou Stewart, and Lisa Stewart (sixth claim) should be dismissed as to him because plaintiffs do not allege that he agreed with anyone to engage in a scheme to defraud. Plaintiffs respond that, under Salinas v. United States, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997), relied on by Bercot, plaintiffs do not need to show that each defendant committed or agreed to commit two predicate acts, or show any overt act to violate the conspiracy provision. They contend that they have adequately pleaded their § 1962(d) RICO conspiracy claim against Bercot.

Section 1962(d) provides that it shall be unlawful to conspire to violate any of the provisions of § 1962(a), (b), or (c). The Court in *Salinas,* determined that the relevant statutory phrase, "to conspire," does not require some overt act or specific act unlike general conspiracy statutes. Salinas, 522 U.S. at 63. The Court found that, "A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor [and] may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion." *Id.* at 65; *see* United States v. Tille, 729 F.2d 615, 619 (9th Cir.1984) ("Proof of an agreement the objective of which is a substantive violation of RICO (such as conducting the affairs of an enterprise through a pattern of racketeering) is sufficient to establish a violation of section 1962(d)."). The Court concluded that the evidence showed that a co-defendant committed at least two predicate acts of racketeering activity when he accepted bribes, and that "Salinas knew about and agreed to facilitate the scheme," which was sufficient to support a conviction for RICO conspiracy under § 1962(d).

**\*18** Here, as discussed above, plaintiffs have pleaded in detail facts of the alleged fraudulent scheme by the RICO defendants and participation by Bercot in the scheme. Additionally, plaintiffs allege that conduct, actions and words of Bercot manifested and continue to manifest an agreement to conduct or participate in the affairs of a RICO enterprise, and manifest and continue to manifest an agreement to commit the predicate acts of mail or wire fraud. (Am. Compl. ¶ ¶ 272, 273; RCS at 22, No. 14.) Plaintiffs allege that Bercot was aware of the essential nature and scope of this enterprise and intended to participate in it. (Am. Compl. ¶ 274; RCS at 22, No. 14.) The court finds

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 16
Not Reported in F.Supp.2d, 2003 WL 23979014 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

that these allegations are sufficient to state a § 1962(d) RICO conspiracy claim against Bercot.

Bercot additionally alleges that plaintiffs fail to allege that any acts of his proximately caused plaintiff's injuries. Plaintiffs respond that they have alleged that Bercot proximately caused their injuries.

The Supreme Court in *Holmes v. Secs. Investor Protection Corp.,* 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), determined that proximate cause was required to state a RICO claim. The Court stated: Here we use "proximate cause" to label generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts. At bottom, the notion of proximate cause reflects "ideas of what justice demands, or of what is administratively possible and convenient." Accordingly, among the many shapes this concept took at common law was the demand for some direct relation between the injury asserted and the injurious conduct alleged.

*Id.* at 268 (citations omitted). The Court went on to state: "Thus, a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover." *Id.* at 268-69; *Or. Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc.,* 185 F.3d 957, 963 (9th Cir.1999).

Bercot asserts that case law requires that plaintiffs allege that they purchased their properties based on, and in reliance on, specific predicate acts by Bercot. Plaintiffs allege that based upon the false representations by Bercot in the 1979 letter to the EPA, upon which they relied, and his participation in the fraudulent scheme, discussed in detail above, they were injured in their business or property by reason of Bercot's RICO violation(s) in that, as a direct and proximate result of the defendants' acts, they purchased contaminated property without knowledge that it was contaminated and have suffered damaged, (Am. Compl. ¶ 275; RCS at 22-23, Nos. 15-16). In their RICO Case Statement, plaintiffs allege that they would not have purchased properties or constructed homes "but for" defendants' fraudulent acts, referring to No. 4 at 5. (RCS at 22-23, Nos. 15-16.) The court finds that plaintiffs adequately plead that Bercot proximately caused their injuries complained of.

**\*19** Bercot argues that, as a disassociated partner, he is not liable for any partnership obligations incurred after dissociation.[FN16] Plaintiffs do not contest this, but contend that Bercot is liable for acts committed prior to his dissociation from MBK Partnership and, because withdrawal from the partnership does not constitute withdrawal from the conspiracy, Bercot is liable under section (d) for RICO conspiracy for acts that occurred after his dissociation from the partnership.

