

Slip Copy                                                                                                                    Page 1
Slip Copy, 2006 WL 522466 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
CONCORDE FUNDS, INC., Plaintiff,
v.
VALUE LINE, INC., Jean B. Buttner, David T. Henigson, Howard A. Brecher, Defendants.
**No. 04 Civ. 9932(NRB).**

March 2, 2006.

Jay W. Freiberg, Katten Muchin Rosenman LLP, New York, NY, for Plaintiff.
Joel M. Miller, Miller & Wrubel, PC, New York, NY, for Defendants.

MEMORANDUM AND ORDER
BUCHWALD, J.

**\*1** Plaintiff Concorde Funds, Inc. ("Concorde Funds" or "plaintiff") commenced this diversity action against Value Line, Inc. ("Value Line"), a registered investment advisor, and its officers, Jean B. Buttner ("Buttner"), David T. Henigson ("Henigson"), and Howard A. Brecher ("Brecher") (collectively, "defendants") [FN1] alleging that they unlawfully conspired with one another to injure plaintiff by inducing it into liquidating a mutual fund through fraudulent misrepresentations. Specifically, plaintiff alleges four causes of action: (1) fraud; (2) tortious interference with existing contracts; (3) promissory estoppel; and (4) civil conspiracy. Defendants move to dismiss all claims as barred by *res judicata* and for failure to state causes of action pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons discussed below, defendants' motion to dismiss is granted in part and denied in part.

> FN1. Plaintiff originally sued four other Value Line officers, Samuel Eisenstadt, Harold Bernard, Jr., Herbert Pardes, and Marion N. Ruth, but the claims against them were dismissed without prejudice in the Southern District of Texas due to their lack of sufficient minimum contacts with the state of Texas. *See Concorde Funds, Inc. v. Value Line, Inc., et al.,* 3:04-CV-0678-D, 2004 U.S. Dist. LEXIS 24676 (N.D.Tex. Dec. 8, 2004). Plaintiff has apparently decided not to seek to rejoin these defendants now that the case has been transferred here.

BACKGROUND

I. Facts [FN2]

> FN2. All facts are drawn from the Third Amended Complaint and are considered to be true for purposes of this motion.

Plaintiff Concorde Funds is a mutual fund that currently manages a single portfolio fund, known as the Concorde Value Fund ("Value Fund"). Prior to the events giving rise to this litigation, Concorde Funds allegedly both managed and was owned by two separate mutual funds, the Concorde Income Fund ("Income Fund") and the Value Fund. Concorde Funds has two independent directors, Dr. John R. Bradford and John H. Wilson, III, and one non-independent director, Dr. Gary Wood ("Wood"), who serves as the President of Concorde Funds. Wood is also the President and one of two directors of Concorde Financial Corporation ("Concorde Financial"), which serves as the investment advisor to Concorde Funds pursuant to an investment advisory contract subject to annual renewal by Concorde Funds' board of directors. The complaint alleges that Concorde Funds and Concorde Financial are separate and independent legal entities, each of which may only take action upon approval of its own board and/or shareholders.

Defendant Value Line is a registered investment advisor for the Value Line family of mutual funds and approximately a dozen separate accounts. Defendants Buttner, Henigson, and Brecher are the directors and officers of Value Line.

In late 2001 and early 2002, Buttner, Value Line's President and Chief Executive Officer, approached Concorde Financial about entering into a transaction whereby the two companies would use their best efforts to: (1) persuade Concorde Funds, its board of directors, and its shareholders to rename the Value Fund the "Value Line Value Fund"; (2) reincorporate Concorde Funds in Maryland; and (3) allow Value Line to assume all operational tasks related to the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
Slip Copy, 2006 WL 522466 (S.D.N.Y.)  
**(Cite as: Slip Copy)**

Page 2

Value Fund. During the subsequent negotiations, Value Line, Buttner, Henigson and Brecher repeatedly informed Wood, the President of both Concorde Funds and Concorde Financial, that Value Line desired to assume the investment management functions of the Value Fund and dramatically increase its profitability and size using Value Line's nationwide marketing and distribution resources. Value Line represented that it would do this if: (1) Concorde Funds agreed to liquidate the Income Fund, a fund competing with Value Line's funds; (2) Concorde Funds' shareholders approved a proposal to have Value Line serve as the investment advisor to Concorde Funds, rather than Concorde Financial; and (3) Concorde Funds actually reincorporated in Maryland.

