Westlaw.

Not Reported in F.Supp.2d                                                                                                      Page 1
Not Reported in F.Supp.2d, 1999 WL 102772 (N.D.Ill.),   RICO Bus.Disp.Guide 9697
**(Cite as: Not Reported in F.Supp.2d)**

H

United States District Court, N.D. Illinois, Eastern Division.
Lisa FORTNEY and Roy Safanda, Trustee of the Bankruptcy Estate of Dale D. Kuipers and Beverly G. Kuipers, Plaintiffs,
v.
Dale D. KUIPERS, an individual; Beverly G. Kuipers, an individual; Jerry D. Boose, an individual; Shearer, Blood, Agrella & Boose, an Illinois Partnership; Mary C. Brizuela, an individual; Shearer & Agrella, an Illinois Partnership; Wade M. Kuipers, an individual; Kimberly Kuipers, an individual; and Catherine J. Uthe, an individual, Defendants.
**No. 98 C 5387.**

Feb. 22, 1999.

MEMORANDUM OPINION AND ORDER

CONLON, District J.
**\*1** Lisa R. Fortney ("Fortney") and Roy Safanda ("Safanda") sue Dale D. Kuipers ("Dale Kuipers"); Beverly G. Kuipers ("Bev Kuipers"); Jerry D. Boose ("Boose"); C. Kenneth Blood ("Blood"); Raymond F. Agrella ("Agrella"); Mary C. Brizuela ("Brizuela"); Shearer, Blood, Agrella & Boose, an Illinois partnership; Blood, Boose & Brizuela, an Illinois partnership; Shearer & Agrella, an Illinois partnership; Wade M. Kuipers ("Wade Kuipers"); Kimberly Kuipers ("Kim Kuipers"); and Catherine J. Uthe ("Uthe")(collectively "defendants") for various injuries stemming from defendants' alleged conspiracy to conceal money and other assets from Fortney. Dale Kuipers, Bev Kuipers, Wade Kuipers, Kim Kuipers, and Blood, Boose & Brizuela move to dismiss the claims against them.

BACKGROUND

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1429 (7th Cir.1996). On January 6, 1993, Fortney filed suit in the Circuit Court of Kane County, Illinois, against Dale and Bev Kuipers and others for personal injuries she suffered in an accident involving Country West Towing ("Country West"). *See* Second Amended Complaint, ¶ 9. Dale and Bev Kuipers are the co-owners of the unincorporated towing business known as Country West. *Id.* ¶ 3. The Kuipers retained the law firm of Shearer, Blood, Agrella & Boose to represent them in the suit. *Id.* ¶ 11. Country West was grossly under-insured, and the Kuipers would be personally liable for any judgment over the $100,000 policy limits. *Id.* ¶ 10. The Kuipers and Boose formed an association-in-fact enterprise to sell, liquidate, and otherwise conceal a substantial part of Dale and Bev Kuipers' assets. *Id.* ¶ 12. This concealment scheme involved transferring property interests to the Kuipers' relatives, including Wade and Kim Kuipers, son and daughter-in-law of Dale and Bev Kuipers, and Uthe, Bev Kuipers' mother. *Id.* ¶¶ 14, 15.

On July 26, 1996, Fortney received a $650,000 judgment against Country West as well as Dale and Bev Kuipers. *Id.* ¶ 17. On July 30, 1996, Dale and Bev Kuipers presented Fortney a list of their assets, which failed to include $800,000 in liquidated and transferred assets. *Id.* ¶ 18. On October 31, 1996, Fortney received from the Kuipers' insurer partial satisfaction of the judgment in the amount of $115,546.19. *Id.* ¶ 19. On November 25, 1997, Dale and Bev Kuipers filed bankruptcy under Chapter 7 of the Bankruptcy Code. *Id.* ¶ 20.

DISCUSSION

I. MOTION OF WADE AND KIM KUIPERS

Fortney sues Wade and Kim Kuipers in Counts XXI-XXIV of the second amended complaint for violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.,* and for civil conspiracy. Wade and Kim Kuipers move to dismiss these claims pursuant to Fed.R.Civ.P. 8(a) and (e), 9(b), and 12(b)(6).

A. RULE 8

**\*2** Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." In addition, Rule 8(e)(1) states that "[e]ach averment of a pleading shall be simple, concise, and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK    Document 165-13    Filed 07/07/2006    Page 2 of 10

Not Reported in F.Supp.2d                                                                                                                          Page 2
Not Reported in F.Supp.2d, 1999 WL 102772 (N.D.Ill.),   RICO Bus.Disp.Guide 9697
**(Cite as: Not Reported in F.Supp.2d)**

direct." The primary purpose of these provisions is rooted in fair notice: Under Rule 8, a complaint " 'must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is.' " *Wade v. Hopper,* 993 F.2d 1246, 1249 (7th Cir.) (citations omitted), cert. denied, 510 U.S. 868, 114 S.Ct. 193, 126 L.Ed.2d 151 (1993); *see also Jennings v. Emry,* 910 F.2d 1434, 1436 (7th Cir.1990) (a complaint "must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search" of the plaintiff's claim). A complaint that is prolix or confusing makes it difficult for the defendant to file a responsive pleading and for the trial court to conduct orderly litigation. *See* 2A Moore's Federal Practice § 8.13, at 8-58 (Rule 8 compliance allows a defendant to answer the complaint, and aids in conducting pretrial discovery, formulating pretrial orders, and applying *res judicata* ); *see also Michaelis v. Nebraska State Bar Assoc.,* 717 F.2d 437, 439 (8th Cir.1983) (affirming dismissal with prejudice of needlessly prolix and confusing complaint because "the style and prolixity of these pleadings would have made an orderly trial impossible"). Thus, courts should not allow plaintiffs to "plead[ ] by means of obfuscation." *Jennings,* 910 F.2d at 1436.

