Westlaw.

Not Reported in F.Supp.                                          Page 1
Not Reported in F.Supp., 1993 WL 361672 (S.D.N.Y.), 126 Lab.Cas. P 10,920, Pens. Plan Guide (CCH) P 23893P
**(Cite as: Not Reported in F.Supp.)**

H

United States District Court, S.D. New York.
Samuel GOLDBERG as Trustee of the Metal
Spinners Union Insurance Fund, Stanley Axelrod as
President of the Metal Spinners and Silver Plated
Hollow-Ware Workers' Union, Local 49e, S.E.I.U.,
AFL-CIO, Samuel Goldberg as Trustee of the Metal
Spinners Union Retirement Fund, Plaintiffs,
v.
COLONIAL METAL SPINNING AND STAMPING
CO., INC. and its alter ego, Regency Metal
Stamping, Inc., Anshel Tyrnauer and Isaac Tyrnauer,
Defendants.
**No. 92 Civ 3721 (JFK).**

Sept. 14, 1993.

Lewis, Greenwald, Kennedy, Lewis, Clifton &
Schwartz, New York City, (Ira Cure, of counsel), for
plaintiffs.
Horowitz & Pollack, P.C., South Orange, NJ (Stuart
Bochner, of counsel), for defendant.

OPINION AND ORDER
KEENAN, District Judge.
**\*1** Before this Court is plaintiffs' motion for partial
summary judgment and for the addition of parties
pursuant to Fed.R.Civ.P. 56 and 21, respectively.
Plaintiffs have brought this suit pursuant to the
Employee Retirement Income Security Act of 1974,
as amended ("ERISA"), 29 U.S.C. § 1001 *et seq*, and
the Labor Management Relations Act, 29 U.S.C. §
185. They allege that Colonial Metal Spinning and
Stamping Co., Inc. ("Colonial") and Regency Metal
Stamping, Inc. ("Regency") are liable both for
delinquent contributions to the insurance and
retirement funds of, and for dues deducted from the
wages of, Metal Spinners and Silver Plated Hollow-
Ware Union, Local 49e ("Local 49e") employees.
They also allege that Isaac Tyrnauer, president and
sole shareholder of Colonial, and Anshel Tyrnauer,
president and sole shareholder of Regency, are jointly
and severally liable for the payments and
contributions. Plaintiffs now move for partial
summary judgment with respect to (1) the alter ego
liability of Colonial and Regency and (2) the joint
and several liability of individual defendants Anshel
Tyrnauer and Isaac Tyrnauer. Plaintiffs also move
to add corporate defendants Accurate Famous

Castings Corp. ("Famous") and A & T Castings
Corp. ("A & T"). For the reasons set forth below,
the motion is granted.

BACKGROUND

As an initial matter, defendants failed to file a 3(g)
statement with their opposing papers as required by
the Local Rules for the Southern District of New
York. Local Civ.R. 3(g).[FN1] The effect of this
omission will be discussed below. *See infra* at 5-6.

Local 49e entered into a collective bargaining
agreement with its employer, Colonial, later reformed
as Regency, (collectively, "Colonial/Regency"), on
September 1, 1989. Plaintiffs' 3(g) Statement ¶ 5.
The terms of the agreement included provisions
under which Colonial was to make payments into
Local 49e's insurance and retirement funds. The
agreement bound Colonial's successors and assigns
and prohibited it from altering its corporate structure
or identity as a means of avoiding its obligations
under the agreement. *See id.* & Exhibit B
(Collective Bargaining Agreement).

