Briefs and Other Related Documents

United States District Court, S.D. New York.
GREATER BLOUSE, SKIRT & UNDERGARMENT ASSOCIATION, INC., Plaintiff,
v.
Howard MORRIS, Defendant.
**Nos. 93 CIV. 1257(SS), 72242.**

Oct. 14, 1993.

MEMORANDUM OPINION AND ORDER
SOTOMAYOR, District Judge.

***1** This is an action for compensatory, punitive and treble damages, and other relief, arising from alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and numerous state laws. Defendant Howard Morris moves to dismiss the First Amended Complaint (the "Complaint") pursuant to Fed.R.Civ.P. 9(b), for failure to plead fraud with particularity, and Fed.R.Civ.P. 12(b)(6), for failure to state a claim. For the reasons set forth below, defendant's motion is DENIED in its entirety.

I. *Background*

This action arises from defendant Howard Morris' alleged fraudulent scheme to convert and embezzle funds from plaintiff's employee pension plan. Plaintiff Greater Blouse, Skirt & Undergarment Association, Inc. ("GBSUA") is a not-for-profit trade association organized and existing under the laws of the State of New York, with its principal place of business in New York, New York. GBSUA's membership consists of 525 small businesses engaged in the manufacture of women's apparel in New York and New Jersey. Complaint ¶ 8.

GBSUA typically employs between eight and ten full-time employees. Complaint ¶ 14. The members of the GBSUA Board of Directors, all of whom are representatives of the various member businesses, are neither employed nor receive compensation from GBSUA. Complaint ¶ 9. On June 6, 1988, the GBSUA Directors appointed defendant Howard Morris, a long-time GBSUA employee, Executive Director of GBSUA, to supervise and manage the daily affairs of GBSUA. Complaint ¶ 13.

As Executive Director, Morris' responsibilities included monitoring and overseeing the employee pension plan (the "Pension Plan" or "Plan"), and informing the GBSUA Board of all matters concerning the Plan. Complaint ¶ 14. The Pension Plan, a "defined benefit" plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, was established in 1983 for all qualified GBSUA employees, including Morris. Complaint ¶ 16. In 1988, shortly after Morris became GBSUA's Executive Director, the Board appointed him and an attorney, Lawrence Epstein, co-Trustees of the Plan. Complaint ¶ 18.

The Complaint alleges that from December 1988 until at least June 1991, Morris engaged in a scheme to embezzle and convert the assets of the Pension Plan by (1) fraudulently inducing the president of GBSUA to sign various amendments to the Pension Plan, which increased the amount of pension benefits amendments from the GBSUA Board of Directors. Complaint ¶ ¶ 19-61.

Specifically, the Complaint claims that on or about December 27, 1988, defendant presented an amendment to the Plan (the "1988 Amendment") to GBSUA's President, John Lam, for his signature. Complaint ¶ 19. Mr. Lam, whose first language is Chinese, allegedly has limited proficiency in understanding materials written in English without the aid of Chinese translations. Complaint ¶ 11. Asserting that the defendant was aware of Mr. Lam's difficulty in understanding written English, the Complaint alleges that the defendant falsely represented to Mr. Lam "that the purpose of the document was merely to allow the Trustees to perform certain ministerial acts with respect to the Pension Plan, such as, for example, enabling them to transfer pension funds from one bank account to another." Complaint ¶ ¶ 21-22. On the basis of defendant's misrepresentations, Mr. Lam signed the 1988 Amendment. Complaint ¶ 23.

***2** The Complaint alleges that, rather than being "ministerial" in nature, the 1988 Amendment altered the benefit formula set forth in the Plan's Article 4.01 to increase the pension benefits payable to Morris

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1993 WL 410167 (S.D.N.Y.), RICO Bus.Disp.Guide 8416
**(Cite as: Not Reported in F.Supp.)**

under the Plan. Complaint ¶ 24. Under Article 4.01 as originally adopted, the monthly pension benefit due a participant would be 1.6% of his or her compensation multiplied by such individual's expected years of service with GBSUA, calculated from the date of employment to the "normal retirement date" with a maximum of 32 years. Complaint ¶ 17. This amount then would be reduced by 74.7% of "expected social security benefits". *Id.* The 1988 Amendment increased the maximum years of service used to compute the monthly pension benefit from 32 to 43 years. Complaint ¶ 24. This change had the effect of increasing the monthly pension benefits payable to Morris, who had 35 years of service as of 1988, by approximately 40% percent. *Id.* After obtaining Lam's signature on the unauthorized amendment, the defendant, through the use of the mails, filed or caused to be filed the 1988 Amendment and related pension documentation with either or both the Internal Revenue Service and the Department of Labor. Complaint ¶ ¶ 26-27. The Complaint further alleges that the defendant concealed the 1988 Amendment from the GBSUA Board. Complaint ¶ 25.

