

Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1992 WL 80775 (S.D.N.Y.), RICO Bus.Disp.Guide 7990
**(Cite as: Not Reported in F.Supp.)**

Briefs and Other Related Documents

United States District Court, S.D. New York.
Fred A. HEALEY, Plaintiff,
v.
Barbara Y.E. PYLE and Kathryn Pyle O'Neill, Defendants.
No. 89 CIV. 6027 (JSM).

March 31, 1992.

*MEMORANDUM OPINION AND ORDER*

MARTIN, District Judge:

***1** Defendant Barbara Pyle and defendant Kathryn Pyle O'Neill move to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[FN1] They argue that some of plaintiff's claims are barred by the running of the statute of limitations. They also assert that plaintiff failed to adequately plead a claim under RICO.

Background

Plaintiff, Fred A. Healey, commenced this action against defendant Barbara Pyle and defendant Kathryn Pyle O'Neill. Barbara Pyle, plaintiff's niece, owns Carmine Properties in New York City. Kathryn O'Neill, defendant Barbara Pyle's sister, assisted in the management of Carmine Properties since mid-1985. Plaintiff began managing defendant's building on 59-61 Carmine Street in 1980. In addition to managing the property, Healey invested large sums of money in the rehabilitation of the property.

Plaintiff contends that he was induced to invest in Carmine Properties by oral representations made by defendant Pyle. In exchange for his funding, pursuant to written agreements with Pyle, plaintiff was to receive 40% of the profits from the sale of this property. The agreements also suggested that Healey would be reimbursed in the event the property was not sold. Plaintiff alleges that on September 11, 1986, when the rehabilitation of the property was nearing completion, Pyle terminated their business relationship. Plaintiff contends that Pyle severed the relationship after consultation with O'Neill and Pyle's attorney, Hirsch. Healey asserts that defendants fraudulently sought to obtain his funds by persuading him to invest and then ending his connection with the venture when it was about to become profitable.

On September 11, 1989, exactly three years after the termination of the business relationship, plaintiff filed his complaint. However, plaintiff did not serve the original complaint on defendants until January of 1990. He served the amended complaint in May of 1990 pursuant to Judge Mukasey's permission.

In his complaint Healey asserts civil RICO claims against Pyle, alleging that she violated 18 U.S.C. § 1962(a), (b) & (d). He also charges O'Neill with participation in a RICO conspiracy. Additionally, Healey brings many pendent state law claims against Pyle including: negligence, bad faith, common law fraud, conversion, agency revoked, breach of contract, breach of fiduciary duty, and personal injury.

I. *Statute of Limitations*

Defendants first move to dismiss some of Healey's state law claims on the grounds that the statute of limitations bars these causes of action. These claims include plaintiff's claims for negligence (count V), personal injury (count XIII), conversion (count VIII), unjust enrichment (count IX), agency revoked (count X), and breach of fiduciary duty (count XII). Defendants do not contend that the filing of the complaint was time barred, but rather defendants submit that the service occurred after the statutory time limit.

In a diversity case the forum state's statutes of limitations govern a claim's timeliness. Hoelzer v. City of Stamford, 933 F.2d 1131, 1135-36 (2d Cir.1991); Morse v. Elmira Country Club, 752 F.2d 35, 37 (2d Cir.1984). State law also controls when an action commences "for the purpose of tolling the statute of limitations." Walker v. Armco Steel Corp., 446 U.S. 740, 100 S.Ct. 1978 (1980); Personis v. Oiler, 889 F.2d 424, 426 (2d Cir.1989). Under New York law, a plaintiff begins an action upon service of summons on the defendant; merely filing a complaint is insufficient. Halmos v. Pan American World Airways, Inc., 727 F.Supp. 122, 123 (S.D.N.Y.1989); Murphy v. American Home

Case 7:04-cv-08223-KMK    Document 165-17    Filed 07/07/2006    Page 2 of 8

Not Reported in F.Supp.                                                                    Page 2
Not Reported in F.Supp., 1992 WL 80775 (S.D.N.Y.), RICO Bus.Disp.Guide 7990
**(Cite as: Not Reported in F.Supp.)**

