

Not Reported in F.Supp.                                                                                                         Page 1
Not Reported in F.Supp., 1998 WL 178873 (E.D.N.Y.), RICO Bus.Disp.Guide 9477
**(Cite as: Not Reported in F.Supp.)**

H
Briefs and Other Related Documents

United States District Court, E.D. New York.
Local 851 of the International Brotherhood of Teamsters, by its court-appointed Independent Supervisor and Union Trustee, Plaintiff,
v.
KUEHNE & NAGEL AIR FREIGHT INC., Kuehne & Nagel, Inc., and Anthony Razza, Defendants.
**No. 97 CV 0378.**

March 6, 1998.

Ronald E. DePetris, DePetris & Bachrach, New York, for plaintiff.
Anthony V. Lombardino, Esq., Richmond Hill, for defendant Razza.
Kurzman Karelsen & Frank, LLP (Richard E. Miller, of counsel), New York, for defendants Kuehne & Nagel Air Freight, Inc., and Kuehne & Nagel, Inc.

MEMORANDUM AND ORDER
NICKERSON, District J.
*1 Ronald E. DePetris (DePetris), the court-appointed Independent Supervisor and Union Trustee for Plaintiff Local 851 of the International Brotherhood of Teamsters (Local 851), brought this suit on behalf of Local 851 against defendants Kuehne & Nagel Air Freight Inc. (K & N Air Freight), Kuehne & Nagel, Inc. (K & N), and Anthony Razza (Razza). Local 851 seeks damages arising from a pattern of racketeering activity involving unlawful labor payoffs, mail fraud, money laundering, and obstruction of justice in violation of 18 U.S.C. § 1962 and New York Labor Law § 725. Defendants K & N Air Freight and K & N (collectively Kuehne & Nagel) have moved to dismiss the complaint.

I

For the purposes of deciding this motion, the Court takes the facts as alleged in the complaint as true. The complaint alleges the following, in substance.

Local 851, a labor organization, represents clerical workers employed in air freight forwarding businesses operating at John F. Kennedy International Airport. K & N Air Freight is an air freight forwarder which employed members of Local 851. K & N Air Freight is affiliated with K & N.

Razza was the Secretary/Treasurer of Local 851 from February 1990 until January 1994. During that time he was an associate of the Luchese Organized Crime Family of La Cosa Nostra, and used his position to promote the interests of that Crime Family in its corruption of Local 851.

Plaintiff alleges that the defendants participated in a scheme under which K & N Air Freight entered into a collective bargaining agreement with Local 851 containing terms favorable to K & N Air Freight, and in return made payments to the Luchese Crime Family and Razza.

The Complaint alleges that in January of 1992 Razza and Patrick Dello Russo, a member of the Luchese Crime Family, proposed to Chester Calamari, Vice-President of K & N Air Freight, that K & N Air Freight could obtain a new contract with Local 851 by making payments to the Luchese Crime Family. These payments were disguised as "consulting fee" payments made to a company called Group East.

K & N Air Freight entered into a sham consulting agreement with Group East backdated as of September 1, 1991, which created the appearance that K & N Air Freight had retained Group East to provide labor consulting services. The agreement provided that K & N Air Freight would pay Group East a $5000 monthly fee from September 1991 through August 1993. K & N Air Freight and K & N made these payoffs each month, with the final check written on June 14, 1993. The total payoff amount exceeded $100,000.

In exchange for these payments, Razza caused Local 851 to enter into a new collective bargaining agreement which contained concessions to K & N Air Freight. This agreement was signed on April 14, 1992. Among its terms was a year-long freeze in pension contributions by K & N Air Freight for its employees who were members of Local 851.

The defendants took affirmative steps to conceal their wrongdoing. Local 851 remained ignorant of the unlawful conduct until Razza was indicted for his actions in November 1993. In January 1994 the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1998 WL 178873 (E.D.N.Y.), RICO Bus.Disp.Guide 9477
**(Cite as: Not Reported in F.Supp.)**

International Brotherhood of Teamsters removed Razza from the Executive Board of Local 851. He pled guilty on April 11, 1994 to demanding unlawfully and accepting labor payoffs from K & N Air Freight, and with conspiring to defraud the United States by obstructing the collection of income taxes. *United States v. Della Russo,* 93 Cr. 1012 (E.D.N.Y.1993).

**\*2** In October 1994 this court appointed the Independent Supervisor of Local 851 in October 1994 to investigate corruption in the local. *United States v. Local 295, Int'l Bhd. of Teamsters,* 90 Civ. 0970 (E.D.N.Y.1994). The Consent Decree entered into by Local 851 and the United States on September 12, 1995 authorizes him to bring this suit on behalf of Local 851.

