Westlaw.

Not Reported in F.Supp.                                                                Page 1
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
MERRILL LYNCH, PIERCE, FENNER & SMITH,
INCORPORATED, and Merrill Lynch & Co., Inc.,
Plaintiffs,
v.
Albert YOUNG, John Serino, Robert Fraser, Werner
Krebs, Inc., Benjamin Kopf, Werner Krebs, Valerio
Bonanno, Alan Silverman, Susan Lamonica, Alan
Luchnick, T & T Consultants, Ltd, Commercial
Movers, Inc., State Wide Enterprises, Inc., Supreme
Coach Corp., Turn Key Operation Corp., TKO Inc.,
11th Street Corporation, Royal-Prudential Industries,
Inc., World-Wide Real Estate Consultants, 1029 East
Main Street Partnership, James F. Volpe Electrical
Contracting Corp., and Albert Young, Inc.,
Defendants.
**No. 91 Civ. 2923 (CSH).**

March 15, 1994.

MEMORANDUM OPINION AND ORDER
HAIGHT, District Judge:
*1 This action alleging civil liability under the
Racketeer Influenced and Corrupt Organizations Act
("RICO"), 18 U.S.C. § 1961-1963, 1964(c), to which
state law claims are appended, has its genesis in an
alleged bribery and kickback scheme lasting from
approximately 1986 through 1988 involving three
individuals employed by plaintiffs Merrill Lynch,
Pierce, Fenner & Smith and Merrill Lynch & Co.,
Inc. (collectively "Merrill Lynch") and various
vendors of building services to Merrill Lynch during
the 1980's.

According to the Complaint, the three Employee
Defendants held positions in Merrill Lynch building
services which enabled them to influence the award
of service contracts in the construction of Merrill
Lynch's world headquarters at the World Financial
Center and the construction and maintenance of other
Merrill Lynch facilities. Seeking to receive lucrative
contracts with Merrill Lynch at inflated prices, the
Vendor Defendants assertedly provided the
Employee Defendants with cash and other valuable
benefits. The payment and receipt of these bribes
were allegedly fraudulently concealed from Merrill
Lynch by both the Employee Defendants and the

Vendor Defendants.

In November of 1990, defendants Serino and Fraser
pleaded guilty in the United States District Court for
the Southern District of New York to, *inter alia,*
charges of mail fraud in violation of 18 U.S.C. §
1341, for actions undertaken in connection with this
alleged scheme. On April 29, 1991, plaintiffs filed
this complaint. All the defendants except for Serino,
T & T Consultants, Ltd., Turn Key Operation Corp.,
TKO Inc., 11th Street Corporation and James Volpe
Electrical Contracting Corp., have filed motions to
dismiss the Complaint, relying upon various theories
of dismissal. These motions are addressed below.
For the reasons which follow, the motions are granted
in part and denied in part.

BACKGROUND

*The Defendants*

The Complaint divides the Vendor Defendants into
four groups. The "Commercial Movers Defendants"
include Commercial Movers, Inc., State Wide
Enterprises, Inc. ("State Wide"), Supreme Coach
Corp. ("Supreme Coach"), Turn Key Operation Corp.
("Turn Key"), TKO, Inc. ("TKO"), 11th Street Corp.
("11th Street"), and Alan Luchnick. All of the
corporate Commercial Movers Defendants are
alleged to be controlled by the owners of defendant
Commercial Movers, Inc. Alan Luchnick is alleged
to be an officer, director and controlling shareholder
of both Commercial Movers, Inc. and one or more of
the other corporate Commercial Movers Defendants.

The "Royal-Prudential Defendants" include Royal-
Prudential Industries, Inc., ("Royal-Prudential"),
World-Wide Consultants, Inc. ("World-Wide"), 1029
East Main Street Partnership ("1029 East Main
Street"), and Alan Silverman. Royal-Prudential
allegedly controls both World-Wide and 1029 East
Main Street. Silverman is allegedly an officer,
director and controlling shareholder of Royal-
Prudential and one or both of the two other corporate
entities.

*2 The "Werner Krebs Defendants" consist of
Werner Krebs, Inc., Benjamin Kopf, Valerio
Bonanno and Werner Krebs. Werner Krebs and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Benjamin Kopf are allegedly officers, directors and controlling shareholders of Werner Krebs, Inc. Bonanno is allegedly an officer and employee of Werner Krebs, Inc.

The final Vendor Defendant stands alone: James F. Volpe Electrical Contracting Corp. ("Volpe Electric").

Albert Young, John Serino, Jr., and Robert Fraser are the Employee Defendants. At all times relevant to this case, Young and Fraser were officers and employees of Merrill Lynch. More specifically, Young was Headquarters and Facilities Manager of the Facilities Division of Merrill Lynch and Project Director of the World Financial Center Project at various times between 1981 and 1988. At various times between January, 1986 and approximately April, 1989, Serino was Department Manager of Merrill Lynch's World Financial Center Project Development Group. Fraser was a project director and construction manager for various Merrill Lynch facilities at all times relevant to this action. According to the Complaint, the Employee Defendants owed plaintiffs the fiduciary duties of "full faith and total loyalty," and were relied upon by Merrill Lynch to obtain the best prices for the goods and services they purchased from vendors. Complaint at ¶¶ 32, 36.

Defendant Susan Lamonica is the wife of defendant Young. Defendant T & T Consultants, Ltd. ("T & T") is allegedly a foreign entity owned and controlled by Young. Defendant Albert Young, Inc., is allegedly a corporation owned and controlled by Young.

Each of the Employee Defendants, Susan Lamonica, and nearly all of the Vendor Defendants are either citizens of New York or New York corporations with their principal place of business in New York. Each plaintiff is a Delaware Corporation with its principal place of business in New York. The state of incorporation and principal place of business of Albert Young, Inc., is not alleged in the Complaint, nor is the location of either 1029 East Main Street Partnership or T & T Consultants, Ltd.

### The Claims

The 83 page, 135 paragraph Complaint asserts thirteen separate claims for relief. Claims One through Four purport to state civil RICO causes of action under 18 U.S.C. § 1962(c) against the various

groups of Vendor Defendants and the Employee Defendants. The Fifth Claim alleges a RICO conspiracy claim under 18 U.S.C. § 1962(d) against "all Defendants." The final seven claims assert various causes of action against the defendants sounding in, *inter alia*, fraud, breach of fiduciary duty and commercial bribery. These state or common law claims are pleaded on the basis of pendent jurisdiction.

### The Motions to Dismiss

The moving defendants primarily attack the sufficiency of the RICO claims against them. The specific bases for relief asserted in the different motions are as follows.

All of the Royal-Prudential Defendants move to stay this action on the basis of a pending parallel action in state court. In the alternative, they move to dismiss this action on the grounds that plaintiffs have failed to plead the predicate RICO acts and common law fraud with the specificity required by FedR.Civ.P. 9(b); that plaintiffs have failed to adequately plead a "pattern" of racketeering activity; and that plaintiffs have failed to state a claim for RICO conspiracy, warranting dismissal under Rule 12(b)(6).

**\*3** The Werner Krebs Defendants move to dismiss the Complaint for failure to plead the predicate acts of fraud with specificity under Rule 9(b) and for failure to allege a pattern of racketeering activity.

TKO, 11th Street and Turn Key have neither answered the Complaint nor moved to dismiss it. The remaining Commercial Movers Defendants (Luchnick, State Wide, Supreme Coach and Commercial Movers) join in the motions by the Royal-Prudential Defendants and the Werner Krebs Defendants. They also specifically move to dismiss on the grounds that the Complaint fails to plead the predicate acts of fraud with specificity under Rule 9(b); the Complaint fails to allege a pattern of racketeering activity; and the Complaint fails to state a claim of RICO conspiracy under Rule 12(b)(6).

Defendant Lamonica moves to dismiss the RICO claims against her on the grounds that the Complaint does not plead with Rule 9(b) particularity the claim that she aided and abetted the commission of predicate acts, and that the Complaint fails to state a RICO conspiracy claim against her. Albert Young, Inc. also moves to dismiss the RICO conspiracy claim against it. Without asserting arguments

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 3
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

specific to the claims against him, Defendant Albert Young joins in the combined motion of Lamonica and Albert Young, Inc.

Defendant Fraser moves to dismiss all of the claims against him in the Complaint for failure to plead fraud with particularity under Rule 9(b).

All of the moving defendants request that the Court decline to exercise pendent jurisdiction over the state claims asserted against them in the event the federal RICO claims are dismissed.

DISCUSSION

I.

ABSTENTION

As an initial matter, I must address the Royal-Prudential Defendants' request that this Court abstain from exercising jurisdiction over the claims against them under *Colorado River Water Conservation District v. United States,* 424 U.S. 800 (1976), because of duplicative litigation pending in New York state court.    For the following reasons, I decline to abstain from exercising jurisdiction.

This Court's duty to exercise jurisdiction is "unflagging" and therefore "[g]enerally ... 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River* at 817 (citation omitted).    Nonetheless, the *Colorado River* Court recognized that under "exceptional circumstances" federal district courts may abstain out of deference to pending parallel state court proceedings. *Id.* at 818.    In a subsequent case, the Supreme Court clarified the duty of district courts in determining whether to abstain because of concurrent state and federal suits:

"[W]e emphasize that our task in cases such as this is not find some substantial reason for the *exercise* of jurisdiction by the district court;  rather, the task is to ascertain    whether    there    exist    'exceptional' circumstances, 'the clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction."

**\*4** *Moses H. Cone Hospital v. Mercury Construction Co.,* 460 U.S. 1, 25-26 (1983).

A finding that the proceedings are concurrent is essential to considering the exercise of *Colorado River* abstention.    *See Sheerbonnet, Ltd. v. American Express Bank, Ltd.,* --- F.3d ----, No. 93-7330, slip op. at 1883 (2d Cir. February 22, 1994) (reversing district court's decision to abstain;  holding "[w]e need not examine the factors to determine whether 'exceptional circumstances' exist, because the state and federal proceedings here are not 'concurrent' ");  *cf. Alliance of American Insurers v. Cuomo,* 854 F.2d 591, 603 (2d Cir.1988) (in determining district court's decision to abstain was unwarranted, court noted "[m]ost importantly, it is not at all clear that this case and the state court actions are 'concurrent' ").    Even if two cases are concurrent, the Court in *Moses H. Cone* explained that the mere duplicativeness of parallel state and federal proceedings is insufficient to justify abstention.    *See* 460 U.S. at 16.    Instead, a district court must carefully balance the factors set forth in *Colorado River* and its progeny:   whether property is involved in the action;   whether the federal forum is inconvenient;   whether abstention will avoid piecemeal litigation;   which court first obtained jurisdiction;   the progress of the federal court litigation;   which forum's substantive law governs the merits of the litigation;   and the adequacy of the state forum to protect the party's rights.    *See Colorado River,* 424 U.S. at 818;   *Moses H. Cone,* 460 U.S. at 23, 26.

In the case at bar, defendants' abstention request is rejected because the state litigation is not parallel to the instant federal suit.    As an initial matter, the two cases do not involve the same parties.    The state action was brought by Royal-Prudential against Merrill Lynch & Co., Inc. to recover money owed for services rendered.    The only parties involved in the state action are Merrill Lynch and Royal-Prudential. The other Royal-Prudential Defendants in the case at bar are mentioned in the set-off claims but are not parties to the state action;   whereas, the federal action brings together all of the alleged members of the Royal-Prudential    Defendants'    enterprise. Additionally, different issues are presented in the two suits.    In its answer to the state complaint, Merrill Lynch has asserted claims of set-off sounding in fraud, inducement of the breach of fiduciary duty of another, and commercial bribery.    These allegations echo many of those made against Royal-Prudential in the case at bar;   but the federal case asserts a RICO cause of action against Royal-Prudential and its alleged co-conspirators which finds no counterpart in the state case.    While the two cases have in common claims of fraud, commercial bribery and inducement of fiduciary breach of another, the mere existence of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK     Document 165-26     Filed 07/07/2006     Page 4 of 27

Not Reported in F.Supp.                                                                          Page 4
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

overlapping issues does not make the cases parallel.

Even if the two cases were parallel, no "exceptional circumstances" justify abstention in this case. None of the identified factors weighs heavily in favor of abstention. No res is involved, and neither forum is more convenient; they are located across the street from each other. The state court action was filed shortly before the federal action and little progress has been made in either case. Moreover, because the state case does not "embrace" all of the issues asserted in the federal litigation, the state forum is not necessarily adequate to protect plaintiffs' rights. *See e.g. Bethlehem Contracting Co. v. Lehrer/McGovern, Inc., 800 F.2d 325, 328 (2d Cir.1986)* (state court cannot resolve entire controversy where a claim in federal action was not present in state action and one of the federal defendants was not party to the state action).

