Westlaw

Not Reported in F.Supp.2d                                                                     Page 1
Not Reported in F.Supp.2d, 2002 WL 31050846 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

▷
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
NETWORK ENTERPRISES, INC, Plaintiff,
v.
APBA OFFSHORE PRODUCTIONS, INC.
Defendant.
**No. 01 Civ. 11765(CSH).**

Sept. 12, 2002.

Cable television network sued corporation promoting power boat races, seeking damages for repudiation of obligation to pay for television programs. After discovering that corporation lacked assets, network sought leave to amend complaint to cover owner and limited liability company to which assets of corporation were allegedly transferred. The District Court, Haight, Senior Judge, held that: (1) network stated claim that owner was alter ego of corporation; (2) claim was not required to be pleaded with degree of particularity mandated for fraud claims; (3) fraudulent conveyance claim was pleaded with sufficient particularity; (4) fraudulent conveyance claim was not mere impermissible restatement of contract claim; and (5) interference with contractual relations and fraudulent conveyance claims were not stated against alleged transferee company.

Motion granted in part.

West Headnotes

**[1] Corporations 101 ⬿1.7(1)**

101 Corporations
    101I Incorporation and Organization
        101k1.7 Pleading and Procedure in Determining Corporate Entity
            101k1.7(1) k. In General. Most Cited Cases
Under New York law, cable television network stated claim that chief executive officer of corporation promoting power boat races was corporation's alter ego, allowing network to seek recovery of $400,000 as damages for corporation's breach of contract calling for televising of races; officer also controlled another company engaged in same business, wrote letter repudiating contract on other company's letterhead and otherwise failed to observe separateness of companies, and caused corporation to

become undercapitalized.

**[2] Federal Civil Procedure 170A ⬿636**

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak633 Certainty, Definiteness and Particularity
                170Ak636 k. Fraud, Mistake and Condition of Mind. Most Cited Cases
Claim that liability of officer, under New York law, for contract of his corporation, must be pleaded with degree of particularity required by federal procedure rule, did not apply to claim of alter ego liability, when fraud was not involved. Fed. Rules Civ. Proc., Rule 9(b).

**[3] Federal Civil Procedure 170A ⬿636**

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak633 Certainty, Definiteness and Particularity
                170Ak636 k. Fraud, Mistake and Condition of Mind. Most Cited Cases
Cable television network pleaded claim of fraudulent conveyance, under New York law, with degree of particularity mandated by federal procedure rule, by averring that corporation had sufficient assets to pay $350,000 for airing of television programs and had no assets year and one half later, and that owner of company used sham corporate form and disregarded separateness of companies he controlled; more precise pleading was neither possible nor required, as details would be exclusively within knowledge of owner. Fed. Rules Civ. Proc., Rule 9(b).

**[4] Corporations 101 ⬿547(4)**

101 Corporations
    101XII Insolvency and Receivers
        101k547 Remedies of Creditors in General
            101k547(4) k. As to Fraudulent or Preferential Transfers. Most Cited Cases
Cable television network stated claim under New York law that owner fraudulently transferred money out of corporation to avoid payment of charges for airing of television program, despite contention that fraud claim was simply impermissible restatement of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

breach of contract claim; allegedly fraudulent movement of funds was issue apart from any involving contract.

**[5] Limited Liability Companies 241E ⚷ 31**

241E Limited Liability Companies
    241Ek31 k. Rights of Creditors. Most Cited Cases
        (Formerly 101k547(4))

**Torts 379 ⚷ 242**

379 Torts
    379III Tortious Interference
        379III(B) Business or Contractual Relations
            379III(B)2 Particular Cases
                379k242 k. Contracts in General. Most Cited Cases
        (Formerly 379k12)
Cable television network failed to state claim of interference with contractual relations or fraudulent conveyance, against limited liability company, through allegation that owner of company transferred to it funds from corporation he owned, to avoid paying damages arising from corporation's repudiation of contractual promise to pay for television program; more was required for liability than company's mere status as passive transferee.

MEMORANDUM OPINION AND ORDER
HAIGHT, Senior J.
**\*1** In this diversity action, plaintiff Network Enterprises, Inc. ("Network") alleges that defendant APBA Offshore Productions ("Offshore") breached a contract (the "Time Buy Agreement") which required Productions to purchase blocks of television programming time from the TNN network to air programs involving a series of power boat races that Offshore conducted and/or promoted.

