

Not Reported in F.Supp.2d                                                                                                                              Page 1
Not Reported in F.Supp.2d, 1999 WL 32941 (S.D.N.Y.), RICO Bus.Disp.Guide 9670
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents

United States District Court, S.D. New York.
REDTAIL LEASING, INC., Hull Trading Company, Robert J. Rosener, and Steven Paskvallich, individually and on behalf of all others similarly situated, Plaintiffs,
v.
Leonard BELLEZZA, Michael Borlinghaus, Jeffrey F. Green, Joseph P. Greenwald, Heinz Grein, Steven Krysty, Joanne Latona as Administratrix of the Estate of Angelo Latona, Joseph Latona, Val Maiale, Christopher M. Garvey, Darrin Gleeman, Seymour Gleeman, Edwin Karger, and David Simon, Defendants.
**No. 95 Civ. 5191 JFK.**

Jan. 22, 1999.

Sachnoff & Weaver, Ltd., Chicago, IL, John W. Moynihan, Pollack & Greene, New York, NY, Alan Pollack, Simon I. Allentuch, for Plaintiffs, of counsel.
Weil, Gotshal & Manges LLP, New York, NY, Greg A. Danilow, Jason M. Halper, for Defendants Darrin Gleeman, Seymour Gleeman and Edwin Karger, of counsel.
Richards Spears Kibbe & Orbe, New York, New York, Lee S. Richards, James Q. Walker, for Defendant David J. Simon, of counsel.

*OPINION and ORDER*

KEENAN, J.
**\*1** Before the Court is the joint motion of Defendants Darrin Gleeman ("D.Gleeman"), Seymour Gleeman ("S.Gleeman") and Edwin Karger ("Karger") and the separate motion of Defendant David J. Simon ("Simon") to dismiss Plaintiffs' Second Amended Class Action Complaint, pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons discussed below, the Court grants both motions.

*Background*

Plaintiffs allege that from July 1989 through August 1991, Defendants were members of an insider trading ring that obtained material, non-public inside information regarding public entities in order to engage in illegal insider trading in the entities' securities. Among the securities that Plaintiffs claim this insider trading ring traded by using material, non-public inside information were Ambase Corp., ACCO/Swingline, AT & T, Birmingham Steel Corp., Chubb, General Signal Corp., Georgia Gulf, Corp., Harcourt Brace Jovanovich, Jerrico, Inc., Kay Jeweler Inc., Mission Resource partners, Motel 6, L.P., R.H. Macy & Co., Norton Co., Square D Co., Stanley Works, Time Warner, Inc., United Airlines, Recognition Equipment, Inc., Orion Capital Corp. and Wang Laboratories.

According to the Second Amended Complaint, Defendant Christopher Garvey obtained employment as a paralegal at the law firm Skadden, Arps, Slate, Meagher & Flom ("Skadden") in July 1989 in order to have access to material, non-public inside information pertaining to mergers, acquisitions and takeovers of public companies. *See* Second Am. Compl. ¶ 42. Garvey would provide this information to Defendant D. Gleeman, Garvey's roommate and friend, so that D. Gleeman could make trades based on the information and both would share in the profits. *See id.* ¶ 13, 42. Plaintiffs allege that Garvey was the "primary original source" of the inside information central to the insider trading ring's conspiracy. *See id.* ¶ 41. Beginning in late 1989, D. Gleeman allegedly began providing Garvey's inside information to his father, Defendant S. Gleeman, who was employed by IBM in New York City. *See id.* ¶¶ 44-45. S. Gleeman allegedly used false identification to open various trading accounts in 1989 and 1990 in Luxembourg and Austria through which he traded in the Garvey-recommended securities. *See id.* ¶ 46. Plaintiffs allege that S. Gleeman would provide Garvey's inside information to Defendant Karger, an IBM co-worker of his, but that S. Gleeman did not disclose to Karger either the source of the information or D. Gleeman's involvement and did not inform D. Gleeman that he was providing the information to Karger. *See id.* ¶ 47. Karger, without first informing S. Gleeman, allegedly provided the Garvey inside information to Defendant Leonard Bellezza ("Bellezza"), a close business associate of Karger's. Both Karger and Bellezza allegedly traded on the inside information, and Bellezza allegedly provided the information to the others in the insider trading ring. *See id.* ¶¶ 48-49. Defendants S. Gleeman and D. Gleeman allegedly shared in the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                       Page 2
Not Reported in F.Supp.2d, 1999 WL 32941 (S.D.N.Y.),   RICO Bus.Disp.Guide 9670
**(Cite as: Not Reported in F.Supp.2d)**

kickbacks paid to Garvey for obtaining and sharing the inside information with the ring. See Second Am. Compl. ¶¶ 45, 47.

