

Not Reported in F.Supp.2d  Page 1
Not Reported in F.Supp.2d, 2000 WL 1616960 (S.D.N.Y.), RICO Bus.Disp.Guide 9963
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents

United States District Court, S.D. New York.
SUMITOMO CORPORATION, Plaintiff,
v.
THE CHASE MANHATTAN BANK, f/k/a the Chase Manhattan Bank, N.A., Defendants.
SUMITOMO CORPORATION, Plaintiff,
v.
J.P. MORGAN & CO. INCORPORATED, Morgan Guaranty Trust Company of New York, and Keith Murphy, Defendants.
**No. 99Civ.4004(JSM).**

Oct. 30, 2000.

Celia Goldwag Barenholtz, Kronish, Lieb, Weiner & Hellman LLP, New York, NY, Martin London, Bruce Birenboim, Paul, Weiss, Rifkind, Wharton & Garrison, New York, NY, for plaintiffs.
Thomas C. Rice, Simpson Thacher & Bartlett, New York, NY, Kent T. Stauffer, the Chase Manhattan Legal Department, New York, NY, James H.R. Windels, Davis Polk & Wardwell, New York, NY, Edward M. Spiro, Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., New York, NY, for defendants.

*OPINION and ORDER*

MARTIN, J.

**\*1** In these two actions, which have been consolidated for pretrial purposes, Sumitomo Corporation ("Sumitomo") has sued two major banks, Chase Manhattan Bank ("Chase") and J.P. Morgan & Co. ("Morgan") [FN1] seeking to recover damages it suffered as a result of the activities of a former employee, Yasuo Hamanaka, from whom Sumitomo now seeks to distance itself by characterizing him as a rogue trader who kept his unauthorized activities from his superiors. Each complaint alleges that the defendants therein participated in a scheme to defraud the plaintiff by structuring certain transactions so that they appeared to be normal copper transactions without disclosing other related transactions that transformed these transactions into bank loans of which plaintiff was unaware.

FN1. The complaint also names Morgan's subsidiary Morgan Guaranty Trust Company and one of its former employees, all of whom will be referred to herein collectively as Morgan.

In each case, the defendant moves to dismiss the complaint, making many assertions concerning its conduct which, if proved true, will ultimately lead to a judgment of no liability. However, at this stage the Court must accept the allegations in the complaints as true, many of which the defendants choose to ignore.

The Court will address together the defendants' challenges to the RICO claims, and then consider the issues applicable to each defendant alone.

*The RICO Claims*

The defendants contend first that the complaints fail to allege that they participated in the operations and control of a RICO enterprise. However, the complaints allege an enterprise comprised of Hamanaka and each bank which was engaged in an ongoing scheme to make a series of large loans to Hamanaka's rogue trading operation by disguising large loans as straightforward copper transactions. The complaints clearly detail the participation of each of the defendants in carrying out the affairs of that enterprise.

The facts alleged here are easily distinguished from those in *Schmidt v. Fleet Bank,* 16 F.Supp.2d 340 (S.D.N.Y.1998) and other cases on which the defendants rely. In *Fleet,* the court held that merely providing financing to a RICO enterprise did not constitute participation in the affairs of the enterprise. *See Fleet,* 16 F.Supp. at 347. *See also, DeWit v. Firstar Corp..,* 879 F.Supp. 947, 965 (N.D.Iowa 1995); *Industrial Bank of Latvia v. Baltic Fin. Corp., No. 93 Civ. 9032, 1994 WL 286162,* at \*2-3 (S.D.N.Y. June 27, 1994). Here, by contrast, it is the fraudulent financing operation which is itself the RICO enterprise, and the complaints sufficiently allege the particular defendant's participation in its affairs.[FN2]

FN2. The allegations with respect to Sumitomo as a RICO enterprise are

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK   Document 165-34   Filed 07/07/2006   Page 2 of 4

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2000 WL 1616960 (S.D.N.Y.), RICO Bus.Disp.Guide 9963
**(Cite as: Not Reported in F.Supp.2d)**

deficient. The defendants must have participated in the operation or management of the enterprises' affairs to be liable. *See* Reeves v. Ernst & Young, 507 U.S. 170, 182, 113 S.Ct. 1163, 1172, 122 L.Ed.2d 525 (1993). The facts alleged do no more than establish that the defendants made loans to Sumitomo. *See also* Vickers Stock Research Corp. v. Quotron Sys., Inc., No. 96 Civ. 2269, 1997 WL 420265, at *4 (S.D.N.Y. July 25, 1997); Sundial Int'l Fund Ltd. v. Delta Consultants, Inc., 923 F.Supp. 38, 39-41 (S.D.N.Y.1996).

