

Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1996 WL 607059 (W.D.N.Y.),   RICO Bus.Disp.Guide 9200
**(Cite as: Not Reported in F.Supp.)**

Briefs and Other Related Documents

United States District Court, W.D. New York.
WELCH FOODS INC., A Cooperative, Plaintiff,
v.
William GILCHRIST and Northeast Delivery, Inc., Defendants.
**No. 93-CV-0641E(F).**

Oct. 18, 1996.

Alan M. Wishnoff, Phillips, Lytle, Hitchock, Blaine & Huber, Buffalo, NY, for Plaintiff.
William M. Feigenbaum, Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, Buffalo, NY, Thomas J. Hanlon, Scranton, PA, for Defendant.

MEMORANDUM and ORDER

ELFVIN, District Judge.
**\*1** Welch Foods Inc. ("Welch") alleges that Gilchrist and Northeast Delivery, Inc. ("Northeast") participated in a "kickback" scheme in which the defendants received trucking contracts from Welch and/or the benefits emanating therefrom by paying bribes or kickbacks to Welch's then manager of transportation. It brings six causes of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.,* and common law causes of action for breach of contract and of the duty of good faith and fair dealing, fraud, unjust enrichment, conversion and for an accounting. Jurisdiction is predicated upon 18 U.S.C. § 1964(c) and 28 U.S.C. § § 1331 & 1332 and venue is proper pursuant to 28 U.S.C. § 1391(b). The defendants have moved, pursuant to Rule 9(b) of the Federal Rules of Civil Procedure ("FRCvP"), for dismissal of the fraud-based claims for failing to plead such with adequate particularity and, pursuant to FRCvP 12(b), for dismissal of the six RICO causes of action for failing to state a claim upon which relief may be granted. The motion will be partially granted.

According to the Complaint, Gilchrist is the owner and operator of Northeast, an interstate transportation carrier located in Pennsylvania. Complaint, ¶ 6. Donald L. Finke-employed from 1978 until September 10, 1992 by Welch as its manager of transportation-selected the carriers to transport Welch's products, negotiated the rates at which such carriers were to be compensated and otherwise controlled Welch's transportation operations. *Id.,* ¶ ¶ 7-8. From 1983 through February 1993 Northeast provided transportation services to Welch. *Id.,* ¶ 6. During this ten-year period, Gilchrist conspired and agreed with Finke to inflate the prices Welch would and did pay for transportation services and, pursuant to such agreement or agreements, paid a kickback to Finke in order to continue receiving Welch's business through Finke's intervention. *Id.,* ¶ 9.[FN1] Welch alleges that "[t]he Gilchrist conspiracy was part of a larger conspiracy in which Finke conspired, confederated and agreed with other common carriers and transportation brokers" to engage in similar kickback schemes-*vis.,* such carriers and brokers charged Welch inflated prices for transportation services and remitted to Finke a portion of the payments made by Welch in order to continue receiving Welch's business and kept the remainder of such inflated payments for their own benefit. *Id.,* ¶ ¶ 10-11. Gilchrist kept a portion of the inflated payments for his own benefit and permitted Finke to keep the kickbacks he solicited, thereby stealing such sums from Welch and causing it to incur inflated transportation costs. *Id.,* ¶ 12. Gilchrist concealed the corrupt activities in part by paying the bribes and kickbacks in cash or by checks or money orders made payable to financial institutions without Finke's name appearing on the instruments. *Id.,* ¶ 13. Finke repeatedly instructed Gilchrist by telephone to send personal checks through the United States mail to Finke's residence or to deliver cash there by hand. *Id.,* ¶ 14. Although initially the demanded kickbacks amounted to only three to five dollars per truckload, during the last five years of the scheme Finke had demanded $4,000 per month; such later payments were made in cash and were hand-delivered to Finke by Gilchrist approximately every two months. *Id.,* ¶ 18. The charges on the invoices the defendants submitted to Welch for transportation services were inflated by at least fifteen percent and the defendants charged Welch a four-percent insurance surcharge which was not contained in the transportation contracts; in 1992 the insurance surcharge amounted to $113,000. *Id.,* ¶ 19. Welch also paid Northeast and Gilchrist approximately $324,000 in unnecessary "pallet return charges" since 1985. *Id.,* ¶ 20. In mid-1992 an un-named transportation carrier reported Finke's actions to Welch and together they brought the matter to the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1996 WL 607059 (W.D.N.Y.), RICO Bus.Disp.Guide 9200
**(Cite as: Not Reported in F.Supp.)**

attention of law enforcement officials. *Id.,* ¶¶ 15-16. Welch provides a representative list of sixteen invoice numbers, the respective date of each invoice (such dates spanning October 1985 through February 1993), the respective amount charged therein and the corresponding date that Welch paid each one. *Id.,* ¶ 113.

