UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X :
                                                                 :
WORLD WRESTLING ENTERTAINMENT, INC.,                             :
                                                                 :    04 CV 8223 (KMK)
                                      Plaintiff,                 :    (ECF CASE)
                                                                 :
            - against -                                          :
                                                                 :    July 31, 2006
JAKKS PACIFIC, INC.; JAKKS PACIFIC (H.K.)                        :
LIMITED; ROAD CHAMPS LIMITED; THQ, INC.;                         :
THQ/JAKKS PACIFIC LLC; STANLEY SHENKER                           :
AND ASSOCIATES, INC.; STANLEY SHENKER;                           :
BELL LICENSING, LLC; JAMES BELL; JACK                            :
FRIEDMAN; STEPHEN BERMAN; JOEL                                   :
BENNETT; and BRIAN FARRELL,                                      :
                                                                 :
                                      Defendants.                :
                                                                 :
-----------------------------------------------------------------X :


## REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S
## MOTION FOR REARGUMENT OF THE COURT'S DISMISSAL OF PLAINTIFF
## WORLD WRESTLING ENTERTAINMENT, INC.'S SHERMAN ACT CLAIM
## PURSUANT TO THE COURT'S MARCH 31, 2006 OPINION AND ORDER


William O. Purcell (WP 5001)
KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP
599 Lexington Avenue
New York, New York 10022-6030
(212) 536-3900 (phone)
(212) 536-3901 (fax)

Jerry S. McDevitt
Curtis B. Krasik
Amy L. Barrette
KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, Pennsylvania 15222
(412) 355-6500 (phone)
(412) 355-6501 (fax)

Attorneys for Plaintiff, World Wrestling Entertainment, Inc.

## TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................1

II.     ARGUMENT ................................................................................................2

        A.      By Its March 31 Opinion, This Court Became The First Court To Hold That A
                Victim Of Anticompetitive Conduct Cannot Plead Antitrust Injury As A Matter
                Of Law When The Defendants Also Corrupt The Victim's Fiduciaries .................2

        B.      WWE Is Entitled To Prove That THQ's Bid Would Have Been Higher Than The
                Bid That THQ Collusively Submitted With Jakks ..................................................5

III.    CONCLUSION..............................................................................................10

# TABLE OF AUTHORITIES

Cases:                                                                          Page:

*Barrett v. United States Banknote Corp.*, No. 7420 (RPP), 1992 WL 232055
    (S.D.N.Y. Sept. 2, 1992)......................................................................................3

*Bennett v. Cardinal Health Marmac Distribs.*, No. 02 CV 3095 (JG),
    2003 WL 21738604 (E.D.N.Y. July 14, 2003)................................................8

*Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869 (3d Cir. 1995) ...................................7, 8

*Calnetics Corp. v. Volkswagen*, 532 F.2d 674 (9th Cir. 1976)........................................4

*City of Atlanta v. Ashland-Warren, Inc.,* No. C 81-106A, 1981 WL 2187
    (N.D. Ga. Aug. 20, 1981)..................................................................................3

*Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 173 (S.D.N.Y. 2006) .........................8

*Engine Specialists v. Bombardier Ltd.*, 605 F.2d 1 (1st Cir. 1979)................................8

*Federal Paper Board v. Amata*, 693 F. Supp. 1376 (D. Conn. 1988) ............................4

*George Haug Co. v. Rolls Royce Motorcars, Inc.*, 148 F.3d 136 (2d Cir. 1998) ...........8

*Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391 (7th Cir. 1993)..............8

*In re NASDAQ Market-Makers Antitrust Litig.*, 894 F. Supp. 703 (S.D.N.Y. 1995) .....................7

*In re Tamoxifen Citrate Antitrust Litig.*, 429 F.3d 370 (2d. Cir. 2005) ...........................8

*Mathias v. Daily News*, L.P., 152 F. Supp. 2d 465 (S.D.N.Y. 2001) ..............................8

*Mendez v. Radec Corp.*, 411 F. Supp. 2d 347 (W.D.N.Y. 2006)....................................1

