

H
Briefs and Other Related Documents

United States District Court, S.D. New York.
William BARRETT, Plaintiff,
v.
UNITED STATES BANKNOTE CORPORATION
and Christie, Manson & Woods International, Inc.,
Defendants.
**No. 7420 (RPP).**

Sept. 2, 1992.

Sacks Montgomery, P.C. by Scott D. St. Marie, New
York City, for plaintiff.
Weil, Gotshal & Manges by Jeffrey S. Klein, New
York City, for defendant U.S. Banknote Corporation.
Hughes Hubbard & Reed by Norman C. Kleinberg,
New York City, for defendant Christie, Manson &
Woods, Int.

OPINION AND ORDER
ROBERT P. PATTERSON, JR., District Judge.
*1 Defendants United States Banknote Corporation
("U.S. Banknote") and Christie, Manson & Woods,
International, Inc. ("Christie's") move (1) pursuant to
Rules 13(f) and 15(a) of the Federal Rules of Civil
Procedure for leave to assert counterclaims against
Plaintiff, and (2) pursuant to Rules 13(h) and 20 of
the Federal Rules of Civil Procedure for leave to join
an additional party as a counterclaim defendant. For
the reasons set forth below, the motion to file
counterclaims is granted in part and denied in part;
the motion to join an additional party as a
counterclaim defendant is granted.

BACKGROUND

Plaintiff William Barrett is a Canadian citizen and
president of William Barrett Numismatics Limited
("Barrett Numismatics"), a corporation organized and
existing under Canadian law.    Defendant U.S.
Banknote is a New York corporation and parent of
American Bank Note Company ("ABN"), which is
engaged in the business of printing currency, stocks,
bonds, food stamps, and postage stamps.   Defendant
Christie's is a New York corporation that conducts
public auctions of works of art.

On November 28 and 29, 1990, Christie's held an
auction ("November auction"), at which items from
ABN's archives, including old and rare bank notes,
were sold.    At the November auction, Plaintiff
submitted successful bids totalling over $1.5 million,
which Christie's accepted as agent for U.S. Banknote.
On June 5, 1991, Christie's held another auction
("June auction"), which involved the sale of
additional items from the ABN archives.

On October 1, 1991, Plaintiff filed a complaint
alleging breach of contract and breach of warranty
against U.S. Banknote, and alleging intentional
misrepresentation against Christie's.   Plaintiff based
his claims upon alleged misrepresentations made by
Defendants concerning the nature and uniqueness of
the notes he purchased in the November auction.
Defendants filed answers on December 20, 1991.

On April 13, 1992, after discovery had commenced,
Defendants moved for leave to amend their answers
in order to assert the following counterclaims:  (1)
violation of the Sherman Act, 15 U.S.C. § 1;  (2)
violation of the Donnelly Act, N.Y. Gen. Bus. Law §
340;   (3) tortious interference with business and
economic relationships;   (4) prima facie tort;   (5)
breach of contract;   and (6) common law fraud.
Defendants also moved to join Barrett Numismatics
as a counterclaim defendant.

In the proposed amendment to their answers,
Defendants allege that Plaintiff, together with
individuals who are not parties to this action,
unlawfully conspired and cooperated to restrain trade,
fix prices, and stifle competitive bidding with respect
to the bank notes auctioned at the November auction.
Def. Notice of Mot., Exh. C ("Exh. C"), ¶  16.
Specifically, Defendants allege that Plaintiffs and
these other individuals (1) shared information prior to
auction relating to how much each was prepared to
bid for each lot;  (2) agreed to divide up purchased
lots among themselves and to refrain from bidding
against each other;  (3) distributed savings from their
collusive actions among themselves;  and (4) shared
commissions for monies earned upon resale of items
purchased at the November auction.  Exh. C, ¶ 19.

*2 Defendants allege that these activities constitute
violations of 15 U.S.C. § 1 (Sherman Act § 1)
(Claim I) and N.Y.Gen.Bus.Law § 340 (Donnelly
Act) (Claim II).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In their third proposed counterclaim, Defendants allege that, by engaging in this scheme, Plaintiff intentionally interfered with Defendants' "existing and prospective business and economic relationships with registered bidders" who attended the November auction but did not participate in the alleged bidding scheme. Exh. C, ¶ 48 (Claim III).  Defendants maintain that without such interference they would have "realized economic advantages and benefits from their relationships [with the registered bidders] in the form of higher bids for the lots being offered." *Id.*

Defendants' fourth proposed counterclaim asserts a claim of intentional injury without justification on the ground that Plaintiff engaged in the bid rigging scheme for the purpose of causing "injury to the business and property of counterclaim Plaintiffs." Exh. C, ¶ 51 (Claim IV).

