Not Reported in F.Supp.2d                                                                                                  Page 1
Not Reported in F.Supp.2d, 2001 WL 1468168 (S.D.N.Y.), 2002-1 Trade Cases P 73,556
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents

United States District Court, S.D. New York.
YELLOW PAGE SOLUTIONS, INC.; Laurel Leone, d/b/a Leone Advertising; Martinez & Associates, Inc. d/b/a ADS Nationwide; National Yellow Page Service, Inc.; Larry H. Kistenmacher d/b/a Key Yellow Page Consulting; Tom A. Thompson and Donna M. Thompson, d/b/a A M National Advertising; National Telephone Directory Marketing Service, a Partnership; and Phoenix Yellow Page Group, Inc., Plaintiffs,
v.
BELL ATLANTIC YELLOW PAGES COMPANY, Bellsouth Advertising & Publishing Corporation, SBC Directory Operations, Inc., U.S. West DEX, Inc., GTE Directories Corp., and the Yellow Pages Publishers Association, Inc., Defendants.
**No. 00 CIV. 5663.**

Nov. 19, 2001.

Carl E. Person, Esq., New York, for Plaintiffs.
Alan Cohen, Esq., Andrew J. Frackman, Esq., Robert M. Stern, Esq., O'Melveny & Myers LLP, New York, for Defendants Bell Atlantic Yellow Pages Company and GTE Directories Corp.
Ian T. Simmons, Esq., William J. Stuckwisch, Esq., Washington, D.C., for Defendants Bell Atlantic Yellow Pages Company and GTE Directories Corp.
Allen Kezsbom, Esq., Allana F. Stark, Esq., Fried Frank Harris Shriver & Jacobson, New York, for Defendant BellSouth Advertising & Publishing Company.
David A. Barrett, Esq., Evan Glassman, Esq., Boies Schiller & Flexner LLP, New York, for Defendants U.S. West Dex, Inc. and SBC Directory Operations, Inc.
Kent A. Gardiner, Esq., Bridget E. Calhoun, Esq., Cromwell & Moring LLP, Washington, D.C., for Defendant SBC Directory Operations, Inc.
Mark A. Conley, Esq., Charles Stern, Esq., Katten Muchin & Zavis, Los Angeles, CA, for Defendant Yellow Pages Publishers Association, Inc.

OPINION AND ORDER
MUKASEY, D.J.
**\*1** Plaintiffs are eight companies that sell advertising in Yellow Pages directories. They sue eight publishers of Yellow Pages directories ("Pubcos") and a trade association, alleging antitrust violations under the Robinson-Patman Act, Sections 1 and 2 of the Sherman Act, and state antitrust laws. Plaintiffs further allege a variety of common-law claims, including unlawful interference with contracts and advantageous economic relationships, breach of contract, breach of the implied covenant of good faith and fair dealing, defamation and trade libel, and unfair competition. Certain defendants move to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue. All of the defendant Pubcos move to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. For the reasons set forth below, defendants' motions to dismiss are granted.

I.

Because a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) based on lack of personal jurisdiction is "inherently a matter requiring the resolution of factual issues outside of the pleadings ... all pertinent documentation submitted by the parties may be considered in deciding the motion." *Pilates, Inc. v. Pilates Inst ., Inc.,* 891 F.Supp. 175, 178 n. 2 (S.D.N.Y.1995). Therefore, the following facts are drawn from the amended complaint, affidavits, and documentary exhibits submitted by both parties, and on this motion are construed in the light most favorable to plaintiffs. *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986). For the purposes of the motion to dismiss pursuant to Rule 12(b)(6), only the facts alleged in the amended complaint may be considered, and such facts are to be accepted as true.

Defendant Pubcos publish printed telephone directories, including Yellow Pages, for cities within their respective geographic regions of the country. (Am.Compl.¶ ¶ 13-17) Bell Atlantic Yellow Pages Company ("Verizon") [FN1] is a Delaware corporation with its principal place of business in Massachusetts; it operates in various states in the northeastern United States, including New York. (*Id.* ¶ 13) BellSouth Advertising and Publishing Corporation ("BAPCO") is a Georgia corporation with its principal place of business in Georgia; it operates in the southeastern United States. (*Id.* ¶ 14; Frew Aff. ¶ 3)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                              Page 2
Not Reported in F.Supp.2d, 2001 WL 1468168 (S.D.N.Y.), 2002-1 Trade Cases P 73,556
**(Cite as: Not Reported in F.Supp.2d)**

Southwestern Bell Yellow Pages, Inc. ("SWBYP"), Pacific Bell Directory ("PBD"), Ameritech Publishing, Inc. ("API") and SNET Information Services, Inc. ("SNET") (collectively the "SBC Publishing Companies") [FN2] are respectively a Missouri, California, Delaware, and Connecticut corporation with their principal places of business in Missouri, California, Delaware, and Connecticut, respectively. (Fobbs Decl. ¶ ¶ 10-13) SWBYP operates in the southern-midwestern and southwestern United States; PBD operates in California and Nevada; API operates in the northern-midwestern United States; SNET operates in Connecticut. (*Id.*) Qwest Dex, Inc. ("Qwest") [FN3] is a Colorado corporation with its principal place of business in Colorado; it operates in the midwestern and western United States. (Am. Compl. ¶ 16; Houston Decl. ¶ 2) GTE Directories Corp. ("GTE") is a Delaware corporation with its principal place of business in Texas; it operates in various states throughout the United States. (Am.Compl.¶ 17) The Yellow Pages Publishers Association, Inc. (the "YPPA") is a Delaware corporation with its principal place of business in Colorado. (*Id.* ¶ 20)

> FN1. Recently, Bell Atlantic changed its name to Verizon.
>
> FN2. The four companies that comprise the SBC Publishing Companies have been substituted for defendant SBC Directory Operations, Inc. in this action by stipulation and order.
>
> FN3. U.S. West Dex, Inc., changed its name to Qwest Dex, Inc.

**\*2** Plaintiffs are five Certified Marketing Representatives ("CMRs") and three other companies that have sold Yellow Pages advertising either directly on behalf of a Pubco or on behalf of a CMR. [FN4] (*Id.* ¶ ¶ 6-12A) A CMR is an advertising organization or other person that is certified by the YPPA to sell advertising in Yellow Pages directories. (*Id.* ¶ ¶ 21, 33B) The YPPA is a nonprofit trade association comprised of 99 Yellow Pages publishers and 186 CMRs that was created by the Pubcos to facilitate and set standards for the placement of Yellow Pages advertising. (*Id.* ¶ ¶ 20, 21, 84) None of the plaintiffs are located in New York. (*Id.* ¶ ¶ 6-12A)

> FN4. Plaintiffs Yellow Page Solutions, Inc.; Laurel Leone; Martinex & Associates, Inc.; National Yellow Page Service, Inc.; and Tom and Donna Thompson are the CMR plaintiffs. Phoenix Yellow Page Group, Inc. is not a CMR, but to some extent makes claims as a CMR due to its purchase of DRC Advertising, Inc., a former CMR.

