UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
WORLD WRESTLING ENTERTAINMENT, INC.,           :     04 CV 8223 (KMK)
                                               :     (ECF CASE)
                                Plaintiff,     :
                                               :
            - against -                        :
                                               :
JAKKS PACIFIC, INC.; JAKKS PACIFIC (H.K.)      :
LIMITED; ROAD CHAMPS LIMITED; THQ, INC.;       :
THQ/JAKKS PACIFIC LLC, THE JOINT VENTURE       :
OF THQ, INC. and JAKKS PACIFIC, INC.;          :
STANLEY SHENKER AND ASSOCIATES, INC.;          :
STANLEY SHENKER; BELL LICENSING, LLC;          :
JAMES BELL; JACK FRIEDMAN; STEPHEN             :
BERMAN and JOEL BENNETT,                       :
                                               :
                                Defendants.    :
-----------------------------------------------------------------x

# REPLY MEMORANDUM OF LAW OF
# THQ/JAKKS PACIFIC LLC IN SUPPORT OF ITS
# <u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>

DORNBUSH SCHAEFFER STRONGIN & VENAGLIA, LLP
Richard Schaeffer (RS0019)
Bruce Handler (BH9426)
Cynthia Ebbs (CE8038)
747 Third Avenue
New York, New York 10017
Telephone: (212) 759-3300
Facsimile: (212) 753-7673

*Attorneys for THQ/JAKKS Pacific LLC*

## TABLE OF CONTENTS

Preliminary Statement ............................................................................................................ 1

    I.    WWE HAS FAILED TO ALLEGE THAT THE LLC PARTICIPATED IN THE "OPERATION OR MANAGEMENT" OF A RICO ENTERPRISE. .................................................................................. 2

    II.   WWE HAS NOT ALLEGED CONTINUITY AS TO THE LLC. ........................ 5

    III.  WWE HAS NOT ADEQUATELY ALLEGED THAT THE LLC COMMITTED RICO PREDICATE ACTS .......................................................... 7

    IV.  THE LLC IS NOT VICARIOUSLY LIABLE. ...................................................... 8

Conclusion ............................................................................................................................ 10

# TABLE OF AUTHORITIES

### Cases

Acito v. IMCERA Group, Inc.,
    47 F.3d 47 (2d Cir. 1995).................................................................................... 7

Baisch v. Gallina,
    346 F.3d 366 (2d Cir. 2003)................................................................................ 8

Cosmos Forms Ltd. v. The Guardian Life Ins. Co. of America,
    113 F.3d 308 (2d Cir. 1997)................................................................................ 6

Crab House of Douglaston, Inc. v. Newsday, Inc.,
    418 F. Supp. 2d 193 (E.D.N.Y. 2006) ............................................................ 2, 4

De Jesus v. Sears, Roebuck & Co., Inc.,
    87 F.3d 65 (2d Cir. 1996).................................................................................. 10

In re Chief Executive Officers Clubs, Inc.,
    2006 Bankr. LEXIS 482 (S.D.N.Y. Mar. 8, 2006) ......................................... 3, 4

In re SmithKline Beecham Clinical Laboratories, Inc. Laboratory Test Billing Practices Litig.,
    108 F. Supp. 2d 84 (D. Conn. 1999)................................................................... 4

Int'l Brotherhood of Teamsters v. Carey,
    297 F. Supp. 2d 706 (S.D.N.Y. 2004)................................................................. 6

Kadouri v. Fox,
    2005 U.S. Dist. LEXIS 4818 (E.D.N.Y. Jan. 24, 2005) ..................................... 6

Kosower v. Gutowitz,
    2001 U.S. Dist. LEXIS 19111 (S.D.N.Y. Nov. 21, 2001).................................. 8

Lakonia Mgt. Ltd. v. Meriwether,
    106 F. Supp. 2d 540 (S.D.N.Y. 2000)................................................................. 7

Marcoux v. American Airlines, Inc.,
    2006 U.S. Dist. LEXIS 14130 (E.D.N.Y. Mar. 28, 2006) .................................. 5

Moore v. PaineWebber, Inc.,
    189 F.3d 165 (2d Cir. 1999)............................................................................... 7

