# TAB 1

LEXSEE 2006 BANKR. LEXIS 482

**In re: CHIEF EXECUTIVE OFFICERS CLUBS, INC., Debtor. KENNETH P. SILVERMAN, ESQ., as Chapter 7 Trustee of CHIEF EXECUTIVE OFFICERS CLUBS, INC., Plaintiff, -- against -- CEO CLUBS CHINA LIMITED AND CHINA WORLD TRADE CORPORATION, SIMON GUO, JP LI, AND MANCUSO DEVELOPMENT RESEARCH CENTER LIMITED, Defendants.**

**Chapter 7, Case No. 02-14829 (SMB), Adv. Proc. No. 04-4719**

**UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2006 Bankr. LEXIS 482*

**March 8, 2006, Decided**

**CASE SUMMARY:**


**PROCEDURAL POSTURE:** Plaintiff bankruptcy trustee brought an adversary proceeding against defendant purchaser of the assets of the debtor, a not-for-profit corporation, seeking to recover the value of the assets which were transferred after the debtor filed its petition. The purchaser moved to dismiss the trustee's claims based on a RICO violation, aiding and abetting fraud, and violation of *N.Y. Not-for-Profit Corp. Law § 1001.*

**OVERVIEW:** The purchaser, a foreign corporation formed post-petition, acquired the assets of another post-petition foreign corporation which was affiliated with a domestic corporation. The trustee contended that the domestic corporation was an alter ego of the debtor and that the purchaser actually acquired the assets of the debtor to shield them from creditors. The bankruptcy court first held that no RICO violation was shown since the trustee failed to allege the purchaser's participation in the operation of any enterprise or any pattern of racketeering activity. The alleged association-in-fact of the parties involved in the asset transfer did not engage in a course of illegal conduct distinct from the alleged racketeering acts, and the purchaser's single act of acquiring the assets for value raised no inference that the purchaser knowingly received estate property with the intent to defeat bankruptcy law. Further, in the absence of any inference of the purchaser's fraudulent intent, the purchaser could not have aided and abetted any fraud. Also, the debtor could transfer all of its assets without dissolving under § 1001, and the reporting requirement of § 1001 did not apply to the debtor.

**OUTCOME:** The purchaser's motion to dismiss the trustee's RICO, aiding and abetting, and § 1001 claims was granted.

**LexisNexis(R) Headnotes**



*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN1] Where a document is incorporated by reference in, and relied on in drafting, a complaint, it may be considered on a motion to dismiss for failure to state a claim.


*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage*
[HN2] See *18 U.S.C.S. § 1962(c).*

2006 Bankr. LEXIS 482, *

***Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Claims > General Overview***
[HN3] To establish a claim for a civil violation of *18 U.S.C.S. § 1962(c)*, a plaintiff must show that he was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The requirements of § 1962(c) must be established against each defendant.

***Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage***
[HN4] The RICO statute defines an enterprise to include any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. *18 U.S.C.S. § 1961(4)*. A RICO enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct. Existence of an enterprise is proven by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. An enterprise may be either a formal legal entity or simply a discrete economic association existing separately from the racketeering activity. Courts must consider the hierarchy, organization, and activities of such association-in-fact enterprises to determine whether its members functioned as a unit. For an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes.

***Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage***
[HN5] A RICO enterprise is an entity separate and apart from the pattern of racketeering activity. The pattern of racketeering activity is a series of criminal acts as defined by *18 U.S.C.S. § 1961(1)* committed by the participants in the enterprise. The existence of an enterprise and a pattern of racketeering activity must be proven separately by the plaintiff under *18 U.S.C.S. § 1962(c)*. Finally, the enterprise and the person conducting the affairs of the enterprise must also be distinct.

***Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Claims > General Overview***
[HN6] Where a plaintiff properly alleges a RICO enterprise, he must also allege that each defendant conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs. *18 U.S.C.S. § 1962(c)*. The U.S. Supreme Court interprets this phrase to mean participation in the operation or management of the enterprise. Although pleading operation or management is typically a relatively low hurdle for the plaintiff to clear, the plaintiff must still allege facts showing that a defendant played some part in directing the enterprise's affairs.

***Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage***
[HN7] The double use of the word "conduct" in *18 U.S.C.S. § 1962(c)* requires an element of direction.

***Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage***
[HN8] A pattern of racketeering activity requires at least two predicate acts of racketeering activity, committed in a ten-year period, *18 U.S.C.S. § 1961(5)*, which amount to or pose a threat of continuing criminal activity. Racketeering activity consists of an assortment of offenses, including any offense involving fraud connected with a case under Title 11 of the United States Code. *18 U.S.C.S. § 1961(1)(D)*.

***Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage***
[HN9] An analysis of the sufficiency of allegations regarding a pattern of racketeering requires two considerations. First, a plaintiff must allege the predicate acts as to each defendant. Second, a court must assess whether such acts attributed to each defendant amounted to or posed a threat of continued criminal activity.

***Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Claims > Fraud***
***Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > Commencement***

2006 Bankr. LEXIS 482, *

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
[HN10] Allegations of bankruptcy fraud, like all allegations of fraudulent predicate acts under RICO, are subject to the heightened pleading requirements of *Fed. R. Civ. P. 9(b)*.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Mistake*
[HN11] See *Fed. R. Civ. P. 9(b)*.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
[HN12] *Fed. R. Civ. P. 9(b)* is designed to provide a defendant with fair notice of a plaintiff's claim, safeguard the defendant's reputation from improvident charges of wrongdoing, and protect against strike suits. Although scienter may be pleaded generally, the pleader must nevertheless allege facts that give rise to a strong inference of fraudulent intent. A strong inference of fraudulent intent may be established in one of two ways: either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
[HN13] As a rule, a pleader cannot allege fraud based upon information and belief unless the facts are peculiarly within the opposing party's knowledge. Even in those cases, the pleader must allege facts upon which the belief is founded.

*Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > Commencement*
*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
[HN14] Since a bankruptcy trustee rarely has personal knowledge of the events preceding his appointment, he can plead fraud upon information and belief, provided that he pleads specific facts supporting an inference of knowledgeable participation in the alleged fraud.

*Business & Corporate Law > Nonprofit Corporations & Organizations > General Overview*
[HN15] A New York not-for-profit corporation has the power to transfer all of its assets. *N.Y. Not-for-Profit Corp. Law § 202(a)(5)*.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage*
[HN16] A pattern of racketeering activity under RICO requires at least two predicate acts committed within a ten-year period. *18 U.S.C.S. § 1961(5)*. The predicate acts must be related, and amount to, or otherwise constitute a threat of, continuing racketeering activity. To satisfy the requirement of continuity, a plaintiff in a RICO action must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time). A plaintiff must satisfy the pleading requirement as to each defendant.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage*
[HN17] To satisfy open-ended continuity under RICO, a plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage*
[HN18] A closed-ended pattern of racketeering activity under RICO involves predicate acts extending over a substantial period of time. The Second Circuit does not find a closed-ended pattern where the predicate acts spanned fewer than two years.

2006 Bankr. LEXIS 482, *

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Claims > General Overview*
[HN19] Where a plaintiff fails to allege a substantive violation of RICO, a conspiracy claim must fail as a matter of law.

*Torts > Procedure > Multiple Defendants > Concerted Action > Civil Aiding & Abetting*
[HN20] The elements of a claim for aiding and abetting a fraud under New York law are (1) an existing fraud, (2) knowledge of the fraud, and (3) substantial assistance to the primary violator. A defendant provides substantial assistance when he (1) affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed, and (2) the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated. Furthermore, the plaintiff must show that the assistance is both substantial and knowing, and that there is something close to an actual intent to aid in fraud or scienter of the conscious intent variety. If a defendant does not owe a fiduciary duty directly to the plaintiff, mere inaction cannot constitute substantial assistance.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
*Torts > Procedure > Multiple Defendants > Concerted Action > Civil Aiding & Abetting*
[HN21] The particularity standards of *Fed. R. Civ. P. 9(b)* apply to a claim of aiding and abetting a fraud.

*Business & Corporate Law > Nonprofit Corporations & Organizations > Dissolution & Winding Up*
[HN22] See *N.Y. Not-for-Profit Corp. Law § 1001.*

*Business & Corporate Law > Nonprofit Corporations & Organizations > General Overview*
[HN23] A not-for-profit corporation is empowered to transfer all of its assets outside of a plan of dissolution and, depending on the type of not-for-profit corporation, without the involvement of the New York Attorney General or the state courts. *N.Y. Not-for-Profit Corp. Law § 510(a)(1)*, (2).

*Business & Corporate Law > Nonprofit Corporations & Organizations > General Overview*
[HN24] See *N.Y. Not-for-Profit Corp. Law § 510(a).*

*Business & Corporate Law > Nonprofit Corporations & Organizations > General Overview*
*Business & Corporate Law > Nonprofit Corporations & Organizations > Dissolution & Winding Up*
[HN25] *N.Y. Not-for-Profit Corp. Law § 201* sets forth four types of not-for-profit corporation, defining each according to the purpose or purposes for which it was formed. *N.Y. Not-for-Profit Corp. Law § 1001(b)* requires a plan of dissolution to be filed with the attorney general only if (a) the corporation is a Type B or Type C (and, in appropriate cases, a Type D) not-for-profit corporation and (b) has no assets to distribute at the time of dissolution. Section 1001(b) does not apply to a Type A not-for-profit corporation.

*Business & Corporate Law > Nonprofit Corporations & Organizations > Formation*
[HN26] See *N.Y. Not-for-Profit Corp. Law § 201.*

*Business & Corporate Law > Nonprofit Corporations & Organizations > General Overview*
[HN27] Type B corporations under *N.Y. Not-for-Profit Corp. Law § 201* qualify for tax exempt status under *26 U.S.C.S. § 501(c) (3)*, and are established primarily to benefit society in general as opposed to the members of not-for-profit corporations. This type of corporation is also more carefully regulated than Type A corporations because of the public benefit purpose and because of public funding.

*Business & Corporate Law > Nonprofit Corporations & Organizations > Dissolution & Winding Up*
[HN28] *N.Y. Not-for-Profit Corp. Law § 1001(b)* only applies where a dissolving not-for-profit corporation does not have any assets to distribute at the time of the dissolution.

*Business & Corporate Law > Nonprofit Corporations & Organizations > General Overview*
[HN29] *N.Y. Not-for-Profit Corp. Law § 720(a)(2)* gives a plaintiff standing to set aside any unlawful conveyance from a not-for-profit corporation where the transferee knew of its unlawfulness.

