# TAB 5

LEXSEE 2005 U.S. DIST. LEXIS 41755

Ceasar F. Peralta, Plaintiffs, - against - WMH Tool Group, Inc., Defendant.

CV-04-3826 (CPS)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

*2005 U.S. Dist. LEXIS 41755*

**August 18, 2005, Decided**

**COUNSEL:** [*1] For Cesar F. Peralta, Plaintiff: Dominick W. Lavelle, Dominick W. Lavelle, Esq., Mineola, NY.

For WMH Tool Group, Inc., Defendant: John Luke Castelly, John E. Becker, Schiff Hardin LLP, New York, NY; Joshua D. Lee, Schiff Hardin LLP, Chicago, IL.

**JUDGES:** Charles P. Sifton, United States District Judge.

**OPINIONBY:** Charles P. Sifton

**OPINION:**

MEMORANDUM OPINION AND ORDER

SIFTON, Senior Judge.

Plaintiff, Ceasar F. Peralta, commenced this action by filing a complaint invoking this Court's diversity jurisdiction against defendant, WMH Tool Group Inc. The complaint sets forth claims for relief based on negligence, breach of express warranty, breach of implied warranty, and strict products liability. Defendant WMH now moves for summary judgment dismissing the complaint pursuant to *Fed. R. Civ. P. 56*. For the reasons set forth below the defendant's motion for summary judgment is granted.

BACKGROUND

The following facts are taken from the submissions of the parties in connection with the present motion. They are undisputed unless otherwise noted. Only facts relevant to the present motion will be discussed.

On January 30, 2004 plaintiff Peralta, a citizen [*2] of Queens, New York, was employed by United Custom Made Furniture. On that date he sustained injuries, including partial amputation, to several fingers of his left hand from a Powermatic woodcutting saw, Model No. 66, Serial No; 88662269. This serial number indicates that the saw was manufactured in 1998. In 1998, Powermatic saws, including Model No. 66, Serial No. 88662269 were manufactured by Devlieg-Bullard Inc.

On July 15, 1999 Devlieg-Bullard filed for protection under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division. In a September 1999 auction, Jet Equipment and Tools, Inc. ("Jet") submitted the winning bid for the Powermatic assets and the bankruptcy court approved Jet's purchase of the Powermatic Assets pursuant to the Asset Purchase Agreement. n1 In connection with the sale, the bankruptcy court issued an order titled: "Order Authorizing Debtor to Sell 'Powermatic Assets' Free and Clear of Liens, Encumbrances and Interests." On October 15, 1999 Jet formed the Delaware based, Powermatic Corporation, in order to purchase the Powermatic Assets. In 2001 Powermatic Corporation merged into [*3] Jet with Jet the surviving corporation. On March 14, 2002, Jet changed its name to that of WMH Tool Group, Inc. Powermatic saws are currently manufactured by defendant WMH Tool Group Inc., a business incorporated in Washington state and with its principal place of business in Illinois.

          n1 This was the same Asset Purchase Agreement originally agreed to by Sunhill as per the footnote above.

DISCUSSION

A court must grant a motion for summary judgment if the movant shows that "there is no genuine issue as to any material fact" and that "the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. Summary judgment is appropriate "when the record taken as a whole could not lead a rational trier of fact to

Case 7:04-cv-08223-KMK    Document 172-4    Filed 08/11/2006    Page 3 of 18

Page 2
2005 U.S. Dist. LEXIS 41755, *

find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).* "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, [*4] but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000).* Although all facts and inferences therefrom are to be construed in the light most favorable to the party opposing the motion, see *Harlen Assocs. v. Vill. of Mineola, 273 F.3d 494, 498 (2d Cir. 2001)*, the nonmoving party must raise more than just "metaphysical doubt as to the material facts," *Matsushita, 475 U.S. at 586.*

*Local Rule 56.1(a)* requires that all motions for summary judgment under *Fed. R. Civ. P. 56* be accompanied by a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." A party's failure to do so "may constitute grounds for denial of the motion." Furthermore, *Local Rule 56.1(c)* provides that numbered paragraphs which are not controverted by a corresponding paragraph in the opposing party's corresponding statement are deemed admitted.

Defendant [*5] WMH argues that it is entitled to summary judgment because based on the above undisputed facts, even assuming that the saw was defective and negligently manufactured, no rational juror could find that it assumed Devlieg's Powermatic liabilities simply as a result of its purchase of the Powermatic's assets. That the plaintiff was injured, under circumstances giving rise to liability on the art of defendant's predecessor, that such injuries were caused by a Powermatic saw, and that Jet purchased the Powermatic Assets via the Powermatic Corporation, merged with Powermatic Corporation with Jet as the surviving corporation, and then changed its name to WMH Tool Group, Inc. are not in dispute for purposes of this motion. n2 Thus, the only issues concern the effect of the bankruptcy court's "Order Authorizing Debtor to Sell 'Powermatic's Assets' Free and Clear of Liens, Encumbrances, and Interests," whether or not successor liability applies to the defendant, and whether or not there was a duty to warn.

> n2 The plaintiff did not submit a numbered list of undisputed facts as required by local *rule 56.1(a)*. According to *Local rule 56.1(c)*, the defendant's list of undisputed facts is thus deemed admitted for the purposes of this motion.

[*6]

The Effect of the Bankruptcy Court's "Order Authorizing Debtor to Sell 'Powermatic's Assets' Free and Clear of Liens, Encumbrances and Interests

The defendant argues that the bankruptcy court's order precludes WMH's liability. The relevant portion of the Order, PF provides:

> At the Closing, the Powermatic Assets shall be sold, conveyed, assigned, transferred, and delivered to the Purchaser free and clear of all liens, mortgages, pledges, security interests, restrictions, prior assignments, liabilities, obligations, encumbrances, charges, claims, and interests of any and every kind, nature, and description whatsoever, including, without limitation, those granted and imposed by prior orders of the Court, and the lines of CIT and of any and all other creditors of Debtor on the Powermatic Assets (the "Liens").

The order adds, that after the closing the purchaser will not be considered a successor of the debtor and that "the purchaser shall not be responsible for any of the Debtor's liabilities or obligations, other than those expressly assumed by the Purchaser pursuant to the Asset Purchase Agreement and the Amendment."

Proceeds from a free and clear sale, such [*7] as the one above, are immune from subsequent suits against the successor. *In re Johns-Manville Corp, 837 F.2d 89 (2d Cir. 1988).* n3 It is well established that a bankruptcy court has ancillary jurisdiction to enjoin such suits. Such power derives from Title *28 U.S.C. § 1334(b)* which states that United States District Courts shall have, "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or *related to* cases under title 11" [emphasis added] n4. The "related to" language has been interpreted broadly to allow bankruptcy courts to rule on any proceeding whose outcome "could conceivably have any effect on the estate being administered in bankruptcy," *In re G.S.F. Corp, 938 F.2d 1467, 1475 (1st Cir. 1991)*, and as such, to enjoin suits against purchasers infree and clear sales under the "related to" power.

> n3 The parties in this case have primarily cited cases applying New York law. "Such implied consent . . . is sufficient to establish choice of law." *Motorola Credit Corp. v. Uzan, 388 F.3d 39, 61 (2d Cir. 2004)* (quoting *Krumme v.*

Case 7:04-cv-08223-KMK    Document 172-4    Filed 08/11/2006    Page 4 of 18

Page 3
2005 U.S. Dist. LEXIS 41755, *

*WestPoint Stevens, Inc.,* 238 F.3d 133, 138 (2d Cir. 2000)). In any event, the parties silence on choice of law determination allows the court to apply the law of the forum. See *Michele Pommier Models v. Men Women N.Y. Model Mgmt.,* 14 F.Supp.2d 331, 336 (S.D.N.Y. 1998) (citing *Keles v. Yale University,* 889 F.Supp. 729, 733 (S.D.N.Y. 1995)).

