UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
:
WORLD WRESTLING ENTERTAINMENT, INC.,    :   Case No. 04 CV 8223 (KMK)
:   (ECF CASE)
Plaintiff,    :
:
v.    :
:
JAKKS PACIFIC, INC.; JAKKS PACIFIC (H.K.)    :
LIMITED; ROAD CHAMPS LIMITED; THQ, INC.;    :
THQ/JAKKS PACIFIC LLC; STANLEY SHENKER    :
AND ASSOCIATES, INC.; STANLEY SHENKER;    :
BELL LICENSING, LLC; JAMES BELL; JACK    :
FRIEDMAN; STEPHEN BERMAN; JOEL    :
BENNETT; and BRIAN FARRELL,    :
:
Defendants.    :
:
------------------------------------------------------------------ x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THQ INC. AND BRIAN FARRELL'S MOTION TO DISMISS THE RICO CLAIMS IN THE AMENDED COMPLAINT**

SIDLEY AUSTIN LLP
Steven M. Bierman (SB 6615)
Isaac S. Greaney (IG 0922)
787 Seventh Avenue
New York, New York 10019
Phone: (212) 839-5300
Fax: (212) 839-5599

IRELL & MANELLA LLP
Steven A. Marenberg (*Pro Hac Vice*)
Philip M. Kelly (*Pro Hac Vice*)
1800 Avenue of the Stars
Los Angeles, California 90067
Phone: (310) 277-1010
Fax: (310) 203-7199

*Attorneys for Defendants THQ Inc. and Brian Farrell*

1542951

## TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ..................................................................................1

II. ARGUMENT ................................................................................................................2

    A. WWE Has Not Sufficiently Alleged That the THQ Defendants Participated in the "Operation or Management" of the RICO Enterprise..............2

    B. WWE Fails to Allege a Pattern of Racketeering Activity by the THQ Defendants ........................................................................................................3

        1. A Single Act of Bribery to Obtain a Single License Is Not a Sufficient Pattern ..........................................................................3

        2. WWE Has Failed To Allege Closed-Ended Continuity ...........................5

        3. WWE Cannot Allege Open-Ended Continuity.........................................7

    C. Imposing Vicarious Liability on the THQ Defendants Would Be Improper..............................................................................................................8

III. CONCLUSION............................................................................................................10

TABLE OF AUTHORITIES

Page(s)

**Cases**

Andrews v. Metro North Commuter R.R. Co.,
 882 F.2d 705 (2d Cir. 1989) .......................................................................................... 5

Bingham v. Zolt,
 683 F. Supp. 965 (S.D.N.Y. 1988) ................................................................................ 6

Breslin Realty Dev. Corp. v. Schackner,
 397 F. Supp. 2d 390 (E.D.N.Y. 2005) ........................................................................... 7

Casio Computer Co. v. Sayo,
 2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) ....................................................... 3, 4, 7

Chanler v. Roberts,
 200 A.D.2d 489 (N.Y. Sup. 1994) ................................................................................ 8

Cofacredit, S.A. v. Windsor Plumbing Supply Co.,
 187 F.3d 229 (2d Cir. 1999) .......................................................................................... 7

Dale v. Banque SCS Alliance S.A.,
 2005 WL 2347853 (S.D.N.Y. Sept. 22, 2005) ............................................................... 2

DeJesus v. Sears, Roebuck & Co.,
 87 F.3d 65 (2d Cir. 1996) ............................................................................................ 10

Evercrete Corp. v. H-CAP Ltd.,
 429 F. Supp. 2d 612 (S.D.N.Y. 2006) ........................................................................... 3

First Capital Asset Mgmt., Inc. v. Satinwood,
 385 F.3d 179 (2d Cir. 2004) .......................................................................................... 7

H.J. Inc. v. Nw. Bell Tel. Co.,
 492 U.S. 229 (1989) ...................................................................................................... 5

Hill v. Harris,
 1998 WL 960763 (Del. Super. Ct. Oct. 27, 1998) ........................................................ 8

In re Bushnell,
 271 B.R. 54 (Bankr. D. Vt. 2001) ................................................................................. 1

In re Terrorist Attacks on Sept. 11, 2001,
 392 F. Supp. 2d 539 (S.D.N.Y. 2005) ........................................................................... 3

|  | Page(s) |
|---|---|

In re the Mediators, Inc.,
   190 B.R. 515 (S.D.N.Y. 1995) ..................................................................................... 1

