**TAB B**

Westlaw.

Slip Copy                                                                                                    Page 1
Slip Copy, 2005 WL 2347853 (S.D.N.Y.)
**(Cite as: Slip Copy)**

▷

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
George DALE, Commissioner of Insurance for the State of Mississippi, in his official capacity as Receiver of Franklin Protective Life Insurance Company, et al., Plaintiffs,
v.
BANQUE SCS ALLIANCE S.A. and Jeanne-Marie Wery, Individually and in his capacity as Officer, Employee and Agent of Banque SCS Alliance S.A., Defendants.
No. 02Civ.3592 (RCC)(KNF).

Sept. 22, 2005.

MEMORANDUM AND ORDER
FOX, Magistrate J.

I. INTRODUCTION

*1 The plaintiffs in this action, the receivers of seven insurance companies ("insurance companies"), allege violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq., ("RICO" or "RICO Act"), common law fraud, civil conspiracy, and aiding and abetting fraud against defendants Banque SCS Alliance, S.A ("Banque SCS"), and Jeanne-Marie Wery ("Wery") (collectively, "defendants"). The plaintiffs also allege that Banque SCS was negligent in hiring, supervising and retaining Wery. Each of the insurance companies is domiciled in the state of which its receiver is an official. According to the amended complaint, Banque SCS is a Swiss corporation headquartered in Switzerland, and Wery, a citizen of Belgium, is an officer, employee and agent of Banque SCS. In a previous Memorandum and Order, the Court granted an application to dismiss the action for lack of personal jurisdiction ("dismissal order"). The Court found it unnecessary to reach the other grounds for dismissal raised by the defendants, namely *forum non conveniens* and failure to state a claim upon which relief may be granted. *See Dale v. Banque SCS,* No. 02 Civ. 3592, 2004 WL 2389894, at *4 (S.D.N.Y. Oct. 22, 2004).

Before the Court are the plaintiffs' applications: (1) to amend the judgment of dismissal in the interest of justice, pursuant to Fed.R.Civ.P. 59(e), in light of new evidence pertaining to the court's personal jurisdiction over the defendants ("motion to amend the judgment"); (2) for reconsideration of the dismissal order, pursuant to Local Civil Rule 6.3 ("first motion for reconsideration"); and (3) for reconsideration of the dismissal order with respect to Wery, pursuant to Fed.R.Civ.P. 60(b), in light of, *inter alia,* his subsequent consent to submit to the jurisdiction of this court ("second motion for reconsideration"). Also before the Court are Banque SCS's applications: (a) to strike affidavits submitted by the plaintiffs in support of the first motion for reconsideration ("motion to strike"); and (b) for certification of the previously-entered judgment of dismissal as a final judgment with respect to Banque SCS, pursuant to Fed.R.Civ.P. 54(b) ( "Rule 54[b] motion"), if the second motion for reconsideration is not denied.

The Court will address the instant applications and, to the extent necessary and appropriate, the unaddressed grounds raised in support of the previous motion to dismiss.

II. BACKGROUND AND FACTS

The plaintiffs allege that from 1990 until 1999, the defendants assisted Martin Frankel ("Frankel") in defrauding the insurance companies of over $200,000,000, thus rendering the insurance companies insolvent. According to the plaintiffs, Frankel devised and executed a scheme to acquire ownership of the insurance companies fraudulently, using funds taken from certain of the insurance companies to purchase others of the insurance companies. The plaintiffs contend that Frankel evaded detection by regulatory authorities and looted the assets of the insurance companies for his own benefit. The plaintiffs maintain that, with the assistance of the defendants and others, Frankel laundered the illegally obtained funds through a series of fraudulent wire transfers to and from, *inter alia,* Banque SCS's correspondent bank account in New York and other accounts it maintained outside New York. As part of this scheme, the defendants allegedly arranged, at Frankel's direction, the incorporation of Bloomfield Investments, Ltd. ("Bloomfield"), a British Virgin Islands corporation whose sole director was an employee or otherwise

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 2
Slip Copy, 2005 WL 2347853 (S.D.N.Y.)
**(Cite as: Slip Copy)**

associated with Banque SCS. Accounts at Banque SCS allegedly were opened in Bloomfield's name and utilized in the laundering of insurance company funds. The plaintiffs allege further that Wery, at Frankel's direction, purchased travelers checks using insurance company funds Frankel obtained illegally, and had the checks shipped to Banque SCS in Switzerland and then to Frankel, and others associated with him, at various New York addresses.

