**TAB D**

Westlaw.

Not Reported in F.Supp.2d                                                                                                           Page 1
Not Reported in F.Supp.2d, 2003 WL 22839799 (S.D.N.Y.), RICO Bus.Disp.Guide 10,594
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents

United States District Court,S.D. New York.
JEROME M. SOBEL & CO. and Jerome M. Sobel,
Plaintiffs,
v.
Ira FLECK, Diane Fleck, Angela Patrizi, Steven Frazzetto, Bakhtaver Irani, M.D., Bakhtaver Irani, M.D., P.A., and Aspi Irani, Defendants.
No. 03 Civ.1041 RMB GWG.

Dec. 1, 2003.

*REPORT AND RECOMMENDATION*
GORENSTEIN, Magistrate J.
*1 Jerome M. Sobel & Company (the "Partnership") is a New York partnership engaged in the practice of certified public accounting. Its principal, Jerome M. Sobel, and the Partnership (collectively, "Sobel") have brought this action against Ira Fleck ("Fleck"), formerly a partner of the Partnership; Diane Fleck, Angela Patrizi, and Steven Frazzetto, formerly employees of the Partnership (collectively, the "employee defendants"); and Bakhtaver Irani, M.D., Bakhtaver Irani, M.D., P.A., and Aspi Irani, recipients of accounting services provided by Fleck (collectively, "the Iranis"). The complaint alleges six causes of action-two claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"): (i) violation of 18 U.S.C. § 1962(c); (ii) violation of 18 U.S.C. § 1962(d); and four state law claims: (iii) breach of contract (against Fleck); (iv) breach of fiduciary duty (against Fleck and the employee defendants); (v) conversion (against Fleck); (vi) common law fraud (against Fleck and the employee defendants). Sobel alleges that the Court has jurisdiction over their claims pursuant to 18 U.S.C. § 1964 (RICO), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1367 (supplemental jurisdiction). Complaint, filed February 14, 2003 ("Compl."), ¶ 9.

The defendants have moved to dismiss the complaint in its entirety for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b). Notice of Motion, filed July 8, 2003. For the reasons set forth below, the motion to dismiss should be granted.

I. *BACKGROUND*

The following allegations from the complaint are assumed to be true for purposes of this motion.

Jerome M. Sobel and Fleck entered into a partnership agreement on May 5, 1980, forming a general partnership under the name Jerome M. Sobel & Company. Compl. ¶ 31. Pursuant to the agreement, the two partners were to share net profits in a ratio equal to the fees paid by their respective clients, *id.* ¶ 32, and costs were to be borne by the Partnership, *id.* ¶ 37.

The complaint alleges that from at least 1991 continuing until September 2002, Fleck performed accounting-related services for the Iranis, expending the time and resources of the Partnership, while causing payments to be made to himself personally. *Id.* ¶¶ 40-41. Fleck failed to disclose such services and payments to Sobel, in violation of the partnership agreement. *Id.* ¶ 45. The complaint alleges that the Iranis agreed to this arrangement. *Id.* ¶ 41.

Sobel's complaint further alleges that the three employee defendants entered into oral agreements with Fleck at the time of their respective dates of employment, under which they agreed to assist him in performing services on behalf of the Iranis without disclosing the work or the fees to Sobel. Compl. ¶ 42. Frazzetto was hired by the Partnership on a per diem basis to perform general accounting services in or about 1992. *Id.* ¶ 110. Patrizi was hired on a full-time basis to perform general accounting services in or about 1999. *Id.* ¶ 108. Diane Fleck was hired by the Partnership on a part-time basis to perform administrative duties on or about December 31, 1999. *Id.* ¶ 112.

*2 The complaint charges all of the defendants with "repeated" violations of the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343. Compl. ¶¶ 80-81. In furtherance of the scheme to defraud, the defendants used the United States Postal Service, telephone, electronic mail, and/or facsimile transmittals to communicate between the Partnership's offices in New York and the Iranis' residences or business locations in New Jersey. *Id.* ¶¶ 11, 24-29, 51-61, 64. It is not alleged that any of the mail or wire communications were themselves fraudulent. Rather, the complaint alleges that they were the means by which Sobel, the employee

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 2
Not Reported in F.Supp.2d, 2003 WL 22839799 (S.D.N.Y.), RICO Bus.Disp.Guide 10,594
**(Cite as: Not Reported in F.Supp.2d)**

defendants and the Iranis communicated with each other or transmitted documents necessary for the completion of accounting services, such as tax returns. *See id.*

## II. *APPLICABLE LEGAL STANDARDS*

In resolving a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir.1989). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Nonetheless, the Court is not required to accept as true " 'conclusions of law or unwarranted deductions of fact.' " First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir.1994) (quoting 2A James William Moore & Jo Desha Lucas, *Moore's Federal Practice* ¶ 12.08, at 2266-69 (2d ed.1984)), *cert. denied,* 513 U.S. 1079 (1995). "This principle applies with even greater force in a fraud case governed by the more stringent pleading requirements of Fed.R.Civ.P. 9(b)." *Id.* It is well-established law in this Circuit that the particularity requirements of Fed.R.Civ.P. 9(b) are applicable to RICO claims where, as here, such claims are based on mail fraud under 18 U.S.C. § 1341 or wire fraud under 18 U.S.C. § 1343. McCoy v. Goldberg, 748 F.Supp. 146, 156 (S.D.N.Y.1990) (citing cases); *see also* Plount v. Am. Home Assurance Co., 668 F.Supp. 204, 206-07 (S.D.N.Y.1987) ("all of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions").

