**TAB H**

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 603496 (S.D.N.Y.)
**(Cite as: 1997 WL 603496 (S.D.N.Y.))**

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
REDTAIL LEASING, INC., Hull Trading Company, Robert J. Rosener, and Steven Paskvallich, individually and on behalf of all others similarly situated,
Plaintiffs,
v.
Leonard BELLEZZA, Michael Borlinghaus, Jeffrey F. Green, Joseph P. Greenwald, Heinz Grein, Steven Krysty, Joanne Latona-Administratrix of The Estate of Angelo Latona, Joseph Latona, Val Maiale, Christopher M. Garvey, Darrin Gleeman, Seymour Gleeman, Edwin Karger, and David Simon, Defendants.
**No. 95 Civ. 5191(JFK).**

Sept. 30, 1997.

Sachnoff & Weaver, Ltd., Chicago, IL, of Counsel John W. Moynihan, Pollack & Greene New York City, of Counsel Alan Pollack, for plaintiff.

Weil, Gotshal & Manges Llp New York City, of Counsel Greg A. Danilow, Jason M. Halper, Michael J. Aiello, for defendants Darrin Gleeman, Seymour Gleeman and Edwin Karger.

KEENAN, J.

OPINION and ORDER

*1 Before the Court is the joint motion of Defendants Darrin Gleeman, Seymour Gleeman and Edwin Karger to dismiss the first amended class action complaint, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), and Plaintiffs' motion for class certification, pursuant to Fed.R.Civ.P. 23(a) and (b)(3). For the reasons stated below, the Court grants the Moving Defendants' motion to dismiss, and the Court grants Plaintiffs' motion for class certification.

***Background***

Plaintiffs allege that beginning in 1989, a group of people, including the Moving Defendants, created an organization to obtain material, nonpublic inside information regarding public entities for the purpose of disseminating that information among the group so that the members of the group could engage in illegal insider trading in those securities. Among the securities that Plaintiffs claim that this insider trading ring traded by using the material, nonpublic inside information were Ambase Corp., ACCO/Swingline, AT & T, Birmingham Steel Corp., Chubb, Columbia Pictures, Kay Jeweler Inc ., Motel 6, L.P., R.H. Macy & Co., Northwest Airlines, Time Warner, Inc., United Airlines, and Wang Laboratories.

According to the Amended Complaint, Defendant Christopher Garvey, who worked as a paralegal at the law firm Skadden, Arps, Slate, Meagher & Flom, would obtain material, nonpublic inside information and provide this inside information to Defendant Darrin Gleeman, who was Garvey's roommate and friend. *See* Am.Compl. (¶ (¶ 12-13, 43. While the Amended Complaint states that the insider trading ring had several sources of material, nonpublic information, Plaintiffs allege that Garvey was the "primary source" of the material inside information central to the insider trading ring's conspiracy. *See* Am.Compl. (¶ (¶ 41, 48. Darrin Gleeman would allegedly provide Garvey's inside information to his father, Defendant Seymour Gleeman, who was employed by IBM in New York City. *See* Am.Compl. (¶ 43. On several occasions, Seymour Gleeman allegedly purchased through foreign accounts, common stock and call options for the Garvey-recommended securities. To conceal his identity, Seymour Gleeman allegedly used false identification to open various trading accounts in 1989 and 1990 in Luxembourg and Austria. Id. Seymour Gleeman would also provide Garvey's inside information to Defendant Edwin Karger, who was an IBM coworker of Seymour Gleeman. *See* Am .Compl. (¶ 44. Karger would then provide the Garvey inside information to his friend Defendant Leonard Bellezza. Both Karger and Bellezza would then allegedly trade on the inside information, and Bellezza would allegedly provide the information to others in the insider trading ring. Defendants Seymour and Darrin Gleeman allegedly shared in the kickbacks paid to Garvey for obtaining and sharing the inside information with the ring. *See* Am.Compl. (¶ (¶ 42-43.

The focus of this lawsuit concerns the insider trading

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 603496 (S.D.N.Y.)
**(Cite as: 1997 WL 603496 (S.D.N.Y.))**

Page 2

ring's alleged utilization of material, nonpublic information regarding the proposed acquisition of Motel 6, L.P., a Dallas-based national chain of owner-operated economy motels, by Accor, S.A., a French-based company. The insider trading ring was allegedly part of a conspiracy to trade on highly sensitive inside information about tender offer negotiations occurring in New York between Motel 6's largest shareholder, Kohlberg Kravis Roberts & Company, and Accor. This alleged insider trading on the Motel 6 shares and call options occurred between May 18, 1990 and July 12, 1990, when Accor made a public announcement that it would made a tender offer for Motel 6. Plaintiffs sold Motel 6 shares and call options contemporaneously with Defendants' purchase of the same during the alleged insider trading period of May 18, 1990 to July 12, 1990. Plaintiffs claim that through the insider trading in Motel 6 securities, Defendants generated illegal profits in excess of $4 million, and that Plaintiffs and the proposed class suffered millions of dollars in damages due to Defendants' misconduct in the sharing of and trading on the material, nonpublic inside information concerning the Accor tender offer.

**\*2** While the Amended Complaint alleges that the inside information came primarily from Garvey, who informed Darrin Gleeman, who then informed his father Seymour Gleeman, who in turn informed Defendant Karger, who informed Bellezza and Bellezza tipped off the others involved, this usual chain of events did not happen with regard to material, nonpublic inside information concerning the Motel 6 tender offer negotiations. Rather, the inside information came from another source and was disseminated in a different manner. Hugh Thrasher, executive vice-president of Motel 6 in charge of communication at the time of the tender offer negotiations, allegedly tipped his friend Carl Harris about the tender offer negotiations. *See* Am.Compl. (¶ (¶ 102-03. Harris then allegedly told Gregg Shawzin, who then told John Anderson. *See* Am.Compl. (¶ 107, 111. Anderson purportedly tipped off Defendant Joseph Greenwald, who allegedly tipped Defendants Jeffrey Green and Joseph Latona. *See* Am. Compl. (¶ (¶ 113, 118. Defendants Green and Latona allegedly tipped Defendant David Simon. *See* Am.Compl. (¶ 124. Defendant Latona also allegedly tipped Defendant Michael Borlinghaus, who then allegedly tipped Defendants Heinz Grein, Steven Krysty, and Leonard Bellezza. *See* Am.Compl. (¶ (¶ 130, 131, 139, 141. Defendant Bellezza allegedly tipped Defendant Karger, who allegedly tipped Defendant Seymour Gleeman. *See* Am.Compl. (¶ (¶ 143, 145. All of these individuals are alleged to have purchased Motel 6 stock or call options based upon this material, nonpublic inside information.

Based upon the insider trading ring's alleged activities, Plaintiffs filed this instant action stating claims for federal RICO violations, violations of § 10(b), Rule 10b-5, § 14(e), and Rule 14e-5 of the Exchange Act, as well as state law claims for common law fraud, unjust enrichment and violations of New York's Consumer Protection Act.

Defendants Darrin Gleeman, Seymour Gleeman and Edwin Karger now move jointly to dismiss all claims against them in this action, on the grounds that Plaintiffs have failed to state a claim upon which relief may be granted. Plaintiffs have named the Moving Defendants in the first, third, fourth, fifth, sixth, and seventh claims for relief. Plaintiffs do not seek relief against the Moving Defendants in the second claim for relief, pursuant to § § 10(b) and 14(e) of the Exchange Act and Rules 10b-5 and 14e-3 promulgated thereunder.

### *Discussion*
### A. The Motion to Dismiss

A motion to dismiss for failure to state a claim should be granted only if it appears beyond doubt that a plaintiff can prove no set of facts in support of a claim that would entitle the plaintiff to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The factual allegations set forth in the complaint must be accepted as true, *see Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), and the court must view those allegations in the light most favorable to the pleader. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Nevertheless, the complaint must contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory. *See Connolly v. Havens,* 763 F.Supp. 6, 9 (S.D.N.Y.1991).

