UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WORLD WRESTLING ENTERTAINMENT, INC.
:
                       Plaintiff,                                 04 CV 8223 (KMK)
:
                                                      (ECF CASE)
        v.
:

JAKKS PACIFIC, INC.; JAKKS PACIFIC (H.K.)
LIMITED; ROAD CHAMPS LIMITED; THQ, INC.; :
THQ/JAKKS PACIFIC LLC; STANLEY SHENKER
AND ASSOCIATES, INC.; STANLEY SHENKER; :
BELL LICENSING, LLC; JAMES BELL; JACK
FRIEDMAN; STEPHEN BERMAN; JOEL :
BENNETT; and BRIAN FARRELL,
:
                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE JAKKS DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT


FEDER, KASZOVITZ, ISAACSON, WEBER,
  SKALA, BASS & RHINE LLP
Murray L. Skala (MS 9354)
Jonathan D. Honig (JH 7577)
750 Lexington Avenue
New York, New York 10022
Phone:  (212) 888-8200
Fax:  (212) 888-5968

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Jonathan J. Lerner (JL 7117)
Michael H. Gruenglas (MG 8705)
Maura B. Grinalds (MG 2836)
Shannon R. Frankel (SF 8693)
Four Times Square
New York, New York  10036
Phone:  (212) 735-3000
Fax:  (212) 735-2000

*Attorneys for the JAKKS Defendants*

August 11, 2006

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    WWE FAILS TO ALLEGE THE REQUISITE CONTINUITY . . . . . . . . . . . . . . . . . . 3

      A.    WWE's Attempt to Artificially Extend the "Front-End" of the RICO Scheme
            with Unrelated Acts Predating 1998 Fails As a Matter of Law . . . . . . . . . . . . . . 3

            1.    WWE Admits Bell's Complicity Was a Sine Qua Non of the
                  Scheme . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            2.    WWE's Reliance on <u>Rybicki</u> is a Red Herring . . . . . . . . . . . . . . . 4

            3.    The 1996 Perfumed Doll Transaction is Too Attenuated . . . . . . . 6

            4.    Even Including Purported Acts Predating Bell's Involvement,
                  WWE Cannot Establish the Requisite Closed-Ended
                  Continuity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.    Legitimate Payments Made After 1998 in Connection With the Videogame
            and Toy Licenses Cannot Extend the RICO Scheme . . . . . . . . . . . . . . . . . . . . . . . 9

      C.    Despite WWE's Contention Otherwise, Acts of Concealment Cannot Serve
            to Lengthen the Alleged RICO Scheme . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      D.    WWE Cannot Satisfy the Continuity Requirement as to the JAKKS
            Defendants Based on Alleged Actions by Other Defendants . . . . . . . . . . . . . . 12

      E.    There is No Open-Ended Continuity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      F.    WWE's Single Bribery Scheme Is Insufficient to Establish a Pattern of
            Racketeering Activity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

II.   WWE FAILS TO ALLEGE A COGNIZABLE RICO INJURY . . . . . . . . . . . . . . . . . . 18

i

III.   WWE'S RICO CLAIMS ARE TIME-BARRED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

     A.   WWE Was on Inquiry Notice of its Injury . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

     B.   WWE Has Not Alleged Fraudulent Concealment . . . . . . . . . . . . . . . . . . . . . . 25

     C.   A Separate Accrual Theory Cannot Revive WWE's Stale Rico Claim . . . . . . . . 26

IV.   WWE'S CLAIMS ARE BARRED BY THE 2004 RELEASE . . . . . . . . . . . . . . . . . . . . 27

     A.   The Court Should Consider the 2004 Release in Deciding This Motion . . . . . . 28

     B.   The Lerner Declaration Was A Proper Way to Transmit the Release . . . . . . . . 31

     C.   The Release Indisputably Bars WWE's Claims Here . . . . . . . . . . . . . . . . . . . . 33

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

**TABLE OF AUTHORITIES**

CASES                                                                                          PAGE(S)

A.I.A. Holdings, S.A. v. Lehman Brothers, Inc., No. 97 Civ. 4978, 2002 WL
    334809 (S.D.N.Y. June 17, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Academic Industries, Inc. v. Untermeyer Mace Partners, Ltd., No. 90 Civ. 1052,
    1992 WL 73473 (S.D.N.Y. Apr. 1, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Addeo v. Braver, 956 F. Supp. 443 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Allen v. Berenson Pari-Mutuel, No. 95 Civ. 10289, 1998 WL 80168
    (S.D.N.Y. Feb. 25, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Alternative Energy, Inc. v. St. Paul Fire & Marine Insurance Co., 267 F.3d 30
    (1st Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 29

Amsler v. Corwin Petroleum Corp., 715 F. Supp. 103 (S.D.N.Y. 1989) . . . . . . . . . . . . . . . . . 9

Annodeus, Inc. v. Ciarkowski, No. 04 Civ.1633, 2004 WL 2066937 (S.D.N.Y.
    Sept. 16, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

Anza v. Ideal Steel Supply Corp., 126 S. Ct. 1991 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Apollon Waterproofing & Restoration, Inc. v. Bergassi, No. 01 Civ. 8388,
    2003 WL 1397394 (S.D.N.Y. Mar. 20, 2003), aff'd, 87 Fed. App. 757
    (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Aquilio v. Manaker, Nos. 90-CV-45, 91-CV-93, 1991 WL 207473 (N.D.N.Y.
    Oct. 10, 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Beznicki v. Fetaya, No. 8230/05, 2006 WL 1132351 (N.Y. Sup. Ct. Queens
    County Apr. 18, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Bingham v. Zolt, 66 F.3d 553 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Bingham v. Zolt, 683 F. Supp. 965 (S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

Brooke v. Schlesinger, 898 F. Supp. 1076 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

Brown v. Miguens, No. 02 Civ. 5278, 2003 WL 1090304 (S.D.N.Y.
    Mar. 11, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Butala v. Agashiwala, 916 F. Supp. 314 (S.D.N.Y. 1996) .............................. 23

Calcutti v. SBU, Inc., 273 F. Supp. 2d 488 (S.D.N.Y. 2003) .......................... 30

Carnrite v. Granada Hospital Group, Inc., 175 F.R.D. 439 (W.D.N.Y. 1997) ............. 32

Casio Computer Co. v. Sayo, No. 98CV3722, 2000 WL 1877516 (S.D.N.Y.
    Oct. 13, 2000) ...................................................... 17

