1

Case 7:04-cv-08223-KMK    Document 179-2    Filed 08/11/2006    Page 1 of 19

Not Reported in F.Supp.2d                                                                         Page 1
Not Reported in F.Supp.2d, 2002 WL 1334809 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
A.I.A. HOLDINGS, S.A., et al., Plaintiffs,
v.
LEHMAN BROTHERS, INC. and Bear, Stearns & Co. Inc.,
Defendants.
No. 97 Civ. 4978(LMM).

June 17, 2002.

MEMORANDUM AND ORDER

MCKENNA, J.
*1 This action was commenced by 277 plaintiffs who allege that they were defrauded by their Lebanese investment broker, Ahmad Ihsan El-Daouk ("Daouk") in connection with the individual brokerage accounts that Daouk established for them. The plaintiffs assert numerous tort and contract claims against defendants Lehman Brothers, Inc. ("Lehman") and Bear, Stearns & Co, Inc. ("Bear Stearns") (collectively, "defendants"), two brokerage houses who consecutively served as Daouk's clearing broker between 1988 and 1995. Defendants move for summary judgment, pursuant to Federal Rule of Civil Procedure 56, to limit plaintiffs' damages to out-of-pocket losses. For the following reasons, the motion is granted in part and denied in part.

Background

This lawsuit concerns plaintiffs' investments with Daouk and Daouk's alleged fraudulent conduct with respect to those investments.[FN1] Plaintiffs claim that when they decided to invest with Daouk as their broker, Daouk promised that he would use a conservative investment strategy and apply a twenty percent "stop-loss" to their accounts. (Pls.' Mem. in Opp'n at 3.) Daouk allegedly told most plaintiffs that eighty percent of their money would be invested in United States treasury bills and that the remaining twenty percent would be traded in foreign currencies. (Id.)

FN1. Familiarity with this lawsuit is presumed and the facts of the case will only be recited herein to the extent necessary to determine this motion.

Plaintiffs claim that they are entitled to both out-of-pocket damages, reflecting the difference between the deposits plaintiffs made to their accounts and the amount of money they withdrew before Daouk's scheme collapsed, as well as lost opportunity damages, which plaintiffs refer to as the lost opportunity "to receive a fair return on their investments." (Pls.' Mem. in Opp'n at 2) (italics in original omitted).[FN2]

FN2. While the amount of out-of-pocket damages may be at issue between the parties, whether the plaintiff can recover out-of-pocket damages is not at issue on this summary judgment motion. The amount of those damages will be decided by a jury at trial.

In support of their claim for lost opportunity damages, plaintiffs rely on the analysis of Joel Podgor ("Podgor"), a Certified Public Accountant who calculated a range of returns that "would represent the amount of appreciation that the invested funds would have experienced had those funds been invested in a conservative portfolio consisting of investments made by an honest broker on behalf of plaintiffs." (Podgor Report at 2.) Podgor used seven different methods to calculate plaintiffs' lost opportunity damages which, according to plaintiffs, were "widely accepted indicia of a conservative rate of return." (Pls.' Mem. in Opp'n at 5.) In sum, the damages, which were calculated through October 31, 1999, yielded amounts ranging from $9,972,977.40 to $16,908,325.00. (Podgor Report at 4.)

Specifically, the damages were calculated by Podgor using the following seven methods: Method 1 used a nine percent annual rate of interest pursuant to New York Civil Practice Law and Rules §§ 5001(a) and 5004, which awards prejudgment interest for most common law actions; Method 2 was based upon an investment in money market accounts using the average federal funds rate from the date of each deposit through October 31, 1999, highlighting the balance at June 1, 1995; Method 3 was based upon an investment in money market accounts using the average federal funds rate from the date of each deposit through June 1, 1995, showing the balance at June 1, 1995 and then switching to a nine percent annual rate of interest through October 31, 1999; Method 4 used a blended rate of return on investments in money mar-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1334809 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

ket accounts (eighty percent) and U.S. equities (twenty percent) from the date of each deposit through October 31, 1999, highlighting the balance at June 1, 1995; Method 5 was based on a blended rate of return on investments in money market accounts (eighty percent) and U.S. equities (twenty percent) from the date of each deposit through June 1, 1995, showing the balance at June 1, 1995 and switching to a nine percent annual rate of interest through October 31, 1999; Method 6 was based upon the return indicated by the Lebanese Investment Index, calculated from the date of each deposit through October 31, 1999, highlighting the balance at June 1, 1995; and Method 7 was based upon the return indicated by the Lebanese investment index, calculated from the date of each deposit through June 1, 1995, showing the balance at June 1, 1995 and switching to a nine percent annual rate of interest. (Podgor Report at Tab 2.)

Discussion

A. Summary Judgment Standard

*2 Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).

Once the moving party establishes a prima facie case demonstrating the absence of a genuine issue of material fact, the nonmoving party has the burden of presenting "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Alemenas*, 143 F.3d 105, 114 (2d Cir.1998). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994).

B. Damages Relating to Fraud Claims

First, defendants argue that damages relating to plaintiffs' fraud claims must be limited to out-of-pocket damages. (Defs.' Mem. at 18.) Out-of-pocket damages are those which compensate for "actual pecuniary loss sustained as a direct result of the wrong," *Lama Holding Co. v. Smith Barney Inc.*, 646 N.Y.S.2d 76, 80 (1996), in this case, the difference between how much plaintiffs deposited into their accounts and the amount of money they withdrew from their accounts.

The Second Circuit has said that, in addition to out-of-pocket damages, plaintiffs may recover consequential damages for fraud claims which include "the costs incurred in preparing for, performing, or passing up other business opportunities." *Ostano Commerzanstalt v. Telewide Sys.*, 880 F.2d 642, 649 (2d Cir.1989). Plaintiffs contend that they are entitled to "lost opportunity" damages because they passed up other investments when investing with Daouk. (Pls.' Mem. in Opp'n at 9 n. 9.) To support their claim, plaintiffs rely on cases in which courts found that plaintiffs had actually passed up other opportunities. E.g., *I.M. Oberman Assocs., Inc. v. Republic Fin. Servs., Inc.*, No. 92 Civ. 1843, 1993 WL 88209, at *5 (S.D.N.Y. Mar. 25, 1993) (plaintiff alleged damages from passing up other business opportunities); *Academic Indus., Inc. v. Untermeyer Mace Partners, Ltd.*, No. 90 Civ. 1052, 1992 WL 73473, at *2 (S.D.N.Y. Apr. 1, 1992) (plaintiff alleged that it refrained from accepting other offers in reliance on its contract with defendants).

*3 However, unlike the plaintiffs in those cases, plaintiffs here did not pass up other specific opportunities. While in theory, an investor always has other investment opportunities, plaintiffs submit no evidence that they actually contemplated some other investment. To the contrary, defendants cite deposition testimony of each Group I plaintiff which indicates that plaintiffs did not pass up other investments in order to invest with Daouk. (Defs.' Reply Mem. at 10 n. 13). Thus, as a matter of law, plaintiffs cannot recover for lost

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                                        Page 3
Not Reported in F.Supp.2d, 2002 WL 1334809 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

opportunity damages on their fraud claims.

