7

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1090304 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Dominique BROWN, Q International Courier, Inc., Robert Mitzman Plaintiffs,
v.
Thomas H. MIGUENS and Karl Daigle, Defendants.
No. 02 Civ.5278 JSM.

March 11, 2003.

OPINION AND ORDER
MARTIN, J.

*1 On July 31, 1997, the parties to this dispute entered into a Stock Purchase Agreement in connection with the Plaintiffs' purchase of Defendant Miguens' 50% interest in an international overnight shipment service, Revenge North American Holdings, Inc., doing business as Genesis Worldwide Courier. The Agreement contained a broad arbitration provision, which provided:

5.13. *Arbitration.* Any and all disputes arising out of this Agreement shall be settled through final and binding arbitration before a panel of one arbitrator selected by the American Arbitration Association ("AAA") in accordance with the Commercial Arbitration Rules of the AAA.... The arbitrator shall have the authority to order or award all appropriate equitable and legal relief....

The Agreement also contained a detailed five year long non-competition and non-solicitation provision. That provision contained a specific section regarding remedies in the event of breach:4.7. *Default; Remedies.* The Seller recognizes that the activities by the Seller proscribed by this Section 4 may result in irreparable damage and harm to the Buyers and that the Buyers may be without an adequate remedy at law in the event of any such activities. The Seller agrees, therefore, that in the event of any breach of this Section 4, the Buyers may at their election institute and prosecute proceedings in any court of competent jurisdiction: (a) to obtain damages for such activities; (b) to obtain specific performance by the Seller of this Section 4; (c) to enjoin the Seller from engaging in the activities proscribed by this Section 4; or (d) to pursue any one or more of the foregoing or any other remedy available to it under applicable law. The Buyers shall not, by seeking or obtaining such relief, be deemed to have precluded themselves from obtaining any other relief to which they may be entitled.

The five year non-competition/non-solicitation period ended on July 31, 2002. On July 1, 2002, in anticipation of that termination, and the maturation of the Notes given to him by Plaintiffs in connection with their purchase of his interest in Genesis, Miguens gave notice to Plaintiffs of the amount that he expected to receive pursuant to the Notes, along with payment instructions.

On July 10, 2002, Plaintiffs initiated an action in this Court, alleging that Defendant Miguens had violated the non-competition/non-solicitation provisions of the Agreement. The Complaint sought money damages, as well as a declaratory judgment that as a result of Miguens' breach of the Agreement, either he could not collect on or Plaintiffs were entitled to a set off against the Notes. Plaintiffs, who state that they learned of Miguens' violations of the restrictive covenant in the spring of 2002, also alleged a cause of action against Defendant Daigle for tortious interference with contract for aiding Miguens in violating the Agreement by doing competing business with him during the five year non-competition period.

*2 It is undisputed that Miguens was aware of this action by July 26, 2002, although Plaintiffs did not succeed in serving him until October 7, 2002. Meanwhile, on September 5, 2002, Miguens demanded arbitration as a result of Plaintiffs' failure to pay pursuant to the Notes. Plaintiffs have moved to enjoin or stay that arbitration, while Defendant Miguens has moved to dismiss or stay this action.

The starting point in this analysis is the strong federal policy, embodied in the Federal Arbitration Act, favoring arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Construction Co.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941 (1983); *State of New York v. Oneida Indian Nation of New York,* 90 F.3d 58, 61 (2d Cir.1996). That policy dictates that doubts as to arbitrability are to be resolved in favor of arbitration. *McAllister Bros. v. A & S Transport, Co.,* 621 F.2d 519, 522 (2d Cir.1980); *Rochdale Village, Inc. v. Public Service Employees Union,* 605 F.2d 1290, 1295 (2d Cir.1979).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2003 WL 1090304 (S.D.N.Y.)  
(Cite as: Not Reported in F.Supp.2d)

Page 2

Nevertheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418 (1986). Furthermore, whether an agreement creates a duty for the parties to arbitrate a particular dispute "is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.,* 475 U.S. at 649, 106 S.Ct. at 1418; *see also First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944-45, 115 S.Ct. 1920, 1924-25 (1995); *Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers Union Local 1,* 903 F.2d 924, 929 (2d Cir.1990); *Cummings & Lockwood, P.C. v. Simses,* 2001 U.S. Dist. LEXIS 14394, *6 (D.Conn. July 5, 2001); *Wilson v. Subway Sandwiches Shops, Inc.,* 823 F.Supp. 194, 198 (S.D.N.Y.1993).

In making its determination, the Court is to apply ordinary principles of contract law. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. at 944, 115 S.Ct. at 1924; *Collins & Aikman Products. Co. v. Building Systems, Inc.,* 58 F.3d 16, 19 (2d Cir.1995) ("Federal arbitration policy respects arbitration agreements as contracts that are enforceable in the same way as any other contract."); *Keymer v. Management Recruiters Int'l, Inc.,* 169 F.3d 501, 504 (8th Cir.1999) ("We apply ordinary state law contract principles to decide whether parties have agreed to arbitrate a particular matter."); *Wilson v. Subway Sandwiches Shops, Inc.,* 823 F.Supp. at 198. Accordingly, the Second Circuit stated in *State of New York v. Oneida Indian Nation of New York,* 90 F.3d at 62, Courts must treat agreements to arbitrate like any other contract. Where the parties to an arbitration agreement specifically have excepted a certain type of claim from mandatory arbitration, it is the duty of courts to enforce not only the full breadth of the arbitration clause, but the limitations as well.

