8

Case 7:04-cv-08223-KMK    Document 179-5    Filed 08/11/2006    Page 1 of 14

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
CASIO COMPUTER CO., LTD. Plaintiff,
v.
Osamu SAYO, Mitsuyaki Hasegawa, Theoddor Tsuru, Cranest International Inc., Ocean View Marketing Limited, Eugen Kaiser, Richard Wolpow, Charivari Capital Corporation, Joanne M. Marlowe, Crane Limited, Joseph Robert Kelso, Ashmita Patel and Wayne Nishiyama, Defendants.
No. 98CV3772 (WK).

Oct. 13, 2000.

Seth T. Taube, Esq., Newark, N.J., Robert A. Mintz, Esq., McCarter & English, L.L.P., New York, for Plaintiff Casio Computer Co., Ltd.
Fred L. Abrams, Esq., Isla Verde, PR, for Defendant Osamu Sayo.
Jacques Debrot, Esq., Debrot & Siris, P.C., New York, for Mitsuyuki Hasegawa.
Michael S. Oberman, Esq. and Gary P. Naftalis, Esq., Kramer, Levin, Naftalis & Frankel, New York, for Defendants Charivari Capital Corporation and Joanne Marlowe.
Nancy Prahofer, Esq. and Mishell B. Kneeland, Esq., Dechert Price & Rhoads, New York, for Theoddor Tsuru.
Bernard C. Jasper, Esq., Horwitz & Beam, Irvine, CA, for Richard Wolpow.

MEMORANDUM & ORDER
KNAPP, Senior District J.
*1 We have considered the entire Report and Recommendation in this matter and find it to be an extraordinarily well put together document. We have also considered the arguments presented by the plaintiff and its objections to that Report and Recommendation. As to those objections we conclude: (1) that several of them are sufficiently plausible to warrant discussion; but (2) we would ultimately reject them. However, we find that such undertaking is not necessary because of Magistrate Judge Ellis' final recommendation that we exercise our discretion by dismissing the third amended complaint on the ground of *forum non conveniens*.

Having considered plaintiff's arguments in opposition to such an exercise of discretion, we find that the reasons advanced by Magistrate Judge Ellis are wholly valid and the third amended complaint should be, and it is, dismissed.

SO ORDERED.

REPORT AND RECOMMENDATION

I. INTRODUCTION

This action is brought by plaintiff Casio Computer Co., Ltd. ("Casio") against various defendants for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq*. Before the Court are motions by the various defendants to dismiss the Third Amended Complaint ("Am.Compl.").[FN1] Defendant Wayne Nishiyama ("Nishiyama") originally joined the other defendants in moving to dismiss, but has since settled the action with Casio. *See* Stipulation and Order of Dismissal dated January 19, 1999. For the reasons stated below, defendants' motions to dismiss are GRANTED pursuant to Rule 12(b)(6) for failure to state a RICO claim and pursuant to Rule 12(b)(1) (except for Sayo) for lack of subject matter jurisdiction, as jurisdiction was based on the RICO statute. Fed.R.Civ.P. 12(b)(1), (6).

> FN1. By order dated June 11, 1999, the Court granted plaintiff leave to file a Third Amended Complaint by June 18, 1999, to add new factual allegations and information. Defendants' motions to dismiss the Second Amended Complaint will be considered as motions to dismiss the Third Amended Complaint, which is now the operative complaint.

II. BACKGROUND

Plaintiff Casio Computer Co., Ltd., alleges that its former employee, Osamu Sayo, as well as the other named defendants, participated in a RICO enterprise for at least sixteen months (beginning in February 1997), and engaged in a pattern of racketeering activity to conspire and defraud the company out of millions of dollars through an elaborate series of wire transfers.

A. The Parties

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

Plaintiff Casio is "a company registered under the laws of Japan and is engaged in the business of manufacturing, developing, marketing and selling electronic and computer goods of different types" all over the world. Am. Compl. at ¶ 7.[FN2] Casio's main offices are located in Tokyo, Japan. Id. at ¶ 8. The President of Casio is Kashuo Kashio ("Kashio") and one of its four managing directors is Yoshiaki Suzuki ("Suzuki"). Id. at ¶ 7.

> FN2. "Am. Compl." refers to the Third Amended Complaint dated June 18, 1999, with accompanying exhibits.

Defendant Osamu Sayo ("Sayo") is a Japanese citizen and resides in Tokyo, Japan. Id. at ¶ 8. Sayo was the Deputy General Manager of the Finance and Treasury Division at Casio's main offices. Id. On June 4, 1998, Sayo's employment with Casio was terminated. Id.

Defendant Mitsuyuki Hasegawa ("Hasegawa") is also a citizen of Japan, and resides in Japan. Hasegawa Mem. at 16.[FN3] Casio alleges that Hasegawa has a residence in New York, New York. Am. Compl. at ¶ 9.

> FN3. "Hasegawa Mem." refers to defendant Mitsuyuki Hasegawa's memorandum of law in support of his motion to dismiss the Complaint.

*2 Defendant Theoddor Tsuru ("Tsuru") is alleged to be a citizen of Japan with a residence in New York, New York.[FN4] Id. at ¶ 10. As the Chief Executive Officer, Tsuru owns and/or controls Cranest International, Inc. ("Cranest"), another defendant in this action. Id. Cranest is an organization believed to be organized under California laws with its principal place of business in New York, New York. Id. at ¶ 11.

> FN4. In his motion to dismiss, Tsuru does not state whether he is a Japanese citizen and/or resident. However, he does not challenge this fact alleged by plaintiff.

Defendant Joanne M. Marlowe ("Marlowe")[FN5] is a United States citizen with a residence in Wadsworth, Illinois, and a place of business in Hoffman Estates, Illinois. Id. at ¶ 12. Marlowe owns and/or controls defendant Charivari Capital Corporation ("CCC"), of which she is the President and/or Director and/or Secretary. Id. CCC is a company registered under the laws of Barbados, with its principal place of business at St. Michael, Barbados. Id. at ¶ 13.

> FN5. In its Third Amended Complaint, plaintiff submits new allegations that defendant Joanne M. Marlowe has an alias, Joanne Marie Noren, which is her name by marriage. Am. Compl. at ¶ 12.

Defendant Joseph Kelso ("Kelso")[FN6] is a United States citizen residing under "house arrest" in London, England. Id. at ¶ 14. Kelso is believed to own and/or control defendant Crane Limited ("Crane") as Chairman, President and Chief Executive Officer. Id. Crane is a company registered under the laws of Isle of Man, which is situated between Ireland and Great Britain. Id. at ¶ 15. Crane has an office in Isle of Man while its principal place of business is located in Hertfordshire, England. Id. Kelso, along with defendant Ashmita Patel ("Patel"), manages and operates Crane. Id. Patel allegedly resides in London, England, and is a director of Crane. Id. at ¶ 20.

