Case 7:04-cv-08223-KMK   Document 179-6   Filed 08/11/2006   Page 1 of 14

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 14

*16 Except for Sayo, the Third Amended Complaint is deficient in failing to allege (1) actual knowledge by defendants as well as (2) plaintiff's reliance on alleged misrepresentations made by defendants. Casio also does not provide factual support to demonstrate how each wire transfer advanced the scheme to defraud. Conclusory allegations that defendants' conduct was fraudulent are inadequate to satisfy the particularity of fraud required by Rule 9(b).

Casio's allegations of wire fraud fail for lack of specificity. Except for Sayo, who purportedly falsified documents and misrepresented facts to mislead Casio, the Third Amended Complaint does not allege wire fraud with the particularity as to each defendant required by Rule 9(b). Because the Third Amended Complaint fails to state a claim under the wire fraud statute, Casio should be barred from pleading wire fraud as a predicate act in connection with the RICO claim.

(2) Money Laundering

Casio also contends that defendants engaged in the predicate act of money laundering. See 18 U.S.C. §§ 1961(1), 1956(a)(1)(B)(i). 18 U.S.C. § 1956(a)(1)(B)(i) provides, in pertinent part,
Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity-knowing that the transaction is designed in whole or in part-to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity ... shall be sentenced to a fine ... or imprisonment ... [for the laundering of monetary instruments].

To state a proper claim of money laundering, plaintiff must plead that (1) the defendant conducted a financial transaction in interstate commerce; (2) the defendant knew that the property involved in the transaction represented some form of specific unlawful conduct; (3) the transaction involves the proceeds of unlawful activity; and (4) the transaction was conducted with the purpose of concealing the nature, location, source, ownership, or the control of the illegally acquired proceeds. See Bernstein, 948 F.Supp. at 236 n.2 (citing United States v. Campbell, 777 F.Supp. 1259, 1263 (W.D.N.C.1991), aff'd in part and rev'd in part, 977 F.2d 854 (4th Cir.1992), cert. denied, 507 U.S. 938 (1993)).

Money laundering allegations that are not premised on fraud are pled under the less stringent requirements of Rule 8(a) of the Federal Rules of Civil Procedure. Madanes, 981 F.Supp. at 253 (citing Ray v. General Motors Acceptance Corp., No. 92-5043, 1995 WL 151852, at *5 (E.D.N.Y. Mar. 28, 1995); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young, No. 91 Civ. 2923, 1994 WL 88129, at *7 (S.D.N.Y.1994). While a plaintiff need not allege money laundering with great particularity, plaintiff must plead all elements of the offense. See Bernstein, 948 F.Supp. at 236 n.2.

*17 Casio asserts that it has sufficiently pled the money laundering claim according to the standard set forth by Rule 8(a)(2). Casio Opp. Mem. at 34-38. The Court disagrees. Casio has not properly pled its allegations of money laundering as to each defendant. The Third Amended Complaint merely asserts that defendants knowingly schemed to launder funds by engaging in a pattern of wire transfers to conceal the location and true owner of the missing funds. See Am. Compl. at ¶¶ 37(c), 38, 71(c), 81(c), 84.

Generally, a plaintiff must allege that a defendant knowingly utilized the proceeds of unlawful activity while conducting a transaction. Here, there were no such allegations or factual support to indicate that defendants knowingly conducted any financial transaction involving the proceeds of unlawful activity. The Third Amended Complaint simply alleges that defendants, particularly Sayo, deposited and transferred Casio funds entrusted to Sayo for the purpose of investment. Casio authorized the transfer of its funds to Sayo on all three occasions of alleged criminal conduct. Thus, there can be no transportation of stolen money if Sayo rightfully acquired the proceeds or funds belonging to Casio for investment purposes. As such, the proceeds are not the result of a form of unlawful activity.

The Third Amended Complaint does not sufficiently allege that other defendants knew they were transporting or concealing illegal funds. Most of the defendants contend that they were opening bank accounts and/or investing funds on

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 15

behalf of Casio, and it does appear that defendants were using funds to invest on behalf of Casio.

In addition, while Casio need not plead money laundering with particularity, it still must allege all significant elements of the offense. Casio has failed to do so. Although the Third Amended Complaint claims that defendants conducted a financial transaction in interstate commerce, there is no factual support to show that defendants (with the possible exception of Sayo) knew that the money involved in the transaction represented a form of specific unlawful conduct, or that the transaction involved the proceeds of unlawful activity. Further, Casio's sweeping allegations only provide conclusory statements that defendants' transactions were conducted with the purpose of concealing "the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity ...." *Id.* at ¶ 81(c).

Because Casio fails to plead money laundering with sufficient particularity to withstand defendants' motions to dismiss, it cannot allege money laundering as a predicate act for its RICO claim.

Even if the Court were to find that Casio adequately pled the elements of money laundering as a predicate act, Casio has still failed to show that each defendant committed at least two predicate acts to sustain its claim of an existing "pattern of racketeering" under RICO.

(3) Transportation of Stolen Monies in Interstate or Foreign Commerce

*18 Finally, Casio argues that defendants violated 18 U.S.C. § 2314, which provides, in relevant part, that:
Whoever transports [...] in interstate or foreign commerce any [...] money, of the value of $5000 or more, knowing the same to have been stolen, converted or taken by fraud [...] shall be fined under this title or imprisoned not more than ten years, or both.

Where a violation of Section 2314 is pleaded as a predicate act in a RICO claim, those elements which involve fraud must be pleaded with particularity. *Thai Airways Int'l, Ltd., 891 F.Supp. at 118* (citing *Attick v. Valeria Assoc., L.P., 835 F.Supp. 103, 113 (S.D.N.Y.1992)*); *see also Beverly Hills Design Studio, Inc. v. Morris, No. 88 Civ. 5886, 1989 WL 85867, at *6 (S.D.N.Y. July 26, 1989)* (although Section 2314 does not require a showing of fraud, Rule 9(b) applies because plaintiff's purported crime was committed through a 'scheme to defraud.' ").

Casio claims that defendants committed the predicate act of transportation of stolen monies in interstate and foreign commerce by transporting, transmitting and transferring via wire monies, with the knowledge that such monies had been stolen, converted or taken by fraud. Am. Compl. at ¶ 81(a).

Casio's claim involving § 2314 alleges that defendants took the money through fraudulent actions. *Id.* at ¶¶ 71, 81. Because this alleged predicate act sounds in fraud, the claim should be subject to the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Here, the funds transferred clearly belonged to Casio. However, Casio authorized Sayo to use the funds for investment purposes, and defendants claim that they were receiving instructions and investing funds on behalf of Casio.

