20

Not Reported in F.Supp.2d                                                                                   Page 1
Not Reported in F.Supp.2d, 2003 WL 22480049 (S.D.N.Y.), RICO Bus.Disp.Guide 10,576
**(Cite as: Not Reported in F.Supp.2d)**

C
Briefs and Other Related Documents

United States District Court,S.D. New York.
Adrienne Marsh LEFKOWITZ, Plaintiff,
v.
THE BANK OF NEW YORK, and The Bank of New York as Executor of the Estates of Nicholas and Irene Marsh, and McCarthy, Fingar, Donovan, Drazen & Smith, and Frank Streng, Esq. Defendants
No. 01 Civ. 6252 VM.

Oct. 31, 2003.

Beneficiary brought several claims arising out of the administration of the estates of her parents against executor and the law firm representing those estates. Upon defendants' motion to dismiss, the District Court, Marrero, J., held that: (1) probate exception to diversity jurisdiction applied to beneficiary's claims for breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, and fraudulent concealment; (2) beneficiary lacked standing to bring claim on her own behalf based on estates' law firm's alleged conflict of interest in drafting wills in which it named itself as legal representative of executor; and (3) beneficiary did not allege either open-ended or close-ended continuity, and thus did not plead a pattern of activity sustaining a Racketeer Influenced and Corrupt Organizations Act (RICO) claim.

Motion granted.

West Headnotes

[1] Federal Civil Procedure 170A €—851

170A Federal Civil Procedure
170AVII Pleadings and Motions
170AVII(E) Amendments
170Ak851 k. Form and Sufficiency of Amendment. Most Cited Cases
Plaintiff was not entitled to amend her complaint to set forth her allegations in greater specificity since amendment would have no effect on the ultimate outcome in the case, and would thus be futile.

[2] Federal Courts 170B €—9

170B Federal Courts
170BI Jurisdiction and Powers in General
170BI(A) In General
170Bk9 k. Probate Matters; Infants and Incompetents. Most Cited Cases
Probate exception to diversity jurisdiction applied to beneficiary's claims against executor of both of her parents' estates, and the law firm representing those estates for breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, and fraudulent concealment, all of which sought damages from defendants rather than assets or distributions from either estate; to resolve those claims, court would need to determine the ownership of certain property of the estates while the probate proceedings were still continuing in state court, to conduct an accounting, to assume control over property still involved in probate proceedings, or to assert control over assets currently before the probate court.

[3] Executors and Administrators 162 €—228(2)

162 Executors and Administrators
162VI Claims Against Estate
162VI(B) Presentation
162k228 Presentation and Filing
162k228(2) k. Persons Who May Present or File Claims. Most Cited Cases
Beneficiary of parents' estates lacked standing to bring claim on her own behalf based on estates' law firm's alleged conflict of interest in drafting wills in which it named itself as legal representative of executor. McKinney's General Business Law § 349.

[4] Racketeer Influenced and Corrupt Organizations 319H €—72

319H Racketeer Influenced and Corrupt Organizations
319HI Federal Regulation
319HI(B) Civil Remedies and Proceedings
319Hk68 Pleading
319Hk72 k. Pattern. Most Cited Cases
Beneficiary of parents' estates did not allege either open-ended or close-ended continuity, and thus did not plead a pattern of activity sustaining a Racketeer Influenced and Corrupt Organizations Act (RICO) claim against executor of both of her parents' estates, and the law firm representing

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22480049 (S.D.N.Y.), RICO Bus.Disp.Guide 10,576
(Cite as: Not Reported in F.Supp.2d)

Page 2

those estates; claim essentially alleged that a small number of parties engaged in activities with a narrow purpose directed a defrauding beneficiary and the estates of her parents and there was no evidence from which it could be inferred that the predicate acts were the regular way of operating the enterprise, which was a legitimate business, or that the nature of the predicate acts themselves implied a threat of continued criminal activity. 18 U.S.C.A. § 1962(d).

*DECISION AND AMENDED ORDER*
MARRERO, J.

