26

RECYCLED

Westlaw.

Not Reported in F.Supp.2d                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 1620874 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
NEEWRA, INC., Plaintiff,
v.
MANAKH AL KHALEEJ GENERAL TRADING AND
CONTRACTING CO., Kuwait Finance House, Emirates
Airlines, and Aramex International, Defendants.
**No. 03 Civ. 2936(MBM).**

July 20, 2004.

Harry H. Wise, III, New York, NY, for Plaintiff.
Richard A. Cirillo, Karen R. Kowalski, King & Spaulding
LLP, New York, NY, for Defendant Kuwait Finance House.

OPINION AND ORDER
MUKASEY, J.
*1 Plaintiff Neewra, Inc. ("Neewra") sued defendants Man-
akh al Khaleej General Trading and Contracting Co.
("Manakh"), Kuwait Finance House ("KFH"), Emirates Air-
lines, and Aramex, after Manakh failed to pay for $2.5 mil-
lion worth of software that Neewra sent to Manakh in
Kuwait. KFH now moves to dismiss the complaint against it
for lack of personal jurisdiction, pursuant to Rule 12(b)(2)
of the Federal Rules of Civil Procedure. For the reasons
stated below, KFH's motion is granted, and Neewra's com-
plaint against KFH is dismissed.

I.

The following relevant facts have been construed in the
light most favorable to Neewra. To the extent necessary, the
court has drawn logical inferences from the record to fill
gaps in the parties' presentation of the facts.

In early 2000, Neewra, a New York corporation, contracted
to supply 1,000 units of software to Manakh, a Kuwaiti
company, in exchange for $2.5 million. (Affidavit of Ar-
ween Sahni ("Sahni Aff.") ¶¶ 1-3) Before committing to the
contract, Manakh asked Neewra to sell it a sample of the
software in February 2002; Neewra sent the sample without
arranging to be paid before delivery. (Id. ¶ 4) Instead, Nee-
wra's president and sole owner, Arween Sahni, contacted

ABN Amro Bank in New York and asked it to arrange an
international collection ^FN1 of the $2,500 payment. (Id. ¶ 5)
Sahni told ABN Amro that KFH should be designated as the
consignee, which meant that ABN Amro would send the ne-
cessary documents to KFH in Kuwait, and KFH would de-
liver them to Manakh in exchange for the $2,500 payment.
(Id., Ex. A) ABN Amro instructed KFH to deliver the docu-
ments against payment and then remit payment to one of
several ABN AMRO accounts. (Declaration of Harry H.
Wise, III ("Wise Decl."), Ex. C)

> FN1. According to The Uniform Rules for Collec-
> tions, 1995 Revision, ICC Publication No. 522, a
> "collection" occurs when banks handle documents,
> in accordance with instructions received, in order
> to obtain payment and/or acceptance; deliver docu-
> ments against payment and/or acceptance; or deliv-
> er documents on other terms or conditions.
> (Declaration of Anwar Al-Fuzaie ("Al Fuzaie De-
> cl."), Ex., at § A-2-a) The documents involved in a
> collection may be either financial documents-bills
> of exchange, promissory notes, checks, or other in-
> struments for obtaining the payment of money-or
> commercial documents, such as invoices, transport
> documents, documents of title, or other non-
> financial documents. (Id. at § A-2-b)

Manakh received the software sample in Kuwait and told
Neewra that it was acceptable, and so Neewra went ahead
with the main transaction for 1,000 units of software. (Sahni
Aff. ¶ 6) Sahni delivered the software to Aramex, a freight
forwarding company. (Id.) Aramex gave Sahni duplicate
originals of the air waybill and then shipped the software to
Kuwait via Emirates Airlines. (Id .) Sahni then prepared the
necessary documents for a second collection, including an
original air waybill, and delivered them to ABN Amro. (Id.
¶ 7) Sahni told ABN Amro that the documents should be
sent to KFH in Kuwait, and KFH was to release the docu-
ments to Manakh in exchange for $2.5 million, which ABN
ultimately was to transfer to Neewra's account with Banco
Popular in New York. (Id., Ex. B) ABN Amro sent the rel-
evant documents to KFH with instructions to deliver the
documents to Manakh in exchange for $2.5 million, and
ABN again told KFH to remit the payment to one of several

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 2
Not Reported in F.Supp.2d, 2004 WL 1620874 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

ABN Amro accounts. (Wise Decl., Ex. F)

