30

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 442799 (S.D.N.Y.), RICO Bus.Disp.Guide 9110
(Cite as: Not Reported in F.Supp.)

Page 1

United States District Court, S.D. New York.
RAY LARSEN ASSOCIATES, INC., Plaintiff,
v.
NIKKO AMERICA, INC. and Nikko Company, Ltd., Defendants.
No. 89 Civ. 2809 (BSJ).

Aug. 6, 1996.

OPINION AND ORDER
JONES, District Judge:
*1 Plaintiff Ray Larsen Associates, Inc. ("RLA") brings this action alleging six claims arising out of the alleged breach of a contract for the distribution of toys. The complaint alleges breach of contract, fraud in the making of the contract, fraud in the performance of the contract, negligent misrepresentation, and violations of sections 1962(c) and 1962(d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961-1968. The complaint also asserts a claim for double damages, attorneys fees, costs and disbursements pursuant to New York Labor Law § 191-c. Defendants Nikko America, Inc. ("Nikko-America") and Nikko Co. Ltd. ("Nikko") have moved pursuant to Rule 12(c), Fed.R.Civ.P., to dismiss the second, third, fifth, and sixth claims, as well as plaintiff's claim for damages under New York Labor Law section 191-c.

Statement of Facts FN1

   FN1. On a motion for judgment on the pleadings, this Court must construe the allegations in the complaint as true. *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), cert. denied, 115 S.Ct. 73 (1994).

Defendant Nikko is a Japanese toy manufacturer, with affiliated manufacturing plants in Tokyo and Singapore. It has established a worldwide sales network through which it distributes and sells Nikko products. Nikko-America is a sales division of Nikko. Joseph Lingg, who was held out as vice president of Nikko-America, entered into negotiations with plaintiff RLA-a toy manufacturers' representative-to retain it to represent Nikko-America in connection with the importation and distribution of Nikko products in the northeast region of the United States.

The complaint alleges that Nikko-America and RLA entered into an agreement in late 1984 or early 1985; however, the Manufacturer's Representative Agreement (the "Agreement") was signed in May 1986. Pursuant to the Agreement, RLA agreed to call upon toy retailers and potential customers in the Assigned Territory (which included states in the northeast from Maine to Maryland) and to solicit orders for, and to sell, Nikko products. All orders that were solicited by RLA were forwarded from RLA to Nikko-America so that Nikko-America could accept and fill the orders, or reject them. Nikko-America agreed to furnish copies of invoices at the time of shipment and forward those invoices to RLA. Pursuant to the Agreement, RLA was to receive 5% of net sales in the territory. According to the complaint, RLA relied on the receipt of invoices in order to track the shipment of orders to RLA customers, to substantiate the sales to RLA customers, and to assure the accurate and timely payment of commissions due RLA as a result of the sale of Nikko products in the territory. Compl. ¶ 195.

Furthermore, the Agreement provided that Nikko-America was to pay 1% of net sales in the Assigned Territory to RLA for the showroom space which RLA provided to Nikko-America. Pursuant to an Amendment to the Agreement on December 1986, however, Nikko-America leased showroom space from RLA and agreed to pay RLA approximately $3800 per month, due on the 20th day of each month.

The Agreement provided that it "shall continue in effect for one year, and shall automatically be extended from year to year thereafter," subject to termination by either party "at the end of any calendar year by giving twelve months written notice." Agreement at ¶ 4. On December 27, 1989, Nikko-America's former counsel Baker & McKenzie forwarded to RLA's counsel a letter which provided twelve months written notice of the termination of the Agreement. According to the Complaint, the Agreement would have run to December 31, 1990, had it not been breached by defendants.

*2 According to the complaint, Nikko-America was in breach of the Agreement because, *inter alia,* it failed to forward copies of all invoices to RLA at the time of shipment

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 442799 (S.D.N.Y.), RICO Bus.Disp.Guide 9110
(Cite as: Not Reported in F.Supp.)

Page 2

of Nikko products, failed to pay RLA commissions on a monthly basis, failed to pay RLA the full amount of the commissions during 1988, 1989, and 1990, failed to pay commission to RLA on the sales of Nikko products to the so-called 'house accounts' located in the Assigned Territory, refused to furnish RLA with copies of any invoices relating to shipments made to the Assigned Territory beginning in April 1989, refused to pay rent to RLA for the showroom space as required under the Amendment to the Agreement, failed and refused to lend ordinary assistance to RLA in the day-to-day business associated with the filling and shipment of orders, and failed to fulfill shipping commitments to RLA customers. In connection with this breach, plaintiff alleges six separate causes of action.

