31

**Loislaw Federal District Court Opinions**

RICIOPPO v. COUNTY OF SUFFOCK, (E.D.N.Y. 2006)

ERCOLE RICIOPPO a/k/a ERIC RICIOPPO, Plaintiff, v. COUNTY OF SUFFOLK;
SUFFOLK COUNTY COMMUNITY COLLEGE; THE BOARD OF TRUSTEES OF SUFFOLK COUNTY
COMMUNITY COLLEGE; MICHAEL HOLLANDER; BRIAN FOLEY; VIVIAN FISHER; ERIC
KOPP; and ANTHONY APPOLARO, Defendants.

04 Civ. 3630 (DRH) (WDW).

United States District Court, E.D. New York.

March 29, 2006

Alan E. Wolin, Esq., Jericho, New York. WOLIN & WOLIN ESQS.,
Attorney for Plaintiff.

Andrew M. Roth, Esq., Garden City, New York, BERKMAN, HENOCH,
PETERSON & PEDDY, P.C., Attorney for Defendant Michael Hollander.

William G. Holst, Esq.,& Jennifer K. McNamara, Esq., Hauppauge,
New York, CHRISTINE MALFI, SUFFOLK COUNTY ATTORNEY, Attorneys for
Defendants County of Suffolk, Suffolk County Community College,
the Board of Trustees of Suffolk County Community College, Brian
Foley, Vivian Fisher, Eric Kopp, and Anthony Appolaro.

**MEMORANDUM & ORDER**

DENIS HURLEY, District Judge
Page 2

**INTRODUCTION**

Plaintiff Ercole Ricioppo ("Plaintiff") filed the present
complaint on August 23, 2004 against Defendants County of Suffolk
("Suffolk"); Suffolk County Community College ("SCCC"); the Board
of Trustees of Suffolk County Community College ("Board");
Michael Hollander ("Hollander"); Brian Foley ("Foley"); Vivian
Fisher ("Foley"); Eric Kopp ("Kopp"); and Anthony Appolaro
("Appolaro") alleging that they violated his right to free
speech, equal protection, and due process, pursuant to
**42 U.S.C. § 1983** ("§ 1983"); that they conspired to violate his
constitutional rights, in violation of **42 U.S.C. § 1985** ("§
1985"); and that they breached their contractual obligations
pursuant to New York common law. Defendants did not submit an
answer. Instead, Defendants Suffolk, SCCC, Board, Foley, Fisher,
Kopp and Appolaro (collectively "County Defendants") move to
dismiss the complaint, along with Defendant Hollander, who filed
a separate motion. For the reasons set forth below, the Court
GRANTS Defendants' motions as to Court I, portions of Count II,
Count III, and Count IV. The Court DENIES Defendants' motions as
to portions of Count II. Finally, the Court grants Plaintiff
leave to amend.

**BACKGROUND**

The following summary of facts is drawn from the Complaint.
Plaintiff is a resident of Nassau County, New York. Defendant
Suffolk is a municipal corporation existing pursuant to the laws
of New York. Defendant SCCC is an institution of higher-learning,
maintained and operated by Suffolk. The Board is the duly
appointed or elected body that constitutes the legally
responsible authority of Defendant SCCC. Defendant Hollander is

the Chairman of the Board. Defendants Foley and Fisher are
elected legislators of the County of Suffolk. Defendant Kopp is
Page 3
the Chief Deputy County Executive for the County of Suffolk.
Defendant Appolaro is the Assistant Deputy County Executive for
the County of Suffolk. Each of the individual defendants is being
sued in his individual and official capcity.

   In September 1995, Plaintiff was employed by Defendant SCCC as
Vice President for Marketing and Public Affairs. Plaintiff's
duties included acting as a liaison between Defendant SCCC and
the Suffolk County Legislature and designing marketing programs.
Plaintiff reported directly to the President of Defendant SCCC,
who, during much of the relevant time, was Salvatore J. LaLima
("LaLima").

   The President of Defendant SCCC, "pursuant to statute,
regulation, rule, procedure, and custom" (Compl. ¶ 24), is
charged with the responsibility of formulating and presenting to
Defendant Board recommendations on matters including, *inter
alia*, "organizational structure, personnel appointments,
promotions, retention, and retrenchment." (*Id*.) At all times
relevant to the Complaint, Defendant Hollander was the chairman
of Defendant Board.

   Defendant Board appoints personnel, adopts salary schedules,
approves the organizational pattern of Defendant SCCC,
establishes policies, and delegates to the professional staff
responsibility for personnel policies, conditions of employment,
and the creation of divisions, departments, and appropriate
administrative and academic positions.

   From his hiring, Plaintiff received regular continuing
appointments. He also carried academic rank. Upon the
commencement of his employment at Defendant SCCC as Vice
President for Marketing and Public Affairs, Plaintiff was also
given the title of Assistant Professor of Communications and
regularly taught one course each semester in his field.
Page 4

   During his tenure Plaintiff alleges that he was "critical of
and opposed certain practices and opinions undertaken and
expressed by the Office of the Suffolk County Executive, certain
members of the Suffolk County Legislature, including Defendants
Foley and Fisher, Defendant Hollander, and other members of
Defendant Board as it related to College affairs." (*Id*. ¶ 29.)
Plaintiff alludes to a numbers of occasions when he "voiced his
objections" to the advertising plans of Defendant SCCC, but he
does not provide any specifics about the context of these
objections or when they occurred. Plaintiff similarly alleges
that "during the time that he was employed as Vice President,
[he] also expressed and publicly criticized other practices of
Defendant Hollander, including usurping authority . . .
functioning in a way that was outside his authority as a member
of Defendant Board, and . . . engaging in unethical and illegal
actions." (*Id*. ¶ 32.) Again, Plaintiff provides no further
details.

   Plaintiff then alleges that "[i]n direct response to [his]
exercise of his protected rights, Defendants, their agents,
servants and employees, under color of law and the cloak of their
official positions, undertook a persistent pattern of harassing
and undermining Plaintiff's position." (*Id*. ¶ 35.) In May 2003,
Defendant Board abolished Plaintiff's position effective June 1,
and created a new position that absorbed many of Plaintiff's
duties. Plaintiff was not offered the position. Plaintiff alleges
that the abolishment of his position occurred "days after [he]
wrote a letter to President LaLima complaining about Defendant
Hollander's conduct." (*Id*. ¶ 40.)

Consequently, Plaintiff lost his position, which he alleges was contrary to the procedures outlined in the "Managerial-Confidential Employees of Suffolk County Community College — Status and Benefits Handbook" ("Handbook"). (*See* Compl. ¶ 28.) The Handbook, drafted in November 1982, is divided into three parts: Part I — Administrative Academic Status; Part
Page 5
II — Benefits; and Part III — Duties and Load. Specific to Plaintiff's claims is Part I, Paragraph 6, which reads, "Upon request made on or before January 1, an Administrative Officer will be granted an assignment the following academic year as a classroom instructor, counselor, librarian, or technical assistant provided that a vacancy exists or arises in his/her discipline." Part I, Paragraph 7, entitled "Seniority Rights," qualifies Paragraph 6. Part I, Paragraph 7(c), which applies to Plaintiff, directs that "[a]ll other Administrative Officers are not covered by nor enjoy the rights and accumulations of seniority. Part I, Paragraph 9 then states that "Administrative Officers entering their sixth year of employment with the College shall be granted continuing employment. Prior to being given continuing appointment, employees shall be considered on probationary status."

Plaintiff alleges that the termination of his employment directly contravened the Handbook and was done in retaliation for his criticisms of the Board and its members. Based upon these alleged violations of his constitutional rights to free speech, due process, and equal protection, Plaintiff filed the present complaint.

## LEGAL STANDARD

Defendants now move to dismiss the Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and Rule 12(b)(6). In considering a motion to dismiss, a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *See Hayden v. County of Nassau*, **180 F.3d 42**, 54 (2d Cir. 1999).**[fn1]** The court must accept the factual allegations contained
Page 6
in the complaint as true, and view the pleadings in the light most favorable to the non-moving party, drawing all reasonable inferences in his favor. *See Sheppard v. Beerman*, **18 F.3d 147**, 150 (2d Cir. 1994). Dismissal is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts entitling him to relief in support of his claim. *See Zerilli-Edelglass v. New York City Transit Auth.*, **333 F.3d 74**, 79 (2d Cir. 2003). The issue is not how likely the plaintiff is to ultimately prevail, but whether he is entitled to even offer evidence to support his claims. "Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test." *Weisman v. LeLandais*, **532 F.2d 308**, 311 (2d Cir. 1976) (quoting *Scheuer v. Rhodes*, **416 U.S. 232**, **236** (1974)). These standards apply with particular strictness where, as here, the complaint alleges civil rights violations. *See Gant v. Wallingford Bd. of Educ.*,
Page 7
**69 F.3d 669**, 673 (2d Cir. 1995). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, **291 F.3d 236**, 240 (2d Cir. 2002) (internal quotation omitted).

