UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WORLD WRESTLING ENTERTAINMENT, INC.,

                    Plaintiff,

     -v-

JAKKS PACIFIC, INC., JAKKS PACIFIC (H.K.)
LTD., ROAD CHAMPS LTD., THQ, INC.,
THQ/JAKKS PACIFIC LLC, STANLEY
SHENKER & ASSOCS., INC., BELL LICENSING,
L.L.C., JACK FRIEDMAN, STEPHEN BERMAN,
JOEL BENNETT, BRIAN FARRELL, STANLEY
SHENKER, JAMES BELL,

                  Defendants.

---

Case No. 04-CV-8223 (KMK)

<u>ORDER</u>

KENNETH M. KARAS, District Judge:

      On March 31, 2006, this Court issued an Opinion and Order granting in part and denying

in part Defendants' motions to dismiss certain claims asserted in Plaintiff World Wrestling

Entertainment, Inc.'s ("WWE" or "Plaintiff") Amended Complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6).  *See World Wrestling Entm't, Inc. v. Jakks Pacific, Inc.*, 425 F. Supp.

2d 484 (S.D.N.Y. 2006) [hereinafter "*WWE I*"].  Among other claims, the Court dismissed Count

III of the Amended Complaint, which asserted a violation of the Sherman Antitrust Act, 15

U.S.C. § 1.  Subsequently, Plaintiff filed this Motion for Reargument pursuant to Local Civil

Rule 6.3.  Defendants oppose the Motion.  For the reasons stated herein, the Motion is DENIED.

<u>I.  Standard of Review for Motion for Reargument</u>

      Motions for reconsideration and reargument are governed by S.D.N.Y. Local Civil Rule

6.3.[1]   Under Local Civil Rule 6.3, there are four occasions where a motion for reconsideration or reargument may be granted: (1) in response to a change in the controlling law; (2) when new evidence has become available; (3) if there is a need to correct a clear error (facts or law overlooked by the trial judge); or (4) if there is a need to prevent manifest injustice.  *See, e.g., Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995) ("The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."); *Levin v. Gallery 63 Antiques Corp*., No. 04-CV-1504, 2007 WL 1288641, at *2 (S.D.N.Y. Apr. 30, 2007)  ("[T]he sole function of a proper motion for reconsideration is to call to the Court's attention dispositive facts or controlling authority that were plainly presented in the prior proceedings but were somehow overlooked in the Court's decision: in other words, an obvious and glaring mistake." (internal quotation marks and citations omitted)); *Bell v. Stephens,* No. 05-CV-7182, 2007 WL 1098713, at *1 (S.D.N.Y. Apr. 11, 2007) ("A movant for reconsideration bears the heavy burden of demonstrating that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice." (citing *Virgin Airways v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992)).

Motions for reconsideration and reargument are heavily circumscribed.  The movant

---

[1] The legal standard governing motions under Local Civil Rule 6.3 is the same as that governing Fed. R. Civ. P. 59(e).  *See Hammer v. First UNUM Life Ins. Co.*, No. 01-CV-9307, 2005 WL 525445, at *2 (S.D.N.Y. Mar. 07, 2005) ("Plaintiff presents his motion under Federal Rule of Civil Procedure 59(e) and Local Rule 6.3, which are governed by the same standard." (citing *Dellefave v. Access Temps., Inc*., No. 99-CV-6098, 2001 WL 286771, at *2 (S.D.N.Y. Mar. 22, 2001))).

bears a "heavy burden," *Bell,* 2007 WL 1098713, at *1, and the standard is "strict," *Shrader,* 70

F.3d at 257. "Rule 6.3 is to be 'narrowly construed and strictly applied in order to discourage

litigants from making repetitive arguments on issues that have been thoroughly construed by the

court.'" *In re Converium Holding AG Sec. Litig.*, No. 04-CV-7897, 2007 WL 1041480, at *2

(S.D.N.Y. Apr. 9, 2007) (quoting *Zoll v. Jordache Enters. Inc.,* No. 01-CV-1339, 2003 WL

1964054, at *2 (S.D.N.Y. Apr. 24, 2003)). Courts have warned that reconsideration is not "a

'second bite at the apple' for a party dissatisfied with a court's ruling." *Winkler v. Metro. Life

Ins. Co.*, No. 03-CV-9656, 2006 WL 2850247, at *1 (S.D.N.Y. Sept. 28, 2006) (quoting

*Pannonia Farms, Inc. v. USA Cable*, No. 03-CV-7841, 2004 WL 1794504, at *2 (S.D.N.Y. Aug.

