# **10**

Westlaw.

Not Reported in A.2d
Page 1
Not Reported in A.2d, 2006 WL 894924 (Conn.Super.)
**(Cite as: Not Reported in A.2d)**

H
McKinney v. Chapman
Conn.Super.,2006.
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut,Judicial District of Hartford.
Daphne McKINNEY
v.
Brian CHAPMAN.
No. 040833378S.

March 21, 2006.

**Background:** State employee filed a complaint against supervisor for defamation of character, intentional infliction of emotional distress, and negligent infliction of emotional distress.

**Holdings:** The Superior Court, Judicial District of Hartford, Tanzer, J., held that:

(1) release signed by employee in connection with her federal employment discrimination lawsuit against employer and supervisor applied to employee's defamation claims;

(2) documents created by supervisor in connection with employee's federal employment discrimination lawsuit against employer were absolutely privileged;

(3) release signed by employee in connection with her federal employment discrimination lawsuit against employer and supervisor applied to employee's intentional infliction of emotional distress claims;

(4) supervisor's preparation and publication of documents did not rise to the level of extreme and outrageous behavior required to state a cause of action for intentional infliction of emotional distress; and

(5) release signed by employee in connection with her federal employment discrimination lawsuit against employer and supervisor applied to employee's negligent infliction of emotional distress claims.

Summary judgment granted in part.

West Headnotes

**[1] Release 331 ⇐31**

331 Release
　331II Construction and Operation
　　331k31 k. General Release. Most Cited Cases
Release signed by state employee in connection with her federal employment discrimination lawsuit against employer and supervisor, which released employer and all of its officers and employees from liability "in any way related to the incident or circumstances that formed the basis for the [lawsuit]," applied to employee's defamation claims against supervisor; the documents that formed the basis for employee's action against supervisor were prepared by supervisor after being questioned by employer's attorney, who was investigating employee's discrimination claims, they related to the discrimination lawsuit, and employee knew about the documents before she signed the release.

**[2] Libel and Slander 237 ⇐38(1)**

237 Libel and Slander
　237II Privileged Communications, and Malice Therein
　　237k35 Absolute Privilege
　　　237k38 Judicial Proceedings
　　　　237k38(1) k. In General. Most Cited

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 2006 WL 894924 (Conn.Super.)
**(Cite as: Not Reported in A.2d)**

Cases
Documents created by supervisor in connection with state employee's federal employment discrimination lawsuit against employer were absolutely privileged against defamation liability; supervisor created the documents at issue in connection with federal litigation, and the documents were given to employer, who was a party to the federal litigation.

**[3] Libel and Slander 237 €==45(2)**

237 Libel and Slander
    237II Privileged Communications, and Malice Therein
        237k40 Qualified Privilege
            237k45 Common Interest in Subject-Matter
                237k45(2) k. Common Business Interest. Most Cited Cases

**Libel and Slander 237 €==51(4)**

237 Libel and Slander
    237II Privileged Communications, and Malice Therein
        237k51 Existence and Effect of Malice
            237k51(4) k. Discharge of Duty to Others or to Public and Common Interest in Subject-Matter. Most Cited Cases
Documents created by supervisor in connection with state employee's federal employment discrimination lawsuit against employer were protected by a qualified privilege against defamation liability; there was no evidence that supervisor acted with malice when he wrote the documents, and supervisor wrote to documents after being contacted by an attorney for employer with questions about employee's discrimination lawsuit.

**[4] Release 331 €==31**

331 Release
    331II Construction and Operation
        331k31 k. General Release. Most Cited Cases
Release signed by state employee in connection with her federal employment discrimination lawsuit against employer and supervisor, which released employer and all of its officers and employees from liability "in any way related to the incident or circumstances that formed the basis for the [lawsuit]," applied to employee's intentional infliction of emotional distress claims against supervisor; the documents that formed the basis of employee's action against supervisor were prepared by supervisor after being questioned by employer's attorney, who was investigating employee's discrimination claims, they related to the discrimination lawsuit, and employee knew about the documents before she signed the release.

**[5] Damages 115 €==57.58**

115 Damages
    115III Grounds and Subjects of Compensatory Damages
        115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
            115III(A)2 Mental Suffering and Emotional Distress
                115k57.50 Labor and Employment
                    115k57.58 k. Other Particular Cases. Most Cited Cases
Supervisor's preparation and publication of documents, in connection with state employee's federal employment discrimination lawsuit against employer, did not rise to the level of extreme and outrageous behavior required to state a cause of action for intentional infliction of emotional distress; employee alleged in her discrimination lawsuit that supervisor was not giving her work to do, and supervisor created a chronology of the history between employee and himself.

