

**Kirkpatrick & Lockhart Nicholson Graham** LLP

Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA  15222-2312
412 355 6500
Fax 412 355 6501
www.klng.com

Jerry S. McDevitt
412 355 8608
jmcdevitt@klng.com

February 10, 2005

<u>**VIA ELECTRONIC FILING AND FACSIMILE TRANSMISSION**</u>

Honorable Kenneth M. Karas
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 920
New York, NY 10007

> **Re:**   **World Wrestling Entertainment, Inc. v. JAKKS Pacific, Inc., et al.**
> **1:04-CV-08223-KMK**

Dear Judge Karas:

We submit this response to the fifteen pages submitted to the Court by various defendants to stay discovery.  Consistent with the spirit of the Court's ruling on page limits for the briefing on motions to dismiss, our response to the cumulative efforts of Defendants to avoid all discovery will not exceed the cumulative length of their submissions.

## I.    **INTRODUCTION**

Without even knowing the type or breadth of discovery sought by WWE, various defendants ask this Court to stay all discovery pending resolution of their motions to dismiss on the grounds that such unknown discovery will be burdensome and prejudicial to them.  However, the discovery sought by WWE at this time is limited to discovery related to any challenges to personal jurisdiction, any motions to transfer on convenience grounds, and documentary discovery from certain Defendants regarding six discrete topics specific as to time and scope.  Because the discovery WWE desires to undertake is limited in scope, and it is not inevitable that the motions to dismiss will be granted, Defendants' request for a stay of discovery should be denied.

Honorable Kenneth M. Karas
February 10, 2005
Page 2

## II.    ANALYSIS

### A.    STAYS OF DISCOVERY ARE NOT ROUTINELY GRANTED PENDING DISPOSITION OF MOTIONS TO DISMISS

The decision as to whether good cause exists to stay discovery due to the pendency of motions to dismiss is a matter vested in the sound discretion of the Court. See Fed. R. Civ. P. 26(c). A stay of discovery is not, however, routinely granted simply because a motion to dismiss has been filed. In re Chase Manhattan Corp. Sec. Litig., No. 90 Civ. 6092 (LMM), 1991 WL 79432, at *1 (S.D.N.Y. May 7, 1991). When courts have found that it was not "inevitable" that the motion to dismiss would be granted, a stay is denied. Id. It is also appropriate to consider the breadth of discovery being sought, the burden of responding to it, and the unfair prejudice to the party opposing the stay.[1] In re Currency Conversion Fee Antitrust Litig., No. MDL 1409, M21-95, 2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002). Finally, attacks on the factual sufficiency of a complaint do not warrant stays of discovery since such issues are curable by amended pleadings. See Moore v. Painewebber, Inc., No. 96 Civ. 6820 (JFK), 1997 WL 12805, at *1 (S.D.N.Y. Jan. 14, 1997); Howard v. Galesi, 107 F.R.D. 348, 351 (S.D.N.Y. 1985).

### B.    IT IS NOT INEVITABLE THAT THIS ACTION WILL BE DISMISSED AND IT WOULD BE ERROR TO DO SO

Dismissal of the federal claims would require this Court to find that, taking as true all factual allegations in the Complaint, as well as all inferences from those allegations, WWE could

---

[1]    Although the primary case relied on by the Jakks Defendants in support of their request for a stay, Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd., 206 F.R.D. 367, 368 (S.D.N.Y. 2002), also identifies the breadth of discovery being sought and the burden of responding to it as relevant factors for a court to consider when deciding a motion for a stay of discovery, the Jakks Defendants conveniently fail to mention these factors to the Court, and all of the Defendants fail to address these factors whatsoever. Notably, in granting the stay in Spencer, the Court found that the breadth of discovery sought, which included depositions of third parties, was broad, the burden of responding to it was substantial, and the expense and possible injury to the success of defendants' current contractual negotiations was great. Spencer, 206 F.R.D. at 368. Because none of those concerns exist in this case, Spencer is completely inapplicable.

Honorable Kenneth M. Karas
February 10, 2005
Page 3

prove no set of facts entitling WWE to relief. See H.J. Inc. v. Northwestern Bell Tel. Co., 492

U.S. 229, 249-50 (1989). The RICO counts in the Complaint rely upon over 156 specifically

plead predicate acts and incorporate by reference others set forth in the Complaint. The

Complaint more than satisfies the pleading requirements applicable to all aspects of RICO

claims. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young, No. 91 Civ. 2923 (CSH),

1994 WL 88129, at *8 (S.D.N.Y. Mar. 15, 1994) (stating that Rule 9(b) specificity requirement

only applies to RICO predicate acts of fraud, and all others are assessed under Rule 8(a)).

Moreover, a defrauded plaintiff framing a RICO complaint will not have access to factual

information regarding the inner workings of a RICO enterprise, which courts recognize is the

purpose of discovery. Friedman v. Hartmann, No. 91 Civ. 1523 (PKL), 1994 WL 376058, at *2

(S.D.N.Y. July 15, 1994).

The Complaint contains a detailed description of the fraudulent scheme and, therefore,

discovery should proceed. Ahead By A Length, Inc. v. Feiner, 100 B.R. 157, 167 (Bankr.

S.D.N.Y. 1989) (when a plaintiff has "established the basic framework of the fraud, she should

be permitted to flesh out the allegations in the complaint through discovery"). The facts plead

with specificity were developed despite a massive criminal obstruction of justice scheme

designed to conceal the payments Jakks made to foreign bank accounts of WWE's licensing

agent, defendant Stanley Shenker. In uncommonly specific factual details for a RICO case at

this stage, the Complaint establishes actionable wrongdoing involving the corruption and bribery

of WWE fiduciaries orchestrated by the highest ranking officers and directors of Jakks, on behalf

of Jakks and on behalf of their joint venture partner, THQ. The racketeering activity resulted in

improperly securing three valuable licenses involving hundreds of millions of dollars and, on

another view of the evidence alleged in the Complaint, potentially a fourth licensing right

obtained by Jakks for which it separately bribed WWE's agents.[2]

---

[2]    Although the Jakks Defendants pronounce that this Court would not grant leave to amend
and therefore there should be no discovery, the reality is that the Defendants primarily attack the
factual sufficiency of the RICO allegations. Under the foregoing authorities, that is precisely the
situation where discovery should not be stayed, particularly for narrow requests as are made
herein by WWE.

