IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

this action as required by the Court's Chamber Rules. Accordingly, the THQ Defendants join the Jakks Defendants in requesting additional time within which to prepare motions to dismiss.

**(b) Page Limits on Briefs:** Although the THQ Defendants have no objection to maintaining the staggered briefing schedule whereby the Jakks Defendants file their motion to dismiss first and then the remaining defendants have a short additional period within which to file their briefs, the THQ Defendants cannot agree to again be limited to just 15 pages for its motion to dismiss for several reasons. The THQ Defendants must fully defend the newly-created and specious allegations and claims and require adequate space within which to do so. While the THQ Defendants believe that all defendants continue to have meritorious defenses requiring dismissal under Rule 12, WWE's new allegations further distinguish the defenses available to the THQ Defendants from those available to others. For example, WWE has sought to add allegations purportedly lengthening the duration of the alleged RICO conspiracy period against other defendants. None of these allegations, however, affect the defenses of the THQ Defendants under existing RICO precedents; indeed they underscore the absence of certain elements such as continuity and a pattern of predicate acts. The THQ Defendants are entitled to a full opportunity to present and explain the defenses that are unique to them in their supporting brief.

Further, as noted above, WWE has added THQ's Chief Executive Officer, Brian Farrell, as a named defendant. As such, the THQ Defendants' brief will now include argument pertaining to the claims asserted against Mr. Farrell as well as claims against THQ. Under these circumstances the 15 page limit that THQ agreed to in the initial round of briefing is inadequate and likely to unduly prejudice the THQ Defendants by preventing the THQ Defendants from fully addressing the deficiencies in WWE's Amended Complaint. Accordingly, the THQ Defendants request that, in the event a staggered briefing schedule is ordered, the THQ Defendants be permitted 30 pages for their memorandum of points and authorities in support of their motion to dismiss. Of course, as before, the THQ Defendants will avoid duplicating the arguments and authorities of the Jakks Defendants to the fullest extent possible.

Very truly yours,

Steven A. Marenberg /pmk

Steven A. Marenberg

cc: Counsel of Record (via email)

DORNBUSH SCHAEFFER STRONGIN & WEINSTEIN, LLP

747 THIRD AVENUE
NEW YORK, NY 10017
www.dsswlaw.com

Tel (212) 759-3300

Fax (212) 753-7673

April 6, 2005

**BY HAND**

Honorable Kenneth M. Karas
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 920
New York, New York 10007

Re: World Wrestling Entertainment, Inc. v. JAKKS Pacific, Inc., et al.;
Case No. 1:04-CV-08223-KMK

Dear Judge Karas:

This firm represents defendant THQ/JAKKS Pacific LLC (the "LLC"). We write in response to plaintiff WWE's recent filing of a purported "Amended Complaint" in this action, dated March 30, 2005, and the letter of plaintiff's counsel to the Court, dated March 31, 2005, with respect to that filing.

While we do not wish to burden the Court with a lengthy submission concerning WWE's recent tactic, we write to indicate the LLC's agreement with the points set forth in the letters to the Court by counsel for the JAKKS Defendants and THQ objecting to WWE's filing of an "Amended Complaint" in lieu of submitting papers in opposition to defendants' pending dismissal motions. Simply stated, WWE is not entitled under Fed. R. Civ. P. 15(d) to file, without leave of the Court, what is in reality a supplemental pleading. Moreover, WWE's presumptuousness in filing this "Amended Complaint", without warning, on the very due date for its opposition to the pending motions flies in the face of the Court's carefully considered Scheduling Order of January 25, 2005. That Order resulted from the pre-motion conference set by Your Honor for the very purpose of establishing a briefing schedule on defendants' motions. In reliance upon Your Honor's Order, the defendants have expended substantial time and resources in meticulously preparing their motions to dismiss -- time and resources which could have been spared had WWE acted in an open fashion.

