

**Kirkpatrick & Lockhart Nicholson Graham LLP**

Honorable Kenneth M. Karas
April 11, 2005
Page 7

supplemental, "[i]nsisting on a formal application, however, would not be a productive use of the time of the court or the parties").[8]

## CONCLUSION

Rule 15(a) permits a plaintiff to amend before a responsive pleading is filed without troubling the Court with pointless motion practice. WWE has followed the proper procedures to amend in the fashion approved by the Rules of Procedure adopted by the Supreme Court and Congress and the law of this Circuit. The Rules of Procedure, and well-developed law, provide a clear road map towards the orderly disposition of a case. The procedural gauntlet suggested by Jakks is found nowhere in the rules, would disrupt the clear process dictated by the rules and controlling case law, and serves only the purpose of delay for delay's sake.

This case was originally filed on October 19, 2004. All Defendants had an extraordinarily long time -- over four months -- to review the law which governs this case before filing their first response. While labeling the Amended Complaint "pusillanimous epiphany" (whatever that means), Defendants nonetheless bemoan the need for extensive time to brief their responses. The reaction is predictable and telling. For the reasons stated herein, WWE respectfully requests the Court deny the motions to dismiss as moot in light of the Amended Complaint and establish a reasonable schedule for all Defendants to answer or otherwise respond to the Amended Complaint, as required by Rule 15(a) (" a party shall plead in response to an amended pleading") and the law cited herein.

Very truly yours,

Jerry S. McDevitt

JSM/lkm

cc:   Counsel of Record

---

[8]   Defendants know full well that the Amended Complaint not only expands the factual allegations against them, but also adds a new party and a new claim under the Sherman Act. Rule 15(d) governing supplemental pleadings makes no provision for adding parties or claims and simply cannot be used to do so.

# EXHIBIT 1
## SUMMARY OF AMENDED COMPLAINT

1) <u>Sherman Act Claims</u> – We have added this claim based principally on the factual allegations set forth in ¶¶ 118-164, 173-185, 186-241 (for tolling purposes). The claim itself is set forth in Count III at ¶ 259-272.

2) <u>Joinder of Defendant Farrell</u> – We have added Mr. Farrell, the Chief Executive Officer of THQ, to Counts I (RICO under 18 U.S.C. § 1962(c)); II (RICO Conspiracy); III (Sherman Act) and VIII (Fraudulent Inducement).

3) <u>Racketeering Allegations</u> – We have amended to include allegations of a broader pattern of racketeering, and associated predicate acts by the Defendants, beginning in late 1995 and continuing to this date. The nature of the racketeering activities designed to deny WWE the right of honest services from its licensing agent and supervising manager is set forth in great detail from ¶ 35-185. The Amended Complaint develops in chronological fashion Jakks' early efforts at corrupting Defendants SSAI and Shenker in connection with their duties as an agent of WWE (¶¶ 37-56); adds allegations regarding Shenker's motivation to become corrupt (¶ 43); details the manner in which Jakks improperly utilized SSAI and Shenker to obtain favorable treatment on licensing matters in the early phase of the illegal conduct (¶¶ 41-56); specifically pleads that Jakks and its officers caused SSAI and Shenker to violate fiduciary duties owed WWE as part of a plan to secure valuable additional licensing rights and eliminate competition in the toy business and in connection with the videogame license (¶¶ 57-99); outlines the joinder of Defendant Bell into the illegal plan and his motives for doing so (¶¶ 79-82); specifies the improper utilization of WWE's agents to have rights involved in toy licensing transferred to Jakks (¶¶ 83-99); narrates the utilization of WWE's agents to cause Jakks, and then Jakks and THQ, to obtain rights to the videogame license (¶¶ 62, 81, 82, 84-99, 100-164); and pleads payments made to WWE's agents in exchange for their agreement to act favorably on licensing matters involving Jakks and then Jakks and THQ on the videogame license. (¶¶ 84-99, 111-113, 166-170). The Amended Complaint also adds numerous allegations regarding the manner in which Jakks, THQ and THQ/Jakks entered into various agreements after the videogame license was signed regarding the manner in which proceeds from the illegal conduct would be divided (¶¶ 173-185) and the specific dates of money laundering associated with doing so are set forth in ¶ 249(b). The predicate acts of mail and wire fraud known at this time are set forth in great detail at ¶ 249(a), beginning in November 20, 1995 and extending through November 11, 2003. Predicate acts involving money laundering from January 14, 1998 to and through the fourth quarter of 2004 are set forth in ¶ 249(b). Violations of the National Stolen Property Act from July 3, 1998 to December 13, 2001 are set forth in ¶ 249(c). Paragraph 249(d) incorporates the previously plead acts as violations of the Travel Act. Lastly, paragraph 249(e) alleges specific acts violating New York's bribery provisions which violate 18 U.S.C. § 1961(1)(A).

