**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

The Hon. Kenneth M. Karas
May 13, 2005
Page 6

1957(a). At best, the Videogame License itself was "criminally derived" and was itself the "proceeds" of the unlawful activity. The connection between payments pursuant to that license and the unlawful activity is highly attenuated.

More fundamentally, to constitute money laundering, "the financial transaction [must be] designed in whole or in part to conceal or disguise the source of [the] proceeds." United States v. Maher, 108 F.3d 1513, 1520 (2d Cir. 1997). Payments which were made by the LLC to Jakks and WWE in the regular course, and as a normal incident of performing, the Videogame License were not at all designed to conceal the source of payments, or anything else. WWE does not allege anything to the contrary; nor could it. That, according to WWE's allegations, the relationship may have had its roots in certain unlawful behavior (of which THQ may have been unaware) does not transform every financial transaction related to that relationship into a federal crime. Hence, the "money laundering" references in WWE's amended complaint do not save it here.[4]

Shorn of its rhetoric, all that is left (at best) of WWE's amended complaint (and its original complaint) is that THQ was involved (perhaps unknowingly) in a *single* episode to fraudulently procure *one* contract from *one* party. This is insufficient to state a RICO claim. As Justice (then Chief-Judge) Breyer wrote in a case involving similar facts:

> The present case, with one exception, involves several instances of criminal behavior – a bribe, several false statements, a cover-up, and (possibly unlawful) access to confidential information. But, these events all took place over a

---

[4] Were WWE's theory that any proceeds derived from a fraudulently obtained contract predicate acts of racketeering which could satisfy the continuity requirement, almost any scheme to fraudulently obtain a single contract would be within the purview of RICO. Such a result would be contrary to well-established law in this circuit. Schaeffler Nance, 119 F.3d at 98 ; Dempsey v. Sanders, 132 F.Supp.2d 222, 228 (S.D.N.Y. 2001) ("where a Plaintiff alleges a single scheme promulgated for the limited purpose of defrauding a single victim, continuity cannot be established").

1300704

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

The Hon. Kenneth M. Karas
May 13, 2005
Page 7

> comparatively short period of time. And, taken together, they comprise a single effort to obtain (and to keep) one $ 96 million Defense Department contract.... They do not seem like a string of interstate robberies or frauds, separate criminal episodes so related as to threaten further, "continued," racketeering activities.

Apparel Art Int'l v. Jacobson, 967 F.2d 720, 723 (1st Cir. 1992).

WWE has failed to cure the deficiencies in its RICO claims against THQ regarding the continuity requirement, and those claims should be dismissed.

   2.   **WWE's Amended Complaint Does not Allege that THQ was Involved in the "Operation or Control" of the Enterprise**

By extending the "scheme" for several years prior to THQ's involvement, WWE again highlights that THQ could not have had "operation or management" over the scheme "to deprive WWE of the intangible right of honest services" (AC, ¶ 1) given that the purported plot was hatched *years* before THQ had anything to do with it. WWE's May 6th letter simply fails to address the dispositive case law on the "operation or management" issue cited by THQ in its Motion to Dismiss. Rather, WWE states that the issue is a "factual" one, and thus presumably inappropriate for resolution on a motion to dismiss. This argument, of course, ignores the fact that courts in this district consistently dispose of RICO defendants at the pleadings stage because they had no "operation or management" over the alleged enterprise. See, e.g., Schmidt v. Fleet Bank, 16 F.Supp.2d 340, 346-47 (S.D.N.Y.1998); Redtail Leasing, Inc. v. Bellezza, 1997 WL, 603496, *5 (S.D.N.Y. 1997); In re Lake States Commodities, 936 F. Supp. 1461, 1476-77 (S.D.N.Y. 1996); Sundial Int'l. Fund v. Delta Consultants, Inc., 923 F. Supp. 38, 41 (S.D.N.Y. 1996).

