UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
WORLD WRESTLING ENTERTAINMENT, INC.

                 :

           Plaintiff,              04 CV 8223 (KMK)

        v.             :        (ECF CASE)

JAKKS PACIFIC, INC.; JAKKS PACIFIC (H.K.)  :
LIMITED; ROAD CHAMPS LIMITED; THQ,
INC.; THQ/JAKKS PACIFIC LLC; STANLEY     :
SHENKER AND ASSOCIATES, INC.; STANLEY
SHENKER; BELL LICENSING, LLC; JAMES     :
BELL; JACK FRIEDMAN; STEPHEN BERMAN;
JOEL BENNETT; and BRIAN FARRELL,      :

            Defendants.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE JAKKS DEFENDANTS' MOTION FOR RECONSIDERATION OF THE PORTION OF THE COURT'S DECEMBER 21 DISMISSAL ORDER RELATED TO THE RELEASE

FEDER, KASZOVITZ, ISAACSON,
  WEBER, SKALA, BASS & RHINE LLP
Murray L. Skala (MS 9354)
Jonathan D. Honig (JH 7577)
750 Lexington Avenue
New York, New York 10022
Phone: (212) 888-8200
Fax: (212) 888-5968

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Jonathan J. Lerner (JL 7117)
Michael H. Gruenglas (MG 8705)
Maura B. Grinalds (MG 2836)
Diana Rubin (DR 5477)
Four Times Square
New York, New York 10036
Phone: (212) 735-3000
Fax: (212) 735-2000

Attorneys for the JAKKS Defendants

February 8, 2008

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT .............................................................................................................3

I.    THE COURT SHOULD RECONSIDER OR CLARIFY ITS RELEASE
      RULINGS ...........................................................................................................3

      A.    By Equating the Inferred "Purpose" of the Audit with *What was Actually
            Covered by the Audit* the Court Imposed a Limitation Not Found in the
            Release  and Made a Factual Determination in the Context of a Motion to
            Dismiss.................................................................................................3

      B.    By Limiting the Scope of the Release to the So-Called "Purpose" of the
            Audit, the Court Overlooked the Actual Provisions of the Release,
            Including the Covenant Not to Sue, and WWE's Judicial Admissions ..................6

            1.    In Order to State the Release Does Not Bar WWE's Claims in this
                  Action, the Court Necessarily Overlooked Provisions of the
                  Release ...........................................................................................6

            2.    WWE's Judicial Admissions and the Parties' Knowledge of the
                  Scope of the Audit at the time the Release Was Executed,
                  Overlooked By the Court, Demonstrate That the Audit
                  Encompassed the Claims Here.......................................................6

            3.    The Court Overlooked the Covenant Not to Sue, Which By Its
                  Terms is Even Broader Than the Release Provision and, Had the
                  Court Considered It, the Result Would Have Been Different ....................7

II.   THIS MOTION IS A PROPER MOTION FOR RECONSIDERATION...........................8

CONCLUSION..........................................................................................................10

i

## TABLE OF AUTHORITIES

### CASES

Abbs v. Sullivan, 963 F.2d 918 (7th Cir. 1992)...................................................10

American Elastics, Inc. v. United States, 84 F. Supp. 198 (S.D.N.Y. 1949).....................10

Bibeault v. Advanced Health Corp., No. 97 Civ. 6026, 2002 WL 24305 (S.D.N.Y. Jan. 8, 2002).........................................................................6

Bueno v. Gill, 237 F. Supp. 2d 447 (S.D.N.Y. 2002).......................................8, 9

Citizens Against Casino Gambling in Erie County v. Kempthorne, No. 06-CV-0001S, 2007 WL 1200473 (W.D.N.Y. Apr. 20, 2007)...................................8

Cruz v. United States, No. C 01-00892, 2003 WL 21518119 (N.D. Cal. June 24, 2003) ..............................................................................6

Electrical Fittings Corp. v. Thomas & Betts Co., 307 U.S. 241, 59 S. Ct. 860 (1939) .......9

In re DES Litigation., 7 F.3d 20 (2d Cir. 1993) ...................................................9

FDIC v. Ernst & Young, LLP, 216 F.R.D. 422 (N.D. Ill. 2003) ......................................10