> FN16. Plaintiffs allege that Bercot withdrew as a partner in MBK "Sometime in 1989." (Am. Compl. at 34.)

Oregon law provides that "A partner's dissociation does not of itself discharge the partner's liability for a partnership obligation incurred before dissociation." ORS 67.260(1). A dissociated partner is not liable for a partnership obligation incurred after dissociation, except as provided in certain circumstances which do not appear to apply here. ORS 67.260(1)(2). Here, the court has found that plaintiffs' allegations sufficient to state a fraud claim against Bercot while he was partner in MBK Partnership. On the allegations as pleaded in the Amended Complaint, a claim for RICO conspiracy is also stated against Bercot. *See United States v. Steele,* 685 F.2d 793, 803-04 (3d Cir.1982) (and cases cited); *Hyde v. United States,* 225 U.S. 347, 368-70, 32 S.Ct. 793, 56 L.Ed. 1114 (1912). Bercot's argument does not provide a ground for dismissing any claims against him.[FN17]

> FN17. Further, dismissing the RICO claim against Bercot at this time would be premature, since plaintiffs offer facts in support of amending the RICO claim against Bercot.

The court concludes that plaintiffs state claims for fraud, violation of RICO, and RICO conspiracy.[FN18] To the extent that defendants argue that this is not the type of case RICO was designed to cover, that argument is rejected. A civil remedy is available to any person injured in his business or property by reason of a violation of section 1962. 18 U.S.C. § 1964(c). As the Supreme Court recognized in *Sedima,* 473 U.S. at 499, Congress wanted to reach both legitimate and illegitimate enterprises, and legitimate enterprises "enjoy neither an inherent incapacity for criminal activity nor immunity from its consequences." The Court stated: "The fact that § 1964(c) is used against respected businesses allegedly engaged in a pattern of specifically identified criminal conduct is hardly a sufficient

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  Page 17
Not Reported in F.Supp.2d, 2003 WL 23979014 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

reason for assuming that the provision is being misconstrued," nor is the statute ambiguous. The Court found that the fact that private civil actions are being brought against legitimate enterprises is inherent in the statute as written and it is left to Congress to correct it. *Id.* The Court concluded that, "The 'extraordinary' uses to which civil RICO has been put appear to be primarily the result of the breadth of the predicate offenses, in particular the inclusion of wire, mail, and securities fraud, and the failure of Congress and the courts to develop a meaningful concept of 'pattern," but it is not for the judiciary to eliminate a private action where Congress has provided a remedy. *Id.* at 499-500.

> FN18. As explained above, plaintiffs should be given leave to amend to allege at least a second predicate act as to Bercot to state a RICO claim against him.

IV. *RECOMMENDATION*

Based on the foregoing, it is recommended that motions to dismiss by defendant Lisa Stewart (# 40), defendants Melvin L. Stewart, Mary Lou Stewart, and M.L. Stewart, Inc. (# 43), defendants MBK Partnership and Kenneth L. Tuttle, individually and as Trustee of the Tuttle Trust, and Kenneth L. Tuttle, M.D., P.C. (# 45) be denied; and that the motion to dismiss by defendant Bercot (# 47) be granted in part and denied in part: defendant Bercot's motion to dismiss the RICO claim (sixth claim) on the ground that plaintiffs fail to allege two predicate acts against him be granted, with leave to amend, and that defendant Bercot's remaining grounds to dismiss be denied.

**\*20** This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have ten days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