**\*2** Plaintiff alleges that Value Line made these representations to Dr. Wood anticipating that he would repeat them to Concorde Funds as part of Value Line's scheme to deceive Concorde Funds into liquidating its Income Fund. Concorde Funds was in fact informed of Value Line's proposal, and began the process of liquidating the Income Fund on September 25, 2002, by presenting the proposal to its board of directors and shareholders. Both the board and the shareholders approved the proposal, and the Income Fund was liquidated on or about December 19, 2002. Plaintiff allegedly agreed to liquidate the Income Fund based on defendants' repeated assurances that Value Line would dramatically improve the profitability of the Value Fund. At the time it was liquidated, the Income Fund was valued at approximately $35 million and had 32 shareholders.[FN3] After liquidation, the vast majority of the Income Fund's shareholders chose not to reinvest their Income Fund money with Concorde Fund's remaining portfolio fund, the Value Fund.

> FN3. Ordinarily, the Income Fund had between 35 and 40 shareholders, but plaintiff alleges that several shareholders left shortly before it was liquidated.

After the liquidation process had begun, on October 31, 2002, Wood signed an agreement with Value Line in his capacity as President of Concorde Financial (the "Agreement"). The Agreement provided, subject to an additional Investment Advisory Agreement and a Sub-Advisory Agreement, that Value Line would "assume all operational and accounting responsibilities" of the Value Fund. Concorde Funds was not a party to the Agreement.

The dispute leading to the instant litigation arose when Value Line allegedly began making demands on Concorde Financial beyond those provided for in the Agreement. In a separate action, Concorde Financial alleged that Value Line demanded that Concorde Financial alter the Agreement's requirements regarding letters of credit and the indemnification provision, as well as a restructuring of the Agreement such that it would resemble an asset acquisition more than a reincorporation. Plaintiff here alleges that Value Line refused to consummate the transaction as described in the Agreement despite the fact that Concorde Funds had already liquidated the Income Fund and otherwise continued to act in good faith. Moreover, plaintiff alleges that Value Line never intended to do any of the things it promised to do in the Agreement, instead maliciously intending to induce Concorde Funds to liquidate its Income Fund, thereby eliminating a competitor.

### II. Prior Litigation

This is the third lawsuit arising out of the disputes among Value Line, Concorde Funds, and Concorde Financial. First, Value Line brought a declaratory action against Concorde Financial in the Supreme Court of the State of New York, which was removed to this District the day after Concorde Financial filed a separate action in this District against Value Line. The instant lawsuit was initially filed in the Northern District of Texas, but was transferred here pursuant to 28 U.S.C. § 1404(a) on December 8, 2004. *See Concorde Funds, Inc. v. Value Line, Inc., et al.,* 04 Civ. 0678(SAF), 2004 U.S. Dist. LEXIS 24676 (N.D.Tex. Dec. 8, 2004).

**\*3** On February 11, 2004, this Court issued a memorandum and opinion denying Value Line's motion to remand the action originally brought in state court and also denying Value Line's motion to dismiss the action brought by Concorde Financial in this District. *See Concorde Financial Corp. v. Value Line, Inc.,* 03 Civ. 8020(NRB), 2004 WL 287658 (S.D.N.Y. Feb. 11, 2004) (*"Concorde I"*). On July 28, 2004, this Court issued a second memorandum and order in which we denied Value Line's motion to dismiss Concorde Financial's breach of contract claim, but granted Value Line's motion to dismiss Concorde Financial's fraud claim, holding that it was not sufficiently distinct from the contract claim. *See Concorde Financial Corp. v. Value Line, Inc.,* 03 Civ. 8020(NRB), 2004 WL 1687205 (S.D.N.Y. July

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28, 2004) (*"Concorde II"*). On December 7, 2004, this Court entered a Rule 68 final judgment, pursuant to which Value Line agreed to pay $300,000 to Concorde Financial in order to terminate the litigation.[FN4]

> FN4. The day after we entered this Rule 68 Final Judgment, the Texas court transferred the instant matter here, unaware that the related case was no longer pending. The Texas court thus proceeded on what was, in fact, an incorrect assumption, namely that there was a related case pending here. *See Concorde Funds, Inc. v. Value Line, Inc.,* 2004 U.S. Dist. LEXIS 24676 at *25 ("this litigation is closely related to the lawsuits pending in New York.").