Because it is difficult to file a pleading in response to a prolix and confusing complaint, doing so also can be costly. RICO claims must meet the requirements of Rule 8(a)(2) and Rule 8(e)(1). *See, e.g., Hartz v. Friedman,* 919 F.2d 469, 471 (7th Cir.1990) (125-page RICO complaint properly dismissed pursuant to Rule 8(a)(1)); *Jennings,* 910 F.2d at 1434 (Rule 8(e)(1) applicable to RICO claims). Moreover, the particularity demands of pleading fraud under Rule 9(b) do not negate the applicability of Rule 8. *See, e.g., Thornton v. Evans,* 692 F.2d 1064, 1082 n. 41 (7th Cir.1982) ( "detailed allegations required by Rule 9(b) must 'be [made] consistently with the general philosophy of Rule 8(e)(1)' ") (quoting 5 Wright & Miller, Federal Practice and Procedure § 1281, at 364 (1969)); *see also* Moore's Federal Practice § 8.13, at 8-57, 8-58.

Wade and Kim Kuipers argue that Fortney's second amended complaint contains numerous, needless subparts and long confusing paragraphs, yet fails to apprise them of a valid claim. According to Wade and Kim Kuipers, Fortney cites no facts in her complaint supporting her allegations of RICO violations and civil conspiracy. However, the 24-page second amended complaint is clear and replete with facts comprising claims of racketeering and civil conspiracy. Albeit lengthy, Fortney concisely sets forth with specificity defendants' allegedly fraudulent transactions. Contrary to their assertions, the complaint informs Wade and Kim Kuipers of the precise allegations against them, enabling them to prepare an answer. The detailed nature of Fortney's complaint prompts a similarly thorough answer, thus alleviating discovery burdens.

B. RULE 9

**\*3** Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The rule serves three main purposes: (1) protecting a defendant's reputation from harm; (2) minimizing "strike suits" and "fishing expeditions"; and (3) providing notice of the claim to the adverse party. *See Uni\*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 924 (7th Cir.1992); *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987). Rule 9 requires a plaintiff to identify the person who made the misrepresentation; the time, place and content of the misrepresentation; and the method used to communicate the misrepresentation. *Uni\*quality,* 974 F.2d at 923 (quoting *Bankers Trust Co. v. Old World Republic Ins. Co.,* 959 F.2d 677, 683 (7th Cir.1992)); *see also Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1020 (7th Cir.1992) (RICO complaint must specifically describe the predicate acts and "state the time, place, and content of the alleged communications perpetrating the fraud") (quoting *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.,* 927 F.2d 988, 992 (7th Cir.1991)); *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.) (finding Rule 9(b) "particularity" means "the who, what, when, where, and how: the first paragraph of any newspaper story"), cert. denied, 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990); 5 Wright & Miller, supra, § 1297, at 590.

Fair notice is a basic consideration underlying Rule 9(b). Wright & Miller, supra, § 1298, at 648. The plaintiff who pleads fraud must "reasonably notify the defendants of their purported role in the scheme." *Midwest Grinding,* 976 F.2d at 1020. Therefore, the complaint in a case involving multiple defendants must inform each defendant of the nature of that defendant's alleged participation in the fraud. *DiVittorio,* 822 F.2d at 1247; *see also Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993) (same); *Balabanos v. North Am. Inv. Group, Ltd.,* 708 F.Supp. 1488, 1493 (N.D.Ill.1988)(same). Courts consistently reject complaints that do not distinguish

Not Reported in F.Supp.2d                                                                                                                 Page 3
Not Reported in F.Supp.2d, 1999 WL 102772 (N.D.Ill.),   RICO Bus.Disp.Guide 9697
**(Cite as: Not Reported in F.Supp.2d)**

between multiple defendants. For instance, in *Sears v. Likens,* 912 F.2d 889, 893 (7th Cir.1990), the Seventh Circuit affirmed the dismissal of a complaint with prejudice because the complaint was "bereft of any detail concerning who was involved in each allegedly fraudulent activity." Instead, "the complaint lump [ed] all the defendants together and [did] not specify who was involved in what activity." *Id.; see also Design, Inc. v. Synthetic Diamond Technology, Inc.,* 674 F.Supp. 1564, 1569 (N.D.Ill.1987) (discussing the prohibition on lumping defendants together).

The complaint clearly sets forth the alleged fraud with requisite specificity. Fortney delineates the exact date of each allegedly fraudulent monetary transaction and identifies the defendant(s) responsible for that transaction. *See* Second Amended Complaint ¶¶ 12, 15, 22. Fortney specifically pleads Wade and Kim Kuipers' respective roles in the conspiracy as the conduit for liquidated property assets. *See id.* Counts XXI-XXIV. Wade and Kim Kuipers have sufficient notice and information to prepare an answer and defense. Thus, the Rule 9(b) requirements have been met.