Colonial became delinquent in its monthly
contributions to the funds in late 1989. *See*
Plaintiffs' 3(g) Statement ¶ 21. In 1990, an
insolvent Colonial, unable to renegotiate the
collective bargaining agreement, transformed itself
into Regency and repudiated the agreement. *See id.*
¶ 10. Isaac Tyrnauer has acknowledged, and the
National Labor Relations Board has determined, that
Regency was formed purposefully to evade
Colonial's obligations under the agreement. *See id.* ¶
¶ 9-10 & Exhibit A at 3 (National Labor Relations
Board Decision). Plaintiffs offer the following facts,
among others, as evidence that Colonial and Regency
are indistinguishable corporate entities:
(1) all Colonial employees were put on Regency's
payroll and performed the same jobs for Regency as
they did for Colonial, *see* Plaintiffs' 3(g) Statement ¶
11;
**\*2** (2) Regency used Colonial's equipment and
machinery and customer list free of charge, and
produced the same product produced by Colonial, *see
id.* ¶ ¶ 11-12;
(3) Colonial owns the building in which Regency
operates, but Regency pays no rent, *see id.* ¶ 12;
(4) no written agreement exists between Colonial and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1993 WL 361672 (S.D.N.Y.), 126 Lab.Cas. P 10,920, Pens. Plan Guide (CCH) P 23893P
**(Cite as: Not Reported in F.Supp.)**

Regency concerning the use of facilities, equipment or customer lists, *see id.;* and
(5) neither Colonial nor Regency has ever had a Board of Directors' or shareholders' meeting; and neither has by-laws, stock certificates, or a stock registration ledger. *see id.* ¶¶ 13-15.

### DISCUSSION

#### A. *Applicable Standard*

Summary judgment should be granted when there is no "genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).* A non-movant with the burden of proof at trial must respond to a properly supported motion for summary judgment with specific facts, supported by its own affidavits, showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *see Celotex Corp. v. Catrett, 477 U.S. 317 (1986).* The non-movant must present evidence sufficient to support a verdict in its favor. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).* In the absence of a sufficient response by the adverse party, summary judgment, if appropriate, shall be granted. Fed.R.Civ.P. 56(e). The burden of showing an absence of triable fact is on the moving party. *Konik v. Champlain Valley Physicians Hosp. Medical Center, 733 F.2d 1007, 1013 (2d Cir.1984), cert. denied, 469 U.S. 884 (1984).* Ambiguities and inferences must be resolved in favor of the non-moving party. *Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir.1980).*

#### B. *Defendants' Failure to File a 3(g) Statement*

Defendant has failed to file a statement pursuant to Local Rule 3(g). The allegations in plaintiffs' properly filed statement, therefore, are uncontroverted and will be admitted as fact for purposes of weighing their summary judgment motion. *See Maresco v. Evans Chemetics, Div. of W.R. Grace, 964 F.2d 106, 111 (2d Cir.1992); Africa Fund v. Mosbacher, 92 Civ. 289 (JFK), 1993 WL 183736, at 3 (S.D.N.Y.1993).* Rule 3(g) dovetails in this respect with Rule 56, which the Supreme Court has interpreted to require that summary judgment be granted when the non-movant's failure to produce evidence sufficient to show a genuine issue of

material fact results in a "complete failure of proof." *Celotex, 477 U.S. at 322; see also Delgado v. Koehler, 90 Civ. 7066 (SS), 1993 WL 227715, at 1 (S.D.N.Y.1993); Green v. Bontum, 86 CV 4064, 1988 WL 69951, at 2 (E.D.N.Y.1988)* (non-movant's failure to submit a Rule 56(e) response and a Rule 3(g) statement results in a granting of summary judgment).

#### C. *Summary Judgment Analysis*

##### 1. *Alter Ego Liability of Corporate Defendants*

**\*3** By failing to respond properly to the plaintiffs' 3(g) statement, Colonial has in effect admitted to the crux of Local 49e's case. Local 49e alleges, and is supported by affidavit and exhibits, that in four separate adjudicatory proceedings, Colonial and Regency were determined to be alter egos of one another. The first determination was made on March 8, 1991, when Judge Leisure of the Southern District of New York entered a default judgment against Colonial and Regency, as alter egos, for delinquent contributions owed to the plaintiffs' insurance fund. *See* Plaintiffs' 3(g) Statement, Exhibit E (*Stanley Axelrod, Metal Spinners Union Ins. Fund v. Colonial Metal Spinning and Stamping Co., Inc., and its alter ego, Regency Metal Stamping, Inc.,* Default Judgment, No. 90 Civ 7143 (PKL) (S.D.N.Y. Mar. 8, 1991)).

The second occasion was on July 1, 1991, when an arbitrator required Regency, as the successor to Colonial, to reinstate two employees who had been discharged by Colonial in violation of the parties' collective bargaining agreement. *See* Plaintiff's 3(g) Statement, Exhibit F.