On four subsequent occasions between 1989 and 1991, defendant procured other allegedly unauthorized amendments to the Pension Plan, again by falsely representing to Mr. Lam that the amendments were simply to effect ministerial acts. Complaint ¶ ¶ 28-61. As with the 1988 Amendment, the defendant allegedly concealed these unauthorized amendments from the GBSUA Board, and, through the use of the mails, filed or caused to be filed the amendments and other related documentation with federal regulatory agencies. Complaint ¶ ¶ 34-36, 43-45, 52-54.

Morris' scheme was not discovered until late 1992 and early 1993, during an independent audit of the Pension Plan. Complaint ¶ 2. GBSUA claims that the five unauthorized amendments substantially increased its contributions to the Pension Plan, and has obligated it, thus far, to pay increased pension benefits to at least two plan participants. Complaint ¶ 62; Plaintiff's RICO Statement, dated April 8, 1993 (hereinafter "RICO Statement"), ¶ 4. GBUSA also claims that it has incurred substantial fees and expenses, and faces potential penalties in its attempt to bring the Pension Plan into compliance with the law. Complaint ¶ 63. Based on the foregoing allegations, GBSUA charges the defendant with violating Section 1962(c) of the RICO statute as well as various state laws.

Defendant seeks dismissal of plaintiff's RICO claims under Fed.R.Civ.P. 9(b) and Fed.R.Civ.P. 12(b)(6), asserting that the predicate acts of mail fraud, 18 U.S.C. § 1341, and embezzlement and conversion of pension fraud, 18 U.S.C. § 664, are inadequately pled, and do not possess the requisite continuity to state a pattern of racketeering activity under 18 U.S.C. § 1962(c).

## II. *Discussion*

### A. *Sufficiency of the Predicate Acts*

#### 1. *Mail Fraud*

##### a. *Failure to Plead Fraud with Particularity*

***3** Federal Rule of Civil Procedure 9(b) requires that [i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other state of mind may be averred generally.

Rule 9(b) is designed to insure that allegations of fraud are specific enough to inform the defendant of the misconduct charged and to prepare an adequate response. *Ross v. A.H. Robins, Co.*, 607 F.2d 545, 557-58 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175 (1980). On a motion to dismiss a RICO claim for failure to plead fraud with particularity, the Court accepts the allegations of the complaint, supplemented by the plaintiff's RICO Statement, as true, with all reasonable inferences drawn in plaintiff's favor. *McLaughlin v. Anderson*, 962 F.2d 187, 189 (2d Cir.1992); *Luce v. Edelstein*, 802 F.2d 49, 52 (2d Cir.1986).

Since plaintiff's RICO claim is based in part on violations of the mail fraud statute, 18 U.S.C. § 1341, the Complaint's mail fraud allegations must comply with the strictures of Rule 9(b). *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 49-50 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698 (1988). Hence, GBSUA's complaint must "set forth the contents of the items mailed and specify how each of the items was false and misleading." *Official Publications, Inc. v. Kable News Co.*, 692 F.Supp. 239, 245 (S.D.N.Y.1988), *aff'd in part rev'd and in part*, 884 F.2d 664 (2d Cir.1989). In addition, the Complaint must identify the time, place and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

speaker of the fraudulent statements. *Id.*

Without question, the Complaint's mail fraud allegations satisfy Rule 9(b). The Complaint reasonably details the content,[FN1] speaker and date of the misleading statements, the manner in which they were misleading, and the documents in which they were contained. It also identifies the mailings that contained or made reference to the fraudulently obtained Plan amendments as well as the recipients of such mailings. Therefore, I can not accept the defendant's position that the Complaint does not adequately inform him of plaintiff's claims or permit him to prepare an adequate response.