Products Corp., 58 N.Y.2d 293, 306, 461 N.Y.S.2d 232, 238, 448 N.E.2d 86 (1983); see N.Y.Civ.Prac.L. & R. § 304. The statute of limitations is not tolled until service of process is complete and the action commences. Halmos, 727 F.Supp. at 123. Therefore, in the instant case, the outcome of the motion to dismiss depends on whether the service of process on the defendant occurred within New York's statutory time limits.

*2 N.Y.Civ.Prac.L. & R. Section 214 [FN2] provides a list of actions which must be commenced within three years from their accrual. Section 214's three year limitation applies to actions for personal injuries resulting from negligence. See Trott v. Merit Dep't Store, 106 A.D.2d 158, 484 N.Y.S.2d 827, 828 (App.Div.1985); Gallagher v. Directors Guild of America, Inc., 144 A.D.2d 261, 533 N.Y.S.2d 863, 865 (App.Div.1988), appeal denied, 73 N.Y.2d 708, 540 N.Y.S.2d 1003, 538 N.E.2d 355 (1989), while N.Y.Civ.Prac.L. & R. § 215's one year limitation governs intentional torts. Gallagher, 533 N.Y.S.2d at 865. Thus the relevant statute of limitations for Healey's negligence (count V) claim is three years, while the appropriate statute of limitations for his personal injury (count XIII) cause of action is either three or one years depending on whether he is alleging intentionally or negligently inflicted harm.

A six year statute of limitations [FN3] applies to a breach of a fiduciary duty claim which originates from a contractual relationship. Zola v. Gordon, 685 F.Supp. 354, 374 (S.D.N.Y.1988); Frank Management, Inc. v. Weber, 145 Misc.2d 995, 549 N.Y.S.2d 317, 320 (S.Ct.1989). Because Pyle's alleged fiduciary obligations to Healey are based on their contractual relationship, six years is the applicable statute of limitations for Healey's breach of fiduciary duty claim. By this same logic the six year statute of limitations also governs his claim for agency revoked.

Similarly, although ordinarily a three year statute of limitations applies to conversion actions, Sporn v. MCA Records, Inc., 58 N.Y.2d 482, 488-89, 462 N.Y.S.2d 413, 416, 448 N.E.2d 1324, 1327 (1983), when the claim "ha[s] its genesis in a contractual relationship" the six year contract statute of limitations controls. See Walling v. Holman, 858 F.2d 79, 83 (2d Cir.1988), cert. denied, 489 U.S. 1082 (1989); Sun Oil Trading Co. v. Mobil Oil Corp., No. 84 Civ. 7608, 1989 WL 42650 at *3 (S.D.N.Y.1989); Baratta v. Kozlowski, 94 A.D.2d 454, 464 N.Y.S.2d 803, 809 (1983).[FN4] In this case plaintiff asserts that he advanced the allegedly converted funds pursuant to a contract with Pyle. Thus his conversion claim is not barred because the six year contract statute of limitations applies. Because he commenced this action more than three years after the alleged conversion, however, if he establishes liability, he is restricted to contract damages. He cannot recover tort damages. See Walling, 858 F.2d at 83; Sun Oil Trading Co., 1989 WL 42650 at *3; Baratta, 464 N.Y.S.2d at 809.

The six year statute of limitations also governs to Healey's claim for unjust enrichment. See Natimar Restaurant Supply, Ltd. v. London 62 Co., 140 A.D.2d 261, 528 N.Y.S.2d 564, 565 (App.Div.1988).

Because plaintiff's cause of action for any of his claims accrued at the earliest on September 11, 1986 all claims with a six year statute of limitations, namely breach of fiduciary duty (count XII), unjust enrichment (count IX), agency revoked (count X) and conversion (count VIII), survive this motion to dismiss. Additionally Healey's claims for breach of contract (count XI), common law fraud (count VII), and bad faith [FN5] (count VI) remain in the case, since defendants have not moved to dismiss them.