II

Kuehne & Nagel argues that the Independent Supervisor should be judicially and collaterally estopped from asserting that Kuehne & Nagel willfully participated in the corrupt payment scheme causing damage to Local 851. It contends that these statements conflict with the September 12, 1995 Consent Decree which authorizes the Independent Supervisor to bring this suit on behalf of Local 851.

This argument has no merit. The Consent Decree contains no findings of fact, and is not inconsistent with the claims against Kuehne & Nagel made in this complaint. Additionally, the Second Circuit has established that estoppel only applies "when a tribunal in a prior proceeding has accepted the claim at issue by rendering a favorable decision." *Simon v. Safelite Glass Corp.,* 128 F.3d 68, 72 (2d Cir.1997). Where a judgment is reached by consent, nothing has been litigated for estoppel purposes. The Consent Decree does not imply any judicial endorsement of either party's claims or theories. *See Bates v. Long Island Railroad Co.,* 997 F.2d 1028, 1038 (2d. Cir.1993).

III

Kuehne & Nagel also contends that the suit is barred by the doctrine of "unclean hands" because Local 851 is a corrupt entity.

The few courts that have considered this issue have held that the defense of unclean hands is not available in RICO actions. *See, e.g., Bieter Co. v. Blomquist,* 848 F.Supp. 1446 (D.Minn.1994); *In re Nat'l Mortgage Equity Corp. Mortgage Pool Certificates Secs, Litig.,* 636 F.Supp. 1153 (C.D.Cal.1986).

These courts have reasoned that RICO suits are analogous to antitrust suits, because both seek to promote competition-in the case of the RICO statute, through halting the spread of organized crime into legitimate businesses. The unclean hands doctrine is not available in antitrust suits because "the purposes of antitrust laws are best served by insuring that the private action will be an ever present threat to deter anyone contemplating business behavior in violation of the antitrust laws." *Perma Life Mufflers, Inc. v. Int'l Parts Corp.,* 392 U.S. 134, 139, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968), overruled on other grounds by *Copperweld Corp. v. Int'l Parts Corp.,* 392 U.S. 134, 139, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968). For this same reason, unclean hands alone should not bar a RICO suit.

This Court agrees with the reasoning of the courts in *Bieter Co .* and *In re Nat'l Mortgage Equity Corp..* The doctrine of unclean hands does not bar the Independent Supervisor from bringing this suit.

IV

Kuehne & Nagel argues that the allegations in the complaint are insufficient to establish a RICO violation.

**\*3** To state a claim under 18 U.S.C. § 1962(c), a plaintiff must allege four elements: "(1) conduct; (2) of an enterprise; (3) through a pattern; and (4) of racketeering activity." *Sedima, S.P .R.L. v. Imrex Co., Inc.,* 473 U.S. 479 (1985). Kuehne & Nagel contends that the Independent Supervisor cannot establish the existence of an enterprise or a pattern.

The existence of an entity is proved by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette,* 452 U.S. 576, 582, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). The complaint alleges that Kuehne & Nagel, Razza, and members of the Luchese Crime Family were associated in fact. The purpose of the enterprise was to obtain labor concessions for K & N Air Freight in return for payoffs to the Luchese Crime Family. This enterprise is alleged to have operated for over a year. The complaint adequately alleges the existence of an enterprise.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1998 WL 178873 (E.D.N.Y.), RICO Bus.Disp.Guide 9477  
**(Cite as: Not Reported in F.Supp.)**

Page 3

Kuehne & Nagle argues that the activity alleges in the complaint did not amount to or threaten continuous activity, as is required to establish a pattern. This claim has no merit. The complaint states that Kuehne & Nagle joined with the Luchese Family, an organization in the business of committing crime, in an enterprise designed to enrich the Luchese Family. A party that climbs in bed with an organized crime family and assists it in the furtherance of its business has wedded itself to an enterprise that carries with it the threat of continued racketeering activity. *United States v. Indelicato,* 865 F.2d 1370, 1383-84 (2d Cir.1989) (en banc).

V

Kuehne & Nagel says that the alleged injuries were not proximately caused by the RICO violations. According to the complaint, Kuehne & Nagel's actions injured Local 851 by depriving it of the honest services of Razza. The payoffs by Kuehne & Nagel led Razza to ensure that Local 851 entered into a new collective bargaining agreement which contained concessions to K & N Air Freight, which included a year-long freeze in pension contributions by K & N Air Freight for its employees who were members of Local 851. The complaint adequately pleads that Kuehne & Nagel's actions proximately caused the damage to Local 851.