**\*5** The Royal-Prudential Defendants make much of the fact that Merrill Lynch first asserted the set off claims, with their accompanying allegations of fraud and bribery, in state court. Their contention is that Merrill Lynch should be forced to litigate its claims against Royal-Prudential in the original forum in which Merrill Lynch "chose" to assert them. I disagree. The case relied upon by defendants in support of their argument, *Lorentzen v. Levolor Corporation, 754 F.Supp. 987 (S.D.N.Y.1990),* bears no resemblance to this case. In *Lorentzen,* the federal plaintiff was also the plaintiff intervenor in a state action in which he filed an amended complaint. After the state court ordered plaintiff to proceed with arbitration, plaintiff brought virtually an identical lawsuit in federal court. The federal suit was filed some twenty months after the state complaint was filed. Soon after the federal action commenced, the arbitration proceeding was nearing completion. Under those circumstances, the federal court abstained from exercising jurisdiction over the case, confining "plaintiff to the forum he originally chose," in order to avoid the risk of piecemeal litigation. *754 F.Supp. at 991-92.*

In the present case, there are no similar circumstances requiring confinement of Merrill Lynch's claims to the state forum. Merrill Lynch is the defendant in the state action. The set-off claims were asserted in state court as a defensive measure, and Merrill Lynch filed the instant suit just weeks after answering the state complaint. Accordingly, unlike the plaintiff in *Lorentzen,* there can be no assertion that Merrill Lynch was forum shopping based on unfavorable results obtained in state court.

In view of the heavy presumption favoring the exercise of federal jurisdiction and the lack of exceptional circumstances warranting abstention in this case, I decline to abstain from exercising jurisdiction over the claims against the Royal-Prudential Defendants.

## II.

## LEGAL STANDARDS

Before analyzing the sufficiency of the Complaint, it is useful to review the applicable legal standards.

### A. 12(b)(6) MOTION TO DISMISS

A RICO claim should be dismissed only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50 (1989)* (quoting *Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)*). On a motion to dismiss for failure to state a claim under *Fed.R.Civ.P. 12(b)(6),* this Court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir.1980).* The court must read the complaint "generously, and draw all reasonable inferences in favor of the pleader." *Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir.1989).* A court should not grant the motion, "unless it appears 'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Goldman v. Belden, 754 F.2d 1059, 1065 (2d Cir.1985)* (quoting *Conley v. Gibson,* 335 U.S. 41, 45-46 (1957) (footnote omitted)). The complaint's insufficiency under either Rule 8(a) or 9(b) may constitute grounds to dismiss the complaint for failure to state a claim. *See United States v. Bonanno, 683 F.Supp. 1411, 1428 (E.D.N.Y.1988),* aff'd, *879 F.2d 20 (2d Cir.1989).*

### B. SECTION 1962(c) VIOLATION

**\*6** Section 1962(c) of the RICO Act provides:

"(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 5
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

To establish a violation of § 1962(c), a plaintiff must allege the following elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. *Moss v. Morgan Stanley Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied,* 465 U.S. 1025 (1984); *see Town of West Hartford v. Operation Rescue,* 915 F.2d 92, 100 (2d Cir.1990), *cert. denied,* 113 S.Ct. 33 (1992).

"The bare minimum of RICO is that the defendant personally commit or aid and abet the commission of two predicate acts." *See McLaughlin v. Anderson,* 962 F.2d 187, 192 (2d Cir.1991). Mere membership in a group is not sufficient to ground RICO liability. The plaintiff must establish individual actions by defendants that form violations of RICO. "The focus of Section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are proscribed by section 1962(d)." *United States v. Persico,* 832 F.2d 705, 714 (2d Cir.1987), *cert. denied,* 486 U.S. 1022 (1988). Racketeering activity includes a wide array of criminal acts, including commercial bribery proscribed by state law, and mail and wire fraud. 18 U.S.C. § 1961(1).

## C. RULE 9(b) PLEADING

The Complaint charges all moving defendants (except Albert Young, Inc.) with the predicate acts of mail and wire fraud in violation of 18 U.S.C. § § 1341 and 1343, commercial bribery in violation of N.Y.Penal Law § 180.08 (Vendor Defendants) or 180.03 (Employee Defendants), and violations of the Travel Act, 18 U.S.C. § 1952(a).

The moving defendants contend that the predicate acts of fraud should be dismissed because the allegations fail to satisfy the requirements of Rule 9(b).

Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a

person may be averred generally." Rule 9(b) must be read together with Rule 8(a) which requires only a "short and plain statement" of the claims for relief. *Ouaknine v. MacFarlane,* 897 F.2d 75, 79 (2d Cir.1990); *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987). But Rule 9(b) must be enforced so as to accomplish its three goals: (1) providing a defendant fair notice of plaintiff's claim, to enable preparation of his defense; (2) protecting a defendant from harm to his reputation or goodwill; and (3) reducing the number of strike suits. *DiVittorio* at 1247.

**\*7** To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements. *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). A complaint may adequately identify the statements alleged to be misrepresentations and properly indicate when, where and by whom they were made, yet still fail Rule 9(b) scrutiny if the complaint does not allege circumstances giving rise to a strong inference that defendant knew the statements to be false, *Wexner v. First Manhattan Co.,* 902 F.2d 169, 173 (2d Cir.1990), and intended to defraud plaintiff, *Ouaknine* at 80; *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987), *cert. denied,* 484 U.S. 1005 (1988).

Knowledge is a state of mind. So is intent to defraud, or "scienter." While Rule 9(b) permits conditions of mind to be averred generally, the rule also requires that allegations of scienter be supported by facts giving rise to a "strong inference" of fraudulent intent. *Ouaknine* at 80; *Beck* at 50; *Connecticut National Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2d Cir.1987).

To satisfy the scienter requirement, a plaintiff need not allege facts which show a defendant had a motive for committing fraud, so long as plaintiff adequately identifies circumstances indicating "conscious behavior" by the defendant from which an intent to defraud may fairly be inferred. *Cosmas* at 13. However, where a particular defendant's motive to defraud is not apparent, the strength of the circumstantial allegations must be correspondingly greater. *Beck* at 50.

Allegations may be based on information and belief when facts are peculiarly within the opposing party's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                   Page 6
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

knowledge. *Luce v. Edelstein,* 802 F.2d 49, 54 n. 1 (2d Cir.1986); *DiVittorio* at 1247-48. However, that exception to Rule 9(b)'s general requirement of particularized pleading does not constitute a license to base claims of fraud on speculation or conclusory allegations. Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy a relaxed pleading standard. *Wexner* at 172.

Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud. *DiVittorio* at 1247. The essence of Rule 9(b) pleading is that each defendant is entitled to be advised of the fraud claims against him. Sweeping references to the collective fraudulent actions of multiple defendants will not satisfy the particularity requirements of Rule 9(b). *See Three Crown Ltd. Partnership v. Caxton Corp.,* 817 F.Supp. 1033, 1041 (S.D.N.Y.1993); *Center Cadillac v. Bank Leumi Trust Co.,* 808 F.Supp. 213, 230 (S.D.N.Y.1992).

**\*8** Without question, RICO predicate acts premised on fraud must be pleaded according to the strictures of Rule 9(b). *McLaughlin v. Anderson,* 962 F.2d at 191. Indeed, " '[i]t is particularly important to require such specificity when the fraud allegations also constitute the predicate acts underlying RICO claims....' " *Newman v. Rothschild,* 651 F.Supp. 160, 162 (S.D.N.Y.1986) (citations omitted).

The moving defendants in the case at bar seek to extend the stringent pleading requirements of Rule 9(b) to *all* allegations of RICO predicate acts, whether fraud-based or not. That effort fails. The Second Circuit has determined that Rule 9(b) pleading applies only to RICO predicate acts of fraud. In *McLaughlin,* recognizing that "rule 9(b) applies only to claims of fraud or mistake," the court held that the district court erred in evaluating allegations of RICO predicate acts of extortion under Rule 9(b) rather than under the more lenient pleading standards of Rule 8(a). 962 F.2d at 194. In so holding, the court relied upon *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 26 n. 4 (2d Cir.1990), in which the court had refused to apply Rule 9(b) pleading standards to a RICO conspiracy allegation. Defendants at bar argue that Rule 9(b) must apply to all RICO predicate acts because the harm a RICO claim can potentially cause to a defendant's reputation is indistinguishable from the damage potentially engendered by a fraud claim.

Despite the logic of this argument, there is no doubt that the Second Circuit has confined the pleading requirements of Rule 9(b) to predicate acts based on fraud.

At least one other court in this district has adopted a similar view of the relevant authority. In *Michael Anthony Jewelers v. Peacock Jewelry,* 795 F.Supp. 639, 645 n. 5 (S.D.N.Y.1992), Judge Sand, applying *McLaughlin,* refused to extend the heightened pleading requirements of Rule 9(b) to RICO predicate acts other than fraud. I similarly reject defendants' arguments and conclude that the sufficiency of the bribery, Travel Act, Money Laundering and Obstruction of Justice predicate acts, which are not based on fraud, must be assessed under the more relaxed pleading requirements of Rule 8(a).

### D. MAIL AND WIRE FRAUD

The predicate acts of fraud which must be assessed under Rule 9(b) in this case include allegations of mail and wire fraud in violation of 18 U.S.C. § 1341 and 1343. To plead predicate acts of mail or wire fraud, plaintiff must allege (1) the defendant devised a scheme to defraud; (2) the defendant used the United States mails or interstate wires to further the fraudulent scheme; and (3) the defendant did so with the specific intent to defraud. [FN1] *See United States v. Wallach,* 935 F.2d 445, 461 (2d Cir.1991), *cert. denied,* 124 L.Ed. 637 (1993); *Oantel Corp. v. Niemuller,* 771 F.Supp. 1361, 1369 (S.D.N.Y.1991). In evaluating these allegations, it is useful to recall that, " '[t]he federal mail fraud statute does not purport to reach all frauds, but only those limited instances in which the use of the mails is a part of the execution of the fraud, leaving all other cases to be dealt with by appropriate state law.' " *Schmuck v. United States,* 489 U.S. 705, 710 (1989) (quoting *Kann v. United States,* 323 U.S. 88, 95 (1944)).

**\*9** Although most mail and wire fraud violations are based on affirmative misrepresentations, under the mail and wire fraud statutes, fraud may also be based upon fraudulent omission or concealment. *See United States v. Barta,* 635 F.2d 999, 1007 (2d Cir.1980) (fraudulent concealment formed basis of mail fraud claim), *cert. denied* 450 U.S. 998 (1981); *United States v. O'Malley,* 707 F.2d 1240, 1247 (11th Cir.1983) ("Fraud, for purposes of mail fraud, may be proved through defendant's non-action or non-disclosure of material facts intended to create a false and fraudulent representation."); *In Re Gas Reclamation, Inc. Securities Litigation,* 659 F.Supp.

Not Reported in F.Supp.                                                                          Page 7
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

493, 512 (S.D.N.Y.1987) ("A scheme to defraud is a plan whose object is 'to deprive one of property through fraudulent or deceptive means, such as material misrepresentations [or] concealment;' " quoting *Tryco Trucking Co. v. Belk Stores Services, 634 F.Supp. 1327, 1333 (W.D.N.C.1986)*).

For a mailing to be in furtherance of the fraudulent scheme, "the use of the mails need not be an essential element of the scheme." *Schmuck,* 489 U.S. at 710. Rather, "[i]t is sufficient for the mailing to be 'incident to an essential part of the scheme,' or 'a step in [the] plot.' " *Id.* at 710-11 (quoting *Badders v. United States,* 240 U.S. 391, 394 (1916)). Even mailings that are innocent on their face may be in furtherance of a fraudulent scheme in violation of mail or wire fraud statutes because it is clear that "[t]he mailings themselves need not contain misrepresentations." *Center Cadillac v. Bank Leumi Trust Co.,* 808 F.Supp. 213, 228 (S.D.N.Y.1992) (citing *Schmuck,* 489 U.S. at 744). But, in order to satisfy Rule 9(b) when alleging mail or wire fraud, the complaint must identify the purpose of the mailing within the fraudulent scheme. *McLaughlin v. Anderson,* 962 F.2d at 191.

In order to "cause" the use of the United States mails or interstate wires, the defendant need not have personally mailed anything or engaged in a wire communication. Rather, the defendant need only have reasonably foreseen that a third party would use the mail or the interstate wires in the ordinary course of business as a result of the defendant's fraudulent acts. *United States v. Bortnovsky,* 879 F.2d 30, 36 (2d Cir.1989).

With these precepts in mind, I will now assess the sufficiency of the predicate act allegations against each of the defendants.[FN2]

III.

SUFFICIENCY OF THE PREDICATE ACT ALLEGATIONS

A. FRAUDULENT CONCEALMENT

Unlike the use of interstate wires, *see* note 2 *supra,* the Complaint refers to specific mailings (invoices, checks and letters) with respect to each group of defendants. Plaintiffs concede that the asserted mailings and/or interstate wire communications were

not fraudulent in and of themselves. *See* Merrill Lynch Parties' Memorandum of Law ("Plaintiffs' Memorandum") at p. 18. Instead, the communications are alleged to have furthered an underlying fraudulent scheme. According to plaintiffs, the underlying fraudulent scheme devised and executed by the defendants was the willful concealment from Merrill Lynch of the bribes paid to the Employee Defendants by the Vendor Defendants. The fraud committed by the Vendor Defendants involved the concealment by each defendant of the knowledge that it had paid bribes to influence Merrill Lynch employees while entering into transactions with Merrill Lynch. *See* Plaintiffs' Memorandum at pp. 15-16.

**\*10** The defendants argue that plaintiffs have failed to state a claim for fraudulent non-disclosure as a basis for the mail and wire fraud allegations against the Vendor Defendants because they have not alleged a duty to disclose on the part of the Vendor Defendants.