Having been recently informed by Offshore's counsel that Offshore has no assets, plaintiff moves pursuant to Rules 15(a) and 21 of the Federal Rules of Civil Procedure for leave to file an amended complaint adding two new defendants, APBA-Offshore Power Boat Racing LLC ("LLC") and Michael D. Allweiss, Esq., the sole officer/director of both LLC and Offshore, and to assert an alter ego claim against Allweiss, a tortious interference with contract claim against LLC, and a fraudulent conveyance claim against both LLC and Allweiss. This opinion resolves that motion.

*FACTS*

According to the allegations in the complaint, Network and Offshore entered into the Time Buy Agreement on August 21, 2000. The agreement was signed on behalf of Offshore by Michael Allweiss, its Chairman and President. Pursuant to the agreement, Offshore was to purchase ten half-hour spots on TNN, which is operated by plaintiff, between September 30 and December 2, 2000 for a total fee of $350,000. TNN aired these 10 episodes and received the contract price from Offshore. The Time Buy Agreement contained a renewal option which allowed Offshore to purchase up to 13 additional episodes of programming from October 1, 2001 through December 31, 2001 at a fee of $40,000 per episode. According to the complaint, Offshore exercised this renewal option in a letter from Allweiss dated March 1, 2001 and then reneged on the deal through another letter from Allweiss dated September 21, 2001. The proposed Amended Complaint avers that the letter which constituted the breach was written on LLC, not Offshore, letterhead. The Time Buy Agreement contains a forum selection provision requiring all claims with respect to it to be brought in this jurisdiction. Plaintiff filed the instant complaint on December 21, 2001 seeking to recover more than $400,000 in damages from Offshore's alleged breach of contract and breach of its implied duty of good faith and fair dealing.

*DISCUSSION*

Fed.R.Civ.P. 21 provides that parties may be added "by order of the court on motion of any party ... on such terms as are just." In deciding whether joinder is appropriate under Rule 21, courts are guided by "the same standard of liberality afforded to motions to amend pleadings under Rule 15." *Momentum Luggage & Leisure Bags v. Jansport, Inc.,* No. 00 Civ. 7909(DLC), 2001 WL 58000, \*1 (S.D.N.Y. Jan.23, 2001)(internal quotations omitted). Rule 15(a) of the Federal Rules of Civil Procedure instructs that leave to amend "shall be freely given when justice so requires." But a district court's permission to amend a pleading is not automatic. "Although leave to amend shall be freely granted when justice requires, valid reasons for denying leave to amend include undue delay, bad faith, or futility of the amendment." *Mackensworth v. S.S. American Merchant,* 28 F.3d 246, 251 (2d Cir.1994) (citation omitted). Courts will not allow an amendment "when the proposed amendment is legally insufficient and it

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31050846 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

would be futile to grant leave to amend." 3 Moore's Federal Practice (3d ed.1997) § 15.15[3] at 15-48.

**\*2** In the case at bar, Offshore opposes the proposed amendment on futility grounds. An amendment is futile if it would not withstand a motion to dismiss. *Daugherty v. Town of North Hempstead Board of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir.2002). Offshore maintains that plaintiff will not be able to establish personal jurisdiction over Allweiss, a Florida domiciliary, and LLC, a Florida corporation, in this Court. Offshore argues that the forum selection clause in the Time Buy Agreement does not confer jurisdiction over them because they were not parties to that contract, and that neither has transacted business in New York sufficient to impose long-arm jurisdiction. Moreover, Offshore contends that the alter ego claim is meritless and the fraudulent conveyance and tortious interference with contract claims are not separately viable because they merely restate the breach of contract claim.

### A. *Alter Ego Claim Against Allweiss*

[1] Regardless of whether Allweiss has engaged in repeated contacts with New York sufficient to confer long-arm jurisdiction, as plaintiff argues, Allweiss is unquestionably subject to personal jurisdiction in this Court if he can be considered Offshore's "alter ego." When allegations are sufficient to disregard a corporation's identity and hold its control person liable for its actions, the control person is amenable to personal jurisdiction by imputation of the corporation's contacts with the forum. This precept is illustrated by *Eagle Transport Ltd., Inc. v. O'Connor,* 449 F.Supp. 58, 59-60 (S.D.N.Y.1978). The *Eagle* court denied the defendants' motion to dismiss based on lack of personal jurisdiction. In the court's view, the complaint's allegations laid a sufficient basis for a finding that the corporation which signed the charterparty at issue, negotiated in New York, was the defendant's alter ego. In that circumstance, the corporation's "contractual activities in New York" were "attributable to the defendants," because:
"the consequence of applying the alter ego doctrine is that the corporation and those who have controlled it without regard to its separate entity are treated as but one entity, and at least in the area of contracts, the acts of one are the acts of all."