***2** Defendant Simon was introduced to the group by Defendant Joseph Greenwald who had been recruited by Defendant Joseph Latona ("J.Latona") who had been invited into the group by Bellezza. See id. ¶¶ 48-52. The Second Amended Complaint alleges that Simon was the president of Twin Securities, Inc., a broker-dealer in New York registered with the SEC. See id. ¶ 25. Plaintiffs allege that Simon served as the evaluator of the inside information that was passed among the insider trading ring. See id. ¶ 52. Plaintiffs additionally allege that Simon provided advice on how to avoid detection by the government and what course the members should take if the government began investigating their activities. See id. ¶ 53. Simon also allegedly paid kickbacks to the source of the inside information.

The focus of this lawsuit concerns the insider trading ring's alleged utilization of material, non-public information regarding the proposed acquisition of Motel 6, L.P., a Dallas-based national chain of owner-operated economy motels, by Accor, S.A., a French-based company. The insider trading ring was allegedly part of a conspiracy to trade on highly sensitive inside information about tender offer negotiations between Motel 6's largest shareholder, Kohlberg Kravis Roberts & Company, and Accor. See id. ¶¶ 26, 86. This alleged insider trading on the Motel 6 shares and call options occurred between May 18, 1990 and July 12, 1990 (the "Class Period"). See id. ¶ 33. On July 12, 1990, Accor made a public announcement that it would made a tender offer for Motel 6. See id. ¶ 102. Plaintiffs sold Motel 6 shares and call options contemporaneously with Defendants' purchases of the same during the Class Period. Plaintiffs claim that through the insider trading in Motel 6 securities, Defendants generated illegal profits to the extent of several million dollars, and that Plaintiffs and the proposed class suffered millions of dollars in damages as a result of Defendants' misconduct. See id. ¶¶ 3-4.

Although the Second Amended Complaint alleges that the insider trading ring's inside information came primarily from Garvey, who informed D. Gleeman, who then informed S. Gleeman, who in turn informed Karger, who informed Bellezza, who tipped off the others involved, this usual chain of events did not happen with regard to inside information concerning the Motel 6 tender offer negotiations. Instead, the inside information came from a new source, was disseminated in a different manner and was not disseminated to all the alleged members of the conspiracy. Hugh Thrasher, executive vice-president of Motel 6 in charge of corporate communications at the time of the tender offer negotiations, allegedly tipped off his friend Carl Harris about the tender offer negotiations. See Second Am. Compl. ¶ 111. Harris then allegedly told Gregg Shawzin, a commodities broker in California, who told Defendant John Anderson. See id. ¶¶ 116-120. Anderson purportedly then tipped off Defendant Greenwald, who allegedly shared the information with Defendants Jeffrey Green and J. Latona. See id. ¶¶ 122, 127. Greenwald and J. Latona then allegedly provided the inside information to Defendant Simon. See id. ¶ 133. Simon purportedly analyzed the information to determine whether the information supported the assertion that a takeover was imminent and asked Greenwald to obtain additional information to assist him in making that determination. See id. ¶¶ 134-35. J. Latona also allegedly tipped off Defendant Michael Borlinghaus, who then allegedly shared the information with Defendants Heinz Grein, Steven Krysty, and Bellezza. See id. ¶¶ 142, 143, 151, 153. Finally, in early July 1990, Defendant Bellezza allegedly shared the information with Defendant Karger. See id. ¶ 156. All of these individuals are alleged to have purchased Motel 6 stock or call options based upon the material, non-public inside information provided by Thrasher. Plaintiffs do not allege that either S. Gleeman or D. Gleeman received the inside information regarding Motel 6 or that either purchased Motel 6 securities based upon the material non-public inside information.