The defendants also claim that the complaints' RICO allegations fail because plaintiff has failed to allege an enterprise that is distinct from the predicate acts. However, their own factual contentions defeat their argument. The defendants allege that they were engaged in a course of legitimate business activity with Hamanaka. The complaints do not contend that the specific transactions were themselves illegal, it is contended that the defendants committed predicate acts of mail and wire fraud by misrepresenting the nature of the transactions and otherwise misleading Hamanaka's superiors. The complaints sufficiently allege that Hamanaka and the defendants had "a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." Moll v. U.S. Life Title Ins. Co., 654 F.Supp. 1012, 1031 (S.D.N.Y.1987); *see* United States v. Mazzei, 700 F.2d 85, 88 (2d Cir.1983). These allegations are also sufficient to allege a RICO conspiracy.

**\*2** Morgan alone argues that there is no subject matter jurisdiction because most of the relevant acts took place outside of the United States. While it may be true that many of the alleged predicate acts are not in fact violations of the mail or wire fraud statutes because they took place outside the United States, there are predicate acts alleged which did take place in this country including the transfer of funds in and out of the United States and wire communications between people in the United States, including the head of Morgan's commodity derivatives department in New York. Given that the transactions at issue are alleged to be for the benefit of a major United States corporation with its headquarters in New York, there is an ample basis for the exercise of United States jurisdiction over these transactions. *See* Alfadda v. Fenn, 935 F.2d 475, 480 (2d Cir.1991); Madanes v. Madanes, 981 F.Supp. 241, 251-52 (S.D.N.Y.1997).

Chase alone contends that the complaint fails to allege a pattern of racketeering having sufficient continuity. *See* Sedima, S.P.L.R. v. Imrex Co., 473 U.S. 479, 497 n. 14, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). The issues raised by this argument were discussed in this Court's opinion in Healy v. Pyle, No. 89 Civ. 6027, 1992 WL 80775 (S.D.N.Y. Mar.31, 1992) in which it was noted:
As the Second Circuit advised, we must consider the "overall context in which the acts took place" to determine whether sufficient continuity is alleged.

*Id.* at *7 (citing United States v. Kaplan, 886 F.2d 536, 542 (2d Cir.1989)).

Here, the overall context alleged does establish the necessary continuity. While there were only two parties to the transactions, a number of individuals at Chase are alleged to have been involved. More importantly, the conduct involved substantial sums of money and lasted a minimum of fourteen months by Chase's admission or twenty-six months according to plaintiff. Moreover, the conduct did not stop because any of the parties involved determined to abandon the allegedly criminal activity; it ended only because Sumitomo became aware of Hamanaka's rogue operation. All of these circumstances clearly show a continuity that threatened further criminal conduct. *See* Proctor & Gamble Co. v. Big Apple Indus. Bldgs., Inc., 879 F.2d 10, 18 (2d Cir.1989); Polycast Technology Corp. v. Uniroyal, Inc., 728 F.Supp. 926, 948 (S.D.N.Y.1989); Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., No. 93 Civ. 6876, 1998 WL 42575, at *5 (S.D.N.Y. Feb. 4, 1998).

*Other Morgan Arguments*

Morgan also moves to dismiss plaintiff's breach of fiduciary duty and negligent misrepresentation claims on the ground that the complaint fails to allege the existence of a fiduciary relationship between Morgan and Sumitomo.

Under New York law a fiduciary relationship is found " 'when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.' " Mandelblatt v. Devon Stores, Inc., 132 A.D.2d 162, 168, 521 N.Y.S.2d 672, 676 (1987) (quoting Restatement (Second) of Torts § 874 comment a (1977)); *see* Flickinger v. Harold C. Brown & Co., 947 F.2d 595, 599 (2d Cir.1991).

**\*3** No such relationship would arise from the mere fact that the plaintiff and defendants engaged in

Not Reported in F.Supp.2d                                                                                                  Page 3
Not Reported in F.Supp.2d, 2000 WL 1616960 (S.D.N.Y.), RICO Bus.Disp.Guide 9963
**(Cite as: Not Reported in F.Supp.2d)**

commercial copper transactions. See *Ross v. Bolton,* 904 F.2d 819, 824 (2d Cir.1990); *Edwards & Hanly v. Wells Fargo Sec. Clearance Corp.,* 602 F.2d 478, 484 (2d Cir.1979); *Compania Sud-Americana de Vapores v. IBJ Schroder Bank & Trust Co.,* 785 F.Supp. 411, 426 (S.D.N.Y.1992).