> FN1. Although the Complaint implies that Finke's employment with Welch terminated in 1992 (*id.,* ¶ 7), it alleges that the bribery scheme continued beyond such date.

**\*2** Welch asserts that it is itself an enterprise and that the defendants, Finke and other not-named brokers and carriers who participated in the kickback schemes were an associated-in-fact enterprise and that both of such enterprises at all times pertinent to this case engaged in activities which affected interstate commerce as such terms and phrases are used in RICO. *Id.,* ¶¶ 24-25. Welch alleges, as RICO predicate acts, the following: that "Gilchrist repeatedly caused letters and other matters to be delivered by the United States Postal Service" including, *inter alia,* "mailings containing transportation bills and invoices which were mailed to Welch, the mailing of inflated payments from Welch to Gilchrist and Northeast, and the mailing of payments to * * * Finke" all of which amounted to repeated violations of 18 U.S.C. § 1341 (mail fraud) (Complaint, ¶ 26); that "Gilchrist repeatedly caused to be made and made interstate telephone calls and other uses of wire services" including "telephone calls between * * * Gilchrist and Finke for the purpose of organizing, establishing and executing the schemes" constituting repeated violations of 18 U.S.C. § 1343 (wire fraud) (Complaint, ¶ 27); that "Gilchrist used facilities in interstate commerce, including the mail, to promote, manage, establish [and] carry on * * * unlawful activity" and to facilitate such, each use constituting a violation of 18 U.S.C. § 1952 ("the Travel Act") (Complaint, ¶ 28); that "Gilchrist * * * conducted and attempted to conduct financial transactions which in fact involved the proceeds of specified unlawful activity knowing that the transactions were designed in whole or in part to conceal specified unlawful activity, in repeated violation of" 18 U.S.C. § 1956 ("Money Laundering") (Complaint, ¶ 29); that "Gilchrist knowingly engaged in and attempted to engage in monetary transactions in criminally derived property that was of value greater than $10,000 and was derived from specified unlawful activity, in repeated violation of" 18 U.S.C. § 1957 ("Money Laundering under 18 U.S.C. § 1957") (Complaint, ¶ 30); that "Gilchrist transported, transmitted and transferred in interstate commerce money of the value of $5,000 or more knowing the same to have been stolen, converted and taken by fraud * * * [and that] Gilchrist, having devised and intended to devise a scheme or artifice to defraud and to obtain money by means of false or fraudulent pretenses [and] representations * * *, transported or caused to be transported in interstate commerce in the execution and concealment of the scheme and artifice to defraud, money having a value of $5,000 or more, in repeated violation of" 18 U.S.C. § 2314 ("the National Stolen Property Act") (Complaint, ¶ 31); that "Gilchrist repeatedly stole property the value of which exceeded $1,000" in violation of section 155.30(1) of New York's Penal Law ("PL") (grand larceny in the fourth degree) (Complaint, ¶ 32); that "Gilchrist, without the consent of Welch, repeatedly conferred, offered and agreed to confer benefits upon * * * Finke with the intent or understanding that such benefits would influence Finke's conduct in relation to Welch's affairs, the value of which benefits exceeded one thousand dollars and caused economic harm to Welch in an amount exceeding two hundred fifty dollars, in repeated violation of" PL § 180.03 ("Commercial Bribing" in the first degree) (Complaint, ¶ 33). In addition to alleging that each of these acts serves as a racketeering predicate act required for RICO actions, Welch further alleges that each of such acts separately constitutes an instance of "racketeering activity" as defined in 18 U.S.C. § 1961(1) and that the acts were "interrelated" and "part of a common and continuous pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5). Complaint, ¶¶ 34-35. Welch claims that "Gilchrist * * * maintained, directly or indirectly, an interest in or control of" the associated-in-fact enterprise "through a pattern of racketeering activity" in violation of 18 U.S.C. § 1962(b) (Complaint, ¶ 56), that "Gilchrist and * * * Finke along with others" conspired to maintain an interest in or control of the associated-in-fact enterprise in violation of 18 U.S.C. § 1962(d) (Complaint ¶ 45), that "Gilchrist * * * conducted or participated, directly or indirectly, in the conduct of the affairs" of the associated-in-fact enterprise "through a pattern of racketeering activity" in violation of 18 U.S.C. § 1962(c) (Complaint, ¶ 78), that "Gilchrist and * * * Finke along with others" conspired to conduct or participate in the conduct of the associated-in-fact enterprise in violation of 18 U.S.C. § 1962(d) (Complaint, ¶ 67), that "Gilchrist along with others" conspired with Finke in violation of 18 U.S.C. § 1962(d) to enable Finke to maintain an interest in or control of Welch