*Municipality of Anchorage v. Hitachi Cable*, 547 F. Supp. 633 (D. Alaska 1982)........................2

*Phillip Morris, Inc. v. Heinrich*, No. 95 CIV. 0328 (LMM), 1996 WL 363156
    (S.D.N.Y. June 28, 1996)...........................................................................3, 4, 5

*Roman v. Cessna Aircraft Co.*, 55 F.3d 542 (10th Cir. 1995) ........................................7

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ......................................................................7

*SmithKline Beecham v. E. Applicators*, No. CIV. A. 99-CV-6552, 2002 WL 1197763
  (E.D. Pa. May 24, 2002) ............................................................................................3, 4, 5

*Sterling Nelson & Sons v. Rangen, Inc.*, 235 F. Supp. 393 (D. Idaho 1964)...................................4

*Twombly v. Bell Atlantic Corp.*, 425 F.3d 99 (2d Cir. 2005).........................................................6, 7

*Union City Barge Line, Inc. v. Union Carbide Corp., E.W.*, 823 F.2d 129 (5th Cir. 1987)............5

*USAirways Group, Inc. v. British Airways PLC*, 989 F. Supp. 482 (S.D.N.Y. 1997).....................8

*Williams Elecs. Games  v. Garity*, 366 F.3d 569 (7th Cir. 2004) .................................................2-3

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 425 F. Supp. 2d 484 (S.D.N.Y. 2006) ..... *passim*

*Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co.*, No. 00 CIV. 5663,
  2001 WL 1468168 (S.D.N.Y. Nov. 19, 2001)..................................................................8

Rules:

Fed.R.Civ.P. 15(a) .........................................................................................................................3

Rule 12(b)(6)..............................................................................................................................8, 9

# I. INTRODUCTION

Defendants' Opposition[1] to World Wrestling Entertainment, Inc.'s ("WWE") motion for reargument of the Court's dismissal of WWE's Sherman Act claim pursuant to the Court's March 31, 2006 Opinion and Order (the "March 31 Opinion"), *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.,* 425 F. Supp. 2d 484 (S.D.N.Y. 2006), conspicuously fails to squarely address—let alone overcome—the principal bases as to why WWE respectfully submits that the Court's ruling was in error:[2]

First, the Court's holding that WWE could not, as a matter of law, plead antitrust injury arising from Defendants' agreement not to compete for the WWE videogame license because Defendants had also bribed WWE's fiduciaries prior to the antitrust violations, is contrary to the well-settled principle that commercial bribery involving collusion among competitors violates the Sherman Act's prohibition against price-fixing.

Second, in violation of controlling legal standards (particularly in the context of antitrust claims), the Court did not accept as true, and draw all inferences in WWE's favor from, WWE's core allegation that "but for" THQ's anticompetitive agreement with Jakks not to submit an independent bid for the WWE videogame license, THQ would have submitted and WWE would have accepted a bid of at least a 20% royalty rate in contrast to the 6-10% royalty rate of the collusive bid THQ and Jakks actually submitted. Irrespective of any bids the Court prematurely concluded (by improperly resolving disputed factual issues as to the causation of WWE's

---

[1] All Defendants joined in the Memorandum of Law of the Jakks Defendants in Opposition to WWE's Motion for Reargument, which therefore is referred to herein as Defendants' "Opposition."

[2] In particular, Defendants' repeated claim that WWE's motion for reargument somehow fails to comply with Local Rule 6.3 is incorrect. WWE's Notice of Motion explicitly references Local Rule 6.3 as the basis for its motion, and WWE's Memorandum of Law in Support of its Motion for Reargument (the "Opening Brief") sets forth the controlling law and factual matters that WWE respectfully submits that the Court overlooked in its March 31 Opinion. *See Mendez v. Radec Corp.,* 411 F. Supp. 2d 347, 350 (W.D.N.Y. 2006) (a motion for reconsideration need only "point[] out any outright factual mistakes or clear errors of law in [the Court's] prior decision").