Defendants further allege that, prior to bidding in the November auction, Plaintiff signed a Bidder Registration Form, in which he agreed to the conditions of sale for the November auction.  One of these conditions was that "[t]he respective rights and obligations of the parties to the Conditions of Sale and the conduct of the auction shall be governed by the laws of the state in which the auction is held." Exh. C, ¶ 53.  Defendants allege that Plaintiff's successful bids constituted binding contracts for sale of the items.  Defendants claim that, by engaging in the unlawful and anticompetitive activities described above, Plaintiff "violated the covenant of good faith and fair dealing inherent in every contract in New York" and thereby breached his contracts with Defendants.  Exh. C, ¶ 54 (Claim V).

Finally, Defendants allege that, by failing to disclose the bidding agreements and arrangements, Plaintiff is liable to Defendants for fraudulent concealment. Exh. C, ¶ 56 (Claim VI).

Plaintiff opposes Defendants' motion to amend the answers on the ground that amendment would be futile because the proposed counterclaims could not overcome a motion to dismiss.

## DISCUSSION

### I. MOTION FOR LEAVE TO AMEND ANSWERS

Under Fed.R.Civ.P. 13(f), a pleader may assert a counterclaim by amendment when the pleader has failed to assert that claim "through oversight, inadvertence, or excusable neglect, or when justice requires." Rule 13(f) should be read together with Fed.R.Civ.P. 15(a), which provides that leave to amend a pleading "shall be freely given when justice so requires."  Leave to amend a pleading should be granted if the movant "has at least colorable grounds for relief," absent any undue delay, bad faith, or undue prejudice to the opposing party. *S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Building 1 Housing Dev. Fund Co., 608 F.2d 28, 42 (2d Cir.1979).*

Leave to amend will not be granted under Rule 15(a), however, where there are no colorable grounds for the proposed claim-that is, where amendment would prove futile. *Foman v. Davis, 371 U.S. 178, 182 (1962).*  The "colorable grounds" requirement mandates "an inquiry-comparable to that required by Fed.R.Civ.P. 12(b)(6) and 12(f)-as to whether the proposed amendments state a cognizable claim or defense." *CBS, Inc. v. Ahern, 108 F.R.D. 14, 18 (S.D.N.Y.1985)* (citation omitted).  In sum, amendment is futile if a proposed claim could not withstand a motion to dismiss made pursuant to Fed.R.Civ.P. 12. *S.S. Silberblatt, 608 F.2d at 42; CBS, 108 F.R.D. at 18.*

**\*3** A claim will be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see Rapf v. Suffolk County of New York, 755 F.2d 282, 290 (2d Cir.1985).*  A claim will also be dismissed under Fed.R.Civ.P. 12(f) when it is so "confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir.1988).*

Defendants argue that leave should be granted in this case because Defendants discovered the alleged scheme only after reviewing discovery documents produced by Plaintiff.  Because Plaintiff does not contest this claim, the Court need only address whether each proposed counterclaim as pleaded presents colorable grounds for relief.

In determining whether a pleading should be dismissed for failure to state a claim, the court must accept the allegations in the complaint as true and construe all allegations in favor of the pleader. *See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Cruz*

_v. Beto,_ 405 U.S. 319, 322 (1972). "It follows, then, that denial of a motion to amend based upon the asserted inadequacy of the proposed pleading is disfavored." _CBS,_ 108 F.R.D. at 19; _see Square D Co. v. Niagara Frontier Tariff Bureau, Inc.,_ 760 F.2d 1347, 1366 (2d Cir.1985), _aff'd,_ 476 U.S. 409 (1986).

A. Sherman Act, 15 U.S.C. § 1

The Sherman Act provides in pertinent part that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1 (1988). To state a claim under section one of the Sherman Act, "a party must allege three elements: (1) a combination or conspiracy; (2) that results in a restraint on interstate or foreign commerce; and (3) injury to the plaintiff's business or property." _CBS,_ 108 F.R.D. at 28 (citing _Oreck Corp. v. Whirlpool Corp.,_ 639 F.2d 75, 78 (2d Cir.1980), _cert. denied,_ 454 U.S. 1083 (1981)). Mere conclusory allegations "of conspiracy or of injury under the antitrust laws without any supporting facts permit[ ] dismissal." _Heart Disease Research Found. v. General Motors Corp.,_ 463 F.2d 98, 100 (2d Cir.1972); _John's Insulation, Inc. v. Siska Constr. Co.,_ 774 F.Supp. 156, 163 (S.D.N.Y.1991).