The advertising that the Pubcos sell in their Yellow Pages directories is either national or local, as defined by non-binding guidelines of the YPPA. (*Id.* ¶ ¶ 79, 80) Each Pubco has its own internal sales force to solicit local advertisers within the cities for which it publishes directories. (*Id.* ¶ 74) National advertisers are solicited by CMRs, who then contact a Pubco to submit the advertising order. The CMR acts as an intermediary between the Pubco and the national advertiser, allowing these larger advertisers to place ads for their local outlets in multiple directories without having to deal with each individual publisher. (*Id.* ¶ ¶ 75, 81)

The Pubcos sell national advertising to the CMRs at a reduced rate, the discount representing the CMRs' sales commission. (*Id.* ¶ 75) CMRs do not receive a commission for selling local advertising; commissions on local advertising are available only to a Pubco's internal sales force and allegedly to any Pubco that places local advertising in another Pubco's directory pursuant to cross-selling agreements between the Pubcos. (*Id.* ¶ ¶ 75, 77) The non-CMR plaintiffs earn their compensation either by sharing in a CMR's commission, or by working out a fee arrangement with their client-advertisers for local advertising placed directly with a Pubco. (*Id.* ¶ 76)

Plaintiffs allege that defendants have a monopoly in the market for Yellow Pages publishing and for the advertising published therein for their respective regions, with competing publishers collectively accounting for less than 10% of the market share for Yellow Pages advertising. (*Id.* ¶ ¶ 34E-F; 67-69) Plaintiffs assert that defendants have engaged in discriminatory practices and have conspired through the YPPA to restrain trade and to further monopolize the industry. (*Id.* ¶ ¶ 52, 84-86)

Plaintiffs' first claim alleges that defendants have engaged in price discrimination, offering favored CMRs and the internal sales forces of the Pubcos greater discounts on advertising than those offered to plaintiff CMRs. The commission level is based on a CMR's sales history with a Pubco, thereby discouraging a CMR from placing advertising in competing directories regardless of its clients' best

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1468168 (S.D.N.Y.), 2002-1 Trade Cases P 73,556
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

interests. (*Id.* ¶ ¶ 29, 30, 38)

***3** Claim two alleges conspiracy and attempt to monopolize, and monopolization with use of predatory pricing and practices. In addition to defendants' pricing practices, plaintiffs focus on defendants' manipulation of the definition of "local" and "national" advertising in order to convert national advertisers into uncompensated local advertisers, for whose business the only commission payment goes to in-house sales staff or other Pubcos. Plaintiffs also complain about a host of other allegedly predatory business practices and terms and conditions of doing business. (*Id* . ¶ ¶ 60, 78, 89A-MM)

The third claim alleges a conspiracy to fix prices and restrain trade, based on the allegation that defendants have conspired to sell plaintiffs local advertising at full list price, without discount, and to redefine national advertising as local advertising. Plaintiffs assert that the collective refusal to sell local advertising at a discount amounts to a group boycott and concerted refusal to deal. (*Id.* ¶ ¶ 98-100)

Plaintiffs' remaining claims allege an array of state and common law violations.

Plaintiffs allege that the result of these practices is that they are losing their clients to the favored CMRs and the Pubcos, and that non-favored CMRs, and competing publishers of Yellow Pages, are being driven out of business.  (*Id.passim* )

II.

Jurisdiction is a threshold matter, and must precede a determination on the merits. *Rationis Enter., Inc. v. AEP/Borden Indus.,* 261 F.3d 264, 267-68 (2d Cir.2001). I therefore first consider the motion by BAPCO, the SBC Publishing Companies, and Qwest to dismiss for lack of personal jurisdiction.

On a Rule 12(b)(2) motion, "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 566 (2d Cir.1996). Prior to the holding of an evidentiary hearing, the plaintiff need only make a prima facie showing that jurisdiction exists. *CutCo,* 806 F.2d at 365. Where, as here, there has been discovery on the issue of jurisdiction, the plaintiff's prima facie showing must include "an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Ball v. Metallurgie Hoboken-Overpelt, S.A.,* 902 F.2d 194, 197 (2d. Cir.1990). The plaintiff cannot rely merely on conclusory statements or allegations, *see Barrett v. United States,* 646 F.Supp. 1345, 1350 (S.D.N.Y.1986) (citing *Newmark v. Abeel,* 102 F.Supp. 993, 994 (S.D.N.Y.1952) (Weinfeld, J.)); rather, the prima facie showing must be "factually supported." *Ball,* 902 F.2d at 197.

In a case arising under federal law which does not provide for service of process, personal jurisdiction is based on the law of the forum state. *See Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U .S. 97, 108 (1987). Although section 12 of the Clayton Act does provide for nationwide service of process for suits under the antitrust laws, 15 U.S.C. § 22 (1994), satisfaction of the venue provision of the Act is a prerequisite to extraterritorial service of process.[FN5] See *Goldlawr, Inc. v. Heiman,* 288 F.2d 579, 581 (2d Cir.1961), *rev'd on other grounds,* 369 U.S. 810 (1961); *Grosser v. Commodity Exchange, Inc.,* 639 F.Supp. 1293, 1312 (S.D.N.Y.1986), *aff'd* 859 F.2d 148 (2d Cir.1988); *GTE New Media Serv. Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1351 (D.C.Cir.2000) (following *Goldlawr* ). The applicable test for venue under the Act-whether the moving defendants transact business in this district-has been held to be coextensive with the "transacting business prong" of New York's long-arm statute. *Grosser,* 639 F.Supp. at 1313. If this test is not met, plaintiffs may rely on the other provisions of New York law to establish jurisdiction and on the general venue statute for venue. Thus, New York law determines the issue of personal jurisdiction. If the exercise of personal jurisdiction is found to be proper under state law, the court must then decide whether such exercise is consistent with due process. *Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 27 (2d Cir.1997).

> FN5. This connection between personal jurisdiction and venue in antitrust cases explains why four of the moving defendants here, BAPCO and the SBC Publishing Companies, frame their motion as an attack on both jurisdiction and venue. Defendant Qwest, although it makes the same arguments, frames its motion in terms of jurisdiction alone. Personal jurisdiction and venue are necessarily considered together here.

**\*4** In this case, plaintiffs argue that this court has jurisdiction pursuant to N.Y. C.P.L.R. § 301

Not Reported in F.Supp.2d    Page 4
Not Reported in F.Supp.2d, 2001 WL 1468168 (S.D.N.Y.), 2002-1 Trade Cases P 73,556
**(Cite as: Not Reported in F.Supp.2d)**

(McKinney 2000) and New York's Long Arm Statute, N.Y. C.P.L.R. § 302 (McKinney 2000).