Nasik Breeding & Research Farm Ltd. v. Merck & Co.,
    165 F. Supp. 2d 514 (S.D.N.Y. 2001)................................................................. 8

Peralta v. WMH Tool Group, Inc.,
    2005 U.S. Dist. LEXIS 41755 (E.D.N.Y. Aug. 18, 2005)................................... 9

Richardson Greenshields Sec. Inc. v. Lau,
    819 F. Supp. 1246 (S.D.N.Y. 1993).................................................................. 10

Schwartz v. Dubravetz,
    969 F.2d 840 (9th Cir. 1992) .............................................................................. 9

173796.2

State Farm Mut. Auto. Ins. Co. v. CPT Medical Servs. P.C.,
  375 F. Supp. 2d 141 (E.D.N.Y. 2005) .................................................................. 8

United States v. Autuori,
  212 F.3d 105 (2d Cir. 2000) ................................................................................. 7

United States v. Busacca,
  936 F. 2d 232 (2d Cir. 1991) ................................................................................ 7

United States v. Feldman,
  853 F.2d 648 (9th Cir. 1988) ................................................................................ 4

United States v. Hewes,
  729 F.2d 1302 (11th Cir. 1984) ............................................................................ 4

United States v. McKeon,
  738 F.2d 26 (2d Cir. 1984) ................................................................................... 5

United States v. Teitler,
  802 F. 2d 606 (2d Cir. 1986) ................................................................................ 4

USA Certified Merchants, LLC v. Koebel,
  262 F. Supp. 2d 319 (S.D.N.Y. 2003) .................................................................. 7

Watral v. Silvernails Farms, LLC,
  177 F. Supp. 2d 141 (E.D.N.Y. 2001) .................................................................. 6

Zhu v. First Atlantic Bank,
  2005 U.S. Dist. LEXIS 24895 (S.D.N.Y. Oct. 21, 2005) ..................................... 2

**Preliminary Statement**

In its opposition brief, plaintiff World Wrestling Entertainment, Inc. ("WWE") struggles in vain with a metaphysical quandary of its own making: how to plausibly allege that defendant THQ/JAKKS Pacific LLC (the "LLC") is liable for a RICO scheme designed to bribe and "corrupt" a WWE agent and employee, if the LLC did not exist during the progress of that scheme; was not envisioned when the scheme was allegedly formed; and engaged in no discernible conduct in furtherance of that scheme. The answer, of course, is that WWE can state no such claim in its Amended Complaint. By insisting on drawing the LLC into this action, WWE necessarily seeks to subvert longstanding principles of RICO law and to dilute its own rigorous pleading burden under the RICO Act.

As demonstrated in our moving papers -- by virtue of the LLC's belated formation and its absence from any conceivable racketeering activities -- WWE's claims against the LLC collapse under the weight of several distinct RICO pleading standards, including "continuity," the <u>Reves</u> "operation or management" test, and the strict requirements for alleging predicate acts.[1] Indeed, WWE has now created a whole new problem for itself. WWE emphatically pronounces in its opposition brief ("WWE Opp.") that this lawsuit really is based on the claim that the defendants "depriv[ed] WWE of the intangible right of honest services" from its agent and employee, defendants Shenker and Bell, respectively. WWE Opp. 1. Yet WWE has not alleged that the LLC -- once it was formed on June 10, 1998 -- engaged in any substantive contact with Shenker or Bell, much less that it "corrupted" them. Nor (it must be said again) did the LLC <u>even exist</u> during the period when Shenker and Bell allegedly were corrupted.

Faced with the impossibility of pleading a cognizable RICO claim against the LLC, WWE attempts to render its pleading burden all but illusory on virtually every element of its

---

[1] The LLC also adopts those arguments set forth in the reply briefs of the JAKKS and THQ defendants, including those relating to RICO pattern, RICO injury and the statute of limitations.

cause of action. See WWE Opp. 4-7 (RICO generally), 29 (RICO injury), 42-43, 47 ("operation or management"), 48-50 (mail and wire fraud), 51 (scienter). Ultimately, it is this litigation tactic -- rather than its reliance on any specific factual allegations against the LLC -- that forms the crux of WWE's position. WWE's boasts that its Amended Complaint is "exacting", "specifically enumerated" and "over and above the minimum pleading standards" (WWE Opp. 9, 18, 50) are, at least with respect to the LLC, entirely spurious.