*Business & Corporate Law > Corporations > Directors & Officers > Management Duties & Liabilities > Causes of Action > General Overview*
*Business & Corporate Law > Nonprofit Corporations & Organizations > General Overview*
[HN30] Under *N.Y. Bus. Corp. Law § 720(a)(2)* (2003), which is identical to *N.Y. Not-for-Profit Corp. Law § 720(a)(2)*, a knowing transferee is liable thereunder to the corporation and its creditors. A plaintiff must allege that the transferee had knowledge of the unlawfulness of the transfer.

**COUNSEL:** [*1] Attorneys for Plaintiff: Avrum J. Rosen, Esq., LAW OFFICES OF AVRUM J. ROSEN, Huntington, New York.

Attorneys for Defendant: Mark Frankel, Esq., BACKENROTH FRANKEL & KRINSKY, LLP, China World Trade Corporation, New York, New York.

Jeffrey Joseph Silverman, Debtor, Pro se, New York, NY.

David R. Kittay, Trustee, Kittay & Gershfeld, P.C., Tarrytown, NY.

For United States Trustee, U.S. Trustee: Brian Shoichi Masumoto, Office of the United States Trustee, New York, NY.

**JUDGES:** STUART M. BERNSTEIN, Chief United States Bankruptcy Judge.

**OPINIONBY:** STUART M. BERNSTEIN

**OPINION: OPINION GRANTING MOTION TO DISMISS PORTIONS OF THE SECOND AMENDED COMPLAINT**

**STUART M. BERNSTEIN**

### Chief United States Bankruptcy Judge

Kenneth P. Silverman, the chapter 7 trustee of the estate of Chief Executive Officers Clubs, Inc., filed this adversary proceeding against several defendants to recover the value of the debtor's assets that were allegedly transferred post-petition in violation of bankruptcy and non-bankruptcy law. The defendant China World Trade Corporation ("China World") moved to dismiss counts three, four, five, nine and ten in the Second Amended Complaint, dated July 11, 2005 (ECF [*2] Doc. # 32). The Court denied the motion to dismiss counts three and four from the bench, and reserved decision on the balance of the motion. For the reasons that follow, counts five, nine and ten of the Second Amended Complaint are dismissed, but the plaintiff is granted leave to replead count five.

### BACKGROUND

### A. Introduction

The debtor is a New York not-for-profit corporation. (P 13.) n1

n1 Unless otherwise stated, the citation "(P   )" refers to the paragraphs in the Second Amended Complaint. The allegations are deemed to be true for the purpose of this motion to dismiss.

Joseph Mancuso was the founder and president of the debtor, and is a debtor in his own chapter 7 case pending in the United States Bankruptcy Court for the Eastern District of Texas. (P 90.)

The debtor filed a chapter 11 petition in this Court on September 30, 2002. (P 12.) On November 27, 2002, the plaintiff was appointed the chapter 11 trustee for the debtor's estate, and after the case was converted with the [*3] debtor's consent on March 11, 2003, he was appointed the chapter 7 trustee. (PP 15-17.)

## B. CEO Clubs International Inc.

On August 27, 2002, one month prior to the debtor's petition date and in contemplation of the debtor's bankruptcy, CEO Clubs International Inc. ("International") was formed as a New York not-for-profit corporation. (P 18.) The initial directors of International were Mancuso, his wife Karla Mancuso, and John Brown. n2 (P 20.)

n2 The Mancusos and Brown were thereafter appointed as directors at the Combined First Meeting of the Members and Directors held on May 30, 2003. (P 21.)

International engaged in the same business as the debtor, using the same membership list, address, telephone number, website and URL address as the debtor. (PP 26-29.) Mancuso testified at the debtor's § 341 meeting of creditors that he continued to use the debtor's leased premises and fixed assets to facilitate his business ventures. He also testified that he had solicited the debtor's membership to attend [*4] a seminar that he was conducting on board a two week cruise to Russia. (P 30.)

Mancuso also solicited the debtor's members to renew their membership in the "CEO Clubs" by making checks payable to "CEO Club" or "CEO Club International." The requests were sent on "CEO Club International" letterhead, which included the debtor's facsimile number and website. (P 31.) At his February 5, 2004 deposition, Mancuso testified that International was "receiving all of the income from the various named defendant CEO Clubs throughout the United States" (P 38), and that he caused the debtor's internet domain name to be transferred to International for no consideration. (P 41.)

Between September 2002 and February 2004, funds totaling $ 543,358.38 were deposited into bank accounts owned by International. (P 24.) These deposits were generated through the use of the debtor's assets and good will, and reflected income diverted from the debtor to International. (PP 24-25.) The plaintiff commenced a separate adversary proceeding (Adv. Proc. No. 04-2820) against International on July 2, 2004 to recover the value of the debtor's assets. (P 42.)

## C. CEO Clubs, Inc.

In late June 2003, the Trustee [*5] commenced an adversary proceeding against Mancuso to enjoin him from using International or any other entity to convert the debtor's assets. (See P 59.) Less than one week later, on July 2, 2003, CEO Clubs, Inc. was incorporated as a New York business corporation. It listed the same address for service of process as the debtor and International. (P 59.) Like International, CEO Clubs, Inc. operated the same business as the debtor, using its name, goodwill, membership lists, phone number, office, and email and website addresses. Operating as the debtor's alter-ego, CEO Clubs, Inc. diverted assets of the debtor for no consideration. (PP 60-67.)

For example, an advertisement printed on CEO Clubs, Inc. letterhead was sent to manufacturers in the New York metropolitan area (the "Manufacturers Letter") inviting the recipients to attend a breakfast seminar at the "New York CEO Clubs." (PP 68-70.) The Manufacturers Letter included the debtor's emblem and slogan, and encouraged recipients to visit the same website owned by the debtor and used by International. (PP 71-73.)

## D. CEO Clubs China, Ltd.

CEO Clubs China, Limited ("CEO Clubs China"), a Hong Kong corporation, was founded [*6] in December 2002 through the support of its partner, CEO Clubs USA. According to its website, which is hyperlinked with the debtor's

website, CEO Clubs China is the "headquarters and partner of CEO Clubs USA in the Greater China region, sharing its membership resources of up to 5,000. Members of CEO Clubs China will be members of CEO Clubs USA." (P 52.) Defendant Li Jingping n3 is the chief executive officer of CEO Clubs China, and defendant Simon Guo is its founder and a director. (PP 46-47.)

> n3 The Court assumes that Li Jingping and the named defendant, JP Li, are the same person.

The debtor coordinated trips for its members to travel to China in order to increase its presence in China and enable its members to expand their business to a global market. (P 49.) In contemplation of one such trip, the debtor wired $ 31,375.00 on November 18, 2002 from its debtor-in-possession account to CEO Clubs China. The transfer violated the Court's order appointing a chapter 11 trustee. (P 50.)

A press release issued in [*7] 2003 listed Mancuso as the co-chair of a meeting between American and Chinese business persons and listed Simon Guo as the "chief of the China chapter of CEO Clubs International." (P 48.) In addition, the CEO Clubs China website contains claims that CEO Clubs China arranged for more than 100 American CEOs to visit China and for several groups of Chinese CEOs to visit the United States. The website refers to two such events involving boat cruises, one in China and one aboard the Queen Mary II in New York during July 2005. (P 54.) The plaintiff alleges, upon information and belief, that these cruises were advertised on the debtor's website. (P 55.)

The plaintiff also alleges, upon information and belief, that CEO Clubs China solicits memberships payable in U.S. dollars and targets American business people to participate in the Chinese market. Furthermore, it has paid and continues to pay Mancuso's personal legal expenses incurred in his personal bankruptcy case. (P 57-58.) The plaintiff alleges that CEO Clubs China operates in the United States, d/b/a CEO Clubs, and in China, as the CEO Clubs China. (P 81.) Important to the present motion, the trustee alleges, again upon information [*8] and belief, that assets of the debtor's estate were transferred post-petition to CEO Clubs China from International, CEO Clubs, Inc. and other unnamed CEO Club entities. (P 82.)

**E. Purchase of CEO Clubs China by China World**

Pursuant to a Share Exchange Agreement, dated April 7, 2004 (the "Share Agreement"), n4 China World purchased 51% of the issued and outstanding common stock of CEO Clubs China. China World paid consideration that might total as much as $ 726,000, (see id., at B, p.1), and consisted of several components. First, the shareholders of CEO Clubs China received 80,000 newly issued shares of China World common stock valued at $ 240,000, (id. at P 1.1(a)), plus $ 120,000 in cash (the "Acquisition Cash"). (Id. at P 1.2.)

> n4 The Share Agreement is attached to China World's Motion to Dismiss [the original complaint], or in the Alternative, for Summary Judgment, dated February 17, 2005. (ECF Doc. # 11.) [HN1] It is incorporated by reference in, and relied on in drafting, the Second Amended Complaint. (See P 83.) Accordingly, it may be considered on this motion to dismiss for failure to state a claim. See *Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).*

[*9]

In addition, China World deposited $ 120,000 in cash (the "Operation Cash") into a CEO Clubs China bank account. The Operation Cash had two express purposes. Under Paragraph 1.3 of the Share Agreement, the Operation Cash was to be used to fund CEO Clubs China's operating capital for twelve months after closing, up to a maximum of $ 10,000 per month. The Operation Cash was also to be used "to satisfy the asset injection requirement for the acquisition of 100% of Mancuso Development Research Center Limited, a Beijing Corporation, the operation arm of the Clubs in China." Finally, China World issued up to 82,000 China World "free trading shares" valued at $ 246,000 to "the Sellers (and/or the management)" n5 provided that CEO Clubs China achieved certain performance benchmarks in the year following closing. (Id. at P 1.4.)

n5 The Share Agreement does not define "management" but that term presumably refers to the management of CEO Clubs China. (See Share Agreement, at P 1.4.)

The plaintiff alleges that Mancuso [*10] Development is owned by Mancuso, (P 90), that China World acquired 100% of Mancuso Development, and that China World violated unspecified securities laws by failing to disclose its acquisition of Mancuso Development in its Form 10-QSB filed with the Securities Exchange Commission. (PP 89, 97.) More important, the plaintiff alleges that the Share Agreement does not correctly reflect the nature of the transaction. Noting certain perceived irregularities or questionable provisions in the Share Agreement, (see PP 92-95, 98), the plaintiff concludes that "the sale was actually a sale of the assets of CEO Club which were the assets of the Debtor." (P 86; see PP 99-100, 105.)