[*8]

n4 This clause purports to address *district court* jurisdiction. However, its statement that such jurisdiction is not exclusive implies that such jurisdiction is shared with the bankruptcy courts. Thus, just as a district court would have jurisdiction over cases "related to cases under Title 11, so too does a bankruptcy court have jurisdiction over such cases.

Plaintiff does not challenge the bankruptcy court's power generally to enjoin suits against successors following a free and clear purchase. Rather, plaintiff argues that requests for such an injunction must be brought in the bankruptcy court and not in the district court. Although in the majority of cases, both those cited by the defendant and more generally, defendants have requested an injunction against a suit brought in State or Federal Court from the bankruptcy court, defendant does not offer any precedent and indeed, none exists, showing that such suit *must* be brought in a bankruptcy court. For example, in *Forde v. Kee-Lox Mfg. Co. Inc.,* 437 F.Supp. 631 (W.D.N.Y. 1977), a District Court granted summary judgment [*9] for a defendant where defendant was a successor corporation which had acquired the assets through a free and clear bankruptcy order.

Successor Liability Does Not Apply to the Defendants Under One of the Four Exceptions

Even in the absence of the bankruptcy courts order, successor liability would not apply. The general rule is that a corporation that acquires the assets of another is not liable for the torts of its predecessor. However, there are four settled exceptions: (1) if the successor expressly or impliedly assumed the predecessor's tort liability; (2) there was a consolidation or merger of seller and purchaser; (3) the purchasing corporation was a mere continuation of the selling corporation; or (4) the transaction is entered into fraudulently to escape such obligations. *Schumacher v. Richards Shear Co.,* 59 N.Y.2d 239, 245, 451 N.E.2d 195, 464 N.Y.S.2d 437 (N.Y. 1983). In this case, there is no evidence that any of these four exceptions apply.

With respect to the first exception, defendant cannot be held to have expressly or impliedly assumed the predecessor's tort liability as to products sold prior to the asset purchase since it specifically disavowed such liability in the [*10] Asset Purchase Agreement. See Asset Purchase Agreement P1.4(d).

The second and third exceptions are generally considered as the de facto merger theory, because they overlap to such an extent that "no criteria can be identified that distinguish them in any useful manner." *Lumbard v. Maglia* 621 F. Supp 1529 (S.D.N.Y. 1985), quoting J. Phillips, *Product Line Continuity and Successor Corporation Liability,* 58 N.Y.U.L.Rev. 906, 909 (1983). A showing of de facto merger requires evidence of four factors: (1) continuity of ownership; (2) cessation of ordinary business operations and the dissolution of the selling corporation as soon as possible after the transaction; (3) the buyer's assumption of liabilities ordinarily necessary for the uninterrupted continuation of the seller's business; and (4) continuity of management, personnel, physical location, assets and general business operation. *Id. at 1535.*

The first factor, continuity of ownership has been held to be the essence of a merger, and is accordingly a prerequisite to the application of any de facto merger doctrine. *New York City Asbestos Litig.,* 15 A.D.3d 254, 789 N.Y.S.2d 484, 486 (N.Y. App. Div. 2005). [*11] Such continuity "exists when the shareholders of the predecessor corporation become direct or indirect shareholders of the successor corporation as the result of the successor's purchase of the predecessor's assets, as occurs in a stock-for-assets transaction." *Id.* Such continuity does not exist in this case since the successor corporation purchased assets with cash, the shareholders of DeVrieg-Bullard, did not become shareholders in Powermatic Corporation or ultimately shareholders in . Because this first factor is a prerequisite for any finding of de facto merger, its absence is dispositive.

Factor two requires the cessation of ordinary business operations and the dissolution of the selling corporation as soon as possible after the transaction. It is not enough that the predecessor corporation cease ordinary business operations. It must also be dissolved. In order to prevail on this factor, plaintiff must show that "there was a corporate reorganization and only one corporation survives the transaction." *Howard v. Clifton Hydraulic Press Co.,* 830 F. Supp 708, 710 (E.D.N.Y. 1993). There is no evidence that Devlieg-Bullard was ever dissolved, thus the requirements [*12] of factor two cannot be met.

Factor three requires the assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation. According to the Asset Purchase agreement

Case 7:04-cv-08223-KMK    Document 172-4    Filed 08/11/2006    Page 5 of 18

Page 4
2005 U.S. Dist. LEXIS 41755, *

WMH assumed only contract and license liabilities arising or performed after the closing of the asset purchase agreement, liability to employees for vacation, sick and pension pay, all liability for warranty claims, product liability claims only with respect to products sold on or after the closing date, all liabilities for cooperative advertising, and all liabilities for contributions to the employee benefit plan. Asset Purchase Agreement P1.4 (a-g). Even if these provisions may be read as an assumption of all WMH liabilities necessary for the uninterrupted continuation of Devlieg-Bullard's business, since factor one is dispositive, proof of this factor alone is insufficient to establish defendant's liability.

Factor four requires continuity of management, personnel, physical location, assets and general business operation. As discussed below in the context of the "continuity of the enterprise expansion," plaintiff has offered no evidence [*13] on any of these points except evidence, discussed further below, that a single employee who worked for Devlieg-Bullard, was subsequently hired by Powermatic Corporation. n5

> n5 In its argument against de facto merger, defendant cites *Mitchell v. Powermatic Corp.*, a Pennsylvania district court case concerning WMH liability arising from use of concerning a Powermatic tool. Defendant notes that the Pennsylvania court held that WMH has not defacto merged with Devlieg-Bullard. *Mitchell v. Powermatic Corp. 2004 U.S. Dist. LEXIS 2450, 2004 WL 292479 (E.D.P.A. 2004)*. Although Pennsylvania recognizes the same basic four exceptions to the no successor liability rule as New York, none of those four exceptions were raised by the parties nor discussed by the court in that case. Rather, the only issue before the court was whether or not the "product line" exception discussed below applied. The Pennsylvania court held that it did not. Since New York does not recognize this exception, the Pennsylvania Court's decision is irrelevant.

The fourth exception [*14] is met when the transaction is entered into fraudulently to escape obligations. There are no allegations or evidence presented by the plaintiff of such fraud, nor is there evidence in the record to support such claims. Thus, the fourth exception does not apply.

Successor Liability Does Not Apply to the Plaintiff Under an Expansion of the Successor Liability Doctrine

Plaintiff argues that even where none of the four exceptions above are met, there may be succesor liability 'where the successor corporation continues to produce the predecessor's product in the same plant." *Schumacher, 59 N.Y. 2d at 245*. The *Schumacher* court considered two possible expansions of the successor corporation doctrine: a "continuity of the enterprise" of the seller expansion and "where the corporation continues to produce the predecessor's product in the same plant" expansion. *Id.* However, in *Schumacher* the Court of Appeals declined to adopt either rule and instead held that even assuming such expansions existed under New York law, their application would not be warranted on the facts of that case.