Jerome M. Sobel & Co. v. Fleck,
   2003 WL 22839799 (S.D.N.Y. Dec. 1, 2003) ............................................................. 6

Jones v. Nat'l Comm. & Surveillance Networks,
   2006 WL 73623 (S.D.N.Y. Jan.12, 2006) ................................................................... 9

LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.,
   951 F. Supp. 1071 (S.D.N.Y. 1996) ............................................................................ 2

Linens of Europe, Inc. v. Best Mfg., Inc.,
   2004 WL 2071689 (S.D.N.Y. Sept. 16, 2004) ............................................................ 4

Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.,
   354 F. Supp. 2d 293 (S.D.N.Y. 2004) ......................................................................... 5

Oakland Raiders v. Nat'l Football League,
   131 Cal. App. 4th 621 (2005) ...................................................................................... 9

Ramone v. Lang,
   2006 WL 905347 (Del. Ch. Ct. April 3, 2006) ........................................................... 9

Redtail Leasing, Inc. v. Bellezza,
   1997 WL 603496 (S.D.N.Y. Sept. 30, 1997) .............................................................. 2

Reeves v. Ernst & Young,
   507 U.S. 170 (1993) .................................................................................................... 2

Richardson Greenshields Sec., Inc. v. Lau,
   819 F. Supp. 1246 (S.D.N.Y. 1993) .......................................................................... 10

Roeder v. Alpha Indus., Inc.,
   814 F.2d 22 (1st Cir. 1987) ......................................................................................... 4

Schlaifer Nance & Co. v. Estate of Warhol,
   119 F.3d 91 (2d Cir. 1997) ....................................................................................... 4, 5

Schmidt v. Fleet Bank,
   16 F. Supp. 2d 340 (S.D.N.Y. 1998) .................................................................. 2, 3, 8

Schnell v. Conseco, Inc.,
   43 F. Supp. 2d 438 (S.D.N.Y. 1999) ........................................................................... 7

Stein v. New York Stair Cushion Co.,
   2006 WL 319300 (E.D.N.Y. Feb. 10, 2006) ............................................................... 4

|  | Page(s) |
|---|---|
| Strong & Fisher, Ltd. v. Maxima Leather, Inc., 1993 WL 277205 (S.D.N.Y. July 22, 1993) | 2 |
| Tenney v. Ins. Co. of N. Am., 409 F. Supp. 746 (S.D.N.Y. 1975) | 8 |
| Touch Air Inc. v. Launch 3 Commc'ns, Inc., 801 N.Y.S.2d 243 (N.Y. Sup. 2005) | 8 |
| United States v. Biaggi, 909 F.2d 622 (2d Cir. 1990) | 5 |
| United States v. Persico, 832 F.2d 705 (2d Cir. 1987) | 1, 4, 10 |
| United States v. Reiss, 186 F.3d 149 (2d Cir. 1999) | 6 |
| Warren v. Goldinder Bros., Inc., 414 A.2d 507 (Del. Sup. Ct. 1980) | 9 |
| Wisdom v. First Midwest Bank, 167 F. 3d 402 (8th Cir. 1999) | 7 |

# I. PRELIMINARY STATEMENT[1]

As hard as it tries in its opposition brief, WWE cannot obscure the fundamental fact that its Amended Complaint alleges only that the THQ Defendants were, at best, late-arriving and limited participants in a purported multi-year scheme by others to gain a series of licenses from WWE and to corrupt WWE's licensing agents. Nor can WWE hide the fact that even though it attempts to allege a far-flung scheme involving others, it has accused the THQ Defendants (wrongly) only of a single alleged act of bribery to obtain a single license from a single victim. These indisputable facts, which flow from WWE's purposeful decision to allege the scheme as it has, have consequences that cannot be and are not answered by WWE's opposition. Specifically, they render WWE's RICO claim deficient on at least three separate grounds: (i) the THQ Defendants did not participate in the "operation and management" of any alleged RICO enterprise, (ii) WWE cannot allege that the THQ Defendants engaged in a pattern of racketeering activity, and (iii) the brief involvement of the THQ Defendants does not come close to satisfying the continuity requirement.