*2 The plaintiffs allege further that, with Wery's assistance, Frankel maintained accounts at Merrill Lynch and Bear Stearns under an alias. By the spring of 1998, Wery allegedly had learned that Frankel had gained control of a number of insurance companies and that at least some of the funds Frankel had deposited into Banque SCS accounts had been taken from the insurance companies. The plaintiffs maintain that the defendants helped Frankel conceal his identity on funds transfer documents, and, when regulatory authorities began to uncover Frankel's illegal activities, the defendants helped Frankel liquidate the stolen insurance company assets, so that he could continue to use them if Frankel determined to flee the United States. In light of the foregoing, the plaintiffs maintain that the defendants knew that the funds whose transfers they executed on Frankel's behalf were the product of illegal activities.

The plaintiffs allege that the defendants committed wire fraud, mail fraud and money laundering ("predicate acts"), in order to further several enterprises, within the meaning of 18 U.S.C. § 1962(c), namely: (1) Bloomfield ("Bloomfield enterprise"); (2) each of the insurance companies ("insurance company enterprises"); and (3) a group of individuals and corporate entities that included Frankel, Wery, Banque SCS and numerous others who participated in Frankel's scheme ("association-in-fact enterprise").

III. DISCUSSION

*First Motion for Reconsideration*

Local Civil Rule 6.3 of this court ("Local Rule 6.3") provides, in pertinent part, that a notice of motion for reconsideration or reargument "shall be served with ... a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." "Thus, to be entitled to reargument and reconsideration, the movant must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion." Hamilton v. Garlock, Inc., 115 F.Supp.2d 437, 438 (S.D.N.Y.2000). A motion for reconsideration "is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved." In re Initial Pub. Offering Antitrust Litig., No. 01 Civ.2014, 2004 WL 789770, at *1 (S.D.N.Y. April 13, 2004) (quoting Yurman Design, Inc. v. Chaindom Enters., No. 99 Civ. 9307, 2003 WL 22047849, at *1 [S.D.N.Y. Aug. 29, 2003]). The decision to grant or deny the motion is within the sound discretion of the court. See id.

In the dismissal order, the Court determined that the four correspondent bank accounts maintained by Banque SCS in New York did not subject the defendants to personal jurisdiction under New York Civil Procedure Law and Rules ("CPLR") § 302(a)(1) (" § 302(a)(1)"). In so holding, the Court relied upon Semi Conductor Materials, Inc. v. Citibank Int'l PLC, 969 F.Supp. 243, 246 (S.D.N.Y.1997), which stated that "a correspondent bank relationship between a foreign bank and a New York financial institution does not provide sufficient grounds to exercise personal jurisdiction over a foreign bank." The plaintiffs contend, correctly, that the Court's reliance on Semi Conductor was misplaced, since the above-quoted statement pertained to an analysis of personal jurisdiction under CPLR § 301, not § 302(a)(1). Accordingly, it is appropriate for the Court to reconsider the points raised by the parties concerning the question of personal jurisdiction under § 302(a)(1).

*3 "The burden of proving jurisdiction is on the party asserting it." Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir.1994). "In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir.1981). If the court relies solely on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of personal jurisdiction. See Robinson, 21 F.3d at 507. In determining whether the plaintiffs have made a *prima facie* showing of personal jurisdiction, the court will construe jurisdictional allegations liberally and take all uncontroverted factual allegations to be true. Id.

CPLR § 302(a)(1) provides, in pertinent part, that a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                         Page 3
Slip Copy, 2005 WL 2347853 (S.D.N.Y.)
**(Cite as: Slip Copy)**

New York court may exercise personal jurisdiction over a non-domiciliary "who in person or through an agent ... transacts any business within the state." CPLR 302(a)(1) "extends the jurisdiction of New York state courts to any nonresident who has 'purposely availed [itself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws....' " Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 787 (2d Cir.1999) (quoting Parke-Bernet Galleries v. Franklyn, 26 N.Y.2d 13, 18, 308 N.Y.S.2d 337, 341 [1970] ). "[A] single transaction would be sufficient to fulfill this requirement, so long as the relevant cause of action also arises from that transaction." Id. (citations and quotation marks omitted).

With respect to Wery, the Court notes that subsequent to the briefing of the first motion for reconsideration, Wery sought to withdraw his motion to dismiss the complaint, including his objections concerning personal jurisdiction, and consented to the personal jurisdiction of this court. Accordingly, the Court deems the motion to dismiss withdrawn to the extent that it pertains to Wery, and finds that there is no basis upon which to dismiss the amended complaint, as it pertains to Wery, for lack of personal jurisdiction. Therefore, it is appropriate to grant the first motion for reconsideration as it pertains to Wery. As Wery's application to dismiss the complaint has been deemed withdrawn, there is no need to address the other, nonjurisdictional contentions raised therein, as they pertain to Wery.