Fed.R.Civ.P. 9(b) requires that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." "To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." Cosmas, 886 F.2d at 11 (citing Goldman v.. Belden, 754 F.2d 1059, 1069-70 (2d Cir.1985)). However, while "the fraud alleged must be stated with particularity ... the requisite intent of the alleged [perpetrator] of the fraud need not be alleged with great specificity." Chill v. Gen. Elec. Co., 101 F.3d 263, 267 (2d Cir.1996) (citations omitted); *see also* Fed.R.Civ.P. 9(b) ("[T]he circumstances constituting fraud ... shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."). Nonetheless, a plaintiff must "allege facts that give rise to a strong inference of fraudulent intent." San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 812 (2d Cir.1996) (citations omitted).

*3 Given the potential breadth of claims and trebling of damages available under RICO, particular scrutiny is warranted in considering civil RICO claims. Because the mere assertion of a civil RICO claim "has an almost inevitable stigmatizing effect on those named as defendants[,] ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." Figueroa Ruiz v. Alegria, 896 F.2d 645, 650 (1st Cir.1990); *accord* Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y.1996), *aff'd,* 113 F.3d 1229 (2d Cir.1997). "RICO treble damages provisions are not available to remedy every possible injury that can, with some ingenuity, be attributed to a defendant's injurious conduct." Lerner v. Fleet Bank, N.A., 318 F.3d 113, 116 (2d Cir.), *cert. denied,*-S. Ct. -, 2003 WL 21909353 (Nov. 10, 2003). Thus, courts must attempt to distinguish between claims consistent with Congress' intentions in passing RICO-"protecting legitimate businesses from infiltration by organized crime," United States v. Porcelli, 865 F.2d 1352, 1362 (2d Cir.), *cert. denied,* 493 U.S. 810 (1989)-and traditional state court actions "cast in terms of RICO violations" simply to "gain access to treble damages and attorneys fees in federal court." Feirstein v. Nanbar Realty Corp., 963 F.Supp. 254, 257 (S.D.N.Y.1997) (citation omitted).

## III. *DISCUSSION*

### A. *Section 1962(c) Claim*

To state a claim for damages under 18 U.S.C. § 1962(c), a plaintiff must satisfy two pleading burdens. First, the plaintiff must allege that the defendants violated § 1962, the substantive RICO provision. This requires the plaintiff to allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                       Page 3
Not Reported in F.Supp.2d, 2003 WL 22839799 (S.D.N.Y.), RICO Bus.Disp.Guide 10,594
**(Cite as: Not Reported in F.Supp.2d)**

invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir.1983) (quoting 28 U.S.C. § 1962(a)-(c)), *cert. denied*, 465 U.S. 1025 (1984). Second, the plaintiff must allege that it was injured in its business or property by reason of a violation of § 1962. *See* 18 U.S.C. § 1964(c). Each of these "requirements ... must be established as to each individual defendant." *De Falco v. Bernas*, 244 F.3d 286, 306 (2d Cir.), *cert. denied*, 534 U.S. 891 (2001).

In the present motion, defendants argue that the complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b) on the grounds that: (1) Sobel has failed to establish any predicate acts of "racketeering activity" with regard to any defendant, *see* Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint, filed July 8, 2003 ("Def.Mem."), at 6-15; (2) the complaint fails to sufficiently allege a "pattern" of such "racketeering activity," *id.* at 15-18; and (3) Sobel has failed to show that a RICO violation caused his injuries, *id.* at 18-19. As discussed further below, the Court rejects the defendants' argument as to the first point but accepts their argument on the second point. Accordingly, it is unnecessary to reach the third point.

1. *Predicate Acts of Racketeering Activity*

*4 Section 1961(1) defines "racketeering activity" as certain criminal acts under state and federal law including mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. *See* 18 U.S.C. § 1961(1)(B). The statute requires a plaintiff to plead at least two predicate acts of racketeering activity. 18 U.S.C. § 1961(5). But "while two acts are necessary, they may not be sufficient." *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 n. 14 (1985). "A complaint alleging mail and wire fraud must show (1) the existence of a scheme to defraud, (2) defendant's knowing and intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir.1996) (citation omitted).

Defendants do not contest that the pleadings establish the existence of a scheme to defraud. Instead, they challenge the sufficiency of the mail and wire fraud allegations on the grounds that (a) the complaint fails to allege any specific use of interstate mails or wires, (b) no two acts have been attributed to any defendant, and (c) Sobel cannot establish the requisite fraudulent intent. Each of these arguments is addressed separately.