### 1. Section 1962(b)--RICO Acquisition Claim

**\*3** The third claim for relief alleges a violation of 18 U.S.C. § 1962(b). Section 1962(b) provides:
It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

18 U.S.C. § 1962(b). To state a claim under § 1962(b), a plaintiff must plead that they were injured by a defendants' acquisition of an interest in an enterprise, as distinct from an injury resulting from the pattern of racketeering activity, or commission of predicate acts. *See* Discon, Inc. v. Nynex Corp., 93 F.3d 1055, 1062-63 (2d Cir.1996) (finding that the plaintiff did not state a claim under § 1962(b) because the plaintiff "has not alleged any injury stemming from the 'acquisition or maintenance' of [the enterprise] by [the defendant], only injuries resulting from the commission of predicate acts"); *Lightning Lube, Inc. v. Citco Corp.,* 4 F.2d 1153, 1190 (3d Cir.1993) ("in order to recover under [ § 1962(b) ], a plaintiff must show injury from the defendant's acquisition or control of an interest in a RICO enterprise, in addition to injury from the predicate acts."). As explained by Judge Sand in *Dornberger v. Metropolitan Life Ins. Co.,* 961 F.Supp. 506, 525 (S.D.N.Y.1997),

> to state a claim under § 1962(b), a plaintiff must allege an injury by reason of the defendant's acquisition or maintenance of an interest in or control of an enterprise ... As with § 1962(a), it is not sufficient merely to allege an injury caused by the predicate acts themselves ... The rationale for this "acquisition injury requirement analogous to that of the investment injury requirement of § 1962(a)--the essence of a § 1962(b) violation is not the commission of predicate acts, but rather the acquisition or maintenance of an interest in or control of an enterprise ... Thus, a plaintiff cannot recover under § 1962(b) unless he alleges a distinct injury caused not by predicate acts but by the defendant's acquisition or maintenance of an interest in or control of an enterprise.

*Id.* at 525; *see also Lightning Lube,* 4 F.3d at 1190 ("Such an injury [[[under § 1962(b) ] may be shown, for example, where the owner of an enterprise infiltrated by the defendant as a result of racketeering activities is injured by the defendant's acquisition or control of his enterprise." (citations omitted)). A plaintiff who is injured solely as a result of predicate acts may sue only under § 1962(c), "whose essence is the commission of predicate acts in connection with conducting the affairs of an enterprise." *Dornberger,* 961 F.Supp. at 525. The Moving Defendants contend that Plaintiffs have not alleged any "acquisition injury" distinct from the injury resulting from the underlying racketeering activity, and therefore this claim must be dismissed. The Court agrees.

*4 Plaintiffs have only alleged facts showing injuries that resulted from the underlying pattern of racketeering activity. According to the facts alleged in the Amended Complaint, and as conceded in Plaintiffs' papers in opposition to this motion, Plaintiffs suffered millions of dollars in damages as a result of Defendants' illegal insider trading purchases of Motel 6 securities. *See* Am.Compl. (¶ (¶ 4; Pls.' Mem. in Opp. at 10 ("The Complaint alleges that the plaintiffs and the putative class suffered damages totalling millions of dollars as a result of the defendants' ... illegal insider trading purchases of SIX securities."). Plaintiffs offer no factual allegations to show how Defendants' acquisition of or maintenance of an interest in or control of the enterprise injured Plaintiffs in a manner distinct from the racketeering activity itself. Thus, Plaintiffs' § 1962(c) claim encompasses all of their alleged injuries. Without any factual allegations to support a claim of a distinct acquisition injury, Plaintiffs cannot state a cause of action under § 1962(b), and the Court grants the Moving Defendants' motion to dismiss this claim. *See* *Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649, 657 (S.D.N.Y.1996) ("[T]o state a claim under § 1962(b), a plaintiff must allege that the injury was caused by the acquisition or maintenance of control and not by the predicate acts.... By failing to allege how she was injured by an acquisition or maintenance of control, [plaintiff] has failed to plead a violation of § 1962(b)." (citations omitted)), *aff'd,* 113 F.3d 1229 (2d Cir.1997). The third claim, as against the Moving Defendants, is dismissed.

**2. Section 1962(c)--RICO Conduct Claim**

The fourth claim for relief alleges a violation of 18 U.S.C. § 1962(c). Section 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). In *Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993) the Supreme Court found that liability under § 1962(c) requires that a defendant be a participant "in the operation or management of the enterprise itself." *Id.* at 185. The Supreme Court stated:

> Once we understand the word conduct" to require some degree of direction and the word "participate" to require some part in that direction, the meaning of § 1962(c) comes into focus. *In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs.* Of course, the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                      Page 4
Not Reported in F.Supp., 1997 WL 603496 (S.D.N.Y.)
**(Cite as: 1997 WL 603496 (S.D.N.Y.))**

word "participate" makes clear the RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but some part in directing the enterprise's affairs is required.

*5 *Id.* at 1170 (emphasis added). Therefore, to state a claim for liability under § 1962(c), Plaintiffs must allege that the Gleemans and Karger participated "in the operation or management of the enterprise itself," which requires that these Defendants must have had some part in directing the enterprise's affairs.

The Moving Defendants contend that the Amended Complaint contains no factual allegations suggesting that the Gleemans or Karger directed, managed or operated the affairs of the enterprise alleged in the § 1962(c) claim. Because liability under § 1962(c) "may not be imposed on one who merely 'carries on' or 'participates' in an enterprise's affairs," *Biofeedtrac Inc. v. Kolner Optical Enters. & Consultants, S.R.L.,* 832 F.Supp. 585, 590-91 (E.D.N.Y.1993), the Moving Defendants assert that this § 1962(c) claim must be dismissed. The Court agrees.

The Amended Complaint is devoid of allegations suggesting that the Gleemans or Karger had some part in directing the enterprise's affairs. Certainly, the alleged facts tend to show that the Moving Defendants participated in the enterprise's affairs. But other than passing on inside information to others, trading on inside information and receiving some kickbacks for illegal trades, none of the allegations in the Amended Complaint raise the inference that these three men had a role in managing or directing the enterprise's affairs. *See Stone v. Kirk,* 8 F.3d 1079, 1091 (6th Cir.1993) (defendant who "was associated with the" enterprise and "engaged in a pattern of racketeering activity when he repeatedly violated the anti-fraud provisions of the [federal] securities" laws was not liable under § 1962(c) because he "had no part in directing" the enterprise's affairs). A defendant does not "direct" an enterprise's affairs under § 1962(c) merely by engaging in wrongful conduct that assists the enterprise.

In opposition to this motion, Plaintiffs offered new allegations to support their claim that the Moving Defendants had some part in directing the enterprise's affairs, however, these allegations do not appear in the Amended Complaint. *See* Pls.' Mem. in Opp. at 12-13 (alleging, among other things, that Darrin

Gleeman conceived of the inside trading idea and encouraged Garvey to obtain employment with a law firm to obtain inside information, that the Moving Defendants determined the kickbacks to be paid to Garvey in order to protect that source of information, that the Moving Defendants had the "primary responsibility" to disseminate the Garvey inside information to the others and to place trades on the inside information). Papers in response to a Rule 12(b)(6) motion to dismiss cannot cure a defect in the pleadings. *See O'Brien v. National Property Analysts Partners,* 719 F.Supp. 222, 229 (S.D.N.Y.1989). Insofar as the Amended Complaint contains no factual allegations to indicate that the Moving Defendants participated in the operation or management of the enterprise itself, the Court grants the motion to dismiss the § 1962(c) claim against them. However, in light of the new allegations put forth by Plaintiffs in the memorandum of law and affidavit in opposition to this motion, and the fact that those allegations raise the inference that some of the Moving Defendants may have had a part in directing the enterprise, the Court grants Plaintiffs leave to replead the Amended Complaint with regard to this specific claim and these Moving Defendants.