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002) ....................... 29, 31

In re Ciprofloxacin Hydrochloride Antitrust Litig., 261 F. Supp. 2d 188
    (E.D.N.Y. 2003) ................................................... 10, 27

Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229 (2d Cir. 1999) ....... 15, 18

Collins & Aikman Product Co. v. Building Systems, Inc., 58 F.3d 16 (2d Cir.1995) ........ 33

Commercial Data Servers, Inc. v. IBM, 262 F. Supp. 2d 50 (S.D.N.Y. 2003) .......... 31, 32

Com-Tech Associates v. Computer Associates International, Inc., 753 F. Supp.
    1078 (E.D.N.Y. 1990), aff'd, 938 F.2d 1574 (2d Cir. 1991) ....................... 8

Construction Interior Systems, Inc. v. Donohoe Cos., 813 F. Supp. 29 (D.D.C. 1992) ....... 34

Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42 (2d Cir. 1991) .............. 29, 31

Cosmos Forms Ltd v. Guardian Life Insurance Co., 113 F.3d 308 (2d Cir. 1997) ....... 8, 9, 15

Cougar Audio, Inc. v. Reich, No. 99 Civ. 4498, 2000 WL 420546 (S.D.N.Y.
    Apr. 18, 2000) ...................................................... 20

Courtenay Communications Corp. v. Hall, 334 F.3d 210 (2d Cir. 2003) ................. 29

DLT Resources, Inc. v. Credit Lyonnais Rouse, Ltd., No. 00 Civ. 3560, 2001
    WL 25695 (S.D.N.Y. Jan. 10, 2001) ...................................... 24

Demorais v. Wisniowski, 841 A.2d 226 (Conn. App. Ct. 2004) ........................ 33

Dempsey v. Sanders, 132 F. Supp. 2d 222 (S.D.N.Y. 2001) ............................ 18

DePalma v. Realty IQ Corp., No. 01 Civ. 446, 2002 WL 461647 (S.D.N.Y.
    Mar. 25, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Dodds v. Cigna Securities, Inc., 12 F.3d 346 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . 22, 23, 25

Donahue v. Uno Restaurants, LLC, No. 3:06-CV-53, 2006 WL 1373094
    (N.D.N.Y. May 16, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Dooner v. NMI Ltd., 725 F. Supp. 153 (S.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Eastchester Rehabilitation & Health Care Center, L.L.C. v. Eastchester Health
    Care Center, L.L.C., No. 03 Civ. 7786, 2005 WL 887154 (S.D.N.Y.
    Apr. 15, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Evercrete Corp. v. H-Cap Ltd., 429 F. Supp. 2d 612 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . 9

Fakhoury Enterprises, Inc. v. J.T. Distributors, No. 94 Civ. 2729, 1997 WL
    291961 (S.D.N.Y. June 2, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Farberware, Inc. v. Groben, 764 F. Supp. 296 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . 7

Federal Paper Board Co. v. Amata, 693 F. Supp. 1376 (D. Conn. 1988) . . . . . . . . . . . . . . . . . 21

Ficke v. Johns, No. 95 C 939, 1996 WL 99424 (N.D. Ill. Mar. 4, 1996) . . . . . . . . . . . . . . . . . 29

Finance Co. of America v. BankAmerica Corp., 493 F. Supp. 895 (D. Md. 1980) . . . . . . . . . . 32

First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159 (2d Cir.
    2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 12, 13

First Nationwide Bank v. Gelt Funding Corp., 820 F. Supp. 89 (S.D.N.Y.
    1993), aff'd, 27 F.3d 763 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 18

Frederick Road Ltd. Partnership v. Brown & Sturm, 756 A.2d 963 (Md. 2000) . . . . . . . . . . . 24

GICC Capital Corp. v. Technology Finance Group, Inc., 67 F.3d 463 (2d Cir.
    1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Garrick-Aug Associates Store Leasing, Inc. v. Hirschfeld, 652 F. Supp. 905
    (S.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re Global Crossing, Ltd. Security Litigation, No. 02 Civ. 910, 2006 U.S. Dist.
    LEXIS 39030 (S.D.N.Y. June 13, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Hanover Shoe, Inc. v. United Shoe Machine Corp., 392 U.S. 481 (1968) . . . . . . . . . . . . . . . . 27

Hansel 'N Gretel Brand, Inc. v. Savitsky, No. 94 Civ. 4027, 1997 WL 543088
    (S.D.N.Y. Sept. 3, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Healey v. Pyle, No. 89 Civ. 6027, 1992 WL 80775 (S.D.N.Y. Mar. 31, 1992) . . . . . . . . . . . . 8

Holmes v. Long Island Rail Road, No. 96 CV 6196, 1998 WL 960299 (E.D.N.Y.
    Dec. 10, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Holowecki v. Federal Express Corp., 440 F.3d 558 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . 29

I.M. Oberman Associates, Inc. v. Republic Finance Services, Inc., No. 92 Civ.
    1843, 1993 WL 88209 (S.D.N.Y. Mar. 25, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Imagineering, Inc. v. Kiewit Pacific Co., 976 F.2d 1303 (9th Cir. 1992) . . . . . . . . . . . . . . . . 19

In re Integrated Resources Real Estate Ltd. Partnerships Securities Litigation,
    850 F. Supp. 1105 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

International Brotherhood of Teamsters v. Carey, 297 F. Supp. 2d 706 (S.D.N.Y.
    2004), aff'd, 124 Fed. App. 41 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

Jacobson v. Cooper, 882 F.2d 717 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 17

James Cape & Sons Co. v. PCC Construction Co., No. 05-3894, 2006 WL 1751886
    (7th Cir. June 28, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Kamen v. AT&T., 791 F.2d 1006 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Knapp v. Knapp, 100 P.2d 759 (Cal. 1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Kuhn v. Pacific Mutual Life Insurance Co., 37 F. Supp. 102 (S.D.N.Y. 1941) . . . . . . . . . 27, 30

Kurtz v. Trepp, 375 N.W.2d 280 (Iowa Ct. App. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

LC Capital Partners, LP v. Frontier Insurance Group, Inc., 318 F.3d 148
    (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 22, 23

Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413 (1996) . . . . . . . . . . . . . . . . . . . . . . 20