Further, plaintiffs are not entitled to recover lost profits on their fraud claims under New York law. *Three Crown Ltd. P'ship v. Salomon Bros., Inc.,* 906 F.Supp. 876, 891 (S.D.N.Y.1995); *Moezinia v. Damaghi,* 544 N.Y.S.2d 8, 11 (N.Y.App.Div.1989). Lost profits are those "which would have been realized in the absence of fraud." *Lama Holding Co.,* 646 N.Y.S.2d at 80. Thus, plaintiffs are limited to out-of-pocket damages on these claims.

C. Damages Relating to Breach of Contract, Negligence and Breach of Fiduciary Duty Claims

Defendants further challenge plaintiffs' claims for damages beyond out-of-pocket losses on plaintiffs' breach of contract, negligence and breach of fiduciary duty claims. (Defs.' Mem. at 19-25.) Plaintiffs claim that they are entitled to recover for lost profits on these claims.[FN3] (Pls.' Mem. in Opp'n at 11.) While lost profits, as defined above, might be recoverable in these types of cases under New York law, they must be reasonably certain. *American Fed. Group, Ltd. v. Rothenberg,* 136 F.3d 897, 907-08 (2d Cir.1998) (breach of fiduciary duty); *Levy v. Bessemer Trust Co., N.A.,* No. 97 Civ. 1785, 1999 WL 199027, at *4-5 (S.D.N.Y. Apr. 8, 1999) (breach of contract) (citing *Kenford Co., Inc. v. County of Erie,* 502 N.Y.S.2d 131, 132 (1986)); *State Farm Fire & Cas. Co. v. Southtowns Tele-comms., Inc.,* 677 N.Y.S.2d 157, 159 (N.Y.App.Div.1997) (negligence). "[A] claimant cannot establish lost profits with the law's requisite certainty where its calculation is dependant upon a host of assumptions concerning uncertain contingencies...." *Kidder, Peabody & Co. v. IAG Int'l Acceptance Group,* 28 F.Supp.2d 126, 134 (S.D.N.Y.1998). In addition, plaintiff bears the burden of proving lost profits with reasonable certainty. *Levy,* 1999 WL 199027, at *4.

> FN3. Plaintiffs refer to damages beyond out-of-pocket damages on their breach of contract, breach of fiduciary, and negligence claims interchangeably as lost profits or lost opportunity damages. (Pls.' Mem. in Opp'n at 11-14.) As discussed above, plaintiffs are not able to recover for passed up investment opportunities. Thus, the Court refers to what plaintiffs expected to gain from their investment with Daouk as "lost profits."

In this case, plaintiffs assert that Daouk promised most of them that he would invest eighty percent of their money in United States treasury bills. (Pls.' Mem. in Opp'n at 3.) The remaining twenty percent was to be held in cash and Daouk was to trade in foreign currencies. (Id.) As to the twenty percent, plaintiffs cannot recover for lost profits, as a matter of law, because the damages are speculative and solely dependant on hypotheticals and assumptions. *Levy,* 1999 WL 199027, at *4. Plaintiffs have submitted no evidence that would clarify the unspecific nature of Daouk's promise to trade in currencies.

*4 On the other hand, plaintiffs are not precluded from recovering lost profits on the amounts that Daouk promised he would invest in United States treasury bills because plaintiffs may be able to establish lost profits with reasonable certainty. However, lost profit damages will be foreclosed to those plaintiffs who cannot prove that Daouk promised them an investment in United States treasury bills.

The thrust of defendants' arguments is that plaintiffs' lost profits theory must be rejected in its entirety because Podgor's calculations were based on seven hypothetical situations and failed to consider the plaintiffs' promised investments. (Defs.' Mem. of Law at 1-2; Defs.' Reply Mem. at 11-15.) However, the Court concludes that while Podgor's analysis was intended to analyze what a conservative investor might have earned instead of what plaintiffs themselves might have earned (Podgor Report at 2), his testimony might be relevant to the extent that some of his methods bear a relationship to the plaintiffs' promised investment in United States treasury bills.

However, some of the methods employed by Podgor are too speculative to be relied upon at trial. For example, Methods 6 and 7, which depend upon a Lebanese Investment Index, bear no relation to the plaintiffs' investments and cannot be relied upon at trial. There is no evidence that Daouk promised plaintiffs that he would invest their money in Lebanon. Instead, the gravamen of plaintiffs' case is that they invested with Daouk because he was affiliated with American brokerage houses and he was going to invest eighty percent of their money in United States treasury bills. Thus, the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1334809 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

Court need not address defendants' *Daubert* arguments because it finds that Methods 6 and 7 are too speculative.

In addition, Podgor's calculations of plaintiffs' nine percent prejudgment interest (Method 1) need not be presented to a jury for assessment of lost profit damages because that amount can be awarded to the plaintiffs by the Court if defendant is found liable.

Conclusion

In sum, defendants' motion for summary judgment is granted in part and denied in part. As concerns plaintiffs' fraud claims, plaintiffs cannot recover for either lost profits or lost opportunities. As concerns plaintiffs' breach of contract, negligence and breach of fiduciary duty claims, plaintiffs may recover for lost profits only on their promised United States treasury bills investments.
So Ordered.

S.D.N.Y.,2002.
A.I.A. Holdings, S.A. v. Lehman Bros., Inc.
Not Reported in F.Supp.2d, 2002 WL 1334809 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 2002 WL 32813248 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of Defendant Bear, Stearns & Co. Inc.'s Motion in Limine for an Order Barring Plaintiffs from Introducing in Evidence, or Making Reference to, Certain Documents Which Purport to Refer to Sarko Sandrik (Dec. 2, 2002) Original Image of this Document (PDF)
• 2002 WL 32595647 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Opposition to Defendant Lehman Brothers, Inc.'s Motion in Limine to Exclude Certain Documents Used as Exhibits at the Depositions of Ahmad Daouk and Wehbe Salibi (Nov. 26, 2002)
• 2002 WL 32813245 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Opposition to Defendant Lehman Brothers, Inc.'s Motion in Limine to Exclude Certain Documents Used as Exhibits at the Depositions of Ahmad Daouk and Wehbe Salibi (Nov. 26, 2002)
• 2002 WL 32595645 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of Bear, Stearns & Co. Inc.'s Motion in Limine to Exclude any Reference to or Evidence of Alleged Bear Stearns' Internal Policies and Procedures and Alleged Violations Thereof (Nov. 25, 2002) Original Image of this Document (PDF)
• 2002 WL 32813243 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of Bear, Stearns & Co. Inc.'s Motion in Limine to Exclude any Reference to or Evidence of Alleged Bear Stearns' Internal Policies and Procedures and Alleged Violations Thereof (Nov. 25, 2002)
• 2002 WL 32813246 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Bear, Stearns & Co. Inc. in Support of its Motion for Reconsideration of This Court's November 22, 2002 Memorandum and Order Granting Plaintiff's Motion in Limine Excluding the Deposition of Sarko Sandrik (Nov. 25, 2002) Original Image of this Document (PDF)
• 2002 WL 32813247 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Defendant Bear, Stearns & Co. Inc.'s Motion in Limine for an Order Barring Plaintiffs from Introducing in Evidence, or Making Reference to, Certain Documents Which Purport to Refer to Sarko Sandrik (Nov. 25, 2002) Original Image of this Document (PDF)
• 2002 WL 32813241 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law of Bear, Stearns & Co. Inc. in Support of Its Motion to Preclude Any Reference to Sarko Sandrik's Failure to Appear on October 5, 2000 (Nov. 22, 2002)
• 2002 WL 32813244 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Defendant Bear, Stearns & Co., Inc.'s Motion in Limine to Exclude Any Reference to or Evidence of Alleged Bear Stearns' Internal Policies and Procedures and Alleged Violations Thereof (Nov. 22, 2002) Original Image of this Document (PDF)
• 2002 WL 32813239 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Plaintiffs' Motion in Limine to Exclude the Deposition of Sarko Sandrik and Opposition to Defendants' Motion to Preclude Any Reference to his Failure to Appear on October 5, 2000 (Nov. 20, 2002) Original Image of this Document (PDF)
• 2002 WL 32813240 (Trial Motion, Memorandum and Affidavit) Reply in Further Support of Lehman Brothers, Inc.'s