*3 See also *Volt Information Sciences, Inc. v. Bd. of Trustees,* 489 U.S. 468, 478, 109 S.Ct. 1248, 1255 (1989) ("The FAA does not require parties to arbitrate when they have not agreed to do so, nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of the arbitration agreement."). As the Court stated in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801 (1967), the Act was designed "to make arbitration agreements as enforceable as other contracts, but not more so." 388 U.S. at 406, 87 S.Ct. at 1807. *See also Oldroyd v. Elmira Savings Bank, FSB,* 134 F.3d 72, 76 (2d Cir.1997); *Wilson v. Subway Sandwiches Shops, Inc.,* 823 F.Supp. at 198 ("Despite the preference Congress and the courts have given to arbitration, it is, nonetheless, critical that the parties have explicitly agreed to arbitrate their disputes before such arbitration is compelled by a court.").

The Supreme Court also has made it clear that "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 647, 649, 106 S.Ct. 1415, 1419 (1986); *State of New York v. Oneida Indian Nation of New York,* 90 F.3d 58, 63-64 (1996).

A number of well established principles govern interpretation of the Agreement. First, it is "a fundamental rule of contract construction that 'specific terms and exact terms are given greater weight than general language.'" *Aramony v. United Way of America,* 254 F.3d 403, 413 (2d Cir.2001) (citing, inter alia, Restatement (Second) of Contracts § 203(c) (1981)). Even when there is no direct conflict between two provisions, "specific words will limit the meaning of general words." *Id.* at 413-14.

Second, a contract should be read, if possible, to give effect to all of its provisions. *Mastrobuono v. Shearson Lehman Hutton,* 514 U.S. 52, 115 S.Ct. 1212, 1219 (1995); *State of New York v. Oneida Indian Nation of New York,* 90 F.3d at 63; *Weiss v. Weiss,* 52 N.Y.2d 170, 171, 436 N.Y.2d 862, 864 (1981) ("[T]he general principle is that an agreement, where possible, should be read as a whole so as to give each section meaning."); *Integrated Sales v. Maxell Corp.,* 94 A.D.2d 221, 463 N.Y.S.2d 809, 813 (1st Dep't 1983).

Third, a statement of intent contained in a "whereas" clause, or equivalent, of an agreement cannot create any right beyond those arising from the operative terms of the agreement. *Aramony v. United Way of America,* 254 F.3d 403, 413 (2d Cir.2001) (stating that a "Purpose of the Plan" section of a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2003 WL 1090304 (S.D.N.Y.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

benefits plan was analogous for these purposes to a contract's "whereas" clause); *Abraham Zion Corp. v. Lebow,* 761 F.2d 93, 103 (2d Cir.1985); *Genovese Drug Stores v. Connecticut Packing Co.,* 732 F.2d 286, 291 (2d Cir.1984); *Credit Lyonnais v. Getty Square Associates,* 876 F.Supp. 517, 521 (S.D.N.Y.1995) ("[A] whereas clause in a document such as this [lease assignment] conveys no rights whatsoever."). Similarly, such recitals cannot remove or limit rights that are plainly given by the terms of an agreement.

*4 Applying these principles to the Agreement between the parties, the Court finds that the intent of the parties was to give the Buyer the option to have issues related to the alleged breach of the non-competition/non-solicitation provision by Defendant Miguens decided in court rather than be compelled to arbitrate these claims under the general agreement to arbitrate "all disputes arising out of this Agreement." This conclusion would be undisputable were it not for the language at the beginning of section 4.7, which states that the Seller agreed to that paragraph because he "recognizes that the activities by the Seller proscribed by this Section 4 may result in irreparable damage and harm to the Buyers and that the Buyers may be without an adequate remedy at law in the event of such activities." Based on this language, Defendant Miguens argues that Plaintiffs' right to institute court proceedings is limited to situations in which Plaintiffs are seeking an injunction, or are, in some other way, attempting to prevent an ongoing harm. Accordingly, Defendant contends, because the restrictive covenant was close to expiring when Plaintiffs brought their action, and has now expired, that provision is inapplicable, and all issues between Plaintiffs and Defendant Miguens should be arbitrated.

There are several problems with this argument. First, the language of the remedies section at issue is in the disjunctive, providing that the Plaintiffs may bring an action solely for damages in a court action alleging breach of the non-competition/non-disclosure provisions.[FN1] There is absolutely no requirement that Plaintiffs instituting a court action seek injunctive relief.