> FN6. In the Third Amended Complaint, plaintiff amended this portion of the Second Amended Complaint to add factual allegations, stating that Kelso had pled guilty in federal court for attempting to sell arms to Iraq. Am. Compl. at ¶ 14. Plaintiff alleges that Kelso was sentenced to five years probation and thereafter violated his probation, resulting in another two years' imprisonment for such violation. Id. In addition, plaintiff alleges that Kelso is currently under indictment in the Western District of Washington for his involvement in an advanced fee scheme. Id.

Defendant Wayne Nishiyama is alleged to be a citizen of the United States with a residence in New York, New York. Id. at ¶ 16.

Defendant Eugen Kaiser ("Kaiser") is believed to be a German citizen, and is the Chief Executive Officer of Ocean View Marketing, Ltd. ("OVM"). Id. at ¶ 17. Defendant OVM is a company registered under the laws of Isle of Man

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

with an office in Isle of Man and its principal place of business at Gran Canaria of the Canary Islands. *Id.* at ¶ 19.

Defendant Richard Wolpow ("Wolpow") is a citizen of the United States and resides in Newport Beach, California. *Id.* at ¶ 18. He is the Managing Director of OVM. *Id.*

B. Procedural History

On May 27, 1998, Casio filed an Order to Show Cause and applied for a temporary restraining order to freeze certain defendants' assets. The Honorable Whitman Knapp granted the temporary restraining order against defendants Sayo and Hasegawa. Simultaneously, Casio brought the original complaint against Sayo and Hasegawa, alleging common law fraud, securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934, and conversion. *See* Plaintiff's complaint filed on May 27, 1998. Casio did not allege a RICO claim at that time. *Id.* On June 5, 1998, Casio filed an amended complaint, adding defendants Tsuru, Cranest, CCC, Marlowe, Crane, Kelso and Nishiyama, and characterizing its prior claim as a RICO claim. *See* Plaintiff's amended complaint filed on June 5, 1998. In the amended complaint, Casio alleged that there was a RICO "enterprise" which existed among certain defendants: Sayo, Hasegawa, Tsuru, CCC, Marlowe, Wolpow, OVM, Kaiser, Crane, Kelso, and Nishiyama. *Id.* The amended complaint also included other causes of action, including breach of fiduciary duty, conversion, common law fraud against defendant Sayo, civil conspiracy, federal securities law violation, and unjust enrichment. *Id.*

*3 On June 12, 1998, at a conference before Judge Knapp, Casio was granted leave to amend the complaint again. *See* Mintz Decl., Exh. 9, at 51-52.[FN7] On June 18, 1998, Casio filed its Second Amended Complaint, naming additional defendants (OVM, Wolpow, Kaiser, and Patel), adding factual details, information, and legal theories concerning defendants, as well as amending certain counts and legal theories. In this Second Amended Complaint, Casio alleged violations of RICO and the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78a *et seq.*, and asserted eleven claims for relief against defendants. At a case conference held on June 26, 1998, and by Order dated June 29, 1998, Judge Knapp dismissed Casio's federal securities law claim.

FN7. "Mintz Decl." refers to Robert A. Mintz's Declaration with accompanying exhibits, dated August 26, 1998. Exhibit 9 is a transcript of the conference held before Judge Knapp on June 12, 1998.

On August 24, 1998, defendant Sayo filed an answer, counterclaim and cross-claim.[FN8] In addition, Sayo filed a motion to dismiss the Second Amended Complaint pursuant to Rule 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants Hasegawa, CCC, Marlowe, Tsuru and Wolpow have filed motions to dismiss as well, relying upon various theories of dismissal, including Rules 12(b)(1), (2), (3), (4), (5), and (6) of the Federal Rules of Civil Procedure.

FN8. Sayo contended that any injuries sustained by plaintiff resulted from plaintiff's negligent failure to exercise ordinary care, and that the very claims raised by plaintiff were being adjudicated in another action in London. Sayo also brought a counterclaim and a cross-claim, claiming that cross-defendants Hasegawa and Tsuru caused plaintiff's injuries.

In a submission dated August 26, 1998, Casio opposed the motions to dismiss by defendants Sayo, Hasegawa, CCC and Marlowe, filed a cross-motion to disqualify Jacques Debrot, Esq., attorney for defendant Hasegawa, and requested leave to amend the complaint a third time. *See* Casio Opp. Mem.[FN9] On November 6, 1998, Casio also submitted a memorandum of law in opposition to the motions to dismiss by defendants Tsuru and Wolpow.

FN9. "Casio Opp. Mem." refers to Casio's memorandum of law in opposition to defendants' motions to dismiss, in further support of its motion to disqualify Jacques L. Debrot, Esq., and for leave to amend its Second Amended Complaint, dated August 26, 1998.

Defendants Hasegawa, CCC and Marlowe submitted reply memoranda in further support of their motions to dismiss the Second Amended Complaint and in opposition to plaintiff's cross-motion for leave to amend its complaint. At

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

a conference before this Court on December 4, 1998, defense counsel for Sayo asserted that he would not be filing a reply to Casio's opposition to defendants' motions to dismiss.[FN10]

>   FN10. In January 1999, Casio made additional submissions to the Court. The submissions contain further allegations and assertions concerning certain defendants. Since these submissions were offered without leave of the Court, these submissions have not been considered in this Report and Recommendation.

On March 30, 1999, the Court held a telephone conference with the parties regarding plaintiff's request for leave to again amend its complaint. At that time, the Court directed defendants to address and respond to the additional evidence submitted by plaintiff in its Third Amended Complaint. On April 29th and 30th, 1999, defendants Marlowe, CCC and Tsuru submitted supplemental memoranda in further support of their motions to dismiss and to deny plaintiff leave to amend its complaint. Plaintiff was given an opportunity to reply to those responses, and filed a memorandum of law in opposition to defendants' supplemental memoranda in support of their motions to dismiss dated May 10, 1999. In May 1999, defendants Marlowe, CCC and Tsuru submitted reply supplemental memoranda in opposition to Casio's May 10, 1999 reply memorandum.

By Order dated June 11, 1999, the Court granted plaintiff leave to file its Third Amended Complaint by June 18, 1999. In its Third Amended Complaint, Casio provides new factual allegations and information relating to the following: (1) defendant Marlowe's married name "Noren" and her use of an alias "Marlowe"; (2) Kelso's prior criminal record; (3) the legitimacy of the "Los Frailes" project to construct a hotel and golf course in Gran Canaria; (4) fraudulent wire transfers directed by Marlowe/CCC; and (5) evidence directly linking Marlowe/CCC to the Sayo/Hasegawa enterprise.