With the exception of Sayo, Casio has failed to particularize its claim under 18 U.S.C. § 2314 as to the defendants. In addition, the factual allegations do not give rise to an inference of scienter on behalf of defendants. Plaintiff's pleading must meet the specificity required by Rule 9(b). The Complaint fails in this regard.

c. Causal Connection Between Injury and Predicate Acts

Casio argues that but for defendants' alleged fraudulent conduct, Casio would not have lost approximately one hundred million dollars. Casio Opp. Mem. to Tsuru and Wolpow, at 15.[FN19] "Any person injured in his business or property *by reason of* a violation of section 1962" can recover treble damages as well as costs of the action and reasonable attorney's fees. 18 U.S.C. § 1964(c) (*emphasis added*). To prove the requisite causal connection between the alleged criminal conduct and the plaintiff's injury, the plaintiff must show not only that the alleged RICO violation was the "but-for cause or the cause-in-fact of [plaintiff's] injury, but also that the violation was the legal or proximate cause." *Powers v. British Vita, P.L.C., 57 F.3d 176, 189 (2d Cir.1995)* (quoting *First Nationwide*, 27 F.2d at 769) (citing *Holmes v. Securit-*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 16

*ies Investor Protection Corp., 503 U.S. 258, 264-68 (1992)).* "Even if the plaintiff's injuries are factually caused by defendant's alleged RICO violations, they must be a foreseeable natural consequence sufficient for proximate causation for the imposition of liability." *Curatola v. Ruvolo,* 949 F.Supp. 223, 225 (S.D.N.Y.1997) (citing *Hecht v. Commerce Clearing House,* 897 F.2d 21, 24 (2d Cir.1990)).

> FN19. "Casio Opp. Mem. to Tsuru and Wolpow" refers to Casio's memorandum of law in opposition to motions to dismiss by defendants Tsuru and Wolpow, with accompanying declaration, dated November 6, 1998.

*19 In the present case, plaintiff alleges that defendants, particularly Sayo, fraudulently transferred a substantial amount of corporate funds, through the use of wire communications. Am. Compl. at ¶¶ 71-84. Plaintiff also alleges that Sayo and other defendants attempted to falsify records and misrepresent the transactions of Casio's funds. *Id.* at ¶¶ 25, 64-65, 68, 80.

After reviewing the record, the Court concludes that Casio has not established a sufficient link to show that its losses were caused "by reason" of defendants' alleged predicate acts in violation of RICO. Casio relies on conclusory allegations that it would not have incurred such losses but for defendants' fraudulent acts. However, only Sayo has made alleged misrepresentations to Casio. Therefore, Casio could not have relied upon any statements made by the other defendants.

Casio alleges that defendants' conduct was the "but-for cause" or the "cause-in-fact" of its injury. This allegation alone is not determinative. Casio must also demonstrate that the conduct was the legal or proximate cause of the injury. If the plaintiff's injuries are factually caused by defendant's alleged RICO violations, they must be "a foreseeable natural consequence sufficient for proximate causation" to impose liability. The Third Amended Complaint is deficient in pleading the requisite causal nexus between plaintiff's injury and the alleged criminal conduct. In citing *Hecht,* Casio merely claims that the RICO pattern or act may be deemed to have caused plaintiff's civil injury if it is a substantial factor in the chain of causation. Casio Opp. Mem. to Tsuru and Wolpow, at 15. Casio also simply states that but for defendants' fraudulent activity, Casio would not have incurred its losses. As a result, Casio has failed to demonstrate the causal nexus required; thus, the alleged acts cannot constitute the "cause" of losses suffered by Casio.

In sum, plaintiff has failed to sufficiently allege the predicate acts necessary to constitute a "pattern of racketeering activity" under RICO. Therefore, its RICO claim cannot stand.

d. The "Enterprise" Element of RICO

Casio alleges that it has properly pled the "enterprise" element in that defendants Sayo and Hasegawa formed the RICO enterprise by constituting an association-in-fact under the definition of a RICO enterprise. *See* Casio Opp. Mem. at 27-32; Am. Compl. at ¶ 78. The term "enterprise" is defined in the RICO statute as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals *associated in fact* although not a legal entity." 18 U.S.C. § 1961(4) *(emphasis added).* In pleading the element of "enterprise" under RICO, a plaintiff need satisfy only the notice pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure. *See In Re Sumitomo Copper Litigation,* 995 F.Supp. 451, 454 (S.D.N.Y.1998); *see also Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.,* 886 F.Supp. 1134, 1144-45 (S.D.N.Y.1995).

*20 The Supreme Court held that an "enterprise" represented a "group of persons associated together for a common purpose or engaging in a common course of conduct ... proved by evidence of an ongoing organization, formal or informal, and by any evidence that the various associates function as a continuing unit." *United States v. Turkette,* 452 U.S. 576, 583 (1981). "The enterprise is not the 'pattern of racketeering;' it is an entity separate and apart from the pattern of activity in which it engages." *Id.* at 583; *see also Schmidt,* 16 F.Supp.2d at 348; *Moll v. U.S. Life Title Ins. Co. of N.Y.,* 654 F.Supp. 1012, 1031-32 (S.D.N.Y.1987) (for an association of individuals to constitute an enterprise, the individuals must "share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes.") As a result, for purposes of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 17

1962(c), the alleged racketeering enterprise must be distinct from the persons who participate in it. *Bernstein,* 948 F.Supp. at 235 (citing *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344 (2d Cir.1994)).

In *Schmidt,* the plaintiff alleged the RICO enterprise to be an association-in-fact, rather than a legal entity. 16 F.Supp.2d at 349. "The existence of an association-in-fact is oftentimes more readily proven by 'what it does, rather than by abstract analysis of its structure.' " *Schmidt,* 16 F.Supp.2d at 349 (quoting *United States v. Coonan,* 938 F.2d 1553, 1559 (2d Cir.1991)).

Similarly, Casio alleges that Sayo and Hasegawa formed an association-in-fact, but provides only conclusory allegations as to the other defendants and their participation in the affairs of the alleged enterprise. Am. Compl. at ¶¶ 78-79; *see also* Casio Opp. Mem. to Tsuru and Wolpow, at 6. No facts in the Third Amended Complaint sufficiently plead that the group of individuals here functioned as a "unit." *Schmidt,* 16 F.Supp.2d at 349 ("in determining whether the members of a purported association-in-fact functioned as a unit, the Second Circuit looks to the 'hierarchy, organization, and activities' of the association.") (quoting *First Nationwide Bank,* 820 F.Supp. at 98).