I. *INTRODUCTION*

*1 Plaintiff Adrienne Marsh Lefkowitz ("Lefkowitz") brings several claims arising out of the administration of the estates of her parents. She alleges that the defendants violated the Racketeering Influenced and Corrupt Organizations Act, engaged in unfair business practices in violation of New York General Business Law § 349, and committed a variety of other wrongs, including breach of fiduciary duty, conversion, and fraud. The defendants, the executor of the estates and its attorneys, moved to dismiss. The case was referred to Magistrate Judge Michael Dolinger for pretrial supervision. In a report and recommendation (the "Report") to this Court concerning defendants' motion, Magistrate Judge Dolinger recommended granting the motion to dismiss all of Lefkowitz's claims. Lefkowitz submitted objections to the Report. By Order dated October 29, 2003, the Court, having conducted a de novo review of the dispute, agreed with the recommendations of the Report and dismissed Lefkowitz's claims, indicating that the Court's findings, reasoning and conclusions would be made available separately.

II. *FACTS*

This case is one of numerous actions brought by Lefkowitz stemming from the administration of the estates of her parents, Nicholas Marsh and Irene Marsh (the "Marshes"). In this case, Lefkowitz sued the executor of both estates, the Bank of New York ("BNY"); the law firm representing BNY in the estate proceedings, McCarthy, Fingar, Donovan, Drazen & Smith, L.L.P. ("MFDDS"); and Frank Streng ("Streng"), the MFDDS partner in charge of the other litigation involving the Marshes' estates (collectively, the "Defendants"). Lefkowitz, an attorney, is proceeding *pro se* in this matter and requests the consideration normally accorded *pro se* plaintiffs.

Nicholas Marsh died in 1988 and Irene Marsh died in 1990. In the years since her parents' deaths, Lefkowitz has actively and largely unsuccessfully litigated a host of actions in state courts in New York relating to the administration of the two estates.[FN1] The details of those actions, some of which are still pending, are summarized in the Report, which was submitted by Magistrate Judge Dolinger on September 2, 2003, a copy of which is attached.[FN2]

FN1. For example, in *Will of Marsh*, 179 A.D.2d 578, 578 N.Y.S.2d 911 (App. Div. 1st Dep't 1992), Lefkowitz sued to disqualify BNY as executor of Nicholas Marsh's estate based on alleged improvidence and misconduct and to prevent MFDDS from acting as counsel to the estate due to an alleged conflict of interest. The court found no basis to disqualify BNY as executor or MFDDS as estate counsel. In *Matter of Marsh*, 212 A.D.2d 792, 624 N.Y.S.2d 860 (App. Div.2d Dep't 1995), Lefkowitz alleged that BNY wasted assets of the estate of Irene Marsh and committed acts of misconduct and dishonesty. The court found no basis for her claims and granted summary judgment to BNY. Lefkowitz also unsuccessfully brought suits in Westchester County Supreme Court against, *inter alia,* her sisters, MFDDS, and Streng for fraud and misrepresentation; and BNY and her sisters for lost salary and unjust enrichment.

FN2. *See Lefkowitz v. The Bank of New York,* No. 01 Civ. 6252, 2-12 (S.D.N.Y. Sept. 2, 2003).

Lefkowitz filed an amended complaint (the "Amended Complaint") in this action on August 27, 2001. As summarized in the Report, Lefkowitz's complaint alleges that: (1) BNY improperly paid MFDDS inflated and/or fraudulent legal bills for services rendered from 1990 through 1999; (2) the signatures of Irene Marsh on documents affecting Lefkowitz's interests in Irene's estate are forgeries; (3) BNY has refused to distribute to Lefkowitz certain personal property from her parents' estates and has diverted one million

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2003 WL 22480049 (S.D.N.Y.), RICO Bus.Disp.Guide 10,576  
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

dollars from her parents' estates to bank accounts that Lefkowitz cannot access; (4) BNY violated the terms of five consent orders that settled costs levied against Lefkowitz by Hong Kong courts for litigation contesting the probate proceedings over the Marshes' Hong Kong assets; (5) BNY improperly indemnified a Hong Kong citizen as trustee for Nicholas Marsh, concealed from Lefkowitz information regarding salaries owned to her by Hong Kong companies, and improperly paid inflated legal bills to attorneys in Hong Kong; (6) Surrogate Eve Preminger incorrectly surcharged Lefkowitz for loans that Lefkowitz made as executrix of her father's estate; and (7) BNY has refused to pay Lefkowitz's legal fees for the probate contest for the estate of Irene Marsh and has refused to pay Lefkowitz's legal fees for her work on behalf of the estate of Nicholas Marsh.

*2 In her Amended Complaint, Lefkowitz asserted claims for alleged violations of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) [FN3] and (d); [FN4] violations of New York General Business Law ("GBL") § 349; [FN5] breach of fiduciary duty; aiding and abetting a breach of fiduciary duty; conversion; fraud and fraudulent misrepresentation; fraudulent concealment; unjust enrichment; and unpaid claims for money owed.