In early March, KFH remitted Manakh's $2,500 payment for the software sample to an ABN Amro account in Chicago, Illinois. (*Id.,* Exs. C, D) KFH had sent this money to ABN Amro through its correspondent account [FN2] at Citibank, N.A., in New York. (*Id.,* Exs. A, D, E) However, although Manakh had obtained the software in Kuwait, a $2.5 million payment never arrived from KFH. (Sahni Aff. ¶ 9) Neewra later learned that Manakh had never paid KFH for the second set of documents (*id.* ¶ 10), and it now claims that KFH gave Manakh those documents without requiring that Manakh make any payment. (Compl.¶ 14) According to Neewra, Manakh used the documents it received from KFH to prepare forgeries that enabled it to obtain possession of the software from Emirates Airlines in Kuwait City, Kuwait. (*Id.* ¶¶ 15-16)

> FN2. "Correspondent accounts are accounts in domestic banks held in the name of the foreign financial institutions." *Sigmoil Resources, N.V. v. Pan Ocean Oil Corp. (Nigeria),* 234 A.D.2d 103, 104, 650 N.Y.S.2d 726, 727 (1st Dep't 1996). "Typically, foreign banks are unable to maintain branch offices in the United States and therefore maintain an account at a United States bank to effect dollar transactions." *Id.*

*2 KFH is a public shareholding corporation organized and existing under the laws of Kuwait. (Declaration of Anwar Al-Fuzaie ("Al Fuzaie Decl.") ¶ 2) Its headquarters are in Kuwait City, Kuwait, and it is subject to the supervision and regulation of the Kuwaiti government. (*Id.*) KFH engages principally in banking services and real estate construction, leasing, and investing activities on its own behalf and for third parties, as well as in financial trading activities. (*Id.*) KFH has not been authorized by the New York Secretary of State to do business in New York. (*Id.* ¶ 3) KFH has no office or employees in New York, does not advertise or maintain telephone listings in New York, and does not own property in New York. (*Id.*) However, as described above, KFH does maintain a correspondent account with Citibank, N.A., in New York. (*See* Wise Decl., Ex. A, D, E) In addition, KFH boasts on its website that its investments "include various places in Asia, Europe, [and the] United States of Amer-

ica" and that its chairman "highlighted the significance of the American market and the success, which KFH achieved therein through investment in real estate and investment portfolios and funds, which are still operating and achieving highest returns for KFH and its customers." (*Id.,* Ex. B, at 2) With respect to the transactions at issue here, KFH sent and received communications in Kuwait and did not attend any meetings in New York. (Al Fuzaie Decl. ¶ 7) All KFH personnel who have knowledge about this transaction are located in Kuwait. (*Id.* ¶ 8)

On April 25, 2003, Neewra filed this action, which includes claims of conversion and negligence against KFH. (Compl.¶¶ 17-18, 22-23) On November 12, 2003, KFH filed this motion to dismiss, arguing that this court lacks personal jurisdiction over it and that dismissal is appropriate also under the doctrine of *forum non conveniens.*

II.

A plaintiff served with a Rule 12(b)(2) motion to dismiss bears the burden of establishing that the court has jurisdiction over the defendant, a burden it may carry by making "prima facie showing" of jurisdiction. *Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir.2001). The plaintiff can make this prima facie showing by pleading, in good faith, legally sufficient allegations of jurisdiction through its own affidavits and supporting materials. *Id.* Where the issue of jurisdiction is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff, and any doubts are resolved in the plaintiff's favor. *Id.* Accordingly, the following facts, which are drawn from the parties' affidavits and supporting materials, are construed in the light most favorable to Neewra. [FN3] Because Neewra's factual allegations are "deemed true to test the jurisdictional *theory* of the complaint," the court is not now conducting an inquiry into disputed jurisdictional facts. *Credit Lyonnais Securities (USA), Inc. v. Alcantara,* 183 F.3d 151, 154 (2d Cir.1999) (emphasis in original). If its jurisdictional theory proves to be sound, Neewra "still must prove the jurisdictional facts by a preponderance of the evidence, either at an evidentiary hearing or at trial." *Id.*

> FN3. Neewra's attorney, Harry H. Wise III, submitted a nine-page declaration containing assorted