Discussion

A motion for judgment on pleadings pursuant to Fed.R.Civ.P. 12(c) is governed by the same standards as those applicable to a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir.), cert. denied, 115 S.Ct. 73 (1994). Under these standards, a court must "view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party." Davidson v. Flynn, 32 F.3d 27, 29 (2d Cir.1994) (quoting Madonna v. United States, 878 F.2d 62 (2d Cir.1989)). The complaint may not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See Ad-Hoc Comm. of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College, 835 F.2d 980, 982 (2d Cir.1987).

1. Claim for fraudulent inducement

Plaintiff alleges in its second claim for relief that defendants are liable for fraudulent inducement. It alleges that as an inducement to cause RLA to enter into the Agreement with Nikko-America, Joseph Lingg represented-by entering the Agreement-that Nikko-America would do and perform certain things pursuant to the terms of the Agreement. Compl. ¶ 261. RLA further alleges that "[a]t the time Lingg signed the Agreement on behalf of Nikko-America in May 1986, Lingg (and therefore his principal, Nikko-America) had no intention of honoring" any of the specific terms of the Agreement. Therefore, according to the complaint, Lingg's representations that defendant would perform its contractual promises-which he made by entering into the Agreement-were false and fraudulent. Compl. ¶¶ 262-263. RLA claims that these representations were material and justifiably relied upon by RLA, and as a result of such reliance, it has suffered damages of at least $1.1 million. RLA also claims that this fraud warrants punitive and exemplary damages of at least three times the actual damages caused to plaintiff by defendants' fraud. Compl. ¶ 262-266. Defendants moved to dismiss this second cause of action.

*3 Generally, allegations that a party has breached a contract do not give rise to a claim for fraud or fraudulent inducement. See Sudul v. Computer Outsourcing Services, 868 F.Supp. 59 (S.D.N.Y.1994). The New York Court of Appeals has held, however, that a claim for fraud will lie where at the time a party made a promise, it had no intention of keeping it. Sabo v. Delman, 3 N.Y.2d 155, 164 N.Y.S.2d 714 (1957). Nevertheless, since Sabo was decided, a line of cases has carved out an exception to its rule. Courts in New York have established that where the plaintiff's claim for fraudulent inducement arises out of the same facts as the breach of contract claim, and the only addition is an allegation that defendant never intended to perform the precise promises in the contract that plaintiff alleges were breached, the fraud claim is unavailable. See e.g., Sudul, 868 F.Supp. at 61-62 (collecting cases which apply this rule); see also Village on Canon v. Bankers Trust Co., 920 F.Supp. 520 (S.D.N.Y.1996) ("The mere allegation that a party to a contract did not intend to perform an express contractual promise does not state a claim for fraud under New York law."); Papa's-June Music, Inc. v. McLean, 921 F.Supp. 1154 (S.D.N.Y.1996); Pi, Inc. v. Quality Products, Inc., 907 F.Supp. 752 (S.D.N.Y.1995), rearg. denied, 916 F.Supp. 332 (S.D.N.Y.1996); New York University v. Continental Insur. Co., 87 N.Y.2d 308, 662 N.E.2d 763, 639 N.Y.S.2d 283 (1995).

The law is clear that where a plaintiff has a breach of contract claim and alleges that a defendant had no intention of keeping the promises that it made in the contract, a plaintiff may not bootstrap a fraud claim to its breach of contract claim. Sudul, 858 F.Supp. at 62. Thus, in order to be action-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1996 WL 442799 (S.D.N.Y.), RICO Bus.Disp.Guide 9110  
(Cite as: Not Reported in F.Supp.)

Page 3

able, the fraud must have been with respect to a collateral matter, rather than the intention to perform under the contract. See Papa's-June Music, 921 F.Supp. at 1161 (noting that to maintain a claim for fraud, a plaintiff must allege (1) a legal duty separate and apart from the contractual duty to perform, (2) a fraudulent representation collateral or extraneous to the contract, or (3) special damages proximately caused by the fraudulent representation that are not recoverable under the contract measure of damages); Pi, Inc., 907 F.Supp. at 761-62 (citing cases dismissing fraud claims where alleged misrepresentations were not "collateral" to contracts).