## DISCUSSION

Defendants have moved to dismiss the complaint. Though Defendant Hollander filed separately from the County Defendants, his arguments in support of dismissal are the same as the County

Defendants' arguments. Therefore, the Court analyzes Defendants' arguments in support of dismissal together.

Defendants move to dismiss on a number of theories. Defendants argue: (1) that the Complaint fails to state a claim under § 1983; (2) that the Complaint fails to state a claim under § 1985; (3) that the claims against the individual defendants are barred by qualified immunity; and (4) that the Complaint fails to state a common law contract claim. Plaintiff's counter-arguments are difficult to parse because they do not directly address Defendants' arguments, but it appears that Plaintiff disputes each of Defendants' arguments. The Court analyzes each of these arguments in turn.

## I. Failure to State a § 1983 Violation

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Page 8

42 U.S.C. § 1983. To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived him of a federal right. *See* § 1983; *see also Gomez v. Toledo,* 446 U.S. 635, 640 (1980); *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir. 1999). Plaintiff alleges that Defendants violated § 1983 by violating his right to free speech, due process of law, and equal protection of the law. (*See* Compl. ¶ 1.)

## A. Count I: First Amendment Retaliation

Count I alleges that Defendants engaged in actions and omissions that were "arbitrary, capricious, unlawful and motivated by no legitimate purpose" other than to retaliate against Plaintiff because of his exercise of his First Amendment rights in violation of § 1983. (Compl. ¶ 42.) Defendants argue that "nothing could be further from the truth" (Def. Hollander's Mem. at 10), which is a general flaw of their motion: it argues the truth, rather than the adequacy of the Complaint.

Although a public employee "does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment," these rights are not absolute, because the public employers has a legitimate interest in regulating the speech of its employees to promote the efficiency of its public services. *See Mandell v. County of Suffolk,* 316 F.3d 368, 382 (2d Cir. 2003) (citing *Connick v. Myers,* 461 U.S. 138, 140 (1983)); *see also Pickering v. Bd. of Educ.,* 391 U.S. 563, 568 (1968). To plead a *prima facie* case of First Amendment retaliation, a plaintiff must establish: (1) that his speech addressed a matter of public concern; (2) that he suffered an adverse employment action; and (3) that a causal connection existed between the speech and the adverse employment action, "so that it can be said that his speech was a motivating factor in the determination." *Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir. 1999); *see*

Page 9

*also Mandell,* 316 F.3d at 382; *Locurto v. Safir,* 264 F.3d 154, 166 (2d Cir. 2001) (describing elements of First Amendment

retaliation claim). There is no dispute that Plaintiff suffered an adverse employment action, thereby satisfying the second element. Therefore, the Court only discusses the "public concern" and "causal connection" elements regarding Plaintiff's *prima facie* case.

### 1. *A Matter of Public Concern*

The question of whether an employee's speech addresses a matter of public concern is one of law, not fact. *See Connick v. Myers*, **461 U.S. 138**, **148** n. 7 (1983); *see also Morris*, **196 F.3d at 110**. "Speech by a public employee is on a matter of public concern if it relates `to any matter of political, social, or other concern to the community.'" *Johnson v. Ganim*, **342 F.3d 105**, 112 (2d Cir. 2003) (quoting *Connick*, **461 U.S. at 146**). "If the speech, however, is focused on matters personal to the employee, it cannot be classified as being on a matter of public concern and the government, acting as an employer, `has greater latitude to discipline' the employee." *Id.* (quoting *Connick*, **461 U.S. at 146**).

Plaintiff alleges that he "voiced his objections to the wishes of the office of the Suffolk County Executive," which constituted speech on a matter of public concern. He states that he criticized Defendants Kopp's and Appolaro's attempts to curtail advertising in Suffolk Life, a local newspaper, "because [the paper] was critical of the Suffolk County Executive's Office and certain County Legislators." (*See* Compl. ¶ 30), and Defendant Hollander's suggestion that Defendant SCCC advertise in "New York Sports Scene," a publication helmed by Defendant Hollander's personal friend (*See id.* ¶ 31). Those allegations, though sparse, pertain to matters of public concern. *See Lauretano v. Spada*, **339 F. Supp.2d 391**, **410** (D. Conn. 2004) ("A corrupt Page 10 or otherwise improper decision is the most obvious example of an instance where the employee's comment upon the decision would necessarily be of public concern, and courts have vigilantly protected an employee's right to expose public misconduct."). Which is to say, Plaintiff has adequately plead the first element of a First Amendment retaliation claim.

### 2. *Causal Connection*

Plaintiff must also allege a causal connection between his protected speech and the adverse employment action. As explained by the Second Circuit, "The causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech." *Morris*, **196 F.3d at 110** (citations omitted). However, a "plaintiff may not rely on conclusory assertions . . . to satisfy the causal link." *Cobb v. Pozzi*, **363 F.3d 89**, 108 (2d Cir. 2004) (citing *Morris*, **196 F.3d at 111**).

Plaintiff contends that "[t]he causal link between a protected activity and the alleged retaliatory action can be inferred from timing alone." (Pl.'s Opp'n Mem. to Def. Hollander's Mot. to Dismiss, at 9.) Paragraphs 30 and 31 are the only points in the Complaint that identify specific instances of Plaintiff speaking on matters of public concern. In those paragraphs, however, Plaintiff does not allege when he criticized either Defendants Kopp's and Appolaro's attempts to curtail advertising in "Suffolk Life" or Defendant Hollander's suggestion that Defendant SCCC advertise in "New York Sports Scene." Because he has failed to plead the relation-in-time of those comments to the adverse employment action, the legitimacy of Plaintiff's "timing alone" argument, vis-a-vis paragraphs 30 and 31, may not be evaluated from the face of the Complaint.

Page 11

     This deficiency is not cured by paragraph 40, which reads: "The
action of Defendant Board, in eliminating Plaintiff's position,
occurred days after Plaintiff wrote a letter to President LaLima
complaining about Defendant Hollander's *conduct*" (emphasis
added). Since the nature of the "conduct" is not identified, it is
impossible to determine whether Plaintiff's comments *in the
letter* were on the same matters of public concern identified in
Paragraphs 30 and 31. As such, the Defendant's are not placed on
sufficient notice to fashion a meaningful response.

     In sum, the paucity of detail regarding the context and timing
of Plaintiff's objections and criticisms fails to pass muster on
a motion to dismiss. *See Velez v. Levy*, 401 F.3d 75, 97 (2d
Cir. 2005) ("[I]n assessing a motion to dismiss in [the First
Amendment retaliation] context, we must be satisfied that such a
claim is `supported by specific and detailed factual
allegations,' which are not stated in wholly conclusory terms.'")
(quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).
Plaintiff's allegation of a causal connection between his speech
on a matter of public concern and the adverse employment action
is merely a series of "naked assertions, and setting forth no
facts upon which a court could find a violation of the Civil
Rights Acts, fails to state a claim under Rule 12(b)(6)." *Yusuf
v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994) (citation and
quotation marks omitted). Accordingly, Defendant's motion to
dismiss the Count I is granted.

**B. Count II: Due Process**

     Count II of the Complaint alleges a violation of "substantive
and procedural due process." (Compl. ¶ 52.) Plaintiff's
opposition memoranda suggest that he has three due process
claims: procedural due process, substantive due process, and his
"liberty interest." (*See* Pl.'s Opp'n Mem. to County Defs. Mot.
to Dismiss at 8-12.) The Court analyzes each due process claim
separately.
Page 12

**1. Procedural Due Process**

     The Due Process Clause imposes procedural safeguards on
governmental decisions that deprive individuals of liberty or
property interests, within the meaning of the Fifth or Fourteenth
Amendments. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).
Thus, to prevail on a procedural due process claim under the
Fifth and Fourteenth Amendments, a plaintiff must demonstrate
that he was deprived of a protected property or liberty interest.
*See Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). "A public
employee has a property interest in continued employment if the
employee is guaranteed continued employment absent just cause for
discharge." *Harhay v. Town of Ellington Bd. of Educ.*,
323 F.3d 206, 212 (2d Cir. 2003) (citation and quotation marks omitted).

     Regarding the procedural due process claim, the parties'
dispute whether Plaintiff had a protected property interest in
his position as Vice President of Marketing and Public Affairs.
Defendants assert that Plaintiff was a probationary, at-will
employee and, therefore, could be terminated at any time.
Plaintiff, meanwhile, argues that, "according to the literal
terms of paragraph 9 [of the Handbook], [he] received a
continuing appointment when he entered his sixth year and was no
longer a probationary employee at the time his employment
ceased." (Pl.'s Opp'n Mem. to Def. Hollander's Mot. at 11.) This
dispute regarding the terms of the Handbook occupies the bulk of
the parties' memoranda, but it inevitably requires exposition and
analysis of the specifics of Plaintiff's actual employment
status. Thus, it raises issues of fact that are inappropriate to

settle on a motion to dismiss. As for present concerns, Plaintiff
has plead that he was deprived of a protected property interest
without due process of law. Therefore, Defendants' motion to
dismiss the procedural due process claim is denied.
Page 13

### 2. Substantive Due Process

Plaintiff alleges a "substantive due process" violation, but
there are no allegations to support such a claim. Substantive due
process rights are violated only when the government has engaged
in conduct so egregious it "shocks the conscious." *Rochin v.
California*, 342 U.S. 165, 172 (1952). The Supreme Court has
"been reluctant to expand the concept of substantive due process
because guideposts for responsible decision making in this
unchartered area are scarce and open-ended." *Collins v. City of
Harker Heights*, 503 U.S. 115, 125 (1992). Conduct that is merely
incorrect or ill advised does not meet this high standard. *See
Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994).