10, 2004)). In general, reconsideration and reargument are "extraordinary remed[ies] to be

employed sparingly in the interests of finality and conservation of scarce judicial resources." *In

re Health Mgmt. Sys., Inc. Sec. Litig.,* 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (internal

quotation marks and citations omitted).

## II.  Merits of Plaintiff's Claim

### A.  Change in Controlling Law/New Evidence

Familiarity with the underlying facts and procedural history is presumed. *See WWE I,*

425 F. Supp. 2d at 488-93, 515. In the instant Motion, Plaintiff makes no effort to comply with

the standard for a motion for reargument as it is stated in Local Rule 6.3. In an effort to defend

its compliance with the Local Rule, Plaintiff states in its Reply that a losing party can file a

reconsideration motion alleging factual mistakes (of which there are none here) and *clear* errors

of law. (Reply to Defs.' Opp'n to Pl.'s Mot. for Reargument of the Ct.'s Dismissal of Pl. World

Wrestling Entertainment, Inc.'s Sherman Act Claim Pursuant to the Ct.'s March 31, 2006 Op.

3

and Order 1 n.2 ("Pl.'s Reply").)  That is not what Plaintiff has done here.  Rather, Plaintiff

acknowledged that the Court relied upon the proper legal standards, and asserted that the Court

misapplied those standards.  (Mem. of Law in Supp. of Mot. for Reargument of the Ct.'s

Dismissal of World Wrestling Entertainment, Inc.'s Sherman Act Claim Pursuant to the Ct.'s

March 31, 2006 Op. and Order 2-11 ("Pl.'s Mem.").)  Plaintiff also has not asserted that there

has been a change in the controlling law or that new evidence not previously available has

subsequently come to light.  Therefore, as a threshold matter, Plaintiff has not met this

component of the motion for reargument standard.  *See Man Ferrostaal, Inc. v. M/V VERTIGO*,

No. 05-CV-10326, 2006 WL 2669315, at *1 (S.D.N.Y. Sept. 18, 2006) ("This failure alone is

sufficient basis to deny Plaintiffs' motion." (citing *Eisemann v. Green*, 204 F.3d 393, 395 n.2 (2d

Cir. 2000))).

B.  Clear Error of Law

      In addition to failing to show a change in the controlling law or any new evidence,

Plaintiff cannot demonstrate that "the Court overlooked controlling decisions or factual matters

that were put before it on the underlying motion . . . and which, had they been considered, might

have reasonably altered the result before the court."  *Zinnamon v. Bank of N.Y.*, No. 06-CV-

1805, 2006 WL 1652662, at *1 (E.D.N.Y. June 8, 2006) (internal quotation marks omitted).

Plaintiff argues here, as it did on the underlying motion, that motions to dismiss are "particularly

disfavored" in antitrust cases.  Consequently, according to Plaintiff, the Court improperly

determined that Plaintiff had not pled the existence of an antitrust injury.  (Pl.'s Mem. 3.)

Specifically, Plaintiff asserts that if Defendant Jakks Pacific, Inc. ("Jakks") had not coopted

Defendant THQ, Inc. ("THQ"), THQ would have submitted a bid paying higher royalty rates to

Plaintiff. (*Id*. 4-5.) According to Plaintiff, the loss of that bid was a cognizable antitrust injury, regardless of the existence of other potential non-coopted bidders. (*Id*. 5-6.) Plaintiff argues that the Court improperly resolved questions of fact in finding that Plaintiff failed to allege an antitrust injury.

As the *WWE I* Opinion explicitly noted, on a motion to dismiss, the Court must "accept as true the factual allegations made in the complaint and draw all inferences in favor of [Plaintiff]." *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998). Since *WWE I*, however, the Supreme Court has held that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted and second alteration in original).