**[6] Release 331 €==31**

331 Release
    331II Construction and Operation
        331k31 k. General Release. Most Cited Cases
Release signed by state employee in connection with her federal employment discrimination lawsuit against employer and supervisor, which released employer and all of its officers and employees from liability "in any way related to the incident or circumstances that formed the basis for the {lawsuit]," applied to employee's negligent infliction of emotional distress claims against supervisor; the documents that formed the basis of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d   Page 3
Not Reported in A.2d, 2006 WL 894924 (Conn.Super.)
**(Cite as: Not Reported in A.2d)**

employee's action against supervisor were prepared by supervisor after being questioned by employer's attorney, who was investigating employee's discrimination claims, they related to the discrimination lawsuit, and employee knew about the documents before she signed the release.

**[7]** States 360 ⚷79

360 States
   360II Government and Officers
      360k79 k. Liabilities of Officers for Negligence or Misconduct. Most Cited Cases
Supervisor was entitled to statutory immunity from state employee's negligent infliction of emotional distress claims, which were based on supervisor's publication of a chronology of employee's performance; statute provided that "no state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment," supervisor wrote the chronology to a superior, and it was a review of employee's performance. C.G.S.A. § 4-165.

Philpot W. Martyn Jr. Law Office, New Haven, for Daphne McKinney.
AAG Edward Osswalt, Jane B. Emons, David C. Nelson, Hartford, for Brian Chapman.
TANZER, Judge.

   **\*1** The plaintiff, Daphne McKinney, has filed a three-count complaint against the defendant, Brian Chapman, alleging (1) defamation of character; (2) intentional infliction of emotional distress; and (3) negligent infliction of emotional distress. The basic allegation is that Chapman wrote documents disparaging McKinney's work performance and dress. It is undisputed the documents were prepared after McKinney filed a federal employment discrimination suit against Chapman's and her employer, State of Connecticut Department of Transportation ("DOT") and after Chapman had been contacted by an attorney for the DOT. It is also undisputed that in connection with the federal litigation, McKinney, on December 11, 2003, signed a Stipulated Agreement to which was appended a General Release of Liability ("release"). Before this court is the defendant's motion for summary judgment on all three counts of the complaint.

*COUNT 1-DEFAMATION*

*A. Release of Liability*

   **[1]** The release signed by McKinney released the DOT and all of its officers and employees from liability "in any way related to the incident or circumstances that formed the basis for the [employment discrimination suit]." The release of liability includes all causes of action under the statutes of Connecticut and the United States, as well as actions under common law, that occurred before the signing of the release, December 11, 2003.

   Chapman wrote the documents after being questioned by an attorney for the DOT investigating McKinney's claims. McKinney had claimed she had not been promoted because duties had been removed from her and that Chapman was not assigning her work to do. Chapman wrote the chronology and a specific response to McKinney's claims to demonstrate his experiences as McKinney's supervisor. The documents he wrote were related to the employment discrimination suit to support the DOT's claim that she was not given the promotion because of her alleged work ethic. Chapman wrote and delivered the documents to his supervisor sometime in late August of 2002, well before the signing of the release. McKinney knew about the documents when signing the release because Chapman admitted to writing the documents in a deposition in the federal litigation taken on November 26, 2002 at the offices of McKinney's then and now attorney. When McKinney signed the release, she knew about the documents that Chapman had written and the statements made by him, and she released him from liability. There is no genuine issue of material fact showing that the release does not apply in this case or that McKinney did not know about the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                    Page 4
Not Reported in A.2d, 2006 WL 894924 (Conn.Super.)
**(Cite as: Not Reported in A.2d)**

documents at the signing of the release, and she makes no such argument.

### B. Absolute Privilege

[2]"The effect of an absolute privilege is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously."*Petyan v. Ellis,* 200 Conn. 243, 246, 510 A.2d 1337 (1986). The privilege extends to meetings between witnesses and parties that are in preparation for judicial or quasi-judicial proceedings. *Kelley v. Bonney,* 221 Conn. 549, 606 A.2d 693 (1992). The privilege "applies to statements made in pleadings or other documents prepared in connection with a court proceeding." (Citations omitted; internal quotations omitted.) *Petyan v. Ellis, supra,* at 251-52, 510 A.2d 1337.

*2 The chronology and response documents were prepared by Chapman in connection with the federal litigation initiated by McKinney, a judicial proceeding. The documents were given to the Department of Transportation, which was a party to the suit brought by McKinney. Therefore Chapman enjoys an absolute privilege with regard to the documents. There is no genuine issue of material fact to show that the statements he made were not prepared in connection with a judicial or quasi-judicial proceeding.

### C. Qualified Privilege

[3] Chapman is also protected by a qualified privilege because the statements he made were to a supervisor regarding an employee's job performance. See *Torosyan v. Boehringer Ingelheim Pharmaceuticals,* 234 Conn. 1, 24, 662 A.2d 89 (1999).