Honorable Kenneth M. Karas
February 10, 2005
Page 4

As to THQ, its argument is best described as "we didn't know about it, didn't do it, but want to continue to collect hundreds of millions of dollars from a license procured by our joint venture partner, Jakks, via improper means."[3] Indeed, in its letter requesting a stay, THQ states, after self-serving denials of knowledge of wrongdoing by Jakks, that if the allegations are true against their partner, then THQ is "as much a victim of the alleged misconduct as WWE claims it is." THQ is no "victim." The scienter of THQ is inferred upon proof of motive to commit fraud and a clear opportunity to do so. See Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 241 (2d Cir. 1999). The benefits received by a defendant can be proof of a compelling motive to engage in fraud. Id. Additionally, circumstances showing a conscious behavior may be sufficient and atypicality or unusual circumstances alone are sufficient to show conscious behavior. See Powers v. British Vita, P.L.C., 57 F.3d 176, 185 (2d Cir. 1995); 131 Main Street Assocs. v. Manko, 897 F. Supp. 1507, 1529 (S.D.N.Y. 1995). Additionally, the Complaint alleges that THQ was the joint venture partner of Jakks. As such, THQ's liability is determined by the law governing joint ventures, which is essentially partnership law. See Gramercy Equities Corp. v. Dumont, 531 N.E.2d 629, 632 (N.Y. 1988); In re Wedtech Corp., 88 B.R. 619, 623 (Bankr. S.D.N.Y. 1988).[4] Finally, the allegations regarding high level management involvement are more than adequate to impose vicarious RICO liability upon THQ. See USA Certified Merchs., LLC v. Koebel, 262 F. Supp. 2d 319, 327-30 (S.D.N.Y. 2003). In sum, for the above reasons as well as for the reasons contained in our letter to the Court dated December 8, 2004 in response to Defendants' pre-motion letters, we respectfully submit that it is hardly "inevitable"

---

[3]      Due to space limitations associated with our response to the Defendants' pre-motion letters requesting leave to move to dismiss, WWE could not respond to THQ's arguments. WWE will, of course, fully brief the theories of liability against THQ at the appropriate time but has briefly reviewed the law herein because it demonstrates the relevance of the limited discovery sought by WWE discussed below.

[4]      See also Young v. New York State Elec. & Gas Corp., 55 N.Y.S.2d 150, 153-54 (N.Y. Sup. Ct. 1945) ("[A] principal cannot receive the fruits of a bargain without adopting the instrumentalities employed by his agent in bringing it to consummation, and so is bound by false representations of his agent, although ignorant thereof and intending no fraud"), aff'd, 60 N.Y.S.2d 303 (N.Y. App. Div. 1946).

Honorable Kenneth M. Karas
February 10, 2005
Page 5

that the case will be dismissed after motion practice. Without such a finding, discovery should not be stayed.[5]

## C.    THE DISCOVERY SOUGHT BY WWE IS LIMITED AND THUS NOT BURDENSOME OR OVERREACHING

Another factor that a court should consider in deciding whether to grant a stay of discovery pending a motion to dismiss is the breadth of discovery being sought and the burden of responding to it. Amazingly, despite this relevant consideration, Defendants oppose all discovery without knowing or even asking what discovery WWE desires to take. As evident from the requests set forth below, the discovery that WWE desires to undertake is limited and thus not burdensome or overreaching.

At this time, WWE does not propose any discovery against the Shenker or Bell Defendants, the only parties to the Connecticut state court action. Rather, WWE desires to take the following limited discovery from the other Defendants now. Notably, no discovery has been conducted in Connecticut against THQ or the joint venture. The individual Jakks Defendants were not asked to produce documents. Moreover, the discovery requested here was neither sought nor obtained from Jakks in the Connecticut action.

1.    **Personal Jurisdiction Discovery.** Three individual Jakks Defendants and the two Hong Kong subsidiaries of Jakks intend to contest personal jurisdiction. We believe that the foreign subsidiaries conduct extensive business in the United States and will be amenable to both general and specific jurisdiction on a proper factual record. We believe that the three individual Jakks Defendants have extensive and ongoing contacts with New York which can only be developed on a factual record. Such discovery is appropriate if jurisdictional issues are raised. See Daventree Ltd. v. Republic of Azerbaijan, 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004) ("A

---

[5]    As noted by WWE at the recent conference, even if the Court were to dismiss the federal claims, WWE would either amend or refile its state law claims in state court. Such factors have led courts to deny discovery stays pending motions to dismiss. See, e.g., Wolf v. United States, 157 F.R.D. 494, 495 (D. Kan. 1994).

Honorable Kenneth M. Karas
February 10, 2005
Page 6

plaintiff should be provided with "'ample opportunity to secure and present evidence relevant to
the existence of jurisdiction'" through jurisdictional discovery.") (citations omitted).

      2.    <u>Discovery Related to Any Motion to Transfer on Convenience Grounds</u>. It
will be Defendants' burden to convince the Court to transfer the case. <u>Linzer v. Blackwood
Music, Inc.</u>, 904 F. Supp. 207, 216 (S.D.N.Y. 1995). To the extent affidavits are submitted
which WWE believes embellishes the number of key witnesses or the amount of records outside
of New York, it is appropriate to depose the affiants for a proper record to be created. <u>See
McDonnell Douglas Corp. v. Polin</u>, 429 F.2d 30, 31 (3d Cir. 1970) (court did not stay discovery
related to transfer motions), <u>remanded to</u> <u>Polin v. Conductron Corp.</u>, 340 F. Supp. 602, 606-07
(E.D. Pa. 1972) (on remand, trial court bemoaned ability to make principled decision without
plenary factual record).