The case of Jordan v. Lipsig, Sullivan, Mollen & Liapakis, PC, 1988 WL 31855 (S.D.N.Y. March 24, 1988) (copy annexed) demonstrates the impropriety of WWE's tactics. In Jordan, the defendants filed a motion to dismiss even though, at an earlier conference in that action, the Court declined to grant defendants permission to file the motion and accordingly did not establish a briefing schedule for that motion. Noting the defendants' failure to abide by the results of the earlier conference, the Court in Jordan held that, "[f]or this reason alone, [defendants'] motion is subject to dismissal." In so holding, the Court also observed that "one of the principal reasons for requiring a pre-motion conference is to allow the Court to establish clear briefing schedules in the presence of both parties." Id. at *3n.1.

In disregarding the schedule set forth in this Court's January 26, 2005 Order, as established during the pre-motion conference in this action -- and opting instead to file, improperly, a purported "Amended Complaint" -- WWE has done precisely what the Court in Jordan has held cannot be done: undermine the purpose of a Court-ordered pre-motion conference and waste the time and resources of the Court and the other parties.

If WWE's bulked up, largely re-imagined "Amended Complaint" serves any purpose at all, it is to show that even WWE now realizes that its original Complaint (and the theories underlying it) were fatally defective as a matter of law. While the "Amended Complaint" is no improvement, if WWE seeks to rely on that document as its statement of the case, it should seek to file it in compliance with the Federal Rules and the directives of this Court.

Respectfully submitted,

Richard Schaeffer

cc: All Counsel (via electronic mail)

H
Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Susan Root JORDAN and Richard Jordan, Plaintiffs,
v.
LIPSIG, SULLIVAN, MOLLEN & LIAPAKIS, P.C., Harry H. Lipsig, Esq., Robert Sullivan, Esq., Panela A. Liapakis, Esq. and Edward P. Milstein, Esq.,
Defendants.
**No. 86 CIV. 3752 (SWK).**

March 24, 1988.

*MEMORANDUM OPINION AND ORDER*

KRAM, District Judge.

*1 Defendants filed a motion to dismiss pursuant to Rule 12(b), seeking to dismiss the complaint against individual defendants Pamela Liapakis, Harry Lipsig and Robert Sullivan (referred to herein as "individual defendants"). Plaintiffs resist defendants' motion on both substantive and procedural grounds. Defendants' motion is denied for the reasons stated below.

Defendants filed this motion in violation of this Court's rules. A pre-trial conference was held on March 4, 1988, in response to defendants' request to adjourn the March 28, 1988 trial date. At the conference, this Court adjourned the trial date in light of defendants' requests and in light of conflicting criminal matters before the Court. At the same time, defendants requested leave of the Court to file two motions, one to dismiss individual defendants and one to bifurcate the trial. The Court informed defendants that it would not bifurcate the proceedings. Plaintiffs argued that it was premature to consider whether individual defendants were personally liable and that plaintiffs would establish their liability at trial. The Court did not grant defendants permission to file the instant motion, though defendants must have mistakenly believed such permission was granted. The Court did not establish a briefing schedule as it does in all instances when it grants permission for motion practice to go forward. [FN1] For this reason alone, the motion is subject to dismissal.

Furthermore, as plaintiffs argue, the procedural posture of this case is unclear. Defendants' notice of motion states that dismissal is sought pursuant to Rule 12(b). According to the Rule, a "motion making any of the [available Rule 12(b) ] defenses shall be made before pleading if a further pleading is permitted." Rule 12(b) motions are generally filed instead of an answer so that preliminary defenses may be considered by motion; otherwise, the defenses are to asserted in the responsive pleading and considered by a motion to dismiss or at trial. A party may move to dismiss pursuant to Rule 12(c), if the motion is based on the pleadings, or pursuant to Rule 56 for summary judgment if "matters outside the pleadings are presented to and not excluded by the court". *See* Rule 12(c). Defendants have submitted affidavits and exhibits supporting their motion, and the Court would have to consider such materials in order to reach a decision on the merits of defendants' motion.

Consequently, the Court must treat defendants' motion as one for summary judgment pursuant to Rule 56. [FN2] Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c). In testing whether the movant has met this burden, the Court must resolve all ambiguities against the movant. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir.1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157 (1970). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on which that party would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, —, 106 S.Ct. 2548, 2553 (1986). The non-moving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." Rule 56(e). To avoid summary judgment, the non-moving party must establish the existence of enough evidence such that a jury could return a verdict in its favor. *See Anderson v. Liberty*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Lobby*, 477 U.S. 242, ---, 106 S.Ct. 2505, 2510-11 (1986) (interpreting the "genuineness" requirement).