4) <u>THQ's Actions, Motive and Scienter</u> – We have added substantial allegations against THQ in support of the Sherman Act claims and the claims originally plead demonstrating in greater detail THQ's scienter and motives. <u>See</u> ¶ 118-164.

5)      <u>Injury to WWE</u> – For both antitrust and RICO purposes, we have expanded on the allegations demonstrating the injury caused WWE by the illegal conduct of Defendants. <u>See</u> ¶¶ 160-164; 173-185.

6)      <u>State Law Claims</u> – No new claims have been added, but the additional facts in the Amended Complaint have been incorporated into the existing claims.

7)      <u>Alter Ego Allegations</u> – We have expanded on the factual allegations demonstrating that THQ/Jakks, the nominal entity signing the videogame license, is a sham and should be disregarded. <u>See, e.g.</u>, ¶¶146, 154-158; 173-185; 355-358.

8)      <u>Tolling Allegations</u> – We have expanded on the allegations of the original Complaint, which were substantial, to demonstrate that limitations defenses will not apply to any of the claims. <u>See</u> ¶ 186-241.

## CERTIFICATE OF SERVICE

The undersigned, an attorney duly admitted to practice law before this Court, hereby certifies under penalty of perjury, that on April 11, 2005, I caused a true copy of the foregoing to be served upon the following parties via facsimile service and first-class U.S. mail, postage prepaid:

John R. Williams
Williams & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510

Michael A. Cornman
Schweitzer Cornman Gross & Bondell, LLP
292 Madison Avenue
New York, NY 10017

Steven A. Marenberg
Irell & Manella, LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276

Steven M. Bierman
Sidley Austin Brown & Wood
787 Seventh Avenue
New York, NY 10019

Michael A. Freeman
24 West 40th Street
17th Floor
New York, NY 10018

Jonathan J. Lerner
Skadden, Arps, Slate, Meagher & Flom, LLP
Four Times Square
New York, NY 10036-6522

Murray L. Skala, Esquire
Feder, Kaszovitz, Isaacson, Weber, Skala, Bass & Rhine, LLP
750 Lexington Avenue
New York, NY 10022-1200

Richard Schaeffer
Dornbush Schaeffer Strongin & Weinstein, LLP
747 Third Avenue
New York, NY 10017

Jerry S. McDevitt

Dated: Apr. 11, 2005

# michael a. freeman | attorney at law

24 West 40th Street, 17th Floor
New York, New York 10018

tel 646.366.0881
fax 646.366.1384
maf@freemanlawyer.com
www.freemanlawyer.com

April 14, 2005

**BY FACSIMILE 212.805.7968**

Hon. Kenneth M. Karas
United States District Court
Southern District of New York
500 Pearl Street, Room 920
New York, NY 10007

      **Re:** World Wrestling Entertainment, Inc. v. Jakks Pacific Inc. et al.
            No. 04-CV-8223

Dear Judge Karas:

      I represent defendants Stanley Shenker and Associates, Inc. and Stanley Shenker in the above-referenced action (collectively the "Shenker Defendants"). This letter shall serve as the Shenker Defendants' response to the April 11, 2005 letter brief submitted by plaintiff World Wrestling Entertainment, Inc. ("WWE") pursuant to the Court's Order of April 6, 2005.