WWE also attempts to blur the issue by noting that "THQ is responsible for the performance of the videogame license." (WWE Letter at 11.) This is nonsense. First, the LLC allegedly performs the Videogame License. (AC ¶ 146.) Second, neither THQ nor the LLC is

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

The Hon. Kenneth M. Karas
May 13, 2005
Page 8

alleged to be the RICO enterprise that must be operated or controlled to state a claim. The test is whether THQ has some part in directing the RICO enterprise's affairs. Reves v. Ernst & Young, 507 U.S. 170, 179 (1993). WWE simply does not explain how THQ had anything to do with the operation and management of an enterprise which was created long before its alleged fleeting involvement with it. As WWE has essentially failed to respond to THQ's arguments in this regard, and has failed to amend its complaint to show that THQ was more than "involved" in the enterprise's affairs but had a part in directing them, the RICO claims should be dismissed against THQ. Schmidt, 16 F.Supp.2d at 346 ("under Reves ... 'the test is not involvement but control.'").

    3.  **WWE's Amended Complaint Provides No Basis for Vicarious Liability**

WWE's amended complaint, and its letter to this Court, ignore the dispositive authority on the issue of vicarious liability which THQ raised in its motion to dismiss. As an initial matter, WWE still cannot explain the most fundamental problem with imposing vicarious liability on THQ for the alleged RICO enterprise here: The enterprise was created *years* before THQ had anything to do with it, Jakks, any other Defendant, or WWE. Moreover, WWE chooses to rely on general civil agency principles when arguing that THQ should be liable for the alleged misconduct of others. Looking to general civil agency principles ignores the fact that RICO is a *criminal* statute. Thus, as explained in THQ's Motion to Dismiss, courts in this circuit have generally been hostile to claims of vicarious liability under RICO, holding that "corporations may not be held vicariously liable for the actions of their employees in violation of the RICO statute 'where the plaintiff has not alleged any facts which portray the company as an active perpetrator of the fraud or a central figure in the criminal scheme.'" USA Certif. Merchants v Koebel, 262 F.Supp.2d 319, 327 (S.D.N.Y. 2003); see also Schmidt, 16 F.Supp.2d at 351 (same); DeJesus v. Sears, Roebuck and Co., 1995 WL 122726, at *4

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

The Hon. Kenneth M. Karas
May 13, 2005
Page 9

(S.D.N.Y.1995) (same); Amendolare v. Schenkers Intern. Forwarders, Inc., 747 F.Supp. 162, 168 (E.D.N.Y.1990) (same).

    WWE's amendments only reinforce the problems present in its original complaint on this issue. By now stretching its scheme back years to transactions which THQ had nothing to do with, WWE makes clear that THQ was neither a "central figure," nor an "aggressor" in any RICO scheme. Rather, the alleged central figures according to both complaints were Jakks, Shenker and Bell. It appears that WWE is simply invoking an equitable argument that because THQ "benefits" from the Videogame License (as does WWE), it should not be able to avoid liability. But the authorities decided under RICO do not support this argument. See Schmidt, 16 F.Supp.2d at 352 ("the fact that a corporation benefits from an illegal scheme does not in itself establish that the corporation participated as a 'central figure' in that scheme" quoting Gruber v. Prudential-Bache Secur., Inc., 679 F. Supp. 165, 181 (D.Conn. 1987) (Cabranes, J.)).

### B. WWE Failed to Cure the Clear Defects in Other Claims

    WWE has chosen to retain both its Robinson-Patman claim and its New York law bribery claim in its amended complaint despite THQ's consistent citation to unequivocal authority tending to show that neither claim is viable. WWE has further chosen, despite the Court's order to the contrary, not to explain how the amended complaint cures any of the deficiencies present in those claims in the prior complaint. The facial deficiencies in both claims have consistently been raised by THQ. Despite several opportunities to do so, however, WWE has never responded with authority supporting an argument that either claim is viable.