General Star Indemnity Co. v. Anheuser-Busch Companies, Inc., No. Civ. 3:97CV2542, 1999 WL 795555 (D. Conn. Aug. 27, 1999).........................................10

Jones v. UNUM Life Insurance Co. of America, 223 F.3d 130 (2d Cir. 2000) .................9

Lichtenberg v. Besicorp Group Inc., 204 F.3d 397 (2d Cir. 2000).....................................9

Mattel, Inc. v. Robarb's, Inc., No. 00 Civ. 4866, 2001 WL 797478 (S.D.N.Y. July 12, 2001) ..............................................................................9

In re Matthews, 324 B.R. 324 (Bankr. N.D. Ohio 2005)...................................................10

RBS Holdings, Inc. v. Wells Fargo Century, Inc., 485 F. Supp. 2d 472 (S.D.N.Y. 2007) ..............................................................................7

RJE Corp. v. Northville Industries Corp., No. 02-CV-1440, 2002 WL 1750763 (E.D.N.Y. July 29, 2002) ...............................................................10

Romero v. Peterson, 930 F.2d 1502 (10th Cir. 1991).........................................................10

Shrader v. CSX Transportation, Inc., 70 F.3d 255 (2d Cir. 1995)...................................3, 9

Slavich v. Local Union No. 551, No. 84 C 454, 1991 WL 117921 (N.D. Ill. June 26, 1991) ...................................................................................................10

World Wrestling Entertainment, Inc. v. JAKKS Pacific, Inc., No. 04-CV-8223, (KMK), 2007 WL 4623027 (S.D.N.Y. Dec. 21, 2007) .................................................4

## RULES

S.D.N.Y. Local Civil Rule 6.3 ......................................................................8, 9

## PRELIMINARY STATEMENT

WWE's opposition to the JAKKS Defendants' Motion for Reconsideration (the "Motion") and accompanying Memorandum of Law in Support thereof ("Def. Mem.") directs most of its thunder to a vitriolic attack on the JAKKS Defendants and to wholly misguided procedural objections to the Motion – while scrupulously dodging its substance. As detailed below, there is no merit to WWE's *ad hominem* and procedural attacks, which only serve to obfuscate WWE's complete inability to refute the central point of the Motion: the Court could not have properly reached the factual conclusion on our dismissal motion that the then completed Audit described in the January 2004 Release <u>did not</u> relate to the alleged bribery payments at issue in this Action, <u>unless</u> the Court overlooked, *inter alia*, key provisions of the Release and WWE's repeated admissions in its pleadings that the Audit covered those very issues. (<u>See</u>, <u>e.g.</u>, Def. Mem. at 13-15.) Yet, that is precisely what the Court necessarily had to do to state in the December 21, 2007 Order that, the Release "does not bar the claims at issue here." (Order at 77.)

The JAKKS Defendants and WWE have expressed their disagreement to the Court over the factual issue of whether the Audit described in the January 2004 Release covered the alleged bribery payments. If the actual Audit related to those alleged payments in any way, then there is no question that paragraphs 2 and 3 of the Release explicitly released any claims "arising from or relating to" those payments – including the claims in this Action. Based on WWE's repeated admissions in its pleadings that the Audit it conducted covered those specific subjects, the JAKKS Defendants moved to dismiss WWE's claims on the basis of the Release.

The Release is explicitly linked to the scope of the Audit, which is specifically defined in the January 2004 Release in the second "Whereas" clause as "Jakks [sic] accounting records for the accounting period of the second quarter of 1996 through June 30, 2002 ('the

Audit')." As the Court is aware, the JAKKS Defendants contend (as corroborated by WWE's judicial admissions) that the accounting records audited by WWE, at the direction of WWE's litigation counsel, specifically included and expressly targeted the very payments at issue in this action. Nevertheless, in its Order, the Court (1) relied on the third "Whereas" clause – which describes a royalty dispute "between the parties concerning the Audit" – to conclude that this royalty dispute represented the sole "purpose" for which the Audit was initiated; (2) made a factual determination that the Audit <u>actually</u> conducted, only covered payments subject to that dispute (not any other payments, including the alleged bribes targeted by WWE); and (3) then concluded that only claims related to the limited royalty dispute were released. (Def. Mem. at 3, 10-12.) In short, the Court overlooked the definition of "Audit" and erroneously equated a purported "purpose" for which the Audit was initially conducted with the scope of the "Audit " <u>as actually conducted</u>, thus artificially narrowing the scope of the Release.