D.Or.,2003.
Burns v. MBK Partnership
Not Reported in F.Supp.2d, 2003 WL 23979014 (D.Or.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 393565 (Trial Motion, Memorandum and Affidavit) United States' Memorandum in Support of Its Unopposed Motion to Enter Consent Decree (Jan. 19, 2006)
• 2005 WL 3263128 () Mbk's Expert Witness Disclosure Report (May 2, 2005) Original Image of this Document (PDF)
• 2004 WL 3335899 (Trial Motion, Memorandum and Affidavit) Memorandum of Third Party Defendant Claire Engelberg, Sued Herein as Personal Representative, Surviving Spouse and Successor in Interest of Nathan Engelberg, in Support of Motion to Dismiss For Lack of Personal Jurisdiction Pursuant to FRCP 12(b)(2), or, in the Alternative, for Summary Judgment Pursuant to FRCP 56. (Dec. 17, 2004)
• 2004 WL 3337929 (Trial Motion, Memorandum and Affidavit) The State of Oregon's Memorandum in Reply to MBK Partnership et al.'s Responses to Motion for Summary Judgment (Fed.R.Civ.Pro. 56) Corrected (Dec. 14, 2004)
• 2004 WL 3335894 (Trial Motion, Memorandum and Affidavit) Response to Counterclaims of Third-Party Defendant Jerome Kaufman's Amended Answer to Amended Third-Party Complaint of Defendants Melvin L. Stewart, Mary Lou Stewart and M.L. Stewart, Inc. (Dec. 13, 2004)
• 2004 WL 3337919 (Trial Motion, Memorandum and Affidavit) The State of Oregon's Memorandum in Reply to MBK Partnership et al.'s Responses to Motion for Summary Judgment (Dec. 13, 2004)
• 2004 WL 3335887 (Trial Pleading) Amended Answer of the United States to the Third-Party Complaint of Defendant Maurice Bercot and Counterclaims by the United States Against Third-Party Plaintiffs (Dec. 8, 2004)
• 2004 WL 3337897 (Trial Pleading) The State of Oregon's Answer and Affirmative Defenses to Cross-Claims of Jerome Kaufman (Dec. 2, 2004)
• 2004 WL 3335877 (Trial Motion, Memorandum and Affidavit) MBK Partnership, Kenneth L. Tuttle, Individually and as Trustee of the Kenneth L. Tuttle M.D., P.C. Employee Pension and Profit Sharing Plan and Trust for Kenneth L. Tuttle, and Kenneth L. Tuttle M.D. P.C.'s Response to State of Oregon's Motion for Summary Judgment (Nov. 30, 2004)
• 2004 WL 3335872 (Trial Pleading) Answer of the United States to the Third-Party Complaint of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                       Page 18
Not Reported in F.Supp.2d, 2003 WL 23979014 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

Defendant Maurice Bercot (Nov. 26, 2004)

• 2004 WL 3335868 (Trial Motion, Memorandum and Affidavit) Answer of the United States to the Cross-Claims of Defendants Melvin L. Stewart, Mary Lou Stewart, and M.L. Stewart, Inc. (Nov. 23, 2004)

• 2004 WL 3335860 (Trial Pleading) Amended Answer of Third-Party Defendant Jerome Kaufman, to Amended Third-Party Complaint of Defendant Melvin L. Stewart, Mary Lou Stewart and M.L. Stewart, Inc.; Counter-Claims; and Cross-Claims (Nov. 22, 2004)

• 2004 WL 3335856 (Trial Pleading) Answer of Third-Party Defendant Jerome Kaufman, to Third-Party Complaint of Defendants Melvin L. Stewart, Mary Lou Stewart and M.L. Stewart, Inc.; Counter-Claims; and Cross-Claims (Nov. 12, 2004)

• 2004 WL 3337887 (Trial Motion, Memorandum and Affidavit) The State of Oregon's Memorandum in Support of Motion for Summary Judgment (Fed.R.Civ.Pro. 56) (Nov. 12, 2004)

• 2004 WL 3335853 (Trial Pleading) Amended Third-Party Complaint of Defendants Melvin L. Stewart, Mary Lou Stewart and M.L. Stewart, Inc. (Oct. 26, 2004)

• 2004 WL 3335846 (Trial Motion, Memorandum and Affidavit) Reply in Support of Motion to Bifurcate Discovery and Trial (Oct. 22, 2004)

• 2004 WL 3336299 (Trial Motion, Memorandum and Affidavit) Reply in Support of Motion to Bifurcate Discovery and Trial (Oct. 22, 2004)

• 2004 WL 3335833 (Trial Motion, Memorandum and Affidavit) Response to Plaintiffs' Motion to Compel Defendants' Responses to Plaintiffs' Request for Admissions of Defendants Melvin L. Stewart, Mary Lou Stewart and M.L. Stewart, Inc. (Oct. 18, 2004)

• 2004 WL 3336288 (Trial Motion, Memorandum and Affidavit) Response to Plaintiffs' Motion to Compel Defendants' Responses to Plaintiffs' Request for Admissions of Defendants Melvin L. Stewart, Mary Lou Stewart and M.L. Stewart, Inc. (Oct. 18, 2004)