*DISCUSSION*

I. Standard of Review

In considering a motion to dismiss, the Court must accept as true all material factual allegations in the complaint. *Levy ex rel. Immunogen Inc. v. Southbrook Int'l Invs.,* Ltd., 263 F.3d 10, 14 (2d Cir.2001). A motion to dismiss may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Still v. DeBuono,* 101 F.3d 888, 891 (2d Cir.1996) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

II. *Res Judicata*

The doctrine of *res judicata,* or claim preclusion, provides that a final judgment in an earlier action "precludes the parties *or their privies* from relitigating issues that were or could have been raised" in an earlier action."[FN5] *Maharaj v. BankAmerica Corp.,* 129 F.3d 94, 97 (2d Cir.1997) (emphasis added). Defendants maintain that the prior litigation between Concorde Financial and Value Line, which culminated in a Rule 68 final judgment, bars Concorde Funds from bringing its claims here under the doctrine of *res judicata.* Specifically, defendants contend that Concorde Funds and Concorde Financial are in privity and that the claims brought here are identical to those brought against them by Concorde Financial.

> FN5. The parties do not address the issue of whether state or federal principles of *res judicata* apply here. Moreover, the Second Circuit has never decided "whether state or federal rules of *res judicata* determine the preclusive effect of a judgment entered by a federal court exercising diversity jurisdiction." *Com Cor Holding, Inc. v. F.A. Tucker Transmission Company,* 93 Civ. 8440(MBM), 1998 WL 283348 at *3, n. 3 (S.D.N.Y. June 1, 1998) (citing *Maharaj v. BankAmerica, Corp.,* 128 F.3d 94, 97 (2d Cir.1997) (additional citations omitted). Because we determine that it is premature for us to consider whether *res judicata* applies regardless of which standard we apply, however, we need not decide this question.

In order to dismiss plaintiff's claims on *res judicata* grounds at this stage of the litigation, the basis for dismissal would have to plainly appear on the face of the complaint. Here, several of the arguments raised by defendants in support of dismissal rely on facts and allegations that do not appear in the Third Amended Complaint ("TAC" or "Complaint").[FN6] Without a developed factual record, we are unable to determine if defendants correctly argue that Concorde Financial and Concorde Funds are in privity, such that Concorde Funds was virtually represented in the earlier actions. *See United States Department of Housing and Urban Development v. K. Capolino Construction Corp.,* 01 Civ. 390(JGK), 2001 WL 487436 at *9 (S.D.N.Y. May 7, 2001) ("The issue of whether HUD and the WPHA were in privity is a question of fact that cannot be resolved on this motion to dismiss.") Consequently, we cannot yet determine whether *res judicata* bars plaintiff's claims, and thus deny defendants' motion to dismiss on this basis, without prejudice to the renewal of this argument once the factual record is more fully developed.

> FN6. In their memorandum of law, defendants state that "Concorde Financial founded plaintiff," Def. Memo. of Law at 7, a statement that appeared in the First Amended Complaint, but not in the Third Amended Complaint. Because a later complaint supersedes an earlier one, we may not credit this allegation absent a basis for finding that the most recent complaint incorporates earlier ones. *See Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(2d Cir.1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (internal citations and quotations omitted). As plaintiff does not suggest that the Third Amended Complaint incorporates the factual allegations made in the First Amended Complaint, we may only consider the Third Amended Complaint in ruling on this motion to dismiss.

### III. Collateral Estoppel

**\*4** The doctrine of collateral estoppel provides that an issue decided in an earlier proceeding "is conclusively established between the parties (or their privies) in any later suit," even if the causes of action in the two suits differ. Hinchey v. Sellers, 7 N.Y.2d 287, 293, 197 N.Y.S.2d 129, 133 (1959) (internal quotations and citation omitted). Defendants contend that our dismissal of Concorde Finacial's fraud claims in *Concorde II* collaterally estops Concorde Funds from bringing its fraud claims here. However, for the same reasons that we are unable at this juncture to dismiss plaintiff's claims as *res judicata,* we similarly cannot decide whether collateral estoppel applies here. Thus, defendants' motion to dismiss plaintiff's fraud claims as collaterally estopped is also denied without prejudice.

### IV. Fraud

While we cannot resolve the sufficiency of plaintiff's fraud claim on the basis of *res judicata* or collateral estoppel, we nonetheless dismiss it under Rule 9(b). Plaintiff's first cause of action alleges that defendants made fraudulent misrepresentations regarding their future performance in order to deceive plaintiff into liquidating the Income Fund. Defendants move to dismiss this claim for failure to: (1) allege fraud with particularity, as required by Fed.R.Civ.P. 9(b); and (2) adequately plead the elements of fraud. Because we dismiss for failure to plead with particularity, we do not address the merits of defendants' second ground for dismissal.

### A. Pleading Fraud with Particularity

Fed.R.Civ.P. 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." [FN7] In order to satisfy the requirements of Rule 9(b), a complaint alleging fraud "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir.1993). "Additionally, where multiple Defendants are alleged to have committed fraud, the Complaint must 'allege specifically the fraud perpetrated by each defendant.'" Simon v. Castello, 172 F.R.D. 103, 105 (S.D.N.Y.1997) (quoting Natowitz v. Mehlman, 542 F.Supp. 674, 676 (S.D.N.Y.1982)).