C. RULE 12

**\*4** Wade and Kim Kuipers also move to dismiss Counts XXI-XXIV for failure to state a cause of action. In ruling on a motion to dismiss, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992) (citing *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A claim may be dismissed only if it is beyond doubt that under no set of facts would a plaintiff's allegations entitle him to relief. *Travel All Over the World, Inc.,* 73 F.3d at 1429. A court need not accept conclusory legal allegations as true. *Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 730 (7th Cir.1994). However, a motion to dismiss tests the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990).

1. RICO CLAIMS

Fortney alleges Wade and Kim Kuipers violated § 1962(d) of the RICO statute by participating in a conspiracy to liquidate and conceal assets from Fortney and bankruptcy trustee Safanda. Section 1962(d) prohibits conspiracies that "violate any of the provisions of subsection (a), (b), or (c) of this section." The Supreme Court construed the RICO conspiracy provision in *Salinas v. United States,* 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997). The Court began its analysis by noting that the RICO conspiracy provision must be interpreted in light of the traditional understanding of the term "to conspire." See *Salinas,* 118 S.Ct. at 476. Accordingly, the Court set forth the following well-established principles of conspiracy law: (1) an individual can be convicted of a conspiracy even if he "does not agree to commit or facilitate every part of the substantive offense"; (2) an individual who agrees with others to pursue a shared criminal objective may be held liable for the acts of the other conspirators; (3) an individual may be held liable for the conspiracy even if he does not perpetrate the crime himself but provides support to those who do; and (4) an individual may be held liable for a conspiracy "even though he was incapable of committing the substantive offense." *Id.*

Based on these general principles, the Court rejected Salinas' argument that the government was required to show he agreed to commit two predicate acts of racketeering activity to support his conviction under § 1962(d). Instead, the Court held that "[a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Id.* The prosecution met this burden by showing that Salinas "knew about and agreed to facilitate the scheme." *Salinas,* 118 S.Ct. at 478.

In keeping with the *Salinas* decision, the Seventh Circuit has long recognized that "[s]ection 1962(d)'s target, like that of all provisions prohibiting conspiracies, is the agreement to violate RICO's substantive provisions, not the actual violations themselves." *Schiffels v. Kemper Fin. Servs., Inc.,* 978 F.2d 344, 348 (7th Cir.1992). Accordingly, it is the law of this circuit that a person may be subject to § 1962(d) even if he does not agree to commit two predicate acts of racketeering. See *United States v. Neapolitan,* 791 F.2d 489, 498 (7th Cir.), cert. denied, 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986). Similarly, a defendant may be liable under § 1962(d) even if he cannot be characterized as an operator or manager of a RICO enterprise under *Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). See *MCM Partners, Inc. v. AndrewsBartlett & Assocs.,* 62 F.3d 967, 979 (7th Cir.1995); *United States v. Quintanilla,* 2 F.3d

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 4
Not Reported in F.Supp.2d, 1999 WL 102772 (N.D.Ill.),   RICO Bus.Disp.Guide 9697
**(Cite as: Not Reported in F.Supp.2d)**

1469, 1484-85 (7th Cir.1993).

**\*5** The Seventh Circuit has cautioned that the broad construction of the RICO conspiracy provision should not be used by the courts "to criminalize mere association with an enterprise." *Neapolitan,* 791 F.2d at 498. The touchstone of liability under § 1962(d) is an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute. *See Gagan v. American Cablevision, Inc.,* 77 F.3d 951, 960 (7th Cir.1996); *Schiffels,* 978 F.2d at 348. Accordingly, in order to plead a viable § 1962(d) claim, a plaintiff must allege that a defendant "agreed to the objective of a violation of RICO." *Neapolitan,* 791 F.2d at 498. In *Neapolitan,* the Seventh Circuit analyzed the precise nature of such an agreement:

From a conceptual standpoint a conspiracy to violate RICO can be analyzed as composed of two agreements ...: an agreement to conduct or participate in the affairs of an enterprise and an agreement to the commission of at least two predicate acts. Thus, a defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of section 1962(d), even though he is somehow affiliated with a RICO enterprise, and neither is the defendant who agrees to the commission of two criminal acts but does not consent to the involvement of an enterprise. If either aspect of the agreement is lacking then there is insufficient evidence that the defendant embraced the objective of the alleged conspiracy. Thus, mere association with the enterprise would not constitute an actionable 1962(d) violation. In a RICO conspiracy, as in all conspiracies, agreement is essential.

*Id.* at 499. Thus, in order to state a viable claim under § 1962(d), Fortney must allege: (1) each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals. *Gagan,* 77 F.3d at 961; *MCM Partners,* 62 F.3d at 980.

Fortney plainly alleges Wade and Kim Kuipers entered into an agreement with the other defendants, most specifically with Dale and Bev Kuipers, to receive property assets prior to Dale and Bev Kuipers' bankruptcy filing in violation of 18 U.S.C. § 152(7). Fortney does not rely on blanket statements or sweeping allegations devoid of detailed, factual support in establishing this agreement. Rather, she cites specific property holdings Wade and Kim received in furtherance of Dale and Bev Kuipers' asset-shifting plan. *See* Second Amended Complaint, Count XXI, ¶ 23; Count XXII, ¶ 21. Fortney lists all dates of the property transferrals, as well as the title and percentage of property interest Wade and Kim Kuipers agreed to accept in the transfer. *See id.* Wade and Kim Kuipers are alleged to have known the deceptive purpose behind the transfers, agreeing to take part in the racketeering activity. Finally, Fortney alleges Wade and Kim Kuipers' agreement to accept three separate property transfers, satisfying the requirement that they agree to two predicate acts in furtherance of the racketeering enterprise.