The third adjudication occurred when Justice Huff of the New York Supreme Court confirmed the arbitration award and entered a judgment thereon on February 6, 1992. *See* Plaintiffs' 3(g) Statement, Exhibit G (*Albert Lippel, Metal Spinners and Silver Plated Hollow-Ware Workers' Union v. Colonial Metal Spinning and Stamping Co., Inc. and Regency Metal Stamping Co.,* Index No. 22839/91 (N.Y.Sup.Ct. Feb. 6, 1992) ("*Lippel* ")). Justice Huff found that the arbitrator had not exceeded his power in determining that Colonial and Regency were alter egos. *Lippel* at 7 (citing *Eichleay Corp. v. Iron Workers, 944 F.2d 1047 (3rd Cir.1991)* and *Local No. 6, Bricklayer's Int'l Union of Am. v. Boyd G. Heminger, Inc., 483 F.2d 129 (6th Cir.1973)*).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 3
Not Reported in F.Supp., 1993 WL 361672 (S.D.N.Y.), 126 Lab.Cas. P 10,920, Pens. Plan Guide (CCH) P 23893P
**(Cite as: Not Reported in F.Supp.)**

The opinion discusses two additional points of law useful to our determination. The first is that in New York a default judgment, such as the one entered by Judge Leisure, usually bars litigation of issues or claims that were determined or could have been determined in a prior action. *See Tantillo v. Giglio, 156 A.D.2d 664, 664, 549 N.Y.S.2d 432, 432 (2d Dep't 1989); Chisholm-Ryder Co. v. Sommer & Sommer, 78 A.D.2d 143, 144, 434 N.Y.S.2d 70, 71 (4th Dep't 1980).* Secondly, collateral estoppel may be applied when (1) there is a complete identity of material issue that was necessarily decided in a prior action, and (2) there was a full and fair opportunity to contest the issue. *Lippel* at 5 (citing *Schwartz v. Public Adm'r of the County of Bronx,* 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 959, 246 N.E.2d 725, 728 (1969)). Also to be considered are the size of the claim, forum of the prior adjudication, competence of counsel, differences in applicable law, and foreseeability of litigation. *Lippel* at 8 (citing *Gilberg v. Barbieri,* 53 N.Y.2d 285, 292, 441 N.Y.S.2d 49, 51, 432 N.E.2d 807, 809 (1981)). After reviewing the facts, Justice Huff found that collateral estoppel was applicable to the issue of Colonial's and Regency's status as alter egos.

**\*4** The fourth determination was made on June 24, 1992, when Judge Morton of the National Labor Relations Board Division of Judges held that Colonial and Regency, having failed to reinstate the two discharged employees or meet their delinquent obligations, were in violation as alter egos of both their collective bargaining agreement and the National Labor Relations Act. *See* Plaintiffs' 3(g) Statement, Exhibit A.

In none of the four proceedings did Colonial or Regency contest the determination that they were alter egos, nor were any reasons offered why collateral estoppel should not be applied to make those determinations conclusive. Those determinations, particularly Judge Leisure's opinion, are conclusive, *see Lippel* at 6, and will not be disturbed here.[FN2] Relitigation of issues is precluded by the doctrine of collateral estoppel to the extent that the issues are identical and their resolution was essential to the previous proceeding. *See RX Data Corp. v. Department of Social Services,* 684 F.2d 192, 197 (2d Cir.1982). Regency's status as Colonial's alter ego, the exact issue addressed by the plaintiffs' motion, was an essential element in each of the proceedings described above. Furthermore, in each case the issue was fully and fairly decided and there was adequate opportunity to contest. In the absence of any showing of "particularized

unfairness," including lack of notice or incentive to litigate, neither of which is evident here, there is no reason to relitigate the issue. *See Wickham Contracting Co. v. Board of Educ.,* 715 F.2d 21, 26 (2d Cir.1983). Colonial remade itself as Regency in order to evade its collective bargaining obligations, and the two remain, as previously found, alter egos of one another.

2. *Individual Joint and Several Liability*

Plaintiffs also move for summary judgment on the joint and several liability of Isaac and Anshel Tyrnauer.