I also reject defendant's argument that the RICO claims must be dismissed because they are based in part on information and belief. Paragraph 1 of the Complaint states that "with respect to the actions of itself and the actions of its officers and directors," the Complaint's allegations are based on "personal information," and "upon information and belief ... as to all other matters." While a more explicit reference to the matters pled on information and belief would have been desirable, I find that only those matters relating to the precise details of defendant's fraudulent scheme to procure amendments to the Pension Plan, for example, how the amendments were created and how they were transmitted to federal agencies, are so pled. Prior to any extensive discovery, such facts remain largely within the knowledge of the defendant. Rule 9(b) does not preclude the plaintiff from asserting them on information and belief, so long as the Complaint "adduces specific facts supporting a strong inference of fraud," *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990); this the Complaint surely has done, since it alleges that the defendant (1) served as the Plan's co-Trustee and GBSUA's Executive Director; (3) knew that Lam had difficulty understanding written English; (4) represented to Lam that the five Plan amendments were ministerial in nature, when in fact, they changed the benefit formula so as to increase the pension benefits payable to the defendant under the Plan; and (5) concealed the five fraudulently obtained amendments from the GBSUA Board. Moreover, contrary to defendant's assertions, these allegations, "showing motive for committing fraud and a clear opportunity for doing so," adequately plead scienter.[FN2] *Beck*, 820 F.2d at 50.

***4** Finding the Complaint's mail fraud allegations sufficiently specific under Rule 9(b), the Court denies defendant's motion to dismiss the RICO claims on Rule 9(b) grounds.

b. *Failure to State a Claim*

The defendant's Rule 12(b)(6) challenge to the mail fraud allegations must also fail. "Dismissal of a complaint for failure to state a claim is a 'drastic step'," *Azurite Corp. v. Amster & Co.*, 730 F.Supp. 571 (S.D.N.Y.1990), and a motion to dismiss on this basis will be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of [its] claim that would entitle [it] to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686 (1974) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 1011-02 (1957)).

To allege mail fraud, a plaintiff must demonstrate that the defendant devised a scheme or artifice to defraud, and used the United States mails in furtherance of such scheme. *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 363 (1954). Defendant contends that the mail fraud allegations fail to state a claim because they do not adequately allege that the mailings were "in furtherance of the scheme to defraud," as some of the underlying amendments actually decreased, rather than increased, the pension benefit formula. This argument ignores the well-established principle that a court's "function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 Int'l Bhd. of Elec. Workers*, 905 F.2d 35, 37 (2d Cir.1990). The effect of the various amendments on the pension benefit formula is a factual issue which the Court may not entertain on a motion to dismiss. *Ryder Energy Dist. Co. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984).

Moreover, as plaintiff correctly points out, even if some of the amendments did decrease the pension benefit formula, a rational fact-finder might still conclude that such amendments were part and parcel of the scheme to defraud, finding that they were designed to conceal and divert suspicion from those amendments that increased the benefit formula. *See* *United States v. Mitchell*, 744 F.2d 701, 703 (9th Cir.1984) ("in furtherance" requirement "satisfied if the completion of the scheme or the prevention of its detection is in some way dependent upon the mailings"); *Schmuck v. United States*, 489 U.S. 705, 109 S.Ct. 1443 (1989) (mailings that are " 'incident to an essential part of the scheme,' or 'a step in [the] plot' " are in furtherance of the scheme to defraud)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1993 WL 410167 (S.D.N.Y.), RICO Bus.Disp.Guide 8416
**(Cite as: Not Reported in F.Supp.)**

(citation omitted).[FN3]

Since the Complaint adequately alleges a scheme to defraud, and multiple mailings in furtherance of such scheme, I conclude that the Complaint properly alleges multiple predicate acts of mail fraud.