*3 However, his claim for negligence (count V), which is governed by a three year statute of limitations, and his claim for personal injury (count XIII), which is subject to either a one or a three year statute of limitations, must be dismissed. Although plaintiff's complaint alleges that defendants "have continued to exacerbate plaintiff's injury and suffering," the Court finds that if Pyle inflicted any personal injury upon plaintiff this occurred and was completed when Pyle severed her relationship with Healey in September of 1986 and stated that any money from whatever source relating to the properties was hers. A careful reading of the complaint and Healey's briefs indicate that the "exacerbation" referred to by Healey in reality was just Pyle's refusal or failure to undo the harm previously caused, and not any new acts directed toward Healey. The Court, therefore, concludes that there was not a continuous or ongoing tort. We find that Healey's claims for personal injury or negligence accrued in September of 1986, more than three years prior to the commencement of this action, and therefore are barred by the statute of limitations.

The Court dismisses plaintiff's personal injury and negligence causes of action. The rest of his state law claims remain in the case.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 3
Not Reported in F.Supp., 1992 WL 80775 (S.D.N.Y.), RICO Bus.Disp.Guide 7990
**(Cite as: Not Reported in F.Supp.)**

## II. ADEQUACY OF RICO CLAIM

Plaintiff alleges that Pyle violated 18 U.S.C. § 1962(a) & (b), and both Pyle and O'Neill violated 18 U.S.C. § 1962(d),[FN6] thus subjecting them to liability under 18 U.S.C. § 1964, the civil RICO statute. To adequately plead a civil RICO violation plaintiff first must allege the elements necessary to establish criminal RICO under Section 1962. *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied,* 465 U.S. 1025 (1984). Plaintiff must "allege the existence of seven constituent elements: (1) that the defendant; (2) through the commission of two or more acts; (3) constituting a 'pattern'; (4) of 'racketeering activity' (5) directly or indirectly invest[ed] in, or maintain[ed] an interest in, or participate[d] in; (6) an 'enterprise'; (7) the activities of which affect[ed] interstate or foreign commerce. *Moss,* 719 F.2d at 17 (citing 18 U.S.C. § 1962(a)-(c)). Next, in order to show standing to bring a civil suit plaintiff must plead an injury resulting from a Section 1962 violation. *Moss,* 719 F.2d at 17; 18 U.S.C. § 1964(c).

The defendants challenge the sufficiency of Healey's RICO claims on the following grounds: (1) plaintiff has failed to plead facts sufficient to establish the existence of an enterprise; (2) plaintiff has not pleaded adequately a pattern of racketeering activity; (3) plaintiff has not alleged an injury resulting from RICO violations; and (4) plaintiff has not adequately alleged a RICO conspiracy.

### A. Existence of an Enterprise

An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). It "is generally a group of persons associated together for a common purpose of engaging in a course of conduct." *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.,* 879 F.2d 10, 15 (2d Cir.1989) (citations omitted), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 723 (1990).

**\*4** In his complaint plaintiff alleges two enterprises, one of himself and defendant Pyle, and the other an ongoing enterprise of Barbara Pyle dba Carmine Properties. In particular, he pleads:

Founded in 1981 and terminated in 1986 the association of Pyle/Healey was an enterprise.... The enterprise did its contracting and banking under the name of Carmine Properties. The two parties associated in the enterprise lived in different states from one-another and from Carmine Properties. Communication was by mail and inter-state wire

After purchase of the subject property in 1972, defendant Pyle upon application to the City of New York, was authorized to do business as Carmine Properties-thus, in a sense, is a legal entity. Barbara Pyle dba Carmine Properties is an ongoing enterprise.

Amended Complaint, ¶ ¶ 99, 98.