VI

Kuehne & Nagel argues that it did not know that it was making payments to a representative of Local 851 within the meaning of 29 U.S.C. § 186, nor did it know the ultimate destination of its payments. The complaint alleges that Kuehne & Nagel did understand that it was making payments to a representative of Local 851. In a motion to dismiss, the facts as stated in the complaint are presumed to be true. *Easton v. Sundram,* 947 F.2d 1011, 1014 (2d Cir.1991). Kuehne & Nagel's argument that the facts are different than what has been alleged in the complaint provides no basis for dismissal of the complaint. The complaint adequately states a claim for violation of 29 U.S.C. § 186.

VII

Kuehne & Nagel contends that claims of mail fraud, money laundering, and obstruction of justice, brought pursuant to 29 U.S.C. § 186, as well as violations of Section 725 of the New York State Labor Law, are preempted by the National Labor Relations Act, 29 U.S.C. § 157. Because the National Labor Relations Board is the exclusive forum in which to remedy violations that are prohibited under the National Labor Relations Act, this Court lacks jurisdiction over National Labor Relations Act claims.

**\*4** *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) established that states are preempted from legislating in areas directly covered by the National Labor Relations Act. But the Second Circuit has held that the National Labor Relations Act does not work an implied repeal of existing federal statutes. *See United States v. IBT,* 948 F.2d 98 (2d Cir.1991) (vacated on other grounds); *United States v. Boffa,* 688 F.2d 919 (3d Cir.1982). The claims brought pursuant to 29 U.S.C. § 186 are not preempted by the National Labor Relations Act.

Considering the preemption of state statutes, the Supreme Court has warned that:
in areas of the law not inherently requiring national uniformity .. state statutes, otherwise valid, must be upheld unless there is found 'such actual conflict between the two schemes of regulation that both cannot stand in the same area, [or] evidence of a congressional design to preempt the field.

*Head v. New Mexico Bd. of Examiners,* 374 U.S. 424, 430, 83 S.Ct. 1759, 10 L.Ed.2d 983 (1963).

There is no conflict between 29 U.S.C. § 157 and Section 725 of the New York State Labor Law. Section 157 of Title 29 protects employees' right to engage in collective bargaining. The activity which is challenged under Section 725 of the New York State Labor Law is Razza's breach of fiduciary duty to Local 851, and Kuehne & Nagel's participation in that breach, through the payments from Kuehne & Nagel to Razza. Those payments are unlawful simply because they are payments by an employer to an officer of its employees' union, regardless of whether or not they have any effect on a collective bargaining agreement. The activity which Labor Law § 725 makes illegal-Kuehne & Nagle's "participat[ion] in or induce[ment of] any conduct or act which violates any of the obligations of an officer or agent of a labor organization"-is not the same as the activity proscribed in 29 U.S.C. § 157. Labor Law § 725 is not preempted by the National Labor Relations Act.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 4
Not Reported in F.Supp., 1998 WL 178873 (E.D.N.Y.), RICO Bus.Disp.Guide 9477
**(Cite as: Not Reported in F.Supp.)**

### VIII

Kuehne & Nagle argues that the RICO claims accrued prior to October 31, 1992, and thus are barred by the applicable four-year statute of limitations. This argument is patently without merit.

A claim accrues when a plaintiff discovers or should have discovered an injury. *Bingham v. Zolt,* 66 F.3d 553, 559 (2d Cir.1995). Kuehne & Nagle argues that the injury to Local 851 occurred on January 1992, when the sham consulting agreement was created. But the complaint alleges that the payoffs commenced on January 29, 1992, with the final payoff made on June 14, 1993. Each unlawful payment constitutes a separate injury to Local 851 caused by the RICO violation. The bulk of these payments were made after October 31, 1992. The RICO claims for the injuries that occurred after October 31, 1992 are not barred by the statute of limitations.

### IX

In its strangest argument, Kuehne & Nagel points out that the government lacks standing to bring treble damage actions under 18 U.S.C. § 1964(c). *United States v. Bonnano Organized Crime Family of La Cosa Nostra,* 879 F.2d 20 (2d Cir.1989). But the government is not the plaintiff in this case. The Independent Supervisor has brought this action on behalf of Local 851, as is expressly authorized under the Consent Decree. The claims brought under 18 U.S.C. § 1964(c) are perfectly proper.

### X

**\*5** Kuehne & Nagel has also asked that this Court reconsider its October 30, 1997 decision denying its motion for recusal. That motion for reconsideration is denied.

So ordered.

E.D.N.Y.,1998.
Local 851 of Intern. Broth. of Teamsterse v. Kuehne & Nagel Air Freight Inc.
Not Reported in F.Supp., 1998 WL 178873 (E.D.N.Y.), RICO Bus.Disp.Guide 9477

Briefs and Other Related Documents (Back to top)

- 1:97cv00378 (Docket) (Jan. 23, 1997)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.