Under New York law, the failure to disclose a material fact where there is a duty of disclosure can rise to the level of fraud. *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank,* 731 F.2d 112, 123 (2d Cir.1984). A party to a business transaction can develop a duty to disclose in the following situations: "[F]irst, where the party has made a partial or ambiguous statement, on the theory that once a party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth; second, when the parties stand in a fiduciary or confidential relationship with each other; and third, 'where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.' "

*Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993) (quoting *Aaron Ferer & Sons,* 731 F.2d at 123; citations omitted).[FN3] Plaintiffs assert that their cause of action for fraudulent concealment presents the third situation: fraudulent concealment based upon superior knowledge. A party's knowledge cannot be considered superior if the concealed information is a matter of public record or was not pursued by plaintiff. *Aaron Ferer & Sons,* 731 F.2d at 123.

Because a claim for mail and/or wire fraud cannot survive if the common law fraud on which it is based is inadequately pled, *Morin v. Trupin,* 711 F.Supp. 97, 103 (S.D.N.Y.1989), a determination of whether the Complaint sufficiently alleges a cause of action

Not Reported in F.Supp.                                                                                      Page 8
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

for fraudulent concealment is essential to an analysis of the mail and wire fraud claims.

### B. THE ROYAL-PRUDENTIAL DEFENDANTS

#### 1. *Mail and Wire Fraud*

The Royal-Prudential Defendants and Young are alleged to constitute an "association-in-fact" enterprise under 18 U.S.C. § 1961(4). Complaint at ¶ 69. The Complaint sets forth allegations of specific racketeering acts by the Royal-Prudential Defendants at paragraphs 75(a)-(h). As noted above, plaintiffs recognize that their claims of mail and wire fraud are not based on communications conveyed over the wires or through the mail which are themselves fraudulent. Rather, plaintiffs' assertion is that the defendants used the mail or interstate wires to further their scheme of fraudulent concealment. In furtherance of the allegedly fraudulent scheme, the "Royal-Prudential Defendants" are alleged to have caused the use of the United States mails and the interstate wires by transmitting the thirteen letters, invoices, checks or forms listed in paragraph 75(q).

Judged by the governing pleading standards, the claims of mail and wire fraud against World-Wide, 1029 East Main, Royal-Prudential and Alan Silverman are inadequate. As a preliminary matter, the Complaint fails to allege the fraudulent scheme with specificity, and "[w]here the fraudulent scheme is premised upon inadequate pleading of common law fraud, the allegations of mail and wire fraud must fail." *Morin v. Trupin,* 711 F.Supp. at 105. Under New York law, the omission of a material fact may rise to the level of fraud but only where a duty to disclose exists. A duty of disclosure may exist in the context of a business transaction when one party to the transaction has "superior knowledge" vis-a-vis another party. *See e.g.* *Edward B. Fitzpatrick v. Suffolk Co.,* 525 N.Y.S.2d 863, 865 (A.D.2d Dep't 1988) (absent privity of contract, no duty to disclose); *George Cohen Agency v. Donald S. Perlman,* 495 N.Y.S.2d 408, 410 (A.D.2d Dep't 1985) (fraudulent concealment claim dismissed as to one defendant because it was not party to the contract; in "absence of special relationship between two parties to a contract, no duty to disclose exists"); *Young v. Keith,* 492 N.Y.S.2d 489, 491 (A.D.3d Dep't 1985) (duty to disclose arises when one party to a contract has superior knowledge).

**\*11** Plaintiffs do not argue that the Vendor

Defendants owed Merrill Lynch a fiduciary duty. Instead, they argue that the duty to disclose arose because as parties to business transactions, the Vendor Defendants possessed undisclosed "superior knowledge." Yet the Complaint merely alludes to, without specifically identifying, any particular business transaction with Merrill Lynch to which any of the Royal-Prudential Defendants is alleged to have been a party. In failing to do so, the Complaint fails to plead with the required particularity a context in which a duty to disclose may have arisen. Inferences and allusions to contracts and transactions establishing a relationship in which a general duty to disclose may arise do not withstand Rule 9(b) scrutiny. Each defendant is entitled to be told specifically the contract or contracts tainted by bribery which that defendant fraudulently failed to disclose. Accordingly, having failed to plead the fraudulent scheme with particularity, the mail and wire fraud claims against the Royal-Prudential Defendants will be dismissed.[FN4]

Even if the fraudulent scheme were adequately pleaded, the allegations of mail and wire fraud against 1029 East Main Street, World-Wide and Silverman require dismissal for an additional reason. As to 1029 East Main and World-Wide, the Complaint does not identify specific acts of communication by mail or by interstate wires undertaken by these two defendants in furtherance of the fraudulent scheme. Of the communications identified in ¶ 75(q), none is alleged to have been made specifically by either 1029 East Main or World-Wide. The sweeping allegation that "the Royal-Prudential Defendants" caused the listed communications to be made impermissibly collectivizes the defendants, failing to inform each of these defendants of the specific communications it is alleged to have made or caused to be made in furtherance of the fraudulent scheme.[FN5]

The mail and wire fraud allegations are also insufficient as to Silverman. Although the Complaint identifies specific acts of communication by mail or wire on the part of Silverman, it entirely fails to connect him with the fraudulent scheme. Given the goal of Rule 9(b) to provide the defendant with fair notice of the claim against him, and the bare minimum requirement of RICO that *each* defendant commit at least two predicate acts, the barebones allegation that Silverman "authorized and participated in" all of the unlawful acts alleged in the Complaint is simply not sufficient to allege with particularity his role in the scheme. Complaint at ¶ 34. A review of the Complaint reveals a complete

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 9
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

failure to assert specific facts supporting the sweeping allegation that Silverman had a role in the alleged acts of bribery. In doing so, the Complaint fails to connect him to the scheme or even establish a "strong inference" that Silverman "had knowledge of the facts [of the fraudulent activity or] ... recklessly disregarded their existence." *Ross v. A.H. Robins Co.,* 607 F.2d 545, 558 (2d Cir.1979), *cert. denied,* 446 U.S. 946, *reh'g denied,* 448 U.S. 911 (1980). Without at least some specific connection to the acts of bribery, Silverman cannot be alleged, consistent with Rule 9(b), to have possessed the "superior knowledge" which is the basis of the duty to disclose. Therefore, his mere conveyance of concededly innocent communications through the mails or interstate wires cannot be alleged to have furthered the fraudulent scheme in violation of the mail and wire fraud statutes.

### 2. *Commercial Bribing*

**\*12** All of the Royal-Prudential Defendants are also charged with the predicate act of commercial bribing in violation of N.Y.Penal Law § 180.03 (McKinney 1988). Violation of this statute constitutes a predicate act under RICO because it is a felony "involving ... bribery" and is punishable by more than one year in prison. *See* 18 U.S.C. § 1961(1)(A). Under Section 180.03:
"A person is guilty of commercial bribing in the first degree when he confers, or offers or agrees to confer, any benefit upon any employee, agent or fiduciary without the consent of the latter's employer or principal, with intent to influence his conduct in relation to his employer's or principal's affairs, and when the value of the benefit conferred or offered or agreed to be conferred exceeds one thousand dollars and causes economic harm to the employer or principal in an amount exceeding two hundred fifty dollars."

The Royal-Prudential Defendants argue that the commercial bribing claims must fail because the Complaint does not identify any particular contract received at an inflated price as a result of the alleged bribery. The Court rejects this argument.

As previously noted, the pleading of RICO predicate acts not based on fraud is not governed by Rule 9(b). The predicate acts of commercial bribery must therefore only conform to the notice pleading requirements of Rule 8(a). The Complaint alleges that each of the Royal-Prudential Defendants

committed acts of unlawful bribery which resulted in Merrill Lynch having to pay inflated prices or prices that could have been reduced for services provided by the Royal Prudential Defendants, compensating the Royal Prudential Defendants for unnecessary services, or compensating them for services never rendered. Complaint at ¶ 76. All of the bribes are alleged to have been made in an amount greater than $1000 and causing plaintiffs economic damage in an amount greater than $250.[FN6] Complaint at ¶ 75(g).

Defendants, proceeding under the mistaken assumption that Rule 9(b) applies to the pleading of this predicate act, argue that plaintiffs are required to identify particular contracts in order to sufficiently allege the requisite economic harm. I do not concur that Rule 8(a), which requires only "a short and plain statement of the claim," requires the level of specificity defendants demand. To require that the complaint identify the actual services obtained at an inflated price and the specific price differential would place an unwarranted burden on plaintiffs at this stage of this case.

*Moll v. U.S. Life Title Ins. Co.,* 710 F.Supp. 476 (S.D.N.Y.1989), relied upon by defendants, is not to the contrary. In that case, purchasers of insurance claimed that the defendant title insurance company gave a portion of the premiums paid as "kickbacks" to the purchasers' attorneys in order to steer plaintiffs' business their way. The court held that, despite the alleged payment of kickbacks, the complaint failed to state a claim of commercial bribery under section 180.03 because the title insurance premium was non-negotiable and plaintiffs could not have purchased their insurance premiums at a lower price. Therefore, no economic injury could conceivably be alleged. *Id.* at 482. This case, by contrast, does not present a situation where the goods and services provided by the Vendor Defendants are of commercially uniform price in the industry. Indeed, in contrast to *Moll,* the Complaint at bar alleges that Merrill Lynch indeed paid higher prices for services rendered by the Vendor Defendants. Moreover, Merrill Lynch also alleges that the bribes were paid in exchange for fictional services, which further distances this case from *Moll.*

**\*13** Furthermore, the fact that the Complaint alleges that Merrill Lynch had implemented a competitive bidding system does not, as defendants contend, make this case analogous to *Moll.* Complaint at 43(a). I am not prepared to conclude that, as a matter of law, the existence of a competitive bidding process negates the possibility that payment of bribes

to its employees affected the award of contracts by Merrill Lynch. The actual effect of the existence of the bidding system on the award of contracts by Merrill Lynch is essentially a factual question, not properly determined upon this motion.

Having put to rest those arguments, the claims against Royal-Prudential, World-Wide, and 1029 East Main Street all pass muster under Rule 8(a) because the Complaint alleges specific acts of bribery, in each case over $1,000, against each one of these defendants. The commercial bribery claim also survives as to Silverman. Despite the fact that Silverman is not alleged to have personally made any of the bribes outlined in the Complaint, he is alleged to have authorized them. Complaint at ¶ 34. While this type of conclusory statement will clearly not stand up to the rigid requirements of Rule 9(b), it survives the more relaxed pleading requirements of Rule 8(a). Unlike Rule 9(b), Rule 8(a) does not require that a defendant be advised of the particularities of his involvement in alleged non-fraudulent conduct. Rule 8(a) simply requires "a short and plain statement of the claim" against each defendant. The Complaint clearly complies with this requirement. The allegation is not so conclusory as to fail to put Silverman on notice of the precise nature of the claim, especially in view of the fact that the Complaint sets forth specific facts about the nature of the bribes Silverman is alleged to have either participated in or authorized.

### 3. The Travel Act

Plaintiffs allege that the Royal-Prudential Defendants committed the predicate act of violating 18 U.S.C. § 1952(a) (the "Travel Act") (1988). A Travel Act violation occurs when (1) a person travels in interstate or foreign commerce or uses a facility of interstate or foreign commerce, (2) with intent to facilitate the promotion, management, establishment, or carrying on, of any of the unlawful activities specified in § 1952(b), and (3) thereafter performs an additional act in furtherance of that specified unlawful activity. *See United States v. Jenkins,* 943 F.2d 167, 172 (2d Cir.), *cert. denied,* 112 S.Ct. 659 (1991). A violation of the Travel Act is a specifically enumerated predicate act under RICO. *See* 18 U.S.C. § 1961(1)(B). Because a violation of the Travel Act is a substantive offense in itself, *see Jenkins,* 943 F.2d at 173, it can constitute a predicate act under RICO separate from the underlying "unlawful activity."

Commercial bribery in violation of § 180.03 falls within the ambit of § 1952(b)(2), which includes bribery in violation of state law. *See Perrin v. United States,* 444 U.S. 37 (1979) (holding that bribery of private employees prohibited by state criminal statutes falls within the meaning of "unlawful activity" under the Travel Act). To constitute a Travel Act violation, the interstate travel or use "need not be indispensable to the illegal activity, 'it is enough that the use facilitates the illegal activity.' " *United States v. Campione,* 942 F.2d 429, 435 (7th Cir.1991) (quoting *United States v. Muskovsky,* 863 F.2d 1319, 1327 (7th Cir.1988), *cert. denied,* 489 U.S. 1067 (1989)).

**\*14** The Royal-Prudential Defendants move to dismiss the Travel Act allegations for two reasons. First, they contend that the Complaint's failure to sufficiently plead the commercial bribery allegations upon which the Travel Act relies requires dismissal of the Travel Act claims. The defendants also argue that the Complaint does not allege the use of facilities in interstate commerce with Rule 9(b) particularity. The former argument is meritless since I have determined that the commercial bribery allegations against the Royal-Prudential Defendants are sufficiently pleaded. As to the latter argument, Rule 8(a) rather than Rule 9(b) applies to the Travel Act allegations. Thus, these allegations need not be pleaded with the particularity urged by defendants.

Accordingly, evaluating the Travel Act allegations under Rule 8(a), those allegations against World-Wide, Silverman and 1029 East Main Street survive the motion to dismiss.