*Id.* at 60 (quoting *Fisser v. International Bank,* 282 F.3d 231, 282 (2d Cir.1960)). The court concluded that, "[h]aving transacted business in New York through their alleged alter ego, the defendants are

amenable to suit here on claims arising from the transaction." *Id. See also* Toshiba International Corp. v. Fritz, 993 F.Supp. 571, 574 (S.D.Tex.1998)(resolution as to whether defendant was the alter ego of a company over whom jurisdiction was proper would determine whether the court also had jurisdiction over the defendant; "If alter ego status is found, EICS's contacts are also Fritz's contacts, and as there is no dispute regarding personal jurisdiction of EICS, there can be no dispute that the Court also has personal jurisdiction over Fritz.").

**\*3** In this case the existence of a viable alter ego claim necessarily determines a jurisdictional basis for suit over Allweiss. If Allweiss is the alter ego of Offshore, then all of Offshore's activities are imputed to him and he is bound by the forum selection clause in the Time Buy Agreement and all other aspects of it. Thus, if the alter ego theory survives dismissal, a jurisdictional basis for suit against Allweiss exists.

Because this is a diversity action the Court must apply the choice of law rules of the forum state. *Tri-State Employment Services v. Montbatten Surety Co., Inc.,* 295 F.3d 256, 260 (2d Cir.2002). In New York, the determination of whether to pierce the corporate veil is governed by the law of the company's state of incorporation. *See Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1456 (2d Cir.1995). In this case, because Offshore is a Florida corporation New York would apply Florida law to the alter ego analysis in the event of a conflict. However, as defendant concedes, the laws of New York and Florida governing the analysis are substantially the same. Defendants' Brief at 4. Since the consideration would be the same under either New York or Florida law, there is no true conflict and New York law will accordingly apply.

In order to pierce the corporate veil under New York law, a party must demonstrate that "(1) [the owner] ha[s] exercised such control that [the corporation] has become a mere instrumentality of the [owner], which is the real actor; (2) such control has been used to commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff." *Freeman v. Complex Computing Co., Inc.,* 119 F.3d 1044, 1052 (2d Cir.1997)(alterations in original; internal quotation omitted). In addition, New York law provides for piercing the veil "when the corporation as been so dominated by an individual ... and its separate entity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego." *William Wrigley Jr. Company v. Waters,* 890 F.2d 594, 600

Not Reported in F.Supp.2d                                                                                    Page 4
Not Reported in F.Supp.2d, 2002 WL 31050846 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

(2d Cir.1989) (internal quotation omitted). Factors to be considered in the determination of control or domination sufficient to pierce the veil include: "(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence ... (2) inadequate capitalization, ... (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, [and] (7) whether the related corporations deal with the dominated corporation at arms length...." *Passalacqua Builders, Inc. Resnick Developers South, Inc.,* 933 F.2d 131, 139 (2d Cir.1991). Given the breadth of factors that inform the decision, the Second Circuit has emphasized that the determination of whether to pierce the corporate veil is a " 'fact specific' inquiry." *MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC,* 268 F.3d 58, 63 (2d Cir.2001). The court of appeals has cautioned that applying these factors "to the infinite variety of situations that might warrant disregarding the corporate form is not an easy task because disregarding corporate separateness is a remedy that differs with the circumstances of each case." *Passalacqua,* 933 F.3d at 139 (internal quotation omitted).

**\*4** The proposed Amended Complaint in the case at bar alleges that LLC and Offshore share the same address and telephone number as Allweiss and that Allweiss, who is the Chairman of both companies, "exercises complete domination over both LLC and Offshore, and over Offshore with respect to the transaction at issue." Proposed Amended Complaint at ¶¶ 52-54. It further alleges that Offshore, which in late 2000 had sufficient assets to pay plaintiff $350,000 under the Time Buy Agreement and committed to pay $400,000 under the renewal option, is suddenly bereft of assets. *Id.* at ¶¶ 55, 57. It also avers that Allweiss sent the letter reneging on the renewal option under LLC letterhead. *Id.* at ¶ 56.