***3** Based upon the insider trading ring's alleged activities, Plaintiffs filed this action stating claims for violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), violations of § 10(b), Rule 10b-5, § 14(e) and Rule 14e-3 of the Securities Exchange Act, as well as state law claims for common law fraud, unjust enrichment and violations of New York General Business Law § 349(a). Plaintiffs have not sought relief against Defendants D. Gleeman, S. Gleeman, Karger or Simon, however, for violations of §§ 10(b) and 14(e) of the Exchange Act or Rules 10b-5 and 14e-3 promulgated thereunder. See Second Am. Compl. ¶ 195.

In an Opinion dated September 30, 1997, the Court granted the joint motion of Defendants D. Gleeman, S. Gleeman and Karger to dismiss all claims asserted against them in the First Amended Complaint. See Redtail Leasing, Inc., et al. v. Bellezza, et al., No. 95-

Case 7:04-cv-08223-KMK    Document 165-31    Filed 07/07/2006    Page 3 of 5

Not Reported in F.Supp.2d    Page 3
Not Reported in F.Supp.2d, 1999 WL 32941 (S.D.N.Y.), RICO Bus.Disp.Guide 9670
**(Cite as: Not Reported in F.Supp.2d)**

5191, 1997 WL 603496 (S.D.N.Y. Sept. 30, 1997). The Court granted leave for Plaintiffs to replead their claims for federal RICO violations, pursuant to 18 U.S.C. §§ 1962(c) and (d), but dismissed the other claims with prejudice. *See id.* The Court notes that the Second Amended Complaint nonetheless reasserts claims against the Gleemans and Karger for violations of 18 U.S.C. § 1962(b), New York General Business Law § 349(a), common law fraud and unjust enrichment and asserts these four claims against Defendant Simon. In their moving papers, however, Plaintiffs clarify that they "are not asking the Court to reconsider its prior decision regarding those counts" and concede that the Court's analysis of these four claims in the September 30, 1997 Opinion would apply equally to Defendant Simon. *See* Pls.' Mem. of Law in Opp. to Def. Simon's Mot. to Dismiss at 2 n. 1. Thus, in the present motion, the Court need only consider Plaintiffs' federal RICO claims, pursuant to 18 U.S.C. §§ 1962(c) and (d), asserted against Defendants D. Gleeman, S. Gleeman, Karger, and Simon.

The Moving Defendants now argue that the two remaining claims, pursuant to 18 U.S.C. §§ 1962(c) and (d), should be dismissed with prejudice for failure to state a claim.

*Discussion*

A motion to dismiss for failure to state a claim should be granted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957)). The factual allegations set forth in the complaint must be accepted as true, *see Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 979 (1990), and the Court must draw all reasonable inferences in favor of plaintiff. *See Thomas v. City of New York,* 143 F.3d 31, 36 (2d Cir.1998). Nevertheless, the complaint must contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory. *See Connolly v. Havens,* 763 F.Supp. 6, 9 (S.D.N.Y.1991).

A. Plaintiffs' § 1962(c) Claim

**\*4** Plaintiffs claim that Defendants violated 18 U.S.C. § 1962(c), which provides that:
It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). In *Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163 (1993), the Supreme Court found that liability under § 1962(c) requires that a defendant be a participant "in the operation or management of the enterprise itself." *Id.* at 185, 113 S.Ct. 1173. The Supreme Court explained that "[i]n order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." *Id.* at 179, 113 S.Ct. at 1170. The Court went on to note that "the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs ... but some part in directing the enterprise's affairs is required." *Id.*[FN1] "As interpreted by courts in this district and others, the 'operation and management' test ... is a very difficult test to satisfy." *Schmidt v. Fleet Bank,* 16 F.Supp.2d 340, 346 (S.D.N.Y.1998) (quoting *LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.,* 951 F.Supp. 1071, 1090 (S.D.N.Y.1996)). There is a "difference between actual control over an enterprise and association with an enterprise in ways that do not involve control; only the former is sufficient under *Reves* because 'the test is not involvement but control.'" *Dep't of Econ. Dev. v. Arthur Anderson & Co.,* 924 F.Supp. 449, 466 (S.D.N.Y.1996) (citation omitted). Therefore, for plaintiffs to state a claim under § 1962(c), they must allege that the Gleemans, Karger and Simon participated "in the operation or management of the enterprise itself," which requires that these Defendants had some part in directing the affairs of the insider trading ring.

> FN1. The Second Circuit recently noted that cases within this Circuit and among the other federal appellate courts vary widely regarding what conduct satisfies the "operation or management" test, and concluded that "the commission of crimes by lower level employees of a RICO enterprise may be found to indicate participation in the operation or management of the enterprise but does not compel such a finding." *United States v. Allen,* 155 F.3d 35, 42 (2d Cir.1998).