Plaintiff alleges, however, that Morgan had a "long standing and advisory relationship with Sumitomo." (Compl.¶ 7.) However, the complaint lacks any specific factual allegations that would support an inference that the relationship was so extensive and deep rooted that it would create a fiduciary relationship between these two huge corporations with respect to all of their commercial dealings. Thus, the breach of fiduciary duty claims are dismissed with leave to replead within twenty days if facts can be alleged which demonstrate that the relationship was in fact so extensive that a fiduciary relationship existed.[FN3]

> FN3. Should plaintiff attempt to rely on a series of limited and unrelated business dealings between the parties, it may be appropriate for the defendant to serve a Rule 11 notice before moving again to dismiss these claims.

As is unfortunately true in many cases filed in this court, the complaint against Morgan ends with a hodgepodge of causes of action in which plaintiff attempts to find a remedy for the damage it believes it suffered as the result of wrongful conduct of the defendant. The claims for breach of the implied covenant of good faith and fair dealing and for breach of a duty to disclose based on superior knowledge are dismissed. If the parties did no more than engage in legitimate copper transactions under valid contracts, there is no basis to find that the defendants breached any implied duty of good faith or that their knowledge was superior to that of Hamanaka, and those claims are dismissed. See *Aaron Ferer & Sons v. Chase Manhattan Bank,* 731 F.2d 112, 123 (2d Cir.1984). See also *Bissell v. Merrill Lynch & Co. Inc.,* 937 F.Supp. 237, 248 (S.D.N.Y.1996), *aff'd* 157 F.3d 138 (2d Cir.1998), *cert. denied,* 525 U.S. 1144, 119 S.Ct. 1039, 143 L.Ed.2d 47 (1999). If on the other hand, the contracts were invalid and the defendants knew that Hamanaka was engaged in a course of conduct outside his authority and took advantage of the situation to reap unfair profits at plaintiff's expense, a claim for unjust enrichment or money had and received may be appropriate. See *Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir.1996);

*Aaron Ferer,* 731 F.2d at 125. Thus the motion to dismiss those claims is denied. Plaintiff is correct that restitution and recission are not independent causes of actions and therefore those claims will be dismissed. See *New York v. SCA Servs., Inc.,* 761 F.Supp. 14, 15 (S.D.N.Y.1991); *In re Ivan Boesky Sec. Litig.,* 825 F.Supp. 623, 636-37 (S.D.N.Y.1993).

*Other Chase Arguments*

Chase makes a variety of arguments to the effect that it should not be required to repay to Sumitomo the principal that was repaid to it as part of the transactions at issue. While Chase is correct that a party to a fraudulently induced loan is not entitled to retain the amount it received as a loan, the ultimate amount of damages to which Sumitomo will be entitled can only be determined after trial. Thus, there is no reason at this stage of the proceedings to attempt to predict the damages to which plaintiff may be entitled.

*Conclusion*

**\*4** For the foregoing reasons Morgan's motion to dismiss the claims for breach of fiduciary duty, negligence, breach of an implied covenant of good faith, superior knowledge, restitution and recission is granted and in all other respects its motion and Chase's motion to dismiss are denied.

SO ORDERED.

S.D.N.Y.,2000.
Sumitomo Corp. v. Chase Manhattan Bank
Not Reported in F.Supp.2d, 2000 WL 1616960 (S.D.N.Y.), RICO Bus.Disp.Guide 9963

Briefs and Other Related Documents (Back to top)

• 2000 WL 34013231 (Trial Pleading) Amended Answer of Defendant the Chase Manhattan Bank to Amended Complaint (Dec. 15, 2000)
• 2000 WL 34015552 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of the Chase Manhattan Bank's Motion to Dismiss (Jun. 05, 2000)
• 2000 WL 34013276 (Trial Pleading) Answer of Defendant the Chase Manhattan Bank to Amended Complaint (Mar. 17, 2000)
• 1999 WL 33643573 (Trial Pleading) Amended Complaint Jury Trial Demanded (Nov. 30, 1999)
• 1:99cv04004 (Docket) (Jun. 02, 1999)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2000 WL 1616960 (S.D.N.Y.), RICO Bus.Disp.Guide 9963  
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.