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                           Page 3
Not Reported in F.Supp., 1996 WL 607059 (W.D.N.Y.),   RICO Bus.Disp.Guide 9200
**(Cite as: Not Reported in F.Supp.)**

through a pattern of racketeering activity (an underlying violation of 18 U.S.C. § 1962(b)) (Complaint, ¶ 89) and that "Gilchrist along with others" conspired with Finke in violation of 18 U.S.C. § 1962(d) to enable Finke to conduct or participate in the conduct of the affairs of Welch through a pattern of racketeering activity (an underlying violation of 18 U.S.C. § 1962(c)) (Complaint, ¶ 100).  Welch also asserts a cause of action against Northeast for breaches of contract and of the duty of good faith and fair dealing (*Id.*, ¶ ¶ 101-110) and causes of action against Gilchrist and Northeast for fraud, conversion and unjust enrichment (*Id.*, ¶ ¶ 111-117, 121-126) and requests an accounting to determine the amount of overpayments made to the defendants (Complaint, ¶ ¶ 118-120).

The defendants move for dismissal of all the fraud-based claims, arguing that the pertinent allegations fail to comply with FRCvP 9(b)'s particularity requirement, and for dismissal of the six RICO causes of action, arguing that each fails to state a claim upon which relief may be granted for variously stated reasons.[FN2]

> FN2. Gilchrist moved to dismiss all the RICO causes of action.  Contrary to Welch's contention contained in footnote 4 of Plaintiff Welch Foods' Memorandum of Law in Opposition to Defendants' Motion to Dismiss (at p. 7), Northeast is not alleged to have committed any of the predicate acts or to have violated any RICO subsections and is not named in any of the Complaint's six RICO Causes of Action;  therefore, there are presently no RICO claims lodged against Northeast.

***3** In passing on a motion to dismiss, this Court evaluates the allegations in the light most favorable to the plaintiff and such will be denied unless the pleadings present no set of facts from or upon which the plaintiff could be entitled to relief.  *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  The same lenient standard is to be applied to RICO causes of action.  *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 249-250 (1989).

RICO renders any person civilly liable who, *inter alia,* acquires or maintains an interest in or a significant quantum of control of an enterprise engaged in interstate commerce through a pattern of racketeering activity or who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs through a pattern of racketeering activity or who conspires to do any of such.  *H.J. Inc.,* at 232-233;  *see also* 18 U.S.C. § § 1962(b)-1962(d) & 1964(c).  If a "defendant engages in a pattern of racketeering activity in a manner forbidden by [the RICO] provisions, and the racketeering activities injure the plaintiff in [its] business or property, the plaintiff has a claim under" RICO.  *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 495 (1985).  "A 'pattern of racketeering activity' is defined as requiring the commission of at least two of the predicate acts enumerated in 18 U.S.C. § 1961(1) within a ten year period."  *Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1344 (2nd Cir.1994).  So-enumerated predicate acts of racketeering activity are:

"(1) * * * (A) any act or threat involving * * * bribery * * * which is chargeable under State law and punishable by imprisonment for more than one year;  (B) any act which is indictable under any of the following provisions of title 18, United States Code:  * * * section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), * * * section 1952 (relating to racketeering), * * * section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity) * * * and [section] 2315 (relating to interstate transportation of stolen property) * * *."  18 US.C. § 1961(1).