injuries against WWE on a motion to dismiss) that WWE supposedly did not learn about as a

result of Shenker and Bell's corruption, WWE has been directly injured by the reduction in

competition which denied WWE a higher price than the collusive bid. Whether the THQ bid

price would have been higher than, lower than, or equal to other offers that could have been

received from other non-colluding bidders absent the bribery of WWE's agents is irrelevant to

the presence of antitrust injury.[3]

## II. ARGUMENT

**A.    By Its March 31 Opinion, This Court Became The First Court To Hold That A Victim Of Anticompetitive Conduct Cannot Plead Antitrust Injury As A Matter Of Law When The Defendants Also Corrupt The Victim's Fiduciaries**

In its March 31 Opinion, the Court cited no authority, and WWE is aware of no authority,

for the Court's unprecedented ruling that the victim of a bid rigging conspiracy cannot plead

antitrust injury as a matter of law when the Defendants also corrupt the victim's employee or

agent overseeing the bid process. In essence, the Court ruled that Defendants' antecedent

corruption of Shenker and Bell effectively insulated Defendants from antitrust liability for their

subsequent antitrust violations.

Not surprisingly, Defendants' Opposition does not respond, because Defendants cannot

respond, to the authorities cited in WWE's Opening Brief that hold to the contrary: "When

bribery is coupled with other acts tending to restrain trade, a claim under the Sherman Act may

be established." *Municipality of Anchorage v. Hitachi Cable,* 547 F. Supp. 633, 645 (D. Alaska

1982); *see also Williams Elecs. Games v. Garrity,* 366 F.3d 569, 578 (7th Cir. 2004) (Chief

---

[3] Properly viewed as such, Defendants' Opposition and the Court's March 31 Opinion both fundamentally mischaracterize WWE's antitrust injury argument in describing it as, "'merely by asserting a per se violation' in the form of an 'allegedly corrupt agreement between [Jakks] and THQ to submit a joint bid, Plaintiff has established antitrust injury.'" Opposition at 9 (*quoting* March 31 Opinion, 425 F. Supp. 2d at 519).

Judge Posner noting that commercial bribery involving "collusion between competitors" would violate the Sherman Act's prohibition against price-fixing); *SmithKline Beecham v. E. Applicators*, No. CIV. A. 99-CV-6552, 2002 WL 1197763, at *7 (E.D. Pa. May 24, 2002) (allegations that defendants conspired to exclude submission of lower bids to enable corrupt agent to accept rigged bid properly alleged antitrust injury); *Phillip Morris, Inc. v. Heinrich*, No. 95 CIV. 0328 (LMM), 1996 WL 363156, at *9 (S.D.N.Y. June 28, 1996) (ruling that plaintiff "has alleged more than mere commercial bribery: it has alleged facts detailing an extensive bid rigging scheme involving the Defendants. This is precisely the type of conduct that the Sherman Act prohibits"); *City of Atlanta v. Ashland-Warren, Inc.*, No. C 81-106A, 1981 WL 2187, at *3 (N.D. Ga. Aug. 20, 1981) ("Here Western has alleged more than a case of buying influence or commercial bribery in that Western has alleged a combination and conspiracy to supplant competition in concrete contracting services . . . which have been held to be per se violations of § 1 of the Sherman Act.").

Defendants also do not respond, because they cannot respond, to the equally settled law that the victim of a bid rigging conspiracy that receives a lower price from colluding buyers than would have been received in the absence of such anticompetitive conduct suffers antitrust injury (Opening Brief at 6). Nor is any authority cited by the Court or by Defendants for the Court's erroneous notion that a victim of price-fixing must show that every possible bidder joined in the collusion. March 31 Opinion, 425 F. Supp. 2d at 521-22 & n.25. Indeed, such a requirement has been rejected by this Court. *See Barrett v. United States Banknote Corp.*, No. 7420 (RPP), 1992 WL 232055, at *5-7 (S.D.N.Y. Sept. 2, 1992) (granting defendants leave under Fed.R.Civ.P. 15(a) to assert a counterclaim for Sherman Act violations based on allegations "that without a price fixing or bid rigging scheme bids would have been higher as the result of free competition

among the alleged coconspirators," while noting that the collusive scheme "did nothing to prevent these other bidders [not involved in the scheme] from bidding").