Plaintiffs argue that Defendants fail to plead (1) restraint on commerce and (2) injury to Defendants.

1. Restraint On Commerce

Although the language of section one prohibits every "restraint of trade," courts have interpreted the Sherman Act to prohibit only those combinations which _unreasonably_ restrain trade. _Arizona v. Maricopa County Medical Soc.,_ 457 U.S. 332, 343 ((1982); _Apex Oil Co. v. DiMauro,_ 713 F.Supp. 587, 594 (S.D.N.Y 1989) (citing _Arizona,_ 457 U.S. at 343). When courts employ this rule of reason approach in antitrust cases, they ordinarily require the plaintiff to identify "the size of the relevant product and geographic markets, the amount of competition foreclosed, and how the acts of the defendants affected that competition." _Bustop Shelters, Inc. v. Convenience & Safety Corp.,_ 521 F.Supp. 989, 997 (S.D.N.Y.1981)).

**\*4** Certain types of conduct, however, are "so destructive of competition that they almost always result in unreasonable restraints of trade" and are

characterized as _per se_ violations of the Sherman Act. _Apex Oil Co. v. DiMauro,_ 713 F.Supp. 587, 595 (S.D.N.Y.1989); _see Continental T.V., Inc. v. GTE Sylvania, Inc.,_ 433 U.S. 36, 50 (1977); _Northern P.R. Co. v. United States,_ 356 U.S. 1, 5 (1958); _Copy-Data Systems, Inc. v. Toshiba America, Inc.,_ 663 F.2d 405, 408 (2d Cir.1981). The plaintiff who successfully alleges a _per se_ violation relieves himself of the requirement of showing anticompetitive effect: "_Per se_ violations do not require a showing of deleterious impact on competition. The acts involved are considered so repugnant to the policies underlying antitrust law that they create a presumption of anticompetitive effect." _Gianna Enter. v. Miss World Ltd.,_ 551 F.Supp. 1348, 1354 (S.D.N.Y.1982).

Plaintiff argues that Defendants' amendment should not be allowed because Defendants fail to allege the size and scope of the market and the impact of Plaintiff's alleged activities on the market. Defendants counter that (1) the complaint specifically alleges price fixing and bid rigging, (2) both activities constitute _per se_ violations of the Sherman Act, and (3) there is, therefore, no need to allege anticompetitive effect. _See_ Exh. C, ¶ 16. The Court finds Defendants' arguments more persuasive.

Price fixing and bid rigging generally constitute _per se_ violations of the Sherman Act. _See Broadcast Music, Inc. v. CBS,_ 441 U.S. 1, 9 (1979) ("As generally used in the antitrust field, "price fixing" is a shorthand way of describing certain categories of business behavior to which the _per se_ rule has been held applicable."); _United States v. Fischbach & Moore, Inc.,_ 750 F.2d 1183, 1192 (3d Cir.1984) ("[P]rice fixing and bid rigging are _per se_ violations" of the Sherman Act), _cert. denied,_ 470 U.S. 1029 (1985); _United States v. Koppers Co.,_ 652 F.2d 290, 293-94 (2d Cir.) (bid rigging "has been classified by courts as a _per se_ violation" of the Sherman Act), _cert. denied,_ 454 U.S. 1083 (1981).

Unlike bid rigging arrangements, however, not every price fixing agreement constitutes a _per se_ violation. _See National Collegiate Athletic Ass'n. v. Board of Regents_ 468 U.S. 85 (1984); _Broadcast Music,_ 441 U.S. at 9; _Apex Oil,_ 713 F.Supp. at 596-97. For example, the rule of reason rather than the _per se_ approach applies to price fixing schemes in cases involving either (1) "instances of constructive price-fixing, if the _purpose_ of the alleged conspiracy is not price-fixing, but prices are nevertheless effected by the challenged behavior," _Apex,_ 713 F.Supp. at 596, or (2) markets in which price fixing is found

Not Reported in F.Supp.                                                                                           Page 4
Not Reported in F.Supp., 1992 WL 232055 (S.D.N.Y.), 1992-2 Trade Cases  P 69,956
**(Cite as: Not Reported in F.Supp.)**

necessary for the market to function efficiently, *see Broadcast Music,* 441 U.S. at 23, and *National Collegiate Athletic Ass'n,* 468 U.S. at 101 (*per se* approach held inapplicable where case "involve[d] an industry in which horizontal restraints on competition are essential if the product is to be available at all.").