### A. C.P.L.R. § 301

Section 301, as construed by the New York courts, subjects a foreign corporation to personal jurisdiction in New York if the defendant is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." McGowan v. Smith, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645 (1981); see also Landoil Res. Corp. v. Alexander & Alexander Servs. Inc., 918 F.2d 1039, 1043 (2d Cir.1991), and cases cited therein. The defendant "must be present in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" Landoil, 918 F.2d at 1043 (quoting Tauza v. Susquehanna Coal Corp., 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917)).

The traditional indicia of "doing business" here include: 1) the existence of an office in New York; 2) the solicitation of business in the state; 3) the presence of bank accounts and other property in the state; and 4) the presence of employees of the foreign defendant in the state. See Hoffritz for Cutlery, Inc. v. Amjac, Ltd., 763 F.2d 55, 58 (2d Cir.1985). None of these traditional indicia are present for the moving defendants. Rather, the moving defendants do business only in their respective regional territories, where they publish and distribute directories intended only for their local communities. They solicit only local advertisers, and the advertising in these directories is for businesses having local contacts. Although Qwest is licensed to do business in New York and has appointed an agent for service of process, that is not sufficient to subject it to personal jurisdiction absent a showing that it is actually doing business in the state. See Bellepointe, Inc. v. Kohl's Department Stores, Inc., 975 F.Supp. 562, 564 (S.D.N.Y.1997) (citing Beja v. Jahangiri, 453 F.2d 959, 962 (2d Cir.1972)); Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1293 (11th Cir.2000) (collecting cases).[FN6]

> FN6. Qwest obtained the license only to preserve and protect its trademark. Since its receipt of that license, Qwest's revenues from New York have been insufficient to require Qwest to pay taxes on that revenue. (Houston Decl. ¶¶ 6, 21-22)

Plaintiffs first attempt to base § 301 jurisdiction on defendants' contacts with non-plaintiff CMRs in New York, particularly TMP Worldwide, Inc. ("TMP"), allegedly one of the favored CMRs. (Am.Compl.¶ 2A) Although the Pubcos do accept advertising from these CMRs and derive revenues from New York advertising, it cannot be said that the moving defendants solicit advertising in New York, either directly or indirectly through the CMRs.

First, to the extent that a New York advertiser advertises in defendants' directories, such advertising was solicited by a CMR, which is an unaffiliated intermediary. "[A] foreign supplier of goods or services for whom an independent agency solicits orders from New York purchasers is not present in New York and may not be sued here, however substantial in amount the resulting orders." Laufer v. Ostrow, 55 N.Y.2d 305, 311, 449 N.Y.S.2d 456, 459 (1982).

**\*5** Second, as to the Pubcos' relationship with the CMRs themselves, it should first be noted that "[t]he mere existence of a business relationship with entities within the forum state is insufficient to establish presence." Insurance Co. of Penn. v. Centaur Ins. Co., 590 F.Supp. 1187, 1189 (S.D.N.Y.1984). Moreover, in this relationship, it is the CMRs that initiate contact with the Pubcos in order to place advertising in local directories. I thus agree with the District of New Jersey Court that found "it is the CMRs which draw [the Pubcos] into the state, rather than any purposeful injection by [the Pubcos] of their presence." Database Am., Inc. v. BellSouth Adver. & Publ'g Corp., 825 F.Supp. 1195, 1210 (D.N.J.1993).

Even were I to find that the moving defendants did solicit business from New York CMRs, "mere solicitation" of business or "mere sales" in New York do not constitute a corporate presence in New York. Roberts-Gordon, LLC v. Superior Radiant Products, Ltd., 85 F.Supp.2d 202, 209 (W.D.N.Y.2000); Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc., 2 F.Supp.2d 470, 473 (S.D.N.Y.1998) (citing Landoil, 918 F.2d at 1043). This is particularly true here, where the amount of revenue derived from New York is less than one percent of annual revenues (Frew Supp. Aff. ¶ 2; Fobbs Decl. ¶ 26; Houston Decl. ¶ 10), far less than the substantial solicitation required. See, e.g., Beacon Enter., Inc. v. Menzies, 715 F.2d 757, 763 (2d Cir.1983); Stark Carpet Corp. v. M-Geogh Robinson, Inc., 481 F.Supp. 499, 505 (S.D.N.Y.1980); New England Laminates Co. v. Murphy, 362 N.Y.S.2d 730, 733 (Sup.Ct. Nassau County 1974). Although plaintiffs try to bolster their argument by pointing to the Pubcos' sporadic trips to

Case 7:04-cv-08223-KMK   Document 170-7   Filed 07/31/2006   Page 5 of 12

Not Reported in F.Supp.2d  Page 5
Not Reported in F.Supp.2d, 2001 WL 1468168 (S.D.N.Y.), 2002-1 Trade Cases P 73,556
**(Cite as: Not Reported in F.Supp.2d)**

visit New York CMRs, the occasional sale of directories in New York, and payments made to various New York vendors in the ordinary course of business (Pl.Mem.*passim* ), these are not sufficient to confer § 301 jurisdiction. *See* cases cited herein; *see also Aguascutum of London, Inc. v. S.S. Am. Champion,* 426 F.2d 205, 211-12 (2d Cir.1970); *Holness v. Maritime Overseas Corp.,* 251 A.D.2d 220, 222-23, 676 N.Y.S.2d 540, 543 (1st Dep't 1998).

Plaintiffs next rely on alleged cross-selling agreements between the moving Pubcos and Verizon as a basis for general jurisdiction. (Pl. Mem. at 2) Plaintiffs claim that, pursuant to these reciprocal agreements, the moving Pubcos regularly purchase and resell advertising in Verizon's New York directories and receive revenue from New York advertising that Verizon places in the moving defendants' directories. However, as to all but one of the moving defendants, the facts proffered by plaintiffs themselves directly refute the existence of any such agreements. The sworn depositions of the moving defendants taken by plaintiffs clearly establish that none of the moving defendants, with the sole exception of one of the SBC Publishing Companies, defendant SNET, has such an agreement with Verizon. (Frew Dep. at 26, 33, 35, 36; Gibbons Dep. at 10, 11; Plucker Dep. at 14) Although plaintiffs inexplicably continue to hypothesize the existence of such agreements, "affidavits based on personal knowledge are to be credited over contradictory allegations based merely on information on belief, and facts adduced in opposition to jurisdictional allegations are considered more reliable than mere contentions offered in support of jurisdiction." *Barrett,* 646 F.Supp. at 1350. Plaintiffs have failed to meet their burden here.

**\*6** As the argument applies to SNET, it is also insufficient to confer jurisdiction. The "Out of Area Agreement" in issue is nothing more than a way for SNET to help its local Connecticut customers, who do not qualify for national representation by a CMR, to place advertising with Verizon. (Gibbons Decl. ¶ 6) This service, rendered in Connecticut, does not bring SNET into New York for jurisdictional purposes. As to the advertising Verizon places in SNET directories, this is directly analogous to the result of the CMR contacts addressed above, and is insufficient to confer jurisdiction.