And of course, when all else fails, there is always vicarious liability. WWE concludes its opposition brief with the predictable argument that, notwithstanding the inadequacy of its RICO allegations against the LLC, the LLC still should be held liable for the actions of others. This is wrong as a matter of law. It is also an obvious concession by WWE that it cannot assert a proper RICO claim against the LLC.

### I. WWE HAS FAILED TO ALLEGE THAT THE LLC PARTICIPATED IN THE "OPERATION OR MANAGEMENT" OF A RICO ENTERPRISE.

Notwithstanding WWE's effort to diminish the rigor of the "operation or management" test set out in Reves v. Ernst & Young, 507 U.S. 170 (1993), the fact remains that the LLC did not exist at the relevant time and could not possibly have managed or operated anything. The Amended Complaint's countless boilerplate allegations of purported conduct by the LLC -- or by undifferentiated "Defendants" (AC ¶¶ 171, 247) -- cannot change this. See Crab House of Douglaston, Inc. v. Newsday, Inc., 418 F. Supp. 2d 193, 208 (E.D.N.Y. 2006) (plaintiff did not satisfy Reves test where, inter alia, it "fail[ed] to attach any specific allegations to Defendant"). Both before and after the Second Circuit's decision in First Capital, infra, relied on so heavily by WWE, the Reves test has functioned as far more than a minor irritant to be cast aside by courts at the pleading stage: "As interpreted by Courts in this district and others, the 'operation and management' test. . . is a very difficult test to satisfy." Zhu v. First Atlantic Bank, 2005 U.S. Dist. LEXIS 24895, at *17 (S.D.N.Y. Oct. 21, 2005) (emphasis added).

173796.2

WWE eschews the hard work of articulating substantive factual allegations that the LLC controlled and directed the affairs of a RICO enterprise. Instead, it relies almost entirely on the Court's comment in First Capital Asset Mgt., Inc. v. Satinwood, Inc., 385 F.3d 159, 176 (2d Cir. 2004), that "[i]n this Circuit, the 'operation or management' test typically has proven to be a relatively low hurdle for plaintiffs to clear." First Capital, however, announced no new, more lenient pleading standard under Reves. It simply acknowledged certain earlier holdings in this Circuit involving defendants who were alleged to be in far more control of a RICO enterprise than the LLC is here. As discussed in our moving brief (at p. 10 n.4), the First Capital Court carefully considered plaintiffs' factual allegations and still held that they had just "barely" alleged that one defendant operated or managed the affairs of a RICO enterprise. Id. at 178.

The allegations of First Capital and every other case cited by WWE stand in stark contrast to the present case, where the LLC is not alleged to have taken any action to manage, direct or control a RICO enterprise. One Court in this Circuit recently rejected the same overextension of First Capital attempted by WWE here: "Although pleading 'operation or management' has typically 'proven to be a relatively low hurdle for plaintiffs to clear,' [citing First Capital], a plaintiff must still allege facts showing that a defendant played 'some part in directing the enterprise's affairs.'" In re Chief Executive Officers Clubs, Inc., 2006 Bankr. LEXIS 482, at *19 (S.D.N.Y. Mar. 8, 2006) (emphasis added) (dismissing RICO claims under Reves).

Yet under any application of the "operation or management" test, WWE has fallen short. The only "factual" allegation cited by WWE merely asserts that the LLC "is an indispensable part of the enterprise, as it (by [defendant] Farrell) executed the license on behalf of JAKKS and THQ, then agreed to several related agreements. . .". WWE Opp. 44. As demonstrated in our moving brief (at pp. 14-15), the simple act of signing a contract allegedly related to a RICO

enterprise and handling payments pursuant to such a contract do not constitute the "operation or management" of a RICO enterprise. See In re SmithKline Beecham Clinical Laboratories, Inc. Laboratory Test Billing Practices Litig., 108 F. Supp. 2d 84, 99 (D. Conn. 1999) (alleged business relation between defendant and enterprise is insufficient).