## F. This Adversary Proceeding

The Second Amended Complaint includes ten causes of action, but only five involve China World. The following chart summarizes the relevant counts:

| Count | Substance of the Claim |
|---|---|
| 3 | The unauthorized post-petition transfer of the debtor's assets, by CEO Clubs China to China World, should be avoided pursuant to 11 U.S.C. § 549. (PP 130-32.) |
| 4 | The estate is entitled to recover the value of the avoided transfer in a sum not less than § 726,000, pursuant to 11 U.S.C. § 550(a). (PP 133-39.) |
| 5 | The transfer of the debtor's assets violated New n6York's NOT-FOR-PROFIT CORP. LAW § 1002 ("NYNPCL") , and the estate is entitled to recover the value of the transferred assets in a sum not less than $ 726,000. (PP 140-46.) |
| 9 | The defendants' aided and abetted each other in wrongfully transferring assets from the debtor's estate, and the estate is entitled to recover damages in a sum not less than $ 726,000. (PP 180-86.) |
| 10 | China World violated RICO, or conspired to violate RICO, by (1) failing to disclose the debtor's bankruptcy filing or its acquisition of 100% of Mancuso Development in its Form 10-QSB and (2) its acquisition of the debtor's assets with knowledge that they were assets of a New York Not-For-Profit Corporation. (PP 187-99.) |

n6 In a supplemental brief, the Trustee asserted that the reference to NYNPCL § 1002 in the Second Amended Complaint was a typographical error, and that the correct section is NYNPCL § 1001. (Plaintiff's Response in Further Opposition to Motion to Dismiss Second Amended Complaint, dated Oct. 28, 2005, at P 11 n.4.) ("Plaintiff's Further Opposition") (ECF Doc. # 50.) [*11]

China World moved to dismiss these counts for failure to state a claim and failure to plead fraud with particularity. In the alternative, Child World requested a more definite statement. (Motion to Dismiss, dated Aug. 1, 2005, at 1)(ECF Doc. # 35.) As noted, the Court denied the motion to dismiss the third and fourth causes of action from the bench, and by implication, the alternative motion for a more definite statement. At a minimum, the Second Amended Complaint alleges that the debtor's assets were transferred post-petition without authorization, that the transfer can be avoided un-

der § 549, that China World is a subsequent transferee of the initial transfer, and that it is, therefore, liable for the value of the transfer under *11 U.S.C. § 550.* I reserved decision on the remaining claims.

## DISCUSSION

### A. RICO Violations

The relevant provision of the RICO statute, *18 U.S.C. § 1962(c),* states:

[HN2] It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in [*12] the conduct of such enterprise's affairs through a pattern of racketeering activity.

[HN3] To establish a claim for a civil violation of *§ 1962 (c),* a plaintiff must show that he was injured by defendants' "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985); DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir.),* cert. denied, *534 U.S. 891, 122 S. Ct. 207, 151 L. Ed. 2d 147 (2001); Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999); Azrielli v. Cohen Law Offices, 21 F.3d 512, 520 (2d Cir. 1994).* The requirements of *section 1962(c)* must be established against each defendant. *DeFalco v. Bernas, 244 F.3d at 306;* see *United States v. Persico, 832 F.2d 705, 714 (2d Cir. 1987)* ("The focus of *section 1962(c)* is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are proscribed by *section 1962(d).").,* cert. denied, *486 U.S. 1022, 108 S. Ct. 1995, 108 S. Ct. 1996 (1988).*

### 1. Enterprise

[HN4] The RICO statute defines [*13] an "enterprise" to "include[] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *18 U.S.C. § 1961(4);* accord *First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 173 (2d Cir. 2004).* A RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette, 452 U.S. 576, 583, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981).* Existence of an enterprise is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." Id.; *First Capital, 385 F.3d at 173; DeFalco, 244 F.3d at 307.* An enterprise may be either a formal legal entity or "simply a discrete economic association existing separately from the racketeering activity." *First Capital, 385 F.3d at 173* (internal quotations omitted). Courts must consider the "hierarchy, organization, and activities" of such association-in-fact enterprises to determine whether "its members functioned as a unit. [*14] " *United States v. Coonan, 938 F.2d 1553, 1560-61 (2d Cir. 1991),* cert. denied, *503 U.S. 941, 112 S. Ct. 1486, 117 L. Ed. 2d 628 (1992).* "And for an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes.'" *First Capital, 385 F.3d at 174* (quoting *First Nationwide Bank v. Gelt Funding, Corp., 820 F. Supp. 89, 98 (S.D.N.Y. 1993),* aff'd, *27 F.3d 763 (2d. Cir. 1994),* cert. denied, *513 U.S. 1079, 115 S. Ct. 728, 130 L. Ed. 2d 632 (1995)).*

In addition, [HN5] an enterprise is an entity separate and apart from the pattern of racketeering activity. *Turkette, 452 U.S. at 583; First Capital, 385 F.3d at 173.* The pattern of racketeering activity is a series of criminal acts as defined by *18 U.S.C. § 1961(1)* committed by the participants in the enterprise. *Turkette, 452 U.S. at 583.* The existence of an enterprise and a pattern of racketeering activity must be proven separately by the plaintiff under *section 1962 (c).* Id. Finally, the enterprise and the [*15] person conducting the affairs of the enterprise must also be distinct. *Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161-62, 121 S. Ct. 2087, 150 L. Ed. 2d 198 (2001); First Capital, 385 F.3d at 173; DeFalco, 244 F.3d at 307.*

In this case, the plaintiff has alleged an association-in-fact enterprise consisting of all the defendants and several non-defendants, including the Mancusos. Initially, the Second Amended Complaint fails to adequately allege a RICO enterprise that includes all of the defendants. The Second Amended Complaint's allegations regarding an enterprise are limited to the following statements:

That the Defendants violated *18 U.S.C. § 1962(c)* by conducting or participating . . . in the conduct of the affairs of an enterprise . . . The enterprise was an association in fact, as defined in *18 U.S.C. § 1961(4)*, consisting of all the Defendants named herein. The enterprise functioned as a continuing unit for the common purpose of transferring assets of the within bankruptcy estate without the knowledge or consent of the Court or the Chapter 7 Trustee.

(PP 190-91.)

The Second Amended Complaint [*16] includes a long narrative of the alleged relationship and transfers among all the CEO entities described above. In substance, the plaintiff charges that the defendants (together with several non-defendants) participated in a criminal scheme to transfer and conceal property of the debtor's estate. However, he provides no specific description of how and when this occurred or precisely who was responsible. For example, the Second Amended Complaint implies that the Mancusos, and possibly John Brown, orchestrated the transfer of the debtor's assets to International. But other than conclusory statements, the Second Amended Complaint does not tie Simon Guo, JP Li or CEO Clubs China into the enterprise until the time of the transfer to the latter defendant. Furthermore, the Second Amended Complaint does not attribute any specific conduct to Mancuso Development. Most important, China World does not enter the enterprise until the end, at which point it is accused of paying value to CEO Clubs China or to its shareholders for the assets of CEO Clubs China.

In addition, the Second Amended Complaint fails to allege an enterprise that is distinct from the pattern of conduct. In First Capital [*17] , the Second Circuit was presented with an analogous set of facts. There, creditors of an individual debtor in bankruptcy commenced a RICO action against the debtor and various family members and closely held companies alleging an enterprise whose illegal purpose was to conceal the debtor's assets from his creditors. *First Capital, 385 F.3d at 174.* The Court noted that the complaint failed to "detail any course of fraudulent or illegal conduct separate and distinct from the alleged predicate racketeering acts themselves -- a requirement in this Circuit." Id. (citing *First Nationwide, 820 F. Supp. at 98*)(emphasis in original).

Similarly, in *Stein v. N.Y. Stair Cushion Co., 2006 U.S. Dist. LEXIS 8410, No. 04-CV-4741DRHETB, 2006 WL 319300 (E.D.N.Y. Feb. 10, 2006)*, the plaintiff, a judgment creditor of two of the defendants, asserted a RICO claim against the defendants and others charging that they engaged in a pattern of conduct designed to transfer and conceal the judgment debtors' assets. The District Court ruled that the enterprise allegations were insufficient because the complaint failed

to articulate an enterprise that exists as an association [*18] independent of the alleged pattern of racketeering activity. In this regard, Plaintiff does not allege that the association-in-fact enterprise has any purpose other than the execution of [the judgment debtor's] scheme to conceal assets from Plaintiff.

. . . .

As in First Capital, Plaintiff fails to allege any fraudulent conduct by Defendants that is separate and distinct from the alleged act of racketeering -- in essence, the enterprise alleged is the pattern of racketeering activity.

*2006 U.S. Dist. LEXIS 8410, 2006 WL 319300, at *4* (emphasis in original).

Here, too, the plaintiff "does not allege that the association-in-fact enterprise has any purpose other than the execution of [Mancuso's] scheme to conceal assets from Plaintiff." Accordingly, the Second Amended Complaint fails to sufficiently allege the existence of an enterprise as required under RICO.

## 2. Participation in Conduct of Enterprise's Affairs

[HN6] Assuming, arguendo, that the plaintiff properly alleged a RICO enterprise, he must also allege that each defendant "conduct[ed] or participated, directly or indirectly, in the conduct of such enterprise's affairs." *18 U.S.C. § 1962(c)* [*19] ; *First Capital, 385 F.3d at 175-76*; *DeFalco, 244 F.3d at 309.* The Supreme Court has interpreted this phrase to mean participation in the operation or management of the enterprise. *Reves v. Ernst & Young, 507 U.S. 170, 179, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993)*; accord *Azrielli, 21 F.3d at 521.* Although pleading "operation or management" has typically "proven to be a relatively low hurdle for plaintiffs to clear," *First Capital, 385 F.3d at 176* (citing *Baisch v. Gallina, 346 F.3d 366, 377 (2d Cir. 2003)*; *DeFalco, 244 F.3d at 309*; *United States v. Allen, 155 F.3d 35,*

*42-43 (2d Cir. 1998))*, a plaintiff must still allege facts showing that a defendant played "some part in directing the enterprise's affairs." *Reves, 507 U.S. at 179* (emphasis in the original).

Here, the Second Amended Complaint does not allege or even imply that China World participated in the operation or management of the enterprise. Many allegations depict the supposed entanglement of business affairs among Mancuso, the debtor, International, CEO Clubs, Inc. and CEO Clubs China. However, the plaintiff [*20] fails to allege facts showing that China World was involved in the enterprise's business affairs, and its sole connection to the plaintiff's charges is its purchase of assets from CEO Clubs China. [HN7] The double use of the word "conduct" in *section 1962(c)* "requires an element of direction." *Reves, 507 U.S. at 178*. Here the Second Amended Complaint fails to allege that China World played any part in the direction of the enterprise's affairs.

### B3. Pattern of Racketeering Activity

The plaintiff has also failed to allege that the estate was injured by China World's conduct of an enterprise through a pattern of racketeering activity. See *First Capital, 385 F.3d at 178* (citing *Cofacredit, 187 F.3d at 242*). [HN8] A pattern of racketeering activity "requires at least two [predicate] acts of racketeering activity," committed in a ten-year period, *18 U.S.C. § 1961(5)*, "which amount to or pose a threat of continuing criminal activity." *First Capital, 385 F.3d at 178*; *Cofacredit, 187 F.3d at 242*. Racketeering activity consists of an assortment of offenses, including "any offense involving [*21] fraud connected with a case under title 11." *18 U.S.C. § 1961(1)(D)*.