The first expansion, continuity of the enterprise, as defined by the Michigan [*15] Supreme Court in *Turner v. Bituminous Casualty Co., 397 Mich. 406, 244 N.W.2d 873 (Mich. 1976)*, applies when there are "factors manifesting continuity of corporate responsibility, such as continuity of management, key personnel and physical location." *Schumacher, 59 N.Y. 2d at 246*. As his sole evidence supporting this claim plaintiff points to Powermatic's employment of Patrick Curry who was employed as a design engineer by the Powermatic division of Devlieg-Bullard from 1996 to March 1999, and was hired by the newly formed Powermatic corporation as operations manager in October 1999. Evidence of one engineer's continued employment standing alone does not qualify as a continuity of corporate responsibility. In any case, Curry left Devlieg-Bullard before the Asset Sale to go work at the unaffiliated corporation Hart & Cooley, and was only subsequently hired by the Powermatic Corporation after the Asset Sale. Curry's position has thus not been continuous and cannot establish this exception even if recognized in New York.

The second expansion, the same product line in the same plant expansion, was defined by the California Supreme Court in *Ray v. Alad Corp., 19 Cal. 3d 22, 136 Cal. Rptr. 574, 560 P.2d 3 (Cal. 1977)*. [*16] According to the Court in *Schumacher,* relevant factors required to establish this expansion include use of essentially the same factory, name, office personnel, and product production. There is no evidence in this case that these factors can be established, thus the plaintiff cannot claim recovery under this theory.

Defendants Did Not Have a Duty to Warn

Separate from successor liability, an acquiring corporation may have a duty to warn. Such a duty arises because of, "the relationship between the acquiring corporation and the purchaser of the machinery . . . and because of the knowledge which the acquiring corporation possesses or has reason to possess concerning the risk of personal injury created by operation of the machine." *Schumacher, 59 N.Y. 2d at 243*. Factors to be considered include, "succession to a predecessor's service contracts,

Case 7:04-cv-08223-KMK    Document 172-4    Filed 08/11/2006    Page 6 of 18

Page 5
2005 U.S. Dist. LEXIS 41755, *

coverage of the particular machine under a service contract, service of that machine by the purchaser corporation, a purchaser corporation's knowledge of defects and of the location or owner of that machine." *Id. at 246*, (quoting *Travis v. Harris Corp., 565 F.2d 443, 448 (7th Cir. 1977)*). [*17] In this case, there is no evidence that WMH had any relationship with the plaintiff or his employer. There has been no showing that WMH succeeded to any of DeVlieg-Bullard's service contracts, that WMH entered into any service contracts with plaintiff's employer United Custom Made Furniture, nor that WMH knew or had reason to know of any defects in the machine. Thus, WMH cannot be held liable for a failure to warn.

In his response to defendant's motion for summary judgment plaintiff repeatedly alleges that facts still to be discovered may present genuine issues of material fact which would preclude summary judgment and that he has not had "the opportunity to conduct discovery in this matter." Plaintiff's Opp. at P4.

As the docket in this case shows, plaintiff has had ample opportunity for discovery. On September 30, 2004 Magistrate Judge Matsumoto ordered: "(1) The parties will exchange their mandatory disclosures pursuant to *Federal Rule of Civil Procedure 26(a)* on or before 10/14/04. (2) The parties will serve interrogatories and document requests by 11/16/04. (3) Factual discovery must be completed by 3/31/05." The plaintiff thus had six [*18] weeks to serve interrogatories and documents requests.

But even if the plaintiff were to argue that Magistrate Judge Matsumoto's discovery time frame did not allow for adequate discovery then the proper procedure is not to oppose the summary judgment motion with a claim that other facts might be discoverable, but rather to submit an affidavit pursuant to *Fed. R. Civ. P. 56(f)*. "A reference to *Rule 56(f)* and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a *rule 56(f)* affidavit." *Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d. Cir. 1994)*. Indeed, "the failure to file an affidavit under *Rule 56(f)* is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate. *Id.*

If the plaintiff had submitted the appropriate affidavit he would have had to meet the Second Circuit's four part test for the sufficiency of an affidavit under *Rule 56(f)*. This test requires that the affidavit include "the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue [*19] of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." *Id. at 1138*. Plaintiff does to some extent indicate the nature of the uncompleted discovery and how the facts sought might create a genuine issue of material fact, in that he outlines some of the depositions he would like to conduct to determine the details of the jet/powermatic merger, (Plaintiff Opp. P7) and the continuity of management, key personal and physical location necessary to show successor liability (Plaintiff Opp. P13). However, the plaintiff has made no showing that he made any effort to date to obtain these facts nor demonstrated why any efforts he has made were unsuccessful.

**CONCLUSION**

For the reasons set forth above, the defendant's motion for summary judgment is granted.

The clerk is directed to furnish a filed copy of the within to the parties and the Magistrate Judge and to enter a judgment dismissing the complaint.

SO ORDERED.

Dated: Brooklyn, New York

August 18, 2005

By: /s/ Charles P. Sifton (electronically signed)

United States District Judge

# TAB 6

LEXSEE 2005 U.S. DIST. LEXIS 24895

XIANGYUAN ZHU, Plaintiff, - against - FIRST ATLANTIC BANK, IMPACT INTERNATIONAL TRUST and CITIBANK, N.A., Defendants.

05 Civ. 96 (NRB)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2005 U.S. Dist. LEXIS 24895

October 21, 2005, Decided
October 25, 2005, Filed

**DISPOSITION:** [*1] Plaintiff's complaint dismissed in its entirety.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, acting pro se, sued defendants, national and international banks, alleging violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), *18 U.S.C.S. § 1961* et seq. violation of banking laws; conspiracy to defraud; constructive trust; conversion; misrepresentation and concealment; interference with property rights, and negligent misrepresentation. The banks moved to dismiss. Plaintiff moved for a default judgment.

**OVERVIEW:** Plaintiff was the victim of a Nigerian advance fee scam and wired $ 10,000 to a Nigerian bank. The court found that the RICO claims failed because plaintiff offered no evidence that the banks had any knowledge of fraudulent activity until the receipt of plaintiff's stop transfer order. There was simply insufficient evidence to demonstrate an organized group with a chain of command directing the enterprise's actions on a continuing basis beyond the alleged fraudulent scheme as required by *18 U.S.C.S. § 1962*. Because there was no diversity or federal question jurisdiction, the court declined to exercise supplemental jurisdiction over the state law claims. Plaintiff failed to properly serve the Nigerian banks because Nigeria did not accept service by mail and service by methods that violated foreign law was not allowed under *Fed. R. Civ. P. 4(f)(2)*. The fact that plaintiff failed to properly serve the Nigerian banks rendered her request for default judgment inappropriate. Venue was improper under *28 U.S.C.S. § 1391(a)* because plaintiff's bank was located in Kansas and the New York bank had no substantial connection to the events.

**OUTCOME:** Plaintiff's complaint was dismissed for lack of subject matter jurisdiction. Plaintiff's motion for a default judgment was denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN1] In considering a motion to dismiss for lack of subject matter jurisdiction or for failure to state a claim, the court must accept as true all material factual allegations in the complaint. In addition, the complaint of a pro se litigant should be liberally construed in his favor. However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. A motion to dismiss may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage*
[HN2] The Racketeer Influenced and Corrupt Organizations Act (RICO), *18 U.S.C.S. § 1961* et seq., makes it unlawful for a person either to: (a) invest the proceeds derived from a "pattern of racketeering activity" in an enterprise; (b) maintain an interest in or control an enterprise through a pattern of racketeering activity; (c) to conduct an enterprise's affairs through a pattern of racketeering activity; or (d) to conspire to violate (a), (b), or (c). *18 U.S.C.S. § 1962(a)*-(d). In order to demonstrate a pattern of racketeering activity, a plaintiff must offer proof that the defendants engaged in more than one of

Case 7:04-cv-08223-KMK   Document 172-4   Filed 08/11/2006   Page 9 of 18

Page 2
2005 U.S. Dist. LEXIS 24895, *

the predicate acts specified in *18 U.S.C.S. § 1961(a)*. Section 1961(5) states that a "pattern of racketeering activity" requires at least two acts of racketeering activity, the last of which occurred within 10 years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage*
[HN3] To make out a violation of *18 U.S.C.S. § 1962(c)*, a plaintiff must allege that a defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise, the activities of which affected interstate or foreign commerce. *18 U.S.C.S. § 1962(c)*. A plaintiff's failure to adequately plead facts that would satisfy the pleading requirements of *18 U.S.C.S. § 1962(a)*,(b) or (c) necessarily dooms any claim she might assert under § 1962(d).