Perhaps implicitly recognizing these defects, WWE's brief attempts, using sweeping generalizations and inapposite theories of vicarious liability, to tar all of the defendants with the same brush in the misplaced hope that this Court will not take the time to disaggregate and examine the viability of its RICO claims against each defendant. In so doing, WWE ignores the well-established requirement that the "focus of section 1962(c) is on the individual patterns of racketeering activity engaged in by a defendant, rather than on the collective activities of the members of the enterprise." United States v. Persico, 832 F.2d 705, 714 (2d Cir. 1987). When

---

[1] The THQ Defendants join in the reply briefs of the Jakks Defendants and THQ/Jakks LLC. On the statute of limitations argument, the THQ Defendants add only that WWE cannot rely on the alleged fraudulent concealment by other defendants to toll the statute of limitations as it pertains to the THQ Defendants. See, e.g., In re the Mediators, Inc., 190 B.R. 515, 525 (S.D.N.Y. 1995) ("[A] plaintiff cannot point to the deceptive practices of one defendant and demand equitable tolling as to all."); In re Bushnell, 271 B.R. 54, 59 (Bankr. D. Vt. 2001) ("[I]t is well settled in this Circuit that vicarious liability principles do not apply to claims of fraudulent concealment.").

the required elements of a RICO claim are judged specifically as to the THQ Defendants, it is plain that dismissal is appropriate.

## II. ARGUMENT

### A. WWE Has Not Sufficiently Alleged That the THQ Defendants Participated in the "Operation or Management" of the RICO Enterprise

As noted in the THQ Defendants' opening brief, WWE must, but has failed to, allege adequately that the THQ Defendants participated in the "operation or management" of the alleged RICO enterprise. Reeves v. Ernst & Young, 507 U.S. 170, 179-83 (1993). WWE's opposition brief confirms this.

According to WWE, the alleged RICO enterprise was formed to defraud WWE of the honest services of its licensing agents "beginning with Shenker and *culminating* with the corruption" of Bell. Opp. at 11 (italics added). But the Amended Complaint alleges that the Jakks Defendants corrupted Defendant Shenker no later than 1996 (AC ¶¶ 44-56), Defendant Bell as of January 14, 1998 (id. ¶¶ 97-117), and that Jakks was already "in control of the videogame license" by the time the THQ Defendants allegedly joined the scheme in late April 1998 (id. ¶ 137.) The THQ Defendants could not have participated in the operation or management of the alleged enterprise when they were not even involved, according to WWE's allegations, until *after* the Jakks Defendants allegedly succeeded in corrupting WWE's agents.

Moreover, contrary to WWE's attempt to water down the "operation and management" requirement, the element has been applied rigorously in this Circuit, with scores of RICO claims being rejected for failure to show that a defendant exercised some control over the enterprise.[2] Likewise, WWE's attempt to satisfy the "operation and management" element by arguing that THQ "agreed to be exclusively responsible for the development, manufacturing, distribution, and sales of all WWE videogames, and for the day-to-day operation incidental to performing the videogame license," (Opp. at 44, citing AC ¶ 179), does not save the pleading from dismissal.

---

[2] See, e.g., Dale v. Banque SCS Alliance S.A., 2005 WL 2347853, at *6 (S.D.N.Y. Sept. 22, 2005); Schmidt v. Fleet Bank, 16 F. Supp. 2d 340, 346-47 (S.D.N.Y. 1998); Redtail Leasing, Inc. v. Bellezza, 1997 WL 603496, at *5 (S.D.N.Y. Sept. 30, 1997); LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co., 951 F. Supp. 1071, 1090-91 (S.D.N.Y. 1996); Strong & Fisher, Ltd. v. Maxima Leather, Inc., 1993 WL 277205, at *1 (S.D.N.Y. July 22, 1993).

This Court and others have often dismissed RICO claims against defendants who are alleged to have made important contributions inside RICO enterprises but who do not *direct* such enterprises. See In re Terrorist Attacks on Sept. 11, 2001, 392 F. Supp. 2d 539, 565-569 (S.D.N.Y. 2005) (dismissing RICO claims against alleged terrorists because their conduct did not involve direction of enterprise); Casio Computer Co. v. Sayo, 2000 WL 1877516, at *21-*22 (S.D.N.Y. Oct. 13, 2000) (dismissing RICO claim against defendants whose significant involvement with aiding in the investment and "laundering" of allegedly misappropriated funds did not rise to operation or management of enterprise).  Nowhere in the Amended Complaint or WWE's opposition is there any suggestion that the development, manufacture, distribution, and sales of the videogames were in any way wrongful or were in any way related to the corruption of Shenker or Bell or the alleged bribery scheme.  Indeed, and in any event, the THQ Defendants' degree of participation pales in comparison to, for example, Schmidt, where the defendant was claimed to have been an integral part of the central purpose of the enterprise and yet no "operation and management" was found.  16 F. Supp. 2d at 347.