With respect to Banque SCS, the Court finds that Indosuez Int'l Finance B.V. v. National Reserve Bank, 98 N.Y.2d 238, 746 N.Y.S.2d 631 (2002), a decision cited by the plaintiffs in opposition to the motion to dismiss, is controlling on the question of personal jurisdiction under CPLR § 302(a)(1). In that case, a foreign defendant maintained a bank account in New York for the purpose of receiving payments from the plaintiff in connection with a collection of currency exchange transactions out of which the parties' dispute arose. Id. at 242, 633. The New York Court of Appeals determined that this satisfied the requirements of CPLR § 302(a)(1). Id. at 246, 636; see also, Monroy v. Citibank, N.A., No. 84 Civ. 1040, 1985 WL 1768, *3-4 (S.D.N.Y. June 21, 1985). According to the amended complaint, Banque SCS maintains several correspondent bank accounts in New York that it used to effect a number of the funds transfers that are the subject of this action. Accordingly, the Court finds that the factual allegations contained in the amended complaint concerning Banque SCS state a *prima facie* case of personal jurisdiction, pursuant to CPLR § 302(a)(1).[FN1] Therefore, it is appropriate to grant the first motion for reconsideration as it pertains to Banque SCS.

> FN1. Banque SCS's argument to the contrary relies upon decisions of this court and a decision of an intermediate New York appellate court all of which predate Indosuez. See, e.g., Symenow v. State Street Bank and Trust Co., 244 A.D.2d 880, 665 N.Y.S.2d 141 (App. Div. 4th Dep't 1997). As the decisions of the New York Court of Appeals are authoritative with respect to questions of New York law, the Court finds Banque SCS's argument to be unpersuasive.

*4 In light of the foregoing, the Court declines to address the other contentions raised in the first motion for reconsideration. As the Court has determined that it has personal jurisdiction over Banque SCS, the other grounds raised in the motion to dismiss will be addressed below, to the extent that they pertain to that defendant.

*Motion to Dismiss*

*A.* Forum Non Conveniens

"A *forum non conveniens* motion is decided in two steps. First, the district court asks if there is an alternative forum that has jurisdiction to hear the case.... [In] the second step of the inquiry, ... the district court determines the forum that will be most convenient and will best serve the ends of justice ." Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 46 (2d Cir.1996). The existence of an alternative forum is a prerequisite to dismissal on grounds of *forum non conveniens.* Schertenleib v. Traum, 589 F.2d 1156, 1159-60 (2d Cir.1978).

Banque SCS contends that Switzerland would be an adequate alternative forum for this action. However, the Court has before it no information about Swiss jurisdictional law or its likely application to the claims asserted in the instant action. In support of its applications, Banque SCS cites Schertenleib, supra, 589 F.2d 1156, and ACLI Int'l Commodity Servs., Inc. v. Banque Populaire, 652 F.Supp. 1289 (S.D.N.Y.1987), for the propositions that Switzerland is "generally" an adequate alternative forum and that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Swiss courts would have jurisdiction to adjudicate fraud claims against Banque SCS, respectively. However, in each of those cases, the parties submitted expert testimony to the court that enabled it to determine the likely application of Swiss law to the facts presented by the action. No such expert testimony is available here. Moreover, even if *Schertenleib* and *ACLI* contained statements about Swiss law that were pertinent to the instant action, those decisions were issued 27 and 18 years ago, respectively. There is no basis upon which to determine whether conclusions about Swiss law reached nearly two or three decades ago remain accurate.

As the existence of an adequate alternative forum for the instant action has not been demonstrated, the motion to dismiss on the basis of *forum non conveniens* is without merit.

### B. Failure to State a Claim

A court may dismiss an action pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted, only if "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997). In considering a motion pursuant to this Rule, "the court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Id.*

#### 1. Common Law Fraud; Aiding and Abetting Fraud

*5 Under New York law, a claim for fraud "must assert that a representation of a material fact was made; that such representation was false, and known to be false by the party making it, or was recklessly made; that such representation was made to deceive and to induce the other party to act upon it; and that the party to whom the representation was made relied upon it to its injury or damage." *Zaref v. Berk & Michaels, P.C.*, 192 A.D.2d 346, 348, 595 N.Y.S.2d 772, 774 (App. Div. 1st Dep't 1993) (internal quotation marks and citation omitted).

In the case at bar, the plaintiffs have alleged that Banque SCS made certain misrepresentations and that the plaintiffs suffered injuries as a result of those misrepresentations. However, it is not alleged that the misrepresentations were made to the plaintiffs, that the misrepresentations were intended to induce any action by the plaintiffs, or that the plaintiffs relied upon the statements to the plaintiffs' detriment.

In light of the foregoing, the plaintiffs' state law claims for fraud and aiding and abetting fraud should be dismissed.