*a. Use of interstate mails or wires*

The defendants argue that the complaint is "fatally deficient" because it is "utterly devoid" of any facts regarding any specific use of the mail or interstate wires that would support a claim for mail or wire fraud. Def. Mem. at 8. For each of the years 1991 through 2001, the complaint describes accounting services performed by Fleck in detail-such as preparation of tax returns for specified individuals or entities. Following each description, the complaint alleges:

In furtherance of such scheme, tax documents were prepared and forwarded through the interstate mails, and via interstate e-mail and facsimile transmission between defendant Ira [Fleck's] office at Sobel Co. located in Long Island, New York, and the office of Irani, P.A. located in Rutherford, New Jersey, tax returns and other financial documents were filed in the State of New Jersey under the name of Sobel Co., and checks in payment for such services were mailed from Irani, P.A .... to defendant Ira [Fleck] ..., or arrangements were made between defendant Ira [Fleck] and defendant Bakhtaver [Irani, M.D.] or defendant Aspi [Irani] via interstate mail or e-mail or facsimile transmission to have the checks picked up or otherwise delivered to defendant Ira [Fleck].

Compl. ¶ ¶ 51-61, 64. No additional allegations are made regarding interstate mail or wire transactions. Defendants argue that this language is "conclusory and wholly unsubstantiated boilerplate" and thus insufficient to satisfy Sobel's pleading burden. Def. Mem. at 8.

At issue is whether Sobel's allegations must be specific as to the time, date and contents of the alleged mail and wire fraud. In *Mills v. Polar Molecular Corp.*, the Second Circuit stated broadly that "allegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent ." 12 F.3d 1170, 1176 (2d Cir.1993); *accord Bernstein v. Misk*, 948 F.Supp. 228, 239 (E.D.N.Y.1997) (summary legal conclusions that defendants "illegally used the United States mails in violation of 18 U.S.C. § 1341" found insufficient); *Qantel Corp. v. Niemuller*, 771 F.Supp. 1361, 1369 (S.D.N.Y.1991) (complaint inadequate

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 4
Not Reported in F.Supp.2d, 2003 WL 22839799 (S.D.N.Y.), RICO Bus.Disp.Guide 10,594
**(Cite as: Not Reported in F.Supp.2d)**

because plaintiff failed to identify the actual number of telephone calls made and the precise dates on which they occurred); McCoy, 748 F.Supp. at 153-54 (complaint alleging that documents were "delivered" or "sent" lacked the detail necessary for the court to determine that the United States mails were employed).

*5 But contrary to defendants' argument, Def. Mem. at 14-15, Mills does not require in all instances that a complaint identify specific fraudulent statements contained in the communications made via the interstate mail and wire. The Supreme Court has made clear that to satisfy the mail fraud statute, the mailings themselves need not actually contain false or misleading statements, as long as they further an underlying scheme that itself has a fraudulent, deceptive purpose. See Schmuck v. United States, 489 U.S. 705, 715 (1989) (upholding mail fraud conviction in which the routine mailing of title documents furthered fraudulent scheme to purchase used cars, roll back their odometers, and resell them at artificially inflated prices). Thus, even "innocent" mailings may "satisfy the mailing element under the mail fraud statute where the mailing is part of the execution of the scheme." Center Cadillac, Inc. v. Bank Leumi Trust Co. of N.Y., 808 F.Supp. 213, 228 (S.D.N.Y.1992) (citing Schmuck, 489 U.S. at 715), aff'd, 99 F.3d 401 (2d Cir.1995). To satisfy the element of mail fraud requiring the use of the mails in furtherance of a scheme to defraud, see 18 U.S.C. § 1341, the mailings need not be an essential part of the scheme as long as they are "incident to an essential part of the scheme," Pereira v. United States, 347 U.S. 1, 8 (1954); accord Schmuck, 489 U.S. at 715. The same rule applies to the wire fraud statute. See, e.g., United States v. Utley, 2000 WL 620218, at *1 (S.D.N.Y. May 12, 2000). Thus, to survive a motion to dismiss in such a case, the complaint need not identify false statements contained in the mailings or wire transmissions themselves.

Furthermore, where the mailings or wire transmissions themselves are not false or misleading, Rule 9(b)'s particularity requirements do not apply to the description of the mailings or wire transmissions. In *In re Sumitomo Copper Litigation,* the court held as follows:
In cases in which a plaintiff claims that specific statements or mailings were themselves fraudulent, i.e., themselves contained false or misleading information, the complaint should specify the fraud involved, identify the parties responsible for the fraud, and where and when the fraud occurred. See Mills, 12 F.3d at 1175 (citing [Cosmas, 886 F.2d at 11]); McLaughlin [v. Anderson], 962 F.2d [187,] 191 (2d Cir.1992); Luce v. Edelstein, 802 F.2d 49, 55 (2d Cir.1986).
In cases in which the plaintiff claims that the mails or wires were simply used in furtherance of a master plan to defraud, the communications need not have contained false or misleading information themselves. See Schmuck, 489 U.S. at 715. *In such cases, a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications, is sufficient to satisfy Rule 9(b).* Spira v. Nick, 876 F.Supp. 553, 559 (S.D.N.Y.1995); [Center Cadillac, 808 F.Supp. at 229].