**3. Section 1962(d)--Conspiracy to Violate § § 1962(b)-(c)**

*6 Plaintiffs first claim for relief alleges that Defendants engaged in a conspiracy to violate 18 U.S.C. § § 1962(b)-(c), in violation of § 1962(d). Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). The Moving Defendants argue that this claim must be dismissed because Plaintiffs' substantive RICO § 1962(b) and § 1962(c) claims against them are deficient and must be dismissed. The Court concludes that the § 1962(d) claim should be dismissed for another reason.

Upon a careful review of the Amended Complaint, the Court finds that like the § § 1962(b) and 1962(c) claims, Plaintiffs have made no more than conclusory allegations with regard to the § 1962(d) claim against the Moving Defendants. The factual allegations just do not support a claim that the Moving Defendants conspired to violate § 1962(b) or § 1962(c). However, because the Court granted Plaintiffs leave to replead the Amended Complaint in light of the new factual allegations relevant to the § 1962(c) claim, the Court also grants Plaintiffs leave to replead this claim against the Moving Defendants consistent with the new allegations.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 603496 (S.D.N.Y.)
**(Cite as: 1997 WL 603496 (S.D.N.Y.))**

Page 5

**4. New York General Business Law Section 349(a) Claim**

The fifth claim for relief alleges a violation of § 349(a) of the New York General Business Law. Section 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [the] state." N.Y. Gen.Bus. Law § 349(a). This Court has addressed the applicability of § 349(a) to securities transactions and found that " § 349 should not be applied to investment transactions in securities" because the purpose of § 349 "is to protect consumers ... [and] [c]ourts have therefore been reluctant to apply the section to transactions that are 'different in kind and degree from those that confront the average consumer who requires the protection of a state against fraudulent practices.' " *In re Motel 6 Sec. Litig.*, Nos. 93-2183(JFK), 93- 2866(JFK), 1995 WL 431326, at *6-7 (S.D.N.Y. July 20, 1995) (citations omitted). This holding also applies to this case for the reasons discussed by the Court in that decision. Therefore, the Court grants the Moving Defendants' motion to dismiss this fifth claim for relief.

**5. Common Law Fraud Claim**

The sixth claim for relief alleges that Defendants committed common law fraud. To state a claim for common law fraud claim, a plaintiff must allege that a defendant (1) made a material false representation or omission, (2) knowing of its falsity, (3) intending to defraud, (4) upon which the plaintiff reasonably relied, and (5) the plaintiff suffered injury as a result. *See Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir.1995).

The Moving Defendants contend that the common law fraud claim must be dismissed because Plaintiffs have not adequately alleged that the Moving Defendants had a duty to disclose the material inside information or that Plaintiffs adequately pleaded the other elements of a common law fraud claim. Upon examination of the Complaint, the Court concludes that Plaintiffs have failed to alleged facts to support the common law fraud element of direct reliance on Defendants' material omissions.

*7 Common law fraud claims must be supported by factual allegations demonstrating the plaintiff's actual, direct reliance on the misrepresentation or omission. *See Golden Budha Corp. v. Canadian Land Co.*, 931 F.2d 196, 202 (2d Cir.1991); *Turtur v. Rothschild Registry Int'l, Inc.*, No. 92- 8710(RAP), 1993 WL 338205, at *6 (S.D.N.Y. Aug.27, 1993). Consequently, common law fraud claims

> are distinct from actions brought under the federal securities laws, which "permit a rebuttable presumption of reliance where a plaintiff purchases his shares on the open market."
>
> Common law fraud cases such as the present one are therefore to be distinguished from cases that involved a fraud on the market theory or other theories in which reliance on a material omission is presumed to have existed and which are applicable primarily in the context of federal securities fraud claims arising under section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

*Turtur*, 1993 WL 338205, at *7 (citations omitted); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 241-47, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (observing that actions under § 10(b) and Rule 10b-5 are distinct from common law deceit and misrepresentation claims and are designed to add to the protections provided investors by common law). Unlike § 10(b) and Rule 10b-5 claims based on a fraud-on-the-market theory, common law fraud claims do not enjoy a presumption of reliance once a material omission and duty to speak have been sufficiently pleaded. Because the factual allegations focus solely on an insider trading conspiracy that perpetrated a fraud on the market, and Plaintiffs have alleged no connection to Defendants, let alone the Moving Defendants, other than a "contemporaneous trading" relationship, [FN1] Plaintiffs have not alleged facts to support a claim of actual, direct reliance on the Moving Defendants' omissions. *See Schultz v. Commercial Programming Unlimited Inc.*, No. 91-7924(LJF), 1992 WL 396434, at *4 (S.D.N.Y.1992) (stating that "this Court will not permit Schultz to circumvent the [reliance] requirement by infusing the fraud on the market theory into his common law fraud action" and dismissing the common law fraud claim); *In re 3COM Securities Litigation*, 761 F.Supp. 1411, 1419 (N.D.Cal.1990) (finding that Plaintiff adequately pleaded reliance for a 10b-5 claim, but dismissing common law fraud claim because Plaintiff had not adequately pleaded actual reliance for that claim). In that Plaintiffs have failed to plead facts to support the direct reliance element of the common law fraud claim, the Court grants the Moving Defendants' motion to dismiss this sixth claim for common law fraud.

FN1. The Court notes that, of the three Moving Defendants, the Amended

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 603496 (S.D.N.Y.)
**(Cite as: 1997 WL 603496 (S.D.N.Y.))**

Page 6

Complaint alleges only that Defendants Seymour Gleeman and Edwin Karger purchased the Motel 6 securities during the period in question. Plaintiffs make no allegation that Defendant Darrin Gleeman illegally traded the Motel 6 securities.

**6. Unjust Enrichment Claim**

The seventh claim for relief alleges that Defendants have been unjustly enriched at the expense of Plaintiffs. To state a claim for unjust enrichment, a plaintiff must allege that

(1) defendant was enriched, (2) enrichment was at plaintiff's expense and (3) the circumstances were such that equity and good conscience require defendant to make restitution.

***8** *Violette v. Armonk Assocs., L.P.,* 872 F.Supp. 1279, 1282 (S.D.N.Y.1995); *see also Dolmetta v. Unitak Nat'l Corp.,* 712 F.2d 15, 20 (2d Cir.1983).

The Moving Defendants contend that under New York law, unjust enrichment requires direct dealing, or privity, between the parties. Because Plaintiffs allege no such privity, the Moving Defendants argue that the unjust enrichment claim must be dismissed. Plaintiffs counterargue that privity is not a required element of an unjust enrichment claim.

This Court agrees with the Moving Defendants that an unjust enrichment claim, which is a quasi-contract claim, requires some type of direct dealing or actual, substantive relationship with a defendant. As this Court recently held,

While the elements of the unjust enrichment claim ... do not explicitly spell out such a requirement, those elements imply a more substantive relationship, or closer nexus, between a defendant and a plaintiff than Plaintiffs have alleged in this case. The requirements that the defendant be enriched at the plaintiff's expense and that good conscience necessitate that the defendant make restitution to the plaintiff, clearly contemplate that the defendant and the plaintiff must have had some type of direct dealing, an actual relationship or some greater substantive connection than is alleged in this case.

*See In re Motel 6 Sec. Litig.,* Nos. 93-2183(JFK), 93-2866(JFK), 1997 WL 154011, at *7 (S.D.N.Y. Apr.2, 1997).

In the instant case, Plaintiffs do not allege any direct dealings or actual, substantive relationship with any of the Defendants, let alone the Moving Defendants. At most, Plaintiffs claim to have had a contemporaneous trading relationship with Defendants. Plaintiffs contend that the Defendants were unjustly enriched at Plaintiffs' expense in purchasing shares of Motel Six based upon inside information during the same time period in which Plaintiffs sold their shares. These factual allegations do not sound in the quasi-contract common law claim of unjust enrichment. In the absence of any factual allegations that Plaintiffs had a more substantive connection to the Moving Defendants beyond a contemporaneous trading relationship, Plaintiffs have not alleged facts to support a claim that the Moving Defendants were unjustly enriched at the Plaintiffs' expense and that the Moving Defendants should make restitution to Plaintiffs. *Cf. Martes v. USLIFE Corp.,* 927 F.Supp. 146, 149 (S.D.N.Y.1996) (holding that an unjust enrichment claim lies only where the defendant possesses money or received a benefit which defendant should not retain because it belongs to the plaintiff, and dismissing the unjust enrichment claim because defendant received nothing that belonged to plaintiff and had no contractual or other relationship with plaintiff). Therefore, the Court grants the Moving Defendants' motion to dismiss the seventh claim for unjust enrichment.