Laramee v. Jewish Guild for Blind, 72 F. Supp. 2d 357 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . 27

vi

<u>Lefkowitz v. Bank of New York</u>, No. 01 Civ. 6252, 2003 WL 22480049
    (S.D.N.Y. Oct. 31, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

<u>Levine v. Columbia Laboratories, Inc.</u>, No. 03 Civ. 8943, 2004 WL 1392372
    (S.D.N.Y. June 22, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 32

<u>Livingston v. Adirondack Beverage Co.</u>, 141 F.3d 434 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . 27

<u>Local 851 of International Brotherhood of Teamsters v. Kuehne & NagleAir</u>
    <u>Freight Inc.</u>, No. 97 CV 0378, 1998 WL 178873 (E.D.N.Y. Mar. 6, 1998) . . . . . . . . . 27

<u>Local 875 I.B.T. Pension Fund v. Pollack</u>, 992 F. Supp. 545 (E.D.N.Y. 1998) . . . . . . . . . . . . 12

<u>MHI Shipbuilding, LLC v. National Fire Insurance Co.</u>, 286 B.R. 16 (D. Mass. 2002) . . . . . . . 31

<u>Maalouf v. Salomon Smith Barney, Inc.</u>, No. 02 Civ. 4770, 2003 WL 1858153
    (S.D.N.Y. Apr. 10, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Marshall v. National Association of Letter Carriers Branch 36</u>, No. 00 Civ. 3167,
    2003 WL 223563 (S.D.N.Y. Feb. 3, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

<u>Matusovsky v. Merrill Lynch</u>, 186 F. Supp. 2d 397 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . 27

<u>In re Merrill Lynch Ltd. Partnerships Litigation</u>, 7 F. Supp. 2d 256 (S.D.N.Y.
    1997), <u>aff'd</u>, 154 F.3d 56 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

<u>In re Merrill Lynch Ltd. Partnerships Litigation</u>, 154 F.3d 56 (2d Cir. 1998) . . . . . . . . . . . 10, 26

<u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young</u>, No. 91 Civ. 2923, 1994
    WL 88129 (S.D.N.Y. Mar. 15, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Metromedia Co. v. Fugazy</u>, 983 F.2d 350 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Meyer Material Co. v. Mooshol</u>, 188 F. Supp. 2d 936 (N.D. Ill. 2002) . . . . . . . . . . . . . . . . . . 17

<u>Mississippi Power & Light Co. v. United Gas Pipe Line Co.</u>, 729 F. Supp. 504
    (S.D. Miss. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

<u>Moll v. U.S. Life Title Insurance Co.</u>, 700 F. Supp. 1284 (S.D.N.Y. 1988) . . . . . . . . . . . . . . . 24

<u>In re Motel 6 Securities Litigation</u>, 161 F. Supp. 2d 227 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . 12

<u>National Group for Communications & Computers Ltd. v. Lucent Tech. Inc.</u>,
         420 F. Supp. 2d 253 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

<u>Neewra, Inc. v. Manakh Al Khaleej General Trading & Contracting Co.</u>, No. 03
         Civ. 2936, 2004 WL 1620874 (S.D.N.Y. July 20, 2004) . . . . . . . . . . . . . . . . . . . . . . . . 32

<u>Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards</u>, 437 F.3d
         1145 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Panix Promotions, Ltd. v. Lewis</u>, No. 01-Civ. 2709, 2002 WL 72932 (S.D.N.Y.
         Jan. 17, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>In re Parmalat Securities Litigation</u>, 375 F. Supp. 2d 278 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . 32

<u>Pharr v. Evergreen Gardens, Inc.</u>, No. 03 Civ 5520, 2004 WL 42262 (S.D.N.Y.
         Jan. 7, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

<u>Polycast Technology Corp., v. Uniroyal, Inc.</u>, 728 F. Supp. 926 (S.D.N.Y. 1989) . . . . . . . . . . . 9

<u>Pouliot v. Town of Fairfield</u>, 184 F. Supp. 2d 38 (D. Me. 2002) . . . . . . . . . . . . . . . . . . . . . . . 30

<u>Price v. Gast</u>, No. 98 CIV. 7769, 2000 WL 369381 (S.D.N.Y. Apr. 11, 2000) . . . . . . . . . . . . 13

<u>Procter & Gamble Co. v. Big Apple Industrial Buildings, Inc.</u>, 879 F.2d 10
         (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

<u>In re Prudential Security Inc. Ltd. Partnerships Litigation</u>, 930 F. Supp. 68
         (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25

<u>Reuben H. Donnelley Corp. v. Mark I Marketing Corp.</u>, 893 F. Supp. 285 (S.D.N.Y. 1995) . . . 6

<u>Ricioppo v. County of Suffolk</u>, No. 04 Civ. 3630 (E.D.N.Y. Mar. 29, 2006) . . . . . . . . . . . . . . 31

<u>Roeder v. Alpha Industries</u>, 814 F.2d 22 (1st Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

<u>Rotella v. Wood</u>, 528 U.S. 549 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

<u>Sa'Buttar Health & Medical, P.C. v. TAP Pharmaceuticals., Inc.</u>, No. 03 C 4074,
         2004 WL 1510023 (N.D. Ill. July 2, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

<u>Salichs v. Tortorelli</u>, No. 01 Civ. 7288, 2004 WL 602784 (S.D.N.Y.
         Mar. 29, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
<u>In re Salomon Analyst Winstar Litigation</u>, No. 02 Civ. 6171, 2006 WL 510526

(S.D.N.Y. Feb. 28, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Schonfeld v. Hilliard, 218 F.3d 164 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Sibersky v. Borah, Goldstein, Altshuler & Schwartz, P.C., No. 99 Civ. 3227, 2002
    WL 1610923 (S.D.N.Y. July 22, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

In re Silicon Graphics, Inc. Securities Litigation, 970 F. Supp. 746 (N.D. Cal. 1997) . . . . . . . 28

Simpson v. Metropolitan-North Commuter R.R., No. 04 Civ. 2565, 2006 WL
    2056366 (S.D.N.Y. July 20, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Skylon Corp. v. Guilford Mills, Inc., No. 93 Civ. 5581, 1997 WL 88894 (S.D.N.Y.
    Mar. 3, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