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1334809 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 5

Motion in Limine to Exclude Apparent Authority and Reliance Testimony by Non-Group 1 Plaintiffs (Nov. 20, 2002)
• 2002 WL 32813238 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Lehman Brothers, Inc.'s Motion in Limine to Exclude Apparent Authority and Reliance Testimony by Non-Group I Plaintiffs (Nov. 19, 2002) Original Image of this Document (PDF)
• 2002 WL 32813242 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of Defendant Lehman Brothers Inc.'s Motion in Limine to Exclude Certain Portions of Wehbe Salibi's Testimony (Nov. 18, 2002) Original Image of this Document (PDF)
• 2002 WL 32813234 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant Lehman Brothers Inc.'s Opposition to Plaintiffs' Motion in Limine to Exclude the Deposition of Sarko Sandrik and in Support of Bear, Stearns & Co. Inc.'s Cross-Motion to Preclude any Reference to Sandrik's Failure to Appear on October 5, 2000 (Nov. 15, 2002)
• 2002 WL 32813235 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Defendant Lehman Brothers Inc. in Support of Its Objections to October 18, 2002 Order of the Magistrate Judge Regarding a Tape Recorded Interrogation of Ahmed Daouk (Nov. 15, 2002)
• 2002 WL 32813231 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Response to Defendant Lehman Brothers' Inc.'s Objections to the October 18, 2002 Order of the Magistrate Judge Regarding a Tape Recorded Interview of Ahmad Daouk (Nov. 14, 2002) Original Image of this Document (PDF)
• 2002 WL 32813236 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Defendant Lehman Brothers, Inc.'s Motion in Limine to Exclude Certain Portions of Wehbe Salibi's Testimony (Nov. 14, 2002) Original Image of this Document (PDF)
• 2002 WL 32813230 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of the Liquidators and Lovells in Opposition to Defendant Lehman Brothers' Objections to the October 18, 2002 Order of the Magistrate Judge Regarding a Tape Recorded Interview of Ahmad Daouk (Nov. 13, 2002) Original Image of this Document (PDF)
• 2002 WL 32813237 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Defendant Lehman Brothers, Inc.'s Motion in Limine to Exclude Certain Portions of Ahmad Daouk's Testimony (Nov. 13, 2002)
• 2002 WL 32813232 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Bear, Stearns & Co. Inc.'s Motion in Limine to Exclude any Reference to or Evidence of Alleged Bear Stearns' Internal Policies and Procedures and Alleged Violations Thereof (Nov. 12, 2002) Original Image of this Document (PDF)
• 2002 WL 32813233 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Opposition to Plaintiffs' Motion In Limine to Exclude the Deposition Testimony of Sarko Sandrik and in Support of the Motion of Bear, Stearns & Co. Inc. to Preclude Any Reference to His Failure to Appear on October 5, 2000 (Nov. 12, 2002) Original Image of this Document (PDF)
• 2002 WL 32595641 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants' Motion in Limine to Preclude Joel R. Podgor from Testifying at Trial About Plaintiffs' Alleged ""Out-of-Pocket" Damages (Nov. 8, 2002) Original Image of this Document (PDF)
• 2002 WL 32813225 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendant Lehman Brothers Inc.'s Motion in Limine to Exclude Certain Documents Used as Exhibits at the Depositions of Ahmed Daouk and Wehbe Salibi (Nov. 8, 2002) Original Image of this Document (PDF)
• 2002 WL 32813226 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants' Motion in Limine to Preclude Joel R. Podgor From Testifying at Trial About Plaintiffs' Alleged "Out-of-Pocket" Damages (Nov. 08, 2002)
• 2002 WL 32595644 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendant Lehman Brothers, Inc.'s Motion in Limine to Exclude Use of the Phrase ""Rat Trading" (Nov. 7, 2002)
• 2002 WL 32813227 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendant Lehman Brothers, Inc.'s Motion in Limine to Exclude Evidence of the Activities of Frank Gruttadauria (Nov. 7, 2002) Original Image of this Document (PDF)
• 2002 WL 32813228 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defend-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.


ant Lehman Brothers, Inc.'s Motion in Limine to Exclude Use of the Phrase "Rat Trading" (Nov. 07, 2002)

• 2002 WL 32813229 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Lehman Brothers, Inc.'s Motion in Limine to Exclude Apparent Authority and Reliance Testimony By Non-Group 1 Plaintiffs (Nov. 7, 2002) Original Image of this Document (PDF)

• 2002 WL 32813224 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendant Lehman Brothers, Inc.'s Motion in Limine to Strike Plaintiffs' Claims for Punitive Damages and Attorneys' Fees (Nov. 6, 2002) Original Image of this Document (PDF)

• 2002 WL 32813223 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Defendant Lehman Brothers, Inc.'s Motion in Limine to Exclude Use of the Phrase "Rat Trading" (Nov. 04, 2002)

• 2002 WL 32595638 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Defendant Lehman Brothers, Inc.'s Motion in Limine to Exclude Use of the Phrase ""Rat Trading" (Nov. 1, 2002)

• 2002 WL 32813219 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendant Lehman Brothers Inc.'s Motion in Limine to Exclude Certain Portions of Wehbe Salibi's Testimony (Nov. 1, 2002) Original Image of this Document (PDF)

• 2002 WL 32813220 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendant Lehman Brothers, Inc.'s Motion in Limine to Exclude Evidence of the Activities of Frank Gruttadauria (Nov. 1, 2002) Original Image of this Document (PDF)

• 2002 WL 32813221 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendants' Motion in Limine to Strike Plaintiffs' Claims for Punitive Damages (Nov. 1, 2002) Original Image of this Document (PDF)

• 2002 WL 32813222 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiffs' Motion in Limine to Exclude the Deposition of Sarko Sandrik (Nov. 1, 2002) Original Image of this Document (PDF)

• 2002 WL 32813218 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendant Lehman Brothers Inc.'s Motion in Limine to Exclude Certain Portions of Ahmad Daouk's Testimony (Oct. 31, 2002)

• 2002 WL 32813216 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant

Bear, Stearns & Co. Inc.'s Motion in Limine to Strike Plaintiffs' Claims for Punitive Damages and Attorneys' Fees (Oct. 30, 2002) Original Image of this Document (PDF)

• 2002 WL 32813215 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Opposition to Defendant Lehman Brothers, Inc.'s Motion in Limine to Exclude Evidence Obtained By Plaintiffs From Ahmad Daouk (Oct. 23, 2002) Original Image of this Document (PDF)