> FN1. "[I]n the event of any breach of this Section 4, the buyers may at their election institute and prosecute proceedings in any court of competent jurisdiction: (a) to obtain damages for such activities; ... or (d) to pursue any one or more of the foregoing or any other remedy available to it under applicable law."

Second, as stated above, the introductory statement to that section, which states that a breach of the restrictive covenant "may result in irreparable damage and harm to the Buyers and that the Buyers may be without any adequate remedy at law in the event of any such activities" cannot expand or limit the terms of the Agreement. *Aramony v. United Way of America,* 254 F.3d at 413.

Third, the rationale that the sole reason for the provision permitting a court action is to make possible equitable relief that might otherwise be unavailable is unconvincing because it would not be necessary to bring an action in a court in order to obtain injunctive or other equitable relief. The general arbitration provision in the Agreement provides that "[t]he arbitrator shall have the authority to order or award all appropriate equitable and legal relief." Moreover, the general rule is that "an arbitrator has the power to fashion appropriate remedies including reformation of a contract." *Integrated Sales v. Maxell Corp.,* 94 A.D.2d 221, 463 N.Y.S.2d 809, 811-12 (1st Dep't 1983); AAA Commercial Arbitration Rules, Rule 43. *See Integrated Sales v. Maxell Corp.,* 463 N.Y.S.2d at 812. Therefore, Plaintiffs' claims for breach of the restrictive covenant are properly brought in this Court, and Defendant Miguens' motion to dismiss this action and compel arbitration with respect to Plaintiffs' claims of breach of the restrictive covenant in the Agreement will be denied.

*5 Plaintiffs also seek a declaratory judgment as to the effect of Miguens' alleged breach on their payment obligations with respect to the Notes. They argue that because their claims pursuant to the non-competition/non-disclosure agreement are properly filed in this Court, the entire arbitration, including Miguens' claims for nonpayment of the Notes, should be enjoined in the interest of judicial economy. However, the federal interest in enforcing agreements to arbitrate, as expressed in the FAA, takes precedence over concerns of judicial efficiency and economy. Thus, the Second Circuit has made it clear that:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK   Document 179-4   Filed 08/11/2006   Page 5 of 5

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1090304 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

'The preeminent concern of Congress in passing the [Arbitration] Act was to enforce private agreements ... and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is "piecemeal" litigation ...' If some claims are non-arbitrable, while others are arbitrable, then we will sever those claims subject to arbitration from those adjudicable only in court. Indeed, there is no reason why, in a proper case, we cannot sever even a part of a claim, where that claim raises both arbitrable and non-arbitrable issues.

Collins & Aikman Products Co. v. Building Systems, Inc., 58 F.3d 16, 20 (2d Cir.1995) (citing Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219-20, 105 S.Ct. 1238, 1241-42 (1985)).

Defendant Miguens' claims for nonpayment of the Notes clearly are arbitrable pursuant to section 5.13 of the Agreement. Therefore, although it is for this Court to determine whether there has been a breach of the non-competition/non-disclosure provisions in the Agreement, it is for the arbitrator to determine whether that breach, if one is found, and the damages awarded, if any, are a bar to or set off against Miguens' collecting on the Notes. The Supreme Court has clearly stated that

[T]he Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even when the result would be the possibly inefficient maintenance of separate proceedings in different forums.

Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. at 217, 105 S.Ct. at 1240.

Accordingly, Plaintiffs' motion to enjoin the arbitration with respect to Defendant Miguens' claims for payment of the Notes will also be denied.

Plaintiffs also have filed claims against Kurt Daigle for tortious interference with contract for aiding Defendant Miguens in violating the Agreement by doing competing business with him during the five year non-competition period. It appears that as of this date, Daigle has not answered or moved with respect to the Complaint. Plaintiffs argue that their claims against Daigle are properly brought in this action because they entered into no arbitration agreement with Daigle with respect to such claims. Defendant Miguens contends, to the contrary, that claims against Daigle are arbitrable because he was a signatory to the Agreement as a Buyer, and the claims of tortious interference arise out of the Agreement. Furthermore, section 4.7 permits only the "Buyers" to bring a court action against the "Seller". Since Daigle was a signatory to the Agreement as a Buyer, that section would not seem to permit a court action against him. Defendant Miguens would appear to be correct on this point, and in light of the principles enunciated above, the claims against Defendant Daigle are subject to arbitration. However, since Defendant Daigle has not appeared in this action, the Court will not, at this time, enter any Order with respect to the claims against him.

*Conclusion*

*6 For the foregoing reasons, Defendant Miguens' motion to compel arbitration of all claims between Plaintiffs and Defendant Miguens, and dismiss or stay this action is denied. Plaintiffs' claim for breach of the restrictive covenant in the Agreement is not subject to arbitration. However, Plaintiffs' motion to enjoin or stay arbitration of Defendant Miguens' claims against them for nonpayment of the Notes also is denied.

SO ORDERED.

S.D.N.Y.,2003.
Brown v. Miguens
Not Reported in F.Supp.2d, 2003 WL 1090304 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:02cv05278 (Docket) (Jul. 10, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.