C. Facts

*4 The Third Amended Complaint alleges that from at least February 1997, Sayo, the Deputy General Manager of the Finance and Treasury Division at Casio's main offices, conspired with Hasegawa and other individuals to divert approximately one hundred million dollars ($100,000,000) from Casio's funds and proceeds of securities investments. Id. at ¶¶ 1, 6, 21. This misappropriation of funds is alleged to have occurred in three steps, in the amounts of thirty million dollars ($30,000,000), two million dollars ($2,000,000), and sixty-four million dollars ($64,000,000), respectively. Id. at ¶¶ 21-66. Casio claims that Sayo and Hasegawa, along with other defendants, engaged in a continuous pattern of racketeering activity while participating in a RICO enterprise, and engaged in an elaborate series of wire transfers to conceal their racketeering activities. Id.

1. The First Misappropriation

Casio claims that on or about February 5, 1997, defendant Sayo received written authority from certain Casio board members "to invest up to the yen equivalent of $30,000,000 in securities, namely, foreign currency investment in mainly AAA class short term bonds guaranteed by the [United States] government and foreign currency time deposits at three month periods." Am. Compl. at ¶ 24, Exh. I. On or about February 18, 1997, defendants Sayo and Hasegawa allegedly forged a "Special Limited Power of Attorney" to create a document where Casio, acting by Suzuki and Sayo, would grant Hasegawa and Tsuru "rights, powers and authority to act on behalf of Casio," including the power to make "all Private Investment contracts which could allow the realization of investment offering both high yields and full total, permanent security" on the terms and conditions therein. Id. at ¶ 25, Exh. 2. The power of attorney was purportedly signed by Sayo, but Suzuki's signature was "forged by Hasegawa or one of his associates ...." Id. at ¶ 25, Exh. 3.

Casio further alleges that Sayo conspired with defendant Tsuru to open various bank accounts in Casio's name in New York, London, and other parts of the world. Id. at ¶¶ 26-29, Exhs. 4, 5. Tsuru and Sayo allegedly maintained control as signatories for certain bank accounts, and Tsuru was authorized to invest large sums of money on Casio's behalf, including transfers to a personal account in his name. Id. at ¶¶ 26, 28, Exh. 9. Sayo and Tsuru then wire transferred thirty million dollars ($30,000,000) of Casio funds to the various bank accounts, some of which were controlled

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 5

solely by Tsuru. *Id.* at ¶¶ 26-30, Exhs. 6-8.

a. Alleged Participation by Tsuru

Next, Casio alleges that, in May 1997, Tsuru entered into a purported Project Management and Funding Agreement (the "Los Frailes Project") with OVM, an Isle of Man corporation owned by Wolpow and Kaiser, and conspired with OVM to invest twenty-five million dollars ($25,000,000) in OVM's project to construct a hotel and golf course in Gran Canaria. The agreement also provided that the money invested and additional payments would be transferred back to Tsuru at his personal account at Barclays Bank. *Id.* at ¶¶ 30-31, 35(c), Exh. 11. To finance the Los Frailes Project, Tsuru purportedly wired $25,000,000 to OVM's bank account and retained five million dollars of the money originally transferred to him by Sayo. *Id.* at ¶¶ 33-35(a)-(c), Exhs. 12, 13.

*5 Tsuru then allegedly further assisted in various wire transfers of $25,000,000 from one account to another in the name of Wolpow, CCC and/or OVM.[FN11] *Id.* at ¶ 35(e)-(i). Specifically, Casio alleges that, in June 1997, rather than using the money to fund the hotel project, Tsuru and OVM wired the twenty-five million dollars to a bank account in Chicago, Illinois, in the name of OVM and/or CCC, a company owned and controlled by Marlowe, who was identified as the "project manager" of the Los Frailes Project.[FN12] *Id.* at ¶¶ 35(h), 37(c); Casio Opp. Mem. at 3. In addition, Casio alleges that Tsuru, Kaiser, Wolpow and Marlowe held some equity interest in the Los Frailes Project. Am. Compl. at ¶ 35(d).

> FN11. Plaintiff then claims that Tsuru sought "secret" profits of five million dollars as a fee for introducing (and to be paid out of) the $25,000,000 laundered through OVM. Am. Compl. at ¶ 35(j). Moreover, Tsuru purportedly agreed to transfer an additional three million five hundred thousand dollars ($3,500,000) of the original $25,000,000 transferred to OVM, and appropriate such amount for his own benefit. *Id.* at ¶ 35(k), Exh. 15. As a result, Tsuru allegedly took at least eight million dollars ($8,000,000) belonging to Casio and kept the funds for his own personal use. *Id.* at ¶ 35(k).

> FN12. CCC and Marlowe allegedly managed the funds for OVM. Casio Opp. Mem. at 3-4.

Casio asserts that Tsuru knowingly and substantially participated in defrauding Casio out of at least $30,000,000 because he knew or should have known that the Los Frailes Project was a highly risky investment or "at worst, a sham or fraud." *Id.* at ¶¶ 33-35(c)(1)-(c)(4). Casio claims that based upon its investigation, in 1995 the Government of Gran Canaria had halted development of the land upon which the Los Frailes Project was to be situated, "through the imposition of a zoning ordinance known as a Plan Insular de Ordenacion del Territorio de Gran Canaria ("PIOT")." *Id.* at ¶ 35(c)(5), Exh. 53. Casio's investigation also disclosed that the land has been zoned as "rustic" property and that the PIOT forbids development at the site. *Id.* Thus, Casio argues that Tsuru's investment in the Los Frailes Project with defendants OVM, Kaiser, Wolpow, Marlowe and CCC was an actual scheme to defraud Casio. *Id.* at ¶ 35(c)(10).

Additionally, Tsuru and Kelso purportedly each provide different accounts as to the disbursement of Casio funds; Tsuru claims that Marlowe and Kelso were in a conspiracy to defraud Casio whereas Kelso contends that Tsuru, Marlowe and other defendants conspired to defraud the company. *Id.* at ¶¶ 35(l), Exhs. 54, 55. Moreover, by terms of a written agreement dated September 29, 1997, Tsuru conspired with OVM, Kaiser, Wolpow, CCC and Marlowe to participate in the generation and division of further secret profits using Casio's monies. *Id.* at ¶ 35(m), Exh. 19. Therefore, Casio alleges that Tsuru knowingly and substantially participated in defrauding Casio out of $30,000,000, and failed to take any steps to preserve the money for the benefit of Casio or return the funds. *Id.* at ¶¶ 33-35(a)-(m).