Moreover, the Third Amended Complaint also fails to allege sufficient facts to demonstrate an enterprise which exists as a continuous structure separate and distinct from the commission of the predicate acts alleged. *Schmidt,* 16 F.Supp.2d at 350. In this case, there is insufficient evidence to demonstrate an organized group with a chain of command directing the enterprise's actions on a continuing basis beyond the alleged fraudulent scheme. *See Ray v. Gen. Motors Acceptance Corp.,* 1995 WL 151852, at *3 (S.D.N.Y. Mar. 28, 1995). Although the Third Amended Complaint describes the roles allegedly played by various defendants, or members of the enterprise, it fails to explain the members' coordinated roles in the enterprise or the interrelationship of the members' actions.

*21 Thus, there is insufficient evidence to prove that the enterprise in this case would still exist if the "predicate acts [were] removed from the equation." *Bernstein,* 948 F.Supp. at 235; *First Nationwide,* 820 F.Supp. at 28. In short, the enterprise in this case would likely not have existed were the predicate acts removed from the equation. Therefore, the plaintiff has failed to establish the existence of a RICO enterprise among all defendants.

e. Operation or Management of the Enterprise and/or Participation

Under Section 1962(c), it is unlawful "for any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...." *Reves v. Ernst & Young,* 507 U.S. 170, 177 (1993). To "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have played a part in directing those affairs. [FN20] *Id.* at 179. As a result, a party is not liable under 18 U.S.C. § 1962(c) unless such party participated "in the operation or management of the enterprise itself." *Id.* at 185. "As interpreted by courts in this district and others, the 'operation and management' test set forth in *Reves* ... is a very difficult test to satisfy." *LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.,* 951 F.Supp. 1071, 1090 (S.D.N.Y.1996). The ruling in *Reves* spares from RICO liability those who are true "outsiders" of an alleged enterprise. *See Dep't of Econ. Dev. v. Arthur Andersen & Co.,* 924 F.Supp. 449, 465 (S.D.N.Y.1996); *Amalgamated Bank of New York v. Marsh,* 823 F.Supp. 209, 219-20 (S.D.N.Y.1993); *Morin v. Trupin,* 832 F.Supp. 93, 98 (S.D.N.Y.1993).

> FN20. The *Reves* Court also stated that "the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs ... [and that] "liability under § 1962(c) is not limited to upper management ...." 507 U.S. at 179, 184; *see also United States v. Miller,* 116 F.3d 641, 671 (2d Cir.1997), *cert. denied, Miller v. U.S.* 118 S.Ct. 2063, and *cert. denied, Arroyo v. United States,* 118 S.Ct. 2063.

In this Circuit, the "simple taking of directions and performance of tasks that are 'necessary and helpful' to the enterprise, without more, is insufficient to bring a defendant within the scope of § 1962(c)." *United States v. Viola,* 35

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 18

F.3d 37, 41 (2d Cir.1994). There is a great difference between having actual control over an enterprise and associating with an enterprise in ways that do not involve control. The former would result in liability under Section 1962(c); the latter would not. Dep't of Econ. Dev., 924 F.Supp. at 466 ("providing important services to a racketeering enterprise is not the same as directing the affairs of an enterprise."); see also Friedman v. Hartmann, No. 91 Civ. 1523, 1996 WL 457300, at 5 (S.D.N.Y. Aug. 13, 1996) (citing Biofeedtrac, Inc. v. Kolinor Optical Enterprises & Consultants, S.R.L., 832 F.Supp. 585, 591 (E.D.N.Y.1993) (dismissing RICO claim against an attorney whose role was limited to providing legal advice and services and whose substantial involvement did not constitute "operation and management.").

Thus, "[s]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result." LaSalle Nat'l Bank, 951 F.Supp. at 1090 (quoting University of Md. v. Peat, Marwick, Main & Co., 996 F.2d 1534, 1539 (3d Cir.1993); see also Morin v. Trupin, 835 F.Supp. 126, 135 (S.D.N.Y.1993).

*22 With the exception of Sayo, the Third Amended Complaint fails to allege that defendants were in charge of decision-making for the enterprise or that they directed the affairs of the enterprise. The allegations indicate that most of the defendants merely received orders to invest Casio funds on behalf of the company or assisted defendant Sayo in investing funds entrusted to him by Casio. Moreover, certain defendants opened and handled accounts in the name of Casio and transferred funds received by them as Casio's money. Accordingly, the Court finds that no allegations sufficient to conclude that defendants (except Sayo) played any role in directing the affairs of the purported enterprise.

In conclusion, Casio has failed to sufficiently allege the necessary elements of a RICO claim under Section 1962(c).

2. Motion to Dismiss under Section 1962(d)-RICO Conspiracy

Casio relies on the same factual allegations that form the basis for its Section 1962(c) claim for its assertion of a RICO conspiracy claim under Section 1962(d). Am. Compl. at ¶¶ 86-93. In its second claim for relief, Casio argues that defendants have violated Section 1962(d) by conspiring to violate Section 1962(c). Id.

"[T]he core of a RICO civil conspiracy is an agreement to commit predicate acts" in violation of 18 U.S.C. § 1962(a),[FN21] (b),[FN22] or (c). Hecht, 897 F.2d at 25. "[T]he commission of the acts is distinct from an agreement to commit them, and a violation of § 1962(d) requires different proof from a violation of § 1962(c)." American Arbitration Ass'n, Inc. v. DeFonseca, No. 93 Civ. 2424, 1996 WL 363128, at *7 (S.D.N.Y. June 28, 1996); United States v. Bonanno, 683 F.Supp. 1411, 1440 (S.D.N.Y.1988), aff'd, 879 F.2d 20 (2d Cir.1989). Therefore, the complaint must allege a conscious agreement among all defendants to commit at least two predicate acts. Bonanno, 683 F.Supp. at 1440; see also Black Radio Network, Inc. v. NYNEX Corp., 44 F.Supp.2d 565, 581 (S.D.N.Y.1999) (citing Hecht, 897 F.2d at 25); Naso v. Park, 850 F.Supp. 264, 275 (S.D.N.Y.1994). Conclusory allegations of agreement are insufficient. See, e.g., Morin, 711 F.Supp. at 111; Black Radio Network, Inc., 44 F.Supp.2d at 581.

> FN21. Section 1962(a) makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity [...] to use or invest [...] such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in [...] interstate or foreign commerce." 18 U.S.C. § 1962(a).

> FN22. Section 1962(b) makes it "unlawful for any person through a pattern of racketeering activity [...] to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b).