> FN3. 18 U.S.C. § 1962(c) provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

> FN4. 18 U.S.C. § 1962(d) provides: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

> FN5. N.Y. Gen. Bus. L. § 349 provides in relevant part:
> (a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.
> (h) In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

Lefkowitz seeks specific performance, declaratory judgment, injunctive relief, and compensatory, punitive and treble damages.

Defendants moved to dismiss pursuant to Federal Rules of Civil Procedure 12(c) and 12(h)(3). Magistrate Judge Dolinger's thorough and reasoned Report recommended that Defendants' motion be granted in its entirety and the complaint be dismissed. Lefkowitz submitted to this Court a list of objections to the Report and Defendants responded to those objections, urging the Court to adopt the Report's recommendations.

### III. DISCUSSION

#### A. STANDARD OF REVIEW

In considering a motion to dismiss a complaint, whether on the basis of judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) or for lack of subject matter jurisdiction under Rule 12(h)(3), the Court must accept as true all well-pleaded allegations contained in the complaint and draw all reasonable inferences in favor of the non-moving party. *See Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir.2003); Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir.2001).*

Under Rule 72(b), the Court must conduct a de novo review "of any portion of the magistrate judge's disposition to which specific written objection has been made."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2003 WL 22480049 (S.D.N.Y.), RICO Bus.Disp.Guide 10,576  
(Cite as: Not Reported in F.Supp.2d)

Page 4

### B. JURISDICTIONAL, PROCEDURAL, AND CONSTITUTIONAL OBJECTIONS

Lefkowitz first argues that the parties did not consent to allowing a magistrate to address dispositive motions. Whether or not this consent was given-and there are indications that it was-Federal Rule of Civil Procedure 72(b) allows the district court to assign a magistrate judge to resolve dispositive motions without the consent of the parties. Any party may then submit to the district court for de novo review any objections to the report and recommendations of the magistrate judge.[FN6]

> FN6. Fed.R.Civ.P. 72(b) provides in relevant part: "A magistrate judge assigned without consent of the parties to hear a pretrial matter dispositive of a claim or defense ... shall promptly conduct such proceedings as are required.... The district judge to whom the case is assigned shall make a de novo determination upon the record ... of any portion of the magistrate judge's disposition to which specific written objection has been made...."

[1] Lefkowitz argues that although she is a lawyer, she should have received from the magistrate judge the latitude and consideration due a *pro se* plaintiff and should have been allowed to amend her complaint. Magistrate Judge Dolinger rejected several of Lefkowitz's claims on the grounds that her complaint lacked the required degree of specificity to sustain those claims. Because, for reasons discussed below, an amended complaint from Lefkowitz setting forth her allegations in greater specificity would be futile, insofar as it would have no effect on the ultimate outcome in this case, this Court declines her request to amend her complaint.

### C. PROBATE EXCEPTION TO DIVERSITY JURISDICTION

*3 Lefkowitz alleged that federal jurisdiction in this case was founded upon diversity of citizenship [FN7] and the existence of a federal question, namely her RICO claims. After independently recommending dismissal of the RICO claims, the Magistrate Judge recommended that all but one of Lefkowitz's remaining claims be dismissed under the probate exception to diversity jurisdiction. The Magistrate Judge determined that two of Lefkowitz's counts asked this Court to "assert control over property not yet out of probate" in New York State courts, and all but one of her remaining counts (after the dismissal of the RICO claims) would require this Court to impermissibly interfere with state court probate proceedings. (Report 54-61.) Lefkowitz argues that the probate exception does not apply here.

> FN7. Lefkowitz is a resident of California, the Defendants are all citizens of New York.

The probate exception to diversity jurisdiction prevents federal courts from exercising diversity jurisdiction over probate matters.[FN8] The exception has two prongs. First, a federal court has no jurisdiction if it is "being asked to directly probate a will or administer an estate." [FN9] Second, a federal court has no jurisdiction if "entertaining the action would cause the federal district court to 'interfere with the probate proceedings or assume general jurisdiction of the probate or control of property in the custody of the state court.' " [FN10]

> FN8. See *Moser v. Pollin*, 294 F.3d 335, 340 (2d Cir.2002).
>
> FN9. *Id.*
>
> FN10. *Id.* (quoting *Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946)).

Lefkowitz argues that "courts in this Circuit have long allowed declaratory relief regarding assets in estates and such relief was not deemed to be 'interference' with the probate court proceedings." (Plaintiff's Objections to the September 2, 2003 Report & Recommendation of Magistrate To Dismiss Complaint ("Objections") at 4.)