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3
Not Reported in F.Supp.2d, 2004 WL 1620874 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

statements that relate to personal jurisdiction over KFH and to Neewra's claims against KFH. However, Wise concedes at the beginning of his declaration that "[s]ome of the facts, it will be clear, are not asserted by me upon personal knowledge, but rather upon my information and belief, based on my review of the documents and conversations with various persons." (Wise Decl. ¶ 1) To the extent that Wise's declaration asserts facts that are not based on Wise's personal knowledge, this declaration will be disregarded. *See Zurich Am. Ins. Co. v. Dah Sing Bank, Ltd.*, No. 03 Civ. 7778(DLC), 2004 WL 1328215, at *1 n. 2 (S.D.N.Y. Jun. 15, 2004) (citing *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir.1995)) (refusing to consider attorney affidavit that is not based on personal knowledge for the purposes of a Rule 12(b)(2) motion); *Kamen v. A.T. & T. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986) (refusing to consider attorney affidavit that is not based on personal knowledge for the purposes of a Rule 12(b)(1) motion). However, for the purposes of this motion, the court will consider the exhibits attached to Wise's declaration, to which KFH does not object. (*See* Reply Memorandum of Defendant KFH, at 1 n. 1)

## III.

**\*3** To determine whether KFH, a foreign corporation, is subject to jurisdiction in New York, this court must first determine whether there is jurisdiction over KFH under New York law and then decide whether such an exercise of jurisdiction would be consistent with federal due process. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.1999). Although Neewra argues that New York courts have jurisdiction over its cause of action under either subsection (1) or subsection (3) of N.Y. C.P.L.R. ("CPLR") § 302(a) (McKinney 2003), neither provision supports the exercise of jurisdiction over KFH. Accordingly, this court lacks jurisdiction over KFH under New York law and therefore need not determine whether the exercise of jurisdiction would meet due process requirements.

### A. *CPLR § 302(a)(1)*

According to Neewra, this court has jurisdiction over KFH under either prong of CPLR 302(a)(1), which allows a court to exercise personal jurisdiction over a non-domiciliary who "[1] transacts any business within the state or [2] contracts anywhere to supply goods or services in the state," provided that the cause of action also arises from those acts. *Id.* As will be discussed in more detail below, neither prong provides a basis for the exercise of jurisdiction over KFH here.

### 1. *Transacting Business Within New York*

Under the "transacting business" prong of CPLR § 302(a)(1), a court in New York may exercise jurisdiction over a non-domiciliary if "1) the defendant transacts business in New York, and 2) the cause of action arises out of that business activity, such that an articulable nexus exists between them." *Credit Lyonnais*, 183 F.3d at 153 (internal brackets and quotation marks omitted). "A defendant transacts business in New York when he 'purposefully avails' himself of the privilege of conducting business there, thus invoking the benefits and protections of New York law." *Id.* at 153-54. Courts look at the totality of circumstances surrounding a party's interactions with, and activities within, New York to determine whether it "transacted business" within this state. *Bank Brussels Lambert*, 171 F.3d at 787. "A cause of action arises out of a defendant's transaction of business in New York for purposes of Section 302(a)(1) when there exists an articulable nexus or a substantial relationship between transactions occurring within the state and the cause of action sued upon." *Sunward Elecs, Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir.2004) (internal quotation marks omitted).

In this case, KFH's only relevant connection to New York is its correspondent account with Citibank, which it used to transfer Manakh's $2,500 payment for a software sample to ABN Amro's account in Chicago, and which it presumably would have used to transfer the $2.5 million payment to ABN Amro, had that payment been collected. A foreign bank's mere maintenance of a correspondent account with a bank in New York, without more, is not enough to establish jurisdiction under CPLR § 302(a)(1). *See Faravelli v.*

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1620874 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

_Bankers Trust Co._, 85 A.D.2d, 355, 339, 447 N.Y.S.2d 962, 965 (1st Dep't 1982), _aff'd_, 59 N.Y.2d 615, 463 N.Y.S.2d 194 (1983). On the other hand, "a cause of action arising out of a transaction involving the _use_ of a correspondent account may confer jurisdiction over defendant in New York." _Chase Manhattan Bank v. Banque Generale du Commerce_, No. 96 Civ. 5184(KMW), 1997 WL 266968, at *2 (S.D.N.Y. May 20, 1997) (emphasis in original).