The recent case from New York's Court of Appeals, Graubard Mollen Dannett & Horowitz v. Moskovitz, 86 N.Y.2d 112, 653 N.E.2d 1179, 629 N.Y.S.2d 1009 (1995), does not change the law in this area. Graubard involved a retirement contract under which defendant, a partner who was retiring from plaintiff law firm, agreed to "integrate, to the extent possible, relationships between the firm's clients and the other partners." The law firm sued the partner after he persuaded a client to leave the firm with him. The firm alleged breach of fiduciary duty, breach of his retirement contract, and fraud. With respect to the claim for fraud, the court stated generally that "[a] false statement of intention is sufficient to support an action for fraud, even where the statement relates to an agreement between the parties." 86 N.Y.2d at 122. Because defendant allegedly represented orally to the partnership-at the same time that the agreement was presented-that he and other senior partners would ensure the future of the firm by integrating clients without ever having the intention to do so, plaintiff had stated a cause of action in fraud.

*4 Because Graubard allowed a fraud claim where the fraud concerned not a collateral matter but an oral reiteration of the very promise in the agreement, Graubard seems to break with the established rule that there is no fraud where a plaintiff alleges merely that the defendant never intended to perform. Nevertheless, any confusion as to the effect of Graubard was clarified six months later by the New York Court of Appeals in New York University v. Continental Insur. Co., 87 N.Y.2d 308, 662 N.E.2d 763, 639 N.Y.S.2d 283. In New York University, the Court of Appeals reaffirmed that "[g]eneral allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support the claim [of fraud]." 87 N.Y.2d at 318, 662 N.E.2d at 769, 639 N.Y.S.2d 283, 289 (1995). The court explained that "[a]t the very threshold, then, plaintiff must allege a misrepresentation or material omission by defendant, on which it relied, that induced plaintiff to [enter the insurance contract at issue]." Id.

Unlike in Graubard, plaintiff RLA has alleged no misrepresentation or omission that defendant made to it in order to induce it to enter the Agreement. Rather, plaintiff alleges merely that defendants never intended to perform under the Agreement, and alleges no additional fraud whatsoever. As such, plaintiff's fraud claim simply reiterates the breach claim, engrafting to it defendants' state of mind. Because plaintiff's claim goes merely to an alleged lack of intention to fulfill its contractual obligations, plaintiff fails to state a claim for fraudulent inducement. See Papa's-June Music, Inc., 921 F.Supp. at 1161-62 (granting a 12(b)(6) motion on the same grounds); Sudul, 868 F.Supp. 59; Pi, Inc., 907 F.Supp. at 762. Accordingly, defendants' motion to dismiss plaintiff's second claim is granted.

2. Fraudulent breach of contract

Defendants also move to dismiss plaintiff's third claim of relief for fraudulent breach of contract. This allegation essentially sets forth a claim of relief on a theory of fraudulent concealment. Plaintiff claims actual damages in the amount of $1.1 million for the loss of commissions during 1988 and 1989. In addition, plaintiff seeks punitive damages of at least three times the amount of its actual damages. Compl. ¶¶ 336-338.

Plaintiff must allege the following elements for a claim of fraudulent concealment: (1) nondisclosure of (2) material facts, in the face of (3) a duty to disclose, (4) scienter, (5) reliance, and (6) damages. See Brass v. American Film Technologies, Inc., 987 F.2d 142, 152 (2d Cir.1993). Both parties have focused on the element of the duty to disclose. "In business negotiations, an affirmative duty to disclose material information may arise from the need to complete or clarify one party's partial or ambiguous statement, or from a fiduciary or confidential relationship between the parties.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1996 WL 442799 (S.D.N.Y.), RICO Bus.Disp.Guide 9110
**(Cite as: Not Reported in F.Supp.)**

Such a duty may also arise ... where: (1) one party has superior knowledge of certain information; (2) that information is not readily available to the other party; and (3) the first party knows that the second party is acting on the basis of mistaken knowledge." *Banque Arabe et Internationale D'Investissement v. Maryland National Bank,* 57 F.3d 146, 155 (2d Cir.1995) (citations omitted); *see also Brass,* 987 F.2d at 150. As there are no allegations of partial or ambiguous statements, nor of a fiduciary or other relationship of trust, this Court focuses on superior knowledge as a possible basis for finding that defendants had a duty to disclose.

*5 Plaintiff argues first that defendants were under a duty to be truthful in connection with ongoing renewals or non-renewals of the agreement. Second, plaintiff argues that defendants were under a duty of disclosure because they have superior knowledge with respect to the amount of sales of Nikko products in the Assigned Territory, the credits for returned Nikko products, advertising allowances and freight costs, and the amount of commissions that Nikko-America owed to RLA under the Agreement. Compl. ¶ 334. Plaintiff's first argument collapses into its second: plaintiff appears to argue that defendants' duty to be truthful in connection with ongoing renewals of the Agreement arises from its superior knowledge with respect to information relevant to the calculation of commissions.