Even if all of Plaintiff's factual allegations were true, there
is nothing in the Complaint that rises to the level of "shocking
the conscience." Even if Plaintiff lost his job and was subjected
to a peer review as a result of exercising his First Amendment
rights, such actions do not "shock the conscience" in a manner
that typically raises constitutional concerns. *Cf. Scatorchia v.
County of Suffolk*, 01 Civ. 3119 (TCP), 2006 WL 218138, *4
(E.D.N.Y. Jan. 24, 2006) ("[E]ven if the touch was a battery, it
would not violate her substantive due process rights."); *Bennett
v. Pippin*, 74 F.3d 578 (5th Cir1996) (finding that conduct
"shocked the conscious" where a sheriff raped a murder suspect);
*Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720 (3d Cir.
1989) (finding, in the sexual harassment context, that conduct
"shocked the conscious" where a teacher committed multiple sexual
assaults on his high school students). The scant factual
allegations are an inadequate predicate for "shocking the
conscience." Accordingly, Defendants' motion to dismiss the
substantive due process claim is granted.

### 3. Liberty Interest
Page 14

Finally, Plaintiff argues that he has "sufficiently established
that he was deprived of a protected liberty interest." (Pl.'s
Opp'n Mem. to County Def.'s Mot. at 12.) Plaintiff also argues
that "`[w]here a person's good name, reputation, honor or
integrity is at stake because of what the government is doing to
him,' a protectable liberty interest may be implicated that
requires procedural due process in the form of a hearing to clear
his name." (*Id.* (quoting *Wisconsin v. Constantineau*,
400 U.S. 433, 437 (1971).) Defendants' counter that Plaintiff has not
adequately plead the "stigma plus" violation as required by the
Second Circuit. *See Walmonte v. Bane*, 18 F.3d 992, 999 (2d Cir.
1994).

Loss of one's reputation can invoke the protections of the Due
Process Clause if that loss is coupled with the deprivation of a
more tangible interest, such as government employment. *See
Patterson v. City of Utica*, 370 F.3d 322, 330 (2d. Cir. 2004).
For a government employee, a cause of action under § 1983 for
deprivation of a liberty interest without due process of law may
arise when an alleged government defamation occurs in the course
of dismissal from government employment. *Id.*; *see also Morris*,
196 F.3d at 114. This is the type of claim that is commonly
referred to as a "stigma-plus" claim. *See Patterson*,
370 F.3d at 330.

In order to fulfill the requirements of a stigma-plus claim
arising from the termination from government employment, a

plaintiff must first show that the government made stigmatizing statements about him — statements that call into question plaintiff's "good name, reputation, honor, or integrity." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 446 (2d Cir. 1980). Statements that "denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession" may also fulfill this
Page 15
requirement. *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630-31 (2d Cir. 1996). A plaintiff generally is required only to raise the falsity of these stigmatizing statements as an issue, not prove they are false. *See Brandt v. Bd. of Coop. Educ. Servs.*, 820 F.2d 41, 43 (2d Cir. 1987). Second, a plaintiff must prove these stigmatizing statements were made public. *See Abramson v. Pataki*, 278 F.3d 93, 101-02 (2d Cir. 2002). And third, plaintiff must show the stigmatizing statements were made concurrently in time to plaintiff's dismissal from government employment. *See Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 32 (2d Cir. 1994) (five months later for publication of defamatory statements is too long).

   Plaintiff failed to allege any stigmatizing activity. Plaintiff said that he was subject to inquiries by the Suffolk County Legislature and alleges that he underwent a peer review, but the Complaint fails to allege that these were stigma-causing. (*See* Compl. ¶ 37-38.). Count II states that actions of Defendants caused Plaintiff to "suffer damages to his reputation and standing in the community," but nothing in the factual allegations suggests that such damage had occurred. Having thus failed to plead a factual predicate of a due process violation of his "liberty interest," Plaintiff has failed to state a "liberty interest" due process claim. As such, Defendants' motion to dismiss the "liberty interest" claim is granted.

### C. Count II: Equal Protection

   Count II of the Complaint also alleges a violation of Plaintiff's "equal protection" rights. (Compl. ¶ 52.) Plaintiff does not present any arguments in his opposition memoranda to support his equal protection claim. The Equal Protection Clause of the Fourteenth Amendment guarantees the right to be free from "invidious discrimination in statutory classifications and other governmental activity." *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) (quoting *Harris*
Page 16
*v. McRae*, 448 U.S. 297, 322 (1980)). "The Equal Protection Clause [thus] requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). There is no allegation in the Complaint of any "similarly-situated" individuals who were treated differently. To the extent that Plaintiff may be pleading a "class of one" equal protection claim, he also fails to mention it in the Complaint. As such, Plaintiff has failed to state an equal protection claim. Accordingly, Defendants' motion to dismiss the equal protection claim is granted.

### II. Count III: Section 1985(3)

   In Count III, Plaintiff alleges that the "Defendants and their agents were conspirators actively engaged in a scheme and conspiracy designed and intended to deny and deprive Plaintiff of rights guaranteed to him under the Constitution." (Compl. ¶ 56.) Section 1985(3) provides in pertinent part:

   If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either

directly or indirectly, any person or class of
persons of the equal protection of the laws, or of
equal privileges and immunities under the laws; or
for the purpose of preventing or hindering the
constituted authorities of any State or Territory
from giving or securing to all persons within such
State or Territory the equal protection of the laws;
. . . in any case of conspiracy set forth in this
section, if one or more persons engaged therein do,
or cause to be done, any act in furtherance of the
object of such conspiracy, whereby another is injured
in his person or property, or deprived of having and
exercising any right or privilege of a citizen of the
United States, the party so injured or deprived may
have an action for the recovery of damages occasioned
by such injury or deprivation, against any one or
more of the conspirators.

**42 U.S.C. § 1985**(3). Thus, to state a cause of action under §
1985(3), Plaintiff must allege: "(1) a conspiracy; (2) for the
purpose of depriving a person or class of persons of the equal
protection of the laws, or the equal privileges and immunities
under the laws; (3) an overt act in
Page 17
furtherance of the conspiracy; and (4) an injury to the
plaintiff's person or property, or a deprivation of a right or
privilege of a citizen of the United States." *Thomas v. Roach*,
**165 F.3d 137**, 146 (2d Cir. 1999); *see also Traggis v. St.
Barbara's Greek Orthodox Church*, **851 F.2d 584**, 586-87 (2d Cir.
1988).

In order to maintain an action under Section 1985, a plaintiff
"must provide some factual basis supporting a meeting of the
minds, such that defendants entered into an agreement, express or
tacit, to achieve the unlawful end." *Webb v. Goord*,
**340 F.3d 105**, 110 (2d Cir. 2003). The Complaint does not allege any
meeting of the minds by the members of the "conspiracy," thereby
failing the first element of the conspiracy count. Furthermore,
where a complaint alleges a conspiracy to violate civil rights,
vague and conclusory allegations "are properly disregarded."
*Okwedy v. McLinari*, **150 F. Supp. 2d 508**, 512 (E.D.N.Y. 2001)
(citing *X-Men Security, Inc., v. Pataki*, **196 F.3d 56**, 71 (2d
Cir. 1999)). The allegations regarding the conspiracy are just
that: vague and conclusory.

In sum, Plaintiff's § 1985 claim is vague and conclusory and
fails to allege a meeting of the minds regarding the alleged
conspiracy. As such, the Court grants Defendants' motion to
dismiss Count III.

### III. Count IV: Failure to State a Common Law Contract Claim

Count IV alleges that "in rescinding Plaintiff's continuing
appointment, in eliminating his position as Vice President of
Marketing and Public Affairs, and in denying his request to be
transferred . . . constituted a willful breach of the contractual
relationship." (Compl. ¶ 60.) Plaintiff has failed to state a
common law contract claim, however, because nowhere in the
Complaint does he allege that a contract ever existed. The
Complaint cites to the Handbook for the proposition that
Page 18
"after receiving continuing appointments, one may indicate a
desire to return to teaching . . ." but the Complaint never
alleges that Plaintiff actually received a continuing
appointment. As a result, having failed to allege the existence
of a contract, Plaintiff has failed to state a common law
contract claim. Accordingly, the Court grants Defendants' motion
to dismiss the common law contract claim.

### III. Qualified Immunity

Defendants further assert the defense of "qualified immunity" in their motion to dismiss (*See* Def. Hollander's Reply Mem. at 6-15.) The doctrine of qualified immunity offers protection for "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This doctrine is said to be justified in part by the risk that the "fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006) (citations and quotation marks omitted). Qualified immunity also extends to protect a government actor "if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Id.* (citing *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995)); *see also Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000).