In *Bell Atlantic*, the Supreme Court also abandoned reliance on the oft-quoted line from *Conley v. Gibson* that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief[,]" 355 U.S. 41, 45-46 (1957). *Bell Atl.*, 127 S. Ct. at 1964-69. As the Court explained, a literal application of *Conley*'s "no set of facts" rationale is improper because "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id*. at 1968. Instead, the Court emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level[,]" *id*.

5

at 1965 (internal citation omitted), and "once a claim has been stated adequately, it may be

supported by showing any set of facts consistent with the allegations in the complaint[,]" *id.* at

1969.  Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."

*Id.* at 1974; *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("After careful

consideration of the Court's opinion and the conflicting signals from it that we have identified,

we believe the Court is not requiring a universal standard of heightened fact pleading, but is

instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim

with some factual allegations in those contexts where such amplification is needed to render the

claim *plausible*.").  If Plaintiff "ha[s] not nudged its claims across the line from conceivable to

plausible, its complaint must be dismissed."  *Bell Atl.*, 127 S. Ct. at 1974.

Of course, this Court did not hold in *WWE I*, and does not now believe, that there are

heightened pleading standards for antitrust cases.  But, "[m]ere conclusory allegations 'of

conspiracy or of injury under the antitrust laws without any supporting facts permit[] dismissal.'"

*Barrett v. U.S. Banknote Corp.*, No. 91-CV-7420, 1992 WL 232055, at *3 (S.D.N.Y. Sept. 2,

1992) (quoting *Heart Disease Research Found. v. Gen. Motors Corp.*, 463 F.2d 98, 100 (2d Cir.

1972)).  And, the Court recognizes, as Plaintiff repeatedly urges, that courts should dismiss

antitrust actions "sparingly."  *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 746-47 (1976)

(characterizing standard for dismissal of antitrust allegations as "concededly rigorous").  But

Plaintiff makes too much of this (as it does in connection with all of Defendants' Rule 12(b)(6)

claims), as *Bell Atlantic* itself is a case in which the Supreme Court found that Judge Lynch's

dismissal of the plaintiff's antitrust claims was proper.  *See* 127 S. Ct. at 1973.  In fact, *Bell*

*Atlantic* emphasized a long-recognized principle that to state a claim, a plaintiff must do so

consistent with the allegations in the complaint.  *See id.* at 1973; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (noting that to survive motion to dismiss, plaintiff must state a claim under facts "consistent with the allegations"); *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that once a claim for relief has been stated, plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint").[2]

To properly plead a violation of federal antitrust laws, a plaintiff "must show more than a mere violation of the antitrust laws; it must also show an injury that is a direct result of anticompetitive behavior of the defendant." *Barrett,* 1992 WL 232055, at *5 (quoting *Original Appalachian Artworks, Inc. v. Grenada Elecs., Inc.*, No. 85-CV-9064, 1986 WL 2402, at *4 (S.D.N.Y. Feb. 20, 1986)) (internal quotation marks omitted); *see also Bocobo v. Radiology Consultants of S. Jersey, P.A.*, 305 F. Supp. 2d 422, 425 (D. N.J. 2004) (noting that establishing "an antitrust injury for purposes of standing is a separate inquiry from whether there has been an actual substantive antitrust violation").  "[The Sherman Act] does not purport to afford remedies for all torts committed by or against persons engaged in interstate commerce." *Hunt v. Crumboch*, 325 U.S. 821, 826 (1945).

Plaintiff cites cases from other jurisdictions in support of the contention that "the existence of an 'antitrust injury' is not typically resolved through motions to dismiss." *Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 876 (3d Cir. 1995).  However, Plaintiff has not cited any authority dictating that a Sherman Act claim can never be dismissed on a 12(b)(6) motion, even

---

[2]While both *Swierkiewicz* and *Sanjuan* cited the recently-retired *Conley* decision, the *Bell Atlantic* Court cited them with approval for this limited point.  *See* 127 S. Ct. at 1969.