Chapman enjoys the privilege as long as the statements were not made with malice. *Id.* The plaintiff shows no evidence to suggest there is a genuine issue of material fact that Chapman wrote the chronology with an improper or unjustifiable motive. McKinney argues that because Chapman was mad that the plaintiff laughed at him for a mistake he made, Chapman then decided to try and ruin McKinney's life. The undisputed evidence is that Chapman wrote the documents after being contacted by an attorney with questions about the federal litigation brought by McKinney.

For the above reasons, summary judgment is granted to the defendant as to Count 1 of the complaint.

### COUNT 2-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### A. Release of Liability

[4] Since Count 2 of the complaint is related to the same allegations as Count 1, the plaintiff has released the defendant from liability for intentional infliction of emotional distress caused by the publishing of the chronology. The reasoning in part I.A. is incorporated here.

### B. Extreme and Outrageous Behavior

[5] The plaintiff has not shown enough evidence to demonstrate extreme and outrageous behavior on Chapman's part. To succeed on an intentional infliction of emotional distress claim the plaintiff must show, among other things, "the defendant's conduct was extreme and outrageous." (Citations omitted; internal quotations omitted.) *Appleton v. Board of Education,* 254 Conn. 205, 210, 757 A.2d 1059 (2000)."Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine."*Id.* This court acts as

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

gatekeeper in assessing a claim for intentional infliction of emotional distress. *Hartmann v. Gulf View Estates Homeowners Assoc.,* 88 Conn.App. 290, 295, 869 A.2d 275 (2005).

The conduct must be so outrageous in character as to "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community ... [where] recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" (Citations omitted; internal quotations omitted.) *Appleton v. Board of Education, supra,* 254 Conn. at 210-11, 757 A.2d 1059;*Hartmann v. Gulf View Estates Homeowners Assoc., supra,* 88 Conn.App. at 294, 869 A.2d 275. Here, this is just not the case. The evidence shows that Chapman's actions were in response to McKinney's allegations that Chapman was not giving her work to do. He wrote the chronology to put down in writing what he believed was the history between McKinney and himself. There is no genuine issue of material fact to show that Chapman's actions were extreme or outrageous in preparing and publishing the documents.

*\*3* For the above reasons, summary judgment is granted to the defendant as to Count 2 of the complaint.

### COUNT 3-NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

#### A. Release of Liability

[6] Since Count 3 of the complaint is related to the same allegations as Count 1, the plaintiff has released the defendant from liability for negligent infliction of emotional distress caused by the publishing of the chronology. The reasoning in part I.A. is incorporated here.

#### B. Statutory Immunity

[7] Chapman is not liable to McKinney for a negligent infliction of emotional distress claim. General Statutes § 4-165 provides that "no state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment."A claim of negligent infliction of emotional distress, by definition, is not a claim of "wanton, reckless or malicious" behavior. Since the chronology was written to a superior of Chapman's and was a review of McKinney's performance, Chapman was discharging his duties or within the scope of his employment. There is no genuine issue of material fact showing that Section 4-165 does not protect Chapman from liability. For the above reasons, summary judgment is granted to the defendant as to Count 3 of the complaint.

### CONCLUSION

As to Counts 1, 2, and 3, the defendant's motion for summary judgment is granted.

Conn.Super.,2006.
McKinney v. Chapman
Not Reported in A.2d, 2006 WL 894924 (Conn.Super.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# **11**

Westlaw.

Slip Copy                                                                                                                Page 1

Slip Copy, 2007 WL 2979642 (S.D.N.Y.)
**(Cite as: Slip Copy)**

**H**
In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation
S.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
In re METHYL TERTIARY BUTYL ETHER (" MTBE") PRODUCTS LIABILITY LITIGATION.
This document relates to: City of New York v. Amerada Hess, et al., 04 Civ. 3417(SAS).
Master File No. 1:00-1898.
MDL No. 1358 (SAS).
No. M21-88.

Oct. 10, 2007.

Robin Greenwald, Esq., Robert Gordon, Esq., Weitz & Luxenberg, P.C., New York, NY, for Plaintiffs.
Peter John Sacripanti, Esq., James A. Pardo, Esq., McDermott Will & Emery LLP, New York, NY, for Defendants.
Ramin Pejan, Assistant Corporation Counsel, Susan E. Amron, Scott Pasternack, of Counsel, New York City Law Department, New York, NY, for Plaintiff City of New York.

### *AMENDED MEMORANDUM OPINION AND ORDER*

SHIRA A. SCHEINDLIN, U.S.D.J.