      3.    <u>Documentary Discovery on Selected Issues from THQ, the Joint Venture of
THQ and Jakks, Jakks, and Defendants Friedman, Berman and Bennett</u>. There has been no
documentary discovery whatsoever from the aforementioned Defendants on the matters for
which WWE now seeks documentary evidence. Items (a)-(d) set forth below are directly
relevant to THQ's knowledge and scienter. Item (e) seeks disclosure of payments made by the
individual Jakks Defendants to Shenker or Bell. Item (f) seeks information relevant to a fourth
licensing right obtained by Jakks by potential bribery of Shenker and Bell. The narrow requests
are for the following limited documents:

      (a)    documents concerning communications between Jakks and THQ in 1998
relating to WWE's video game license,

      (b)    documents concerning communications between Jakks and THQ in 1998
relating to the formation of the joint venture to pursue the WWE video game license,

      (c)    documents concerning operational agreements relating to the joint venture
between THQ and Jakks,

      (d)    documents concerning the receipt of THQ stock by Friedman in 1998,

      (e)    documents concerning payments of monies or other consideration to
Shenker or Bell, directly or indirectly, by Defendants Friedman, Berman and/or Bennett, and

Honorable Kenneth M. Karas
February 10, 2005
Page 7

      (f)     documents concerning Jakks' acquisition of licensing rights from WWE formerly held by Playmates.

WWE believes that this limited discovery is appropriate and is certainly not burdensome. The requests are specific as to time and narrow in scope, and it would therefore not be burdensome to produce documents in response to such limited requests. See Howard v. Galesi, 107 F.R.D. 348, 350-51 (S.D.N.Y. 1985). Indeed, it is probable that the able defense counsel in this case have already obtained the documents requested for their own review, thus further negating any claim of burden. Also, no issue could seriously be raised as to the relevance of the requested records or whether, as suggested in the blind by Defendants, such directly relevant evidence would be discoverable in a state court proceeding if the Court did dismiss the federal claims. All requests relate to information exclusively in the possession of Defendants and will provide a basis for amending the Complaint if deemed necessary.[6] As a result, Defendants' request for a stay of such limited discovery should be denied.

## D.    <u>WWE WILL BE PREJUDICED BY FURTHER DELAY</u>

The Jakks Defendants, THQ, and the joint venture between Jakks and THQ are currently exploiting intellectual property licenses obtained by improper means. Bankers Trust Co. v. Litton Sys., Inc., 599 F.2d 488, 492 (2d Cir. 1979) (bribery induced contracts are illegal and void). WWE is in the wholly undesirable position of having to do business with entities it believes hold bribery induced licenses which will ultimately be declared void. Further delay will effectively deny WWE meaningful relief, as two of the licenses in question will expire at the end of December 2009.

Additionally, evidence in this case has already been lost and in some cases affirmatively destroyed. Written agreements between Bell and Shenker related to the video game license bribery scheme were destroyed by them while obstructing justice in Connecticut. Jakks'

---

[6]    Indeed, Defendants' arguments that WWE can obtain such records in the Connecticut proceeding are self-defeating. If true, why object to producing the records here? In reality, if WWE did seek those records in Connecticut, all would complain that WWE was conducting discovery there for use in this case.

Honorable Kenneth M. Karas
February 10, 2005
Page 8

corporate representative has testified that files relating to Jakks' dealings with Shenker are
mysteriously missing.  Under such circumstances, the highly relevant evidence in the sole
possession of the Defendants should be secured as soon as possible to prevent further prejudice.
Indeed, it is precisely for that reason why WWE believes all parties should be permitted to serve
document requests immediately so that there can be no question about what evidence should be
preserved.

Finally, although WWE believes jurisdiction and venue are proper and that the federal
claims are viable, further delay jeopardizes WWE's ability to refile state claims in the
appropriate forum with the strongest case possible in the face of the obstruction of the facts by
those who have exclusive possession and complete control of the relevant evidence.  Defendants
have a decided interest in concealing the facts and then arguing that limitations have run against
the WWE.  Therefore, because WWE will be prejudiced by further delay, the limited discovery
sought by WWE should not be stayed.

E.    **DEFENDANTS' NUMEROUS RED HERRINGS ARE NOT ONLY
      IRRELEVANT TO THE ISSUES BEFORE THE COURT BUT ALSO
      UNSUPPORTED BY THE FACTS**

To buttress their argument that no discovery should occur, some Defendants suggest that
discovery has already occurred in the Connecticut action and, in amazing statements under the
circumstances, actually suggest that WWE employed improper discovery tactics in the
Connecticut action.  Shenker, an adjudicated "serial perjurer," states "judging by the discovery
tactics employed by WWE's counsel in the Connecticut action, it is reasonable to assume
that . . . plaintiff's discovery will be expansive."  For their part, while professing to have only
"limited information" of the Connecticut litigation,[7] the Jakks Defendants predict "there is ample
reason to believe that the discovery process will be contentious and require significant Court
oversight;" which is a not-too-subtle attempt to precondition the Court to expect that the Jakks

---

[7]    In reality, Jakks has been monitoring the Connecticut litigation for some time now, a fact
specifically noted by the Connecticut court on the record during compulsion proceedings against
Jakks in that Court.

Honorable Kenneth M. Karas
February 10, 2005
Page 9

Defendants will not produce evidence without compulsion orders. The Jakks Defendants also suggest that WWE has been conducting discovery against the Jakks Defendants for years in Connecticut.

Lastly, THQ argues that it has been denied access to evidence in the Connecticut case because they were "told" a protective order exists in the case. The implication is that THQ was so told by WWE counsel. Given the incorrect impressions those arguments are designed to create, it is necessary to squarely rebut those red herrings so the Court has a clear picture of the situation.

### 1.    WWE Has Not Told THQ Or Any Other Party That It Cannot Have Access To Evidence Generated In Connecticut

THQ has not asked WWE to provide evidence from the Connecticut action because they do not want to undercut their no-discovery position. WWE would prefer that all parties engage in plenary documentary discovery now in order to be prepared to commence depositions as soon as possible after the Court rules on their motions.[8] The only discussion WWE's counsel had with THQ's counsel regarding the evidence from the Connecticut action was to inquire if THQ's counsel had read the depositions of the three Jakks individual defendants described below. The response was that Jakks' counsel, Mr. Skala, would not provide those depositions to THQ's counsel even though Mr. Skala had the transcripts in his possession. For the record, WWE has no objection to those transcripts being shared with THQ.