*2 Defendants argue in their memorandum of law that the complaint against the individual defendants should be dismissed because they had no individual involvement in the alleged professional negligence and are accordingly shielded by their status as shareholder in defendant professional corporation. Defendants argue that section 1505(a) of the New York Business Corporation Law ("BCL") [FN3] shields the individual defendants since they did not personally commit any wrongful or negligent act. Defendants argue that the individual defendants had no involvement in the alleged negligent acts associated with defendant law firm's representation of plaintiffs. Plaintiffs respond in their memoranda and affidavits that the named individual defendants were involved in various stages of the defendant firm's representation of plaintiffs.

*Lipsig*

Plaintiffs argue that Lipsig, as the managerial head of defendant law firm for over fifty years, is responsible for establishing the negligent procedures which resulted allegedly in plaintiffs' injuries. Plaintiffs state that "defendant Lipsig exercised direct supervision and control over creation and implementation of the 'firm policy' that is central to plaintiff's claims of legal malpractice." Affirmation of Adrienne Deluca at ¶ 11. Plaintiffs are seeking to recover against Lipsig for his acts of negligence in establishing and overseeing the office procedures which caused plaintiffs' damages. Since issues of fact exist, the summary judgment motion to dismiss is denied.

*Sullivan*

Plaintiffs asserts that they initially met and discussed their case with Sullivan, who referred the case to other lawyers. Plaintiffs point out that Sullivan had initial responsibility for their case and consulted with the other responsible lawyers on how best to proceed with the representation. While plaintiffs will have to prove causation and the amount of damages, it cannot be said at this point that there is no issue of fact concerning Sullivan's role, and defendants' motion for summary judgment is accordingly denied.

*Liapakis*

Finally, plaintiffs argue that questions of material fact exist as to Liapakis's involvement in the alleged negligence, even though they never met directly with her. Plaintiffs point to a short memorandum apparently prepared by Liapakis which lists certain dates which seem to be relevant to the expiration of the statute of limitations. Since plaintiffs allege that defendants were negligent in allowing the statute to run on their claims, Liapakis may share in the liability of any wrongdoing. Again, plaintiffs will have to prove the elements of negligence, but at this point cannot be said that Liapakis did not commit any acts of negligence or wrongdoing. [FN4] Issues of fact concerning Liapakis's role are present, and these questions are germane to a determination of liability. Accordingly, the requested dismissal is denied.

*3 Since the motion was filed without leave of the Court and since genuine issues of material fact exist as to each of the individual defendants for whom dismissal is sought, defendants' motion is denied.

SO ORDERED.

FN1. Indeed, one of the principal reasons for requiring a premotion conference is to allow the Court to establish clear briefing schedules in the presence of both parties.

FN2. Normally, parties involved in summary judgment motions must file a statement of undisputed or disputed material facts as required by Local Rule 3(g). Since defendants did not apparently believe they were making a motion for summary judgment and since the Court decides to dismiss on other grounds, such a statement is not now required.

FN3. Section 1505(a) states that each "shareholder, employee or agent of a professional service corporation shall be personally and fully liable and accountable for any negligent or wrongful act committed by him or by any person under his direct supervision and control while rendering professional services on behalf of such corporation."

FN4. Plaintiffs assert that certain of the dates are incorrect and that Liapakis was involved in the firm's system of monitoring the running of statutes of limitations.

1988 WL 31855 (S.D.N.Y.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.


SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
FOUR TIMES SQUARE
NEW YORK 10036-6522

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
212-735-2550
DIRECT FAX
917-777-2550
EMAIL ADDRESS
JLERNER@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

April 6, 2005

BY HAND

Honorable Kenneth M. Karas
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 920
New York, New York 10007

Re: World Wrestling Entertainment, Inc. v. JAKKS Pacific, Inc., et al., 1:04-CV-08223-KMK

Dear Judge Karas:

We have concluded that in our haste to submit our April 4, 2005 letter to the Court, the citations in the first footnote to that letter did not portray the existence of differing views expressed by Courts in the Southern District of New York as to whether leave to amend is required before adding a party to a complaint. Compare, e.g., Momentum Luggage & Leisure Bags v. Jansport, Inc., 2001 WL 58000, at *1-2 (S.D.N.Y. Jan. 23, 2001) ("Rule 15(a) generally governs the amendment of complaints, but in the case of proposed amendments where new defendants are to be added, Rule 21 governs.") *and* Kaminsky v. Abrams, 41 F.R.D. 168, 170 (S.D.N.Y. 1966) ("It has been held that the specific provisions of Rule 21 govern over the general provisions of Rule 15, and that an amendment changing parties requires leave of Court even though made at a time when under Rule 15 amendment may be made as a matter of course.") *with* CBS Broadcasting, Inc. v. Bridgestone Multimedia Group, Inc., 1998 WL 740853, at *1 (S.D.N.Y. Oct. 23, 1998) (party amending as of right was "not required to seek leave of the Court") *and* Clarke v. Fonix Corp., 1999 WL 105031, at *6 (S.D.N.Y. Mar. 1, 1999) (leave of the Court not required to add party when amending as a matter of course pursuant to Rule 15(a)).

Respectfully submitted,

Jonathan J. Lerner

cc: All Counsel (by email)



Kirkpatrick & Lockhart Nicholson Graham LLP

Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222-2312
412.355.6500
Fax 412.355.6501
www.klng.com

Jerry S. McDevitt
412.355.8608
jmcdevitt@klng.com

April 11, 2005

BY FACSIMILE AND BY HAND
Honorable Kenneth M. Karas
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 920
New York, NY 10007

Re: **World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc., et al**
**No. 1:04-CV-08223-KMK**

Dear Judge Karas:

This response is submitted in accordance with the Court's Order of April 6, 2005 that we respond to Jakks letter of April 4, 2005. We welcome the opportunity to do so since Jakks has, in its admitted "haste", attempted to construct a procedural gauntlet at odds with the Rules of Procedure. More problematically, Jakks ignored controlling authority in its April 4, 2005 letter and in its corrective letter of April 6, 2005.

BACKGROUND

On March 30, 2005, WWE exercised the right provided to it under Fed. R. Civ. P. 15(a) and controlling case law to amend the Complaint as of right since no defendant had filed a responsive pleading.[1] WWE's right to do so is well-established since motions to dismiss are not responsive pleadings within the meaning of Rule 15(a). Barbara v. N.Y. Stock Exch., Inc., 99 F.3d 49, 56 (2d Cir. 1996); Elfenbein v. Gulf & Western Indust., Inc., 590 F.2d 445, 448 n.1 (2d Cir. 1978). The law is also clear that "an amended complaint ordinarily supersedes the original and renders it of no legal effect." Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977); cert. denied 434 U.S. 1614 (1978); Harris v. City of N.Y., 186 F.3d 243, 249 (2d Cir. 1999) ("[the amended complaint] is the legally effective pleading for Rule 12(b)(6) purposes."). Because an amended complaint supersedes the original complaint, Courts routinely deny as moot

---

1 The structure of Rule 15(a) is quite clear, as are the cases interpreting it. A party is given the right to amend "once as a matter of course at any time before a responsive pleading is filed...." After that right is once exercised, the party must obtain leave of Court to amend further.



Kirkpatrick & Lockhart Nicholson Graham LLP

motions to dismiss the original complaint. See, e.g., Dassero v. Edwards, 190 F. Supp. 2d 544, 547 n.1 (W.D.N.Y. 2002) ("I agree that the . . . motion to dismiss the original complaint was mooted by the filing of the amended complaint . . ."); United Magazine Co. v. Murdoch Magazines Distrib., Inc., 146 F. Supp. 2d 385, 416 (S.D.N.Y. 2001); Taylor v. Abate, No. 94 CV 0437 (FB), 1995 WL 362488, at *2 (E.D.N.Y. June 8, 1995). In its March 31, 2005 letter to the Court, WWE did not recite this and other law since we did not believe then, or now, that WWE's right to amend or the procedure after doing so could be reasonably challenged. WWE did not anticipate that Jakks would twice ignore controlling law and in the interests of brevity simply requested that the Court establish a new schedule for Defendants' responses to the Amended Complaint.