      The Court's Order directed WWE, *inter alia*, "to identify how the Amended Complaint responds to the dispositive motions raised by Defendants." WWE's April 11 letter to the Court has attempted to address how the proposed amended complaint corrects the numerous patent deficiencies of WWE's RICO claim as originally pled, which is the only claim asserted against the Shenker Defendants. To the extent the co-defendants herein have submitted responsive arguments that are applicable to the Shenker Defendants, the Shenker Defendants hereby adopt those arguments by reference.

      I submit this separate letter to bring to the Court's attention that WWE has not identified how the filing of an amended complaint will enable WWE to overcome the defenses raised by the Shenker Defendants based on the prior pending Connecticut state court action. Specifically, in their motion to dismiss the complaint, the Shenker Defendants raised defenses asserting that WWE's RICO claim against them is barred by the doctrine of *res judicata*, the prior pending action doctrine, as well as the "one satisfaction" rule. Neither the proposed amended complaint nor

Hon. Kenneth M. Karas
April 14, 2005
Page 2

WWE's April 11 letter addresses how WWE's newly pleaded RICO claim can survive those defenses, which are fully described in the brief in support of the motion to dismiss I filed on behalf of the Shenker Defendants on February 26, 2005.

I appreciate the opportunity to address the Court on this matter.

Respectfully submitted,

/s/

Michael A. Freeman

Cc:   All Counsel (*by e-mail*)

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7547
FACSIMILE (310) 203-7199
smarenberg@irell.com

April 14, 2005

**VIA HAND DELIVERY**

Honorable Kenneth M. Karas
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 920
New York, New York 10007

Re:   World Wrestling Entertainment, Inc. v. JAKKS Pacific, Inc., et al.,
       1:04-CV-08223-KMK

Dear Judge Karas:

On behalf of defendant THQ Inc. ("THQ") and defendant Brian Farrell (jointly the "THQ Defendants"), we write in response to plaintiff World Wrestling Entertainment, Inc. ("WWE")'s letter to Your Honor dated April 11, 2005 ("WWE Letter").

**WWE Has Failed To Comply With This Court's Order Of April 6, 2005**: The WWE Letter fails to respond to any of the Court's specific orders regarding the Amended Complaint. The Court's Order of April 6, 2005, plainly requires WWE to (1) obtain leave of the Court to supplement its pleadings and add a new Defendant, and (2) identify how the Amended Complaint responds to the dispositive motions raised by Defendants. Order at 1-2. WWE has done neither.

In particular, WWE's cursory "Summary of Amended Complaint" falls far short of "identif[ying] how the Amended Complaint responds to the dispositive motions raised by Defendants" as ordered by this Court. *See* Order at 1-2. In lieu of explaining how the new allegations respond to the arguments set forth in the motions to dismiss, WWE, in less than one page, merely summarizes the new allegations in overbroad fashion. For example, WWE states, "[w]e have added substantial allegations against THQ in support of the Sherman Act claims and the claims originally plead demonstrating in greater detail THQ's scienter and motives." Exhibit 1 to WWE Letter. WWE makes absolutely no attempt to explain the particular allegations added, how such allegations demonstrate THQ's scienter and motive, or how such allegations respond to the various dispositive arguments set forth in THQ's Motion to Dismiss. Indeed, WWE fails to address any of the arguments raised by any defendant in the various motions to dismiss. As a result of WWE's failure to comply with this Court's Order, if the amended pleading is not stricken, at the very least WWE should be ordered to meaningfully "identify how the Amended Complaint responds to the dispositive motions raised by Defendants."

1285827

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Honorable Kenneth M. Karas
April 14, 2005
Page 2

**WWE Should Be Ordered To Make A Showing Of Its "Additional Evidence" That Purportedly Supports Its Newly-Created Allegations**: In addition to ignoring the Court's Order, another disturbing aspect of WWE's letter is WWE's insinuation that it has obtained evidence that supports the newly-created allegations that Mr. Farrell and/or THQ knowingly participated in the alleged bribery and price-fixing schemes. WWE claims that its ongoing investigation turned up additional evidence to support such allegations. WWE Letter at 3. According to WWE, this additional evidence led to the addition of Mr. Farrell as a defendant and the addition of numerous allegations of THQ's purported involvement in, and knowledge of, the alleged bribery and price-fixing schemes, despite the fact that such allegations are plainly contrary to the allegations in the original Complaint. WWE fails to disclose the content or source of such evidence or how such evidence suddenly proves the THQ Defendants knowingly participated in such schemes. Nor does WWE attempt to justify adding new allegations that directly contradict the allegations of the original Complaint.