    THQ cannot be held liable for violating section 2(c) of the Robinson-Patman Act because the alleged unlawful payments were made in connection with a contract for services and/or the

1300704

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

The Hon. Kenneth M. Karas
May 13, 2005
Page 10

licensing of intangible rights, not "in connection with the sale or purchase of *goods, wares or merchandise.*" 15 U.S.C. § 13(c) (emphasis added). Simply put, no reasonable argument could be that the Videogame License purportedly procured by bribery is "goods, wares or merchandise."[5]

As to WWE's claim based on New York's commercial bribery law, the deficiency in the claim could not be more clear: "[E]very federal court considering the issue has concluded that the commercial bribery sections of the Penal Law do not create a private right of action." Philip Morris, Inc. v. Grinnell Litho. Co., 67 F. Supp. 2d 126, 140 (E.D.N.Y. 1999). THQ has raised this issue in two submissions to this Court. WWE has never offered any argument explaining why every federal court to consider the issue has been wrong.

In short, WWE has never defended the clear deficiencies in these claims. Its amended complaint has not cured these deficiencies, and no amendment possibly could given the fundamental problems with asserting these claims. Accordingly, THQ respectfully requests that the court dismiss these claims forthwith.[6]

Respectfully submitted,

*/s/ Steven A. Marenberg*
Steven A. Marenberg

cc: Counsel of Record

---

[5] The authority on this point is so clear that a court in this district has imposed Rule 11 sanctions on a party for bringing a Robinson-Patman claim based on bribery in the procurement of services. See Empire State Pharmaceutical Soc., Inc. v. Empire Blue Cross, 778 F.Supp. 1253, 1258-59 (S.D.N.Y. 1991).

[6] WWE implies that it needs "full briefing" to respond to all issues raised by Defendants in their motions. But given the clear and incurable defects in these claims, THQ submits that this court could dismiss them *sua sponte* in any event. Leonhard v. United States, 633 F.2d 599, 609 n. 11 (2d Cir. 1980) ("The district court has the power to dismiss a complaint *sua sponte* for failure to state a claim.").

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE
NEW YORK 10036-6522

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
212-735-2550
DIRECT FAX
917-777-2550
EMAIL ADDRESS
JLERNER@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

May 13, 2005

BY HAND
Honorable Kenneth M. Karas
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 920
New York, New York 10007

Re: World Wrestling Entertainment, Inc. v. JAKKS Pacific, Inc., et al., 1:04-CV-08223-KMK

Dear Judge Karas:

We write on behalf of the JAKKS Defendants in response to the May 6, 2005 Letter ("WWE's May 6 Letter") submitted by World Wrestling Entertainment, Inc. ("WWE").

**WWE's May 6 Letter Disobeys Your Honor's Unambiguous Directives – Again**

Although WWE professes to mean no disrespect to the Court, WWE has failed – once again – to comply with yet another unambiguous order by this Court. It is undisputed that WWE failed to file any brief in opposition to the pending motions to dismiss, as explicitly required under the Court's January 25, 2005 Scheduling Order (the "1/25/05 Order"). Without warning or leave, it filed a new complaint, which was a legal nullity.[1] WWE has now <u>admitted</u>

---

[1] WWE's continued assertion that it was "entitled" to file its new Complaint without permission ignores its addition of 9 paragraphs of post-complaint supplemental allegations that are inextricably incorporated into <u>every one</u> of its substantive claims, which mandates leave of Court under Fed. R. Civ. P. 15(d). To minimize its infraction, WWE erroneously claims it has only supplemented its pleadings with "four paragraphs." (See WWE April 11 Letter at 6; Tr. 45:12; 45:25.) WWE omits to mention that one of the "four paragraphs," (see Am. Compl. ¶ 249(b)), contains six supplemental paragraphs (id. at ¶¶ lxv-lxviii, lxxxvii-lxxxviii) and that all of these supplemental allegations are incorporated into each and every one of the Amended Complaint's substantive counts, (id. at ¶¶ 254, 259, 273, 281, 296, 303, 310, 318, 322, 328, 343, 348, 354, 359) – dispelling any doubt that they are integral to WWE's Amended Complaint. "The distinction between supplemental pleadings and amended pleadings is more than one of mere
(continued...)