Significantly, WWE nowhere disputes, because it cannot, its binding judicial admissions – which were necessarily overlooked by the Court – that ineluctably establish that the Audit did in fact specifically seek accounting records concerning the alleged bribery payments to Shenker and Bell regarding the toy and videogame license agreements.[1] Nor can WWE dispute that when the Court equated the "purpose" of the Audit (inferred from the third "Whereas" clause) with the scope of <u>what was actually covered in the Audit</u>, the Court was necessarily making a factual determination – contradicted by WWE's admissions – of what was <u>actually covered in the Audit</u>. The Court could not have stated this factual conclusion about the Audit's "purpose"

---

[1] As set forth in the Opening Brief at 13-14, WWE repeatedly admitted that the Audit targeted the payments at issue in this action – admissions directly contradicted by the Court's factual determination of what the Audit actually covered. For example, WWE admitted: "On January 14, 2003, WWE's auditors requested, in writing, that Jakks provide the auditors with a complete listing of all payments made by Jakks to Shenker, SSAI, Bell and/or Stanfull." (AC ¶ 200.)

unless it overlooked express provisions of the Release and WWE's binding judicial admissions to the contrary. Had the Court not overlooked these matters, the JAKKS Defendants respectfully submit "that might reasonably be expected to alter the conclusion reached by the court." See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). If nothing else, the Court would not have made a factual conclusion in the context of a motion to dismiss without converting the motion to one for summary judgment and allowing for factual submissions, (see Def. Mem. at 6, 8, 10-12), thus warranting reconsideration and/or clarification.

## ARGUMENT

**I.     THE COURT SHOULD RECONSIDER OR CLARIFY ITS RELEASE RULINGS**

**A.     By Equating the Inferred "Purpose" of the Audit with *What was Actually Covered by the Audit* the Court Imposed a Limitation Not Found in the Release and Made a Factual Determination in the Context of a Motion to Dismiss**

The Court's statement that the claims in this action "do not pertain to the Audit," (Order at 77), was based on its factual determination that what the Court described to be the "purpose"[2] of the Audit – "to determine whether JAKKS had reported all of its sales or taken unsupported deductions, and whether JAKKS had overpaid WWE" (Order at 76) – described what was actually covered in the course of the Audit. (Def. Mem. at 10-12; Order at 76-77.) WWE's judicial admissions, which were overlooked, acknowledged that the actual Audit was not confined to this purported purpose, but rather targeted the very alleged bribes at issue here. Moreover, the Release, by its terms, does not limit its scope to what the Court described as the

---

[2] As explained in the Opening Brief, (Def. Mem. at 11 n.11), the JAKKS Defendants continue to maintain that, on its face, the Release not only does not define the purpose of the Audit as the dispute in the third "Whereas" clause (indeed, the word "purpose" nowhere appears in the language of the Release), but also, the Release does not specify whether the royalty dispute was even the actual impetus for the Audit or a dispute that arose during the course of, or as a result of, the Audit. However, even if the purpose of the Audit could be construed to be the narrow royalty dispute described in the third "Whereas" clause, the Court's equating of that purported "purpose" with what actually happened during the course of the Audit, standing alone, warrants reconsideration.

3

"purpose" of the Audit.[3]  In fact, the Release specifically defines the Audit in the second

"Whereas" clause, which provides that "WWE conducted an Audit of Jakks [sic] accounting

records for the accounting period of the second quarter of 1996 through June 30, 2002 ("the

Audit"). (Def. Mem. at 2.)  The scope of the Release is tied to the actual accounting records

sought and reviewed in the Audit – and anything "arising from or relating to the Audit" – and is

not limited to the narrow dispute about royalties that the Order incorrectly describes as the

exclusive subject of the Audit. (Id. at 3, 10-11.)  To have concluded that the Release's actual

scope was so narrow as to exclude the claims in this action, the Court necessarily made a

premature factual determination that the actual Audit only covered the dispute described in the

third "Whereas" clause of the Release, and did not, in fact, target or relate "in any way" to the

alleged bribery payments that are the subject of this Action (id.) – factual findings that were

contradicted by WWE's admissions, and were improper in the context of a motion to dismiss.