• 2004 WL 3336261 (Trial Motion, Memorandum and Affidavit) United States' Response to Plaintiffs' Motion to Bifurcate (Oct. 15, 2004)

• 2004 WL 3336279 (Trial Motion, Memorandum and Affidavit) Response to Plaintiffs' Motion to Bifurcate of Defendants Melvin L. Stewart, Mary Lou Stewart and M.L. Stewart, Inc. (Oct. 15, 2004)

• 2004 WL 3337878 (Trial Motion, Memorandum and Affidavit) The State of Oregon's Response to Motion to Bifurcate (Oct. 15, 2004)

• 2004 WL 3338086 (Trial Motion, Memorandum and Affidavit) United States' Response to Plaintiffs' Motion to Bifurcate (Oct. 15, 2004)

• 2004 WL 3338098 (Trial Motion, Memorandum and Affidavit) Response to Plaintiffs' Motion to Bifurcate of Defendants Melvin L. Stewart, Mary Lou Stewart and M.L. Stewart, Inc. (Oct. 15, 2004)

• 2004 WL 3337865 (Trial Pleading) State of Oregon's Answer to Third Party Complaint of Defendant Maurice Bercot (Oct. 14, 2004)

• 2004 WL 3336248 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion to Bifurcate Discovery and Trial (Oct. 4, 2004)

• 2004 WL 3338074 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion to Bifurcate Discovery and Trial (Oct. 4, 2004)

• 2004 WL 3337853 (Trial Pleading) The State of Oregon's Answer and Affirmative Defenses to Cross-Claims of Defendants Melvin L. Stewart, Mary Lou Stewart and M.L. Stewart, Inc. (Sep. 28, 2004)

• 2004 WL 3336221 (Trial Pleading) Third-Party Complaint of Defendant Maurice Bercot (Sep. 24, 2004)

• 2004 WL 3338061 (Trial Pleading) Third-Party Complaint of Defendant Maurice Bercot (Sep. 24, 2004)

• 2004 WL 3336214 (Trial Pleading) Third-Party Complaint of Defendants Melvin L. Stewart, Mary Lou Stewart and M.L. Stewart, Inc. (Sep. 22, 2004)

• 2004 WL 3338051 (Trial Pleading) Third-Party Complaint of Defendants Melvin L. Stewart, Mary Lou Stewart and M.L. Stewart, Inc. (Sep. 22, 2004)

• 2004 WL 3336178 (Trial Pleading) Answer and Affirmative Defenses of Defendants MBK Partnership, Kenneth L. Tuttle Individually and as Trustee of the Kenneth L. Tuttle M.D., P.C. Employee Pension and Profit Sharing Plan and Trust for Kenneth L. Tuttle, and Kenneth L. Tuttle M.D., P.C . to Plaintiffs' Second Amended Complaint (Sep. 8, 2004)

• 2004 WL 3336195 (Trial Pleading) Answer to Second Amended Complaint, Affirmative Defenses and Cross-Claims of Defendants Melvin L. Stewart, Mary Lou Stewart and M.L. Stewart, Inc. (Sep. 8, 2004)

• 2004 WL 3336206 (Trial Pleading) Answer to Second Amended Complaint, Affirmative Defenses and Cross-Claims of Defendants Melvin L. Stewart, Mary Lou Stewart and M.L. Stewart, Inc. (Sep. 8, 2004)

• 2004 WL 3338024 (Trial Pleading) Answer and Affirmative Defenses of Defendants MBK Partnership, Kenneth L. Tuttle Individually and As Trustee of the Kenneth L. Tuttle M.D., P.C. Employee Pension and Profit Sharing Plan and Trust for Kenneth L. Tuttle, and Kenneth L. Tuttle M.D., P.C . to Plaintiffs' Second Amended Complaint (Sep. 8, 2004)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 19
Not Reported in F.Supp.2d, 2003 WL 23979014 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