FN7. Although the parties seem to agree that the substantive fraud law of Texas applies to plaintiff's first cause of action, plaintiff is nonetheless obligated to meet the heightened pleading requirements of Rule 9(b). *See, e.g.,* Inn Chu Trading Co. v. Sara Lee Corp., 810 F.Supp. 501, 506-07 (S.D.N.Y.1992).

In the TAC, Concorde Funds makes the following allegations in support of its first cause of action:

28. The Defendants made representations of future performance with the full intent and expectation that these representations would be repeated to Concorde Funds in order to deceive it into liquidating the Income Fund. These misrepresentations were fraudulent when made and thereby induced Concorde Funds into liquidating the Income Fund. These fraudulent representations of future performance included representing that Value Line would provide nationwide support through its significant resources, networking, and contacts in order to increase the size and profitability of the Value Fund on the condition that Concorde Funds close the Income Fund. Concorde Funds would never have liquidated the Income Fund if it had known that Defendants never intended to fulfill their commitments....

**\*5** 29. The individual Defendants made these fraudulent representations both individually and as an [sic] officers of Value Line. On numerous occasions, Buttner, Henigson and Brecher each telephoned Dr. Wood at his office in Texas in 2002 and 2003 ... and made these misrepresentations. Moreover, the Defendants' misrepresentations were contained in e-mails, correspondence, and facsimiles sent by them to Dr. Wood in 2002 and 2003....

30. These representations were material in that they were an extremely important, if not the most important, factor in the Concorde Funds' shareholders' decision to liquidate the Income Fund.

31. These representations were false, and Defendants knew them to be false, or made them recklessly without any knowledge of the truth of the matter

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

asserted.

Compl. ¶ ¶ 28-31. Defendants maintain that these allegations are too generalized to satisfy the particularity requirement of Rule 9(b). We agree, and dismiss plaintiff's first cause of action.[FN8]

> FN8. A limited exception to the particularity requirement imposed by Rule 9(b) applies when "the facts upon which plaintiff bases its fraud claim are peculiarly within the defendants' knowledge." Sklon, 1997 WL 88894 at *2. In that circumstance only may a plaintiff "base its allegations on information and belief" instead of specifying "when and where such [fraudulent] statement was made." *Id.* (citing Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir.1990)). Here, as in *Sklon,* plaintiff is in as good a position as the defendants are to recall the speakers, dates, and content of the alleged misrepresentations.

Rule 9(b) requires that a plaintiff set forth the circumstances suggesting fraud with particularity in order "to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir.1995) (internal quotations and citation omitted). Here, the deficiency of plaintiff's fraud allegations results in a lack of fair notice to the defendants. Plaintiff alleges that defendants, *inter alia,* sent e-mails containing fraudulent misrepresentations, but does not allege the dates on which these e-mails were sent or their specific content. Rather, plaintiff alleges only that the emails were sent "in 2002 and 2003." However, courts have consistently held that such a lengthy time-frame fails to satisfy the particularity requirement of Rule 9(b). *See* Doehla v. Wathne Limited, Inc., 98 Civ. 6087(CSH), 1999 WL 566311 at *17-18 (S.D.N.Y. Aug. 3, 1999) (holding that allegations that fraudulent statements were made during a four-month period are insufficient to satisfy Rule 9(b)'s particularity requirement); Sklon Corp. v. Guilford Mills, Inc., 93 Civ. 5581(LAP), 1997 WL 88894 at *2 (S.D.N.Y. Mar. 3, 1997) (same); *see also* Alnwick v. European Micro Holdings, Inc., 281 F.Supp.2d 629, 640 (E.D.N.Y.2003)(holding that allegations that fraudulent statements were made "in the Fall and Winter of 1996 and the first months of 1997" fail to satisfy particularity requirement). Moreover, plaintiff must do more than make "sweeping references" encompassing all of defendants' allegedly fraudulent conduct. Trustees of the Plumbers, Pipefitters National Pension Fund, et al. v. De-Con Mechanical Contractors, Inc., 896 F.Supp. 342, 347 (S.D.N.Y.1995) (citing *Luce* ); *see also* Doehla, 1999 WL 566311 at *17 ("lumping" all defendants together fails to satisfy particularity requirement). Here, plaintiff never isolates any particular instance where an allegedly fraudulent statement occurred, only alleging generally that each individual defendant made misrepresentations to Dr. Wood during 2002 and 2003. Because plaintiff has had four opportunities to submit a complaint in this action and has still failed to satisfy the requirements of Rule 9(b), its first cause of action is dismissed with prejudice for failure to state a claim under Rule 12(b)(6).[FN9]