2. CIVIL CONSPIRACY CLAIMS

**\*6** In order to state a claim for civil conspiracy, Fortney must plead a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means. *Adcock v. Brakegate, Ltd.,* 164 Ill.2d 54, 206 Ill.Dec. 636, 645 N.E.2d 888 (1994). The complaint is replete with facts and assertions alleging a conspiracy of several people acting in concert to conceal the assets of Dale and Bev Kuipers. The complaint satisfies Rule 12(b)(6).

II MOTION OF DALE AND BEV KUIPERS

Dale and Bev Kuipers move to dismiss the claims against them pursuant to Rules 8(a) and (e), 9(b), and 12(b)(6). The foregoing discussion addresses Dale and Bev Kuipers' motion regarding Fortney's satisfaction of Rules 8 and 9. The court turns to the motion to dismiss for failure to state a claim. Fortney sues Dale and Bev Kuipers for various RICO violations, fraud and civil conspiracy.[FN1]

> FN1. Although Dale and Bev Kuipers move to dismiss the fraud allegations in Counts III and VII, they only attack the fraud counts under Rule 9(b). Because they do not assert substantive deficiencies in the claims, the court will not address the fraud claims under 12(b)(6).

A. RICO CLAIMS

1. SECTION 1962(d)

Case 7:04-cv-08223-KMK   Document 165-13   Filed 07/07/2006   Page 5 of 10

Not Reported in F.Supp.2d                                                                                                  Page 5
Not Reported in F.Supp.2d, 1999 WL 102772 (N.D.Ill.),   RICO Bus.Disp.Guide 9697
**(Cite as: Not Reported in F.Supp.2d)**

Fortney states a viable claim against Dale and Bev Kuipers for conspiracy to violate RICO laws. Fortney alleges: (1) each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) each defendant agreed that someone would commit at least two predicate acts to accomplish those goals. *Gagan,* 77 F.3d at 961; *MCM Partners,* 62 F.3d at 980. Fortney cites Dale and Bev Kuipers as the ringleaders and instigators of the racketeering enterprise, conniving to liquidate and/or conceal assets from Fortney and the bankruptcy court. Specifically, Fortney alleges that Dale and Bev Kuipers sold various properties over several years, arranged for illegal transfers or concealment of the liquidated funds, and falsely testified about their financial situation. *See* Second Amended Complaint, ¶ 22. In furtherance of their scheme to hide assets, Dale and Bev Kuipers elicited the knowing help of others. *See id.* Counts IX-XVI. Fortney has stated a claim under § 1962(d).

2. SECTION 1962(c)

A RICO plaintiff alleging a violation of § 1962(c) must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985) (footnote omitted). Dale and Bev Kuipers' alleged scheme to sell assets and conceal the profits from both Fortney and their bankruptcy estate in violation of § 152(7) satisfies § 1962(c). *See Ashland Oil v. Arnett,* 875 F.2d 1271, 1280 (7th Cir.1989). Moreover, the complaint pleads the existence of an enterprise associated through time, joined in purpose, and organized in a hierarchical or consensual decision-making manner. *See Richmond v. Nationwide Cassel L.P.,* 52 F.3d 640, 644 (7th Cir.1995). Fortney explicitly alleges Dale and Bev Kuipers were joined with Boose for the common purpose of concealing the Kuipers' assets. To this end, Dale and Bev Kuipers made decisions over time as to which real estate and other assets would be sold or liquidated, and Boose participated in the operation and management of the enterprise by knowingly implementing the Kuipers' decisions and directives. *See* Second Amended Complaint ¶ 13. Fortney need show "only some separate and distinct existence for the person and the enterprise." *Ashland Oil,* 875 F.2d at 1280.

*7 A pattern of racketeering activity consists of at least two predicate acts of racketeering committed within a ten-year period. 18 U.S.C. § 1961(5). Because the RICO statute has nothing more to say about its pattern requirement, the Supreme Court has attempted to sharpen the contours of the pattern requirement in order to effectuate congressional intent. The Court has stated that because Congress enacted RICO not out of concern for a sporadic fraudulent act but out of concern for long-term conduct, "a plaintiff ... must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *see also Sedima,* 473 U.S. at 496 n. 14.

The relationship part of this "continuity plus relationship" test requires that the predicate acts be "committed somewhat closely in time to one another, involve the same victim, or involve the same type of misconduct." *Morgan,* 804 F.2d at 975. Predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.,* 492 U.S. at 239. Fortney's complaint demonstrates a unified group of schemes designed to conceal the assets of Dale and Bev Kuipers from Fortney and the Kuipers' bankruptcy estate. However, as with the vast majority of cases dealing with the RICO pattern requirement, this case does not turn on the relatedness of the alleged predicate acts. Instead, the focus centers on whether the alleged pattern of racketeering satisfies the continuity prong of that test.