Plaintiffs seek to pierce the corporate veil of Colonial and Regency in order to directly reach the sole shareholders of those companies. Although the presumption that the individual officers and shareholders are separate entities from the corporation holds true for actions proceeding under ERISA, *see Trustees of UIU Health and Welfare Fund UIU Pension Trust v. New York Flame Proofing,* 649 F.Supp. 843, 847 (S.D.N.Y.1986), *rev'd on other grounds,* 828 F.2d 79 (2d Cir.1987), limits on individual liability are not absolute. *See England Strohl/Denigris, Inc. v. Weiner,* 538 F.Supp. 612, 613-14 (S.D.N.Y.1982).

Piercing a corporate veil in an action arising under ERISA "is a question of federal substantive law, though state law may be used as a reference guide." *Flame Proofing,* 649 F.Supp. at 847. The Court will first address the federal common law standard.

a. *Federal Common Law*

"ERISA's purpose is to secure guaranteed pension payments to participants by insuring honest administration of financially sound plans." *Pompano v. Michael Schiavone & Sons, Inc.,* 680 F.2d 911, 914 (2d Cir.), *cert. denied,* 459 U.S. 1039 (1982); *see* H.R.Rep. No. 93-1280, 93d Cong., 2d sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 5038-5190. In recognition of this purpose, the Second Circuit has recently noted that "[t]he touchstone of the statutory scheme is the reservation to the federal authority of the sole power to regulate the field of employee benefit plans." *In re Masters Mates & Pilots Pension Plan and IRAP Litig.,* 957 F.2d 1020, 1026 (2d Cir.1992). ERISA section 514(a) preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. §

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1144(a); *see Ingersoll-Rand Co. v. McClendon,* 111 S.Ct. 478, 482-83 (1990).

**\*5** But the scope of ERISA, and the means of its interpretation, exceed its statutory confines. The federal courts have been authorized by the language and intent of the legislation, as well as by the Supreme Court, to develop a federal common law under ERISA. The Supreme Court has repeatedly acknowledged the province of the courts to fashion a "federal common law of rights and obligations under ERISA-regulated plans." *Firestone Tire and Rubber Co. v. Bruch,* 498 U.S. 101, 110 (1989) (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56 (1987)).

Although there is no bright-line test under federal common law for determining when the corporate veil should be pierced, "[t]he general rule adopted in federal cases is that 'a corporate entity may be disregarded in the interests of public convenience, fairness and equity.' " *Alman v. Danin,* 801 F.2d 1, 3 (1st Cir.1986) (citations omitted). With one voice, the circuit courts have added specific and compatible criteria to this widely-accepted general test, including: (1) the amount of respect given by the shareholders to the separate identity of the corporation and to its formal administration, (2) the degree of injustice that recognition of the corporate form would visit upon the litigants, (3) the intent of the shareholders or incorporators to avoid civil or criminal liability, (4) inadequate corporate capitalization, and (5) whether the corporation is merely a sham. *See, e.g., Alman v. Danin,* 801 F.2d at 4; *Solomon v. Klein,* 770 F.2d 352, 353-54 (3d Cir.1985); *Contractors, Laborers, Teamsters & Eng'rs Health and Welfare Plan v. Hroch,* 757 F.2d 184, 190 (8th Cir.1985); *Laborers Clean-up Contract Admin. Trust Fund v. Uriarte Clean-up Service, Inc.,* 736 F.2d 516, 524 (9th Cir.1984); *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.,* 540 F.2d 681, 685-87 (4th Cir.1976); *see also Flame Proofing,* 649 F.Supp. at 847.

Whether proceeding under the general test or the specified criteria, an inquiry into corporate form pursuant to a federal statute must consider the importance placed by the statutory scheme on that form. *See Schenley Distillers Corp. v. United States,* 326 U.S. 432, 437 (1946). The result is an inquiry that is less deferential to the corporate form than the strict alter ego doctrine of state law. *Lowen v. Tower Asset Management, Inc.,* 829 F.2d 1209, 1220 (2d Cir.1987), *rev'd on other grounds sub nom. In re Masters Mates & Pilots Pension Plan and IRAP Litigation,* 957 F.2d 1020 (2d Cir.1992); *see Capital*