B. *Embezzlement and Conversion*

Because I find that the Complaint adequately alleges multiple predicate acts of mail fraud, I need not address defendant's argument that the Complaint does not state violations of 18 U.S.C. § 664, because the alleged fraudulent scheme "increased rather than decreased" the assets of the Pension Plan, Def.Mem. at 19, and thus, did not result in a "theft of" the Plan's assets. [FN4] However, I believe this contention has little merit since Section 664, a statute broad in scope, proscribes any unauthorized use or diversion of pension funds, including that which results in a benefit to the pension fund. *United States v. Andreen*, 628 F.2d 1236, 1243 (9th Cir.1980). Moreover, even under defendant's excessively narrow interpretation of Section 664, plaintiff's claim that, in addition to causing GBSUA to overfund the Pension Plan, the unauthorized amendments obligated it to provide greater benefits to at least two plan participants, clearly establishes an unlawful "conver[sion] to ... the use of another" of the funds of a pension plan within the meaning of the statute.

C. *Pattern of Racketeering Activity*

***5** Finally, defendant argues that the RICO claims must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6), because the predicate acts alleged lack the requisite continuity to establish a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1962(c).[FN5]

"[T]o prove a pattern of racketeering activity, a plaintiff ... must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900 (1989). The Supreme Court has said that " '[c]ontinuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." 109 S.Ct. at 2902. Demanding a case-by-case contextual analysis, continuity does not require proof of multiple schemes, or numerous victims or perpetrators. *Proctor & Gamble v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10, 16 (2d Cir.1989), *cert. denied*, 493 U.S. 1022, 110 S.Ct. 723 (1990); *see Jacobson v. Cooper*, 882 F.2d 717, 720 (2d Cir.1989) (single scheme to defraud a single victim of his real estate holdings found sufficiently continuous on a motion to dismiss); *Polycast*, 728 F.Supp. at 948 (continuity found where complaint alleged a complex scheme consisting of numerous predicate acts to defraud a single victim); *Dooner v. NMI Ltd.*, 725 F.Supp. 153 (S.D.N.Y.1989) (numerous predicate acts by partner to divert partnership assets sufficient state a pattern on a motion to dismiss); *Com-Tech Assocs. v. Computer Assocs. Int'l*, 753 F.Supp. 1078, 1091 (E.D.N.Y.1990) (single victim-single scheme found sufficiently continuous to establish pattern on motion to dismiss), *aff'd*, 938 F.2d 1574 (2d Cir.1991). On a motion to dismiss, a RICO complaint demonstrates the requisite degree of continuity if it " 'plead [s] a basis from which it could be inferred that the acts ... were neither isolated nor sporadic.' " *Proctor & Gamble*, 879 F.2d at 16 (citation omitted); *Dymm v. Cahill*, 730 F.Supp. 1245, 1261 (S.D.N.Y.1990) ("[a]t the pleading stage, if the threat of continuing racketeering activity is inferable from the complaint, then whether the 'defendants' actions are continuing in nature or isolated or sporadic will be the subject of proof at trial' ") (citation omitted).

Keeping in mind the Supreme Court's instruction that RICO be read broadly, *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497, 105 S.Ct. 3275, 3286 (1985), I find that the Complaint adequately alleges a pattern of racketeering activity. The fraudulent acts at issue are sufficiently related, since they possessed a common goal, purpose, perpetrator, victim and method of commission. Taking the plaintiff's allegations as true and drawing all reasonable inferences in its favor, I conclude that these acts possess sufficient continuity to establish a pattern of racketeering activity. Defendant's fraudulent activities occurred over a four year period, and were not discovered until in or about late 1992 and early 1993. Given the number of amendments falsely obtained and the control the defendant exercised over the Pension Plan's funds as its co-Trustee and the Executive Director of GBSUA, the Complaint's allegations permit the inference that the defendant's fraudulent scheme was capable of continuing into the future and posed the threat of repetition. *See United States v. Busacca*, 739 F.Supp. 370 (N.D. Ohio 1990) (numerous acts of embezzlement capable of indefinite repetition satisfied RICO's pattern requirement), *aff'd*, 936 F.2d 232 (6th Cir.1991);

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 5
Not Reported in F.Supp., 1993 WL 410167 (S.D.N.Y.), RICO Bus.Disp.Guide 8416
**(Cite as: Not Reported in F.Supp.)**

*Jacobson,* 882 F.2d at 720 (related predicate acts that extended over substantial period of time established requisite continuity); *see also Sun Sav. & Loan Ass'n v. Dierdorff,* 825 F.2d 187, 194 n. 5 (9th Cir.1987) ("[a]s long as a threat of continuing activity exists at some point during the racketeering activity, the continuity requirement is satisfied").