Defendants first contend that if, as he alleges, Healey were part of an enterprise he could not have suffered any injury because of his participation in the enterprise, and therefore, defendants seem to argue, there could not have been an enterprise. Defendants have not demonstrated that as a matter of law a plaintiff's participation in an enterprise disqualifies the entity from being regarded as a RICO enterprise. In fact, in *Jacobson v. Cooper,* 882 F.2d 717, 720 (2d Cir.1989), the court also considered civil RICO claims brought under 18 U.S.C. § 1962(a), (b) & (d) and found that the alleged enterprise composed of the defendants and plaintiff was "recognizable under RICO."

Defendants next assert with respect to Healey's second alleged enterprise that his claim is deficient because it casts Barbara Pyle as both the RICO "enterprise" and the "person."[FN7] Before considering whether such identity prohibits claims brought under § 1962(a), (b) and (d), we must determine whether in actuality this is what Healey is pleading. Although Pyle is the RICO person, Healey refers to "Barbara Pyle dba Carmine Properties" as the enterprise. While legally Carmine Properties may not be a new entity distinct from Barbara Pyle, such nomenclature in the pleadings demonstrate that Healey is alleging the enterprise to be Pyle's real estate venture rather than Pyle herself. *See United States v. Weinberg,* 852 F.2d 681, 684 (2d Cir.1988) (finding allegations in an indictment that "Samuel Weinberg's Real Estate Business, also known as All Cash Realty, and also known as Queens Blvd. Realty, constituted an 'enterprise' " to allege Weinberg's Real Estate Business rather than Weinberg himself to be the enterprise). Such an enterprise might be distinct from Pyle if it meets certain criteria. As explained by Judge Posner of the Seventh Circuit, a sole proprietorship is an enterprise separate from the sole proprietor when the individual employs or associates with others. *McCullough v. Suter,* 757 F.2d 142, 144 (7th Cir.1985); *accord United States v. Weinberg,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK   Document 165-17   Filed 07/07/2006   Page 4 of 8

Not Reported in F.Supp.                                                                                         Page 4
Not Reported in F.Supp., 1992 WL 80775 (S.D.N.Y.), RICO Bus.Disp.Guide 7990
**(Cite as: Not Reported in F.Supp.)**

656 F.Supp. 1020, 1024 (E.D.N.Y.1987). The complaint alleges that Carmine Properties employed management companies and "associates," and of course Healey, and therefore the pleadings assert an enterprise distinct from the person and are sufficient to survive this motion to dismiss. Thus, at this time we need not reach the question of whether a RICO person and enterprise must be different entities for purposes of § 1962 (a), (b), & (d).

**\*5** In short, plaintiff has pleaded adequately two RICO enterprises, although the Court thinks that in actuality these two enterprises will prove to be one and the same.

### B. The Pattern of Racketeering Activity

The defendants also allege that plaintiff failed to plead adequately a pattern of racketeering activity.

#### 1. Predicate Acts

As a preliminary matter we first determine whether Healey adequately pleaded the predicate acts alleged in his complaint. The amended complaint alleges that defendant used the interstate mail and wire to fraudulently obtain plaintiff's property.[FN8] In particular Healey describes an elaborate scheme to defraud him, beginning with the start of his business association with Pyle in 1981, and ending with her terminating the relationship in 1986. He contends that the devising of the scheme, its implementation, and its termination used interstate mails and wires. Defendant argues that Healey's allegations of mail and wire transmissions are insufficiently and conclusorily pleaded and that the complaint sets forth not Pyle's but rather Healey's predicate acts.