World-Wide is alleged to have "issued a check for $50,000 made payable to Rick-Ba Builders, a company involved in building Young's Pennsylvania country home." Complaint at ¶ 75(b). 1029 East Main Street is alleged to have issued payments to "a company in Pennsylvania for Young's benefit," and to unidentified companies involved in building Young's Pennsylvania home. Complaint at ¶ ¶ 75(c), (d) and (e). Silverman is alleged to have authorized and participated in all actions including these. The Complaint alleges that the checks issued to companies involved in building the Pennsylvania home "crossed state lines in the process of collection." Complaint at ¶ 75(h). These allegations sufficiently assert violations of the Travel Act. An adequate interstate nexus is shown by the assertion that the checks crossed state lines. This allegation also shows that the interstate activity directly facilitated the unlawful acts of bribery. On

Not Reported in F.Supp.                                                                                                        Page 11
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

plaintiffs' theory, the bribe money built the house. Although the Complaint does not set forth the specific manner of the checks' transmission, Rule 8(a) cannot be read to require that level of specificity.

The Travel Act allegation against Royal-Prudential, on the other hand, must be dismissed. In connection with the commercial bribing claim, the Complaint alleges only that Royal Prudential "provided Defendant Young with the exclusive use of a rent-free, penthouse duplex apartment in New York City which it leased for $40,909.61 in 1986 and $12,271.04 in 1987." Complaint at ¶ 75(a). Royal-Prudential is allegedly a New York corporation with its principal place of business in New York. The apartment was located in New York and allegedly used by a New York citizen. The Complaint sets forth no facts showing that any facilities in interstate commerce were used in connection with this unlawful act. Accordingly, because no interstate connection with this act of bribery is alleged, the Complaint fails to state a claim for violation of the Travel Act. The Complaint does not remedy this insufficiency by alleging generally that checks issued to companies involved in building Young's Pennsylvania home crossed state lines. While this allegation sufficiently shows an interstate nexus with respect to the defendants who allegedly made such payments, Royal-Prudential is not alleged to have made any payments to companies involved in building the Pennsylvania home.

### 4. *Obstruction of Justice*

**\*15** The Royal-Prudential Defendants are also alleged to have committed the predicate act of violating 18 U.S.C. § 1503 (1988). Section 1503 provides in pertinent part:
"Whoever ... corruptly or by threats of force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

With respect to this allegation, the Complaint alleges: "Upon information and belief, after receiving a grand jury subpoena in connection with an investigation being conducted by the United States Attorney, the Royal-Prudential Defendants in violation of 18 U.S.C. § 1503 created bogus documentation designed to disguise the payments made on Young's behalf as loans."

Complaint at ¶ 75(f).

The Royal-Prudential Defendants contend that this claim should be dismissed for two reasons. First, they assert that the Complaint fails to plead the violation of the statute with sufficient particularity because it does not specify what the "bogus documentation" was, who created it, and when it was created. Second, they contend that the Complaint fails to establish any harm resulting to Merrill Lynch from the alleged failure to disclose bribes after the grand jury proceeding had begun.

It bears repeating that Rule 9(b) does not govern the pleading of non-fraud RICO predicate acts. However, even analyzing the Obstruction of Justice allegation under the more relaxed pleading requirements of Rule 8(a), I conclude that it must be dismissed. It is fundamental that a RICO complaint allege that *each* defendant personally committed or aided and abetted the commission of at least two predicate acts. *McLaughlin v. Anderson,* 962 F.2d at 192. Thus, at a minimum, the complaint must specify which defendant is alleged to have committed a particular predicate act. This Complaint fails even that minimal pleading requirement by lumping the Royal-Prudential Defendants together and failing to specify which defendant or defendants obstructed justice through bogus documentation.

The dangers of this collectivized pleading are evidenced by a review of Plaintiffs' Memorandum. In their argument that the obstruction of justice allegation is well-pleaded, plaintiffs refer only to "Royal-Prudential" as having violated the statute. Yet, there is a significant difference between defendant "Royal-Prudential" and the "Royal-Prudential Defendants," which include *four* different defendants grouped under one heading. Despite this distinction, plaintiffs fail to reconcile the reference to "Royal-Prudential Defendants" in the obstruction of justice allegation in the Complaint, with the casual reference to "Royal-Prudential" in its Memorandum. Reading the Complaint together with the Memorandum, it is impossible to determine whether plaintiffs intend to assert the claim against all of the Royal-Prudential Defendants or just Royal-Prudential. Even Rule 8(a) pleading requires plaintiffs to identify the specific defendant charged with committing a particular predicate act, rather than collectivizing a group of defendants as plaintiffs have done here.[FN7]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                     Page 12
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

### C. COMMERCIAL MOVERS DEFENDANTS

#### 1. *Mail and Wire Fraud*

**\*16** The Commercial Movers Defendants and Young are alleged to constitute an association-in-fact "enterprise" under 18 U.S.C. § 1961(4). Complaint at ¶ 50. The Complaint sets forth allegations of "Racketeering Acts" committed by Commercial Movers Defendants at ¶ ¶ 55(a)-(m). In furtherance of the allegedly fraudulent scheme, the Complaint alleges that Young and the "Commercial Movers Defendants" caused the invoices, checks and letters listed in ¶ 55(ab) to be either mailed or transmitted by interstate wires.

In evaluating whether the mail and wire fraud claims comply with Rule 9(b)' s pleading requirements, I note as an initial matter that it is questionable whether plaintiffs have sufficiently pleaded the fraudulent scheme by the Commercial Movers Defendants. With respect to business transactions entered into with Merrill Lynch, the Complaint offers only conclusory assertions that the "Vendor Defendants ... sought and received lucrative contracts from Merrill Lynch to furnish goods, labor or services in connection with the construction and maintenance of Merrill Lynch facilities," and that the Vendor Defendants paid bribes "in return for obtaining construction and service contracts from Merrill Lynch." Complaint at ¶ ¶ 33, 37. The Complaint further alludes to general business dealings between Merrill Lynch and two of the Commercial Movers Defendants by identifying certain invoices, checks and letters in the list of communications found at ¶ 55(ab). Despite these vague allegations, however, no specific contract or transaction with any one of the individual Commercial Movers Defendants during the period of the alleged bribery is identified in the Complaint.

This failure is fatal to the fraudulent concealment claim in view of the fact that a duty to disclose giving rise to a fraudulent concealment claim under New York law can occur in the context of concealment of superior knowledge by one party to a business *transaction.* While the sweeping allegations in the Complaint lead the reader to infer that business negotiations occurred between Merrill Lynch and the Commercial Movers Defendants during the course of the bribery, that type of pleading does not survive Rule 9(b) scrutiny. Moreover, this allegation is not sort of allegation that may be properly asserted upon information and belief, as Merrill Lynch has

done here. The existence of contracts or transactions as to which Merrill Lynch was a party is just the sort of information which should clearly be within plaintiffs' own knowledge.[FN8]

Yet, regardless of whether the Complaint sufficiently pleads the fraudulent scheme, the mail and wire fraud claims against the moving Commercial Movers Defendants still fail. These claims suffer from essentially the same defects as the claims against Silverman, 1029 East Main Street and World-Wide. The claims of mail and wire fraud are deficient in two respects. As against State Wide and Supreme Coach, the Complaint does not allege with the specificity required by Rule 9(b) any acts of communication by mail or by interstate wires in furtherance of the fraudulent scheme.

**\*17** As noted above, the essence of Rule 9(b) is that each defendant be advised of the fraud claims against it. Yet, the Complaint cites no specific mailing or interstate wire communication made or caused to be made by State Wide or Supreme Coach. Of the listed communications, not one was made to or by either of these defendants. The conclusory allegation that "the Commercial Movers Defendants" caused the listed communications to be made impermissibly lumps the defendants together and does not pass Rule 9(b) muster. *See Mills v. Polar Molecular,* 12 F.3d 1170, 1175 (2d Cir.1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.' ") It wholly fails to connect any of the communications to either of these participants in the alleged scheme. Further, without revealing the contents of the communications allegedly made by the listed third parties, there is no indication that the communications were the reasonably foreseen results of the allegedly fraudulent acts of State Wide or Supreme Coach. *See United States v. Bortnovsky,* 879 F.2d 30, 36 (2d Cir.1989).

As to Luchnick and Commercial Movers, the Complaint does not allege with sufficient particularity their participation in the fraudulent scheme. Although the list of communications does identify specific communications made by or sent to Luchnick and Commercial Movers, neither Luchnick nor Commercial Movers is connected with Rule 9(b) specificity to the fraudulent scheme. The claim fails as to Luchnick for the substantially the same reasons it fails as to Silverman. The fact that Luchnick conducted business with Merrill Lynch while the alleged bribes were being made might be sufficient to connect Luchnick to the fraudulent concealment if his

Not Reported in F.Supp.                                                                                                Page 13
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

involvement in the bribery were specifically alleged. However, as the Complaint stands, this connection is simply not alleged except in an impermissible, conclusory fashion. The Complaint does not allege that Luchnick made a particular bribe, it merely states that Luchnick "authorized and participated in the unlawful acts alleged in this complaint." Complaint at ¶ 34. This nebulous allegation which does not particularize which actions Luchnick authorized or offer facts to support his specific involvement in those actions is exactly the sort of pleading which is prohibited by Rule 9(b). Without allegations connecting Luchnick to the fraud, any mailings caused by him, which are innocent on their face and concededly do not contain misrepresentations, cannot be said to be mail fraud.

Similarly, the Complaint fails to allege that Commercial Movers made or participated in making a particular bribe. Nor does it allege facts showing that Commercial Movers knew of the bribes or participated in them. Without such allegations, Commercial Movers' involvement in the fraudulent scheme remains a mystery and the mail and wire fraud allegations do not comport with Rule 9(b)'s requirement of informing each defendant of the nature of his involvement in the fraud.

**\*18** Accordingly, the mail and wire fraud claims against all of the Commercial Movers Defendants are dismissed.

### 2. *Commercial Bribing*

The Complaint also charges all of the Commercial Movers Defendants with the commission of commercial bribing in the first degree in violation of N.Y.Penal Law § 180.03 (McKinney 1988).

The Commercial Movers Defendants assert that these allegations are not sufficiently particular and join in the Royal-Prudential Defendants' motion which argues that the failure to identify a particular contract unlawfully procured is fatal to these allegations. The commercial bribing claims against defendants State Wide and Supreme Coach survive this motion to dismiss. The Complaint alleges specific acts of bribery by each of these defendants in an amount greater than $1,000 and alleges harm to the plaintiff greater than $250. Complaint at ¶¶ 55(a)-(h), (1). These allegations are sufficient for the reasons discussed with respect to the Royal-Prudential Defendants, *supra*. As discussed above, I have determined that the failure to identify a particular

contract is not fatal to this claim. The commercial bribing claim against Luchnick also survives given the allegation that he authorized or participated in these acts. Complaint at ¶ 34. As discussed with respect to defendant Silverman, *supra,* this allegation survives the minimal notice pleading requirement of Rule 8(a).

By contrast, the commercial bribing claims against Commercial Movers fail to survive even the more lenient notice pleading requirement of Rule 8(a). Rule 8(a) requires that "actions brought against multiple defendants must clearly specify the claims with which each particular defendant is charged." C. Wright & A. Miller, *Federal Practice & Procedure* § 1248 at 226 (1969). However, there is no allegation in the Complaint that Commercial Movers made a particular bribe, nor is there an allegation that it "authorized" or "participated in" any of the alleged bribes. Without any allegation that Commercial Movers itself had some connection to the bribes alleged in the Complaint, I must conclude that plaintiffs have not complied with even the barest minimum requirements of Rule 8(a) pleading with respect to this allegation.

### 3. *Travel Act*

The Commercial Movers Defendants are alleged to have violated the Travel Act. The defendants[FN9] argue that the Travel Act claims must fail because the use of facilities in interstate commerce are not pleaded with the particularity required by Rule 9(b). The defendants also argue that because the bribery claims fail, and the Travel Act is derivative in nature, the Travel Act claims must fail as a result.

Having reviewed the Complaint, I conclude that the Travel Act claims are sufficiently pleaded against Luchnick. Defendants Turn Key and 11th Street are alleged to have provided payments to companies involved in building Young's Pennsylvania country home. Complaint at ¶¶ 55(i), (j), (k). Luchnick is alleged to have authorized or participated in those payments. Complaint at ¶ 34. The Complaint also alleges that the checks issued to these companies "crossed state lines in the process of collection." Complaint at ¶ 55(m). These allegations sufficiently assert violations of the Travel Act for the reasons discussed with respect to defendants World-Wide, 1029 East Main Street, and Alan Silverman.

**\*19** As against Supreme Coach, the Complaint also alleges a sufficient nexus between the acts of bribery

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 14
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

and the use of facilities in interstate commerce. Supreme Coach is alleged to have "provided Young with a corporate credit card on which Young charged personal expenses totalling approximately $39,850." Complaint at ¶ 55(a). The use of credit cards in connection with an unlawful activity can form the basis of a Travel Act conviction. *See United States v. Campione, 942 F.2d 429, 435 (7th Cir.1991)* (use of telephone to secure credit card authorization for prostitution payments facilitated the unlawful activity under Travel Act); *United States v. Muskovsky, 863 F.2d 1319, 1327 (7th Cir.)* (use of interstate telephone system to obtain credit card approvals significantly related to unlawful activities under Travel Act), *cert. denied, 489 U.S. 1067 (1988)*; *United States v. Walton, 633 F.Supp. 1353, 1355 (D.Minn.1986)* (payment for prostitution with credit cards whose receipts which were collected through interstate banking facilities constituted use of facility in interstate commerce under Travel Act). Here, the provision of a credit card for Young's use involves by its nature the use of facilities of interstate commerce. As the above cases recognize, credit card companies traditionally send bills through the mail and provide authorization for use through the use of the telephone. Accordingly, accepting as true the allegation that Supreme Coach provided Young with a credit card and that Young actually used it, the Complaint adequately implicates the use of facilities in interstate commerce.