These facts, if proved, may very well be sufficient to hold Allweiss liable under an alter ego theory for the wrongs committed by Offshore.[FN1] The allegations show that Allweiss owned LLC and Offshore and shared the same office space with them, and that Allweiss failed to observe the corporate separateness of the two companies by using *LLC* letterhead in a letter regarding *Offshore's* contract. The allegations also indicate that Offshore is undercapitalized and that plaintiff has been harmed by Allweiss's control of Offshore in his refusal to allow Offshore to honor the renewal agreement and in his diminishment of Offshore's assets. Although the factual allegations are not detailed, they are sufficient under Fed.R.Civ.P. 8(a)'s liberal pleading standard (a claim for relief "shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief") to show the domination or control necessary to pierce the corporate veil and to afford Offshore and Allweiss notice of the basis for liability. Considering the fact intensive nature of this inquiry, these allegations are sufficient at this pre-discovery stage to withstand dismissal of the alter ego claim.

> FN1. Contrary to plaintiff's argument, Allweiss is not a party to the Time Buy Agreement merely because he signed it. Allweiss signed it *on behalf of* Offshore, not in his individual capacity. Plaintiff cites no authority for the highly dubious proposition that a corporate officer who signs a contract in his corporate capacity can, absent veil-piercing or alter ego liability, be held personally beholden under the contract.

Other courts in this circuit have taken a generous view of claims based on the corporate veil piercing doctrine and have refused to dismiss claims that were supported with a similar level of detail as plaintiff's here. For example, in *Farley v. Davis,* No. 91 Civ. 5530(PKL), 1992 WL 110753 (S.D.N.Y. May 8, 1992), the plaintiff had alleged that the defendant purchased the subject company in a leveraged buyout and then stripped it of its assets and operating cash flow, that the defendant used the company as a "front or conduit for one or more of his several business enterprises," ' and that had used the company as his " 'alter ego.' ' *Id.* at *5. Judge Leisure noted that these basic allegations stated a claim for relief against the defendant under an alter ego theory. The court reasoned that Rule 8(a) leaves "development of [the] facts to the discovery phase of the litigation," and concluded that the allegations that the defendant stripped the company's assets and used the corporate form as a conduit for his business enterprises "surely are sufficient to put [the defendant] on notice of the claims against which he must defend." *Id. See also Accordia Northeast, Inc. v. Thesseus Intl. Asset Fund, N.V.,* 205 F.Supp.2d 176, 182 (S.D.N.Y.2002) (allegations that companies who shared principal address, had no assets and no employees or directors other than the alleged alter ego, were represented solely by alleged alter ego who negotiated and executed the agreements at issue and promised the companies would pay premiums, were adequate to justify veil piercing); *Campo v. 1st Nationwide Bank,*

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31050846 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

857 F.Supp. 264, 271 (E.D.N.Y.1994) (a sufficient factual basis for alter ego liability stated by allegations that corporation was in common ownership with and shared same management as other defendants, created subsidiaries in order to escape federal regulation, held itself to be only viable corporate entity in dealing with plaintiff, and commingled funds with other defendants).

**\*5** [2] Offshore argues that because an alter ego theory must be pleaded with the particularity required of a fraud allegation under Fed.R.Civ.P. 9(b), the proposed claims against Allweiss should be disallowed for failure to adhere to this more particularized standard. This argument is unfounded. Because the predicate for application of corporate veil piercing is the commission of a fraud or wrong, not every claim based on the theory must meet the more exacting standards of Rule 9(b). As one court in this circuit recently explained:

[T]he heightened pleading standard in Fed.R.Civ.P. 9(b) need not be met in every case in which a claimant seeks to lift the corporate veil under New York law, since "New York courts will disregard the veil ... *either* when there is fraud *or* when the corporation has been used as an alter ego," and under the alter ego theory of liability, a veil-piercing claimant may prevail by "identify[ing] some non-fraudulent 'wrong' attributable to the defendant's complete domination" of the corporation in question. Thus, a claimant must satisfy the heightened pleading standard of Fed.R.Civ.P. 9(b) to the extent that its veil-piercing claim rests on allegations of fraud.