Defendants Karger, D. Gleeman and S. Gleeman now claim that the Second Amended Complaint suffers

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                                            Page 4
Not Reported in F.Supp.2d, 1999 WL 32941 (S.D.N.Y.), RICO Bus.Disp.Guide 9670
**(Cite as: Not Reported in F.Supp.2d)**

from the same defect that led the Court to dismiss the First Amended Complaint, arguing that it fails to allege that Karger or the Gleemans participated in the operation or management of the insider trading ring. Defendant Simon likewise claims that the Second Amended Complaint fails to allege that he participated in the operation or management of the insider trading ring. The Moving Defendants assert that Plaintiffs' § 1962(c) claim should therefore be dismissed. Because "liability under § 1962(c) may not be imposed on one who merely 'carries on' or 'participates' in an enterprise's affairs," see Biofeedtrac Inc., v. Kolinor Optical Enter. & Consultants, S.R.L., 832 F.Supp. 585, 591 (E.D.N.Y.1993) (quoting Reves, 507 U.S. at 177-178, 113 S.Ct. at 1169-1170); see also Clifford v. Hughson, No. 94 Civ. 9066, 1998 WL 47096, at *4 (S.D.N.Y. February 4, 1998) ("cases in this Circuit have dismissed RICO claims against defendants where the complaint did not raise an inference that the defendant 'directed' the enterprise" (citations omitted)), the Court agrees.

**\*5** The Second Amended Complaint fails to allege facts suggesting that Defendants D. Gleeman, S. Gleeman, Karger or Simon directed or controlled the enterprise's affairs.<sup>FN2</sup> The alleged facts certainly suggest that the Gleemans and Karger participated in the insider trading ring's affairs by passing on inside information, trading on inside information and receiving kickbacks for illegal trades. However, the Second Amended Complaint does not allege that any of these three defendants had a role in managing or directing the enterprise's affairs. The facts alleged also suffice to suggest that Simon participated in the insider trading ring's affairs by evaluating the inside information, requesting additional material to assess the inside information, advising other members regarding how to respond to a possible government investigation and paying kickbacks to the source of the inside information. However, these allegations do not suggest that Simon directed, managed, operated or otherwise controlled some portion of the affairs of the insider trading ring. Other courts have similarly held that alleging securities fraud or other wrongdoing is not sufficient to plead a violation of § 1962(c) where the defendant did not direct or manage the enterprise. See Biofeedtrac, 832 F.Supp. at 591 (although defendant may be liable for securities fraud, no facts adduced by plaintiff suggest that his role was to "lead, run, manage, or direct" the enterprise, so defendant did not violate § 1962(c)); see also Stone v. Kirk, 8 F.3d 1079, 1092 (6th Cir.1993) (defendant "was associated with the" enterprise and "engaged in a pattern of racketeering

activity when he repeatedly violated the anti-fraud provisions of the [federal] securities" laws but was not liable under § 1962(c) because he "had no part in directing" the enterprise's affairs); Strong & Fisher Ltd., v. Maxima Leather, Inc., No. 91 Civ. 1779, 1993 WL 277205, at *1 (S.D.N.Y.1993) (JSM).

> FN2. Although the instant lawsuit concerns the alleged insider trading in Motel 6 Securities, Plaintiffs do not allege that the Gleemans even received the material, non-public information regarding Motel 6. Plaintiffs clearly fail to allege that the Gleemans traded in Motel 6 securities or directed the conduct of the other members of the insider trading ring with regard to the Motel 6 securities. Plaintiffs do allege that Karger received the Motel 6 inside information but they assert that he was the last person in the insider trading ring to receive this information. There is no allegation that Karger directed the insider trading of Motel 6 securities.