Gilchrist argues that the predicate acts are insufficiently pled and lack continuity and thus that Welch has failed to plead a pattern of racketeering activity.

To properly plead mail or wire fraud, one must set forth the existence of a scheme to deceive or defraud, that a particular defendant knowingly or intentionally participated in such scheme and that, in furtherance of such scheme, he knowingly used or caused to be used the mails or wire communications.  *In re Crazy Eddie Securities Litigation,* 812 F.Supp. 338, 347 (E.D.N.Y.1993).  The essential elements to adequately plead a violation of the National Stolen Property Act are that the defendant caused to be transported, transmitted or transferred in interstate commerce property-defined under the statute to include money-having a value of at least $5,000 knowing that such had been stolen, converted or taken by fraud.  *U.S. v. Wallach,* 935 F.2d 445, 466 (2nd Cir.1991), *on remand,* 788 F.Supp. 739, (S.D.N.Y.), *aff'd,* 979 F.2d 912 (1992), *cert. denied,* 508 U.S. 939 (1993).  The definition of fraud is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1996 WL 607059 (W.D.N.Y.), RICO Bus.Disp.Guide 9200  
**(Cite as: Not Reported in F.Supp.)**

Page 4

essentially the same under all three. *Ibid.* Predicate racketeering acts which sound in fraud such as the instant allegations of mail fraud and wire fraud and of violations of the National Stolen Property Act must be pled in accordance with the stricter pleading requirements of FRCvP 9(b). *Colony at Holbrook, Inc. v. Strata G.C., Inc.,* 928 F.Supp. 1224, 1231 (E.D.N.Y.1996). FRCvP 9(b) requires that, in all averments of fraud, the circumstances constituting fraud "shall be stated with particularity" but permits "[m]alice, intent, knowledge, and other condition of mind of a person" to be averred generally. To satisfy FRCvP 9(b) the Complaint must specify the contents of the misrepresentations, who was involved and the time when and the place where the communications took place and must contain factual allegations demonstrating fraudulent intent. *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2nd Cir.1993). FRCvP 9(b) must also be read in conjunction with FRCvP 8(a) which requires "short and plain statement [s]" of claims for relief. *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2nd Cir.1987). The stricter pleading standard required by FRCvP 9(b) is satisfied where the nature and mechanics of the underlying conduct are sufficiently detailed in the Complaint such that a strong implication of fraud arises therefrom and the defendants are adequately apprised of the charged conduct so as to be able to frame a responsive pleading. *See DiVittorio,* at 1247 (FRCvP 9(b), and, generally, 2A James W. Moore et al., Moore's Federal Practice ¶ 9.03[1] (1996).

**\*4** Welch has provided adequate details about the alleged kickback scheme and the related fraud and the National Stolen Property Act allegations to satisfy FRCvP 9(b). It specifically alleges that the fraudulent mailings included various transportation bills and invoices containing false or inflated charges which were mailed to Welch, the mailing of inflated payments from Welch to Gilchrist and the mailing of some of the kickback payments to Finke. Welch also provides a representative list of sixteen invoice numbers containing allegedly falsified charges, the individual dates of such invoices and the respective dates on which such were paid by Welch. Welch also alleges that Finke had solicited kickbacks from Gilchrist for approximately ten years prior to such being discovered and that Finke had instructed Gilchrist "on the telephone" to send the kickbacks through the mail on certain occasions and on others to deliver such by hand. Additionally, Welch generally alleges that other telephone calls took place between Gilchrist and Finke for the purpose of organizing, establishing and executing the kickback scheme. While such latter allegations are not particularized, the underlying facts are peculiarly within Gilchrist's-and Finke's-knowledge. Furthermore, this Court finds it difficult to imagine how Gilchrist would have communicated with Finke and/or Welch without the use of the mails or interstate wires under the circumstances alleged. *See, e.g., Spira v. Nick,* 876 F.Supp. 553, 559 & fn. 1 (S.D.N.Y.1995) (it is sufficient if, in furtherance of the scheme, the use of wires or the mails was reasonably foreseeable). Finally, Welch avers that Gilchrist paid to Finke bribes which represented some of the proceeds of the kickback scheme in the amount of $4,000 every month for at least five years and delivered by hand-*i.e.,* transported-some of such later payments. Overall, the Complaint is not conclusory and provides a sufficient description of Gilchrist's fraudulent conduct and participation in the kickback scheme together with Finke's conduct and Welch's reasonable reliance thereon to justify a strong inference of fraud. Welch has complied with FRCvP 9(b) with respect to the alleged fraudulent conduct within and as part of the adequately pled predicate acts of mail and wire fraud and of violations of the National Stolen Property Act and has provided Gilchrist with sufficient specificity to afford him the opportunity to frame an appropriate response thereto.