Unable to respond to these well-established principles that mandate the reinstatement of WWE's Sherman Act claim, Defendants mischaracterize *Federal Paper Board v. Amata,* 693 F. Supp. 1376 (D. Conn. 1988) to attempt to justify the Court's ruling. As described at length in WWE's Opening Brief, however, *Amata*—and *Calnetics Corp. v. Volkswagen,* 532 F.2d 674, 687 (9th Cir. 1976) and *Sterling Nelson & Sons v. Rangen, Inc.,* 235 F. Supp. 393 (D. Idaho 1964), the other cases relied upon by the Court—are fundamentally inapposite to this case because none of those cases involved any allegation of collusion among competitors and thus did not involve any restraint of trade subject to the antitrust laws (Opening Brief at 9-10). Each of those cases solely alleged bribery, not bribery plus price-fixing by competitors. As Judge McKenna properly distinguished *Amata* in *Phillip Morris, Amata* simply stands for the proposition that "bribery, standing alone without allegations of collusion, does not establish [an] antitrust claim." *Phillip Morris,* 1996 WL 363156, at *9.[4] Such a situation is not present here. To construe *Amata* otherwise would place it irreconcilably in conflict with the authorities cited above—authorities that Defendants do not, and indeed cannot, dispute.

Defendants likewise do not dispute, because they cannot dispute, that the Court's ruling necessarily leads to the anomalous result that colluding competitors could immunize a bid rigging agreement from antitrust scrutiny simply by bribing the company's agent before tendering the collusive bid. In that regard, both *Phillip Morris* and *SmithKline Beecham*—which

---

[4] Defendants' attempt in a footnote to cherry-pick passages from *Amata* to speciously claim that it supposedly did involve collusion among competitors is baseless, and indeed directly contrary to Judge McKenna's characterization of the case in *Phillip Morris.* Defendants' tortured attempt to mischaracterize *Amata* as involving claims of collusion among competitors manifests Defendants' well-founded concern that, as WWE has contended throughout these proceedings, *Amata* is wholly inapposite to this case precisely because it did not involve such collusion.

4

the Court's March 31 Opinion overlooked and Defendants' Opposition fails to address despite

WWE's repeated references—specifically found antitrust injury resulting from the defendants'

collusion coupled with their bribery of the employees and/or agents overseeing the bid process.

The issue in those cases, and properly the issue in this case too, is whether there was collusion

between competitors, irrespective of any bribery of the individuals responsible for processing the

bid.

Significantly, *Phillip Morris* and *Smithkline Beecham* did not preclude the existence of

antitrust injury—as the Court did here—simply because the victim corporations, through the

corrupt employee/agent, accepted the rigged bids although they were not "forced" to do so.

March 31 Opinion, 425 F. Supp. 2d at 521-22.  Contrary to those cases, underlying the Court's

reasoning appears to be the erroneous premise that WWE, rather than those corrupting Shenker

and Bell, can and should be responsible for Shenker's and Bell's corrupt actions.  *Id.* at 522

("Plaintiff is really a victim of its own choice, albeit a choice influenced by its corrupt employee

to accept Defendants' joint (lower) bid in lieu of other higher bids.").  As a matter of antitrust

law, however, "an employer is not liable for an employee's criminal acts, committed outside her

or his scope of employment, if those actions injure the employer."  *Union City Barge Line, Inc.*

*v. Union Carbide Corp., E.W.,* 823 F.2d 129, 138-39 (5th Cir. 1987).  Accordingly, WWE most

certainly is <u>not</u> "a victim of its own choice"—it is a victim of Defendants' criminal conspiracy

that has suffered antitrust injury as a result of Defendants' restraint of trade in violation of the

antitrust laws.