**\*5** Plaintiff fails to show that similarly special considerations exist in the present case to warrant employing the rule of reason approach. Defendants specifically allege, moreover, that the purpose of the alleged conspiracy was price fixing: "Counterclaim Defendants and Co-conspirators embarked on a deliberate plan unlawfully to conspire ... and to fix prices." Exh. C, ¶ 16. Accordingly, the price fixing scheme alleged in this case, like Plaintiff's alleged bid-rigging arrangement, is a *per se* violation of section one of the Sherman Act. Defendants, therefore, have successfully pleaded restraint of commerce.

### 2. Injury to Pleader

The plaintiff who claims a violation of federal antitrust laws "must show more than a mere violation of the antitrust laws; it must also show an injury that is a direct result of anticompetitive behavior of the defendant." *Original Appalachian Artworks, Inc. v. Grenada Electronics, Inc.,* No. 85 Civ. 9064, 1986 W.L. 2402, \*4 (S.D.N.Y. Feb. 20, 1986). Plaintiff argues that Defendants fail to allege any injury sustained as a result of the alleged collusive behavior. Specifically, Plaintiff maintains that, because Plaintiff submitted the highest bids, Defendants would have received a lower price for the items had they refused to sell them to Plaintiff.

Plaintiff, however, misconstrues the proposed counterclaim. Defendants' assertion that they would not have sold the items to Plaintiff relates to Defendants' fraud claim, Exh. C, ¶ 57, not Defendants' antitrust claim. In paragraphs 25, 27, 28, 38 and 40 of their proposed amended answers, Defendants allege that without a price fixing or bid rigging scheme bids would have been higher as the result of free competition among the alleged coconspirators.

Defendants have adequately plead restraint of commerce and injury from the alleged activities. Accordingly, leave to amend the answers to add Defendants' Sherman Act counterclaim is granted.

### B. Donnelly Act, N.Y. Gen. Bus. Law § 340

The Donnelly Act provides in pertinent part:
Every contract, agreement, arrangement or combination whereby ... competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained, ... is hereby declared to be against public policy, illegal and void.

N.Y. Gen. Bus. Law § 340 (McKinney 1988).

"[T]he Donnelly Act is patterned after the Sherman Act and governed by its standards." *Venture Technology, Inc. v. National Fuel Gas Co.,* 685 F.2d 41, 42 n. 1 (2d Cir.), *cert. denied,* 459 U.S. 1007 (1982); *R & G Affiliates, Inc. v. Knoll Int'l, Inc.,* 587 F.Supp. 1395, 1405 (S.D.N.Y.1984) (Weinfeld, J.); *Associates Capital Servs. Corp. v. Fairway Private Cars, Inc.,* 590 F.Supp. 10, 13 (E.D.N.Y.1982); *State v. Mobil Oil Corp.,* 38 N.Y.2d 460, 381 N.Y.S.2d 426 (1976). Thus, a complaint that fails to state a claim under the Sherman Act is unlikely to satisfy the requirements of the Donnelly Act. *Hsing Chow v. Union Central Life Ins. Co.,* 457 F.Supp. 1303, 1308 (E.D.N.Y.1978).

**\*6** Plaintiff argues that because Defendants' proposed amendment fails to state a claim under section one of the Sherman Act, it also fails to state a claim under the Donnelly Act. The Donnelly Act counterclaim is not dismissable on these grounds, however, if, as here, the proposed amendment successfully states a claim under the Sherman Act.

Plaintiff, citing *International Television Productions, Ltd. v. Twentieth Century-Fox Television Div.,* 622 F.Supp. 1532 (S.D.N.Y.1985), also argues that the proposed amendment fails to state a claim under the standards of the Donnelly Act itself. In *International Television,* the court dismissed a claim under the Donnelly Act for failing to allege anticompetitive effect and for failing to allege economic impact within New York State. Plaintiff contends that the current claim must be dismissed because Defendants similarly fail to allege anticompetitive effect or economic impact within the state of New York.