B. C.P.L.R. § 302(a)(1)

Plaintiffs argue also that defendants are subject to personal jurisdiction under § 302(a)(1) of New York's Long Arm Statute. That section permits a court to exercise jurisdiction over an out-of-state defendant who "transacts any business within the state or contracts anywhere to provide goods or services in the state" where the cause of action arises out of that business activity. C.P.L.R. § 302(a)(1).

Plaintiffs assert that the cross-selling agreements with Verizon are contracts by the moving Pubcos to provide advertising services in New York. (Pl.Mem.¶ 4) However, as I have noted above, this argument applies only to SNET and, as noted, SNET provides its service in Connecticut, not in New York. I thus turn to whether defendants "transact business" in New York.

To "transact business" in New York, a nondomiciliary must "purposely avail [ ] itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *McKee Elec. Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34 (1967) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)). Courts will consider the "totality of the circumstances" to determine whether a party transacts business in New York; common factors include, but are not limited to: 1) the existence of an ongoing contractual relationship with a New York corporation; 2) whether the contract was negotiated or executed in New York and whether the defendant visited New York regarding the contractual relationship; 3) the choice-of-law clause in the contract; and 4) whether the contract requires supervision by the corporation in the forum state. *See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29-30 (2d Cir.1996). All factors are relevant, and no one factor is dispositive. *Id.*

Plaintiffs base their argument in support of jurisdiction primarily on defendants' relationship with CMRs in New York. However, as Judge Parker has previously determined, these dealings do not constitute transacting business in New York under the meaning of § 302(a)(1). *See National Tel. Directory Consultants, Inc. v. BellSouth Adver. & Publ'g Corp.,* 25 F.Supp.2d 192 (S.D.N.Y.1998) [hereinafter *NTDC* ]. The contracts between the moving Pubcos and the CMRs were not drafted in New York, were not negotiated or executed in New York, are explicitly not governed by New York law, and require no supervision in New York. (Frew Aff. ¶ ¶ 18-23; Fobbs Decl. ¶ ¶ 27-28; Houston Decl. ¶ ¶ 20)

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2001 WL 1468168 (S.D.N.Y.), 2002-1 Trade Cases P 73,556  
**(Cite as: Not Reported in F.Supp.2d)**

Page 6

**\*7** Although the contract does generate sporadic contacts between the Pubcos and the New York CMRs by mail, telephone, or otherwise, the Pubcos do not thereby " 'project' themselves into New York local commerce in order to 'purposely avail' themselves of the benefits of doing business in New York." NTDC, 25 F.Supp.2d at 196; *see also* Roper Starch, 2 F.Supp.2d at 474 (holding that phone calls and mailings must serve to project a defendant into New York to assert jurisdiction on that basis); Premier Lending Services, Inc. v. J.L.J. Assocs., 924 F.Supp. 13, 16 (S.D.N.Y.1996) (same); Wilhelmshaven Acquisition Corp. v. Asher, 810 F.Supp. 108, 112 (S.D.N.Y.1993) (same). Rather, such contacts "further the CMRs' efforts to place advertising in [the Pubcos' regional directories];" they are thus incidental to a service that is only provided elsewhere. NTDC, 25 F.Supp.2d at 197. The Second Circuit has held that a defendant cannot be sued in New York based solely on incidental contacts associated with performing a service for a New York client where the client solicits the service and the service is performed outside New York. Mayes v. Leipziger, 674 F.2d 178, 185 (2d Cir.1982). In such a relationship, there is "no activity in New York in which defendant sought to participate." *Id.; see also* Continental Field Serv. Corp. v. ITEC Int'l Inc., 894 F.Supp. 151, 154 (S.D.N.Y.1995) (declining jurisdiction where defendant had no physical presence in New York and the contract was negotiated and performed in Venezuela).

Moreover, § 302 jurisdiction requires a "substantial relationship" between the in-state contacts and the cause of action sued upon. Beacon Enter., Inc., 715 F.2d at 764 (citing McGowan, 52 N.Y.2d at 272, 437 N.Y.S.2d at 645). To the extent that plaintiffs' claims arise out of the Pubcos' business decisions and practices in connection with their contracts with plaintiff and non-plaintiff CMRs, the claims implicate conduct that took place in the Pubcos' respective regions-not in New York.

Plaintiffs cite meetings with a favored CMR, TMP, in New York, but plaintiffs adduce no facts to show that these meetings had anything to do with the subject matter of this lawsuit. Plaintiffs offer no more than speculation as to what was discussed at these meetings, and therefore have failed to support § 302(a)(1) jurisdiction. *See* Pyramyd Stone Int'l Corp. v. Crosman Corp., No. 95 Civ. 6665, 1997 WL 66778, at \*10 (S.D.N.Y. Feb. 18, 1997). Further, once again, the discovery record built by plaintiffs often directly refutes the sinister purpose plaintiffs would attach to these meetings. The moving defendants visited CMRs nationwide to discuss such issues as changes in the ordering-processing system, or generally to discuss ways to increase business. (Frew Dep. at 22-23; Gibbons Dep. at 8, 10; Plucker Dep. at 6-7, 24-25) These visits were not targeted at "favored" CMRs in New York. Indeed, when specifically asked, defendant Qwest refuted the notion that any special deals had been offered to TMP in New York, and some of the defendants, Qwest included, have done no business with TMP in New York during the period for which plaintiffs made their jurisdictional inquiry. (Plucker Dep. at 14-15; Plucker Decl. ¶ 6; Gibbons Decl. ¶ 4) Thus, the "record is devoid of evidence that defendants' alleged activities in New York gave rise to the causes of action for which long-arm jurisdiction is sought." Storch v. Vigneau, 162 A.D.2d 241, 242, 556 N.Y.S.2d 342, 342 (1st Dep't 1990). Defendants' other unrelated visits to New York, the occasional sale of a directory in New York, and business payments made to New York vendors similarly lack the requisite "articulable nexus" upon which to base jurisdiction. McGowan, 52 N.Y.2d at 272, 437 N.Y.S.2d at 645.