WWE also erroneously asserts that "all" case authorities cited by the LLC and THQ dismissing RICO claims under Reves were limited to two situations: (i) "outsiders that merely rendered goods or services"; and (ii) "passive conduit[s] through which proceeds from the enterprise may flow." WWE Opp. 45-46. No such limitation exists. In Reves, the Supreme Court held that the issue was whether a RICO defendant had "some part in directing [the enterprise's] affairs" -- not whether a defendant is labeled as an outsider or passive conduit. 507 U.S. at 179. We previously cited decisions dismissing RICO claims under Reves where the defendants were neither "outsiders" nor "passive conduits."[2]

Finally, faced with the inconvenient fact that the LLC did not exist throughout the progress of the alleged RICO scheme, WWE cryptically asserts that "'participation in a series of transactions does not require participation in each transaction.'" WWE Opp. 44-45. However, WWE's supporting case authorities on this point do not relate to the Reves "operation or management" test, but instead concern a plaintiff's allegation of a RICO pattern (see United States v. Teitler, 802 F. 2d 606, 617 (2d Cir. 1986) (decided before Reves)), or the existence of a RICO enterprise. See United States v. Hewes, 729 F.2d 1302, 1310-1311 (11th Cir. 1984); United States v. Feldman, 853 F.2d 648, 659 (9th Cir. 1988).

---

[2] See Crab House of Douglaston, 418 F. Supp. 2d 193 (dismissing RICO claims under Reves against employees of corporate RICO defendant); In re Chief Executive Officers Clubs, Inc., 2006 Bankr. LEXIS 482, at *20 (dismissing RICO claim under Reves against corporation that allegedly violated securities laws by failing to disclose acquisition of company and entering into agreement that did not accurately reflect nature of the transaction).

## II. WWE HAS NOT ALLEGED CONTINUITY AS TO THE LLC.

WWE knows that it has a serious "continuity" problem. That's why it filed an Amended Complaint alleging a newly contrived, artificially elongated scheme which actually <u>minimizes</u> the LLC's alleged role in this action.[3] Continuity is determined with respect to each defendant individually (<u>First Capital</u>, 385 F.3d at 180), and with respect to the LLC, WWE has advanced no coherent theory. WWE can rely on only these allegations in support of continuity: (i) the mere existence of the LLC for two months as of the final installment of the alleged bribe to defendant Shenker in August 1998 (AC ¶ 168); (ii) the conclusory claim that undifferentiated "Defendants" failed to disclose illegal activities (AC ¶¶ 171-172); and (iii) the LLC's execution of, and performance under, the lawful Videogame License Agreement (<u>see</u> WWE Opp. 19).

WWE surely has not explained how it has alleged "closed-ended" continuity against the LLC, which existed for only <u>two months</u> when the alleged <u>final</u> bribe payment was made. It is not enough to transform the LLC's subsequent performance of a lawful license agreement into countless acts of alleged mail and wire fraud and money laundering. In <u>Marcoux v. American Airlines, Inc.</u>, 2006 U.S. Dist. LEXIS 14130 (E.D.N.Y. Mar. 28, 2006), the plaintiffs -- like WWE here -- amended their complaint to "greatly expand their original RICO claims" by alleging "the existence of multiple schemes and thousands of predicate acts of mail and wire fraud. . .". <u>Id.</u> at *35, *43. Declining to find "closed-ended" continuity, the Court in <u>Marcoux</u> held, "[P]laintiffs are artificially fragmenting what is essentially one alleged criminal purpose. . . into multiple schemes. Thus, without more, <u>merely alleging a large number of mailings and calls</u>

---

[3] WWE certainly cannot allege continuity as to the LLC based on a re-imagined racketeering scheme dating back to 1995 -- more than two years before the LLC was formed.