[HN9] The analysis of the sufficiency of the allegations regarding a pattern of racketeering requires two considerations. First, the plaintiff must allege the predicate acts as to each defendant. Second, the court must assess whether such acts attributed to each defendant amounted to or posed a threat of continued criminal activity. See *First Capital, 385 F.3d at 178-82*. The Second Amended Complaint falls short on both counts.

### a. Predicate Acts

The Trustee alleges that China World, together with the other defendants, engaged in a pattern of racketeering activity that consisted "of a scheme or artifice to defraud creditors and commit fraud in connection with a case under Title 11." *(P192.)* [HN10] "Allegations of bankruptcy fraud, like all allegations of fraudulent predicate acts, are subject to the heightened pleading requirements of *Federal Rule of Civil Procedure 9(b)*." *First Capital, 385 F.3d at 178*. *Federal Rule of Civil Procedure 9(b)* states:

> [HN11] In all averments of fraud or mistake, [*22] the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

[HN12] *Rule 9(b)* is designed to provide a defendant with fair notice of the plaintiff's claim, safeguard the defendant's reputation from improvident charges of wrongdoing and protect against strike suits. *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A., 117 F.3d 655, 663 (2d Cir. 1997)*; *O'Brien v. Nat'l Property Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991)*; *DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987)*; *Segal v. Gordon, 467 F.2d 602, 607 (2d Cir. 1972)*. Although scienter may be pleaded generally, the pleader must nevertheless "allege facts that give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)*; accord *Campaniello Imports, 117 F.3d at 663*; *Chill v. General Elec. Co., 101 F.3d 263, 267 (2d Cir. 1996)*. A strong inference of fraudulent intent may be established in one of two [*23] ways: "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields, 25 F.3d at 1128*; accord *Chill v. General Elec. Co., 101 F.3d at 267*.

[HN13] As a rule, a pleader cannot allege fraud based upon information and belief unless the facts are "peculiarly within the opposing party's knowledge." *Schlick v. Penn-Dixie Cement Corp., 507 F.2d 374, 379 (2d Cir. 1974)*, cert. denied, *421 U.S. 976, 95 S. Ct. 1976, 44 L. Ed. 2d 467 (1975)*; accord *Campaniello Imports, 117 F.3d at 664*. Even in those cases, the pleader must allege facts upon which the belief is founded. *Campaniello Imports, 117 F.3d at 664*; *Schlick, 507 F.2d at 379*; *Segal, 467 F.2d at 608*. [HN14] Since a bankruptcy trustee rarely has personal knowledge of the events preceding his appointment, he can plead fraud upon information and belief, provided that he pleads "specific facts supporting an inference of knowledgeable participation in the alleged fraud." *Devaney v. Chester, 813 F.2d 566, 569 (2d Cir. 1987)*; [*24] accord *Nisselson v. Drew Indus., Inc. (In re White Metal Rolling & Stamp Corp.), 222 B.R. 417, 428 (Bankr. S.D.N.Y. 1998)*.

The Second Amended Complaint alleges two predicate acts on the part of China World -- the bare minimum needed for a pattern under the RICO statute. See *18 U.S.C. § 1961(5)*. First, China World "failed to disclose in its Form 10-QSB the instant bankruptcy filing and acquisition of 100% of defendant [Mancuso Development]." Second, China World "acquired the assets of the estate with actual knowledge that these assets were the property of a New York Not-For-Profit Corporation." (P 196.) These allegations apparently implicate *18 U.S.C. § 152(1)* (knowingly and fraudulently concealing property of the estate from a bankruptcy trustee) and *§ 152(5)* (knowingly and fraudulently receiving a material amount of property from the debtor after the filing with the intent to defeat the Bankruptcy Code. n7

> n7 The plaintiff attempts to distinguish this case from First Capital by highlighting the pre-petition nature of the predicate acts in First Capital. Citing to the District Court's opinion in *First Capital Asset Mgmt., Inc. v. Brickellbush. Inc., 219 F. Supp.2d 576, 581 (S.D.N.Y. 2002)*, aff'd, *385 F.3d 159*, the plaintiff argues that while that Court ruled that there were insufficient facts to infer that the transfers were made "in contemplation of bankruptcy" under *18 U.S.C. § 152 (7)*, that standard does not in this case because the transfers occurred post-petition.
>
> The plaintiff misses the point. The District Court applied the "in contemplation of bankruptcy" standard under *18 U.S.C. § 152 (7)* because the transfers occurred pre-petition. As explained in the text, supra, this case involves post-petition transfers and implicates other subdivisions of *18 U.S.C. § 152*. The plaintiff must still allege facts giving rise to a strong inference that China World "knowingly or fraudulently" concealed or received property of the debtor's estate.

[*25]

The allegations do not support the inference that China World "knowingly and fraudulently" concealed property of the estate from the plaintiff or "knowingly and fraudulently" received property of the estate with the intent to defeat title 11. At the outset, the sole basis for the plaintiff's allegation that China World purchased Mancuso Development is the provisions of the Share Agreement. Yet the Share Agreement does not support the inference. First, it speaks of a possible acquisition in the future. Second, it implies that CEO Clubs China, not China World, would be the purchaser. The money needed to fund the purchase was placed in CEO Clubs China's bank account. If China World intended to buy Mancuso Development for itself, there would have been no reason to deposit the necessary funds with CEO Clubs China. Furthermore, Mancuso Development was an arm of CEO Clubs China's operations, not China World's operations. It would make more sense, therefore, that CEO Clubs China would buy it. Moreover, the gravamen of the plaintiff's RICO claim is that China World was the last recipient in a daisy chain of transfers of the property of the estate. Mancuso Development was never property of [*26] the estate.

Furthermore, the Second Amended Complaint avers that China World disclosed its purchase of CEO Clubs China in a press release, and paid consideration totaling $ 726,000. (P 85.) The Second Amended Complaint also refers to China World's Form 10-QSB, for the period ending June 30, 2004, in which the acquisition of 51% of the shares of CEO Clubs China was disclosed. (P 85.) n8 The plaintiff argues, based on inferences he draws from the Share Agreement, that the parties dressed up their asset sale to look like a stock deal.

> n8 China World's Form 10-QSB for the period ending June 30, 2004 was attached to the original complaint as Exhibit B and incorporated by reference in the Second Amended Complaint, at P 85.

But either CEO Clubs China or China World owned the debtor's assets. Even under the plaintiff's theory, China World's disclosure still focused attention on a fraudulent transferee of the debtor's assets. If China World was intent on concealing the daisy chain of transfers, it would not have disclosed [*27] any transaction with CEO Clubs China. Thus, China World's public disclosure of the transaction undercuts the inference that China World acted with a fraudulent intent to conceal the transfer of property of the estate.

Odder still is the plaintiff's contention that China World's failure to disclose the debtor's bankruptcy filing in its own SEC filings was a bankruptcy crime. There is no conceivable reason why China World would disclose this information, which was already public anyway, and if there was no reason to disclose it, no adverse inference can be drawn from the failure to disclose it. There is simply no basis for a strong inference that China World fraudulently intended to conceal anything.

The second predicate act falls into the category of receiving property of the estate with the intent to defeat the Bankruptcy Code. This allegation is even more perplexing. The plaintiff does not explain why the transfer would constitute a predicate act under RICO; [HN15] a New York not-for-profit corporation has the power to transfer all of its assets. *NYNPCL § 202(a)(5)*. In addition, the Second Amended Complaint does not allege facts indicating that China World knew that the debtor was a not-for-profit [*28] corporation. Lastly, the Second Amended Complaint asserts that China World paid a substantial amount for whatever it bought. In short, the plaintiff failed to adequately plead the predicate acts needed to sustain his RICO claim. n9

> n9 The plaintiff attempts to excuse his pleading deficiencies, pointing to the more relaxed standard afforded to bankruptcy trustees where the facts constituting the fraud are "peculiarly within the opposing party's knowledge." *Schlick, 507 F.2d at 379*. A bankruptcy trustee must still plead "specific facts supporting an inference of knowledgeable participation in the alleged fraud." *Devaney v. Chester, 813 F.2d at 569*. The Second Amended Complaint fails to meet the relaxed standard as well.

### B. Pattern

The plaintiff has also failed to plead the requisite pattern. [HN16] A "pattern of racketeering activity" requires at least two predicate acts committed within a ten-year period. See *18 U.S.C. § 1961(5)*. The predicate acts [*29] must be related, and "amount to, or . . . otherwise constitute a threat of, continuing racketeering activity." *H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 240, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989)* (emphasis in the original). To satisfy the requirement of continuity, "a plaintiff in a RICO action must allege either an open-ended' pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended' pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time')." *GICC Capital Corp. v. Tech. Fin. Group, Inc., 67 F.3d 463, 466 (2d Cir. 1995)* (quoting *H.J. Inc., 492 U.S. at 241-42*), cert. denied, *518 U.S. 1017, 116 S. Ct. 2547, 135 L. Ed. 2d 1067 (1996)*; accord *First Capital, 385 F.3d at 180*. As noted, the plaintiff must satisfy the pleading requirement as to each defendant.

#### i) Open-ended conspiracy

[HN17] "To satisfy open-ended continuity, the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate [*30] acts were performed." *First Capital, 385 F.3d at 180; Cofacredit, 187 F.3d at 242*. In First Capital, the Court found that the debtor's scheme to fraudulently transfer his assets was "inherently terminable," and came to an end once he effected the transfers and filed for bankruptcy. *Id. at 180-81*. Given that there was "nothing left to loot," the Court held that there was no threat of continued criminal activity. *Id. at 181* (internal quotations omitted).

Here, too, there is no threat of continued criminal activity. According to the Second Amended Complaint, the debtor's assets were transferred by the debtor shortly after the petition date. Afterwards, the estate had nothing left to transfer. As in First Capital, the plaintiff has alleged a single scheme to defraud involving an initial and subsequent transfers of the same assets. See *385 F.3d at 165*; accord *Stein, 2006 U.S. Dist. LEXIS 8410, 2006 WL 319300, at *8*. Furthermore, China World's role in the scheme, to the extent it had any, is limited to a single completed transaction. There is no threat of future criminal activity, and the plaintiff has failed to allege an open-ended, [*31] continuous pattern of racketeering.

#### ii) Closed-ended continuity

[HN18] "A closed-ended pattern of racketeering activity involves predicate acts extending over a substantial period of time." *First Capital, 385 F.3d at 181* (internal quotations omitted). The Second Circuit has never found a closed-ended pattern where the predicate acts spanned fewer than two years. Id. (citing cases). In this case, the entire pattern of alleged racketeering lasted less than two years. The plaintiff alleges post-petition wrongdoing, and the debtor filed its petition on September 30, 2002. The petition date is, therefore, the earliest date of the first predicate act.