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage*
[HN4] In order to qualify as a predicate act under the Racketeer Influenced and Corrupt Organizations Act, *18 U.S.C.S. § 1961* et seq., an act must be specifically listed in *18 U.S.C.S. § 1961(1)*.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Claims > Fraud*
[HN5] With regard to the Racketeer Influenced and Corrupt Organizations Act, *18 U.S.C.S. § 1961* et seq., a complaint alleging mail or wire fraud must show (1) the existence of a scheme to defraud, (2) the defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Claims > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Miscellaneous Offenses > Money Laundering > General Overview*
[HN6] With regard to the Racketeer Influenced and Corrupt Organizations Act, *18 U.S.C.S. § 1961* et seq., the four elements of money laundering claim are: (1) that the defendant conducted a financial transaction; (2) that the transaction in fact involved the proceeds of specified unlawful activity; (3) that the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and (4) that the defendant knew that the financial transaction was designed in whole or in part to conceal or disguise the source, ownership, control, etc., of those proceeds.

*Torts > Business Torts > Fraud & Misrepresentation > General Overview*
[HN7] In order to create an inference of fraud, a plaintiff needs to present facts establishing motive and opportunity to commit fraud or strong circumstantial evidence of conscious misbehavior or recklessness.

*Torts > Business Torts > Fraud & Misrepresentation > General Overview*
[HN8] In order to sufficiently plead a fraudulent motive, a plaintiff's allegations must include concrete benefits that could be attained through the alleged misstatements or omissions. The allegations must entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged. Where a plaintiff's theory of motive defies economic reason, it does not yield a reasonable inference of fraudulent intent.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Claims > Fraud*
*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
[HN9] The Federal Rules of Civil Procedure require that the circumstances constituting fraud shall be stated with particularity. *Fed. R. Civ. P. 9(b)*. In order to state a civil Racketeer Influenced and Corrupt Organizations Act, *18 U.S.C.S. § 1961* et seq., claim grounded in fraud, a plaintiff must meet this heightened pleading standard.

*Banking Law > Bank Activities*
*Banking Law > International Banking*
[HN10] With regard to international wire transfers, international banking rules provide that once funds are credited to a beneficiary's account, a receiving bank must receive permission from the beneficiary in order to return any funds.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Claims > General Overview*
*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage*
*Criminal Law & Procedure > Criminal Offenses > Racketeering > Extortion > General Overview*
[HN11] Establishing a Racketeer Influenced and Corrupt Organizations Act, *18 U.S.C.S. § 1961* et seq., violation

Case 7:04-cv-08223-KMK   Document 172-4   Filed 08/11/2006   Page 10 of 18

Page 3
2005 U.S. Dist. LEXIS 24895, *

requires proof of a pattern of racketeering activity, rather than a single act. Importantly, a completed act of extortion along with the intermediate steps toward completion of that act constitute one predicate act, not multiple distinct attempts. Multiple acts in furtherance of a single extortion episode constitute only a single predicate act of attempted extortion, not a pattern of two or more predicate acts.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage*
[HN12] In order to sufficiently allege the existence of a Racketeer Influenced and Corrupt Organizations Act, *18 U.S.C.S. § 1961* et seq., enterprise, a plaintiff must: first, present evidence of an ongoing organization, formal or informal; second, present evidence that the various associates function as a continuing unit, and third, demonstrate that the alleged enterprise is an entity separate and apart from the pattern of activity in which it engages.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Claims > General Overview*
*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Coverage*
[HN13] The United States Supreme Court has restricted liability under *18 U.S.C.S. § 1962(c)* to those who have participated in the operation or management of the enterprise itself. The "operation and management" test set forth by the Supreme Court is a very difficult test to satisfy. The fact that a bank provided banking services is not enough to state a claim under § 1962(c).

*Banking Law > Criminal Offenses*
[HN14] *12 U.S.C.S. § 1829* provides for criminal penalties when individuals convicted of certain crimes involving dishonesty or breach of trust subsequently obtain employment with financial institutions.

*Banking Law > Criminal Offenses*
[HN15] There is no private right of action under *12 U.S.C.S. § 1829*.

*Banking Law > Criminal Offenses*
[HN16] *12 U.S.C.S. § 1829b(a)*.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction*
[HN17] While a district court may exercise supplemental jurisdiction over state law claims, *28 U.S.C.S. § 1367(c)* provides that a court may decline to exercise supplemental jurisdiction if the district court has dismissed all claims over which it has original jurisdiction.

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Amount in Controversy*
[HN18] In order to dismiss for failure to meet the amount in controversy requirement, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify a dismissal.

*Civil Procedure > Pleading & Practice > Service of Process*
[HN19] *Fed. R. Civ. P. 4* governs service of process.

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Foreign Service*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
[HN20] *Fed. R. Civ. P. 4(f)(2)(C)* permits service by any form of mail requiring a receipt, to be addressed and dispatched by the clerk of the court to the party to be served. However, such service by mail is allowed only if it is not prohibited by the law of the foreign country.

*International Law > Dispute Resolution*
[HN21] *Fed. R. Civ. P. 44.1* provides that the court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Foreign Service*
[HN22] Service by methods that violate foreign law is not allowed under *Fed. R. Civ. P. 4(f)(2)*.

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Foreign Service*
*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations*
[HN23] A complaint must be served within 120-days of filing or face dismissal. *Fed. R. Civ. P. 4(m)*. This 120-day period to effect service does not apply to service of process outside of the United States.

Case 7:04-cv-08223-KMK   Document 172-4   Filed 08/11/2006   Page 11 of 18

Page 4
2005 U.S. Dist. LEXIS 24895, *

*Civil Procedure > Pretrial Judgments > Default > Default Judgments*
[HN24] *Fed. R. Civ. P. 55* states that when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

*Civil Procedure > Venue*
[HN25] *28 U.S.C.S. § 1391* requires that one of three conditions be met for venue to be proper: (1) that a defendant reside in the judicial district; (2) that a "substantial part" of the events giving rise to the claim occur in the judicial district; or (3) that a defendant either be subject to personal jurisdiction in the judicial district or can be "found" there. *28 U.S.C.S. § 1391(a) and (b)*.

*Civil Procedure > Jurisdiction > Diversity Jurisdiction*
*Civil Procedure > Venue*
[HN26] See *28 U.S.C.S. § 1391(a)*.

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations*
[HN27] Because the mere assertion of a Racketeer Influenced and Corrupt Organizations Act (RICO), *18 U.S.C.S. § 1961* et seq., claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.

**COUNSEL:** Xiangyuan Zhu, Plaintiff, Pro se, Topeka, KS.

For First Atlantic Bank: Sam O. Maduegbuna, Esq., Maduegbuna & Cooper LLP, New York, NY.

For Citibank, N.A.: Susan J. Steinthal, Esq., Senior Vice President, Associate General Counsel, Global Corporate & Investment Bank, Citigroup Global Markets Inc., New York, NY.