With respect to Defendant Brian Farrell, WWE's allegations of "operation and management" are even more insufficient.  The only allegation WWE can point to on the "operation and management" issue is that Farrell supposedly "entered into the unlawful agreement with Jakks' Friedman not to independently bid on the WWE videogame license but rather to collude with the Jakks Defendants to obtain the license at below-market rates pursuant to a rigged bidding process."  Opp. at 47, citing AC ¶¶ 136-144.  This allegation does not even come close to satisfying the "operation or management" element.

**B.     WWE Fails to Allege a Pattern of Racketeering Activity by the THQ Defendants**

**1.     A Single Act of Bribery to Obtain a Single License Is Not a Sufficient Pattern**

WWE's allegation of a bribery scheme by the THQ Defendants to obtain a single license is also insufficient to plead a "pattern of racketeering activity" and forms an independent basis for dismissal.  "Courts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement" of a pattern of racketeering activity.  Evercrete Corp. v. H-CAP Ltd., 429 F.

Supp. 2d 612, 625-625 (S.D.N.Y. 2006); see also Casio, 2000 WL 1877516, at *12 (holding that "single scheme with a single fraudulent goal of diverting funds from one victim" failed to satisfy pattern requirement); Stein v. New York Stair Cushion Co., 2006 WL 319300, at *8 (E.D.N.Y. Feb. 10, 2006) (holding that alleged scheme to defraud plaintiff and to make secret payments was "a pattern involving a single scheme of narrow scope, including one victim, and a limited number of related participants" and thus did not "constitute the sort of 'long-term criminal conduct' that Congress sought to target in RICO"); Linens of Europe, Inc. v. Best Mfg., Inc., 2004 WL 2071689, at *16 (S.D.N.Y. Sept. 16, 2004) ("[M]ultiple acts in furtherance of a single extortion episode constitute only a single predicate act of attempted extortion, not a pattern of two or more predicate acts."); Roeder v. Alpha Indus., Inc., 814 F.2d 22, 31 (1st Cir. 1987) ("A bribe, which by any realistic appraisal is solitary and isolated is not transformed into a threatening 'pattern of racketeering activity' . . . simply because the bribe is implemented in several steps and involves a number of acts of communication.").

Rather than addressing the THQ Defendants' argument that WWE failed to allege sufficiently a pattern a racketeering activity *against the THQ Defendants specifically*, WWE attempts to lump the THQ Defendants together with the other defendants in arguing that the Amended Complaint alleges sprawling, multi-faceted schemes of illegal conduct. Opp. at 8-16. WWE's effort to blur the distinctions among the defendants violates clear governing law, which requires that each element of RICO to be applied to each defendant individually. Persico, 832 F.2d at 714. Whether the Amended Complaint contains allegations of "more than a dozen separate events involving seven separate license agreements" against other defendants, it does not so allege against the THQ Defendants. Instead, the THQ Defendants are alleged to have participated, perhaps unknowingly, in a *single* act of bribery.

As set forth in the THQ Defendants' opening brief, and unrebutted by WWE, the attempt to turn this one alleged act into multiple predicate acts has been soundly rejected by this Circuit: "[C]ourts must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO." Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d

91, 98 (2d Cir. 1997).[3] Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc., 354 F. Supp. 2d 293, 304 (S.D.N.Y. 2004) (noting "the Second Circuit's oft-stated admonition that courts should guard against the meritless fragmentation of a single predicate act into multiple acts for the mere purpose of pursuing a RICO claim").

### 2. WWE Has Failed To Allege Closed-Ended Continuity

Closed-ended continuity requires allegations of "a series of related predicates extending over a substantial period of time." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 242 (1989). Even assuming *arguendo* that the scheme was still extant when the THQ Defendants agreed to submit a joint bid for the videogame license in April 1998, despite the Jakks Defendants' alleged prior success in corrupting WWE's agents, the scheme was undoubtedly finished upon the final payment of the bribery scheme in August 1998. Compl. ¶ 87.[4] This five-month period of alleged racketeering activity is insufficient to meet the requirements of closed-ended continuity, and WWE's attempts to extend the continuity period fail for multiple reasons.