#### 2. *Section 1962(c)* claim

The RICO Act provides, in pertinent part, that:
(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c) (" § 1962(c)").

The RICO Act defines "racketeering activity" as, *inter alia,* "any act which is indictable under any of the following provisions of title 18, United States Code: ... section 1341 (relating to mail fraud), [and] section 1343 (relating to wire fraud)...." 18 U.S.C. § 1961(1). The RICO Act also permits those injured by a violation of § 1962 to commence a civil action in order to recover damages. *See* 18 U.S.C. § 1964(c).

Although the elements of fraud under New York law, discussed above, are not coextensive with the elements of mail and wire fraud under 18 U.S.C. § § 1341, 1343, the differences are not here material. As noted above, the plaintiffs have not alleged that fraudulent statements were made to the plaintiffs. Additionally, the plaintiffs have not alleged any injury to the other persons and entities to whom the allegedly fraudulent statements were made. Consequently, the only alleged predicate acts that need be considered in evaluating the sufficiency of the plaintiffs' RICO allegations are the allegations that Banque SCS engaged in money laundering, in violation of 18 U.S.C. § 1956(a)(1).[FN2]

> FN2. In order to state a claim for money laundering, a plaintiff need only plead: "(1) that the defendant conducted a financial transaction; (2) that the transaction in fact involved the proceeds of specified unlawful activity as defined in [18 U.S.C.] § 1956(c)(7); (3) that the defendant knew that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                         Page 5
Slip Copy, 2005 WL 2347853 (S.D.N.Y.)
(Cite as: Slip Copy)

the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and (4) that the defendant knew that the financial transaction was designed in whole or in part to conceal or disguise the source, ownership, control, etc., of those proceeds." United States v. Maher, 108 F.3d 1513, 1527-28 (2d Cir.1997). The plaintiffs have met this standard.

*i) Operation and Management of Enterprises*

In order to conduct or participate, directly or indirectly in the conduct of an enterprise's affairs, within the meaning of 18 U.S.C. § 1962(c), one need not exercise "significant control" over an enterprise, but one must engage in the "operation or management" of the enterprise and "have some part in directing those affairs." Reves v. Ernst & Young, 507 U.S. 170, 179 & n. 4, 113 S.Ct. 1163, 1170 & n. 4 (1993). "[S]imple taking of directions and performance of tasks that are necessary or helpful to the enterprise, without more, is insufficient to bring a defendant within the scope of § 1962(c)." United States v. Viola, 35 F.3d 37, 41 (2d Cir.1994) (abrogated on other grounds by Salinas v. United States, 522 U.S. 52, 118 S.Ct. 469 [1997]).

*6 Courts in the Second Circuit typically apply the rule set forth in Reves extremely rigorously. United States Fire Ins. Co. v. United Limousine Service, Inc., 303 F.Supp.2d 432, 451 (S.D.N.Y.2004). When a defendant's alleged provision of professional services to an enterprise is the basis for a RICO claim, "[t]he deciding issue ... is 'whether the provision of these services allows the defendant to direct the affairs of the enterprise.' " Id. at 452 (quoting Schmidt v. Fleet Bank, 16 F.Supp.2d 340, 346 [S.D.N.Y .1998], and collecting cases); but see Bank Brussels Lambert v. Credit Lyonnais, No. 93 Civ. 6876, 2000 WL 1694322, at *4 (S.D.N.Y. Nov. 13, 2000) (finding that plaintiffs' pleading "in substantially the language of the statute" satisfies Reves test). Additionally, "[o]ne is liable under RICO if he or she has discretionary authority in carrying out the instructions of" the enterprise's principals. Baisch v. Gallina, 346 F.3d 366, 376 (2d Cir.2003) (internal quotation marks omitted).

The plaintiffs allege that Banque SCS and Wery "structured [Bloomfield's] ownership" and that the sole director of Bloomfield was an employee or associate of Banque SCS. Am. Compl. ¶ 40. Therefore, it can be inferred reasonably from the plaintiffs' allegations that Banque SCS had a part in directing the affairs of the Bloomfield enterprise.

The plaintiffs have also alleged that Banque SCS executed funds transfers and provided other banking services in order to assist Frankel, advised Frankel how to conceal the nature and source of his transactions and the spoils of those transactions, and made certain misrepresentations to other banks and participants in the alleged enterprises. According to the amended complaint, essentially all of these activities occurred at Frankel's direction or after consultation with Frankel. The amended complaint provides no basis upon which to infer that Banque SCS exercised discretion in performing these tasks or that these tasks otherwise allowed Banque SCS to direct any part of the affairs of the alleged association-in-fact enterprise or the insurance company enterprises.