*6 995 F.Supp. 451, 456 (S.D.N.Y.1998) (emphasis added). This holding is supported by logic. First, a description of a mailing in furtherance of a scheme to defraud-but which is not itself fraudulent-does not qualify as an "averment of fraud" within the meaning of Rule 9(b). Id.; Spira, 876 F.Supp. at 559. Second, the holding is consistent with the notice pleading philosophy enunciated in Fed.R.Civ.P. 8(a) and a plaintiff's obvious need for discovery when knowledge of the mailings is in the defendant's exclusive possession. See Ouaknine v. MacFarlane, 897 F.2d 75, 79 (2d Cir.1990) ( "Rule 9(b), however, must be read together with Rule 8(a) which requires only a 'short and plain statement' of the claims for relief."); New England Data Servs., Inc. v. Becher, 829 F.2d 286, 289-90 (1st Cir.1987) (where mail or wire fraud allegations are insufficient under Rule 9(b), dismissal should not be automatic; rather, courts should consider, *inter alia,* whether the information is in defendant's exclusive control); Center Cadillac, 808 F.Supp. at 228 (complaint sufficient where it indicates general content of misrepresentations and time period and sufficiently apprizes defendants of their involvement in the scheme); see also Calabrese v. CSC Holdings, Inc., 2003 WL 22052824, at *6 (E.D.N.Y. Aug. 13, 2003) (where a plaintiff alleges that mail and wire fraud were in furtherance of a larger scheme to defraud, "Rule 9(b) only requires the plaintiff to delineate, with adequate particularity, the specific circumstances constituting the overall fraudulent scheme").

Here, the overall scheme to defraud by Fleck has been described in detail and the complaint clearly explains the relationship between the mailings or wire communications and the scheme to defraud. Accordingly, it is sufficient to satisfy Rule 9(b).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 5
Not Reported in F.Supp.2d, 2003 WL 22839799 (S.D.N.Y.), RICO Bus.Disp.Guide 10,594
**(Cite as: Not Reported in F.Supp.2d)**

*b. Attributing acts to each defendant*

"The focus of section 1962(c) is on the individual patterns of racketeering activity engaged in by a defendant, rather than on the collective activities of the members of the enterprise." *United States v. Persico,* 832 F.2d 705, 714 (2d Cir.1987), *cert. denied,* 486 U.S. 1022 (1988). In contrast, § 1962(d) focuses on the collective activities of all the members. *See id.* Thus, to establish a violation of § 1962(c), plaintiffs must allege that each defendant committed at least two predicate acts of racketeering activity. *See De Falco,* 244 F.3d at 306. This is consistent with Rule 9(b)'s particularity requirement where multiple defendants are charged with fraud. *See DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." (citation omitted)). Under the mail and wire fraud statutes, it is not necessary to allege, however, that the defendants have personally used the mails or wires; it is sufficient that a defendant "causes" the use of the mails or wires. *See* 18 U.S.C. §§ 1341, 1343. Thus, "it is not significant for purposes of the mail fraud statute that a third-party, rather than defendant, wrote and sent the letter at issue, provid[ed] ... the defendants could reasonably have foreseen that the third-party would use the mail in the ordinary course of business as a result of defendants' act." *United States v. Bortnovsky,* 879 F.2d 30, 36 (2d Cir.1989).

*7 Here, the complaint alleges that each of the defendants are directly connected to the scheme to defraud perpetrated by Fleck. The scheme consisted of Fleck and the employee defendants performing numerous accounting-related services for the Iranis during the years 1991-2002 for which payments were kept secret in contravention of the partnership agreement. With respect to the Iranis, the complaint alleges that they agreed to pay Fleck "personally, with no amount of such payment to be disclosed to plaintiffs or included in the total fees deposited in the Partnership account." Compl. ¶ 41.[FN1] With respect to the employee defendants, it is likewise alleged that they "each agreed that they would act in concert to assist [Fleck] in performing accounting-related services ... without disclosure of any of this work to Sobel or Sobel Co., and without disclosing any of the fees generated from this work to Sobel or Sobel Co." *Id.* ¶ 42.

FN1. This allegation is fleshed out in an affidavit filed by Jerome M. Sobel in which it is alleged that the Iranis "were aware that none of the fees paid to Fleck were shared by the Partnership, and intentionally concealed this fact from me and Sobel Co. for their own benefit." Affidavit in Opposition to Motion to Stay Discovery and For Leave to Amend Complaint, filed August 1, 2003 ("Sobel Aff."), ¶ 5.

For each of the twelve years, the complaint details numerous tax filings, audits and other accounting services provided to the Iranis and alleges that the mails and/or wires were used to prepare and file these documents. *See* Compl. ¶¶ 51-61, 64. Although the complaint is unable to specifically attribute any particular predicate act to a particular defendant, the allegations are sufficient because each of the defendants would have expected that Fleck's performance of accounting services would result in the mailing of numerous documents between Fleck and the Iranis and/or wire communications over the course of many years of providing such services.

In sum, the complaint alleges a sufficiently close connection between the defendants and the scheme to provide accounting services in violation of the partnership agreement that each of the defendants "could reasonably have foreseen" that the mail or wires would be used "in the ordinary course of business as a result of" their acts. *Bortnovsky,* 879 F.2d at 36.