**B. Plaintiffs' Motion for Class Certification**

***9** Plaintiffs seek an order pursuant to Fed.R.Civ.P. 23(a) and (b)(3) certifying a plaintiff class consisting of:

[A]ll persons other than the Defendants who sold shares of [Motel 6 L.P.] ("SIX") or sold call options on SIX shares between May 18, 1990 and July 12, 1990, inclusive (the "Class Period.") and who traded contemporaneously with Defendants' purchases of SIX shares or call options.

Compl. ¶ 33. Rule 23 contains a two-tier test for class certification. First, Plaintiffs must meet Rule 23(a)'s four requirements for defining a class: a class so numerous that joinder is impracticable; questions of law or fact common to the class; named parties with interests typical of the class; and class representatives who will provide fair and adequate representation of absent members of the class. *See* Fed.R.Civ.P. 23(a). Second, Plaintiffs must demonstrate that the case falls within one of Rule 23(b)'s three categories where class action is appropriate. In this action, Plaintiffs seek certification under Rule 23(b)(3), which permits the maintenance of a class action where the court finds that the questions of law or fact common to the members of the class predominate and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 603496 (S.D.N.Y.)
**(Cite as: 1997 WL 603496 (S.D.N.Y.))**

Page 7

Fed.R.Civ.P. 23(b)(3).

Upon an examination of the Amended Complaint in this securities fraud insider trading case, as well as Plaintiffs' papers in support of this motion, the Court concludes that Plaintiffs' proposed class satisfies all of the requirements of Rule 23(a) as well as Rule 23(b)(3). *See In re Motel 6 Securities Litig.,* No. 93-2183(JFK), 1996 WL 53189 (S.D.N.Y. Sept. 18, 1996) (granting the plaintiffs' motion to certify class in related securities fraud action based upon the Motel 6 insider trading). Furthermore, to the extent that Defendants have not submitted papers in opposition to this motion, Defendants have implicitly agreed to the relief sought in Plaintiffs' motion for class certification.

Conclusion

For the reasons stated above, the Court grants Defendants Darrin Gleeman, Seymour Gleeman and Edwin Karger's joint motion to dismiss the first, third, fourth, fifth, sixth and seventh claims for relief. Plaintiffs may replead the first and fourth claims for relief consistent with this opinion, and the Amended Complaint is to be filed by October 28, 1997. The Court grants Plaintiffs' motion for class certification.

**SO ORDERED.**

Not Reported in F.Supp., 1997 WL 603496 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

- 1:95cv05191 (Docket) (Jul. 12, 1995)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB I

Briefs and Other Related Documents
Only the Westlaw citation is currently available.

United States District Court,E.D. New York.
Richard STEIN, Plaintiff,
v.
NEW YORK STAIR CUSHION COMPANY, INC., Frederick H. Stumpf, Sandra Stumpf, Nicole Stumpf, NSR Carpet Company, Inc., T.F.S. Company, Inc ., Wholesale Floors, Inc., Wholesale Floors Too, Ltd., Stumpf Family Limited Partnership and Frederick H. Stumpf and Sandra Stumpf Family Limited Partnership, Defendants.
**No. 04-CV-4741DRHETB.**

Feb. 10, 2006.

Dollinger, Gonski & Grossman, Carle Place, New York, By: Matthew Dollinger, for the Plaintiff.
Silverstein Perlstein & Acampora LLP, Jericho, New York, By: Robert J. Ansell, for the Defendants.

MEMORANDUM OF DECISION AND ORDER
HURLEY, District Judge:

*1 Plaintiff Richard Stein ("Plaintiff") filed the instant action alleging that defendants New York Stair Cushion Company, Inc. ("New York Stair"), Frederick H. Stumpf ("Frederick"), Sandra Stumpf ("Sandra"), Nicole Stumpf ("Nicole"), NSR Carpet Company, Inc. ("NSR"), T.F.S. Company, Inc. ("TFS"), Wholesale Floors, Inc. ("Wholesale"), Wholesale Floors Too, Ltd. ("Floors Too"), Stumpf Family Limited Partnership ("Stumpf LP"), and Frederick H. Stumpf and Sandra Stumpf Family Limited Partnership ("Stumpf LP2") (collectively, "Defendants") engaged in a civil RICO conspiracy involving fraudulent conveyances effectuated through the wires and mails to prevent Plaintiff from satisfying an outstanding state court judgment. Defendants have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons that follow, Defendants' motion is granted and this case is dismissed in its entirety.

*BACKGROUND*

Plaintiff is the owner of a judgment in the amount of $348,951.68, together with interest thereon to be computed at the rate of 9% per annum from December 21, 2000, against defendants New York Stair and Frederick. (Compl.¶ 1.) Plaintiff alleges that he has been unable to enforce his judgment because both New York Stair and Frederick have fraudulently transferred all of their assets to the other defendants. (*Id.* ¶ 46.)

More specifically, Plaintiff alleges that sometime in 1994, he sold all of the shares of stock in New York Stair to Frederick. (*Id.* ¶ 9.) In exchange, Frederick executed a promissory note by which he agreed to pay Plaintiff a total of $554,730.20. (*Id.* ¶ ¶ 10-11.) Pursuant to the terms of the note, Frederick was to make monthly payments of $6,000.00 to Plaintiff, (*id.* ¶ 12), and in fact did so until about May 2000. (*Id.* ¶ 13.)

After Frederick's default, Plaintiff initiated an action in the New York State Supreme Court, Nassau County against Frederick and New York Stair, (*id.* ¶ 16), and obtained judgment against both defendants on December 21, 2000. (*Id.* ¶ ¶ 1, 19.) To date, no part of the judgment has been paid. (*Id.* ¶ 20.) In this action, Plaintiff claims that after Frederick purchased the entire stock of New York Stair, he formed defendants NSR, TFS, and Wholesale, all having the same principal place of business as New York Stair. (*Id.* ¶ 21.) Similarly, on or about November 3, 2000, and within days of the Order by the Nassau County Supreme Court granting Plaintiff summary judgment in lieu of Complaint, Frederick allegedly formed Stumpf LP and Stumpf LP2, both having as their principal place of business Frederick's personal residence. (*Id.* ¶ 22.) Finally, on October 17, 2000, Frederick allegedly formed Floors Too, also having Frederick's personal residence as its principal place of business. (*Id.* 24.) Plaintiff claims that Frederick formed these six companies "with the unconditional and full knowledge, approval, consent and agreement of his wife, SANDRA and his daughter, NICOLE, [and] proceeded to use SANDRA and NICOLE as straw-persons and nominees to purportedly hold ownership of these entities in their names either jointly or separately or in the names of the numerous defendant business entities wh[en], in fact, FREDERICK is the true owner of" these companies. (*Id.* ¶ 25.) Subsequent to the formation of these companies, Frederick allegedly transferred his assets, including his shares of New York Stair, to these companies without consideration. (*Id.* ¶ ¶ 32, 36.) He

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

further allegedly commingled assets, (*id.* ¶ 35), and used these companies' funds and assets to pay off his own personal expenses. (*Id.* ¶ 37.)