State Farm Mutual Automobile Insurance Co. v. CPT Medical Services, 375
    F. Supp. 2d 141 (E.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Strates Shows, Inc. v. Amusements of America, Inc., 379 F. Supp. 2d 817
    (E.D.N.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Strock v. USA Cycling, Inc., Nos. 00-CV-2285, 01-CV-2444, 2006 WL 1223151
    (D. Colo. May 8, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Sumitomo Corp. v. Chase Manhattan Bank, No. 99 Civ. 4004, 2000 WL 1616960
    (S.D.N.Y. Oct. 30, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re Taxable Municipal Bond Securities Litigation, 51 F.3d 518 (5th Cir. 1995) . . . . . . . . . . 18

Tho Dinh Tran v. Alphonse Hotel Corp., 281 F.3d 23 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . 26

Town of Poughkeepsie v. Espie, 402 F. Supp. 2d 443 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . 24, 26

Trustees of Plumbers & Pipefitters National Pension Fund v. Transworld
    Mechanical, Inc., 886 F. Supp. 1134 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 20

USA Certified Merchants, LLC v. Koebel, 262 F. Supp. 2d 319 (S.D.N.Y. 2003) . . . . . . . . . . 5

In re Ultrafem Inc. Sec. Litig., 91 F. Supp. 2d 678 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . 23

United States v. Altman, 48 F.3d 96 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Aulicino, 44 F.3d 1102 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

ix

United States v. Bosurgi, 530 F.2d 1105 (2d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

United States v. Bronston, 658 F.2d 920 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Busacca, 936 F.2d 232 (6th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Coiro, 922 F.2d 1008 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . 12, 15, 16

United States v. Eppolito, No. 05-CR-192, 2006 WL 1793536 (E.D.N.Y.
        June 30, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 13

United States v. Feldman, 853 F.2d 648 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Gelb, 881 F.2d 1155 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Maze, 414 U.S. 395 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. McCarthy, 271 F.3d 387 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Private Sanitation Industry Association, 44 F.3d 1082 (2d Cir. 1995) . . . . . . . 32

United States v. Reiss, 186 F.3d 149 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Rybicki, 354 F.3d 124 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6

United States v. Salinas, 522 U.S. 52 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

United States v. Stephenson, 183 F.3d 110 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Triumph Capital Group, Inc., 260 F. Supp. 2d 444 (D.Conn. 2002) . . . . . . . . 16

United States v. Wallace, No. 97 CR. 975, 1998 WL 401534 (S.D.N.Y. July 17, 1998) . . . . . . 21

Vemco, Inc. v. Camardella, 23 F.3d 129 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Village on Cannon v. Bankers Trust Co., 920 F. Supp. 520 (S.D.N.Y. 1996) . . . . . . . . . . . . . . 5

Warden v. Crown American Realty Trust, No. Civ. A. 96-25J, 1999 WL 476996
        (W.D. Pa. July 6, 1999), aff'd, 229 F.3d 1140 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . 28

Welch Foods Inc. v. Gilchrist, No. 93-CV-0641, 1996 WL 607059 (W.D.N.Y.
        Oct. 18, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

<u>Western Associates Ltd. Partnership v. Market Square Associates</u>, 235 F.3d 629
    (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Willis Corroon Corp. of Utah Inc. v. United Capitol Insurance Co.</u>, No. 97-2208, 1998 WL
    30069 (N.D. Cal. Jan. 5, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

<u>Wiltshire v. Dhanraj</u>, 421 F. Supp. 2d 544 (E.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Wing Hing (Tang) Fabrics Manufacturing Co. v. Rafaella Sportswear, Inc.</u>,
    No. 84 Civ. 9024, 1986 WL 9688 (S.D.N.Y. Aug. 26, 1986) . . . . . . . . . . . . . . . . . . . . 32

<u>Zhu v. First Atlantic Bank</u>, No. 05 Civ. 96, 2005 WL 2757536 (S.D.N.Y.
    Oct. 25, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Zimmerman v. Prime Medical Services, Inc.</u>, 729 F. Supp. 23 (S.D.N.Y. 1990) . . . . . . . . . . . 30

<u>Zola v. Gordon</u>, 685 F. Supp. 354 (S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

<u>Zurich American Insurance Co. v. Dah Sing Bank, Ltd.</u>, No. 03 . . . . . . . . . . . . . . . . . . . . . . 32


<u>STATUTES</u>                                                                    <u>PAGE(S)</u>

18 U.S.C. § 1964(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

S. Rep. No. 91-617, at 158 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## PRELIMINARY STATEMENT

Now that the briefing is finally complete on the Motions to Dismiss WWE's Amended Complaint, it is pellucid that no matter how hard WWE attempts to clothe its complaint in RICO (or Sherman Act or Robinson Patman Act) garb, its garden variety state law fraud claim is still just that and nothing more. It arises out of an alleged single short-lived bribery scheme against a single victim completed many years ago, which cannot possibly recur. WWE's claim is a far cry from the continuing criminal racketeering activity that Congress targeted in the RICO statute,[1] with treble damages and federal subject matter jurisdiction.

WWE's attempt to artificially elongate its bribery scheme by tacking on an early legitimate perfumed doll transaction with Shenker – years before Bell was even alleged to have been corrupted – is unavailing because, as WWE itself admits, any scheme to defraud WWE required that both Shenker and Bell work "together" to dupe WWE into thinking that the proposed deals presented to it were "fair": "**both had to do so for the scheme to work**." (Pl. Opp. at 38)[2] (bold added). As Bell's complicity allegedly did not occur until late 1997, and the alleged scheme culminated in a final alleged bribery payment in 1998, it falls far short of the two year minimum necessary for RICO continuity. See First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 181 (2d Cir. 2004).[3] Even if the early Shenker transaction were considered, continuity still would be lacking.

---

[1]     "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern." S. Rep. No. 91-617, at 158 (1969).

[2]     Defined terms in Defendants' Memorandum of Law in Support of the Motion to Dismiss the Amended Complaint, dated June 2, 2006 ("Def. Br") and Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss, dated July 7, 2006 ("Pl. Opp.") are incorporated herein.

[3]     WWE's effort to stretch the back-end of its scheme – long after the alleged bribery was completed – is also legally meritless. Indeed, WWE even goes so far as to depict payments to it under the Licenses to this very day as continuing criminal predicate acts. See § I.B., infra.