• 2002 WL 32813217 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of Lehman's Motion in Limine to Exclude Evidence Obtained By Plaintiffs From Ahmed Daouk on the Grounds of Spoliation of Evidence (Oct. 23, 2002) Original Image of this Document (PDF)

• 2002 WL 32813214 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant Lehman Brothers, Inc.'s Motion In Limine to Exclude Evidence of the Activities of Frank Gruttadauria (Oct. 17, 2002) Original Image of this Document (PDF)

• 2002 WL 32595635 (Trial Motion, Memorandum and Affidavit) Memorandum of law in Support of Defendant Lehman Brothers, Inc.'s Motion in Limine to Exclude Use of the phrase ""Rat Trading" (Oct. 16, 2002)

• 2002 WL 32813213 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant Lehman Brothers, Inc.'s Motion in Limine to Exclude Use of the Phrase "Rat Trading" (Oct. 16, 2002)

• 2002 WL 32813212 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant Lehman Brothers, Inc.'s Motion in Limine to Strike Plaintiffs' Claims for Punitive Damages and Attorney's Fees (Oct. 9, 2002)

• 2002 WL 32813211 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion in Limine to Exclude Evidence Obtained By Plaintiffs From Ahmed Daouk On the Grounds of Spoliation of Evidence (Sep. 25, 2002) Original Image of this Document (PDF)

• 2002 WL 32813210 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum of Law In Further Support of Motion for Reconsideration of the Court's Order Dated June 14, 2002 (Jul. 31, 2002) Original Image of this Document (PDF)

• 2002 WL 32813209 (Trial Motion, Memorandum and Affidavit) Group I Plaintiffs' Reply Memorandum of Law in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1334809 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 7

Support of Plaintiffs' Motion to Reconsider the Court's Order Denying Plaintiffs' Motion to Dismiss Defendants' Amended Counterclaims (Jul. 25, 2002) Original Image of this Document (PDF)
• 2002 WL 32813207 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion for Substitution for Deceased Plaintiff (Jul. 24, 2002)
• 2002 WL 32813208 (Trial Motion, Memorandum and Affidavit) Group I Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Reconsideration of the Court's Order Dated June 14, 2002 (Jul. 24, 2002) Original Image of this Document (PDF)
• 2002 WL 32813206 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Opposition to Plaintiffs' Motion to Reconsider the Court's Order Denying Plaintiffs' Motion to Dismiss Defendants' Counterclaims (Jul. 19, 2002)
• 2002 WL 32813205 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Motion for Reconsideration of the Court's Order Dated June 14, 2002 (Jul. 10, 2002) Original Image of this Document (PDF)
• 2002 WL 32813204 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiffs' Motion to Reconsider the Court's Order Denying Plaintiffs' Motion to Dismiss Defendants' Amended Counterclaims (Jul. 8, 2002) Original Image of this Document (PDF)
• 2002 WL 32952267 (Trial Motion, Memorandum and Affidavit) Defendant Lehman Brothers, Inc.'s Memorandum Regarding Plaintiffs' Lack of Diligence in Filing Their Claims (Jun. 12, 2002) Original Image of this Document (PDF)
• 2002 WL 32813202 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants' Motion to Dismiss Certain Group 4 and Group 5 Plaintiffs (May 30, 2002) Original Image of this Document (PDF)
• 2002 WL 32813203 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum of Law in Support of Motion to Dismiss Certain Group 4 and Group 5 Plaintiffs (May 30, 2002) Original Image of this Document (PDF)
• 2002 WL 32813201 (Trial Motion, Memorandum and Affidavit) Group 1 Plaintiffs' Memorandum of Law Addressing the Court's May 9, 2002 Memorandum and Order Regarding the Statute of Limitations (May 28, 2002) Original Image of this Document (PDF)
• 2002 WL 32595632 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss Certain Group Four and Group Five Plaintiffs (May 22, 2002) Original Image of this Document (PDF)
• 2002 WL 32813200 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss Certain Group Four and Group Five Plaintiffs (May. 22, 2002)
• 2002 WL 32595629 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiffs' Motion for Sanctions (May 17, 2002) Original Image of this Document (PDF)
• 2002 WL 32813199 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiffs' Motion for Sanctions (May. 17, 2002)
• 2002 WL 32813198 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Plaintiffs' Objections to the March 21, 2002 Order of Magistrate Judge Henry Pitman Pursuant to Rule 72(A) of the Federal Rules of Civil Procedure (May 8, 2002) Original Image of this Document (PDF)
• 2002 WL 32813197 (Trial Motion, Memorandum and Affidavit) Lehman Brothers, Inc.'s Response to Plaintiffs' Objections to the March 21, 2002 Order of Magistrate Judge Henry Pitman Pursuant to Rule 72(A) of the Federal Rules of Civil Procedure (Apr. 30, 2002) Original Image of this Document (PDF)
• 2002 WL 32595624 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Plaintiffs' Motion to Dismiss Defendants' Counterclaims Against Plaintiffs Sami Khoury and Omar Salhab (Apr. 12, 2002) Original Image of this Document (PDF)
• 2002 WL 32813196 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Plaintiffs' Motion to Dismiss Defendants' Counterclaims Against Plaintiffs Sami Khoury and Omar Salhab (Apr. 12, 2002)
• 2002 WL 32813194 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Opposition to Plaintiffs' Motion to Dismiss Defendants' Counterclaims Against Plaintiffs Sami Khoury and Omar Salhab (Mar. 28, 2002) Original Image of this Document (PDF)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK  Document 179-2  Filed 08/11/2006  Page 9 of 19

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1334809 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 8