b. Alleged Participation by OVM, Kaiser and Wolpow

The Third Amended Complaint further asserts that OVM, Kaiser, and Wolpow knowingly and substantially participated in defrauding Casio out of at least $30,000,000 because they never intended to use the money towards investment in the Los Frailes Project. Rather, they allegedly knew, or should have known, that the project was a sham when soliciting funds from Tsuru. *Id.* at ¶ 36. In addition, they failed to return the $25,000,000 or take steps to preserve the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 6

money. *Id.* at ¶ 37(a). By July 29, 1997, CCC allegedly had control over the $25,000,000. *Id.* at ¶ 37(d).

c. Alleged Participation by Marlowe, CCC, Kelso, Crane and Patel

*6 The Complaint then alleges that, in July 1997, Marlowe, on behalf of CCC, and Kelso, on behalf of Crane, conspired and entered into a Master Repurchase Agreement "for the purpose of laundering the stolen [twenty-five million dollars] $25,000,000 and to conceal the money trail from Casio." *Id.* at ¶ 38. Casio claims that defendants CCC, Marlowe, Crane, Kelso and Patel knowingly participated in a conspiracy to defraud Casio out of its funds from approximately July 1997 to no later than August 21, 1997, engaging in multiple wire transfers of the funds in various bank accounts. *Id.* at ¶¶ 39, 40(a)-(k), Exhs. 20-22, 56-60, 71, 72, 74. Thus, they breached their duties as constructive trustees by failing to preserve the $25,000,000 for the benefit of Casio and failing to return the funds. *Id.* at ¶ 40(a).

Thus, Casio asserts that defendants CCC, Marlowe, Crane, Kelso and Patel knowingly and substantially participated in a scheme to defraud Casio of $30,000,000. *Id.* at ¶¶ 38-40(a)-(aa), Exhs. 25-29. Sayo and Hasegawa allegedly attempted to recover the $30,000,000, but had no success. *Id.* at ¶¶ 43, 47, Exhs. 30, 32. In December 1997, Sayo and Hasegawa allegedly attempted to conceal the scheme to divert Casio funds by presenting false audit confirmations to Casio's auditors. *Id.* at ¶¶ 50-51, Exhs. 34-36.

2. The Second Misappropriation

Casio claims that, on or about December 9, 1997, Sayo was instructed to open an account on Casio's behalf at Citibank, New York, and deposit $2,000,000 to be invested in certificates of deposit. *Id.* at ¶ 53, Exh. 38. Casio alleges that, more than six months later, it discovered that Sayo did not open the account in New York, and did not invest the $2,000,000 in certificates of deposit. *Id.* at ¶ 54. Instead, on or about December 26, 1997, Sayo wire transferred Casio's funds into the personal account of defendant Nishiyama in New York, who, in turn, transferred that amount to Hasegawa's personal account in New York. *Id.* at ¶¶ 55-56, Exh. 39.

3. The Third Misappropriation

Casio alleges that, in March 1998, Sayo again fraudulently induced it to provide him with funds to invest in the United States. *Id.* at ¶ 59, Exh. 42. Thereafter, Sayo and Hasegawa opened another bank account in the name of Casio Computer Co., Ltd., and engaged in a series of wire transfers to convert a total of $64,000,000. *Id.* at ¶¶ 60-64, Exh. 46. In May 1998, Casio initiated an investigation when it discovered that Sayo's status report explaining his investments of the funds was "replete with misrepresentations." *Id.* at ¶ 65, Exh. 47.

The Third Amended Complaint alleges a violation of RICO, under 18 U.S.C. §§ 1961 *et seq. See Id.* at ¶ 2. Specifically, Casio alleges that defendants conspired and engaged in a pattern of racketeering activity to defraud it of assets and funds through an elaborate series of wire transfers and transactions. *Id.* at ¶ 67. Casio asserts that defendants not only engaged in racketeering acts in violation of 18 U.S.C. §§ 2314, 1343, and 1956, but also attempted to conceal their fraudulent scheme to launder and convert Casio's funds. *Id.* at ¶¶ 71-72.

*7 Casio asserts eleven claims for relief. *Id.* at ¶¶ 74-134. The first, second, third, fourth, sixth, eighth, ninth, and tenth claims are filed against all defendants for violation of 18 U.S.C. § 1962(c), 18 U.S.C. § 1962(d), conversion, civil conspiracy, participation in a breach of fiduciary duty, negligence, unjust enrichment, and seek declaratory judgment for imposition of a constructive trust. *Id.* at ¶¶ 74-105, 112-16, 123-32. The fifth and seventh claims are against Sayo for breach of fiduciary duty and common law fraud, respectively. *Id.* at ¶¶ 106-11, 117-22. Finally, the eleventh claim seeks a judgment against defendants Kelso and Crane for common law fraud. *Id.* at ¶¶ 133-34.

In addition, Casio claims that subject matter jurisdiction, personal jurisdiction and venue are proper in this Court. *Id.* at ¶¶ 2-5. With respect to the RICO claims, Casio asserts that the Court may exercise personal jurisdiction over the domestic defendants under 18 U.S.C. § 1965(b) or (d), and exercise personal jurisdiction over the foreign defendants under Civil Practice Law and Rules ("CPLR") 302, New York's long arm statute, and the Restatement (Second) of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK   Document 179-5   Filed 08/11/2006   Page 8 of 14

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 7

Conflict of Laws §§ 35-37, 47, 49, and 50. *Id.* at ¶ 4. Casio also asserts that the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form a part of the same case or controversy. *Id.* at ¶ 3.

### D. The Motions to Dismiss Before the Court

Defendants Sayo, Hasegawa, CCC, Marlowe, Tsuru, and Wolpow have moved to dismiss the Third Amended Complaint on various grounds. Defendants primarily challenge the sufficiency of the RICO claims against them, but also assert the following grounds for relief.

Defendant Sayo has moved to dismiss the Third Amended Complaint pursuant to Rule 12(b)(6), and Rule 9(b) of the Federal Rules of Civil Procedure. Sayo Mem. at 1.[FN13] Sayo alleges that Casio has failed to establish the RICO elements of "pattern of racketeering activity," "continuity," and "enterprise" and has failed to prove Sayo's participation in the alleged RICO enterprise. Sayo Mem. at 2. Sayo further asserts that Casio has failed to plead the RICO predicate acts with sufficient particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Sayo Mem. at 13, 15, 17.

> FN13. "Sayo Mem." refers to Osamu Sayo's memorandum of law in support of his motion to dismiss the Second Amended Complaint.

Defendant Hasegawa also attacks the sufficiency of the RICO claim by Casio. Hasegawa Mem. at 17. Hasegawa further asserts a lack of subject matter and personal jurisdiction, insufficiency of process, and/or improper service of process, and failure to state a proper RICO claim. In addition, Hasegawa argues that the case should be dismissed on the grounds of *forum non conveniens.* Hasegawa Mem. at 12.