The Third Amended Complaint at bar does not make specific factual allegations required for the Court to conclude that defendants consciously agreed to become part of a RICO conspiracy and commit the necessary predicate acts of racketeering. Casio fails to provide factual support to show that defendants committed the predicate acts with the requisite

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK    Document 179-6    Filed 08/11/2006    Page 6 of 14

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 19

knowledge of the purpose of the enterprise and with the intent to further its alleged goals. *See Naso,* 850 F.Supp. at 275. The facts asserted do not indicate that defendants "manifested a conscious agreement to commit predicate acts in furtherance of the common purpose of the RICO enterprise," *American Arbitration Ass'n, Inc.,* 1996 WL 363128, at *7, or "understood the scope of the enterprise ...." *Morin,* 711 F.Supp. at 111.

**\*23** Moreover, the Third Amended Complaint only sets forth conclusory allegations of conspiracy among defendants without pleading facts sufficient to support such allegations. The purported activities of defendants do not necessarily lead to the existence of an agreement to conspire, and the allegations do not explain the nature of the relationship between Sayo and the moving defendants (except for Hasegawa), nor how and under what conditions Sayo went about enlisting defendants' assistance. Casio fails to allege adequate facts to bolster its conspiracy claim, and does not plead the facts necessary to indicate that defendants, by their words or actions, had a conscious agreement to commit predicate acts in furtherance of the common goal of the enterprise. For these reasons, I find that the Third Amended Complaint fails to state a RICO conspiracy claim under Section 1962(d) against the moving defendants.

Further, because the Court finds that Casio's substantive RICO claim is deficient, the conspiracy claim must also fail. *Black Radio Network, Inc.,* 44 F.Supp.2d at 581; *McCormack Int'l Corp. v. Vohra,* 858 F.Supp. 415, 423 (S.D.N.Y.1994); *Schmidt,* 16 F.Supp.2d at 353. Where no cause of action for substantive violations of RICO is stated, the RICO conspiracy claim cannot stand because it will not constitute a conspiracy to commit such violations. *Black Radio Network, Inc.,* 44 F.Supp.2d at 581.

Accordingly, the RICO conspiracy claim should be DISMISSED.

### D. LACK OF PERSONAL JURISDICTION, INSUFFICIENCY OF PROCESS and/or SERVICE OF PROCESS

Defendants Hasegawa, Tsuru, CCC, Marlowe, and Wolpow move to dismiss the Complaint for lack of personal jurisdiction, insufficient process and/or service of process.

#### 1. Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2) and the RICO Statute

A plaintiff must affirmatively make a prima facie showing, by its pleadings and affidavits, to support a basis of personal jurisdiction over a defendant. *See Ball v. Metallurgie Hoboken-Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.), cert. denied, 498 U.S. 854 (1990); *see also A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76 (2d Cir.1993). In a Rule 12(b)(2) motion, plaintiff's factual allegations are assumed to be true, and all pleadings and affidavits are construed in favor of the plaintiff. *North South Finance Corp. v. Al-Turki,* No. 93 Civ. 2133, 1996 WL 50526, at *5 (S.D.N.Y. Feb. 8, 1996) (citing *CutCo Indus. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986)). Service of a summons is effective to establish jurisdiction over a defendant when authorized by a statute of the United States. Rule 4(k)(1)(D), Fed.R.Civ.P. The RICO statute confers personal jurisdiction by Section 1965(a)-(d), which authorizes nationwide service of process, but does not provide for service concerning foreign defendants. *Biofeedtrac, Inc. v. Kolinor Optical Enterprises & Consultants, S.R.L.,* 817 F.Supp. 326, 331-32 (E.D.N.Y.1993).

**\*24** Section 1965 provides, in relevant part,
(a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.
(b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that *the ends of justice require* that other parties residing in any other district be brought before the court, the court may cause such parties to be *summoned,* and process for that purpose may be served in any judicial district of the United States by marshal thereof.
(c) In any civil... action... instituted ... under this chapter in the district court of the United States for any judicial district, subpoenas issued by such court to compel the attendance of witnesses may be served in any other judicial district....
(d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 20

transacts his affairs.

18 U.S.C. § 1965(a)-(d) (*emphasis added*).

This Circuit has concluded that Section 1965(b), and not Section 1965(d), governs the court's exercise of personal jurisdiction under RICO. *PT United Can Co., Ltd, v. Crown Cork & Seal Co., Inc.,* 138 F.3d 65, 70 (2d Cir.1998). Section 1965(b) permits a district court to exercise nationwide jurisdiction over a defendant, not automatically, but only when "the ends of justice so require." *Id.* at 71. Nationwide service is appropriate "only when no one judicial district could exercise personal jurisdiction over all of the defendants and thus, without such exercise of jurisdiction, all of the members of a nationwide RICO conspiracy could not be tried in one action." *PT United Can Co., Ltd. v. Crown Cork & Seal Co., Inc.,* No. 96 Civ. 3669, 1997 WL 31194, at *3 (S.D.N.Y. Jan. 28, 1997), *aff'd,* 138 F.3d 65 (1998). While it may be necessary to prosecute a civil RICO action in a court "foreign" to some defendants if necessary, the "first preference ... is to bring the action where suits are normally expected to be brought." *PT United Can Co., Ltd.,* 138 F.3d at 71-72.

To satisfy due process requirements for personal jurisdiction, a defendant must have had "minimum contacts" with the forum state. *See International Shoe v. Washington,* 326 U.S. 310, 316 (1945). Under the "minimum contacts" test, there must have been sufficient contacts such that defendants would have availed themselves of the privileges arising therein, *Hanson v. Denckla,* 357 U.S. 235, 253 (1958), and that the exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." *Milliken v. Meyer,* 311 U.S. 457, 462-64 (1940). However, under RICO, where nationwide service of process is authorized, due process requirements are satisfied if defendants' contacts with the United States, and not just the forum state, satisfy the "minimum contacts" test. *See Mariash v. Morrill,* 496 F.2d 1138, 1143 (2d Cir.1974); *Herbstein v. Bruetman,* 768 F.Supp. 79, 81 (S.D.N.Y.1991).

*25 "Minimum contacts" may be proven by showing that defendant is (1) doing business in the United States; (2) performing an act in the United States; or (3) causing an effect in the United States by performing an act elsewhere. *Nagoya Venture Ltd. v. Bacopulos,* No. 96 Civ. 9317, 1998 WL 307079, at *4 (S.D.N.Y. June 11, 1998). As to the third test, it is not sufficient that an injury be generally foreseeable. "[T]he foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

Defendants Hasegawa, CCC, Marlowe and Wolpow move to dismiss the Third Amended Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. In the instant action, the factual allegations do not establish conduct by defendants and connection to the United States such that defendants could reasonably anticipate being haled into court here. Casio argues that the Court has personal jurisdiction over all defendants for all claims pleaded in the complaint because Casio has pled a proper RICO claim. Casio Opp. Mem. to Tsuru and Wolpow, at 16. Casio further alleges that, under 18 U.S.C. § 1965(b) and (d) of the RICO statute, the Court has personal jurisdiction over the domestic defendants because RICO allows nationwide service of process on such defendants. As a result, Casio claims that, once defendants are served with process, the Court can automatically exercise personal jurisdiction over said defendants if due process requirements are also met. *See PT United Can Co., Ltd.,* 138 F.3d at 71; *Herbstein,* 768 F.Supp. at 81. Additionally, Casio argues that defendants have minimum contacts with the United States. Casio Opp. Mem. at 17.