For that proposition, Lefkowitz relies on *Dulce v. Dulce*, 233 F.3d 143 (2d Cir.2000), in which the Second Circuit ruled that the probate exception did not apply to a request for an order from a federal district court "declaring [the plaintiff's] right to a share in the estate, and (2) directing the executor to (a) produce the will, (b) file it for probate, and (c) reveal information concerning the defendant's estate." [FN11] In *Dulce,* the will at issue had not yet been submitted to probate. The Circuit Court explained that the plaintiff

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22480049 (S.D.N.Y.), RICO Bus.Disp.Guide 10,576
(Cite as: Not Reported in F.Supp.2d)

Page 5

"did not ask the district court to probate the defendant's will, administer the estate, or in any way interfere with state probate proceedings." FN12 The court added that the plaintiff "did not seek the distribution of any assets. Nor did it seek a declaration of his entitlement to receive any particular sum from the estate. All it sought was a declaration of his 'right to share in the estate,' without specification of amount." FN13

> FN11. *Dulce,* 233 F.3d at 144.
>
> FN12. *Id.* at 145-46.
>
> FN13. *Id.* at 148.

The situation in the case at bar, as Defendants argue, is quite different. The Marshes' estates have already been submitted to probate and those proceedings have been extensive, are ongoing, and indeed entailed litigation of some of the same or closely related issues Lefkowitz raises in this action. In *Dulce,* by contrast, there was no estate in probate and thus there was no probate proceeding with which a federal court might interfere.

*4 Lefkowitz argues that the probate proceedings are "inactive" and therefore there is no risk that a federal court's ruling might interfere with them. (Objections at 5.) But Defendants counter that there remain accountings to be filed by BNY in Surrogate Court for both estates, and that those filings are awaiting the outcome of related active estate proceedings in Hong Kong courts. The referee in an accounting proceeding involving the estate of Nicholas Marsh in New York County Surrogate's Court indicated that Lefkowitz's liability to her father's estate could not be determined precisely until the Hong Kong probate proceedings were completed.

In *Moser v. Pollin,* the Second Circuit instructed that "a federal court impermissibly interferes with a concurrent probate proceeding if its judgment would supplant the functions of the state probate court." FN14 Lefkowitz's claims here, as the Magistrate Judge correctly noted and as Defendants argue, would involve this Court in determining the timing and amount of distributions from the Marshes' estates. Those are roles for the probate court.

> FN14. 294 F.3d 335, 343 (2d Cir.2002).

[2] The claims Lefkowitz asserts that implicate the probate exception in this case include those set forth in Count IV, for breach of fiduciary duty, Count V, for aiding and abetting a breach of fiduciary duty, and Count VIII, fraudulent concealment, all of which seek damages from Defendants rather than assets or distributions from either estate. Although courts are divided on whether the probate exception applies in this situation, the more widely-held view provides that:

[A]ctions against administrators seeking a personal judgment for damages-for example, for fraud or mismanagement ... may be brought in a federal court only if a final accounting has been held in the state probate court and the administrator has been released from further responsibility to that court.

13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3610 at pp. 497-98 (2d ed.1984). The Second Circuit examined claims against a trustee for breach of trust and mismanagement in *Beach v. Rome Trust Co.,* 269 F.2d 367, 373 (2d Cir.1959), and explained that "jurisdiction of such claims ought to be declined by a federal court when an accounting proceeding which, under state law, is quasi in rem has been previously commenced in the state courts." The probate exception governs the three counts specified above.

Count VI alleges conversion by BNY of assets from both of the Marshes' estates. To resolve this claim, this Court would need to determine the ownership of certain property of the estates while the probate proceedings are still continuing in state court.

Count VII, for fraud and fraudulent misrepresentation, is essentially a breach of contract action alleging that Defendants made too large a distribution of assets from the Marshes' estates to cover costs related to litigation in Hong Kong. Courts have repeatedly held that where, as here, "an Executor is being sued personally for allegedly committing malfeasance in administration of an estate, a federal court must look past the label the plaintiff has given to her claim and analyze the actual effect such suit would have on the actual administration of the decedent's estate." FN15 The resolu-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK   Document 179-10   Filed 08/11/2006   Page 7 of 11

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 6
Not Reported in F.Supp.2d, 2003 WL 22480049 (S.D.N.Y.), RICO Bus.Disp.Guide 10,576
(Cite as: Not Reported in F.Supp.2d)

tion of this claim would require this Court to conduct an accounting while the probate proceedings are still active. The probate exception consequently applies.