**\*4** According to Neewra, this cause of action, like the one in _Chase Manhattan Bank_, arises out of a transaction involving KFH's use of its correspondent account with Citibank because KFH used that account to transfer the $2,500 payment for a software sample to ABN Amro. (_See_ Plaintiff's Memorandum of Law in Opposition ("Pl.Memo.") at 9) What Neewra fails to recognize, however, is that the collection of the $2,500 payment for a sample was a different transaction from the later, unsuccessful attempt to collect the $2.5 million. From Neewra's perspective, of course, these two collections were part of the same business transaction because both were made in furtherance of Neewra's agreement to sell software to Manakh.[FN4] However, KFH, which received two separate sets of instructions from ABN Amro about the two collections, had no basis for concluding that the $2,500 and $2.5 million collections were related to the same business transaction, rather than to different transactions between the same parties. (_See_ Wise Decl., Exs. C, F) Here, KFH entered into two separate agreements with ABN Amro to perform two separate collections on behalf of Neewra, and under these circumstances, Neewra's cause of action arises only from transactions involving the second collection of $2.5 million and not out of transactions involving the first, successful collection of $2,500. _See Goldmark Plastics Int'l, Inc. v. Poly Line, Inc._, No. 97 Civ. 5568(JG), 1998 WL 817693, at *2 (E.D.N.Y. Feb. 4, 1998) (explaining that cause of action based on breach of contract arose only from the contract that was breached and not also from a separate contract that the same parties entered into "almost contemporaneously"). Accordingly, only KFH's activities in New York that related to the failed second collection may be considered for the purpose of determining whether jurisdiction exists under CPLR § 302(a)(1).

     FN4. Neewra even suggests that the $2,500 collec-

tion was a necessary prerequisite to the $2.5 million collection because the latter would not have occurred if Manakh had not inspired Neewra's confidence by paying for the sample. (Pl. Memo. at 9) However, Neewra's suggestion that the second collection was somehow dependent on the successful completion of the first is belied by the fact that KFH did not complete the first collection until early March, more than two weeks after Neewra initiated the second collection. (_See_ Wise Decl., Exs. D, F)

Neewra argues that KFH transacted business in New York with respect to the second collection by maintaining a correspondent account in the state that it would have used to transfer the $2.5 million payment to ABN Amro if the collection had gone according to plan. (Pl. Memo. at 9) However, even assuming _arguendo_ that KFH would have transacted business in New York if it had actually used its correspondent account to transfer money for the second collection, this never in fact occurred and thus cannot constitute the transaction of business in New York.

The Appellate Division, First Department, addressed a similar set of facts in _Faravelli_, a case which involved an Indian bank that sent documents to a New York bank with instructions to remit payment to the Indian bank's correspondent account in New York. 85 A.D.2d at 336, 447 N.Y.S.2d at 964. In _Faravelli_, as here, the foreign bank's correspondent account in New York would have been used if the collection had unfolded as planned, but the collection was never completed, and accordingly the correspondent account was never actually used in the transaction. _Id._ The _Faravelli_ court never acknowledged the possibility that the correspondent account's intended involvement in the collection, without any actual involvement, could be considered evidence that the Indian bank transacted business in this state, and indeed the court described the bank's "sole nexus" with New York as "the transmittal of the documents calling for payment on the letter of credit and the maintenance of correspondent accounts with three or four banks in New York City." 85 A.D.2d at 338, 447 N.Y.S.2d at 965.

**\*5** Like the _Faravelli_ court, I do not consider KFH's correspondent account's potential but unrealized involvement in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                        Page 5
Not Reported in F.Supp.2d, 2004 WL 1620874 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

the second collection to constitute activity in New York that is relevant to the question of jurisdiction. That KFH probably would have used its correspondent account to transfer money to ABN Amro if the collection had gone forward does not mean that KFH has purposefully availed itself of the privilege of conducting business in New York; at most, it shows only that KFH might have so availed itself if circumstances had been different. Because the relevant inquiry for the first prong of CPLR § 302(a)(1) is whether a foreign domiciliary actually transacted business in New York, not whether it might have done so in a hypothetical situation that never occurred, KFH's did not engage in any activities in New York that were relevant to the second collection, apart from maintaining a correspondent account with Citibank. As discussed above, a foreign bank's maintenance of a correspondent account in New York, without more, is not enough to establish jurisdiction under the first prong of CPLR § 302(a)(1), and accordingly this prong does not provide a basis for the exercise of jurisdiction over KFH.

### 2. Contract to Supply Goods or Services in New York

Neewra argues also that jurisdiction is appropriate under the second prong of CPLR § 302(a)(1) because KFH contracted to supply services in New York when it accepted ABN Amro's collection request, which required KFH to send Manakh's money to ABN Amro for ultimate receipt by Neewra in New York. (Pl. Memo. at 10) According to Neewra, KFH's commitment to send the money to ABN Amro through normal banking channels should be considered a contract for services that is analogous to a financial guaranty payable in New York (*id.* at 10-11), which the Second Circuit has construed as a contract to perform services within the meaning of § 302(a)(1). *See A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 80-81 (2d Cir.1993). Neewra's attempt to analogize KFH's role in the collection to a guaranty does not survive scrutiny.