A review of the cases which recognize a duty to disclose due to one party's superior knowledge reveals that the duty ordinarily arises only in the context of business negotiations where parties are entering a contract. *See, e.g., Banque Arabe,* 57 F.3d at 155 (explaining that the duty arises "[i]n business negotiations"); *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.,* 731 F.2d 112, 123 (2d Cir.1984). In the instant case, the fraud was alleged to have been committed *after* the contract had been formed-as part of a breach of the contract-rather than before or during its negotiation.[FN2]

> FN2. The fact that the contract was renewed annually does not provide a basis for finding a duty to disclose because such renewals do not constitute the formation of new contracts. *See Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.,* 925 F.2d 566, 570 (2d Cir.1991) ( "Renewal normally involves a continuation of the relationship on essentially the same terms and conditions as the original contract.") (internal quotations omitted).

Furthermore, courts have imposed a duty of disclosure where parties contract for the sale of an item which had some latent defect that the buyer could not have been expected to uncover. *See, e.g., Brass,* 987 F.2d 142 (finding a duty of disclosure arising out of the sale of securities which only the seller knew were restricted, and discussing the duty of disclosure in the context of the sale of a house, an amusement center, and a promissory note). By contrast, in the instant case, plaintiff's claims arise out of a distribution agreement which was breached through the fraudulent calculation of commissions. There was no latent defect to be discovered by a party to this contract because defendants merely concealed their breach. Such concealment, moreover, is not actionable as fraud in New York. *The Reuben H. Donnelly Corp. v. Mark I Marketing Corp.,* 893 F.Supp. 285, 290 (S.D.N.Y.1995) ("Under New York law, ... alleged concealment of a breach is insufficient to transform what would normally be a breach of contract into one for fraud.") (citations omitted). Thus, even construing all facts in favor of plaintiff, defendants' motion should be granted with respect to plaintiff's third claim for relief.

3. Section 1962(c) RICO claim:

Defendants also move to dismiss plaintiff's fifth cause of action under RICO. To state a claim under RICO,[FN3] a plaintiff must allege injury resulting from "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Pier Connection, Inc. v. Lakhani,* 907 F.Supp. 72, 75 (S.D.N.Y.1995) (quoting *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479)).

> FN3. There is a split among the district courts in this Circuit as to whether the failure to plead common law fraud should automatically preclude claims under RICO. Compare *GLM Corp. v. Klein,* 684 F.Supp. 1242, 1244 (S.D.N.Y.1988) (holding that the absence of common law fraud does not preclude claims under RICO); *Scharff v. Claridge Gardens, Inc.,* No. 88 Civ. 2047, 1990 WL 186879 (S.D.N.Y. November 20, 1990) (same); with *Compania Sud-Americana de Vapores v. IBJ Schroder*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp. Page 5
Not Reported in F.Supp., 1996 WL 442799 (S.D.N.Y.), RICO Bus.Disp.Guide 9110
(Cite as: Not Reported in F.Supp.)

*Bank & Trust Co.*, 785 F.Supp. 411, 424-425 (S.D.N.Y.1992) (holding that the absence of common law fraud does preclude claims under RICO); *Morin v. Trupin*, 711 F.Supp. 97, 105 (S.D.N.Y.1989) (same).

As predicate acts for its RICO claims, plaintiff alleges violations of the mail and wire fraud statutes, which require only a scheme to defraud and a mailing or use of the wires in furtherance of that scheme. *United States v. King*, 860 F.2d 54, 55 (2d. Cir.1988), cert. denied, 490 U.S. 1065 (1989); *United States v. Von Barta*, 635 F.2d 999, 1005 n. 11 (2d Cir.1980), cert. denied, 450 U.S. 998 (1981). Because these statutes are broader than common law fraud, it is possible for a plaintiff sufficiently to plead mail or wire fraud while nevertheless failing to plead common law fraud. As such, this Court follows the line of cases that recognize claims under RICO despite the absence of common law fraud. See *Scharff*, No. 88 Civ. 2047, 1990 WL 186879; *GLM Corp. v. Klein*, 684 F.Supp. 1242, 1244 (S.D.N.Y.1988).

It should be noted, however, that even if this Court were to follow the contrary line of cases that refuse to recognize RICO claims where there are no fraud claims, this Court's conclusion granting defendants' motion for judgment on the RICO claims nevertheless would not be effected. In either case, the RICO claims must be dismissed.