Though this defense may have merit, it turns on questions of fact that are not ripe for consideration on a motion to dismiss as it requires factual elaborations on the precise nature of Defendants' actions to determine whether they were "objectively reasonable." As a result, this consideration is best left for summary judgment. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993) ("Disposition by summary judgment is ordinarily appropriate when the qualified immunity defense is based on a showing that it was not clear at the time of the official acts
Page 19
that the interest asserted by the plaintiff was protected by federal law. Summary judgment may also be available when the defendant's premise is that even if the contours of the plaintiff's federal rights and the official's permissible actions were clearly delineated at the time of the acts complained of, . . . it was objectively reasonable for the official to believe that his acts did not violate those rights.") (citation and quotation marks omitted).

### CONCLUSION

For all of the above reasons, the Court GRANTS Defendants' motions as to Count I, portions of Count II, Count III, and Count IV, and DENIES Defendants' motions as to the "procedural due process" portion of Count II. At the close of his briefs, Plaintiff moves for leave to amend pursuant to Rule 15(a). Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Thus, to the extent that Counts I, II, III, and IV are dismissed, the Court GRANTS Plaintiff's motion for leave to amend.

### SO ORDERED.

[fn1] Plaintiff attempts to incorporate portions of his General Municipal Law § 50-h hearing transcripts to defeat Defendants' motions. (*See* Exs. in Opp'n to Def. Hollander's Mot.) These transcripts were not incorporated by reference in the Complaint. To support the inclusion of these documents, Plaintiff argues that on a motion to dismiss a court may consider any document that is "'integral' to plaintiff's claims even if not explicitly incorporated by reference." (Pl.'s Mem. in Opp'n to Hollander's Mot. at 2.) Plaintiff relies upon *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001), *Cortec Indus., Inc. v. Sum Holding LP*, 949 F.2d 42, 47 (2d Cir. 1991), and *Faulkner v. Verizon Comm., Inc.*, 189 F. Supp. 2d 161, 168 (S.D.N.Y. 2002). *Gregory* is clearly inapplicable because the admitted document was incorporated by reference in the complaint, unlike the § 50-h

hearing transcript. *See Gregory,* **243 F.3d at 691**. *Cortec* and
*Faulkner* are similarly inapplicable because those both pertain
to a defendant's attempt to admit "integral" documents with its
motion to dismiss that the plaintiff had failed to attach to its
complaint. *See Cortec,* **949 F.2d at 47** ("[P]laintiff should not
so easily be allowed to escape the consequences of its own
failure [to attach an integral document]."); *Faulkner,*
**189 F. Supp. 2d at 168** ("[W]e may take judicial notice of pleadings in
other lawsuits attached to the defendant's motion to dismiss, as
a matter of public record."). Those opinions stand for the
principle that a defendant should not lose on a motion to dismiss
— or be forced to convert its motion to one for summary judgment
— because of a plaintiff's failure to attach integral documents
to the complaint. Before the Court is the converse situation:
Plaintiff attempts to introduce so-called "integral" transcripts
in its opposition to the motion to dismiss, even though Plaintiff
failed to reference these "integral" transcripts in its
Complaint. Thus, Plaintiff is attempting to take advantage of a
rule that protects defendants from artful pleadings. Plaintiff
does not cite any case law addressing the present situation and
his novel use of the rule. Because it was not referenced in the
Complaint, and because of the general rule that a court will only
consider documents attached or incorporated by reference in the
complaint, the Court will not consider Plaintiff's submission of
the § 50-h hearing transcript when deciding the present motions.
Page 1

Copyright © 2006 Loislaw.com, Inc. All Rights Reserved

32

RECYCLED

Westlaw.

Not Reported in F.Supp.2d                                           Page 1
Not Reported in F.Supp.2d, 2004 WL 1510023 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern Division.
SA'BUTTAR HEALTH & MEDICAL, P.C., a North Caro-
lina Corporation, Plaintiff,
v.
TAP PHARMACEUTICALS, INC., a Delaware corpora-
tion, Defendant.
**No. 03 C 4074.**

July 2, 2004.

Ian Brenson, Law Offices of Ian Brenson, La Grange, IL,
for Plaintiff.
Lee Ann Russo, Mark P. Rotatori, Beth A. O'Connor, Jones
Day, Chicago, IL, for Defendant.

*MEMORANDUM OPINION AND ORDER*
LEFKOW, J.
*1 Plaintiff, Sa'Buttar Health & Medical, P.C. ("Clinic"),
brings this action against TAP Pharmaceuticals, Inc.
("TAP"), pursuant to 28 U.S.C. § 1332,[FN1] alleging in
Count I that TAP breached its contract with the Clinic when
TAP refused to fill an order for the drug Lupron. In Count
II, the Clinic alleges that it was fraudulently induced to
enter into a contract when TAP falsely represented that it
would provide a constant supply of Lupron to the Clinic. In
Count III, the Clinic contends repeated assurances by TAP
that an order of Lupron was temporarily delayed, when in
fact it was never shipped, constitutes fraud and deceit. Be-
fore the court is TAP's motion under Federal Rule of Civil
Procedure 12(b)(6) to dismiss Count I and under Federal
Rules of Civil Procedure 9(b) and 12(b)(6) to dismiss
Counts II and III. For the reasons set forth below, the mo-
tion is granted.

> FN1. The First Amended Complaint identifies the
> Clinic as a North Carolina corporation with its
> principal place of business in North Carolina and
> TAP as a Delaware corporation with its principal
> place of business in Abbott Park, Illinois.

MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure
12(b)(6) challenges the sufficiency of the complaint for fail-
ure to state a claim upon which relief may be granted. *Gen.
Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d
1074, 1080 (7th Cir.1997). Dismissal is appropriate only if
it appears beyond a doubt that the plaintiff can prove no set
of facts in support of its claim that would entitle it to relief.
*Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2
L.Ed.2d 80 (1957); *Kennedy v. Nat'l Juvenile Det. Ass'n*,
187 F.3d 690, 695 (7th Cir.1999). In ruling on the motion,
the court accepts as true all well pleaded facts alleged in the
complaint, and it draws all reasonable inferences from those
facts in favor of the plaintiff. *Jackson v. E.J. Brach Corp.*,
176 F.3d 971, 977 (7th Cir.1999); *Zemke v. City of Chicago*,
100 F.3d 511, 513 (7th Cir.1996).

In addition to the mandates of Rule 12(b)(6), Federal Rule
of Civil Procedure 9(b) requires "all averments of fraud" to
be "stated with particularity," although "[m]alice, intent,
knowledge, and other condition of mind of a person may be
averred generally," "The rule requires the plaintiff to state
the identity of the person who made the misrepresentation,
the time, place, and content of the misrepresentation, and
the method by which the misrepresentation was communic-
ated to the plaintiff." *Vicom, Inc. v. Harbridge Merch.
Servs., Inc.*, 20 F.3d 771, 777 (7th Cir.1994); *see also DiLeo
v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990)
("Although states of mind may be pleaded generally [under
Rule 9(b) ], the 'circumstances' must be pleaded in detail.
This means the who, what, when, where, and how: the first
paragraph of any newspaper story.").

ALLEGATIONS OF THE COMPLAINT

According to the Clinic's First Amended Complaint
("Complaint"), in November 1998, Al Woods, a sales rep-
resentative of TAP, told Dr. Buttar, President of the Clinic,
that TAP would provide the Clinic with a constant supply of
Lupron, a drug used in the treatment of cancer. Based on
this statement, the Clinic entered into an agreement with
TAP whereby TAP would supply the Clinic's requirements
for the drug. After a few orders had been placed by the Clin-
ic and filled by TAP, Al Woods informed Dr. Buttar the
Clinic soon would be eligible for free samples of Lupron. Al
Woods suggested the Clinic use the free samples for Medi-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 2
Not Reported in F.Supp.2d, 2004 WL 1510023 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

care patients but submit claims for reimbursement to Medi-care even though the Clinic had not paid for them. He further suggested a selling price for the drug to the Clinic's patients that would be consistent with the prices of other physicians.

**\*2** The Clinic rejected these suggestions because Dr. Buttar believed they would work a fraud on Medicare and the Clinic's patients. Then, on May 24, 1999, the Clinic placed an order for Lupron with TAP but the order was not shipped. Several months passed, during which time the Clinic was told on several occasions that the medication was sure to arrive soon, but it never came. As a result, the Clinic lost clientele, reputation, and revenue due to its inability to provide Lupron to its patients.

## DISCUSSION

In support of its motion to dismiss Count I, for breach of contract, TAP argues, (1) it did not breach the contract because it never accepted the Clinic's May 24, 1999 order, (2) the Clinic fails to allege breach of a written contract and therefore is barred by the Statute of Frauds, and (3) the contract contains a merger clause, making any previous oral agreement between Al Woods and the Clinic void. As for Count II, fraudulent inducement, and Count III, fraud and deceit, TAP argues (4) the Clinic fails to plead facts sufficient to establish a scheme to defraud and (5) the Clinic fails to plead facts with sufficient particularity as required by *Federal Rule of Civil Procedure 9(b)*. Because the court dismisses Count I based on (1) above and Counts II and III based on (4) above, it does not address the other grounds.