when the plaintiff fails to plead an antitrust injury. Indeed, "Plaintiff's mere conclusory statement that he was damaged will not suffice to clothe him with standing to sue." *Larry R. George Sales Co. v. Cool Attic Corp.*, 587 F.2d 266, 274 (5th Cir. 1979) (finding plaintiff had not suffered antitrust injury); *see also N. Jersey Secretarial Sch., Inc. v. McKiernan*, 713 F. Supp. 577, 584 (S.D.N.Y. 1989) (dismissing antitrust complaint for, among other reasons, failure to sufficiently plead antitrust injury); *Rosenberg v. Cleary, Gottlieb, Steen & Hamilton*, 598 F. Supp. 642, 646 (S.D.N.Y. 1984) (dismissing complaint for failing to allege injury to market that should be redressed by antitrust laws).

In *Brader*, the issue was whether the defendants' alleged conduct had prevented competition in the relevant market. *See* 64 F.3d 875-76. The Third Circuit reversed the dismissal of the Sherman Act claim, finding that the question of whether there had been an impact on competition required further discovery. *See id*. at 876. In this case, the Court presumed that there had been anticompetitive conduct resulting in a negative impact on competition. The relevant inquiry for this Court, therefore, was whether the resulting restraint on trade was the source of Plaintiff's injury. As Plaintiff points out, motions to dismiss are disfavored in antitrust suits because antitrust litigation is complex, and "the proof is largely in the hands of the alleged conspirators." *Hosp. Bldg. Co.*, 425 U.S. at 746-47 (internal quotation marks omitted). That justification for disfavoring motions to dismiss is less relevant in the instant case. Because the facts as alleged by Plaintiff clearly demonstrate that commercial bribery, not collusive behavior, caused Plaintiff's injury, further discovery will not assist Plaintiff in properly pleading an antitrust injury. *See Ambroze v. Aetna Health Plans of N.Y., Inc.*, No. 95-CV-6631, 1996 WL 282069, at *10 n.10 (S.D.N.Y. May 28, 1996) (distinguishing

8

*Brader* and finding that plaintiffs had not suffered the type of injury the antitrust laws were enacted to remedy), *vacated* 107 F.3d 2 (2d Cir. 1997) (permitting plaintiff to replead based on new antitrust theory asserted during appeal), *remanded to* 1997 WL 419211 (S.D.N.Y. July 25, 1997) (dismissing Sherman Act claim for mootness, lack of standing, and lack of antitrust injury), *aff'd*, 152 F.3d 917 (2d Cir. 1998) (affirming judgment on the basis that plaintiffs had not suffered an antitrust injury).

To the extent Plaintiff insinuates that the Third Circuit eschews dismissal of any antitrust complaint on the grounds of insufficient pleading of injury, Plaintiff is mistaken. In *Shuylkill Energy Res. v. Pa. Power & Light Co.*, 113 F.3d 405, 417-18 (3d Cir. 1997), another case cited by Plaintiff, the Third Circuit noted that it was not typical practice to resolve the question of antitrust injury on a motion to dismiss. Nonetheless, the *Shuylkill* court upheld dismissal of the plaintiff's Sherman Act claims for failure to plead an antitrust injury, stating that the court was not "required to accept as true unsupported conclusions and unwarranted inferences." *Id.*

Like the Third Circuit, the Second Circuit has upheld dismissal of cases for failure to plead an antitrust injury. In *Balaklaw v. Lovell*, 14 F.3d 793, 797-98 (2d Cir. 1994), the plaintiff, an anesthesiologist, alleged a Sherman Act violation as a result of an exclusive contract between a hospital and a group of anesthesiologists. The district court assumed that the plaintiff had suffered an injury as a result of the defendants' actions. Nevertheless, the Second Circuit affirmed the dismissal of the antitrust claim because "there [was] no evidence that [plaintiff's] injury was of the type the antitrust laws were intended to prevent." *Balaklaw*, 14 F.3d at 797 (internal quotation marks omitted). As in the instant case, the court in *Balaklaw* found that the plaintiff's injury did not stem from the anticompetitive aspect of the defendants' actions. Rather,

the plaintiff in *Balaklaw* was harmed as a result of losing out in a competitive process. *See id.* at

798 (finding that even if the court cancelled the allegedly illegal agreement, "the most significant

restraints" on competition would remain).  Here, if the allegedly collusive agreement between

Jakks and THQ was cast aside, the most significant source of economic injury (if not the only

one) – the bribery of WWE's agents – would remain.  As long as Defendants Bell and Shenker

were on Jakks' payroll, no competitive offers would be forwarded to WWE management.