### **I. BACKGROUND**

*1 In 2003, the City of New York ("the City"), filed a Summons with Notice in the New York State Supreme Court for Queens County, suing twenty-nine defendants.[FN1] The City later filed its original Complaint with the state court, suing thirteen additional defendants.[FN2] After the state action was removed to federal court, plaintiffs filed four amended complaints, two of which added new defendants.[FN3]

FN1.*See City of New York* Summons with Notice, dated October 31, 2003. All defendants discussed in this opinion are corporations that are involved in petroleum refining, blending, or distribution.

FN2.*See City of New York* [original] Complaint, dated February 26, 2004.

FN3.*See City of New York* Second Amended Complaint, dated December 10, 2004; *City of New York* Third Amended Complaint, dated February 13, 2007.

In 2006, defendants filed summary judgment motions on statute of limitations grounds in three actions, the *Suffolk County* action, the *United Water New York* action, and the present action (the *City of New York* action). These three motions were consolidated for argument and decision. In the papers and arguments of the motion in the *Suffolk County* action, certain defendants who had not been named in the *Suffolk County* plaintiffs' earlier complaints (the "later-added" defendants) argued that their statute of limitations dates should be different. Specifically, those later-added defendants argued that for limitation purposes, the Court should apply the dates on which each later-added defendant was first named, rather than the date of an earlier complaint. Plaintiffs argued that because the later-added defendants were corporate entities that were affiliated with earlier-named entities, the claims against the later-named defendants relate back to claims against the earlier-named related entities under Federal Rule of Civil Procedure 15(c).

Earlier this year, this Court issued an Opinion (the "Opinion") deciding the statute of limitations summary judgment motions.[FN4] The Opinion held, *inter alia*, that plaintiffs' claims against certain

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 2

Slip Copy, 2007 WL 2979642 (S.D.N.Y.)
**(Cite as: Slip Copy)**

later-named defendants related back to claims asserted against certain affiliated defendants who had been named in earlier complaints.[FN5] Because the *Suffolk County* parties' relation-back arguments focused only on two groups of corporate defendants-the "Citgo defendants" and the "Valero defendants"[FN6]-the Opinion's relation-back holding addressed only the Citgo and Valero defendants. But that holding was not limited to the *Suffolk County* action. The rationale of the relation-back decision as to the Citgo and Valero defendants applied with equal force in the other two actions addressed in the statute of limitations Opinion. Thus, claims against the later-added Citgo and Valero defendants were held to relate back to claims against earlier-named Citgo and Valero entities in the *Suffolk County* action, the *United Water New York* action, and the *City of New York* action.[FN7]

FN4. *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig. ("In re MTBE")* No. 00 Civ. 1898, MDL-1358, M21-88, 2007 WL 1601491 (S.D.N.Y. June 4, 2007) (addressing similar statute of limitations motions in three actions: *Suffolk County, United Water New York,* and the present action, the *City of New York* action).

FN5. *See id.* at *20.

FN6. *See id.* at *19. Each defendant in the Citgo and Valero groups of defendant-entities is a corporation that is affiliated with the other defendant-entities in that group.

FN7. *See id.* at*20 n.165.

The City now moves for reconsideration of the Opinion, asking that the Court find that relation-back is appropriate for other groups of defendants not addressed in the Opinion.

**II. LEGAL STANDARD**

**A. Motions for Reconsideration**

Motions for reconsideration are governed by Local Civil Rule 6.3 and are committed to the sound discretion of the district court.[FN8] "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."[FN9] Reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."[FN10] In furtherance of the interest of finality,[FN11] Local Rule 6.3 requires that a motion for reconsideration " shall be served within ten (10) days after the entry of the court's determination of the original motion."

FN8. *See Patterson v. United States,* No. 04 Civ. 3170, 2006 WL 2067036, at * 1 (S.D.N.Y. July 26, 2006) ("The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court."(citing *McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983))).

FN9. *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995). *Accord In re BDC 56 LLC,* 330 F.3d 111, 123 (2d Cir.2003); *Eisemann v. Greene,* 204 F.3d 393, 395 n. 2 (2d Cir.2000) ("To be entitled to reargument, a party must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion."(quotation omitted)).

FN10. *In re Health Mgmt. Sys., Inc. Sec. Litig.,* 113 F.Supp.2d 613, 614 (S.D.N.Y.2000) (quotation omitted).

FN11. *See, e.g., Carolco Pictures, Inc. v. Sirota,* 700 F.Supp. 169, 170 (S.D.N.Y.1988).