---

[8]    This action was commenced on October 19, 2004 with service made shortly thereafter. The current briefing schedule has the last brief due on April 14, 2005. Thus, by engaging in motion practice in lieu of litigating the merits, Defendants will have delayed the adjudication of the case by five months plus however long it takes the Court to wade through the barrage of paper contemplated by Defendants. If the Court denies the motions, as WWE respectfully submits should be the case, documentary discovery will then be initiated and take at least thirty days to occur. If the Jakks Defendants follow through on their announced intentions to litigate discovery requests, even further delay is injected and depositions cannot commence until resolved. WWE respectfully submits this is exactly the kind of delay which will be the hallmark of Defendants' strategy here and WWE is duty bound to contest it as inconsistent with the command of Fed. R. Civ. P. 1 (rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action").

Honorable Kenneth M. Karas
February 10, 2005
Page 10

**2.    Shenker's Comments About The Manner Discovery Was Conducted In
Connecticut Are Absurd Under The Circumstances**

Shenker's innuendo about the "discovery tactics employed by WWE's counsel in the
Connecticut action" is inane. No discovery "tactics" by WWE would have been necessary had
Shenker not engaged in criminal obstruction of justice. Instead, Shenker (with Bell) engaged in
a now admitted plan to commit serial perjury, destroy evidence, fabricate documentary evidence,
and ignore Court orders. Shenker's tactics required WWE to obtain at least twelve compulsion
orders and endure four discovery extensions. This is not rhetoric of counsel. So the Court need
not rely on polemics of counsel, we enclose herewith the Opinion of the Connecticut Court
detailing some, but not all, of the now adjudicated criminal activity WWE had to overcome. In
Section B and B3 of the Opinion, the Court reviewed the deception employed by Shenker to
prevent disclosure of the payments from Jakks. In Section B, the Court specifically found that
Shenker perjured himself to conceal his ownership of a Hong Kong corporation in order to
prevent discovery of "the significant, additional, improper payments Shenker received from
WWE licensees." Jakks was specifically noted to have been one of those licensees. In Section
B3, the Court notes three different lies Shenker told about payments received from licensees and
how he changed his answer only when he knew WWE was aware of a $40,000 payment from
Jakks.[9] In sum, Shenker complaining about WWE's litigation tactics is more than strange.[10]

---

[9]    In fact, even the response given by Shenker that he had received $40,000 from Jakks
noted by the Court, given during the period Shenker was supposedly coming clean, was false.
After the Court issued its rulings, WWE learned via discovery of a Hong Kong bank that at least
$100,000 was paid to Shenker by Jakks.

[10]    In any event, WWE does not for the moment seek to conduct discovery against the
Shenker or Bell Defendants pending motions to dismiss.

Honorable Kenneth M. Karas
February 10, 2005
Page 11

    **3.**    **The Discovery Against The Jakks Defendants In Connecticut Was Both Limited And Problematical**

       The Jakks Defendants suggest WWE has already had ample discovery of the Jakks Defendants in Connecticut. Reading the Jakks Defendants' submission, one would think they cooperated fully with that process. Indeed, at the January 25, 2005 hearing, when the Court suggested it was not WWE's fault for the problems with discovery in Connecticut due to discovery misconduct, Jakks Defendants' counsel responded, "Not my clients, your Honor." Well, not exactly.

       As set forth in the Complaint, the Jakks Defendants at all times acted in conscious parallelism with Shenker to conceal the payments and indeed any economic relationship to Shenker at all. Despite a subpoena and letters to its counsel, Jakks never produced evidence of payments to Shenker until after WWE had obtained such evidence from third parties. After WWE obtained foreign banking records proving that, in fact, at least $100,000 had been paid to Shenker by Jakks, WWE sought deposition discovery against the Jakks Defendants aimed at answering the most basic questions about what Jakks had previously denied—why did it pay Shenker monies, who authorized the payments, and why was it "imperative" to pay Shenker $40,000 literally at the same time he and Bell were recommending the video game license be given to Jakks.[11] Exactly three depositions were scheduled, and none lasted more than a day. All were narrowly focused. First to testify, on June 9, 2004, was defendant Berman, who categorically denied being involved in the payments to Shenker or knowing who had authorized them:

       Q:    Well, the record shows the payments were made in January and April of '98. That's the time period the video game license was being negotiated, wasn't it?

       A:    Yes, but I don't recall the payments.

---

[11]    CFO and defendant Bennett gave the "imperative" direction.

Honorable Kenneth M. Karas
February 10, 2005
Page 12

Q:    Understood.  I want to make sure I understand.  Your testimony, then, is
      that you did not know at the time the video game license was being
      negotiated that somebody else in your company had made arrangements to
      pay Mr. Shenker $80,000?

Q:    That's your testimony, correct?

A:    Correct, I believe so.

The next day, defendant Bennett was designated by Jakks as the corporate official who
would testify on behalf of the company about the payments.  After admitting he did absolutely
nothing to prepare, Bennett systematically claimed amnesia about who had authorized the
payment of the $80,000 invoice Bennett had sent overseas to be paid, exemplified by the
following exchange:

Q:    Did you ever deal with Stephen Berman with respect to any issues related
      to this $80,000 invoice?

A:    Not that I recall.

Q:    Did you ever deal with Jack Friedman related to any issues on these
      $80,000?

A:    Not that I recall.

Q:    What executive within the company did you deal with that you recall
      regarding that invoice?

A:    I don't recall.

Q:    None?

A:    No.[12]

---

[12]    CFO Bennett also testified that certain files evidencing contractual relationships between
Jakks and Shenker had, of course, inexplicably disappeared!