JAKKS APRIL 4, 2005 LETTER

Jakks' April 4, 2005 letter was long on rhetoric and short on law. After attempts to inflame the Court by suggesting that WWE's exercise of a well-established legal right was somehow intended to insult the Court,[2] Jakks advanced two arguments designed to construct a requirement that WWE had to seek leave to file the Amended Complaint. Thus, Jakks first contends that the Amended Complaint is really a supplemental pleading because exactly four paragraphs out of 363 are said to include transactions or occurrences subsequent to the initial pleading. The second point made by Jakks was that WWE could not join Defendant Brian Farrell, the Chief Executive Officer of THQ, without leave of Court. This argument assumes Jakks has standing to question the joinder of a non-Jakks defendant.[3] In advancing the argument

---

2 At no time in the prior conference did the Court indicate or order that WWE did not have the right to amend "once as a matter of course" if it elected to do so. Moreover, all the sophistry of Jakks aside, it is obvious that Jakks prefers a process contrary to the Rules which serves no purpose other than delay. Under Jakks' revisionist view of the way the Rules operate, WWE should have briefed the sufficiency of the original Complaint and argued Motions to Dismiss, all the while intending to amend in any event. If the Court sustained the original Complaint, the filing of an Amended Complaint thereafter would have lead to further motion practice and delay. If the Court sustained any of Defendants' arguments aimed at factual sufficiency of the allegations, WWE would have sought leave and filed exactly what it has now filed. Moreover, the Sherman Act claim could only be added by an Amended Complaint. Rule 15(a) plainly permits a plaintiff seeking a just and speedy resolution to avoid such delays by granting a one-time right to amend in the face of a motion to dismiss which, when done, is to be responded to within ten days.

3 In its April 5, 2005 letter, THQ notably did not join in Jakks' argument that Mr. Farrell could not be joined in an Amended Complaint filed pursuant to Rule 15(a).



Kirkpatrick & Lockhart Nicholson Graham LLP

about joinder of Mr. Farrell, Jakks ignored controlling law holding that such joinder is proper, none of which was cited to the Court.

On April 6, 2005, Jakks filed another letter admitting that in its "haste" it had not included what it termed "differing views" of Courts in the Southern District on the subject of joining additional defendants when amending under Rule 15(a). Unfortunately, Jakks' corrective letter again did not bring controlling legal authority to the Court's attention.

WWE WAS NOT SHOWING DISRESPECT FOR THE COURT

Hopefully this Court will give no credence to Jakks' transparent attempts to inflame the Court. WWE respectfully assures the Court that it intended no disrespect. The simple fact is that the investigation into the illegal conduct now set forth in even greater detail in the Amended Complaint did not stop when the original Complaint was filed and has not stopped now. We have continued to gather evidence from all available sources, and have analyzed that evidence, a process complicated by the now adjudicated obstruction of justice scheme set forth in the Amended Complaint. Additionally, Defendant James Bell plead guilty to a federal mail fraud charge on February 10, 2005 in an investigation which is continuing.[4] As a result of our continuing investigation, WWE gained additional evidence leading it to believe an Amended Complaint should be filed, and that Mr. Farrell and a Sherman Act claim should be joined. Reading Rule 15(a) as permitting it to do so without leave of the Court, WWE filed its Amended Complaint. It is as simple as that, and Jakks' assertion that WWE is not entitled to amend its Complaint to tell the whole story known to it as a result of the continuing investigation is absurd under the law.[5]

---

4 Due to the ongoing nature of the criminal investigation being conducted by federal authorities, WWE does not believe it is prudent or appropriate to say more about that investigation at this time.

5 Jakks' attempt to construct sinister motives for amending is frankly disingenuous for other reasons. Jakks' argument that the Amended Complaint was designed to cure alleged defects in the original Complaint ignores that, even if true, doing so is a recognized purpose of Rule 15. See Chapman v. YMCA of Greater Buffalo, 161 F.R.D. 21, 24 (W.D.N.Y. 1995) (Rule 15(a) is intended to allow a party to cure certain deficiencies or errors in pleadings, thus insuring that a claim will be heard and decided on the merits); Wright, Miller & Kane, Federal Practice & Procedure: Civ. 2d §1474 (1990). ("Perhaps the most common use of Rule 15(a) is by a party seeking to amend in order to cure a defective pleading.") WWE has attached hereto a summary of the Amended Complaint as Exhibit 1.