As set forth in the THQ Defendants' letter of April 5, 2005, these new allegations asserted against THQ and Mr. Farrell are false and are unsupported by any evidence. Indeed, despite voluminous deposition and written discovery in the related Connecticut action, there is not a shred of evidence that either Mr. Farrell or THQ knowingly participated in any alleged scheme to fix prices or to commit bribery as alleged by WWE. WWE's assertion of such allegations, without any evidentiary support, is a transparent attempt to avoid the dispositive arguments raised by THQ in its Motion to Dismiss.

In light of WWE's assertions that this supposedly newly-discovered "additional evidence" allegedly provides evidentiary support for the new allegations against the THQ Defendants, WWE should be willing to provide this "additional evidence" to the Court and to the THQ Defendants to establish that there is, indeed, a good-faith basis for the new allegations. Accordingly, the THQ Defendants respectfully request that WWE be required to make a showing that its "additional evidence" does indeed support the new allegations before being permitted to file an Amended Complaint containing such allegations. If, as the THQ Defendants suspect, there is in fact no additional evidence to support the new allegations against the THQ Defendants, WWE should not be permitted to include any newly-created allegations against the THQ Defendants.

**WWE's Claims Of Delay Are False**: At the conclusion of the WWE Letter, WWE states that Defendants "bemoan the need for extensive time to brief their responses" and suggests that Defendants are engaging in delay tactics. That claim, of course, is demonstrably wrong and properly disregarded.

1285827

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Honorable Kenneth M. Karas
April 14, 2005
Page 3

      In the event that WWE is permitted to file the Amended Complaint despite its refusal to comply with this Court's April 6, 2005 Order, the THQ Defendants intend to file a new motion to dismiss on an appropriate briefing schedule.

Very truly yours,

Steven A. Marenberg

cc:    Counsel of Record (via email)

1285827

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE
NEW YORK 10036-6522
—
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
212-735-2550
DIRECT FAX
917-777-2550
EMAIL ADDRESS
JLERNER@SKADDEN.COM

FIRM/AFFILIATE OFFICES
—
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
—
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

April 14, 2005

BY HAND

Honorable Kenneth M. Karas
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 920
New York, New York 10007

Re:   World Wrestling Entertainment, Inc. v. JAKKS
      Pacific, Inc., et al., 1:04-CV-08223-KMK

Dear Judge Karas:

We had hoped, and would have expected, that after disregarding this Court's carefully crafted January 25, 2005 Scheduling Order by unilaterally exempting itself from the requirement that WWE file its opposing brief on March 31, 2005, WWE would have taken great pains to adhere scrupulously to the requirements of the Court's April 6, 2005 Order. Regrettably, a review of WWE's April 11 Letter (the "April 11 Letter") reveals the opposite to be true. Compounding the disregard it showed for this Court's January 25, 2005 Scheduling Order, WWE's April 11 Letter also flouts the Court's latest Order.[1]