that it had <u>no intention of ever complying with the 1/25/05 Order</u>. At the April 27 Hearing (the "4/27 Hearing"), when pressed by Your Honor to explain the effect of the purported "cooperating witness" on the amendments, Mr. McDevitt was forced to concede that: "<u>I would have amended, in the absence of the interview with the cooperating witness, I would have amended to include the [Sherman Act] claim on the basis of what I had</u> . . . ." (4/27 Hearing Transcript ("Tr.") at 15:22-24) (emphasis added.)[2]

The Court's April 6, 2005 Order (the "4/6/05 Order") unambiguously required WWE to "identify how the Amended Complaint responds to the dispositive motions raised by Defendants." (4/6/05 Order at 1-2.) At the 4/27 Hearing, Your Honor indicated that WWE had not complied with the 4/6/05 Order, and <u>again</u> directed it to explain how its Amended Complaint responded to the defects raised in Defendants' dismissal motions in unequivocal terms: "Mr. McDevitt, by a week from Friday, <u>I would like you to do what I asked in the initial order</u> . . . . <u>the second thing I would like you to do is address what I asked you to address in the April 6 order, which is how it is that the amended complaint addresses the claims of the defendants in their motions to dismiss</u>." (Tr. at 51:19-52:5) (emphasis added).

---

[1] (...continued)
nomenclature. A party has no right under Rule 15 to <u>supplement</u> its pleading as a matter of course[.]" <u>United States ex rel. Kinney v. Stoltz</u>, No. Civ.01-1287(RHK/JMM), 2002 WL 523869, at *3 (D. Minn. Apr. 5, 2002) (striking amended complaint purportedly filed "as of right" under Rule 15(a) in the face of a motion to dismiss because it sought to add a party and obtain relief based upon events which occurred after the original complaint), <u>aff'd</u>, 327 F.3d 671 (8th Cir. 2003), <u>cert. denied</u>, 540 U.S. 1105 (2004); <u>see also Dells, Inc. v. Mundt</u>, 400 F. Supp. 1293, 1295 (S.D.N.Y. 1975) (because "Verified Amended Complaint" contained supplemental allegations, plaintiff should have entitled it "Amended and Supplemental Complaint" and sought leave of court to file it).

[2] Despite this unequivocal admission, WWE's May 6 Letter disingenuously claims its Sherman Act claim arose from its "continuing" investigation: "[T]he principal purpose of the Amended Complaint is to set forth even stronger claims on the basis of our continuing investigation. As a result, we added a claim under the Sherman Act . . ." (WWE's May 6 Letter at 1.)

2

Despite this <u>third</u> directive, WWE's May 6 Letter continues to defy this Court's Order by (i) refusing to identify how, if at all, WWE responds <u>to several separate and independent bases for dismissal</u> raised in Defendants' dismissal motions; and (ii) deliberately obfuscating how the Amended Complaint addresses, if at all, the "enterprise" defect in its RICO claim. By announcing – without providing any particulars whatsoever – that WWE has "made no amendments aimed at addressing <u>numerous arguments of Defendants</u> either because we disagreed with their positions on the controlling law, their application of the law to the facts, or because the issue involved is a legal issue," in derogation of Your Honor's Order, WWE deliberately leaves the Court and Defendants to speculate about which of the "numerous arguments" are the admitted subject of no response. (WWE May 6 Letter at 2 (emphasis added).)

### WWE Is Conspicuously Silent on How the Amended Complaint Cures Multiple Dispositive Defects Raised by Defendants

At the 4/27 Hearing, we emphasized that WWE's April 11, 2005 response to this Court's 4/6/05 Order failed to disclose what effect, if any, the Amended Complaint had on two specific dispositive dismissal grounds advanced by Defendants – the Robinson-Patman Act ("RPA") claim and the RICO "enterprise" requirement:

> I know his summary didn't even address the Robinson-Patman claims. I don't know if that's in the case or out of the case. I do know there was a tinkering with the Robinson-Patman, but because he didn't respond to the order, I don't exactly know what he is doing with that. He has got a real problem with the Second Circuit on his so-called enterprise being distinct from the acts. He added now a new individual. Is he saying that is responsive to the enterprise argument? That's what we were hoping to find out from the detailed analysis which you ordered and which he did not supply and we still don't have.