        WWE's insincere assertion that the JAKKS Defendants' motion is "nothing more

than . . . a quintessential attempt at a 'second bite at the apple,'" and that the JAKKS Defendants

have "embrace[d]" WWE's arguments "that the Court could not interpret the Release as a matter

of law on a motion to dismiss" (Pl. Mem. at 8, 10), completely ignores the fact that no one –

neither the JAKKS Defendants nor WWE – argued that the Court could properly find as a matter

of law that the Release does not bar WWE's claims in this action.[4]  WWE never contended

---

[3] WWE erroneously contends that because the JAKKS Defendants have not asserted that "'there has been a change in the controlling law or that new evidence not previously available has subsequently come to light', . . . '[t]his failure alone is sufficient to deny [the Jakks Defendants'] motion.'" (Pl. Mem. at 6.)  Here the JAKKS Defendants have properly moved for reconsideration because "there is a need to correct a clear error (facts or law overlooked by the trial judge)." See World Wrestling Entm't Inc. v. JAKKS Pacific, Inc., No. 04-CV-8223 (KMK), 2007 WL 4623027, at *1-2 (S.D.N.Y. Dec. 21, 2007) (Order denying WWE's reconsideration motion).

[4] WWE's contention that the JAKKS Defendants' Motion is "hypocritical" because the JAKKS Defendants argued in their motion to dismiss that the Release bars the action as a matter of law, plainly misses the point. (Pl. Mem. at 10.)  The JAKKS Defendants have always maintained the Release bars WWE's claims as a matter of law – based on the plain language of the Release and WWE's judicial admissions. (Def. Mem. at 3.)  However, the basis

*(cont'd)*

(before the Court issued its Order) that the Release was unambiguous, or that what the Court described as the "purpose" of the Audit, and what was <u>actually targeted and covered during the course of the Audit</u>, are identical. (Def. Mem. at 6.) Rather, WWE insisted that the Court could not properly consider, much less decide, whether the Release barred its claims without resorting to extrinsic evidence. (<u>Id.</u> (citing WWE Motion to Strike at 14-15).) Without notice to the parties, the Court went beyond the positions of both parties to reach the necessarily factual conclusion that the actual Audit did not cover the payments at issue in this action.

In equating what <u>actually was covered during the course of the Audit</u> with what the Court described as the "purpose" of the Audit, the Court appears to have credited WWE's uncorroborated (and self-contradicting) unsworn assertions about what happened during the Audit and what was subsequently released. (Def. Mem. at 19-20.)[5] WWE's erroneous contention that "the Court did not even hint at any extrinsic evidence in its Opinion but rather considered only the plain terms of the Release submitted by the Jakks Defendants," (Pl. Mem. at 7), and that *"all the Court did in that regard was to read the definition of the 'Audit' contained in the Release,"* (Pl. Mem. at 7 (emphasis in original)), serves only to reinforce the necessity of reconsideration or clarification here. As the Audit <u>is</u> defined in the Release as WWE's audit of "Jakks [sic] accounting records for the accounting period of the second quarter of 1996 through June 30 2002 ('the Audit')," and is <u>not</u> defined as the dispute the Court described as the "purpose" of the Audit, the Court necessarily relied on WWE's uncorroborated assertions – evidence

_____

*(cont'd from previous page)*
for this Motion is that by equating the purported "purpose" of the Audit with <u>what was actually covered by the Audit</u>, the Court made factual determinations that overlooked, *inter alia*, the express provisions of the Release and WWE's judicial admissions. (Def. Mem. at 10.) Until this Motion, WWE maintained that the scope of the Audit and Release were inherently factual questions. (<u>Id.</u> at 2.)

[5] WWE persists in advancing its unsworn uncorroborated assertions that do not appear on the face of the Release. (Pl. Mem. at 9 ("[The Release] <u>makes clear that the audit came about because 'a dispute exist[ed]</u> between the Parties concerning the Audit in that WWE contends Jakks [sic] failed to report various sales and that Jakks took unsupported deductions and wherein Jakks contends that it overpaid WWE . . . .'")

extrinsic to the Release before it – to have concluded (erroneously) that the Audit was limited to a royalty dispute.