- 2004 WL 3338041 (Trial Pleading) Answer to Second Amended Complaint, Affirmative Defenses and Cross-Claims of Defendants Melvin L. Stewart, Mary Lou Stewart and M.L. Stewart, Inc. (Sep. 8, 2004)
- 2004 WL 3337846 (Trial Pleading) Second Amended Complaint (Mar. 18, 2004)
- 2004 WL 3338149 (Trial Pleading) Second Amended Complaint (Mar. 18, 2004)
- 2004 WL 3364093 (Trial Pleading) Second Amended Complaint (Cercla Cost Recovery And Contribution; Oregon Superfund; Declaratory Relief; Rico; Unfair Trade Practices; Fraud; and Negligence (Mar. 14, 2004)
- 2004 WL 3336148 (Trial Pleading) Second Amended Complaint (Cercla Cost Recovery and Contribution; Oregon Superfund; Declaratory Relief; RICO; Unfair Trade Practices; Fraud; Negligence; Civil Conspiracy; and Nuisance) (Mar. 10, 2004)
- 2004 WL 3338010 (Trial Pleading) Second Amended Complaint (Cercla Cost Recovery and Contribution; Oregon Superfund; Declaratory Relief; RICO; Unfair Trade Practices; Fraud; Negligence; Civil Conspiracy; and Nuisance) (Mar. 10, 2004)
- 2004 WL 3336098 (Trial Motion, Memorandum and Affidavit) Defendants Melvin L. Stewart. Mary Lou Stewart & M.L. Stewart, Inc.'s Response to Plaintiffs' Objections to Portions of Order Granting Defendants' Motion to Stay (Jan. 22, 2004)
- 2004 WL 3337995 (Trial Motion, Memorandum and Affidavit) Defendants Melvin L. Stewart. Mary Lou Stewart & M.L. Stewart, Inc.'s Response to Plaintiffs' Objections to Portions of Order Granting Defendants' Motion to Stay (Jan. 22, 2004)
- 2004 WL 3336083 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Objection to Portions of Order Grantin Defendants' Motion to Stay (FRCP 72 (a)) (Jan. 12, 2004)
- 2004 WL 3337951 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Objection to Portions of Order Granting Defendants' Motion to Stay (FRCP 72 (a)) (Jan. 12, 2004)
- 2004 WL 3336061 (Trial Motion, Memorandum and Affidavit) Amended Response to Stewart, MBK, and Tuttle Defendants' Motion for Protective Order (Jan. 5, 2004)
- 2004 WL 3337945 (Trial Motion, Memorandum and Affidavit) Amended Response to Stewart, MBK, and Tuttle Defendants' Motion for Protective Order (Jan. 5, 2004)
- 2003 WL 24058117 (Trial Motion, Memorandum and Affidavit) Response to Stewart, MBK, and Tuttle Defendants' Motion for Protective Order (Dec. 31, 2003)
- 2003 WL 24058960 (Trial Motion, Memorandum and Affidavit) Response to Stewart, MBK, and Tuttle Defendants' Motion for Protective Order (Dec. 31, 2003)
- 2003 WL 24058112 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendants' Motion to Stay (Dec. 22, 2003)
- 2003 WL 24058957 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendants' Motion to Stay (Dec. 22, 2003)
- 2003 WL 24058102 (Trial Motion, Memorandum and Affidavit) United States' Response to MBK Partnership's and Tuttle's Motion to Stay (Dec. 18, 2003)
- 2003 WL 24058953 (Trial Motion, Memorandum and Affidavit) United States' Response to MBK Partnership's and Tuttle's Motion to Stay (Dec. 18, 2003)
- 2003 WL 24058950 (Trial Pleading) Answer of the United States (Dec. 5, 2003)
- 2003 WL 24058091 (Trial Motion, Memorandum and Affidavit) Defendants M.L. Stewart, Inc., Melvin L. Stewart, & Mary Lou Stewart's Memorandum of Points and Authorities in Support of Their Motion for A Protective Order (Dec. 2003)
- 2003 WL 24058952 (Trial Motion, Memorandum and Affidavit) Defendants M.L. Stewart, Inc., Melvin L. Stewart, & Mary Lou Stewart's Memorandum of Points and Authorities in Support of Their Motion for a Protective Order (Dec. 2003)
- 2003 WL 24058088 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Support of Motion for Protective Order and Motion to Compel (Nov. 14, 2003)
- 2003 WL 24058949 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Support of Motion for Protective Order and Motion to Compel (Nov. 14, 2003)
- 2003 WL 24058930 (Trial Pleading) Answer to Third Party Complaint (Oct. 9, 2003)
- 2003 WL 24059006 (Trial Pleading) Answer to Third Party Complaint (Oct. 9, 2003)
- 2003 WL 24058084 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Support of Motion to Compel Production from Defendants MBK Partnership and Kenneth L. Tuttle, individually and as Trustee of the Kenneth L. Tuttle M.D., P.C. Employee Pension and Profit Sharing Plan and Trust for Kenneth L. Tuttle, and Kenneth L. Tuttle M.D. P.C. (Sep. 16, 2003)
- 2003 WL 24058947 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Support of Motion to Compel Production from Defendants MBK Partnership and Kenneth L. Tuttle, individually and as Trustee of the Kenneth L. Tuttle M.D., P.C. Employee Pension and Profit Sharing Plan and Trust