> FN9. Besides failing to plead fraud with the requisite particularity, it is far from clear whether plaintiff pleads the substantive elements of its fraud claim. Under Texas law, which all parties agree is applicable to plaintiff's substantive fraud claim, six elements must be pled: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." In re FirstMerit Bank, 52 S.W.3d 749, 758 (Tex.2001) (citation omitted).
> In order to plead the first two elements when the statements relied upon were ones of future intent, "a plaintiff must also show that the person making the promise had no intention of performing *at the time he made the promise."* Fluorine On Call, Ltd. v. Fluorogas, Ltd., 380 F.3d 849, 858 (5th Cir.2004) (emphasis in original) (citations omitted). Moreover, the Fifth Circuit emphasized that "[f]ailure to perform a contract ... is not evidence of fraud." Id. at 858-59. Here, plaintiff provides absolutely no basis upon which this Court might conclude that the defendants had no intention of performing at the time the statements were made. Consequently, we

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

doubt that plaintiff can state a fraud claim, notwithstanding its failure to plead with particularity.

V. Tortious Interference with Existing Contracts

**\*6** Plaintiff's second cause of action alleges that defendants tortiously interfered with its existing contracts with the Income Fund shareholders by:
rendering performance under those contracts impossible by inducing Concorde Funds to obtain approval to liquidate the Income Fund ... through a series of misrepresentations and false promises to the effect that Value Line would provide nationwide support to Concorde Funds' remaining portfolio fund, the Value Fund, and dramatically improve the profitability of the Value Fund.

Compl. ¶ 40. Defendants move to dismiss this claim for failure to state a cause of action under Rule 12(b)(6).

A. Choice of Law

The parties dispute whether New York or Texas law applies to plaintiff's second cause of action. Because this case was transferred from the Northern District of Texas, Texas choice of law principles apply. *See Ferens v. John Deere Co.,* 494 U.S. 516, 523 (1990) ("A transfer under § 1404(a) ... does not change the law applicable to a diversity case."). In Texas, "all conflicts cases sounding in tort will be governed by the 'most significant relationship' test as enunciated in Sections 6 and 145 of the Restatement (Second) of Conflicts." *Gutierrez v. Collins,* 583 S.W.2d 312, 318 (Tex.1979). Section 6 provides general principles by which to apply the specific factors laid out in Section 145, which are as follows:
(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil [sic], residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.

*Id.* at 319 (quoting Restatement (Second) of Conflicts, § 145. As relevant here, Section 6 generally provides that the Court engaging in the choice of law analysis consider such factors as the interests of both the forum state and other interested states, as well as the "certainty, predictability and uniformity of result." Restatement (Second) of Conflicts, § 6.

Having considered all of these factors, we determine that Texas law applies to plaintiff's second cause of action.[FN10] Plaintiff is a citizen of Texas, and alleges that the injury it suffered as a result of the alleged tortious interference with its contracts occurred in Texas, where the liquidation of the Income Fund occurred. Moreover, it alleges that the misrepresentations that induced the liquidation were directed to Dr. Wood in Texas. Although all of the defendants are citizens of New York, nearly every other consideration suggests that we should apply Texas law. New York, of course, has an interest in applying its own laws to its citizens, but the allegations in the complaint demonstrate that Texas has the greater interest in having its law applied here.

>   FN10. Defendants incorrectly contend that "because Texas and New York laws governing tortious interference do not conflict, Texas courts would apply the law of the forum state." Def. Memo. of Law at 17, n. 11 (citing *Schneider Nat. Trans. v. Ford Motor Co.,* 280 F.3d 532, 536 (5th Cir.2002). This argument, however, runs afoul of the *Erie* doctrine, *see Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938), which provides that "in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Guaranty Trust Co. v. York,* 326 U.S. 99, 109 (1945) (explaining *Erie* ). Were we to accept defendant's argument that we must apply New York law because the case was transferred here and New York and Texas laws are not in conflict (which defendants fail to demonstrate), we would not be adhering to the principle that the outcome of the litigation should be the same as though the case were tried in Texas state court.
>   The result in *Ferens,* which requires that the

transferee court "not deprive parties of state-law advantages," is an outgrowth of this very principle: the act of transferring a case pursuant to 28 U.S.C. § 1404(a) should not affect the substantive law applicable to a case. *Ferens, 494 U.S. at 524*. Consequently, the result of the litigation here should be the same as if it were tried in Texas state court, where, as we determine, Texas substantive law would apply to plaintiff's second cause of action, regardless of whether or not it conflicts with New York law.