In *H.J., Inc.,* the Supreme Court stated that continuity is both a closed and open-ended concept: that is, either a closed period of repeated conduct, or past conduct that threatens future repetition. 492 U.S. at 241. Regardless of the type of continuity at issue, continuity is "centrally a temporal concept." *Id.* at 242. Allegations of conduct that can be characterized as either closed or open-ended satisfy the continuity prong of the pattern requirement.

In order to demonstrate a pattern over a closed period, a RICO plaintiff must "prov[e] a series of related predicates extending over a substantial period of time." *Id.* In *H.J., Inc.,* the Supreme Court emphasized this durational aspect of closed-ended continuity: "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term conduct." *Id.* In order to analyze the continuity prong of the pattern requirement, post-*H.J., Inc.* decisions continue to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 6
Not Reported in F.Supp.2d, 1999 WL 102772 (N.D.Ill.),   RICO Bus.Disp.Guide 9697
**(Cite as: Not Reported in F.Supp.2d)**

apply the factors set out by the Seventh Circuit in *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986). These factors "include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries ." *Id.* at 975. Courts should apply these factors with an eye toward achieving a " 'natural and commonsense' " result, recognizing that " 'Congress was concerned in RICO with long-term criminal conduct.' " *United States Textiles,* 911 F.2d at 1267 (quoting *H.J., Inc.,* 492 U.S. at 237).

**\*8** With this background in mind, the court examines Fortney's RICO allegations with respect to duration-- the length of time over which the alleged predicate acts were committed. Duration "is perhaps the closest thing we have to a brightline continuity test." *Midwest Grinding Co.,* 976 F.2d at 1024. In several recent cases, the Seventh Circuit has placed great importance on the length of time the alleged predicate acts have spanned. In *Midwest Grinding,* for instance, the court found it significant that the predicate acts during the closed-ended period of racketeering activity continued only nine months. *Id.* Similarly, in *Uni\*Quality, Inc.,* the Seventh Circuit concluded that "one scheme that lasted at most seven to eight months" was "precisely the type of short-term, closedended fraud that, subsequent to *H.J., Inc.,* this circuit consistently has held does not constitute a pattern." 974 F.2d at 922; *see also Olive Can v. Martin,* 906 F.2d, 1147, 1151 (7th Cir.1990)(finding six months in the same context a "short period of time").

In contrast to the less than one year duration found insufficient in previous cases, Fortney alleges Dale and Bev Kuipers' racketeering activity extended from 1993 to 1998. In 1993, Dale and Bev Kuipers retained the firm of Shearer, Blood, Agrella & Boose to defend them in Fortney's personal injury action. *See* Second Amended Complaint, ¶ 11. Also in 1993, Dale and Bev Kuipers began selling personal and real property, concealing the proceeds with the aid of their attorneys. *Id.* ¶ 15. The property sales continued until June 1996. *Id.* In continuance of their scheme, Dale and Bev filed a fraudulent bankruptcy claim in 1997 and proffered false testimony concerning the existence of various assets in 1998. *Id.* at Count I, ¶ 22; Count V, ¶ 22. This alleged five-year duration of enterprise activity satisfies the long-range fraud required by RICO.

Fortney's complaint satisfies many other *Morgan* factors, as well. Fortney has plead at least twenty distinct acts, each resulting in a distinct injury with additional money fraudulently transferred from Dale and Bev Kuipers' estate. *Id.* ¶ 15. While each act does not necessarily demonstrate a separate scheme, Dale and Bev Kuipers allegedly used several different tactics to conceal their assets. In some instances, the Kuipers did not document proceeds from property sales; in others, they quit-claimed property interests to relatives for no consideration. *Id.* The Kuipers purportedly manipulated mortgages and altered property ownership from joint tenancy to tenancy-by-the-entireties. *Id.* Although the ultimate goal of each maneuver remained the same, the various tactics employed support a theory of separate enterprise schemes. Fortney does not specifically list all victims of the racketeering activity, but Dale and Bev Kuipers' other bankruptcy creditors could be additional victims of the alleged conspiracy. *Id.* ¶ ¶ 2, 20. Fortney has satisfactorily plead a closed-ended continuous enterprise.

**\*9** Finally, Fortney alleges racketeering activity. Racketeering is defined to include "any offense involving fraud connected with a case under title 11." 18 U.S.C. § 1961(1)(D). The complaint asserts illegal concealment of assets in contemplation of filing for bankruptcy. *See* Second Amended Complaint ¶ ¶ 15-22. Property transfers and asset concealment in anticipation of a bankruptcy declaration constitute fraud in violation of 18 U.S.C. § 152(7). Fortney has stated a civil RICO claim against Dale and Bev Kuipers.

B. CIVIL CONSPIRACY

Fortney alleges a combination of two or more persons for the purpose of accomplishing by concerted action the unlawful purpose of concealing Dale and Bev Kuipers' assets. *See Adcock,* 164 Ill.2d at 62, 206 Ill.Dec. 636, 645 N.E.2d 888 (1994). Dale and Bev Kuipers allegedly committed the overt acts of selling and/or transferring real and personal property in furtherance of a conspiracy to hide assets from Fortney and the bankruptcy court. *See* Second Amended Complaint, Counts IV and VIII. The complaint specifically sets forth various actions taken by Dale and Bev Kuipers, as well as by the other named co-conspirators, in furtherance of the conspiracy. Fortney alleges all elements of a civil conspiracy claim with particularity.