*Tel. Co. v. FCC,* 498 F.2d 734, 738-39 (D.C.Cir.1974). This less deferential inquiry can be attributed to a statutory format which was intended "to remove jurisdictional and procedural obstacles which in the past appear to have hampered ... recovery of benefits due to participants who were otherwise being deprived of benefits due them." S.Rep. No. 127, 93d Cong., 2d sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4838, 4871; *see also Alman,* 801 F.2d at 3 ("ERISA ... cannot be said to attach great weight to corporate form"). The Second Circuit has held that "[c]ourts have without difficulty disregarded form for substance where ERISA's effectiveness would otherwise be undermined." *Lowen,* 829 F.2d at 1220.

**\*6** Missing from the Tyrnauers' management of Colonial and Regency is the type of arms-length relationship that would indicate adequate respect for the corporate entity. In 1990, Isaac Tyrnauer, with the assistance of Anshel Tyrnauer, fraudulently created Regency as a corporate vehicle in which to dump Colonial's delinquent obligations to the defendants' funds. *See* Plaintiffs' 3(g) Statement ¶ 9. Since then, the Tyrnauers have disregarded fundamental, formal distinctions, not only between Colonial and Regency, but between themselves and their corporations. Isaac Tyrnauer performs the same functions for Regency as he did as Colonial's president and sole shareholder, although those positions are held at Regency by Anshel. *See id.* ¶ 20. Although Isaac Tyrnauer created Regency to evade collective bargaining obligations, he holds himself out as Regency's collective bargaining representative. *See id.* Colonial was insolvent when it transformed itself into Regency, *see id.* ¶ 7, which produces the same product, with the same machinery and the same employees as its predecessor. *See id.* ¶¶ 11-12.

The informal management of the two corporations belies their ostensibly distinct corporate status. Neither Colonial nor Regency has by-laws, stock certificates or a stock ledger; neither has had a Board of Directors' or shareholders' meeting. *See id.* ¶¶ 14-15. There is no written agreement concerning the ownership and use of facilities and equipment. *See id.* ¶ 12. Both brothers describe their work as "sales," although neither is on commission or salary. Isaac Tyrnauer draws 20-25 yearly "bonuses" of $500-$600; no formula exists for calculating these "bonuses." Anshel Tyrnauer "borrows" his compensation from his brother; no formula or timetable exists for repaying these loans. *See id.* ¶¶ 16-17. Isaac Tyrnauer has use of a car, and car

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                  Page 5
Not Reported in F.Supp., 1993 WL 361672 (S.D.N.Y.), 126 Lab.Cas. P 10,920, Pens. Plan Guide (CCH) P 23893P
**(Cite as: Not Reported in F.Supp.)**

insurance, paid for by Regency; he "occasionally" uses the car for personal business. *See id.* ¶ 19.

Our facts amply justify piercing the corporate veil. In *Lowen v. Asset Management Corp.,* 653 F.Supp. 1542 (S.D.N.Y.1987), a "close and intimate relationship between the corporate and individual defendants," sufficient to pierce the corporate veil, was established on similar facts, including: the same employees working for both corporations, the sharing of office space, casual money transfers to individual defendants, and the "zero net worth" of the corporate defendants. *Lowen,* 653 F.Supp. at 1553.

Although the *Lowen* trial court found that both the corporate and individual defendants were liable under ERISA as fiduciaries, the Second Circuit, addressing the case on appeal, found fiduciary status "irrelevant in light of the principle that parties who knowingly participate in fiduciary breaches may be liable under ERISA to the same extent as fiduciaries." *Lowen,* 829 F.2d at 1220. Among the facts cited on appeal as manifesting a disregard of the corporate form were the intermixing of assets among corporations and individuals, the lack of appropriate management formalities, the inadequate capitalization, and the domination of the corporation by the individual defendants. *Id.* at 1221.

**\*7** Defendants argue that even as employers bound to contribute under Section 515 of ERISA to collectively bargained benefit funds, *see* 29 U.S.C. § 1145, Isaac and Anshel Tyrnauer cannot be held individually liable in summary judgment without a prior adjudication that they were personally guilty of fraud or intent to defraud. Even if this argument were consistent with the facts, which it is not-given the express finding of the NLRB administrative judge that Isaac Tyrnauer designed Regency to defraud Local 49e-it is not supported by the law.