***6** Accordingly, defendant's motion to dismiss the RICO claims pursuant to Fed.R.Civ.P. 12(b)(6), for failure to allege a pattern of racketeering activity, is denied.

D. *Common Law Fraud Claims*

Because I have denied the motion to dismiss plaintiff's RICO claims, I also deny defendant's motion to dismiss the related common law fraud claims. 28 U.S.C. § 1367.

III. *Conclusion*

For the reasons stated above, defendant's motion to dismiss is DENIED in its entirety.

SO ORDERED.

FN1. I find defendant's assertion that the Complaint "does not even allege the content of the statements it now says were false" extremely disingenuous. Contrary to defendant's suggestion, Rule 9(b) does not require a verbatim recitation of defendant's fraudulent misrepresentations. The Complaint's allegations that the defendant "falsely represented to Lam that the purpose of the documents was merely to effect ministerial acts with respect to the Pension Plan" more than adequately set forth the content of the claimed misrepresentations. *Vista Co. v. Columbia Pictures Indus.,* 725 F.Supp. 1286, 1302 (S.D.N.Y.1989) (Rule 9(b) does not require plaintiffs "to recite the precise statement which the ... defendant ... made on a particular date"); *Official Publications, Inc. v. Kable News Co.,* 775 F.Supp. 631, 636 (S.D.N.Y.1991) (same).

FN2. In support of his contention that the Complaint fails to allege scienter, the defendant seeks to introduce a purported resolution of the GBSUA Board of Directors-the authenticity of which GBSUA sharply contests-to demonstrate that Mr. Lam had the authority to execute amendments to the Pension Plan.

I will not consider this document in deciding the present motion. Unlike those at issue in *Cortec Indus. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561 (1992), this document does not form the basis of plaintiff's claims; it is solely offered as a defense to such claims. Moreover, in *Cortec,* the plaintiffs did not challenge the authenticity of the proffered documents.

I also reject defendant's fatuous argument that the absence of allegations implicating the Plan Administrator and the co-Trustee in the fraudulent scheme negate defendant's fraudulent intent. Clearly, GBSUA need not allege that the co-Trustee and the Plan Administrator knew of and participated in the fraud to allege a claim against the defendant. More fundamentally, the scienter of other individuals has no bearing on, and in no way negates, that of defendant.

FN3. The defendant also argues that the Complaint does not expressly state the purpose of the mailings in the fraudulent scheme, and therefore, fails to adequately allege mail fraud. Defendant correctly asserts that the Complaint does not explicitly identify the role the mailings played in effectuating the scheme to defraud. However, I find that the facts alleged in the Complaint, supplemented by GBSUA's RICO Statement, permit the inference that the mailings to the Department of Labor and the IRS were required to make the amendments effective and to insure that GBSUA made contributions in accordance therewith. For example, the RICO Statement asserts that "but for Morris' use of the United States mail service to cause the Amendments and related documentation to be filed with the Internal Revenue Service and Department of Labor, plaintiff would not have ... been required to make additional contributions to the Pension Plan." RICO Statement ¶ 16. In addition, 29 U.S.C. § 1022(a)(2), requires that any "material modification" in the terms of a pension plan covered by ERISA, including a "defined benefit" plan, must be filed with the Secretary of Labor.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 6
Not Reported in F.Supp., 1993 WL 410167 (S.D.N.Y.), RICO Bus.Disp.Guide 8416
**(Cite as: Not Reported in F.Supp.)**

FN4. 18 U.S.C. § 664 makes it unlawful for any person to

embezzle[ ], steal[ ], or unlawfully and willfully abstract[ ] or convert [ ] to his own use or the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan.

FN5. 18 U.S.C. § 1962(c) provides as follows:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

S.D.N.Y.,1993.
Greater Blouse, Skirt & Undergarment Ass'n, Inc. v. Morris
Not Reported in F.Supp., 1993 WL 410167 (S.D.N.Y.), RICO Bus.Disp.Guide 8416

Briefs and Other Related Documents (Back to top)

• 1:93cv01257 (Docket) (Mar. 03, 1993)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.