When fraud is pleaded as a RICO predicate act it must be pleaded with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Polycast Technology Corp. v. Uniroyal, Inc., 728 F.Supp. 926, 946 (S.D.N.Y.1989). This necessitates alleging for each claim the users of the wires or mail, the substance of the communication, the recipient of the communication, and the date of transmission. Id.. Additionally, "the plaintiff must allege facts to show the communication furthered or contributed to the fraudulent scheme." Id.. Applying this standard to the complaint at hand we find that plaintiff adequately, if inartfully, alleged many predicate acts. He sufficiently pleaded the following: thirty-three transmissions of money from himself to Pyle or Carmine Properties by wire and mail from October of 1982 through June of 1984; the mailing of the relevant agreements to Pyle in April of 1982; the sending of a letter to Pyle and her parents on February 24, 1984; correspondence from Pyle to Healey on March 16, 1984; Healey's forwarding of an update of the earlier agreement on March 19, 1986, along with recommendations regarding disposition of the property; and Pyle's sending of the termination letter on September 11, 1986.[FN9] Of course, Healey will later have to prove the existence of the alleged scheme and the role of these transmissions in its furtherance.

Contrary to defendant's assertion, Healey's use of the mails and wires could constitute mail or wire fraud on the part of Pyle. To establish wire or mail fraud plaintiff must show "(1) the defendant[ ] formed a scheme or artifice to defraud; (2) the defendant[ ] used the United States wires or mails or *caused* a use of the mails in furtherance of the scheme; (3) the defendant[ ] did so with the specific intent to defraud." Polycast Technology Corp., 728 F.Supp. at 946 (citations omitted and emphasis added). The defendant need not have used the mails or wires himself if he could have reasonably foreseen their use by another. Pereira v. United States, 347 U.S. 1, 8-9, 74 S.Ct. 358, 363 (1954). Furthermore, "any mailing incidental to an essential part of the scheme ... including even ordinary business mailings incident to the collection and clearance of checks" normally will be regarded as reasonably foreseeable." J. Coffee, Jr. & C. Whitehead, *The Federalization of Fraud: Mail and Wire Fraud Statutes,* in *White Collar Crime: Business and Regulatory Offenses,* § 9.02, at 9-13 (O. Obermaier & R. Morvillo eds., 1990); see also United States v. Knight, 607 F.2d 1172 (5th Cir.1979); United States v. Street, 529 F.2d 226 (6th Cir.1976).

**\*6** Thus, Healey has adequately alleged predicate acts.

#### 2. Continuity and Relatedness

In H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 109 S.Ct. 2893 (1989), the Supreme Court undertook to identify and define what conduct meets RICO's pattern requirement. The Court rejected the proposition that the predicate acts of racketeering form a pattern only when there are multiple schemes. See H.J. Inc., 492 U.S. at 236-38, 109 S.Ct. at 2899-2900. However, the Court declined to follow the suggestion that a pattern is established merely by

Case 7:04-cv-08223-KMK   Document 165-17   Filed 07/07/2006   Page 5 of 8

Not Reported in F.Supp.  
Not Reported in F.Supp., 1992 WL 80775 (S.D.N.Y.), RICO Bus.Disp.Guide 7990  
**(Cite as: Not Reported in F.Supp.)**

Page 5

proving two predicate acts. See *H.J. Inc., 492 U.S. at 236-38, 109 S.Ct. at 2899-2900*. The Court reasoned that the RICO provision which defines a "pattern" as requiring at least two acts of racketeering activity within a ten year period, 18 U.S.C. § 1961 (5), "does not so much define a pattern of racketeering activity as state a minimum necessary condition for the existence of such a pattern." *Id.;* see also *Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14 (1985)*.

Reviewing RICO's legislative history, the Court then held that a pattern of racketeering activity requires a showing that predicate acts are related to each other. See *H.J. Inc., 492 U.S. at 240, 109 S.Ct. at 2900-01*. In establishing this relatedness requirement, the Supreme Court drew guidance from section 3575(e) of the Organized Crime Control Act of 1982. See 18 U.S.C. § 3575(e) (partially repealed). This section provides that "[c]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commissions, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e), *quoted in H.J. Inc., 492 U.S. at 240, 109 S.Ct. at 2901;* *Sedima,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14; see also *United States v. Indelicato,* 865 F.2d 1370, 1382 (2d Cir.) (en banc) (interrelationship between acts suggesting a pattern may be established by proof of "their temporal proximity, or common goals or similarity of methods, or repetitions"), *cert. denied,* 493 U.S. 811, 110 S.Ct. 56 (1989).