The Travel Act allegations against State Wide, on the other hand, must be dismissed. None of the acts of bribery charged against State Wide are alleged to have an interstate connection. Payments were allegedly made for "insurance charges incurred by Young," and to "Chase Advantage Credit," "Norstar Bank of Commerce" and "Parr Furniture Corp." for Young's benefit. Complaint at ¶ 55(d), (e), (g). The Complaint also alleges that State Wide purchased a fur coat and provided limousine services for Young's benefit. Complaint at ¶ 55(c), (h). But, these payments on their face do not implicate the use of the mail or facilities in interstate commerce, nor does the Complaint allege facts showing that the mail or facilities in interstate commerce were used to further these benefits.[FN10] Young is a New York citizen, and State Wide is a New York company. Thus, these are not arguably benefits that would necessarily have to be transported across state lines. The Complaint does not allege that the listed companies were located in states outside of New York, or that the payments themselves were made through the mail or interstate wires. Nor does the Complaint allege whether "Chase Advantage Credit"

is a credit card, which might implicate the Travel Act, or some other entity. Accordingly, the Complaint fails to allege a connection between the alleged bribery by State Wide and interstate travel or use of the mail or facilities of interstate commerce and the Travel Act allegations against it will be dismissed.

**\*20** Finally, I agree with defendants' argument that because the Complaint fails to state a claim of commercial bribery against Commercial Movers, the Travel Act allegations against Commercial Movers must fail as well. Commercial bribery is the "unlawful activity" underlying the Complaint's allegation that the Commercial Movers violated the Travel Act. Since the Complaint wholly fails to establish the underlying "unlawful activity" with respect to Commercial Movers, it cannot establish that Commercial Movers used facilities in interstate commerce in relation to this activity.

### D. THE WERNER KREBS DEFENDANTS

The Werner Krebs Defendants, Young, Serino and Fraser are alleged to constitute an association-in-fact "enterprise" under § 1961(4). Complaint at ¶ 59. The Werner Krebs Defendants are charged with predicate acts of mail and wire fraud, commercial bribing and violations of the Travel Act. Like the other defendants, the Werner Krebs Defendants move to dismiss the RICO claims against them for failure to plead the predicate acts with particularity. In particular, the Werner Krebs Defendants contend that the Complaint's failure to distinguish between the four Werner Krebs Defendants in the allegations requires dismissal of the RICO claims.

I conclude that the substantive RICO claims must be dismissed against the Werner Krebs Defendants in their entirety. The allegations' impermissible failure to distinguish between the Werner Krebs Defendants mandates dismissal under both Rule 9(b) and Rule 8(a). The Complaint never specifically alleges the nature of each defendant's participation in the allegedly fraudulent scheme. It merely sets forth a number of so-called "Racketeering Acts" committed by the "Werner Krebs Defendants", Complaint at ¶¶ 65(a)-(g), and adds a catalog of communications by mail or interstate wires alleged to have been made or caused to be made by the "Werner Krebs Defendants." Complaint at ¶ 65(t). This manner of pleading is patently insufficient under Rule 9(b). "[W]here there are multiple defendants, plaintiffs must identify with particularity the roles of the

individual defendants in the mail fraud." *Landy v. Mitchell Petroleum Technology Corp., 734 F.Supp. 608, 623 (S.D.N.Y.1990)*; *see also* Mills *v. Polar Molecular, supra;* *Beauford v. Helmsley, 740 F.Supp. 201, 213 (S.D.N.Y.1990)* (RICO claim dismissed where fraudulent actions attributed to defendants only collectively). Identifying each defendant's role in the fraud is something the plaintiffs have neglected to do. The vice of group pleading in fraud cases is that no single defendant is sufficiently advised of which fraudulent act he is alleged to have committed, where, when, by what means and its specific form and content. In that respect the Complaint is deficient. This defect also warrants dismissal of the claim of common law fraud asserted against the Werner Krebs Defendants in Count Six of the Complaint.

The Complaint also fails to sufficiently plead the commercial bribing and Travel Act allegations.[FN11] As noted, Rule 8(a) requires that at a minimum, "actions brought against multiple defendants must clearly specify the claims with which each particular defendant is charged." *C. Wright & A. Miller, Federal Practice & Procedure § 1248 at 226 (1969)*. Additionally, it is fundamental that to state a claim under section 1962(c), a complaint must allege that *each* defendant personally committed or aided and abetted the commission of at least two predicate acts. *McLaughlin v. Anderson, 962 F.2d at 192;* *Morin v. Trupin,* 747 F.Supp. at 1064. Thus, at a minimum, the Complaint must specify which defendant is alleged to have committed a particular predicate act. But here, the Complaint never distinguishes between the three individuals and the one corporation who comprise the Werner Krebs Defendants. Instead, the Complaint merely alleges that "the Werner Krebs Defendants" committed several acts of bribery. Complaint at ¶ 65(a)-(e). No facts are stated which connect any particular defendant to any identified act of bribery. Without any allegation that each of the defendants had some connection to the bribes alleged in the Complaint, I must conclude that the predicate act allegations of bribery have not complied with the minimal requirements of Rule 8(a) pleading. As such, those allegations must be dismissed.

**\*21** Having dismissed the allegations of bribery, I must also dismiss the allegations of Travel Act violations. Commercial bribery is the "unlawful activity" underlying the Complaint's allegation that the Werner Krebs Defendants violated the Travel Act. Since the Complaint fails to establish the underlying "unlawful activity" with respect to each of these defendants, it follows that the Complaint fails

to establish a cognizable violation of the Travel Act.

E. SUSAN LAMONICA

The Complaint charges Lamonica with aiding and abetting the commission of the following three predicate acts by Young:
(1) The conduct of a financial transaction which involved the proceeds of unlawful activity in violation of 18 U.S.C. § 1956 "with knowledge that the transaction was designed to avoid a reporting requirement under federal law, by purchasing at three different New York area banks three certified bank checks, made payable to the builders of Defendant Young's Pennsylvania country home, for amounts of slightly less than $10,000 each." Complaint at ¶ ¶ 55(ac)(2), 75(r)(1);
(2) The obstruction of a criminal investigation in violation of 18 U.S.C. § 1510 by "sending $50,000 plus $8,625 in interest to Defendant World Wide Real Estate Consultants, which she characterized as the repayment of a 'loan.' " Complaint at ¶ 75(r)(2); and
(3) The solicitation and acceptance of a benefit from the Commercial Movers Defendants in violation of the mail and wire fraud statutes and N.Y.Penal Law § 180.08, "by accepting a 'no show' job as a 'consultant' from Defendant State Wide Enterprises, Inc. in which it was understood she would not be expected or required to render services." Complaint at ¶ 55(ac)(1).

"A defendant's aiding and abetting the commission of a predicate act [listed in Section 1961(1)(B) ] may constitute a predicate act itself." *United States v. Bonanno Organized Crime Family, 683 F.Supp. 1411, 1428 (E.D.N.Y.1988), aff'd, 879 F.2d 20 (2d Cir.1989).* In a civil RICO suit, the criminal standard has been applied in judging aiding and abetting liability. In *United States v. Local 560 of International Brotherhood, Inc., Etc., 780 F.2d 267, 284 (3d Cir.1985), cert. denied, 476 U.S. 1140 (1986),* the Third Circuit held that the district court was correct in applying the criminal test when judging aiding and abetting liability in a civil RICO suit.

Section 2(a) of Title 18 provides in pertinent part:
"(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal."

To convict a defendant for criminal aiding and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                         Page 16
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

abetting, " 'it is necessary that a defendant in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by action to make it succeed.' " *United States v. Ginsberg,* 758 F.2d 823, 832 (2d Cir.1985) (citing and quoting *Nye & Nissen Corp. v. United States,* 336 U.S. 613, 619 (1949)). Although an aider and abettor need not know all of the details of a crime in order to be convicted of aiding and abetting it, he must be shown to have known "the nature of the substantive offense he furthers or promotes." *United States v. Sigalow,* 812 F.2d 783, 786 (2d Cir.1987). In order to prove aider and abettor liability, the government must prove:**22** (1) commission of the underlying crime, (2) by a person other than the defendant, (3) a voluntary act or omission by the person charged as an aider and abettor, with (4) the specific intent that his act or omission bring about the underlying crime.

*United States v. Zambrano,* 776 F.2d 1091, 1097 (2d Cir.1985) (citation omitted).

Lamonica seeks to dismiss the RICO claims against her for failure to plead the aiding and abetting allegations against her with particularity. In response, plaintiffs argue that Rule 9(b) does not apply to the allegations against her because "the Complaint does not specifically allege that Lamonica aided and abetted Young's fraud." Plaintiffs' Memorandum at p. 46. I disagree with Lamonica's contention that all of the aiding and abetting claims must be pleaded under Rule 9(b) because her acts were committed "in order to aid and abet the primary fraud-the alleged bribery and kickback scheme." Reply Memorandum of Lamonica and Albert Young, Inc. at 4. To the contrary, regardless of the overall purpose of the scheme, Lamonica is not alleged to have aided and abetted the "fraudulent scheme." Instead, she is quite specifically alleged to have aided and abetted certain unlawful acts by Young, including commercial bribery, money laundering and obstruction of a criminal investigation. This being the case, I agree with plaintiffs' contention that Rule 9(b) does not govern the pleading of aiding and abetting these non-fraud predicate acts.[FN12]

The aiding and abetting allegations against Lamonica need not be dismissed. Since they are not based on fraud, they may be pleaded "upon information and belief," notwithstanding Lamonica's protestations to the contrary. The Complaint alleges that Lamonica knew of the underlying crimes and the criminal purpose of her acts. Lamonica cites no authority which requires an aiding and abetting allegation not

based upon fraud to allege a greater degree of detail than this.[FN13] Accordingly, the aiding and abetting claims against Lamonica will not be dismissed.

## F. ALBERT YOUNG

Without adding specific arguments of his own, Young joins in the motion of Lamonica and Albert Young, Inc., as well as the motions made by the other defendants. Counts One, Two and Three of the Complaint charge Young with violating 18 U.S.C. § 1962(c), alleging predicate acts of commercial bribe receiving; mail and wire fraud; money laundering in violation of 18 U.S.C. § 1956; violations of the Travel Act, and obstruction of a criminal investigation.

### 1. *Mail and Wire Fraud*

The allegations of mail and wire fraud against Young must be dismissed because they fail to withstand scrutiny under Rule 9(b). As noted above, plaintiffs' mail and wire fraud allegations are based on defendants' use of the mail and interstate wires in furtherance of a fraudulent scheme, not based on misrepresentations in the communications themselves. There can be no doubt that the fraudulent scheme is alleged with sufficient particularity. The fraudulent scheme undertaken by the Employee Defendants assertedly involved the failure to disclose their receipt of bribes in violation of their fiduciary duties to Merrill Lynch. *See* Plaintiffs' Memorandum at p. 15. An employee's active concealment of "information he has reason to believe material to the conduct of the employer's business," can constitute the basis of a mail fraud violation. *United States v. Barta,* 635 F.2d 999, 1007 (2d Cir.1980), *cert. denied,* 450 U.S. 998 (1981); *see also GLM Corp. v. Klein,* 665 F.Supp. 283, 286-87 (S.D.N.Y.1987) (complaint sufficiently alleged RICO predicate acts of mail and wire fraud against employees based on their failure to disclose material information to employer in violation of fiduciary duties). The Complaint alleges that Young was an employee of Merrill Lynch, owing fiduciary duties of full faith and loyalty. Complaint at ¶ 32. He is also alleged to have accepted numerous payments in various forms paid by Merrill Lynch vendors in order to influence his conduct in his employment with Merrill Lynch. Complaint at ¶ ¶ 55(n)-(y), 65(h)-(k), 75(i)-(l). His active concealment of such material information is also clearly alleged. In particular, Young is alleged to have falsely concealed

Not Reported in F.Supp.                                                                                    Page 17
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

his receipt of bribes and kickbacks from vendors on two disclosure questionnaires submitted to Merrill Lynch in 1987 and 1988. Complaint at ¶¶ 44(d), (e).

**\*23** However, in Counts One and Two, the Complaint entirely fails to connect his fraud to the use of the mails or interstate wires with sufficient particularity. In support of the mail and wire fraud claims against Young and the various other defendants, the Complaint alleges that Young caused certain communications to be sent through use of the mails or the interstate wires, including numerous communications identified in two separate lists.[FN14] *See* Complaint at ¶¶ 55(ab), 65(t). But, Rule 9(b) requires a level of specificity that is simply not achieved here. Aside from these vague intimations, the Complaint fails to allege the mailing or interstate wire transportation of any communication by Young. It also fails to allege facts showing the circumstances under which Young caused any of the listed communications to be transmitted by third parties. Furthermore, without a description of the contents of the communications, the Complaint does not allege that these were foreseeable uses of the mail or interstate wires by third parties resulting from his allegedly fraudulent scheme.