*United Feature Syndicate v. Miller Features Syndicate, Inc.,* No. 01 Civ. 2491(GEL), 2002 WL 389155, \*19 (S.D.N.Y. March 11, 2002) (emphasis in original) (quoting *Rolls-Royce Motor Cars, Inc. v. Schudroff,* 929 F.Supp. 117, 121-22 (S.D.N.Y.1996) (citations omitted)).

In addition, the Second Circuit's unpublished opinion in *American Cash Card Corp. v. AT & T Corp.,* 210 F.3d 354, 2000 WL 357670 (2d Cir. April 6, 2000), is instructive. While I am aware that reference to such an opinion is disallowed under circuit rules, the opinion makes an invaluable contribution to this discussion because it is, as far as this Court's research has uncovered, the only Second Circuit decision addressing the intersection between the elements of fraud and New York veil-piercing claims. Because the case provides useful guidance in addressing Offshore's argument, it bears mentioning although I am not bound by the court of appeals' ruling. In *American Cash Card,* the court of appeals rejected the appellants' argument that the district court's veil-piercing was not justified because the defendant/counter-plaintiff did not plead the elements of fraud. The Second Circuit noted that the New York veil-piercing standard "does not require that a party demonstrate the perpetration of a fraud in the technical sense of that term. Instead, that party need only establish that the corporate form 'was used to commit wrong, fraud, or the breach of a legal duty, or a dishonest and unjust act in contravention of [the] plaintiff's legal rights.' " 2000 WL 357670, ---4 (quoting *Electronic Switching Indus. v. Frardyne Elecs. Corp.,* 833 F.2d 418, 424 (2d Cir.1987) (alteration in original).

Given that the elements of fraud need not undergird the veil-piercing claim, it necessarily follows that Rule 9(b) does not come into play where fraud is not a part of it. In the present case, plaintiff alleges that Allweiss used his control of Offshore to both breach the contract and fraudulently convey assets rendering Offshore insolvent. To the extent it is based on the former non-fraudulent wrong, Rule 9(b) has no office to perform in assessing the sufficiency of the alter ego claim. Even to the extent that it is founded upon fraudulent conveyance, Rule 9(b) applies only to the *fraud* component of the claim. Offshore seems to suggest that the domination and control elements of an alter ego claim are also subject to heightened pleading, but there exists no foundation in Rule 9(b) or precedent in the caselaw for such a conclusion. Accordingly, even if the fraudulent conveyance part of plaintiff's alter ego claim did not meet Rule 9(b) standards, a subject I discuss below, the proposed Amended Complaint nonetheless alleges sufficient facts to justify piercing the corporate veil based on the non-fraudulent wrong alleged.

### B. *Fraudulent Conveyance*

**\*6** [3] Offshore argues that the proposed fraudulent conveyance claim is defective because it merely restates the breach of contract claim and because it is not pleaded with the specificity required by Rule 9(b). With respect to this claim, the proposed Amended Complaint alleges in relevant part that:

61. On information and belief, Offshore conveyed its assets to LLC or another entity controlled by Allweiss.

62. Offshore's conveyance was made without fair consideration and in bad faith to avoid its obligation to Network.

63. As a result of Offshore's fraudulent conveyance, Network has been damaged in the amount of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

$400,000 plus interest, attorneys' fees and costs of collection.

A fraudulent conveyance claim in New York requires a plaintiff to show the "status of plaintiff as creditor of transferors; the existence of a 'debt' antecedent to the transfer; [ ] a conveyance; [ ] that the conveyance was made at a time of insolvency on the part of the transferors; [ ] the absence of fair consideration for the transfer; and intent to defraud...." *Loblaw, Inc. v. Wylie,* 50 A.D.2d 4, 375 N.Y.S.2d 706, 709 (App. Div. 4th Dep't 1975) (citations omitted). Under Rule 9(b) a plaintiff must state "the circumstances constituting fraud ... with particularity." While "[m]alice, intent, knowledge, and other condition of mind ... may be averred generally," "[t]he plaintiff still must allege facts giving rise to a 'strong inference of fraudulent intent.' " *United Feature Syndicate,* 2002 WL 389155, *19 (quoting *Shields v. Citytrust Bancorp,* 25 F.3d 1124, 1128 (2d Cir.1994)). Allegations of fraud typically cannot be based upon information and belief, except for "matters peculiarly within the opposing party's knowledge." *Luce v. Edelstein,* 802 F.2d 49, 54 n. 1 (2d Cir.1986) (internal quotation omitted). Even in that circumstance, information and belief pleadings must be accompanied by "a statement of the facts upon which the belief is founded." *Id.* "While a plaintiff need not demonstrate in his complaint that what he believes to be true is in fact true, he must present facts that show that his belief is not without foundation, that it is belief rather than irresponsible speculation." *Cargo Partner AG v. Albatrans Inc.,* 207 F.Supp.2d 86, 116 (S.D.N.Y.2002) (internal quotation omitted).