In opposition to Defendants' motions to dismiss, Plaintiffs offer new allegations to support their claim that the Moving Defendants had some part in directing the insider trading ring's affairs, however, these allegations do not appear in the Second Amended Complaint. See Pls.' Mem. of Law in Opp. to Defs.' Mot. to Dismiss at 2-6; Pls.' Mem. of Law in Opp. to Def. Simon's Mot. to Dismiss at 6 (alleging, for example, that the Gleemans and Karger were "at the top of the chain constituting the insider trading ring," that D. Gleeman had Garvey obtain employment at Skadden to obtain inside information, that D. Gleeman directed S. Gleeman to open the foreign trading accounts and directed S. Gleeman to never discuss the scheme with Garvey, that Karger decided that Borlinghaus and Grein should be added to the insider trading ring and that Simon "directed and conspired with members of the Insider Trading Ring on how to respond to any inquiries regarding trades made based upon inside information" and "directed them to assert their Fifth Amendment Right against self-incrimination"). As noted in the September 30, 1997 Opinion, papers in response to a Rule 12(b)(6) motion to dismiss cannot cure a defect in the pleadings. See O'Brien v. National Property Analysts Partners, 719 F.Supp. 222, 229 (S.D.N.Y.1989). Moreover, in the September 30, 1997 Opinion, the Court granted Plaintiffs leave to replead the § 1962(c) claim only because Plaintiffs had included new allegations in their papers opposing

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                         Page 5
Not Reported in F.Supp.2d, 1999 WL 32941 (S.D.N.Y.),   RICO Bus.Disp.Guide 9670
**(Cite as: Not Reported in F.Supp.2d)**

Defendants' motion to dismiss which were not included in their First Amended Complaint. However, the Second Amended Complaint again contains no factual allegations to suggest that any of the Moving Defendants participated in the operation or management of the enterprise itself. As a result, the Court grants the joint motion of D. Gleeman, S. Gleeman and Karger and the motion of Simon to dismiss Plaintiffs' § 1962(c) claim.

B. Plaintiffs' § 1962(d) Claim

**\*6** Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). In the Court's September 30, 1997 Opinion, the Court found that in the First Amended Complaint,
Plaintiffs have made no more than conclusory allegations with regard to the § 1962(d) claim against the Moving Defendants. The factual allegations just do not support a claim that the Moving Defendants conspired to violate § 1962(b) or § 1962(c). However, because the Court granted Plaintiffs leave to replead the Amended Complaint in light of the new factual allegations relevant to the § 1962(c) claim, the Court also grants Plaintiffs leave to replead this claim against the Moving Defendants consistent with the new allegations.

See *Redtail Leasing,* 1997 WL 603496, at [*]6. As the Court noted above, Plaintiffs' Second Amended Complaint does not contain factual allegations to support the allegations Plaintiffs had included for the first time in their papers opposing Defendants' motion to dismiss the First Amended Complaint. Plaintiffs again make only conclusory allegations with regard to the § 1962(d) claim asserted against the Moving Defendants. Thus, Defendants D. Gleeman, S. Gleeman and Karger's joint motion to dismiss the § 1962(d) claim and Defendant Simon's motion to dismiss the § 1962(d) claim are both granted. *See Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 25 (2d Cir.1990) (affirming dismissal of § 1962(d) claim where amended complaint failed to allege factual basis for any agreement to commit the fraudulent predicate acts); *Morin v. Trupin,* 747 F.Supp. 1051, 1067 (S.D.N.Y.1990).

Finally, Plaintiffs are not granted leave to replead either the § 1962(c) claim or the § 1962(d) claim asserted against the moving defendants. Although leave to amend should be liberally granted, the "liberal rules of pleading in the federal system are not without limits." *Levitch v. Columbia Broadcasting Sys., Inc.,* 94 F.R.D. 292, 295 (S.D.N.Y.1982), *aff'd,* 697 F.2d (2d Cir.1983). The decision whether to grant leave to amend is within the discretion of the Court, and the court may deny leave for reasons such as "undue delay, bad faith, ... [or] futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182 (1962). Plaintiffs have had two opportunities to plead violations of § 1962(c) and § 1962(d), but have failed to do so. In the present case, granting leave to amend would be futile.

*Conclusion*

For the reasons discussed above, the Court grants Defendants D. Gleeman, S. Gleeman and Karger's joint motion and Defendant Simon's motion to dismiss all claims asserted against them in the Second Amended Complaint. Plaintiffs are not granted leave to replead.

SO ORDERED.

S.D.N.Y.,1999.
Redtail Leasing, Inc. v. Bellezza
Not Reported in F.Supp.2d, 1999 WL 32941 (S.D.N.Y.),   RICO Bus.Disp.Guide 9670

Briefs and Other Related Documents (Back to top)

• 1:95cv05191 (Docket) (Jul. 12, 1995)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.