Welch also alleges as predicate acts that Gilchrist repeatedly (1) violated the Travel Act, (2) engaged in Money Laundering, (3) engaged in Money Laundering under 18 U.S.C. § 1957, (4) committed acts of Commercial Bribing in violation of state law and (5) committed larceny in violation of state law. Inasmuch as an alleged violation of a state's larceny law is not statutorily enumerated as a RICO predicate act such will not be considered further in relation to the RICO allegations in this action. 18 U.S.C. § 1961(1); *Browning Ave. Realty Corp. v. Rosenshein,* 774 F.Supp. 129, 137 (S.D.N.Y.1991). The remaining predicate acts will be evaluated exclusively under the more lenient pleading standards of FRCvP 8(a). *McLaughlin v. Anderson,* 962 F.2d 187, 194 (2nd Cir.1992).

**\*5** A claim of Commercial Bribing in the first degree under New York law requires allegations that a person conferred, offered or agreed to confer a benefit of value exceeding one thousand dollars upon an employee or agent without the consent of his employer or principal with the intent to influence the employee's or agent's conduct in relation to his employer's or principal's affairs, and caused economic harm exceeding two hundred fifty dollars

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 5
Not Reported in F.Supp., 1996 WL 607059 (W.D.N.Y.),   RICO Bus.Disp.Guide 9200
**(Cite as: Not Reported in F.Supp.)**

to the employer or principal. PL § 180.03. Welch's pleading closely tracks New York's statute prohibiting Commercial Bribing. In addition, Welch specifically avers that Gilchrist paid Finke several thousands of dollars in kickbacks or bribes, that it was resultingly harmed by substantially more than two hundred and fifty dollars and that such was specifically intended to enable Gilchrist and/or Northeast to continue receiving Welch contracts through Finke's intervention. Welch has surmounted its minimal burden at this stage and has satisfactorily alleged that Gilchrist committed predicate acts of Commercial Bribing.

A properly pled claim of Money Laundering under 18 U.S.C. § 1957 requires allegations that the defendant deposited, withdrew, transferred or exchanged funds or a monetary instrument by, through or to a financial institution of a value exceeding $10,000 and representing proceeds derived from specified unlawful activity. 18 U.S.C. § § 1957(a) & 1957(f); U.S. v. Sokolow, 91 F.3d 396, 408 (3rd Cir.1996). The specifically enumerated unlawful activity includes Commercial Bribing as well as the other predicate acts alleged in this action. 18 U.S.C. § § 1957(f)(3), 1956(c)(7) & 1961(1). Welch's pleading adequately tracks the statute's elements. Gilchrist argues that Welch has failed to particularize any single transaction exceeding $10,000. While Welch provides greater details concerning various transactions with purported value below such an amount, liberally read the Complaint alleges that Gilchrist engaged in a number of prohibited transactions each of an amount greater than $10,000. *See* Complaint, ¶ 30. Furthermore, the acts pled strongly imply deposits, withdrawals or exchanges through financial institutions of funds or monetary instruments representing the proceeds derived from the bribery scheme; the precise details of every individual transaction are more accessible to Gilchrist. It is not relevant that Welch may not be able to sustain its burden at a later phase in these proceedings; Welch has satisfied its minimal burden at this stage. Predicate acts of alleged violations of 18 U.S.C. § 1957 have been adequately pled as against Gilchrist and Welch should be permitted to pursue discovery on the matter.