**B.    WWE Is Entitled To Prove That THQ's Bid Would Have Been Higher Than The Bid That THQ Collusively Submitted With Jakks**

Based on the allegations of WWE's Amended Complaint, including, particularly, those

allegations described at length in WWE's Opening Brief, "THQ anticipated that royalty rates

paid to licensors would range between 19%-22% throughout 1998 in competitive situations

untainted by collusion" and "[t]he royalty rates in fact promised to WWE were between 50%-

60% lower than what THQ had paid, expected to pay during the relevant time period in 1998 and

would have paid in a truly competitive situation" (AC ¶¶ 160-162). As the Second Circuit ruled

in *Twombly v. Bell Atlantic Corp.,* 425 F.3d 99 (2d Cir. 2005)—the most recent Second Circuit

authority on antitrust pleading standards, which was not cited in the Court's March 31 Opinion

or Defendants' Opposition—even if the Court were to disagree with these allegations or believe

recovery to be "very remote and unlikely . . . that is not the test on a motion to dismiss."

*Twombly,* 425 F.3d at 119 (reversing dismissal of Sherman Act claim on motion to dismiss)

(internal quotations omitted). In violation of this controlling standard, neither the Court's March

31 Opinion nor Defendants' Opposition offers a basis for denying WWE the opportunity to

prove its case.

Effectively rejecting *Twombly* (and the other controlling authorities cited in WWE's

Opening Brief), the Court refused to allow WWE to adduce evidence in support of its cognizable

Sherman Act claim. Instead, the Court essentially made adverse factual assumptions based

solely on its review of WWE's Amended Complaint as to the causation of WWE's injury (i.e.

that it was entirely attributable to Shenker's and Bell's corruption). Such assumptions were

unwarranted and improper as a matter of law. Defendants acknowledge, indeed trumpet, that the

Court's March 31 Opinion analyzed, evaluated, and/or weighed the merits of WWE's factual

allegations to make a causation determination:

- "As the Court explained, the Amended Complaint 'provides detailed allegations
  regarding the <u>true cause</u> of WWE's lost earnings' (in not obtaining higher bids),
  which is that WWE 'was prevented from learning about any such bids by Shenker
  and Bell,' who allegedly were bribed by Jakks" (Opposition at 4 (emphasis added));

6

- "[T]he assertion that the Court improperly resolved 'factual disputes' on the issue of 'but for' causation is premised on WWE's disagreement with <u>the Court's analysis of WWE's detailed factual allegations</u> . . . " (Opposition at 8) (emphasis added);

- "[C]ontrary to Plaintiff's efforts to spin otherwise, the crux of the Defendants' anti-competitive conduct is the bribery of the licensing agents and purchasers, with the joint bid being a means of promoting the success of that scheme" (Opposition at 12 (*quoting* March 31 Opinion, 425 F. Supp. 2d at 522 n.25); and

- "Given the bribery scheme WWE pled, there is simply no basis to infer that <u>even if</u> THQ decided not to bid with Jakks (<u>i.e.</u> did not engage in the allegedly 'collusive bid'), its superior bid would have been forwarded to WWE (rather than be deep-sixed by WWE's faithless agents like the earlier 'superior' bids submitted by THQ and Activision)" (Opposition at 15) (emphasis in original).

The mere fact that the Court engaged in such a factual analysis of the merits of WWE's allegations (and resolved those issues against WWE), as opposed to simply accepting the allegations as pled and construing all inferences from them in WWE's favor, runs afoul of the controlling standards on a motion to dismiss, particularly with respect to antitrust claims. *See Twombly,* 425 F.3d at 119; *In re NASDAQ Market-Makers Antitrust Litig.,* 894 F. Supp. 703, 709 (S.D.N.Y. 1995) (*citing Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) ("[T]he factual allegations of the complaint are presumed to be true and all factual inferences must be drawn in the plaintiff's favor and against the defendants."); *see also Roman v. Cessna Aircraft Co.,* 55 F.3d 542, 543-44 (10th Cir. 1995) (reversing dismissal of antitrust claim on motion to dismiss for lack of antitrust injury because "the court erroneously failed to take the complaint's factual allegations as true and construe them most favorably to [the plaintiff]").

The Court's ruling in this regard was especially inappropriate in view of the uniform law cited in WWE's Opening Brief that: (1) "the existence of 'antitrust injury' is not typically resolved through motions to dismiss," *Brader v. Allegheny Gen. Hosp.,* 64 F.3d 869, 876 (3d Cir.