Defendants' counter that *International Television* is inapposite because its holding is expressly limited to violations "that [are] susceptible to analysis under the rule of reason" rather than *per se* violations of the Donnelly Act. *See id.* at 1540. This argument

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                          Page 5
Not Reported in F.Supp., 1992 WL 232055 (S.D.N.Y.), 1992-2 Trade Cases  P 69,956
**(Cite as: Not Reported in F.Supp.)**

assumes, however, that Plaintiff's actions constitute a *per se* violation of the Donnelly Act.    Yet "most Donnelly Act claims are analyzed under a rule of reason analysis." *Id.;  see* 14 Julian O. von Kalinowski, *Antitrust Laws and Trade Regulation* § 164.01[1] (1992) ("Use of rule of reason analysis under the Donnelly Act has to a large extent precluded adoption of *per se* categories commonly employed under federal antitrust law."). Although not every New York state court agrees, *see People v. Elmhurst Milk & Cream Co., 116 Misc.2d 140, 455 N.Y.S.2d 473, 483-84 (Sup.Ct.1982)* (agreement to fix or maintain prices, or to allocate customers to which distributor may sell is, without more, unreasonable restraint of trade which violates Donnelly Act), claims of price-fixing arising under the Donnelly Act generally also fall within the ambit of the rule of reason. Kalinowski, *supra,* § 164.01[1] (stating that in civil cases both horizontal and vertical price fixing arrangements challenged under the Donnelly Act are "judged by a rule of reason analysis").

When the rule of reason approach is employed to analyze a proposed claim, the claim "must allege an anticompetitive effect in the market in which Plaintiff competes." *International Television, 622 F.Supp. at 1540* (citing *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc., 710 F.2d 87, 90 (2d Cir.1983)*).

A reasonable inference of anticompetitive effect in New York can be made from Defendants' allegations in the proposed counterclaim.    Specifically, the counterclaim alleges that:  (1) the Defendants are New York corporations with their principal places of business in New York, Exh. C, ¶¶  5, 6;  (2) the alleged antitrust activities occurred in New York, Exh. C, ¶¶  16, 19, 24, 25;  and (3) the activities "directly and proximately suppress[ed] or reduc[ed] competition" at the auction which took place in New York, Exh. C, ¶  37.

**\*7** Accordingly, leave to amend Defendants' answers to add the Donnelly Act counterclaim is granted.

### C. Interference with Business and Economic Relations

When claiming tortious interference with non-contractual business relations, a plaintiff must show "the defendant's interference with business relationships existing between the plaintiff and a third party, either with the sole purpose of harming the

plaintiff or by means that are 'dishonest, unfair or in any other way improper.' " *PPX Enter., Inc. v Audiofidelity Enter., Inc., 818 F.2d 266, 269 (2d Cir.1987)* (quoting *Martin Ice Cream Co. v. Chipwich, 554 F.Supp. 933, 945 (S.D.N.Y.1983)*); *Volvo N. Am. Corp. v. Men's Int'l. Professional Tennis Council., 857 F.2d 55, 74 (2d Cir.), cert. denied, 487 U.S. 1219 (1988).*

Defendants already have plead the second element of this tort, for it "is beyond dispute that a conspiracy to unreasonably restrain trade ... would constitute improper means." *Martin, 554 F.Supp. at 946.*

Defendants do not allege facts, however, that indicate that Plaintiff interfered with Defendants' business relationships.    Specifically, the proposed amended answers give no indication of the way in which the alleged collusive bidding practices prevented bidders not involved in the scheme from submitting higher bids.    Defendants do not allege that Plaintiff coerced other bidders or otherwise tried to persuade other bidders not to bid.    Indeed, according to Defendants' allegation, the existence of the scheme alone did nothing to prevent these other bidders from bidding. Finally, the proposed counterclaim refers only to business relationships between Defendants and "registered bidders ... who had no knowledge of and did not participate in [the] unlawful plan to restrain trade...."    Exh. C., ¶  48.    It does not allege interference with Defendants' relationship with co-conspirators who might have made higher bids but for the alleged conspiracy.    It is unclear, therefore, how Defendants would have gained economic advantages in the form of higher bids from their relationships with non-conspirators in the absence of the alleged scheme.

Because Defendants do not allege how the existence of the alleged bid rigging scheme in any way injured their relationships with other bidders, and because the Court is unable to conceive of a set of facts that would indicate such injury, leave to amend Defendants' answers to add a counterclaim alleging tortious interference with business and economic relationships is denied.