C. C.P.L.R. § 302(a)(2)

**\*8** Plaintiffs further rely on § 302(a)(2) of New York's Long Arm Statute, which confers jurisdiction over a defendant who "commits a tortious act within the state." C.P.L.R. § 302(a)(2). Antitrust violations are tortious acts for jurisdictional purposes. *See* Fashion Two Twenty, Inc. v. Steinberg, 339 F.Supp. 836, 841 (E.D.N.Y.1970); Albert Levine Assocs. v. Bertoni & Cotti, 314 F.Supp. 169, 171 (S.D.N.Y.1970). Under § 302(a)(2) a defendant's physical presence in New York is a prerequisite to jurisdiction. *See* Bensusan, 126 F.3d at 29 (citing Feathers v. McLucas, 15 N.Y.2d 443, 458, 261 N.Y.S.2d 8 (1965). Plaintiffs rely on the moving defendants' conspiracy with Verizon and TMP in New York to monopolize, fix prices, and restrain trade, and on the moving defendants' visits to TMP in New York, allegedly in furtherance of that conspiracy. (Pl. Mem. at 18) This argument fails for three reasons. First, as noted above, plaintiffs have failed to show that these meetings involved any such conspiracy. Absent a specific showing that these meetings served an unlawful end, plaintiffs' conclusory allegations are "totally insufficient to create tortious activity in New York." Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 93 (2d Cir.1975).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK   Document 170-7   Filed 07/31/2006   Page 7 of 12

Not Reported in F.Supp.2d                                                                                                    Page 7
Not Reported in F.Supp.2d, 2001 WL 1468168 (S.D.N.Y.), 2002-1 Trade Cases P 73,556
**(Cite as: Not Reported in F.Supp.2d)**

Second, plaintiffs cannot rely on conspiracy alone to assert jurisdiction. "Under New York law, conspiracy, per se is not a tort .... The damage for which recovery may be had in a civil action is not the conspiracy itself, but the injury to plaintiff produced by specific overt acts." Grove Press, Inc. v. Angleton, 649 F.2d 121, 123 (2d Cir.1981). Plaintiffs have failed to allege specifically any tortious act performed by the moving defendants while in New York.

Finally, to the extent that plaintiffs' papers could be construed to assert a conspiracy theory of jurisdiction based on the alleged in-state activities of Verizon, plaintiffs have failed make a prima facie factual showing of a conspiracy. "It is well-established that the acts of a co-conspirator may be attributed to a defendant for the purpose of obtaining personal jurisdiction over the defendant." Singer v. Bell, 585 F.Supp. 300, 302 (S.D.N.Y.1984) (Weinfeld., J.) (citations omitted). However, it is also settled that "the bland assertion of conspiracy ... is insufficient to establish jurisdiction for the purposes of § 302(a)(2)." Lehigh Valley Indus. Inc., 527 F.2d 87, 93-94. Instead, plaintiffs must make a "prima facie case of conspiracy and allege specific facts warranting the inference that the defendants were members of the conspiracy." Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc., 26 F.Supp.2d 593, 601 (S.D.N.Y.1998) (citations omitted); see also Chrysler Capital Corp. v. Century Power Corp., 778 F.Supp. 1260, 1266 (S.D.N.Y.1991). Plaintiffs then must "come forward with some definite evidentiary facts to connect the defendant with transactions occurring in New York." Singer, 585 F.Supp. 300, 303 (citations omitted); see also Levisohn, Lerner, Berger & Langsam v. Medical Taping Sys., Inc., 10 F.Supp. 334, 342 (S.D.N.Y.1998).

*9 Plaintiffs have failed to meet their burden. Although a prima facie case of conspiracy can be based on either direct or circumstantial evidence, see Singer, 585 F.Supp. at 303, plaintiffs aver no facts to support the inference that the moving defendants were part of any conspiracy, let alone that any tortious acts were committed in New York on their behalf, see Pyramyd Stone Int'l Corp., 1997 WL 66778, at *11; see also Chrysler Capital Corp., 778 F.Supp. at 1268. Plaintiffs would apparently have the court infer a conspiracy from defendants' participation in YPPA, a trade association, and from various business practices of the Pubcos, only some of which constitute parallel conduct and all of which are in the defendants' individual self-interest. But far more is required to lay a sufficient factual foundation for an antitrust conspiracy. See, e.g., AD/SAT, A Division of Skylight, Inc. v. Associated Press, Newspaper Assoc. of Am., 181 F.3d 216, 234-35 (2d Cir.1999); Apex Oil Co. v. DiMaurio, 822 F.2d 246, 254 (2d Cir.1987); Levitch v. Columbia Broadcasting System, 495 F.Supp. 649, 674-75 (S.D.N.Y.1980), aff'd, 697 F.2d 495 (2d Cir.1983) (per curiam). Throughout their complaint and papers, plaintiffs offer nothing more, other than conclusory allegations of a corrupt agreement between the Pubcos and the favored CMRs to violate the antitrust laws. "Mere speculation and conjecture" by the plaintiffs, however, cannot provide a substitute for the averment of jurisdictional facts. Singer, 585 F.Supp. at 303.

### D. C.P.L.R. § 302(a)(3)

Finally, plaintiffs would rely also on § 302(a)(3), which provides for jurisdiction over a defendant who committed a tortious act outside New York that caused injury in New York. C.P.L.R. § 302(a)(3). "[C]ourts determining whether there is injury in New York must generally apply a situs-of-injury test, which asks them to locate the original event which caused the injury." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 791 (2d Cir.1999) (citations omitted). The original event as to a commercial tort is typically the loss of business, which occurs where the customers are located. American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., 439 F.2d 428 (2d Cir.1971); Sales Arm, Inc. v. Automobile Club of S. Cal., 402 F.Supp. 763, 766 (S.D.N.Y.1975). Plaintiffs assert that defendants are "causing injury to property of the disfavored CMRs within New York State, and the plaintiff CMRs which purchase from Verizon as to the Verizon yellow-page directories in the SDNY and elsewhere in New York." (Pl. Mem. at 19). However, absent sufficient allegations of a conspiracy with Verizon, see discussion supra pp. 19-21, it is not possible to connect the moving defendants' activities with any loss of business from Verizon. Plaintiffs do not specifically allege that they, or the disfavored CMRs in New York, have lost business from any client-advertisers in New York as a direct result of the moving defendants' activities. Finally, the mere presence of "disfavored CMRs within New York State," none of whom are parties to this action, does not qualify as injury in New York. See Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir.1990) ("An injury ... does not occur within the state simply because the plaintiff is a resident."); American Eutectic, 439 F.2d at 433 ("Section 302(a)(3) is not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK    Document 170-7    Filed 07/31/2006    Page 8 of 12

Not Reported in F.Supp.2d                                                                                                                                  Page 8
Not Reported in F.Supp.2d, 2001 WL 1468168 (S.D.N.Y.), 2002-1 Trade Cases P 73,556
**(Cite as: Not Reported in F.Supp.2d)**

satisfied by remote or consequential injuries which occur in New York only because the plaintiff is domiciled, incorporated or doing business in the state."); Barricade Books v.. Langberg, No. 95 CIV. 8906, 2000 WL 1863764, at *4 (S.D.N.Y. Dec. 19, 2000) ("New York courts have made one helpful principle clear: the situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff." (citations omitted)).