WWE understandably tries to dissuade this Court from even looking at its original Complaint (WWE Opp. 9 n.6), since it so plainly reveals how WWE has altered its allegations to suit its purposes. The law, however, holds otherwise. See <u>United States v. McKeon</u>, 738 F.2d 26, 31 (2d Cir. 1984) (party "cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleading to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories").

is insufficient to meet plaintiffs' burden." Id. at *43-*44 (emphasis added).[4]

In arguing for "open-ended" continuity, WWE's leading argument is that defendants' business activities are "inherently unlawful" and "automatically give rise to the requisite threat of continuity." WWE Opp. 25 (emphasis in original). However, a legitimate business enterprise like this, engaged in acquiring and marketing videogame licenses, does not constitute the inherently illegal work of a criminal enterprise such as drug trafficking or embezzlement necessary to establish continuity. See, e.g., Watral v. Silvernails Farms, LLC, 177 F. Supp. 2d 141, 150 (E.D.N.Y. 2001) (no "open-ended" continuity where "the enterprise alleged -- the stabling and breeding of horses -- is a legitimate business and not. . . engaged in primarily criminal conduct").

WWE also claims "open-ended" continuity by contending that the alleged racketeering scheme was not "inherently terminable." In so claiming, WWE again clutches to the conclusory and erroneous assertion that the LLC's mere activities in accordance with the Videogame License Agreement constitute "predicate acts. . . continuing to this present day." WWE Opp. 28. As noted above, discrete acts in the performance of a lawful contract cannot establish the required continuity. See Kadouri v. Fox, 2005 U.S. Dist. LEXIS 4818, at *13 (E.D.N.Y. Jan. 24, 2005) ("that the [alleged fraudulently obtained and maintained] lease could have continued beyond two years is not sufficient to create open-ended continuity").[5]

---

[4] WWE insists that it can establish "closed-ended" continuity by alleging that the defendants "concealed" their purported racketeering activities. WWE Opp. 20. As discussed in our moving brief, allegations of a cover-up do not establish RICO continuity. See Int'l Brotherhood of Teamsters v. Carey, 297 F. Supp. 2d 706, 716 (S.D.N.Y. 2004). To the extent WWE argues that allegations of fraudulent concealment may establish continuity if they constitute independent RICO predicate acts (WWE Opp. 20), any such argument would not apply to the LLC. The Amended Complaint contains no specific factual allegation that the LLC engaged in the concealment -- fraudulent or otherwise -- of past activities. See AC ¶¶ 171-172, 186-241.

[5] Even the cases cited by WWE (WWE Opp. 27) stand for the proposition that one cannot manufacture "open-ended" continuity simply by labeling defendants' ongoing activity as RICO predicate acts. Instead, such continuing activity -- by its very nature -- must constitute illegal transactions. See Cosmos Forms Ltd. v. The Guardian Life Ins. Co. of America, 113 F.3d 308, 310 (2d Cir. 1997) (holding that "continuity is met since the unlawful acts" -- each a separate act of generating fraudulently inflated invoices -- "recurred with regularity"); United States v.

### III. WWE HAS NOT ADEQUATELY ALLEGED THAT THE LLC COMMITTED RICO PREDICATE ACTS.

WWE contends that, under Rule 9(b), in order to plead a mail or wire fraud predicate act against the LLC, it need only allege, with little if any detail, the existence of a scheme to defraud and the use of the mails or wires in furtherance of the scheme. WWE apparently takes the position that it need not even allege specific conduct by the LLC. WWE Opp. 49-50. As shown in our moving papers (at pp. 22-23), WWE's lax standard is not the law. See USA Certified Merchants, LLC v. Koebel, 262 F. Supp. 2d 319, 332 (S.D.N.Y. 2003) ("where more than one defendant is charged with fraud, it is necessary for a plaintiff to particularize and prove each defendant's participation in the fraud"); Lakonia Mgt. Ltd. v. Meriwether, 106 F. Supp. 2d 540, 553-554 (S.D.N.Y. 2000).

WWE has not alleged any fraudulent statement by the LLC and -- despite its inflated claims to the contrary (WWE Opp. 50-51) -- it has not alleged, as required, that the LLC "knowingly participated in the scheme and that the misrepresentations were material." U.S.A. Certified Merchants, 262 F. Supp. 2d at 332 (citing United States v. Autuori, 212 F.3d 105, 115 (2d Cir. 2000)). It has only intoned an endless litany of conclusory allegations.