Furthermore, China World did not commit a predicate act until April 7, 2004. On that date, it entered into the Share Agreement, and according to the plaintiff, acquired the assets of a not-for-profit corporation. Thereafter, it committed the second predicate act when it failed to disclose its acquisition of Mancuso Development and the debtor's bankruptcy filing in its Form 10-QSB filed with the SEC. The filing concerned the period ending June 30, 2004, and was signed on August 16, 2004, still well within the entire two [*32] year period and approximately four months after the first predi-

cate act. Furthermore, any continued silent concealment of these undisclosed matters would not constitute an additional predicate act. See *First Capital, 385 F.2d at 181.* Accordingly, the plaintiff has failed to allege a close-ended pattern of racketeering.

### B. RICO Conspiracy

Finally, the plaintiff alleges that each defendant also "conspired to conduct or to participate in the conduct of the fraud through a pattern of racketeering activity in violation of *18 U.S.C. § 1962(a)* and *(c)*." (P 198.) [HN19] Since the plaintiff has failed to allege a substantive violation of RICO, the conspiracy claim must fail as a matter of law. See *First Capital, 385 F.3d at 182; Cofacredit, 187 F.3d at 244; Discon, Inc. V. NYNEX Corp., 93 F.3d 1055, 1064 (2d Cir. 1996),* vacated on other grounds, *525 U.S. 128, 119 S. Ct. 493, 142 L. Ed. 2d 510 (1998).*

Based upon the foregoing, the tenth cause of action is dismissed for failure to state a claim upon which relief can be granted, and failure to plead fraud with particularity.

### C. Aiding and Abetting

The ninth [*33] cause of action alleges the defendants aided and abetted each other "in wrongfully diverting these assets of the estate and transferred these assets with the intent of depriving the Debtor's estate of the value of these assets." (P 184.) In addition, "complicity by [China World] in not disclosing this transaction in aid of secreting assets of two bankruptcy estates is the basis for a cause of action for aiding and abetting in the post-petition fraudulent transfer of the Debtor's assets." (P 104.) China World moved to dismiss this cause of action based upon the failure to satisfy *FED. R. CIV. P. 9(b).* (See Motion to Dismiss, dated Aug. 1, 2005, at PP 48-52.) The plaintiff did not respond to this part of the motion, apparently under the mistaken belief that China World did not move to dismiss it. (See Plaintiff's Further Opposition, at P 18.)

In any event, the aiding and abetting claim fails to comply with *Rule 9(b).* [HN20] The elements of a claim for aiding and abetting a fraud under New York law n10 are (1) an existing fraud, (2) knowledge of the fraud, and (3) substantial assistance to the primary violator. [*34] *Allied Ir. Banks, P.L.C. v. Bank of Am., N.A., 2006 U.S. Dist. LEXIS 4270, No. 03 Civ. 3748 (DAB), 2006 WL 278138, at *11 (S.D.N.Y. Feb. 2, 2006); Attick v. Valeria Assoc., L.P., 835 F. Supp. 103, 111 (S.D.N.Y. 1992).* A defendant provides "substantial assistance" when he (1) "affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed," and (2) "the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." *Cromer Fin. Ltd. v. Berger, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001)* (internal citation omitted); accord *McDaniel v. Bear Stearns & Co., 196 F. Supp. 2d 343, 352. (S.D.N.Y. 2002).* Furthermore, the plaintiff must show that the assistance is both substantial and knowing, and that there is "something close to an actual intent to aid in fraud or scienter of the conscious intent variety." *McDaniel, 196 F. Supp. 2d at 352* (internal quotations omitted). If the defendant does not owe a fiduciary duty directly to the plaintiff, mere "inaction" cannot constitute substantial assistance. See *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.), 403 F.3d 43, 50 (2d Cir. 2005); Diduck v. Kaszycki & Sons, Contractors, Inc., 974 F.2d 270, 284 (2d Cir. 1992);* [*35] *McDaniel, 196 F. Supp. 2d at 352.* [HN21] *Rule 9(b)*'s particularity standards apply to a claim of aiding and abetting a fraud. *Allied Irish Banks, 2006 U.S. Dist. LEXIS 4270, 2006 WL 278138, at *11; Kolbeck v. Lit Am., Inc., 939 F. Supp. 240, 245 (S.D.N.Y. 1996),* aff'd, *152 F.3d 918 (2d Cir. 1998)*(unpublished op.).

n10 It is not clear that New York law applies to this claim. CEO Clubs China is a Hong Kong corporation. (P 2.) According to the introductory paragraph of the Share Agreement, China World is a Nevada corporation and the corporate sellers are British Virgin Islands corporations. Finally, the Share Agreement selects Hong Kong law as the governing law. (Share Agreement, at P 9.7.) Nevertheless, "in cases involving the law of common law countries, New York courts generally assume that the foreign law is the same as New York law." *Loebig v. Larucci, 572 F.2d 81 at 85;* accord *Dataserv, Ltd. v. Mgmt. Techs., Inc., 1993 U.S. Dist. LEXIS 5455, No. 90 Civ. 7759, 1993 WL 138852, at *4 n 3 .* The Court will, therefore, apply New York law.

[*36]

The Second Amended Complaint charges a fraudulent scheme to strip the estate's assets and transfer them beyond the reach of the estate and its creditors. Assuming that the plaintiff has adequately pleaded a primary violation, his aiding and abetting claim fails for many of the same reasons that doomed his RICO claim. The plaintiff does not plead any facts supporting an inference that China World knew that the debtor was a not-for-profit corporation under New York

2006 Bankr. LEXIS 482, *

law, that Mancuso, and possibly others, had orchestrated the unauthorized transfer of the debtor's assets, or that it was acquiring, for value, assets tainted by improper initial transfers. Furthermore, China World did not owe a fiduciary duty to the estate, and its mere failure to disclose the purchase of CEO Clubs China's assets is not substantial assistance.

Finally, although the Plaintiff's Further Opposition attaches a proposed new aiding and abetting claim and seeks leave to replead it, the new claim does not solve the pleading problems. The newly proposed ninth cause of action alleges violations of, inter alia, *NYNPCL § 720*, in connection with the scheme to defraud the estate. The underlying claim remains [*37] one based on fraud, and still falls short under *Rule 9(b)*. Accordingly, the ninth cause of action is dismissed without leave to replead.

### D. NYNPCL Claim

The fifth cause of action alleges that the assets of the debtor were transferred in violation of *Article 10 of the NYNPCL*, and seeks damages against China World in the amount of $ 726,000. *Article 10* addresses the non-judicial dissolution of a not-for-profit corporation. *Section 1001* specifies the procedure that governs the adoption of a plan of dissolution. It states:

> [HN22] (a) The board shall adopt a plan for the dissolution of the corporation and the distribution of its assets. Such plan shall implement any provision in the certificate of incorporation prescribing the distributive rights of members.

> (b) If the corporation is a Type B or Type C corporation and has no assets to distribute at the time of dissolution, the plan of dissolution shall include a statement to that effect, and a certified copy of such plan shall be filed with the attorney general within ten days after its adoption by the board.

*NYNPCL § 1001*. The plaintiff alleges that "[a] plan of dissolution and distribution of assets of the [*38] Debtor was not filed with the Office of the Attorney General," in violation of *NYNPCL § 1001(b)*. n11 (P 143.)

> n11 As noted supra at note 6, the Second Amended Complaint's reference in the Fifth Cause of Action to *NYNPCL § 1002* was a typographical error and the correct section is 1001.

The claim is based on two unwarranted assumptions, one legal and one factual. The first is that a not-for-profit corporation can only dispose of all or substantially all of its assets through a plan of dissolution. [HN23] A not-for-profit corporation is empowered, however, to transfer all of its assets outside of a plan of dissolution, and depending on the type of not-for-profit corporation, without the involvement of the New York attorney general or the state courts. See *NYNPCL § 510(a)(1) & (a)(2)*. n12

> n12 *NYNPCL § 510 (a)* provides:

> > [HN24] A sale, lease, exchange or other disposition of all, or substantially all, the assets of a corporation may be made upon such terms and conditions . . . as may be authorized in accordance with the following procedure:

> > (1) If there are members entitled to vote thereon, the board shall adopt a resolution recommending such sale, lease, exchange or other disposition. The resolution shall specify the terms and conditions of the proposed transaction, including the consideration to be received by the corporation and the eventual disposition to be made of such consideration, together with a statement that the dissolution of the corporation is or is not contemplated thereafter. The resolution shall be submitted to a vote at a meeting of members entitled to vote thereon, which may be either an annual or a special meeting. . . . At such meeting by two-thirds vote as provided in paragraph (c) of section 613 (Vote of members) the members may approve the proposed transaction according to the terms of the resolution of the board, or may approve such sale, lease, exchange or other disposition and may authorize the board to modify the terms and conditions thereof.

(2) If there are no members entitled to vote thereon, such sale, lease, exchange or other disposition shall be authorized by the vote of at least two-thirds of the entire board, provided that if there are twenty-one or more directors, the vote of a majority of the entire board shall be sufficient.

(3) If the corporation is, or would be if formed under this chapter, classified as a Type B or Type C corporation under section 201, (Purposes) such sale, lease, exchange or other disposition shall in addition require leave of the supreme court in the judicial district or of the county court of the county in which the corporation has its office or principal place of carrying out the purposes for which it was formed.

Emphasis added.

[*39]

The second incorrect assumption relates to the debtor's status. [HN25] *NYNPCL § 201* n13 sets forth four types of not-for-profit corporation, defining each according to the purpose or purposes for which it was formed. *NYNPCL § 1001(b)* requires a plan of dissolution to be filed with the attorney general only if (a) the corporation is a Type B or Type C (and, in appropriate cases, a Type D n14) not-for-profit corporation and (b) has no assets to distribute at the time of dissolution. *NYNPCL § 1001(b)* does not apply to a Type A not-for-profit corporation.

n13 *NYNPCL § 201* provides:

[HN26] (b) A corporation, of a type and for a purpose or purposes as follows, may be formed under this chapter . . .

Type A -- A not-for-profit corporation of this type may be formed for any lawful non-business purpose or purposes including, but not limited to, any one or more of the following non-pecuniary purposes: civic, patriotic, political, social, fraternal, athletic, agricultural, horticultural, animal husbandry, and for a professional, commercial, industrial, trade or service association.

Type B -- A not-for-profit corporation of this type may be formed for any one or more of the following non-business purposes: charitable, educational, religious, scientific, literary, cultural or for the prevention of cruelty to children or animals.