**JUDGES:** NAOMI REICE BUCHWALD, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** NAOMI REICE BUCHWALD

**OPINION:**

### MEMORANDUM AND ORDER

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Pro se plaintiff Xiangyuan Zhu ("Zhu" or "plaintiff") brings this action against defendants First Atlantic Bank ("FAB"), a Nigerian bank, Impact International Trust ("IIT"), an organization allegedly created to engage in money laundering, and Citibank, N.A. ("Citibank") (collectively "defendants") alleging that they participated in a scheme to defraud her. Defendants FAB and Citibank have made separate motions to dismiss plaintiff's complaint. Plaintiff also moves for a default judgment against IIT. For the reasons discussed below, defendants' motions to dismiss are granted and plaintiff's motion for default judgment is denied. Furthermore, [*2] because this Court lacks subject matter jurisdiction over plaintiff's claims, the complaint is dismissed in its entirety.

### BACKGROUND n1

n1 Except where noted, the following background is drawn from plaintiff's supplemental affidavit dated August 30, 2005, and is not in dispute.

According to the complaint, plaintiff was the victim of what is commonly known as a 419 advance fee scam. n2 Plaintiff was contacted both by phone and email by a Mr. Williams Olufemi ("Olufemi"), who claimed to be a Nigerian lawyer, stating that plaintiff's deceased relatives had left plaintiff large sums of money in a Nigerian bank account. n3 In order for plaintiff to actually obtain the inheritance, Olufemi informed plaintiff that he needed an advance fee of $ 10,000 to pay the statutory tax due. These entreaties were a ruse; Olufemi's identity is fictitious and plaintiff was not in fact entitled to any inheritance.

n2 The numbers "419" refer to the section of the Nigerian penal code addressing such fraudulent schemes. For a general description of these scams, see http://www.secretservice.gov/alert419.shtml.
[*3]

n3 Without stating any basis for her belief plaintiff alleges that her contact with Olufemi is connected to a June 19, 2003 robbery at the Los Angeles Airport, during which plaintiff lost her personal information.

However, on November 12, 2003, per Olufemi's instructions, plaintiff wired $ 10,000 from her account at the Lawrence, Kansas branch of Commercial Federal

Case 7:04-cv-08223-KMK    Document 172-4    Filed 08/11/2006    Page 12 of 18

Page 5
2005 U.S. Dist. LEXIS 24895, *

Bank ("CFB") for which she paid a $ 15 wire transfer fee. Plaintiff's wire named Citibank as the beneficiary financial institution, and FAB as the beneficiary account name. On November 18, 2003, Olufemi contacted plaintiff to inform her that he had not received the wire transfer because plaintiff had not named IIT as the final beneficiary of the transfer. On November 21, 2003, plaintiff went to her bank in Kansas, and had CFB add IIT as a beneficiary of the wire transfer.

On November 24, 2003, the next business day, CFB contacted plaintiff and advised her that the above wire transfer might be part of a 419 advance fee scam. CFB requested her permission to recall the wire transfer, which she granted. That same day, CFB sent Citibank [*4] a message requesting that Citibank "return funds as soon as possible, Fraudulent wire Nigerian Scam." See Plaintiff's Affidavit. On November 27, 2003, Olufemi contacted plaintiff stating that he had confirmed the transfer of funds to the account of IIT at FAB in Nigeria, but that Olufemi could not withdraw the money due to the plaintiff's recall instruction. That day, plaintiff sent an email to FAB requesting that FAB stop the wire transfer due to its fraudulent nature.

On November 28, 2003, the day after Thanksgiving, Citibank responded to the recall request, stating that it had contacted FAB for debit authorization. On January 12, 2004, CFB again requested the return of the funds, and on January 14, 2004, Citibank again responded that it had contacted the beneficiary bank for debit authority. On January 15, 2004, Citibank contacted CFB stating that the beneficiary bank, FAB, had informed Citibank that the funds had been credited to IIT, as instructed by the wire transfer. On January 16, 2004, CFB made its final request for the return of the funds. Finally, on February 5, 2005, plaintiff sent Citibank a letter demanding its assistance in retrieving the $ 10,000. On February 9, 2004, Olufemi [*5] contacted plaintiff stating that the funds were still in IIT's account at FAB in Nigeria.

In addition to the $ 10,000 wire transfer, Olufemi attempted to defraud plaintiff by convincing her to deposit counterfeit checks. On December 20, 2003, plaintiff received a check for $ 38,950.63, and on January 4, 2004, plaintiff received another check for $ 85,000. Olufemi instructed plaintiff to deposit these checks into her checking account at CFB, and then immediately withdraw identical amounts from her account and wire those amounts to IIT. There are no allegations that plaintiff ever did this, or that plaintiff suffered any monetary loss from the receipt of these counterfeit checks.

Plaintiff filed her initial complaint on January 6, 2005, and an amended complaint on February 24, 2005. Plaintiff's amended complaint alleges eight claims for relief: a civil RICO claim; a violation of banking laws; conspiracy to defraud; constructive trust; conversion; misrepresentation and concealment; interference with property rights, and negligent misrepresentation. n4

n4 Plaintiff requested leave to amend her complaint again on August 6, 2005. The Court denied this motion on August 23, 2005, as the parties had already filed extensive briefs related to the motions to dismiss made by Citibank and FAB, but the Court permitted plaintiff to submit an affidavit presenting any additional facts or arguments she wanted us to consider. Plaintiff did file such an affidavit, which has been considered as part of the record in the instant motions.

[*6]
DISCUSSION

I. Standard of Review

[HN1] In considering a motion to dismiss for lack of subject matter jurisdiction or for failure to state a claim, the Court must accept as true all material factual allegations in the complaint. *Levy ex rel. Immunogen Inc. v. Southbrook Int'l Invs., Ltd.,* 263 F.3d 10, 14 (2d Cir. 2001); *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir. 1998) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974)). In addition, "the complaint of a pro se litigant should be liberally construed in his favor." *Salahuddin v. Cuomo,* 861 F.2d 40, 42-43 (2d Cir. 1988) (citation omitted). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir. 2002) (quoting *Gebhardt v. Allspect, Inc.,* 96 F.Supp.2d 331, 333 (S.D.N.Y. 2000)). A motion to dismiss may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Still v. DeBuono,* 101 F.3d 888, 891 (2d Cir. 1996) [*7] (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)).

II. Analysis

A. Subject Matter Jurisdiction

Of the numerous claims advanced by plaintiff, only two assert federal claims, namely, her civil RICO claim and her claim alleging the unlawful participation of a felon in a federally insured banking institution. n5 The moving defendants argue that plaintiff has failed to adequately plead these federal claims. For the reasons stated below, we agree, and moreover, since we find no other

Case 7:04-cv-08223-KMK    Document 172-4    Filed 08/11/2006    Page 13 of 18

Page 6
2005 U.S. Dist. LEXIS 24895, *

basis for subject matter jurisdiction, we dismiss the complaint in its entirety.

n5 Plaintiff references several other federal statutes, none of which provides a basis for federal jurisdiction. First, plaintiff suggests a violation of the Currency and Foreign Transactions Reporting Act, but she provides no evidence whatsoever to substantiate a claim that either bank failed to comply with any reporting requirements, and fails to proffer the provision of that Act Citibank and FAB may have violated. Second, plaintiff suggests a violation of *18 U.S.C. § 1951*, entitled "Interference with commerce by threats of violence." The only reference to violence in her complaint (besides the reference to "the organized crime" assaulting her in Los Angeles International Airport, see Amended Compl., 11) is the statement that "the organized crime assaulted Zhu at her dwelling home in the United States with mail fraud. . . ." Amended Compl., 34. We fail to see how the sending of a piece of mail constitutes an "assault." Even more puzzling is plaintiff's reference to *18 U.S.C. § 1503*, which prohibits improperly influencing jurors and officers of United States courts. Because no jury has been impaneled in this case, we can only conclude that plaintiff means to suggest that this Court is somehow being improperly influenced by the defendants. This suggestion is baseless and does not warrant further discussion.