As explained in the THQ Defendants' opening brief, attempts to cover up prior acts of racketeering cannot extend a RICO scheme to satisfy the closed-ended continuity requirement. See, e.g., United States v. Biaggi, 909 F.2d 622, 685-86 (2d Cir. 1990) (holding that commission of predicate act and subsequent denial are not separate predicate acts). WWE ignores Biaggi and the other controlling precedents cited in the THQ Defendants' opening brief.

---

[3] In Schlaifer, the plaintiff alleged that it was fraudulently induced into entering a licensing agreement with defendant Estate of Andy Warhol. Id. at 93. Like here, Plaintiff alleged a pattern of racketeering activity that included receiving and making payments under the license agreement and concealing the fraud. Id. at 96-97. The Second Circuit affirmed dismissal of the RICO claim, noting that there was only "one purportedly fraudulent act: the negotiation of the Agreement. The acts complained of . . . are subparts of the singular act, and not a 'pattern' of separate acts with an underlying purpose." Id. at 98. The alleged scheme involving the THQ Defendants similarly involved one act of bribery to obtain one license from one victim. This narrow scheme cannot constitute a sufficient pattern under RICO.

[4] As noted in the THQ Defendants' opening brief, it is black letter law that an *admission* made in a prior pleading cannot be erased through a subsequent pleading. See, e.g., Andrews v. Metro North Commuter R.R. Co., 882 F.2d 705, 707 (2d Cir. 1989) ("The amendment of a pleading does not make it any the less an admission of the party.").

WWE's allegations of money laundering – which merely recount THQ's payment of royalties in compliance with the videogame license – similarly fail to extend closed-ended continuity, as detailed on the THQ Defendants' opening brief. See, e.g., Bingham v. Zolt, 683 F. Supp. 965, 970 (S.D.N.Y. 1988) (refusing to consider as part of RICO enterprise continuing control and receipt of income from allegedly fraudulently created companies since "subsequent enjoyment of the proceeds of the scheme" does not constitute "continuous criminal activity"); Jerome M. Sobel & Co. v. Fleck, 2003 WL 22839799, at *11 (S.D.N.Y. Dec. 1, 2003) (holding that "otherwise lawful performance of accounting services" did not extend RICO pattern). Though WWE attempts to distinguish the cases cited by the THQ Defendants by claiming that none involves money laundering, the distinction is irrelevant and unsupported. As here, each case involves facially lawful financial transactions that stem from allegedly illegal conduct. The THQ Defendants have done nothing other than comply with the terms of the videogame license, which is unquestionably "lawful performance" of the agreement. WWE's artificial extension of the alleged pattern via these allegations runs counter to RICO's continuity requirement.

In addition, the alleged money laundering predicate acts cannot be relied upon because WWE has not alleged that the THQ Defendants had *actual knowledge* that the money laundering involved criminally derived monies, a requirement set out in cases relied on by WWE. United States v. Reiss, 186 F.3d 149, 154 (2d Cir. 1999). WWE fails to offer any factual allegations that the THQ Defendants actually knew of the alleged criminal derivation of the royalty payments. Rather, WWE merely concludes that the THQ Defendants knew of "improprieties" (AC ¶ 141) and therefore should have known that illegal activity was afoot (id. ¶ 143). Such allegations are both conclusory and substantively insufficient to satisfy the requirement that WWE make specific factual allegations supporting a claim of *actual knowledge*.

Even the alleged wire fraud predicate acts against the THQ Defendants cannot be counted towards meeting the continuity requirement of RICO, as each of the alleged acts by the THQ Defendants is facially innocent. While WWE argues that such acts nevertheless constitute statutory violations, facially innocent acts of mail or wire fraud cannot be used to meet the continuity requirement of RICO. Sobel, 2003 WL 22839799, at *11 (acts of wire fraud by

- 6 -

defendant were not "inherently unlawful" and could not be used to satisfy continuity). Courts in this Circuit and others have recognized that the "pattern" requirement must be evaluated in the context of the overall fraudulent scheme rather than based on any "innocent" mailing or wire transmissions. See, e.g., Schnell v. Conseco, Inc., 43 F. Supp. 2d 438, 446 (S.D.N.Y. 1999) (dismissing claims for failing to allege the requisite pattern despite allegations of "a number of predicate mail and wire fraud acts in furtherance of this scheme" because "these acts are in themselves innocuous and are not alleged to be false or misleading in any way"); Wisdom v. First Midwest Bank, 167 F. 3d 402, 407 (8th Cir. 1999) ("[M]ailings are insufficient to establish the continuity factor unless they contain misrepresentations themselves. The court must look to the underlying scheme to defraud."). WWE at best has alleged that the THQ Defendants were involved in the bribery for a few months, far short of the two years required by the Second Circuit. Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 244 (2d Cir. 1999).