Near the end of the amended complaint, the plaintiffs allege, without elaboration, that Banque SCS "knowingly conducted, participated in, controlled, manipulated or directed the enterprises' affairs." Am. Compl. ¶ 151. This allegation finds no support in the numerous allegations in the amended complaint concerning the activities allegedly undertaken by Banque SCS in connection with the RICO enterprises. In light of the great degree of detail with which those activities are set forth in the amended complaint-which is approximately 75 pages in length-it cannot be inferred that there is a basis in fact for the allegation that Banque SCS played a significant role in the direction of the insurance company and association-in-fact enterprises. With respect to those enterprises, the Court finds that the conduct allegedly undertaken by Banque SCS does not satisfy the test set forth in Reves.

*ii) RICO Enterprises*

*7 In order to violate 18 U.S.C. § 1962(c), a person must be "employed by or associated with" an enterprise. 18 U.S.C. § 1962(c). Under the RICO Act, an " 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "The enterprise must be separate from the pattern of racketeering activity ... and distinct from the person conducting the affairs of the enterprise." First Capital Asset Management, Inc. v. Satinwood, 385 F.3d 159, 173 (2d Cir.2004) (internal citations omitted). "For an association of individuals

Slip Copy                                                                                                      Page 6
Slip Copy, 2005 WL 2347853 (S.D.N.Y.)
**(Cite as: Slip Copy)**

to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." First Nationwide Bank v. Gelt Funding Corp., 820 F.Supp. 89, 98 (S.D.N.Y.1993); see also Satinwood, 385 F.3d at 174. Moreover, an association-in-fact must have an existence "separate from the pattern of racketeering activity." First Capital, 385 F.3d at 173.

The Bloomfield enterprise consists of a corporate entity, Bloomfield Investments, Ltd. Therefore, the plaintiffs have alleged adequately the existence of that enterprise.

The plaintiffs do not allege that the association-in-fact enterprise had any purpose or activities other than the execution of Frankel's scheme. Consequently, the association-in-fact enterprise does not have any alleged existence apart from the pattern of racketeering activity alleged in the amended complaint, and it does not satisfy the requirement noted in *First Capital.*

Banque SCS contends that the insurance companies cannot be enterprises because they were also "victims" of Frankel's scheme. However, the plaintiffs have alleged that Frankel used each of the insurance companies to further his efforts to gain control of and "loot" the other insurance companies. Consequently, even if the target of a RICO enterprise cannot be the enterprise itself, it can reasonably be inferred from the plaintiffs' allegations that each insurance company enterprise had targets other than itself. Banque SCS also contends that the plaintiffs have not alleged that Banque SCS was "associated with" any of the insurance company enterprises, see 18 U.S.C. § 1962(c), since Banque SCS was not aware of their existence. However, the plaintiffs allege that Wery learned of the existence of the insurance companies at some point in 1998, and allege generally that Wery acted as an agent of Banque SCS. It can be inferred reasonably from such allegations that Banque SCS was aware of the insurance company enterprises, at least as of some time in 1998. Therefore, the premise of Banque SCS's contention on this point does not obtain, and so the contention is without merit.

*iii) Causation*

A defendant is liable under 18 U.S.C. § 1964(c) for a violation of 18 U.S.C. § 1962 only if the defendant's "injurious conduct is both the factual and the proximate cause of the injury alleged." Lerner v. Fleet Bank, N.A., 318 F.3d 113, 120 (2d Cir.2003). In order to satisfy the proximate causation requirement, the alleged injury must be caused directly by the pattern of racketeering activity or by individual RICO predicate acts, and the alleged injury must be one that was reasonably foreseeable. Baisch, 346 F.3d at 373. However, a defendant need not intend any "specific harm[ ] to any particular individual"; it is sufficient that the defendant "causes harm by the creation of substantial risk of harm." Id. at 376.

*8 Banque SCS contends that the predicate acts alleged by the plaintiffs were not the factual or proximate cause of the plaintiffs' losses. Banque SCS's argument in support of that contention, however, is addressed principally to the mail and wire fraud allegations and not the money laundering allegations. The amended complaint alleges clearly that, without the numerous money laundering services provided to Frankel by Banque SCS over a multi-year period, Frankel's scheme to remove funds from the insurance companies could not have proceeded without detection. Moreover, according to the plaintiffs, Banque SCS, through its agent, Wery, allegedly learned no later than 1998 that Frankel had gained control of several insurance companies. Additionally, a number of Frankel's alleged wire transfer instructions to Banque SCS were designed to conceal Frankel's activities and, thereby, to ensure that Frankel could continue to acquire insurance companies and remove funds from them improperly. Accordingly, the plaintiffs have alleged adequately that Banque SCS knowingly caused a substantial risk of harm to the insurance companies by effecting acts of money laundering.