*c. Fraudulent intent*

Fed.R.Civ.P. 9(b) does not require intent to be pled with particularity. However, a plaintiff must "allege facts that give rise to a strong inference of fraudulent intent." *San Leandro,* 75 F.3d at 812. This can be done in two ways, either "(1) by identifying circumstances indicating conscious behavior by the defendant through 'correspondingly' strong allegations; or (2) by alleging a motive for committing fraud and a clear opportunity for doing so." *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.,* 85 F.Supp.2d 282, 295 (S.D.N.Y.2000) (citing *Powers v. British Vita, P.L.C.,* 57 F.3d 176, 184 (2d Cir.1995)), *aff'd,* 2001 WL 46565 (2d Cir. Jan. 18, 2001). The Second Circuit has stated that " '[m]otive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged.' " *Chill,* 101 F.3d at 268

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                               Page 6
Not Reported in F.Supp.2d, 2003 WL 22839799 (S.D.N.Y.), RICO Bus.Disp.Guide 10,594
**(Cite as: Not Reported in F.Supp.2d)**

(quoting *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1130 (2d Cir.1994)).

*8 Defendants do not argue that the complaint fails to establish Fleck's intent to defraud Sobel. Nonetheless, it bears noting that the complaint sufficiently alleges Fleck's intent through allegations of his "conscious behavior." For example, the complaint states that Fleck "made false and misleading statements to Plaintiffs Sobel and Sobel Co. each year," Compl. ¶ 46, "deposited the checks received from [the Iranis] into several of his personal accounts," *id.* ¶ 66, "directed or influenced the unlawful activities" of the alleged enterprise, *id.* ¶ 73, and "utilized the employees, property, resources, and services of the Partnership ... without the knowledge or consent of Sobel," *id.* ¶ 70. In addition, the complaint sufficiently alleges concrete benefits-specifically, payments-Fleck realized as a consequence of his omissions. *Id.* ¶ 65.

The Iranis argue that the complaint "alleges nothing more than their receipt of accounting services and their payment for the same to Defendant Ira Fleck, then a partner in the Plaintiff partnership." Def. Mem. at 12. While that is arguably true for the complaint itself, an affidavit by Sobel submitted in response to the motion to dismiss alleges specifically that the Iranis "were aware that none of the fees paid to Fleck were shared by the Partnership, and intentionally concealed this fact from me and Sobel Co. *for their own benefit."* Sobel Aff. ¶ 5. Despite having the opportunity to do so, Fleck made no argument in response to this affidavit suggesting that it would be insufficient to show the Iranis' fraudulent intent. Accordingly, while the Court could dismiss the complaint as it is, it would be something of an empty exercise since the complaint as supplemented by this allegation "allege[s] a motive for committing fraud," *Odyssey Re,* 85 F.Supp.2d at 295, and thus meets the requirement that Sobel allege fraudulent intent.

With regard to the employee defendants, the complaint alleges that they "each agreed that they would act in concert to assist [Fleck] in performing accounting-related services ... without disclosure of any of this work to Sobel or Sobel Co., and without disclosing any of the fees generated from this work to Sobel or Sobel Co." Compl. ¶ 42. Sobel also alleges that the employee defendants "destroyed and concealed material documents relevant to the fees." *Id.* ¶ 48. In the affidavit submitted in response to the motion to dismiss, Sobel alleges that the employee defendants "agreed ... to conceal from [Jerome Sobel] fees generated by [the Iranis] that were paid directly to Fleck, and to conceal from [Jerome Sobel] material documents in connection with the work performed by Fleck and the fees generated." Sobel Aff. ¶ 6. Taken with the allegations of the original complaint, these allegations are sufficient to show the "conscious behavior" of the employee defendants, demonstrating their fraudulent intent.

*9 In sum, the complaint as supplemented by the affidavit sufficiently alleges predicate acts of wire and mail fraud against all the defendants.

### 2. *Pattern of Racketeering Activity*

RICO defines a "pattern of racketeering activity" as "at least two acts of racketeering activity" committed within a ten-year period. 18 U.S.C. § 1961(5). The Supreme Court has held that to establish a "pattern" of racketeering activity, plaintiffs "must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239 (1989). "Continuity" of criminal activity in this context encompasses "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. The complaint here alleges a series of predicate acts of finite duration ending in September 2002. *See* Compl. ¶¶ 78-79. Accordingly, Sobel does not attempt to establish open-ended continuity. *See Cofacredit, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 242 (2d Cir.1999) (to satisfy open-ended continuity, plaintiff must show the "threat of continuing criminal activity beyond the period during which the predicate acts were performed"). Thus, the issue here is whether closed-ended continuity has been alleged.

In the Second Circuit, the existence of closed-ended continuity is measured "by weighing a variety of non-dispositive features, including, *inter alia,* the length of time over which the alleged predicated acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes." *GICC Capital Corp. v. Tech. Fin. Group, Inc.,* 67 F.3d 463, 467 (2d Cir.1995) (citations omitted), *cert. denied,* 518 U.S. 1017 (1996); *accord Cofacredit,* 187 F.3d at 242. Although continuity is "centrally a temporal concept," *H.J. Inc.,* 492 U.S. at 242, " 'a scheme's duration alone is not dispositive,' " *Weizmann Inst. of Sci. v. Neschis,* 229 F.Supp.2d 234, 256 (S.D.N.Y.2002) (quoting *Pier Connection, Inc. v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 7
Not Reported in F.Supp.2d, 2003 WL 22839799 (S.D.N.Y.), RICO Bus.Disp.Guide 10,594
**(Cite as: Not Reported in F.Supp.2d)**

_Lakhani,_ 907 F.Supp. 72, 78 (S.D.N.Y.1995)); _see also Schnell v. Conseco, Inc.,_ 43 F.Supp.2d 438, 446 (S.D.N.Y.1999) ("While, when taken in isolation, the time period of the alleged racketeering conduct may support a finding of closed-ended continuity, such a finding is not automatic in light of the other factors to be considered."); _Pier Connection,_ 907 F.Supp. at 75 ("[i]n determining whether continuity exists the court should not limit its consideration to the duration of the scheme" (citation omitted)). Rather, a court must examine the "overall context in which the acts took place." _United States v. Kaplan,_ 886 F.2d 536, 542 (2d Cir.1989), _cert. denied,_ 493 U.S. 1076 (1990). Each of the _GICC Capital_ factors is considered separately.