***2** On or about August 5, 2002, Plaintiff filed a motion in the Nassau County Supreme Court requesting, inter alia, that a receiver be appointed to administer the assets of NSR, TFS, Wholesale, Floors Too, Stumpf LP, Stumpf LP2, Sandra and Nicole. (*Id.* ¶ 47.) The court denied Plaintiff's motion with leave to renew based upon Plaintiff's failure to establish that Frederick and/or New York Stair had any ownership interest in any of the subject entities. (*Id.* ¶ 49.) After further discovery proceedings, Plaintiff renewed his motion which was thereafter granted in part. As a result, on March 12, 2004, the Nassau County Supreme Court appointed a receiver as to the assets of New York Stair, NSR, Stumpf LP, and Stumpf LP2. (*Id.* ¶ 52.) Plaintiff alleges that the appointed receiver has been unable to seize any assets in satisfaction of Plaintiff's judgment as the Defendants have fraudulently secreted all of the assets of the two judgment debtors. (*Id.* ¶ 53.)

Plaintiff asserts four causes of action against all Defendants, to wit, violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § § 1961 et seq. ("RICO") and state law claims based upon fraudulent conveyances, conversion, and commercial bad faith. Defendants move to dismiss the Complaint in its entirety, arguing that Plaintiff has failed to adequately allege the elements of a RICO claim and that the Court should refrain from exercising jurisdiction over the remaining state-law claims. Plaintiff opposes the motion. Because the Court finds that Plaintiff has failed plead a RICO claim, and declines to exercise jurisdiction over Plaintiff's state-law claims, Defendants' motion is granted and the Complaint is dismissed in its entirety.

*DISCUSSION*

*I. Standard of Review*

The court may not dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *King v. Simpson,* 189 F.3d 284, 286 (2d Cir.1999); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). The Court must accept all factual allegations in the proposed complaint as true and draw all reasonable inferences in favor of the plaintiff. *King,* 189 F.3d at 287; *Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997).

*II. Plaintiff's RICO Claim*

"RICO is a broadly worded statute that 'has as its purpose the elimination of the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce." ' *Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc.,* 268 F.3d 103, 107 (2d Cir.2001) (quoting S.Rep. No. 91-617, at 76 (1969)). "To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *DeFalco v. Bernas,* 244 F.3d 286, 305 (2d Cir.2001) (citations and internal quotation marks omitted). In this case, Plaintiff asserts claims pursuant to sections 1962(b), (c), and (d). Following the order of argument set forth in the parties' briefs, the Court begins with an analysis of subsection (c).

*A. Section 1962(c)*

***3** Section 1962(c) makes it unlawful

for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....

18 U.S.C. § 1962(c). "To establish a violation of 18 U.S.C. § 1962(c) then, a plaintiff must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *DeFalco,* 244 F.2d at 306 (citations and internal quotation marks omitted). Here, Defendants move to dismiss the Complaint on the grounds that Plaintiff fails to adequately allege: (1) the existence of an enterprise, (2) the predicate acts of mail or wire fraud, (3) the existence of a pattern of racketeering activity, and (4) that Defendants' alleged conduct was the proximate cause of Plaintiff's injury. The Court will address each of Defendants' arguments in turn.

*1. RICO Enterprise*

The RICO statute defines an "enterprise" as "includ[ing] any individual, partnership, corporation, association, or other legal entity, and any union or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has explained that a RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," the existence of which is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *see also First Capital,* 385 F.3d at 174 ("For an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes.") (citation and internal quotation marks omitted). The Second Circuit has further instructed that courts should look to the "hierarchy, organization, and activities" of an association-in-fact enterprise to determine whether its "members functioned as a unit." *Id.* (citations and internal quotation marks omitted). "In addition to individuals associated in fact, any legal entity may qualify as a RICO enterprise." *First Capital,* 385 F.3d at 173 (citing 18 U.S.C. § § 1961(4), 1962(c)).

"The enterprise must be separate from the pattern of racketeering activity, and distinct from the person conducting the affairs of the enterprise." *Id.* at 73 (citing Turkette, 452 U.S. at 583); *see also* DeFalco, 244 F.3d at 307 ("Under section 1962(c), a defendant and the enterprise must be distinct."). This distinction between the elements of an enterprise and the elements of a pattern was recognized as fundamental by the Supreme Court in *Turkette:*

In order to secure a conviction under RICO, the Government must prove both the existence of an enterprise and the connected pattern of racketeering activity. The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The enterprise is not the pattern of racketeering activity; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government.

***4** 452 U.S. at 583 (citation omitted).

In the instant case, Plaintiff alleges that Defendants constitute an association-in-fact enterprise, the purpose of which is "to accomplish the fraudulent transfer and continuing custodianship of FREDERICK's and [NEW YORK] STAIR's assets to shield those assets from the claims of Plaintiff." (Compl. ¶ 66; *see also* Pl.'s Mem. at 14.) Pursuant to *Turkette,* the fatal flaw in Plaintiff's allegations is that they fail to articulate an enterprise that exists as an association independent of the alleged pattern of racketeering activity. In this regard, Plaintiff does not allege that the association-in-fact enterprise has any purpose other than the execution of Frederick's scheme to conceal assets from Plaintiff.

In *First Capital,* the plaintiffs alleged an enterprise that existed for the purpose of concealing a defendant's assets from his creditors and the bankruptcy court. 385 F.3d at 174. The plaintiffs alleged predicate acts by the defendants that largely consisted of making false statements in connection with a bankruptcy proceeding and engaging in fraudulent transactions with each other aimed at preventing creditors from reaching the defendant's assets. *Id.* at 165-66. The Second Circuit found that the plaintiffs had not sufficiently alleged the existence of a RICO enterprise, noting that the complaint failed "to detail any *course* of fraudulent or illegal conduct separate and distinct from the alleged predicate racketeering acts themselves-a requirement in this Circuit." *Id.* at 174. The court further noted that the plaintiffs "failed to provide us with any solid information regarding the 'hierarchy, organization, and activities' of this alleged association-in-fact enterprise from which we could fairly conclude that its 'members functioned together as a unit." ' *Id.* (internal quotation marks and citations omitted).

Similarly, in this case, Plaintiff alleges an enterprise whose purpose is to conceal assets from Plaintiff and the predicate acts involve alleged fraudulent conveyances aimed at accomplishing that goal. As in *First Capital,* Plaintiff fails to allege any fraudulent conduct by Defendants that is separate and distinct from the alleged act of racketeering-in essence, the enterprise alleged *is* the pattern of racketeering activity. Accordingly, because the Complaint fails to sufficiently allege the existence of an enterprise, Plaintiff's RICO claim fails.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2. Predicate Acts

(a) Mail and Wire Fraud

Section 1961(1) defines "racketeering activity" as certain criminal acts under state and federal law including mail fraud, 18 U .S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. *See* 18 U.S.C. § 1961(1)(B). The statute requires a plaintiff to plead at least two predicate acts of racketeering activity. *Id.* § 1961(5) "A complaint alleging mail and wire fraud must show (1) the existence of a scheme to defraud, (2) defendant's knowing and intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.,* 84 F.3d 629, 633 (2d Cir.1996) (citation omitted); *see also* *U.S. v. Zichettello,* 208 F.3d 72, 105 (2d Cir.2000) (wire fraud); *McLaughlin v. Anderson,* 962 F.2d 187, 190-91 (2d Cir.1992) (mail fraud).

***5** Here, Plaintiff alleges the predicate acts of mail and wire fraud. (*See* Compl. ¶ ¶ 63-64.) [FN1] Rule 9(b) states that in averments of fraud, "the circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b). This provision applies to RICO claims for which fraud is the predicate illegal act. *See* *Moore v. PaineWebber, Inc.,* 189 F.3d 165, 172 (2d Cir.1999). Defendants challenge the sufficiency of the mail and wire fraud allegations on the ground that the Complaint fails to plead fraud with the required specificity. (Defs.' Mem. at 10.)

FN1. The Court notes that a fraudulent conveyance does not constitute an act of racketeering. *See* 18 U.S.C. § 1961(1); *see also* *Appollon Waterproofing & Restoration, Inc. v. Bergassi,* No. 01 Civ. 8388, 2003 WL 1397394, at * (S.D.N.Y. Mar. 20, 2003) (stating that enumerated crimes under RICO statute do not include fraudulent conveyance and conversion).