In straining to cobble together its disparate allegations, WWE itself emphasizes that the challenged transactions all involved the same purposes, results, participants, victims and methods of commission, directed toward one "common and related aspect" to "secure valuable licensing rights from WWE." (Pl. Opp. at 15.) WWE's admission is fatal to its invocation of RICO because "[c]ourts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of a closed or open pattern of continuity." Lefkowitz v. Bank of New York, No. 01 Civ. 6252, 2003 WL 22480049, at *8 (S.D.N.Y. Oct. 31, 2003) (Marrero, J.) (emphasis added).

WWE's RICO claims are also dismissable for failure to allege the requisite injury to WWE's "business or property by reason of a violation of" the RICO statute. 18 U.S.C. § 1964(c). WWE's characterization of its speculation that it would have obtained a better offer from other possible bidders as "lost opportunity damages" cannot save its claim, because such damages are still deemed lost profits that are unrecoverable on a fraud claim, and under RICO. See First Nationwide Bank v. Gelt Funding Corp., 820 F. Supp. 89, 95 (S.D.N.Y. 1993), aff'd, 27 F.3d 763 (2d Cir. 1994).

WWE also fails to overcome Defendants' showing that its RICO claims are hopelessly time-barred. Conspicuously absent from its lengthy opposition is any attempt to address, much less refute, the veritable blizzard of specific storm warnings it received – described in WWE's own Amended Complaint – that put WWE on notice of its RICO injury no later than 1998 and started the statute running. Indeed, WWE makes the fatal concessions that facts alleged in the Amended Complaint **"would lead anyone . . . to suspect that the videogame license was being obtained by fraud"** (Pl. Opp. at 54), and that the bidding process for that license was **"obviously irregular and corrupt**." (Id. at 67 (bold added).) As a result, WWE is forced to seek refuge in the untenable legal position that inquiry notice cannot be decided on a motion to dismiss. Contrary to WWE's assertion,

2

the Second Circuit has squarely held that where, as here, inquiry notice "can be gleaned from the complaint and papers . . . integral to the complaint, <u>resolution of the issue on a motion to dismiss is appropriate</u>' . . . <u>and we have done so in 'a vast number of cases.</u>'" <u>LC Capital Partners, LP v. Frontier Ins. Group, Inc.</u>, 318 F.3d 148, 156 (2d Cir. 2003) (emphasis added; citations omitted).

Finally, WWE struggles mightily to hide from the 2004 "Settlement Agreement and General Release of All Claims" (the "Release") that forecloses all claims "relating in any way to the Audit." WWE alleges that the Audit, which culminated in the Release, targeted the very payments on which this action is predicated. Thus, WWE's claims "relate to" the Audit and are squarely precluded by the Release. Moreover, because WWE's very ability to sue now depends on the effect of the Release, it is integral to WWE's claims and properly considered. <u>Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 267 F.3d 30, 33 (1st Cir. 2001). WWE's desperate attempts to shield the Release from review only betray its recognition that the Release conclusively bars its claims here.

**ARGUMENT**

I.    **WWE FAILS TO ALLEGE THE REQUISITE CONTINUITY**

    A.    **WWE's Attempt to Artificially Extend the "Front-End" of the RICO Scheme with Unrelated Acts Predating 1998 Fails As a Matter of Law**

        1.    **WWE Admits Bell's Complicity Was a Sine Qua Non of the Scheme**

In its moving papers, the JAKKS Defendants demonstrated that WWE's attempt to elongate its RICO scheme – belatedly made for the first time in the Amended Complaint – based on JAKKS' single transaction with Shenker that was unrelated to WWE licenses and occurred long before the alleged complicity of Bell began in late 1997, fails as a matter of law.  (Def. Br. at 8-12.) Specifically, WWE's own admissions demonstrate that the commission of honest services fraud

3

against WWE was <u>simply not possible</u> without the complicity of Bell. (<u>Id.</u> at 8-9.)[4]  Indeed, WWE

acknowledges that until Bell was corrupted – which WWE admits did not begin until late 1997 – no

scheme involving Shenker alone was possible.  According to WWE, the Amended Complaint alleges

that Shenker and Bell worked together as "buffers" between WWE and Defendants' unlawful

activities to "skew important aspects of *all the deals* and mislead WWE into thinking those deals

were fair.  Indeed, *both <u>had</u> to do so in order for the scheme to work*."  (Pl. Opp. at 38; italics only

added.)  In short, WWE concedes, as it must, that the complicity of Bell, which allegedly did not

occur until the close of 1997, was a <u>sine qua non</u> of the scheme.

### 2. WWE's Reliance on <u>Rybicki</u> is a Red Herring

WWE's reliance on <u>United States v. Rybicki</u>, 354 F.3d 124, 126 (2d Cir. 2003) is misguided,

as <u>Rybicki</u> concerned whether the statute extending the mail and wire fraud statutes to cover honest

services fraud was unconstitutionally vague.  Far from undermining Defendants' Motion, <u>Rybicki</u>

reaffirmed that honest services fraud entails a scheme "to enable *an officer or employee of a private*

*entity* (or a person in a *relationship that gives rise to a duty of loyalty comparable to that owed by*

*employees to employers*)" to secretly breach that duty of loyalty by acting in the defendants' interests

instead,[5] <u>id.</u> at 141-42 (italics added) – a showing WWE's factual allegations wholly fail to make.

WWE's conclusory allegations alone are not sufficient to establish a fiduciary relationship.[6]  See

---

[4]      It is undisputed that as one of WWE's mere non-exclusive outside licensing agents, Shenker never had any power to bind WWE. (Def. Br. at 8.)  Thus, even if JAKKS did try to "corrupt" Shenker to submit a "below market bid" to WWE's inside (and then uncorrupted, loyal) employee Bell, such a strategy would be tantamount to economic suicide given the alleged "intense" competition in the market for WWE licenses. (AC ¶¶ 52, 58, 103.)  Characteristically, WWE simply ignores the controlling authorities rejecting fraud claims that defy economic reason.  (Def. Br. at 9-10.)

[5]      WWE resorts to wishful thinking by insisting that its claims that Shenker engaged in honest services fraud before Bell was compromised "are not challenged by any defendant" and are therefore "conceded." (Pl. Opp. at 12.)  This assertion ignores, <u>inter alia</u>, the JAKKS Defendants' arguments at Def. Br. 8-10.

[6]      Despite WWE's concession that this lawsuit "principally arises from Defendants depriving WWE
(continued...)