- 2002 WL 32813195 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint Based on Plaintiffs' Submission of Falsified Evidence (Mar. 26, 2002)
- 2002 WL 32813193 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Plaintiffs' Motion to Clarify and Reconsider (Mar. 14, 2002) Original Image of this Document (PDF)
- 2002 WL 32595621 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint Based on Plaintiffs' Alleged Submission of Falsified Evidence (Mar. 8, 2002) Original Image of this Document (PDF)
- 2002 WL 32813188 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law In Support of Bear Stearns Motion to Reconsider and Amend Portions of the Court's January 23, 2002 Memorandum and Order (Mar. 4, 2002) Original Image of this Document (PDF)
- 2002 WL 32813192 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Lehman Brothers, Inc.'s Motion to Amend and to Reconsider (Mar. 1, 2002) Original Image of this Document (PDF)
- 2002 WL 32813190 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Bear Stearns in Opposition to Plaintiffs' Motion to Clarify and Reconsider (Feb. 27, 2002)
- 2002 WL 32813191 (Trial Motion, Memorandum and Affidavit) Lehman Brothers, Inc.'s Memorandum of Law in Opposition to Plaintiffs' Motion to Clarify and Reconsider Certain Portions of the Court's Memorandum and Order Dated January 22, 2002 (Feb. 27, 2002) Original Image of this Document (PDF)
- 2002 WL 32813189 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiffs' Motion to Dismiss Defendants' Counterclaims Against Plaintiffs Sami Khoury and Omar Salhab (Feb. 13, 2002) Original Image of this Document (PDF)
- 2002 WL 33030739 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiffs' Motion to Dismiss Defendants' Counterclaims Against Plaintiffs Sami Khoury and Omar Salhab (Feb. 13, 2002) Original Image of this Document (PDF)
- 2001 WL 34611562 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants' Motion for Summary Judgment Concerning the Group 2 Plaintiffs' Claims for Damages (Jun. 01, 2001)
- 2001 WL 34611564 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Bear, Stearns & Co. Inc.'s Motion for Summary Judgment with Respect to the Group II Plaintiffs (Jun. 01, 2001)
- 2001 WL 34611559 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Objections of Plaintiffs to February 7, 2001 Order of the Magistrate Judge (Mar. 14, 2001)
- 2001 WL 34921876 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Opposition to Defendants' Motion for Leave to Assert Counterclaims Against Plaintiffs Sami Khoury and Omar Salhab (Mar. 1, 2001) Original Image of this Document (PDF)
- 2001 WL 34611555 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Rule 56.1 Response to Defendant Bear Stearns & Co., Inc.'s Statement of Undisputed Facts (Feb. 16, 2001)
- 2001 WL 34611558 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Rule 56.1 Response to Defendant Lehman Brothers, Inc.'s Statement of Undisputed Facts (Feb. 16, 2001)
- 2001 WL 34770982 (Trial Motion, Memorandum and Affidavit) The Group I Plaintiffs' Memorandum of Law In Opposition to the Motions of Lehman Brothers, Inc. and Bear, Stearns & Co. Inc. for Summary Judgment (Feb. 15, 2001) Original Image of this Document (PDF)
- 2001 WL 34770981 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants' Motion for Leave to Assert Counterclaims Against Plaintiffs Sami Khoury and Omar Salhab (Jan. 18, 2001)
- 2000 WL 34506316 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Further Support of Plaintiffs' Motion for Reconsideration of Magistrate Judge Pitman's October 27, 2000 Memorandum Opinion and Order (Dec. 12, 2000) Original Image of this Document (PDF)
- 2000 WL 34506315 (Trial Motion, Memorandum and Affidavit) Memorandum of Bear Stearns in Opposition to Plaintiffs' Motion for Reconsideration of Magistrate Judge Pitman's October 27, 2000 Memorandum Opinion and Order (Dec. 8, 2000) Original Image of this Document (PDF)
- 2000 WL 34403397 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2002 WL 1334809 (S.D.N.Y.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 9

Bear, Stearns & Co. Inc.'s Motion for a Protective Order Precluding Plaintiffs From Deposing Its Chairman, Alan C. Greenberg (Sep. 12, 2000) Original Image of this Document (PDF)
• 2000 WL 34506314 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant Bear, Stearns & Co. Inc.'s Motion for a Protective Order Precluding Plaintiffs from Deposing Its Chairman, Alan C. Greenberg (Sep. 12, 2000)
• 2000 WL 34506312 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiffs' Motion for Reconsideration (Jul. 27, 2000) Original Image of this Document (PDF)
• 2000 WL 34403394 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to Defendants' Response to Objections to June 8, 2000 Order of the Magistrate Judge (Jul. 17, 2000) Original Image of this Document (PDF)
• 2000 WL 34506313 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to Defendants' Response to Objections to June 8, 2000 Order of the Magistrate Judge (Jul. 14, 2000)
• 2000 WL 34403393 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs' Objections to June 8, 2000 Order of the Magistrate Judge (Jul. 12, 2000)
• 2000 WL 34403391 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs' Objection to a Portion of Paragraph 1 of the May 3, 2000 Order of the Magistrate Judge (Jun. 01, 2000)
• 1998 WL 34279927 (Trial Motion, Memorandum and Affidavit) Response to a Motion to Compel (Jul. 31, 1998)
• 1998 WL 34508695 (Trial Pleading) Third-Party Complaint and Counterclaims of Defendants (May 8, 1998) Original Image of this Document (PDF)
• 1:97cv04978 (Docket) (Jul. 08, 1997)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2



Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 80168 (S.D.N.Y.), RICO Bus.Disp.Guide 9457
(Cite as: Not Reported in F.Supp.)

Page 1

C
Briefs and Other Related Documents

United States District Court, S.D. New York.
Raymond ALLEN and Alice Allen Plaintiffs,
v.
BERENSON PARI-MUTUEL OF NEW YORK, Inc., Berenson Pari-Mutuel, Inc., Louis S. Berenson, Monticello Raceway, Inc., William Sullivan, Individually and as General Manager of Monticello Raceway, Monte Sachs, Equine Veterinary Services, Inc., Monticello Harness Horsemen's Association, Inc., Mid-Atlantic Harness Horsemen's Association, Inc., Rocco Yanoti, Individually and as Executive Secretary of the Monticello Horsemen's Association, Defendants.
No. 95 Civ. 10289(KMW).

Feb. 25, 1998.

OPINION AND ORDER

WOOD, J.

*1 Plaintiffs bring this action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961-4 (1984 and West Supp.1997) ("RICO"), alleging that defendants engaged in racketeering activities in connection with the operation of Monticello Raceway, a harness racing facility.[FN1] Plaintiffs further allege common law breach of contract and fiduciary duties, libel, slander, tortious interference with business relations, and violation of New York State's "Whistle-blower Statute," New York Labor Law § 740 et seq. (West 1998), against various defendants, and maintain that they are entitled to punitive damages. Defendants, Berenson Pari-Mutuel of New York, Inc. ("BPM-NY"), Berenson Pari-Mutuel, Inc. ("BPMI") Louis S. Berenson ("Berenson"), Monticello Raceway, Inc. ("Monticello Raceway"), William Sullivan ("Sullivan"), Monte Sachs ("Sachs"), Equine Veterinary Services, Inc. ("EVSI"), Rocco Yanoti ("Yanoti"), Monticello Harness Horsemen's Association, Inc. ("MHHA"), the Mid-Atlantic Harness Horsemen's Association, Inc. ("MAHHA")[FN2] move to dismiss the plaintiffs' complaint for (1) failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and (2) failure to plead fraud with sufficient particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.

For the reasons set forth below, I grant defendants' motion with regard to the RICO claims as well as the state pendent law claims. However, I dismiss these claims without prejudice and grant plaintiffs' request for leave to amend the complaint within thirty (30) days of this Order.

I. Background

Plaintiffs Raymond Allen and Alice Allen are a husband and wife horse training and grooming team. They worked at Monticello Raceway, a harness racing facility located in Monticello, New York until June 15, 1993 Plaintiff Raymond Allen was a member in good standing of the MAHHA and the MHHA prior to June 15, 1993. Defendant BPM-NY, a wholly-owned subsidiary of defendant BPMI, owns and operates Monticello Raceway. Defendant Berenson is an officer of BPM-NY and defendant Sullivan is an employee of the same, responsible for the operation of the Monticello Raceway. Defendant EVS is a professional corporation providing veterinary services to owners and trainers of horses at the Monticello Raceway and defendant Monte Sachs is a doctor of veterinarian medicine associated with EVS. Defendant MHHA is a trade association acting on behalf of the interests of persons engaged in owning and training horses at Monticello Raceway and defendant Yanoti is executive secretary of MHHA.