Defendants CCC and Marlowe challenge the sufficiency of the RICO allegations against them and assert lack of subject matter jurisdiction and personal jurisdiction, improper venue, insufficiency of process and/or insufficiency of service of process. Marlowe Mem. at 1.[FN14] In the alternative, they argue that the RICO claims against them should be dismissed pursuant to 12(b)(6) for failure to state a RICO claim. *Id.* Specifically, CCC and Marlowe argue that the RICO claim is baseless because Casio fails to plead the necessary elements, such as a "pattern of racketeering activity" and "participation" in a racketeering enterprise, against any defendant. *Id.* at 5-9. Marlowe asserts that Casio's allegations only provide for "[a] single thief stealing from a single victim on three discrete occasions." *Id.* at 3. This she contends does not constitute a pattern of racketeering activity under RICO. *Id.* at 3. In addition, Marlowe argues that she cannot be liable for "participation" in an allegedly criminal RICO enterprise if she merely assisted such an enterprise or served as a professional advisor. *Id.* at 9.

> FN14. "Marlowe Mem." refers to defendants Joanne Marlowe and CCC's memorandum of law in support of their motion to dismiss the Second Amended Complaint.

*8 Wolpow adopts CCC and Marlowe's arguments challenging Casio's RICO allegations, and moves to dismiss for lack of subject matter jurisdiction and personal jurisdiction, improper venue, insufficiency of process and/or service of process, and for failure to state a claim upon which relief may be granted. Wolpow Mot. at 1-2.[FN15] In addition, Wolpow claims that he is not a resident of New York, does not transact business, operate a company, regularly perform business activities or maintain a bank account in New York. Wolpow Decl. at 2.[FN16]

> FN15. "Wolpow Mot." refers to defendant Richard Wolpow's Adoption of Notice of Motion and Motion to Dismiss the Second Amended Complaint, dated October 29, 1998.

> FN16. "Wolpow Decl." refers to the Declaration of Richard Wolpow filed on October 30, 1998.

Defendant Tsuru asserts lack of subject matter jurisdiction, insufficiency of process and/or insufficiency of service of process, and failure to state a claim upon which relief can be granted. Tsuru Mem. at 1.[FN17] Tsuru also interposes the doctrine of *forum non conveniens,* in favor of pending proceedings initiated by Casio in the United Kingdom and Japan. *Id.* at 3. In attacking the sufficiency of the RICO alleg-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 8

ations, Tsuru joins in the arguments made by Nishiyama, CCC and Marlowe. *Id.* at 5. In addition, Tsuru asserts that Casio has not only failed to identify and plead elements of any predicate acts committed by defendants, but has also failed to allege the "requisite causal nexus" between its losses and the alleged criminal conduct by defendants. *Id.* at 12-13. Tsuru adopts arguments made by Nishiyama, CCC and Marlowe on the issues of supplemental jurisdiction and *forum non conveniens. Id.* at 14-15.

> FN17. "Tsuru Mem." refers to defendant Theoddor Tsuru's memorandum of law to dismiss the Second Amended Complaint.

Each of the moving defendants requests that the Court decline to exercise subject matter jurisdiction and supplemental jurisdiction over the state claims asserted against them in the event that the federal RICO claim is dismissed.

### III. DISCUSSION

All defendants move to dismiss the Third Amended Complaint pursuant to Rules 12(b)(1) (with the exception of Sayo) and 12(b)(6) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Defendant Sayo also moves to dismiss pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. Defendants assert that plaintiff has failed to adequately plead a RICO claim, and thus, the Court lacks subject matter jurisdiction over this action since the federal securities law claim has already been dismissed. The Court agrees.

### A. STANDARD OF REVIEW FOR DISMISSAL UNDER 12(b)(1)

In considering a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court must assume as true factual allegations in the complaint. *Shipping Financial Services Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). Where the court must decide jurisdictional issues in dispute, it may look to "evidence outside the pleadings, such as affidavits." *Filetech S.A. v. France Telecom, S.A.,* 157 F.3d 922, 932 (2d Cir.1998) (quoting *Antares Aircraft v. Federal Republic of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991), vacated on other grounds, 505 U.S. 1215 (1992)).

*9 A Rule 12(b)(1) motion may be appropriate when a plaintiff's federal claim is not even minimally plausible. *See Town of West Hartford v. Operation Rescue,* 915 F.2d 92-99 (2d Cir.1990); *see also AVC Nederland B.V. v. Atrium Inv. Partnership,* 740 F.2d 148, 152-53 (2d Cir.1984) ("[W]hen the contested basis of federal jurisdiction is also an element of plaintiff's asserted federal claim, the claim should not be dismissed for want of jurisdiction except when it appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.") (internal quotation marks omitted).

In most cases, the court will consider a 12(b)(1) motion before ruling on any other motions to dismiss, since dismissal of an action for lack of subject matter jurisdiction will render all other accompanying defenses and motions moot. *See United States ex rel Kreindler & Kreindler v. United Technologies Corp.,* 985 F.2d 1148, 1155-56 (2d Cir.1993), *cert. denied, Kreindler & Kreindler v. United Technologies Corp.,* 508 U.S. 973 (1993); *see also Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir.1990). Thus, a court confronted with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) should decide the jurisdictional question first because "a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Magee v. Nassau County Medical Center,* 27 F.Supp.2d 154, 158 (E.D.N.Y.1998); *see also Rhulen,* 896 F.2d at 678.

The situation is more complicated in federal question cases where the statute which creates the cause of action also confers jurisdiction. *See Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187-88 (2d Cir.1996). "[I]n cases where the asserted basis for subject matter jurisdiction is also an element of the plaintiff's allegedly federal cause of action, [the court will] ask only whether-on its face-the complaint is drawn so as to seek recovery under federal law ... If so, then we assume or find a sufficient basis for jurisdiction and reserve further scrutiny for an inquiry on the merits." *Id.* at 1189 (citing *Spencer v. Casavilla,* 903 F.2d 171, 173 (2d Cir.1990)).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 9

The nature of the present case requires the Court to consider the Rule 12(b)(6) motion in order to decide the Rule 12(b)(1) motion because subject matter jurisdiction in this action is invoked by alleging an adequate RICO claim.

B. STANDARD OF REVIEW FOR DISMISSAL UNDER 12(b)(6)

A motion to dismiss under Rule 12(b)(6) should be granted only if it appears beyond doubt that "no relief could be granted under any set of facts that could be proved consistent with the allegations." H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). This standard applies to RICO claims. See National Organization for Women, Inc. v. Scheidler, 510 U.S. 249 (1994); H.J. Inc., 492 U.S. at 249-50. In a motion for judgment on the pleadings, the well-pleaded allegations of fact by the non-moving party must be accepted as true and construed in the light most favorable to that party. See, e.g., Davidson v. Flynn, 32 F.3d 27, 29 (2d Cir.1994) (citing Madonna v. United States, 878 F.2d 62, 65 (2d Cir.1989); National Association of Pharmaceutical Manufacturers, Inc. v. Ayerst Laboratories, 850 F.2d 904, 909 n.2 (2d Cir.1988) (treating motion for judgment on the pleadings as if it were a motion to dismiss).