Defendants contend that Casio's grounds for personal jurisdiction are based solely upon its federal law claim, which should be dismissed. Marlowe Mem. at 15-16, Wolpow Decl. at 3. Defendant Hasegawa claims that the Court lacks personal jurisdiction over him because, although Casio did cure its defect by serving a summons with the Second Amended Complaint, it failed to properly serve process upon Hasegawa in Japan consistent with the rules of service set forth by the Hague Convention. Hasegawa Mem. at 4; *see also* Hasegawa Reply Mem. at 2.

Defendants CCC and Marlowe challenge Casio's attempt to assert personal jurisdiction over them by relying upon plaintiff's failure to plead a RICO claim and invoke the RICO statute for nationwide service of process. Marlowe

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 21

Mem. at 16. CCC and Marlowe argue that Casio's RICO claim is baseless; thus, Casio's grounds for personal jurisdiction under the RICO Act should be dismissed.

Defendant Wolpow also opposes Casio's assertion of personal jurisdiction over him by way of the RICO claim. Wolpow Decl. at 3. Wolpow adopts arguments by CCC and Marlowe regarding Casio's failure to plead a sufficient RICO claim. Wolpow Decl. at 2. Wolpow adds that he is not a resident of New York, does not regularly operate or perform business activities in New York, and has never maintained a bank account in New York. Id.

*26 With respect to defendants Sayo, Hasegawa, and Tsuru, Casio alleges that subsection (b) and (d) of Section 1965 confer personal jurisdiction upon them because these defendants have had contacts with New York that satisfy the minimum contacts requirement. Casio Opp. Mem. to Tsuru and Wolpow, at 17. Specifically, Casio alleges that the defendants either reside in New York or opened bank accounts in the State of New York and wire transferred funds to, from, or through New York. Id.

The Court concludes that there is no personal jurisdiction over these defendants. Casio's assertions are insufficient to demonstrate that defendants have had minimum contacts in New York so that they would reasonably anticipate being haled into court here. Although certain defendants conduct business in the United States, and the wire transfers reached bank accounts in the United States, such conduct by defendants does not satisfy the level of minimum contacts required to assert personal jurisdiction over them. As a result, Casio's allegations fail to satisfy the due process requirement of "minimum contacts" as to each and every defendant.

Further, § 1965(b) permits a district court to exercise nationwide jurisdiction over a defendant only when "the ends of justice require." Id. at 71. Because the Court has determined that plaintiff's RICO claim is fatal, the "ends of justice" do not mandate the exercise of national jurisdiction over defendants in the instant action. The Court recommends dismissal of the action because it lacks personal jurisdiction over defendants.

2. Insufficient Process and/or Service of Process Pursuant to Rule 12(b)(4) and (5)

Defendants CCC, Marlowe, Wolpow,[FN23] Tsuru,[FN24] and Hasegawa have moved pursuant to Rules 12(b)(4) and (5) of the Federal Rules of Civil Procedure to dismiss the claims against them for insufficient process and/or service of process. Defendants allege that there was insufficient process and/or service of process because Casio first served upon them a copy of the Second Amended Complaint without a summons, and then served them an Order to Show Cause in lieu of the summons.

> FN23. In adopting CCC and Marlowe's arguments in their motion to dismiss, Wolpow asserts that he moves to dismiss pursuant to Rules 12(b)(4) and (5) of the Federal Rules of Civil Procedure. However, he neither provides an argument nor discusses the issue regarding insufficiency of process and/or service of process. Thus, the Court cannot address this claim by Wolpow.
>
> FN24. Since defendant Tsuru does not provide an argument or adopt other defendants' arguments on insufficient service of process, but instead challenges the sufficiency of process, it is possible that he intended to move to dismiss pursuant to Rule 12(b)(4) for insufficient process rather than to dismiss pursuant to Rule 12(b)(5) for insufficient service of process.

Defendants Marlowe and Hasegawa also allege other reasons for insufficient service of process pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure. Marlowe argues that Casio did not serve her at the proper address. Hasegawa claims that Casio failed to properly serve him process in Japan in accordance with the requirements of the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters. He contends that service via mail is not permitted, and even if permitted, service via overnight courier is not sufficient for "service by mail."

To constitute sufficient process and give adequate notice, a summons must contain specific information and be signed by the clerk of the court. Fed.R.Civ.P. 4(a). Equally import-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK   Document 179-6   Filed 08/11/2006   Page 9 of 14

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 22

ant, Rule 4(c) provides that "[a] summons shall be served together with a copy of the complaint." Fed.R.Civ.P. 4(c)(1). A federal court cannot exercise personal jurisdiction over defendants who are improperly served. Because valid service of process is a prerequisite to the court's exercise of personal jurisdiction, see *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.* 484 U.S. 97, 103 (1987), a foreign party against whom a RICO claim is asserted must be served with process in this country. See *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.,* 26 F.Supp.2d 593, 600 (S.D.N.Y.1998).

*27 Rule 4(e) governs service upon individuals within the United States, and provides, in pertinent part, that "service upon an individual from whom a waiver has not been obtained and filed ... may be effected by ... in the United States ... (2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode ... or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process." Fed.R.Civ.P. 4(e)(2). Rule 4 of the Federal Rules of Civil Procedure has often been construed liberally with respect to service of process. "[W]hen a defendant receives actual notice of a lawsuit brought against him, technical imperfections with service will rarely invalidate the service." *Maruzen Intern., Co. Ltd. v. Bridgeport Merchandise, Inc.,* 770 F.Supp. 155 (S.D.N.Y.1991). Under New York state law, service upon an individual is governed by CPLR 308.

Rule 4(f) governs service upon individuals in a foreign country, and where there is a treaty with a foreign nation, service must be effected "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed.R.Civ.P. 4(f)(1).