>   FN15. *Junco Mulet v. Junco de la Fuente,* 228 F.Supp.2d. 12, 17 (D.P.R.2002) (collecting cases); see also, *Turton v. Turton,* 644 F.2d 344, 348 (5th Cir.1981) (stating that "a suit against an executor personally for malfeasance is beyond federal jurisdiction, if it requires a premature accounting of an estate still in probate").

*5 Count IX of Lefkowitz's complaint alleges unjust enrichment and sought an order directing Defendants "to disgorge all property and income held by them and the estates (as a result of the wrongdoing of [the Defendants] ) which rightfully belongs to" Lefkowitz. This Count would require this Court to assume control over property still involved in probate proceedings in state court, and therefore falls within the probate exception. Similarly, Count XI, which seeks specific performance of five Hong Kong consent orders, would improperly require this Court to order a distribution of funds from the Marshes' estates, which are still involved in probate proceedings.

In Count X, Lefkowitz alleges that she has unpaid claims for legal fees against both of her parents' estates, and seeks a determination of her right to payment. Lefkowitz argues that a claim against the estate for declaratory relief is not within the probate exception. She relies on *Celantano v. Furer,* 602 F.Supp. 777 (S.D.N.Y.1985), where the court exercised jurisdiction over a claim for recovery on a contract to make a will. The *Celantano* court, however, was careful to note that resolving a dispute over a contract to make a will would not in any way involve the court in probating that will.FN16 Lefkowitz, relying on *Dulce,* 233 F.3d at 148-9, argues that declaratory relief does not require this Court to make a distribution from the estates and therefore should be allowed. But in *Dulce,* the Circuit Court noted that the plaintiff was not seeking a "declaration of his entitlement to receive any particular sum from the estate."FN17 Although in this action Lefkowitz asks for a "determination of her right to payment," she also asserts that she is seeking recovery of damages in a specific dollar amount-the value of her legal fees-which presumably derive from assets still in the estates.

Such a ruling would require this Court to assert control over assets currently before the probate court.

>   FN16. See *id.* at 780-81.

>   FN17. *Dulce,* 233 F.3d at 148.

Count XII seeks a declaratory judgment that certain assets of the Marshes' estates belong to Lefkowitz. Such a ruling from this Court while probate proceedings are still pending and active in state court would constitute an impermissible interference with the state court's jurisdiction.

D. *N.Y. GENERAL BUSINESS LAW § 349*

Lefkowitz objects to the Magistrate Judge's dismissal of her claim against BNY and MFDDS for a violation of GBL § 349. That statute provides a private right of action for "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

Lefkowitz alleges that BNY regularly retains as estate counsel any attorney who drafts a will that nominates BNY as executor, and that neither BNY nor the drafting attorney informs the testator of this arrangement. Lefkowitz argues that the Marshes' estates were both harmed by this practice because, she alleges, BNY charges estates a higher commission rate for acting as an executor than individuals charge for the same role.

*6 The Magistrate Judge recommended dismissing this claim on the ground that there is no conflict of interest for an attorney to draft a will and subsequently be retained to represent the executor of that will. The Magistrate Judge determined that "there is no reason to believe that hiring the lawyer who drafted the testator's will harms that person's interests." (Report at 64.) It appears the Magistrate Judge may have misconstrued Lefkowitz's argument. Drawing all reasonable inferences in her favor, Lefkowitz's primary argument as to the conflict of interest is that the attorney drafting the will, while maintaining an undisclosed relationship with BNY, had an incentive to encourage the testator to name BNY as the executor, so that the attorney would then be retained by BNY as estate counsel. In general, if a testator is not informed of such an arrangement, arguably it could

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22480049 (S.D.N.Y.), RICO Bus.Disp.Guide 10,576
(Cite as: Not Reported in F.Supp.2d)

Page 7

present a conflict of interest because it may not necessarily be in the best interests of the testator to name BNY as executor or to be presented by his legal advisor with no other alternative unaffected by the attorney's personal stake in the selection.