Black's Law Dictionary (8th ed.2004) defines a guaranty as "[a] promise to answer for the payment of some debt, or the performance of some duty, in case of the failure of another who is liable in the first instance." *Id.* In this case, there is absolutely no indication that KFH guaranteed Manakh's payment to Neewra by assuming liability for Manakh's debt in the event Manakh failed to pay. Indeed, Neewra does not

allege that KFH made such a promise; Neewra claims only, without explanation, that KFH's agreement to forward payments it received from Manakh to ABN Amro is "no different from the guaranty situation." (Pl. Memo. at 10) As the above definition indicates, KFH's agreement to send money to ABN Amro is different from a guaranty, and so Neewra's invocation of guaranty cases does not establish that this agreement should also be considered a contract to provide services in New York that gives rise to jurisdiction. *Cf. Semi Conductor Materials, Inc. v. Citibank Int'l PLC,* 969 F.Supp. 243, 247 (S.D.N.Y.1997) (explaining that plaintiff's reliance on guaranty cases was unavailing because plaintiff's case did not concern the breach of a guaranty agreement).

**\*6** Neewra does not suggest any other basis for concluding that KFH contracted to provide goods or services in New York, and the court can see no rationale which would support such a conclusion. Accordingly, this cause of action does not arise out of any contract by KFH to supply goods or services in this state, and the second prong of CPLR § 302(a)(1) therefore does not provide a basis for the exercise of jurisdiction over KFH.

### B. *CPLR § 302(a)(3)*

In addition to arguing that jurisdiction is proper under either prong of CPLR § 302(a)(1), Neewra argues also that jurisdiction is proper under § 302(a)(3)(ii), which provides for jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state ..., if he ... expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." *Id.* KFH contends that § 302(a)(3) does not apply in this case for two reasons: (1) KFH's alleged wrongs were contractual in nature, rather than tortious, and (2) Neewra's injury occurred in Kuwait, not in New York. (Defendant KFH's Memorandum of Law in Support of Its Motion at 8-10)

At first glance, this court, like KFH, is hard-pressed to discern how KFH's mishandling of the collection in Kuwait could give rise to a tort claim instead of a breach of contract claim. However, *Zhejiang Tongxiang Import & Export Corp. v. Asia Bank, N.A.,* No. 98 Civ. 8288(JSM), 2001 WL

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                              Page 6
Not Reported in F.Supp.2d, 2004 WL 1620874 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

66331 (S.D.N.Y. Jan. 25, 2001), suggests that KFH's wrongful surrender of Neewra's documents to Manakh might constitute conversion. See id. at *4 (explaining that collecting bank's release of documents before payment constituted conversion when bank was required to release the documents-bills of lading-only after payment). Accordingly, this court assumes, without so deciding, that KFH's alleged wrong in this case-releasing Neewra's documents to Manakh in Kuwait without obtaining the requisite payment-could be considered "a tortious act without the state." CPLR § 302(a)(3).

The next question is whether KFH's tortious act in Kuwait "caus[ed] injury to person or property within the state." CPLR § 302(a)(3). To determine whether there is injury in New York sufficient to warrant CPLR § 302(a)(3) jurisdiction, courts must generally apply a "situs-of-injury" test to determine where the original event that caused the injury occurred. Whitaker, 261 F.3d at 209. "The situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff." Id. (internal brackets and quotation marks omitted). "The occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York." Id.

*7 In its brief, Neewra appears not to recognize that an "original event which caused the injury" is not necessarily the same as the final injury itself, despite the Second Circuit's instruction that such an " 'original event' is ... generally distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort." Bank Brussels Lambert, 171 F.3d at 791. In this case, the distinction between the original event that caused injury and the injury Neewra felt is critical. No one could seriously dispute Neewra's contention that it suffered financial injury in New York; Neewra is located here, and it was here that Neewra felt the financial consequences of KFH allegedly tortious mishandling of the collection. However, Neewra's financial injury here cannot be considered "the original event which caused the injury" or the first effect of KFH's tort. Instead, the first effect of KFH's mishandling of the