*6 In defining "pattern of racketeering activity," the statute itself requires only a minimum of at least two predicate acts that occurred within two years of each other. 18 U.S.C. § 1961(5). The showing of two acts is necessary but not sufficient for a showing of pattern. The Supreme Court has explained that in order to show pattern, a plaintiff must show that among the predicate acts there is both relationship and continuity. *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240 (1989).

Predicate acts are "related" when they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* Continuity, on the other hand,

is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. It is, in either case, centrally a temporal concept.... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated.

*Id.* at 241-42 (citations omitted). Thus, to determine whether plaintiff has adequately pleaded a pattern of racketeering activity, this Court must consider whether there is both relationship and continuity among the alleged predicate acts.

Relationship

In its complaint, plaintiff alleges acts of mail and wire fraud beginning in March 1987 and continuing through March 1989. These communications made via mail and wire contained misrepresentations relating to the amount of commissions due RLA under the Agreement. In its RICO Statement, plaintiff further alleges predicate acts of wire fraud relating to the transfer of funds to maximize overseas profits and understate defendants' total taxable income during the period of July through August 1990.

Plaintiff argues that defendants' use of the mail and wires to transfer funds overseas, thereby effecting fraud on the IRS, is related to defendants' scheme to defraud RLA out of its commissions. Thus, in making this argument, plaintiff broadly frames defendants' scheme as a scheme to maximize profits. Although it alleges these two types of conduct as predicate acts, however, plaintiff's only injury-failure to receive the appropriate amount of commissions during the years of 1988, 1989 and 1990 [FN4]-was caused by defendants' fraud directed at RLA under the Agreement, and not by defendants' siphoning of funds overseas.[FN5]

FN4. Because of this injury, plaintiff clearly has

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 6
Not Reported in F.Supp., 1996 WL 442799 (S.D.N.Y.), RICO Bus.Disp.Guide 9110
**(Cite as: Not Reported in F.Supp.)**

standing to sue under RICO with respect to those predicates which caused plaintiff's injury. *See generally Sedima,* 473 U.S. at 496 ("Where the plaintiff alleges each element of the [RICO] violation, the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise."); *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21 (2d Cir.1990).

> FN5. Plaintiff vaguely asserts in its RICO Statement that it was injured by defendants' siphoning of funds overseas because in order to accomplish these acts, defendants provided false information to plaintiff's customers, thereby injuring plaintiff. RICO Statement at 52. Even construing all inferences in favor of plaintiff, this Court can find nothing in this vague assertion from which to draw any inference whatsoever.

Moreover, defendants' acts of siphoning funds overseas are insufficiently related to the fraud that caused RLA's injury in terms of purpose, victims, and methods of commission. *See H.J. Inc.,* 492 U.S. at 240. Defendants allegedly made fraudulent representations to RLA in order to defraud RLA out of commissions; only RLA was the victim of this fraud, which was accomplished by fraudulent reporting to RLA in breach of the Agreement. By contrast, defendants' alleged fraudulent transfer of funds overseas aimed to avoid United States taxation; only the IRS was the victim of this fraud, which was accomplished by internal memoranda and communications in an effort to wire funds out of the United States.

*7 Although these two types of conduct may be interrelated in the sense that both have the effect of generally increasing defendants' funds, the relationship between the two types of conduct is simply too remote to support a claim under RICO. A finding that this conduct is related would render the requirement of relationship meaningless.[FN6]

> FN6. *Accord Heller Financial Inc. v. Grammco Computer Sales, Inc.,* 71 F.3d 518, 524-25, n. 22

(5th Cir.1996) (finding that the alleged predicate acts of bribing an employee of a hospital (which allowed the extraction of supra-competitive profits from its leases) and the alleged predicate acts of fraud on plaintiff (which sought to induce plaintiff into making a loan on terms that would otherwise not have been available) were not sufficiently related, noting that plaintiff's broad "reaping the profits" theory of relationship describes every lease financing loan, and observing that "to allow a finding of relationship on the facts of this case would effectively eliminate any meaningful relationship requirement"); *Committee to Defend the United States Constitution v. Moon,* 776 F.Supp. 568 (D.D.C.1991).