### A. Breach of Contract

Count I alleges that TAP's failure to fill and deliver an order of Lupron placed by the Clinic on May 24, 1999, constitutes a material breach of TAP's contractual duties. Typically, under *Rule 12(b)(6)* the court is limited to the four corners of the complaint when determining whether a plaintiff has adequately pled a claim upon which relief may be granted. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir.2002). A narrow exception, however, allows a court to consider a document attached to a motion to dismiss without having to turn the motion into one for summary judgment,

so long as that document is central to the plaintiff's complaint. *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir.1994).

In this case, the contract underlying Count I is central to the Clinic's breach of contract claim, and TAP has attached to its motion to dismiss a copy of a written agreement between it and the Clinic. TAP specifically relies on the standard terms of the contract, which indicate each order received by TAP is subject to its acceptance, either in writing or by performance, arguing that the Clinic fails to allege in its Complaint that the May 24, 1999 order was ever accepted by TAP, as would be required for TAP to have a contractual duty to subsequently fill the order.

Instead, the Clinic claims the contract attached by TAP to its motion to dismiss is not the contract referred to in its Complaint, but "a different agreement." The Clinic does not provide any alternative contract in support of its position, although the court infers that it refers to the oral agreement between Buttar and Woods .[FN2] Rather, it claims the sole issue under *Rule 12(b)(6)* is whether the Clinic has adequately alleged a breach of contract action against TAP.

> FN2. The Clinic appears to argue that an oral contract existed through which TAP would be held liable. As TAP points out, however, any oral contract would be subject to Illinois' statute of frauds, 810 ILCS 5/2-201, which provides, with exceptions not applicable here, that "a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker...." Inasmuch as the Clinic has not suggested why this law would be inapplicable, if the Clinic means to rely on an oral contract, its claim must be dismissed on this ground. *E.g., Berco Investments, Inc. v. Earle M. Jorgensen Co.*, No. 94 C 3961, 1996 WL 388463, at \*3 (N.D.Ill. July 8, 1996) (affirmative defense of statute of frauds may be raised on *Rule 12(b)(6)* motion when affirmative defense is apparent from the face of the complaint);

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                           Page 3
Not Reported in F.Supp.2d, 2004 WL 1510023 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

see also, _Casazza v. Kiser,_ 313 F.3d 414, 420 (8th Cir.2002) (granting motion to dismiss breach of contract claim based on statute of frauds and noting that "statements that a writing sufficient to satisfy the statute of frauds _may_ exist is not enough to defeat [defendant's] motion to dismiss.") (emphasis in original).

**\*3** The court disagrees. The policy of the exception, to allow a court to consider documents outside the four corners of the complaint, is to prevent a plaintiff from evading dismissal under Rule 12(b)(6) simply by failing to attach a contract that proves his claim has no merit. _Tierney v. Vahle,_ 304 F.3d 734, 738 (7th Cir.2002). In this case, that appears to be what the Clinic is trying to accomplish by alleging an oral agreement that preceded the execution of the written document TAP provides.

Moreover, the court is not bound by the plaintiff's allegations as to the effect of the attached contract but can independently examine the contract and form its own conclusions. _Rosenblum,_ 299 F.3d at 661. Here, the Clinic claims the contract attached by TAP is unauthenticated but does not suggest that the document is inauthentic. _See Black v. Rodriguez,_ No. 01 C 1721, 2002 WL 31045390, at \*1 n. 4 (N.D.Ill. Sept.11, 2002) (citing _Waldridge v. American Hoechst Corp.,_ 24 F.3d 918, 921 (7th Cir.1994) (on summary judgment[FN3] evidence need only be admissible in substance not form). The contract provided by TAP is signed and dated by Dr. Buttar, President of the Clinic, and the May 24, 1999 order falls within the effective dates of the contract. Unless the Clinic has good faith grounds to dispute its authenticity, the court may consider it.

> FN3. By considering the evidence outside the pleadings, the court is to that extent proceeding as if on summary judgment.

Therefore, because the Clinic fails to provide a contract in support of its position and because it fails to allege its May 24, 1999 order was ever accepted by TAP, the Clinic's claim for breach of contract is dismissed.

### B. Fraud Claims

In Count II of its Complaint, the Clinic contends it was fraudulently induced by TAP to enter into a contract for the supply of Lupron, in part, because TAP assured the Clinic a constant supply of Lupron would be provided. Under Illinois law, claims of fraudulent inducement are treated as common law fraud. _Zic v. Italian Government Travel Office,_ 130 F.Supp.2d 991, 995 (N.D.Ill.2001). The elements of common law fraud include: (1) a false statement of material fact, (2) defendant's knowledge that the statement was false, (3) defendant's intent that the statement induce the plaintiff, (4) plaintiff's reliance upon the truth of the statement and (5) plaintiff's damages resulting from reliance on the statement. _Connick v. Suzuki Motor Co.,_ 174 Ill.2d 482, 496, 221 Ill.Dec. 389, 675 N.E.2d 584, 591 (1996).

According to the Clinic's Complaint, the false statement at issue is TAP's promise to provide the Clinic with a constant supply of Lupron. In Illinois, fraud based on a false representation of intent to perform a promise or some future conduct is called "promissory fraud." _Doherty v. Kahn,_ 289 Ill.App.3d 544, 562, 224 Ill.Dec. 602, 682 N.E.2d 163, 176 (1997). Generally, promissory fraud is not actionable in Illinois unless the promise or representation of intention of future conduct is the scheme or device used to accomplish the fraud. _Id._ This exception applies when a party makes a promise without intending to keep the promise, but intending for another party to rely on it and the other party does rely on the promise to his detriment. _Brdecka v. Gleaner Life Ins. Society,_ No. 02 C 3076, 2002 WL 1949743, at \*3 (N.D.Ill. Aug.23, 2002). In this case, the Clinic claims that it relied on TAP's promise to its detriment because the Clinic lost clientele, reputation, and revenue when TAP cut-off its supply of Lupron.

**\*4** Promissory fraud, however, is a disfavored cause of action in Illinois because it is easy to allege and difficult to prove or disprove. _Bower v. Jones,_ 978 F.2d 1004, 1012 (N.D.Ill.1992). Thus, the burden on a plaintiff claiming promissory fraud is deliberately high. _Id._ To survive a motion to dismiss, a plaintiff must be able to point to specific, objective manifestations of _fraudulent intent_-a scheme or device. _Hollymatic Corp. v. Holly Systems, Inc.,_ 620 F.Supp. 1366, 1369 (N.D.Ill.1985) (emphasis added).

In the instant case, the Clinic fails to provide any indication

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

of fraudulent intent on the part of TAP. Initial compliance with a promise is contrary to the existence of fraudulent intent. *Stunfence, Inc. v. Gallagher Security, Inc.*, No. 01 C 9627, 2002 WL 31109456, at *2 (N.D.Ill. Sept.20, 2002). In the Clinic's Complaint, it admits that TAP received and filled multiple orders for the Clinic before refusing to fill the May 24, 1999 order. TAP's initial compliance with its promise is an indication that there was no fraudulent intent on the part of TAP to induce the Clinic to purchase Lupron.

The Clinic contends TAP initially complied with its promise because it had not yet approached the Clinic about participating in TAP's scheme to defraud Medicare and the Clinic's patients. The Clinic claims that TAP had no intention of supplying Lupron to the Clinic if it refused to participate in TAP's scheme. However, promissory fraud requires a showing that the promisor did not intend to keep the promise *at the time the promise was made.* E.g., *Brusilovsky v. Figgie Int'l*, No. 94 C 1506, 1995 WL 330809, at *6 (N.D.Ill. May 30, 1995) (emphasis added). Under the circumstances alleged by the Clinic, TAP could not have known whether it would or would not keep its promise when the promise was made back in November, 1998.

Moreover, there could be no fraudulent intent on the part of TAP because the Clinic voluntarily entered into a contract for the supply of Lupron and that contract was not a requirements contract. If TAP's promise to provide the Clinic with a constant supply of Lupron was the false statement that induced the Clinic into switching from a competitor's drug to Lupron, the terms of the contract put the Clinic on notice that TAP could stop shipments of Lupron at anytime. While it is unfortunate that the Clinic suffered a loss because TAP refused to continue to provide the Clinic with Lupron, the broken promise alone does not support an inference of fraudulent intent on the part of TAP.

Still, the Clinic alleges that TAP's fraudulent intent is evident from the close proximity between TAP's initial promise in November, 1998 and the breach of that promise in May, 1999. Indeed, a court may infer fraudulent intent where the breach of promise occurs so close to the promise that the only possible inference is that the promisor never intended to keep the promise. *Zic*, 130 F.Supp.2d at 995-96. On the facts of this case, the passage of several months between the

promise and the breach is too long to support an inference that TAP never intended to keep its promise. *Cf. id.* at 996 (one year too long to support an inference of fraudulent intent); *Razdan v. General Motors Corp.*, 979 F.Supp. 755, 759 (N.D.Ill.1997) ("several months" too long).