Indeed, in attempting to resuscitate its antitrust claim, Plaintiff ignores its own allegations

regarding Activision.  Nothing about the joint venture involving Jakks and THQ prevented

WWE from granting the videogame license to Activision (or any other potential bidder,

including Acclaim).  In fact, according to Plaintiff, Activision likely would have upped its initial

bid had it not been prevented from doing so by Bell and Shenker.  Thus, as pled in the Amended

Complaint, Plaintiff's injury stemmed from Defendants' bribery of disloyal employees, not from

Defendants' allegedly collusive behavior, and therefore Plaintiff's Sherman Act claim was

properly dismissed.  *See Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 321 (3d Cir. 2007)

(noting that the "prospective harm to competition must not . . . be speculative" and that the

"threat of antitrust injury[,]" which yields "directly harmful effects[,]" must be "closely related

to the [antitrust] violation" (internal quotation marks omitted)); *In re Canadian Import Antitrust

Litig.*, 470 F.3d 785, 791 (8th Cir. 2006) (affirming dismissal and holding:  "The absence of

competition from Canadian sources in the domestic prescription drug market . . . is caused by the

federal statutory and regulatory scheme adopted by United States government, not by the

conduct of the defendants.  Consequently, the alleged conduct of the defendants did not cause an

injury of the type that the antitrust laws were designed to remedy."); *City of Pittsburgh v. W.*

*Penn Power Co.*, 147 F.3d 256, 265-67 (3d Cir. 1998) (affirming dismissal of antitrust complaint because plaintiff failed to establish that injury resulted from antitrust violations).

C.  Construction of the Facts

Plaintiff argues that the Court misconstrued the facts alleged in the Amended Complaint and did not consider all of the relevant allegations.  (Pl.'s Mem. 6-8.)  "[T]hat the Court did not specifically reference every factual detail or incident to which [Plaintiff] attached special significance in [its] opposition papers does not necessarily establish that the Court did not consider that particular matter."  *Ferrand v. Credit Lyonnais*, 292 F. Supp. 2d 518, 521-22 (S.D.N.Y. 2003) (denying motion for reconsideration).

Plaintiff also asserts that the Court, in holding that the allegedly collusive bid was not a substantial factor in causing Plaintiff's injury, improperly determined issues of causation and materiality, which are reserved for the fact finder.  (Pl.'s Mem. 7.)  As the Court noted in *WWE I*, and as the Plaintiff emphasizes in its papers, "[a]n antitrust violation need not be the sole cause of the alleged injuries."  *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 401 (7th Cir. 1993).  But, the antitrust violation must be "a material element of, and substantial factor in producing, the injury."  *Id.*  Plaintiff concedes that its Sherman Act claim is not based upon the bribery scheme.  (WWE Mem. in Opp'n to Defs.' Mot. to Dismiss Sherman Act Claim 12 ("Pl.'s Opp'n").)  Instead, Plaintiff alleges that the Sherman Act claim is based upon Jakks' and THQ's agreement that THQ would not submit an independent bid.  As already discussed in this Order and in *WWE I*, that agreement, as pled by Plaintiff in the Amended Complaint, is not a material or substantial element of Plaintiff's injury.  Rather, the bribery scheme is the cause of Plaintiff's injury.

11

Plaintiff argues that THQ was willing and able to submit an independent bid paying a higher royalty rate to Plaintiff. (Pl.'s Mem. 1-2.) According to Plaintiff, regardless of whether there were other potential bidders in the market, Plaintiff lost THQ's independent bid when Jakks coopted THQ. The loss of that one competitive bid allegedly caused Plaintiff to suffer an antitrust injury. Unfortunately for Plaintiff, this theory is inconsistent with its detailed allegations, which purport to show that the bribery scheme blocked a truly competitive bidding process. First, even if Jakks never attempted to coopt THQ and THQ had submitted a competitive bid to Bell and Shenker, Plaintiff's own allegations demonstrate that they would not have forwarded that bid to WWE management because they were being bribed by Jakks. Indeed, that is exactly what is said to have happened when Bell and Shenker received informal offers from THQ and Activision.[3] (Am. Compl. ¶ 134 ("SSAI and Bell did not provide WWE management with copies of the April 23, 1998 letter from THQ or the April 27, 1998 Activision informal proposal.").) Second, Jakks was motivated to find a bidding partner because Bell and