*2 Local Civil Rule 6.3 is narrowly construed

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 3

Slip Copy, 2007 WL 2979642 (S.D.N.Y.)
(Cite as: Slip Copy)

and strictly applied in order to avoid repetitive arguments already considered by the Court.[FN12] A motion for reconsideration is not a substitute for appeal.[FN13] Nor is it "a 'second bite at the apple' for a party dissatisfied with a court's ruling."[FN14] Accordingly, the moving party may not "advance new facts, issues or arguments not previously presented to the Court."[FN15] The restrictive application of Local Rule 6.3 helps "to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters."[FN16]

> FN12. *See Lichtenberg v. Besicorp Group Inc.*, 204 F.3d 397, 400 (2d Cir.2000). *See also DGM Invs., Inc. v. New York Futures Exch., Inc.*, 288 F.Supp.2d 519, 523 (S.D.N.Y.2003) (Local Rule 6.3 must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court" (quotation omitted)).
>
> FN13. *See RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 207 F.Supp.2d 292, 296 (S.D.N.Y.2002).
>
> FN14. *Pannonia Farms, Inc. v. USA Cable*, No. 03 Civ. 7841, 2004 WL 1794504, at *2 (S.D.N.Y. Aug. 10, 2004). *Accord Shrader*, 70 F.3d at 257 (stating that a court should deny a motion for reconsideration when the movant "seeks solely to relitigate an issue already decided").
>
> FN15. *Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*, 948 F.2d 111, 115 (2d Cir.1991) (quotation omitted).
>
> FN16. *Naiman v. New York Univ. Hosps. Ctr.*, No. 95 Civ. 6469, 2005 WL 926904, at *1 (S.D.N.Y. Apr. 1, 2005) (quotation omitted).

**B. Relation Back**

Rule 15(c) provides that an amendment to change the parties against whom a claim is asserted "relates back to the original pleading" if three conditions are met: (1) "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading;" (2) "within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment ... has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits;" and (3) within this same period, this party "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.' " [FN17]

> FN17. *In re MTBE*, 2007 WL 1601491 at *19 (quoting *Ish Yerushalayim v. United States*, 374 F.3d 89, 91 (2d Cir.2004)).

**III. DISCUSSION**

**A. Reconsideration Is Granted**

With this motion for reconsideration, the City is not "advanc[ing] new facts, issues or arguments not previously presented." The instant motion seeks to bring to this Court's attention facts that were already in the record, but were eclipsed by the volume of data presented in the submissions for defendants' motions [FN18] and in these actions in general.

> FN18. The record associated with defendants' statute of limitations summary judgment motions spanned several thousand pages. It included three full briefs in each of three actions, plus supplemental briefs, sur-replies, replies to the sur-replies, numerous letters on subsidiary issues, and the exhibits attached to all of the aforementioned papers. The record

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                              Page 4
Slip Copy, 2007 WL 2979642 (S.D.N.Y.)
**(Cite as: Slip Copy)**

also included full oral arguments, which were held twice on this motion. The 6/4/07 Opinion included several tables summarizing the dates on which defendants were first named.

Moreover, plaintiffs did not "lose" on defendants' statute of limitations motion with respect to those defendants not discussed in the Opinion. This Court held that relation-back applies to two groups of defendants without passing on its broader applicability.

Nor is this a situation where plaintiffs raise a new argument after a decision is issued. At the time of the Opinion, this Court was well aware that plaintiffs' relation-back arguments might apply to other later-named defendants, but limited judicial resources precluded an investigation into which other defendants might have corporate affiliations, common legal representation, or be otherwise related.

Further, the relation-back issue was a relatively minor one, raised late in the briefing of the statute of limitations motion, which primarily dealt with how the statutes of limitations for various claims should be applied in those actions. It would have further complicated an already-complex motion for plaintiffs to have addressed relation-back as to all defendants at that time. And it would be inefficient for the parties to file an entirely new motion dealing with relation-back issues now. Therefore, in light of the extraordinary size of the record on this motion and the complexities inherent in this MDL, reconsideration is appropriate.

**B. Relation-Back as to Particular Defendants**

*3 The City argues that for each of the following groups of defendants, the earlier- and later-named defendants were sufficiently related for the claims against the later-named defendants to relate back to the claims against the earlier-named defendants. As with the Citgo and Valero defendants in the prior holding on relation-back, each later-named defendant is an entity that is related to the other defendant-entities in its group. Plaintiffs mistakenly named entities that they later learned were not the appropriate entities within that group's constellation of entities. For the reasons stated, I conclude that the later-named entities are not prejudiced by their later addition to this action. They were on notice of potential suit when their affiliates were named in [a prior filing], which alleged facts and causes of action very similar to those in [later complaints] .... Moreover, their common counsel should have made the related entities aware of the action.[FN19]

FN19. *In re MTBE,* 2007 WL 1601491, at *20.