Honorable Kenneth M. Karas
February 10, 2005
Page 13

Defendant Friedman's deposition was scheduled to occur on July 28, 2004. The day before his deposition, Jakks filed a frivolous protective order motion seeking to postpone his deposition and said he would not show up due to the filing of the motion. That day, the Connecticut court ordered him to appear and testify as scheduled. Friedman, the Chairman of the Board of Jakks, categorically denied being involved in the payments or even being aware the payments were made in 1998:

> Q:    You're aware of two $40,000 payments made by Hong Kong affiliates of Jakks Pacific to Stanful Industrial in 1998, aren't you?
>
> A:    I was made aware of them, yes.
>
> Q:    When were you made aware of them?
>
> A:    Sometime in the last – less than a year, I believe less than a year ago.
>
> Q:    Is it your testimony that you didn't know about those payments prior to then?
>
> A:    Correct.

As a result of this charade, the top management of Jakks avoided identifying the persons who authorized the payments. Thus, WWE had to seek a compulsion order directing Jakks to do so. The Court entered a second compulsion order against Jakks requiring it to adequately prepare and produce a corporate witness.

On October 15, 2004, Mr. Bennett returned as Jakks' corporate witness under specific order of the Court. As the official corporate representative testifying under Court order, and after admitting he had discussed their testimony with both Friedman and Berman, Bennett then admitted that, under any circumstances then existing, the payments in question had to have been authorized by Mr. Berman, Mr. Friedman, or both. Effectively, Jakks' corporate representative, while under a compulsion order, indicated that one or both of its highest ranking officers had not been truthful about their involvement in the payments to Shenker. The net effect, of course, was that Friedman and Berman have both escaped examination to date on their precise roles in the payments since both denied being involved under oath. In sum, the Jakks Defendants'

Honorable Kenneth M. Karas
February 10, 2005
Page 14

suggestion that discovery be stayed here because they provided discovery in the Connecticut action is not persuasive. The Jakks Defendants, like their co-conspirators, obstructed discovery at every turn.

### III.    CONCLUSION

Therefore, for the foregoing reasons, we respectfully request that the Court deny the motions to stay and order the discovery specified herein to occur, with the documents being produced within thirty days, and the depositions to await disclosure of the alleged jurisdictional defects and reasons for seeking a transfer of venue.

Very truly yours,

Jerry S. McDevitt

JSM/emw



**Kirkpatrick & Lockhart Nicholson Graham** LLP

Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222-2312
412 355 6500
Fax 412 355.6501
www.klng.com

Jerry S. McDevitt
412.355.8608
jmcdevitt@klng.com

February 16, 2005

<u>**VIA FACSIMILE**  (with permission)</u>

Honorable Kenneth M. Karas
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 920
New York, NY 10007

Re:  **World Wrestling Entertainment, Inc. v. JAKKS Pacific, Inc., et al.**
     **1:04-CV-08223-KMK**

Dear Judge Karas:

I write to correct an error in my letter to the Court of February 10, 2005.  On page 5 of my letter, I stated "Notably, no discovery has been conducted in Connecticut against THQ or the Joint Venture."

I was reminded today that on June 11, 2002, WWE did serve a subpoena on THQ, which generally sought records relating to payments or communication between THQ and/or Bell and Shenker.  On December 23, 2002, THQ produced 94 pages of documents, including a copy of the 24 page long videogame license.  None of the documents produced by THQ shed any light on the issues in this litigation or in the Connecticut case.

It is accurate, as stated in my letter, that there has been no documentary discovery from THQ, the Joint Venture, Jakks, or the individual Jakks Defendants regarding the six matters listed on pages 5-6 of my letter.  I apologize for any confusion caused by my lapse in memory.

Very truly yours,

Jerry S. McDevitt

JSM/emw

PI-1312251 v1

## CERTIFICATE OF SERVICE

The undersigned, an attorney duly admitted to practice law before this Court, hereby certifies under penalty of perjury, that on February 16, 2005, I caused a true copy of the foregoing to be served upon the following parties via facsimile transmission:

John R. Williams
Williams & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510

Michael A. Cornman
Schweitzer Cornman Gross & Bondell, LLP
292 Madison Avenue
New York, NY 10017

Steven A. Marenberg
Phil Kelly
Irell & Manella, LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276

Steven M. Bierman
Sidley Austin Brown & Wood
787 Seventh Avenue
New York, NY 10019

Michael A. Freeman
24 West 40th Street
17th Floor
New York, NY 10018

Jonathan J. Lerner
Skadden, Arps, Slate, Meagher &
    Flom, LLP
Four Times Square
New York, NY 10036-6522

Murray L. Skala, Esquire
Feder, Kaszovitz, Isaacson, Weber,
    Skala, Bass & Rhine, LLP
750 Lexington Avenue
New York, NY 10022-1200

Richard Schaeffer
Dornbush Schaeffer Strongin &
    Weinstein, LLP
747 Third Avenue
New York, NY 10017

Eugene R. Licker

Dated:  February 16, 2005



**Kirkpatrick & Lockhart Nicholson Graham LLP**

Henry W Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222-2312
412.355.6500
Fax 412 355 6501
www.klng.com

Jerry S. McDevitt
412.355.8608
jmcdevitt@klng.com

March 31, 2005

<u>**VIA FACSIMILE**</u>

Honorable Kenneth M. Karas
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 920
New York, NY 10007

Re:  World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.; Jakks Pacific
(H.K.) Limited; Road Champs Limited; THQ, Inc.; THQ/Jakks Pacific LLC;
Stanley Shenker and Associates, Inc.; Stanley Shenker; Bell Licensing, LLC;
James Bell; Jack Friedman; Stephen Berman, Joel Bennett and Brian Farrell
<u>No. 1:04-CV-08223-KMK</u>

Dear Judge Karas:

On behalf of our client, World Wrestling Entertainment, Inc. ("WWE"), we have exercised our right under Fed.R.Civ.Proc. 15(a) to amend the Complaint. The Amended Complaint is now on file, and it adds a claim for per se violations of the Sherman Act and also names a new and additional defendant, Brian Farrell, the Chief Executive Officer of Defendant, THQ. Although we firmly believe the original Complaint more than satisfied the notice pleading standard which, with the exception of fraud allegations, governed the claims in the original Complaint, we have added substantial factual allegations in the Amended Complaint which we believe more than cures any arguable defects advanced by the Defendants in response to the original Complaint.