Kirkpatrick & Lockhart Nicholson Graham LLP

Honorable Kenneth M. Karas
April 11, 2005
Page 4

JOINDER OF DEFENDANT BRIAN FARRELL IS PERMITTED

No case cited by Jakks in its April 4th letter holds that a plaintiff cannot join an additional defendant when amending "once as a matter of course at any time before a responsive pleading is served . . . ". The quote from Williams v. United States Postal Serv., 873 F.2d 1069, 1073 n.2 (7th Cir. 1989) cited by Jakks is pure dicta and not the law of the Second Circuit. The law on this precise point was established in two cases by the Second Circuit in 1983. Washington v. N.Y. City Bd., 709 F.2d 792, 795 (2d Cir. 1983) cert. denied 464 U.S. 1013 (1983) (where no answer filed plaintiff was entitled as a matter of right to amend Complaint to add additional parties under Rule 15(a) provision allowing amendment once before a responsive pleading is filed); Le Grand v. Evan, 702 F.2d 415, 417 (2d Cir. 1983) (a plaintiff is entitled under Rule 15(a) to amend his Complaint as a matter of right to add new defendants).[6]

Jakks did not cite either Le Grand or Washington to the Court, even when purportedly correcting their original submission. The dispositive importance of Washington to the issue of joinder under the relevant provision of Rule 15(a) is spelled out in the very cases Jakks does cite to the Court, so its counsel clearly knew about that case. Moreover, even when supposedly correcting its original letter, Jakks failed to point out that the only other case from the Second Circuit it cited originally, Springer-Penguin, Inc. v. JugoExport, 648 F.Supp. 468 (S.D.N.Y. 1986), is an exception to the rule set forth by the Second Circuit in Washington and applies only when a party seeks to strip a federal court of jurisdiction following removal by adding non-diverse defendants. See CBS Broad., Inc., v. Bridgestone Multimedia Group, Inc., No. 97 CIV. 6408 (JSM), 1998 WL 740853, at *1, (S.D.N.Y. Oct. 23, 1998).

Jakks fares no better with the only other authorities they cited in their correction letter suggesting there was a difference of opinion at the trial court level on the point. The case of Kaminsky v. Abrams, 41 F.R.D. 168 (S.D.N.Y. 1966), cited in Jakks' corrective letter, was decided prior to Washington and simply did not hold that Rule 21 trumps Rule 15 in any event.

---

6 See also Singh v. Prudential Ins. Co. of America, Inc., 200 F. Supp. 2d 193, 197 n.7 (E.D.N.Y. 2002) (noting that Second Circuit in Washington had adopted the "better view [of Professor Moore and] rejects the notion that a motion to amend is required to add or drop parties before the filing of a responsive pleading."); Clarke v. Fonix Corp., No. 98 Civ. 6116 (RPF); 1999 WL 105031, at *6 (S.D.N.Y. Mar. 1, 1999) (rejecting notion that Rule 21 trumps Rule 15(a) right to amend as of course before a responsive pleading to add parties and refers to Washington as controlling); aff'd 199 F.3d 1321 (1999); CBS Broad., Inc., 1998 WL 740853, at *1 (holding plaintiff permitted to amend the complaint to add a party as of right under Rule 15(a) because no responsive pleading had been filed and finding no case casting doubt on continuing validity of Washington).

Kirkpatrick & Lockhart Nicholson Graham LLP

The Court in Kaminsky expressly stated it was considering a motion under Rule 21 to add parties, not whether Rule 15(a) permitted such joinder before a responsive pleading was filed. Id. at 170. The language quoted by Jakks was pure dicta in which the Court noted that some early cases had held that Rule 21 governed over Rule 15. What Jakks did not point out is that the Court in Kaminsky immediately thereafter questioned such cases:

> "Such holdings have been questioned in view of the fact that '[t]he whole notion of allowing amendments as of course is that at such an early stage in the case the court should not be bothered with passing on amendments and the other party will not be harmed by a change in the pleadings. These considerations seem as applicable to a change in parties as to any other changes made by an amended pleading' " Kaminsky at 170. See also CBS Broad., Inc., 1998 WL 740853, at *1. ("Policy of Federal Rules favoring just and speedy resolution of actions would be frustrated by favoring Rule 21 over 15(a) without reason").[7] (Citations omitted)