---

[1] From the unjustified ad hominem attacks that litter WWE's Letter, one might wonder whether JAKKS, rather than WWE, had improperly defaulted on its obligations. Typical is Mr. McDevitt's by now tiresome refrain that any issue that defendants wish to raise — even the filing of a routine dismissal motion — is "dilatory." Of course, WWE waited years to bring this case, and the only delay here is the direct result of WWE's recent tactical antics. This is not the first time WWE has invoked this canard. In his December 8, 2004 letter to the Court opposing JAKKS' pre-motion letter seeking to file a motion to dismiss, Mr. McDevitt blustered: "[T]he JAKKS submission and the procedural gauntlet suggested by the Defendants are designed to delay adjudication of liability and provide camouflage for acts already known to have occurred." (McDevitt December 8, 2004 Letter at 1) (emphasis added.) This supposed "procedural gauntlet," the same hackneyed phrase invoked by Mr. McDevitt in the first and penultimate paragraphs of his April 11 Letter, was previously used by Mr. McDevitt to describe a routine motion to dismiss WWE's complaint — a complaint which was, and now is admitted to be by WWE's recent actions, glaringly defective. (April 11 Letter at 1, 7.) Mr. McDevitt conspicuously fails to explain why WWE did not comply with the Court-ordered briefing schedule if, as Mr. McDevitt apparently still contends, WWE's complaint was valid. (See McDevitt March 31, 2005 Letter.) Ironically, had Mr. McDevitt complied with this Court's January 25,

(continued...)

Honorable Kenneth M. Karas
April 14, 2005
Page 2

### WWE Fails to Explain, Much Less Justify, its Violation of the Court's January 25 Scheduling Order

In his April 11 Letter, Mr. McDevitt professes to "welcome the opportunity" to respond to our April 4 letter, but he assiduously ignores the procedural context that led to this exchange. Contrary to Mr. McDevitt's apparent view that he was a "free agent" under the default procedures of the Federal Rules, the Court and the parties were proceeding under this Court's Chamber Rules which prescribe detailed procedures regulating motion practice, including early notification to WWE of the grounds of any dismissal motion (which Mr. McDevitt received), a Pre-motion Conference, and a Court Order reflecting that conference. When it suits WWE's purposes, it not only acknowledges the Court's rules, but aggressively invokes them as a sword. For example, in Mr. McDevitt's initial November 11, 2004 letter to the Court opposing our proposal for an extension of time to respond to his Complaint, he insisted on strict compliance with the Court's motion Rules, complaining that our proposed order "would evidently dispense with the Court's requirement that leave be obtained to file motions to dismiss," (McDevitt November 11, 2004 Letter at 2), and he argued that the Court could deny defendants the "right" to make a motion under Rule 12(b)(6) – a right that is more absolute than WWE's right to amend under Rule 15 – by declaring that "[WWE] reserve[s] the right to oppose leave to file such motion." (Id. at 3.)

It is axiomatic that "one of the principal reasons for requiring a premotion conference is to allow the Court to establish clear briefing schedules in the presence of both parties." See Jordan v. Lipsig, Sullivan, Mollen & Liapakis, P.C., 1988 WL 31855, at *1 n.1 (S.D.N.Y. Mar. 24, 1988). Mr. McDevitt admittedly is aware that this is the purpose of the Pre-motion Conference, as he conceded in his November 11, 2004 letter to Your Honor, where he stated that if leave to file a motion was granted, "then we, and the Court, would agree on a briefing schedule." (McDevitt November 11, 2004 Letter at 1.) Now he maintains the "briefing schedule" to which we would all "agree" was illusory, and if expedient for Mr. McDevitt, was subject to his unilateral abrogation. Under this Court's rules, Mr. McDevitt had almost two months before the January 25, 2005 Pre-motion Conference to consider the grounds and controlling case law set forth in our December 3, 2004 letter to decide whether to defend his Complaint or amend it.[2] Of course, it would have been extremely inconvenient for WWE to

---

[1](...continued)
2005 Order, defendants' dismissal motions would have been fully briefed today.

[2] WWE's April 11 Letter conspicuously fails to explain why it waited to file the Amended Complaint until the eve of the Court's deadline for submitting its opposition brief, and
(continued...)

Honorable Kenneth M. Karas
April 14, 2005
Page 3

acknowledge its intention to amend its Complaint, which would have precluded Mr. McDevitt from obtaining discovery based on the existing Complaint, which he sought at the Conference and again by a letter to Your Honor dated February 10, 2005.[3] Given this Court's Rules and procedures, WWE was obligated by the time of the Pre-Motion Conference to decide whether to stand on its Complaint or amend it. It did not have the option, as Mr. McDevitt now asserts, to engage in the kind of tactical gamesmanship that sent the defendants on an extremely expensive "fool's errand" preparing briefs addressed to a moving target and which made a mockery of the Court-ordered schedule.