(Tr. at 35:6-16.) WWE's May 6 Letter does not even pretend to identify how the Amended Complaint responds to these specific arguments in the JAKKS Defendants' motion to dismiss:

**WWE's RPA Claim:** WWE makes no attempt to state whether or how the Amended Complaint addresses our arguments that the RPA claim is defective because (i) the RPA is inapplicable to the intangible license rights at issue here; (ii) WWE's speculative allegations of loss fail to allege the necessary injury; and (iii) the injury alleged is not the type of injury contemplated by the statute. (See JAKKS Motion to Dismiss ("MTD") at 10-16.) Accordingly, because WWE failed to show that its new Complaint "cures" these defects in its RPA claim and failed to file any opposition to JAKK's motion to dismiss the RPA claim, as required by the 1/25/05 Order, that claim must be dismissed.

**WWE's Defective RICO Enterprise:** Even worse, WWE attempts to obfuscate its failure to address the fatal defects in its RICO "enterprise." WWE's discussion of the RICO "enterprise" is emblematic of its unwillingness to comply with this Court's Orders if WWE believes doing so will expose flaws in its legal position. (See WWE's May 6 Letter at 9-10.) In our motion, we demonstrated that <u>WWE's alleged enterprise consisted of nothing more than its predicate acts</u>, and therefore should be dismissed under the recent controlling decision in <u>First Capital Asset Management, Inc. v. Satinwood, Inc.</u>, 385 F.3d 159, 174 (2d Cir. 2004), which unambiguously held, in affirming dismissal of a civil RICO claim, that allegations showing "a course of fraudulent or illegal conduct separate and distinct from the alleged predicate racketeering acts themselves" are "a requirement in [the Second] Circuit." (See MTD at 27-29.) Again, WWE makes no <u>bona fide</u> attempt to explain how, if at all, its Amended Complaint overcomes Defendants' dispositive challenge to WWE's RICO enterprise allegations. WWE's May 6 Letter contains a belated legal defense of its <u>initial complaint</u>, which had to be filed in a responsive brief which was due on March 31, 2005 – and is too little and too late. Although WWE was informed of our reliance on <u>First Capital</u> in our December 3, 2004 pre-motion letter, it pointedly

4

failed to address, much less distinguish, this controlling legal authority. No doubt cognizant its legal position is flawed,[3] which is fatal to its entire RICO claim, and unwilling to concede that the Amended Complaint has not addressed the "enterprise" requirement, WWE audaciously sends us all on another wild goose chase by referring Your Honor to 150 paragraphs in its Amended Complaint (Am. Compl. ¶¶ 35-185) that it vaguely claims "add[] even greater factual detail going well beyond the relevant notice standard," (see WWE's May 6 Letter at 10) – without providing the slightest hint about "how it is that the Amended Complaint addresses the [enterprise] claims of the Defendants in their motions to dismiss." (Tr. at 52:3-5.) Because WWE does not, and cannot, explain how its Amended Complaint meets the "enterprise" requirement, a sine qua non of its RICO claims, we respectfully submit the Court should dismiss all of WWE's RICO claims without the need to reach the additional flaws in WWE's newly recast and artificially elongated RICO claims.[4]

---

[3] In attempting to defend its initial Complaint, WWE misleadingly quotes United States v. Turkette, 452 U.S. 576, 583 (1981), for the proposition that the proof used to establish an enterprise "may in particular cases coalesce" with proof of predicate acts. (See WWE's May 6 Letter at 10.) WWE disingenuously omits the rest of the passage in Turkette, which continues: "[P]roof of one [element] does not necessarily establish the other. The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government." Turkette, 452 U.S. at 583 (emphasis added). WWE also erroneously cites older inapposite cases addressing the standard of proving a criminal RICO enterprise at trial. See United States v. Coonan, 938 F.2d 1553, 1560, 1567 (2d Cir. 1991) (affirming criminal RICO conviction of organized crime figure where testimony at trial provided "overwhelming proof of the charged enterprise," including "testimony regarding the enterprise's hierarchy, organization and activities"); United States v. Ferguson, 758 F.2d 843, 846-48 (2d Cir. 1985) (affirming RICO convictions of figures involved in armored truck robberies, murders and a prison break).