**B.    By Limiting the Scope of the Release to the So-Called "Purpose" of the Audit, the Court Overlooked the Actual Provisions of the Release, Including the Covenant Not to Sue, and WWE's Judicial Admissions**

**1.    In Order to State the Release Does Not Bar WWE's Claims in this Action, the Court Necessarily Overlooked Provisions of the Release**

The provisions of the Release overlooked by the Court make clear that: (1) the Audit is defined in the second "Whereas" clause and is nowhere limited to the "purpose" for which it was purportedly commenced; (2) the Audit actually covered much more than the discrete dispute over toy license royalties described in the third "Whereas" clause that the Court described as the "purpose" of the Audit (e.g., Release at 1 (fourth "Whereas" clause)); and (3) the scope of the Release, as demonstrated by its expansive language, explicitly releases any and all claims "arising from or related to the Audit"; and (4) the Covenant Not to Sue is even broader than the release provision, by barring any action on any claims related "in any way" to the Audit, "including but not limited to" the claims released in the release provision.  (Release at 1-2 (emphasis added); Def. Mem. at 11.)  See Bibeault v. Advanced Health Corp., No. 97 Civ. 6026, 2002 WL 24305, at *3 (S.D.N.Y. Jan. 8, 2002) (granting motion for reconsideration "[b]ecause this Court did not take section 5.5 [of the agreement] into account" in its order denying the motion to dismiss); Cruz v. United States, No. C 01-00892, 2003 WL 21518119, at *4 (N.D. Cal. June 24, 2003) (granting reconsideration motion where "[a]lthough the contract excerpted above was presented to the Court in connection with defendants' motion to dismiss, the Court did not focus upon it in reaching its decision").

**2.    WWE's Judicial Admissions and the Parties' Knowledge of the Scope of the Audit at the time the Release Was Executed, Overlooked By the Court, Demonstrate That the Audit Encompassed the Claims Here**

6

WWE's judicial admissions in its complaint indisputably establish that the alleged bribery payments at issue in this action were <u>actually covered in and targeted by the actual Audit</u>. (<u>See</u> Def. Mem. at 13-15.)  Only by overlooking these undisputed and binding admissions, could the Court have concluded – in direct contradiction to WWE's judicial admissions (and other factual evidence that the JAKKS Defendants could not submit in the context of a motion to dismiss) – that the Audit did not cover those payments.  As the Release was executed after the Audit had <u>already been completed</u>, when both sides <u>knew</u> that WWE had used the Audit to seek information about the alleged bribery payments, the release provision (for which JAKKS paid $200,000), which encompasses "any and all claims . . . arising from or relating to the Audit," plainly encompassed the claims at issue in this action.  <u>See</u> <u>RBS Holdings, Inc. v. Wells Fargo Century, Inc.</u>, 485 F. Supp. 2d 472, 478 (S.D.N.Y. 2007) (granting motion for reconsideration where plaintiff could not "reasonably contend that its claims were completely outside of the parties contemplation at the time the Release was executed").  (<u>See also</u> Def. Mem. at 15-16.)

### 3.    The Court Overlooked the Covenant Not to Sue, Which By Its Terms is Even Broader Than the Release Provision and, Had the Court Considered It, the Result Would Have Been Different

As discussed in the Opening Brief at 16-18, the Court also necessarily overlooked the Covenant Not to Sue contained in the Release, which is even broader than the release provision.  The Covenant Not to Sue explicitly bars WWE from bringing any action against JAKKS "arising out of or relating <u>in any way</u> to the Audit including <u>but not limited to the matters released in [the Release]</u>."  (Def. Mem. at 16 (citing Release ¶ 3).)  Although WWE speculates that the Court might have silently considered the Covenant Not to Sue but elected not to address it in its Order (Pl. Mem. at 7-8), the JAKKS Defendants respectfully submit that had the Court considered this provision, it would have necessarily reached a different result in its Order and subsequent Judgment – that WWE was barred from bringing the claims here.  Giving

7

effect to all provisions of the Release, as this Court must, (Def. Mem. at 17-18), even if the Court were to equate what it described as the "purpose" of the Audit with <u>what was actually the subject of and covered by the Audit</u>, the Covenant Not to Sue, which on its face bars <u>any action</u> of any kind on any claims that relate "in any way" to the Audit, including – but not limited to – claims not released by the release provision, indisputably covers the claims at issue here. It is simply impossible to say, and WWE does not contend otherwise, that WWE's allegations, which <u>specifically</u> and <u>repeatedly</u> <u>reference</u> the Audit, do not relate "in any way" to the Audit, so as to fall outside of the Covenant Not to Sue. (<u>Id.</u> at 18.)