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK    Document 165-9    Filed 07/07/2006    Page 20 of 20

Not Reported in F.Supp.2d                                                                                                    Page 20
Not Reported in F.Supp.2d, 2003 WL 23979014 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

for Kenneth L. Tuttle, and Kenneth L. Tuttle M.D. P.C. (Sep. 16, 2003)

• 2003 WL 24058927 (Trial Pleading) Third-Party Complaint of MBK Partnership, Kenneth L. Tuttle, individually and as Trustee of the Kenneth L. Tuttle M.D., P.C. Employee Pension and Profit Sharing Plan and Trust for Kenneth L. Tuttle, and Kenneth L. Tuttle M.D. P.C. (Sep. 11, 2003)

• 2003 WL 24059004 (Trial Pleading) Third-Party Complaint of MBK Partnership, Kenneth L. Tuttle, individually and as Trustee of the Kenneth L. Tuttle M.D., P.C. Employee Pension and Profit Sharing Plan and Trust for Kenneth L. Tuttle, and Kenneth L. Tuttle M.D. P.C. (Sep. 11, 2003)

• 2003 WL 24058946 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendants' Supplemental Briefs on Motions to Dismiss (Aug. 25, 2003)

• 2003 WL 24059002 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendants' Supplemental Briefs on Motions to Dismiss (Aug. 25, 2003)

• 2003 WL 24058074 (Trial Motion, Memorandum and Affidavit) Defendants MBK Partnership and Kenneth L. Tuttle's Supplemental Reply in Support of Motion to Dismiss Plaintiffs' Amended Complaint (Aug. 18, 2003)

• 2003 WL 24058943 (Trial Motion, Memorandum and Affidavit) Defendants MBK Partnership and Kenneth L. Tuttle's Supplemental Reply in Support of Motion to Dismiss Plaintiffs' Amended Complaint (Aug. 18, 2003)

• 2003 WL 24058941 (Trial Motion, Memorandum and Affidavit) Melvin L. Stewart, Mary Lou Stewart, and M.L. Stewart, Inc.'s Supplemental Briefing in Support of Defendants' Motion to Dismiss (Aug. 2003)

• 2003 WL 24058938 (Trial Motion, Memorandum and Affidavit) Consolidated Surreply to All Defendants' Replies Re Defendants' Motions to Dismiss (Jul. 18, 2003)

• 2003 WL 24058935 (Trial Motion, Memorandum and Affidavit) Defendants Melvin L. Stewart, Mary Lou Stewart and M.L. Stewart, Inc.'s Reply to Plaintiffs' Consolidated Response to All Defendants' Motions to Dismiss (Jul. 7, 2003)

• 2003 WL 24058932 (Trial Motion, Memorandum and Affidavit) Defendants' Reply to Plaintiffs' Response to MBK Partnership and Kenneth L. Tuttle's Motion to Dismiss Plaintiffs' Amended Complaint (Jul. 2003)

• 2003 WL 24058928 (Trial Motion, Memorandum and Affidavit) Consolidated Response to All Defendants' Motions to Dismiss (Jun. 23, 2003)

• 2003 WL 24058923 (Trial Motion, Memorandum and Affidavit) Defendants Melvin L. Stewart, Mary Lou Stewart, and M.L. Stewart, Inc.'s Memorandum in Support of Motion to Dismiss (Jun. 4, 2003)

• 2003 WL 24058921 (Trial Pleading) Amended Complaint (May 15, 2003)

• 2003 WL 24058924 (Trial Pleading) Complaint (Mar. 18, 2003)

• 6:03cv03021 (Docket) (Mar. 18, 2003)

END OF DOCUMENT