B. Analysis

***7** Having determined that Texas law applies to plaintiff's second cause of action, we now turn to defendants' motion to dismiss for failure to state a claim. In Texas, there are four elements of a tortious interference claim: (1) a valid contract; (2) willful and intentional interference with that contract; (3) the interference proximately causing damage to the plaintiff; and (4) actual damage or loss. *See Butnaru v. Ford Motor Co., 84 S.W.3d 198, 207 (Tex.2002).*[FN11] Plaintiff claims that defendants' alleged misrepresentations, which resulted in the liquidation of the Income Fund, amounted to tortious interference with the existing contracts between plaintiff and the 32 Income Fund shareholders, as well as those between plaintiff and several other shareholders who exited the Income Fund shortly before its liquidation. Defendants maintain that plaintiffs fail to allege that they interfered at all with these contracts, let alone willfully and intentionally. We agree, and dismiss plaintiff's second cause of action.

> FN11. Defendants insist in their brief that Texas law additionally requires proof of an independently tortious act. *See* Def. Memo. of Law at 18. Defendants' description of Texas law is not accurate. In fact, under Texas law, proof of an independently tortious act is only required for claims of interference with *prospective* contracts or business relationships, not existing contracts. *See, e.g., G.W. McKinzie Co. v. Raytheon Appliances, Inc., No. 01-03-00272-CV, 2005 WL 678858 at *9, n. 13 (Tex.App.-Houston Mar. 24, 2005)* (discussing difference between requirements for interference with existing contracts and interference with a prospective business relationship). This is one of several instances in their briefs where defendants suggest that case law supports their positions, but where examination of those cases reveals that they do not in fact stand for the proposition for which they have been cited. We caution defendants to be mindful of this concern in their future submissions to this Court.

In order to establish the "willful and intentional interference" element of a tortious interference claim, Texas courts require that "a party must be more than a willing participant; it must *knowingly induce* one of the contracting parties to breach its obligations." *John Paul Mitchell Systems v. Randalls Food Markets, Inc., 17 S.W.3d 721, 730 (Tex.App.-Austin 2000)* (emphasis added) (citing *Browning-Ferris, Inc. v. Reyna, 865 S.W.2d 925, 927 (Tex.1993)*). This "knowing inducement" requirement means that plaintiff must allege "that the defendant took an active part in persuading a party to a contract to breach it." *Davis v. HydPro, Inc., 839 S.W.2d 137, 139 (Tex.App.-Eastland 1992, writ denied)* (emphasis deleted). Here, the plaintiff fails to allege this element.

Plaintiff contends that Texas recognizes a cause of action for tortious interference when a defendant hinders its performance of a contract, rendering it impossible or more difficult. While this is correct, *see, e.g., Seelbach v. Clubb, 7 S.W.3d 749, 757 (Tex.App.-Texarkana 1999, writ denied)*, it is inapplicable to the facts alleged here. The fact that plaintiff decided to liquidate its Income Fund based on alleged misrepresentations made by defendants does not in and of itself support a claim for tortious interference. Plaintiff's decision to liquidate the Income Fund was its own; plaintiff does not allege any interference by the defendants relating to its contracts with its shareholders. Simply put, the defendants did not in any way hinder performance of the plaintiff's contracts with its investors.

Plaintiff further alleges that its decision to liquidate the Income Fund was predicated on misrepresentations made by defendants to Dr. Wood in his capacity as president of Concorde Financial. But nowhere does plaintiff allege that defendants had any contact with its shareholders, let alone any communications suggesting that they were trying to lure the shareholders away from the Income Fund in order that they become Value Line investors. None of the cases cited by plaintiff in its brief suggests that a cause of action may be maintained for tortious

Slip Copy                                                                                                                                      Page 8
Slip Copy, 2006 WL 522466 (S.D.N.Y.)
**(Cite as: Slip Copy)**

interference in a situation where a defendant's conduct affected certain contracts in such an attenuated way. To hold otherwise would eviscerate the requirement of interference. The fact that defendant's conduct may have eventually impacted plaintiff's existing contracts was only because plaintiff itself decided to liquidate the Income Fund. This in no way suggests that defendant knowingly interfered with those contracts, let alone proximately caused any damages. Texas requires "that there be some act of interference or of persuading a party to breach, for example by offering better terms or other incentives, for tort liability to arise." *Davis, 839 S.W.2d at 139*. Even if plaintiff were able to demonstrate that defendants benefited from the breach of its contracts, "[i]t is not enough that [defendant] merely reaped the advantages of a broken contract after the contracting party had withdrawn from the commitment on his own volition." *Arabesque Studios, Inc. v. Academy of Fine Arts, Intern., Inc., 529 S.W.2d 564, 568 (Tex.Civ.App.1975)*. In short, the termination of plaintiff's contracts with its shareholders is insufficient to sustain a cause of action alleging that defendants tortiously interfered with those contracts. Accordingly, plaintiff's second cause of action is dismissed.