III MOTION OF BOOSE, BLOOD & BRIZUELA

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK   Document 165-13   Filed 07/07/2006   Page 7 of 10

Not Reported in F.Supp.2d                                                                                                    Page 7
Not Reported in F.Supp.2d, 1999 WL 102772 (N.D.Ill.), RICO Bus.Disp.Guide 9697
**(Cite as: Not Reported in F.Supp.2d)**

Fortney sues Boose for violations of RICO §§ 1962(a), (c), and (d), fraud, and civil conspiracy (Counts IX-XIII). Blood and Brizuela are sued for negligent failure to control the activities and partners of their law firm (Counts XVI and XVII). Finally, Fortney sues the following partnerships and name partners for violations of the Illinois Uniform Partnership Act: Shearer,[FN2] Blood, Agrella & Boose; (Count XVIII); Blood, Boose & Brizuela (Count XIX); Shearer [FN3] & Agrella; Boose (Count XX). Boose, Blood, and Brizuela move to dismiss the preceding claims pursuant to Rule 9(b) and 12(b)(6).

> FN2. Shearer is not named individually in this count.

> FN3. Shearer is not named individually in this count.

### A. FRAUD

Fortney asserts detailed factual allegations constituting fraud. Boose purportedly made false statements of material fact in devising and recording property transfers, affecting ownership only "on paper," in order to thwart both Fortney and the bankruptcy court in their claims against Dale and Bev Kuipers' assets. In attempting to satisfy her personal injury judgment, Fortney was forced to rely on Dale and Bev Kuipers' estate as altered by these transactions, thereby damaging her ability to reap her full judgment. *See* Second Amended Complaint, Counts IX, XII. Fortney has plead fraud with sufficient particularity.

### B. RICO CLAIMS

#### 1. SECTION 1962(d)

Boose correctly recognizes that "[t]he touchstone of liability under § 1962(d) is an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute. Accordingly, in order to plead a viable § 1962(d) claim, a plaintiff must allege that a defendant agreed to the objective of a violation of RICO." Def. Mot. at 15-16 (citing *Goren v. New Vision International, Inc.,* 156 F.3d 721, 732 (7th Cir.1998)). Boose further avers that Fortney's RICO conspiracy claim is entirely devoid of any allegations of Boose's agreement to contribute to the enterprise goals.

However, Boose's contention simply turns a blind eye to the facts alleged in the complaint. Not only does Fortney explicitly allege that "Boose knew about and agreed to facilitate the scheme and maintain an interest in or control of, or to participate in the affairs of the Enterprise through a pattern of racketeering activity, in order to conceal Dale and Bev's real estate and other assets," Second Amended Complaint, Count X, ¶ 22, but she also details three years of Boose's actions undertaken as the Kuipers' attorney. *See id.,* Count IX, ¶ 22. The legal services and advice Boose provided Dale and Bev Kuipers may support an inference that he was aware of the purpose for the property transfers and agreed to facilitate the goal; indeed, the facts alleged by Fortney may imply Boose was the mastermind behind the enterprise scheme. As the sole attorney named in the conspiracy, only Boose would have the legal knowledge necessary to understand the ramifications of asset manipulations.

**\*10** Although "the broad construction of the RICO conspiracy provision should not be used by the courts 'to criminalize mere association with an enterprise,' " *Goren v. New Vision Intern., Inc.,* 156 F.3d 721, 732 (7th Cir.1998)(quoting *United States v. Neapolitian,* 791 F.2d 489, 498 (7th Cir.1986)), Boose's alleged behavior is not "mere association." Fortney's allegations do not portray Boose's actions simply as those of an innocent attorney unwittingly performing devious services for his clients. Specifically, his note to Dale and Bev Kuipers acknowledging their desire to re-claim ownership of property after Fortney's personal injury judgment suggests Boose was not operating in the dark. Fortney's complaint alleges Boose's explicit or implied agreement to participate in the affairs of the enterprise and commit predicate acts in furtherance of the conspiracy goals. Accordingly, a claim is stated against Boose under § 1962(d).

#### 2. SECTION 1962(c)

Fortney's allegation of Boose's § 1962(c) violation must demonstrate "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L.,* 473 U.S. at 496 (1985) (footnote omitted). Although Fortney does not directly allege Boose's authority in the racketeering enterprise, she pleads sufficient facts to support an inference that Boose acted as an operator or manager of the racketeering enterprise, as required to establish "conduct." *See Goren,* 156 F.3d at 727. The allegations in Count IX assert not only that Boose

Case 7:04-cv-08223-KMK   Document 165-13   Filed 07/07/2006   Page 8 of 10

Not Reported in F.Supp.2d                                                                                                    Page 8
Not Reported in F.Supp.2d, 1999 WL 102772 (N.D.Ill.),   RICO Bus.Disp.Guide 9697
**(Cite as: Not Reported in F.Supp.2d)**

performed legal services for Dale and Bev Kuipers regarding the transfer of some of their assets, but that he knew and indeed played a role in the general goal of concealing assets from Fortney during her personal injury lawsuit. *See* Second Amended Complaint, Count IX, ¶ 22(g).