Instead of rebutting plaintiffs' evidence concerning the Tyrnauers' management of their corporations, and showing that a genuine issue of material fact exists as to whether they had disregarded the corporate form, defendants' brief argues that because the Tyrnauers were not individually named parties to the previously discussed proceedings, they are immune from the conclusions therein. Defendants conclude in their brief that "there can be no imposition of individual liability until such a time as a finding is made of fraud or conspiracy to defraud." *Memorandum in Opposition* at 4. Although the answer to this argument is not found in federal common law, it can be found in New York law.

### b. *New York Law*

As mentioned above, "state law may be used as a reference guide" for actions arising under ERISA. *Flame Proofing,* 649 F.Supp. at 847. Although fraud or intent to defraud is among the federal common law criteria for piercing the corporate veil, the Second Circuit has recently made it clear that in New York it is a dispensable one. In *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131 (2d Cir.1991), the court held that liability "may be predicated *either* upon a showing of fraud *or* upon complete control by the dominating corporation that leads to a wrong against third parties." *Wm. Passalacqua,* 933 F.2d at 138 (emphasis added); *see ITEL Containers v. Atlanttrafik Exp. Serv. Ltd.,* 909 F.2d 698, 703 (2d Cir.1990) ( "New York law allows the corporate veil to be pierced *either* when there is fraud *or* when the corporation has been used as an alter ego.") This finding was the natural extension of an earlier Second Circuit decision which held that "control ... is the key; the control must be used to commit a fraud or other wrong that causes plaintiff's loss." *American Protein Corp. v. AB Volvo,* 844 F.2d 56, 60 (2d Cir.1988). Despite the absence of fraud, the *Wm. Passalacqua* court found that the evidence supported a finding of "a level of control that was substantial, and could be interpreted as sufficient domination to justify piercing the corporate veil to reach the assets of [the individual defendants]." *Wm. Passalacqua,* 933 F.2d at 139.

The facts in the present case establish not only that Colonial and Regency were alter egos of one another, but that they were also alter egos of the Tyrnauers, who failed to regard with sufficient respect the corporate veil and who manipulated the corporate form in a fraudulent effort to shirk their obligations. Convenience, fairness and equity dictate that these defendants must now be prevented from using the same form as a shield from joint and several liability as individual defendants.

**\*8** New York law also supports the conclusion reached under the above federal common law analysis. "Under New York law it has been further held that when a corporation is used by an individual to accomplish his own and not the corporation's business, such a controlling shareholder may be held liable for the corporation's commercial dealings as well as for its negligent acts." *Wm. Passalacqua,* 933 F.2d at 138 (citing *Walkovszky v. Carlton,* 18 N.Y.2d 414, 417, 276 N.Y.S.2d 585, 587, 223 N.E.2d

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                               Page 6
Not Reported in F.Supp., 1993 WL 361672 (S.D.N.Y.), 126 Lab.Cas. P 10,920, Pens. Plan Guide (CCH) P 23893P
**(Cite as: Not Reported in F.Supp.)**

6, 8 (1966) (New York courts will pierce the corporate veil whenever necessary to prevent fraud or achieve equity)). *Walkovszky* held that individual defendants who exceed the privileges of transacting business within the corporate form and instead transact business in their individual capacities and for their own ends, such as shuttling funds without regard to the corporate entity or formal procedure, forfeit the protection of the corporate veil and are subject to individual liability. *Walkovszky,* 18 N.Y.2d at 420, 276 N.Y.S.2d at 590, 223 N.E.2d at 8.