However, the Supreme Court continued, the relatedness of racketeering activities alone is insufficient to satisfy the pattern requirement. Rather, "[t]o establish a RICO pattern it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity. *H.J. Inc., 492 U.S. at 240, 109 S.Ct. at 2901* (emphasis in original).

The Supreme Court then held that a defendant's involvement in multiple schemes would be highly relevant to the continuity inquiry but would not be necessary. *Id..* For, as the Supreme Court explained:

"Continuity" is both a closed- and open- ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated.

**\*7** *H.J. Inc., 492 U.S. at 241-42, 109 S.Ct at 2902* (citations omitted).

Applying the "pattern" holding of the Supreme Court to the present case requires that this Court assess whether the acts alleged meet the relatedness requirement and the continuity requirement.

The relatedness requirement has been satisfied because each alleged incident of mail or wire fraud resulted from similar tactics allegedly used to advance the same overarching goal-the defrauding of Healey by Pyle. See *United States v. Simmons, 923 F.2d 934, 951 (2d Cir.1991)* (finding the requirement met if the acts "have the same or similar purposes, results, participants, victims, or methods of commission") (quoting *H.J. Inc., 492 U.S. at 240, 109 S.Ct. at 2901), cert. denied,* 111 S.Ct. 2018 (1991).

The question of continuity, however, poses more problems. In *H.J. Inc. v. Northwestern Bell Telephone Co.* the Supreme Court only provided rough guidelines for the continuity requirement, leaving it to the lower courts to flesh out the contours of its test. Courts have pointed to several key factors to consider when assessing the question of continuity including "the duration of the racketeering acts; the number of such acts; the number of participants; and the number of victims." *Polycast Technology Corp., 728 F.Supp. at 948* (collecting cases) (citations omitted). As the Second Circuit advised, we must consider the "overall context in which the acts took place" to determine whether sufficient continuity is alleged. *United States v. Kaplan,* 886 F.2d 536, 542 (2d Cir.1989), *cert. denied,* 493 U.S. 1076, 110 S.Ct. 1127 (1990).

In the case at hand we have only one perpetrator, one victim, and one scheme, [FN10] but the court finds because the racketeering activities allegedly occurred over a period of more than four years and involved at least thirty-eight incidences of mail or wire fraud plaintiff has sufficiently pleaded closed-ended continuity. *H.J. Inc.* itself held that racketeering activities occurring with some frequency over a six

Case 7:04-cv-08223-KMK    Document 165-17    Filed 07/07/2006    Page 6 of 8

Not Reported in F.Supp.
Page 6
Not Reported in F.Supp., 1992 WL 80775 (S.D.N.Y.), RICO Bus.Disp.Guide 7990
**(Cite as: Not Reported in F.Supp.)**

year period may be sufficient to establish continuity. *H.J. Inc., 492 U.S. at 250, 109 S.Ct. at 2906.* Similarly, in *Jacobson v. Cooper, 882 F.2d 717, 720 (2d Cir.1989),* the Second Circuit found that alleging predicate acts extending for "a matter of years" was sufficient to constitute continuity. *See also Polycast Technology Corp., 728 F.Supp. at 948* (finding "a complex, multifaceted conspiracy" involving twenty-three acts of mail and wire fraud and three securities violations carried out by numerous people occurring over a period of eight and a half months sufficient to establish a racketeering pattern, although there was only one victim and one injury). Although the scheme at issue may be characterized as "uncomplicated," its long duration differentiates this scheme from other simple patterns found not to be continuous because they lasted only a matter of weeks or months, *see, e.g, Azurite Corp. v. Amster & Co., 730 F.supp. 571, 581 (S.D.N.Y.1990)* (five months too short a duration for continuity); *Airlines Reporting Corporation v. Aero Voyagers, Inc., 721 F.Supp. 579 (S.D.N.Y.1989)* (mail fraud occurring over 13 months inadequate); *West Mountain Sales, Inc. v. Logan Manufacturing Co., 718 F.Supp. 1084, 1087 (N.D.N.Y.1989)* (less than four months insufficient), and tips the scales in favor of continuity.