The list of communications contained in Count Three, however, does identify one letter allegedly forwarded, either through the mail or through interstate wires, by Louis J. Calastro, Executive Vice President, Royal Prudential, to Albert Young on January 10, 1986. While this allegation might sufficiently connect Young to a use of the mails or interstate wires, it completely fails to allege how this communication furthered the fraudulent scheme. The Complaint does not describe the contents of the letter or allege its purpose within the fraudulent scheme, a failure which is fatal to a mail fraud allegation. *See McLaughlin v. Anderson,* 962 F.2d at 191 (to satisfy Rule 9(b), complaint must identify the purpose of the mailing within the defendant's fraudulent scheme); *Sears v. Likens,* 912 F.2d 889, 893 (7th Cir.1990) (dismissing complaint which failed to allege how misrepresentations furthered fraudulent scheme). Accordingly, the allegation of mail fraud against Young contained in Count Three must also be dismissed.

### 2. *Commercial Bribery*

In Counts One, Two and Three, the Complaint charges Young with predicate acts of commercial

bribe receiving in the first degree in violation of N.Y. Penal Law § 180.08 (McKinney 1988), which prohibits an employee from "solicit[ing], accept[ing] or agree[ing] to accept any benefit from another person upon an agreement or understanding that such benefit will influence his conduct in relation to his employer's or principal's affairs." The value of the benefit must be greater than $1,000 and the value of the economic harm to the employer must be greater than $250.

Counts One, Two and Three each contain specific, detailed allegations of numerous benefits received by Young, each in an amount greater than $1,000. The Complaint also alleges that each of these bribes caused harm to Merrill Lynch in an amount greater than $250. Complaint at ¶¶ 55(y), 65(k), 75(g). As fully explained above in relation to the Vendor Defendants, the allegations of economic damage to Merrill Lynch in an amount greater than $250 are sufficient to allege damage to Merrill Lynch without identifying a particular contract which was unlawfully awarded. Accordingly, the commercial bribe receiving allegations against Young will not be dismissed.

### 3. *Travel Act*

**\*24** The Travel Act allegations against Young also survive his motion to dismiss. The Complaint alleges that Young was given the use of a corporate credit card by one of the Vendor Defendants and that numerous payments by the Vendor Defendants were made for Young's benefit to companies involved in building his Pennsylvania country home. These allegations present a sufficient nexus between his unlawful receipt of bribes and interstate travel or the use of facilities in interstate commerce. In particular, as to the provision of the credit card, the allegations suffice for the reasons they survive against Supreme Coach, discussed *supra.* As to the numerous payments made to companies involved in building his Pennsylvania country home, these allegations sufficiently allege Travel Act violations against Young for the reasons they survive against World-Wide, Silverman, 1029 East Main Street and Luchnick, also discussed above.

### 4. *18 U.S.C. § 1503*

The Complaint charges Young with creating "bogus documentation" designed to disguise payments made to Young as loans in violation of 18 U.S.C. § 1503.

Not Reported in F.Supp.                                                                                                          Page 18
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Complaint at ¶ 75(m). The allegation clearly states that Young created this "bogus documentation." Thus, it does not suffer from the collectivization problem that plagues the corresponding section 1503 allegation against the Royal Prudential Defendants. Although the Complaint does not identify the specific nature of the "bogus documentation," I do not understand Rule 8(a), which applies to this predicate act allegation, to require such specificity. The allegation comports with Rule 8(a)'s pleading requirements because it sets forth a clear statement of the substance of the actions undertaken by Young, the approximate time period in which the actions occurred, and the statute which he is alleged to have violated as a result of his actions. Thus, the allegation is adequately pleaded under Rule 8(a). Further details may be developed through discovery.

### 5. *Other Predicate Acts*

The Complaint also alleges against Young predicate acts of obstructing a criminal investigation in violation of 18 U.S.C. § 1510 and money laundering in violation of 18 U.S.C. § 1956. Complaint at ¶ ¶ 55(z), 65(m), 75(o) and (p). Young does not specifically address the sufficiency of these claims, and none of the motions to dismiss in which Young purports to join sets forth any argument germane to these particular allegations. Accordingly, not having been requested to address the sufficiency of these allegations, the Court will let them stand.

### G. ROBERT FRASER

The predicate act allegations against Fraser are contained in Count Two. Fraser is alleged to have violated the mail and wire fraud statutes, and N.Y. Penal Law § 180.08 by accepting payments from the Werner Krebs Defendants totalling $169,000 from 1986 to 1988. Complaint at ¶ 65(q). Fraser is also charged with violating the Travel Act in relation to his unlawful commercial bribe receiving. Complaint at ¶ 65(s). Fraser seeks to dismiss the RICO claims against him for failure to plead fraud with particularity under Rule 9(b).

### 1. *Mail and Wire Fraud*

**\*25** I conclude that the mail and wire fraud allegations against Fraser must be dismissed because the Complaint alleges no specific transmission by mail or by interstate wires directly or foreseeably

caused by Fraser in furtherance of the scheme. The catalog of identified communications contained in paragraph 65(t) contains not one communication which on its face implicates Fraser. Nor does the Complaint set forth facts showing the manner in which Fraser caused these communications to be transmitted by the third parties listed. The Complaint also lacks a description of the contents of any of the listed communications and therefore fails to allege that they were sent by third parties as a foreseeable result of Fraser's allegedly fraudulent conduct. Accordingly, the Complaint wholly fails to plead mail and wire fraud with particularity against Fraser and these predicate act allegations are dismissed.[FN15]

### 2. *Commercial Bribery*

Fraser contends that the allegation of commercial bribery is not pleaded with particularity because it fails to allege the specific details surrounding his alleged receipt of bribes. I reject this argument. As noted above, the pleading requirements of Rule 8(a), not Rule 9(b), apply to the predicate act allegations of commercial bribery. Analyzing the allegations under Rule 8(a), I conclude that they are sufficient. The Complaint sets forth the specific claim against Fraser, the conduct by Fraser giving rise to the claim, the source of the bribes, the approximate time period during which the bribery occurred and the approximate total amount of the payments. In light of these allegations, the commercial bribing allegation clearly complies with the simple notice pleading requirements of Rule 8(a).

### 3. *Travel Act*

Fraser neither specifically addresses the Travel Act allegations in his own motion, nor seeks to join the motion of any other defendant attacking the Travel Act allegations in the Complaint. Accordingly, as I am not requested to analyze the Travel Act allegations against Fraser, I will not evaluate their sufficiency.

### IV.

### RICO PATTERN AND CONSPIRACY

#### A. *Predicate Acts*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                      Page 19
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

In order to maintain a claim under section 1962(c), the complaint must allege that each defendant committed at least two predicate acts of racketeering activity. *H.J. Inc. v. Northwestern Bell Tel. Co.,* 109 S.Ct. 2893, 2899 (1989); *United States v. Alkins,* 925 F.2d 541, 551 (2d Cir.1991).     Having determined that certain predicate act allegations in the Complaint must be dismissed, the next step in my analysis is to determine whether the Complaint sufficiently alleges the commission of two or more predicate acts by each defendant, disregarding those allegations which have been dismissed.     *See generally LaRoe v. Elms Securities Corp.,* 700 F.Supp. 688, 695 (S.D.N.Y.1988) (where securities law claim was dismissed for insufficiency of pleading, it could not be considered a predicate act for RICO purposes).

**\*26** The Complaint alleges at least two predicate acts of racketeering against State Wide, Luchnick, Supreme Coach, 1029 East Main Street, Silverman, World-Wide, Fraser and Albert Young even after dismissal of the mail and wire fraud allegations against them.[FN16]     The Complaint also alleges that Lamonica aided and abetted the commission of at least two predicate acts.     Accordingly, the RICO claims against these defendants survive under this analysis.

All of the predicate act allegations against Commercial Movers, Werner Krebs, Inc., Werner Krebs, Bonanno and Kopf have been dismissed for insufficiency of pleading.     With respect to these defendants, therefore, the Complaint clearly fails to allege the requisite two predicate acts of racketeering activity and, as a result, the substantive RICO claims against these defendants must be dismissed.

As to Royal-Prudential, the only remaining predicate act allegation against it in the Complaint is the allegation that Royal-Prudential violated N.Y. Penal Law § 180.03 by providing Young with the use of a rent-free penthouse duplex apartment from March 1986 through March 1987.     Despite the continuing nature of this benefit, in my view, its provision in violation of § 180.03 constitutes a single predicate act for RICO purposes.     Accordingly, having failed to allege the commission by Royal-Prudential of *at least* two predicate acts of racketeering, the Complaint's RICO claim against Royal Prudential must be dismissed.

B. *Pattern*

Alleging the commission of two predicate acts by a defendant is necessary but not sufficient to state a RICO claim.     The complaint must also allege that the predicate acts constitute a "pattern" of racketeering activity.     In *H.J. v. Northwestern Bell Telephone Co.,* 492 U.S. 229 (1989), the Supreme Court undertook to identify and define the ingredients and boundaries of a "pattern of racketeering activity."     Justice Brennan's opinion commanded only a 5-4 majority, but it represents the Court's most recent articulation of the governing principles.     *H.J.* holds that a "pattern of racketeering activity" requires the combination of predicate acts related to each other and continuity of conduct.     492 U.S. at 239.

As for relatedness, the *H.J.* majority derived from Title X of the Organized Crime Control Act of 1970, of which RICO formed Title IX, the rule that to be related, predicate acts must have "the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240.

However, the Court continued, the relatedness of racketeering activities is not sufficient to satisfy section 1962's "pattern" element.     "To establish a RICO pattern it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *Ibid.* (emphasis in original). As to continuity, the *H.J.* majority wrote:
**\*27** "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. *See Barticheck v. Fidelity Union Bank/First National State,* 832 F.2d 36, 39 (3d Cir.1987).     It is, in either case, centrally a temporal concept-and particularly so in the RICO context, where *what* must be continuous, RICO's predicate acts or offenses, and the *relationship* these predicates must bear one to another, are distinct requirements.     A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement:     Congress was concerned in RICO with long-term criminal conduct.     Often a RICO action will be brought before continuity can be established in this way.     In such cases, liability depends on whether the *threat* of continuity is demonstrated. *See* S.Rep. No. 91-617, at 158.

Not Reported in F.Supp.                                                                                                   Page 20
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

*Id.* at 241-42 (emphasis in original).

The civil complaint in *H.J.* alleged that at different times over the course of at least a six-year period telephone company officers and employees gave members of a state regulatory commission bribes in order to obtain approval of unfair and unreasonable utility rates. The Court noted plaintiff's "claim that the racketeering predicates occurred with some frequency at least over a six-year period, which *may* be sufficient to satisfy the continuity requirement." *Id.* at 250 (emphasis added). The case was remanded to the district court for further proceedings consistent with the Court's opinion.

In *Beauford v. Helmsley,* 865 F.2d 1386 (2d Cir.) (en banc), *vacated and remanded,* 109 S.Ct. 3326, *original decision adhered to,* 893 F.2d 1433 (2d Cir.), *cert. denied,* 493 U.S. 992 (1989), plaintiffs alleged that defendants made a number of material misrepresentations in an offering plan for the conversion of an apartment complex into condominiums. The plan was mailed to more than 800 addresses. The complaint alleged additional facts sufficient to justify an inference that defendants would in the future be making further, equally fraudulent amendments to the offering plan. The Second Circuit held these allegations sufficient to describe a pattern of racketeering activity. The en banc majority and the three dissenting judges in *Beauford* agreed that the concepts of "relatedness" and "continuity" were crucial; and, in a departure from prior Second Circuit authority, observed that "our analysis of relatedness and continuity has shifted from the enterprise element to the pattern element." 865 F.2d at 1391. That shift presaged the Supreme Court's analysis in *H.J.,* which had not yet been decided.

In *Beauford* the Second Circuit defined Congress' goal in defining "pattern of racketeering activity" as to exclude from the reach of RICO criminal acts that were merely "isolated" or "sporadic." Consequently, Judge Kearse wrote for the en banc majority, "we must determine whether two or more acts of racketeering activity have sufficient interrelationship and whether there is sufficient continuity or threat of continuity to constitute such a pattern." *Id.* at 1391. The relatedness of acts may be shown by "their temporal proximity, or common goals, or similarity of methods, or repetitions." *United States v. Indelicato,* 865 F.2d 1370, 1382 (2d Cir.1989), *cert. denied,* 491 U.S. 907 (1989). "[W]here the organization is legitimate, if the racketeering acts were performed at the behest of an organized crime

group, that fact would tend to belie any notion that the racketeering acts were sporadic or isolated." *Id.* at 1384.

**\*28** The complaint in *Beauford* was legally sufficient for these reasons:
"In sum, read with ordinary charity, the amended complaint alleged that on each of several occasions defendant had mailed fraudulent documents to thousands of persons and that there was reason to believe that similarly fraudulent mailings would be made over an additional period of years. These allegations sufficed to set forth acts that cannot be deemed, as a matter of law, isolated or sporadic."

*Id.* at 1392.

The Supreme Court granted *certiorari* in *Beauford,* vacated the Second Circuit's judgement, and remanded the case to that court for further consideration in light of *H.J.* 492 U.S. 914 (1989). The Second Circuit gave *Beauford* that mandated further consideration and adhered to its en banc decision. 893 F.2d 1433 (2d Cir.1989).

*See also Jacobson v. Cooper,* 882 F.2d 717, 720 (2d Cir.1989) (continuity is sufficiently alleged where related predicated extend over "a matter of years"); *Official Publications, Inc. v. Kable News Co.,* 884 F.2d 664, 666-68 (2d Cir.1989) (allegedly fraudulent acts occurred "pursuant to a longstanding contract over a considerable period of time"; contracts in suit were dated 1974 and 1980); *Procter & Gamble v. Big Apple Industrial Buildings, Inc.,* 879 F.2d 10, 18 (2d Cir.1989) ("the complaint must provide allegations sufficient to infer that an enterprise exists, and that the acts of racketeering were neither isolated nor sporadic"; allegations sufficient which claimed "that defendants engaged in at least five separate fraudulent schemes"), *cert. denied,* 493 U.S. 1022 (1990).