Plaintiff's fraudulent conveyance allegations are wholly based upon information and belief. However, the existence of an intent to defraud and conveyances made between closely held corporations without adequate consideration are undoubtedly matters exclusively within the knowledge of Allweiss, Offshore and/or LLC. Plaintiff's "belief" is based on the facts, interpreted favorably to plaintiff, that in the year 2000 Offshore had sufficient assets to pay plaintiff $350,000 under the Time Buy Agreement but a year and a half later no longer has assets, ¶ ¶ 55, 57, and that Allweiss, in an effort to avoid Offshore's obligations, used a sham corporate form and disregarded the separateness of corporations he controlled. *See* ¶ 49. Although plaintiff concededly does not furnish important details such as the amount and precise timing of the alleged transactions, those are the kind of facts which need not be pleaded

because the "defendant, as a corporate insider, has 'the particulars of the fraud claims ... peculiarly within [his] knowledge." *Bulkmatic Transport Company, Inc. v. Pappas,* No. 99 Civ. 12070(RMB)(JCF), 2001 WL 882039, * 11 (S.D.N.Y. May 11, 2001) (alterations and omission in original) (internal quotation omitted). The facts pleaded in the proposed Amended Complaint portray circumstances which give rise to a permissible inference of fraudulent intent on the part of Allweiss and LLC.

*7 [4] Even if, as I conclude, plaintiff's fraudulent conveyance claim passes Rule 9(b) muster, Offshore also contends that the fraudulent conveyance claim is defective because it constitutes an impermissible restatement of the breach of contract claim. In New York, where a fraud claim "is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie." *McKernin v. Fanny Farmer Candy Shops, Inc.,* 176 A.D.2d 233, 574 N.Y.S.2d 58, 59 (App. Div.2d Dep't 1991). "To maintain a claim of fraud in such a situation, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract, or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,* 98 F.3d 13, 20 (2d Cir.1996) (citations omitted).

It is clear from the proposed Amended Complaint's allegations that the fraud claim is sufficiently distinct from the contract action to allow it to go forward. The fraud alleged is the transfer of Offshore's assets by Allweiss and LLC in order to render Offshore unable to pay the contract damages. The actions constituting the fraud are incontrovertibly extraneous to the contract. Plaintiff's claim not resemble the sort of fraud claim which courts have commonly disallowed, such as where the alleged fraud involved false promises to perform under a contract, *see, e.g., Bridgestone/Firestone, id.,* or consisted of misrepresentations causing the actual breach. *See, e.g., RNB Garments Philippines, Inc. v. Lau,* No. 98 Civ. 4561(DLC), 1999 WL 223153, *5 (S.D.N.Y. April 16, 1999). In such cases the fraud allegations are virtually indistinguishable from the actions consisting of the breach of contract and the fraud claim is therefore nothing more than a prohibited

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31050846 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

repackaging of the breach of contract claim. In this case, by contrast, the alleged breach of contract was Offshore's failure to fulfill its obligation to purchase additional programming time, whereas the alleged fraud was LLC's and Allweiss's draining Offshore of its assets so that its creditors would have nothing to recover. Because the fraud is not intertwined with the breach of contract, the fraud claim may be asserted.