To properly plead a Money Laundering violation requires allegations that, *inter alia,* a person conducted a financial transaction which involved the proceeds of specified unlawful activity knowing that such proceeds had been realized from some form of felonious activity and that the transaction was designed to conceal the nature or the source of the proceeds of the enumerated unlawful activity. 18 U.S.C. § 1956(a)(1)(B)(i); U.S. v. Heaps, 39 F.3d 479, 483 (4th Cir.1994). As before, the specifically enumerated unlawful acts include Commercial Bribing and the other predicate acts remaining in this action. 18 U.S.C. § § 1956(c)(7) & 1961(1). Welch adequately tracks the statutory requirements. *See* Complaint, ¶ 29. Further, Welch has alleged several instances of felonious Commercial Bribing under New York law-acts which imply numerous transactions involving financial institutions-and that the scheme was designed to conceal the payments of kickbacks or bribes. The Complaint adequately pleads that Gilchrist committed predicate acts of Money Laundering violations.

**\*6** The necessary elements to plead a violation of the Travel Act are that a person used the mail or a facility of interstate commerce-such a facility including a telephone-with the intent either to distribute the proceeds of enumerated unlawful acts proscribed by State law-*e.g.,* bribery-or to facilitate the carrying on of any such unlawful act and thereafter performed an additional act in furtherance of such unlawful act. 18 U.S.C. § 1952(a); U.S. v. Jenkins, 943 F.2d 167, 172 (2nd Cir.), *cert. denied,* 502 U.S. 1014 (1991). Commercial Bribing is one of the enumerated unlawful acts. Perrin v. United States, 444 U.S. 37, 50 (1979); 18 U.S.C. § 1952(b)(2). Welch has adequately pled the necessary elements to allege a violation of the Travel Act. *See* Complaint, ¶ 29. Additionally, the Complaint alleges use of the mails and of telephone facilities and describes the bribery scheme including the distribution through payments of kickbacks representing some of the proceeds of the scheme and that thereafter measures were taken to conceal the scheme and that such course of conduct was repeated over several years. Welch has adequately alleged, as predicate acts, that Gilchrist repeatedly violated the Travel Act.

Gilchrist argues that Welch has failed to plead a pattern of racketeering activity. Under RICO the phrase " 'pattern of racketeering activity' requires at least two [predicate] acts of racketeering activity * * * within ten years" of each other. 18 U.S.C. § 1961(5). To establish a pattern of racketeering activity, a plaintiff "must show that the racketeering predicate acts are related, *and* that they amount to or pose a threat of continued criminal activity." H.J. Inc., 492 U.S. at 239. Thus, in addition to the required minimum showing of two predicate acts within a ten-year period, RICO predicate acts must have some continuity and the acts must bear a relationship to one another. *Id.,* at 242. The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK    Document 165-35    Filed 07/07/2006    Page 6 of 8

Not Reported in F.Supp.  Page 6
Not Reported in F.Supp., 1996 WL 607059 (W.D.N.Y.),   RICO Bus.Disp.Guide 9200
**(Cite as: Not Reported in F.Supp.)**

continuity element "is both a closed-and open-ended concept." *Id.,* at 241. Welch has adequately pled predicate acts of mail and wire fraud, Money Laundering, Money Laundering under 18 U.S.C. § 1957, Commercial Bribing, and of violations of the National Stolen Property Act and the Travel Act. All the conduct alleged in the Complaint was related to the kickback scheme and focused primarily on Gilchrist's participation therein. Welch was the common and the only victim of the scheme. Such adequately establishes a relationship of the racketeering predicate acts to each other. Furthermore, Welch has clearly alleged continuity, asserting that such related acts occurred over a period of approximately ten years. Thus, the Complaint pleads a series of sufficiently related predicate acts repeated over a substantial period of time which demonstrates closed-ended continuity at the pleading stage. Gilchrist's belief that, because the conduct complained of had ceased prior to the filing of this action, "open-ended" continuity cannot be properly pled is misplaced. Discovery and termination of the kickback scheme does not remove the threat of continuity; the threat of continuity in the context of an open-ended period of racketeering activity must be viewed at the time the racketeering activity allegedly occurred. *U.S. v. Busacca,* 936 F.2d 232, 238 (6th Cir.), *cert. denied,* 502 U.S. 985 (1991). On the facts alleged by Welch, the kickback scheme had been ongoing for years and would have continued but for its discovery. *U.S. v. Gelb,* 881 F.2d 1155, 1163-1164 (2nd Cir.) (continuity satisfied where scheme, involving one victim and repeated predicate acts over five year-period, would have continued but for discovery), *cert. denied,* 493 U.S. 994 (1989); *U.S. v. Coiro,* 922 F.2d 1008, 1017 (2nd Cir.) (numerous predicate acts were part of consistent pattern that was likely to continue into the indefinite future absent outside intervention), *cert. denied,* 501 U.S. 1217 (1991). Under either a closed-or open-ended analysis, Welch has adequately pled a pattern of racketeering activity. See *Com-Tech Associates v. Computer Associates Inter.,* 753 F.Supp. 1078, 1091 (E.D.N.Y.1990) (Applying *H.J. Inc.,* a single scheme to defraud a single victim and involving several predicate acts which are related with some degree of continuity sufficiently pleads a "pattern of racketeering activity" under RICO.), *aff'd,* 938 F.2d 1574 (2nd Cir.1991).