7

1995),[5] and (2) determinations as to the causation of, and materiality of factors contributing to, a

plaintiff's injury are fact-intensive issues—disputes of which are properly resolved by the fact

finder (Opening Brief at 7).[6]

Furthermore, it is undisputed that "an antitrust violation need not be the sole cause of the

alleged injuries . . . ." March 31 Opinion, 425 F. Supp. 2d at 522 (*citing Greater Rockford*

*Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 401 (7th Cir. 1993)); *see also Engine*

*Specialists v. Bombardier Ltd.*, 605 F.2d 1, 14 (1st Cir. 1979) ("Plaintiffs need not prove that the

antitrust violation was the sole cause of their injury, but only that it was a material cause.").

Consistent with this standard, WWE alleges—and a jury is entitled to consider—that it was

injured <u>both</u> by Defendants' corruption of Shenker and Bell <u>and</u> by Defendants' bid rigging

---

[5] Although Defendants do not dispute the authority of *Brader* or the other cases on which WWE relies, Defendants erroneously cite a handful of cases as supposedly dismissed "for failure to adequately plead antitrust injury" (Opposition at 13 n.5). Upon closer scrutiny, however, these cases actually were dismissed for other pleading deficiencies. *See George Haug Co. v. Rolls Royce Motorcars, Inc.*, 148 F.3d 136, 140 (2d Cir. 1998) (affirming dismissal of rule of reason claim for failure to allege market share, while noting that plaintiff lacked standing because it was neither a consumer or competitor in the market in which trade allegedly was restrained); *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 182 (S.D.N.Y. 2006) (dismissing claim because no injury to competition found and conduct was immune under <u>Noerr-Pennington</u> and <u>Parker</u> Doctrines); *Bennett v. Cardinal Health Marmac Distribs.*, No. 02 CV 3095 (JG), 2003 WL 21738604, at **3-5 (E.D.N.Y. July 14, 2003) (dismissing claim because individual officer or stockholder did not have standing to sue for injuries derivative of corporation's injuries); *Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co.*, No. 00 CIV. 5663, 2001 WL 1468168, at **11-12 (S.D.N.Y. Nov. 19, 2001) (dismissing complaint against certain defendants for lack of personal jurisdiction and against remaining defendants for (i) failure to allege predatory pricing, as required for price discrimination claim among competitors; (ii) failure to plead relevant market; and (iii) failure to allege collusion between defendants); *Mathias v. Daily News, L.P.*, 152 F. Supp. 2d 465, 477-80 (S.D.N.Y. 2001) (dismissing rule of reason claim for failure to plead relevant market and failure to plead harm to competition or consumers).

[6] Defendants erroneously claim that the Court cited two cases that determined causation in granting motions to dismiss. In reality, these cases did not involve a determination as to the causation of the plaintiffs' injury whatsoever and were decided on grounds that are completely irrelevant to this action. *See In re Tamoxifen Citrate Antitrust Litig.*, 429 F.3d 370 (2d Cir. 2005) (affirming dismissal of complaint because patent settlement agreement was not subject to antitrust laws); *USAirways Group, Inc. v. British Airways PLC*, 989 F. Supp. 482 (S.D.N.Y. 1997) (affirming dismissal of rule of reason claim for failure to allege injury to competition). On the current record, therefore, Defendants have failed to identify any case anywhere in which a similar analysis of the causation of an antitrust plaintiff's injury was done on a Rule 12(b)(6) motion, contrary to the allegations of the plaintiff's complaint, as the Court did in its March 31 Opinion.

conspiracy for the videogame license, which give rise to separately cognizable legal claims. Without considering a shred of evidence or the testimony of a single witness, it was improper for the Court to determine on a Rule 12(b)(6) motion that THQ's collusion with Jakks could not even have been a—not the—material cause of WWE's injuries.[7]