### D. Intentional Injury

In New York, a general intentional tort has the following elements:  (1) the intentional infliction of harm, (2) special damages, (3) lack of excuse or justification, and (4) illegal and corrupt means. *Chen v. United States, 854 F.2d 622, 627-28 (2d Cir.1988)*;

Not Reported in F.Supp.                                                                                    Page 6
Not Reported in F.Supp., 1992 WL 232055 (S.D.N.Y.), 1992-2 Trade Cases  P 69,956
**(Cite as: Not Reported in F.Supp.)**

*see Board of Educ. v. Farmingdale Classroom Teachers Ass'n.,* 38 N.Y.2d 397, 406, 380 N.Y.S.2d 635, 644 (1975).

Plaintiff argues that the claim must be dismissed pursuant to Fed.R.Civ.P. 9(g) because it fails to state special damages with sufficient detail.  Rule 9(g) states that "[w]hen items of special damage are claimed, they shall be specifically stated." Fed.R.Civ.P. 9(g).  In *Twin Laboratories v. Weider Health & Fitness,* No. 89 Civ. 0949, 1989 WL 85082 (S.D.N.Y. July 21, 1989), the court interpreted the 9(g) requirement to mean that the plaintiff "must plead and prove 'specific and measurable' losses. Those losses must be the actual losses suffered as a result of the tortious act.    Round numbers are insufficient." *Id.* at *6 (citations omitted).  Plaintiff argues that Defendants fail to allege a round number for the damages, or any detailed itemizations sufficient to satisfy the pleading requirements of Rule 9(g).

**\*8** "When it comes to pleading special damages there is a distinction between cases in which," as here, "special damage is essential to the cause of action and cases in which a cause of action exists irrespective of special damage." *Stevenson v. Hearst Consol. Publications, Inc.,* 214 F.2d 902, 906 (2d Cir.), *cert. denied,* 348 U.S. 874 (1954); *see* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1310, at 701-02 (2d ed. 1990).   When a case falls into the former category, the special damage must be alleged with greater specificity, and at least "with sufficient detail to inform the court of the substance of the claim." Wright & Miller, *supra,* § 1311, at 705-06.

In their proposed counterclaim, Defendants' allegation of damages reads as follows: "As a direct result [of Plaintiff's conspiracy] the bids cast at the Leo Sale were far less than in a competitive market, reducing substantially the amount of Christie's commissions to be earned...."  Exh. C, ¶ ¶  38, 40. This allegation of special damages fails to satisfy the requirements of Rule 9(g).    Defendants' proposed amendment offers neither a specific number nor a specific method of computing such a number. Damage claims of this generality do not constitute adequate pleading of special damages.  *Sommer v. PMEC Assoc.,* No. 88 Civ. 2537, 1992 WL 196748, at *8, 1992 U.S. Dist. LEXIS 11514, at *23 (S.D.N.Y. Aug. 5, 1992) (Keenan, J.).

Accordingly, leave to amend Defendants' answers to add a claim for intentional injury is denied without

prejudice.

#### E. Breach of Contract

A claim for breach of contract must allege the following: "(1) the making of an agreement;  (2) due performance by plaintiff;    (3) breach thereof by defendant;  and (4) causing damage to the plaintiff." *Stratton Group, Ltd. v. Sprayregen,* 458 F.Supp. 1216, 1217 (S.D.N.Y.1978).

Plaintiff, citing *Hardin v. DuPont Scandinavia,* 731 F.Supp. 1202, 1205 (S.D.N.Y.1990) and *Kirschner v. Cable/Tel Corp.,* 576 F.Supp. 234, 245 (E.D.Pa.1983), argues that the claim for breach of contract should not be allowed because Defendants fail to identify clearly the parties to the contracts at issue.

The proposed amendments to the answers (Exh. C) indicate that two contracts are at issue:  (1) the Bidder Registration Form and (2) the contract of sale arising from Plaintiff's successful bids.     The proposed amendment states:
53.    As a pre-requisite to being permitted to participate as a bidder at the [November] Sale, Counterclaim Defendant Barrett, on behalf of himself and Counterclaim Defendant William Barrett Numismatics Limited, signed a Bidder Registration Form....  The Bidder Registration Form, as well as Counterclaim Defendants' successful bids at the [November] Sale, constituted binding valid contracts for valuable consideration.