***10** Plaintiffs have thus failed to establish prima facie facts that support personal jurisdiction over the moving defendants under New York law. Moreover, having failed to satisfy the "transacting business" test under the Long-Arm Statute, plaintiffs have also failed to satisfy the venue provision of the Clayton Act, and therefore cannot rely on the Act's nationwide service of process provision. I decline to consider transferring venue, as it is unclear how or where plaintiffs might wish to proceed against the moving defendants. The amended complaint is thus dismissed as to defendants BAPCO, the SBC Publishing Companies, and Qwest.

III.

The remaining Pubcos, Verizon and GTE, move to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim. Taking the allegations of the amended complaint as true, it does not appear that there is any set of facts plaintiffs could prove in support of their complaint that would entitle them to relief under the antitrust laws. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).[FN7]

> FN7. Having failed to state a claim under the antitrust laws, plaintiffs have also failed to aver the commission of a tort, thus providing an additional ground for declining jurisdiction under C.P.L.R. § 302(a)(2) and (a)(3).

A. The Robinson-Patman Act Claim

The Robinson-Patman Act makes it "unlawful to discriminate in price between different purchasers of commodities of like grade and quality ...." 15 U.S.C. § 13(a). Plaintiffs base their claim on the different level of commissions on the sale of advertising offered to plaintiff CMRs as compared to favored CMRs and the Pubcos' internal sales forces. But as a matter of law, the Robinson-Patman Act does not apply to these allegations. The term "commodities" refers to goods, not services. See National Tire Wholesale, Inc. v. Washington Post Co., 441 F.Supp. 81, 84 (D.D.C.1977), aff'd without opinion, 595 F.2d 888 (D.C.Cir.1979). The Second Circuit thus has held that newspaper advertising is not a commodity within the meaning of the Act. Ambook Enter. v. Time Inc ., 612 F.2d 604, 610 (1979). Contrary to plaintiffs' suggestion, this is not an open question, at least in this Circuit. Nor is advertising "a product ... because [the directory] occupies a physical space and is physically distributed to the users." (Am.Comp.¶ 37) Rather, "[t]he printed paper is merely a tangible vehicle for the conveyance of ... ideas. It is only incidental to the dominant intangible nature of the transaction." National Tire Wholesale, 441 F.Supp. at 85 (citations omitted). Plaintiffs' attempts to distinguish Yellow Pages advertising are unpersuasive; rather, like newspaper advertising, it is outside the scope of the Act.

The Robinson-Patman Act claim also fails for two other reasons. First, the commission transactions at issue here are not "sales" with the meaning of the Act. See, e.g., Metro Communications Co. v. Ameritech Mobile Communications, Inc., 984 F.2d 739, 745-46 (6th Cir.1993); Kem-Tech, Inc. v. Mobile Corp., No. 84-1421, 1985 WL 3011, at *4 (E.D.Pa. Oct. 9, 1985) (collecting cases); Martin Ice Cream Co. v. Chipwich, Inc., 554 F.Supp. 933, 944 (S.D.N.Y.1983). CMRs do not buy advertising space from the Pubcos for resale to its clients. Rather, they act as intermediaries, verifying available space and placing orders on behalf of advertisers; they do not hold an inventory of space. (Am.Compl.¶ ¶ 75) Based on the foregoing, several other courts have already held that the transactions between the Pubcos and those selling advertising on their behalf are not "sales." See American Ad Mgmt., Inc. v. GTE Corp., 92 F.3d 781, 785 (9th Cir.1996); Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp., 849 F.2d 1336, 1345-48 (11th Cir.1987). Second, to the extent that plaintiffs' claim is premised on alleged differences between their commissions and the commissions paid to the Pubco's own internal sales force, the Robinson-Patman Act does not apply to discrimination based on intra-enterprise transfers. See, e.g., City of Mount Pleasant v. Associated Elec. Coop., Inc., 838 F.2d 268, 278-79 (8th Cir.1988). For all of the above reasons, plaintiffs' Robinson-Patman Act claim is dismissed.

B. Sherman Act § 2 Claim

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                    Page 9
Not Reported in F.Supp.2d, 2001 WL 1468168 (S.D.N.Y.), 2002-1 Trade Cases P 73,556
**(Cite as: Not Reported in F.Supp.2d)**

**\*11** Plaintiffs also fail to state a claim for monopolization, attempted monopolization, or conspiracy to monopolize under section 2 of the Sherman Act. Specifically, plaintiffs fail to allege antitrust injury, fail to adequately define the relevant market or plead market power, and fail to properly plead a conspiracy.

In order to prevail on a monopolization claim, "[p]laintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977). That is, an antitrust plaintiff must prove more than harm to its own business or the loss of a competitor. Rather, it must prove harm to competition as a whole in the relevant market. Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., 996 F.2d 537, 543 (2d Cir.1993). The crux of plaintiffs' complaint is that they are being harmed by the Pubcos' refusal to grant them the same levels of discount on advertising or the same terms as those granted to in-house sales representatives or other CMRs who have a history of selling more advertising than plaintiffs. Plaintiffs complain of having to "lower their markups on resale ... in order to offer yellow-page advertising to customers at the same price as the favored CMRs and in-house sales departments." (Pl. Opp. at 2) This alleged injury is not antitrust injury.

First, to the extent that plaintiffs are complaining about defendants' pricing conduct as competitors to the Pubcos' internal sales forces, there is no antitrust injury absent an allegation that defendants' pricing is predatory-that is, below an appropriate level of defendants' costs. See Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 222-24 (1993); Atlantic Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 337-39 (1990). Plaintiffs have made no such allegation. Non-predatory pricing furthers competition, and thus is not actionable under the antitrust laws. See Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1061 (8th Cir.2000) ( "The decisions of the Supreme Court ... illustrate the general rule that above cost discounting is not anticompetitive.")

Second, to the extent that plaintiffs are complaining about being disfavored intermediaries between the Pubcos and advertisers, their injury can be likened to that of a non-preferred distributor who is harmed by a supplier's decision to sell its product directly or to give other distributors better terms. In *Cancall PCS v.*

*Omnipoint Corp.,* Judge Schwartz recently dismissed claims based on just this sort of injury. No. 99 Civ. 3395, 2000 WL 272309 (Mar. 10 2000). The Court held that these allegations "fail to allege harm to competition in a manner that the antitrust laws were meant to guard against." *Id.* at \*6; *see also Re-Alco Indus., Inc. v. National Center for Health Educ., Inc.,* 812 F.Supp. 387, 392 (S.D .N.Y.1993) (holding that even an exclusive distributorship agreement causing harm to another distributor is not, standing alone, sufficient to show antitrust injury).