In supporting its allegation of scienter as to the LLC, WWE cites only this: Mr. Farrell of THQ executed the Videogame License Agreement on behalf of the LLC; THQ and JAKKS each own 50% of the LLC and have arrangements for distribution of the LLC's proceeds; and Messrs. Berman and Farrell have executed contracts on behalf of the LLC. WWE Opp. 55. These allegations do not come close to pleading the LLC's scienter. See Moore v. PaineWebber, Inc., 189 F.3d 165, 172-173 (2d Cir. 1999) ("plaintiff must allege facts that give rise to a 'strong inference of fraudulent intent'"); Acito v. IMCERA Group, Inc., 47 F.3d 47, 54 (2d Cir. 1995) ("If scienter could be pleaded on [the] basis [of a desire to increase compensation] alone,

---

Busacca, 936 F. 2d 232, 238 (2d Cir. 1991) ("open-ended" continuity shown where "there was nothing to stop [defendant] from continuing to misappropriate monies from the Funds had he been acquitted. . .").

virtually every company in the United States" would face fraud liability).

WWE has the same problems with its money laundering claims and every other alleged predicate act, since they all require a degree of participation and intent not alleged as to the LLC. With respect to money laundering in particular, WWE does its best to minimize the level of knowledge and intent that it must plead with respect to each defendant. WWE Opp. 56. Yet even under its own minimalist standard, WWE has not actually alleged that the LLC "knew that the money was 'criminally derived.'" Id.; AC ¶¶ 249(b)(i)-(lxxxviii).[6]

## IV. THE LLC IS NOT VICARIOUSLY LIABLE.

WWE does not even try to argue that it can establish vicarious liability against the LLC under the relatively rigorous respondant superior standards set out by the THQ defendants in their moving papers. Again taking the easy way out, WWE resorts to other vicarious liability theories, all hinging on principles of partnership liability. WWE's attempts to impute to the LLC the alleged racketeering activities of others fail for several reasons.

First, WWE has not pleaded the formation of a partnership between JAKKS and THQ. To do so, a plaintiff must allege, among other things, an agreement to share losses. See Kosower v. Gutowitz, 2001 U.S. Dist. LEXIS 19111, at *16-*17 (S.D.N.Y. Nov. 21, 2001) (dismissing partnership claim because "there is no allegation that [the parties] agreed to share in the losses of

---

[6] WWE also has not adequately alleged a RICO conspiracy claim. In order to state such a claim, a plaintiff must allege, at the very least, "that the defendant 'knew about and agreed to facilitate the scheme.'" Baisch v. Gallina, 346 F.3d 366, 377 (2d Cir. 2003) (quoting Salinas v. United States, 522 U.S. 52, 66 (1997)). WWE has identified no such factual allegations against the LLC.

WWE's reliance on the Supreme Court's decision in Salinas, supra, is misplaced. Subsequent to Salinas, both the Second Circuit Court of Appeals and this Court regularly have held that a plaintiff's failure to allege a substantive RICO claim required dismissal of a related RICO conspiracy claim. See, e.g., First Capital, 385 F.3d at 182; Nasik Breeding & Research Farm Ltd. v. Merck & Co., 165 F. Supp. 2d 514, 540 (S.D.N.Y. 2001).

WWE's reliance on State Farm Mut. Auto. Ins. Co. v. CPT Medical Servs. P.C., 375 F. Supp. 2d 141 (E.D.N.Y. 2005), is also misplaced. In State Farm, unlike here, the plaintiffs did not allege any substantive RICO claims against the RICO conspiracy defendants, and "therefore the Court is not making a determination -- at least on this motion -- that those against whom a conspiracy cause of action is pleaded, have (or have not) committed a substantive RICO violation." Id. at 151-152.

the partnership"). Notably, WWE's allegations in its original Complaint of a pre-LLC partnership were <u>deliberately abandoned</u> in its Amended Complaint; yet WWE now tries to rely on this same abandoned theory to impose vicarious liability on the LLC. The <u>only</u> entity alleged in the Amended Complaint to have been created by JAKKS and THQ was a Delaware limited liability company, the LLC, formed on June 10, 1998. AC ¶¶ 19, 154. Thus, WWE cannot establish vicarious liability based on a partnership theory.