Type C -- A not-for-profit corporation of this type may be formed for any lawful business purpose to achieve a lawful public or quasi-public objective.

Type D -- A not-for-profit corporation of this type may be formed under this chapter when such formation is authorized by any other corporate law of this state for any business or non-business, or pecuniary or non-pecuniary, purpose or purposes specified by such other law, whether such purpose or purposes are also within types A, B, C above or otherwise.

[*40]

n14 *NYNPCL § 201(c)* provides, in part:

A type D corporation is subject to all provisions of this chapter which are applicable to a type B corporation under this chapter unless provided to the contrary in, and subject to the contrary provisions of, the other corporate law authorizing formation under this chapter of the type D corporation.

The Second Amended Complaint does not allege facts bearing on type that fits the debtor. The plaintiff neverthe-less argues in the Plaintiff's Further Opposition that the debtor is a Type B not-for-profit corporation. (Id., at P 10.) This is certainly wrong. [HN27] Type B corporations qualify for tax exempt status under the Internal Revenue Code, *26 U.S.C. § 501(c) (3)*, and are "established primarily to benefit society in general as opposed to the members of a not-for-profit corporation." E. LISK WYCKOFF, JR., PRACTICE COMMENTARIES, 37 MCKINNEY'S CONSOL. LAWS OF N.Y., *NYNPCL § 201*, at 63 (2005). "This type of corporation is also more carefully regulated then Type A corporations because of the public benefit purpose and because [*41] of public funding." Id.; cf. *Santos v. Chappell, 65 Misc. 2d 559, 318 N.Y.S.2d 570, 579 (N.Y. Sup. Ct. 1971)* ("Trade associations which operate strictly as such are type A' corporations."). The debtor seems to have been designed as a trade association to benefit its members rather than to benefit society as a whole.

Furthermore, [HN28] *NYNPCL § 1001(b)* only applies where the dissolving not-for-profit corporation does not have any assets to distribute at the time of the dissolution. Since the gravamen of the Second Amended Complaint is that the debtor distributed assets, *§ 1001(b)* does not apply for this additional reason.

This does not, however, end the discussion. Although the Second Amended Complaint does not state a claim under *NYNPCL § 1001*, the plaintiff may yet be able to state a claim under another provision of the NYNPCL. The Second Amended Complaint implies that the debtor's members transferred all of the debtor's assets without complying with *NYNPCL § 510(a)*, quoted in a preceding footnote. [HN29] *NYNPCL § 720(a)(2)* gives the plaintiff standing to set aside any unlawful conveyance "where the transferee knew of its unlawfulness." The plaintiff may be able to allege a legally [*42] sufficient claim against China World under *NYNPCL § 720*, and is granted leave, as requested in the Plaintiff's Further Opposition, to re-plead his fifth cause of action. n15

n15 [HN30] Cases interpreting *N.Y. Bus. CORP. LAW § 720(a) (2)* (McKinney 2003), which is identical to *NYNPCL § 720(a)(2)*, have held that a "knowing transferee [is] liable thereunder to the corporation and its creditors." *Atlanta Shipping Corp. v. Chemical Bank, 631 F. Supp. 335, 350 (S.D.N.Y. 1986)*, aff'd, *818 F.2d 240 (2d Cir 1987)*; accord *Wedtech Corp. v. Nofziger (In re Wedtech Corp.), 88 B.R. 619, 624 (Bankr. S.D.N.Y. 1988)*. The plaintiff must allege that the transferee had knowledge of the unlawfulness of the transfer. *Wedtech Corp. v. Denlinger (In re Wedtech Corp.), 121 B.R. 286, 290 (Bankr. S.D.N.Y. 1990)*. In granting leave to re-plead, the Court is not deciding whether the proposed fifth cause of action attached to the Plaintiff's Further Opposition is legally sufficient, or whether the allegations of the transferee's knowledge must satisfy *FED. R. CIV. P. 9 (b)*.

[*43]

In conclusion, the motion to dismiss is denied with respect to the Third and Fourth Causes of Action, and is granted with respect to the Fifth, Ninth and Tenth Causes of Action. The plaintiff is granted leave to replead the Fifth Cause of Action within ten days, and the parties are directed to contact chambers to arrange a status conference. Settle order on notice.

Dated: New York, New York

March 8, 2006

*/s/ Stuart M. Bernstein*

Chief United States Bankruptcy Judge

# TAB 2

LEXSEE 2005 U.S. DIST. LEXIS 4818

### GIL KADOURI and DORIT KADOURI, Plaintiffs, - against - DAVID FOX, EXPERT REALTY, HASIDA MOLNAR, FERENC MOLNAR, and "JOHN DOE(S)," REAL NAMES UNKNOWN, DEFENDANTS.

03 CV 1725 (NG)

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

*2005 U.S. Dist. LEXIS 4818*

**January 24, 2005, Decided**
**January 31, 2005, Filed**

**DISPOSITION:** [*1] Defendants' motions to dismiss complaint granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, property owners, sued defendants, a real estate brokerage, its employees, a former tenant, and an unknown sublessee, alleging violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq., and asserting state law claims for fraud, negligence, and breach of contract. The brokerage, employees, and tenant moved to dismiss under Fed. R. Civ. P. 12(b)(6).

**OVERVIEW:** The owners claimed that the brokerage engaged in the RICO predicate mail and wire fraud when it did not inform the owners of the sublessee's illegal marijuana growing at their property. The court held that the owners' RICO claims failed because their allegations of mail and wire fraud under 18 U.S.C.S. § § 1341 and 1343 failed to create a strong inference of fraudulent intent as required under Fed. R. Civ. P. 9(b). The court found that there were no allegations in the owners' complaint suggesting that the brokerage or employees were aware of or concealed the illegal activity at the owners' property and that there were no facts suggesting that brokerage or employees actually concealed any information through the mails. The court further held that the owners failed to demonstrate a closed-ended or an open-ended pattern of racketeering activity and that the owners failed to demonstrate that they were the targets, competitors, or intended victims of the sublessee's marijuana growing. The court finally held that the owners' RICO conspiracy claims failed, that it would not exercise supplemental jurisdiction over the state law claims, and that leave to replead would be futile.

**OUTCOME:** The motions to dismiss were granted. The owners' complaint was dismissed.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN1] A motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. The plaintiff's factual allegations must be accepted as true, and the court must draw all inferences in favor of plaintiff.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN2] The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq., provides a private right of action to a person injured in his business or property by reason of a violation of 18 U.S.C.S. § 1962. 18 U.S.C.S. § 1964(c).

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*

2005 U.S. Dist. LEXIS 4818, *

*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > Elements*
[HN3] See 18 U.S.C.S. § 1962(c).

*Criminal Law & Procedure > Criminal Offenses > Fraud > Wire Fraud > Elements*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > Elements*
*Environmental Law > Litigation & Administrative Proceedings > Toxic Torts*
[HN4] The Racketeer Influenced and Corrupt Organizations Act's, 18 U.S.C.S. § 1961 et seq., definition of racketeering activity includes dealing in a controlled substance, as well as any act which is indictable under 18 U.S.C.S. § 1343 (wire fraud) or 18 U.S.C.S. § 1341 (mail fraud). 18 U.S.C.S. § 1961(1)(b).

*Criminal Law & Procedure > Criminal Offenses > Fraud > Mail Fraud > Elements*
*Criminal Law & Procedure > Criminal Offenses > Fraud > Wire Fraud > Elements*
[HN5] Under the mail and wire fraud statutes, any scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, which involves use of the mails or wire is indictable. 18 U.S.C.S. § § 1341, 1343.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
*Securities Law > Liability > RICO Actions > Elements of Proof > Enterprise*
[HN6] The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq., defines an enterprise as any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C.S. § 1961(4). At least two acts of racketeering activity are required to establish a pattern under RICO. 18 U.S.C.S. § 1961(5). However, plaintiffs must also show that the two acts are (1) related and that (2) they amount to, or pose a threat of, continuing criminal activity.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*

*Criminal Law & Procedure > Criminal Offenses > Fraud > Mail Fraud > Elements*
*Criminal Law & Procedure > Criminal Offenses > Fraud > Wire Fraud > Elements*
[HN7] Allegations of mail and wire fraud, subject as they are to the heightened pleading requirements of Fed. R. Civ. P. 9(b), must include facts sufficient to create a strong inference of fraudulent intent.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Crimes Against Persons > Coercion > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN8] A plaintiff in a Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq., action must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time).

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN9] For purposes of a Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq., claim, in order to constitute a closed-ended pattern of racketeering activity, defendants' activities would have to have extended over a substantial period of time. In the Second Circuit, the alleged racketeering activity generally must have extended over at least two years in order to be considered a substantial period of time. However, while such a temporal allegation is necessary, allegations that the activity extended over more than two years are not sufficient in themselves for the court to find a closed-ended pattern of racketeering activity. The determination of whether or not there is closed-ended continuity depends on several factors, including the length of time over which the alleged predicate acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes.

2005 U.S. Dist. LEXIS 4818, *

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN10] For purposes of a Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq., claim, a plaintiff's allegations that the alleged racketeering activity extended for, at most, two years is the bare minimum of what might constitute a "substantial period of time" in the Second Circuit. The United States Court of Appeals for the Second Circuit has never found a closed-ended pattern where the predicate acts spanned fewer than two years.

*Criminal Law & Procedure > Criminal Offenses > Crimes Against Persons > Coercion > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
*Securities Law > Liability > RICO Actions > Elements of Proof > Pattern > Closed & Open Ended Continuity*
[HN11] For purposes of a Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq., claim, in order to constitute an open-ended pattern of racketeering activity, the defendants' activities must threaten to continue into the future. The plaintiffs must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed. In assessing whether or not the plaintiff has shown open-ended continuity, the nature of the RICO enterprise and of the predicate acts are relevant.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN12] A Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq., enterprise is a group connected by common activity and a common purpose, the existence of which is proven by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*

*Criminal Law & Procedure > Criminal Offenses > Controlled Substances > Manufacture > Elements*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN13] Plaintiffs in a civil Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq., suit must specify what activities comprise the alleged racketeering. One act of converting a premises to a drug manufacturing facility cannot be divided into multiple acts of racketeering. The United States Court of Appeals for the Second Circuit has cautioned that courts must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO. The "two acts" requirement is a component of RICO's requirement that a pattern of racketeering activity be demonstrated. The legislative history of RICO indicates that Congress did not intend to include potentially isolated acts of criminal behavior.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
*Securities Law > Liability > RICO Actions > Elements of Proof > Causation & Proximate Causation*
[HN14] A civil Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq., plaintiff must plead and prove that the violation not only was the logical, or "but for," cause of the injury but also was its legally cognizable, or proximate, cause. The reasonably foreseeable victims of a RICO violation are the targets, competitors and intended victims of the racketeering enterprise.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
*Securities Law > Liability > RICO Actions > Elements of Proof > Pattern > Conspiracy*
[HN15] Where plaintiffs have not adequately alleged a substantive violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. § 1961 et seq., against all the defendants, the court will dismiss any RICO conspiracy claim against all the defendants.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > General Overview*
*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations > General Overview*
[HN16] Fed. R. Civ. P. 15(a) directs that leave to amend should be freely given. However, particularly in the case of pleading a claim under a statute such as the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961 et seq., which sets forth exacting pleading requirements, leave to replead can be denied where granting it would be futile.