[*8]

### 1. Plaintiff's Civil RICO Claim

Plaintiff accuses the defendants of violating RICO by participating in a scheme with Olufemi and IIT to defraud her of $ 10,000. [HN2] The RICO statute makes it unlawful for a person either to: (a) invest the proceeds derived from a "pattern of racketeering activity" in an enterprise; (b) maintain an interest in or control an enterprise through a pattern of racketeering activity; (c) to conduct an enterprise's affairs through a pattern of racketeering activity; or (d) to conspire to violate (a), (b), or (c). *18 U.S.C. §§ 1962(a)-(d)*. In order to demonstrate a pattern of racketeering activity, a plaintiff must offer proof that the defendants engaged in more than one of the predicate acts specified in *18 U.S.C. § 1962(a)*. See *18 U.S.C. § 1961(5)* ("a 'pattern of racketeering activity' requires at least two acts of racketeering activity. . . the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity").

Plaintiff specifically alleges that the bank defendants violated *§§ 1962(c)* and *(d)*. [HN3] To make [*9] out a violation of *section 1962(c)*, plaintiff must allege that "a defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise, the activities of which affected interstate or foreign commerce." *18 U.S.C. § 1962(c)*. Because we find that plaintiff does not sufficiently allege a violation of *§ 1962(c)*, we need not consider *§ 1962(d)*, which prohibits conspiring to violate *§§ 1962(a)-(c)*, as a complaint must adequately state a claim under *§§ 1962(a), (b),* or *(c)* in order for the Court to find a violation of *§ 1962(d)*. See *Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 658 (S.D.N.Y. 1996)* ("[plaintiff]'s failure to adequately plead facts that would satisfy the pleading requirements of *§§ 1962(a), 1962(b)* or *(c)* necessarily dooms any claim she might assert under *§ 1962(d)*"). Our RICO analysis below is thus limited to a discussion of plaintiff's claim under *§ 1962(c)*.

#### a. RICO Predicate Acts

[HN4] In order to qualify as a predicate act under RICO, an act must be specifically listed in *18 U.S.C. § 1961(1)*. Here, plaintiff's [*10] complaint suggests that the bank defendants engaged in a variety of offenses enumerated in *§ 1961(1)*, including mail fraud, wire fraud, and money laundering. However, plaintiff fails to adequately plead the existence of a predicate act for two reasons: first, she has failed to plead intent, and second, she has failed to plead with particularity.

First, plaintiff insufficiently alleges the scienter element of fraud and money laundering. See *S.O.K.F.C. Inc. v. Bell Atlantic TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir. 1996)* ([HN5] "A complaint alleging mail or wire fraud must show (1) the existence of a scheme to defraud, (2) the defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme.") (citations omitted) (emphasis added); and see *United States v. Maher, 108 F.3d 1513, 1528-29 (2d Cir. 1997)* (laying out [HN6] four elements of money laundering claim: "(1) that the defendant conducted a financial transaction; (2) that the transaction in fact involved the proceeds of specified unlawful activity. . .; (3) that the defendant knew that the property involved in the financial [*11] transaction represented the proceeds of some form of unlawful activity; and (4) that the defendant knew that the financial transaction was designed in whole or in part to conceal or disguise the source, ownership, control, etc., of those proceeds."). Each of these offenses requires intent on the part of the defendants, and plaintiff has brought forth no evidence to suggest that the banks intended to conspire with IIT and Olufemi to defraud her.[HN7] In order to create an inference of fraud,

Case 7:04-cv-08223-KMK   Document 172-4   Filed 08/11/2006   Page 14 of 18

Page 7
2005 U.S. Dist. LEXIS 24895, *

she would need to present facts establishing "motive and opportunity to commit fraud" or "strong circumstantial evidence of conscious misbehavior or recklessness." *Chill v. General Elec. Co., 101 F.3d 263, 267 (2d Cir. 1996)*.

Here, plaintiff offers no evidence that the banks had any knowledge of fraudulent activity until the receipt of plaintiff's stop transfer order, which she sent after the transfer had already taken place. In fact, plaintiff has presented this Court with documentation demonstrating that Citibank and FAB both immediately responded to her request to rescind the transfer by attempting to recall the funds, belying her suggestion that they were trying to facilitate a [*12] fraud. Moreover, plaintiff has offered no plausible financial motive for the banks to facilitate the alleged fraud besides the $ 15 wire transfer fee. [HN8] In order to sufficiently plead a fraudulent motive, plaintiff's allegations must include concrete benefits that could be attained through the alleged misstatements or omissions. See *Kalnit v. Eichler, 264 F.3d 131, 139 (2d Cir. 2001)* (stating that allegations must "entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged."). Where a plaintiff's theory of motive "defies economic reason, . . . it does not yield a reasonable inference of fraudulent intent." *Kalnit, 264 F.3d at 140-41*; see also *Faulkner v. Verizon Communications, Inc., 189 F.Supp.2d 161, 171 (S.D.N.Y. 2002)* (no reasonable inference of fraudulent intent where purported motive is "belied by logic"). Suggesting that the banks were induced to commit fraud by the prospect of a nominal fee is wholly illogical. Plaintiff thus fails to allege facts giving rise to an inference of fraud.

Second, [HN9] the Federal Rules of Civil Procedure require that "the circumstances constituting [*13] fraud. . . shall be stated with particularity." *Fed.R.Civ.P. 9(b)*. In order to state a civil RICO claim grounded in fraud, plaintiff must meet this heightened pleading standard. See, e.g., *Lesavoy v. Lane, 304 F.Supp.2d 520, 533-34 (S.D.N.Y. 2004)*. Plaintiff's conclusory and entirely unsubstantiated allegations of a conspiracy among the defendants fall far short of this requirement. n6 Plaintiff thus fails to adequately plead the existence of a predicate act.

---

n6 For instance, she states in her complaint that "Defendants FAB and Citibank NYC, knew the ongoing Fraudulent wire Nigerian Scam then, falsely and fraudulently represented to CFB via wire that CFB's 3rd Stop Payment Order sent to them under the applicable provisions of RICO . . . was denied under the pretext that 'Beneficial Bank [FAB] states funds credits to IIT as advised . . . .'" Amend. Compl. at 40. However, she provides absolutely no evidence suggesting that either FAB or Citibank knew of the scam, that they made any false or fraudulent representations to CFB, or even what those representations were. This Court has previously found that, [HN10] with regard to international wire transfers, international banking rules provide that "once funds are credited to a beneficiary's account, a receiving bank must receive permission from the beneficiary in order to return any funds." *Human Rights in China v. Bank of China, 2005 U.S. Dist. LEXIS 10326, 02 Civ. 4361 (NRB), 2005 WL 1278542 at *4 (S.D.N.Y. 2005)*. Thus, FAB and Citibank lacked authority to return plaintiff's funds once they were deposited in IIT's account. In the absence of evidence suggesting that the banks could have reversed the transaction upon receipt of plaintiff's stop transfer order, plaintiff may not hold the banks liable for complying with her transfer request.