### 3.     WWE Cannot Allege Open-Ended Continuity

The pattern of racketeering activity alleged by WWE against the THQ Defendants – the corruption of WWE's licensing agents *as it pertains to the videogame license* – is one that is "inherently terminable," not a "threat of continued criminal activity, " and therefore no open-ended continuity can be found. First Capital Asset Mgmt., Inc. v. Satinwood, 385 F.3d 179, 180-81 (2d Cir. 2004). WWE alleges not only the alleged racketeering plan, but also how it successfully reached its endpoint. The scheme "culminated" in the corruption of Bell and, to the extent it continued, it reached its endpoint upon the execution of the videogame license. Moreover, upon the firing of the allegedly corrupted agents of WWE in 2000 (AC ¶¶ 187, 189), the scheme by definition could not continue. Breslin Realty Dev. Corp. v. Schackner, 397 F. Supp. 2d 390, 404 (E.D.N.Y. 2005) (holding that open-ended continuity could not be found when two employees involved in fraud were fired and scheme could no longer continue); Casio, 2000 WL 1877516, at *13 (firing of primary figure in fraud ended scheme). There is no allegation – nor could there be – that the THQ Defendants did anything that would remotely imply a threat of future racketeering activity. Accordingly, WWE's Amended Complaint cannot support a theory of open-ended continuity against the THQ Defendants.

C.   **Imposing Vicarious Liability on the THQ Defendants Would Be Improper**

The flaws in WWE's RICO claims against the THQ Defendants are not remedied, but rather highlighted, by WWE's fallback contention that the THQ Defendants can be subject to RICO under theories of vicarious liability. WWE would hold the THQ Defendants vicariously liable based upon an amalgam of partnership, joint venture, and agency concepts. However, because courts in the Second Circuit "generally have been hostile to claims of vicarious liability under RICO," WWE cannot overcome the "substantial burden" to hold the THQ Defendants vicariously liable for acts of other defendants under any theory. Schmidt, 16 F. Supp. 2d at 351.

WWE argues that Jakks and THQ formed a partnership and/or joint venture to obtain the videogame license prior to forming an LLC and, as a result, the THQ Defendants are liable for the acts of the Jakks Defendants, including those unrelated to the videogame license and that took place long before THQ had any involvement with Jakks or WWE. However, out of the more than 120 pages of allegations in the Amended Complaint, there is not a single allegation that Jakks and THQ entered into a partnership or joint venture, much less any specific allegations of the elements necessary to establish either. WWE has not alleged, nor could it, that prior to the formation of the LLC, Jakks and THQ shared in profits and losses, maintained joint ownership, and exercised joint control in the licensing enterprise. See, e.g., Tenney v. Ins. Co. of N. Am., 409 F. Supp. 746, 749 (S.D.N.Y. 1975); Hill v. Harris, 1998 WL 960763, at *2-3 (Del. Super. Ct. Oct. 27, 1998). As such there is no cognizable theory of partnership to pin Jakks' pre-LLC activities (even were the allegations true) on THQ.

Indeed, WWE alleges that THQ and Jakks did *not* share profits and losses; rather, "[a]s a result of the agreements negotiated between THQ and Jakks prior to the shipment of any WWE videogames, all financial risk to Jakks was eliminated and the videogame license became nothing but a guaranteed revenue stream to Jakks." AC ¶ 181. This allegation independently precludes a finding that THQ and Jakks formed a partnership or a joint venture. See, e.g., Chanler v. Roberts, 200 A.D.2d 489, 491 (N.Y. Sup. 1994) ("It is axiomatic that the essential elements of a partnership must include an agreement between the principals to share losses as well as profits."); Touch Air Inc. v. Launch 3 Commc'ns, Inc., 801 N.Y.S.2d 243 (N.Y. Sup. 2005)

(holding "the essential elements of a joint venture" include "a provision for the sharing of profits and losses").[5]