In light of the foregoing, the 18 U.S.C. § 1962(c) claim should be dismissed with respect to the association-in-fact and insurance company enterprises.

*3. Section 1962(d) Claim*

The RICO Act provides, in pertinent part: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). In order to be liable for a violation of 18 U.S.C. § 1962(d), a "conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." Salinas, 522 U.S. at 65, 118

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

S.Ct. at 477. In order for a plaintiff to recover under 18 U.S.C. § 1964(c) for a RICO conspiracy claim, the plaintiff's injury must be caused by an overt act of racketeering or an act that is otherwise wrongful under RICO. See Beck v. Prupis, 529 U.S. 494, 503-505, 120 S.Ct. 1608, 1615-1616 (2000).

Banque SCS contends that the RICO conspiracy claim is without merit, on the grounds that: (1) the RICO enterprise allegations and allegations of causation are inadequate; and (2) the plaintiffs do not allege adequately that Banque SCS agreed to assist Frankel by engaging in money laundering. The first contention is addressed above; the plaintiffs have alleged causation adequately and have alleged a RICO enterprise adequately with respect to the Bloomfield enterprise and the insurance company enterprises only. The second contention is without merit; the plaintiffs have alleged that Banque undertook the transactions in question at Frankel's direction, and Frankel consulted Banque SCS on several occasions about strategies for concealing the nature of various transactions.

*9 Accordingly, the plaintiffs state a RICO conspiracy claim with respect to the insurance company enterprises and the Bloomfield enterprise, and have not stated a RICO conspiracy claim with respect to the association-in-fact enterprise.

### 4. Civil Conspiracy

"No action for civil conspiracy is cognizable in law. A plaintiff first must plead specific wrongful acts which constitute an independent tort." Smukler v. 12 Lofts Realty, Inc., 156 A.D .2d 161, 163, 548 N.Y.S.2d 437, 439 (App. Div. 1st Dep't 1989). The plaintiffs allege that Banque SCS conspired with Frankel to "loot and launder the assets of the [i]nsurance [c]ompanies." Am. Comp. ¶ 171. However, New York law does not recognize torts of "looting" or "laundering." Although the plaintiffs may have alleged tortious conduct by Frankel, they do not specify what tort(s) Banque SCS agreed with Frankel to commit. Accordingly, the amended complaint does not contain a short and plain statement of the plaintiffs' claim for civil conspiracy, see Fed.R.Civ.P. 8(a), and the claim should be dismissed.

### 5. Negligent Hiring

The contention that the negligent hiring claim should be dismissed was premised upon the absence of a valid claim against Wery. As that premise does not obtain, the contention is without merit.

*Second Motion for Reconsideration/Motion to Strike/Motion to Amend Judgment/ Rule 54(b) Motion*

In light of the foregoing, the plaintiffs' motion to amend the judgment, the plaintiffs' second motion for reconsideration, and the defendants' motion to strike are moot. Consequently, Banque SCS's Rule 54(b) motion, which seeks relief alternative to the denial of the second motion for reconsideration, is also moot.

### IV. CONCLUSION

For the reasons set forth above: (1) The plaintiffs' first motion for reconsideration is granted; (2) the plaintiffs' motion to amend the judgment is denied as moot; (3) the plaintiffs' second motion for reconsideration is denied as moot; (4) the defendants' motion to strike is denied as moot; (5) the motion to dismiss the amended complaint is deemed withdrawn as to Wery; (6) the motion to dismiss the amended complaint as to Banque SCS is granted with respect to the 18 U.S.C. § 1962(c) claim as it relates to the association-in-fact and insurance company enterprises, the 18 U.S.C. § 1962(d) claim as it relates to the association-in-fact enterprise, the common law fraud claim, the aiding and abetting fraud claim, and civil conspiracy claim; (7) the motion to dismiss the amended complaint as to Banque SCS is denied with respect to the 18 U.S.C. § 1962(c) claim as it relates to the Bloomfield enterprise, the 18 U.S .C. § 1962(d) claim as it relates to the Bloomfield and insurance company enterprises, and the negligent hiring claim; and (8) Banque SCS's Rule 54(b) motion is denied as moot.

The Clerk of Court shall amend the previously entered judgment of dismissal to reflect that the amended complaint is dismissed solely as to Banque SCS, for failure to state a claim, with respect to the claims noted above.

*10 Wery and Banque SCS shall serve and file their answers to the amended complaint within twenty days of the date of this order.

S.D.N.Y.,2005.
Dale v. Banque SCS Alliance S.A.
Slip Copy, 2005 WL 2347853 (S.D.N.Y.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 2347853 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Page 8

Briefs and Other Related Documents (Back to top)

• 1:02cv03592 (Docket) (May. 09, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**TAB C**



Not Reported in A.2d
Not Reported in A.2d, 1998 WL 960763 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 1

Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Delaware.
Clare E. **HILL** and Baxter J. **Hill**, Plaintiffs,
v.
Elizabeth B. **HARRIS** a/k/a Elizabeth B. Kern and Clyde D. **Harris**, d/b/a C.D. **Harris** Riding Stables, Defendants.
No. 96C-11-029.