_a. Duration of the scheme_

**\*10** Turning first to the temporal aspect of Sobel's allegations, the complaint alleges that Fleck, with the collusion of the Iranis and the employee defendants, "made false and deceptive statements" on numerous occasions regarding the nature and extent of the fees he was receiving. Compl. ¶ ¶ 6, 41-42, 46. The underlying scheme to defraud Sobel is alleged to have begun in 1991 and to have ended in 2002, although no details have been provided as to when the misrepresentations were made. None of the employee defendants could have been involved in this scheme for the entire time period given that they were hired by the Partnership at various times after 1991-two as late as 1999. _Id._ ¶ ¶ 108, 110, 112.

To establish closed-ended continuity, a plaintiff is required to prove " 'a series of related predicates extending over a substantial period of time." ' _Cofacredit,_ 187 F.3d at 242 (quoting _H.J. Inc.,_ 492 U.S. at 242). _H.J. Inc._ indicates that "[p]redicate acts extending over a few weeks or months ... do not satisfy this requirement." 492 U.S. at 242. Since the Supreme Court decided _H.J. Inc._ the Second Circuit itself has noted that it has not found closed-ended continuity in an alleged pattern of racketeering activity that lasted less than two years. _De Falco,_ 244 F.3d at 321; _Cofacredit,_ 187 F.3d at 242. However, there is no bright-line test for determining whether a period of time is "substantial" for the purposes of closed-ended continuity. Accepting Sobel's allegation that the employee defendants were each involved in the scheme to defraud from the outset of their respective dates of employment, Compl. ¶ 42, the shortest duration of any individual defendant's fraudulent activities was approximately two years and nine months; the duration of Fleck's and the Iranis' activities is alleged to have spanned eleven years and nine months. All in all, this factor weighs in favor of finding continuity.

_b. Number and variety of acts_

The consideration of closed-ended continuity normally focuses on the predicate acts alleged. But one salient feature of Sobel's complaint is that the predicate acts of mail and wire fraud were of the "innocent" variety-that is, they are not alleged to have themselves been fraudulent. Rather, they were merely the instrumentalities used to effectuate Fleck's fraudulent scheme. Courts that have addressed the RICO "pattern" requirement in cases of this kind have recognized that the "pattern" requirement must be evaluated in the context of the overall fraudulent scheme rather than based on any "innocent" mailing or wire transmissions. For example, in _Kehr Packages, Inc. v. Fidelcor, Inc.,_ the Third Circuit noted that "[a]lthough the mailing is the actual criminal act, the instances of deceit constituting the underlying fraudulent scheme are more relevant to the continuity analysis." 926 F.2d 1406, 1414 (3d Cir.), _cert. denied,_ 501 U.S. 1222 (1991). Citing _Kehr Packages,_ the Eighth Circuit held that "mailings are insufficient to establish the continuity factor unless they contain misrepresentations themselves. The court must look to the underlying scheme to defraud." _Wisdom v. First Midwest Bank,_ 167 F.3d 402, 407 (8th Cir.1999). The Fourth and the Seventh Circuits have come to similar conclusions. _See Al-Abood ex rel. Al-Abood v. El-Shamari,_ 217 F.3d 225, 238 (4th Cir.2000) ("[W]e are cautious about basing a RICO claim on predicate acts of mail and wire fraud because it will be the unusual fraud that does not enlist the mails or wires in its service at least twice." (internal quotation marks and citations omitted)); _Vicom, Inc. v. Harbridge Merch. Servs., Inc.,_ 20 F.3d 771, 781 (7th Cir.1994) ("The Seventh Circuit ... does not look favorably on relying on many instances of mail and wire fraud to form a pattern." (citations omitted)).

**\*11** Indeed, focusing the continuity analysis on otherwise "innocent" acts of mail or wire fraud "would extend RICO's scope to allegations of mail fraud based upon two or more otherwise routine business mailings, a result we believe Congress did not intend." _Kehr,_ 926 F.2d at 1414. This principle has also been applied in this District. In concluding that closed-ended continuity had not been alleged with respect to a fraudulent scheme, the court in _Schnell_ noted that "[w]hile plaintiff's complaint

Not Reported in F.Supp.2d                                                                                           Page 8
Not Reported in F.Supp.2d, 2003 WL 22839799 (S.D.N.Y.), RICO Bus.Disp.Guide 10,594
**(Cite as: Not Reported in F.Supp.2d)**

alleges a number of predicate mail and wire fraud acts in furtherance of this scheme, these acts are in themselves innocuous and are not alleged to be false or misleading in any way." 43 F.Supp.2d at 446. Tellingly, the only case cited by Sobel other than *H.J. Inc.* that found closed-ended continuity, *see* Memorandum of Law in Opposition to Defendants' Motion to Dismiss, filed August 1, 2003, at 17-19, is *Com-Tech Associates v. Computer Associates International, Inc.,* 753 F.Supp. 1078 (E.D.N.Y.1990), *aff'd,* 938 F.2d 1574 (2d Cir.1991), which involved multiple predicate acts of mail fraud that were not "innocent" but which themselves contained fraudulent statements. *See* id. at 1091.