In *Mills v. Polar Molecular Corp.,* 12 F.3d 1170 (2d Cir.1993), the Second Circuit stated that "allegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent." *Id.* at 1176. Contrary to Defendants' argument, however, *Mills* does not require that allegations of mail and wire fraud be pled with such specificity in all instances. Rather, in cases where the plaintiff claims that mail and wire fraud took place in furtherance of a larger scheme to defraud, the communications themselves need not have contained false or misleading information. *See, e.g.,* *Breslin Realty Dev. Corp. v. Schackner,* 397 F.Supp.2d 390, 398 (E.D.N.Y.2005); *Jerome M. Sobel & Co. v. Fleck,* No. 03 Civ. 1041, 2003 WL 22839799, at *5 (S .D.N.Y. Dec. 1, 2003), *report and recommendation adopted,* 2004 WL 48877 (S.D.N.Y. Jan. 8, 2004). Instead, Rule 9(b) is satisfied so long as the alleged mailings and wire transfers "further an underlying scheme that itself has a fraudulent, deceptive purpose." *Jerome M. Sobel,* 2003 WL 22839799, at *5 (citing *Schmuck v. United States,* 489 U.S. 705, 715 (1989). Thus, even "innocent" mailings or wire transfers may constitute predicate acts so long as they are part of the execution of the scheme. *Id.* (citation omitted).

Here, the Complaint details several alleged fraudulent transfers accomplished through the wires and provides dates, content of the transfer, and the identity of the transferor and transferee. (*See* Compl. ¶ ¶ 32-38.) To the extent other examples of mail and/or wire fraud lack such specificity, dismissal is not required. To the contrary, the overall scheme to defraud has been described in detail and the Complaint clearly explains the relationship between the mailings and/or wire communications and the scheme to defraud. For example, the Complaint alleges that Defendants used the United States Postal Service (filing fraudulent tax returns) as well as the interstate wires (transferring cash and assets between Defendants) to execute portions of their fraudulent scheme to prevent Plaintiff from enforcing his judgment. As noted above, under these circumstances, such allegations are sufficient. Accordingly, the Court finds that the Complaint satisfies Rule 9(b).

*(b) Attributing Acts to Each Defendant*

***6** Defendants argue that the Complaint should be dismissed because it fails to specify the identity of the persons who allegedly committed the predicate acts. The Court disagrees. Although a complaint sounding in fraud should inform each defendant of the nature of his alleged participation, " 'it is not necessary to allege ... that the defendants have personally used the mails or wires; it is sufficient that a defendant "causes" the use of the mails or wires." ' *Breslin Realty,* 397 F.Supp.2d at 399 (quoting *Jerome M. Sobel,* 2003 WL 22839799, at *5). Thus,

"it is not significant for purposes of the mail fraud statute that a third-party, rather than the defendant, wrote and sent the letter at issue, provid[ed] ... the defendants could reasonably have foreseen that the third-party would use the mail in the ordinary course of business as a result of defendants' act." United States v. Bortnovsky, 879 F.2d 30, 36 (2d Cir.1989).

Here, the Complaint alleges that each of the Defendants are directly connected to the scheme to defraud such that each defendant could have reasonably foreseen that the mail or wires would be used in the ordinary course of business as a result of their acts. Accordingly, to the extent Defendants seek dismissal on this ground, their motion is denied.

*3. Pattern of Racketeering Activity*

Defendants assert that Plaintiff has failed to allege a "pattern of racketeering activity." RICO defines a "pattern of racketeering activity" as requiring "at least two predicate acts of racketeering activity" committed within a ten-year period. 18 U.S.C. § 1961(5). "To establish a pattern, a plaintiff must also make a showing that the predicate acts of racketeering activity by a defendant are 'related, and that they amount to or pose a threat of continued criminal activity." ' DeFalco, 244 F.3d at 321 (quoting *H.J. Inc.,* 492 U.S. at 239 (1989)). The continuity can be either " 'close-ended continuity" ' or " 'open-ended continuity." ' *Id.* (quoting *H.J. Inc.,* 492 U.S. at 239).

Without specifying whether the Complaint alleges a close- or open-ended continuity, Plaintiff argues generally that the Complaint alleges a *"continuing* custodianship of Frederick's assets" by Defendants "who continue to disperse the secreted assets for Frederick's benefit, but always out of plaintiff's reach." (Pl.'s Mem. at 16; *see also* Compl. ¶ 65.) Defendants counter that Plaintiff fails to allege a pattern because the predicate acts alleged "result from [Plaintiff's] meritless and impermissible fragmentation of a single predicate act into multiple acts for the mere purpose of pursuing his RICO claim." (Defs.' Mem. at 11.) Thus, Defendants argue, even accepting Plaintiff's claim that the goal of Defendants' alleged scheme was to avoid payment of Plaintiff's judgment, the alleged predicate acts were "in furtherance of a single episode of alleged fraud involving one victim and relating to one basic transaction." (*Id.*)

*(a) Close-Ended Continuity*

*7 "A closed-ended pattern of racketeering activity involves predicate acts 'extending over a substantial period of time." ' *First Capital,* 385 F.3d at 181 (quoting GICC Capital Corp. v. Technology Fin. Group, Inc., 67 F.3d 463, 466 (2d Cir.1995)). While this Circuit has not found acts spanning less than two years to be a close-ended pattern, acts that occurred over a longer period of time do not necessarily form a pattern. *Id.* ("[W]hile two years may be the *minimum* duration necessary to find closed-ended continuity, the mere fact that predicate acts span two years is insufficient, without more, to support a finding of a closed-ended pattern."). "Although continuity is 'primarily a temporal concept, other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists." ' *Id.* (quoting DeFalco, 244 F.3d at 321).

Although multiple schemes are not required, *see* Schlaifer Nance & Co. v. Estate of Andy Warhol, 119 F.3d 91, 98 (2d Cir.1997) ("Congress did not mean 'to exclude from the reach of RICO multiple acts of racketeering simply because ... they further but a single scheme" ') (quoting United States v. Indelicato, 865 F.2d 1370, 1383 (2d Cir.1989) (en banc)), the Second Circuit has cautioned that "courts must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO." *Id.; see also* GICC, 67 F.3d at 467 ("That multiple schemes are not required in all circumstances does not mean that the number and nature of the schemes alleged by a plaintiff in a given case are entirely irrelevant. Rather, a plaintiff must provide some basis for a court to conclude that defendants' activities were neither isolated nor sporadic.")

In *Schlaifer Nance,* the plaintiff alleged that it was fraudulently induced into entering a licensing agreement with the defendant Estate of Andy Warhol by defendants' false representations that the Estate owned all the copyrights to all of Warhol's works of art, while in fact, many of Warhol's works had fallen into the public domain. *Id.* at 93. Plaintiff complained that the Estate committed a RICO violation by repeatedly defrauding plaintiff to maximize the value of the Estate. *Id.* at 96. The plaintiff alleged various acts that it claimed constituted a pattern of racketeering activity, including "fraudulently transferring [plaintiff's] rights under the Agreement to others," "accepting advance payments from

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

sublicensees knowing [plaintiff] would not approve," "fabricating bases for the disapproval of the licensing of many products," "threatening to allege a known false claim of fraud against [plaintiff]," and "revising history through misrepresentation, deceit, and perjury, to cover up a pattern of racketeering activity." *Id.* at 96-97.

***8** In finding that plaintiff had failed to allege close-ended continuity, the court noted that there was only "one purportedly fraudulent act: the negotiation of the Agreement. The acts complained of ... are subparts of the singular act, and not a 'pattern' of separate acts with an underlying purpose." *Id.* at 98.

Here, Plaintiff has alleged several predicate acts, all involving Defendants' transfers of cash or assets to companies formed for that purpose, in furtherance of Defendants' alleged scheme to avoid payment of Plaintiff's judgment, spanning over at least four years. As noted above, however, that fact alone is not sufficient.