Maalouf v. Salomon Smith Barney, Inc., No. 02 Civ. 4770, 2003 WL 1858153, at *4-5 (S.D.N.Y. Apr. 10, 2003) (dismissal "appropriate where a plaintiff has not, and cannot as a matter of law, plead a fiduciary relationship"); Reuben H. Donnelley Corp. v. Mark I Mktg. Corp., 893 F. Supp. 285, 289 (S.D.N.Y. 1995) (dismissing fraud claim for failure to plead that license agreement gave rise to fiduciary duties apart from those found in the agreement); accord Demorais v. Wisniowski, 841 A.2d 226, 234 (Conn. App. Ct. 2004) (lack of fiduciary status may be decided as a matter of law).

Before 1997, Shenker was merely one of WWE's non-exclusive outside licencing agents. Unlike Bell, who was an employee and who signed a specific code of conduct requiring loyalty and charging him with obtaining the highest royalty rate, Shenker, whose company SSAI only was alleged to have an oral agreement with WWE until March 1997, had no such duty. (Def. Br. at 9.) The Amended Complaint is devoid of any allegation that Shenker, as a non-exclusive outside licensing agent until March 1997, was in any way prohibited from providing services to other clients, including JAKKS (even under the 1997 Agency Agreement). (Def. Br. at 8, 11.)[7]  WWE's own

---

[6]     (...continued)
of the intangible right of honest services,'" a claim grounded in fraud (Pl. Opp. at 1.), it continues to invoke the liberal notice pleading standard of Rule 8(a). (Pl. Opp. at 6.) It is settled that "'[in] order to state a civil RICO claim grounded in fraud, plaintiff must meet [the] heightened pleading standard [of Fed. R. Civ. P. 9(b)].'" Zhu v. First Atlantic Bank, No. 05 Civ. 96, 2005 WL 2757536, at *4 (S.D.N.Y. Oct. 25, 2005) (citation omitted). WWE's non-fraud RICO cases are inapposite. WWE's cases involving honest services fraud are also inapposite because, unlike here, the existence of an employee/fiduciary relationship was undisputed. See, e.g., Rybicki, 354 F.3d at 127 (insurance adjusters, who were employees of plaintiff insurance companies were fiduciaries or "a person in a relationship that gives rise to a duty of loyalty"); United States v. Bronston, 658 F.2d 920, 937 (2d Cir. 1981) ("It is clear beyond doubt that as a [lawyer], defendant owed [a] fiduciary duty to [his] clients.")

[7]     Rybicki also requires that breach of loyalty be "accompanied by a material misrepresentation . . . or omission." Rybicki, 354 F.3d at 127, 142. As the only "omission" WWE cites is Shenker's alleged "undisclosed conflict of interest," this second element is equally lacking at the time of the perfumed doll deal as it presupposes the existence of the duty of loyalty by Shenker that WWE's own allegations refute. Indeed, as a non-exclusive outside licensing agent free to represent any potential licensee in a competitive market, Shenker's interest in promoting his clients was obvious, further precluding any finding of a  material omission.

allegations demolish its conclusory claim that Shenker qualifies as an employee or other person owing duties of loyalty comparable to those identified in <u>Rybicki</u> as required to sustain honest services fraud.[8]

In the final analysis, WWE's honest services claim prior to Bell's alleged complicity rests solely on conclusory legal conclusions and illogical inferences that must be rejected as a matter of law. (Def. Br. at 10.)  Because WWE's allegations fail to support any alleged honest services claim between 1995 and late 1997, they cannot assist WWE in pleading closed-ended continuity.

### 3.    The 1996 Perfumed Doll Transaction is Too Attenuated

WWE also fails to address the attenuated connection between the 1996 perfumed doll transaction and the subject matter of its RICO pattern.  The 1996 perfumed doll transaction (a) occurred two years before the 1998 license negotiations, and (b) <u>is not alleged to have involved Bell in any way or resulted in any payments to him</u> – facts which WWE ignores.  (Def. Br. at 11.) Furthermore, the perfumed doll transaction, which WWE has <u>never</u> claimed was not a legitimate transaction for fair value, does not relate to the acquisition of any WWE License, or involve the corruption of Bell. (<u>Id.</u> at 12.)  WWE's cavalier attempt (Pl. Opp. at 15-16) to dismiss the authorities cited by the JAKKS Defendants as involving "fundamentally distinct purposes" is unavailing.

Brushing aside Bell's lack of participation until late 1997 as "immaterial," WWE glibly contends that "'continuity does not require that each member of the enterprise participate in it from

---

[8]    Further, unlike here, in WWE's honest services cases the faithless employee had the power to <u>bind his employer</u> in the specific matter.  <u>See</u> <u>Rybicki</u>, 354 F.3d at 127 (expediting settlement within discretion of insurance adjuster); <u>USA Certified Merchs., LLC v. Koebel</u>, 262 F. Supp. 2d 319, 337-38 (S.D.N.Y. 2003) (president of company had sole discretion to expend company resources).  WWE's concession that Shenker lacked any authority to bind WWE to licensing agreements, <u>even after</u> Shenker and WWE entered an exclusive agency agreement (AC ¶ 79; Def. Br. at 8), further <u>negates</u> WWE's assertion that it had pled that Shenker was a fiduciary before he became an exclusive agent.  <u>See</u> <u>Vill. on Cannon v. Bankers Trust Co.</u>, 920 F. Supp. 520, 531-32 (S.D.N.Y. 1996) (references in Complaint to presence of agreement making bank an "exclusive marketing agent" did not adequately plead existence of fiduciary duty because bank had no authority to bind plaintiff and only served as a finder).

6

beginning to end.'" (Id. at 16 (citing United States v. Feldman, 853 F.2d 648, 659 (9th Cir. 1988)).)