Plaintiffs previously filed an action in New York State Supreme Court, based upon the same set of circumstances (the "New York State Action") on or about February 4, 1994. The State Supreme Court dismissed the complaint with respect to all defendants except EVS and Sachs on July 5, 1994 (the "July 5th Opinion"). After the dismissal of the complaint, plaintiffs moved for reconsideration of the July 5th Opinion and defendants EVS and Sachs moved for dismissal of the complaint as against them. On September 16, 1994, the State Supreme Court affirmed its prior decision, and granted the remaining defendants' motion to dimiss. However, the State Supreme Court granted plaintiffs leave to replead their claim of tortious interference with business relations against all defendants. Plaintiffs elected not to replead this cause of action in state court. Plaintiffs filed the instant action on December 6, 1995 and defendants moved

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1998 WL 80168 (S.D.N.Y.), RICO Bus.Disp.Guide 9457  
**(Cite as: Not Reported in F.Supp.)**

Page 2

to dismiss of the complaint on March 4, 1996.

II. *Analysis*

A. *Standard of Review*

*2 The role of a district court in considering a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.1983). In considering a motion to dismiss, "all factual allegations in the complaint must be taken as true and construed ... favorably to the plaintiff." LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir.1991); see also Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Moreover, under Federal Rule of Civil Procedure 12(b)(6) "a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 662 (2d Cir.1996) (quoting Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir.1991). The complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Weiss v. Wittcoff, 966 F.2d 109, 112 (2d Cir.1992). The factual allegations in the complaint will be recounted, as needed, in the discussion below.

B. *Defendants' Motion to Dismiss*

1. *RICO claim*

In order to state a claim under RICO, plaintiffs must meet two burdens. First, they must allege that the defendants violated the substantive RICO statute, 18 U.S.C. § 1962 (1984 and West Supp.1997), commonly known as "criminal RICO." To meet this burden, plaintiffs must allege the existence of seven constituent elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce." Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir.1983). Second, plaintiffs must allege that they was "injured in his business or property by reason of a violation of § 1962." Id. (citing 18 U.S.C. § 1964(c)).

The defendants first move to dismiss plaintiffs' RICO claim on the grounds that do not have the standing to bring the claim under 28 U.S.C. § 1964(c). To establish standing, Second Circuit Court of Appeals requires plaintiffs to demonstrate: "(1) a violation of § 1962; (2) injury to business or property; and (3) causation of the injury by the violation." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 767 (2d Cir.1994); Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 23 (2d Cir.1990). Defendants maintain that plaintiffs have failed to satisfy the injury and causation prongs of this standard.[FN3]

As the Supreme Court has provided in *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 498 (1985), a plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima,* 473 U.S. at 496. To be compensable, plaintiffs must allege that such injury was proximately caused by individual RICO predicate acts or the pattern of racketeering activity. *Hecht,* 897 F.2d at 23. In this case, plaintiffs maintain that they sustained injuries as a result of defendants' fraudulent activities in three main respects. First, they allege that they were injured as "defrauded participants in 'fixed' races"; through the bribing of drivers, drugging of horses, fabrication of racing forms, and manipulation of the "odds" placed upon racing contests, defendants affected determinations of the "purses" for which plaintiff Allen competed. (Compl.¶ 14.) Second, they allege that they sustained damages as a result of defendants' fraud and misuse of capital funds. And third, they allege that defendants engaged in "acts of retribution" because plaintiffs did not cease in their complaints concerning race integrity and cooperation with governmental investigations; defendants retaliated by banning them from Monticello Raceway, "blackballing" them from other raceways, canceling their insurance and pension benefits, and "disparaging [plaintiffs'] reputation ." (Compl.¶ 14.) Defendants' activities allegedly left plaintiffs with "no business, no income, [and] no health benefits." (Mem. in Opp. at

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.  
Not Reported in F.Supp., 1998 WL 80168 (S.D.N.Y.), RICO Bus.Disp.Guide 9457  
**(Cite as: Not Reported in F.Supp.)**

Page 3

8.)

**\*3** Although recognizing that RICO should be "liberally construed to effectuate its remedial purposes," *Sedima,* 473, U.S. at 497 (quoting Pub.L. 91-452 § 904(a)), which include "the provision of a private action for those injured by racketeering activity," *Id.* at 498, the Court finds that plaintiffs have not sustained injury to business or property within the meaning of the statute. More specifically, this Court views plaintiffs' allegations of injury based upon defendants' alleged manipulations affecting the "purse" as too speculative to confer standing. As defendants correctly observe, plaintiffs cannot quantify with any certainty the extent of damages they may have suffered as the result of defendants' alleged manipulations. Accordingly, the Court concludes that the "actual amount" of injury plaintiffs claim on this basis is "indefinite and unprovable." *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 768 (2d Cir.1994).

Moreover, even if injury to plaintiffs as a result of the alleged manipulations were quantifiable, plaintiffs have failed to demonstrate that the manipulation proximately caused such injury. The test of proximate cause is whether defendants' acts are "a substantial factor in the sequence of responsible causation," and whether "the injury is reasonably foreseeable or anticipated as a natural consequence." *Hecht,* 897 F.2d at 23-24. Where "factors other than defendant's fraud are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions." *First Nationwide Bank,* 27 F.3d at 769. Such a circumstance obtains in the instant case. As defendants correctly observe, there are many "independent factors" shaping the outcome of a harness race, (Def.Mem. in Support, at 17), making it difficult to determine whether and to what extent defendants' allegedly fraudulent activities caused plaintiffs' horses to finish as they did in the races at issue. Of the races identified as "fixed" in plaintiffs' RICO statement, plaintiffs' horse won at least one.[FN4] Indeed, in their description of this race, plaintiffs themselves note: "Despite Defendant's attempts to predetermine the outcome, Plaintiff's horse Dr. Jonathan still won the race." (RICO Statement at 9). This statement only serves to further underscore plaintiffs' failure to meet their burden with respect to the injury and causation pron

S.D.N.Y.,1998.  
Allen v. Berenson Pari-Mutuel of New York  
Not Reported in F.Supp., 1998 WL 80168 (S.D.N.Y.), RICO Bus.Disp.Guide 9457

Briefs and Other Related Documents (Back to top)

• 1:95cv10289 (Docket) (Dec. 06, 1995)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

3

Case 7:04-cv-08223-KMK    Document 179-2    Filed 08/11/2006    Page 15 of 19



Not Reported in F.Supp.2d                                                                                     Page 1
Not Reported in F.Supp.2d, 2003 WL 1397394 (S.D.N.Y.), RICO Bus.Disp.Guide 10,476
(Cite as: Not Reported in F.Supp.2d)

**H**
Briefs and Other Related Documents

United States District Court,S.D. New York.
APOLLON WATERPROOFING & RESTORATION, INC. and George Fakiris, Plaintiffs,
v.
Edmund J. BERGASSI, et al., Defendants.
No. 01 Civ. 8388(LMM).

March 20, 2003.

*MEMORANDUM AND ORDER*
MCKENNA, J.

*1 Plaintiffs Apollon Waterproofing & Restoration, Inc. ("Apollon") and its principal George Fakiris ("Fakiris") (collectively "plaintiffs") commenced this action against a number of corporate [FN1] and individual [FN2] defendants alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq. Specifically, plaintiffs allege that defendants are all members of a RICO enterprise engaged in: 1) a fraudulent scheme to issue fraudulent bonds in the construction industry; and 2) a fraudulent scheme to convey assets to avoid creditors. Plaintiffs also bring claims under New York law for fraudulent conveyance, common law fraud, defamation and interference with business relations.