*10 A court should draw all reasonable inferences in favor of the plaintiff, and should not dismiss the complaint unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Davis v. Monroe County Board of Education, 119 S.Ct. 1661, 1676 (1999) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir.), cert. denied, 513 U.S. 816 (1994). However, a court does not have to accept as true "conclusions of law or unwarranted deductions of fact." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir.1994), cert. denied, 513 U.S. 1079 (1995) (quoting 2A Moore & Lucas, Moore's Federal Practice ¶ 12.08, at 2266-69 (2d ed.1984)).

C. THE RICO VIOLATION

Defendants move pursuant to Rule 12(b)(6) to dismiss the RICO claim on various grounds that plaintiff has not suffi- ciently pled (1) a "pattern of racketeering" by defendants, including closed-ended or open-ended continuity and the commission of at least two predicate acts by each defendant; (2) that defendants formed and participated in an enterprise for purposes of defrauding Casio; (3) the element of conspiracy under RICO; and (4) that their predicate acts of racketeering proximately caused Casio's injury.

1. Motion to Dismiss under Section 1962(c)

Casio filed its first and second claim for relief against all defendants for violation of 18 U.S.C. § 1962(c) and (d). Am. Compl. at ¶¶ 74-93. Casio's civil RICO claim alleges that defendants participated in a conspiracy and enterprise for the purpose of misappropriating $100,000,000 of Casio funds and investment proceeds. Id. at ¶¶ 67-73, 79-85.

18 U.S.C. § 1962(c) of the RICO Act provides that:
It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

To properly state a RICO claim for damages under 18 U.S.C. § 1962(c), "a plaintiff has two pleading burdens." Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir.1983), cert. denied, Moss v. Newman, 465 U.S. 1025 (1984); Vasile v. Dean Witter Reynolds, Inc., 20 F.Supp.2d 465, 483 (E.D.N.Y.1998). First, a plaintiff must establish "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate commerce or foreign commerce." Town of West Hartford v. Operation Rescue, 915 F.2d 92, 100 (2d Cir.1990), cert. denied, Syverson v. Summit Women's Center West, Inc., 510 U.S. 865 (1993); Moss, 719 F.2d at 17; Frooks v. Town of Cortlandt, 997 F.Supp. 438, 457 (S.D.N.Y.1998), judgment aff'd,-F.3d-, No. 98-7501, 1999 WL 464990 (2d Cir. June 29, 1999). Second, a plaintiff must allege he or she was "injured in his [or her] business or property by reason of a violation of section 1962." First Nationwide Bank, 27 F.3d at 767; Moss, 719

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 10

F.2d at 17.

### a. Pattern of Racketeering Activity under RICO

**\*11** All defendants argue that plaintiff has failed to provide sufficient evidence of a pattern of racketeering activity. A "pattern of racketeering activity" requires the following proof: (1) that each defendant committed at least two predicate acts of racketeering activity within a ten-year period, 18 U.S.C. § 1961(5); (2) "that these racketeering predicates are interrelated; and (3) that they reveal continued, or the threat of continued, racketeering activity." *United States v. Diaz,* 176 F.3d 52, 93 (2d Cir.1999) (citing *H.J. Inc.,* 492 U.S. at 236-39); *Azrielli v. Cohen Law Offices,* 21 F.3d 512, 520 (2d Cir.1994).

While this definition of "pattern of racketeering activity" suggests that only two predicate acts are necessary, such acts may not be sufficient. *United States v. Indelicato,* 865 F.2d 1370, 1375 (2d Cir.1989). Rather, "the requirements of relatedness and continuity prevent the application of RICO to isolated and sporadic criminal acts." *Diaz,* 176 F.3d at 93 (citing *Indelicato,* 865 F.2d at 1375-76). Thus, two isolated and separate acts of racketeering are not sufficient to constitute a "pattern." *Indelicato,* 865 F.2d at 1375-76; *see also H.J. Inc.* 492 U.S. at 239. "The target of [RICO] is ... not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective." *Indelicato,* 865 F.2d at 1376 (citing S.Rep. No. 91-617, at 158 (1969)). As a result, a plaintiff must show that the racketeering predicates are "related" and amount to or pose a threat of "continuous" criminal activity. *See H.J., Inc.,* 492 U.S. at 239-40; *GICC Capital Corp. v. Technology Finance Group, Inc.,* 67 F.3d 463, 465-66 (2d Cir.1995), *cert. denied,* 518 U.S. 1017 (1996).

### (1) Relatedness

For purposes of RICO, predicate acts are deemed "related" when they " 'have the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " *Schlaifer Nance & Co. v. Estate of Warhol,* 119 F.3d 91, 97 (2d Cir.1997) (quoting *H.J., Inc.,* 492 U.S. at 240). Defendants do not challenge whether the racketeering predicates are related; rather, they attack the sufficiency of allegations regarding the continuity necessary to establish a pattern of racketeering.

### (2) Continuity

"Continuity" may be either "closed-ended" or "open-ended," referring either to "a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc.,* 492 U.S. at 241-42; *Diaz,* 176 F.3d at 93; *Feirstein v. Nanbar Realty Corp.,* 963 F.Supp. 254-59 (S.D.N.Y.1997).

### (a) Closed-Ended Continuity

A plaintiff may demonstrate closed-ended continuity by proving "a series of related predicates extending over a substantial period of time." *H.J., Inc.,* 492 U.S. at 242; *see also Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.,* No. 96-9302, 1999 WL 565607 (2d Cir. Aug. 3, 1999); *GICC Capital Corp. v. Technology Finance Group, Inc.,* 67 F.3d 463, 466 (2d Cir.1995). Where the predicate acts alleged are not inherently unlawful acts, such as murder or obstruction of justice, courts normally require a longer span of time to satisfy the continuity requirement. *See, e.g., Renner v. Chase Manhattan Bank,* No. 98 Civ. 0926, 1999 WL 47239, at \*9 (S.D.N.Y. Feb. 3, 1999); *see also Skylon Corp. v. Guilford Mills, Inc.,* No. 93 Civ. 5581, 1997 WL 88894, at \*5 (S.D.N.Y. Mar. 3, 1997).