In the present action, Casio claims that the Order to Show Cause served upon defendants contained the essential requisites necessary to constitute a proper summons under Rule 4(a) of the Federal Rules of Civil Procedure. See Casio Opp. Mem. at 45. Nonetheless, the issue regarding insufficient process raised by defendants CCC, Marlowe and Tsuru, is moot. The fact that Casio served an Order to Show Cause in lieu of a summons with the complaint does not warrant dismissal if defendants received actual notice of a lawsuit brought against them. Further, even if the Court determined that the Order to Show Cause was insufficient to constitute a summons, the Court finds that Casio cured its defects when it later served a summons with the Second Amended Complaint upon said defendants. As a result, the Court recommends that defendants' motions to dismiss pursuant to Rule 12(b)(4) of the Federal Rules of Civil Procedure be DENIED.

With respect to the issue involving insufficiency of service of process, Casio asserts that it served Hasegawa with the Order to Show Cause with Temporary Restraints dated May 27, 1998. See Mintz Decl., Exh. 7, ¶ 3. On July 31, 1998, Casio served a summons and complaint via first-class mail, to Hasegawa's last known addresses in Tokyo, Japan. Mintz Decl., Exh. 6, ¶ 2. On that same date, Casio then served CCC with a summons and complaint via first-class mail and federal express mail to its last known addresses in Barbados. Mintz. Decl., Exh. 6, ¶ 4. Casio states that it personally served Tsuru on August 22, 1998, with a summons and complaint, and the Order granting preliminary injunction. See Casio Opp. Mem. to Tsuru and Wolpow, Exh. A. Finally, on August 24, 1998, Casio served a summons and complaint to Marlowe via process server at her last known address. Mintz Decl., Exh. 6, ¶ 3.

*28 Upon review of the evidence, the Court finds that there was sufficient service of process because Casio properly served a summons and complaint upon said defendants. Thus, the Court recommends that motions to dismiss by defendants pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure br DENIED. However, the Court concludes that Casio did not properly effect service of process upon Hasegawa in accordance with the Hague Convention as required under Rule 4(f)(1) of the Federal Rules of Civil Procedure. Casio utilized service by overnight courier, and Japan does not permit service of process to be made by postal channels. Thus, Casio did not appropriately serve defendant Hasegawa under the Hague Convention.

Under the Hague Convention,[FN25] Article 10 allows for service of process by mail.[FN26] However, some signatories

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK   Document 179-6   Filed 08/11/2006   Page 10 of 14

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 23

to the Convention have "opted-out" of, or objected to, the provisions permitting service of process by mail.[FN27] Japan is one such signatory which does not permit service of process by mail.[FN28] See *Charas*, 1992 WL 296406, at *2; *Fitzgibbon v. Sanyo Securities America, Inc.*, No. 92 Civ. 2818, 1994 WL 281928, at *9 (S.D.N.Y.1994).

> FN25. The Hague Convention requires each signatory country to create a central authority to receive requests for service of judicial documents. See *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988).
>
> FN26. Specifically, Article 10(a) sets forth a method for sending judicial documents abroad after service of process has been effected "by means of a central authority." *Charas v. Sand Technology Systems, Int'l, Inc.*, No. 90 Civ. 5638, 1992 WL 296406, at *2 (S.D.N.Y.1992) (quoting *Bankston v. Toyota Motor Corp.*, 889 F.2d 172, 174 (8th Cir.1989)).
>
> FN27. Where there are no internationally agreed means of service or the applicable international agreement permits other means of service, other alternative methods may work, provided that service under such methods "is reasonably calculated to give notice." Fed.R.Civ.P. 4(f)(2).
>
> FN28. Japan has specifically objected to Articles 10(b) and (c), which authorize different methods of service, but has not objected to Article 10(a). Hague Convention, 28 U.S.C.A. Fed.R.Civ.P. 4, at 130 n. 17. Courts in this District have held that service of process in Japan cannot be effected by mail even though Japan has not objected to Article 10(a). See *Fitzgibbon*, 1994 WL 281928, at *8; *Charas*, 1992 WL 296406, at *2 (determining that Japan did not intend to authorize service of process of mail although there was no objection to Article 10(a) of the Hague Convention).

Casio relies on cases such as *Ackermann v. Levine*, 788 F.2d 830, 839 (2d Cir.1986), to support its contention that service of process by mail is proper under the Hague Convention here. Casio's reliance is misplaced. In *Ackermann*, the Second Circuit held that service of process by registered mail to commence a lawsuit in West Germany was proper service in the United States under the Convention because the United States *does* permit service by mail. However, this case is distinguishable because Japan does not allow service of process via mail.

Casio was required to serve process in accordance with the Hague Convention, and failed to do so. Accordingly, the Court finds that service of process was improper and recommends that defendant Hasegawa's motion to dismiss pursuant to Rule 12(b)(5) be GRANTED.

E. LACK OF SUPPLEMENTAL JURISDICTION

Casio asserts that this Court has supplemental jurisdiction over its state law claims: (1) conversion; (2) civil conspiracy; (3) breach and participation in a breach of fiduciary duty; (4) negligence; (5) unjust enrichment; (6) common law fraud as against Sayo; and (7) the imposition of a constructive trust on Casio funds received by defendants.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action ... that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Claims form part of the same case or controversy when they "derive from a common nucleus of operative fact." *Abrams v. Terry*, 45 F.3d 17, 23 n.7 (2d Cir.1995) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)).

*29 Supplemental jurisdiction is left to the sound discretion of the district courts. See *Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 105 (2d Cir.1998) (citing *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir.1994)); *ABF Capital Management v. Askin Capital Management*, 957 F.Supp. 1038, 1322-23 (S.D.N.Y.1997). The district courts may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). A district court will weigh and balance certain factors, including considerations of judicial convenience, economy and fairness to the litigants. See

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK   Document 179-6   Filed 08/11/2006   Page 11 of 14

Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 24
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

*Ametex Fabrics, Inc.*, 140 F.3d at 105 (citing *Purgess*, 33 F.3d at 138). Where the federal law claims are dismissed before trial, the balance of factors tilts in favor of declining supplemental jurisdiction over the remaining state law claims. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Pollack v. Nash*, No. 98 Civ. 6599, 1999 WL 556992, at *8 (S.D.N.Y. July 30, 1999) (citing *Castellano v. Board of Trustees, et al.*, 937 F.2d 752, 758 (2d Cir.1991)).

This case presents no reason to depart from this general rule. The parties have conducted very little discovery. Indeed, there is a stay of discovery, except for discovery proceedings which might assist in locating funds which are still missing. Accordingly, the remaining state law claims should be dismissed without prejudice.

Because I have concluded that Casio's federal law claim under RICO should be dismissed at this stage, and Casio has no other ground for federal jurisdiction, I recommend that the Court not exercise supplemental jurisdiction over the remaining state law claims.