[3] However, the Court need not resolve whether these circumstances create an impermissible conflict of interest giving rise to liability. The Magistrate Judge also recommended dismissing Lefkowitz's GBL § 349 claim on the ground that Lefkowitz had no standing to bring it, because the victims of Defendants' allegedly unfair business practices were her parents as the testators of the two estates, and not Lefkowitz personally. Typically, when a testator dies, the executor, not the beneficiary, acquires standing to pursue claims on behalf of the testator and the estate.[FN18] This rule is subject to exceptions in "cases of collusion, of insolvency of the personal representatives, of refusal by them to sue, whether collusively or bona fide ... or of the existence of other special circumstances such as the fraudulent transfer of the trust property by the personal representatives themselves."[FN19] In Inman v. Inman, 97 A.D.2d 864, 469 N.Y.S.2d 259, 261 (App. Div. 3rd Dep't 1983), an executor was involved in transferring property out of an estate. The court determined that the plaintiff, a beneficiary of the estate, had standing to sue to recover the property for the estate because "a request to [the executor] to restore it would have been futile" given the executor's involvement in the subject of the litigation.

> FN18. See McQuaide v. Perot, 223 N.Y. 75, 119 N.E. 230, 231-32 (N.Y.1918) (noting that "it is elementary that the executors or administrators represent the legatees, creditors, and distributees in the administration of the estate; that their duty is to recover the property of the estate; and that the legatees and next of kin are concluded by their determination in respect to actions therefor, and have no independent cause of action, either in their own right or the right of the estate."); see also, Wierdsma v. Markwook Corp., 53 A.D.2d 581, 384 N.Y.S.2d 836, 837 (App. Div. 1st Dep't 1976).

> FN19. McQuaide, 119 N.E. at 232 (internal citations omitted).

Lefkowitz argues that this exception applies here because BNY, as executor and party to the alleged improper arrangement with the estates' counsel, obviously would not be bringing this claim. Defendants argue that the exception allowing beneficiaries of an estate to bring claims for that estate when the executor refuses to do so is limited to situations where the beneficiary seeks to recover estate property, and does not create a distinct personal cause of action in favor of beneficiaries enabling them to seek monetary damages on their own behalf for deceptive business practices allegedly committed against a testator.

*7 Cases permitting beneficiaries to bring actions for wrongs done to an estate do commonly involve a beneficiary attempting to recover estate property that the executor allegedly had a role in removing from the estate.[FN20] The doctrine, however, is not as narrow as Defendants would have it. The right of a beneficiary to bring claims that the executor refuses to bring is not limited, as Defendants contend, to suits to recover property that was in the estate and that the executor improperly removed. In Lawrence v. Cohn, for example, the court allowed will beneficiaries to bring a suit against the executor on behalf of the estate for violations of Section 10(b) of the Securities Exchange Act of 1934, thus invoking the rule to permit the assertion of a claim to obtain supplemental property for the estate that the executor could have pursued but refused to do so.[FN21] The court ruled that "[i]f an estate has a viable 10(b) claim, and the executor was a party to the fraud underlying the claim, the will beneficiaries must have standing to sue on the estate's behalf. Otherwise, the estate's 10(b) claim will never be brought."[FN22]

> FN20. See, e.g., Jackson v. Kessner, 206 A.D.2d 123, 618 N.Y.S.2d 635, 637 (App. Div. 1st Dep't 1994) ("It is well settled that a beneficiary, absent extraordinary circumstances such as when a fiduciary unreasonably refuses to act cannot act on behalf of the estate or exercise the fiduciary's rights with respect to estate property.") (internal citations omitted); Inman, 469 N.Y.S.2d at 260-61.

> FN21. See 932 F.Supp. 564, 572 (S.D.N.Y.1996).

> FN22. Id.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22480049 (S.D.N.Y.), RICO Bus.Disp.Guide 10,576
(Cite as: Not Reported in F.Supp.2d)

Page 8

Nonetheless, here Lefkowitz argues that as a result of Defendants' unfair business practices, *Lefkowitz* "has suffered and will continue to suffer substantial damages and injuries in *her* property." (Amended Complaint at 35, emphasis added). The recovery she seeks represents not property of or for the estates, but actual damages on her *own* behalf. She is not suing on behalf of the estate. Whether or not the standing exception enabling a beneficiary to bring a cause of action that belongs to the estate applies only when that claim attempts to recover estate property, it appears that the beneficiary may bring that cause of action only on behalf of the estate, rather than on her own behalf. A contrary ruling would in essence expand the exception to the underlying rule so as to effectively create a new cause of action against the executor running directly and individually to the beneficiary. Such a holding could implicate significant potential liability and other exposure to estate executors that they may not have contemplated or bargained for. Absent more explicit guidance in state case law or statute supporting such an enlargement of a cause of action and doctrinal law, it is not within the proper role of this Court, exercising jurisdiction in a diversity case involving issues peculiarly within the province of state jurisprudence, to enunciate a substantive rule of law that neither the legislature nor the courts of the state have yet definitively considered.