collection, and the relevant injury for the purposes of CPLR § 302(a)(3), occurred in Kuwait when Manakh successfully obtained the air waybill without being required to pay $2.5 million. See Popper v. Podhragy, 48 F.Supp.2d 268, 274 (S.D.N.Y.1998) (concluding that, for the purposes of CPLR § 302(a)(3), injury occurred where the conversion actually occurred, not where the plaintiff suffered financial loss). This "original event" then caused Neewra financial harm in New York because KFH, left with neither air waybill nor payment, had nothing to send to ABN Amro. Therefore, although Neewra suffered financial consequences here, the situs of Neewra's injury was Kuwait, not New York. See Fantis Foods, Inc. v. Standard Importing Co., Inc., 49 N.Y.2d 317, 325-27, 425 N.Y.S.2d 783, 786-87 (1980) (New York company's indirect financial loss did not establish injury in New York for purposes of § 302(a)(3) when loss was caused by conversion of feta cheese which occurred either in Greece or on the high seas). Because Neewra has thus failed to allege an injury in New York that can serve as a basis for jurisdiction under § 302(a)(3), that subsection does not provide a justification for the exercise of jurisdiction in this case.

IV.

Neewra argues in the alternative that this court "should allow discovery of the extent of the contacts of KFH with the United States in general and with New York State in particular." (Pl. Memo. at 13) According to Neewra, KFH's website, which mentions KFH's "investment in real estate and investment portfolios and funds" in the United States and "the significance of the American market" to KFH, shows that KFH may be subject to personal jurisdiction in New York under CPRL § 301 because it is "doing business" in this state. (Wise Decl., Ex. B. See Pl. Memo. at 13)

Under CPLR § 301, this court may exercise jurisdiction over KFH "if it has engaged in such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in this jurisdiction is warranted." Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 77 N.Y.2d 28, 33, 563 N.Y.S.2d 739, 741 (1990). To determine whether a foreign corporation is "doing business" in this state, courts look at several traditional indicia, including "whether the company has an office in the state, whether it has any bank

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

Not Reported in F.Supp.2d                                                                                    Page 7
Not Reported in F.Supp.2d, 2004 WL 1620874 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

accounts or other property in the state, whether it has a phone listing in the state, whether it does public relations work there, and whether it has individuals permanently located in the state to promote its interests." *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 98 (2d Cir.2000).

**\*8** KFH has submitted a declaration from Anwar Al-Fuzaie, the head of its legal department, which reveals KFH's contacts with New York to be minimal. KFH does not have an office in New York, does not own property in New York, does not have a telephone listing in New York, does not advertise in New York, and does not have employees in New York. (Al-Fuzaie Decl. ¶ 3) KFH is also not incorporated, licensed, or authorized by the New York Secretary of State to do business in this state. (*Id.*) Indeed, KFH's only contact with New York appears to be its correspondent account at Citibank, which is insufficient, without more, to show that KFH was doing business in New York. *See Nemetsky v. Banque de Developpement de la Republique du Niger,* 48 N.Y.2d 962, 964, 425 N.Y.S.2d 277, 277 (1979) (mem.). Neewra has provided no concrete facts that discredit Al-Fuzaie's declaration, although Neewra speculates that Al-Fuzaie's declaration "may well be false" because KFH's website contains broad claims about KFH's investments in the United States as a whole. (Pl. Memo. at 13) However, KFH's claims on its website, which does not include any statements specific to New York, do not contradict any statements in Al-Fuzaie's sworn declaration and also do not establish that KFH was doing business in New York in a systematic and continuous way. "Whatever speculations or hopes plaintiff may have that further connections to New York will come to light in discovery, plaintiff has not provided sufficient facts to establish the jurisdiction that is a prerequisite to any such discovery." *Rosenberg v. PK Graphics,* No. 03 Civ. 6655(NRB), 2004 WL 1057621, at \*1 (S.D.N.Y. May 10, 2004). Accordingly, Neewra may not conduct discovery of KFH's contacts with New York.

For the reasons stated above, this court may not exercise jurisdiction over KFH under New York law and thus need not address KFH's other arguments about its due process rights and the applicability of the doctrine of *forum non conveniens.* KFH's Rule 12(b)(2) motion is granted, and Neewra's action against KFH is dismissed for lack of personal

jurisdiction.
SO ORDERED:

S.D.N.Y.,2004.
Neewra, Inc. v. Manakh Al Khaleej General Trading and Contracting Co.
Not Reported in F.Supp.2d, 2004 WL 1620874 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:03cv02936 (Docket) (Apr. 25, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.