A review of the record suggests that plaintiff has alleged these predicate acts as an afterthought, in order to buttress its weak argument with respect to "continuity," that is, to extend the duration of the scheme. These acts, however, are unrelated to the predicate acts which allegedly injured plaintiff,[FN7] and therefore can not be considered as part of the activity to extend the scope of the "pattern." *See Vild v. Visconsi,* 956 F.2d 560, 566 (6th Cir.), *cert. denied,* 506 U.S. 832 (1992) (stating that plaintiff "cannot complain about harm to [other entities]"); *Committee to Defend the United States Constitution v. Moon,* 776 F.Supp. 568, 572 (D.D.C.1991) (noting that it would "only consider those acts which have resulted in business or property harm to the [plaintiff]," and holding that plaintiff's claim of harm from those acts on others was "simply too remotely related" to support a RICO claim).

> FN7. *See Burdick v. American Express Co.,* 865 F.2d 527, 529 (2d Cir.1989) (holding that where plaintiff employee sued defendant bank employer for termination as a result of his complaints about fraud on customers, plaintiff could not assert RICO violation because harm to defendant's customers resulting from defendant's fraudulent practices was "too remotely related" to the predicate acts alleged by plaintiff).

Accordingly, in determining the scope of the alleged racketeering activity, this Court may not consider the unrelated

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp. Page 7
Not Reported in F.Supp., 1996 WL 442799 (S.D.N.Y.), RICO Bus.Disp.Guide 9110
**(Cite as: Not Reported in F.Supp.)**

predicate acts pertaining to siphoning funds overseas. *See Vild,* 956 F.2d at 570 ("We are persuaded that only conduct which is essentially related may be used to establish continuity.") (citing *H.J. Inc.,* 109 S.Ct. at 2902).

Continuity

Having limited the RICO scheme to the predicate acts relating to the fraud on RLA, this Court must consider whether there is continuity among those acts. First, it is clear that plaintiff can not establish open-ended continuity in this case. The activity alleged to be in violation of the RICO arises from the Agreement, which has been terminated. There is no threat of defendants' alleged racketeering continuing into the future. *H.J., Inc.,* 109 S.Ct. at 2900.

Nor can plaintiff establish closed continuity because there is no long-term criminal conduct in this case. Plaintiff alleges that defendants engaged in multiple acts of mail fraud and wire fraud involving misrepresentations as to plaintiff's commissions.[FN8] The first predicate act alleged by plaintiff that starts the continuity clock is an October 1987 phone call in which Keishin Dohi, the managing director of Nikko-America, allegedly covered up Lingg's prior misrepresentations and concealed other material facts from Larsen. Compl. ¶ 380; RICO Statement at 25-26. Construing the pleadings in favor of the plaintiff as this Court must, this alleged predicate act is related to the scheme to defraud plaintiff of its 1988 and 1989 commissions.[FN9] Plaintiff further alleges several acts of mail and wire fraud subsequent to this act that are also related to the alleged scheme.[FN10] Thus the related predicate acts spanned approximately seventeen months, from October 1987 until March 1989.

> FN8. Plaintiff also alleges acts of obstruction of justice during the pendency of this lawsuit as predicate acts for the RICO scheme. These allegations must be excluded because efforts by a defendant to cover up the underlying conduct are inadequate to satisfy the continuity requirement of the RICO statute. *See, e.g., Barsam v. Pure Tech Int'l, Inc.,* 864 F.Supp. 1440, 1450 (S.D.N.Y.1994) (citing *Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1024 (7th Cir.1992)); *Philadelphia Reserve Supply Co. v. Nowalk & Assoc., Inc.,* Civ.A. No. 91-0449, 1992 WL 210590, *6 (E.D.Pa. Aug. 25, 1992) (citing *Pyramid Securities Ltd. v. IB Resolution, Inc.,* 924 F.2d 1114, 1117-18 (D.C.Cir.), *cert. denied,* 112 S.Ct. 85 (1991)). Accordingly, this Court considers only the allegations of mail and wire fraud that are related to the fraud on plaintiff in determining the duration of the RICO scheme for the purposes of establishing continuity.

> FN9. By contrast, mailings of three commission checks during 1987 can not be considered as part of the scheme because they did not proximately cause plaintiff's injury, and are unrelated to the scheme to defraud RLA out of its commissions during the years of 1988 and 1989.

> FN10. These include, *inter alia,* facsimiles dated September 28, 1988 and December 1988 in which Lingg misrepresents the amount of credits during 1988, an internal letter dated January 1989 faxed to Lingg by his secretary, Brenda Warrick, in which she acknowledged that the "controller" had padded the figures for returned product and deductions as set forth in the December 1988 Recap; and the February 1989 Recap faxed to RLA in which defendants made false statements with respect to the figures used in calculating the commissions due RLA. There was also a March 1989 letter with which Lingg sent a copy of a computer report which contained false figures representing total sales of the top ten accounts in the Assigned Territory for 1988, as well as a March 1989 telephone call between Lingg and Ray Larsen during which Lingg represented that the 1988 net sales and commissions figures-as represented orally and in the December 88 Recap and February 89 Recap-were correct.