*5 If a plaintiff cannot establish specific, objective manifestations of fraudulent intent, then it is presumed that he cannot prove facts at trial entitling him to relief. *Hollymatic*, 620 F.Supp. at 1369. Therefore, given the Clinic's initial compliance with its promise, the Clinic's failure to plead facts showing that TAP did not intend to keep its promise at the time the promise was made, and the amount of time between the promise and the alleged breach, dismissal of the Clinic's promissory fraud claim in Count II is proper.

In Count III of the Complaint, the Clinic contends TAP's assurances that the May 24, 1999 order of Lupron was delayed, when in fact it was never shipped, constitutes fraud. The Clinic argues that TAP did not seek dismissal of this claim in its motion to dismiss, but it was covered under TAP's argument that the Clinic's Complaint is merely seeking recovery for promissory fraud. Indeed, Count III is dismissed for the same reasons as Count II. There is nothing pled in this Count suggesting that TAP, when it made representations that the shipment of Lupron was delayed, intended instead not to ship the supply of Lupron. Count III of the Complaint, therefore, is also dismissed.

The Clinic was previously given an opportunity to amend its Complaint after TAP had filed a motion to dismiss. Since this is its second bite at the apple, it is clear that the Clinic is not adequately able to state a claim. Accordingly, the dismissal of the Clinic's Complaint shall be with prejudice.

CONCLUSION

For the reasons stated above, TAP's motion to dismiss all counts is granted [# 18]. The Clinic's First Amended Complaint is dismissed with prejudice. This case is terminated.

N.D.Ill.,2004.
Sa'Buttar Health & Medical, P.C. v. Tap Pharmaceuticals, Inc.
Not Reported in F.Supp.2d, 2004 WL 1510023 (N.D.Ill.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                     Page 5
Not Reported in F.Supp.2d, 2004 WL 1510023 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)


Briefs and Other Related Documents (Back to top)

• 2004 WL 2176621 (Trial Motion, Memorandum and Affi-
davit) Defendant Tap Pharmaceuticals Inc.'s Reply Brief in
Support of Its Motion to Dismiss Plaintiff's First Amended
Complaint (Jan. 20, 2004) Original Image of this Document
with Appendix (PDF)
• 2004 WL 2176614 (Trial Motion, Memorandum and Affi-
davit) Response to Defendant's Motion to Dismiss Plaintiff's
First Amended Complaint (Jan. 6, 2004) Original Image of
this Document (PDF)
• 2003 WL 23803175 (Trial Motion, Memorandum and Af-
fidavit) Defendant Tap Pharmaceuticals Inc.'s Motion to
Dismiss Plaintiff's First Amended Complaint (Dec. 11,
2003) Original Image of this Document with Appendix
(PDF)
• 2003 WL 23803166 (Trial Pleading) First Amended Com-
plaint (Nov. 17, 2003) Original Image of this Document
(PDF)
• 2003 WL 23803160 (Trial Motion, Memorandum and Af-
fidavit) Defendant Tap Pharmaceuticals Inc.'s Motion to
Dismiss Plaintiff's Complaint (Sep. 5, 2003) Original Image
of this Document (PDF)
• 2003 WL 23803153 (Trial Pleading) Complaint (Jun. 16,
2003) Original Image of this Document with Appendix
(PDF)
• 1:03CV04074 (Docket) (Jun. 16, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

33

ALL-STATE® LEGAL  800-222-0510   ED11      RECYCLED

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1
Not Reported in F.Supp.2d, 2004 WL 602784 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**c**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Helen A. SALICHS, Plaintiff,
v.
Michele D. TORTORELLI, Defendant.
**No. 01 Civ. 7288(DAB)THK.**

March 29, 2004.

*PARTIAL ADOPTION OF REPORT AND RECOMMEND-
ATION*

BATTS, J.
*1 On October 8, 2002, Magistrate Judge Theodore H. Katz
issued a Report and Recommendation (the "Report") recom-
mending that the Defendant's motion to dismiss the Com-
plaint be granted. *See* 28 U .S.C. § 636(b)(1)(C); Local Civil
Rule 72.1(d). Plaintiff filed timely written Objections
("Objections"), to which Defendant has responded.

28 U.S.C. § 636(b)(1)(C) requires the Court to make a *"de
novo* determination of those portions of the report or spe-
cified proposed findings or recommendations to which ob-
jection is made." However, where no timely objection has
been made, "a district court need only satisfy itself that
there is no clear error on the face of the record." *Nelson v.
Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985). After con-
ducting a *de novo* review, the Court may accept, reject, or
modify, in whole or in part, the findings or recommenda-
tions made by the Magistrate. 28 U.S.C. § 636(b)(1)(C); *see
also* Local Civil Rule 72.1(d).

The Report contained findings of fact by the Magistrate
Judge and also laid out the procedural background of the
case. The Court does not adopt the Report's factual recita-
tion *in toto.* Indeed, the Plaintiff in her Objections takes is-
sue with a number of the Report's factual determinations. As
addressed below, the Court adopts the facts as set forth by
the Magistrate Judge in the Report except those few in-
stances, which upon examination by this Court were made
erroneously. Any of the Report's factual findings, therefore,
not specifically contradicted in the ensuing discussion,
should be construed as the findings of this Court.

Lastly, while *pro se* are normally accorded more leniency in
the drafting of their papers, *see Tapia-Ortiz v. Doe,* 171
F.3d 150, 151 (2d Cir.1999) (citations omitted), the Court
need not do so when the *pro se* plaintiff is a licensed attor-
ney. *See Harbulak v. Suffolk County,* 654 F.2d 194, 198 (2d
Cir.1981) (holding that plaintiff "is a practicing attorney
and, therefore, cannot claim the special consideration which
courts customarily grant to pro se parties").

I. Plaintiff's Factual Objections

Salichs raises numerous objections to the facts as found by
the Magistrate Judge in the Report.[FN1]

> FN1. Many of the objections are meritless and
> amount to little more than semantic quibbling. For
> instance, Plaintiff objects to the finding that during
> the divorce proceedings, "[P]laintiff discussed with
> her attorney her concern about her possible reloca-
> tion to Puerto Rico in the future." Report at 2. Sa-
> lichs claims at that exact time, she had no plans to
> relocate but rather wanted the option to do so left
> open. (Pl. Obj at 5.) Plaintiff also takes issue with
> the Report's statement that Defendant "explained"
> prevailing case law, while the Complaint avers that
> Defendant "informed" Plaintiff of such law. Report
> at 2; Pl. Obj at 5. Another objection seems to be
> that the Report neglects to specify that the psycho-
> logist appointed by the judge in her divorce pro-
> ceeding was a "forensic" psychologist, and that the
> evaluative report was not limited to the issue of
> custody. (Pl. Obj at 5.) These differences are trivi-
> al. Short of reproducing the Complaint verbatim,
> such departures in expression are unavoidable.
> Plaintiff's Objections make no argument as to any
> impact these had on the legal substance of the Re-
> port, and the Court finds none.
> Plaintiff additionally objects to the sentence,
> "Plaintiff settled her divorce action on those
> terms." (Id. at 6.) Plaintiff contends that the Magis-
> trate Judge's use of "those terms" is inaccurate be-
> cause it does not distinguish between the recom-
> mendations of the forensic psychologist's report as
> purportedly represented by the Defendant and the
> alleged true contents of the report. The fact is that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 602784 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Plaintiff "settled her divorce action" on precisely "those terms" that had allegedly been related by Defendant. The Report simply relates the facts chronologically and makes clear Plaintiff's discovery of the allegedly bad acts of Defendant in the next paragraph. Report at 3. The Court finds no fault in this presentation of the facts. However, the Court does acknowledge Plaintiff is right that the Settlement Agreement was entered into on April 15, 1998, that it was the judgment of divorce that was entered on August 15th of that year. (Pl. Obj at 6.)

Plaintiff objects to the Report's finding that there are currently pending custody appeals in Puerto Rico or New York, claiming that the Complaint "does not present this allegation." (Id. at 9.) Paragraph 38 of the Complaint, however, states in pertinent part that "Since June 27, 2000, custody over Alexandra has been at issue before the Courts of New York and Puerto Rico." (Compl.¶ 38.) This objection is meritless.

Plaintiff argues that the Report improperly relied on and considered various documents in his factual recitation. Rule 12(b)(6) of the Federal Rules of Civil Procedure requires that where "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Generally, mere attachment of affidavits or exhibits to a defendant's papers is not sufficient to require conversion to a motion for summary judgment. *Amaker v. Weiner,* 179 F.3d 48, 50 (2d Cir.1999) ( "[R]eversal for lack of conversion is not required unless there is reason to believe that the extrinsic evidence actually affected the district court's decision and thus was not at least implicitly excluded.").