---

[3]Plaintiff takes issue with the Court's characterization of the facts alleged in the Amended Complaint. Although the Court may not have quoted verbatim each of the allegations contained in the Amended Complaint, the Court accurately conveyed the sum and substance of the allegations. For example, in *WWE I*, the Court stated that "Shenker and Bell ignored, and did not forward to WWE management, a formal proposal later prepared by Activision. They also did not solicit an increased bid from Activision." *WWE I*, 425 F. Supp. 2d at 517. Plaintiff now argues that the Court inaccurately reported the facts as alleged in the Amended Complaint. In the instant Motion, Plaintiff states that, "Activision did not make a 'formal' bid and no Activision bid was more lucrative than what WWE accepted." (Pl.'s Mem. 8.) That is not what Plaintiff said in its Amended Complaint, where Plaintiff alleged that "neither Bell nor SSAI nor Shenker ever sent the *formal* Activision proposal of May 12, 1998 to WWE management, and neither contacted Activision to request that Activision increase its bid before recommending the Jakks/THQ deal to WWE management." (Am. Compl. ¶ 153 (emphasis added).) Plaintiff also alleged in the Amended Complaint that, "[o]n information and belief, Activision would have improved the terms offered to WWE if it had been permitted to participate in negotiations or bona fide biddings." (*Id.* ¶ 148.) Thus, Plaintiff's claim that the Court misconstrued the allegations in Plaintiff's Amended Complaint is without merit.

Shenker informed it that there were other potential bids from THQ and Activision.  (*Id*. ¶¶ 127-

34.)  Without the inside information, allegedly purchased with bribes, of Bell and Shenker, Jakks

would not have known that THQ and Activision were proposing offers.  Third, according to the

Amended Complaint, Jakks was able to coopt THQ because of the bribery scheme.  In particular,

Plaintiff alleges that Jakks informed THQ that it "controlled the videogame license and that THQ

could participate in the revenue stream from the videogame license at a below market royalty

rate." (Pl.'s Mem. 8.)  Of course, Plaintiff's theory – and the only theory consistent with the

allegations – is that Jakks "controlled the videogame license" because Bell and Shenker

allegedly had agreed to promote Jakks' bids at the expense of other competitive bids in return for

bribe payments.  Fourth, Jakks and THQ were able to propose a joint bid that was sufficiently

comparable to Activision's proposed bid, and thereby avoid arousing WWE's suspicion because

Bell and Shenker had provided Jakks with the terms of Activision's proposed offer in return for

bribes.  (Am. Compl. ¶ 145.)  Thus, Plaintiff has not alleged that the alleged antitrust activity

was a substantial factor in causing any economic injury it suffered.

On the instant Motion, Plaintiff also asks the Court to ignore the fact that Bell and

Shenker were accepting bribes to steer certain business to Plaintiff.  (Pl.'s Mem. 8 n.2.)  Plaintiff

cannot have it both ways.  Plaintiff alleged in great detail in its Amended Complaint the bribery

scheme involving Jakks, Shenker, and Bell.  (*See* Am. Compl. ¶¶ 22, 62, 85-86, 95, 97, 134-35,

145, 151, 166-70.)  On a motion to dismiss, the Court is required to accept all facts alleged by

Plaintiff as true.  Plaintiff cannot now ask the Court to ignore the very same facts upon which it

based its Amended Complaint.  *See Tierney v. Omnicom Group Inc.*, No. 06-CV-14302, 2007