**1. The Shell Defendants**

The City named three of the Shell defendants-Shell Oil Company, Motiva Enterprises LLC, and Texaco Refining and Mining, Inc.-in its Summons with Notice on October 31, 2003. In subsequent filings, the City named five other related entities: Equilon Enterprises LLC, Shell Oil Products Company LLC, Shell Trading (US) Co., Texaco Refining and Marketing (East), and TMR Company. Equilon Enterprises LLC, Motiva Enterprises LLC, Shell Oil Company, Shell Oil Products Company LLC, Shell Trading (US) Co., and TMR Company are all related as affiliates or subsidiaries of Royal Dutch Shell PLC, an alien corporation. TMR Company was formerly known as Texaco Refining and Marketing Inc., which merged with Texaco Refining and Marketing (East) in late 2002. These entities filed a common answer, and are all represented by the same law firm, Wallace King Domike & Reiskin PLLC.

**2. The Chevron Defendants**

The City named Chevron Texaco Corp. in its Summons with Notice and added Texaco Inc. and TRMI Holdings Inc. in later complaints. Texaco Inc. is a parent of TRMI Holdings Inc. Chevron

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 2979642 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Page 5

Texaco Corp. resulted from a merger of Texaco Inc. and Chevron Corporation. These entities also filed a common answer, and are also represented by the law firm of Wallace King Domike & Reiskin PLLC.

### 3. The BP Defendants

The City named BP Amoco Corporation in its Summons with Notice. In later complaints, the City added BP America, Inc., BP Amoco Chemical Company, Inc., and BP Products North America, Inc., each of which is affiliated with BP Amoco Corporation. These defendants filed a common answer and are all represented by Kirkland & Ellis LLP.

### 4. Exxon Mobil Corporation and Mobil Corporation

The City named Exxon Mobil Corporation in its Summons with Notice. Mobil Corporation, which was named in a later complaint, is a wholly-owned subsidiary of Exxon Mobil Corporation.[FN20] Both defendants are represented by McDermott, Will & Emery LLP, defense liaison counsel in this multi-district litigation.

> FN20. *See* Defendant Exxon Mobil Corporation's Fifth Amended Master Answer and Affirmative Defenses, dated March 8, 2007, Attachment 6 to Plaintiff City of New York's Memorandum of Law in Support of Its Motion for Reconsideration ("Pl.Mem."), at 4.

### 5. The Lyondell Defendants

*4 The City named Lyondell Chemical Company in its Summons with Notice, and named Equistar Chemicals LP and Lyondell-Citgo Refining LP in a later complaint. Blank Rome LLP represents both Lyondell Chemical Company and Equistar Chemicals. This Court has previously noted that all three entities are a part of "the Lyondell 'enterprise.'"[FN21]

> FN21. *In re MTBE,* 399 F.Supp.2d 325, 328 (S.D.N.Y.2005).

### 6. The Flint Hills Defendants

The City named Koch Industries Inc. in its original Complaint, filed on February 26, 2004. The City named Flint Hills Resources LP, a wholly-owned subsidiary of Koch Industries Inc., in a later complaint. Both are represented by the law firm of Hunton & Williams LLP.

### 7. The Getty Defendants

The City named Getty Petroleum Marketing Inc. ("GPMI") in its original Complaint and added Getty Properties Corp. in a later complaint. From 1955 until 1997, these two corporations were part of the same entity, Getty Petroleum Corporation, which was engaged, *inter alia,* in petroleum distribution and marketing. In 1997, Getty Petroleum spun off its petroleum distribution and marketing business, forming GPMI, which was initially owned by the shareholders of Getty Petroleum. Getty Petroleum later changed its name to Getty Properties. In 2000, GPMI was purchased by Lukoil, thereby severing GPMI's ties to Getty Properties (formerly Getty Petroleum). The 1997 spin-off agreement divided certain liabilities between GPMI and Getty Properties, and both defendants assert that the other retained liability for any damages plaintiffs may have sustained as a result of the marketing and handling of MTBE. Indeed, the discovery Special Master has encountered the issue of liability allocation between the Getty defendants and decided that at this point, it appears that both defendants could be liable.[FN22]

> FN22. *See* Pre-Trial Order Number 29, dated February 28, 2007.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 6
Slip Copy, 2007 WL 2979642 (S.D.N.Y.)
**(Cite as: Slip Copy)**

This lawsuit alleges that defendants used MTBE for twenty-five years: from 1979 until 2003. For at least eighteen of these years, Getty Petroleum participated in the petroleum distribution and marketing business. When Getty Petroluem spun off GPMI in 1997 and ceased to be affiliated with GPMI in 2000, both parties arguably retained certain liabilities. Thus, although Getty Properties-as the former Getty Petroleum is now known-no longer participates in the allegedly-culpable conduct of using MTBE in gasoline, it did so for the majority of the time period at issue, and should not have been surprised to be named as a defendant in this lawsuit. Moreover, Getty Properties was named as a defendant in other suits in this multi-district litigation. Thus, even though GPMI and Getty Properties have different counsel, Getty Properties cannot claim prejudice resulting from a lack of notice. Accordingly, the City's claims against Getty Properties relate back to the earlier-filed claims against GPMI.