We therefore write, pursuant to your Honor's Chamber rules, to request a status conference to establish the schedule moving forward. We propose to follow essentially the same time sequences and page limitations as established previously by the Court if any Defendant still desires to file a Rule 12 Motion. Specifically, we propose that the Jakks Defendants represented by Mr. Lerner answer or move within 21 days of today with page limits being as previously established by the Court for any Motion and associated Briefs. The remaining Defendants would have an additional 9 days to answer, or join in any Rule 12 arguments made by the Jakks Defendants with which they join, and brief any arguments unique to their respective clients. Again, we propose the same page limits for that group of Defendants as established previously if such Defendants move instead of answer.

PI-1336530 v1



**Kirkpatrick & Lockhart Nicholson Graham** LLP

Honorable Kenneth M. Karas
March 31, 2005
Page 2

  If dismissal motions are filed by any Defendant, WWE proposes to file its responsive brief not later than 30 days after the last filing made by any of the Defendants, and the moving Defendants would have 15 days thereafter for reply briefs. Once again, we propose to carry forward the same page limits for our response and the reply briefs as previously established.

        Very truly yours,

        Jerry S. McDevitt

JSM/lkm

## CERTIFICATE OF SERVICE

The undersigned, an attorney duly admitted to practice law before this Court, hereby certifies under penalty of perjury, that on March 31, 2005 I caused a true copy of the foregoing to be served upon the following parties via electronic and facsimile service:

John R. Williams
Williams & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510

Michael A. Cornman
Schweitzer Cornman Gross & Bondell, LLP
292 Madison Avenue
New York, NY 10017

Steven A. Marenberg
Irell & Manella, LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276

Steven M. Bierman
Sidley Austin Brown & Wood
787 Seventh Avenue
New York, NY 10019

Michael A. Freeman
24 West 40th Street
17th Floor
New York, NY 10018

Jonathan J. Lerner
Skadden, Arps, Slate, Meagher &
    Flom, LLP
Four Times Square
New York, NY 10036-6522

Murray L. Skala, Esquire
Feder, Kaszovitz, Isaacson, Weber,
    Skala, Bass & Rhine, LLP
750 Lexington Avenue
New York, NY 10022-1200

Richard Schaeffer
Dornbush Schaeffer Strongin &
    Weinstein, LLP
747 Third Avenue
New York, NY 10017

Jerry S. McDevitt

Dated: 3/31/05

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522
———
TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

DIRECT DIAL
212-735-2550
DIRECT FAX
917-777-2550
Email Address
JLERNER@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

April 4, 2005

BY FACSIMILE AND BY HAND

Honorable Kenneth M. Karas
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 920
New York, New York 10007

Re:     World Wrestling Entertainment, Inc. v. JAKKS
        Pacific, Inc., et al., 1:04-CV-08223-KMK

Dear Judge Karas:

On March 31, 2005, WWE was required by this Court's January 25, 2005 Scheduling Order (the "Court's Order"), issued after the pre-motion conference held that day, to defend the defective RICO and Robinson Patman Act claims that WWE asserted as its basis for federal jurisdiction and to respond to the dismissal motions filed by JAKKS on February 16, 2005. Without any prior warning to the Court or other counsel, on the evening of March 30, 2005, WWE abruptly abandoned its theory of the case and filed an Amended Complaint ("Am. Comp.") that fundamentally alters WWE's allegations and theories and adds fifty pages of additional bulk to a complaint that now exceeds 125 pages. On its face, the new pleading, which is misleadingly denominated as an "amended complaint," even though it specifically includes "transactions or occurrences" subsequent to the initial pleading, see, e.g., Am. Comp. at ¶¶ 24-25, 184, 249(b), is improper because: (1) it is a "supplemental pleading" for which leave of Court is required under Fed. R. Civ. P. 15(d), see 6A Wright, Miller & Kane, Federal Practice and Procedure: Civ. 2d §1504 (1990 & Supp. 2004); and (2) it adds a new defendant, which also requires leave of Court under Fed. R. Civ. P. 21.[1] Because it was filed improperly, without leave, WWE's Amended Complaint is a legal "nullity." Turkenitz v. Metromotion, Inc., No. 97 Civ. 2513 (AJP), 1997 WL 773713, at *3 (S.D.N.Y. Dec. 12, 1997).

Even if WWE's Amended Complaint were not a legal nullity, which it is, WWE's actions also run roughshod over the Court's Order, which unequivocally mandated that WWE "shall

---

[1] Springer-Penguin, Inc. v. Jugoexport, 648 F. Supp. 468, 470 (S.D.N.Y. 1986) (rejecting plaintiff's argument that it had an absolute right pursuant to Rule 15(a) to amend its complaint and holding that plaintiff was not entitled to join a new defendant without leave of the court); Williams v. United States Postal Service, 873 F.2d 1069, 1073 n.2 (7th Cir. 1989) ("a plaintiff cannot add new defendants through a complaint amended as a matter of course").

Honorable Kenneth M. Karas
April 4, 2005,
page 2

respond in opposition no later than March 31, 2005" by filing a "response brief." (emphasis added). On March 31, 2005, in derogation of the Court's Order, WWE failed to file any opposition papers, a default under the Court's Order, which, standing alone, would constitute a basis to dismiss WWE's case. E.g., United States v. Broadway Constr., Inc., No. 97 C 8284, 1998 WL 246385, at *2 (N.D. Ill. Apr. 24, 1998) (where, as here, plaintiff failed to respond to defendant's motion to dismiss certain counts, but instead contended "that the pleading deficiencies identified by the . . . defendants in their motion ha[d] been cured in an amended complaint, which plaintiff filed in the midst of the briefing schedule set by th[e] court for the defendants' motions to dismiss," court held that "[b]ecause plaintiff did not seek leave to file an amended complaint," court would dismiss counts as to which no opposition was filed.)