Jakks' position on the joinder issue is not merely lacking in legal authority. It was taken originally in haste with clear intent to delay and then continued to be advanced by a correction which still did not point out the controlling authority in this Circuit. Significantly, no other defendant joined in the argument, including the one which would logically do so if meritorious -- THQ. It is inexcusable for Jakks not to have pointed out controlling Second Circuit authority it unquestionably knew existed. See United States v. Gaines, 295 F.3d 293, 302 (2d Cir. 2002) (pointing counsel to New York's Code of Professional Responsibility which requires a lawyer to inform tribunal of controlling legal authority known to it which is directly adverse to position of client).

7 The only other authority cited by Jakks in support of its argument is Momentum Luggage & Leisure Bags v. Jansport Inc., No. 00 Civ. 7909 (DLC); 2001 WL 58000, at * 1-2 (S.D.N.Y. Jan. 23, 2001). That case, however, did not deal with an amendment when no defendant had answered. Instead, after expedited discovery and an answer by one of the defendants, and considerable judicial involvement in getting the case trial ready, plaintiff sought leave to add seven additional defendants. Specifically finding that the answering defendant would be prejudiced and that the late joinder would delay completion of discovery and trial, the Court refused to permit the joinder. None of these facts are present here, or even argued to be present. Indeed, Jakks' position is designed to do precisely the opposite – delay discovery and trial.



Kirkpatrick & Lockhart Nicholson Graham LLP

THE AMENDED COMPLAINT IS NOT A SUPPLEMENTAL PLEADING

In an even more twisted argument completely unrelated to the goal of an adjudication on the merits and designed only for delay, Jakks argues that WWE needed to obtain leave to file the Amended Complaint because it allegedly contained four paragraphs (out of 363 numbered paragraphs) about transactions or occurrences which took place after the original Complaint was filed. Jakks cited no law holding that an Amended Complaint cannot include additional facts occurring since the original Complaint was filed. Likewise, Jakks gave no logical reason why including such matters in an Amended Complaint is improper or prejudicial in any way. It is argument for argument's sake, nothing more.

The frivolity of this argument is obvious upon examination of the four paragraphs said to require leave to assert. Paragraph 24 of the Amended Complaint alleges that Defendant Bell plead guilty to having participated in a scheme to defraud WWE in the ongoing federal investigation after the original Complaint was filed. Paragraph 25 notes that Bell's stipulation to the plea inculpates Defendants SSAI and Shenker in the scheme. Thus, the first two paragraphs Jakks objects to involve matters of judicial record which could not even be reasonably denied. Paragraph 184, the third one cited by Jakks, alleges that "through the year ended December 31, 2004," WWE had been paid 54 million dollars in royalties by THQ and that Jakks had been paid 64 million dollars as a result of the illegal conduct. As such, that paragraph contains facts which occurred for years prior to the original Complaint and exactly one payment for the fourth quarter of 2004 which occurred after the original complaint was filed. Thus, had WWE run the calculation through only the third quarter of 2004, Jakks would have no objection. To Jakks, the inclusion of the fourth quarter 2004 payments to be complete warrants judicial involvement, and, of course, delay. Similarly, Paragraph 249(b), the last paragraph cited by Jakks, alleges violations of money laundering statutes occurring since January 14, 1998 to the present, including, where applicable, acts of money laundering in the fourth quarter of 2004.

The four paragraphs in question are continuations of those things originally alleged and are proper in an Amended Complaint. United States v. IBM, 66 F.R.D. 223, 227-28 (S.D.N.Y. 1975) (rejecting argument that adding additional anti-competitive acts to list in original complaint was a supplemental pleading and accepting government's pleading as amended complaint). Furthermore, "[a]ny misnomer of the additions to the complaint as amendments rather than supplementation constitutes harmless error . . ." Westwood v. Cohen, 838 F.Supp. 126, 132 (S.D.N.Y. 1993). See also Fineas AG v. Honeywell, Inc., 501 F.Supp. 1029, 1033 n.4 (S.D.N.Y. 1980) (holding that although plaintiff's pleading should have been denominated,