There was nothing ambiguous about Your Honor's Scheduling Order which required the JAKKS Defendants to file their brief on February 16, 2005. The JAKKS Defen-

---

[2] (...continued)
why WWE failed to communicate to the Court or counsel that it intended to amend its pleading. WWE's assertion that "the investigation," which "did not stop when the original Complaint was filed and has not stopped now" (April 11 Letter at 3) hardly explains WWE's failure to disclose its intent to amend when the parties convened in Your Honor's courtroom for the Pre-motion Conference on January 25, 2005 or at any time prior to the date its response to the motions to dismiss was due. The re-engineering of the initial Complaint and the addition of 53 pages is obviously something that did not appear overnight. It would appear that all the information related to its repackaged allegations was in the hands of WWE well in advance of the January 25, 2005 scheduling conference, and long before defendants filed their motions to dismiss. There is simply no excuse for WWE's gamesmanship which forced defendants to spend hundreds of thousands of dollars preparing motions to dismiss a complaint that WWE was secretly intending to abandon. In this District, by willfully disregarding a Court's clear briefing schedule, a party subjects its claims to the risk of dismissal. See Jordan, 1988 WL 318565, at *1.

[3] In his February 10 letter, Mr. McDevitt represented: "The Complaint more than satisfies the pleading requirements applicable to all aspects of RICO claims . . . The Complaint contains a detailed description of the fraudulent scheme and, therefore, discovery should proceed." (McDevitt February 10, 2005 Letter at 3.) Indeed, WWE suggested that discovery was a prerequisite to its ability to amend its Complaint, contending that "[discovery] will provide a basis for amending the Complaint if deemed necessary." (Id. at 7.) WWE's adamant insistence on the adequacy of its Complaint was also reflected in its letter to Your Honor dated November 11, 2004 in which WWE declared that "no motion to dismiss will result in dismissal of the case or result in any alteration of the discovery which will be relevant to the case" and accordingly asserted WWE's reservation of its "right to oppose leave to file such motion." (McDevitt November 11, 2004 Letter at 3) (emphasis added.)

Honorable Kenneth M. Karas
April 14, 2005
Page 4

dants (as well as the other defendants) expended a substantial amount of time and money preparing briefs to comply with the Court's Scheduling Order. The Scheduling Order was equally plain in mandating that WWE file an opposing brief on March 31, 2005: "[WWE] shall respond in opposition no later than March 31, 2005" by filing a "response brief." (emphasis added.) In the face of this Court's Scheduling Order, WWE had no right to nullify the Court's schedule by failing to file its opposing brief because it filed a purported amendment to its Complaint. See, e.g., United States v. Broadway Constr. Inc., 1998 WL 246385, at *2 (N.D. Ill. Apr. 24, 1998) (where, as here, plaintiff failed to respond to defendant's motion to dismiss certain counts, but instead contended "that the pleading deficiencies identified by the . . . defendants in their motion ha[d] been cured in an amended complaint, which plaintiff filed in the midst of the briefing schedule set by th[e] court for the defendants' motion to dismiss," court held that "[b]ecause plaintiff did not seek leave to file an amended complaint," court would dismiss counts as to which no opposition was filed.) It is revealing that nowhere among the thicket of citations contained in his April 11 Letter does Mr. McDevitt address, much less distinguish, Broadway or explain how an Order of this Court entered at a Pre-motion Conference held pursuant to the Court's Chamber Rules can be trumped by the exercise of his "right" under Rule 15.[4]

Even if there were any doubt, and we respectfully submit there could be none given the extant Scheduling Order, that the Court – not Mr. McDevitt – had the exclusive authority to relieve WWE of its obligation to file its brief in opposition, at the very least, WWE was obligated to seek clarification from the Court, rather than take matters into its own hands and simply disregard the Court's order. See Silverman v. Reinauer Transp. Companies, Inc., 1991 WL 29337, at *3 (S.D.N.Y. Mar. 1, 1991) ("[I]f Respondents were uncertain as to whether or not the Court's 10(j) Order required them to use the hiring hall they were obligated to seek a clarification of the Court's order rather than unilaterally to disobey the Order as they saw fit.");