[4] WWE has also failed to address our arguments that: (i) WWE failed to allege the requisite "pattern" of racketeering activity necessary to state a claim under RICO because its original Complaint impermissibly splintered a single alleged bribe into multiple RICO predicate acts. (See MTD at 24-27.) Indeed, WWE's Amended Complaint now compounds its improper mincing of predicate acts by recycling the same $100,000 payments to create a "new" RICO scheme concerning Playmates; and (ii) WWE has ignored the 2004 General Release and

(continued...)

5

### WWE's Improper Tactics Warrant Dismissal of Their Claims

Because WWE has both failed to respond to the pending motions to dismiss and repeatedly failed to show how its amended pleading responds to dispositive arguments in the dismissal motions, this Court should dismiss WWE's Amended Complaint. By its tactical decision to ignore the Court's 1/25/05 Order to "respond in opposition no later than March 31, 2005" (see 1/25/05 Order), WWE subjected its claims to dismissal, regardless of the filing of its purported Amended Complaint. Pursuant to Local Civil Rule 7.1 ("Rule 7.1"), to properly oppose a motion, a party must file opposition papers accompanied by a memorandum of law, and the "[w]illful failure to comply with this rule may be deemed sufficient cause for the denial of a motion or for the granting of a motion by default." S. & E.D.N.Y. Local Civ. R. 7.1 (emphasis added). WWE's only response to Defendants' motions to dismiss was its Amended Complaint, not any memorandum of law, as required by Rule 7.1. Courts have dismissed complaints for failure to comply with such local rules. In Long v. Carberry, 151 F.R.D. 240, 243 (S.D.N.Y. 1993), this Court refused to vacate a default judgment entered against a plaintiff for failure to file an answering memorandum to a motion to dismiss, as required under the precursor to Rule 7.1, where the failure was "attributable . . . to plaintiff's attorney's tactical decisions or ignorance of the procedural rules governing actions in federal court."[5]

---

[4] (...continued)
Settlement Agreement, which unambiguously bars all of WWE's claims, including WWE's newly asserted Sherman Act claim, which is based on the identical payments to Shenker and Stanfull upon which WWE knowingly issued a General Release and Covenant Not to Sue in 2004. (See MTD at 35-37.)

[5] See also Palmer v. BCE Inc., No. 03-CV-6421T, 2004 WL 1752601, at *1-2 (W.D.N.Y. Aug. 4, 2004) (dismissing complaint with prejudice and granting default judgment pursuant to Fed. R. Civ. P. 16(f) and Local Civil Rules for repeated failure to respond to motion to dismiss); Fox v. American Airlines, Inc., 389 F.3d 1291, 1294-95 (D.C. Cir. 2004) (upholding dismissal of amended complaint for failure to respond to motion to dismiss and holding that local rule
(continued...)

Furthermore, WWE's default under the Court's 1/25/05 Order by not filing an opposition brief would <u>not</u> be excused by WWE's Amended Complaint even if it were properly filed – <u>which it plainly was not</u>. As a legal matter, where, as here, the Amended Complaint admittedly does not address or cure "numerous" defects in the initial Complaint, filing it does not automatically moot the still pending <u>motions to dismiss</u> the original Complaint: "defendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. <u>If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading</u>." 6 Charles Alan Wright et al., <u>Federal Practice and Procedure: Civil</u> § 1476, at 558 (2d ed. 1990) (emphasis added); <u>see also</u> <u>Lopez-Salerno v. Hartford Fire Ins. Co.</u>, No. 3:97CV273 AHN, 1997 WL 766890, at *1 (D. Conn. Dec. 8, 1997) (granting motion to dismiss amended complaint; "[w]hen a defendant has not filed a pleading responsive to the original complaint before the plaintiff files an amended complaint, a defendant's motion to dismiss tests the legal sufficiency of the amended complaint"); <u>Koch v. United States</u>, 822 F. Supp. 1517, 1517-18 (D. Colo. 1993) (same).