## II.     THIS MOTION IS A PROPER MOTION FOR RECONSIDERATION

WWE's contention that the Motion is improper because it "does not seek to actually alter the Court's judgment" (Pl. Mem. at 3) not only misconstrues the Motion but is not supported by the law in this Circuit.[6] Indeed, the Motion <u>does</u> bear directly on the judgment of this Court, which held that "Plaintiff's Motion to Strike [was] Denied as Moot," precisely because the Court purported to interpret the Release as a matter of law not to bar WWE's claims. (<u>See</u> Ex. A.) In any event, contrary to WWE's contention (Pl. Mem. 3-4), it is proper for courts within this Circuit to grant motions for reconsideration of statements not necessary to the judgment. <u>E.g.</u>, <u>Citizens Against Casino Gambling in Erie County v. Kempthorne</u>, No. 06-CV-0001S, 2007 WL 1200473, at *4 (W.D.N.Y. Apr. 20, 2007) (granting motion for reconsideration of *dicta* even though the amendments did not alter "the ultimate outcome"); <u>Bueno v. Gill</u>, 237 F.

---

[6] WWE's baseless assertion that the JAKKS Defendants' motion "appears to be untimely" (Pl. Mem. at 3 n.1) relies upon a version of the Judgment, which states judgment was entered on 12/28/07, that differs from the Judgment filed with the Court and reflected on the docket sheet. (A copy of the official Judgment is attached hereto as Exhibit A.) The only Judgment the JAKKS Defendants received is the official version reflected on the docket sheet and available for download off of the ECF docket site which (unlike WWE's copy) bears the official stamp of the District Court and notes that judgment was entered 1/3/08. (ECF notification attached hereto as Exhibit B.) Based on the entry of the Judgment on 1/3/08, the JAKKS Defendants timely filed this Motion on January 17, 2008 – ten days, pursuant to Fed. R. Civ. P. 6, from date of entry of the judgment. <u>See</u> S.D.N.Y. Local Civ. R. 6.3.

Supp. 2d 447, 448 (S.D.N.Y. 2002) (granting motion for reconsideration of *dicta* even though denial of motion for summary judgment remained unchanged).[7]

Further, WWE's contention that nothing but the actual judgment can be reconsidered (Pl. Mem. at 4) misstates the Second Circuit standard that a motion for reconsideration need only demonstrate that the relevant overlooked facts or law are "reasonably . . . expected to alter the <u>conclusion</u> reached by the court." <u>Shrader</u>, 70 F.3d at 257 (emphasis added). In fact, a motion for reconsideration is proper where it seeks to reconsider the opinions and order that <u>form the basis</u> of the court's judgment. <u>See Mattel, Inc. v. Robarb's, Inc.</u>, No. 00 Civ. 4866, 2001 WL 797478, at *1 (S.D.N.Y. July 12, 2001) ("'[T]he Court can grant a motion to reargue for the limited purposes of considering the effect of an overlooked matter,' and after doing so may affirm and/or clarify the original decision.").[8] Therefore, the JAKKS Defendants' Motion, seeking reconsideration and/or clarification of the portion of the Court's Decision that reached the Release, albeit *dicta* – a point recognized by WWE – is properly before this Court. The cases WWE cites to support its argument are inapplicable to this motion; WWE

---

[7] Indeed, the portion of the Judgment concerning the Release is also appealable, despite the fact that the Court's findings on the Release are *dicta*. <u>See</u> <u>Electrical Fittings Corp. v. Thomas & Betts Co.</u>, 307 U.S. 241, 59 S. Ct. 860 (1939) (recognizing exception to the general rule that a prevailing party cannot appeal, where the appeal is sought "not for the purpose of passing on the merits, but to direct the reformation of the decree" – i.e. that the Circuit Court should have stricken the finding that was unnecessary to the decision – for the purpose of avoiding the presumptive prejudice that could result from that decree); <u>In re DES Litig.</u>, 7 F.3d 20, 23 (2d Cir. 1993) (recognizing exception set forth in <u>Electrical Fittings</u> applies where "although [the challenged portion of the judgment] was not an estoppel, it might create some presumptive prejudice against [the appellant]"). Here, the JAKKS Defendants have noticed a Cross-Appeal to the Second Circuit seeking review of this Court's determination on the Release, which is reflected on the face of the Judgment, under the <u>Electrical Fittings</u> exception to the general rule. Moreover, the JAKKS Defendants are already party to the "presumptive prejudice" that could result from this Court unnecessarily (and improperly) determining the Release does not bar WWE's action: WWE has already mischaracterized the Court's determination on the Release in the parallel Connecticut state court litigation, asserting that this Court has "now agreed" with WWE that "the Jakks Defendants' so-called release defense is, as presented, a fraud on every court in which it has been raised. . . . " (Def. Mem. at 4.)