### VI. Promissory Estoppel

**\*8** Plaintiff's third cause of action alleges that defendants' misrepresentations about "nationwide support and increased profitability for the Value Fund" made to Dr. Wood give rise to a cause of action for promissory estoppel. Compl. ¶ 45. Defendants move to dismiss for failure to state claim.

### A. Choice of Law

The parties again disagree about whether New York or Texas law should apply to plaintiff's promissory estoppel claim. The analysis, however, is identical to the choice of law analysis applicable to plaintiff's tortious interference claim, *see* § V.A, *supra,* as Texas applies a "most significant relationship" test to both types of claims. *See Minnesota Min. and Mfg. Co. v. Nishika, Ltd., 955 S.W.2d 853, 856 (Tex.1996)*. Consequently, we apply the substantive law of Texas to plaintiff's third cause of action.

### B. Analysis

In Texas, a claim for promissory estoppel has three elements: "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675, 686 n. 25 (Tex.2002)*. Defendants argue that plaintiff's promissory estoppel claim must be dismissed because: first, the existence of the Agreement between Concorde Financial and Value Line precludes plaintiff from suing on a promissory estoppel theory; and second, plaintiff has failed to allege the three required elements. We address these two arguments in turn.

### 1. Does the existence of the Agreement preclude this claim?

Defendants contend that our decision not to dismiss Concorde Financial's breach of contract claim in *Concorde II,* which was subsequently resolved by a Rule 68 final judgment, requires that we dismiss Concorde Funds' promissory estoppel claim here. In support of this argument, defendants cite several cases in which plaintiffs were barred from bringing promissory estoppel claims because the promises upon which they allegedly relied were not contained in the written agreements the parties signed.

The cases cited in support of defendants' argument are unavailing to them, however, as none of the cases involve the factual pattern alleged here. Specifically, plaintiff here was not a party to the Agreement, and thus cannot be barred from bringing suit on a promissory estoppel theory simply because defendants' performance under the contract with Concorde Financial ultimately affected plaintiff. Moreover, because it is clear that plaintiff could not bring a claim for breach of contract under the Agreement, depriving plaintiff of a claim for promissory estoppel might result in an inability to redress an alleged wrong.

Nonetheless, defendants maintain that "plaintiff's claim fails because ... a claim for promissory estoppel is available as a cause of action only to 'a promisee who relied to his detriment on an otherwise unenforceable promise.' " Def. Reply Mem. of Law at 9 (quoting *Frost Crushed Stone Co. v. Odell Geer Constr. Co., 110 S.W.3d 41, 44 (Tex.App.-Waco 2002)*). However, even if we accept this argument, plaintiff does not allege that the sole factual predicate for its promissory estoppel claim is the Agreement. In the TAC, plaintiff cites the "numerous promises of nationwide support and increased profitability for the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Value Fund [made] to Dr. Wood as the President of Concorde Financial with the expectation and intention that he would transmit those promises to Concorde Funds in order to obtain approval from Concorde Funds's board to liquidate the Income Fund" as the basis for its third cause of action, not simply the Agreement. Compl. ¶ 45. Thus, the existence of the Agreement does not preclude plaintiff from stating a claim for promissory estoppel.

### 2. Has plaintiff adequately alleged the required elements?

***9** Having concluded that plaintiff *may* state a claim for promissory estoppel, we now turn to the question of whether it has done so sufficiently. As noted above, plaintiff must plead three things: (1) a promise; (2) foreseeable reliance; and (3) detrimental reliance. Defendants argue that plaintiff has failed to adequately plead any of these elements. We disagree, and deny their motion to dismiss plaintiff's third cause of action.

#### i. Promise

Defendants suggest that plaintiff's allegation that they made "numerous promises of nationwide support and increased profitability," Compl. ¶ 45, are too unclear and ambiguous to fulfill the first element of a promissory estoppel element. This contention, however, raises an issue of fact, and thus is not appropriately considered on a motion to dismiss. This conclusion is buttressed by the fact that defendants' lone supporting citation involves a case that was decided on summary judgment.