Concerning the second requirement, Boose asserts the lack of an enterprise. In support of his contention, he argues: "Where the alleged enterprise is comprised of individuals or separate entities united together, the enterprise must exist as an organization with a structure and goals separate from the predicate acts themselves. In other words, a group of individuals who united for the sole purpose of committing predicate acts are an 'enterprise' under RICO. The allegation must be that the predicate acts were performed to further racketeering activity beyond the predicate acts." Def. Mot. at 8 (citing *United States v. Masters,* 924 F.2d 1362, 1367 (7th Cir.1991)). However, Fortney has alleged a goal-oriented enterprise apart from the individual predicate acts of selling or transferring distinct assets. Fortney cites Dale and Bev's desire to conceal assets from Fortney and the bankruptcy court as the enterprise's primary purpose. The individual sales or transfers are the means to that end; they are the predicate acts to accomplish the overarching goal of asset concealment.

Boose's alleged activity also satisfies the close-end continuity pattern of racketeering. Over a span of three years, he participated in at least seven legal transactions on Dale and Bev Kuipers' behalf, each resulting in a distinct injury. *See* Second Amended Complaint, Count IX, ¶ 22(g). Moreover, his transactions violated both § 152(7) and § 1341 of Title 18, constituting racketeering under § 1961(1). Fortney has stated a claim against Boose under § 1962(c).

### 3. SECTION 1962(a)

**\*11** Boose offers no reason for dismissal of the § 1962(a) claim beyond the common arguments supporting dismissal of all the RICO claims. Those arguments lack merit for the reasons stated above. However, Fortney's § 1962(a) claim is subject to dismissal for lack of standing. A § 1962(a) violation requires "the receipt of income from a pattern of racketeering activity, and the use of that income in the operation of an enterprise." *Morgan,* 804 F.2d at 972-73. Section 1962(a) prohibits any person who has received income from a pattern of racketeering activity from "us[ing] or invest[ing], directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise." The use or investment of the racketeering income must proximately cause the plaintiff's injury; injury caused by the predicate racketeering acts is inadequate. *See Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.,* 981 F.2d 429, 437 (9th Cir.1992) (a § 1962(a) claim must allege facts tending to show plaintiff was injured by the use or investment of racketeering income), cert. denied, 508 U.S. 908, 113 S.Ct. 2336, 124 L.Ed.2d 247 (1993); *Ouaknine v. MacFarlane,* 897 F.2d 75, 82 (2d Cir.1990) (same); *Craighead v.. E.F. Hutton & Co.,* 899 F.2d 485, 494 (6th Cir.1990) (same); *Rose v. Bartle,* 871 F.2d 331, 356-58 (3d Cir.1989) (same); *Grider v. Texas Oil & Gas Corp.,* 868 F.2d 1147, 1149 (10th Cir.) (same), cert. denied, 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989).

Moreover, the majority view is that mere reinvestment of racketeering proceeds into a business activity is not sufficient for § 1962(a) standing. *See, e.g., Brittingham v. Mobil Corp.,* 943 F.2d 297, 305 (3d Cir.1991) (reinvestment would eviscerate the use-or-investment injury when corporations are RICO defendants). According to the majority rule, Fortney lacks defendants). According to the majority rule, Fortney lacks § 1962(a) standing because she has alleged injury only from the predicate acts, not from the investment-use of the converted funs.

The Seventh Circuit has never reached this issue. In *Viacom, Inc. v. Harbridge Merchant Services, Inc.,* 20 F.3d 771, 778-79, n.6 (7th Cir.1994), the standing issue became moot after the court found no pattern of racketeering activity. Also, in his concurrence in *Mid-State,* Judge Ripple pointed out that affirming the district court's dismissal of a § 1962(a) claim "ought not be read as our deciding sub silentio the important question of whether *Mid-State* has standing to bring an action under subsection (a) of section 1962." 877 F.2d at 1340, n. 1.

Another judge of this court found standing in a similar case, concluding that RICO injuries stemmed from predicate acts rather than from an overall pattern of racketeering. In *Mid-State Fertilizer Co. v. Exchange National Bank of Chicago,* the court determined that violations of § 1962 "only require a causal relationship between the predicate racketeering acts and injury; there is no requirement of injury caused by a pattern of racketeering." 693 F.Supp. 666, 671 (N.D.Ill.1988). Support for the

Case 7:04-cv-08223-KMK    Document 165-13    Filed 07/07/2006    Page 9 of 10

Not Reported in F.Supp.2d                                                                                         Page 9
Not Reported in F.Supp.2d, 1999 WL 102772 (N.D.Ill.),   RICO Bus.Disp.Guide 9697
**(Cite as: Not Reported in F.Supp.2d)**

*Mid-State* court's assertion arises from the following Supreme Court analysis of RICO injuries:

Given that "racketeering activity" consists of no more and no less than commission of a predicate act, § 1961(1), we are initially doubtful about a requirement of a "racketeering injury" separate from the harm from the predicate acts. A reading of the statute belies any such requirement. Section 1964(c) authorizes a private suit by "[a]ny person injured in his business or property by reason of a violation of § 1962." Section 1962 in turn makes it unlawful for "any person"-not just mobsters-to use money derived from a pattern of racketeering activity to invest in an enterprise, to acquire control of an enterprise through a pattern of racketeering activity, or to conduct an enterprise through a pattern of racketeering activity. § § 1962(a)-(c). If the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under 1964(c). There is room in the statutory language for an additional, amorphous "racketeering injury" requirement.

*Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 497 (1985).

In order to bring suit, a plaintiff must be injured "by reason of" a violation of § 1962. This language imposes a proximate cause requirement on plaintiffs. The proximate cause of injury is the predicate acts themselves. When any member of the enterprise invests income reaped through the performance of the predicate acts, the party injured by the predicate acts is likewise injured by the siphoning of money generated by the predicate acts. Boose allegedly received payment for his participation in converting Dale and Bev Kuipers' estate into assets unreachable by Fortney and the bankruptcy court, thus undermining Fortney's ability to satisfy her personal injury judgment against Dale and Bev Kuipers. Essentially, Dale and Bev Kuipers purportedly redirected to Boose some of the funds owed to Fortney in exchange for Boose's legal services obscuring their assets from Fortney. If she was injured by the redirection of those funds, Fortney has standing under § 1962(a).

### 4. CIVIL CONSPIRACY

***12** The foregoing discussion of Boose's alleged fraudulent activity and RICO violations in assisting Dale and Bev Kuipers to conceal their assets from creditors state a claim for civil conspiracy. Fortney has cited Boose as one of a group of persons united for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means. *Adcock,* 164 Ill.2d at 62, 206 Ill.Dec. 636, 645 N.E.2d 888 (1994). Boose allegedly participated in the conspiracy by effecting property transfers for an unlawful purpose.

### 5. NEGLIGENT FAILURE TO CONTROL

In Counts XVI and XVII, Fortney alleges claims against Blood and Brizuela for negligent failure to control their law partner Boose. A claim for negligence, to be legally sufficient, must set out facts that establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from the breach. *Cunis v. Brennan,* 56 Ill.2d 372, 374, 308 N.E.2d 617 (1974). Fortney has not established that Blood and Brizuela owed her a duty. Generally, an attorney owes no duty to a third party unless the attorney is specifically hired for the purpose of benefitting the third party. *Schwartz v. Cortelloni,* 177 Ill.2d 174-75 (1997)(citing *Pelham v. Griesheimer,* 92 Ill.2d at 21, 64, 65 Ill.Dec. 30, 440 N.E.2d 885 (1982)). Fortney fails to allege a relationship with Blood and Brizuela that would give rise to a duty; consequently, she has not stated a claim for negligence against them.

### 6. UNIFORM PARTNERSHIP ACT

In Counts XVIII, XIX, and XX, Fortney sues various partners and partnerships for violation of the Illinois Uniform Partnership Act. It is well established that all partners are jointly and severally liable for conduct chargeable to the partnership for losses or injury to a third person caused by wrongful acts or omissions of a partner acting in the ordinary course of the partnership's business. 805 ILCS 205/13, 15 (West 1999). For any wrong that can be considered the act of the firm, the members of the firm are collectively and individually liable. *Heidenreich v. Bremner,* 260 Ill. 439, 444, 103 N.E. 275 (1913). Except in the case of dissolution by bankruptcy, dissolution of the firm does not alter the liability of partners as to third persons. *Id; see also* 805 ILCS 205/36 (West 1999).

Blood and Brizuela argue there can be no vicarious liability under the Illinois Uniform Partnership Act because Boose is not individually liable for his actions. However, Fortney has stated a claim against Boose under both RICO and Illinois common law.

Case 7:04-cv-08223-KMK  Document 165-13  Filed 07/07/2006  Page 10 of 10

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 1999 WL 102772 (N.D.Ill.), RICO Bus.Disp.Guide 9697  
**(Cite as: Not Reported in F.Supp.2d)**

Page 10

Therefore, as Boose's partners, Blood and Brizuela can be vicariously liable for his actions. Defendants further assert Blood, Brizuela, and the partnership of Blood, Boose & Brizuela have no liability for Boose's allegedly illegal acts because the partnership was not formed until July 1, 1996-after the events in issue. This assertion is erroneous on two counts. First, Blood was a member of the partnership of Shearer, Blood, Agrella & Boose, which did not dissolve until July 1, 1996. Blood is therefore subject to liability both individually and as a partner for Boose's actions through June 1996. Second, Fortney alleges that Boose performed legal services, in furtherance of the enterprise and in violation of 18 U.S.C. § 1341, after the July 1, 1996 formation of Blood, Boose & Brizuela. *See* Second Amended Complaint, Count IX, ¶ 22(g). Thus, Brizuela may be vicariously liable for acts undertaken by Boose after July 1, 1996.

## CONCLUSION

**\*13** The motion of Wade and Kim Kuipers to dismiss Counts XXI-XXIV is denied. Dale and Bev Kuipers' motion to dismiss Counts I-VIII is denied. The motion of Jerry D. Boose, C. Kenneth Blood, Mary C. Brizuela, and Blood, Boose & Brizeula, to dismiss Counts IX-XIII, XVI-XX is granted in part and denied in part. Counts XVI and XVII are dismissed without prejudice.

N.D.Ill.,1999.  
Fortney v. Kuipers  
Not Reported in F.Supp.2d, 1999 WL 102772 (N.D.Ill.), RICO Bus.Disp.Guide 9697

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.