In New York, there are four primary criteria to consider when disregarding the corporate form: (1) absence of formalities which are part and parcel of normal corporate existence, such as the election of directors and keeping of corporate records; (2) inadequate capitalization; (3) personal use of corporate funds; and (4) perpetration of fraud by means of the corporate vehicle. *Mikropul Corp. v. Desimone & Chaplin-Airtech, Inc.,* 599 F.Supp. 940, 943 (S.D.N.Y.1984) (citing *Walter E. Heller & Co. v. Video Innovations, Inc.,* 730 F.2d 50, 53 (2d Cir.1984)); *see also Wm. Passalacqua,* 933 F.2d at 139 (stating nine criteria under New York law for determining whether a corporation is "dominated" and merely the agent of its dominant principles). But perhaps the most significant consideration, and one echoed in federal common law, is whether the corporate form is found to be "nothing more than a mere shell dominated and controlled by the individuals to carry on their own personal business." *England Strohl,* 538 F.Supp. at 614 (citing *Astrocom Elec. v. Lafayette Radio,* 63 A.D.2d 765, 766, 404 N.Y.S.2d 742, 744 (3d Dep't 1978)). Our facts provide the additional "indication[s] that the corporations were created with an intent to defraud [and] that their assets would be insufficient to satisfy a judgment." *Flame Proofing,* 649 F.Supp. at 847-48.

The plaintiffs' uncontroverted allegations satisfy all requirements under New York law for the piercing of the corporate veil. To do other than disregard the corporate fiction, when the sole shareholders have treated it as no more than a shell, would work a fraud on the law and undermine the fundamental, remedial purpose of ERISA.

#### D. *Additional Parties*

Plaintiff has also moved under Fed.R.Civ.P. 21 to add to this action two corporate defendants, A & T Castings Corp. ("A & T") and Accurate Famous

Castings Corp. ("Famous"). A & T is owned by Anshel Tyrnauer. Famous is owned by Isaac Tyrnauer. The N.L.R.B. has found each to be the alter ego of Colonial/Regency, operating as part of "a single integrated business enterprise." *See* Plaintiffs' 3(g) Statement, Exhibit H at 1 n. 2.

**\*9** Rule 21 permits the court to add parties "at any stage of the action and on such terms as are just." Fed.R.Civ.P. 21. The decision is left to the court's discretion, provided the parties are not subject to undue delay, *see Barr Rubber Prods. Co. v. Sun Rubber Co.,* 425 F.2d 1114, 1117 (2d Cir.1970), *cert. denied,* 400 U.S. 878 (1970), or to prejudice, *see Goldberg v. Meridor,* 81 F.R.D. 105, 112 (S.D.N.Y.1979).

Defendants have raised no objection to the addition of A & T or Famous. As such, and as the claims against these parties appear to share with the original parties a common nexus of law and fact, A & T and Famous will be added.

#### CONCLUSION

For the reasons discussed above, plaintiffs' motion for summary judgment and the addition of parties is granted. Discovery is to proceed until November 12, 1993. The parties are to appear before the Court for a conference on November 15, 1993 at 10:00 a.m.

SO ORDERED.

> FN1. Rule 3(g) stipulates that "papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." *Id.* When the opposing party fails to respond, "[a]ll material facts set forth in the statement required to be served by moving party will be deemed admitted...." Local Civ.R. 3.

> FN2. It is also well-settled that administrative proceedings, such as the N.L.R.B. opinion, will have a preclusive effect, *United States v. Utah Constr. and Mining Co.,* 384 U.S. 394, 422 (1966); *DeCintio v. Westchester Co. Med. Center,* 821 F.2d 111, 117 (2d Cir.1987); *Burka v. New York City Transit Auth.,* 739 F.Supp. 814, 845 (S.D.N.Y.1990), provided that the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1993 WL 361672 (S.D.N.Y.), 126 Lab.Cas. P 10,920, Pens. Plan Guide (CCH) P 23893P
**(Cite as: Not Reported in F.Supp.)**

collateral estoppel requirements discussed above-a material issue necessarily resolved and full and fair opportunity to contest-are met. *See Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 499-501, 467 N.E.2d 487, 489-91, 478 N.Y.S.2d 823, 825-27 (1984). Arbitration proceedings also can have preclusive effect on subsequent federal court proceedings. *See Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 223 (1985); *Benjamin v. Traffic Exec. Assoc. Eastern R.R.,* 869 F.2d 107 (2d. Cir.1989).

S.D.N.Y.,1993.
Goldberg v. Colonial Metal Spinning and Stamping Co., Inc.
Not Reported in F.Supp., 1993 WL 361672 (S.D.N.Y.), 126 Lab.Cas. P 10,920, Pens. Plan Guide (CCH) P 23893P

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.