C. Injury

**\*8** Plaintiff has adequately alleged a RICO injury. To maintain a civil RICO action, the plaintiff must show an injury to "his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). To bring a claim under § 1962(a) "a plaintiff must allege injury from the defendant's investment of the racketeering income," not from the predicate acts of racketeering themselves. *Quaknine v. MacFarlane, 897 F.2d 75, 83 (1990).* Similarly, in a § 1962(b) action plaintiff "must allege an injury resulting from the acquisition or control of an enterprise through a pattern of racketeering activity." *Official Publications, Inc. v. Kable News Co., 775 F.Supp. 631, 635 (S.D.N.Y.1991).*

Plaintiff asserts that Pyle violated § 1962(a) and injured him in the amount of approximately $264,000 by fraudulently obtaining money from him, investing or having him invest the funds he advanced in the enterprise, and not repaying the money after the termination of their business relationship. Although Healey does not spell out how the investment of his money and not merely the fraud caused his injury, this can easily be inferred from his complaint.

Taking Healey's allegations as true, Pyle induced him to invest through her representations that if he contributed he would share in the profits of Carmine Properties. Thus, his investment in Carmine Properties at her request or her investment of funds he forwarded to her in Carmine Properties caused him to lose his money, since the investment was an essential part of the fraud allegedly perpetrated by Pyle.

Healey further contends that "Pyle and plaintiff Healey had formed an enterprise in which control was shared and Healey acquired a future interest [in the property].... [T]hrough a scheme or artifice ... Pyle wrested back full control and deprived Healey of his interest in the enterprise." Healey claims that as a result he suffered "damage to his property and business in excess of $1,000,000 resulting from his loss of future interest in the Carmine Properties." Clearly Healey is pleading injuries proximately caused by the alleged violation of § 1962(b). Furthermore, the Court rejects defendant's contention that this injury is purely speculative. While Healey's characterization of his interest in the property as a future interest may be misleading, unlike the plaintiff in *Hecht v. Commerce Clearing House, Inc., 897 F.2d 21 (2d Cir.1990),* a case relied on by defendants, Healey is alleging a present injury-the loss of his share in the business. Although the valuation of this interest might be a matter of dispute, taking his allegations as true he has been deprived of this interest. In contrast, the plaintiff in *Hecht* contends that because his employer fired him he lost future commissions. *Hecht, 897 F.2d at 24.* We cannot know whether indeed he would have earned any commissions at all.

**\*9** Healey has adequately pleaded the injury necessary for standing to assert his claims based section 1962(a) & (b).

D. Conspiracy

Plaintiff has sufficiently pleaded a RICO conspiracy. To plead a RICO conspiracy one must allege an agreement to commit predicate acts. *United States v. Teitter, 802 F.2d 606, 613 (2d Cir.1986).* In paragraph 115 of his amended complaint, Healey asserts, "Defendant Pyle conspired with sister O'Niell [sic] in regards to the methods of implementing the schemes or artifice enumerated in Count II above and with Defendant O'Niell [sic] and attorney Hirsch in executing the terminating action. The conspiracy included [the] conspiracy to perform the predicate

Not Reported in F.Supp. Page 7
Not Reported in F.Supp., 1992 WL 80775 (S.D.N.Y.), RICO Bus.Disp.Guide 7990
**(Cite as: Not Reported in F.Supp.)**

acts of mail and wire fraud which were necessary to execute the terminating scheme or artifice." Because Healey has alleged an agreement to commit the predicate acts, the Court finds this pleading sufficient to withstand a motion to dismiss.