In *Creative Bath Products, Inc. v. Connecticut General Life Insurance Co.,* 837 F.2d 561, 564 (2d Cir.1988), *cert. denied,* 492 U.S. 918 (1989), the Second Circuit followed its own precedent and anticipated *H.J.* in holding that the plaintiffs failed to allege RICO "continuity" where their case "consisted of the proposition that defendants had made three fraudulent representations in pursuit of a single short-lived goal," *i.e.,* the sale of four insurance policies on the lives of two individuals. *See also United States v. Gelb,* 881 F.2d 1155, 1163-64 (2d Cir.) ("The requirement of continuity is satisfied; the schemes were conducted for about five years, and but for their

Not Reported in F.Supp.                                                                                                  Page 21
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

discovery surely would have continued"), *cert. denied,* 493 U.S. 944 (1989); *Executive Photo, Inc. v. Norrell,* 765 F.Supp. 844, 846 (S.D.N.Y.1991) (" 'Congress was concerned in RICO with long-term criminal conduct.... Plaintiff's allegations of a scheme extending over more than two and one-half years ... fall within the scope of that concern' "; citing and quoting *H.J.* at 492 U.S. 242).

The Court must consider whether the Complaint adequately alleges a pattern of racketeering acts as to each defendant. *See e.g. Morin v. Trupin, supra,* at 1065 (by using pleadings that do not differentiate between defendants, "plaintiffs neglect that the focus of § 1962(c) is on the individual patterns of racketeering activity engaged in by a defendant, rather than the collective activities of the members of the enterprise."); *Landy v. Mitchell Petroleum Technology Corp.,* 734 F.Supp. 608, 609 (S.D.N.Y.1990) (continuity sufficiently pleaded as to those defendants whose involvement was shown to extend over time, but not as to those whose role lasted only a few months).

**\*29** The moving defendants do not appear to challenge the relatedness element of the RICO pattern as pleaded in the case at bar. Instead, they argue that the Complaint fails to establish continuity. They contend that the Complaint alleges a closed scheme over a short period of time with no threat of continuing into the future. Plaintiffs respond that the Complaint clearly alleges closed-end continuity by alleging racketeering acts taking place over a period of several years in an effort to obtain numerous contracts with Merrill Lynch. Moreover, according to plaintiffs, defendants' attempts to conceal their unlawful payments establishes open-ended continuity; had the fraud not been discovered, there is no reason to believe that defendants would have terminated their conduct.

Of the moving defendants in the present case, allegations of at least two RICO predicate acts survive only as to State Wide, Supreme Coach, Luchnick, World-Wide, Silverman, 1029 East Main Street, Lamonica, Fraser, and Young. With respect to the allegations against World-Wide, I conclude that the Complaint does not allege closed-end continuity sufficient to satisfy the RICO statute as interpreted by the Supreme Court in *H.J.* World-Wide is alleged to have committed two predicate acts: violation of the Travel Act and violation of the New York commercial bribing statute. Both of these unlawful acts arise out of World-Wide's single payment to "Rick-Ba Builders" occurring on January

9, 1987. Complaint at ¶ 75(b). The Complaint does not allege whether World-Wide's acts constituting the violation of the Travel Act occurred on that same day or at a later date. Without any indication of when the interstate travel or use of facilities in interstate commerce occurred, it is impossible to discern whether the racketeering acts fall within a sufficiently long period of time to satisfy the continuity requirement. As it stands, the Complaint alleges racketeering activity on the part of World-Wide spanning the course of a single day, which patently fails to measure up to the Supreme Court's declaration that closed-end continuity requires, "related predicate acts extending over a substantial period of time." *H.J.* at 1392. The Complaint is equally deficient in allegations of open-ended continuity with respect to World-Wide. No threat of continuity is demonstrated by the pleading; there is no indication based on a single payment that World-Wide intended to continue unlawfully attempting to influence Young's conduct in awarding contracts in the future.

The Complaint does not contain the same deficiency with respect to its allegations against the remaining moving defendants. The predicate acts allegedly committed by Supreme Coach, Luchnick, State Wide, Silverman, 1029 East Main Street, Lamonica, Fraser and Young, are alleged to have occurred within a sufficiently long period of time to demonstrate closed-end continuity. Each of these defendants is alleged to have committed predicate racketeering acts over the course of approximately two years. Supreme Coach (whose activities Luchnick is alleged to have authorized and participated in) is alleged to have violated the New York commercial bribing statute and the Travel Act by providing Young with the use of a credit card, whose bills it paid, from 1985 to October 31, 1987; a period of approximately two years. State Wide is alleged to have committed at least seven separate acts of bribery from January, 1986 to 1988. 1029 East Main Street is alleged to have committed at least three acts of commercial bribery and accompanying Travel Act violations between 1986 and 1988. Alan Silverman is alleged to have participated in and authorized these unlawful acts. Fraser is alleged to have accepted payments in violation of N.Y. Penal Law § 180.08 and to have violated the Travel Act in connection with his acceptance of bribes from 1986 to 1988. Young is alleged to have committed at least nineteen separate violations of N.Y. Penal Law § 180.08, and numerous violations of the Travel Act, as well as money laundering, obstruction of a criminal investigation and obstruction of justice. The period

Case 7:04-cv-08223-KMK     Document 165-26     Filed 07/07/2006     Page 22 of 27

Not Reported in F.Supp.                                                                                        Page 22
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

of Young's commission of these racketeering acts spans approximately two years, from January, 1986 to 1988. Lastly, Lamonica's three instances of aiding and abetting racketeering acts occurred between approximately December, 1986 and December, 1988.

**\*30** These allegations demonstrate that the racketeering acts by each of those defendants occurred not within a short time frame, but within the relatively substantial period of approximately two years. This being so, continuity is properly alleged with regard to Supreme Coach, Luchnick, World-Wide, Silverman, 1029 East Main Street, Lamonica, Fraser and Young.[FN17]

### C. Conspiracy

Count Five asserts a RICO conspiracy claim under 18 U.S.C. § 1962(d) against all of the defendants. The moving defendants seek to dismiss the RICO conspiracy claim contending that the Complaint fails to allege any facts showing the existence of an agreement between the defendants or knowledge by each group of Vendor Defendants of the existence and participation in the conspiracy of the other vendor defendants. For the reasons discussed below, Count Five is dismissed.

Section 1962(d) of Title 18 makes it unlawful for any person to conspire to violate § 1962(a), § 1962(b), or § 1962(c). "The core of a RICO civil conspiracy is an agreement to commit predicate acts" in violation of one of the above sections. *Hecht v. Commerce Clearing House,* 897 F.2d 21, 25 (2d Cir.1990). A RICO conspiracy claim does not require an allegation that the defendant actually committed the substantive offenses, *United States v. Teitler,* 802 F.2d 606, 613 (2d Cir.1986). But, the complaint must allege that each defendant agreed to personally commit at least two predicate acts; it is not enough to allege that the defendant simply agreed to the commission of two or more predicate acts by co-conspirators. *United States v. Ruggiero,* 726 F.2d 913, 921 (2d Cir.), *cert. denied,* 469 U.S. 831 (1984). Furthermore, "the commission of the acts is distinct from an agreement to commit them, and a violation of § 1962(d) requires different proof than a violation of § 1962(c)." *United States v. Bonanno,* 683 F.Supp. 1411, 1440 (S.D.N.Y.1988), *aff'd,* 879 F.2d 20 (1989).

The Second Circuit has held in the context of a motion to dismiss that to state a claim under section 1962(d), a complaint must allege "facts implying an[

] agreement involving each of the defendants to commit at least two predicate acts." *Hecht* at 25. Thus, even though the pleading requirements of Rule 8(a) apply to conspiracy claims, except to the extent the claim relies on an underlying allegation of fraud, the complaint must allege "some factual basis for a finding of a conscious agreement among the defendants." *Hecht* at 26 n. 4 Accordingly, numerous district courts within this circuit have dismissed conclusory allegations of agreement as insufficient to state a RICO conspiracy claim. *See e.g. Giuliano v. Everything Yogurt, Inc.,* 819 F.Supp. 240, 249 (E.D.N.Y.1993) (complaint failed to state RICO conspiracy claim because, "the complaint-wordy as it is-does not supply any facts to buttress its 'barebones' allegation that [two of the defendants] or any other person agreed to commit any predicate acts of mail or wire fraud"); *Connolly v. Havens,* 763 F.Supp. 6, 14 (S.D.N.Y.1991) ("conclusory allegations parroting the language of [§ 1962(d) ]" were insufficient under Rule 8(a)); *Laverpool v. New York City Transit Authority,* 760 F.Supp. 1046, 1060 (E.D.N.Y.1991) (RICO conspiracy claim dismissed because complaint set forth no specific allegation of agreement); *Morin v. Trupin,* 711 F.Supp. 97, 111 (S.D.N.Y.1989) (conclusory allegation that defendants conspired together insufficient to state claim for RICO conspiracy).

**\*31** The Complaint at bar alleges that all defendants "knowingly agreed to commit the [acts listed in Counts One through Four] in violation of New York Penal Law § 180.03, New York Penal Law § 180.08, 18 U.S.C. § 1952(a), 18 U.S.C. § 1341 and 18 U.S.C. § 1343." [FN18] Complaint at ¶ 88. Plaintiffs maintain that the conspiracy presents a "wheel-spoke conspiracy" in which "[t]he individual criminal transactions involving the vendor defendants are the 'spokes' linked together by Young and perhaps other Merrill Lynch employees who participated in all transactions as the 'hub' or the 'wheel.' " Plaintiffs' Memorandum at p. 54. To allege a wheel and spoke conspiracy, it is not necessary to allege that the conspirators knew the identities of all the other conspirators. *United States v. Maldonado-Rivera,* 922 F.2d 934, 963 (2d Cir.1990), *cert. denied,* 111 S.Ct. 2811 (1991). Rather, the complaint must allege that each of the charged conspirators "had sufficient awareness of the existence of other members of the alleged conspiracy to render them part of the 'rim of the wheel to enclose the spokes.' " *United States v. Zabare,* 871 F.2d 282, 287-88 (2d Cir.1989) (quoting *Kotteakos v. United States,* 328 U.S. 750 (1946)), *cert. denied,* 493 U.S. 856 (1989).

Not Reported in F.Supp.                                                                                                      Page 23
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Defendants contend that the Complaint fails to allege facts showing either agreement on the part of the defendants or their knowledge of the scope of the conspiracy "embracing the other defendants." Royal Prudential Defendants' Reply Memorandum at p. 39. I agree. As a preliminary matter, the Complaint at ¶ 88 sets forth only a conclusory allegation of agreement. In view of *Hecht* and its progeny, this sort of allegation is not sufficient to state a claim of RICO conspiracy. Moreover, while many of the allegations in the Complaint sufficiently allege that certain individual defendants committed certain predicate acts, the Complaint fails to allege the additional facts required for a conspiracy claim. It alleges no facts showing that defendants by their words or actions, manifested a conscious agreement to commit predicate acts or showing knowledge by each of the defendants of the existence of the other spokes of the wheel.

According to plaintiffs, the allegation that the Werner Krebs Defendants and the Commercial Movers Defendants formulated a "phony invoicing scheme" to disguise payments to Young shows the requisite agreement with respect to at least these two groups of defendants. Plaintiffs' Memorandum at 55-56. These allegations, however, are insufficient to undergird the conspiracy claim for two reasons. First, the allegation impermissibly collectivizes the defendants. Grouping defendants is no more permissible in a RICO conspiracy claim, which must allege that *each* defendant agreed to commit at least two predicate acts, as it is in a substantive RICO claim. In addition, since the predicate act allegations against the Werner Krebs defendants have been dismissed for insufficiency of pleading, the conspiracy claim against them must be dismissed as well. *See e.g. McLoughlin v. Altman,* No. 92 Civ. 8106, 1993 WL 362407, at *5 (S.D.N.Y. September 13, 1993) (dismissal of section 1962(c) claim mandated dismissal of conspiracy claim "because latter claim relies on same allegations as section 1962(c) claim"); *Steco, Inc. v. S & T Mfg., Inc.,* 772 F.Supp. 1495, 1503 (E.D.Pa.1991) (holding that RICO conspiracy claim could not be maintained in absence of viable claim under sections 1962(a), (b), or (c)). Accordingly, the "phony invoicing scheme" allegation might tend to show that the Royal-Prudential Defendants collaborated with the Werner Krebs Defendants, but because the Werner Krebs Defendants are not adequately alleged to be co-conspirators, the allegation cannot support an inference that the Royal-Prudential Defendants had knowledge of the existence of other members of the conspiracy.

**\*32** Plaintiffs also argue that the fact that many of the defendants made payments to contractors building Young's Pennsylvania country home shows "commonality of bribes to the same recipients for the same purpose [which] further supports the inference that the vendors knew or should have known of the other spoke participants." Plaintiffs' Memorandum at p. 56. This contention is simply untenable. With the exception of "Rick-Ba Builders" to whom only World Wide is alleged to have made a payment, none of the "companies" is identified. Thus, there is no indication in the Complaint that the payments were made to "the same recipients"; the payments could have been made to numerous different and unrelated companies involved in building the house. Contrary to plaintiffs' assertion, the fact that companies to which payments were made may all have been involved in building Young's Pennsylvania home does not readily show that the defendants knew or should have known of the other spoke participants. At most, this fact supports an inference that Young conveyed to those defendants a desire to have the illicit payments applied to one particular endeavor.