### C. *Claims Against LLC*

[5] The Proposed Amended Complaint interposes two claims against LLC: tortious interference with Offshore's contract and fraudulent conveyance. These claims would not survive a dismissal motion because the proposed Amended Complaint alleges no facts which establish personal jurisdiction over LLC. Because LLC was not a party to the Time Buy Agreement it may be subject to suit in this jurisdiction under the forum selection clause only if it can be held responsible for Offshore's actions. Unlike with respect to Allweiss, however, the proposed Amended Complaint does not allege that LLC is the alter ego of Offshore. In its brief, plaintiff argues without elaboration that LLC should be held liable as the "successor" to Offshore. But, argument in a brief is not the equivalent of a pleading. The imposition of successor liability, as with corporate veil-piercing, requires the allegation and proof of specific facts, none of which have been alleged in the proposed Amended Complaint. Under both New York and Florida law, an alleged successor corporation is liable for the acts of its predecessor if: "1) [it] expressly or impliedly assumes the obligations of the predecessor, 2) the transaction is a *de facto* merger, 3) the successor corporation is a mere continuation of the predecessor, or 4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor." *Eclipse Medical, Inc. v. American Hydro-Surgical Instruments, Inc.,* No. 96-8532, 1999 WL 181412, * 19 (S.D.Fla. Jan.20, 1999) (Florida law) (internal quotation omitted), *aff'd* 235 F.3d 1344 (11th Cir.2000). *See also Case v. Paul Troester Maschinenfabrik,* 139 F.Supp.2d 428, 430 (W.D.N.Y.2001) (substantially the same standard under New York law). The Proposed Amended Complaint simply alleges that Offshore fraudulently transferred its assets to LLC. But that fact is totally insufficient to demonstrate successor liability. Because there are no allegations in the Amended Complaint to show that LLC became vested in the rights of Offshore or assumed any of Offshore's liabilities, successor liability has not been pleaded.

**\*8** Without the benefit of successor or alter ego liability which would make the LLC subject to the forum selection clause, the only possibility of establishing personal jurisdiction over LLC is through the vehicle of New York's long-arm jurisdiction statute. On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), it is the plaintiff's burden to establish the existence of jurisdiction. *DiStefano v. Carozzi North America, Inc.,* 286 F.3d 81, 84 (2d Cir.2001). To withstand such a motion, plaintiff need only make, through the complaint's allegations and affidavits, a *prima facie* showing of personal jurisdiction. *Id.* In this case, plaintiff argues that long-arm jurisdiction exists because LLC has purposefully availed itself of jurisdiction in this court through Allweiss's repeated contacts with New York as Chairman of LLC in connection with the Time Buy Agreement. These repeated contacts are merely suggested in the plaintiff's reply brief and an attached letter exhibit. They are not alleged in the proposed Amended Complaint. Because the allegations contained in the proposed Amended Complaint do not establish a *prima facie* case for long-arm jurisdiction or otherwise suggest a basis for personal jurisdiction over LLC, the claims against LLC in the proposed Amended Complaint cannot be allowed.[FN2]

> FN2. Because I have determined that the proposed Amended Complaint does not establish personal jurisdiction over LLC, I need not address Offshore's argument that the tortious interference claim against LLC would be dismissed because it is not sufficiently distinct from the breach of contract claim.

### *CONCLUSION*

Plaintiff's motion to file an Amended Complaint is granted in part. For the reasons discussed above, plaintiff may file an Amended Complaint asserting an alter ego claim and a fraudulent conveyance claim in the form submitted against Michael D. Allweiss, Esq. Plaintiff is directed to file and serve an amended complaint consistent with this Opinion on or before September 30, 2002. The defendants named therein are directed to respond to the amended complaint within the time specified by the Federal Rules of Civil Procedure.

Given the insufficiencies of the allegations contained in the proposed amended complaint, I deny plaintiff leave to assert fraudulent conveyance or tortious

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 8
Not Reported in F.Supp.2d, 2002 WL 31050846 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

interference claims against APBAOffshore Power
Boat Racing LLC. Plaintiff may, if so advised, move
for leave further to amend its complaint to assert such
claims against LLC if it can allege, consistent with its
obligations under Fed.R.Civ.P. 11, facts that make a
*prima facie* showing of personal jurisdiction over
LLC, through corporate veil-piercing, corporate
successorship or long-arm jurisdiction. Any such
motion must be filed and served on or before
September 30, 2002. Papers in opposition must be
filed on or before October 14, 2002, and papers in
reply on or before October 21, 2002.

It is SO ORDERED.

S.D.N.Y.,2002.
Network Enterprises, Inc. v. APBA Offshore
Productions, Inc.
Not Reported in F.Supp.2d, 2002 WL 31050846
(S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:01cv11765 (Docket) (Dec. 21, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.