**\*7** Gilchrist argues that 18 U.S.C. § 1962(b) applies only to illicit takeovers of legitimate businesses and does not apply to unlawful associated-in-fact enterprises. There is no merit to such. An associated-in-fact enterprise is broadly defined to include any "group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). It is well settled that RICO equally applies to ostensibly legitimate, illegitimate and criminal enterprises. *U.S. v. Turkette,* 452 U.S. 576, 585 (1981).

Gilchrist also argues that Welch has failed to plead an injury resulting from Gilchrist's alleged acquisition or control of an interest in the associated-in-fact enterprise. 18 U.S.C. § 1962(b) prohibits the acquisition or maintenance of an "interest in or control of" an enterprise through a pattern of racketeering activity. As used in RICO, interest in an enterprise encompasses all property rights and is understood to refer to a right, claim, title or legal share in the enterprise. *United States v. Jacobson,* 691 F.2d 110, 112-113 (2nd Cir.1982). Similarly, control of an enterprise connotes, *inter alia,* the power to manage, direct or govern the enterprise. Black's Law Dictionary 329 (6th ed. 1990). The Complaint does not allege any facts which would support an inference that Gilchrist had an interest in or control of the associated-in-fact enterprise. The Complaint implies that Finke controlled such and that other transportation brokers and carriers, such including Gilchrist and Northeast, participated in the conduct of such. Mere participation in an enterprise does not plead a violation of subsection 1962(b). Therefore, Welch's Second Cause of Action must be dismissed for failing to state a claim upon which relief may be granted.

Gilchrist contends that Welch has failed to adequately plead a conspiracy. A RICO conspiracy claim must allege an agreement involving the defendant to participate in at least two predicate acts, and his knowledge that such acts were part of a pattern of racketeering activity which extended beyond the defendant's individual role. *U.S. v. Minicone,* 960 F.2d 1099, 1108 (2nd Cir.), *cert. denied,* 503 U.S. 950, *and cert. denied sub nom. Inserra v. United States,* 506 U.S. 869 (1992). Welch specifically alleges that Gilchrist conspired and agreed with Finke to artificially inflate Welch's transportation costs and to subsequently pay a portion of such increase to Finke as a kickback so that Finke would continue awarding Welch's transportation contracts to Gilchrist and/or Northeast, that such conduct encompassed various predicate racketeering acts and that such *modi operandi* had been ongoing for approximately ten years. Welch bolsters its claims with factual allegations concerning inflated rates, insurance and pallet-return surcharges, a representative list of invoice dates and respective

Case 7:04-cv-08223-KMK     Document 165-35     Filed 07/07/2006     Page 7 of 8

Not Reported in F.Supp.                                                                                              Page 7
Not Reported in F.Supp., 1996 WL 607059 (W.D.N.Y.),   RICO Bus.Disp.Guide 9200
**(Cite as: Not Reported in F.Supp.)**

amounts charged therein and the respective resulting payment dates, the amounts of some of the kickback payments and the manner some of such were delivered all of which reasonably implies that Gilchrist agreed to commit at least two predicate racketeering acts which were part of the pattern of racketeering which extended beyond solely his individual conduct and which furthered Finke's control and direction of the associated-in-fact enterprise and his participation in the conduct of Welch's transportation affairs all to Welch's damage.