As a practical matter, it is simply implausible for Defendants—or indeed the Court—to definitively predict, based only on WWE's pleading, what hypothetically would have happened if THQ had submitted an independent bid of 20% royalty to WWE. That WWE alleged that an independent THQ bid would have been higher than the bid THQ and Jakks actually submitted, without more, should have been sufficient to adequately plead antitrust injury and should not have been further analyzed or dissected, let alone effectively rejected, as Defendants contend the Court was correct to do. WWE respectfully submits that it was improper for the Court to conclude that such an independent bid absolutely would have been blocked by Shenker and Bell from reaching WWE executives. With all due respect, that can only be rank speculation. Moreover, it is speculation as to a counter-factual scenario that makes no sense. If THQ had submitted an independent bid for the videogame license (that the Court predicts would have been blocked by Shenker and Bell) there would have been no antitrust violation in the first instance because THQ would not have agreed with the Jakks Defendants not to submit an independent bid. What hypothetically would or would not have happened to such an independently-submitted and lawful THQ bid thus is immaterial to this lawsuit. The point is that THQ did not submit an

---

[7] Defendants again mischaracterize WWE's arguments in erroneously claiming that WWE asserted "that causation is 'never' a proper subject of a motion under Rule 12(b)(6) and always involves factual disputes – regardless of the allegation" (Opposition at 14). Rather, in this case there are factual disputes as to the causation of, and materiality of factors contributing to, WWE's injury. These are fact issues that must be determined by the fact finder (Opening Brief at 7).

independent bid in collusion with Jakks, and that collusion injured WWE in violation of the

antitrust laws.[8]

## III. CONCLUSION

For all the foregoing reasons, and the reasons set forth in WWE's Opening Brief, WWE's

Motion for Reargument should be granted and the Court should reinstate WWE's Sherman Act

claim.

Respectfully submitted,

By: _____

Jerry S. McDevitt (Pro hac vice)
Curtis B. Krasik (Pro hac vice)
Amy L. Barrette (Pro hac vice)
535 Smithfield Street
Pittsburgh, Pennsylvania 15222
(412) 355-6500 (phone)
(412) 355-6501 (fax)

William O. Purcell (WP 5001)
599 Lexington Avenue
New York, New York 10022-6030
(212) 536-3900 (phone)
(212) 536-3901 (fax)

KIRKPATRICK & LOCKHART NICHOLSON
GRAHAM LLP

Attorneys for Plaintiff, World Wrestling
Entertainment, Inc.

Dated:  July 31, 2006

---

[8] Defendants fundamentally mischaracterize footnote 2 of WWE's Opening Brief.  WWE has alleged that it was injured by Defendants' corruption of the honest services of Shenker and Bell to, among other things, obtain the videogame license at below market rates (AC ¶ 1).  The Court's dismissal of WWE's Sherman Act claim was based on the purported absence of antitrust injury based on the Court's—we submit erroneous—view that any injury WWE suffered was the result of Defendants' bribery of Shenker and Bell.  Assuming *arguendo* a jury ultimately were to conclude that Shenker and Bell were not bribed, then the exclusive basis for the Court's dismissal of WWE's Sherman Act claim would be eviscerated and presumably WWE would have stated a cognizable Sherman Act claim.  Ultimately, the catalyst for this Catch-22 in which WWE finds itself is the Court's failure to accept, and draw all inferences in favor of, the allegations of WWE's Amended Complaint in improperly purporting to conclusively determine the causation of WWE's injury on a Rule 12(b)(6) motion.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR REARGUMENT OF THE COURT'S DISMISSAL OF PLAINTIFF WORLD WRESTLING ENTERTAINMENT, INC.'S SHERMAN ACT CLAIM PURSUANT TO THE COURT'S MARCH 31, 2006 OPINION AND ORDER was served on the following counsel of record via electronic mail service and first-class U.S. mail, postage prepaid this 31st day of July, 2006:

John R. Williams, Esq.
John R. Williams & Associates, LLC
51 Elm Street, Suite 409
New Haven, CT  06510

Michael A. Cornman, Esq.
Schweitzer Cornman Gross & Bondell, LLP
292 Madison Avenue
New York, NY  10017

Curtis B. Krasik