Exh. C, ¶  53.   The next paragraph of the proposed amended answers accuses "Counterclaim Defendants" of "breaching their contracts with Counterclaim Plaintiffs."  *Id.* ¶ 54.

**\*9** While pleading "is not a game of skill in which one misstep by counsel may be decisive to the outcome," *Conley v. Gibson,* 355 U.S. 41, 47 (1957), the language contained in a claim nevertheless must give the opposing party "fair notice of what the ... claim is and the grounds upon which it rests," *id.* Defendants fail to state with sufficient detail the identity of the parties to these contracts.   Although one discerns from the proposed counterclaim that both Christie's and U.S. Banknote were parties to one or the other of the contracts at issue, the proposed counterclaim does not disclose which defendant was a party to which contract.

Accordingly, leave to file the proposed counterclaim

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                     Page 7
Not Reported in F.Supp., 1992 WL 232055 (S.D.N.Y.), 1992-2 Trade Cases  P 69,956
**(Cite as: Not Reported in F.Supp.)**

for breach of contract is denied without prejudice.

### F. Fraudulent Concealment

Plaintiff argues that Defendants' proposed claim of fraudulent concealment should not be allowed because the claim fails:  (1) to allege a duty to disclose;  (2) to allege that concealment caused damage to the Defendant;  and (3) to plead fraud with particularity in accordance with Fed.R.Civ.P. 9(b).

### 1. Duty to Disclose

The duty to disclose is a necessary element of a claim for fraud.  It may arise either where the parties to a business transaction enjoy a fiduciary relationship or where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken belief or knowledge.    *See Aaron Ferer & Sons, v. Chase Manhattan Bank,* 731 F.2d 112, 123 (2d Cir.1984); *Frigitemp Corp. v. Financial Dynamics Fund, Inc.,* 524 F.2d 275, 283 (2d Cir.1975).    Defendants contend that the proposed amended answers adequately allege fraudulent concealment based on Plaintiff's superior knowledge of the alleged price fixing scheme.

A party's knowledge is not superior where the relevant information "was either a matter of public record, was not pursued by [the pleader], or was disclosed at least in part...."    *Grumman Allied Indus. v. Rohr Indus., Inc.,* 748 F.2d 729, 739 (2d Cir.1984) (quoting *Aaron Ferer,* 731 F.2d at 123).    The existence of any of these factors would destroy Plaintiff's duty to disclose.

Defendants allege that Plaintiff and various Co-conspirators secretly hatched an elaborate series of private agreements and schemes to divide the money saved on each lot purchased at the November auction.  The existence of these agreements, either in whole or in part, was not disclosed or readily available to Defendants until well after the auction was completed;  prior to the auction sale, Defendants neither had nor were given reason to seek access to Plaintiff's records or facilities.  Defendants adequately show that they had no reason to suspect Plaintiff's alleged illegal arrangement, and Plaintiff had no right to assume that Defendants knew of the scheme.

In sum, when read together the allegations contained in the proposed counterclaim raise an inference of Plaintiff's superior knowledge of the agreements and adequately establish a duty to disclose.

### 2. Injury

**\*10** Plaintiff also argues that Defendants do not show that Plaintiff's failure to disclose the bid rigging agreements injured Defendants.    According to the proposed counterclaim,

Had Counterclaim Plaintiffs been aware of the illegal price fixing and anti-competitive agreements entered into by Counterclaim Defendants and the Co-conspirators, Counterclaim Plaintiffs would not have allowed Counterclaim Defendants to participate in the [November] Sale.

Exh. C, ¶  57.

This counterclaim is not limited to bidders outside of the conspiracy.    It alleges that the price-fixing arrangement, allegedly instigated by Plaintiff and concealed from Defendants, precluded the requisite free competition among co-conspirators;  and, as the alleged bid rigging agreements indicate, *see, e.g.,* Exh. C. ¶ ¶  26-27, 29-31, such competition could have resulted in higher bids.    Defendants further claim that "normal competitive prices" ordinarily are higher than the prices at which Plaintiffs acquired the auction lots.    *See* Exh. C., ¶ ¶  23 (incorporated by ¶ 55), 38-40.    Defendants further allege that the elimination of competitive bidding reduced Defendants' revenue and commissions from the sale of the auction notes.    This statement of injury is adequately pleaded in the proposed amended answers.