**\*12** The *Cancall* Court explained that such grievances did not constitute harm to competition because plaintiffs made "no allegation that consumers in general were charged higher prices" by the defendant or the other distributors. *Cancall,* 2000 WL 272309, at \*6. Plaintiffs similarly do not allege market-wide harm to competition in the provision of advertising services. They fail to allege specifically that the consumer-advertisers are being charged more because of defendants' conduct, or that advertisers cannot turn to another of the 186 CMRs or to the Pubcos themselves for advantageous terms and prices. Neither plaintiffs' conclusory allegation that competition has been destroyed in this market, nor their vague allegation of harm to competition in the market for Yellow Pages publishing can cure this defect. Absent sufficient allegations of antitrust injuries, plaintiffs lack standing to bring their antitrust claims.

Even if plaintiffs had alleged antitrust injury, a complaint must allege a relevant product market in which the anticompetitive effects of the challenged activity can be assessed. Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 29 (1984). Because the relevant market includes all products reasonably interchangeable, determining that market requires consideration of cross-elasticity of demand-that is, which products can effectively substitute for the product allegedly being monopolized. *See* United States v. E.I. du Pont de Nemours & Co., 351 U.S. 377 (1956). Plaintiffs assert simply that the relevant market is the market for Yellow Pages directories and Yellow Pages advertising included therein. However, a complaint in an antitrust case must allege a basis for finding that the product alleged to have been monopolized is in some way unique, that it is a market unto itself. Plaintiffs must explain why the market they allege is in fact the relevant, economically significant market. Here, plaintiffs do not show why other forms of advertising, such as television, radio, or other print media, are not reasonably interchangeable with Yellow Pages

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 10
Not Reported in F.Supp.2d, 2001 WL 1468168 (S.D.N.Y.), 2002-1 Trade Cases P 73,556
**(Cite as: Not Reported in F.Supp.2d)**

advertising. Where a complaint fails to allege facts regarding substitute products, or to allege other pertinent facts relating to cross-elasticity of demand, as the complaint here fails to do, a court may grant a Rule 12(b)(6) motion. *See Re-Alco Indus. Inc.,* 812 F.Supp. at 391; *E & G Gabriel v. Gabriel Bros., Inc.,* No. 93 Civ. 894, 1994 WL 369147, at *3 (S.D.N.Y. July 13, 1994) ("Plaintiff's failure to define its market by reference to the rule of reasonable interchangeability is, standing alone, valid grounds for dismissal.").

A related defect in plaintiffs' monopolization and attempted monopolization claim is that, absent adequate market definition, it is impossible for the court to determine if the defendants possess "monopoly power in the relevant market" or "a dangerous possibility of achieving monopoly power." *United States v. Grinell Corp.,* 384 U.S. 563, 570 (1966); *Spectrum Sports, Inc. v.. McQuillan,* 506 U.S. 447, 456 (1993). This is compounded by plaintiffs' lack of allegations regarding specific market characteristics, such as barriers to entry, in its purported market. *See International Distrib. Ctrs. v. Walsh Trucking Co.,* 812 F.2d 786, 791-92 (2d Cir.1987); *Smith & Johnson, Inc. v. Hedaya,* No. 96 Civ. 5821, 1996 WL 737194, at *7 (S.D.N.Y. Dec. 26, 1996). Plaintiffs' reliance on the entry barriers to providing local telephone service is insufficient; plaintiffs have not shown that defendants' affiliation with the telephone companies endows them with monopoly power in the Yellow Pages advertising market.

**\*13** Further, these defects in market allegations make it difficult for a court to assess whether the challenged practices are exclusionary conduct in violation of the Sherman Act. Absent a showing that these practices are part of an effort to maintain monopoly power in the relevant market, each defendant is free to decide unilaterally with whom to deal and on what terms and conditions. *See, e.g., United States v. Colgate & Co.,* 250 U.S. 300, 307 (1919); *Goldwasser v. Ameritech Corp.,* 222 F.3d 390, 397 (7th Cir.2000) ("[E]ven a monopolist is entitled to compete .... Part of competing like everyone else is the ability to make decisions about whom and on what terms one will deal."); *see also Intergraph Corp. v. Intel Corp.,* 195 F.3d 1346, 1354 (Fed.Cir.1999) ("[T]he Sherman Act does not convert all harsh commercial actions into antitrust violations.").

Finally, plaintiffs fail to properly plead a conspiracy to monopolize. Just as conclusory allegations of concerted action are insufficient to support a conspiracy theory of jurisdiction, so too are they insufficient to state a Sherman Act § 2 claim. "Although the Federal Rules permit statement of ultimate facts, a bare bones statement of conspiracy ... under the antitrust laws without any supporting facts permits dismissal." *Fort Wayne Telsat v. Entertainment & Sports Programming Network,* 753 F.Supp. 109, 113 (S.D.N.Y.1990) (*quoting Heart Disease Research Foundation v. General Motors Corp.,* 463 F.2d 98, 100 (2d Cir.1972); *see also Furlong v. Long Island College Hosp.,* 710 F.2d 922, 927 (2d Cir.1983) ("[W]e think that *Conley* permits a pleader to enjoy all favorable inferences from facts that have been pleaded, and does not permit conclusory statements to substitute for minimally sufficient factual allegations."); *John's Insulation, Inc. v. Siska Constr. Co.,* 774 F.Supp. 156, 163 (S.D.N.Y.1991) ("[C]onclusory allegations which merely recite the litany of antitrust will not suffice."). As noted in the discussion of jurisdiction, *see supra* p. 21, a conspiracy will not be inferred from participation in a trade association. Nor can it be inferred from the nonuniform conduct that necessitates a 75-page complaint where plaintiffs plead "individually" in a "plaintiff-defendant specific" format. (*See* Am. Compl. at 14 n. 1) Plaintiffs' charge of conspiracy is thus not factually based nor intuitively apparent. Accordingly, plaintiffs' Sherman Act § 2 claims are dismissed.

### C. Sherman Act § 1 Claim

Plaintiffs' Sherman Act § 1 claim is also without merit. Not surprisingly, it suffers from some of the same pleading deficiencies as plaintiffs' other claims. First, as noted above, plaintiffs have failed to allege antitrust injury, and thus have failed to satisfy a prerequisite for recovery under the antitrust laws. Second, the amended complaint is devoid of factual support for the existence of any § 1 "contract, combination ... or conspiracy in restraint of trade." 15 U.S.C. § 1.