Second, since WWE has not adequately alleged a partnership between JAKKS and THQ, its attempt to apply "successor liability" also fails. <u>See</u> WWE Opp. 62-63. There is no "predecessor" partnership that would be subject to RICO liability, and thus there can be no transfer of liabilities to a purported successor.[7] Moreover, WWE's attempted application of agency law (WWE Opp. 64-65) is just a veiled effort to apply partnership liability to the LLC, this time by binding the "partnership" to the acts of its "partners." Every case cited by WWE in furtherance of its "agency" theory relies on the existence of a partnership. <u>Id.</u> As set forth above, no partnership is alleged between THQ and JAKKS, and therefore, WWE's agency theory fails.

As a last resort, WWE tries a "ratification" theory. This too is insufficient to impose vicarious liability on the LLC. <u>Not one</u> of the ratification cases cited by WWE involve RICO claims. WWE Opp. 66-67. In any event, WWE's argument rests entirely on a single conclusory allegation that in no way meets applicable pleading standards. As the Court held in <u>Richardson</u>

---

[7] Should the Court consider imposing liability upon the LLC by means of successor liability, even without the existence of a predecessor entity, WWE nevertheless has failed to allege such a claim in its Amended Complaint. Generally, an entity "that acquires the assets of another is not liable for the torts of its predecessor." <u>Peralta v. WMH Tool Group, Inc.</u>, 2005 U.S. Dist. LEXIS 41755, at *9 (E.D.N.Y. Aug. 18, 2005). There are four exceptions to this rule: "(1) if the successor expressly or impliedly assumed the predecessor's tort liability; (2) there was a consolidation or merger of seller and purchaser; (3) the purchasing corporation was a mere continuation of the selling corporation; or (4) the transaction is entered into fraudulently to escape such obligations." <u>See id.</u>; <u>see also</u> <u>Schwartz v. Dubravetz</u>, 969 F.2d 840, 845 (9th Cir. 1992) (applying the same standard under California law). WWE has neither pleaded, nor articulated in its opposition brief, facts supporting any exception to this general rule. <u>See</u> WWE Opp. 62; <u>see also</u> <u>Peralta</u>, 2005 U.S. Dist. LEXIS 41755, at *13-*14 (rejecting the application of a successor liability theory based on, <u>inter alia</u>, a claim of fraud where there are no allegations to support such claims).

Greenshields Sec. Inc. v. Lau, 819 F. Supp. 1246, 1260 (S.D.N.Y. 1993) -- a case cited by WWE itself -- "[k]nowledge of the pertinent facts and the clear intent to approve the unauthorized action is a precondition to ratification." The only allegation in the Amended Complaint relating to "ratification" by the LLC is the blunderbuss statement, "All actions alleged herein taken by JAKKS and/or THQ after June 10, 1998 in regard to the videogame license were with the authority of the LLC, which has also ratified those actions." AC ¶ 19. WWE has not alleged that the LLC knew of the alleged racketeering scheme or had the intent to approve such a scheme.[8] Without these required factual allegations, WWE's ratification theory fails. See De Jesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65 (2d Cir. 1996) (affirming dismissal of RICO claim based on ratification theory where "pleadings are devoid of specific facts or circumstances supporting this assertion" that parent company ratified actions of subsidiary's employees).

### Conclusion

For the foregoing reasons, WWE's RICO claims should be dismissed as against the LLC, and this action should be dismissed in its entirety as against the LLC.

Dated: New York, New York
   August 11, 2006

Respectfully submitted,

DORNBUSH SCHAEFFER STRONGIN
& VENAGLIA, LLP

By: _____
Richard Schaeffer (RS0019)
Bruce Handler (BH9426)
Cynthia Ebbs (CE8038)

747 Third Avenue
New York, New York 10017
(212) 759-3300
Attorneys for THQ/JAKKS Pacific LLC

---

[8] In addition to failing to properly allege a ratification theory to connect THQ/JAKKS LLC to the alleged bribery scheme at any point in time, the Amended Complaint explicitly limits such ratification to actions that occurred "after June 10, 1998," the date the LLC was formed.