**COUNSEL:** For Gil Kadouri, Dorit Kadouri, Plaintiffs: Michael A. Haskel, Law Offices of Michael A. Haskel, Mineola, NY.

For David Fox, Defendant: Victor Mevorah, Victor Mevorah, P.C., Garden City, NY.

For Expert Realty, Hasida Molnar, Ferenc Molnar and, Defendants: Perry Dean Freedman, Perry Dean Freedman, Mt Kisco, NY.

For David Fox, Cross Claimant: Victor Mevorah, Victor Mevorah, P.C., Garden City, NY.

**JUDGES:** NINA GERSHON, United States District Judge.

**OPINIONBY:** NINA GERSHON

**OPINION:**

### OPINION AND ORDER

### GERSHON, UNITED STATES DISTRICT JUDGE:

Plaintiffs' Complaint asserts claims under the Racketeer Influenced and Corrupt Organizations Act, *18 U.S.C. § § 1962(c)*, *1962(d)*, *1964(c)*, ("RICO") against defendants Hasida Molnar, Ferenc Molnar and Expert Realty, as well as state law claims for fraud, negligence, and breach of contract. The Complaint also asserts RICO claims against defendants David Fox and John Doe(s), as well as state law claims against Fox for breach of contract and negligence. Defendant Fox and, separately, defendants [*2] Expert Realty, Hasida Molnar, and Ferenc Molnar have moved to dismiss, pursuant to *Federal Rule of Civil Procedure 12(b)(6)*, for failure to state a claim under RICO. For the reasons detailed below, the court dismisses all claims against all defendants.

### BACKGROUND

The following facts are alleged in the Complaint:

Plaintiffs Gil and Dorit Kadouri are the owners of residential property located at 75-09 177th Street in Fresh Meadows, New York. Defendant Expert Realty is a real estate brokerage in New York that employed defendants Hasida and Ferenc Molnar. In the summer of 2000, plaintiffs enlisted Expert Realty for assistance in finding a tenant for the Fresh Meadows property. If Expert Realty could identify a suitable tenant, the contemplated agreement would position Expert Realty as the manager of the property while plaintiffs were away for an extended trip to Israel. Realty agreed to find a suitable tenant, conduct a financial investigation of the tenant, collect rent, periodically inspect the premises, and handle various administrative tasks related to the property such as collecting plaintiffs' mail.

In August of 2000, Expert Realty, [*3] through the Molnars, presented defendant Fox to plaintiffs as the proposed tenant. According to the Complaint, Hasida Molnar made numerous favorable representations to plaintiffs about Fox's background and financial stability. Plaintiffs allege that these representations were false and that defendants H. Molnar and F. Molnar were aware of their falsity. Relying on the representations of defendants, plaintiffs ultimately accepted Fox as the tenant.

In September of 2000, Fox sublet the Fresh Meadows property to an unidentified individual ("John Doe"), who immediately began to use the property for growing, processing, and selling marijuana. Converting the property to suit this enterprise caused substantial damage, as did the actual process of growing marijuana. According to the Complaint, the Molnars and Expert Realty did not sufficiently monitor the premises; in particular they did not adequately investigate the excessive water consumption. Plaintiffs allege that the defendants engaged in numerous telephone calls in which they concealed the deteriorating situation in Fresh Meadows and that the Molnar defendants made numerous misrepresentations to plaintiffs via the telephone and mails [*4] which induced plaintiffs to remain in Israel as their property was being damaged. These telephone calls and mailings took place between July of 2000 and July of 2002.

### DISCUSSION

[HN1] A motion to dismiss under *Federal Rule of Civil Procedure 12(b)(6)* should be granted only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir.1998)*. Plaintiffs' factual allegations must be accepted as true, *Zinermon v. Burch, 494 U.S. 113, 118, 108 L. Ed. 2d 100, 110 S. Ct. 975 (1990)*, and the court must draw all inferences in favor of plaintiffs. *Thomas v. City of New York, 143 F.3d 31, 37 (2d Cir.1998)*.

[HN2] RICO provides a private right of action to a "person injured in his business or property by reason of a violation of *section 1962*." *18 U.S.C. § 1964(c)*. *Section 1962(c)* states:

> [HN3] It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, [*5] in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

*18. U.S.C. § 1962(c)*. [HN4] RICO's definition of "racketeering activity" includes dealing in a controlled substance, as well as "any act which is indictable under" *18 U.S.C. § 1343* (wire fraud) or *18 U.S.C. § 1341* (mail fraud). *See 18 U.S.C. § 1961(1)(b)*. [HN5] Under the mail and wire fraud statutes, "any scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," which involves use of the mails or wire is indictable. *See 18 U.S.C. §§ 1341, 1343*. [HN6] RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *See 18 U.S.C. § 1961(4)*. At least two acts of racketeering activity are required to establish a "pattern" under RICO. *See 18 U.S.C. § 1961(5)*. However, plaintiffs must also show that the two acts are [*6] (1) related and that (2) they amount to, or pose a threat of, continuing criminal activity. *See Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 97 (2d Cir. 1997); United States v. Indelicato, 865 F.2d 1370, 1381 (2d Cir. 1989), cert. denied, 493 U.S. 811, 107 L. Ed. 2d 24, 110 S. Ct. 56 (1989)*.

### I. RICO claims against Hasida Molnar and Expert Realty

Claims 1 and 2 of the Complaint allege violation of RICO through wire fraud and mail fraud, respectively. Plaintiffs' RICO claims fail because their allegations of wire and mail fraud are insufficient. [HN7] Allegations of mail and wire fraud, subject as they are to the heightened pleading requirements of *Rule 9(b) of the Federal Rules of Civil Procedure*, must include facts sufficient to create a "strong inference" of fraudulent intent. *See First Capital Asset Management Inc. v. Satinwood, 385 F.3d 159, 178-179 (2d Cir. 2004); McLaughlin v. Anderson, 962 F.2d 187, 191 (2d Cir. 1992); Ouaknine v. MacFarlane, 897 F.2d 75, 80 (2d Cir.1990); Cosmas v.*

*Hassett, 886 F.2d 8, 12 (2d Cir. 1989)*. Here, plaintiffs' [*7] wire fraud allegations suggest, at worst, negligence and not fraud. Plaintiffs assert that Hasida Molnar told them over the telephone that "she knew Fox, that Fox owned his own construction company...and that Fox was a suitable and reliable tenant for the Premises." Complaint P35(a). The only other wire fraud allegations against Hasida Molnar involve telephone calls in which plaintiffs allege that H. Molnar "failed to provide the Kadouris with a full account of ongoing events and transactions at the Premises." *See* Complaint P37. Plaintiffs' conclusions regarding this activity, outlined in their brief, reach far beyond inferences that reasonably can be drawn from the facts alleged in the Complaint. The logic of plaintiffs' argument is that, because illegal activity was occurring at their house, the management company was necessarily engaging in fraud when it did not inform plaintiffs of the illegal activity. However, there are no allegations in the Complaint that suggest that defendants H. Molnar and Realty were aware of the illegal activity, much less that they fraudulently concealed it. Indeed, the very information that plaintiffs argue should have put the Molnars and Realty on [*8] notice was communicated to plaintiffs by Hasida Molnar in the allegedly fraudulent telephone conversations. Thus, plaintiffs allege that among the acts of wire fraud were calls made by defendant H. Molnar to plaintiffs advising them that the "water and sewer bill" was "very high." *See* Complaint P35(b). Plaintiffs also allege that H. Molnar alerted them to the presence of "John Doe," Fox's alleged accomplice in the marijuana-growing scheme. *See* Complaint P35(c)(I). Such communications weigh against an inference that H. Molnar was attempting to defraud plaintiffs by concealing the nature of the activities occurring at the Fresh Meadows property. Put another way, plaintiffs' allegations cannot create a "strong inference" of fraudulent intent when they allege that defendant H. Molnar alerted them to suspicious activity that it was within her power to conceal.

Plaintiffs have also failed to state a claim of mail fraud. Plaintiffs allege only that defendants induced them to allow Expert Realty to receive their mail in order to be able to conceal from plaintiffs any information that "might have aroused suspicion." *See* Complaint P45(a). However, apart from plaintiffs' conclusory [*9] assertion of defendants' purpose, they include no facts suggesting that defendants actually concealed any information through the mails, or that their stated purpose for receiving plaintiffs' mail was false. Plaintiffs inexplicably cite defendants' receipt of "water and sewer bills that showed water consumption far in excess of the customary water usage at the Premises," as evidence of mail fraud. Complaint P45(b). As discussed above, that defendants communicated this fact to plaintiffs weighs against a finding of fraudulent intent. Thus, plaintiffs' allegations of wire

fraud and mail fraud cannot constitute the predicate acts of racketeering activity required by RICO.

Even if plaintiffs had sufficiently alleged fraud, their claims would fail because they have not alleged sufficient continuity under RICO. The alleged activity of defendants cannot constitute a pattern under RICO because it neither amounts to, nor poses a threat of, continuing criminal activity. [HN8] "[A] plaintiff in a RICO action must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity [*10] (i.e., past criminal conduct extending over a substantial period of time)." *See First Capital*, 385 F.3d at 180 (quoting *GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463, 466 (2d Cir. 1995), cert. denied, 518 U.S. 1017, 135 L. Ed. 2d 1067, 116 S. Ct. 2547 (1996)). Plaintiffs' allegations are insufficient to support the existence of either open-ended or closed-ended continuity.

[HN9] In order to constitute a closed-ended pattern of racketeering activity, defendants' activities would have to have extended over "a substantial period of time." *See id.* In this Circuit, the alleged racketeering activity generally must have extended over at least two years in order to be considered a substantial period of time. *See id.* However, while such a temporal allegation is necessary, allegations that the activity extended over more than two years are not sufficient in themselves for the court to find a closed-ended pattern of racketeering activity. *See id.* The determination of whether or not there is closed-ended continuity depends on several factors, including "the length of time over which the alleged predicate acts took place, the number and variety of acts, the number [*11] of participants, the number of victims, and the presence of separate schemes." *See GICC*, 67 F.3d at 467. Consideration of these factors weighs against a finding of a closed-ended pattern. There are only two victims of the alleged racketeering activity, Gil and Dorit Kadouri, a married couple whose interests are conjoined. The two victims were not harmed by separate schemes. Only one scheme is alleged, and plaintiffs were simultaneously injured by the same activity. Plaintiffs have alleged neither a great variety, nor a great number of acts of wire fraud and mail fraud, the only two racketeering activities alleged. There appears to be only one alleged participant in the wire and mail fraud, Hasida Molnar.