[*14]

### b. Multiple Act Requirement

Even if plaintiff had sufficiently alleged a predicate RICO act, her claim would still fail because she has failed to allege more than one unlawful act. As stated above,[HN11] establishing a RICO violation requires proof of a pattern of racketeering activity, rather than a single act. Importantly, "a completed act of extortion along with the intermediate steps toward completion of that act constitute one predicate act, not multiple distinct attempts." *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc., 354 F.Supp.2d 293, 303 (S.D.N.Y. 2004)*. Here, the plaintiff simply does not allege that the banks engaged in more than one act of fraud. That there were numerous communications between plaintiff and Olufemi has no bearing on the fact that plaintiff was allegedly defrauded only once, as "multiple acts in furtherance of a single extortion episode constitute only a single predicate act of attempted extortion, not a pattern of two or more predicate acts." *Linens of Europe, Inc. v. Best Mfg., Inc., 2004 U.S. Dist. LEXIS 18575, 03 Civ. 9612 (GEL), 2004 WL 2071689 at *16 (S.D.N.Y. Sept. 16, 2004)*. Even if it is true, as plaintiff alleges, that Olufemi [*15] tried to extort her further after his first successful attempt, plaintiff makes no allegation that the banks were ever involved in any further attempted acts of extortion. All FAB and Citibank are alleged to have done is comply with a single wire transfer order placed by the plaintiff, resulting in the depositing of plaintiff's $ 10,000 into the account she specified. All further communications between the banks and the plaintiff endeavored simply to

assist her in rescinding the transaction. Plaintiff thus fails to plead that the defendants engaged in multiple acts.

### c. Existence of a RICO "Enterprise"

In her amended complaint, plaintiff asserts that IIT is an enterprise within the meaning of the RICO statute, see Amended Compl., 61, but she only generally avers that the banks were "the owner[s] of, or [were] associated with an enterprise, that is, IIT." Amended Compl., 61. [HN12] In order to sufficiently allege the existence of a RICO enterprise, a plaintiff must: first, present evidence "of an ongoing organization, formal or informal"; second, present evidence "that the various associates function as a continuing unit", and third, demonstrate that the alleged enterprise "is [*16] an entity separate and apart from the pattern of activity in which it engages." *United States v. Turkette, 452 U.S. 576, 583, 69 L. Ed. 2d 246, 101 S. Ct. 2524 (2001)*.

Plaintiff's general allegation falls far short of sufficiently pleading these elements. There is simply "insufficient evidence to demonstrate an organized group with a chain of command directing the enterprise's actions on a continuing basis beyond the alleged fraudulent scheme" as required by *18 U.S.C. § 1862*. Casio, 2000 WL 1877516 at *20. Even though the complaint "describes the roles allegedly played by various defendants, or members of the enterprise, it fails to explain the members' coordinated roles in the enterprise or the interrelationship of the members' actions." Id. Plaintiff does not make clear how she believes these three elements have been met when her own submissions to this Court make abundantly clear that this was a one-time-only transaction in which the banks performed a basically clerical function. There are no organizational elements binding the banks and IIT, and no evidence that together they form any sort of "continuing unit." The only "pattern of activity" plaintiff [*17] can possibly allege is that of banks complying with their customers' requests to make wire transfers. There exists no "entity separate and apart" from the allegedly unlawful transfers themselves. The plaintiff thus inadequately alleges the existence of an enterprise.

### d. "Operation or Management" Requirement

[HN13] The Supreme Court has restricted liability under *§ 1962(c)* to those who have "participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young, 507 U.S. 170, 183, 122 L. Ed. 2d 525, 113 S. Ct. 1163 (1993)*. In order to sustain a claim under *§ 1962(c)* against the bank defendants, plaintiff would have had to allege that they engaged in criminal activity by means of their "operation and management" of the alleged enterprise. Even if an enterprise existed, this allegation would be entirely without merit. The "'operation and management' [sic] test set forth by the Supreme Court in Reves is a very difficult test to satisfy." *LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co., 951 F. Supp. 1071, 1090 (S.D.N.Y. 1996)*. The fact that a bank "provided banking services... is not enough to state a claim under *§ 1962(c)*." *Industrial Bank of Latvia v. Baltic Fin. Corp., 1994 U.S. Dist. LEXIS 8580, 93 Civ. 9032 (LLS), 1994 WL 286162* [*18] *at *3 (S.D.N.Y. June 27, 1994)*. Citibank and FAB do not remotely satisfy this strict test, as each bank merely transferred funds that the plaintiff requested they transfer. The fact that the money eventually benefitted an alleged extortionist has no bearing whatsoever on the banks' limited roles as intermediaries in the transaction. Plaintiff thus also fails to sufficiently allege that the banks were involved in the "operation or management" of the alleged criminal enterprise.

In sum, because the plaintiff altogether fails to allege the required elements of a civil RICO claim, we grant the motions of FAB and Citibank to dismiss the plaintiff's RICO claims.

### 2. Plaintiff's Unauthorized Participation by a Felon Claim

Plaintiff further alleges that the defendants violated [HN14] *12 U.S.C. § 1829*, which provides for criminal penalties when individuals convicted of certain crimes involving dishonesty or breach of trust subsequently obtain employment with financial institutions. This claim can be readily dismissed because plaintiff does not identify any person convicted for any of the crimes enumerated in the statute who is employed by the moving banks. n7

---

n7 Even if plaintiff had alleged that one of the defendants had hired a convicted felon, she would still have no claim, as [HN15] there is no private right of action under *12 U.S.C. § 1829*. The statute's statement of purpose makes clear that it is intended to exclusively serve a law enforcement role:[HN16]

> (1) The Congress finds that adequate records maintained by insured depository institutions have a high degree of usefulness in criminal, tax, and regulatory investigations and proceedings....
>
> ...
>
> (2) It is the purpose of this section to require the maintenance of appropriate types of records and other evidence by insured depositary institutions in the United

Case 7:04-cv-08223-KMK   Document 172-4   Filed 08/11/2006   Page 16 of 18

Page 9
2005 U.S. Dist. LEXIS 24895, *

States where such records have a high degree of usefulness in criminal, tax, or regulatory investigations and proceedings.

*12 U.S.C. § 1829b(a)*. Although no Court in this Circuit has yet considered whether the statute gives rise to a private cause of action, the only Court to explicitly address the issue has determined that it does not. See, *Gress v. PNC Bank, National Assoc., 100 F.Supp.2d 289 (E.D.Pa. 2000)* (*12 U.S.C. § 1829b* "was not 'intended to create, either expressly or by implication, a private cause of action.'") (quoting *Touche Ross & Co. v. Redington, 442 U.S. 560, 575, 61 L. Ed. 2d 82, 99 S. Ct. 2479 (1979)*).

[*19]

### 3. Lack of Subject Matter Jurisdiction

[HN17] While a district court may exercise supplemental jurisdiction over state law claims, *28 U.S.C. § 1367(c)* provides that a court "may decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims over which it has original jurisdiction." Having dismissed the plaintiff's two federal claims, there is no longer a basis pled in the complaint to support federal subject matter jurisdiction. Given that plaintiff is proceeding pro se, we will sua sponte raise the issue of whether plaintiff could rely on diversity jurisdiction to provide this Court with subject matter jurisdiction. However, even assuming diversity of citizenship, there are no facts pled to support more than $ 10,015 in damages, well short of the $ 75,000 required for the exercise of diversity jurisdiction. *28 U.S.C. § 1332*.