Moreover, as noted in the THQ Defendants' opening brief, in a strategic ploy, WWE removed from the Amended Complaint all allegations that Jakks and THQ had formed a joint venture. Cf. Compl. ¶¶ 76-77, 84 (alleging that Jakks "solicited THQ to become a Joint Venture partner," "THQ agreed to become a Joint Venture partner," the "Joint Venture" submitted a bid to WWE, and the "Joint Venture" formed the LLC.) Had WWE not deleted these allegations, they would have destroyed WWE's now-dismissed Sherman Act claim by eliminating any argument that the joint bid by Jakks and THQ was not subject to the rule of reason. Although WWE retained a single conclusory allegation that Jakks and THQ "held themselves out" as being in a joint venture, WWE never once alleges that a joint venture actually was formed or that the joint venture engaged in any wrongful acts. Accordingly, because of its strategic decision to pursue a Sherman Act claim, and the corresponding need to avoid alleging a joint venture, WWE cannot sustain a claim of vicarious liability based on partnership or joint venture principles.

WWE's agency argument is really nothing more than a rehash of its partnership argument, since WWE's primary point is that a partner is considered an agent of the partnership. See Opp. at 64-65. Thus, this theory fails as outlined above. Moreover, an examination of the Amended Complaint's allegations of agency demonstrates that any independent attempt to apply agency principles must fail. WWE offers nothing more than the conclusory (and completely nonsensical) allegations that the Jakks Defendants were acting as an agent for THQ, despite also alleging that THQ was competing against Jakks for the videogame license in April 1998. AC ¶ 131. These contradictory allegations are wholly insufficient to establish an agency relationship. See Jones v. Nat'l Comm. & Surveillance Networks, 2006 WL 73623, at *9

---

[5] Other jurisdictions are in accord. See, e.g., Warren v. Goldinder Bros., Inc., 414 A.2d 507, 509 (Del. Sup. Ct. 1980) (holding that to create a joint venture there must be "a duty to share in the losses which may be sustained"); Ramone v. Lang, 2006 WL 905347, at *12 (Del. Ch. Ct. April 3, 2006) ("To conclude that a partnership existed, though, a court must find that there was 'a common obligation to share losses as well as profits'"); Oakland Raiders v. Nat'l Football League, 131 Cal. App. 4th 621, 637-38 (2005) (holding that revenue sharing alone is not indicator of partnership or joint venture; sharing both profits and losses is required).

1542951

(S.D.N.Y. Jan. 12, 2006) ("[T]he complaint is not saved by conclusory allegations that are inconsistent with the facts pled, or a common sense understanding of those facts."). Also, as acknowledged by WWE in the Opposition, the alleged corruption of WWE's employees "culminated" before THQ had any involvement with either Jakks or WWE. Opp. at 11. There is no possibility that the actions of Jakks could have been done as an agent for THQ.

Finally, WWE cannot hold the THQ Defendants vicariously liable for the acts of other defendants on a ratification theory. WWE cites factually inapposite cases, none of which arise under RICO and none of which support imposing vicarious liability for a RICO claim based on ratification. To the extent the cases address ratification, however, they hold that "*knowledge* of the pertinent facts and a *clear intent to approve* the unauthorized action" is required to establish ratification. Richardson Greenshields Sec., Inc. v. Lau, 819 F. Supp. 1246, 1259 (S.D.N.Y. 1993) (emphasis added). WWE's conclusory allegations fall far short of this requirement and are thus insufficient to meet the "substantial burden" to impose vicarious liability on the THQ Defendants. DeJesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996) (holding that plaintiffs' conclusory allegations of ratification failed "even the liberal standard of Rule 12(b)(6)"). Moreover, WWE's sweeping ratification theory reveals its fundamental unfairness as it would hold the THQ Defendants vicariously liable for acts which (1) took place years before THQ became involved with Jakks, (2) provided no benefit to THQ, and (3) THQ is not alleged to have had any knowledge of. Such liability eviscerates the necessary elements of RICO and violates the required focus on each defendant's individual actions. See Persico, 832 F.2d at 714.

### III. CONCLUSION

The THQ Defendants respectfully request that their motion to dismiss be granted.

Dated: August 11, 2006

Respectfully submitted,
IRELL & MANELLA LLP

By: /S/ Steven A. Marenberg
Steven A. Marenberg
Attorneys for Defendants THQ Inc and
Brian Farrell