Oct. 27, 1998.

Upon Defendant Elizabeth B. Harris's Motion for Summary Judgment. Denied.

John C. Andrade, Esq. of Parkowski, Noble & Guerke, Dover, for Plaintiffs.
Robert G. Gibbs, Esq. of Wilson, Halbrook & Bayard, Georgetown, for Defendant Elizabeth B. Harris.

ORDER

RIDGELY, President J.
*1 This 27th day of October, 1998, upon consideration of the parties' briefs and the record in this case, it appears that:

(1) Plaintiff Clare E. Hill ("Hill") was injured when she fell from a horse while she was a patron of C.D. Harris Riding Stables. Hill alleges that the fall was caused by the negligence of Defendant Clyde D. Harris ("Clyde"), the proprietor of the riding stables business. Hill further alleges that Defendant Elizabeth B. Harris ("Elizabeth"), Clyde's wife, is liable as a partner in the business and as the owner of the property on which the business is located. Elizabeth has moved for summary judgment claiming that she is not liable for Clyde's alleged negligence because she is not a partner in the riding stables business but merely the lessor of the property.

(2) On December 3, 1994, Hill sustained personal injuries after she fell from a horse provided to her by C.D. Harris Riding Stables. Hill claims that the fall occurred because Defendant Clyde D. Harris negligently saddled and cinched the horse. The riding stables business is located on property known as Penny Creek Farms, which Defendant Elizabeth B. Harris inherited from her parents. Hill's fall did not occur on Penny Creek Farms because, although the trails begin and end on the property, they also travel through property not owned by the defendants. At the time of the incident, Penny Creek Farms was utilized for the riding stables business, a racehorse business, growing hay, and as a residence for Elizabeth and Clyde. Although the racehorse business is generally run by Elizabeth and the riding stables business is generally run by Clyde, the two businesses often overlapped. For example, Clyde would often purchase supplies necessary for the racehorse business and Elizabeth would do the same for the riding stables business. The property was also maintained by both. Further, the hay grown on the property was used to feed the horses of both businesses. Although separate checking accounts were maintained for each business, both Elizabeth and Clyde made purchases and paid debts for one business with the other's checks as well as with checks from their personal account if necessary. Finally, although the couple filed joint tax returns, Clyde is listed on at least three of the returns as the proprietor of both businesses. Clyde also asserted on an application for a loan for the riding stables business that he is the owner of Penny Creek Farms.

(3) Elizabeth contends that she and Clyde are not partners but rather sole proprietors of separate businesses. She states that, although money is sometimes loaned to one business from the other, it is always paid back. Elizabeth asserts that she is the sole owner of Penny Creek Farms and that she leases a portion of her land to Clyde for his business. As payment for the lease, Clyde works on the land doing odd jobs and maintenance work. Therefore, Elizabeth asserts that she cannot be held liable for her tenant's alleged negligence. Plaintiffs contend that there is a genuine issue of material fact as to whether Elizabeth and Clyde are partners, and the matter should be decided by a jury.

*2 (4) Summary judgment is appropriate if, after viewing the record in the light most favorable to the non-moving party, the court finds no genuine issue of material fact.[FN1] If the movant supports the motion with proper affidavits, the burden shifts to the non-moving party to show, using support taken from the developed record or with opposing affidavits, that a material issue of fact exists.[FN2] If there is a reasonable indication that a material fact is in dispute or if it

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK   Document 176-3   Filed 08/11/2006   Page 12 of 13

Not Reported in A.2d
Not Reported in A.2d, 1998 WL 960763 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 2

seems desirable to inquire more thoroughly into the facts in order to clarify the application of the law, summary judgment will not be granted.[FN3]

> FN1. *Guy v. Judicial Nominating Comm'n,* Del.Super., 659 A.2d 777, 780 (1995); *Figgs v. Bellevue Holding Co.,* Del.Super., 652 A.2d 1084, 1087 (1994).
>
> FN2. *Moore v. Sizemore,* Del.Supr., 405 A.2d 679, 681 (1979); *Del.Super. Ct. Civ. R. 56(e).*
>
> FN3. *Ebersole v. Lowengrub,* Del.Supr., 180 A.2d 467, 470 (1962), *rev'd in part and aff'd. in part,* 208 A.2d 495 (1965).