The Second Circuit has warned that "courts must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO." *Schlaifer Nance & Co. v. Estate of Warhol,* 119 F.3d 91, 98 (2d Cir.1997) (acts relating to a single contract and a single scheme to defraud were not continuous for RICO purposes even though they spanned over three years). That is precisely what is occurring here. The predicate acts of mailings and wire communications alleged by Sobel were not inherently unlawful. The fees obtained by Fleck resulted from his otherwise lawful performance of accounting services. The mail and wires were used to conduct this lawful business. There is no allegation that any fax, phone call, tax return or mailing contained any fraudulent statement. Thus, the complaint does not allege a "number and variety" of predicate acts for purposes of addressing the continuity requirement. Instead, there was a single unitary fraudulent scheme with no disparate acts of illegal conduct. The only improper conduct was the continuing failure to disclose the receipt of accounting fees to Sobel. Thus, this factor weighs against a finding of closed-ended continuity.

*c. Presence of separate schemes to defraud*

As just discussed, Sobel has alleged only one scheme to defraud. Furthermore, that scheme had only one limited goal: to deprive Sobel of certain revenues. Although it is not necessary to allege multiple schemes, the cases finding no closed-ended continuity have typically involved a single narrow scheme such as occurred here. *See, e.g., Weizmann Inst.,* 229 F.Supp.2d at 257 (single fraudulent scheme to gain control of decedent's assets); *Schnell,* 43 F.Supp.2d at 445-46 (scheme to defraud with the single goal of seizing control of a corporation); *Feirstein,* 963 F.Supp. at 260 (acts of mail fraud all related to single scheme not to pay New York taxes); *Bernstein,* 948 F.Supp. at 238 (single, non-complex scheme to obtain financing for a purchase of property and then default on the loan); *Pier Connection,* 907 F.Supp. at 78 (using "several different tactics" does not change the nature of a single scheme with the goal of seizing control of plaintiff's business). Thus, this factor too favors the defendants.

*d. Number of participants*

*12 With respect to the number of participants, Sobel has alleged that several individuals or entities participated in the scheme to defraud: Fleck, the employee defendants and the Iranis. However, it is clear from the complaint that Fleck was the major perpetrator in that he "directed" the unlawful activities, Compl. ¶ 73, "utilized" Partnership employees and resources, *id.* ¶ 70, and realized the benefits of the scheme, *id.* ¶ 65. Indeed, Fleck alone entered into the partnership agreement with Sobel, thereby agreeing to share all revenues. *Id.* ¶¶ 31-34. As for the employee defendants, apart from their work on behalf of the Iranis, they were apparently otherwise performing their routine job responsibilities. Likewise, the Iranis were receiving and paying for routine accounting services, even if it was not in accordance with the agreement between Fleck and Sobel. There are no allegations that either the employee defendants or the Iranis played anything but peripheral roles in the scheme to defraud. In *Bernstein,* the fact that one person perpetrated the scheme to defraud, using various other individual and entities as "fronts," was relevant in determining that closed-ended continuity had not been established. 948 F.Supp. at 232, 238. Fleck's overarching control of the scheme to defraud Sobel likewise weighs against closed-ended continuity.

*e. Number of victims*

The last *GICC Capital* factor is the number of victims involved. *See* 67 F.3d at 467. Here, Sobel is the only victim. The Second Circuit has noted that the presence of only one victim does not by itself preclude a RICO pattern. *Cosmos Forms Ltd. v. Guardian Life Ins. Co. of Am.,* 113 F.3d 308, 310 (2d Cir.1997). Nonetheless, many cases finding no closed-ended continuity have pointed to the existence of only one such victim. *See, e.g., Weizmann Inst.,* 229 F.Supp.2d at 257 (plaintiffs, other potential beneficiaries of decedent's assets, were the sole victims); *Schnell,* 43 F.Supp.2d at 446 (alleged

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22839799 (S.D.N.Y.), RICO Bus.Disp.Guide 10,594
(Cite as: Not Reported in F.Supp.2d)

Page 9

fraudulent seizure of corporation harmed only a single class of victims - the corporation's public shareholders); *Feirstein,* 963 F.Supp. at 260 ("This narrow class of alleged victims is not the kind of broad-based unlawful activity that RICO was designed to address."); *Bernstein,* 948 F.Supp. at 238 (criminal activity was focused on only one group of purchasers); *Pier Connection,* 907 F.Supp. at 78 (sole victim was a single firm in the garment trade). Thus, the presence of only Sobel as the victim is a factor favoring the defendants.