In *First National,* the Second Circuit was faced with similar allegations and held that the lower court properly dismissed the pleading. In that case, plaintiffs alleged that defendants' RICO violations and state-law fraudulent conveyance violations prevented plaintiffs from satisfying outstanding judgments. 385 F.3d at 165. Plaintiffs alleged various predicate acts, primarily bankruptcy and mail frauds. *Id.* Finding that plaintiffs had properly pled several predicate acts extending over two and one-half years with regard to one of the defendants, the court nonetheless found:

[W]e agree with the District Court that every factor other than duration cuts against a finding of closed-ended continuity in this case. At bottom, Plaintiffs have alleged that [defendant] engaged in a single scheme to defraud two creditors by quickly moving his assets to his relatives and then concealing the existence of those assets during his bankruptcy proceeding. But however egregious [defendant's] fraud on Plaintiffs may have been, they have failed to allege that he engaged in a pattern of racketeering activity. Accordingly, Count Five was properly dismissed as alleged against him.

*Id.*

Similarly, in this case, accepting all of Plaintiff's allegations as true, Plaintiff alleges a pattern involving a single scheme of narrow scope, including one victim [FN2] and a limited number of related participants. As in *Schlaifer Nance,* there is "one purportedly fraudulent act": the transferring of Frederick's and New York Stair's assets. Accordingly, the Court finds that the racketeering activity alleged here does not constitute the sort of "long-term criminal conduct" that Congress sought to target in RICO. *See* GICC Capital Corp., 67 F.3d at 469; *see also* FD Prop. Holding, Inc. v. U.S. Traffic Corp., 206 F.Supp.2d 362, 372 (E.D.N.Y.2002) ("Courts in the Second Circuit have generally held that where the conduct at issue involves a limited number of perpetrators and victims and a limited goal, the conduct is lacking in closed-ended continuity. This is the case even when the scheme's duration exceeds one year.") (collecting cases).

FN2. *See* Jerome M. Sobel, 2003 WL 22839799, at *12 ("[M]any cases finding no closed-ended continuity have pointed to the existence of only one ... victim.") (collecting cases).

*(b) Open-Ended Continuity*

"To satisfy open-ended continuity, the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *First Capital,* 385 F.3d at 180. In this Circuit, the "cases assessing whether a threat of continuity exists have looked first to the nature of the predicate acts alleged or to the nature of the enterprise at whose behest the predicate acts were performed." GICC Capital Corp., 67 F.3d at 466 (collecting cases).

***9** Here, Plaintiff argues that because the purpose of the alleged RICO scheme is to "hide and shield the custodianship of Frederick's assets and cash, it is both reasonable and realistic to conclude that the continuing custodianship of Frederick's assets poses a distinct threat of repetitive illegal use of the mails and 'wire' indefinitely into the future." (Pl.'s Mem. at 16.) Defendants do not address this contention.

The nature of the predicate acts alleged weighs in favor of a finding of open-ended continuity as they suggest a threat of repetition continuing into the future. This is borne out by the receiver's alleged inability to seize any assets in satisfaction of Plaintiff's judgment. (Compl.¶ 53.) However, insofar as dates are provided in the Complaint, which itself is dated October 1, 2004, the last predicate act is alleged to have occurred on January 22, 2001.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(Compl. ¶ 32(d).) This cuts against a finding of a current or future threat. *See First Capital,* 385 F.2d at 181 ("[N]o predicate acts have occurred since December 1999 [amended complaint filed in September 2001], which suggests that the scheme has wound to a close.").

In sum, the Court finds that whether there is open-ended continuity is a close call. Nonetheless, even assuming Plaintiff sufficiently alleged a threat of future criminal conduct, as noted *supra,* the pleading still fails. Accordingly, the Court need not and does not resolve this issue.

*4. Proximate Cause*

A RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). This injury must be proximately caused by the predicate acts of the RICO violation. *See, e.g., Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 120 (2d Cir.2003).

Here, Defendants assert that Plaintiff cannot meet this requirement because his injury arises solely out of the breach of contract claim that was adjudicated in state court and resulted in a judgment in Plaintiff's favor. (Defs.' Mem. at 12.) Defendants argue that the only injury alleged in this case is that Defendants' alleged conduct has obstructed Plaintiff's ability to collect upon this judgment. (*Id.*) Defendants cite no authority for this proposition. Because Defendants have not cited any controlling authority for their application, and because Plaintiff has also failed to address this specific issue, the Court declines to grant Defendants' motion on this point.

*III. Section 1962(b)*

Section 1962(b) provides as follows:

It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

"Under any prong of § 1962 a plaintiff in a civil RICO suit must establish a pattern of racketeering activity." *GICC,* 67 F.3d at 465. Here, the Court has already determined that Plaintiff has failed to plead a pattern of racketeering activity. Accordingly, Plaintiff's claim under subsection (b) is dismissed.

*IV. Section 1962(d)*

***10** The Complaint asserts a claim for RICO conspiracy under 18 U.S.C. § 1962(d). That section provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). A claim under section 1962(d) fails as a matter of law if the substantive claims based on the other subsections are defective. *See First Capital,* 385 F.3d at 182; *see also Cofacredit, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 244 (2d Cir.1999). Accordingly, because Plaintiff fails to state a viable RICO claim, his conspiracy claim fails as well.

V. Plaintiff's Remaining Claims are Dismissed

Having found that the allegations in the Complaint do not support federal jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, Plaintiff's state law claims are dismissed without prejudice.

*VI. Leave to Amend*

Plaintiff does not move for leave to amend. Instead, in his memorandum of law in opposition to the instant motion, Plaintiff cursorily states "should the Court deem the plaintiff's Complaint to be insufficiently particular in its pleading, plaintiff requests Court leave to amend the Complaint under F.R.C.P. [ ] 15(a) so as to correct any deficiency in pleading." (Pls.' Mem. at 6.) Assuming arguendo that Plaintiff's succinct statement could be deemed the equivalent of a motion to amend, it would nevertheless fail.

Rule 15(a) of the Federal Rules of Civil Procedure provides in pertinent part that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). A motion to amend should be denied, however, "if there is an 'apparent or declared reason-such as undue delay, bad faith or dilatory motive ..., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment." ' *Dluhos v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Floating and Abandoned Vessel, Known as "New York"*, 162 F.3d 63, 69 (2d Cir.1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In determining whether proposed claims are futile, the Court is required to adopt the same analysis as that applied on a motion to dismiss pursuant to Rule 12(b)(6). *Aetna Cas. and Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 604 (2d Cir.2005). Here, Plaintiff has not provided the Court with, or suggested the existence of, any new facts which might support an amendment. *See* *Leung v. Law*, 387 F.Supp.2d 105, 112-13 (E.D.N.Y.2005) ("[T]he courts of this Circuit have frequently noted that alleged RICO violations must be reviewed with appreciation of the extreme sanctions it provides, so that actions traditionally brought in state courts do not gain access to treble damages and attorneys fees in federal court simply because they are cast in terms of RICO violations.") (citation and internal quotation marks omitted). Accordingly, to the extent Plaintiff moves for leave to amend, that request is denied. *See* *In re Tamoxifen Citrate Antitrust Litig.*, 429 F.3d 370, 404 (2d Cir.2005) ( "It is within the court's discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss.... Furthermore, where amendment would be futile, denial of leave to amend is proper.") (citation omitted).

*CONCLUSION*

***11** For the foregoing reasons, Defendants' motion to dismiss the Complaint is GRANTED in its entirety. The Clerk of the Court is directed to close this case.

SO ORDERED

E.D.N.Y.,2006.
Stein v. New York Stair Cushion Co., Inc.
Slip Copy, 2006 WL 319300 (E.D.N.Y.)

Briefs and Other Related Documents (Back to top)

- 2004 WL 2992051 (Trial Pleading) Complaint and Jury Demand (Nov. 2, 2004)
- 2:04cv04741 (Docket) (Nov. 02, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**TAB J**

Westlaw.

Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1993 WL 277205 (S.D.N.Y.), RICO Bus.Disp.Guide 8364
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents

United States District Court, S.D. New York.
STRONG & FISHER LTD., Stock Kojima International, Inc. and Picusa Piel, S.A. Plaintiffs,
v.
MAXIMA LEATHER, INC., Susan Cohen, Emanuel Cohen and Kenneth Karlstein, Nationsbanc Commercial Corp., Citizen & Southern Commercial Corp., and Haver, Miller & Porchenick Defendants.
**No. 91 Civ. 1779 (JSM).**

July 22, 1993.

John P. Bermingham, Oyster Bay, NY, for plaintiffs.
James R. DeVita, New York City, for defendants Emanuel Cohen, Susan Cohen and Kenneth Karlstein.
James M. Kaplan, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for defendants Haver Miller & Porchenek.
Kurt J. Wolff, Otterbourg, Steindler, Houston & Rosen, P.C., New York City for defendants Citizens & Southern Commercial Corp. and Nationsbanc Commercial Corp.

*MEMORANDUM ORDER and OPINION*

MARTIN, District Judge:
***1** Presently before the Court is the motion of defendants Citizens & Southern Commercial Corp. ("C & S") and Nationsbanc Commercial Corp. ("Nationsbanc") to dismiss the amended complaint which is based on allegations of violations of the RICO statute, to wit, 18 U.S.C. § 1962(c), both as principals (Second Cause of Action), and aiders and abetters (Third Cause of Action).

The essence of plaintiffs' allegations is that C & S, which was the factor for several companies controlled by Susan and Emanuel Cohen, to wit, Maxima Leather, Inc. ("Maxima"), Maxima Plus, Item Ltd. ("Item") and Melanzona Ltd. ("Melanzona"), participated in the affairs of those entities which are alleged to be enterprises within the meaning of the RICO statute through a pattern of racketeering activity or aided and abetted the RICO violations engaged in by those entities.

While the amended complaint clearly alleges a fraudulent scheme by the Cohens in which the various corporate entities were used to obtain merchandise by fraud and dispose of the merchandise for cash, the issue before the Court is whether or not the complaint adequately alleges that these two defendants participated in or aided and abetted the RICO violations alleged.

The allegations of the complaint with respect to these defendants fall into four categories: (1) a specific allegation that C & S through one of its employees made a fraudulent statement as to Maxima's creditworthiness in order to induce a vendor to sell leather to Maxima; (2) allegations that, in reviewing the status of its factored accounts with the Cohens' corporations, C & S failed to take actions that it was entitled to take which would have put plaintiffs on notice of the existence of the fraud and the corporate defendants' inability to pay their debts; (3) allegations that C & S and Nationsbanc consented to the use of their names in lulling letters sent to the creditors of the corporations; and (4) allegations that, at various times during 1992, C & S and Nationsbanc engaged in perjury and obstruction of justice in connection with this action by concealing evidence and giving knowingly false testimony.

The defendants' motion to dismiss the Second Cause of Action which charges these defendants as principals in a violation of 18 U.S.C. § 1962(c) is controlled by the Supreme Court's recent decision in *Reves v. Ernst & Young*, 507 U.S. 170, 113 S.Ct. 1163 (1993). In that case, the Supreme Court held that the words of the statute which impose liability only on those who "conduct or participate directly or indirectly in the conduct of such enterprises' affairs" require that the person charged with the § 1962(c) violation must have some part in directing the affairs of the RICO enterprise. Here, the enterprises alleged in the complaint are the corporate defendants Maxima, Item and Melanzona, and the complaint fails to allege facts which support a conclusion that these defendants had some part in directing their activities. The fact that, as a major creditor of those corporations, these defendants had substantial persuasive power to induce management to take certain actions and had the legal authority to take other actions that could affect these corporations is not equivalent to having the power to "conduct or participate directly or indirectly in the conduct in the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 277205 (S.D.N.Y.), RICO Bus.Disp.Guide 8364
**(Cite as: Not Reported in F.Supp.)**

Page 2

affairs of those corporations." Thus, the motion to dismiss the Second Cause of Action is granted.

*2 The more difficult question is whether the complaint adequately alleges that these defendants aided and abetted the RICO violations which have been alleged against Susan and Emanuel Cohen.

In order to be liable as an aider and abetter, a defendant must aid and abet two predicate acts. U.S. v. *Rastelli*, 870 F.2d 822, 832 (2d Cir.1989). "Conclusory allegations or bare statements, however, will not withstand a motion to dismiss, particularly where the alleged purpose of the conspiracy is to defraud." *First City National Bank v. Federal Deposit Insurance Corporation*, 730 F.Supp. 501, 509 (E.D.N.Y.1990). In order to adequately plead an aiding and abetting claim, the complaint must clearly allege which predicate acts the defendant aided and abetted and how the defendant participated as an aider and abetter. *See United States v. District Council of New York City and Vicinity of the United Brotherhoods of Carpenters and Joiners of America*, 778 F.Supp. 738, 751 (S.D.N.Y.1991). The instant complaint refers to only one incident that would support a claim that C & S aided and abetted a fraud. Paragraph 273 and 274 allege:
"273. On September 10, 1990, ROBERT SODICKSON of PEARCE, acting on behalf of PICUSA, inquired of C & S as to whether MAXIMA was creditworthy for a shipment of $150,000 worth of skins."
"274. C & S, upon information and belief through CLAPMAN, advised SODICKSON that MAXIMA was very creditworthy, stating 'Maxima is a good account whom we have worked with for many years.' "

The complaint alleges that, based on C & S' knowledge of the precarious financial statement of Maxima, C & S knew this statement to be false and made this statement to induce Picusa to make unsecured deliveries to Maxima. While this single act might be sufficient to make C & S a participant in a conspiracy to defraud, more is needed to establish RICO liability.

In order to establish a RICO violation, the commission of two predicate acts alone are not sufficient. The predicate acts must form "a pattern of racketeering activity", i.e., "the predicate acts must be related and constitute a threat of continued racketeering activity." *Comtech Associates v. Computer Associates Int'l.*, 753 F.Supp. 1078, 1090 (E.D.N.Y.1990).

One inference from the allegations set forth above is *that C & S deliberately deceived the representative of* Picusa and, at least in that one instance, participated in a fraud perpetrated by the Cohens and Maxima, but that allegation is not sufficient to sustain a finding that C & S knowingly aided and abetted a series of predicate acts constituting a pattern of racketeering activity. Nor do the other allegations of the complaint support that contention. In the circumstances here, C & S' business judgment not to take certain action that it might have been entitled to take to protect its interest in Maxima's assets or to collect the debt outstanding cannot be transformed into aiding and abetting of the Cohens' and Maxima's criminal enterprises. *See Reves v. Ernst & Young, supra*, 507 U.S. 170, 113 S.Ct. at 1174. Plaintiffs' general allegation that these defendants consented to the use of their names in lulling letters is simply insufficient under Rule 9(b) to allege that they knowingly aided and abetted predicate acts of mail fraud.

*3 Finally, the allegations that these defendants engaged in obstruction of justice in connection with this litigation in 1992 cannot in any way demonstrate that these defendants aided and abetted the RICO violations committed by the Cohens and their corporation in 1990 and 1991 which injured these plaintiffs. *U.S. v. Shulman*, 624 F.2d 384, 387 (2d Cir.1980) ("A person cannot be found guilty of aiding and abetting a crime that already has been committed.").

For the foregoing reasons, the complaint against C & S and Nationsbanc is dismissed.

SO ORDERED.

S.D.N.Y.,1993.
Strong & Fisher Ltd. v. Maxima Leather, Inc.
Not Reported in F.Supp., 1993 WL 277205 (S.D.N.Y.), RICO Bus.Disp.Guide 8364

Briefs and Other Related Documents (Back to top)

• 1:91cv01779 (Docket) (Mar. 14, 1991)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.