Unlike in Feldman, the issue here is not whether "continuity of structure and personnel" is sufficient

to plead a RICO enterprise.  Feldman, 853 F.2d at 659.  Indeed, in Feldman, both defendants

participated in a repetitive racketeering activity for at least fours years – a sufficient duration to meet

closed-ended continuity – before the defendant who played a secondary role left the enterprise.  Id.

at 658-59.  Here, it is only by artificially grafting onto the "scheme" an early unrelated transaction

by Shenker alone (Pl. Opp. at 13), which could not constitute honest services fraud, that WWE

attempts to get even close to the necessary duration for continuity.  Because Shenker's pre-1997

participation in a bona fide perfumed doll deal cannot possibly form part of the RICO pattern,

WWE's short-lived RICO pattern fails to meet the two year minimum duration for RICO continuity.[9]

### 4.    Even Including Purported Acts Predating Bell's Involvement, WWE Cannot Establish the Requisite Closed-Ended Continuity

In the final analysis, all WWE's straining to find some act – any act – to enable it to claim

compliance with the two year minimum for continuity is unavailing.  Even if WWE could establish

that the early perfumed doll deal related to WWE's post-1997 RICO allegations because, as WWE

---

[9]        The smattering of district court cases WWE cites (Pl. Opp. at 18 n. 9) to suggest that schemes lasting less than two years could be sufficient for RICO continuity are overridden by the Court of Appeals' observation that since the Supreme Court's H.J. Inc. decision "'[the Second Circuit] has never found a closed-ended pattern where the predicate acts spanned fewer than two years.'"  First Capital, 385 F.3d at 181.  Unlike here, WWE's cases involved multiple schemes and continuing unlawful conduct.  See Annodeus, Inc. v. Ciarkowski, No. 04 Civ.1633, 2004 WL 2066937, at *4 (S.D.N.Y. Sept. 16, 2004) (multiple schemes of racketeering activity targeting multiple victims for at least two years); Brooke v. Schlesinger, 898 F. Supp. 1076, 1084 & n.7 (S.D.N.Y. 1995) (repeated unlawful acts on a daily basis that continued even after departure of the perpetrator); Farberware, Inc. v. Groben, 764 F. Supp. 296, 300, 306 (S.D.N.Y. 1991) (defendants committed multiple distinct schemes); Dooner v. NMI Ltd., 725 F. Supp. 153, 161-62 (S.D.N.Y. 1989) (repeated unlawful conduct that was neither isolated nor sporadic).  WWE's older Court of Appeals cases are distinguishable for this reason too.  Cosmos Forms Ltd v. Guardian Life Ins. Co., 113 F.3d 308, 310 (2d Cir. 1997) (unlawful acts were repetitious, numerous, non-sporadic, and non-isolated that only ceased due to their discovery); Metromedia Co. v. Fugazy, 983 F.2d 350, 356, 369 (2d Cir. 1992) (three different types of unlawful activity including fraud on the bankruptcy court that transpired for a period of two years); Jacobson v. Cooper, 882 F.2d 717, 720 (2d Cir. 1989) (numerous offenses against multiple victims repeated for almost 9 years); Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc., 879 F.2d 10, 18 (2d Cir. 1989) ("Defendants conducted fraudulent business activities on a number of fronts in five separate schemes.").

7

contends, they all have the same "purposes," "results," "participants," "victims," and "methods of commission" (Pl. Opp. at 15), it would not salvage its RICO claim. WWE runs headlong into settled authority "'uniformly and consistently [holding] that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of a closed or open pattern of continuity." Lefkowitz, 2003 WL 22480049, at *8; W. Assocs. Ltd. P'ship v. Market Square Assocs., 235 F.3d 629, 636 (D.C. Cir. 2001) (eight year time period is not dispositive where single scheme with narrow purpose aimed at few victims is alleged). (See also cases in Def. Br. at 12-13.) Characteristically, WWE ignores these authorities.

Instead, WWE trots out a numbing parade of inapposite cases, which only highlight the deficiency of WWE's alleged single, limited and short scheme. Unlike here, in these cases:

(1) **the length of the racketeering activity was far more substantial**, increasing the threat of repetition. See Jacobson, 882 F.2d at 720 (related continuous predicate acts spanned almost 9 years); Healey v. Pyle, No. 89 Civ. 6027, 1992 WL 80775, at *7 (S.D.N.Y. Mar. 31, 1992) (duration exceeding 4 years found to be continuous); Com-Tech Assocs. v. Computer Assocs. Int'l, Inc., 753 F. Supp. 1078, 1091 (E.D.N.Y. 1990) (scheme lasted approximately 10 years), aff'd, 938 F.2d 1574 (2d Cir. 1991);

(2) **the allegations of repetitive illegal conduct established a clear threat of ongoing future misconduct.** E.g., Cosmos, 113 F.3d at 310 (unlawful acts were repetitious, numerous and not sporadic or isolated); Amsler v. Corwin Petroleum Corp., 715 F. Supp. 103, 104-05 (S.D.N.Y. 1989) (multiple acts of related racketeering alleged continuing threat of continuity because defendants were involved in repetitious illegal activity); and/or

(3) **the cases actually involved multiple schemes.** See Procter & Gamble, 879 F.2d at 18 (defendants "conducted fraudulent business activities on a number of fronts in five separate schemes"); Brooke, 898 F. Supp. at 1086 n.8 (one scheme comprised of related acts followed by another scheme that continued indefinitely beyond the departure of the perpetrator); Polycast Tech. Corp., v. Uniroyal, Inc., 728 F. Supp. 926, 948 (S.D.N.Y. 1989) (despite single goal, separate fraudulent acts comprised "a complex multi-faceted conspiracy to defraud ["in a variety of ways"] executed by numerous officers and stockholders"); Annodeus 2004 WL 2066937, at *4 (defendants engaged in three separate racketeering schemes targeting multiple victims for at least two years).

As stated in GICC Capital Corp. v. Tech. Fin. Group, Inc., 67 F.3d 463, 467 (2d Cir. 1995), "[t]hat multiple schemes are not required in all circumstances does not mean that the number and

8

nature of the schemes alleged by a plaintiff in a given case are entirely irrelevant." Further, WWE's argument that the presence of a single victim here is irrelevant (Pl. Opp. at 15) is plainly wrong because '"'[c]ourts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed <u>towards a single victim</u> do not satisfy the RICO requirement of a closed or open pattern of continuity.'"' <u>Evercrete Corp. v. H-Cap Ltd.</u>, 429 F. Supp. 2d 612, 624-25 (S.D.N.Y. 2006) (citations omitted) (emphasis added).

> **B.**    **Legitimate Payments Made After 1998 in Connection With the Videogame and Toy Licenses Cannot Extend the RICO Scheme**

At the other end, WWE continues to erroneously assert that payments made in connection with the Licenses <u>after the scheme was completed</u> in August of 1998 indefinitely extend the RICO scheme "through today and will continue every quarter while fraudulently obtained proceeds are laundered." (Pl. Opp. at 18.)  WWE ignores the numerous cases holding, as a matter of law, that <u>none</u> of these alleged post-1998 predicate acts satisfies closed-ended continuity. (Def. Br. at 13-15.)