> FN1. The Edmund J. Bergassi Agency, Inc. (the "Old Bergassi Agency"), Bergassi Group, L.L.C. (the "New Bergassi Agency"), Scovotti & Co., Balboa Insurance Co. ("Balboa"), DH Farney, Fidelity & Deposit Co. [Fidelity and Deposit Company of Maryland], Firemans Fund Insurance Co. [Fireman's Fund Insurance Co.], International Fidelity Insurance Company, Marathon Painting [Marathon Orbit Co., Inc.], Mountbatten Surety [Mountbatten Surety Co.], Pacific Indemnity [Pacific Indemnity Company], Pacific Surety, Ranger Surety [Ranger Insurance Company], Redland Insurance [Redland Insurance Co.], Ulico Insurance Group [ULICO Insurance Group], Universal Bonding Insurance Company, and John Doe Companies 1 through 50.
> The square brackets indicate situations where defendant has stated that it has a different name than the one listed by plaintiffs in the Complaint.

> FN2. Edmund J. Bergassi ("Bergassi"), John Albano ("Albano"), Daniel Bickmor ("Bickmor"), Frank Goodman ("Goodman"), Anthony Scovotti, Christopher Scovotti, George Skinner ("Skinner"), and John Doe Persons 1 through 50.

Presently before the Court are 11 separate motions brought by 18 defendants to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) & 12(c). For the reasons set forth below, plaintiffs' RICO claims are dismissed on statute of limitations grounds, and the Court declines to exercise supplemental jurisdiction over plaintiffs' state law claims and certain defendants' state law counterclaims.

Background

Plaintiff Apollon is a construction company and, since 1984, has been involved in a number of construction projects for the City of New York (the "City"). (Compl.¶¶ 11, 24, 32-33, 63.) Plaintiff Fakiris is the principal of Apollon. (*Id.* ¶ 12.) As far as the Court can tell from the Complaint, the corporate defendants are bond brokers and companies that issue bonds and the individual defendants are certain of the principals and employees of those companies. [FN3] (*Id.* ¶¶ 7, 14-16, 26.) Plaintiffs attempt to allege two fraudulent RICO schemes perpetrated by defendants: an alleged fraudulent bond scheme and an alleged fraudulent conveyance scheme.

> FN3. It is not clear from the Complaint with whom Albano, Bickmor, Goodman and Skinner are or were affiliated.

I. The Fraudulent Bond Scheme

In May 1989, Apollon submitted a bid to the City to construct the Hamilton Fish Recreational Center ("Hamilton Fish") and included fraudulent bonds provided by Scovotti & Co. (*Id.* ¶ 42.) From 1984 through 1989, Apollon had successfully bid upon numerous City projects, each time submitting bonds that had been represented by Scovotti & Co. and other defendants as issued on behalf of legitimate bonding companies. (*Id.* ¶ 32.) However, after submitting the May 1989 bid, Apollon learned that all of the Scovotti &

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                                   Page 2
Not Reported in F.Supp.2d, 2003 WL 1397394 (S.D.N.Y.), RICO Bus.Disp.Guide 10,476
(Cite as: Not Reported in F.Supp.2d)

Co. bonds which it had submitted to the City, approximately 20 in number, were in fact, fraudulent. (*Id.* ¶ 46.) According to plaintiffs, defendants' goal in issuing these bonds was to collect the premium paid for the fraudulent bonds and, occasionally, the difference from overstated premiums for real bonds. (*Id.* ¶¶ 3-4.) After learning that the bonds were fraudulent, Apollon attempted to replace the bonds on its five ongoing City projects including Hamilton Fish. (*Id.* ¶¶ 47-48.)

In July 1989, Apollon was introduced by Albano and DH Farney to Bergassi who claimed that he would be able to obtain construction bonds for Apollon "from Pacific Surety and/or Pacific Indemnity" and Balboa. (*Id.* ¶ 49-51.) As a result, Apollon paid a premium of $350,000 to the Old Bergassi Agency. (*Id.* ¶ 53.) Two days later, however, an investigation by Fakiris and City officials revealed that the bonds were fraudulent and that approximately $88,000 of the $350,000 premium was paid to defendant Bergassi as a "finder's fee" by Bickmor on behalf of Pacific Surety. (*Id.* 54-55.)

*2 Ultimately, Apollon was able to provide cash-based financing and finish construction on the projects other than Hamilton Fish, which was the largest of Apollon's projects for the City. (*Id.* ¶ 57.) However, the City would not accept any alternative security on Hamilton Fish, and terminated Apollon from that work in the fall of 1989. (*Id.* ¶ 58.) [FN4]

> FN4. In October 1992, plaintiffs pled guilty to federal charges of mail fraud regarding a scheme "to defraud the City and State of New York by procuring cash reimbursements for fraudulently submitted performance surety bonds" from May 1985 through May 1989. (Stone Decl. Exh. E.; *see also* Compl. ¶ 59;) For a period of time thereafter, the City would not award almost $17 million in contracts to Apollon even though it was the lowest bidder. (Compl.¶ 61.) The City also rescinded an award of a project at PS-105. (*Id.* ¶ 62.) Subsequently, however, it was allowed to compete for City business and has successfully completed more than 20 projects since 1989. (*Id.* ¶ 63.)

II. 1992 State Court Litigation

In 1992, Apollon commenced three separate actions in New York state court. One action was against Scovotti & Co. and an individual named John J. Mazzia (*Id.* ¶ 64; Stone Decl. Exh. B), one against Bergassi and the Old Bergassi Agency (Compl. ¶ 64; Connelley Aff. Exh. C), and another against the City. (Connelley Aff. Exh. F, ¶ 8.) These actions were consolidated in 1994. (Stone Decl. Exh. C.) Apollon sought, *inter alia,* lost profits as damages, claiming that when the City learned that the bonds were not valid in 1988 and 1989, it terminated Apollon's contract for Hamilton Fish and deemed Apollon to be a non-responsive bidder resulting in the denial of four other construction projects. (Stone Decl. Exh. B ¶¶ 24-34; Connelley Aff. Exh. C ¶¶ 23-35.) The case was tried before a jury in September 1997 and the jury found that Bergassi, the City, and Scovotti & Co. were not liable. (Stone Exh. I; Connelley Exh. E.) The jury, however, found that plaintiffs could recover approximately $1.08 million from the Old Bergassi Agency. (Stone Exh. I; Connelley Exh. E; Compl. ¶ 65.)

III. The Fraudulent Conveyance Scheme

On information and belief, plaintiffs allege that on or before April 2000, Bergassi and the Old Bergassi Agency caused all assets of the Old Bergassi Agency to be transferred, by fraudulent conveyance or transfer, to the newly-formed New Bergassi Agency. (*Id.* ¶ 67.) This event is defined in the complaint as the "Fraudulent Conveyance." (*Id.*) Plaintiffs believe that the Fraudulent Conveyance rendered the Old Bergassi Agency insolvent and was made for the purpose of defrauding Apollon and other creditors. (*Id.* 69-70.) The corporate members of the RICO enterprise allegedly assisted Bergassi and the Old Bergassi Agency in fraudulently conveying the Old Bergassi Agency accounts to the New Bergassi Agency. (*Id.* 16(e), 71(b).)