**\*12** The Second Circuit has found closed-ended continuity in only two cases since the Supreme Court's decision in *H.J., Inc.,* and in both cases, the alleged racketeering predicate acts extended over at least two years to constitute a "substantial period of time." *See GICC Capital Corp.,* 67 F.3d at 467-68 (citing *Metromedia Co. v. Fugazy,* 983 F.2d 350, 369 (2d Cir.1992), *cert. denied sub nom. Fugazy v. Metromedia Co.,* 508 U.S. 952 (1993); *Jacobson v. Cooper,* 882 F.2d 717, 720 (2d Cir.1989). Although there is no "bright line test" to determine what is a "substantial period of time," the Second Circuit "has never held a period of less than two years to constitute a 'substantial period of time.' " *Cofacredit, S.A.,* 1999 WL 565607; *see also GICC Capital Corp.,* 67 F.3d at 467; *Schmidt v. Fleet Bank,* 16 F.Supp.2d


340, 351 (S.D.N.Y.1998) (determining that *H.J., Inc.* implied a two-year threshold).

A scheme's duration alone, however, is not dispositive. See *Pier Connection Inc. v. Lakhani,* 907 F.Supp. 72, 78 (S.D.N.Y.1995) In determining whether close-ended continuity exists, courts have considered other factors, including "the length of time over which the alleged predicate acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes." *GICC Capital Corp.,* 67 F.3d at 467-68; see also *Renner,* 1999 WL 47239, at *8; *Schnell v. Conseco, Inc.,* 43 F.Supp.2d 438, 445 (S.D.N.Y.1999). A RICO claim will typically fail when it relies upon a defendant's "narrowly directed" actions toward "a single fraudulent end with a limited goal" lasting for a short period of time. *Continental Realty Corp. v. J.C. Penney Co.,* 729 F.Supp. 1452, 1455 (S.D.N.Y.1990).

Here, Casio argues that it has sufficiently pled closed-ended continuity to form the basis of its RICO claim. Casio alleges multiple defendants committed predicate acts as part of a complex scheme to defraud the company, beginning at least in February 1997 and extending beyond sixteen months. Defendants assert that plaintiff has insufficiently alleged closed-ended continuity.

Casio's characterization of the fraud does not withstand analysis. Casio's theory amounts to nothing more than "fragmenting [single acts] into multiple acts simply to invoke RICO." *Schlaifer Nance,* 119 F.3d at 98 (citing *Indelicato,* 865 F.2d at 1383). In examining the other relevant factors, the Court finds that the instant case involves an alleged single scheme with a single fraudulent goal of diverting funds from one victim, the plaintiff. Further, this alleged scheme was accomplished mainly by one or two individuals, with the aid of a "handful of participants" for sixteen months before such scheme was discovered by plaintiff. The transfer of Casio funds cannot be called a "multi-faceted scheme" where it involved only a limited number of participants and independent transactions occurring for less than two years. See *GICC Capital Corp.,* 67 F.3d at 466-69. Sayo was allegedly a key participant, with the assistance of Hasegawa, in all three independent misappropriations of funds belonging to Casio. Tsuru, however, was allegedly involved only in the first act of misappropriation, which lasted for a few months. CCC, Marlowe and Wolpow allegedly had no contact with Tsuru or Casio funds until about May or June of 1997. Am. Compl. at ¶¶ 35(d), (h), 37, 38. Further, these defendants as well as others took no further action and were not involved in the purported enterprise after December 1997. *Id.* at ¶ 48. Therefore, CCC, Marlowe and Wolpow allegedly were involved in the fraudulent scheme for less than seven months. A scheme which spans sixteen months does not reflect the long-term criminal conduct extending over "a substantial period of time" as prohibited by the RICO statute. Moreover, this case appears to involve only one victim and two principal actors. The Court concludes that there was no closed-ended pattern of racketeering activity.

(b) Open-Ended Continuity

*13 To establish open-ended continuity, a plaintiff must allege past criminal conduct coupled with a threat of future criminal conduct. *GICC Capital Corp.,* 67 F.3d at 466. In determining whether a threat of open-ended continuity exists, the court must look at either (1) "the nature of the predicate acts alleged" or (2) "the nature of the enterprise at whose behest the predicate acts were performed." *Id.;* see also *Schlaifer Nance,* 119 F.3d at 97. If the nature of conduct or the enterprise alone does not suggest that the racketeering activity will continue, courts must look to external factors. *GICC Capital Corp.,* 67 F.3d at 466.

To show that open-ended continuity exists, a plaintiff must allege that "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future" or "that the predicates are a regular way of conducting defendant's ongoing legitimate business." *Pier Connection,* 907 F.Supp. at 75-76 (quoting *H.J. Inc.,* 492 U.S. at 242-43); *Giannacopolous v. Credit Suisse,* 965 F.Supp. 549, 552 (S.D.N.Y.1997); *Rini v. Zwirn,* 886 F.Supp. 270, 300 (S.D.N.Y.1995). In addition, where the alleged scheme has a limited goal and is "inherently terminable," there is no open-ended continuity because no threat of continued racketeering activity exists. *Cofacredit, S.A.,* 1999 WL 565607; *China Trust Bank of New York v. Standard Chartered Bank, PLC,* 981 F.Supp. 282, 287 (S.D.N.Y.1997); *Giannacopolous,* 965 F.Supp. at 552.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 12

In the case at bar, Casio claims that it has sufficiently established open-ended continuity to satisfy the "pattern of racketeering activity" requirement under RICO. Casio argues that it would have been continuously victimized had it not uncovered the fraudulent scheme during its audit. Casio Opp. Mem. at 16. Casio further claims that the fraud continues since approximately fifty million dollars remains missing and the whereabouts of several defendants are unknown. Id. at 17. Defendants contend that there are no sufficient allegations of open-ended continuity.

The Court finds plaintiff's arguments unpersuasive. Casio's claim of open-ended continuity fails because Casio has pled no facts to demonstrate a threat that defendants' racketeering acts will continue in the future. Casio has also provided no facts to allow the Court to infer that defendants committed anything other than a single fraudulent scheme. Even if considered separately, the three fraudulent misappropriations alleged are each one-time inducements of a single victim to part with money. The Court finds that the facts alleged demonstrate but one scheme to defraud plaintiff. "[T]o infer a threat of repeated fraud from a single alleged scheme would ... render the pattern requirement meaningless." *Bernstein v. Misk,* 948 F.Supp. 228, 237 (E.D.N.Y.1997) (quoting *Continental Realty Corp.,* 729 F.Supp. at 1455).

Further, the alleged scheme here had a limited goal and was inherently terminable. When Sayo was employed by Casio, he could only obtain funds for investment purposes with Casio's authority, and he would have to request the funds. Once Sayo's position was terminated, he no longer had access to Casio's funds, and had no means of continuing the alleged predicate acts. He could not conceal for long his alleged fraudulent goal of diverting the company's funds. Therefore, the alleged criminal scheme was inherently terminable and could not continue indefinitely. Casio concedes that terminating Sayo's position also ended defendants' misappropriation of its funds. Therefore, Casio's claim of open-ended continuity fails.