### F. IMPROPER VENUE PURSUANT TO RULE 12(b)(3)

Defendants CCC, Marlowe and Wolpow move to dismiss the Third Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(3) for improper venue. Marlowe claims that she is not a citizen of New York, but maintains an office in the Chicago area. Marlowe Mem. at 17. She alleges that Casio has not shown that a substantial part of the events giving rise to claims asserted against her occurred in this District. *Id.* Wolpow adopts CCC and Marlowe's argument on this issue. Wolpow Mot. at 2. He contends that he does not regularly transact business in, or maintain an office in, or have any representation in New York. Wolpow Decl. at 2. He further contends that he is not a resident of New York, and does not operate any company in New York. *Id.*

The general venue statute under 28 U.S.C. § 1391 states, in pertinent part, that:
[An action may] "be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ... or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

*30 A civil RICO action or proceeding against an individual may proceed in the district court of the United States for any district in which such individual resides, has an agent, is found, or transacts his affairs. 18 U.S.C. § 1965(a). The purpose of venue is to protect defendants by preventing plaintiffs from selecting an unfair or inconvenient place of trial. See *Cobra Partners, L.P. v. Liegl*, 990 F.Supp. 332, 334 (S.D.N.Y.1998) (citing *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183-84 (1979)).

The Third Amended Complaint alleges that venue is proper in this district under 28 U.S.C. § 1391(b) and (d) because certain defendants are residents of, or have agent(s) in, or transact their affairs in, this district, and because a substantial part of the events or omissions giving rise to the claims arose here. Am. Compl. at ¶ 5. It also alleges that certain defendants are aliens and may be sued in any district, and defendants can be sued under the co-conspirator theory of venue pursuant to 18 U.S.C. § 1965(a). *Id.*

Many documents and witnesses are located in Japan. An injunction has been issued to freeze assets located in the United Kingdom. It is difficult to trace where the substantial part of the events giving rise to the claims occurred, but the balance of convenience weighs heavily in favor of an alternate forum. Moreover, the allegations do not sufficiently plead that defendants CCC, Marlowe and Wolpow are residents of, or have agent(s) in, or transact their affairs, in this district. Therefore, it appears that venue is improper here.

Nevertheless, the Court need not reach the issue of venue because it recommends dismissal of Casio's action against defendants for failure to state a RICO claim.

### G. DISMISSAL UNDER THE DOCTRINE OF FORUM NON CONVENIENS

The doctrine of *forum non conveniens* gives the court discretion to dismiss a case even if the "court is a permissible venue with proper jurisdiction over the claim." *PT United Can Co., Ltd.*, 138 F.3d at 73. The court has discretionary power to determine where the litigation would best serve the

Case 7:04-cv-08223-KMK    Document 179-6    Filed 08/11/2006    Page 12 of 14

Not Reported in F.Supp.2d                                                                                                                          Page 25
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

convenience of the parties and the ends of justice. *Jota v. Texaco, Inc.,* 157 F.3d 153, 159 (2d Cir.1998) (citing *PT United Can Co., Ltd.,* 138 F.3d at 73; *see also Mendes Jr. Intern. Co. v. Banco Do Brazil, S.A.,* 15 F.Supp.2d 332, 337 (S.D.N.Y.1998). The analysis focuses upon three main factors: (1) the availability of an adequate alternative forum, (2) the private interests of the parties, and (3) the public interest in the forum selection. *Id.* Generally, the plaintiff's choice of forum should not be disturbed. However, where a foreign plaintiff is involved, its choice of forum warrants less deference. *Murray v. British Broadcasting Corp.,* 81 F.3d 287, 290 (2d Cir.1996) (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255-56 (1981)). The court must also satisfy itself that the alternative forum will provide a remedy for the plaintiff's claim. *See Piper Aircraft Co.,* 454 U.S. at 254.

**\*31** There is a two-step inquiry in deciding whether to grant a motion to dismiss on the doctrine of *forum non conveniens. PT United Can Co., Ltd.,* 138 F.3d at 73. First, the court must look at whether an adequate alternative forum exists to conduct the litigation elsewhere against all defendants. *Jota,* 157 F.3d at 159 (citing *PT United Can Co., Ltd.,* 138 F.3d at 73). If the court finds an adequate alternative forum, then the court must assess the private and public interest factors set forth by the Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508-09 (1947); *Alfadda v. Fenn,* 159 F.3d 41, 45-46 (2d Cir.1998). The private interest factors include access to sources of proof, the location of parties, the cost of obtaining willing witnesses, the availability of compulsory process for unwilling witnesses, as well as other practical concerns. *Gulf Oil Corp.,* 330 U.S. at 508-09; *see also Boosey & Hawkes Music Publishers, Ltd. v. The Walt Disney Co.,* 145 F.3d 481, 481 (2d Cir.1998). The public interest factors involve court congestion, other forums' interests in deciding local disputes, and interest in issues of foreign law to be decided by foreign tribunals. *PT United Can Co., Ltd.,* 138 F.3d at 74 (citing *Gulf Oil Corp.,* 330 U.S. at 508-09). To prevail on the motion to dismiss, defendants must show that the balance of private and public factors weigh in favor of the foreign forum. *Id.* (citing *R. Maganal & Co. v. M.G. Chemical Co., Inc.,* 942 F.2d 164, 167 (2d Cir.1991)).

Defendants Hasegawa and Tsuru request that the Court dismiss this action because Casio has brought alternate actions in Japan and in the United Kingdom. Hasegawa Mem. at 12, Tsuru Mem. at 15. In addition, they assert that Casio is a Japanese corporation organized under the laws of Japan, and that the alleged main perpetrators are Japanese nationals. Hasegawa Mem. at 16, Tsuru Mem. at 2. Casio concedes that the United Kingdom is an adequate alternative forum for freezing certain assets. Casio Opp. Mem. at 53.

Balancing the factors stated, the Court finds that there is an alternative forum and it would be more convenient for the parties to litigate in such a forum. Having applied the analysis set forth above, and having found that an adequate alternative forum exists, the Court recommends that this action be DISMISSED on the grounds of *forum non conveniens.*

## V. CONCLUSION

For the foregoing reasons, the Court recommends that defendants' motions to dismiss the Third Amended Complaint pursuant to Rule 12(b)(6) (and Rule 9(b) by Sayo for failure to plead the predicate act of wire fraud with particularity) of the Federal Rules of Civil Procedure be granted for failure to state a RICO claim. Because the Court concludes that Casio has failed to properly plead a RICO claim against all defendants, the Court also recommends that defendants' motions to dismiss be granted pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. Therefore, the Court further recommends that supplemental jurisdiction should not be exercised over Casio's state law claims.