### E. *RICO CLAIMS*

[4] Lefkowitz's final series of objections relate to the Magistrate Judge's recommendation that her RICO claims be dismissed. Lefkowitz alleges that Defendants violated §§ 1962(c) and (d) of the RICO statutes.[FN23] To establish a claim for RICO damages, a plaintiff must meet two pleading burdens. First, the plaintiff must allege:

FN23. *See supra* nn. 2-3.

*8 (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce.[FN24]

FN24. *Town of West Hartford v. Operation Rescue,* 915 F.2d 92, 100 (2d Cir.1990); *see also,* 18 U.S.C. § 1962(a)-(c) (1976).

Second, the plaintiff must allege in her pleadings that she was " 'injured in [her] business or property by reason of a violation of section 1962." '[FN25]

FN25. *Town of West Hartford,* 915 F.2d at 100 (quoting *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983)).

The Magistrate Judge recommended dismissal of Lefkowitz's RICO claims on the grounds that she failed to plead the existence of any predicate acts with the requisite degree of specificity, let alone two or more acts, and because she failed to plead a pattern of racketeering activity.

Lefkowitz argues that she adequately alleged a pattern of racketeering activity. She contends that as a *pro se* plaintiff she should have received leave to amend her complaint to provide greater specificity. Additionally, she argues that the heightened specificity requirements do not apply to the predicate acts she alleges.

To adequately plead a pattern of activity for a RICO claim, a plaintiff must establish "that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity."[FN26] A plaintiff may satisfy this requirement by demonstrating either close-ended or open-ended continuity. Close-ended continuity exists when a series of related predicates extends over a substantial, closed period of time.[FN27] By contrast, open-ended continuity exists when there is a threat that the occurrence of predicate acts will "extend[ ] indefinitely into the future."[FN28]

FN26. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (emphasis in original).

FN27. *See id.* at 242.

FN28. *Id.*

Courts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of a closed or open pattern of continuity.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2003 WL 22480049 (S.D.N.Y.), RICO Bus.Disp.Guide 10,576  
(Cite as: Not Reported in F.Supp.2d)

Page 9

FN29 In *Weizmann Institute of Science v. Neschis,* a case on which the Magistrate Judge relied, several beneficiaries of an estate asserted RICO violations against the attorney for the estate and a fiduciary of the estate. The plaintiffs alleged that the defendants had committed several acts of mail fraud spanning a seven-year period. Although the court noted that the duration of the alleged scheme supported a finding of close-ended continuity, it ultimately concluded that the scheme was too "discrete and limited" to establish any pattern of continuity because it involved only "four predicate acts of mail fraud, committed by one participant ... against a limited number of victims ... in furtherance of a single fraudulent scheme (to gain control of [the testator's] assets)." FN30

> FN29. See *Weizmann Inst. of Sci. v. Neschis,* 229 F.Supp.2d 234, 256-57 (S.D.N.Y.2002); *D.R.S. Trading Co., Inc. v. Fischer,* 2002 WL 1482764, at *4 (S.D.N.Y. July 10, 2002); *Feirstein v. Nanbar Realty Co.,* 963 F.Supp. 254, 259-61 (S.D.N.Y.1997); see also *GICC Capital Corp. v. Tech. Fin. Group, Inc.,* 67 F.3d 463, 467 (2d Cir.1995) (directing courts to consider "the length of time over which the alleged predicate acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes.").
>
> FN30. *Weizmann Inst. of Sci.,* 229 F.Supp.2d at 257.

Lefkowitz argues that in this case there is more than one victim. She alleges that the Defendants' scheme harmed at least twenty entities, including two estates and three companies in the United States, two estates and three companies in Hong Kong, and nine trusts. Lefkowitz also contends that the scheme had more than one goal and was designed to:

*9 (a) [M]inimize [her] share in the estates; (b) enlarge [her two sisters'] shares in the estates; (c) minimize taxes paid ...; (d) divert funds to [one of her sisters]; (e) punish [her] for disclosing latent assets; (f) court favor toward the defendants from [a Hong Kong businessman who held assets in trust for Nicholas Marsh]; and (g) inflate payments to [the Defendants]."

(Amended Complaint ¶ 166.)