*8 A scheme that spans seventeen months does not generally reflect the kind of long-term criminal conduct over a "substantial period of time" contemplated by the RICO statute. *See H.J. Inc.,* 492 U.S. at 242; *GICC Capital Corp. v. Technology Finance Group, Inc.,* 67 F.3d 463, 467-68 (2d Cir.1995) (collecting cases which hold that criminal activity that spans approximately one year does not establish con-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1996 WL 442799 (S.D.N.Y.), RICO Bus.Disp.Guide 9110  
(Cite as: Not Reported in F.Supp.)

Page 8

tinuity), *cert. denied,* 116 S.Ct. 2547 (1996). Moreover, although continuity is a temporal concept, a determination of whether the continuity element is satisfied also involves consideration of factors such as type of acts, number of perpetrators, number of victims, and character of the goal. *Continental Realty Corp. v. J.C. Penny Co.,* 729 F.Supp. 1452 (S.D.N.Y.1990) (quoting *Jones v. Lampe,* 845 F.2d 755, 757 (7th Cir.1988)). Courts in this Circuit generally hold that where the conduct involves a limited number of perpetrators, a limited number of victims, and a limited goal, the conduct is lacking in closed continuity. *See e.g., Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 998-999 (E.D.N.Y.1995) (holding that "a single transaction involving one alleged victim, albeit two persons, one real estate transaction, [and] a limited goal, "which lasted approximately fourteen to fifteen months is not sufficient for continuity); *Continental Realty Corp.,* 729 F.Supp. at 1455 (holding that a claim alleging fraud and breach of contact in one real estate transaction involving one victim, one group of perpetrators and a single goal, during a period of more than one year, is not sufficient for closed-ended continuity); *Airlines Reporting Corp. v. Aero Voyagers, Inc.,* 721 F.Supp. 579, 583 (S.D.N.Y.1989) (holding that a complaint which alleged "a closed-ended, single scheme involving three perpetrators (a company and two of its directors), one victim, and an uncomplicated transaction (essentially relating to a simple breach of contract)," over a thirteen month period failed to plead continuity).

In fact, the Court of Appeals has recently noted that since the Supreme Court "made clear that closed-ended continuity can only be shown over a 'substantial period of time,' we have found closed-ended continuity only twice." *GICC Capital Corp.,* 67 F.3d at 455 (quoting *H.J. Inc.,* 492 U.S. at 242). In one of those cases, the predicate acts occurred over "a matter of years" from approximately 1980 to 1988, *see Jacobson v. Cooper,* 882 F.2d 717 (2d Cir.1989); in the other, the predicate acts occurred over at least two years, *see Metromedia v. Fugazy,* 983 F.2d 350 (2d Cir.1992), *cert. denied,* 508 U.S. 952 (1993).

Plaintiff attempts further to bolster its RICO claim by alleging in its RICO Statement that there were numerous victims of defendants' scheme. Nevertheless, these claims merely repeat by rote the allegation that these victims were deprived of amounts they had earned or would have earned as a result of defendants' similar fraudulent scheme. As such, these claims are completely unsupported by any specific factual allegation as to the injury suffered as a result of defendants' conduct, and are insufficient to convert the scheme to defraud RLA into a RICO scheme. *See Mathon,* 875 F.Supp. at 1000 (holding that plaintiff's theory that it would be able to reveal details of other victims which were subject to defendants' fraud was "based on conjecture and [would] not be considered by the Court").

*9 The scheme in the instant case involves only one group of perpetrators, the defendants, who directed their acts toward one victim, RLA, with the singular goal of defrauding RLA out of commissions due under a single distribution contract. In connection with these factors, defendants' seventeen-month scheme does not constitute closed-ended continuity. Accordingly, plaintiff has failed to plead a "pattern of racketeering activity." This Court grants defendants' motion to dismiss the fifth claim.

4. Section 1962(d) RICO claim:

Defendants also move to dismiss plaintiff's sixth cause of action, which alleges a section 1962(d) civil conspiracy to violate section 1962(c) of the RICO statute. Because the predicate acts alleged by plaintiff do not constitute a "pattern of racketeering activity" under RICO, plaintiff's claim of conspiracy to commit a RICO violation also must be dismissed. *See e.g., Purgess v. Sharrock,* 806 F.Supp. 1102, 1110 n. 9 (S.D.N.Y.1992).