**\*2** Plaintiff claims that the Magistrate Judge examined and utilized documents extrinsic to her Complaint, thereby converting Defendant's motion into one for summary judgment without providing Plaintiff notice or a reasonable opportunity to present pertinent evidence, as required by Rule

12(b)(6). (Pl. Obj. at 10.) Specifically, Plaintiff points to 1) a copy of the signed Settlement Agreement between Plaintiff and her ex-husband submitted in Defendant's moving papers; 2) Defendant's Affidavit, also attached thereto; and 3) decisions of the First Department in subsequent proceedings between Plaintiff and her ex-husband in state court.[FN2] (Id. at 11.)

> FN2. Plaintiff alleges that the Report relied on two decisions, only one of which was presented to the Court by Defendant. Additionally, among the exhibits she requested the Court consider, Defendant included a transcript of a proceeding in which Defendant represented Plaintiff before the presiding judge in Plaintiff's divorce action. Judge Katz expressly denied Defendant's request to consider this document. Report at 6.

The Second Circuit, however, has allowed courts to review documents extraneous to the complaint on a motion to dismiss. *Chambers v. Time Warner,* 282 F.3d 147 (2d Cir.2002). Courts should look to "a plaintiff's reliance on the terms and effect of a document in drafting the complaint" as "a necessary prerequisite to the court's consideration of the document on a dismissal motion." *Id.* at 153. Where a plaintiff relies upon a document of undisputed authenticity, "a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." ' *Id.* (quoting *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993)). "To be incorporated by reference, the Complaint must make a clear, definite and substantial reference to the documents." *Thomas v. Westchester County Health Care Corp.,* 232 F.Supp.2d 273, 275 (S.D.N.Y.2002). Even where documents are not explicitly incorporated, a court may consider them if they are integral to the complaint. *Id.; Int'l Audiotext Network, Inc. v. American Tel. and Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) (Court may consider commercial agreement not incorporated by reference because it is "integral" to complaint relying on its terms and effect); *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991) (holding that a plaintiff

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 602784 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

may not avoid consideration of document integral to his complaint by failing to attach or incorporate it by reference and that a defendant may produce the document when moving to dismiss).

In his Report, Judge Katz concluded that the Settlement Agreement is appropriate for consideration in rendering his recommendation to this Court. Plaintiff objects to any consideration of the Settlement Agreement. She urges that review of the Settlement Agreement is unnecessary because its terms are not in dispute. (Pl. Obj. at 12-13 .) The argument misses the mark. That the terms of the Agreement are not in dispute is simply not material to whether this Court may consider a document when ruling on a motion to dismiss.

Plaintiff also argues that her references to the Settlement Agreement constitute "mere discussion," and do not rise to the level of incorporation by reference. (Id.) In her Complaint, after asserting that Defendant recommended she settle the divorce action (Compl.¶ 23), Plaintiff states that she "decided to follow her advice and reach an agreement" with her husband based on Defendant's then-unknown purported misrepresentations. (Id.¶ 25.) The Complaint then specifies the relevant provisions of the Agreement:
*3 On or about April 15, 1998 plaintiff and Mr. James entered into a settlement agreement which provided, among other things, that plaintiff would have physical custody of their child Alexandra and that plaintiff and Mr. James would share legal custody of Alexandra with respect to education, religion, and medical treatment. Mr. James would have visitation every other weekend, one afternoon a week and certain holidays.
(Id.¶ 26.)

In the Court's view, Plaintiff's averments constitute a clear, definite and substantial reference to the Agreement.

More importantly, Plaintiff's allegations rely on the "terms and effects" of the Settlement Agreement in framing the Complaint. Plaintiff is, after all, alleging that Defendant's misrepresentations caused her to enter into a Settlement Agreement, which awarded her less than sole physical and legal custody of her daughter, thereby injuring her by requiring subsequent litigation with her ex-husband. Accord-

ingly, this Court finds the Settlement Agreement may be examined and utilized in deciding a motion to dismiss under Rule 12(b)(6).[FN3]

> FN3. Even if the Settlement Agreement is not incorporated by reference, it is an document integral to the Complaint. Plaintiff asserts that "[a]s a result of the settlement agreement recommended by the defendant, which the plaintiff agreed to enter into based upon the [defendant's] misrepresentations ... plaintiff lost the full custody rights...." (Compl.¶ 27.) She then relies on this conclusory statement for her three causes of action, all alleging injury from the Settlement Agreement. (Id.¶¶ 41, 46, 49.) Plaintiff must rely on the Settlement Agreement's contents to explain the significance of Defendant's alleged misrepresentation.

As to Defendant's Affidavit, the Report does not expressly address the propriety of considering such a document. On a Rule 12(b)(6) motion to dismiss, a defendant's affidavit cannot be considered, and the Court specifically excludes it. *Kopec v. Coughlin,* 922 F.2d 152, 155 (2d Cir.1991). The Court has thoroughly scrutinized the Report and finds the only one passing reference to Defendant's Affidavit on page 3 of the Report. Nevertheless, the Court does not adopt the Report's allusion to Defendant's Affidavit and has examined the Report, the Complaint, and other documents without relying on the Affidavit.

Lastly, Plaintiff suggests that the Report also improperly considered two opinions of the First Department. (Pl. Obj. at 8.) Because it is a public record, Judge Katz implicitly granted Defendant's request that he take judicial notice of the decision in *Salichs v. James,* 708 N.Y.S.2d 385 (N.Y.App.Div., 1st Dep't 2000), which ordered a stay of relocation of Plaintiff's daughter. *See* Report at 3, 11-13 (discussing *Salichs* ). The Magistrate Judge did not expressly address the propriety of considering a later 2002 state court opinion.

A court may not take factual findings in state court proceedings for the truth of the matter asserted; instead, the scope of judicial notice of New York proceedings is limited to the fact of such litigation, related filings, and any act of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 4
Not Reported in F.Supp.2d, 2004 WL 602784 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

court. See _LaFleur v. Whitman,_ 300 F.3d 256, 267 n. 1 (2d Cir.2002) (holding that an Article 78 proceeding and the state court record of such a proceeding could be judicially noticed) (citation omitted).

Plaintiff objects that Judge Katz improperly took judicial notice of findings of fact set forth in the opinions of these New York proceedings. (Pl. Obj at 8-9, 12.) Plaintiff is correct in that the Report should only have taken the fact of the litigation into account and any acts of the state court. Accordingly, the Court takes judicial notice of the First Department's 2000 order in _Salichs v. James,_ so far as it denied Plaintiff's permission to relocate and granted her ex-husband's motion to stay relocation. 708 N.Y.S.2d at 385. Those parts in the Report that specifically reference facts contained in the decision are not adopted by this Court and have not been considered in the determination of this Motion.

II. Plaintiff's Legal Objections

A. Legal Malpractice Claim

1. _Defendant's Alleged Misrepresentations_

**\*4** In her Objections, Plaintiff takes issue with the Magistrate Judge's conclusion that her legal malpractice claim should be dismissed. As already noted, the Magistrate Judge should not have included the substance and factual findings of _Salichs v. James_ in his discussion of this claim. The Court accordingly does not adopt the portion of the Report analyzing the malpractice claim and conducts its own analysis.

Under New York law, the elements of a legal malpractice claim are: "(1) a duty, (2) a breach of the duty, and (3) proof that the actual damages were proximately caused by the breach of the duty." _Ocean Ships, Inc. v. Stiles,_ 315 F.3d 111, 117 (2d Cir.2002) (citations omitted). To plead negligence, a plaintiff must allege that the attorney failed to exercise the degree of care, skill and knowledge commonly exercised by members of the profession. See _McCoy v. Feinman,_ 99 N.Y.2d 295, 302 (2002). Furthermore, [i]n order to survive dismissal, the complaint must show that but for the counsel's alleged malpractice, the plaintiff would

not have sustained some actual, ascertainable damages, so that a failure to establish proximate cause requires dismissal, regardless of whether negligence is established.

_Pellegrino v. File,_ 738 N.Y.S.2d 320, 323 (N.Y. 1st Dep't) (citations omitted), _lv denied,_ 98 N.Y.2d 606 (2002). The Court agrees with Plaintiff that the Complaint satisfies the first two elements.

Plaintiff's view of her precise injuries and damages, however, is not always clear. For instance, in her Complaint, Plaintiff first alleges that because she "agreed to enter into [the Settlement Agreement] based upon the misrepresentations ... fraudulently made by the defendant, plaintiff lost the full custody rights over her daughter" (Compl.¶ 27), suggesting that she seeks redress for having to share custody over her daughter's "education, religion, and medical treatment." (Id.¶ 26). Later in the Complaint she alleges that "(a)s a result of defendant's conduct and misrepresentations, plaintiff has lost custody over her daughter and has incurred in [sic] substantial sums of money as a result of the unnecessary litigation." (Compl. at ¶ 39.) From the Complaint, it appears that the injury is either lost custody or the endless litigation.

Her Objections only muddle her position. At one point, she claims that the Settlement Agreement "deprived her of full legal custody of her daughter," (Pl. Obj. at 14), but then later states the Settlement Agreement required her to engage in mediation and litigation. (Id.) Then, she goes on to state that her "injury is clear: Defendant's actions clearly interfered with Plaintiff's _right_ to seek full custody of her daughter." (Id. at 15 (emphasis added).) From her Objections, it appears that the injury is either lost custody, the endless litigation, or the right to seek full custody.