WL 2012412, at *4 (S.D.N.Y.  July 11, 2007) (noting that "a court need not feel constrained to

accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice")*; Aniero Concrete Co. v. N.Y. City Constr. Auth.*, No. 94-CV-9111, 95-CV-3506, 1997 WL 83308, at *2 (S.D.N.Y. Feb. 27, 1997) ("[Third party plaintiffs] cannot proceed on the presumption that [plaintiff's] allegations are true, and then seek to evade the impact of those allegations when they are not conducive to the theory it hopes to advance."); *accord Schott Motorcycle Supply. Inc. v. Am. Honda Motor Co.*, 976 F.2d 58, 61 (1st Cir. 1992) (affirming grant of summary judgment for defendant, the court relied on admission in plaintiff's complaint and asserted that "plaintiff should not be allowed to contradict its express factual assertion in an attempt to avoid summary judgment" when not pleading in the alternative); *Johnson v. Metro. Gov't of Nashville,* 512 F. Supp. 2d 1129, 1136 (M.D. Tenn. 2007) (dismissing complaint where allegations in complaint were inconsistent).[4]

---

[4]Of course, the Court recognizes that a plaintiff is entitled to plead alternate statements of a claim regardless of consistency, particularly when the claims depend on information uniquely in a defendant's possession.  *See Adler v. Pataki*, 185 F.3d 35, 40-41 (2d Cir. 1999) (holding that it was proper for plaintiff to allege that he was fired for retaliatory and political reasons).  However, that is not what takes Plaintiff's antitrust claim down.  Rather, the problem is that Plaintiff's antitrust injury claim lacks allegations that might even involve facts that would be plausible in light of the entirety of Plaintiff's allegations.  *See Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith*, No. 93-CV-7244, 2000 WL 33665340, at *3 (S.D.N.Y. Nov. 14, 2000) (distinguishing *Adler* and noting that plaintiff's property valuation theory was insufficient in light of plaintiff's knowledge of relevant factors).  Here, for example, while Plaintiff may not know what THQ might have done if allowed to bid, Plaintiff surely is not prevented from making allegations about what Activision and Acclaim might have done if allowed to bid.  Yet, there is no way for Plaintiff to allege that their bids were blocked by the joint venture in light of Plaintiff's allegations that Bell and Shenker were determined to make sure that WWE senior management never learned about any bids other than those involving Jakks.

### III. Conclusion

For the reasons stated above, Plaintiff's Motion for Reargument is DENIED. The Clerk

of Court is directed to terminate the Motion (Dkt. No. 134).


SO ORDERED.

Dated:        December 21 , 2007
              White Plains, New York

                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE

<u>Service List</u>:

Jerry McDevitt, Esq.
Amy Lyn Barrette, Esq.
Peter Nicholas Flocos, Esq.
William Purcell, Esq.
Curtis B. Krasik, Esq.
Kirkpatrick & Lockhart Preston Gates Ellis, LLP
535 Smithfield Street
Pittsburgh, PA 15222

Jonathan Lerner, Esq.
Maura Barry Grinalds, Esq.
Michael Gruenglas, Esq.
Skadden, Arps, Slate, Meacher & Flom LLP
Four Times Square
New York, NY 10036-6522
*Counsel for Jakks Pacific, Inc.*
*Jakks Pacific (H.K.) Limited, Jack Friedman,*
*Stephen Berman, and Joel Bennett*

Jonathan Honig, Esq.
Feder, Kaszovitz, Isaacson, Weber, Skala,Bass & Rhine LLP
750 Lexington Avenue
New York, NY 10022
*Counsel for Jakks Pacific, Inc.,*
*Jakks Pacific (H.K.) Limited, Jack Friedman,*
*Stephen Berman, and Joel Bennett*

Steven A. Marenberg, Esq.
Philip M. Kelly, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Los Angeles, CA 90067
*Counsel for Defendant THQ, Inc.*
*and Brian Farrell*

Richard Schaeffer, Esq.
Bruce Handler, Esq.
Dornbush, Mensch, Mandelstam & Schaeffer, LLP
747 Third Avenue
New York, NY 10017
*Counsel for THQ/Jakks Pacific LLC*

Michael Alan Freeman, Esq.
Greenberg Freeman, L.L.P.
24 W. 40th St., 17th Floor
New York, NY 10018
*Counsel for Defendants Stanley Shenker*
*and Stanley Shenker & Assocs., Inc.*