### 8. Other Defendants

In a short argument, and without further explanation, the City requests that this Court measure limitations dates against all other defendants who were first named in the Second Amended Complaint from July 29, 2004 (the date of Case Management Order ("CMO") 3, which set a date for plaintiffs in several actions, including the *City of New York* action, to file amended complaints), rather than December 10, 2004 (the date on which the City filed its Second Amended Complaint).[FN23] The Second Circuit has endorsed the rule that " '[w]hen a plaintiff seeks to add a new defendant in an existing action, the date of the filing of the motion to amend constitutes the date the action was commenced for statute of limitations purposes.' " [FN24] The theory underlying this rule is that a newly-named defendant is on notice at the time a plaintiff files its motion because the plaintiff attached the proposed amended complaint to the motion. The City does not give the date on which it moved to amend, but rather proposes to use the date on which this Court granted leave to amend, a date

which does not necessarily correspond to the date on which defendants had notice. Accordingly, the date for calculation of the statute of limitations period for defendants who were first named in the Second Amended Complaint is the earliest date on which those defendants had notice that they were to be named in a subsequent complaint. Specifically, the date of commencement of suit against those defendants is (1) the date on which the City's *proposed* Second Amended Complaint naming a new defendant was served on existing defendants, or (2) the date on which the City's Second Amended Complaint was filed, whichever occurred first.

FN23.*See* P. Mem. at 8 (citing *In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig.,* 815 F.Supp. 620, 645 (S.D.N.Y.1993) (citing *Northwestern Nat. Ins. Inc. v. Roberts,* 769 F.Supp. 498, 510 (S.D.N.Y.1991) (citing *Derdiarian v. Futterman Corp.,* 36 F.R.D. 192, 194 (S.D.N.Y.1964)))).

FN24.*Rothman v. Gregor,* 220 F.3d 81, 96 (2d Cir.2000) (quoting *Northwestern Nat. Ins.,* 769 F.Supp. at 510).

### C. This Ruling Is Limited to the *City of New York* Action

*5 This Court's holding on relation-back in the *Suffolk County* action also applied to the *United Water New York* and *City of New York* actions. Only the plaintiff in the *City of New York* action brings this motion for reconsideration. Plaintiffs in the *Suffolk County* and *United Water New York* actions were aware of the City's motion, but have not joined it. Given the limited nature of motions for reconsideration, I decline to apply the present holding-in the *City of New York* action-to the other two actions.

### IV. CONCLUSION

For the foregoing reasons, the City's Motion is

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy    Page 7
Slip Copy, 2007 WL 2979642 (S.D.N.Y.)
**(Cite as: Slip Copy)**

GRANTED. The Clerk of the Court is directed to close this motion (Doc. Nos.1428, 1432).

SO ORDERED.

S.D.N.Y.,2007.
In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation
Slip Copy, 2007 WL 2979642 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# **12**

Westlaw.

Not Reported in F.Supp.2d                                                                             Page 1

Not Reported in F.Supp.2d, 2006 WL 3230162 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
M.K.B. v. Eggleston
S.D.N.Y.,2006.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
M.K.B., O.P., L.W., M.A., Marieme Diongue, M.E., P.E., Anna Fedosenko, A.I., L.A.M., L.M., Denise Thomas, J.Z. and Galina Rybalko, on their own behalf, and on behalf of their minor children and all others similar situated, Plaintiffs,
v.
Verna EGGLESTON, as Commissioner of the New York City Human Resources Administration; Robert Doar, as Commissioner of the New York State Office of Temporary and Disability Assistance; and Antonia C. Novello, as Commissioner of the New York State Department of Health, Defendants.
No. 05 Civ. 10446(JSR).

Nov. 7, 2006.

MEMORANDUM

RAKOFF, J.
*1 By Order dated October 13, 2006, this Court denied defendants' motion for reconsideration of the Opinion and Order entered August 29, 2006, *M.K.B. v. Eggleston,* 445 F.Supp.2d 400, 434 (S.D.N.Y.2006), full familiarity with which is here assumed. This Memorandum states the reasons for that denial.

A motion for reconsideration is neither an opportunity to advance new facts or arguments nor to reiterate arguments that were previously rejected. See*Charter Oak Fire Ins. Co. v. Nat'l Wholesale Liquidators,* 2003 U.S. Dist. LEXIS 19246 (S.D.N.Y.2003). Rather, the sole function of a proper motion for reconsideration is to call to the Court's attention dispositive facts or controlling authority that were plainly presented in the prior proceedings but were somehow overlooked in the Court's decision: in other words, an obvious and glaring mistake. See*Caleb & Co. v. E.I. DuPont De Nemours & Co.,* 624 F.Supp. 747 (S.D.N.Y.1985); *see also* Local Rule 6.3. On this ground alone, the instant motion for reconsideration must be denied, for the defendants have raised nothing that was not previously considered, and rejected, by the Court, either explicitly or implicitly.