In unilaterally abrogating the Court ordered briefing schedule by failing to file its opposition papers, WWE usurped Your Honor's prerogative to determine whether to alter the briefing schedule carefully created by the Court after a number of party submissions and an in person conference and shows a complete disregard for the substantial time and expense incurred by the multiple defendants in filing comprehensive briefs within the schedule mandated by the Court. WWE professes to recognize that the Court is entitled to regulate the scheduling of motions by requiring a pre-motion conference, despite a defendant's right to file a dismissal motion. Likewise, a plaintiff's "right" to file an amended complaint, even a properly filed one – which this is not – does not trump this Court's Order. Even though its Amended Complaint does not appear to address, much less cure, the glaring defects identified in the dismissal motions, WWE declared in its March 31, 2005 letter to Your Honor that it had "exercised [its] right . . . to amend the Complaint" and conclusorily represented that it still "firmly believe[d]" its original complaint "satisfied" the applicable "pleading standards." WWE made no attempt to explain the nature of the amendments, represent to the Court how, if at all, they cured the existing defects raised in Defendants' motions, or even provide the Court or counsel with a redlined comparison of the two pleadings.

WWE has known the legal grounds, including the main cases, on which JAKKS' dismissal motion would be based since JAKKS' December 3, 2004 pre-motion letter. Given WWE's submissions to the Court unequivocally representing it would defend its Complaint – and its repeated attempts to unfairly truncate defendants' time to prepare their dismissal motions supposedly to enable WWE to have those motions decided earlier – we were extremely surprised that WWE, which must have been working on its new complaint for weeks, if not months, would wait until March 31 to reveal its pusillanimous epiphany.[2]  Under these circumstances, we

_____

[2] While we have only been able to begin to analyze WWE's new claims, it appears that WWE has radically recast its claims and beat a hasty retreat from the cornerstone of its original case. For example, in a strained attempt to manufacture RICO continuity back to 1996, WWE abandons its prior theory that RICO activity started with the January 2, 1998 $80,000 invoice
(continued...)

Honorable Kenneth M. Karas
April 4, 2005,
page 3

respectfully submit it is pure temerity for WWE to attempt to dictate, as it does in its March 31 letter, a new schedule that would severely prejudice the JAKKS Defendants by curtailing their time to respond to WWE's new complaint, which, inter alia, fundamentally alters the basic facts and theories upon which recovery is being sought, nearly doubles the length of its first complaint and tacks on a new antitrust claim in an effort to salvage WWE's baseless assertion of federal jurisdiction.[3]

Accordingly, we respectfully request that, having filed a new complaint without leave of Court, and having ambushed the Court's briefing schedule with their eleventh hour pleading in a transparent attempt to stave off dismissal, WWE be required to:

---

[2](...continued)
from Stanful to JAKKS, and that the payments thereunder were linked to the videogame and toy game licenses, and nothing else. That central allegation, that the January 1998 invoice was a quid pro quo for the videogame license, while negotiations for the videogame license were ongoing, has now been withdrawn! Compare, e.g., WWE 10/19/04 Complaint ¶¶ 46, 175, 181, 188 with Am. Comp. ¶¶ 298, 304, 311, respectively. Adopting new "facts" divorced from the allegations in its original complaint, WWE now acknowledges that the videogame license was not even in play in January 1998 and instead alleges that the January 1998 invoice for $80,000 was made in connection with a transaction to acquire rights and inventory of wrestling action figures manufactured by a company named Playmates, pursuant to discussions dating back to 1996, all of which predated discussions of the "status of renewal negotiations" concerning the videogame licence that was held by Acclaim. Compare 10/19/04 Comp. ¶¶ 46 with Am. Comp. ¶¶ 62, 83-94, 10-104. WWE's failure to provide any explanation for its retraction of core allegations against the JAKKS defendants that were in its original complaint raises a strong inference that the Amended Complaint was filed for a vexatious purpose. See generally 28 U.S.C. § 1297.

[3] We respectfully submit that WWE's suggestion to restrict Defendants to a 21 day deadline from the date of its letter to answer or move (while according WWE 30 days to file its opposition) is characteristically disingenuous. As WWE knows, the 21 day period the JAKKS Defendants proposed at the January 25, 2005 conference to file its motion to dismiss was in addition to the several months that they had already had to analyze WWE's complaint and prepare their motion. In this same vein, WWE's attempt to impose the page limits applicable to the prior motion to dismiss – despite WWE's addition of over 50 new pages of allegations and claims – is unreasonable and unfair. WWE's insistence on this one-sided schedule is especially egregious given that it is WWE that has just destroyed the established schedule, even though it had known the grounds for Defendants' motion since December 3, 2004 and could have submitted its new pleading before putting the Defendants to the significant cost and expense of moving against WWE's initial glaringly defective pleading.

Honorable Kenneth M. Karas
April 4, 2005,
page 4

(1) comply with Fed. R. Civ. P. 15(d) and Fed. R. Civ. P. 21, and the Court's Chamber Rules, by filing a letter seeking a pre-motion conference to obtain leave to file a Supplemental Complaint and to add a party; and

(2) identify the amendments it has made and explain how they respond, if at all, to the several dispositive arguments raised by Defendants, which WWE should be prepared to do if its new pleading is not merely a dilatory maneuver,[4] see, e.g., Int'l Brotherhood of Teamsters v. Carey, No. 00 Civ. 2952, 2001 WL 88210, at *1 (S.D.N.Y. Feb. 1, 2001) (where RICO plaintiff sought leave to file an amended complaint after motions to dismiss were filed, court held that "[s]hould Plaintiff amend the complaint while the current motions to dismiss are sub judice, Plaintiff shall file and serve with such amended complaint a statement explaining in detail the effect of each of the additional allegations contained in the amended complaint on each of the defenses asserted in each of the pending motions to dismiss.").

Further, we respectfully request that the JAKKS Defendants be relieved of any obligation to answer or move against the Amended Complaint until the entry of a new scheduling order, and that if permission to file an amended pleading is granted, the JAKKS Defendants be afforded a reasonable opportunity to study WWE's amended pleading and prepare their motion to dismiss. In this connection, we respectfully request that Defendants be granted 45 days from the entry of an order, if any, permitting the filing of an amended complaint to move against WWE's amended complaint, with an appropriate enlargement of the page limit to at least 60 pages for the supporting memorandum of law.