---

[4] None of the authorities paraded by WWE justify its evisceration of the Federal Rules of Civil Procedure and this Court's Order. Not surprisingly, the cases relied on by WWE to argue the unremarkable proposition that Defendants' motions to dismiss have been rendered moot by amended complaints are entirely inapposite because they do not address the situation here where a plaintiff acts in disregard of a court-ordered briefing schedule. See Dassero v. Edwards, 190 F. Supp. 2d 544, 547 n.1 (W.D.N.Y. 2002) (defendant filed motion to compel arbitration and stay proceeding after filing motion to dismiss and defendant's attorney wrote to the court conceding that motion to dismiss was mooted); United Magazine Co. v. Murdoch Magazines Distribution, Inc., 146 F. Supp. 2d 385, 393, 416 (S.D.N.Y. 2001) (where one defendant had filed motion to dismiss original complaint and subsequently, along with the remaining defendants, also moved to dismiss the amended complaint, court granted defendants' motion to dismiss amended complaint and held that defendants' initial motion to dismiss was moot). Equally inapposite is Taylor v. Abate, 1995 WL 362488, at *1-2 (S.D.N.Y. Jun. 8, 1995), which did not involve a briefing schedule and where – unlike here – a pro se plaintiff had moved for leave to file an amended complaint after defendants had moved to dismiss the original complaint.

Honorable Kenneth M. Karas
April 14, 2005
Page 5

see also United States v. Terry, 815 F. Supp. 728, 734 (S.D.N.Y. 1993) ("if [defendant] has doubts as to his obligations under an order, [defendant] may petition the court for a clarification or construction of that order . . . a failure [to seek clarification of an order] when combined with actions based upon a twisted or implausible interpretation of the order will be strong evidence of a willful violation of the order.") (quotation omitted).

### WWE's April 11 Response Also Flouts the Court's April 6 Order

WWE has also flouted the terms of this Court's April 6 Order. The Court's April 6 Order unambiguously provided:

> Jakks accordingly requests that the Court require Plaintiff to obtain leave of the Court to supplement its pleadings and add a new Defendant and to identify how the Amended Complaint responds to the dispositive motions raised by Defendants. This request is GRANTED.

(April 6 Order at 1-2.)

WWE's April 11 Letter made no attempt whatsoever to "identify how the Amended Complaint responds to the dispositive motions raised by Defendants."[5] (April 6 Order, at 1-2.) WWE's lengthy letter – including the attached "summary" of the Amended Complaint, by which WWE recognizes its obligation, but deliberately fails to comply with it – fails to offer any explanation of how, if at all, its proposed Amended Complaint cures a single one of the numerous, independent and fatal defects warranting dismissal as a matter of law that were specifically identified in Defendants' dismissal motions. WWE is therefore also in default of the Court's April 6, 2005 Order which not only gave WWE a new opportunity to defend its pleading in light of Defendants' unrebutted dispositive motions (and thereby try to cure its default under the Court's January 25, 2005 Scheduling Order), but *expressly ordered it to do so*.

After deliberately failing to comply with two separate orders by this Court to respond to Defendants' motion to dismiss, WWE cannot be heard to complain should this Court

---

[5] In this same vein, WWE also ignores this Court's Order requiring WWE "to obtain leave of the Court to supplement its pleadings." Instead, WWE decries the suggestion that it be required to engage in "pointless motion practice," depicts the proposal that it seek leave as a "procedural gauntlet suggested by Jakks [that] is found nowhere in the rules" – even though that is precisely what this Court has just ordered it to do – and declares that it has already "followed the proper procedures to amend." (April 11 Letter at 7.) As shown below, the cases upon which WWE relies, as well as the significant authorities WWE wilfully ignores, provide not the slightest justification for WWE's cavalier disregard of this Court's Orders and the Federal Rules of Civil Procedure.