Accordingly, even if WWE's assertion that it was "entitled" to amend its Complaint without leave were correct – which it was not – it would not excuse its failure to file an opposition brief as required by the 1/25/05 Order. By failing to submit a brief addressing the "uncured" defects in its Complaint -- including the fatally inadequate "enterprise" allegations and RPA claim – WWE acted at its peril and exposed its Complaint to the pending motions to dismiss which, like a heat-seeking missile, transferred their firepower to the uncured defects in

---

[5] (...continued)
allowing for dismissal of unopposed motions was properly applied).

the new target – the Amended Complaint. See United States ex rel. Lightron of Cornwall, Inc. v. Broadway Const., Inc., No. 97 C 8284, 1998 WL 246385, at *2 (N.D. Ill. Apr. 24, 1998).[6]

### WWE Should Pay Costs for its Breach of the Scheduling Order and Disregard for the Court's Inherent Power to Manage its Docket

Claiming it "has done nothing sanctionable," WWE insists on its tactical "right" to unilaterally disrupt the briefing schedule by amending its Complaint without providing any warning even though WWE long-intended to amend its Complaint.[7] (See WWE's May 6 Letter at 13.) Even if WWE could avail itself of Fed. R. Civ. P. 15(a) as a basis to file its new Complaint – which it cannot – WWE's position collides with the 1/25/05 Order as well as the Court's two subsequent Orders, and the Court's well established inherent power to control its docket "so as to achieve the orderly and expeditious disposition of cases." See Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962). As the First Circuit Court of Appeals has stated in language equally applicable here: "the trial judge has an independent responsibility to enforce the directives he has laid down for the case . . . . If he or she sets a reasonable due date, parties should not be allowed casually to flout it or painlessly to escape the foreseeable consequences of

---

[6] If the Court were to find that WWE's new Sherman Act claims were cognizable and not subject to dismissal on the grounds stated in Defendants' prior motions, JAKKS respectfully requests the opportunity to show why these claims must also be dismissed under Fed. R. Civ. P. 12(b)(6).

[7] The cases WWE relies on to demonstrate that sanctions are inappropriate because of its "right" under the Federal Rules of Civil Procedure are entirely inapposite. See Richardson Greenshields Sec., Inc. v. Lau, 825 F.2d 647, 652-53 & n.5 (2d Cir. 1987) (a court's refusal to timely schedule a pre-motion conference where the statute of limitations was expiring); Milltex Indus. Corp. v. Jacquard Lace Co., 55 F.3d 34, 39 (2d Cir. 1995) (involving sanctioned attorney's claim that he was prevented from filing a motion to postpone a trial by rule requiring a premotion conference); Eisemann v. Greene, 204 F.3d 393, 396-97 (2d Cir. 2000) (overturning award of sanctions for party's failure to heed warning not to file motion at premotion conference); Fruit of the Loom, Inc. v. American Mktg. Enters., Inc., 192 F.3d 73, 75-76 (2d Cir. 1999) (where judge's individual rules permitted party to file motion outside time limit expressly provided in Fed. R. Civ. P. 50(b) and Fed. R. App. P. 4(a), judge lacked the authority to provide for a longer time limit for filing motion).

8

noncompliance." <u>Legault v. Zambarano</u>, 105 F.3d 24, 28-29 (1st Cir. 1997). The power to enforce necessarily includes the power to impose sanctions.