[8] <u>See also</u> S.D.N.Y. Local Civ. R. 6.3 (referring only to reconsideration of a "court order determining a motion."); <u>Jones v. UNUM Life Ins. Co. of Am.</u>, 223 F.3d 130, 136-37 (2d Cir.2000) ("We have long held that a postjudgment motion . . . if it involves reconsideration of matters properly encompassed in a decision on the merits, is to be deemed a motion to alter or amend the judgment pursuant to Rule 59(e)."); <u>Lichtenberg v. Besicorp Group Inc.</u>, 204 F.3d 397, 400 (2d Cir.2000) (noting "judgment" for purposes of Rule 59(e) includes "a decree and any order from which an appeal lies").

cites authority where the movant merely sought to strike or add statements even though, without those amendments, no issue addressed by the court would change.[9] Here, in contrast, reconsideration of the portion of the Court's Order concerning the Release will alter the Order and the Judgment. WWE's additional cases cited on this point are either outside the Circuit and applying a different standard,[10] or wholly inapposite.[11]

### **CONCLUSION**

The JAKKS Defendants respectfully request the Court reconsider and/or clarify its Order insofar as it stated that the Release does not bar WWE's claims in this action.

Respectfully submitted,

FEDER, KASZOVITZ, ISAACSON,
WEBER, SKALA, BASS & RHINE LLP
Murray L. Skala (MS 9354)
Jonathan D. Honig (JH 7577)
750 Lexington Avenue
New York, New York 10022
(212) 888-8200

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
By:  /s/ Jonathan J. Lerner
Jonathan J. Lerner (JL 7117)
Michael H. Gruenglas (MG 8705)
Maura B. Grinalds (MG 2836)
Diana Rubin (DR 5477)
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for the JAKKS Defendants

---

[9] See RJE Corp. v. Northville Indus. Corp., No. 02-CV-1440, 2002 WL 1750763, at *1 (E.D.N.Y. July 29, 2002) (denying motion because removing portions of the opinion, or labeling them as *dicta*, would not have any effect on the opinion), aff'd, 329 F.3d 310, 316 (2d Cir. 2003); General Star Indemnity Co. v. Anheuser-Busch Companies, Inc., No. Civ. 3:97CV2542, 1999 WL 795555, at *1 (D. Conn. Aug. 27, 1999) (motion merely sought to strike statements but made no challenge to any rulings in the opinion); In re Matthews, 324 B.R. 324, 325 (Bankr. N.D. Ohio 2005) (plaintiff sought reconsideration to correct trivial facts, included only in the court's recitation of the facts, with no bearing on any issues considered); FDIC v. Ernst & Young, LLP, 216 F.R.D. 422, 423 (N.D. Ill. 2003) (denying reconsideration of a statutory interpretation irrelevant to the court's determination that the moving party did not have standing to sue), aff'd, 374 F.3d 579 (7th Cir. 2004).

[10] Abbs v. Sullivan, 963 F.2d 918, 924-25 (7th Cir. 1992); Slavich v. Local Union No. 551, No. 84 C 454, 1991 WL 117921, at *2 (N.D. Ill. June 26, 1991) (amending findings but denying motion for reconsideration).

[11] Romero v. Peterson, 930 F.2d 1502, 1505 (10th Cir. 1991) (movant sought merely to "add another citation to support the judgment he had won"); Am. Elastics, Inc. v. United States, 84 F. Supp. 198,199 (S.D.N.Y. 1949) (not a case considering or discussing *dicta*), aff'd, 187 F.2d 109 (2d Cir. 1951).

10