#### ii. Foreseeable Reliance

To meet the second pleading requirement, plaintiff alleges that, "Concorde Funds reasonably and substantially relied on" the promises allegedly made by defendants. Compl. ¶ 46. Defendants contend that because "there is no allegation that defendants demanded the Income Fund be closed prior to the Agreement," this reliance was unreasonable. Again, this raises issues that may not be resolved in the context of a motion to dismiss under Rule 12(b)(6). Because plaintiff has alleged both that it did in fact rely on defendants' representations and that its reliance was reasonable and foreseeable, the second pleading requirement is met.[FN12]

FN12. While we deny the motion to dismiss, defendants nonetheless raise several substantive questions that will need to be resolved in plaintiff's favor if it is to prevail. First, was it reasonable for plaintiff to begin the liquidation process in the absence of a contract signed by plaintiff and defendant, and before the Agreement between defendant and Concorde Financial was signed? Second, was it reasonable for plaintiff to rely on representations made to Dr. Wood in light of the fact that he negotiated and signed a contract with Value Line on behalf of Concorde Financial, but not Concorde Funds? Finally, were defendants' statements that it would provide nationwide support to the Value Fund sufficiently definite to justify plaintiff's reliance? These issues, however, may not be considered at this stage of the litigation.

#### iii. Detrimental Reliance

Defendants argue that plaintiff fails to plead detrimental reliance in that it "alleges no basis to find unconscionable injury ." Def. Memo. of Law at 23. They fail, however, to present any case law stating that plaintiff is required to plead an unconscionable injury, nor do we know of any case law suggesting as much. We thus find that plaintiff's allegation that it detrimentally relied on defendants' promises by liquidating the Income Fund, leaving it in a worse position than it would have been had it not done so, suffices to meet the third pleading requirement. Consequently, we deny defendants' motion to dismiss plaintiff's third cause of action.

### VII. Civil Conspiracy

Plaintiff's fourth and final cause of action alleges that the defendants "conspired with one another to commit one or more unlawful acts in order to unlawfully induce Concorde Funds to liquidate the Income Fund ... in order to eliminate a competing fund and in order to take improper business advantage of Concorde Funds." Compl. ¶ 51. Defendants move to dismiss because: (1) they believe New York law applies and New York does not recognize an independent claim for conspiracy, and; (2) plaintiff fails to state a claim under Texas law. Because Texas law applies to this cause of action for the same reasons it applies to the second and third causes of action, we only consider defendants' second

Slip Copy
Slip Copy, 2006 WL 522466 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Page 10

argument for dismissal.

### A. Texas Civil Conspiracy Claim

***10** Texas requires that five elements be pled to state a cause of action for civil conspiracy: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." Massey v. Armco Steel Co., 652 S.W.2d 932, 934 (Tex.1983). Defendants maintain that plaintiff fails to adequately plead its fourth cause of action in two ways: first, it insufficiently pleads the facts constituting the alleged conspiracy, and; second, it fails to allege an underlying unlawful act. However, we need not reach defendants' arguments because plaintiff's civil conspiracy claim fails at the threshold.

Plaintiff's civil conspiracy claim fails because "[a] corporation cannot as a matter of law conspire with itself no matter how many of its agents or employees may participate in the corporate action." Reliance Title Co. v. Title Data, Inc., No. B14-91-00869-CV, 1992 WL 117389 at *4 (Tex.App.-Hous. June 4, 1992) (citations omitted). Here, the only alleged conspirators are all agents or employees of the defendant corporation, such that plaintiff may not sustain a cause of action for civil conspiracy regardless of its failure to allege an unlawful act. Consequently, we dismiss plaintiff's fourth cause of action.[FN13]

> FN13. We note, however, that defendants are correct in arguing that plaintiff fails to plead an underlying tort. In order to adequately plead the fourth element of a civil conspiracy claim, a plaintiff must allege "an *unlawful,* overt act in furtherance of the conspiracy." Massey, 652 S.W.2d at 934. Because we have dismissed plaintiff's fraud and tortious interference claims for failure to state a claim, [p]laintiff's assertion that "[d]efendants conspired with one another to commit one or more unlawful acts" is insufficient to adequately allege an underlying tort. Compl. ¶ 51.

### CONCLUSION

For the foregoing reasons, we grant defendants' motion to dismiss plaintiff's first, second, and fourth causes of action, but deny their motion to dismiss plaintiff's third cause of action. The parties are directed to appear for a conference on March 31, 2006 at 2:30 p.m.
SO ORDERED.

S.D.N.Y.,2006.
Concorde Funds, Inv. c. Value Line, Inc.
Slip Copy, 2006 WL 522466 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 2157237 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Third Amended Complaint (Jul. 22, 2005)
• 2005 WL 2157235 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss Concorde Funds' Third Amended Complaint (Jul. 8, 2005)
• 1:04cv09932 (Docket) (Dec. 17, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.