Conclusion

The Court sympathizes with defendants' difficulties in responding to plaintiff's elaborate complaint, however, it does not think that requesting plaintiff to amend it once again would result in any significant improvement. Plaintiff's complaint may not be a model of clarity, but the Court must show special deference to a pro se litigant. As stated by the Second Circuit, "A pro se complaint ... must be construed liberally and would not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Frazier v. Coughlin,* 850 F.2d 129, 129 (2d Cir.1988). The Court therefore finds that all of Healey's claims remain in the action except for his state law personal injury and negligence claims.

SO ORDERED.

FN1. They also base their motion to dismiss on 12(e) and (f) of the Federal Rules of Civil Procedure, however, considering the contentions in their motion, the Court finds it appropriate to evaluate the motion solely under 12(b)(6).

FN2. NYCPLR Sec. 214 states in relevant part:
The following actions must be commenced within three years: ...
2) an action to recover upon a liability, penalty or forfeiture created or imposed by statute ...;
3) an action to recover a chattel or damages for the taking or detaining of a chattel;
4) an action to recover damages for an injury to property ...;
5) an action to recover damages for a personal injury except as provided in sections 214-b, 214-c, and 215....

FN3. N.Y.C.P.L. Sec. 213 states:
The following actions must be commenced within six years:
1. an action for which no limitation is specifically prescribed by law;
2. an action upon a contractual obligation or liability express or implied, except as provided in section two hundred thirteen-a of this article or article 2 of the uniform commercial code;
3. an action upon a sealed instrument;
4. an action upon a bond or note, the payment of which is secured by a mortgage upon real property, or upon a bond or note and mortgage so secured, or upon a mortgage of real property, or any interest therein;
5. an action by the state based upon the spoliation or other misappropriation of public property; the time within which the action must be commenced shall be computed from discovery by the state of the facts relied upon;
6. an action based upon mistake;
7. an action by or on behalf of a corporation against a present or former director, officer or stockholder for an accounting, or to procure a judgment on the ground of fraud, or to enforce a liability, penalty or forfeiture, or to recover damages for waste or for an injury to property or for an accounting in conjunction therewith.
8. an action based upon fraud; the time within which the action must be commenced shall be computed from the time the plaintiff or the person under whom he claims discovered the fraud, or could with reasonable diligence have discovered it.

FN4. *But see Bank Leumi Trust Co. v. John Malasky, Inc.,* 108 A.D.2d 1089, 485 N.Y.S.2d 868 (App.Div.1985) (holding a three year statute of limitation to govern a conversion claim "regardless of whether the conversion arose from a contractual relationship or tortious conduct"); *Two Clinton Square Corp. v. Friedler,* 91 A.D.2d 1193, 459 N.Y.S.2d 179 (App.Div.1983) (same).

FN5. Although defendants moving brief asserts that plaintiff's bad faith claim must be dismissed, defendants' brief at 7, their reply brief excludes it from the list of counts barred. *See* defendants' reply brief at 4.

FN6. 18 U.S.C. § 1962 provides in relevant part:
(a) It shall be unlawful for any person who has received any income derived, directly or

Not Reported in F.Supp. Page 8
Not Reported in F.Supp., 1992 WL 80775 (S.D.N.Y.), RICO Bus.Disp.Guide 7990
**(Cite as: Not Reported in F.Supp.)**

indirectly, from a pattern of racketeering activity or through collection of an unlawful debt.... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c).

FN7. The RICO person is the one accused of violating the RICO statute.

FN8. The complaint references exhibit ten which lists numerous other predicate acts. This opinion will focus on the ones described in the complaint, as the others tend to be conclusorily pleaded and probably are not related.

FN9. Although plaintiff also makes allegations of numerous phone calls to devise and perpetuate the scheme, these are inadequately pleaded.

FN10. As noted in footnote eight above, we are not considering the predicate acts set forth in Healey's exhibit ten to the complaint.

S.D.N.Y.,1992.
Healey v. Pyle
Not Reported in F.Supp., 1992 WL 80775 (S.D.N.Y.), RICO Bus.Disp.Guide 7990

Briefs and Other Related Documents (Back to top)

• 1:89cv06027 (Docket) (Sep. 11, 1989)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.