Plaintiffs finally note that the Complaint alleges that each group of Vendor Defendants is involved in a distinct area of business; construction, cleaning services, commercial moving and electrical contracting. Plaintiff urges that this fact supports an inference of agreement among the defendants to commit predicate acts to further their scheme of unlawfully obtaining contracts. According to plaintiffs, the fact that they did not have to compete for business permits an inference that they agreed to engage collectively in the illicit scheme. This fact similarly fails to give rise to a sufficient inference of knowledge or agreement by any of the defendants. I first note that the Complaint nowhere alleges that the defendants did not compete among themselves for Merrill Lynch's business. However, even if this lack of competition were alleged, this fact still fails to give rise to a sufficient inference of knowledge or agreement by any of the defendants. Declaring the nature of the business in which the vendors were involved simply provides a description of the defendants, not an allegation of actions, statements or other facts which would show, even in the most tangential sense, that each group of defendants was aware that other spokes of the wheel existed or a *conscious manifestation* of agreement among the defendants to commit predicate acts toward the achievement of a common goal.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                      Page 24
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Thus, the RICO conspiracy claim must be dismissed in its entirety. Aside from the facts identified by plaintiffs, which do not support the inference of agreement, plaintiffs identify and I can find, no facts which show the manifestation of agreement, consistent with Second Circuit precedent. Therefore, agreement, which is "[t]he essence of any conspiracy," *United States v. Maldonado-Rivera*, 922 F.2d 934, 963 (2d Cir.1990), has not been sufficiently alleged as to any defendant. Nor has the Complaint sufficiently alleged the existence of a rim encircling the spokes of the wheel.

**\*33** Additionally, as noted above, a second reason mandates dismissal of the conspiracy claim against Commercial Movers, Royal-Prudential, World-Wide and each of the Werner Krebs Defendants. The substantive RICO claim against each of these defendants has been dismissed for failure to properly plead the predicate act allegations. Accordingly, the allegations against them fail to comply with the Second Circuit's requirement that a RICO conspiracy claim allege each defendant's personal agreement to commit two or more predicate acts; as such, they must be dismissed.[FN19]

## VI

## CONCLUSION

For the foregoing reasons the defendants' motions to dismiss the Complaint are granted in part and denied in part.

I decline to abstain from exercising jurisdiction over the claims against the Royal-Prudential Defendants. The Complaint's mail and wire fraud predicate act allegations are dismissed as to each moving defendant. The Travel Act allegations are dismissed against Royal-Prudential, State Wide, Commercial Movers and the Werner Krebs Defendants. The Obstruction of Justice allegation is dismissed against all Royal-Prudential Defendants. Count One of the Complaint is dismissed against Commercial Movers. Count Two is dismissed against Werner Krebs, Inc, Werner Krebs, Valerio Bonanno and Benjamin Kopf. Count Three is dismissed as against Royal-Prudential and World-Wide.[FN20] Count Five is dismissed in its entirety. Count Six is dismissed against the Commercial Movers Defendants, Walter Krebs Defendants and the Royal-Prudential Defendants.

As to all the claims dismissed as the result of this

Opinion, plaintiffs are given leave to replead, if they can do so consistent with the requirements of Rule 11. Plaintiffs may file an amended complaint consonant with this Opinion and Order, within forty-five (45) days of the date of this Opinion and Order.

If plaintiffs cannot replead viable federal claims against Werner Krebs, Inc., Werner Krebs, Bonanno, Kopf, Royal-Prudential and World-Wide, then the state and common law claims asserted against those defendants under the doctrine of pendent jurisdiction will be dismissed without prejudice. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

The parties are directed to attend a status conference in Room 307 at 3:00 p.m. on June 24, 1994.

SO ORDERED.

FN1. The law governing violations of the mail fraud statute is equally applicable to the wire fraud statute. *See Carpenter v. United States*, 484 U.S. 19, 25 n. 6 (1987) (dictum); *Federal Paper Board Co. v. Giacinto*, 693 F.Supp. 1376, 1391 (D.Conn.1988).

FN2. Defendants argue that the claims of wire fraud must be dismissed because the Complaint does not allege the specific use of interstate wires. This argument appears to have some merit. *See LaRoe v. Elms Security*, 700 F.Supp. 688, 695 (S.D.N.Y.1988) (merely alluding to the use of the mails or wires is insufficient-the pleadings must explicitly set forth that information was in fact received through the mails or over the wires). The Complaint never explicitly states which communications occurred through use of interstate wires. Nonetheless, with the view I take of the sufficiency of the mail and wire fraud allegations, I need not reach this argument.

FN3. Defendants mistakenly assume that plaintiffs' cause of action fails because no fiduciary relationship is alleged. As is obvious from this discussion, a claim for fraudulent concealment does not necessarily turn upon the existence of a fiduciary duty owed by the defendant. Rather, the Second Circuit has recognized that "New York law recognizes a duty to disclose, absent any

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 25
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

fiduciary relationship, when one party has superior knowledge not readily available to the other party." *Ceribelli v. Elghanayan, 990 F.2d 62, 64 (2d Cir.1993)* (citation omitted).

FN4. Given the inadequate pleading under Rule 9(b) of the fraudulent concealment scheme based on common law fraud, the common law fraud claim asserted in Count Six against the Royal-Prudential Defendants is also dismissed.

FN5. Even if any of the actual bribes alleged to have been made by these defendants could arguably have been made through use of the mails or interstate wires, such an argument misses the essence of the fraudulent scheme. As I understand plaintiffs' Complaint, the fraudulent scheme was allegedly the *concealment* of the bribes while conducting transactions with Merrill Lynch-not the acts of bribery themselves.

FN6. Plaintiff's assert entitlement to the legal presumption, applied to common law bribery claims, that "[i]f ... a vendor bribes a purchaser's agent it must be assumed that the purchase price is loaded by the amount of the bribes." *Donemar, Inc. v. Molloy, 252 N.Y. 360, 365 (1930).* Defendants argue that this presumption cannot apply to satisfy the statutory requirement under N.Y. Penal § 180.03, but do not draw my attention to precedent supporting this assertion. Without precedent requiring a contrary result, I am not persuaded to consider the presumption inapplicable, at least at the pleading stage.

FN7. With the view I take of these allegations, I need not reach the question of whether the Complaint adequately alleges harm to Merrill Lynch as a result of the alleged violation of this section.

FN8. Given the inadequate pleading under Rule 9(b) of the fraudulent concealment scheme based on common law fraud, the common law fraud claim asserted in Count Six against the Commercial Movers Defendants is also dismissed.

FN9. The Royal-Prudential Defendants' motion is the only motion which specifically challenges the Travel Act claims. Although the Commercial Movers Defendants do not include this specific argument in their motion, they join in the Royal Prudential Defendants' motion. Accordingly, I believe it is appropriate to consider the argument as it relates to their claims.

FN10. The Complaint's allegation that checks paid to companies involved in building Young's Pennsylvania home crossed state lines do not apply to State Wide because State Wide is not alleged to have issued checks to those companies. Nor does the Complaint's allegation that the Commercial Movers Defendants "render[ed] phony invoices to defendant Werner Krebs," Complaint at ¶ 55(m), cure the deficient allegations. The "phony invoices" are not alleged to have crossed state lines or to have been sent by mail or through use of facilities in interstate commerce.

FN11. Although defendants argue that these claims fail to comply with Rule 9(b)'s particularity requirements, I have already determined that the pleading of these claims are governed by Rule 8(a).

FN12. Although it does not specifically allege that Lamonica *aided and abetted* fraud, the Complaint appears to charge Lamonica with mail and wire fraud. Paragraph 55(ac)(1) of the Complaint clearly states that "Defendant Lamonica in violation of ... 18 U.S.C. § § 1341 and 1343 (mail and wire fraud) ... aided and abetted Defendant Young's solicitation and acceptance of a benefit from the Commercial Movers Defendants." To the extent that a mail or wire fraud allegation is made against Lamonica, it must be dismissed because the Complaint alleges no specific use by Lamonica of the mails or the interstate wires.

FN13. Even if Rule 9(b) were to apply here, these allegations would suffice because the facts alleged in the Complaint give rise to a strong inference that Lamonica possessed the requisite knowledge and intent. She is alleged to have accepted payment for a job which required no work on her part. She is also alleged to have, at the behest of her husband, purchased three checks at three

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK     Document 165-26     Filed 07/07/2006     Page 26 of 27

Not Reported in F.Supp.                                                                                                    Page 26
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

separate banks in an amount under $10,000, all in one day. These facts strongly infer that Lamonica had knowledge of the underlying criminal activity by Young.

FN14. There is no allegation that the disclosure questionnaire, in which Young allegedly concealed his acceptance of bribes, was relayed to Merrill Lynch through the use of the mails or the interstate wires. Moreover, although the Complaint alleges that Young received a check made payable to T & T Consultants which was forwarded to a "secret Bahamian bank account," Complaint at 65(j), it wholly fails to specifically allege the use of the mails or interstate wires in connection with this transfer. It merely alleges that the check was "sent."

FN15. The claim of common law fraud asserted against Fraser in Count Seven of the Complaint will not be dismissed as urged. As discussed with respect to defendant Young, the Complaint sufficiently pleads the fraudulent concealment scheme against Fraser. Fraser is alleged to have been an employee of Merrill Lynch owing the fiduciary duties of full faith and loyalty. He is also alleged to have accepted bribes while an employee in order to influence his conduct in his employment. He is alleged to have actively concealed that material information by failing to reveal his receipt of bribes and kickbacks from vendors in two disclosure questionnaires submitted to Merrill Lynch in 1988 and 1989. Complaint at ¶ ¶ 44(j), (k).

FN16. With respect to Supreme Coach, World-Wide and Fraser, the commercial bribing and Travel Act violations are properly counted, in my estimation, as two separate predicate acts.

FN17. Taking the view that continuity cannot be established if the predicate acts were aimed at obtaining one single contract, defendants contend that because the Complaint fails to identify the particular contracts involved, no pattern has been established. I disagree. It is true that the Complaint does not identify any particular contract the defendants obtained or sought to obtain, through unlawful means or

otherwise. But, given the rather lengthy period of time during which the alleged racketeering acts took place in this case, I do not agree that the Complaint merely alleges, as defendants argue, a "single, short-lived goal" of the type involved in *Biddle Sawyer Corp. v. Charlit Chemical Corp.,* No. 89 Civ. 5279, 1991 WL 60369, 1991 U.S.Dist. LEXIS 4599 (S.D.N.Y. April 2, 1991), a case upon which defendants rely. Unlike the case at bar, *Biddle Sawyer,* in which this Court dismissed the RICO claims on the basis of lack of continuity, involved allegedly fraudulent conduct occurring over only a three-month period. Thus, *Biddle Sawyer* does not suggest that lack of continuity should be found here, despite the failure to identify a particular contract.

FN18. The Complaint alleges that the defendants conspired to violate 18 U.S.C. § § 1962(a) and (b), in violation of 18 U.S.C. § 1962(d). Yet, as defendants note, there are no allegations in the Complaint that defendants violated subsections (a) and (b) of section 1962. Plaintiffs admit that the Complaint's citation of those subsections is a typographical error; plaintiffs intended to allege a conspiracy to violate section 1962(c). Plaintiffs' Memorandum at p. 59 n. 14. Given that the Complaint is replete with allegations of substantive violations of § 1962(c) and that plaintiffs would undoubtedly amend the Complaint to effect the change, the Court accepts the reference to subsections (a) and (b) as an inadvertent mistake. Under these circumstances, I evaluate Count Five as though it asserts a conspiracy to violate § 1962(c).

FN19. A RICO conspiracy claim is also asserted against Albert Young, Inc., who moves to dismiss. The conspiracy claim must be dismissed against Albert Young, Inc. for the reasons stated above and also because the Complaint fails to sufficiently allege Albert Young Inc.'s agreement to *personally* participate in two or more predicate acts. The Complaint alleges no substantive RICO claim against Albert Young, Inc. The only allegation in the Complaint which could conceivably be construed as a predicate act committed or agreed to be committed by Albert Young, Inc. is the assertion that "Young directed

Not Reported in F.Supp.                                                                                           Page 27
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

several of the Vendor Defendants to make payments of the bribes and kickbacks directly to contractors and vendors who constructed the home or to T & T Consultants Ltd. or to Albert Young, Inc." Complaint at ¶ 125.    To the extent the passive receipt of such payments constitutes racketeering activity under § 1961(1), the Complaint fails to allege the frequency of this activity.    Accordingly, it is impossible to discern whether two or more predicate acts of racketeering activity are alleged. Therefore, there is no adequate allegation of an agreement to personally commit *two or more predicate acts* on the part of Albert Young, Inc.

FN20. An issue which was not addressed in the motions and which remains to be decided, is the effect of the dismissal of the substantive RICO claims against one or more of the defendants in a particular count of the Complaint on the enterprise of which the dismissed defendant is alleged to be a part.

S.D.N.Y.,1994.
Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young
Not Reported in F.Supp., 1994 WL 88129 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:91cv02923 (Docket) (Apr. 29, 1991)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.