**\*8** Gilchrist repeatedly maintains that Welch fails to allege a distinct "acquisition injury." *See, e.g.,* Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1063 (2d Cir.1996). Section 1962(b) prohibits a person from acquiring *or* maintaining an interest in or control of an enterprise through a pattern of racketeering activity. Welch has stated a claim upon and for which relief may be granted by having adequately pled that Gilchrist and others conspired with Finke to enable him to "[maintain his] interest in or control of" the associated-in-fact enterprise through a pattern of racketeering activity and that such "injured" Welch. *See* Complaint, ¶ 45.

In a closely related argument, Gilchrist claims that Welch's allegation that, in violation of 18 U.S.C. § 1962(d), Gilchrist conspired with Finke to enable Finke to maintain an interest in or control of the Welch-enterprise through a pattern of racketeering activity should be dismissed inasmuch as Finke did not maintain such an interest in or control of Welch. The Complaint expressly states that the entire Welch corporation is the subject enterprise. Complaint ¶ ¶ 1, 25. Welch argues that Finke controlled Welch's national transportation functions. However, such are simply a fraction of Welch's operations and is not equivalent to a proprietary interest in or control of Welch's overall operations. The Complaint fails to plead that Finke had a right, claim, title or legal share in Welch or that he had the power to direct or govern the corporate enterprise and, therefore, the Fifth Cause of Action fails to state a claim upon which relief may be granted.

Gilchrist repeatedly argues throughout its papers that Welch fails to adequately plead damages proximately caused by the alleged RICO violations. A plaintiff must allege injury "caused by a pattern of racketeering activity violating section 1962 or by individual RICO predicate acts." Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 23 (2nd Cir.1990). Where the plaintiff alleges the statutory RICO elements, "the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with" the acquisition, control or "conduct of an enterprise." *Sedima, S.P.R.L.,* at 497. The predicate acts or RICO pattern "proximately cause a plaintiff's injury if they are a substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence." *Hecht,* at 23-24. Welch alleges that it was damaged by the excessive amount it had to pay in obtaining transportation services caused in part by the individual predicate acts in which Gilchrist engaged and which make up the pattern of racketeering activity. Gilchrist's alleged conduct was a sufficiently significant factor in causing the asserted pecuniary harm which was reasonably and sufficiently foreseeable and anticipated as a natural consequence of such conduct to be an adequate pleading of proximate causation in the surviving RICO causes of action.

**\*9** The defendants also move to dismiss Welch's common law fraud action for its failure to comply with FRCvP 9(b). In addition to incorporating the earlier allegations made in the Complaint, the Ninth Cause of Action specifically alleges that the defendants falsely represented that the charges in the invoices they sent to Welch were for transportation services rendered, that in reality such were falsely inflated and contained, *inter alia,* improper insurance and pallet-return surcharges, that the defendant knew such representations were false, that such were made to obfuscate the bribery scheme and to retain a share of the funds improperly obtained or stolen from Welch, that Welch reasonably relied on the false statements contained in the invoices by paying the artificially inflated amounts and by continuing to award Northeast transportation contracts and that Welch was resultantly monetarily damaged by the overpayments it made for transportation services. Welch also provides a representative list of sixteen invoice numbers, the respective dates of such, the respective amounts charged therein and the respective dates such were paid by Welch. The factual allegations give rise to a strong inference of fraud and provide concrete representative samples of some of the specific instances of the alleged misrepresentations. The Complaint gives the defendants fair notice of the charged fraudulent conduct and is sufficiently specific to permit them to frame a response and thus meets the standard of FRCvP 9(b).

Accordingly, it is hereby *ORDERED* that the

Not Reported in F.Supp. Page 8
Not Reported in F.Supp., 1996 WL 607059 (W.D.N.Y.),   RICO Bus.Disp.Guide 9200
**(Cite as: Not Reported in F.Supp.)**

defendant's motion is granted to the extent that Welch's Second and Fifth Causes of Action are dismissed for failing to state a claim upon which relief may be granted and that the defendants' motion is denied in its remainder.

W.D.N.Y.,1996.
Welch Foods Inc. v. Gilchrist
Not Reported in F.Supp., 1996 WL 607059 (W.D.N.Y.),   RICO Bus.Disp.Guide 9200

Briefs and Other Related Documents (Back to top)

• 1:93cv00641 (Docket) (Aug. 04, 1993)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.