### 3. Particularity of the Pleading

Fed.R.Civ.P. 9(b) is designed principally to ensure fair notice of the claim to the party preparing a defense.    *See DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987).    Rule 9(b) requires the plaintiff plead all allegations of fraud with particularity, although "[m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally."    Fraud allegations, moreover, ordinarily "ought to specify the time, place, speaker, and content of the alleged misrepresentations," *Id.*    Where, however, "a fraud claim is based upon a [party's] concealment of facts that the [party] had a duty to disclose, the complaint 'need not detail affirmative false statements.    It is

Not Reported in F.Supp.                                                                 Page 8
Not Reported in F.Supp., 1992 WL 232055 (S.D.N.Y.), 1992-2 Trade Cases  P 69,956
**(Cite as: Not Reported in F.Supp.)**

enough under 9(b) for the complaint to allege those facts that were not disclosed.' " *Polycast Technology Corp. v. Uniroyal, Inc., 728 F.Supp. 926, 950 (S.D.N.Y.1989)* (quoting *Von Bulow v. Von Bulow, 634 F.Supp. 1284, 1303 (S.D.N.Y1986)*). Finally, where multiple defendants are accused of fraud, the claim need not inform each defendant of the specific nature of his alleged participation in the fraud if "much of the factual information needed to fill out plaintiff's complaint lies particularly within the opposing parties' knowledge." *DiVittorio, 822 F.2d at 1247-48*.

Upon examination of the proposed amended answers, and drawing all inferences in favor of Defendants, the Court finds that Defendants have met the requirement of Rule 9(b) with respect to their allegations of fraud. The proposed counterclaim specifies the time, place and participants of the alleged concealment, and references paragraphs of the proposed amended answers which contain adequately particularized descriptions of the frauds in which Plaintiff and his company are alleged to have participated-that is, the agreements and arrangements which Plaintiff allegedly failed to disclose.  Exh. C, ¶ ¶  19-36, 56. Defendants also set forth, in detail, the involvement of both Plaintiff and his company in the alleged price fixing agreements and delineate the relationship which exists between them.  Exh. C, ¶  8.

**\*11** The information provided is sufficient to outline the way in which Plaintiffs Barrett and Barrett Numismatics interacted to perpetrate the alleged fraud.  Although Defendants do not pinpoint the precise role of Barrett Numismatics in the fraud, much of this information is likely to lie within Plaintiff's knowledge.  This warrants relaxing the requirement of specificity to some degree.  *See DiVittorio, 822 F.2d at 1247-48*.

Defendants have described adequately the acts constituting the fraud to give both Plaintiff and Barrett Numismatics fair notice of the counterclaim against them.  Accordingly, leave to amend the answers to add a claim for fraudulent concealment is granted.

## II. MOTION TO JOIN ADDITIONAL COUNTERCLAIM DEFENDANT

Fed.R.Civ.P. 13(h) provides that "[p]ersons other than those made parties to the original action may be made parties to a counterclaim ... in accordance with the provisions of Rules 19 and 20."

Defendants maintain that joinder of Barrett Numismatics to this action is proper under Fed.R.Civ.P. 20 because the claims asserted against Barrett Numismatics "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" and involve "questions of law and fact" which are similar to those contained in the claims against Barrett.

Plaintiff's memorandum contains no arguments against the motion.  Accordingly, Defendants' motion to add Barrett Numismatics as a counterclaim defendant is granted.

## CONCLUSION

For the reasons set forth above, Defendants' motion for leave to amend answers to assert counterclaims is granted with respect to claims for violation of section one of the Sherman Act (Claim I), violation of the Donnelly Act (Claim II), and fraudulent concealment (Claim VI). Defendants' motion is denied without prejudice with respect to the claims for intentional injury (Claim IV) and breach of contract (Claim V). Defendant's motion is denied with respect to the claim of tortious interference with business relationships (Claim III). Defendants' motion to add Barrett Numismatics as a counterclaim defendant is granted.

All counsel are to attend a pretrial conference on September 22, 1992 at 9:00 a.m. in courtroom 302.

IT IS SO ORDERED.

S.D.N.Y.,1992.
Barrett v. U.S. Banknote Corp.
Not Reported in F.Supp., 1992 WL 232055 (S.D.N.Y.), 1992-2 Trade Cases  P 69,956

Briefs and Other Related Documents (Back to top)

• 1:91cv07420 (Docket) (Nov. 01, 1991)

END OF DOCUMENT

©  2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.