**\*14** Once again, plaintiffs do not allege when or where any unlawful agreement was made, or by whom, or why the parties would enter this agreement. Furthermore, the court is left to speculate as to its specific terms. For example, although plaintiffs allege a conspiracy to fix prices, they do not allege that the Pubcos charge the same rates for advertising or even that they have adopted the same discount commission structure. Even where pricing practices or other policies are generally alleged to be uniform,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 11
Not Reported in F.Supp.2d, 2001 WL 1468168 (S.D.N.Y.), 2002-1 Trade Cases P 73,556
**(Cite as: Not Reported in F.Supp.2d)**

this uniformity does not permit an inference of a conspiracy where the conduct is in each party's individual self-interest. Plaintiffs do not allege, as they must, that this is anything other than independent, parallel conduct meant to maximize each party's own revenues. *See* Levitch, 495 F.Supp. at 673-75; *see also* AD/SAT, A Division of Skylight, Inc., 181 F.3d at 235 (2d Cir.1999); Apex Oil Co., 822 F.2d at 254 (2d Cir.1987). There is a similar lack of particulars surrounding the alleged concerted refusal to sell plaintiffs local advertising at a discount. That each Pubco chose to adhere to guidelines set by the YPPA as to the definition of local advertising, and decided to handle "local" accounts internally, is insufficient to state a § 1 claim. *See, e.g.,* Consol. Metal Prods., Inc. v. Am. Petroleum Inst., 846 F.2d 284, 292-94 (5th Cir.1988) (citing Maple Flooring Mfrs. Ass'n v. United States, 268 U.S. 563, 582-87 (1925)).

Finally, although there is no specific mention of a tying claim in the amended complaint, plaintiffs assert an unlawful tying arrangement in their motion papers based on the allegation that defendants have tied current prices for advertising to last year's volume of purchases. (Pl. Opp. at 26) Apart from the question of whether or not the complaint gives notice of such a claim, the claim is deficient as a matter of law. To state a tying claim, there must be two separate products for which there is consumer demand, and the sale of one must be conditioned on the purchase of the other. *See* Jefferson Parish, 466 U.S. at 12, 21-22; Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 462 (1992). Plaintiffs' claim is not based on such a relationship between two separate products as that concept is understood in tying jurisprudence, nor is there any allegation that a CMR is required to have purchased advertising or any other product in order to be able to purchase advertising from defendants.

Plaintiffs' claims will be dismissed without further leave to replead. I told plaintiffs that their amended complaint would be *the* complaint upon which I would address a motion to dismiss. The letter that defendants sent to plaintiffs under court order put plaintiffs on notice of the deficiencies in their original complaint. Plaintiffs have failed to correct these deficiencies in their amended complaint, and thus dismissal without leave to replead is proper. *See* Rock TV Entm't, Inc. v. Time Warner, Inc., No. 97 CIV. 0161, 1998 WL 37498, at *4 (S.D.N.Y. Jan. 30, 1998) (citing Posner v. Coopers & Lybrand, 92 F.R.D. 765 (S.D.N.Y.1981), *aff'd,* 697 F.2d 296 (2d Cir.1982)).

### D. State and Common Law Claims

**\*15** Because I have dismissed all of plaintiffs' federal claims on defendants' motion to dismiss, I decline to exercise supplemental jurisdiction over the state and common law claims. They are dismissed. *See* 28 U.S.C. § 1367(c)(3) (1994); Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 102-03 (2d Cir.1998) (holding that when federal claims are dismissed at an early stage of litigation, it is proper to decline to exercise supplemental jurisdiction); Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir.1994) (stating that if federal claims are dismissed before trial, state claims should be dismissed as well).

### E. The YPPA

Although the YPPA did not move to dismiss the complaint, the only role it is alleged to have played was to facilitate the unlawful activities of the defendant publishing companies. Because I have found that plaintiffs fail to allege unlawful conduct by those defendants, there can be no unlawful facilitation by the YPPA, and thus no basis for its continued presence in this lawsuit. Indeed, in their papers, both plaintiffs and defendants have tacitly acknowledged that the outcome of this motion determines the status of all defendants. Therefore, the amended complaint is dismissed as to all defendants, including the YPPA.

For the reasons set forth above, defendants' motions to dismiss for lack of personal jurisdiction and failure to state a claim are granted, and the amended complaint is dismissed.

SO ORDERED:

S.D.N.Y.,2001.
Yellow Page Solutions, Inc. v. Bell Atlantic Yellow Pages Co.
Not Reported in F.Supp.2d, 2001 WL 1468168 (S.D.N.Y.), 2002-1 Trade Cases P 73,556

Briefs and Other Related Documents (Back to top)

• 2001 WL 34545622 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Bellsouth Advertising & Publishing Corporation's Motion to Dismiss for Lack of Personal

Not Reported in F.Supp.2d  Page 12
Not Reported in F.Supp.2d, 2001 WL 1468168 (S.D.N.Y.), 2002-1 Trade Cases P 73,556
**(Cite as: Not Reported in F.Supp.2d)**

Jurisdiction and Improper Venue (May. 04, 2001)
• 2001 WL 34545630 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Further Support of SBC Publishing Companies' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (May. 04, 2001)
• 2001 WL 34545636 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Further Support of SBC Publishing Companies' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (May. 04, 2001)
• 2001 WL 34611768 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Further Support of SBC Publishing Companies' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (May. 04, 2001)
• 2001 WL 34611774 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Further Support of SBC Publishing Companies' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (May. 04, 2001)
• 2001 WL 34611775 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Bellsouth Advertising & Publishing Corporation's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (May. 04, 2001)
• 2001 WL 34545621 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to the Motions by Bapco, SBC and Qwest to Dismiss the Action for Lack of Personal Jurisdiction and Improper Venue (Apr. 15, 2001)
• 2001 WL 34611773 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to the Motions by Bapco, SBC and Qwest to Dismiss the Action for Lack of Personal Jurisdiction and Improper Venue (Apr. 15, 2001)
• 2001 WL 34545631 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum of Law in Further Support of Motion to Dismiss the Amended Complaint Under Federal Rule of Civil Procedure 12(b)(6) (Mar. 23, 2001)
• 2001 WL 34611772 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum of Law in Further Support of Motion to Dismiss the Amended Complaint Under Federal Rule of Civil Procedure 12(b)(6) (Mar. 23, 2001)
• 2001 WL 34545632 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Defendants' Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6) (Mar. 02, 2001)
• 2001 WL 34611771 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Defendants' Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6) (Mar. 02, 2001)
• 2000 WL 34326108 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of BellSouth Advertising & Publishing Corporation's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Dec. 29, 2000)
• 2000 WL 34326110 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of SBC Directory Operations Inc.'s Motion to Dismiss for Failure to State a Claim, for Lack of Personal Jurisdiction, and for Improper Venue (Dec. 29, 2000)
• 2000 WL 34403539 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of BellSouth Advertising & Publishing Corporation's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Dec. 29, 2000)
• 2000 WL 34403540 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of SBC Directory Operations Inc.'s Motion to Dismiss for Failure to State a Claim, for Lack of Personal Jurisdiction, and for Improper Venue (Dec. 29, 2000)
• 2000 WL 34326007 (Trial Pleading) Amended Complaint (Nov. 27, 2000)
• 2000 WL 34403536 (Trial Pleading) Amended Complaint (Nov. 27, 2000)
• 2000 WL 34326008 (Trial Pleading) Complaint (Jul. 31, 2000)
• 2000 WL 34403532 (Trial Pleading) Complaint (Jul. 31, 2000)
• 1:00cv05663 (Docket) (Jul. 31, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.