Furthermore, plaintiffs' allegations suggest that the racketeering activity took place over a time period barely constituting two years. According to the Complaint, the first act of wire fraud committed by defendants occurred in July of 2000, when defendant H. Molnar allegedly misrepresented the background of defendant Fox over the telephone. *See Complaint* P35(a). The last alleged act of wire fraud took place in July of 2002, when H. Molnar

allegedly fraudulently [*12] placated plaintiffs about the state of their property. *See Complaint* P35(c)(v). The alleged mail fraud took place over an even shorter period of time that was completely subsumed by the alleged period of the wire fraud. The Complaint asserts that "from in or about September 2000 to in or about December 2001," mail was sent from H. Molnar and Expert Realty to plaintiffs for the purpose of maintaining Expert Realty's status as monitor of the Fresh Meadows property and to conceal the criminal activity occurring on the premises. *See Complaint* P45. Thus, [HN10] plaintiffs' allegations make clear that the alleged racketeering activity extended for, at most, two years. This is the bare minimum of what might constitute a "substantial period of time" in this circuit. *See First Capital*, 385 F.3d at 181 (noting that the Second Circuit has never found a closed-ended pattern where the predicate acts spanned fewer than two years). In light of the Complaint's failure to allege the other aspects of a RICO pattern, the duration of the alleged racketeering activity is insufficient for a finding of a closed-ended pattern.

[HN11] In order to constitute an open-ended pattern of racketeering [*13] activity, defendants' activities must threaten to continue into the future. Plaintiffs "must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *De Falco v. Bernas*, 244 F.3d 286, 323 (2d Cir. 2001) (quoting *Cofacredit S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)), cert. denied, 534 U.S. 891, 151 L. Ed. 2d 147, 122 S. Ct. 207 (2001). Because it cannot be inferred from plaintiffs' allegations that such a threat existed, defendants' activities cannot constitute an open-ended pattern of racketeering activity. The contract to manage the property was for a fixed period and the lease was for a fixed period of two years. Though plaintiffs allege that the lease could have been renewed indefinitely, this appears inconsistent with the explicitly fixed arrangement between the plaintiffs and defendants. More importantly, that the lease could have continued beyond two years is not sufficient to create open-ended continuity. "In assessing whether or not the plaintiff has shown open-ended continuity, the nature of the RICO enterprise and of the predicate acts are relevant." *Defalco*, 244 F.3d at 323. [*14] Expert Realty is not alleged to be an enterprise "engaged primarily in racketeering activity," and therefore plaintiffs must allege facts supporting either that "the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *See id.* On the basis of the facts alleged in the Complaint, no inference supporting either of these conclusions is possible. The alleged predicate acts were omissions limited to a highly particularized situation. Plaintiffs have not alleged that defendants similarly defrauded any other parties, or that they were

defrauded beyond the one scenario described in the Complaint. It is not alleged that Expert Realty is a sham company, set up to facilitate the acquisition of facilities for drug dealers. Plaintiffs have failed to demonstrate open-ended continuity.

## II. RICO Claim against David Fox

Plaintiffs assert a separate RICO claim against defendants Fox and Doe, in Claim 3 of the Complaint. Other than alleging that the defendants engaged in a marijuana production and distribution enterprise, they make no attempt to set forth the requirements of an [*15] enterprise, nor do they ever identify what conduct was engaged in by Fox in furtherance of the enterprise other than that he knowingly sublet the home to Doe, whose purpose was to grow marijuana there.

[HN12] A RICO enterprise is a group connected by common activity and a common purpose, "the existence of which is proven 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *First Capital, 385 F.3d at 173* (quoting *United States v. Turkette, 452 U.S. 576, 583, 69 L. Ed. 2d 246, 101 S. Ct. 2524 (1981))*. Plaintiffs have failed to allege the existence of an ongoing organization with regard to the alleged marijuana growing and dealing. The Complaint is devoid of facts describing Fox's role in the alleged enterprise, and it fails to include any specific allegations regarding the ongoing activities of the enterprise. There is no allegation from which to infer that Fox was one of "various associates functioning as a continuing unit." *See id.*

Moreover, even if the enterprise allegations were sufficient, the Complaint cannot meet the requirement of alleging a pattern of racketeering activity by Fox. Under *18 U.S.C. 1962(c)* [*16] it is "unlawful for any person employed by or associated with any enterprise...to conduct or participate...in the conduct of such enterprise's affairs through a pattern of racketeering activity." [HN13] Plaintiffs in a civil RICO suit must specify what activities comprise the alleged racketeering. *See DeJesus v. Sears, Roebuck and Co., Inc., 87 F.3d 65, 70 (2d Cir. 1996)*, cert. denied, 519 U.S. 1007, 136 L. Ed. 2d 339, 117 S. Ct. 509 (1996)*. Plaintiffs have asserted only one act of racketeering that was the proximate cause of the harm, *i.e.*, the conversion of plaintiffs' property into a marijuana growing facility. However, one "act" of converting a premises to a drug manufacturing facility cannot be divided into multiple acts of racketeering. *Cf. United States v. Biaggi, 909 F.2d 662, 686 (2d Cir. 1990)* ("If the commission of an offense and its false denial could establish a 'pattern,' then every offense related to a criminal enterprise would be eligible for inclusion in a pattern whenever the offender falsely denied its commission. That is not what Congress intended."), *cert.*

denied, 499 U.S. 904, 113 L. Ed. 2d 213, 111 S. Ct. 1102 (1991)*. Our Court of Appeals has cautioned that "courts [*17] must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO." *See Schlaifer, 119 F.3d at 98.*

The "two acts" requirement is a component of RICO's requirement that a pattern of racketeering activity be demonstrated. The legislative history of RICO indicates that Congress did not intend to include potentially isolated acts of criminal behavior. *See Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496, 87 L. Ed. 2d 346, 105 S. Ct. 3275 (1985)*. Though plaintiffs loosely reference "the production, manufacture, sale and other dealings in marijuana and controlled substances," there are no specific allegations of such activity on the part of Fox beyond involvement in the conversion of plaintiffs' property to the illegal purpose. In sum, plaintiffs have failed to allege a pattern with regard to defendant Fox.

Even if plaintiffs had alleged more than one act of racketeering by Fox, their claims would fail because they have not alleged sufficient continuity under RICO. As described above, plaintiffs' allegations set forth one scheme, involving one identified defendant and one unidentified defendant, and two related victims, [*18] and plaintiffs have not demonstrated that there was a "threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Defalco, 244 F.3d at 323* (quoting *Cofacredit, 187 F.3d at 242*). That the lease was limited to two years evidences that plaintiffs and defendant Fox foresaw and scheduled a termination of Fox's interest in the Fresh Meadows property. Plaintiffs' allegations indicate that the activity taking place on the property caused plaintiffs to be suspicious about what was occurring at their property. Given these facts, the court cannot accept plaintiffs' assertion that Fox could have expected that plaintiffs would allow their property to be so utilized for an indefinite amount of time without inspection. Nor have plaintiffs alleged a threat of continuing criminal activity beyond this particular scheme. There are no allegations that Fox has engaged in similar activity before or since the incidents detailed in the Complaint.

Even if the court accepted plaintiffs' argument that it must be presumed that Fox engaged in a pattern of drug distribution subsequent to the property conversion, plaintiff's allegations [*19] do not support the conclusion that Fox's conduct was the proximate cause of their injuries. *See Ideal Steel Supply Corp. v. Anza, 373 F.3d 251, 257 (2d Cir. 2004)* [HN14] (civil RICO plaintiff "must plead and prove that the violation not only was the logical, or 'but for,' cause of the injury but also was its legally cognizable, or proximate, cause"); *Lerner v. Fleet Bank, N.A.., 318 F.3d 113, 124 (2d Cir. 2003)* ("we have repeatedly emphasized that the reasonably foreseeable vic-

2005 U.S. Dist. LEXIS 4818, *

tims of a RICO violation are the targets, competitors and intended victims of the racketeering enterprise."), *cert. denied, 540 U.S. 1012, 157 L. Ed. 2d 424, 124 S. Ct. 532 (2003).* While plaintiffs were injured by the conversion of their house for illegal purposes, the actual "racketeering activity" was the production, packaging and distribution of marijuana, not the conversion. Plaintiffs have failed to demonstrate that they were the targets, competitors, or intended victims of the inherently illegal racketeering activity, the dealing in marijuana. In sum, the causal link between Fox's alleged conversion of the property and the plaintiffs' injury is simply too weak for plaintiffs to base a RICO claim [*20] upon it. For all of these reasons, plaintiffs' substantive RICO claim against Fox is dismissed.

### III. RICO Conspiracy

Claim 4 of the Complaint alleges conspiracy in violation of RICO between H. Molnar, F. Molnar, and Fox. [HN15] Because plaintiffs have not adequately alleged a substantive violation of RICO against these defendants, the court also dismisses the RICO conspiracy claim against all of them. *See First Capital, 385 F.3d at 182; see also Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1064 (2d Cir.1996), vacated on other grounds, 525 U.S. 128, 129, 142 L. Ed. 2d 510, 119 S. Ct. 493 (1998).*

### IV. Supplemental Jurisdiction

The federal claims being dismissed, the court declines to exercise supplemental jurisdiction over the remaining state claims against all defendants. *See 28 U.S.C. § 1367.* Claims 5, 6, 7, 8, 9, and 10, for common

law fraud, breach of contract, and negligence, are therefore dismissed.

### V. Leave to Replead

[HN16] *Federal Rule of Civil Procedure 15(a)* directs that leave to amend should be "freely given." However, particularly in the case of pleading a claim under a statute such [*21] as RICO, which sets forth exacting pleading requirements, leave to replead can be denied where granting it would be futile. *See, e.g., In re American Express Co. Shareholders Litig., 39 F.3d 395, 402 (2d Cir.1994)* (affirming district court's denial of leave to replead RICO claim where "appellants have not indicated how they could satisfy RICO's proximate cause requirement"). Such futility is present here. There is no reason to conclude that plaintiffs can add allegations which could overcome the multiple deficiencies in the existing pleading. Leave to replead is therefore denied.

### Conclusion

The motions to dismiss of plaintiffs Hasida Molnar, Ferenc Molnar, Expert Realty, and David Fox are granted. The Complaint is dismissed.

**Dated: January 24, 2005**

**Brooklyn, New York**

**SO ORDERED.**

**NINA GERSHON**

**United States District Judge**