We recognize that [HN18] in order to dismiss for failure to meet the amount in controversy requirement, "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify a dismissal." *A.F.A. Tours v. Whitchurch, 937 F.2d 82, 87 (2d Cir. 1991)*. [*20] Here, plaintiff claims damages in the amount of $ 134,758.63. Though we are unclear how plaintiff arrived at that precise figure, plaintiff appears to be seeking treble damages under RICO for the $ 10,015 n8 she actually lost, see *18 U.S.C. 1964(c)*, and adding to that $ 38,950.63 and $ 85,000, the respective amounts of the two checks that Olufemi advised she make out to him. n9

---

n8 This figure includes the $ 15 wire transfer fee.

n9 Adding together the numbers in this way results in the sum of $ 153,995.63. As the discussion makes clear, however, the actual amount in controversy is far less than the jurisdictional requirement, so we need not resolve the differences in calculation.

---

However, the facts pled do not support an underlying claim in excess of $ 10,015, the actual amount that plaintiff asserts she lost. Although Olufemi allegedly sought more money from plaintiff after obtaining the initial $ 10,000, it is undisputed that plaintiff never attempted to send him any more money. [*21] Thus, beyond the initial $ 10,015 she lost, plaintiff suffered no further injury, resulting in a "legal certainty that the claim is really for less than the jurisdictional amount." *A.F.A. Tours, 937 F.2d at 87*.

Accordingly, in the absence of federal question jurisdiction, we decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims. Therefore, the complaint is dismissed in its entirety.

### B. Service of Process and Default Judgment

Even assuming that this Court had subject matter jurisdiction, plaintiff has failed to serve FAB and IIT. [HN19] *Rule 4 of the Federal Rules of Civil Procedure* governs service of process. Plaintiff attempted to serve FAB and IIT pursuant to [HN20] *Rule 4(f)(2)(C)*, which permits service by "any form of mail requiring a receipt, to be addressed and dispatched by the clerk of the court to the party to be served." *Fed. R. Civ. P. 4(f)(2)(C)*. However, such service by mail is allowed only if it is not "prohibited by the law of the foreign country." Id.

Both FAB and IIT are citizens of Nigeria. In its motion, defendant FAB argues that Nigerian [*22] law prohibits service by mail, and therefore plaintiff's service was improper. In support of this position, FAB submits a declaration from Chukwuma Uwechia ("Uwechia"), a member in good standing of the bar of the State of New York, licensed attorney in Nigeria, and the author of two books on Nigerian law and practice. In his declaration, Uwechia swears that Nigerian law prohibits service of legal process through postal channels, and attaches as evidence the relevant rules governing service of process within Nigeria.

[HN21] *Rule 44.1* provides that "the court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." *Fed. R. Civ. P. 44.1*. Upon review of these materials, we are satisfied that Nigerian law does prohibit service of process by mail in this instance. As [HN22] service by methods that violate foreign law is not al-

lowed under *Rule 4(f)(2)*, plaintiff has not properly served on either FAB or IIT. See *Jung v. Neschis, 2003 U.S. Dist. LEXIS 5569, 2003 WL 1807202, No. 01 Civ. 6993, at *2-*3 (S.D.N.Y. Apr. 7, 2003)*. Accordingly, we find that [*23] service was not effectuated as to FAB and IIT. n10

> n10 Plaintiff's amended complaint was filed in February of 2005. Normally, [HN23] a complaint must be served within 120-days of filing or face dismissal. *Fed. R. Civ. P. 4(m)*. This 120-day period to effect service does not apply to service of process outside of the United States, however. *Loral Fairchild Corp. v. Matsushita Elec. Indus. Co., 805 F. Supp. 3, 4-5 (E.D.N.Y. 1992)*. However, our dismissal on venue grounds, see infra, means that she will have to reinitiate this lawsuit in an appropriate forum if she wishes to proceed with her claims against IIT.

The fact that plaintiff has failed to properly serve IIT renders her request for default judgment inappropriate. See [HN24] *Fed.R.Civ.P. 55* ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit [*24] or otherwise, the clerk shall enter the party's default"). n11 Regardless, as discussed below, the propriety of plaintiff's service on IIT is a moot issue, as the Southern District of New York is not a proper venue for this dispute. Accordingly, we dismiss plaintiff's claims against IIT.

> n11 Plaintiff's failure to effect proper service also provides a separate basis for dismissing her claims against FAB.

### D. Venue

Finally, even if there were subject matter jurisdiction and even if IIT had been served, we would nonetheless dismiss the complaint for improper venue. n12 Venue does not lie against IIT either under the venue provisions of *28 U.S.C. § 1391(a)* (diversity jurisdiction) n13 or under *§ 1391(b)* (federal question jurisdiction). n14 These sections [HN25] require that one of three conditions be met for venue to be proper: (1) that a defendant reside in the judicial district; (2) that a "substantial part" of the events giving rise to the claim occur in the judicial district; or (3) that [*25] a defendant either be subject to personal jurisdiction in the judicial district or can be "found" there. See *28 U.S.C. §§ 1391(a) and (b)*. Plaintiff cannot allege that any of these circumstances is present here. First, IIT is alleged to be a Nigerian organization. Second, there is no substantial connection between the events giving rise to this claim and New York. New York's only connection to the dispute is that Citibank is located here, and its only role in this case was to transfer money from the plaintiff's bank in Kansas to IIT's bank in Nigeria. The fact that the disputed funds were theoretically present here momentarily is not enough to constitute a "substantial part" of the events giving rise to the claim. Third, IIT is not subject to personal jurisdiction here under any long-arm approach. Venue is thus wholly inappropriate under *Section 1391(a)*.

> n12 As with the bank defendants, plaintiff's allegations are insufficient to establish a basis for diversity jurisdiction, even if venue were proper, as the plaintiff fails to meet the amount in controversy requirement. See supra, II.3. Moreover, there does not appear to be federal question jurisdiction here, as plaintiff provides the same two bases for jurisdiction over IIT as she does over the bank defendants.

[*26]

> n13 [HN26] *Section 1391(a)* provides that venue is appropriate in a diversity case in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." *28 U.S.C. § 1391(a)*.

> n14 *Section 1392(b)*, which pertains to venue in federal question cases, differs from *§ 1392(a)* in a minor way that is irrelevant here. Its first two provisions are the same as *§ 1391(a)* and its third provision differs only slightly, stating that venue may lie in a "judicial district in which any defendant may be found."

### CONCLUSION

[HN27] Because "the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to [*27] flush out frivolous RICO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y. 1996)* (quota-

Case 7:04-cv-08223-KMK   Document 172-4   Filed 08/11/2006   Page 18 of 18

Page 11
2005 U.S. Dist. LEXIS 24895, *

tion omitted) (citation omitted). For the reasons set out above, plaintiff's RICO claim against the bank defendants cannot withstand a motion to dismiss. We similarly dismiss the plaintiff's unlawful participation by a felon claim against the bank defendants. Because these are the only federal claims plaintiff asserts, and the amount in controversy fails to meet the statutory minimum, this Court lacks federal subject matter jurisdiction over any state law claims asserted. Thus, plaintiff's complaint is dismissed in its entirety.

We also deny plaintiff's claim for default judgment against IIT as plaintiff has failed to make proper service upon both the Nigerian defendants. Regardless of the failure to serve, this Court is not a proper venue to hear plaintiff's claims against IIT, a Nigerian citizen. This dismissal is without prejudice to plaintiff refiling in a forum that has subject matter jurisdiction and venue if she is able to effect service upon IIT.

**SO ORDERED.**

Dated: New York, New York

October 21, 2005 [*28]

NAOMI REICE BUCHWALD

UNITED STATES DISTRICT JUDGE