(5) Elizabeth is not liable if she is merely the owner/lessor of the property on which the riding stables business is operated. A landlord is not liable for the negligence of a tenant, even if the negligence occurs on the leased property.[FN4] Further, a landlord is generally not liable for incidents occurring off the leased property, as in the present matter, unless the landlord knows about a dangerous condition which begins on the leased property and promises to correct that condition.[FN5] Under the facts presented, Elizabeth could not be held liable merely as the owner of the property.

> FN4. *Cleary v. North Delaware A-OK Campground, Inc.,* Del.Super., C.A. No. 85C-OC-70, Bifferato, J. (Dec. 9, 1987) (Mem.Op.).
>
> FN5. *Kirshner v. Hall,* Del.Super., C.A. No. 94C-12-088, Herlihy, J. (Jan. 10, 1997) (Mem.Op.).

(6) Elizabeth may be liable if the facts indicate that she and Clyde are partners in the riding stables business.[FN6] The existence of a partnership between husband and wife has been addressed in Delaware in *Gannett Co. v. Irwin.*[FN7] The court in that case looked at three elements to determine if the husband and wife were partners in their respective endeavors: profit sharing, co-ownership, and joint control.

> FN6. *6 Del. C. §§ 1513 and 1515(a)(1).*
>
> FN7. *Gannett Co. v. Irwin,* Del.Super., C.A. No. 83C-JA-110, Martin, J. (Aug. 9, 1985) (Mem.Op.).

(7) Profit sharing is prima facie evidence of a partnership relationship.[FN8] Where there is no intent to share profits and losses, there can be no partnership.[FN9] In the present matter, the facts show that the defendants manipulated money among several bank accounts in order to pay the bills and buy supplies for both businesses. For example, Elizabeth paid some of the bills for C.D. Harris Riding Stables out of both the Penny Creek Farms account and the couple's personal account. Purchases were also made in this manner. Although the gross receipts from C.D. Harris Riding Stables were deposited into its own account, no profits were realized from the business. However, there is evidence which indicates that the losses and expenses were shared equally, creating an issue of fact as to whether profits would have been shared as well. Further, an intent to share profits and losses, standing alone, is insufficient to determine a partnership relationship between husband and wife as this element is also consistent with a normal marriage relationship.[FN10] It is therefore necessary to examine the other elements of a partnership more closely.

> FN8. *6 Del. C. § 1507(4).*
>
> FN9. *Chaiken v. Employment Security Comm'n,* Del.Super., 274 A.2d 707, 710 (1971).
>
> FN10. *Soley v. VanKeppel,* 656 N.E.2d 508, 513 (Ind.Ct.App.1995); *Chocknok v. State Commercial Fisheries Entry Comm'n,* 696 P.2d 669, 675 (Alaska 1985).

(8) The second element of a partnership relationship is co-ownership.[FN11] Although this element generally refers to ownership of the business itself, ownership of the property used in the business is also a factor.[FN12] In the present matter, although Elizabeth inherited Penny Creek Farms, Clyde referred to himself as the owner on a loan application for the riding stables business. He was also listed as the proprietor of both businesses located on Penny Creek Farms on at least three of the couple's joint tax returns. Further, the farm is used to grow hay, which is fed to the horses of both businesses. Also, both defendants help with the maintenance of the property. These facts, when viewed in the light most favorable to plaintiff, could indicate co-ownership of the property rather than a lessor/lessee relationship. Finally, business goods were purchased by both

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

defendants with funds from any of the three accounts available to them, indicating co-ownership of the instrumentalities used in the businesses as well.

> FN11. *Gannett Co.*, C.A. No. 83C-JA-110, mem. op. at 2.

> FN12. *Id.*

*3 (9) The final element of a partnership is joint control.[FN13] As noted previously, decisions regarding purchases for the businesses were made by both defendants. Further, decisions regarding the payment of bills were also made by both defendants. For example, the bills for C.D. Harris Riding Stables were generally paid by Clyde, but if a problem arose, Elizabeth would make the decision as to whether the outstanding bill was paid out of the Penny Creek Farms account or the couple's personal account. Further, the defendants dealt with other businesses from whom they purchased goods as if they were agents for each other. Collectively, these facts indicate joint control over the management of the business.

> FN13. *Gannett Co.*, C.A. No. 83C-JA-110, mem. op. at 2.

(10) When viewed in the light most favorable to plaintiffs, there appears to be a genuine issue of fact as to whether the defendants were partners of C.D. Harris Riding Stables. Therefore, it is for a jury to determine whether a partnership relationship in fact existed, and summary judgment is inappropriate at this time.

NOW, THEREFORE, IT IS ORDERED that the motion for summary judgment of Defendant Elizabeth B. Harris is *DENIED*.

Del.Super.,1998.
Hill v. Harris
Not Reported in A.2d, 1998 WL 960763 (Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.