### f. Summary

In sum, the only *GICC Capital* factor that favors a finding of closed-ended continuity is the duration of the fraudulent scheme. All of the other factors counsel against such a finding, including the lack of variety among the predicate acts, the presence of only one scheme with a narrow goal, the small number of participants and the presence of only one victim. In the end, these factors far outweigh the duration of the fraudulent conduct. *See, e.g., Al-Abood,* 217 F.3d at 238 ("[T]he narrow focus of the scheme here-essentially a dispute between formerly close family friends-combined with the commonplace predicate acts [of mail and wire fraud] persuades us that the facts here do not satisfy the pattern requirement."). This case is similar in many ways to *Lefkowitz v. Bank of New York,* 2003 WL 22480049 (S.D.N.Y. Oct. 31, 2003), in which the court found no closed-ended continuity in a scheme that consisted of alleged fraudulent acts spanning a nine-year period, *id.* at *1, where sixteen predicate RICO claims were alleged, but where the complaint "essentially alleg[ed] that a small number of parties engaged in activities with a narrow purpose directed at a single or at most three victims: namely, defrauding [plaintiff]," *id.* at *9. In dismissing the RICO claims, *Lefkowitz* noted that "[c]ourts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of a closed or open pattern of continuity." *Id.* at *8 (citing cases); *accord Bernstein,* 948 F.Supp. at 238 ("Courts in the Second Circuit have generally held that where the conduct at issue involves a limited number of perpetrators and victims and a limited goal, the conduct is lacking in closed-ended continuity."). Case law is replete with instances where the narrowness of a scheme has resulted in a finding that there was no closed-ended continuity. *See, e.g., Weizmann Inst.,* 229 F.Supp.2d at 256-57; *Schnell,* 43 F.Supp.2d at 445-46; *Feirstein,* 963 F.Supp. at 260-61; *Bernstein,* 948 F.Supp. at 238; *Pier Connection,* 907 F.Supp. at 78.

\*13 Because Sobel has failed to sufficiently allege a "pattern" of racketeering activity, the § 1962(c) claim should be dismissed. Accordingly, the Court need not reach the parties' arguments regarding RICO causation.

### B. *Section 1962(d) Conspiracy Claim*

Section 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." To establish the existence of a RICO conspiracy, a plaintiff must prove "the existence of an agreement to violate RICO's substantive provisions." *Cofacredit,* 187 F.3d at 244 (internal quotation marks and citation omitted). Because a substantive violation of RICO has not been adequately pled, the conspiracy claim must necessarily fail. *See, e.g., Discon, Inc. v. NYNEX Corp.,* 93 F.3d 1055, 1064 (2d Cir.1996) ("Any claim under § 1962(d) based on a conspiracy to violate the other subsections of § 1962 necessarily must fail if the substantive claims are themselves deficient." (quoting *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1191 (3d Cir.1993))), *vacated on other grounds,* 525 U.S. 128 (1998); *Bernstein,* 948 F.Supp. at 241 n. 4 ("dismissal of the substantive RICO claims mandates dismissal of plaintiffs' RICO conspiracy claim as well" (citing *Purgess v. Sharrock,* 806 F.Supp. 1102, 1110 n. 9 (S.D.N.Y.1992))). Thus, Sobel's § 1962(d) claims should also be dismissed.

### C. *State Law Claims*

The complaint includes four state law claims against Fleck and the employee defendants. *See* Compl. ¶ ¶ 91-131. Federal courts have jurisdiction over state law claims if the state and federal claims "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966); *see also* 28 U.S.C. § 1367(a) ("the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III"). However, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Gibbs,* 383 U.S. at 726. Furthermore, 28 U.S.C. §

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2003 WL 22839799 (S.D.N.Y.), RICO Bus.Disp.Guide 10,594  
**(Cite as: Not Reported in F.Supp.2d)**

Page 10

1367(c) gives district courts discretion to decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction." Here, the RICO claims provided the only basis for federal jurisdiction. Thus, the Court should decline to exercise supplemental jurisdiction over Sobel's state law claims.

IV. *MOTION TO AMEND*

Sobel seeks leave to amend the complaint in the event that the Court finds the complaint insufficient. *See* Sobel Aff. ¶¶ 1, 14. Rule 15(a) provides that "leave [to amend a pleading] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Thus, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991) (citing cases), *cert. denied*, 503 U.S. 960 (1992). While it seems unlikely that Sobel can cure the problem of the failure to show closed-ended continuity, leave to amend should be granted since no previous amendments have been made to the complaint and the Court cannot say beyond doubt that Sobel is not aware of additional facts that would cure this defect.

*14 Accordingly, Sobel should be granted leave to file an amended complaint should he be able to plead facts that would cure the deficiencies described herein.

*Conclusion*

For the foregoing reasons, the defendants' motion to dismiss should be granted with respect to the entire complaint with leave to replead within thirty days.

PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to file any objections. *See also* Fed.R.Civ.P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Honorable Richard M. Berman, 40 Centre Street, New York, New York 10007, and to the undersigned at the same address. Any request for an extension of time to file objections must be directed to Judge Berman. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985).

S.D.N.Y.,2003.  
Jerome M. Sobel & Co. v. Fleck  
Not Reported in F.Supp.2d, 2003 WL 22839799 (S.D.N.Y.), RICO Bus.Disp.Guide 10,594

Briefs and Other Related Documents (Back to top)

• 1:03cv01041 (Docket) (Feb. 14, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.