WWE inaccurately contends that the JAKKS Defendants did not address the purported predicate acts post-dating 1998, which WWE labels as "money laundering." (Pl. Opp. at 19.)  To the contrary, JAKKS demonstrated that the only such acts by JAKKS consist entirely of royalty payments and payments to JAKKS by THQ pursuant to the Licenses (AC ¶ 249(b)xxviii-lxxxviii), which cannot serve to lengthen a RICO scheme <u>after a RICO scheme is complete.</u> (Def. Br. at 16-17.)  Defendants cited numerous cases specifically <u>rejecting</u> similar attempts to prolong a RICO scheme by characterizing continued payments or revenue streams as unlawful – all of which are ignored by WWE. <u>See, e.g.</u>, <u>Vemco, Inc. v. Camardella</u>, 23 F.3d 129, 134 (6th Cir. 1994) (holding that closed-ended continuity could not be supplemented by billing notices sent after the fraudulent scheme had taken place, even if pursuant to the fraudulent scheme); <u>Bingham v. Zolt</u>, 683 F. Supp. 965, 970 (S.D.N.Y. 1988) (rejecting claim that defendants' continuing receipt of income from

9

companies formed from fraudulent scheme constituted "ongoing criminal activity": to hold otherwise "would allow plaintiffs to turn every finite scheme – or at least those involving economic crimes – into a [RICO] enterprise"); see also United States v. Eppolito, No. 05-CR-192, 2006 WL 1793536, at *37 (E.D.N.Y. June 30, 2006) (acts taken after the objectives of the conspiracy were accomplished cannot serve to extend RICO continuity).

Likewise, there is no basis to treat these subsequent payments under the Licenses as new RICO injuries so as to constitute new predicate acts. See In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 59-60 (2d Cir. 1998) (finding that plaintiff's injury occurred when investment was made and neither mailings to conceal the initial fraud nor the collection of fees in later years constituted new injuries); In re Ciprofloxacin Hydrochloride Antitrust Litig., 261 F. Supp. 2d 188, 229 (E.D.N.Y. 2003) (in context of Clayton Act, on which RICO is modeled, payments under existing contracts, even contracts alleged to be anti-competitive, "are not sufficient to extend or restart the limitations period because the performance of an allegedly anticompetitive, pre-existing contract is not a new predicate act") (collecting cases).[10]

---

[10]    WWE's assertion that transactions in legitimate royalty payments arising out of bona fide sales pursuant to the Licenses create ongoing liability under the money laundering statute, and ultimately, RICO (AC ¶249(b)xxviii-lxxxviii) is unprecedented and finds no support in WWE's own cases, which merely concern laundering of illicit payments, not routine payments made under a contract. See Welch Foods Inc. v. Gilchrist, No. 93-CV-0641E(F), 1996 WL 607059, at *1-2 (W.D.N.Y. Oct. 18, 1996) (money laundering of bribes); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young, No. 91 Civ. 2923, 1994 WL 88129, at *1, *22-24 (S.D.N.Y. Mar. 15, 1994) (same); United States v. McCarthy, 271 F.3d 387, 394-95 (2d Cir. 2001) (money laundering of embezzled funds); United States v. Reiss, 186 F.3d 149, 154 (2d Cir. 1999) (money laundering of drug proceeds). Indeed, if WWE's novel interpretation of "criminally derived property" were adopted to embrace legitimate royalty payments related to the Licenses, WWE itself would be guilty of money laundering, since it is both the source and the recipient of payments made pursuant to the Licenses (see, e.g., AC ¶¶ 249(a)li-liii; 249(b)li, liii, lv) and barred by the doctrine of in pari delicto. See Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards, 437 F.3d 1145, 1152-56 (11th Cir. 2006). Even if the royalty payments could ever be deemed derived from illegal activity, the Second Circuit has unequivocally held that "the money laundering statute does not criminalize the mere spending of proceeds of specified unlawful activity." United States v. Stephenson, 183 F.3d 110, 120 (2d Cir. 1999).

C.    **Despite WWE's Contention Otherwise, Acts of Concealment
Cannot Serve to Lengthen the Alleged RICO Scheme**

WWE also ignores the case law holding that alleged acts of concealment are not, standing

alone, predicate acts that extend RICO continuity.  (Def. Br. at 13-14.)  See also, e.g., Eppolito, 2006

WL 1793536, at *37 ("The duration of a conspiracy cannot be 'indefinitely lengthened merely

because the conspiracy is kept a secret, and merely because the conspirators take steps to bury their

traces, in order to avoid detection and punishment after the central criminal purpose has been

accomplished.'") (citation omitted); Skylon Corp. v. Guilford Mills, Inc., No. 93 Civ. 5581, 1997 WL

88894, at *6 (S.D.N.Y. Mar. 3, 1997) (rejecting an "alleged 'cover-up' as part of an on-going

scheme," where goal of the scheme was "effectively accomplished").

To be sure, WWE attempts to evade this doctrine by erroneously contending that these acts

of concealment are "independently chargeable predicate acts under RICO." (Pl. Opp. at 20.)

Tellingly, WWE does not explain how any of the alleged acts of concealment, including alleged

perjury, constitute independent predicate acts as defined by the RICO statute.  WWE ignores the vast

legal difference between acts performed to avoid detection of a completed scheme and acts to

perpetrate an injury.  WWE's cases are inapposite because the acts of concealment there constituted

independent predicate acts, and were part of the ongoing scheme itself.  See, e.g., United States v.

Coiro, 922 F.2d 1008, 1017 (2d Cir. 1991) (acts of concealment were illegal bribes paid to a District

Attorney to enable the narcotics ring to continue to operate); Local 875 I.B.T. Pension Fund v.

Pollack, 992 F. Supp. 545, 567 (E.D.N.Y. 1998) (fraudulent misrepresentations served to ensure that

the scheme of misappropriations continued); In re Motel 6 Sec. Litig., 161 F. Supp. 2d 227, 247

(S.D.N.Y. 2001) (acts of concealment were effected to ensure that the scheme itself was realized).

The alleged concealment here occurred long after the alleged bribery scheme was completed, and

could not possibly have facilitated any ongoing RICO enterprise.  (AC ¶ 249(a)liv-lv.)

11