IV. Plaintiffs File the Current Suit

On September 7, 2001, plaintiffs filed this action alleging eight causes of action.[FN5] The first four causes of action are brought against all defendants for RICO violations under 18 U.S.C. §§ 1962(a)-(d). (Compl.¶¶ 87-94.) The fifth cause of action is a state law claim for fraudulent conveyance against Bergassi, the Old Bergassi Agency, and the New Bergassi Agency.[FN6] (Compl.¶¶ 95-96.) The last three

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                   Page 3
Not Reported in F.Supp.2d, 2003 WL 1397394 (S.D.N.Y.), RICO Bus.Disp.Guide 10,476
**(Cite as: Not Reported in F.Supp.2d)**

causes of action are brought against Bergassi, the Old Bergassi Agency, the New Bergassi Agency, Scovotti & Co., and the individual defendants for common law fraud, defamation, and interference with business relations. (Compl.¶¶ 97-102.) Eighteen defendants now move to dismiss the Complaint.

> FN5. The Complaint actually lists nine causes of action, but the seventh cause of action is missing. Due to an apparent drafting error, the complaint jumps straight from the sixth cause of action to the eighth cause of action. (Compl.¶¶ 97-100.)

> FN6. In April or June 2000, Apollon brought suit against the Old Bergassi Agency and the New Bergassi Agency in New York state court alleging fraudulent conveyance for the sole purpose of defrauding Apollon and its other creditors. (Id. ¶ 72; Connelly Aff. Exh. F.) Apollon seeks damages of approximately $1.08 million. (Compl. ¶ 72; Connelley Aff. Exh. F at 6.)
> The Court notes that the Complaint states that Apollon commenced suit in April 2000. (Compl.¶ 72.) However, in defendants' materials, a copy of the complaint is provided and it is dated June 28, 2000. (Connelley Aff. Exh. F at 6.)

Standard of Review

*3 Under Rule 12(b)(6), a complaint will be dismissed if there is a failure "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). The Court must read the complaint generously accepting the truth of and drawing all reasonable inferences from well-pleaded factual allegations. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir.1993). "A court should only dismiss a suit under Rule 12(b)(6) if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir.1994) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

On a Rule 12(b)(6) motion, courts may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference ... and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir.2000) (citations omitted).

The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a 12(b)(6) motion for failure to state a claim. Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir.2001) (citations omitted).

Discussion

I. Statute of Limitations for Civil RICO Claims

Civil RICO claims are subject to a four-year statute of limitations. Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156 (1987). "The limitations period begins to run when the plaintiff discovers or should have discovered the RICO injury." In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 58 (2d Cir.1998) (citing Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1102 (2d Cir.1988)). The Complaint in this matter was filed on September 7, 2001. Thus, if plaintiffs were on inquiry notice of the alleged RICO injury before September 7, 1997, their RICO claims are time-barred unless an exception to the limitations period applies. See In re Merrill Lynch, 154 F.3d at 58-59. For example, the Second Circuit recognizes a "separate accrual" rule under which a new claim accrues and the four-year limitation period begins anew each time a plaintiff discovers or should have discovered an injury caused by a defendant's violation of § 1962. Id. at 59; Bankers Trust Co., 859 F.2d at 1105.

A) The Alleged Fraudulent Bond Scheme

The alleged fraudulent bond scheme took place from 1984 though 1989. All of the damages sought by plaintiffs with regard to the fraudulent bond scheme stem from this period of time. (Compl.¶¶ 103-04.) Plaintiffs acknowledge in the Complaint that they became aware of the fraudulent bond scheme in 1989. In fact, in 1992, plaintiffs brought suit on these fraudulent bonds in state court. This is well outside the statute of limitations for RICO violations.

B) The Alleged Fraudulent Conveyance Scheme

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2003 WL 1397394 (S.D.N.Y.), RICO Bus.Disp.Guide 10,476  
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

However, plaintiffs argue that the "separate accrual" rule should apply because a new RICO injury occurred when the assets of the Old Bergassi Agency were fraudulently transferred to the New Bergassi Agency on or before April 2000. (Opp. to Certain Defs. at 4; Compl. ¶ 67.) According to plaintiffs, this "was the key turning point" and from that date onward, "[t]he Enterprise revealed itself ... in a new light." (*Id.*) Plaintiffs conclude that "[t]he statute of limitations is no bar to this recent injury of 1998-2000...." (*Id.* at 6.) Plaintiffs are misguided in their belief.

*4 The limitations period only begins anew each time a plaintiff discovers or should have discovered an injury *caused by a defendant's violation of § 1962*. The fraudulent conveyance cannot be a basis for a RICO claim. The RICO statute defines "racketeering activity" as comprising enumerated crimes such as mail fraud and wire fraud. 18 U.S.C. § 1961(1)(B). Unenumerated acts, however, such as a fraudulent conveyance, common law fraud, negligent misrepresentation, breach of fiduciary duty, negligence, and conversion, are not "racketeering activities." *Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. Ltd.,* 154 F.Supp.2d 682, 690 (S.D.N.Y.2001) (collecting cases).[FN7] Thus, a new RICO injury did not occur and the RICO claims are time-barred. [FN8]

> FN7. Plaintiffs do not identify any mail or wire communications in relation to the fraudulent conveyance scheme, nor do they even attempt to set forth the elements of a claim that 18 U.S.C. § 1956 or § 1957 has been violated.

> FN8. Because plaintiffs' claims are barred by limitations, the Court does not reach defendants' other arguments in support of dismissal.

II. Supplemental Jurisdiction

Because the federal claims are dismissed, the Court must decide whether federal jurisdiction exists over the remaining state claims. In the Complaint, plaintiffs based the Court's jurisdiction solely upon the RICO statute. (Compl. ¶ 21.) Plaintiffs have not alleged diversity jurisdiction. Both the Second Circuit and the Supreme Court have held that "when the federal claims are dismissed the 'state claims should be dismissed as well.' " *In re Merrill Lynch,* 154 F.3d at 61 (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966); *Pitchell v. Callan,* 13 F.3d 545, 549 (2d Cir.1994)). Although exercising supplemental jurisdiction is discretionary, the usual case " 'will point toward declining jurisdiction over the remaining state-law claims.' " *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7 (1988)). After considering the factors of judicial economy, convenience, fairness and comity, the Court declines to exercise supplemental jurisdiction. Plaintiffs' state law claims and certain defendants' state law counterclaims [FN9] are dismissed for lack of subject matter jurisdiction.

> FN9. Defendants Bergassi, the Old Bergassi Agency, the New Bergassi Agency, and Skinner jointly answered the Complaint on November 27, 2001 and asserted state law counterclaims against plaintiffs for defamation, intentional interference with contractual relations, and slander. (Answer ¶¶ 32-57.)

Conclusion

For the foregoing reasons, plaintiffs' RICO claims are dismissed as time-barred and plaintiffs' state law claims and the state law counter claims of certain defendants are dismissed for lack of subject matter jurisdiction. Defendants' application for sanctions is denied.  
So Ordered.

S.D.N.Y.,2003.  
Apollon Waterproofing & Restoration, Inc. v. Bergassi  
Not Reported in F.Supp.2d, 2003 WL 1397394 (S.D.N.Y.), RICO Bus.Disp.Guide 10,476

Briefs and Other Related Documents (Back to top)

• 1:01cv08388 (Docket) (Sep. 07, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.