*14 For the reasons stated above, Casio can establish neither open-ended nor close-ended continuity in this case. Thus, plaintiff has not sufficiently pled the "pattern of racketeering activity" requirement to sustain its RICO claim.

b. Sufficiency of the Predicate Act Allegations

To state a civil RICO claim, Casio must allege that each defendant committed at least two or more racketeering predicate acts, as defined by 18 U.S.C. § 1961(1). Casio asserts that defendants committed predicate acts of wire fraud, in violation of 18 U.S.C. §§ 1343, money laundering, in violation of 18 U.S.C. § 2314, and interstate transportation of stolen money, in violation of 18 U.S.C. § 1956.[FN18] Am. Compl. at ¶¶ 71, 81-82.

> FN18. In the Third Amended Complaint, Casio mentions that document and deposition discovery will reveal "multiple instances of mail fraud in violation of 18 U.S.C. § 1341." Am. Compl. at ¶ 71(d). However, mail fraud is not included as one of the predicate acts alleged by Casio in its first claim for relief for violation of RICO. Id. at ¶¶ 81-84.

(1) Mail and Wire Fraud

Where the alleged predicate acts involve mail and wire fraud, the allegations must satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure. *McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir.1992); see also *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989); *Schnell,* 43 F.Supp.2d at 443; *Lorentzen v. Curtis,* 18 F.Supp.2d 322, 330 (S.D.N.Y.1998). Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." To state a predicate mail and wire fraud claim under RICO, the complaint "must allege that the defendant made two predicate communications, via interstate commerce, that constitute a pattern of racketeering activity." *Sedima, S.P.L.R. v. Imrex Co.,* 473 U.S. 479, 495-96 (1985).

Accordingly, to specify fraud with particularity, and similar to allegations of securities fraud, allegations of mail and wire fraud predicate acts "should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent." Id. (citing *Official Publications, Inc. v. Kable News Co., Inc.,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)  
**(Cite as: Not Reported in F.Supp.2d)**

692 F.Supp. 239, 245 (S.D.N.Y.1988), aff'd in part, rev'd in part on other grounds, 884 F.2d 664 (2d Cir.1989); see also IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1057 (2d Cir.1993), cert. denied sub nom. Hermann v. IUE AFL-CIO Pension Fund, 513 U.S. 822 (1994) (citing Ouaknine v. MacFarlane, 897 F.2d 75, 79 (2d Cir.1990)) (plaintiff must provide specific factual evidence of the content, time, place, and speaker of each alleged mailing or wire transmission); A. Terzi Productions, Inc. v. Theatrical Protective Union, 2 F.Supp.2d 485, 499 (S.D.N.Y.1998) ("the complaint must adequately specify statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.") (quoting McLaughlin, 962 F.2d at 191). If an act of fraud is not sufficiently pled with particularity, then it may not serve as a predicate act to a RICO claim. See Thai Airways Int'l, Ltd. v. United Aviation Leasing B.V., 891 F.Supp. 113, 118 (S.D.N.Y.1994), aff'd, 59 F.3d 20 (2d Cir.1995).

*15 Allegations of mail and wire fraud must demonstrate (1) the existence of a scheme to defraud; (2) defendant's knowledge or intentional participation in such a scheme; and (3) the use of interstate mails or wires to further the fraudulent scheme. See S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir.1996) (citing United States v. Gelb, 700 F.2d 875, 879 (2d Cir.), cert. denied, 464 U.S. 853 (1983); see also United States v. Wallach, 935 F.2d 445, 461 (2d Cir.1991), cert. denied, Wallach v. United States, 508 U.S. 939 (1993); A. Terzi Productions, Inc., 2 F.Supp.2d at 499. The complaint must therefore allege the existence of a fraudulent scheme with the requisite particularity under Rule 9(b) or the allegations will not survive a motion to dismiss. A. Terzi Productions, Inc., 2 F.Supp.2d at 489; see also Morin v. Trupin, 711 F.Supp. 97, 105 (S.D.N.Y.1989) (citing River Plate Reinsurance Company, Ltd. v. Jay-Mar Group., Ltd., 588 F.Supp. 23, 27 (S.D.N.Y.1984)). " 'All of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions.' " Id. (quoting Plount v. American Home Assurance Co., Inc., 668 F.Supp. 204, 206 (S.D.N.Y.1987)).

In addition, where multiple defendants are charged with fraud, the complaint must particularize each defendant's alleged participation in the fraud. See A. Terzi Productions, Inc., 2 F.Supp.2d at 499 (citing DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir.1987)). Plaintiff must draw connections between the various defendants and the alleged acts of mail or wire fraud. See Connolly v. Havens, 763 F.Supp. 6, 13 (S.D.N.Y.1991) (citing McCoy v. Goldberg, 748 F.Supp. 146, 156 (S.D.N.Y.1990)). Plaintiff must also identify the role of the communications in furthering defendants' alleged fraudulent scheme. See McLaughlin, 962 F.2d at 191. As a result, the allegations must give notice to each defendant of its alleged misconduct. In re Blech Sec. Litig., 928 F.Supp. 1279, 1292-93 (citing Red Ball Interior Demolition Corp. v. Palmadessa, 874 F.Supp. 576, 584 (S.D.N.Y.1995)). Conclusory allegations of wrongdoing fail to satisfy the requirements set forth by Rule 9(b). Red Ball Interior Demolition Corp., 874 F.Supp. at 584.

While Casio alleges a scheme to defraud by defendants, the allegations barely demonstrate the existence of such a scheme. The allegations fail to plead a wire fraud scheme by defendants with the specificity and particularity required by Rule 9(b). Moreover, the Third Amended Complaint simply fails to provide factual evidence of defendants' knowledge or intentional participation in such a scheme, or that defendants utilized interstate wires to further the alleged fraudulent scheme.

Moreover, with the exception of defendant Sayo, the Third Amended Complaint provides no factual support to give rise to a "strong inference" of defendants' fraudulent intent. See Mills v. Polar Molecular Corp., 12 F.2d 1170, 1176 (2d Cir.1993); see also Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir.1990) (quoting Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46, 50 (2d Cir.1987), cert. denied, 484 U.S. 1005 (1988)). To establish a strong inference of scienter, a plaintiff must allege facts showing that defendants had both a motive and a clear opportunity to commit fraud. Shields v. City Trust Bancorp., 25 F.3d 1124, 1128 (2d Cir.1994). Where motive is absent, a plaintiff should allege "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.