**\*32** In addition, the Court also recommends that defendants' motions to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction be granted, that defendants' motions to dismiss pursuant to Rule 12(b)(4) and 12(b)(5) for insufficient process and/or service of process be denied, and that defendant Hasegawa's motion to dismiss pursuant to Rule 12(b)(5) for improper service of process, be granted. The Court concludes that the issue of venue pursuant to Rule 12(b)(3) need not be reached at this point. The Court further recommends dismissal of the action based upon the doctrine of *forum non conveniens.* In conclusion, the Court recommends that plaintiff's motion to disqualify Jacques L.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 26

Debrot, attorney for defendant Hasegawa, be dismissed as moot upon dismissal of the action.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Whitman Knapp, 40 Centre Street, Room 1201, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 150 (1985); Small v. Secretary of Health and Human Services, 892 F.2d 15, 16 (2d Cir.1989) (per curiam ); 28 U.S.C. § 636(b)(1) (West Supp.1995); Fed.R.Civ.P. 72, 6(a), 6(e).

S.D.N.Y.,2000.
Casio Computer Co., Ltd. v. Sayo
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1999 WL 33885629 (Trial Motion, Memorandum and Affidavit) Memorandum of Defendants Joanne Marlowe and Charivari Capital Corporation in Response to Plaintiff's Objections to the Report and Recommendation of the Magistrate (Nov. 05, 1999)
• 1999 WL 33885628 (Trial Motion, Memorandum and Affidavit) Memorandum of Defendants Joanne Marlowe and Charivari Capital Corporation in Further Support of Their Cross-Motion to Modify the Preliminary Injunction (Sep. 24, 1999)
• 1999 WL 33885627 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Casio Computer Co., Ltd. in Furtier Support of Its Motion to Hold Defendant Joanne Noren, a/k/a "Joannne M. Marlowe", in Contempt and in Opposition to Noren's Cross Motion to Modify the Preliminary Injunction (Sep. 17, 1999)
• 1999 WL 33885625 (Trial Motion, Memorandum and Affidavit) Memorandum of Joanne Marlowe in Opposition to Plaintiff's Application to Hold Her in Contempt and in Support of Her Cross-Motion to Modify the Preliminary Injunction (Sep. 01, 1999)
• 1999 WL 33885623 (Trial Motion, Memorandum and Affidavit) Supplemental Reply Memorandum of Law of Defendant Theoddor Tsuru in Further Support of His Motion to Dismiss the Second Amended Complaint and to Deny Leave to Further Amend the Complaint (May. 14, 1999)
• 1999 WL 33885624 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Defendants Joanne Marlowe and Charivari Capital Corporation in Response to Plaintiff's Memorandum in Opposition to Defendants' Supplemental Memoranda (May. 13, 1999)
• 1999 WL 33885622 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law in Opposition to Defendants Joanne Noren, a/k/a ""Joanne N. Marlowe," Charivari Capital Corporation and Theoddor Tsuru's Supplemental Memoranda in Support of Their Motions to Dismiss the Complaint (May. 10, 1999)
• 1999 WL 33885621 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum of Law of Defendant Theoddor Tsuru in Support of His Motion to Dismiss the Second Amended Complaint and to Deny Leave to Further Amend the Complaint (Apr. 30, 1999)
• 1999 WL 33885620 (Trial Motion, Memorandum and Affidavit) Supplemental Reply Memorandum of Defendants Joanne Marlowe and Charivari Capital Corporation in Support of Their Motion to Dismiss the Complaint (Apr. 29, 1999)
• 1998 WL 34279956 (Trial Motion, Memorandum and Affidavit) Reply of Defendants Joanne Marlowe and Charivari Capital Corporation to Plaintiff's November 6, 1998 Memorandum of Law (Nov. 13, 1998)
• 1998 WL 34279955 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law in Opposition to Motions to Dismiss of Defendants Tsuru and Wolpow (Nov. 06, 1998)
• 1998 WL 34279954 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Defendant Theoddor Tsuru in Support of His Motion to Dismiss (Oct. 30, 1998)
• 1998 WL 34279953 (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum of Law in Support His Motion to Extend Time to Answer or Otherwise Respond (Oct. 15, 1998)
• 1998 WL 34279951 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Defendants Joanne Marlowe

Westlaw.

Not Reported in F.Supp.2d                                                                                                   Page 27
Not Reported in F.Supp.2d, 2000 WL 1877516 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

and Charivari Capital Corporation in Further Support of Their Motion to Dismiss the Complaint and in Opposition to Plaintiff's Cross-Motion for Leave to Amend (Sep. 29, 1998)

• 1998 WL 34279952 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Defendant Mitsuyuki Hasegawa in Support of Motion to Dismiss the Complaint and in Copposition to Cross-Motion of Plaintiff Casio Computer Co. (Sep. 29, 1998)

• 1998 WL 34279950 (Trial Motion, Memorandum and Affidavit) Memorandum of Defendant Wayne Nishiyama in Support of His Motion to Dismiss the Complaint (Sep. 23, 1998)

• 1998 WL 34279947 (Trial Motion, Memorandum and Affidavit) Memorandum of Defendants Joanne Marlowe and Charivari Capital Corporation in Support of Their Motion to Dismiss the Complaint (Jul. 27, 1998)

• 1998 WL 34279948 (Trial Motion, Memorandum and Affidavit) Memorandum of Defendant Mitsuyuki Hasegawa in Support of Motion to Dismiss the Complaint (Jul. 27, 1998)

• 1998 WL 34279949 (Trial Motion, Memorandum and Affidavit) Defendant Sayo's Memorandum of Law in Support of Dismissal of Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 9(b), etc. (Jul. 26, 1998)

• 1998 WL 34279946 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant Sayo's Motion Pursuant to Local Rule 33.3& Fed. R. Civ. P. 33; for Document Productioni; and a Deposition (Jul. 14, 1998)

• 1998 WL 34279945 (Trial Motion, Memorandum and Affidavit) Memorandum of Defendants Joanne Marlowe and Charivari Capital Corporation in Opposition to Plaintiff's Motion for a Preliminary Injunction and in Support of Their Cross-Motion to Dismiss the Complaint (Jun. 28, 1998)

• 1998 WL 34279944 (Trial Motion, Memorandum and Affidavit) Defendant Sayo's Memorandum of Law in Opposition to & in Support of Dismissal of Plaintiff's Second Amendedcomplaint (Jun. 25, 1998)

• 1998 WL 34279943 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Cross-Motion & Opposition to Plaintiff's Order to Show Cause; Request for a Preliminary Injunction; Expedited Discovery; etc. (Jun. 10, 1998)

• 1998 WL 34279942 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Supplemental Order to Show Cause with Temporary Restraints Why Preliminary Injunction Should Not Issue (Jun. 05, 1998)

• 1:98cv03772 (Docket) (May. 27, 1998)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.