The Amended Complaint describes the alleged objectives listed above as objectives of the RICO *conspiracy* under 18 U.S.C. § 1962(d), rather than as objectives of the RICO claim under 18 U.S.C. § 1962(c). Lefkowitz alleges sixteen predicate acts in her § 1962(c) RICO claim. In her descriptions of most of those sixteen acts, she ascribes to Defendants an intent to defraud her and/or the estates. But despite Lefkowitz's attempt to identify seven distinct goals and her reference to twenty different victims, this Court interprets her RICO claim as essentially alleging that a small number of parties engaged in activities with a narrow purpose directed at a single or at most three victims: namely, defrauding Lefkowitz and the estates of her parents. The Court is not persuaded that such allegations establish a pattern of close-ended continuity as defined by case law in this District.

Lefkowitz also cannot establish a pattern of open-ended continuity. To do so, she would need to demonstrate a threat of continuing criminal activity "extending indefinitely into the future." FN31 In an inquiry into open-ended continuity, "the nature of the RICO enterprise and of the predicate acts are relevant." FN32 When the nature of the enterprise is racketeering and the predicate acts are "inherently unlawful," a court will presume a threat of future criminal activity.FN33 But where, as here, the nature of the enterprise is a legitimate business, "there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." FN34

> FN31. *H.J. Inc.,* 492 U.S. at 242.
>
> FN32. *Cofacredit S.A. v. Windsor Plumbing Supply Co., Inc.,* 187 F.3d 229, 242 (2d Cir.1999).
>
> FN33. *Id.* at 242-43.
>
> FN34. *Id.* at 243.

Lefkowitz's RICO claims do not assert that Defendants regularly conduct business in the manner she alleges they have done in this case. There is no indication in Lefkowitz's RICO counts that Defendants will continue their alleged

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK   Document 179-10   Filed 08/11/2006   Page 11 of 11

Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 10
Not Reported in F.Supp.2d, 2003 WL 22480049 (S.D.N.Y.), RICO Bus.Disp.Guide 10,576
(Cite as: Not Reported in F.Supp.2d)

scheme once the probate proceedings in the Marshes' estates are completed. Thus, the Court finds that there is no open-ended continuity sufficiently asserted here.[FN35]

> FN35. See id. at 244 (noting that once alleged scheme's goal was reached, there was no outstanding threat of future criminal activity); D.R.S. Trading Co., Inc. v. Fischer, 2002 WL 1482764, at *4 (S.D.N.Y. July 10, 2002).

Lefkowitz argues that because there is "no end in sight" to the administration of the estates, there is a threat of ongoing criminal activity "extending indefinitely into the future." (Objections at 15.) But this contention misconstrues the open-ended continuity requirement. The administration of the estates will eventually, definitively, end. The open-ended continuity requirement can only be satisfied by a on-going future threat with no foreseeable endpoint. That no one today knows when the administration of the Marshes' estates will end does not mean that the process will not end. Once the administration ends, the alleged threat of future criminal activity, such as it is, presumably will end with it.

*10 Lefkowitz also argues in her objections that "[t]here is no basis to conclude that BNY or MFDDS limit their criminal activities to Marsh matters. In 2003 one cannot assume a bank or law firm is above criminal conduct." (Objections at 15.) Although the Court is mindful of current events in the abstract, its finding of a pattern of open-ended continuity sufficient for RICO liability purposes would require far more specific allegations than Lefkowitz's generalized and conclusory remark.

Because the Court concludes that based on the factual assertions presented here Lefkowitz cannot establish either open-ended or close-ended continuity sustaining a RICO claim under any reformulation of the pleadings, there is no need to address Lefkowitz's argument that she should be permitted to amend her pleadings to provide greater specificity regarding the alleged predicate acts in her RICO claims that the Magistrate Judge found not sufficiently particular.

### IV. ORDER

For the reasons discussed above, it is hereby

ORDERED that the Court's Order dated October 29, 2003 addressing Defendants' motion to dismiss is amended to incorporate the discussion set forth above; and it is finally

ORDERED that the motion of defendants The Bank of New York, McCarthy, Fingar, Donovan, Drazen & Smith, and Frank Streng to dismiss the complaint herein in its entirety is granted.

The Clerk of Court is directed to close this case.

SO ORDERED.

S.D.N.Y.,2003.
Lefkowitz v. Bank of New York
Not Reported in F.Supp.2d, 2003 WL 22480049 (S.D.N.Y.), RICO Bus.Disp.Guide 10,576

Briefs and Other Related Documents (Back to top)

• 1:01cv06252 (Docket) (Jul. 11, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.