Moreover, even if there were a RICO violation under section 1962(c), "[b]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 25 (2d Cir.1990). *See State Wide Photocopy, Corp. v. Tokai Financial Services, Inc.,* 909 F.Supp. 137, 144 (S.D.N.Y.1995) ("[T]o state a claim for RICO conspiracy, plaintiff must plead that the parties to the agreement had knowledge that the acts were part of a RICO pattern of activity."). Even though the pleading of a conspiracy is properly measured under the more liberal pleading require-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 7:04-cv-08223-KMK    Document 180-5    Filed 08/11/2006    Page 10 of 10

Westlaw.

Not Reported in F.Supp.                                                                                         Page 9
Not Reported in F.Supp., 1996 WL 442799 (S.D.N.Y.), RICO Bus.Disp.Guide 9110
(Cite as: Not Reported in F.Supp.)

ments of Rule 8(a)-rather than the stricter pleading requirement of Rule 9(b)-the complaint must nevertheless allege some factual basis for a finding of a conscious agreement among the defendants. *Hecht, 897 F.2d at 26 n. 4.*

Plaintiff alleges merely that defendants Nikko and Nikko-America "agreed and conspired to conduct or participate in, directly or indirectly, the affairs of the Nikko Group Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) ... and [to] commit the predicate acts of racketeering." Compl. ¶ 391. Plaintiff has failed to allege any factual basis for a finding of conscious agreement among Nikko and Nikko-America to commit predicate acts. Accordingly, this Court plaintiff's claim of RICO conspiracy under section 1962(d) must be dismissed.

5. Double Damages, Labor Law 191-c:

Plaintiff alleges that it is entitled to double damages, costs and disbursements under New York Labor Law § 191-c which provides for the collection of such damages where commissions are not paid. Defendants move to dismiss this claim.

Section 191-c of the New York Labor Law applies only to contracts that were formed after the effective date of that statute, which is January 1, 1988. *See, e.g., Kirsch v. Fleet Street Ltd., No. 92 Civ. 932, 1993 WL 454240 (S.D.N.Y. November 1, 1990).* The Agreement at issue was formed in 1986, and provided that it "shall continue in effect for one year, and shall automatically be extended from year to year thereafter." Indeed, plaintiff acknowledges that "the Agreement was automatically extended because neither party sought its termination." Plaintiff's Brief at 38. These automatic renewals were not creations of new contracts. *Cf. Trans-Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 570 (2d Cir.1991)* ("Renewal normally involves a continuation of the relationship on essentially the same terms and conditions as the original contract.") (internal quotations omitted); *United States Aviation Underwriters, Inc. v. Preservatrice-Fonciere Com pagnies D'Assurance, No. 83 Civ. 3935, 1986 WL 3779,* at *2 (S.D.N.Y. March 21, 1986) (noting that renewals of insurance contracts are generally viewed "as an extension of the original policy, not a new contract"), *aff'd, 801 F.2d 391 (2d Cir.1986).* Thus the fact that the contract automatically renewed itself does not alter the year of the contract's formation which was 1986; accordingly, the contract falls outside the coverage of New York Labor Law section 191-c.

*10 Defendants' motion to dismiss plaintiff's claim for damages under New York Labor Law section 191-c is hereby granted.

6. Plaintiff's Request to Replead

Finally, plaintiff requests leave to replead. Although generally leave is to be freely granted, *Foman v. Davis, 371 U.S. 178 (1962),* this Court has discretion to deny leave "where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." *Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir.1990)* (citations omitted). Moreover, the burden is on the plaintiff to provide a satisfactory explanation for the delay. *Id.* (citations omitted).

Plaintiff has amended its complaint three times. After the tremendous depths of discovery that the parties have already explored, as well as the additional delay repleading would cause, it would be unfair and burdensome to allow plaintiff to replead. Accordingly, plaintiff's request to replead is denied.

Conclusion

Defendants' motion for judgment on the second, third, fifth, and sixth claims, as well as the claim for damages under New York Labor Law section 191-c, is hereby granted.

As reflected in previous orders, parties shall submit a joint pretrial order on August 16, 1996. The case is set for trial on the remaining claims for September 16, 1996.

So ordered.

S.D.N.Y.,1996.
Ray Larsen Associates, Inc. v. Nikko America, Inc.
Not Reported in F.Supp., 1996 WL 442799 (S.D.N.Y.), RICO Bus.Disp.Guide 9110

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.