New York law requires not only that a complaint plead actual, ascertainable damages, but also that those damages be monetary. _Galu v. Attias,_ 923 F.Supp. 590, 597 (S.D.N.Y.1996) ("A plaintiff suing in malpractice [under New York law] can recover only pecuniary loss but not for mental or psychological suffering.") (citations omitted); _Wilson v. City of New York,_ 743 N.Y.S.2d 30, 32 (2002) (holding that a claim for legal malpractice does not afford recovery for items of damages other than pecuniary loss).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                      Page 5
Not Reported in F.Supp.2d, 2004 WL 602784 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

That Plaintiff was not awarded full legal custody and was required to "share decision making with respect to major decisions with respect to [her daughter's] education, medical and therapeutic treatment, and religion" does not represent pecuniary loss. (Settlement Agreement at 14.) Accordingly, lost custody cannot be an adequate basis for a malpractice claim.

**\*5** Plaintiff contends that Defendant's alleged "interference" with her right to seek full custody is a compensable injury. She bases her argument on a single case, *Pickle v. Page,* 252 N.Y. 474, 482-483 (1930), in which the Court of Appeals allowed a parent to seek monetary recovery for "wounded feelings" from one who participates in physically abducting a child. However, *Pickle v. Page* is clearly inapposite as Plaintiff's daughter was not physically abducted. In fact, the Settlement Agreement provided that Plaintiff retain physical custody, (Settlement Agreement at 9), and she has nowhere alleged that but for Defendant's misconduct the girl's father would have been denied visitation. The right to seek full custody is therefore not a cognizable injury under state law.

The remaining possibility for a claim of legal malpractice is the "endless litigation" in which Plaintiff was allegedly forced to engage after having agreed to the Settlement Agreement. Such litigation, according to Plaintiff's papers, included "the reversal on appeal of the order allowing the relocation [of Plaintiff and her daughter to Puerto Rico], the custody issues that have been before the Courts of the State of New York ... and having to face her ex-husband in two forums in New York and Puerto Rico." (Pl. Memo. of Law in Oppos. at 14.) She claims that the Court should not look to the viability of whether she would have prevailed on her relocation or custody issues, but that she had to litigate them.

The viability of Plaintiff's claims regarding relocation and custody are not at issue, and the Court recognizes that she did in fact have to litigate various issues, including relocation and custody, after entering the Settlement Agreement. However, even had she prevailed at trial and gained full custody of her minor daughter, the "endless litigation" of which she speaks would still have transpired. Indeed, Plaintiff herself acknowledges in her moving papers that "[n]owhere does the Complaint state that Plaintiff should have relocated

without the Court's permission or her ex-husband's consent if she had sole physical and legal custody...." (Id. at 14.) This realization by Plaintiff, a New York attorney, may stem from the fact that any motion to stay relocation would be based on her ex-husband's visitation rights, which New York Courts strongly protect. *Weiss v. Weiss,* 52 N.Y.2d 170, 175 (N.Y.1981) (affirming injunction preventing relocation of child); *Matter of Ervin R. v. Phina R.,* 717 N.Y.S. 849, 856 (N.Y.Fam.Ct.2000) (absent exceptional circumstances, non-custodial parent must have reasonable visitation privileges). Indeed, the Court of Appeals has stated that in evaluating a relocation request, "the impact of the move on the relationship between the child and the *noncustodial* parent will remain a central concern." *Tropea v. Tropea,* 642 N.Y.S.2d 575, 580 (1996) (emphasis added). Furthermore, denial of visitation to a non-custodial parent is considered a drastic remedy, "ordered only in the presence of compelling reasons and substantial evidence that such visitations are detrimental to the child's welfare." *Sheavlier v. Melendrez,* 744 N.Y.S.2d 264, 266 (3d Dep't 2002). Plaintiff has not alleged that her ex-husband would have been denied visitation or that his parental rights would have been terminated at trial. Irrespective of Defendant's conduct, he therefore would have been able to move in state court to prevent the relocation of their daughter and Plaintiff would have incurred the expense of litigating the matter.

**\*6** Additionally, custody decrees are not accorded the full *res judicata* effect given to other judgments under New York law, but are subject to modification. N.Y. Dom. Rel. Law §§ 70, 240 (2003) (both statutes provide that "[i]n all cases there shall be no prima facie right to the custody of the child in either parent"); *Friederwitzer v. Friederwitzer,* 55 N.Y.2d 89, 93 (1982) (legislature intended § 70 and § 240 to apply to both initial custody decrees and modifications); *Thomas v. New York City,* 814 F.Supp. 1139, 1148 (E.D.N.Y.1993) (custody decisions not accorded *res judicata* because circumstances change with time) (citations omitted). Had Plaintiff been awarded sole custody, the court's initial decree would not have represented an irrevocable determination of custody of her daughter, and she would not have been protected from the prospect of future litigation with her ex-husband.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw

Case 7:04-cv-08223-KMK    Document 180-6    Filed 08/11/2006    Page 25 of 26

The costs resulting from the "endless litigation" over relocation or custody, then, while compensable, were not proximately caused by the Defendant's alleged malpractice. Accordingly, Plaintiff cannot prevail on the "endless litigation" injury either.

Based on the allegations Plaintiff has set forth, no set of facts would survive a motion to dismiss because either the injuries alleged are not compensible under New York law or proximate cause is lacking. The legal malpractice claim stemming from Defendant's alleged misrepresentations should be dismissed.

### 2. *The confession of judgment.*

Plaintiff objects to the Report's recommendation of dismissal concerning the legal malpractice claim, resulting from her signing of a confession of judgment. She points out that the Complaint does, in fact, allege that she made payments pursuant to the confession of judgment and has as a result suffered economic damages. The Report, however, explicitly notes that she "made payments on her outstanding legal bills." Report at 19.

Reviewing this section of the Report *de novo*, the Court agrees with Magistrate Katz' recommendation. Even if Defendant disregarded the rule of the court and in doing so breached a duty towards Plaintiff, there is no set of facts under which Plaintiff suffered damages proximately caused by that breach. Plaintiff as much as concedes that the confession of judgment was for the amount she then owed to Defendant. (Compl.¶¶ 14, 19-21.) The Complaint does not allege any dispute over the veracity of the amount billed, nor does it allege, as Judge Katz noted, that defendant attempted to enforce the judgment. Plaintiff fails to allege damages other than having to pay monies she owed.[FN4] Accordingly, Plaintiff here fails to state a claim upon which relief can be granted.

> FN4. Lastly, when 22 NYCRR § 1400.5 has been violated, New York law does not require an attorney to return properly earned fees already paid. *Behrins & Behrins v. Sammarco,* 2003 WL 21011392, at *1, *2 (2d Dep't 2003) (where court found vacatur of wrongly obtained confession of

judgment was warranted, violation precluded attorney's further recovery of unpaid fees but did not require return of fees already paid).

### B. Plaintiff's Breach of Contract Claim

Plaintiff objects to the dismissal of her breach of contract claim, arguing that it is not merely duplicative of the malpractice claim. However, she merely repeats accusations set forth in the claim of legal malpractice and does not explain how her claim is not duplicative. After a *de novo* review of the facts and law, the Court agrees the claim should be dismissed for the reasons stated in the Report.

### C. Plaintiff's Fraud Claim

**\*7** Plaintiff has objected to the Report's recommendation that the fraud claim be dismissed as duplicative of the legal malpractice claim, merely pointing out the "egregious conduct" of the Defendant. (Pl. Obj. at 16.) Without any much-needed elaboration, the Objection appears meritless since the fraud claim like her breach of contract claim is duplicative of the legal malpractice cause of action. After a *de novo* review and for the reasons set forth in the Report, this claim should be dismissed.[FN5]

> FN5. Furthermore, New York law requires that fraudulent conduct proximately cause economic damages. *Kaye v. Grossman,* 202 F.3d 611, 614 (2d Cir.2000) (judgment as a matter of law for defendant appropriate because plaintiff failed to show economic damages resulting from alleged misrepresentation); *see also Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 422 (N.Y.1996) (actual pecuniary loss sustained as a direct result of the wrong is appropriate measure of damages). As already noted in Part II.A.1., *supra,* the loss of custody is simply not economic, and Plaintiff's subsequent litigation costs were not proximately caused by the fraudulent misrepresentations by Defendant.

### III. Conclusion

Accordingly, having disposed of Plaintiff's Objections to the Magistrate's Report and Recommendation of October 8,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 602784 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

2002, and it is hereby ORDERED AND ADJUDGED as
follows:

1. The Court adopts the facts of the Report not inconsistent
with this Order.

2. The Court GRANTS Defendant's Motion to Dismiss the
Complaint in its entirety for failure to state a claim upon
which relief can be granted.

3. The Court DIRECTS the Clerk of Court to close the
Docket in this case.

SO ORDERED.

S.D.N.Y.,2004.
Salichs v. Tortorelli
Not Reported in F.Supp.2d, 2004 WL 602784 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:01cv07288 (Docket) (Aug. 07, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.