Most of the arguments defendants advance in the instant motion are directed to this Court's decision to certify a class that includes all lawful permanent residents ("LPRs") who have held that status for less than five years and who have been illegally denied benefits. Defendants contend, first, that one of the two named representatives of that class, Galina Rybalko, is an inadequate representative, and her personal claims moot, because the defendants have now, belatedly, rectified the error that led to the denial of her benefits. But it is settled law of this Circuit that "the fact that the [named] plaintiffs received their unlawfully delayed benefits after the lawsuit was commenced [does] not mean that the action thereby became moot."See*Robidoux v. Celani,* 987 F.2d 931, 938 (2d Cir.1993); *see also**County of Riverside v. McLaughlin,* 500 U.S. 44, 51-52 (1991) . Moreover, even if, under these circumstances, Rybalko did not wish to continue as class representative-and there is no indication of this-co-plaintiff Anna Fedosekno remains an adequate representative of this class. Finally, even if both named representatives were not adequate for that purpose, the remedy would be to appoint another member of the class as class representative. See*Comer v. Cisneros,* 37 F.3d 775, 799-801 (2d Cir.1994); *see also**Gerstein v. Pugh,* 420 U.S. 103, 110 (1975). There is not the slightest suggestion that such an additional representative could not be found.

In the alternative, the defendants contend that the LPR class certified by the Court was "overbroad

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 2
Not Reported in F.Supp.2d, 2006 WL 3230162 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

" in that it should have been divided into four subclasses.FN1 But the alleged distinctions between the four subclasses posited by defendants are irrelevant to this lawsuit, for the wrong of which the LPR class complains-*i.e.,* that "the City had a policy, custom, and usage of denying benefits to ... lawful permanent residents who had been in that status for less than five years,"*M.K.B.,* 445 F.Supp.2d at 434-was and is common to all four alleged subclasses. *See, e.g.,* Declaration of K.T., dated Oct. 12, 2005, ¶ ¶ 3, 5; Declaration of Polina Benyiminov, dated Aug. 25, 2005, ¶ 6; Declaration of R.R., dated Sept. 29, 2005, ¶ 12; Declaration of W.S., dated Nov. 22, 2005, ¶¶ 14-15; Declaration of Anna Fedosekno, dated Nov. 21, 2005, ¶ 8. Despite the different paths that led them to LPR status, all class members were victims of a "unitary course of conduct by a single system," thereby satisfying the commonality, typicality and other relevant requirementss of Rule 23. *See, e.g., Marisol A. by Forbes v. Giuliani,* 126 F.3d 372, 377 (2d Cir.1997); *Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 598 (2d Cir.1986).

>    FN1. According to defendants, the four appropriate "categories" are: (1) aliens who entered the United States in LPR status and those who obtained LPR status after being in a non-qualified alien status; (2) aliens who entered the United States in a qualified alien status and changed to LPR status thereafter; (3) aliens who entered the country in what is known as a "specially qualified" status, a term used to include refugees, persons granted asylum, persons granted withholding of deportation, Cuban or Haitian entrants, Amerasians and certain veterans who lawfully reside in the United States; and (4) aliens under eighteen years of age who are eligible for food stamps, aliens who receive certain disability payments, and aliens who can be credited with forty qualifying quarters of coverage as defined under Title II of the Social Security Act. Def's. Br. at 4-7.

*2 Separately, the defendants challenge the inclusion in the certified class of so-called " PROCUL" aliens, *i.e.,* aliens living in the United States with the knowledge and permission or acquiescence of authorities. But their objection raised in the instant motion-to the effect that because PRUCOL aliens are entitled to benefits under state law, but no longer under federal law, the Eleventh Amendment bars including PRUCOL aliens in the certified class-is one the Court previously rejected explicitly. Specifically, the Court held that, since the relief it was ordering (and contemplating) with respect to the PRUCOL class was limited to the City defendant, the Eleventh Amendment was irrelevant. *SeeM.K.B.,* 445 F.Supp.2d at 439;*id.* at 440 n. 20;*see alsoMt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280 (1977) ("The bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances, but does not extend to counties and similar municipal corporations."); *Holley v. Lavine,* 605 F.2d 638, 644 (2d Cir.1979).

The Court also considered defendants' other arguments, but found them wholly lacking in merit, and, accordingly, by Order dated October 13, 2006, denied the motion for reconsideration.

S.D.N.Y.,2006.
M.K.B. v. Eggleston
Not Reported in F.Supp.2d, 2006 WL 3230162 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.