Respectfully submitted,

Jonathan J. Lerner

cc:    All Counsel (by email)

---

[4] Its profession to the contrary notwithstanding, the conclusion is ineluctable that WWE's Amended Complaint is a transparent ploy to escape sure dismissal for failure to state any cognizable federal claims. Under these circumstances, this Court should not reward such conduct with leave to amend or supplement. This Court has acknowledged that "'[l]eave to amend a complaint will generally be denied when the motion to amend is filed solely in an attempt to prevent the Court from granting a motion to dismiss or for summary judgment, particularly when the new claim could have been raised earlier.'" Berman v. Parco, 986 F. Supp. 195, 217 (S.D.N.Y. 1997) (emphasis added) (quoting 1 M. Silberberg, Civil Practice in the Southern District of New York § 6.26); accord Bymoen v. Herzog, Heine, Geduld, Inc., No. 88 Civ. 1796 (KMW), 1991 WL 95387, at *1 (S.D.N.Y. May 28, 1991).

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

April 5, 2005

**VIA HAND DELIVERY**

Honorable Kenneth M. Karas
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 920
New York, New York 10007

Re:    World Wrestling Entertainment, Inc. v. JAKKS Pacific, Inc., et al., 1:04-
CV-08223-KMK

Dear Judge Karas:

On behalf of defendant THQ Inc. ("THQ") and newly-named defendant Brian Farrell (jointly the "THQ Defendants"), we write in response to plaintiff World Wrestling Entertainment, Inc. ("WWE")'s letter to Your Honor dated March 31, 2005, discussing WWE's decision to file an Amended Complaint and setting forth WWE's proposed briefing schedule for motions to dismiss the Amended Complaint.  In the Amended Complaint, WWE has set forth additional "factual" allegations against various defendants, including THQ, has added an additional federal claim against all defendants under the Sherman Act, and has added THQ's Chief Executive Officer, Brian Farrell, as a named defendant.

1. **WWE's Amended Complaint Is Improperly Filed:**  As set forth in the letter of the Jakks Defendants dated April 4, 2005, WWE's Amended Complaint plainly sets forth a number of allegations pertaining to transactions or occurrences subsequent to the initial Complaint, which was filed on October 19, 2004.  See, e.g., Amended Complaint at ¶¶ 24-25, 184, 249(b).  Rule 15(d) of the Federal Rules of Civil Procedure requires that a party seek leave to file a supplemental pleading.  Fed. R. Civ. Pro. 15(d) ("Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions and occurrences or events which have happened since the date of the pleading sought to be supplemented.")  WWE's belated filing of an amended pleading also makes a mockery of this Court's previous scheduling orders and pre-motion procedures.

Because WWE failed to comply with Rule 15(d), its Amended Complaint should be stricken and WWE should be required to obtain leave of Court to file a supplemental pleading that identifies any changes to the original Complaint and explain how such amendments respond to the arguments raised during the first round of motions to dismiss. Should the Court grant leave to file the Amended Complaint, the THQ Defendants are prepared to submit a pre-motion letter and/or participate in another scheduling conference at

1281833.2 03

IRELL & MANELLA LLP
A REGISTERED  LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Honorable Kenneth M. Karas
April 5, 2005
Page 2

the Court's convenience to determine an appropriate briefing schedule and appropriate page limitations for motions to dismiss the Amended Complaint.

   2.  **WWE's Amended Complaint is Still Subject to Dismissal:**  Even were it properly filed, WWE's Amended Complaint is still facially deficient.  As such, the THQ Defendants intend to move to dismiss all of the federal claims, including the recently manufactured Sherman Act claims, as well as a number of WWE's state law claims in this new pleading.

   In WWE's apparent desperation to avoid dismissal of the plainly defective federal and state claims, WWE has added a number of outrageous and utterly false "factual" allegations pertaining to the THQ Defendants and others, including conclusory allegations and insinuations that the THQ Defendants supposedly participated in the alleged bribery scheme and alleged price fixing.  These newly-minted allegations as to the THQ Defendants are untrue, without any evidentiary support, and, perhaps most pertinently for purposes of a pleading motion, contradict the allegations in the original Complaint.  Despite voluminous deposition discovery and extensive investigation and other discovery in the Connecticut action between WWE and Shenker and Bell, there is simply no evidence that THQ or Mr. Farrell had any knowledge of, or played any role in, any illicit scheme or wrongdoing as alleged by WWE.  Still other "factual" allegations contained in the Amended Complaint are intended solely to harass, were asserted without any reasonable inquiry, and have no relevance to the claims asserted by WWE.  Indeed, a number of the new factual allegations and a number of the claims asserted by WWE in the Amended Complaint against the THQ Defendants appear to be in plain violation of Rule 11.  The THQ Defendants intend to follow the procedures of Rule 11 in demanding withdrawal of all such allegations and claims.

   3.  **Briefing Schedule And Page Limits For New Motions To Dismiss:**

   (a)  **Briefing Schedule:**  In the event the Court is inclined to consider the Amended Complaint, the briefing schedule proposed by WWE is unfair, unwarranted and contravenes the Federal Rules and this Court's Local Rules.  Specifically, WWE has proposed  a briefing schedule for motions to dismiss the Amended Complaint whereby the Jakks Defendants' motion would be due April 21, 2005 (21 days from March 31, 2005) and the remaining defendants' motion would be due on May 2, 2005 (9 days later falls on Saturday April 30, 2005).  First, this briefing schedule ignores the Court's Chamber Rule requiring a pre-motion letter and conference.  Second, this proposed schedule provides inadequate time to review and absorb WWE's 126-page Amended Complaint, including the allegations pertaining to the new Sherman Act claim, before each defendant is required to file a motion to dismiss.  Third, WWE's proposed schedule ignores the fact that WWE has added a new defendant, THQ's Chief Executive Officer, Brian Farrell, to the pleading.  Mr. Farrell was served with the Amended Complaint on April 4, 2005, and has not previously filed a pre-motion letter in