A court's scheduling orders play a vital role in meeting the mandate of Fed. R. Civ. P. 1, "to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1; <u>see</u> <u>Marcum v. Zimmer</u>, 163 F.R.D. 250, 253 (S.D. W. Va. 1995) ("Indeed, a scheduling order is the critical path chosen by the trial judge and the parties to fulfill the mandate of Rule 1 . . . .").[8] Like a Rule 16 scheduling order, the 1/25/05 Order could be modified only with leave of the Court. <u>See</u> Fed. R. Civ. P. 16(b). Thus, even if WWE did have a right to file its Amended Complaint under Rule 15(a) (which it plainly did not), that right could be exercised only in concert with the other Federal Rules of Civil Procedure granting the Court its authority to manage the cases it hears.[9] <u>See generally</u> Fed. R. Civ. P. 83(b) ("A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and local rules of the district.").

Where, as here, a party violates a scheduling order, the Federal Rules of Civil Procedure clearly confer authority to impose sanctions: "Rule 16(f) gives a federal judge authority to sanction a party or a party's attorney who fails to obey a scheduling order." <u>Martin</u>

---

[8] <u>See</u> <u>Johnson v. Mammoth Recreation, Inc.</u>, 975 F.2d 604, 610 (9th Cir. 1992) ("Disregard of [a scheduling] order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.") (citation omitted); <u>cf.</u> <u>In re Baker</u>, 744 F.2d 1438, 1441 (10th Cir. 1984) (sanctions under Rule 16 concern "the matter <u>most</u> critical to the court itself: management of its docket and avoidance of unnecessary burdens on the tax-supported courts, opposing parties or both").

[9] The Second Circuit Court of Appeals has expressly recognized that where a scheduling order issued pursuant to Fed. R. Civ. P. 16 sets a deadline for filing amended pleadings, Rule 16 trumps even the liberal standard towards pleading embodied in Rule 15(a). <u>See</u> <u>Parker v. Columbia Pictures Indus.</u>, 204 F.3d 326, 340 (2d Cir. 2000) (holding that "despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause.") (citing cases); <u>accord</u> <u>Grochowski v. Phoenix Constr.</u>, 318 F.3d 80, 86 (2d Cir. 2003).

9

Family Trust v. Heco/ Nostalgia Enters. Co., 186 F.R.D. 601, 602, 604-05 (E.D. Cal. 1999) (imposing sanctions on attorney for violation of Rule 16 scheduling order); see also Mescal v. United States, 161 F.R.D. 450, 454 (D.N.M. 1995); 3 James Wm. Moore et al., Moore's Federal Practice, § 16.91[2][b] (3d ed. 2005).[10] A showing of bad faith is not required to warrant imposition of costs. See Martin Family Trust, 186 F.R.D. at 604 (bad faith not required for award of sanctions under Rule 16); cf. John v. Louisiana, 899 F.2d 1441, 1448 (5th Cir. 1990) (party need not demonstrate prejudice to justify sanctions under Rule 16(f)).

WWE's gamesmanship has imposed considerable burdens on the Court and Defendants, including the costs of litigating the consequences of WWE's unfortunate tactical choice, which costs fairly should be imposed on WWE.

Respectfully submitted,

Jonathan J. Lerner

cc:   All Counsel

---

[10] See also Neufeld v. Neufeld, 172 F.R.D. 115, 119 (S.D.N.Y. 1997) (imposing sanctions for failure to prepare a pretrial order and to file a pretrial memorandum as ordered); Lutwin v. City of New York, 106 F.R.D. 502, 504-05 (S.D.N.Y. 1985) (imposing sanctions on defendant for failing to file answer until 26 days after the deadline set in scheduling order), aff'd mem., 795 F.2d 1004 (2d Cir. 1986); Richardson v. Nassau County, 184 F.R.D. 497, 503-04 (E.D.N.Y. 1999) (imposing sanction of attorney's fees for motion practice arising out of defendant's failure to obey court order to appear at conference); McConnell v. Costigan, No. 00 CIV. 4598(SAS), 2002 WL 313528, at *14-15 (S.D.N.Y. Feb. 28, 2002) (imposing sanctions for late opposition to plaintiffs' motion for summary judgment, stating: "Rules 16(f), 37(b) and 37(d), and 41(b) permit a court to impose sanctions for, inter alia, failure to comply with a scheduling order.").